AN AGREEMENT made this first day of April 2009 between:

Labrador Entertainment, Inc (and dba Spider Cues)
22400 Sentar Rd.
Woodland Hills, Ca. 91364
USA

(hereinafter referred to as "Publisher") of the first part, and

Beatbox Music Pty Ltd
Suite 9, 7 Ramsay Rd
Pennant Hills, NSW 2120
Australia
(hereinafter referred to as "Sub-Publisher") of the second part.

**WHEREAS:**
Publisher (a member of ASCAP, BMI, SESAC, and SOCAN) is the owner of the recordings known as the **Spider Cues Music Library** (published by Labrador Great Music ASCAP, Labrador Good Music BMI, Lab Good Music, SESAC, Red Great Music - SOCAN -) and wishes to appoint the Sub Publisher (a member of APRA) as sole Sub Publisher for the recordings in the territories of Australia, New Zealand, Fiji (hereinafter referred to as "the licensed territory").

**NOW THEREFORE** in consideration of the premises and of the respective covenants and conditions hereinafter contained **IT IS HEREBY AGREED** as follows:

1. Subject to the terms and conditions and limitation hereinafter mentioned the Publisher hereby appoints the Sub-Publisher as their sole Sub Publisher for the licensed territory for the introduction and exploitation as hereinafter mentioned of all recordings made to be issued during the term of this Agreement and any extensions thereto by the Publisher of musical compositions and sound recordings issued as part of the background music library catalogue known as **Spider Cues Music** (hereinafter referred to as "the recordings").

2. The term of this Agreement shall be for a period of 3 (three) years from the first day of April 2009 with automatic renewal for additional 1 year periods unless written notice that either part herein wishes to terminate this agreement is given by either party and delivered to the other party at least 3 months prior to the last termination.

1

**EXHIBIT B**

3. The Sub Publisher agrees to import each of the recordings as required issued by the Publisher on DVD, hard drive or other media during the term of this Agreement or any extension thereto. The Sub-Publisher shall remit to the Publisher all monies due for any associated transport charges within sixty days of receipt of all such invoices.

4. The Sub Publisher agrees to supply the Recordings or copies thereof at its own expense to its clients for audition selection and use at their own place of business; such recordings may be supplied on compact disc or in any audio file format and on any carrier system devised or yet to be devised subject to the following terms and conditions:

The supply of the Recordings above shall include the dissemination of the Recordings for audition and re-recording (downloading) via the Agent's web site or any Internet or Intranet, local area network, hard disc drive or any other carrier or medium.

5. The Sub-Publisher shall have the right to grant non-exclusive licenses in the licensed territory authorising the dubbing only of the recordings on to soundtracks of motion picture films television films video tapes as well as the dubbing and mechanical reproduction for radio transcriptions and any audio or audio-visual soundcarrier and which productions may be exported to all countries of the world. The Sub-Publisher shall pay to Publisher 50% (fifty per cent) of all fees accruing from such licenses relating to the use of the recordings.

6. It is agreed that the recordings will not be sold as a BUY-OUT LIBRARY or as normal commercial records to the general public including retail sales, record club sales, or other commercial sales.

7. In consideration of the grant of rights hereinafter made by Publisher, Sub-Publisher represents and warrants that it will use its best commercial endeavours to exploit the recordings for the benefit of the parties concerned.

8. The Performing Rights in the recordings are subject to the rights of the Copyright Societies in the USA (ASCAP, BMI and SESAC) and its affiliated societies in the licensed territory. It is agreed that the full "publisher's share" (six twelfths) of performing fees accruing from such rights shall be paid as follows: $3/12^{th}$ to the Sub-Publisher and $3/12^{th}$ to the Owner directly by the societies.

9. Sub-Publisher shall remit to Publisher 50% (fifty per cent) of all monies received for exploitation of the library, including mechanical/ synchronization royalties received by Sub-Publisher as a result of exploitation of rights herein granted to Sub-Publisher.

10. a) Royalty statements shall be rendered by the Sub-Publisher to the Publisher within 90 (ninety) days of each half yearly period ending 30th June and 31st December in each year showing all monies received for exploitation of the library, including mechanical/synchronisation royalties and licence fees earned.

   b) All payments made by the Sub-Publisher to the Publisher hereunder shall be in the currency of the Publisher (or such other currency as the Publisher may from time to time direct in writing) and the exchange rate to be utilised shall be that in effect on the date that payment is made. All costs of converting from the currencies utilised by the Sub-Publisher to the currency of the Publisher shall be borne by the Sub-Publisher.

11. On the termination of this Agreement or any extension thereof all rights in the recordings shall revert to the Publisher and all compact disc or DVD copies of the recordings supplied by the Publisher held by the Sub-Publisher shall become the absolute property of the Publisher. Notwithstanding the foregoing, but only regarding the Recordings in which Sub-Publisher has obtained a license, Sub-Publisher shall continue to render statements to the Publisher in respect of royalties and other monies earned under the provisions of this Agreement for a period of not less than six (6) months but not more than one (1) year beyond the termination of this Agreement or any extensions thereof.

