UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

HONORABLE MICHAEL W. FITZGERALD, U.S. DISTRICT JUDGE

BEATBOX MUSIC PARTY LTD., )
)
      Plaintiff, )
)
    vs. )
) 2:17-CV-6108-MWF
LABRADOR ENTERTAINMENT, INC., )
et al., )
)
      Defendants. )
_____

REPORTER'S TRANSCRIPT OF PROCEEDINGS

Los Angeles, California

Monday, April 9, 2018

_____

AMY DIAZ, RPR, CRR, FCRR
Federal Official Reporter
350 West 1st Street, #4455
Los Angeles, CA 90012

*Please order court transcripts here: www.amydiazfedreporter.com*

AMY C. DIAZ, RPR, CRR OFFICIAL COURT REPORTER

```
 1   APPEARANCES OF COUNSEL:
 2
     For the Plaintiff:
 3
 4              BLAISE AND NITSCHKE PC
                By:  Heather Blaise, Attorney at Law
 5              123 North Wacker Drive, Suite 250
                Chicago, Illinois 60606
 6
 7   For the Defendants:
 8              BROWNE GEORGE ROSS, LLP
                By:  Carl Roth, Attorney at Law
 9              2121 Avenue of the Stars Suite 2800
                Los Angeles, California 90067
10
                JACOBSON AND ASSOCIATES
11              By:  Daniel Jacobson, Attorney at Law
                1352 Irvine Boulevard Suite 205
12              Tustin, California 92780
13
14
15
16
17
18
19
20
21
22
23
24
25
```

1       THE CLERK:  Court is in session.  Calling item
2  number six, CV-17-6108-MWF, Beatbox Music Party Limited vs.
3  Labrador Entertainment, Inc., etcetera.
4       Counsel for the plaintiff please state your
5  appearance and then the defense.
6       MS. BLAISE:  Heather Blaise, B-L-A-I-S-E, on behalf
7  of plaintiff.
8       THE COURT:  Good morning, Ms. Blaise.
9       MR. ROTH: Good morning, Your Honor.  Carl Roth,
10 R-O-T-H, on behalf of Defendant Labrador Entertainment.
11      MR. JACOBSON: I'm Dan Jacobson, and I represent the
12 defendant and cross-claimant Michael Cohen.
13      THE COURT:  Let me hear from plaintiff first.
14      You know, to summarize the tentative, I don't think
15 this is a case where I have to have a stay or dismiss the
16 case pursuant to *Colorado River*, you know, the kind of
17 jurisdictional abstention, but what -- it just seems to me
18 that it would make some sense, and I get requests like this
19 all the time, usually I deny them, but here of to just pause
20 it for a while while we wait and see what happens.
21      You know, I'm -- while, you know, I suggest in the
22 tentative some reasons that ultimately I might want to let
23 the high court proceeding play itself out, that is not what
24 I'm saying right now.  And I certainly -- if Beatbox wanted
25 to be hurt on that later, it just seems right now that it's

1  not going to be that long until the Court of Appeal makes its
2  decision, and that there is going to be something useful for
3  us in figuring out what is happening in the case when that
4  occurs, even though the underlying, you know, deep liability
5  was not appealed, but that is, you know, at this point, we
6  are so far out from that issue with these parties that what
7  the Court of Appeal does decide would still, I think, be
8  useful.
9        But in light of that, let me hear from Beatbox, and
10  then I'll hear from the defendants in favor of a
11  discretionary stay, and if you wish, why you believe it
12  should be *Colorado River*, as well.
13        All right.  Go ahead, Ms. Blaise.
14        MS. BLAISE:  Thank you.
15        Well, first, to let the Court and I think the other
16  sides know, I have just been told that July 3rd is when there
17  will be a ruling on the appeal as to the judgment amount.  I
18  did not have that information prior to our response being
19  due.  I just received that.  And I agree that *Colorado River*
20  wouldn't be appropriate for all the reasons in the tentative
21  order.
22        However, that being said, AMCOS basically has kind
23  of the equivalent of a collective bargaining agreement where
24  it's already attributed the infringement to my client.  So my
25  client has already been found essentially, as far as AMCOS is

