BLAISE & NITSCHKE, P.C.
HEATHER L. BLAISE, ESQ. (SBN 261619)
123 N. Wacker Drive, Suite 250
Chicago, IL 60606
Telephone: 312-448-6602
Email: hblaise@blaisenitschkelaw.com

Attorneys for Plaintiff,
BEATBOX MUSIC PTY, LTD.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BEATBOX MUSIC PTY, LTD.,<br><br>Plaintiff,<br><br>v.<br><br>LABRADOR ENTERTAINMENT, INC.<br>D/B/A SPIDER CUES MUSIC<br>LIBRARY, a California corporation;<br>NOEL PALMER WEBB, an individual;<br>MICHAEL COHEN, an individual;<br>LABRADOR ENTERTAINMENT, LLC;<br>MCPC HOLDINGS, LLC; WEBB<br>FAMILY TRUST and DOES 1-20,<br>inclusive,<br>                        Defendants. | CASE NO: 2:17-cv-6108 MWF (JPRx)<br>*Assigned to the Hon. Michael W.<br>Fitzgerald*<br><br>**PLAINTIFF'S STATEMENT OF<br>GENUINE DISPUTES OF<br>MATERIAL FACT**<br><br>Trial Date:          June 23, 2020<br>Cross-Claim Filed: November 21, 2017<br>Action Filed:        August 17, 2017 |
| MICHAEL COHEN, an individual;<br><br>Cross-Complainant,<br><br>v.<br><br>LABRADOR ENTERTAINMENT, INC.<br>D/B/A SPIDER CUES MUSIC<br>LIBRARY, a California Corporation<br><br>Cross-Defendant. | |

1  **Organization of Uncontroverted Facts**:

2  For the Court's convenience, the Plaintiff's Responses to Defendant's

3  Uncontroverted Facts are organized under five issues, a through e.

4  **Organization of Conclusions of Law**:

5  The Conclusions of Law are not presented under individual issues, as they tend to be

6  self-organizing.

7

8  **Issue a**: As used in the subject contract "adapt" means to make suitable or fit (as for a

9  particular use, purpose, or situation). Fit; suit. To make suitable (for a new or

10  different use or situation) by means of changes or modifications.

11

| UNCONTROVERTED FACT | EVIDENTIARY SUPPORT | PLAINTIFF'S RESPONSE | PLAINTIFF'S EVIDENTIARY SUPPORT |
|---|---|---|---|
| 1. The 02/14/08 Composer Agreement is governed by California law. | Declaration of Michael Cohen, Exhibit A., § 13.4. | 1. Admit. | |
| 2. "The interpretation of a contract . . . [is a] question[] of law for the court." (Of course this is a legal fact. It was placed here to demonstrate the connections between these uncontroverted facts. Legal facts will be presented here a few times, for that very purpose.) | *Kaufman & Broad Bldg. Co. v. City & Suburban Mortg. Co.*, 10 Cal. App. 3d 206, 215-216 (1970). | 2. Plaintiff objects in that Paragraph 2 is not a fact and further: "If the interpretation of the contract turns upon the credibility of extrinsic evidence, the interpretation of the contract is not a question of law, but one of fact […][c]ustom and usage of words in a certain trade are admissible to explain the meaning of the terms used in a contract. Custom and usage may not be used to vary the terms of the contract, but may be used as an aid in the interpretation of contracts." | *La Count v. Hensel Phelps Constr. Co.*, 79 Cal. App. 3d 754, 770, 145 Cal. Rptr. 244, 253 (1978)(*internal citations omitted*). |

| | | | |
|---|---|---|---|
| 3. Mr. Cohen is a composer, who composed a musical piece entitled "eminem-esque." | "I am a composer. . . I composed a musical piece entitled "eminem-esque."" Declaration of Michael Cohen # 3, 4 | 3. Mr. Cohen is identified as the "Composer" of the Musical Composition identified as "eminem-esque" in the Composer Agreement. However, Plaintiff contends that the uncontroverted fact is that Marshal Mathers is the true composer of "eminem-esque" because "eminem-esque" is substantially similar to "Lose Yourself" and was found to be infringing of the copyright embodied in "Lose Yourself." | *See* Dr. Alexander Stewart's Expert Report, attached to hereto and incorporated herein as Exhibit A; *See* Transcript of Dr. Alexander Stewart, attached hereto and incorporated herein as Exhibit B; *See* [opinion of new Zealand court, attached hereto and incorporated herein as Exhibit C; *See* Transcript of Michael Cohen, attached hereto and incorporated herein as Exhibit D. |
| 4. Section 1.1(e) of the 02/14/08 Composer Agreement says, "Composer [Mr. Cohen] hereby grants to Owner [Labrador] ¶¶¶¶¶ [t]he right to alter [and] adapt the Composition[] [eminem-esque] in consultation with the Composer." | Declaration of Michael Cohen, Exhibit A., § 1.1(e). | 4. Plaintiff disputes that the language identified in the Paragraph 4 contains the complete true and correct language of the referenced provision. | *See* 02/14/2008 Composer Agreement attached hereto and incorporated herein as Exhibit E. |
| 5. As used in the 2008 Composer Agreement at § 1.1(e),"adapt" is a transitive verb, because a transitive verb is a "verb form [] expressing an action that carries over from . . . subject to object." | A. Webster's Third New international= Dictionary, Unabridged, 2002 edition, p. 2428. B. "The ordinary definition of 'transitive verb' is, a 'verb form [] expressing an action that carries over from . . . subject to object.'. . . Webster's Third New international Dictionary, Unabridged, 2002 edition, p. 2428." Request for Judicial Notice # 3. | 5. Plaintiff denies that Paragraph 5 is a fact or that Defendant Cohen has any admissible evidence to support the same. In responding further, Plaintiff contends that the word "adapt" has technical meaning and the Copyright Act of 1976 and the cases interpreting the Act, have identified that "adapt" has a specialized meaning under Copyright Law. | *See* Expert Report of Margaret Kramer attached hereto and incorporated herein as Exhibit F; *See* Transcript of Margaret Kramer attached hereto and incorporated herein as Exhibit G;<br><br>A "derivative work" is defined in the Copyright Act as a work "based upon one or more preexisting works" that "recast[s], transform[s], or **adapt[s]**" a |

| | | | |
|---|---|---|---|
| | | | preexisting work and "consist[s] of editorial revisions, annotations, elaborations, or other modifications which, as a whole, represent an original work of authorship." 17 U.S.C. § 101. |
| 6. California law states, "[W]ords in a contract are to be understood in their usual and ordinary sense unless used by the parties in some technical sense." | A. *County of Orange v. Santa Margarita Water Dist.* 44 Cal.App. 4th 189, 192 (1996). | 6. Plaintiff denies that Paragraph 6 is a "fact." In responding further, the Composer Agreement contains words which have technical meanings in the production music licensing industry. | The words of a contract are to be understood in their ordinary and popular sense, rather than according to their strict legal meaning; unless used by the parties in a technical sense, or unless a special meaning is given to them by usage, in which case the latter must be followed. Cal. Civ. Code § 1644 |
| 7. In the music industry the transitive verb "adapt" has no technical meaning. | A. "The words 'alter' and 'adapt' have no specialized meaning in the music industry; and, those words have no specialized meaning as those words are used in the 2008 Composer Agreement in general, and as those words are used specifically in section 1.1(e) of the 2008 Composer Agreement." Declaration of Musicologist Dr. Gerald Eskelin # 11, inclusive of Exhibit "A"; B. As to the term "adapt," at Ms. Saadi Kramer's deposition, she was first asked what the word "alter" meant in the production music business. Declaration of Dan Jacobson #23, | 7. Plaintiff disputes the fact identified in Paragraph 7. Further, the Declaration of Gerald Eskelin should be disregarded and stricken as laid out in Plaintiff's Motion to Strike Cohen's Expert Report of Eskelin; Exclude Eskelin As Expert Witness; To Strike Motion for Partial Summary Judgment; and For Other Relief (Dkt. 123). | *See* Exhibit F and Exhibit G. A "derivative work" is defined in the Copyright Act as a work "based upon one or more preexisting works" that "recast[s], transform[s], or adapt[s]" a preexisting work and "consist[s] of editorial revisions, annotations, elaborations, or other modifications which, as a whole, represent an original work of authorship." 17 U.S.C. § 101. |

