Douglas J. Rosner, ESQ., SBN 094466
rosnerlaw@earthlink.net
LAW OFFICES OF DOUGLAS JOSEPH ROSNER
2625 Townsgate Road, Suite 330
Westlake Village, California 91361
Telephone No. (818) 501-8400
Facsimile No.: (818) 880-4485

Attorney for Defendant/Cross-Defendants,
Labrador Entertainment, Inc. dba Spider Cues
Music Library, Labrador Entertainment, LLC,
Noel Palmer Webb, an individual and Webb Family Trusts

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| BEATBOX MUSIC, PTY, LTD.,<br><br>Plaintiff,<br><br>vs.<br><br>LABRADOR ENTERTAINMENT, INC., DBA SPIDER CUES MUSIC LIBRARY, a California corporation,<br><br>Defendants.<br>_____<br><br>MICHAEL COHEN, an individual,<br><br>Cross-Complainant,<br><br>vs.<br><br>LABRADOR ENTERTAINMENT INC., D/B/A SPIDER CUES MUSIC LIBRARY, a California Corporation,<br><br>Cross-Defendant.<br>_____ | Case No. 2:17-cv-6108-MWF (JPRx)<br>*Assigned to the Hon. Michael W. Fitzgerald*<br><br>Defendants' Motion to Dismiss the Second, Fourth, Seventh and Eighth Counts from First Amended Complaint for Failure to State a Claim; and Motion to Strike Prayer for Attorney's Fees and Punitive Damages; Memorandum of Points and Authorities (FRCP 12(b)(6) and 12(f)) (Proposed) Order Granting Motion (filed under separate cover)<br><br>Hearing Date: March 30, 2020<br>Time: 10:00 a.m.<br>Place: Courtroom 5A - Los Angeles<br>Judge: Hon. Michael W. Fitzgerald<br>[Proposed Order Filed Concurrently Herewith] |

DEFENDANT'S NOTICE MOTION AND MOTION TO DISMISS THE SECOND,

FOURTH, SEVENTH AND EIGHTH COUNTS FROM FIRST AMENDED

COMPLAINT AND MOTION TO STRIKE ATTORNEYS FEES AND PUNITIVE

DAMAGES

i

**TABLE OF CONTENTS**                                    **PAGE NUMBER**

NOTICE OF MOTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1-4

MEMORANDUM OF POINTS AND AUTHORITIES.. . . . . . . . . . . . . . . . . . . . . . 2

I. INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II. Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

A. Legal Standard. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

B. The Second Cause of Action Fails to State a Claim for Breach of Covenant of
Good Faith and Fair Dealing.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

1. Breach of Implied Covenant of Good Faith and Fair Dealing Should Be Dismissed
Against Labrador Because It is Superfluous to the First Breach of Contract And Has
No Independent Basis, as a Matter of Law. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

2. Breach of Implied Covenant of Good Faith and Fair Dealing Should Be Dismissed
Against Defendants, Labrador Entertainment, LLC, Noel Webb,  The Webb Family
Trust Because there is No Contract Alleged Between Plaintiffs and Defendants,
Labrador Entertainment, LLC, Noel Webb,  The Webb Family Trust . . . . . . . . . . . . 8

3. Breach of Implied Covenant of Good Faith and Fair Dealing Fails Because This
Tort is Limited to Insurance Contracts... . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

C. The Fourth Cause of Action Should Be Dismissed Because Beatbox Has Failed to
Plead That Labrador Owed Beatbox Fiduciary Duties. . . . . . . . . . . . . . . . . . . . . . 9

D. The Seventh and Eighth Cause of Action Should Be Dismissed Because
Plaintiff's Fraudulent Conveyance at Common Law and Fraudulent Conveyance
under California's Uniform Fraudulent Transfer Act Are Premature. . . . . . . . . . . 14

DEFENDANT'S NOTICE MOTION AND MOTION TO DISMISS THE SECOND,
FOURTH, SEVENTH AND EIGHTH COUNTS FROM FIRST AMENDED
COMPLAINT AND MOTION TO STRIKE ATTORNEYS FEES AND PUNITIVE
DAMAGES

ii

Page Number

E. Defendant's Motion to Strike Should Be Granted. . . . . . . . . . . . . . . . . . . . . . . 17

1.  Plaintiff's Requests for Punitive Damages Should Be Stricken from the Be Striken the Fourth, Seventh, and Eighth Causes of Action. . . . . . . . . . . . . . . . . . . . . . . . . 17

2.  Plaintiff's Requests for Attorney's Fees Should Be Stricken from the Second and Fourth Causes of Action. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

F. Conclusion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

## TABLE OF AUTHORITIES

**Statutes**                                                           Page Number

Fed. R. Civ. P. 12(b)(6). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6, 12

Fed. R. Civ. P 12(f). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  7, 17

Cal. Civ. Code § 2295. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  11

Fed. R. Civ. P. 58. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  16

28 USCA § 1291. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  16

Cal. Code Civ. Proc. § 1021. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  17, 18

**Cases**

Careau & Co. v. Security Pac. Bus. Credit, Inc.(1990) 222 Cal. App. 3d 1371. .  5, 7, 8

Racine & Laramie, Ltd. v. Dept. of Parks & Recreation (1992)
11 Cal.App.4th 1026. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  5, 8

Freeman & Mills, Inc. v. Belcher Oil Company (1995) 11 Cal.4th 85. . . . . . . .  5, 8, 9

Conservation Force v. Salazar, 646 F.3d 1240 (9th Cir. 2011.). . . . . . . . . . . . . . . . .  6

DEFENDANT'S NOTICE MOTION AND MOTION TO DISMISS THE SECOND, FOURTH, SEVENTH AND EIGHTH COUNTS FROM FIRST AMENDED COMPLAINT AND MOTION TO STRIKE ATTORNEYS FEES AND PUNITIVE DAMAGES

1

**Cases** (Continued)                                                    Page Number

2

3   In re Gilead Science Security Litigation, 536 F.3d 1049 (9th Cir. 2008).  . . . . . . . . .  6

4   Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). . . . . . . . . . . . . . . . . . . .  6

5   Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009.). . . . . . . . . . . . . . . . . . . . . . . . . . . .  6, 10

6   Levitt v. Yelp! Inc., 765 F.3d 1123 (9th Cir. 2014). . . . . . . . . . . . . . . . . . . . . . . . 6-7

7   Branch v. Tunnell 14 F.3d 449, 454 (9th Cir. 1994)). . . . . . . . . . . . . . . . . . . . . . . .  7

8   Galbraith v. County of Santa Clara, 307 F.3d 1119 (9th Cir.2002). . . . . . . . . . . . . .  7

9   Gamble v. GMAC Mortg. Corp., No. C08–05532, 2009 WL 400359, at *3 (N.D.Cal.

10  Feb.18, 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  7

11  Harris v. Atlantic Richfield Co. (1993) 14 Cal.App.4th 70. . . . . . . . . . . . . . . . . . . .  8

12  Foley v. Interactive Data Corp. (1988)  47 Cal.3d 654. . . . . . . . . . . . . . . . . . . . . . .  8

13  Seamans Direct Buying Service, Inc. v. Standard Oil Co. (1984) 36 Cal.3d 752. . . .  9

14  GAB Business Servs., Inc. v. Lindsey & Newsom Claim Servs., Inc. (2000)

15  83 Cal.App.4th 409. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9-10

16  Tribeca Companies, LLC v. First American Title Ins. Co.(2015)

17  239 Cal.App.4th 1088. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  10