12. The Sub-Publisher shall not have the right to part with or assign to any other person or party any of the benefits licensed to it under the terms of this Agreement without the prior written consent of the Publisher.

13. Should the Sub-Publisher default in rendering any statement of account or in making any payments as hereinbefore provided or in fully complying with any material terms or conditions herein required of the Sub-Publisher to be performed, and should such default continue for 30 (thirty) days after the Publisher has sent notice of such default by registered mail and fax to the Sub-Publisher, the Publisher shall have the right to terminate and cancel this Agreement as of expiration of the said 30 (thirty) days, or should the Sub-Publisher make any assignment for the benefit of creditors or take the benefit of any bankruptcy act (save for the purpose of reconstruction) or should the Sub-Publisher be petitioned into bankruptcy, then in each and every such event the Publisher shall be entitled to terminate and cancel this Agreement, and the Sub-Publisher shall account to the Publisher forthwith for any outstanding fees not accounted for up to the time of such cancellation.

14. All rights not herein expressly granted by the Publisher to Sub-Publisher are all hereby reserved to the Publisher without limitation whatsoever.

15. This Agreement shall be binding upon the parties hereto and their respective successors and permitted assigns. No amendment shall be made hereto except in writing by all parties hereto. This Agreement constitutes the entire agreement between the parties hereto at the date hereof and the parties hereto enter into it solely on that basis without reliance on any other representations whatsoever.

16. The Publisher hereby represents and warrants and undertakes that:

(i) The Publisher is free to enter into this Agreement;

(ii) during the term of this Agreement the Publisher not grant any rights in the Compositions to any person firm or company other than the Sub Publisher for the Territory or enter into any agreement or act in any way which would derogate from the rights granted to the Sub Publisher hereunder;

(iii) the Publisher is party to or has entered into good and valid contracts with the writers and composers of the Compositions and such contracts enable it to comply with all terms and conditions hereof and the Publisher will do all things necessary not to be in breach of the same during the term hereof.

(iv) the Compositions are original and that none of the Compositions infringes any other copyright work or the rights of any third party

(v) The Publisher agrees to indemnify and hold harmless the Sub Publisher, its successors and assigns of and from any and all loss, liability and expense incurred by reason of any infringement of rights or other claim inconsistent with the Publishers guarantees, warranties, representations and undertakings contained in this Agreement. This indemnity shall not be adversely affected should exploitation of the recordings continue after notice of infringement of rights or other claim has been received by the Sub Publisher.

(vi) The Sub Publisher agrees to indemnify and hold harmless the Publisher, it's successors and assigns of and from any and all loss, liability and expense incurred by reason of any infringement of rights or other claim inconsistent with the Sub Publishers guarantees, warranties, representations and undertakings contained in this Agreement. This indemnity shall not be adversely affected should exploitation of the recordings continue after notice of infringement of rights or other claim has been received by the Publisher.

17. Sub-Publisher shall deduct or shall authorise the deduction from royalty payments of any sums which may be demanded from Sub-Publisher in respect of the remittance of such payments by the governments or other fiscal authorities of the licensed territory. In such event Sub-Publisher shall supply the Publisher such information or documentation as may be available to Sub-Publisher together with confirmation as to the sums so demanded and paid.

18. Sub-Publisher shall keep true and correct books of account as far as they relate to the royalties generated by the recordings which shall be (subject to at least 30 (thirty) days prior written notice) open to inspection at the Publisher's expense during regular business hours and at a mutually convenient time and at Sub-Publisher's normal place of business by the Publisher or his representative.

19. All notices, writs, legal process or any other documents served under or in respect of this Agreement shall be addressed to the party to be served at the address of that party hereinbefore appearing or at such other address for service as may be notified by each to the other in writing and shall only be delivered by hand or sent by registered letter or recorded delivery letter.

20. This agreement shall be binding and shall inure to the benefit of the parties hereto, their successors and assigns and shall be construed in accordance with the laws and exclusive jurisdiction of The State of California of the USA.

21. Sub Publisher agrees to pay Publisher upon the signing of this contract, a non-refundable advance of US$3500.00 (Thirty-five hundred US dollars and no cents) against future royalties described in this contract.

22. Beatbox Music and its associates will not knowingly contact, commission, or employ any composer with whom Labrador Entertainment, Inc (and dba Spider Cues) has an agreement.

AS WITNESS the hands of the duly authorised representatives of the parties the day and year first above written.

For and on behalf of

For and on behalf of

_____
Labrador Entertainment, Inc
(and dba Spider Cues)

_____
Beatbox Music Pty Ltd