1  concerned, contractually liable.  So I believe that triggers
2  indemnity as it relates to both of these defendants.  And I
3  don't think that -- as the full amount of the damages may be
4  at issue for a final determination, but as to the legal
5  issues of the indemnity and who is responsible, I don't think
6  that there is any reason to stay the proceedings.  In fact, I
7  think that it would be appropriate on a summary -- a summary
8  judgment motion, and regardless of what amounts are in
9  dispute.
10           THE COURT:  What about the Court -- what if the
11  Court of Appeals just reduced the amount of the damages, that
12  it was something that was not necessarily di minimus, but
13  small enough that it just entirely changed the -- just the
14  whole complexion of the case?
15           MS. BLAISE: So the judgment now is about 600,000 New
16  Zealand, and I think that the request of the plaintiff in
17  that case is that it be significantly higher.  And the
18  request of the appealing defendant in that case is that it
19  not be that significantly lower.  And my client has already
20  been damaged in the hundreds of thousands in relation to the
21  attorney's fees it's expended and the royalties that AMCOS is
22  withholding from my client because of their indemnity
23  provisions.  So I don't think that there is a risk of a
24  chance that there is -- that it's going to be less than
25  several hundreds of thousands of dollars in dispute.  And I

1    don't think that the ruling is going to change that fact.
2            THE COURT:  All right.  What else?
3            MS. BLAISE:  I think that is it.  I understand the
4    Court's position, but I just wanted to clarify, I guess on
5    the AMCOS issue, that there has already been a finding
6    contractually of my client's liability as to their indemnity
7    with AMCOS.
8            THE COURT:  All right.  And I understand that.
9    Thank you.  All right.
10           Let me hear from -- let me hear from the defendants.
11   You know, one of this is maybe we should just -- I should
12   just deny this request without prejudice, and then now that
13   we know when the Court of Appeal is going to rule, and when
14   it's been suggested by Beatbox that since the liability is
15   not in front of the Court of Appeal, ultimately we are going
16   to have to say, does it make sense to stay this action to let
17   the high court see it through?  You know, that could
18   potentially moot things, resolve things for the reasons I
19   suggest.  But, you know, there isn't an automatic right to an
20   appeal just because another court is considering something.
21   All the time I get asked to stay something because supposedly
22   the Ninth Circuit, or sometimes even other circuits, is going
23   to make a ruling that would affect what I would do or limit
24   the case or make it unlikely that the plaintiff would really
25   want to pursue it, blah, blah, blah, and generally those

1   things are denied.
2           Here, at a minimum, I think, if the focus isn't on
3   the Court of Appeal, but on the high court, then I don't know
4   enough about how long the proceeding would take in the high
5   court to ultimately determine how long that stay would be.
6   We now know how long the stay would be for the Court of
7   Appeal.  It's going to be three months.  So that is, you
8   know, obviously useful language to have.
9           On the other hand, where the Court of Appeal is
10  deciding such a narrow issue and Beatbox has suggested that
11  no matter what the damages are, there would still be
12  something left to resolve, then maybe that is just, you know,
13  three wasted months.  With those thoughts, let me hear from
14  the defendants.
15          MR. ROTH: Thank you very much, and thank you for the
16  tentative.
17          So, Your Honor, the -- and thank you for getting
18  through the procedural web there.  It was quite a chore for
19  me to understand it.
20          With respect to the indemnity claims, which are the
21  piece of the New Zealand action which has not yet been tried,
22  it's gone through litigation, gone through discovery, motion
23  practice, then there is exchange of information, then they
24  try it.  That is all they are waiting for.  The liability as
25  to Mr. Cohen represented by Mr. Jacobson this morning, and