| | | | |
|---|---|---|---|
| 1 | | Exhibit "K", Deposition of Beatbox Production Music Expert Ms. Saadi Kramer 90:3-5. | |
| 2 | | | |
| 3 | | | |
| 4 | | B.1. That question was met with an "asked and answered" objection, which was followed by Beatbox attorney's instruction, "To the extent that you can answer the differences between the generic term 'alter' and 'alter' in this Defendant/Crossclaimant Michael Cohen's Statement of Uncontroverted Fact and Conclusions of Law context." Declaration of Dan Jacobson, Exhibit "L", Deposition of Beatbox Production Music Expert Ms. Saadi Kramer 90:7-9. | |
| 5 | | | |
| 6 | | | |
| 7 | | | |
| 8 | | | |
| 9 | | | |
| 10 | | | |
| 11 | | | |
| 12 | | | |
| 13 | | | |
| 14 | | | |
| 15 | | | |
| 16 | | B.2. After a colloquy, Ms. Saadi Kramer answered that "alter" means, "To modify to one extent or another extent." Declaration of Dan Jacobson, Exhibit "M", Deposition of Beatbox Production Music Expert Ms. Saadi Kramer 90:20. | |
| 17 | | | |
| 18 | | | |
| 19 | | | |
| 20 | | | |
| 21 | | | |
| 22 | | B.3. Then, Ms. Saadi Kramer's definition of "adapt" came out. Mr. Cohen's attorney asked, "And what does – in your business [the production music business] what does the word 'adapt' mean?" Ms. Saadi Kramer responded, "Again, to modify." Declaration of Dan | |
| 23 | | | |
| 24 | | | |
| 25 | | | |
| 26 | | | |
| 27 | | | |
| 28 | | | |

PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT

| | | | |
|---|---|---|---|
| | Jacobson, Exhibit "N" deposition of Beatbox Production Music Industry Expert Witness Ms. Margaret Saadi Kramer 90:22-23. | | |
| 8. The ordinary definition of the transitive verb adapt is "**1 a :** to make suitable or fit (as for a particular use, purpose, or situation) **:** FIT, SUIT . . . **b :** to make suitable (for a new or different use or situation) by means of changes or modifications." | *Webster's Third New International Dictionary*, 2002 edition, p. 23. Request for Judicial Notice # 1. | 8. Plaintiff denies that Paragraph 8 is a fact or that Defendant Cohen has any admissible evidence to support the same. In responding further, Plaintiff contends that the word "adapt" has technical meaning and the Copyright Act of 1976 and the cases interpreting the Act, have identified that "adapt" has a specialized meaning under Copyright Law. | *See* Exhibit F and Exhibit G. A "derivative work" is defined in the Copyright Act as a work "based upon one or more preexisting works" that "recast[s], transform[s], or **adapt[s]**" a preexisting work and "consist[s] of editorial revisions, annotations, elaborations, or other modifications which, as a whole, represent an original work of authorship." 17 U.S.C. § 101. |

**Conclusion as to Issue a**: There is no technical or specialized definition for the word "adapt" in the music industry. Thus, as used in the 2008 Composer Agreement at § 1.1(e), the meaning of "adapt," is it's ordinary meaning. See *County of Orange v. Santa Margarita Water Dist.* 44 Cal.App. 4th 189, 192 (1996). That meaning is to make suitable or fit (as for a particular use, purpose, or situation). Fit; suit. To make suitable (for a new or different use or situation) by means of changes or modifications *Webster's Third New international Dictionary, Unabridged*, 2002 edition, p. 23. **Plaintiff disputes the Defendant Cohen's conclusion as to "Issue a" because the word "adapt" does have a technical and/or specialized meaning in the production music licensing industry and it has a specialized meaning under U.S.C. § 101.**

**Issue b**: As used in the subject contract "alter" means to become different in some particular characteristic (as measure, dimension, course, arrangement, or inclination) without changing into something else.

| UNCONTRAVERTED FACT | EVIDENTIARY SUPPORT | PLAINTIFF'S RESPONSE | PLAINTIFF'S EVIDENTIARY SUPPORT |
|---|---|---|---|
| 1. Section 1.1(e) of the 02/14/08 Composer Agreement says, "Composer [Mr. Cohen] hereby grants to Owner [Labrador] ¶¶¶¶¶ [t]he right to alter [and] adapt the Composition[] [eminem-esque] in consultation with the Composer." | Declaration of Michael Cohen, Exhibit A., § 1.1(e). | 1.  Plaintiff disputes that the language identified in the Paragraph 1 contains the complete true and correct language of the referenced provision. | *See* Exhibit E. |
| 2. As used in the 2008 Composer Agreement, at § 1.1(e), "alter" is a transitive verb, because a transitive verb is a "verb form [] expressing an action that carries over from . . . subject to object." | *Webster's Third New international Dictionary, Unabridged*, 2002 edition, p. 2428. Request for Judicial Notice # 3. | 2. Plaintiff denies that Paragraph 2 is a fact or that Defendant Cohen has any admissible evidence to support the same. In responding further, Plaintiff contends that the word "alter "has technical meaning and the Copyright Act of 1976 and the cases interpreting the Act, have identified that "alter" has a specialized meaning under Copyright Law. | *See* Exhibit F and Exhibit G.<br><br>The Copyright Office guidance provided in Circular 56 reflects that an analysis of "alteration" applies specifically to derivative sound recordings.<br><br>In relevant part, Circular 56 explains the following about derivative sound recordings: A derivative sound recording is an audio recording that incorporates preexisting sounds. The preexisting recorded sounds must be rearranged, remixed, or otherwise **altered** in sequence or character, or the recording must contain additional |

| | | | |
|---|---|---|---|
| | | | new sounds. The new or revised sounds must contain at least a minimum amount of original sound recording authorship.<br><br>Mechanical changes or processes, such as a change in format, declicking, or noise reduction, generally do not contain enough original authorship to warrant registration as a derivative work. United States Copyright Office's Circular No. 56, Copyright Registration for Sound Recordings, Revised Sept. 2017 ("Circular 56"), available at <https://www.copyright.gov/circs/circ56.pdf>.<br><br>*Abs Entm't v. CBS Corp.*, 908 F.3d 405, 414-19 (9th Cir. 2018) |
| 3. California law states, "[W]ords in a contract are to be understood in their usual and ordinary sense unless used by the parties in some technical sense." | *County of Orange v. Santa Margarita Water Dist.* 44 Cal. App. 4th 189, 192 (1996). | 3. Plaintiff denies that Paragraph 3 is a "fact." In responding further, the Composer Agreement contains words which have technical meanings in the production music licensing industry. | Cal. Civ. Code § 1644 |
| 4. In the music industry the transitive verb "alter" has no technical meaning. | A. "The words 'alter' and 'adapt' have no specialized meaning in the music industry; and, those words have no specialized meaning as those words are used in the 2008 Composer Agreement | 4. Plaintiff denies that Paragraph 2 is a fact or that Defendant Cohen has any admissible evidence to support the same. In responding further, Plaintiff contends that the word "alter "has technical meaning | Plaintiff re-states and incorporates by references its response to Paragraph 2, above as if fully stated herein. |