18  Wolf v. Superior Court (2003) 107 Cal. App. 4th 25. . . . . . . . . . . . . . . . . . . . . . . .  10

19  Barbara A. v. John G. (1983) 145 Cal.App.3d 369. . . . . . . . . . . . . . . . . . . . . . . . . .

20  Gerritsen v. Warner Bros. Entertainment Inc., 116 F.Supp.3d 1104, 1146 (9th Cir.

21  2015). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  11

22  California Viking Sprinkler Co. v. Pac. Indem. Co. (1963) 213 Cal. App. 2d 844. .  11

23  _____

24  DEFENDANT'S NOTICE MOTION AND MOTION TO DISMISS THE SECOND,

25  FOURTH, SEVENTH AND EIGHTH COUNTS FROM FIRST AMENDED

26  COMPLAINT AND MOTION TO STRIKE ATTORNEYS FEES AND PUNITIVE

27  DAMAGES

28                                              iv

**Cases** (Continued)                                                                    Page Number

Rood v. County of Santa Clara (2003) 113 Cal. App. 4th 549.. . . . . . . . . . . . . . 11-12

Hicks v. PGA Tour, Inc., 897 F.3d 1109 (9th Cir. 2018). . . . . . . . . . . . . . . . . . . . 12

Sonoma Foods, Inc. v. Sonoma Cheese Factory, LLC, 634 F. Supp. 2d 1009, 1021

(N.D. Cal. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Waverly Productions, Inc. v. RKO General, Inc.(1963) 217 Cal.App.2d 721. . . . . . 13

Cardenas v. Anzai, 311 F.3d 929 (9th Cir. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . 14

Richardson v. City and County of Honolulu, 124 F.3d 1150 (9th Cir. 1997). . . . . . 14

Pacific Gas and Electric Company v. State Energy Resources Conservation &

Development Commission 461 U.S. 190, 201(1983). . . . . . . . . . . . . . . . . . . . . . . 14

Macedo v. Bosio (2001) 86 Cal.App.4th 1044. . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Cortez v. Vogt (1997) 52 Cal.App.4th 917. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Adams v. Bell (1936) 5 Cal.2d 697.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Weisenburg v. Cragholm (1971) 5 Cal.3d 892. . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Pacific Legal Foundation v California Coastal Commission (1982) 33 Cal.3d 158.   16

Trope v. Katz (1995) 11 Cal. 4th 274. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Isthmian Lines, Inc. v. Schirmer Stevedoring Co. (1967) 255 Cal.App.2d 607. . . .  18

DEFENDANT'S NOTICE MOTION AND MOTION TO DISMISS THE SECOND,

FOURTH, SEVENTH AND EIGHTH COUNTS FROM FIRST AMENDED

COMPLAINT AND MOTION TO STRIKE ATTORNEYS FEES AND PUNITIVE

DAMAGES

1   Douglas J. Rosner, ESQ., SBN 094466
    rosnerlaw@earthlink.net
2   LAW OFFICES OF DOUGLAS JOSEPH ROSNER
    2625 Townsgate Road, Suite 330
3   Westlake Village, California 91361
    Telephone No. (818) 501-8400
4   Facsimile No.: (818) 880-4485

5   Attorney for Defendant/Cross-Defendants,
    Labrador Entertainment, Inc. dba Spider Cues
6   Music Library, Labrador Entertainment, LLC,
    Noel Palmer Webb, an individual and Webb Family Trusts

7

8                   UNITED STATES DISTRICT COURT

9          CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

10

11  BEATBOX MUSIC, PTY, LTD.,              )   Case No. 2:17-cv-6108-MWF (JPRx)
                                           )   *Assigned to the Hon. Michael W.*
12                      Plaintiff,         )   *Fitzgerald*
                vs.                        )
13                                         )   Defendants' Notice of Motion to
    LABRADOR ENTERTAINMENT,                )   Dismiss the Second, Fourth, Seventh
14  INC., DBA SPIDER CUES MUSIC            )   and Eighth Counts from First
    LIBRARY, a California corporation,     )   Amended Complaint for Failure to
15                                         )   State a Claim; and Motion to Strike
                        Defendants.        )   Prayer for Attorneys' Fees and
16                                         )   Punitive Damages; Memorandum of
                                           )   Points and Authorities (FRCP
17  MICHAEL COHEN, an individual,          )   12(b)(6) (Proposed) Order Granting
                                           )   Motion (filed under separate cover)
18                  Cross-Complainant,     )
                vs.                        )   Hearing Date: March 30, 2020
19                                         )   Time: 10:00 a.m.
    LABRADOR ENTERTAINMENT                 )   Place: Courtroom 5A - Los Angeles
20  INC., D/B/A SPIDER CUES MUSIC          )   Judge: Hon. Michael W. Fitzgerald
    LIBRARY, a California Corporation,     )   [Proposed Order Filed Concurrently
21                                         )   Herewith]
                    Cross-Defendant.       )

22

23

24

25

26  DEFENDANT'S NOTICE OF MOTION TO DISMISS THE SECOND, FOURTH,

27  SEVENTH AND EIGHTH COUNTS FROM FIRST AMENDED COMPLAINT AND

28  MOTION TO STRIKE ATTORNEYS FEES AND PUNITIVE DAMAGES   Page 1 of 4

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on March 30, 2020 at 10:00 a.m. or as soon thereafter as the matter can be heard, in Courtroom 5 A of the United States Courthouse, 350 West First Street, Los Angeles, California 90012, the Honorable Michael W. Fitzgerald presiding, Defendants Labrador Entertainment, Inc. d/b/a Spider Cues Music Library, a California Corporation, Noel Palmer Webb, an individual; Labrador Entertainment, LLC and Webb Family Trust  ("Labrador Defendants" will and hereby does move the Court, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, for an order to dismiss Plaintiff  Beatbox Music PTY, LTD., ("Beatbox") Second, Seventh and Eighth Causes of Action against defendants Labrador Entertainment, Inc. d/b/a Spider Cues Music Library, a California corporation, Noel Palmer Webb, an individual, Labrador Entertainment, LLC and Webb Family Trust and Fourth Cause of Action against Labrador Entertainment, Inc.

Furthermore, Labrador Entertainment, Inc. d/b/a Spider Cues Music Library, a California corporation, Noel Palmer Webb, an individual, Labrador Entertainment, LLC and Webb Family Trust will and hereby does move the Court in the alternative, pursuant to Rule 12(f), to strike certain improper allegations in the First Amended Complaint.

Dismissal of Plaintiff's Second Cause of Action for Breach of Implied Covenant of Good Faith and Fair Dealing under Rule 12(b)(6) is appropriate because (1) with respect to Defendant Labrador Entertainment, Inc. this claim is superfluous to the breach of contract; (2)  with respect to Defendants Noel Palmer Webb, an individual, Labrador Entertainment, LLC and Webb Family Trust there is no contract

DEFENDANT'S NOTICE OF MOTION TO DISMISS THE SECOND, FOURTH, SEVENTH AND EIGHTH COUNTS FROM FIRST AMENDED COMPLAINT AND MOTION TO STRIKE ATTORNEYS FEES AND PUNITIVE DAMAGES   Page 2 of 4

alleged between Plaintiff and Defendants Labrador Entertainment, LLC, Noel Webb or The Webb Family Trust; and (3) with respect to Labrador Entertainment, Inc. d/b/a Spider Cues Music Library, a California corporation, Noel Palmer Webb, an individual, Labrador Entertainment, LLC and Webb Family Trust, the claim fails because this tort is limited to insurance contracts. Further, dismissal as to Plaintiff's Fourth Cause of Action, for Breach of Fiduciary Duty, is appropriate under Rule 12(b)(6) because plaintiff fails to identify any fiduciary relationship that is imposed by law or that Labrador willingly undertook by agreement. Moreover, dismissal as to Plaintiff's Seventh and Eighth Cause of Action, for Fraudulent Conveyance At Common Law and Fraudulent Conveyance Under California's Uniform Fraudulent Transfer Act Should Be Dismissed Because Plaintiff's Fraudulent Conveyance at Common Law and Fraudulent Conveyance under California's Uniform Fraudulent Transfer Act Are Premature is appropriate under Rule 12(b)(6) because these claims are premature. Finally, under Rule 12(f), the Court should strike (1) all references to punitive damages from the Complaint not only because such damages are not available based on plaintiff's allegations, but also because; and (2) all references to a attorneys fees because there is no contractual or statutory basis for their request.