1   the liability as to Beatbox is going to be determined by that
2   action.  It may turn out that certainly Mr. Cohen owes
3   nothing as a result of the indemnity action as to which we
4   don't know exactly when that will -- but it may turn out that
5   he owes nothing.  It may turn out as a result of that action,
6   and actually in the New Zealand court, that Beatbox owes
7   nothing.  That affects the way we litigate the case here.
8           And there is a real practical explanation -- example
9   of that.  Tomorrow I'm supposed to engage in a meet and
10  confer with Mr. Cohen's counsel regarding discovery that he
11  seeks in this case.  The current claim by Mr. Cohen is a
12  $4,800 claim.  That is a contract claim.  We have spent more
13  money responding to his discovery, which seeks things like
14  board minutes and intracorporate communications.  We have
15  spent more money preparing written discovery responses,
16  collecting documents than the entire value of that case
17  already.
18          We asked Mr. Jacobson as a matter of good faith, why
19  don't we wait and see what the Court does with the stay
20  motion before we move forward with that expense.
21  Mr. Jacobson would not do that.  So I've already on behalf of
22  my client spent that time.
23          Obviously one of my arguments, and the context of
24  that meet and confer is with respect to the new
25  proportionality rules in the Federal Rules of Civil

1  Procedure.  And I for example made a request, given the value
2  of this case, why should I pay for the copying and production
3  of the documents?  I would like you to come and take a look
4  at them.  How we deal with that argument, how the magistrate
5  might deal with that argument, depends to a large extent on
6  the value of the case.
7         THE COURT:  Which is something which will be decided
8  by the Court of Appeal.
9         MR. ROTH: Yeah, and it may well -- with respect to
10 Mr. Cohen, it will be decided by two processes.
11        THE COURT:  Right.
12        MR. ROTH:  The infringement claim, and then we have
13 to go through the indemnity claim.  It may be that Mr. Cohen
14 owes nothing.
15        THE COURT:  I don't mean to decide that, but to
16 resolve the thing, I'm just saying clearly, but he has -- to
17 get started on the road obviously it will be useful to know
18 what the amount of damages are as decided by the Court of
19 Appeal.
20        MR. ROTH:  Mr. Cohen has a breach of contract claim
21 that is right now sort of advisory.  It may be, because Mr.
22 Cohen isn't participating in the New Zealand claim, they
23 didn't have any legal fees at issue there.  So that claim may
24 just go away, because there may be no damages element at all.
25        So then we are dealing with frankly a claim that

1   ought to be in small claims court in California state court
2   between two California residents.  Shouldn't be in this
3   court.  I shouldn't be spending 10, 15 hours at $10,000 to do
4   discovery on a $4,800 claim.  So that is with respect to Mr.
5   Cohen.
6        With respect to Labrador or Beatbox, Your Honor, it
7   is remarkable how similar our arguments are to the arguments
8   that Beatbox made in New Zealand.  If you go to Exhibit E --
9   and it may not be in front of Your Honor -- but if you were
10  to look at page 60, our Bates number on the lower, right-hand
11  corner, the arguments that we make regarding the stay of this
12  case are reflected exactly in the arguments that they made to
13  the New Zealand court to force us to litigate the indemnity
14  claim in New Zealand.
15       They say -- this is Mr. Kelly arguing to the New
16  Zealand court, the same Mr. Kelly who I believe submitted an
17  affidavit here, quoting the argument -- "Issues that go to
18  the heart of Beatbox's claim against Labrador will be
19  ventilated in this proceeding whether Labrador is joined or
20  not.  Those issues are both the underlying infringement and
21  the indemnity."  The second part of the case.  "These issues
22  include infringement and damages.  Damages being the
23  indemnity part of the case.  If Labrador is not joined, it
24  and Beatbox will face the economically and practically
25  inefficient prospect of having to relitigate the same issues

Case 2:17-cv-06108-MWF-JPR   Document 60   Filed 05/10/18   Page 11 of 20   Page ID #:527