| | | | |
|---|---|---|---|
| 1 | | in general, and as those words are used specifically in section 1.1(e) of the 2008 Composer Agreement." Declaration of Musicologist Dr. Gerald Eskelin # 11, inclusive of Exhibit "A"; | and the Copyright Act of 1976 and the cases interpreting the Act, have identified that "alter" has a specialized meaning under Copyright Law. |
| 2 | | | |
| 3 | | | |
| 4 | | | |
| 5 | | | |
| 6 | | B. Ms. Saadi Kramer's report uses the word "alter"seven time, and except for the one time that that word is simply used as part of a heading, every time that word alter is used, it is accompanied by a form of the word "fundamental." Declaration of Dan Jacobson #12 Exhibit F. | |
| 7 | | | |
| 8 | | | |
| 9 | | | |
| 10 | | | |
| 11 | | | |
| 12 | | | |
| 13 | | | |
| 14 | | C. The exemplar production music license in Beatbox Production Music Expert Ms. Saadi Kramer's report says, "This license does not include the right to alter the fundamental character of the music." Declaration of Dan Jacobson # 13, Exhibit F, pp. 3 &4, §I(b). | |
| 15 | | | |
| 16 | | | |
| 17 | | | |
| 18 | | | |
| 19 | | | |
| 20 | | | |
| 21 | | Defendant/Crossclaimant Michael Cohen's Statement of Uncontroverted Fact and Conclusions of Law | |
| 22 | | | |
| 23 | | | |
| 24 | | D. The expert report of Beatbox Production Music Expert Ms. Saadi Kramer's says "Still an alteration of the fundamental nature of the work is a far higher threshold." Declaration of Dan | |
| 25 | | | |
| 26 | | | |
| 27 | | | |
| 28 | | | |

| | | | |
|---|---|---|---|
| 1 | Jacobson # 14, Exhibit F, pp. 3 & 4 § II.(2). | | |
| 2 | | | |
| 3 | E. The expert report of Beatbox Production Music | | |
| 4 | Expert Ms. Saadi Kramer's says, "[A] | | |
| 5 | composition has never been deemed as | | |
| 6 | fundamentally altered if . . ." Declaration of | | |
| 7 | Dan Jacobson # 15, Exhibit F, pp. 3 &4 § | | |
| 8 | II.(2). | | |
| 9 | F. The expert report of Beatbox | | |
| 10 | Production Music Expert Ms. Saadi | | |
| 11 | Kramer's says, "In other words, in the | | |
| 12 | business of production music, there is quite a | | |
| 13 | narrow definition of what constitutes a | | |
| 14 | fundamental alteration of the | | |
| 15 | nature of a work." Declaration of Dan | | |
| 16 | Jacobson #16, Exhibit F, pp. 3 &4 § II.(2). | | |
| 17 | G. The expert report of Beatbox | | |
| 18 | Production Music Expert Ms. Saadi | | |
| 19 | Kramer's says, "I would conclude that a | | |
| 20 | work can be deemed 'fundamentally | | |
| 21 | altered' if it is used to create a brand-new | | |
| 22 | work." Declaration of Dan Jacobson, | | |
| 23 | Exhibit F # 17, pp. 3 &4 § II.(2). | | |
| 24 | Defendant/Crossclaimant Michael | | |
| 25 | Cohen's Statement of Uncontroverted Fact | | |
| 26 | and Conclusions of Law | | |
| 27 | H. The expert report of Beatbox | | |
| 28 | Production Music Expert Ms. Saadi | | |

PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT

| | | | |
|---|---|---|---|
| 1 | | Kramer's says, "[E]verything in the Defendants position that there was a fundamental alteration of the original work is baseless." Declaration of Dan Jacobson #18, Exhibit F, pp. 3 &4 § II.(2). I. The deposition of Beatbox Production Music Expert Ms. Saadi Kramer says, "[Y]ou can only modify [a cue] up to a point where it does not alter the fundamental nature of the work itself." Declaration of Dan Jacobson # 19, Exhibit "G", Deposition of Beatbox Production Music Expert Ms. Saadi Kramer p. 23:15-18. J. The deposition of Beatbox Production Music Expert Ms. Saadi Kramer's says, "[C]ues are regularly truncated . . . as long as the sonic signature is intact and the melody has not been fundamentally altered. Declaration of Dan Jacobson # 20, Exhibit "H", Deposition of Beatbox Production Music Expert Ms. Saadi Kramer p. 26:20-24. K. The deposition of Beatbox Production Music Expert Ms. Saadi Kramer's says, "[T]he threshold in production music, where you are fundamentally altering the nature of | | |
| 2 | | | | |
| 3 | | | | |
| 4 | | | | |
| 5 | | | | |
| 6 | | | | |
| 7 | | | | |
| 8 | | | | |
| 9 | | | | |
| 10 | | | | |
| 11 | | | | |
| 12 | | | | |
| 13 | | | | |
| 14 | | | | |
| 15 | | | | |
| 16 | | | | |
| 17 | | | | |
| 18 | | | | |
| 19 | | | | |
| 20 | | | | |
| 21 | | | | |
| 22 | | | | |
| 23 | | | | |
| 24 | | | | |
| 25 | | | | |
| 26 | | | | |
| 27 | | | | |
| 28 | | | | |

| | | | |
|---|---|---|---|
| 1 | | that cue, is 1 Italics added. | |
| 2 | | Defendant/Crossclaimant Michael | |
| 3 | | Cohen's Statement of Uncontroverted Fact | |
| 4 | | and Conclusions of Law much, much, | |
| 5 | | much higher." Declaration of Dan | |
| 6 | | Jacobson # 21, Exhibit "I", | |
| 7 | | deposition of Beatbox Production Music | |
| 8 | | Expert Ms. Saadi Kramer p. 30:18-20. | |
| 9 | | L. When Beatbox Production Music | |
| 10 | | Expert Ms. Saadi Kramer was asked at | |
| 11 | | her deposition about her report's universal | |
| 12 | | joinder of the modifier | |
| 13 | | '*fundamentally*' when she used the word | |
| 14 | | "alter," she replied, 'I use "fundamentally" | |
| 15 | | because . . . [a] *fundamental* | |
| 16 | | *alteration1* of a work is a relatively short | |
| 17 | | list in the world of production music.'" | |
| 18 | | Declaration of Dan Jacobson # 22, | |
| 19 | | Exhibit "J", deposition of Beatbox | |
| 20 | | Production Music Expert Ms. Saadi | |
| 21 | | Kramer p. 31:11-15. M. When pinned | |
| 22 | | down with the question of what | |
| 23 | | "alter" means, standing alone, as it | |
| 24 | | was in the 2008 Composers | |
| 25 | | Agreement at § 1.1(e), Ms. Saadi | |
| 26 | | Kramer said, 'To modify to one extent | |
| 27 | | or another.' Declaration of Dan | |
| 28 | | Jacobson # 25, Exhibit "M", | |

PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT

| | | | |
|---|---|---|---|
| | deposition of Beatbox Production Music Expert Ms. Saadi Kramer p. 90:20.<br>N. Beatbox Production Music Expert Ms. Saadi Kramer testified at her deposition, that in the music industry "alter" means, "a modification of any sort that does not change the nature of the work." Declaration of Dan Jacobson # 26, Exhibit "O", Deposition of Beatbox Production Music Expert Ms. Saadi Kramer 47:6-8. | | |
| 5. The ordinary definition of the transitive verb alter is "**1** : to cause to become different is some particular characteristic (as measure, dimension, course, arrangement, or inclination) without changing into something else." | *Webster's Third New International Dictionary, Unabridged*, p. 63. Request for Judicial Notice # 2. | 5. Plaintiff denies that Paragraph 5 is a fact or that Defendant Cohen has any admissible evidence to support the same. In responding further, Plaintiff contends that the word "alter" has technical meaning and the Copyright Act of 1976 and the cases interpreting the Act, have identified that "alter" has a specialized meaning under Copyright Law. | Plaintiff re-states and incorporates by references its response to Paragraph 2, above as if fully stated herein. |

**Conclusion as to Issue b**: There is no technical or specialized definition for the word "alter" in the music industry. Thus, as used in the 2008 Composer Agreement at § 1.1(e), the meaning of "alter," is it's ordinary meaning. See *County of Orange v. Santa Margarita Water Dist.* 44 Cal.App. 4th 189, 192 (1996). That meaning is "to cause to become different is some particular characteristic (as measure, dimension,

1  course, arrangement, or inclination) without changing into something else."