Defendants' motion is based upon this Notice of Motion and Motion; the Memorandum of Points and Authorities attached hereto, all pleadings, papers and records on file with this Court in this action; and all other such argument and evidence as may be presented to the Court in connection with the motion.

## LOCAL RULE 7-3 COMPLIANCE

This motion is made following Defendants' attempt to comply with the meet and confer obligations with opposing counsel pursuant to L.R. 7-3. On February 18,

DEFENDANT'S NOTICE OF MOTION TO DISMISS THE SECOND, FOURTH, SEVENTH AND EIGHTH COUNTS FROM FIRST AMENDED COMPLAINT AND MOTION TO STRIKE ATTORNEYS FEES AND PUNITIVE DAMAGES   Page 3 of 4

20120, Mr. Rosner attempted to reach via telephone, Heather L. Blaise. On February 22, 2020, because Mr. Rosner did not receive any response from Heather L. Blaise, Mr. Rosner, via email and telecopier sent to Heather L. Blaise, a thorough letter, setting forth the issues and attempting to solicit a response to conduct a meaningful discussion. As of this date, Mr. Rosner has not received any communication from Heather L. Blaise regarding the letter or this herein motion.

March 2, 2020     LAW OFFICES OF DOUGLAS JOSEPH ROSNER

/s/ Douglas J. Rosner

By:   DOUGLAS J. ROSNER
      SBN 094466
      2625 Townsgate Road, Suite 330
      Westlake Village, California 91302
      Telephone No. (818) 501-8400
      email: rosnerlaw@earthlink.net
      Attorney for Defendant/Cross-Defendants,
      Labrador Entertainment, Inc. dba Spider Cues Music
      Library, Labrador Entertainment, LLC, Noel Palmer
      Webb, an individual and Webb Family Trusts

DEFENDANT'S NOTICE OF MOTION TO DISMISS THE SECOND, FOURTH, SEVENTH AND EIGHTH COUNTS FROM FIRST AMENDED COMPLAINT AND MOTION TO STRIKE ATTORNEYS FEES AND PUNITIVE DAMAGES   Page 4 of 4

1  Douglas J. Rosner, ESQ., SBN 094466
   rosnerlaw@earthlink.net
2  LAW OFFICES OF DOUGLAS JOSEPH ROSNER
   2625 Townsgate Road, Suite 330
3  Westlake Village, California 91361
   Telephone No. (818) 501-8400
4  Facsimile No.: (818) 880-4485

5  Attorney for Defendant/Cross-Defendants,
   Labrador Entertainment, Inc. dba Spider Cues
6  Music Library, Labrador Entertainment, LLC,
   Noel Palmer Webb, an individual and Webb Family Trusts

7

8                    UNITED STATES DISTRICT COURT

9          CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

10

11 BEATBOX MUSIC, PTY, LTD.,          )  Case No. 2:17-cv-6108-MWF (JPRx)
                                      )  *Assigned to the Hon. Michael W.
12              Plaintiff,            )  Fitzgerald*
                                      )
13        vs.                         )  Defendants' Motion to Dismiss the
                                      )  Second, Fourth, Seventh and Eighth
14 LABRADOR ENTERTAINMENT,            )  Counts from First Amended
   INC., DBA SPIDER CUES MUSIC        )  Complaint for Failure to State a
15 LIBRARY, a California corporation, )  Claim; and Motion to Strike Prayer
                                      )  for Attorney's Fees and Punitive
16              Defendants.           )  Damages; Memorandum of Points
   ─────────────────────────────     )  and Authorities (FRCP 12(b)(6) and
17                                    )  12(f)) (Proposed) Order Granting
   MICHAEL COHEN, an individual,      )  Motion (filed under separate cover)
18                                    )
                Cross-Complainant,    )  Hearing Date: March 30, 2020
19 vs.                                )  Time: 10:00 a.m.
                                      )  Place: Courtroom 5A - Los Angeles
20 LABRADOR ENTERTAINMENT             )  Judge: Hon. Michael W. Fitzgerald
   INC., D/B/A SPIDER CUES MUSIC      )
21 LIBRARY, a California Corporation, )  [Proposed Order Filed Concurrently
                                      )  Herewith]
22              Cross-Defendant.      )

23

24

25 ────────────────────────────────────────────────────────────────

26 DEFENDANT'S MOTION TO DISMISS THE SECOND, FOURTH, SEVENTH AND

27 EIGHTH COUNTS FROM FIRST AMENDED COMPLAINT AND MOTION TO

28 STRIKE ATTORNEYS FEES AND PUNITIVE DAMAGES          Page 1 of 19

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION[1]

Defendant Labrador Entertainment, Inc. ("Labrador, Inc.") is the publisher that owns a library of recordings known as Spider Cues Music Library ("Library"). Labrador, Inc. obtains from music composers exclusive world wide rights to sell and/or exploit their music compositions.

Plaintiff Beatbox is the sole sub-publisher only for the licensed territory in New Zealand Australia, New Zealand and Fiji ("Licensed Territory").  Plaintiff has the right to grant non-exclusive licenses in the Licensed Territory authorizing the dubbing only of the recordings onto soundtracks of motion picture films, television and video tapes as well as the dubbing and mechanical reproduction for radio transcriptions and any audio or audio-visual sound carrier.

On or about February 14, 2008, Defendant Labrador, Inc. and Defendant Composer Michael Alan Cohen ("Cohen") entered into a written agreement wherein Cohen assigned to Labrador, Inc., exclusive publishing rights world wide to certain compositions, ("Cohen's Compositions"), including, Eminem Esque, the track from the Library, the subject matter of this case, for sale and/or exploitation "Cohen Agreement". (FAC ¶16.)

Cohen represented and warranted that the Cohen's Compositions were his "sole, exclusive and original work" and that they did not "infringe upon or violate the copyrights or any other rights whatsoever of any person, firm, or entity."(FAC¶16.)

---

[1]For purposes of this Motion alone, the facts as alleged in Plaintiff's Complaint are accepted as true, although denied by Defendant in all other respects

DEFENDANT'S MOTION TO DISMISS THE SECOND, FOURTH, SEVENTH AND EIGHTH COUNTS FROM FIRST AMENDED COMPLAINT AND MOTION TO STRIKE ATTORNEYS FEES AND PUNITIVE DAMAGES          Page 2 of 19

On or about April 1, 2009 Labrador, Inc., the publisher and Beatbox, the sub-publisher, entered into an agreement appointing Beatbox as Labrador, Inc.'s sole sub-publisher for the Licensed Territory ("Agreement".) (See attached Exhibit A, Preamble.[2])  These musical compositions and sound recordings issued as part of the Agreement were part of the Library ("Beatbox Recordings")  (Exhibit A  ¶1.) Beatbox had the right to grant non-exclusive licenses in the Licensed Territory authorizing the dubbing only of the Beatbox Recordings onto soundtracks of motion picture films, television and video tapes as well as the dubbing and mechanical reproduction for radio transcriptions and any audio or audio-visual sound carrier. Beatbox agreed to pay to Labrador, Inc. 50% (fifty per cent) of all fees accruing from such sub-licenses of the Beatbox Recordings. Further, Beatbox promised to keep accounts and supply statements regarding all royalties and license fees received by Beatbox for exploitation of the Beatbox Recordings. (Exhibit A ¶¶5, 10 and 18.)

Beatbox promised Labrador, Inc. that prior to parting with or assigning to any other person or party any of the benefits licensed to it under the terms of the Agreement, Beatbox would obtain from Labrador, Inc. prior written permission (Exhibit A ¶12.)

Further, Beatbox represented and warranted to Labrador, Inc. that it would use its best commercial endeavors to exploit the recordings for the benefit of the parties concerned.  (Exhibit A ¶7.)