11

1    in California courts."
2            So they are arguing our convenience in New Zealand
3    to force us to go to New Zealand and spend a lot of money, a
4    lot of money, to participate in that action.  We went through
5    pretrial discovery already on their claim.  We went through
6    motion practice already on their claim.  They want us to do
7    it again.  So they are just playing games with our legal
8    fees, frankly, Your Honor.
9            The argument regarding whether or not the New
10   Zealand court could resolve a claim arising under a
11   California contract, they made that same argument in New
12   Zealand.
13           Here again, quoting from their brief, "Labrador
14   contends that the Spider Cues subpublishing agreement
15   contains an exclusive jurisdiction clause conferring
16   jurisdiction on the California courts to determine any
17   disputes."  The subject clause, clause 20, does not have that
18   effect.  It only makes the agreement subject to California
19   law.  Even if it had been agreed between the parties that the
20   California court should have exclusive jurisdiction, this is
21   a case where there is a strong case and/or exceptional
22   circumstances which justify the New Zealand court accepting
23   jurisdiction.
24           So the argument that they are making here, we tried
25   to make in New Zealand.  They opposed it.  They won.  They

```
 1     now have to deal with those consequences.
 2              Finally, they argue, as to the argument that counsel
 3     raised this morning -- again, this is all the same page, same
 4     document, same brief submitted by Mr. Kelly -- "If Beatbox
 5     faces a liability to the other parties in this proceeding, it
 6     has a strong case to indemnity or contribution respect of
 7     such liability from Labrador."
 8              So if liability is determined in the indemnity part
 9     of the case, they are not in the infringement action, they
10     are in the indemnity part of the case.  If after that
11     process, if -- and just to provide some background here, a
12     lot of the question is not so much whether the track is
13     infringing, it was the way these tracks get --
14              THE COURT:  Since that wasn't even appealed, then
15     presumably that is not --
16              MR. ROTH: Yeah.  And so what happens is these
17     libraries are massive.  There are lots of files of different
18     cues or tunes, and they are distributed among parties.  And
19     there appears to have been, my client, Labrador, took out the
20     infringing track and so it shouldn't have been available.
21     And there is confusion about who failed to -- who provided
22     the wrong electronic file.  That is going to be resolved.
23     That piece is going to be resolved in that second part of the
24     case, the indemnity part of the case, where there is five
25     third parties, a fourth party, my client, and a fifth party,
```

1    Mr. Cohen.  All of those parties are going to be together
2    working through those issues.  That is the argument that
3    Beatbox made in New Zealand as to why we ought to be there,
4    so we can all figure that out efficiently together, figure
5    out who is responsible.
6           It may turn out that Mr. Cohen owes nothing, that we
7    owe nothing, that Beatbox owes nothing.  If that's the case,
8    we will have gone through a process for nothing.  And it's
9    not a cost free process.  It's an expensive process.  That is
10   the way discovery, the way the pretrial process works in
11   Federal Court.  And this process has already cost my client a
12   lot of money, a lot more money than the value of Mr. Cohen's
13   claim.
14          THE COURT:  Well, in some ways you are getting into
15   whether a stay, a discretionary stay, should be extended to
16   what happens in the high court.  So, and look, you are free
17   to ask for that, just the same way you are free to ask for
18   *Colorado River*, but where I -- the immediate question from my
19   point of view, of course, is whether I should delay it the
20   three months to let the New Zealand Court of Appeal issue its
21   ruling, especially now that we know that that is the date.
22          So I just want to point out that this -- from my
23   point of view, this isn't an either/or.  I mean, one -- one
24   way to proceed is simply to just kick the can down the road
25   for three months when we know more facts.  In which case I

1  would want both you and Beatbox and Mr. Cohen to have the
2  right to then -- you know, and hopefully have more certainty
3  from the lawyers in New Zealand as to how lengthy and how
4  expensive the New Zealand high court proceeding would be from
5  that point forward.
6         MR. ROTH: I actually have the same information
7  regarding July 3rd.  The information that I have is that the
8  hearing is set for that date.  Now, maybe the order is
9  decided on the day of the hearing, and maybe my information
10 is wrong, and Ms. Blaise's information is right.
11        THE COURT: Well, I appreciate your sharing that,
12 because obviously that is -- if the ruling is not certain as
13 of a date, then it makes it more difficult for me to just
14 kind of get more of an open-ended stay, which isn't to say
15 that I won't do it.
16        Let me hear from Mr. Jacobson.
17        MR. JACOBSON: Thank you, Your Honor.  Dan Jacobson
18 for Michael Cohen.
19        By the way, before we continue on, I notice we had
20 some telephone problems at the beginning of the hearing.  I
21 highly recommend my 2007 modern technology.  For the record,
22 and for Ms. Blaise, I'm holding up my Captain Kirk flip
23 phone.  Anyways...
24        When we were here last, which was the first time
25 that we were here, the Court suggested that it would hear