2  *Webster's Third New international Dictionary, Unabridged*, 2002 edition, p. 63.

3  **Plaintiff disputes the Defendant Cohen's conclusion as to "Issue b" because the**

4  **word "alter" does have a technical and/or specialized meaning in the production**

5  **music licensing industry and it has a specialized meaning under U.S. Copyright**

6  **Law and the cases so interpreting the same.**

7

8  **Issue c:** Labrador did not possess the right to adapt or alter eminem-esque *without*

9  *consultation* with Mr. Cohen.

| UNCONTROVERTED FACT | EVIDENTIARY SUPPORT | PLAINTIFF'S RESPONSE | PLAINTIFF'S EVIDENTIARY SUPPORT |
|---|---|---|---|
| 1.The following law applies to the transitive verbs "adapt and "alter," as those verbs are used in the 2008 Composer Agreement between Mr. Cohen and Labrador. "[W]ords in a contract are to be understood in their usual and ordinary sense unless used by the parties in some technical sense." | *County of Orange v. Santa Margarita Water Dist.* 44 Cal. App. 4th 189, 192 (1996); | 1. Plaintiff objects in that Paragraph 1 is not a fact and further: "If the interpretation of the contract turns upon the credibility of extrinsic evidence, the interpretation of the contract is not a question of law, but one of fact […][c]ustom and usage of words in a certain trade are admissible to explain the meaning of the terms used in a contract. Custom and usage may not be used to vary the terms of the contract, but may be used as an aid in the interpretation of contracts." | *La Count v. Hensel Phelps Constr. Co.*, 79 Cal. App. 3d 754, 770, 145 Cal. Rptr. 244, 253 (1978)*(internal citations omitted).* |
| 2. Section 1.1(e) of the 02/14/08 Composer Agreement says, "Composer [Mr. Cohen] hereby grants to Owner [Labrador] ¶¶¶¶¶ [t]he right to alter [and] adapt the Composition[] [eminem-esque] in consultation with the Composer." | Declaration of Michael Cohen, Exhibit A., § 1.1(e). | 2.  Plaintiff disputes that the language identified in the Paragraph 1 contains the complete true and correct language of the referenced provision. | *See* Exhibit E. |

| | | | |
|---|---|---|---|
| 3. As used in the 2008 Composer Agreement, at § 1.1(e), both "adapt" and "alter" are transitive verbs, because a transitive verb is a "verb form [] expressing an action that carries over from . . . subject to object." | *Webster's Third New international Dictionary, Unabridged*, 2002 edition, p. 2428. Request for Judicial Notice # 3. | 3. Plaintiff objects in that Paragraph 3 is not a fact and further: "If the interpretation of the contract turns upon the credibility of extrinsic evidence, the interpretation of the contract is not a question of law, but one of fact […][c]ustom and usage of words in a certain trade are admissible to explain the meaning of the terms used in a contract. Custom and usage may not be used to vary the terms of the contract, but may be used as an aid in the interpretation of contracts." | *La Count v. Hensel Phelps Constr. Co.*, 79 Cal. App. 3d 754, 770, 145 Cal. Rptr. 244, 253 (1978)*(internal citations omitted).* |
| 4. In the music industry the transitive verbs "adapt" and "alter" have no technical meaning. | A. "The words 'alter' and 'adapt' have no specialized meaning in the music industry; and, those words have no specialized meaning as those words are used in the 2008 Composer Agreement in general, and as those words are used specifically in section 1.1(e) of the 2008 Composer Agreement." Declaration of Musicologist Dr. Gerald Eskelin # 11, inclusive of Exhibit "A"; B. Ms. Saadi Kramer's report uses the word "alter" seven time, and except for the one time that that word is simply used as part of a heading, every time that word alter is used, it is | 4. Plaintiff disputes that the words "adapt" and "alter" have no technical meaning in the production music licensing industry. Further, the Declaration of Gerald Eskelin should be disregarded and stricken as laid out in Plaintiff's Motion to Strike Cohen's Expert Report of Eskelin; Exclude Eskelin As Expert Witness; To Strike Motion for Partial Summary Judgment; and For Other Relief (Dkt. 123). | *See* Exhibit F and Exhibit G. A "derivative work" is defined in the Copyright Act as a work "based upon one or more preexisting works" that "recast[s], transform[s], or adapt[s]" a preexisting work and "consist[s] of editorial revisions, annotations, elaborations, or other modifications which, as a whole, represent an original work of authorship." 17 U.S.C. § 101. United States Copyright Office's Circular No. 56, Copyright Registration for Sound Recordings, Revised Sept. 2017 ("Circular 56"), available at |

| | | | |
|---|---|---|---|
| 1 | | accompanied by a form of the word fundamental. Declaration of Dan Jacobson # 12, Exhibit F. C. The exemplar production music license in Beatbox Production Music Expert Ms. Saadi Kramer's report says, "This license does not include the right to alter the fundamental character of the music." Declaration of Dan Jacobson # 13, Exhibit F, pp. 3 &4, §I(b). D. The expert report of Beatbox Production Music Expert Ms. Saadi Kramer's says "Still an alteration of the fundamental nature of the Defendant/Crossclaimant Michael Cohen's Statement of Uncontroverted Fact and Conclusions of Law work is a far higher threshold." Declaration of Dan Jacobson, Exhibit F, pp. 3 & 4 § II.(2). E. The expert report of Beatbox Production Music Expert Ms. Saadi Kramer's says, "[A] composition has never been deemed as fundamentally altered if . . ." Declaration of Dan Jacobson, Exhibit F, pp. 3 &4 § II.(2). F. The expert report of Beatbox Production Music Expert Ms. Saadi Kramer's says, "In other words, in the business of | | <https://www.copyright.gov/circs/circ56.pdf>. *Abs Entm't v. CBS Corp.*, 908 F.3d 405, 414-19 (9th Cir. 2018), and the cases cited therein. |

| | | | |
|---|---|---|---|
| 1 | | production music, there is quite a narrow definition of what constitutes a fundamental alteration of the nature of a work." Declaration of Dan= Jacobson, Exhibit F, pp. 3 &4 § II.(2). | |
| | | G. The expert report of Beatbox Production Music Expert Ms. Saadi Kramer's says, "I would conclude that a work can be deemed 'fundamentally altered' if it is used to create a brand-new work." Declaration of Dan Jacobson, Exhibit F, pp. 3 &4 § II.(2). | |
| | | H. The expert report of Beatbox Production Music Expert Ms. Saadi Kramer's says, "[E]verything in the Defendants position that there was a fundamental alteration of the original work is baseless." Declaration of Dan Jacobson, Exhibit F, pp. 3 &4 § II.(2). | |
| | | I. The deposition of Beatbox Production Music Expert Ms. Saadi Kramer says, "[Y]ou can only modify [a cue] up to a point where it does not alter the fundamental nature of the work itself." Declaration of Dan Jacobson, Exhibit "G", Deposition of Beatbox Production Music Expert Ms. Saadi Kramer p. 23:15-18. | |