///

---

[2]For convenience Defendant has attached exhibits to this motion due to the absence of these exhibits from the FAC.

---

DEFENDANT'S MOTION TO DISMISS THE SECOND, FOURTH, SEVENTH AND EIGHTH COUNTS FROM FIRST AMENDED COMPLAINT AND MOTION TO STRIKE ATTORNEYS FEES AND PUNITIVE DAMAGES          Page 3 of 19

1    Labrador, Inc. had the right to terminate the Agreement for failure of Beatbox
2    to fully comply with any of its material terms or conditions. (Exhibit A  ¶13.)

3    No party can amend the Agreement, except in writing by all parties. This
4    Agreement constitutes the entire agreement between the parties and the parties
5    entered into the Agreement without reliance on any other representations.  (Exhibit A
6    ¶15.)

7    The gravamen of Beatbox's case is that some of the Beatbox Recordings it
8    obtained from Labrador, Inc. were not original.  That the track entitled "Eminem
9    Esque", licensed to the New Zealand National Party and used in their television
10   commercial, allegedly infringed on the rights of 8 Mile in the musical composition
11   known as "Lose Yourself".  (FAC  ¶¶34-35.)  Lawsuits ensued and Beatbox claims it
12   incurred substantial sums to defend itself and was subject to numerous offsets for
13   sums owed to it. In this action Beatbox is requesting Labrador, Inc. to indemnify it
14   for all of these losses. (FAC  ¶¶36-41.)

15   Beatbox, on various legal theories, has expanded this action to also include
16   non-contractual party defendants  Labrador Entertainment, LLC ("Labrador LLC.) ,
17   Noel Webb ("Webb".) and The Webb Family Trust ("Webb Trust".)

18   Following this Court granting Plaintiff's motion to amend its complaint, on
19   January 24, 2020, Plaintiff filed its first amended complaint "FAC". This matter was
20   stayed until February 17, 2020 giving the Defendants time to obtain new counsel.
21   Plaintiff added new causes of action of Breach of Fiduciary Duty against Labrador,
22   Inc.; Alter Ego against Defendants, Labrador, Inc., Labrador LLC, Webb and Webb
23   Trust; and Fraudulent Conveyances at Common Law and Under California's UFTA
24   against Defendants, Labrador Inc., Labrador  LLC, Webb and Webb Trust.

25

26   DEFENDANT'S MOTION TO DISMISS THE SECOND, FOURTH, SEVENTH AND
27   EIGHTH COUNTS FROM FIRST AMENDED COMPLAINT AND MOTION TO
28   STRIKE ATTORNEYS FEES AND PUNITIVE DAMAGES          Page 4 of 19

Plaintiff's second cause of action for breach of the implied covenant of good faith and fair dealing fails as a matter of law for two separate reasons. First, to the extent that the breach of the implied covenant claim merely relies on the same allegations as the claim for breach of contract and simply seeks the same damages, "they may be disregarded as superfluous as no additional claim is actually stated." (*Careau & Co. v. Security Pac. Bus. Credit, Inc.* (1990) 222 Cal. App. 3d 1371, 1394.)

Further, without a breach of a contract, there cannot be a breach of the implied covenant of good faith and fair dealing. There is no contract between Plaintiff and Defendants Labrador LLC, Noel Webb or Webb Trust. *(Racine & Laramie, Ltd. v. Dept. of Parks & Recreation* (1992) 11 Cal.App.4th 1026, 1031-1032.) ("There is no obligation to deal fairly or in good faith absent an existing contract.")

Finally, the Breach of Implied Covenant of Good Faith and Fair Dealing Fails because this tort is limited to insurance contracts. The California Supreme Court has stated the "general rule precluding tort recovery for noninsurance contract breach, at least in the absence of violation of an 'independent duty arising from principles of tort law." (*Freeman & Mills, Inc. v. Belcher Oil Company* (1995) 11 Cal.4th 85, 102.) Accordingly, Plaintiff's Second Cause of Action fails to state a claim upon which relief can be granted.

Plaintiff's Fourth Cause of Action for Breach of Fiduciary Duty does not state a valid claim because Plaintiff has failed to sufficiently plead the necessary elements to establish the existence of a fiduciary relationship between Plaintiff and Defendants and that Defendants owe Plaintiff any fiduciary duty.

///

Plaintiff's Seventh and Eighth Causes of Action against Defendants, Labrador Inc., Labrador LLC, Webb and Webb Trust fail as a matter of law because each cause of action is not ripe.

Finally, Defendants, Labrador LLC, Labrador Inc., Webb, and Webb Trust move the Court pursuant to Rule 12(f), to strike certain improper allegations in the FAC for punitive damages and attorneys fees.

## II. Argument

### A.  Legal Standard

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted 'tests the legal sufficiency of a claim." (*Conservation Force v. Salazar*, 646 F.3d 1240, 1241-42 (9th Cir. 2011.)) (Quotation omitted).) The Court must accept as true all well-pled factual allegations but should not accept "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *(In re Gilead Science Security Litigation*, 536 F.3d 1049, 1055 (9th Cir. 2008) (citations omitted).) ) A complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." (*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." (*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009.)) The alleged facts must "raise a right to relief above the speculative level." (*Twombly*, 550 U.S. at 555.) The factual allegations taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation. (*Levitt v. Yelp! Inc*., 765 F.3d 1123, 1135 (9th Cir. 2014).)

DEFENDANT'S MOTION TO DISMISS THE SECOND, FOURTH, SEVENTH AND EIGHTH COUNTS FROM FIRST AMENDED COMPLAINT AND MOTION TO STRIKE ATTORNEYS FEES AND PUNITIVE DAMAGES                Page 6 of 19

The Plaintiff has referred to exhibits in their FAC. It appears that Plaintiff forgot to attach the same exhibits to the SAC. Documents referred to in a complaint but not attached may be attached to a defendant's motion to dismiss to show that they do not support plaintiff's claim. (*Branch v. Tunnell* 14 F.3d 449, 454 (9th Cir. 1994)), overruled on other grounds by *Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th Cir.2002) Also, where "an exhibit to a pleading is inconsistent with the pleading, the exhibit controls." *Gamble v. GMAC Mortg. Corp*., No. C08–05532, 2009 WL 400359, at *3 (N.D.Cal. Feb.18, 2009).

A Motion to Strike under Rule 12(f) provides that a court "may order stricken from any pleading . . . any redundant, immaterial, impertinent or scandalous matter." Fed. R. Civ. P. 12(f).

**B.  The Second Cause of Action Fails to State a Claim for Breach of Covenant of Good Faith and Fair Dealing**

**1.  Breach of Implied Covenant of Good Faith and Fair Dealing Should Be Dismissed Against Labrador, Inc. Because It is Superfluous to the First Breach of Contract And Has No Independent Basis, as a Matter of Law**

Under California law, a claim for breach of an implied covenant of good faith and fair dealing sounds solely in contract. (*Careau v. Security Pacific* (1990) 222 Cal.App.3d 1371, 1395.) If the allegations in an implied covenant claim do not go beyond the statement of a mere contract breach and simply seek the same damages or other relief already claimed in a companion cause of action, the claim must be disregarded as superfluous. (*Careau*, 222 Cal.App.3d at 1395.) Consequently, "absent those limited cases where breach of consensual contract term is not claimed or alleged, the only justification for asserting a separate cause of action for breach of the

DEFENDANT'S MOTION TO DISMISS THE SECOND, FOURTH, SEVENTH AND EIGHTH COUNTS FROM FIRST AMENDED COMPLAINT AND MOTION TO STRIKE ATTORNEYS FEES AND PUNITIVE DAMAGES          Page 7 of 19

implied covenant is to obtain tort recovery." (*Id*.)