1    early motions for summary judgment to be able to take care of
2    things early.
3              The characterization that our cross claim is for
4    $4,800, which was made today, or for 5,000, which was made in
5    the papers, I haven't done any calculations on that.  That is
6    really -- the cross claim is really kind of a defensive
7    offense.
8              Our basic defense is that there was a breach.  There
9    was a breach of contract in the Cohen/Labrador contract, and
10   based on that my client didn't get paid.  So failure of
11   consideration.  And based on our contention, our belief,
12   although we've gotten, as I understand it, two different
13   answers from Beatbox and from Labrador, and we'll have to
14   figure that out, based on the fact that the contract, the
15   Cohen/Labrador contract says that licensing -- licensure of
16   our composition, of Mr. Cohen's composition, can only be had
17   if the ultimate user is told that if it alters -- and I
18   forget the exact language, but alter is one of the words --
19   alters, changes, translates, any of our work, then there has
20   to be a consultation with Mr. Cohen.  And --
21             THE COURT:  Counsel, I really don't want to get into
22   the underlying issues here.  You know, the issue in --
23   assuming that I agree with you and counsel for Beatbox that I
24   am not required to grant a stay because of *Colorado River*,
25   you know, this -- I understand that Mr. Cohen is also opposed

1    to a stay as well as the plaintiff.  So the issue here is how
2    would Mr. Cohen be prejudiced by a stay either to allow the
3    Court of Appeal to rule in New Zealand, or more broadly, to
4    let the high court proceeding run its course?
5         MR. JACOBSON:  I don't -- I can't argue a prejudice.
6    I can just say that we would like to get it over with as soon
7    as possible.  And if we can get the appropriate discovery in
8    a timely fashion, bring a motion for summary judgment if
9    there is no -- if there is a breach of contract by Labrador,
10   then Beatbox has no claim against us, because Beatbox --
11   Beatbox's claim is based on a third-party beneficiary.  And
12   if there is a breach, then that is gone.  And if there is a
13   breach by Labrador as to Mr. Cohen, and then of course that
14   is gone.
15        So we would just like to get it over as soon as
16   possible.  I would like to also mention that there is a
17   mediation calendared for May 1st, and I'm not sure how this
18   would be -- would affect that, but our point -- in fact --
19        THE COURT:  Is that just for this action?  Is that
20   for this action or the entire, let's get the five parties in
21   the room? And is it taking place in New Zealand or here?
22        MR. JACOBSON:  This action in Santa Ana.
23        THE COURT:  I'm sorry.  Ms. Blaise, I couldn't hear
24   you.  I'll allow you to chime in for a moment.  What is --
25        MS. BLAISE:  It is taking place here and related to

| | |
|---|---|
| 1 | the parties in this action. |
| 2 | THE COURT: All right. |
| 3 | MS. BLAISE: From the panel. |
| 4 | THE COURT: All right. Thank you, Mr. Jacobson. |
| 5 | MR. JACOBSON: Thank you Your Honor. |
| 6 | THE COURT: Ms. Blaise, very briefly, I've got a |
| 7 | courtroom full of lawyers for the 11:00 calendar, very |
| 8 | briefly, I'll hear from you, and then finally as the moving |
| 9 | party, I'll hear very briefly again from Beatbox. |
| 10 | So anything else that you -- I'm sorry, I'll hear |
| 11 | from you and then I'll hear from Labrador. Anything else |
| 12 | that you want to tell me in regard to Beatbox? |
| 13 | MS. BLAISE: Yes. The characterization that first of |
| 14 | all the claim between Beatbox and Cohen is only worth $4,800 |
| 15 | or $5,000, that is not correct. We are talking about |
| 16 | hundreds of thousands of dollars because we are cross |
| 17 | indemnifying, we are all seeking to be indemnified by the |
| 18 | other. My client has been damaged significantly by the |
| 19 | AMCOS. That has already happened. There is no chance that |
| 20 | there is not going to be any damages to my client. |
| 21 | THE COURT: If I accept your argument about the |
| 22 | contractual liability arising from the liability which has |
| 23 | been determined in New Zealand, then that would be the case. |
| 24 | Although the precise amount is up to the Court of Appeal, |
| 25 | which is the point. So anyway... |