| | | | | |
|---|---|---|---|---|
| 1 | | J. The deposition of Beatbox Production Music Expert Ms. Saadi Kramer's says, "[C]ues are regularly truncated . . . as long as the sonic signature is intact and the melody has not been fundamentally altered." Declaration of Dan Jacobson, Exhibit "H", Deposition of Beatbox Production Music Expert Ms. Saadi Kramer p. 26:20-24. | | |
| 2 | | | | |
| 3 | | | | |
| 4 | | | | |
| 5 | | | | |
| 6 | | | | |
| 7 | | | | |
| 8 | | | | |
| 9 | | | | |
| 10 | | K. The deposition of Beatbox Production Music Expert Ms. Saadi Kramer's says, "[T]he threshold in production music, where you are fundamentally altering the nature of that cue, is much, much, much higher." Declaration of Dan Jacobson, Exhibit "I", deposition of Beatbox Production Music Expert Ms. Saadi Kramer p. 30:18-20. | | |
| 11 | | | | |
| 12 | | | | |
| 13 | | | | |
| 14 | | | | |
| 15 | | | | |
| 16 | | | | |
| 17 | | | | |
| 18 | | L. When Beatbox Production Music Expert Ms. Saadi Kramer was asked at her deposition about her report's universal joinder of the 2 Italics added. modifier "*fundamentally*" when she used the word "alter," she replied, "I use 'fundamentally' because . . . [a] *fundamental alteration2* of a work is a relatively short list in the world of production music." Declaration of Dan | | |
| 19 | | | | |
| 20 | | | | |
| 21 | | | | |
| 22 | | | | |
| 23 | | | | |
| 24 | | | | |
| 25 | | | | |
| 26 | | | | |
| 27 | | | | |
| 28 | | | | |

- 18 -

| | | | |
|---|---|---|---|
| 1 | | Jacobson, Exhibit "J", deposition of Beatbox Production Music Expert Ms. Saadi Kramer p. 31:11-15. | |
| 2 | | | |
| 3 | | | |
| 4 | | M. As to the term "adapt," at Ms. Saadi Kramer deposition, she was first asked what the word "alter" meant in the production music business. Declaration oF Dan Jacobson, Exhibit "K", Deposition of Beatbox Production Music Expert Ms. Saadi Kramer 90:3-5. | |
| 5 | | | |
| 6 | | | |
| 7 | | | |
| 8 | | | |
| 9 | | | |
| 10 | | | |
| 11 | | N. That question was met with an "asked and answered" objection, which was followed by Beatbox attorney's instruction, "To the extent that you can answer the differences between the generic term 'alter' and 'alter' in this context." Declaration of Dan Jacobson, Exhibit "L", Deposition of Beatbox Production Music Expert Ms. Saadi Kramer 90:7-9. Defendant/Crossclaimant Michael Cohen's Statement of Uncontroverted Fact and Conclusions of Law | |
| 12 | | | |
| 13 | | | |
| 14 | | | |
| 15 | | | |
| 16 | | | |
| 17 | | | |
| 18 | | | |
| 19 | | | |
| 20 | | | |
| 21 | | | |
| 22 | | | |
| 23 | | O. After a colloquy, Ms. Saadi Kramer answered, "To modify to one extent or another extent." Declaration of Dan Jacobson, Exhibit "M" Deposition of Beatbox Production Music Expert Ms. Saadi Kramer 90:20. P. "And what does – | |
| 24 | | | |
| 25 | | | |
| 26 | | | |
| 27 | | | |
| 28 | | | |

- 19 -
PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT

| | | | |
|---|---|---|---|
| 1 | | in your business [the production music business], what does the word 'adapt' mean?" Ms. Saadi Kramer responded, "Again, to modify". Declaration of Dan Jacobson, Exhibit. "N", Deposition of Beatbox Production Music Expert Ms. Saadi Kramer 90:22-23, | |
| 2 | | | |
| 3 | | | |
| 4 | | | |
| 5 | | | |
| 6 | | | |
| 7 | | | |
| 8 | | Q. The ordinary definition of the transitive verb "adapt" is, "**1 a :** to make suitable or fit (as for a particular use, purpose, or situation) : FIT, SUIT. **b :** to make suitable (for a new or different use or situation) by means of changes or modifications." *Webster's Third New International Dictionary, Unabridged* at p. 23 Request for Judicial Notice # 1. | |
| 9 | | | |
| 10 | | | |
| 11 | | | |
| 12 | | | |
| 13 | | | |
| 14 | | | |
| 15 | | | |
| 16 | | | |
| 17 | | | |
| 18 | | R. The ordinary definition of the transitive verb "alter" is, "1 : to cause to become different is some particular characteristic (as measure, dimension, course, arrangement, or inclination) without changing into something else." *Webster's Third New* 3 Bolding added. *International Dictionary, Unabridged* at p.63. Request for Judicial Notice # 2. | |
| 19 | | | |
| 20 | | | |
| 21 | | | |
| 22 | | | |
| 23 | | | |
| 24 | | | |
| 25 | | | |
| 26 | | | |
| 27 | | | |
| 28 | | S. In the music industry "alter" means, "a | |

| | modification of any sort that does not change the nature of the work." Declaration of Dan Jacobson, Exhibit "O", Deposition of Beatbox Production Music Expert Ms. Saadi Kramer 47:6-8. | | |
|---|---|---|---|

**Conclusion as to Issue c** : As the uncontroverted facts in issues "a" and "b" demonstrate, there are no technical or specialized meanings for the words "adapt" and "alter" in the music industry. Thus, as used in the 2008 Composer Agreement at § 1.1(e), those words have their ordinary, Webster's meanings. Those meanings make it apparent that Labrador was never assigned the right to adapt or alter the musical piece called "eminem-esque" *without consultation* with Mr. Cohen.

**Plaintiff disputes the Defendant Cohen's conclusion as to "Issue c" because both the words "adapt" and "alter" have a technical and/or specialized meaning in the production music licensing industry and it has a specialized meaning under U.S. Copyright Law and the cases so interpreting the same. Further, the use of "eminem-esque" by the New Zealand National Party was not an "alteration" or an "adaptation." Moreover and most importantly, Defendant Cohen breached the representations and warranties of the 02/14/2008 Composer Agreement when he conveyed "eminem-esque" as his original work, when "eminem-esque" infringes Marshall Mather's "Lose Yourself". Thus, Defendant Cohen breached the Composer Agreement at its inception and cannot, as a matter of law, assert allegations claiming a failure to consult to relieve him of his liability for his breach of contract. *Silver v. Bank of America* (1941) 47 Cal.App.2d 639, 645 [118 P.2d 891]**

**Issue d**: Beatbox and its assignees did not have the right to adapt or alter eminemesque *without consultation* with Mr. Cohen.