**2.  Breach of Implied Covenant of Good Faith and Fair Dealing Should Be Dismissed Against Defendants, Labrador Entertainment, LLC, Noel Webb,  The Webb Family Trust Because there is No Contract Alleged Between Plaintiffs and Defendants, Labrador Entertainment, LLC, Noel Webb,  The Webb Family Trust**

If there is no contract between two parties, there cannot be a breach of an implied term arising from that supposed contract. California law is in agreement: "[t]he implied covenant of good faith and fair dealing rests upon the existence of some specific contractual obligation." "There is no obligation to deal fairly or in good faith absent an existing contract.". *(Racine & Laramie, Ltd. v. Dept. of Parks & Recreation* (1992) 11 Cal.App.4th 1026, 1031-1032.)   Accordingly, because Plaintiff's FAC fails to allege the existence of a contract between Plaintiff and Defendants, Labrador LLC, Webb or Webb Trust, these claims must be dismissed.

**3.  Breach of Implied Covenant of Good Faith and Fair Dealing Fails Because This Tort is Limited to Insurance Contracts.**

A claim for tortious breach of the implied covenant of good faith and fair dealing has been limited under California law to contractual relationships between insurer and insured. (*Harris v. Atlantic Richfield Co.* (1993) 14 Cal.App.4th 70, 79.) The extension of tort remedies to non-insurance cases is not justified. *(Foley v. Interactive Data Corp.* (1988) 47 Cal.3d 654, 700.)

The decision that tort remedies for breach of the implied covenant be limited to insurance contracts has been reinforced by the California Supreme Court in *Freeman & Mills, Inc. v. Belcher Oil Company* (1995) 11 Cal.4th 85.  In that case, the

---

DEFENDANT'S MOTION TO DISMISS THE SECOND, FOURTH, SEVENTH AND EIGHTH COUNTS FROM FIRST AMENDED COMPLAINT AND MOTION TO STRIKE ATTORNEYS FEES AND PUNITIVE DAMAGES          Page 8 of 19

California Supreme Court overruled its prior ruling in *Seamans Direct Buying Service, Inc. v. Standard Oil Co.* (1984) 36 Cal.3d 752, thereby eliminating any recovery in tort based on a bad faith denial of the existence of a non-insurance contract. (*Freeman*, 11 Cal.4th at 88.)  In reaching its conclusion, the Court announced a general rule precluding tort recovery for a non-insurance contract breach, at least in the absence of violation of an independent duty arising from principals of tort law. (*Freeman,* 11 Cal.4th at 102.)

Beatbox incorporates by reference all allegations in the FAC, including Labrador, Inc.'s alleged breach of the Agreement, in support of its second cause of action.  Then Beatbox alleges there is an implied covenant of good faith and fair dealing between Beatbox and Labrador, Inc. existing outside of the Agreement. (FAC  ¶¶ 42-50, 54 and 55.)  Beatbox is attempting to do precisely what the California Supreme Court has repeatedly criticized and warned against, transforming an everyday breach of contract claim into a tort claim. Beatbox is a sub-publisher that is exploiting Beatbox Recordings obtained from Labrador, Inc. in its Licensed Territory.  The parties were in a contractual relationship, which cannot support a cause of action for breach of implied covenant of good faith and fair dealing.

**C.  The Fourth Cause of Action Should Be Dismissed Because Beatbox Has Failed to Plead That Labrador, Inc. Owed Beatbox Fiduciary Duties**

Plaintiff alleges that Labrador, Inc. "owed Plaintiff Beatbox fiduciary duties of [] care, loyalty, candor, good faith and fair dealing, and independence" (FAC ¶67.) , but fails to plead facts showing that a fiduciary duties arose from one of two circumstances: (1) when such a duty is imposed by law; or (2) pursuant to an agreement between the parties. (*GAB Business Servs., Inc. v. Lindsey & Newsom*

*Claim Servs., Inc.* (2000) 83 Cal.App.4th 409, 416.)

"The elements of a cause of action for breach of fiduciary duty are: (1) existence of a fiduciary duty; (2) breach of the fiduciary duty; and (3) damage proximately caused by the breach." (*Tribeca Companies, LLC v. First American Title Ins. Co.(2015) 239 Cal.App.4th 1088*, 1114.) As to the first element, the existence of a fiduciary relationship, a plaintiff must demonstrate a relationship "wherein one of the parties is in [sic] duty bound to act with the utmost good faith for the benefit of the other party." (*Wolf v. Superior Court* (2003) 107 Cal. App. 4th 25, 29.)

Fiduciary duties imposed by law arise from certain technical or legal relationships such as attorneys/clients, principals/agents, and trusts/beneficiaries. (*Barbara A. v. John G.* (1983) 145 Cal.App.3d 369, 382.)

As to the existence of a fiduciary duty, there is no elaboration as to what the fiduciary duties of duties of care, loyalty, candor, good faith and fair dealing. In "considering a motion to dismiss" the pleadings require more than conclusions, the Court "can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. (*Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).)

Except for barebones allegations, no technical or legal relationships have been alleged in Plaintiff's FAC. Plaintiff alleges, that "[a]t all times herein mentioned, all Defendants, individually and collectively, are and were agents and/or joint venturers of each other, and in doing the acts alleged herein were acting within the course and scope of such agency." (FAC ¶9.)

///

///

DEFENDANT'S MOTION TO DISMISS THE SECOND, FOURTH, SEVENTH AND EIGHTH COUNTS FROM FIRST AMENDED COMPLAINT AND MOTION TO STRIKE ATTORNEYS FEES AND PUNITIVE DAMAGES          Page 10 of 19

Under California law, an agent is defined as "one who represents another, called the principal, in dealings with third persons." Cal. Civ. Code § 2295. 'In determining if an agent relationship exists, the court considers three essential characteristics: (1) an agent or apparent agent holds a power to alter the legal relationships between the principal and third persons and between the principal and himself; (2) an agent is a fiduciary with respect to matters within the scope of the agency; and (3) a principal had the right to control the conduct of the agent with respect to matters entrusted to him.'" [Citations omitted.] (*Gerritsen v. Warner Bros. Entertainment Inc*., 116 F.Supp.3d 1104, 1146 (9th Cir. 2015).)

Defendant Labrador, Inc. is not an agent of Plaintiff. Conversely, the opposite may be true.  Under California law, an agent is defined as "one who represents another, called the principal, in dealings with third persons." (Cal. Civ. Code § 2295.) Labrador, Inc. does not represent Beatbox with third parties. On the contrary, Beatbox represents Labrador, Inc. with third parties. Beatbox has agreed to introduce, exploit and grant non-exclusive licences in the Licensed Territory. (Exhibit A ¶1, 5.) Beatbox bears the burden of asserting that it is the principal and Labrador, Inc. is the agent. (*California Viking Sprinkler Co. v. Pac. Indem. Co.* (1963) 213 Cal. App. 2d 844, 850.)

Formation of an agency requires a bilateral agreement to which "words or conduct by both principal and agent are necessary to create the relationship . . ." (*Rood v. County of Santa Clara* (2003) 113 Cal. App. 4th 549, 571.) "'Agency is the relationship which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act.' [Citation.] 'The principal must in some manner indicate that the agent

DEFENDANT'S MOTION TO DISMISS THE SECOND, FOURTH, SEVENTH AND EIGHTH COUNTS FROM FIRST AMENDED COMPLAINT AND MOTION TO STRIKE ATTORNEYS FEES AND PUNITIVE DAMAGES          Page 11 of 19

1   is to act for him, and the agent must act or agree to act on his behalf and subject to his

2   control.' [Citation.]'"[Citation omitted.]  *(Id.*)

3       In ruling on motion to dismiss for failure to state claim, court can consider

4   exhibits attached to complaint as well as documents whose contents are alleged in

5   complaint and whose authenticity no party questions, but which are not physically

6   attached to plaintiff's pleading, and facts in complaint that have since been

7   conclusively contradicted by plaintiffs' concessions. (Fed. R. Civ. P. 12(b)(6); *Hicks v.*

8   *PGA Tour, Inc.*, 897 F.3d 1109, 1117 (9th Cir. 2018).)