1    MS. BLAISE: And not just -- not just that there has
2    been a liability established in the Court proceeding, but
3    also that AMCOS, pursuant to its collective bargaining
4    agreement, determined that there was an infringement and has
5    now been garnishing my client's royalties in order to
6    indemnify itself.
7    THE COURT: All right. Anything -- but anything
8    else you want to tell me based on what was stated by
9    Labrador, and then what was just stated by Mr. Cohen?
10   MS. BLAISE: And the only other thing is that I think
11   that if there is going to be a stay, we need to do something
12   with the mediation. And also, it should kick out all of the
13   other dates that we already have set, because we still need
14   to have time to try this case, and --
15   THE COURT: Well, that certainly -- we can be heard
16   about that -- if I grant the stay, then we can have another
17   scheduling conference after the Court of Appeal rules. But I
18   disagree with you that it would be a reason to stop the
19   mediation. It sounds like all the parties have had some
20   basis to get discovery. Unless the argument is that in light
21   of the stay in the next month there would be all this
22   discovery which would make the mediation fruitful, which
23   strikes me as quite a bit of a stretch, then there would be
24   no basis not to stay the case because of the mediation. In
25   fact, the mediation would arguably be a basis in support of

```
 1    the stay.
 2              MS. BLAISE: I don't think that we need a stay,
 3    because I don't think that -- I think that we should keep
 4    moving on with the case, because the legal issues can be
 5    decided without any dollar amount coming out of a New Zealand
 6    court. And I would proceed with the mediation, as well.
 7              THE COURT: All right. Let me -- that does go
 8    directly to whether there is a stay even to July 3rd. So,
 9    Counsel, what -- I'll give you the last word here.
10              MR. ROTH: Yes, Your Honor.
11              And I think the mediation point's a good one with
12    respect to whether or not there is an immediate stay.
13    Because we just can't have an effective mediation with just
14    some of the parties and not knowing what the dollar amount
15    is. We can't -- and for Mr. Cohen, his -- that entire
16    argument he made is all premised upon assuming a finding of
17    liability. So none of that, we won't have any of that
18    information. We can't engage in effective mediation. We
19    don't know how to deal with discovery. And Ms. Blaise's
20    argument is premised upon an out-of-court determination about
21    how the New Zealand case, the indemnity part of the case,
22    will resolve itself. There are five parties to that piece of
23    the case. It's possible Beatbox will come out of that case
24    owing nothing.
25              THE COURT: Thank you, Counsel. The matter is taken
```

```
 1   under submission.
 2             MR. JACOBSON: I am so sorry but because -- I don't
 3   know what, because we have --
 4             THE COURT:  I'm sorry, Ms. Blaise is off.  If you
 5   are telling me something that is ministerial, Ms. Blaise is
 6   no longer on the line.  Then what is it?
 7             MR. JACOBSON: Should -- how soon will we know the
 8   decision?
 9             THE COURT:  Within the next few days.
10             MR. JACOBSON: Thank you very much.
11                  *****     *****     *****
12
13   I certify that the foregoing is a correct transcript from the
14   record of proceedings in the above-titled matter.
15
16
17
18   ---------------------------
19
20   Amy C. Diaz, RPR, CRR              May 7, 2018
21   S/  Amy Diaz
22
23
24
25
```