| UNCONTROVERTED MATERIAL FACT | EVIDENTIARY SUPPORT | PLAINTIFF'S RESPONSE | PLAINTIFF'S EVIDENTIARY SUPPORT |
|---|---|---|---|
| 1. An "assignee . . . acquire[s] no greater rights than its assignor." | *Royal Bank Exp. Fin. Co. v. Bestways Distrib. Co.* 229 Cal.App.3d 764, 765-766 (1991) | 1. Plaintiff objects in that Paragraph 1 is not a fact. | |
| 2. Mr. Cohen assigned to Labrador, "[t]he right to alter [and] adapt the Composition[] [eminemesque] **in consultation with the Composer** [Mr. Cohen]."3 | Declaration of Michael Cohen # 7, and Exhibit "A", § 1.1(e). | 2. Plaintiff disputes that the language identified in the Paragraph 4 contains the complete true and correct language of the referenced provision. | *See* Exhibit D. |
| 3. Labrador assigned to Beatbox certain rights to its music catalogue entitled "Spider Cues," which included eminem-esque. The assignment agreement did not assign the right to adapt or alter eminem-esque without consulting Mr. Cohen. | Declaration of Dan Jacobson, # 8, and Exhibit "B" (04/01/09 Agreement between Labrador and Beatbox) | 3. Plaintiff disputes that the language identified in the Paragraph 3 contains the complete true and correct language of the referenced provision. Plaintiff further objects that Dan Jacobson's Declaration is sufficient to lay any foundation for the Beatbox Agreement. Plaintiff further disputes that it was required to consult Mr. Cohen in any capacity under the custom and practice of the production music licensing industry. Plaintiff further disputes that the subject use was an "alteration" and/or "adaptation" as those terms are understood in the production music licensing industry and/or under U.S. Copyright Law. | See Beatbox Agreement attached hereto and incorporated herein as Exhibit H. *See* Exhibit F and Exhibit G. A "derivative work" is defined in the Copyright Act as a work "based upon one or more preexisting works" that "recast[s], transform[s], or adapt[s]" a preexisting work and "consist[s] of editorial revisions, annotations, elaborations, or other modifications which, as a whole, represent an original work of authorship." 17 U.S.C. § 101. United States Copyright Office's Circular No. 56, Copyright |

| | | Plaintiff further disputes that it or Labrador had any contractual obligation to Defendant Cohen after Cohen breached his representations and warranties that "eminem-esque" was his original work and did not infringe on the rights of any third parties. | Registration for Sound Recordings, Revised Sept. 2017 ("Circular 56"), available at <https://www.copyright.gov/circs/circ56.pdf>.<br><br>*Abs Entm't v. CBS Corp.*, 908 F.3d 405, 414-19 (9th Cir. 2018), and the cases cited therein. |
|---|---|---|---|

**Conclusion as to Issue d** : Nowhere in the Labrador/Beatbox Assignment Agreement is any mention of assignment of the right to adapt or alter eminem-esque without consulting Mr. Cohen. In fact, such would be legally impossible because an "assignee . . . acquire[s] no greater rights than its assignor," *Royal Bank Exp. Fin. Co. v. Bestways Distrib. Co.* 229 Cal.App.3d 764, 765-766 (1991), and Labrador only had the right to adapt and alter eminem-esque in consultation with Mr. Cohen.

**Plaintiff disputes the Defendant Cohen's conclusion as to "Issue d" because both the words "adapt" and "alter" have a technical and/or specialized meaning in the production music licensing industry and it has a specialized meaning under U.S. Copyright Law and the cases so interpreting the same. Further, the use of "eminem-esque" by the New Zealand National Party was not an "alteration" or an "adaptation". Moreover and most importantly, Defendant Cohen breached the representations and warranties of the 02/14/2008 Composer Agreement when he conveyed "eminem-esque" as his original work, when "eminem-esque" infringes Marshall Mather's "Lose Yourself". Thus, Defendant Cohen breached the Composer Agreement at its inception and cannot, as a matter of law, assert allegations claiming a failure to consult to relieve him of his liability for his breach of contract. *Silver v. Bank of America* (1941) 47 Cal.App.2d 639, 645 [118 P.2d 891].**

**Issue e**: No one consulted Mr. Cohen re altering or adapting the composition, eminemesque.

| UNCONTROVERTED MATERIAL FACT | EVIDENTIARY SUPPORT | PLAINTIFF'S RESPONSE | PLAINTIFF'S EVIDENTIARY SUPPORT |
|---|---|---|---|
| No one consulted Mr. Cohen re altering or adapting the composition, eminem-esque. | A. "No one consulted with me re altering or adapting the composition eminem-esque." Declaration of Michael Cohen # 8. | "eminem-esque" was not altered or adapted as those technical terms are understood in the production music licensing industry.<br><br>As a matter of law, no one was required to consult Cohen after he breached his representations and warranties as it relates to the originality of "eminem-esque" at the inception of the Composer Agreement.<br><br>Defendant Cohen admitted to receiving payments for uses of his compositions and knowing that his works would be modified to fit audiovisual works and that he had not been consulted for such uses that he was paid for. | *See* Exhibit H.<br><br>*See* Exhibit A and Exhibit B.<br><br>*See* Exhibit F and Exhibit G.<br><br>A "derivative work" is defined in the Copyright Act as a work "based upon one or more preexisting works" that "recast[s], transform[s], or adapt[s]" a preexisting work and "consist[s] of editorial revisions, annotations, elaborations, or other modifications which, as a whole, represent an original work of authorship." 17 U.S.C. § 101. United States Copyright Office's Circular No. 56, Copyright Registration for Sound Recordings, Revised Sept. 2017 ("Circular 56"), available at <https://www.copyright.gov/circs/circ56.pdf>.<br><br>*Abs Entm't v. CBS Corp.*, 908 F.3d 405, 414-19 (9th Cir. 2018), and the cases cited therein. |

**Conclusion as to Issue e**: No one consulted re altering or adapting the composition, eminem-esque.

**Plaintiff disputes the Defendant Cohen's conclusion as to "Issue e" because both the words "adapt" and "alter" have a technical and/or specialized meaning in the production music licensing industry and it has a specialized meaning under U.S. Copyright Law and the cases so interpreting the same.  Further, the use of "eminem-esque" by the New Zealand National Party was not an "alteration" or an "adaptation" and thus, even if consultation was required for an alteration and/or an "adaptation, which Plaintiff disputes, none was required by the New Zealand National Party's use.  Moreover and most importantly, Defendant Cohen breached the representations and warranties of the 02/14/2008 Composer Agreement when he conveyed "eminem-esque" as his original work, when "eminem-esque" infringes Marshall Mather's "Lose Yourself".  Thus, Defendant Cohen breached the Composer Agreement at its inception and cannot, as a matter of law, assert allegations claiming a failure to consult to relieve him of his liability for his breach of contract. *Silver v. Bank of America* (1941) 47 Cal.App.2d 639, 645 [118 P.2d 891]**

## CONCLUSIONS OF LAW

| CONCLUSIONS OF LAW | EVIDENTIARY SUPPORT | PLAINTIFF'S RESPONSE | PLAINTIFF'S AUTHORITY |
|---|---|---|---|
| 1. The 02/14/08 Composer Agreement is governed by California law. | Declaration of Michael Cohen, Exhibit A., § 13.4. | 1. Plaintiff agrees that this is undisputed. | |
| 2. "The interpretation of a contract . . . [is a] question[] of law for the court." | *Kaufman & Broad Bldg. Co. v. City & Suburban Mortg. Co.*, 10 Cal. App. 3d 206, 215-216 (1970). | 2. "If the interpretation of the contract turns upon the credibility of extrinsic evidence, the interpretation of the contract is not a question of law, but one of fact […][c]ustom and usage of words in a | *Hensel Phelps Constr. Co.*, 79 Cal. App. 3d 754, 770, 145 Cal. Rptr. 244, 253 (1978)*(internal citations omitted).*  [add other ca authority and do global] |

| | | | |
|---|---|---|---|
| | | certain trade are admissible to explain the meaning of the terms used in a contract. Custom and usage may not be used to vary the terms of the contract, but may be used as an aid in the interpretation of contracts." | |
| 3. The plaintiff did not possess the right to adapt or alter the musical piece called "eminemesque" without consultation with Mr. Cohen. | A. "[W]ords in a contract are to be understood in their usual and ordinary sense unless used by the parties in some technical sense." *County of Orange v. Santa Margarita Water Dist.* 44 Cal. App.4th 189, 192 (1996). B. On 02/14/08 Mr. Cohen entered a contract with Labrador. That contract is entitled "Composer Agreement." Declaration of Michael Cohen # 5, Exhibit "A". C. "The words 'alter' and 'adapt' have no specialized meaning in the music industry; and, those words have no specialized meaning as those words are used in the 2008 Composer Agreement in general, and as those words are used specifically in section 1.1(e) [the "Assignment" clause] of the 2008 Composer Agreement." Declaration of Musicologist Dr. Defendant/Crossclai mant Michael | Plaintiff disputes the Defendant Cohen's conclusion in Paragraph 3 because both the words "adapt" and "alter" have a technical and/or specialized meaning in the production music licensing industry and it has a specialized meaning under U.S. Copyright Law and the cases so interpreting the same. Further, the use of "eminem-esque" by the New Zealand National Party was not an "alteration" or an "adaptation" and thus, even if consultation was required for an "alteration" and/or an "adaptation, which Plaintiff disputes, none was required by the New Zealand National Party's use. Moreover and most importantly, Defendant Cohen breached the representations and warranties of the 02/14/08 Composer Agreement when he conveyed "eminem-esque" as his original work, when "eminem-esque" infringes | *See* Exhibit A, Exhibit B, Exhibit C, Exhibit F, and Exhibit G. |