9       The sole allegation of agency is contained in paragraph 9 of the FAC, "all

10  Defendants, individually and collectively, are and were agents and/or joint venturers

11  of each other, and in doing the acts alleged herein were acting within the course and

12  scope of such agency." Yet the terms and conditions of the Agreement contradict these

13  allegations.

14      The terms and conditions of the Agreement demonstrate that Labrador, Inc. is

15  the principal and Beatbox is the agent.  Under the terms of the Agreement, Labrador,

16  Inc. was the publisher and Beatbox was the sub-publisher. Labrador, Inc. expected that

17  Beatbox would assume all of the duties to properly maintain, update, exploit, protect

18  and sub-license Beatbox Recordings. Beatbox had the right to grant non-exclusive

19  licenses in the Licensed Territory authorizing the dubbing and mechanical

20  reproduction of the Beatbox Recordings. Beatbox was responsible to Labrador, Inc.

21  for the accounting and payment of all fees accruing from such sub-licenses of the

22  Beatbox Recordings.  Beatbox was required to obtain from Labrador, Inc. prior written

23  permission prior to parting with or assigning to any other person or party any of the

24  benefits licensed to it under the terms of the Agreement. Further, Beatbox represented

25  _____

26  DEFENDANT'S MOTION TO DISMISS THE SECOND, FOURTH, SEVENTH AND

27  EIGHTH COUNTS FROM FIRST AMENDED COMPLAINT AND MOTION TO

28  STRIKE ATTORNEYS FEES AND PUNITIVE DAMAGES          Page 12 of 19

and warranted that it would use its best commercial endeavors to exploit the recordings for the benefit of the parties concerned. Labrador, Inc. had the right to terminate the Agreement for failure of Beatbox to fully comply with any material terms or conditions of Agreement.

Plaintiff only asserts conclusory allegations concerning their role as the principal and Labrador, Inc.'s role and the agent. (FAC ¶9.)  Plaintiff does not plead these elements, let alone any facts supporting them. That is insufficient. Mere conclusory allegations of agency will not support a claim that is based on an agency theory.

Further, while parties may create fiduciary relationships by contract, Plaintiff has not pled any facts demonstrating that the Agreement creates a fiduciary relationship between Labrador, Inc. and Beatbox.  *(Sonoma Foods, Inc. v. Sonoma Cheese Factory*, LLC, 634 F. Supp. 2d 1009, 1021 (N.D. Cal. 2007) (dismissing counter-claim for breach of fiduciary duty where counter-claimants "have not plead any facts which would give rise to a fiduciary duty based upon a legal relationship between the parties. Nor have they plead any facts demonstrating that the alleged contract created a fiduciary relationship." (*id*. at 1020.) "Mere contractual relationships, without more, do not give rise to fiduciary relationships."(*id*. at 1021.)

As enunciated in *Waverly Productions, Inc. v. RKO General, Inc.*(1963) 217 Cal.App.2d 721, 732) "[a] mere contract or a debt does not constitute a trust or create a fiduciary relationship." As a general rule, courts have found no fiduciary duty "where other legal relationships clearly existed between the parties which 'covered' the transaction in suit and which were inconsistent with the existence of fiduciary duty. (*id*. at 1020.)

---

DEFENDANT'S MOTION TO DISMISS THE SECOND, FOURTH, SEVENTH AND EIGHTH COUNTS FROM FIRST AMENDED COMPLAINT AND MOTION TO STRIKE ATTORNEYS FEES AND PUNITIVE DAMAGES          Page 13 of 19

Accordingly, the claim for breach of fiduciary duty should be dismissed because Beatbox has failed to plead any facts that Labrador, Inc. owed Beatbox any fiduciary duties.

**D.  The Seventh and Eighth Cause of Action Should Be Dismissed Because Plaintiff's Fraudulent Conveyance at Common Law and Fraudulent Conveyance under California's Uniform Fraudulent Transfer Act Are Premature**

Plaintiff's claims for fraudulent conveyance at common law and Fraudulent conveyance under California's Uniform Fraudulent Transfer Act are unripe. Subject matter jurisdiction does not exist over claims which are not ripe for adjudication. (*Cardenas v. Anzai*, 311 F.3d 929, 933 (9th Cir. 2002) "The "central concern [of the ripeness inquiry] is whether the case involves uncertain or contingent future events that may not occur as anticipated, or indeed may not occur at all." [Citation omitted.] (*Richardson v. City and County of Honolulu*, 124 F.3d 1150, 1160 (9th Cir. 1997) "[T]he question of ripeness turns on the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." (Pacific Gas and Electric Company v. State Energy Resources Conservation & Development Commission, 461 U.S. 190, 201(1983)(internal quotation marks omitted.)

First, Beatbox needs perfect a judgment against Labrador, Inc. before it can assert a claim that Labrador, Inc. fraudulently transferred to the Labrador, Inc. Defendants its assets to the detriment of Plaintiff so Plaintiff would have been unable to collect from the asset of Labrador, Inc.

Although fraudulent conveyance claims may be brought without an underlying judgment, when a plaintiff pursues a fraudulent conveyance claim based on its status as a judgment creditor from an underlying judgment (as Plaintiff does here), its cause

---

1  of action does not accrue until that underlying judgment is final. (*Macedo v. Bosio*
2  (2001) 86 Cal.App.4th 1044, 1049-1050 [where "there is an alleged fraudulent transfer
3  made during a pending lawsuit that will establish whether in fact, and the extent to
4  which, a debtor-creditor relationship exists," then the judgment creditor's cause of
5  action does not accrue and statute of limitations does not begin to run until judgment
6  in the underlying action becomes final] [citing *Cortez v. Vogt* (1997) 52 Cal.App.4th
7  917, 937; *Adams v. Bell* (1936) 5 Cal.2d 697].)

8        This rule makes sense, and is in accord with the purposes behind the ripeness
9  doctrine. Until a judgment against a debtor is final, then a judgment creditor's
10 fraudulent conveyance claim is only hypothetical, and cannot be resolved
11 conclusively.

12       If a premature fraudulent conveyance claim is permitted to proceed, and the
13 underlying judgment is reversed on appeal, then the fraudulent conveyance claim, too,
14 will have to be reversed. (*Weisenburg v. Cragholm* (1971) 5 Cal.3d 892, 896-897.)  In
15 *Weisenburg*, the plaintiff prevailed on a fraudulent conveyance claim based on an
16 underlying judgment that had not yet become final through appeal. Subsequently, the
17 underlying judgment was reversed on appeal, and the fraudulent conveyance judgment
18 was appealed. The California Supreme Court reversed the fraudulent conveyance
19 judgment, reasoning that "plaintiff is not entitled to the remedy [sought by the
20 fraudulent conveyance claim] unless he has shown that he is a creditor  . . .  and the
21 basis for the finding that he was such a creditor has been eliminated." (*Weisenburg*,
22 *supra*, 5 Cal.3d at pp.896-97.)

23       The same risk of multiple appeals and reversals lies here. First, Beatbox needs
24 to obtain a judgment. The judgement is not final until the judgment is ordered and the

25 _____

26 DEFENDANT'S MOTION TO DISMISS THE SECOND, FOURTH, SEVENTH AND
27 EIGHTH COUNTS FROM FIRST AMENDED COMPLAINT AND MOTION TO
28 STRIKE ATTORNEYS FEES AND PUNITIVE DAMAGES            Page 15 of 19

time for appeal has expired. (See FRCP Rule 58 and 28 USCA § 1291.)

It is only if Plaintiff's judgment is ultimately upheld and the time for appeal has expired, or an appeal is taken, and the judgment is upheld that Plaintiff will have any basis for their claims at all. It is adjudication of precisely such hypothetical "ifs" that the ripeness doctrine seeks to avoid. Plaintiff's claims should be dismissed without prejudice to their right to re-file if and when their claims based on alleged fraudulent conveyances eventually become ripe.