- 26 -

| | | | | |
|---|---|---|---|---|
| 1 | | Cohen's Statement of Uncontroverted Fact and Conclusions of Law Gerald Eskelin # 11, inclusive of Exhibit "A"; "The words 'adapt' and 'alter' have no specialized or technical meaning in the music industry." Declaration of Composer/Defendant Michael Cohen # 10. | Marshall Mather's "Lose Yourself". Thus, Defendant Cohen breached the Composer Agreement at its inception and cannot, as a matter of law, assert allegations claiming a failure to consult to relieve him of his liability for his breach of contract. *Silver v. Bank of America* (1941) 47 Cal.App.2d 639, 645 [118 P.2d 891]. | |
| 2 | | | | |
| 3 | | | | |
| 4 | | | | |
| 5 | | | | |
| 6 | | | | |
| 7 | | | | |
| 8 | | D. In the Composer Agreement Mr. | | |
| 9 | | Cohen assigned certain limited rights | | |
| 10 | | to Labrador. Exhibit "A", § 1.1(e). | | |
| 11 | | Declaration of Michael Cohen # 6, | | |
| 12 | | Exhibit "A", Composer | | |
| 13 | | Agreement, § 1.1(e). E. Section 1.1(e) of | | |
| 14 | | the Composer Agreement says, | | |
| 15 | | "Composer [me] hereby grants to | | |
| 16 | | Owner [Labrador] ¶¶¶¶¶ [t]he right to | | |
| 17 | | alter [and] adapt [eminem-esque] in | | |
| 18 | | consultation with the Composer." | | |
| 19 | | Declaration of Michael Cohen # 7, | | |
| 20 | | Exhibit "A", Composer | | |
| 21 | | Agreemenet, § 1.1(e). F. Beatbox's | | |
| 22 | | Production Music Expert Margaret | | |
| 23 | | Saadi Kramer states: "If there's a contract | | |
| 24 | | between a publisher and a writer and the | | |
| 25 | | grant of rights are defined, then you | | |
| 26 | | abide by the contract." Declaration | | |
| 27 | | of Dan Jacobson #28, Exhibit "Q" | | |
| 28 | | Deposition of Beatbox Production | | |

| | | | |
|---|---|---|---|
| | Music Expert Ms. Saadi Kramer 49:12-19; Both the terms "alter" and "adapt" mean "to modify to one extent or another." Declaration of Dan Jacobson # 23, Exhibit "M" Deposition of Beatbox Production Music Expert Ms. Saadi Kramer 90:20; Declaration of Dan Jacobson #24, Exhibit "N" Deposition of Beatbox Production Music Expert Ms. Saadi Kramer 90:22-23; Declaration of Dan Jacobson #26, Exhibit "O", Deposition of Beatbox Production Music Expert Ms. Saadi Kramer p. 47:6-8.<br>G. Above Ms. Saadi Kramer appropriately defines "alter" and "adapt." However, in her report and most every time in her deposition that she mentions "alter" she pairs that word with "fundamental." Declaration of Dan Jacobson #s 12-22, Exs. "F" Report of Beatbox Music Industry Expert Ms. Saadi Kramer, "G", "H", "I", & "J". | | |
| 4. No one to whom Plaintiff Beatbox assigned any rights re eminem-esque possessed the right to adapt or alter eminem-esque *without consultation* with Mr. Cohen. | A. An "assignee . . . acquire[s] no greater rights than its assignor." *Royal Bank Exp. Fin. Co. v. Bestways Distrib. Co.* 229 Cal. App.3d 764, 765-766 (1991).<br>B. The relevant agreement between Labrador and | Plaintiff disputes the Defendant Cohen's conclusion in Paragraph 4 because both the words "adapt" and "alter" have a technical and/or specialized meaning in the production music licensing industry and | *See* Exhibit A, Exhibit B, Exhibit C, Exhibit F, and Exhibit G |

- 28 -

| | | | |
|---|---|---|---|
| | Beatbox does not mention the right to adapt or alter eminem-esque. Declaration of Dan Jacobson, Exhibit "B", Labrador/Beatbox contract. Defendant/Crossclaimant Michael Cohen's Statement of Uncontroverted Fact and Conclusions of Law C. Declaration of Dan Jacobson # 30, Exhibit "R", deposition of Beatbox's PMK Peter Baker pp. 43:11-45:7, whereat Mr. Baker testified that he, "was never told that," [that being that the § 1.1(e) right included a consultation with Mr. Cohen requirement]. D. All other citations supporting Conclusion of Law # 3, as those citations support the conclusion that Beatbox did not have the right to adapt or alter eminem-esque *without consultation* with Mr. Cohen. Thus, Beatbox had no ability to transmit that right to anyone else. See *Royal Bank Exp. Fin. Co. v. Bestways Distrib. Co.* 229 Cal. App.3d 764, 765-766 (1991). | it has a specialized meaning under U.S. Copyright Law and the cases so interpreting the same. Further, the use of "eminem-esque" by the New Zealand National Party was not an "alteration" or an "adaptation" and thus, even if consultation was required for an "alteration" and/or an "adaptation", which Plaintiff disputes, none was required by the New Zealand National Party's use. Moreover and most importantly, Defendant Cohen breached the representations and warranties of the 02/14/2008 Composer Agreement when he conveyed "eminem-esque" as his original work, when "eminem-esque" infringes Marshall Mather's "Lose Yourself". Thus, Defendant Cohen breached the Composer Agreement at its inception and cannot, as a matter of law, assert allegations claiming a failure to consult to relieve him of his liability for his breach of contract. *Silver v. Bank of America* (1941) 47 Cal.App.2d 639, 645 [118 P.2d 891] | |
| 5. As used in the subject contract "adapt" means to make suitable or fit (as for a particular use, purpose, or situation). Fit; suit. | A. "[W]ords in a contract are to be understood in their usual and ordinary sense unless used by the parties in some technical sense." | 5. "If the interpretation of the contract turns upon the credibility of extrinsic evidence, the interpretation of the contract is not a | |