Plaintiffs will not suffer hardship from deferred adjudication.  Plaintiff will not suffer any harm from a dismissal of their claims without prejudice.  Plaintiff's claims and the relief they seek are retrospective in nature-based on supposedly fraudulent transfers that already have occurred. (FAC ¶87.) Moreover, their own allegations demonstrate that they do not seek to enjoin any future transfers or conveyances. Finally, this case affects Plaintiff's only and does not warrant an exception to the ripeness doctrine in order to eliminate uncertainty regarding a legal issue with wide-spread public interest. (*Pacific Legal Foundation v California Coastal Commission* (1982) 33 Cal.3d 158, 170.)

Conversely, permitting Plaintiff's claims to proceed prematurely could cause great hardship and inefficiencies. If Defendants are successful in obtaining a verdict in its favor or not in its favor and pursues an appeal, and this lawsuit has been permitted to go forward, then judicial resources will have been wasted, Defendants will have been forced needlessly to defend against non-existent claims, and there is a possibility that a judgment in this case will not have been rendered in the favor of Plaintiff. Plaintiff's premature claims against the Defendants should be dismissed without prejudice unless and until their judgment against Defendants become final.

---

DEFENDANT'S MOTION TO DISMISS THE SECOND, FOURTH, SEVENTH AND EIGHTH COUNTS FROM FIRST AMENDED COMPLAINT AND MOTION TO STRIKE ATTORNEYS FEES AND PUNITIVE DAMAGES          Page 16 of 19

### E. Defendant's Motion to Strike Should Be Granted

Rule 12(f) provides that a party may move to have any insufficient defense or any redundant, immaterial, impertinent or scandalous matter stricken from a pleading. Furthermore, a motion to strike may be used to strike a prayer for relief where the damages sought are not recoverable as a matter of law.

Plaintiffs Punitive damages allegations should be striken as alleged for the fourth cause of action on page 18 paragraph 5, line 24; seventh cause of action paragraph 11 line 13; eighth cause of action, paragraph 13 line 18; and paragraph 17 line 26 of the Prayer.

Plaintiffs request for attorney's fees allegations should be striken as alleged in third cause of action on page 11 paragraph 64, line 18; All causes of action, paragraph 18, line 27.

### 1. Plaintiff's Requests for Punitive Damages Should Be Stricken from the Be Striken the Fourth, Seventh, and Eighth Causes of Action

To the extent the Court does grant Defendants' Motion to Dismiss the Fourth, Seventh and Eighth Causes of Action, the Court should strike Plaintiff's requests for punitive damages in these causes of action as immaterial and/or impertinent to the remaining allegations.

### 2. Plaintiff's Requests for Attorney's Fees Should Be Stricken from the Second and Fourth Causes of Action

The Court should strike Plaintiff's request for attorney's fees under each cause of action as immaterial and/or impertinent to the FAC. Codified in Cal. Code Civ. Proc. § 1021 and upheld by the California Supreme Court, "California follows what is commonly referred to as the American rule, which provides that each party to a

---

DEFENDANT'S MOTION TO DISMISS THE SECOND, FOURTH, SEVENTH AND EIGHTH COUNTS FROM FIRST AMENDED COMPLAINT AND MOTION TO STRIKE ATTORNEYS FEES AND PUNITIVE DAMAGES          Page 17 of 19

lawsuit must ordinarily pay his own attorney fees." (*Trope v. Katz* (1995) 11 Cal. 4th 274, 278.) The exception to this rule as stated in section 1021 is "[e]xcept as attorney's fees are specifically provided by statute, the measure and mode of compensation of attorneys . . . is left to the agreement, express or implied, of the parties." (Cal. Code Civ. Proc. § 1021.)  In sum, unless a statute or the contract between the parties specifically provides for attorney's fees, they will not be granted.

Plaintiff relies upon a non-existent clause in 16 (v) of the Agreement, Plaintiff alleges "including the recovery of reasonable attorney's fees in any action to enforce the terms of the Indemnity Clause." (FAC ¶ 64.) This sentence is not contained in the Indemnity clause. Plaintiff does not allege the existence of another attorney's fees provision in any agreement between the parties. Likewise, in general, attorney's fees are not recoverable unless specifically provided for by statute.  *(Isthmian Lines, Inc. v. Schirmer Stevedoring Co.* (1967) 255 Cal.App.2d 607, 610.)

Accordingly, because there is no alleged attorney's fees provision in Plaintiff's FAC, or a statute that Plaintiff is relying upon for its request, the request for attorney's fees should be stricken from the third cause of action on page 11 paragraph 64, line 18; and all causes of action, paragraph 18, line 27.

**F. Conclusion**

Based upon the foregoing, Plaintiff's Second, Fourth, Seventh, and Eighth Causes of Action should be dismissed. Further, the Court should strike from the FAC: for causes of action the court should dismiss, the fourth cause of action on page 18 paragraph 5, line 24; seventh cause of action  paragraph 11 line 13; eighth cause of action, paragraph 13 line 18; and paragraph 17 line 26 of the Prayer; for attorney's fees, third cause of action on page 11 paragraph 64, line 18; All causes of action,

1  paragraph 18, line 27; all of which are immaterial and/or impertinent to the remaining

2  allegations.

3

4  March 2, 2020        LAW OFFICES OF DOUGLAS JOSEPH ROSNER

5                              /s/ Douglas J. Rosner

6                    By:    DOUGLAS J. ROSNER
                              SBN 094466
7                              2625 Townsgate Road, Suite 330
                              Westlake Village, California 91302
8                              Telephone No. (818) 501-8400
                              email: rosnerlaw@earthlink.net
9                              Attorney for Defendant/Cross-Defendants,
                              Labrador Entertainment, Inc. dba Spider Cues Music
10                             Library, Labrador Entertainment, LLC, Noel Palmer
                              Webb, an individual and Webb Family Trusts

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25  _____

26  DEFENDANT'S MOTION TO DISMISS THE SECOND, FOURTH, SEVENTH AND

27  EIGHTH COUNTS FROM FIRST AMENDED COMPLAINT AND MOTION TO

28  STRIKE ATTORNEYS FEES AND PUNITIVE DAMAGES          Page 19 of 19

EXHIBIT A

**AN AGREEMENT made this first day of April 2009 between:**

Labrador Entertainment, Inc (and dba Spider Cues)
22400 Sentar Rd.
Woodland Hills, Ca. 91364
USA

(hereinafter referred to as "Publisher") of the first part, and

Beatbox Music Pty Ltd
Suite 9, 7 Ramsay Rd
Pennant Hills, NSW 2120
Australia
(hereinafter referred to as "Sub-Publisher") of the second part.

**WHEREAS:**
Publisher (a member of ASCAP, BMI, SESAC, and SOCAN) is the owner of the
recordings known as the **Spider Cues Music Library** (published by Labrador Great
Music ASCAP, Labrador Good Music BMI, Lab Good Music, SESAC, Red Great
Music - SOCAN -) and wishes to appoint the Sub Publisher (a member of APRA) as sole
Sub Publisher for the recordings in the territories of Australia, New Zealand, Fiji
(hereinafter referred to as "the licensed territory").

**NOW THEREFORE** in consideration of the premises and of the respective covenants
and conditions hereinafter contained **IT IS HEREBY AGREED** as follows:

1. Subject to the terms and conditions and limitation hereinafter mentioned the Publisher
hereby appoints the Sub-Publisher as their sole Sub Publisher for the licensed territory for
the introduction and exploitation as hereinafter mentioned of all recordings made to be
issued during the term of this Agreement and any extensions thereto by the Publisher of
musical compositions and sound recordings issued as part of the background music
library catalogue known as **Spider Cues Music** (hereinafter referred to as "the
recordings").

2. The term of this Agreement shall be for a period of 3 (three) years from the first day of
April 2009 with automatic renewal for additional 1 year periods unless written notice that
either part herein wishes to terminate this agreement is given by either party and delivered
to the other party at least 3 months prior to the last termination.