- 29 -

| | | | |
|---|---|---|---|
| To make suitable (for a new or different use or situation) by means of changes or modifications. | *County of Orange v. Santa Margarita Water Dist.* 44 Cal. App.4th 189, 192 (1996).<br>B. On 02/14/08 Mr. Cohen entered a contract with Labrador. That contract is entitled "Composer Agreement." Declaration of Michael Cohen # 5, Exhibit "A".<br>Defendant/Crossclaimant Michael Cohen's Statement of Uncontroverted Fact and Conclusions of Law<br>C. "The words 'alter' and 'adapt' have no specialized meaning in the music industry; and, those words have no specialized meaning as those words are used in the 2008 Composer Agreement in general, and as those words are used specifically in section 1.1(e) [the 'Assignment clause'] of the 2008 Composer Agreement." Declaration of Musicologist Dr. Gerald Eskelin # 11, inclusive of Exhibit "A";<br>D. "The words 'adapt' and 'alter' have no specialized or technical meaning in the music industry." Declaration of Composer/Defendant Michael Cohen # 10.<br>E. Section 1.1(e) of the Composer Agreement says, | question of law, but one of fact […][c]ustom and usage of words in a certain trade are admissible to explain the meaning of the terms used in a contract. Custom and usage may not be used to vary the terms of the contract, but may be used as an aid in the interpretation of contracts." Plaintiff disputes the Defendant Cohen's conclusion in Paragraph 4 because both the words "adapt" and "alter" have a technical and/or specialized meaning in the production music licensing industry and it has a specialized meaning under U.S. Copyright Law and the cases so interpreting the same. Further, Further, the Declaration of Gerald Eskelin should be disregarded and stricken as laid out in Plaintiff's Motion to Strike Cohen's Expert Report of Eskelin; Exclude Eskelin As Expert Witness; To Strike Motion for Partial Summary Judgment; and For Other Relief (Dkt. 123). | |

| | | | |
|---|---|---|---|
| 1<br>2<br>3<br>4<br>5<br>6<br>7<br>8<br>9<br>10<br>11<br>12<br>13<br>14<br>15<br>16<br>17<br>18<br>19<br>20<br>21<br>22<br>23<br>24<br>25<br>26<br>27<br>28 | | "Composer [Mr. Cohen] hereby grants to Owner [Labrador] ¶¶¶¶¶ [t]he right to alter [and] adapt [eminem-esque] in consultation with the Composer." Declaration of Michael Cohen # 7, Exhibit "A", Composer Agreement, § 1.1(e).<br>F. The term "adapt" means "to modify to one extent or another." Declaration of Dan Jacobson # 23, Exhibit "M", Deposition of Beatbox Production Music Expert Ms. Saadi Kramer 90:20, Declaration of Dan Jacobson #24, Exhibit "N" Deposition of Defendant/Crossclaimant Michael Cohen's Statement of Uncontroverted Fact and Conclusions of Law Beatbox Production Music Expert Ms. Saadi Kramer 90:22-23.<br>G. The definition of the transitive verb "adapt" found at *Webster's Third New International Dictionary, Unabridged*, 2002 edition, p. 23 is "**1 a :** to make suitable or fit (as for a particular use, purpose, or situation) : FIT, SUIT . . . **b :** to make suitable (for a new or different use or situation) by means of changes or modifications." Request for Judicial Notice # 1. | | |

PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT

| | | | |
|---|---|---|---|
| 6. As used in the subject contract "alter" means to cause to become different in some particular characteristic (as measure, dimension, course, arrangement, or inclination) without changing into something else. | A. "[W]ords in a contract are to be understood in their usual and ordinary sense unless used by the parties in some technical sense." *County of Orange v. Santa Margarita Water Dist.* 44 Cal. App.4th 189, 192 (1996). B. On 02/14/08 Mr. Cohen entered a contract with Labrador. That contract is entitled "Composer Agreement." Declaration of Michael Cohen # 5, Exhibit "A". C. "The words "alter" and "adapt" have no specialized meaning in the music industry; and, those words have no specialized meaning as those words are used in the 2008 Composer Agreement in general, and as those words are used specifically in section 1.1(e) [the "Assignment" clause] of the 2008 Composer Defendant/Crossclaimant Michael Cohen's Statement of Uncontroverted Fact and Conclusions of Law Agreement." Declaration of Musicologist Dr. Gerald Eskelin # 11, inclusive of Exhibit "A"; "The words 'adapt' and 'alter' have no specialized or technical meaning in the music industry." Declaration of | 5. "If the interpretation of the contract turns upon the credibility of extrinsic evidence, the interpretation of the contract is not a question of law, but one of fact […][c]ustom and usage of words in a certain trade are admissible to explain the meaning of the terms used in a contract. Custom and usage may not be used to vary the terms of the contract, but may be used as an aid in the interpretation of contracts." Plaintiff disputes the Defendant Cohen's conclusion in Paragraph 4 because both the words "adapt" and "alter" have a technical and/or specialized meaning in the production music licensing industry and it has a specialized meaning under U.S. Copyright Law and the cases so interpreting the same. Further, Further, the Declaration of Gerald Eskelin should be disregarded and stricken as laid out in Plaintiff's Motion to Strike Cohen's Expert Report of Eskelin; Exclude Eskelin As Expert Witness; To Strike Motion for Partial Summary Judgment; and For Other Relief (Dkt. 123). | *See* Exhibit A, Exhibit B, Exhibit C, Exhibit F, and Exhibit G |

| | | | | |
|---|---|---|---|---|
| 1 | | Composer/Defendant Michael Cohen # 10. | | |
| 2 | | D. Section 1.1(e) of the Composer | | |
| 3 | | Agreement says, "Composer [me] | | |
| 4 | | hereby grants to Owner [Labrador] | | |
| 5 | | ¶¶¶¶ [t]he right to alter [and] adapt | | |
| 6 | | [eminem-esque] in consultation with the | | |
| 7 | | Composer." Declaration of | | |
| 8 | | Michael Cohen # 7, Exhibit "A", | | |
| 9 | | Composer Agreement, § 1.1(e). | | |
| 10 | | E. The term "alter" means "to modify to | | |
| 11 | | one extent or another." Declaration | | |
| 12 | | of Dan Jacobson # 23, Exhibit "M", | | |
| 13 | | Deposition of Beatbox Production | | |
| 14 | | Music Expert Ms. Saadi Kramer 90:20, | | |
| 15 | | F. Above Ms. Saadi Kramer appropriately | | |
| 16 | | defines "alter" and "adapt." However, in | | |
| 17 | | her report and most every time in her | | |
| 18 | | deposition that she mentions "alter" she | | |
| 19 | | pairs that word with "fundamental." | | |
| 20 | | Declaration of Dan Jacobson #s 12-22, | | |
| 21 | | Exs. "F" Report of Beatbox Music | | |
| 22 | | Industry Expert Ms. Saadi Kramer, "G", | | |
| 23 | | "H", "I", & "J". | | |
| 24 | | G. The primary definition of "alter" is | | |
| 25 | | at *Webster's Third New International Diction, Unabridged*, | | |
| 26 | | p. 63. "**1 :** to cause to become different is | | |
| 27 | | some particular characteristic (as | | |
| 28 | | measure, dimension, course, arrangement, | | |

PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT

| | or inclination) without changing into something else." Request for Judicial Notice # 2. | | |
|---|---|---|---|
| 7. Neither the plaintiff nor anyone else consulted with Mr. Cohen regarding any adaptation or alteration of eminem-esque. | A. "No one consulted with me re altering or adapting the composition eminem-esque." Declaration of Michael Cohen # 8. | 7. "eminem-esque" was not altered or adapted as those technical terms are understood in the production music licensing industry. As a matter of law, no one was required to consult Cohen after he breached his representations and warranties as it relates to the originality of "eminem-esque" at the inception of the Composer Agreement.<br><br>Defendant Cohen admitted to receiving payments for uses of his compositions and knowing that his works would be modified to fit audiovisual works and that he had not been consulted for such uses that he was paid for. | *See* Exhibit A, Exhibit B, Exhibit D, Exhibit E, Exhibit F; and Exhibit G |

DATED: February 24, 2020         Respectfully submitted,

**BEATBOX MUSIC PTY, LTD.**

  */s/ Heather L. Blaise*

HEATHER L. BLAISE, ESQ. (SBN 261619)

123 N. Wacker Drive, Suite 250

Chicago, IL 60606

Telephone: 312-448-6602

Email: hblaise@blaisenitschkelaw.com

*Attorney for Plaintiff*