3. The Sub Publisher agrees to import each of the recordings as required issued by the Publisher on DVD, hard drive or other media during the term of this Agreement or any extension thereto. The Sub-Publisher shall remit to the Publisher all monies due for any associated transport charges within sixty days of receipt of all such invoices.

4. The Sub Publisher agrees to supply the Recordings or copies thereof at its own expense to its clients for audition selection and use at their own place of business; such recordings may be supplied on compact disc or in any audio file format and on any carrier system devised or yet to be devised subject to the following terms and conditions:

The supply of the Recordings above shall include the dissemination of the Recordings for audition and re-recording (downloading) via the Agent's web site or any Internet or Intranet, local area network, hard disc drive or any other carrier or medium.

5. The Sub-Publisher shall have the right to grant non-exclusive licenses in the licensed territory authorising the dubbing only of the recordings on to soundtracks of motion picture films television films video tapes as well as the dubbing and mechanical reproduction for radio transcriptions and any audio or audio-visual soundcarrier and which productions may be exported to all countries of the world. The Sub-Publisher shall pay to Publisher 50% (fifty per cent) of all fees accruing from such licenses relating to the use of the recordings.

6. It is agreed that the recordings will not be sold as a BUY-OUT LIBRARY or as normal commercial records to the general public including retail sales, record club sales, or other commercial sales.

7. In consideration of the grant of rights hereinafter made by Publisher, Sub-Publisher represents and warrants that it will use its best commercial endeavours to exploit the recordings for the benefit of the parties concerned.

8. The Performing Rights in the recordings are subject to the rights of the Copyright Societies in the USA (ASCAP, BMI and SESAC) and its affiliated societies in the licensed territory. It is agreed that the full "publisher's share" (six twelfths) of performing fees accruing from such rights shall be paid as follows: $3/12^{th}$ to the Sub-Publisher and $3/12^{th}$ to the Owner directly by the societies.

2

9. Sub-Publisher shall remit to Publisher 50% (fifty per cent) of all monies received for exploitation of the library, including mechanical/ synchronization royalties received by Sub-Publisher as a result of exploitation of rights herein granted to Sub-Publisher.

10. a) Royalty statements shall be rendered by the Sub-Publisher to the Publisher within 90 (ninety) days of each half yearly period ending 30th June and 31st December in each year showing all monies received for exploitation of the library, including mechanical/synchronisation royalties and licence fees earned.

b) All payments made by the Sub-Publisher to the Publisher hereunder shall be in the currency of the Publisher (or such other currency as the Publisher may from time to time direct in writing) and the exchange rate to be utilised shall be that in effect on the date that payment is made. All costs of converting from the currencies utilised by the Sub-Publisher to the currency of the Publisher shall be borne by the Sub-Publisher.

11. On the termination of this Agreement or any extension thereof all rights in the recordings shall revert to the Publisher and all compact disc or DVD copies of the recordings supplied by the Publisher held by the Sub-Publisher shall become the absolute property of the Publisher. Notwithstanding the foregoing, but only regarding the Recordings in which Sub-Publisher has obtained a license, Sub-Publisher shall continue to render statements to the Publisher in respect of royalties and other monies earned under the provisions of this Agreement for a period of not less than six (6) months but not more than one (1) year beyond the termination of this Agreement or any extensions thereof.

12. The Sub-Publisher shall not have the right to part with or assign to any other person or party any of the benefits licensed to it under the terms of this Agreement without the prior written consent of the Publisher.

13. Should the Sub-Publisher default in rendering any statement of account or in making any payments as hereinbefore provided or in fully complying with any material terms or conditions herein required of the Sub-Publisher to be performed, and should such default continue for 30 (thirty) days after the Publisher has sent notice of such default by registered mail and fax to the Sub-Publisher, the Publisher shall have the right to terminate and cancel this Agreement as of expiration of the said 30 (thirty) days, or should the Sub-Publisher make any assignment for the benefit of creditors or take the benefit of any bankruptcy act (save for the purpose of reconstruction) or should the Sub-Publisher be petitioned into bankruptcy, then in each and every such event the Publisher shall be entitled to terminate and cancel this Agreement, and the Sub-Publisher shall account to the Publisher forthwith for any outstanding fees not accounted for up to the time of such cancellation.

3

14. All rights not herein expressly granted by the Publisher to Sub-Publisher are all hereby reserved to the Publisher without limitation whatsoever.

15. This Agreement shall be binding upon the parties hereto and their respective successors and permitted assigns. No amendment shall be made hereto except in writing by all parties hereto. This Agreement constitutes the entire agreement between the parties hereto at the date hereof and the parties hereto enter into it solely on that basis without reliance on any other representations whatsoever.

16. The Publisher hereby represents and warrants and undertakes that:

 (i) The Publisher is free to enter into this Agreement;

 (ii) during the term of this Agreement the Publisher not grant any rights in the Compositions to any person firm or company other than the Sub Publisher for the Territory or enter into any agreement or act in any way which would derogate from the rights granted to the Sub Publisher hereunder;

 (iii) the Publisher is party to or has entered into good and valid contracts with the writers and composers of the Compositions and such contracts enable it to comply with all terms and conditions hereof and the Publisher will do all things necessary not to be in breach of the same during the term hereof.

 (iv) the Compositions are original and that none of the Compositions infringes any other copyright work or the rights of any third party

 (v) The Publisher agrees to indemnify and hold harmless the Sub Publisher, its successors and assigns of and from any and all loss, liability and expense incurred by reason of any infringement of rights or other claim inconsistent with the Publishers guarantees, warranties, representations and undertakings contained in this Agreement. This indemnity shall not be adversely affected should exploitation of the recordings continue after notice of infringement of rights or other claim has been received by the Sub Publisher.

(vi) The Sub Publisher agrees to indemnify and hold harmless the Publisher, it's successors and assigns of and from any and all loss, liability and expense incurred by reason of any infringement of rights or other claim inconsistent with the Sub Publishers guarantees, warranties, representations and undertakings contained in this Agreement. This indemnity shall not be adversely affected should exploitation of the recordings continue after notice of infringement of rights or other claim has been received by the Publisher.

4

17. Sub-Publisher shall deduct or shall authorise the deduction from royalty payments of any sums which may be demanded from Sub-Publisher in respect of the remittance of such payments by the governments or other fiscal authorities of the licensed territory. In such event Sub-Publisher shall supply the Publisher such information or documentation as may be available to Sub-Publisher together with confirmation as to the sums so demanded and paid.

18. Sub-Publisher shall keep true and correct books of account as far as they relate to the royalties generated by the recordings which shall be (subject to at least 30 (thirty) days prior written notice) open to inspection at the Publisher's expense during regular business hours and at a mutually convenient time and at Sub-Publisher's normal place of business by the Publisher or his representative.

19. All notices, writs, legal process or any other documents served under or in respect of this Agreement shall be addressed to the party to be served at the address of that party hereinbefore appearing or at such other address for service as may be notified by each to the other in writing and shall only be delivered by hand or sent by registered letter or recorded delivery letter.

20. This agreement shall be binding and shall inure to the benefit of the parties hereto, their successors and assigns and shall be construed in accordance with the laws and exclusive jurisdiction of The State of California of the USA.

21.  Sub Publisher agrees to pay Publisher upon the signing of this contract, a non-refundable advance of US$3500.00 (Thirty-five hundred US dollars and no cents) against future royalties described in this contract.

22. Beatbox Music and its associates will not knowingly contact, commission, or employ any composer with whom Labrador Entertainment, Inc (and dba Spider Cues) has an agreement.

AS WITNESS the hands of the duly authorised representatives of the parties the day and year first above written.

For and on behalf of                          For and on behalf of

Labrador Entertainment, Inc
(and dba Spider Cues)                         Beatbox Music Pty Ltd