BLAISE & NITSCHKE, P.C.
HEATHER L. BLAISE, ESQ. (SBN 261619)
123 N. Wacker Drive, Suite 250
Chicago, IL 60606
Telephone: 312-448-6602
Email: hblaise@blaisenitschkelaw.com

Attorneys for Plaintiff,
BEATBOX MUSIC PTY, LTD.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BEATBOX MUSIC PTY, LTD.,<br><br>Plaintiff,<br><br>v.<br><br>LABRADOR ENTERTAINMENT, INC. D/B/A SPIDER CUES MUSIC LIBRARY, a California corporation; NOEL PALMER WEBB, an individual; MICHAEL COHEN, an individual; LABRADOR ENTERTAINMENT, LLC; MCPC HOLDINGS, LLC; WEBB FAMILY TRUST and DOES 1-20, inclusive,<br><br>Defendants. | CASE NO: 2:17-cv-6108 MWF (JPRx)<br>*Assigned to the Hon. Michael W. Fitzgerald*<br><br>**PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS THE SECOND, FOURTH, SEVENTH, AND EIGHTH COUNTS FROM FAC FOR FAILURE TO STATE A CLAIM; AND THEIR MOTION TO STRIKE PRAYER FOR ATTORNEY'S FEES AND PUNITIVE DAMAGES** |
| MICHAEL COHEN, an individual;<br><br>Cross-Complainant,<br><br>v.<br><br>LABRADOR ENTERTAINMENT, INC. D/B/A SPIDER CUES MUSIC LIBRARY, a California Corporation<br><br>Cross-Defendant. | **Hearing Date:   March 30, 2020**<br>**Time:          10:00 A.M.**<br>**Courtroom:      5A**<br><br>Trial Date:        June 23, 2020<br>Cross-Claim Filed: November 21, 2017<br>Action Filed:      August 17, 2017 |

# TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................................ii

TABLE OF AUTHORITIES ..........................................................................iii

LOCAL RULE 7-3 COMPLIANCE ................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES......................................1

INTRODUCTION .........................................................................................1

ARGUMENT ................................................................................................3

  I. Legal Standard ......................................................................................3

    A. Dismissal Under Rule 12(b)(6) .........................................................3

    B. Striking Allegations Under Rule 12(f) ...............................................4

  II. Beatbox's Count II for Breach of Covenant of Good Faith and Fair Dealing is Well-Pled ................................................................................5

  III. Punitive Damages And Requests For Attorneys' Fees Should Not Be Stricken Under These Facts ..........................................................................12

  IV. Beatbox Has Successfully Pled That Labrador, Inc. Owed Beatbox Fiduciary Duties.........................................................................................15

  V. Plaintiff's Claims for Fraudulent Conveyance are Timely; the Labrador Defendants Knew About the New Zealand Judgment at the Time of the Transfers and Plaintiff Will be Prejudiced by Dismissal of its Claims...................................17

  VI. This Court May Infer Labrador's Fraudulent Intent. ........................20

  VII. The Fraudulent Transfers are Voidable. .........................................23

  VIII. Plaintiff Will Suffer Undue Prejudice Should this Court Dismiss its Fraudulent Conveyance Claims. ..................................................................24

# TABLE OF AUTHORITIES

**Cases**

*Adams v. Bell*,
5 Cal. 2d 697 (1936) ............................................................................................. 19

*Alexsam Inc. v. Green Dot Corp.*,
No. 2:15-cv-05742-CAS (PLAx), 2017 U.S. Dist. LEXIS 87550,
at *11-12 (C.D. Cal. June 5, 2017) ......................................................................... 9

*Andrews v. Mobile Aire Estates*,
125 Cal. App. 4th 578, 589, 22 Cal. Rptr. 3d 832 (2d Dist. 2005) ............. 10, 11

*Applied Equipment Corp. v. Litton Saudi Arabia Ltd.*
(1994) 7 Cal.4th 503, 517 [28 Cal. Rptr. 2d 475, 869 P.2d 454]. ....................... 8

*Ashcroft v. Iqbal*,
556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) .......................... 3

*Bautista v. Los Angeles County*,
216 F.3d 837, 843 (9th Cir. 2000) ....................................................................... 12

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) ......................... 3

*Benson v. Harriman*,
55 Cal. App. 483, 490 (Ct. App. Cal. 1921) ........................................................ 19

*Best Buy Stores, L.P. v. Manteca Lifestyle Ctr., LLC*,
859 F. Supp. 2d 1138, 1151-52 (E.D. Cal. 2012) .............................................. 10

*Bezaire v. Fidelity & Deposit Co.*,
12 Cal.App.3d 888, 892 [91 Cal.Rptr. 142] ....................................................... 13

*Boland, Inc. v. Rolf C. Hagen (USA) Corp.*,
685 F. Supp. 2d 1094, 1103 (E.D. Cal. 2010) ................................................... 10

*Branch v. Tunnell*,
14 F.3d 449, 454 (9th  [*706]  Cir. 1994) ............................................................ 4

*Branson v. Sun-Diamond Growers*,
24 Cal. App. 4th 327, 347-48, 29 Cal. Rptr. 2d 314, 325 (1994). ................... 12

*Cal. Viking Sprinkler Co. v. Pac. Indem. Co.*,
213 Cal. App. 2d 844, 850, 29 Cal. Rptr. 194 (1963) ....................................... 16

*Carma Developers (Cal.), Inc. v. Marathon Dev. Cal., Inc.*, 2 Cal.4th 342, 373, 6 Cal.
Rptr. 2d 467, 826 P.2d 710 (1992) .............................................................. 5, 10

*Cortez v. Vogt*,
52 Cal.App.4th 917 (1997) ................................................................................... 19

*Daniel v. Del Valle (In re Del Valle)*,
577 B.R. 789, 815 (Bankr. C.D. Cal. 2017) ....................................................... 14

*Denevi*,
121 Cal. App. 4th at 1218 ....................................................................................... 5

*Diamond Multimedia Systems, Inc. v. Superior Court*
(1999) 19 Cal.4th 1036, 1064 [80 Cal. Rptr. 2d 828, 968 P.2d 539] ............. 7, 8

-iii-

*Dion LLC v. Infotek Wireless, Inc.*,
  2007 U.S. Dist. LEXIS 83980 at *9 (N.D. Cal. 2007) ................................. 11, 12
*Eminence Capital, LLC v. Aspeon, Inc.*,
  316 F.3d 1048, 1051 (9th Cir. 2003) ................................................................ 11
*Erlich v. Menezes*,
  21 Cal. 4th 543, 553-54, 87 Cal. Rptr. 2d 886, 893,
  981 P.2d 978, 984-85 (1999) ........................................................................ 7, 8
*Fantasy Inc. v. Fogerty*,
  984 F.2d 1524, 1528 (9th Cir. 1993) ................................................................. 4
*Filip v. Bucurenciu*,
  129 Cal. App. 4th 825, 28 Cal. Rptr. 3d 884, 887 (Ct. App. 2005) ................. 23
*Fitzgerald Publ'g Co., Inc. v. Baylor Publ'g Co., Inc.*,
  807 F.2d 1110, 1116 (2nd Cir. 1986) ............................................................... 20
*Freeman & Mills, Inc. v. Belcher Oil Co.*,
  11 Cal. 4th 85, 87, 44 Cal. Rptr. 2d 420, 421, 900 P.2d 669, 670 (1995) ...... 5, 7
*Gibson v. Gov't Emps. Ins. Co.*,
  162 Cal. App. 3d 441, 445, 208 Cal. Rptr. 511, 512 (1984). ........................... 15
*Gill v. Stern (In re Stern)*,
  345 F.3d 1036, 1042 n.6 (9th Cir. 2003) .......................................................... 22
*Glendale Fed. Sav. & Loan Ass'n v. Marina View Heights Dev. Co.*,
  66 Cal. App. 3d 101, 149, 135 Cal. Rptr. 802, 831 (1977) .............................. 14
*Godfrey v. Steinpress*
  (1982) 128 Cal.App.3d 154 [180 Cal.Rptr. 95] ................................................. 6
*Gruenberg v. Aetna Ins. Co.*,
  9 Cal. 3d 566, 573, 108 Cal. Rptr. 480, 510 P.2d 1032 (1973) ................... 10, 11
*Grynberg v. Citation Oil & Gas Corp.*
  (S.D. 1997) 1997 SD 121 [573 N.W.2d 493, 501] ............................................. 8
*Gutierrez v. Girardi*, \
  194 Cal. App. 4th 925, 932, 125 Cal. Rptr. 3d 210, 215 (2011) ...................... 17
*Harris v. Atlantic Richfield Co.*
  (1993) 14 Cal.App.4th 70, 78 [17 Cal. Rptr. 2d 649] ........................................ 6
*Heffernan v. Bennett & Armour*,
  110 Cal.App.2d 564, 588 [243 P.2d 846] ......................................................... 13
*Hollywood Foreign Press Ass'n v. Red Zone Capital Partners II, LLP*,
  No. CV 10-8833-VBF(FMOx), 2011 U.S. Dist. LEXIS 165132,
  at *3-4 (C.D. Cal. Aug. 8, 2011) ...................................................................... 16
*Holmes v. Elec. Document Processing, Inc.*,
  966 F. Supp. 2d 925, 930 (N.D. Cal. 2013) ....................................................... 4
*Knappenberger v. City of Phoenix*,
  566 F.3d 936, 942 (9th Cir. 2009) ..................................................................... 4
*Kransco v. Am. Empire Surplus Lines Ins. Co.*,

23 Cal. 4th 390, 410, 97 Cal. Rptr. 2d 151, 166, 2 P.3d 1, 15 (2000) ..............12

*Kupetz v. Wolf*,
   845 F.2d 842, 846 (9th Cir. 1988)................................................................20

*L. A. Printex Indus., Inc. v. Design Collection, Inc.*,
   2011 U.S. Dist. LEXIS 166275 at *5 (C. D. Cal. 2011) ..................................20

*Lazar v. Superior Court*,
   supra, 12 Cal.4th at p. 646 ............................................................................7

*Locke v. Warner Bros.*,
   57 Cal. App. 4th 354, 367, 66 Cal. Rptr. 2d 921, 927 (1997).........................10

*Lopez v. Smith*,
   203 F.3d 1122, 1127 (9th Cir. 2000)................................................................4

*Los Franciscos Way*,
   385 F.3d at 1191-92 (9th Cir. 2004)................................................................21

*Macedo v. Bosio*,
   86 Cal.App.4th 1044, 1049-50 (2001) ...........................................................19

*Marsu, B.V. v. Walt Disney Co.*,
   185 F.3d 932, 937 (9th Cir. 1999)..................................................................10

*McCullough v. Lennar Corp.*,
   2011 U.S. Dist. LEXIS 44804, 2011 WL 1585017,
   at *13 (S.D. Cal., April. 26, 2011) ..................................................................16

*Myers Bldg. Indus., Ltd. v. Interface Tech., Inc.*,
   13 Cal. App. 4th 949, 968-73, 17 Cal. Rptr. 2d 242, 253-56 (1993) ...............14

*NuCal Foods*,
   918 F. Supp. 2d 1023......................................................................................6

*Pac. Rollforming, LLC v. Trakloc N. Am., LLC*,
   No. 07cv1897-L(JMA), 2010 U.S. Dist. LEXIS 60756,
   at *12-13 (S.D. Cal. June 17, 2010) ............................................................5, 11

*Papasan v. Allain*,
   478 U.S. 265, 286, 106 S. Ct. 2932, 92 L. Ed. 2d 209 (1986) ...........................3

*Parrino v. FHP, Inc.*,
   146 F.3d 699, 705-06 (9th Cir. 1998)................................................................4

*Persson v. Smart Inventions, Inc.*,
   125 Cal. App. 4th 1141, 1153, 23 Cal. Rptr. 3d 335 (2005)..............................6

*Petrie v. Elec. Game Card, Inc.*,
   761 F.3d 959, 965 (9th Cir. 2014)....................................................................4

*Platte Anchor Bolt, Inc. v. IHI, Inc.*,
   352 F. Supp. 2d 1048, 1057 (N.D. Cal. 2004) ......................................................4

*Prentice v. North Amer. Title Guar. Corp.*,
   59 Cal.2d 618, 620 [30 Cal.Rptr. 821, 381 P.2d 645].......................................13

*Quigley v. Pet*,
   162 Cal. App. 3d 877, 888, 208 Cal. Rptr. 394, 394 (1984)..............................13

-v-

PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS THE SECOND, FOURTH, SEVENTH, AND EIGHTH COUNTS FROM FAC FOR FAILURE TO STATE A CLAIM; AND THEIR MOTION TO STRIKE PRAYER FOR ATTORNEY'S FEES AND PUNITIVE DAMAGES

*R.J. Kuhl Corp. v. Sullivan*,
   13 Cal. App. 4th 1589, 1602, 17 Cal. Rptr. 2d 425 (3rd Dist. 1993) ............... 10
*Roberts v. Ball, Hunt, Hart, Brown & Baerwitz*,
   57 Cal.App.3d 104, 112 [128 Cal.Rptr. 901] ............................................ 14
*Robinson Helicopter Co., Inc. v. Dana Corp.*,
   34 Cal. 4th 979, 991-93, 22 Cal. Rptr. 3d 352, 360-62,
   102 P.3d 268, 275-76 (2004) .......................................................... 6, 7, 8, 9
*Santisas v Goodin*,
   17 Cal. 4th 599, 619, 71 Cal. Rptr. 2d 830, 951 P.2d 399 ............................. 13
*Somers v. United States F. & G. Co.*
   (1923) 191 Cal. 542, 547 [217 P. 746] ................................................... 14
*Stanley v. Richmond*
   (1995) 35 Cal.App.4th 1070, 1086 [41 Cal. Rptr. 2d 768] ............................. 17
*Tomerlin v. Canadian Indem. Co.*,
   61 Cal. 2d 638, 644, 39 Cal. Rptr. 731, 394 P.2d 571 (1964) .......................... 16
*Turner v. Kendall (In re Turner)*,
   Nos. NC-06-1263-SDR, NC-06-1336-SDR, 2007 Bankr.
   LEXIS 4834, at *19 (B.A.P. 9th Cir. Sep. 18, 2007) ............................... passim
*United States v. 5208 Los Franciscos Way*,
   385 F.3d 1187, 1191-92 (9th Cir. 2004) ................................................. 20
*Van't Rood v. County of Santa Clara*,
   113 Cal. App. 4th 549, 562, 6 Cal. Rptr. 3d 746 (2003) ................................. 16
*Varco-Pruden, Inc. v. Hampshire Constr. Co.*
   (1975) 50 Cal.App.3d 654, 660 [123 Cal.Rptr. 606] ...................................... 14
*Zagarian v. BMW of N. Am., LLC*,
   No. CV 18-4857-RSWL-PLA, 2019 U.S. Dist. LEXIS 200584,
   at *7-8 (C.D. Cal. Oct. 23, 2019) ......................................................... 9

**Statutes**

Cal Civ Code § 2318 .......................................................................... 16
Cal. Civ. Code § 2315 ......................................................................... 16
Cal. Civ. Code § 2316 ......................................................................... 16
Cal. Civ. Code § 2317 ......................................................................... 16
CC § 3439.04 ............................................................................ 20, 21, 23
CC § 3439.05 ................................................................................... 22
CC § 3439.07 .............................................................................. 20, 23
CC § 3439.08 ................................................................................... 23
CC § 3439.09 ................................................................................... 20
Civ. Code, § 2772 .............................................................................. 14
Civ. Code, § 3294 .............................................................................. 12
Civil Code § 2778 .............................................................................. 14
Code Civ. Proc., § 1021 ....................................................................... 13

-vi-

PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS THE SECOND, FOURTH, SEVENTH, AND EIGHTH COUNTS FROM FAC FOR FAILURE TO
STATE A CLAIM; AND THEIR MOTION TO STRIKE PRAYER FOR ATTORNEY'S FEES AND PUNITIVE DAMAGES

**Other Authorities**

*Tourek et al.*, Bucking the "Trend": The Uniform Commercial Code, the Economic
        Loss Doctrine, and Common Law Causes of Action for Fraud and
        Misrepresentation (1999) 84 Iowa L.Rev. 875, 894 ...........................................8

**Rules**

Federal Rule of Civil Procedure 15(a)...............................................................10
Federal Rule of Civil Procedure 12(b)(6)..............................................................3
Federal Rule of Civil Procedure 12(f) ..................................................................4
Federal Rule of Civil Procedure 8(d).....................................................................5

**Treatises**

Restatement (Second) of Contracts ........................................................................12

Plaintiff Beatbox Music Pty., Ltd. ("Beatbox") respectfully submits its Response in Opposition to Defendants Labrador Entertainment, Inc. D/B/A Spider Cues Music Library, a California Corporation; Noel Palmer Webb, an individual; Labrador Entertainment, LLC; and Webb Family Trust's (hereinafter "Labrador Defendants") Motion to Dismiss the Second, Fourth, Seventh, and Eighth Counts from the First Amended Complaint ("FAC") for Failure to State a Claim; and Motion to Strike Prayer for Attorney's Fees and Punitive Damages; Memorandum of Points and Authorities (FRCP 12(b)(6) and 12(f)) (hereinafter "Motion to Dismiss" or "MTD"). In support thereof, Plaintiff states as follows:

## LOCAL RULE 7-3 COMPLIANCE

Counsel for Plaintiff denies that Counsel for Labrador Defendants met his obligations under Local Rule 7-3. The undersigned counsel returned Mr. Rosner's call on February 19, 2020, leaving a detailed message with direct contact information and Mr. Rosner never returned that call. Mr. Rosner's letter dated February 22, 2020 sought extensions which counsel for Beatbox was without authority to grant in light of this Court's scheduling orders when Defendant Labrador was not timely in obtaining new counsel and answering the FAC by February 17, 2020, as ordered by this Court.

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

On or about February 14, 2008, Defendant Labrador, Inc. and Defendant Composer Michael Alan Cohen ("Cohen") entered into a written agreement wherein Cohen assigned to Labrador, Inc., exclusive publishing rights worldwide to certain compositions, ("Cohen's Compositions"), including, "Eminem Esque," the track from the Library, the subject matter of this case, for sale and/or exploitation "Cohen Agreement." FAC ¶16.

Cohen represented and warranted that Cohen's Compositions were his "sole,

exclusive and original work" and that they did not "infringe upon or violate the copyrights or any other rights whatsoever of any person, firm, or entity." FAC ¶16.

On or about April 1, 2009 Labrador, Inc., the publisher and Beatbox, the sub-publisher, entered into an agreement appointing Beatbox as Labrador, Inc.'s sole sub-publisher for the Licensed Territory ("Agreement"). These musical compositions and sound recordings issued as part of the Agreement were part of the Library ("Beatbox Recordings"). Exhibit A ¶1. Beatbox had the right to grant non-exclusive licenses in the Licensed Territory.

The FAC alleges that in Section 16(iv) of the 2009 Agreement, Labrador represents and warrants that all compositions subject to the 2009 Agreement are original and that none of the compositions infringes upon any other copyrighted work or the rights of any third party. Under the 2009 Agreement, Labrador "agrees to indemnify and hold harmless the Sub-Publisher, its successors and assigns of and from any and all loss, liability and expense incurred by reason of any infringement of rights or other claim inconsistent with the Publisher's guarantees, warranties, representations, and undertaking contained in this Agreement" ("Indemnity Clause"). See attached Exhibit A. FAC ¶¶21-23.

That the track entitled "Eminem Esque," licensed to the New Zealand National Party and used in their television commercial, allegedly infringed on the rights of 8 Mile in the musical composition known as "Lose Yourself." FAC ¶¶34-35. Lawsuits ensued. A judgment for copyright infringement was entered by a New Zealand Court against the New Zealand National Party, Greg Hamilton, Stan 3 Limited, and Sale Street Studios Limited. *See* "New Zealand Judgement" attached hereto and incorporated herein as Exhibit B. Beatbox incurred and continues to incur substantial sums to defend itself and was subject to numerous offsets for sums owed to it. FAC ¶¶36-41. Defendant Labrador, Inc. has known of the existence of this claim since at least 2014. FAC ¶42.

Plaintiff added new causes of action of Breach of Fiduciary Duty against

Labrador, Inc.; Alter Ego against Defendants, Labrador, Inc., Labrador LLC, Webb and Webb Family Trust; and Fraudulent Conveyances at Common Law and Under California's UFTA against Defendants, Labrador Inc., Labrador LLC, Webb and Webb Family Trust. Defendants, Labrador, Inc., Labrador LLC, Webb and Webb Family Trust now bring a Rule 12(b)(6) Motion to Dismiss on Counts II (Breach of Covenant of Good Faith and Fair Dealing), IV (Breach of Fiduciary Duty), VII (Fraudulent Conveyance at Common Law), and VIII(Fraudulent Conveyance under California's Uniform Fraudulent Transfer Act), and to strike requests for an award of punitive damages and attorneys' fees under Rule 12(f). For all of the reasons articulated below, the Labrador Defendants' Motion should be denied, or in the alternative, Plaintiff should be granted leave to amend.

## ARGUMENT

### I. Legal Standard
#### A. Dismissal Under Rule 12(b)(6)

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may seek to dismiss a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion, a complaint must articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). Although a pleading need not contain "detailed factual allegations," it must contain "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Id.* at 555 (*citing Papasan v. Allain*, 478 U.S. 265, 286, 106 S. Ct. 2932, 92 L. Ed. 2d 209 (1986)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009). In evaluating the sufficiency of a complaint, courts must accept all factual allegations as true. *Id.* (*citing Twombly*, 550

U.S. at 555). Legal conclusions, in contrast, are not entitled to the assumption of truth. *Id*.

Should a court dismiss certain claims, "[l]eave to amend should be granted unless the district court 'determines that the pleading could not possibly be cured by the allegation of other facts.'" *Knappenberger v. City of Phoenix*, 566 F.3d 936, 942 (9th Cir. 2009) (quoting [*11] *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (*en banc*) (alterations in original)).

## B. Striking Allegations Under Rule 12(f)

Federal Rule of Civil Procedure 12(f) allows the Court to strike from a pleading any "redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Motions to strike are generally disfavored. *Petrie v. Elec. Game Card, Inc.*, 761 F.3d 959, 965 (9th Cir. 2014); see also *Holmes v. Elec. Document Processing, Inc.*, 966 F. Supp. 2d 925, 930 (N.D. Cal. 2013) (quoting *Platte Anchor Bolt, Inc. v. IHI, Inc.*, 352 F. Supp. 2d 1048, 1057 (N.D. Cal. 2004)) (determining that "[m]otions to strike are generally disfavored" and should not be granted unless the matter stricken has no possible bearing on the subject matter of the litigation). Ultimately, however, granting a motion to strike is subject to the district court's sound discretion. *Holmes*, 966 F. Supp. 2d at 930; *see also Fantasy Inc. v. Fogerty*, 984 F.2d 1524, 1528 (9th Cir. 1993), rev'd on other grounds, 510 U.S. 517, 114 S. Ct. 1023, 127 L. Ed. 2d 455 (1994).

Plaintiff inadvertently did not re-file the Exhibits to the Original Complaint ("OC") when it filed the First Amended Complaint ("FAC"). However, the exhibits referenced in the FAC are exactly the same as the exhibits attached to the OC. Indeed, counsel for the parties to this Motion have agreed to stipulate to the re-filing of the FAC to include the Exhibits. In addition, in ruling on a motion to dismiss this Court may consider documents "whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the

1   [plaintiff's] pleading." *Parrino v. FHP, Inc.*, 146 F.3d 699, 705-06 (9th Cir. 1998),

2   quoting *Branch v. Tunnell*, 14 F.3d 449, 454 (9th [*706] Cir. 1994).

3   **II. Beatbox's Count II for Breach of Covenant of Good Faith and Fair**

4   **Dealing is Well-Pled**

5       First, Defendants argue that Plaintiff's Count II of the FAC for Breach of

6   Covenant of Good Faith and Fair Dealing is duplicative of the first cause of action for

7   breach of contract. Motion to Dismiss at pp. 5-6. This, however, is not a sufficient

8   reason for dismissal. Pursuant to Federal Rule of Civil Procedure 8(d), Plaintiff is

9   entitled to allege alternative and inconsistent claims for relief. To the extent the

10  allegations contained in the FAC under Count I are sufficient for relief under the

11  breach of contract claim, Beatbox may be able to recover under a breach of contract

12  theory. To the extent they do not amount to breach of contract, Beatbox will able to

13  show, for example, that the Labrador Defendants committed tort violations in

14  addition to breaching the contract. *Pac. Rollforming, LLC v. Trakloc N. Am., LLC*,

15  No. 07cv1897-L(JMA), 2010 U.S. Dist. LEXIS 60756, at *12-13 (S.D. Cal. June 17,

16  2010), citing *Carma Developers (Cal.), Inc. v. Marathon Dev. Cal., Inc.*, 2 Cal.4th

17  342, 373, 6 Cal. Rptr. 2d 467, 826 P.2d 710 (1992). The defrauded plaintiff has two

18  concurrent remedies to obtain relief on the same state of facts. In order to avoid a

19  double recovery and inconsistent judgment, the plaintiff must elect between the

20  remedies. *Pac. Rollforming, LLC v. Trakloc N. Am., LLC*, No. 07cv1897-L(JMA),

21  2010 U.S. Dist. LEXIS 60756, at *24-25 (S.D. Cal. June 17, 2010) (citing *Denevi*,

22  121 Cal. App. 4th at 1218.) Ordinarily, a plaintiff cannot be compelled to make the

23  election at the pleading stage, except if the plaintiff has gained some advantage that

24  would make it inequitable to permit the continued pursuit of an otherwise available

25  remedy. *Id*.

26      Despite the Labrador Defendants' argument that *Freeman & Mills, Inc. v.*

27  *Belcher Oil Co.* stands for the proposition that Breach of Covenant of Good Faith and

28  Fair Dealing is "limited to insurance contracts." Motion to Dismiss at p. 5, ln. 14.

-5-

PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS THE SECOND, FOURTH, SEVENTH, AND EIGHTH COUNTS FROM FAC FOR FAILURE TO STATE A CLAIM; AND THEIR MOTION TO STRIKE PRAYER FOR ATTORNEY'S FEES AND PUNITIVE DAMAGES

*Freeman & Mills, Inc. v. Belcher Oil Co.*, 11 Cal. 4th 85, 87, 44 Cal. Rptr. 2d 420, 421, 900 P.2d 669, 670 (1995). However, in that case and in the cases that follow, the Supreme Court of California has made clear that tort liability for Breach of Covenant of Good Faith and Fair Dealing when there is an independent duty arising from principles of tort law by way of the breached contract. *Id.*

Indeed, the most widely acknowledged exception to the general rule that only contract damages are available for breaches of the covenant of good faith and fair dealing is when the defendant's conduct constitutes a tort as well as a breach of the contract. For example, when one party commits a fraud and/or misrepresentation during the contract formation or performance, the injured party may recover in contract and tort. *See Godfrey v. Steinpress* (1982) 128 Cal.App.3d 154 [180 Cal.Rptr. 95] (knowing nondisclosure of termite damage.) *Robinson Helicopter Co., Inc. v. Dana Corp.*, 34 Cal. 4th 979, 991-93, 22 Cal. Rptr. 3d 352, 360-62, 102 P.3d 268, 275-76 (2004) (holding that the economic loss rule did not apply when the plaintiff alleged damages as a result of defendant's misrepresentations above and beyond the contract in the form of a costly recall, FAA disciplinary action for nonconformity with its standards, and liability for a potential helicopter crash); *NuCal Foods*, 918 F. Supp. 2d 1023 (holding that the economic loss rule did not apply when the plaintiff alleged damages as a result of defendant's misrepresentations and omissions above and beyond contract damages in the form of eggs from other producers, cartons, packaging materials, and liability for damages for those who were sickened by the eggs) (emphasis added). *Persson v. Smart Inventions, Inc.*, 125 Cal. App. 4th 1141, 1153, 23 Cal. Rptr. 3d 335 (2005) (if a defrauded party is induced by false representations to execute a contract, the party has the option either of rescinding the contract, or affirming it and recovering tort damages). *See also Harris v. Atlantic Richfield Co.* (1993) 14 Cal.App.4th 70, 78 [17 Cal. Rptr. 2d 649] ["when one party commits a fraud during the contract formation or performance, the injured party may recover in contract and tort"].)

1          Outside the insurance context, "a tortious breach of contract [. . .] may be

2 found when (1) the breach is accompanied by a traditional common law tort, such as

3 fraud or conversion; (2) the means used to breach  the contract are tortious, involving

4 deceit or undue coercion or; (3) one party intentionally breaches the contract

5 intending or knowing that such a breach will cause severe, unmitigable harm in the

6 form of mental anguish, personal hardship, or substantial consequential damages."

7 *Erlich v. Menezes*, 21 Cal. 4th 543, 553-54, 87 Cal. Rptr. 2d 886, 893, 981 P.2d 978,

8 984-85 (1999) quoting *Freeman & Mills*, supra, 11 Cal. 4th at p. 105 (conc. and dis.

9 opn. of Mosk, J.).)

10          The *Robinson* Court explained that California's public policy also strongly

11 favors the holding that defendants should be subject to tort liability when a

12 defendant's affirmative misrepresentations in a contract or in the formation of a

13 contract and upon which a plaintiff relies and which expose a plaintiff to liability for

14 personal damages independent of the plaintiff's economic loss. In relying on *Erlich v.*

15 *Menezes*, the *Robinson* Court explained that tort remedies should be available to

16 plaintiffs when "the conduct in question is so clear in its deviation from socially

17 useful business practices that the effect of enforcing such tort duties will be […] to

18 aid rather than discourage commerce." *Erlich v. Menezes*, supra, 21 Cal.4th at p. 554.

19 Here, Beatbox advances the public interest in punishing intentional

20 misrepresentations made during contract formation and in deterring such

21 misrepresentations in the future. *Robinson*. As a result of the Labrador Defendant's

22 misrepresentations in contract formation and in their bad faith behavior with regard to

23 complying with their contractual indemnity obligations (as further discussed below)

24 plaintiff "may recover 'out-of-pocket' damages in addition to benefit-of-the bargain

25 damages." *Robinson* (*citing Lazar v. Superior Court*, supra, 12 Cal.4th at p. 646). In

26 addition, "California also has a legitimate and compelling interest in preserving a

27 business climate free of fraud and deceptive practices." *Diamond Multimedia*

28 *Systems, Inc. v. Superior Court* (1999) 19 Cal.4th 1036, 1064 [80 Cal. Rptr. 2d 828,

PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS THE SECOND, FOURTH, SEVENTH, AND EIGHTH COUNTS FROM FAC FOR FAILURE TO
STATE A CLAIM; AND THEIR MOTION TO STRIKE PRAYER FOR ATTORNEY'S FEES AND PUNITIVE DAMAGES

968 P.2d 539]. Importantly, the Labrador Defendants' conduct in misrepresenting the warranty of copyright originality and the impinged rights thereto, cannot be considered a "socially useful business practice." (*Erlich v. Menezes*, *supra* 21 Cal.4th at p. 554.) "Simply put, a contract is not a license allowing one party to cheat or defraud the other." (*Grynberg v. Citation Oil & Gas Corp.* (S.D. 1997) 1997 SD 121 [573 N.W.2d 493, 501].) Allowing Beatbox's claim for the Labrador Defendants' affirmative misrepresentations supports the public policy of discouraging such practices in the future while encouraging a "business climate free of fraud and deceptive practices." *Diamond Multimedia Systems, Inc.*, at p. 1064.

A breach of contract remedy assumes that the parties to a contract can negotiate the risk of loss occasioned by a breach. "When two parties make a contract, they agree upon the rules and regulations which will govern their relationship; the risks inherent in the agreement and the likelihood of its breach. The parties to the contract in essence create a mini-universe for themselves, in which each voluntarily chooses his contracting partner, each trusts the other's willingness to keep his word and honor his commitments, and in which they define their respective obligations, rewards and risks. Under such a scenario, it is appropriate to enforce only such obligations as each party voluntarily assumed, and to give him only such benefits as he expected to receive; this is the function of contract law.'" *Robinson quoting Applied Equipment Corp. v. Litton Saudi Arabia Ltd.* (1994) 7 Cal.4th 503, 517 [28 Cal. Rptr. 2d 475, 869 P.2d 454]. However, "[a] party to a contract cannot rationally calculate the possibility that the other party will deliberately misrepresent terms critical to that contract." *Tourek et al*., Bucking the "Trend": The Uniform Commercial Code, the Economic Loss Doctrine, and Common Law Causes of Action for Fraud and Misrepresentation (1999) 84 Iowa L.Rev. 875, 894. "No rational party would enter into a contract anticipating that they are or will be lied to." *Robinson*. "While parties, perhaps because of their technical expertise and sophistication, can be presumed to understand and allocate the risks relating to negligent product design or

1  manufacture, those same parties cannot, and should not, be expected to anticipate

2  fraud and dishonesty in every transaction." *Robinson Helicopter Co., Inc. v. Dana*

3  *Corp.*, 34 Cal. 4th 979, 991-93, 22 Cal. Rptr. 3d 352, 360-62, 102 P.3d 268, 275-76

4  (2004) quoting (*Id*. at p. 909.) *See also*, *Zagarian v. BMW of N. Am., LLC*, No. CV

5  18-4857-RSWL-PLA, 2019 U.S. Dist. LEXIS 200584, at *7-8 (C.D. Cal. Oct. 23,

6  2019).

7      The facts in the case at hand are very similar to the facts in *Robinson*. The

8  plaintiff, Robinson, was a helicopter manufacturer who sued a helicopter parts

9  supplier, Dana. Dana had been selling Robinson a critical helicopter component and

10  fraudulently affirming that the parts conformed to Robinson's exacting specifications.

11  *Id*. at 270. The parts began to fail at an alarming rate, forcing Robinson to recall

12  affected helicopters, defend itself against federal regulators, and investigate the cause

13  of the failure. *Id*. at 271-72. The *Robinson* court determined that the economic loss

14  rule did not apply to Robinson's claim because Dana's misrepresentations had

15  exposed Robinson to liability in the event of a crash, disciplinary action by the FAA,

16  and the costs of a recall and investigation. *Id*. at 274. "But for" the alleged

17  misrepresentations, the plaintiff "would not have accepted delivery" of the parts in

18  the first place and would not have faced these other damages. *Id*. "Accordingly,

19  Dana's tortious conduct was separate from the breach itself." *Id*. Had Labrador not

20  falsely represented and warranted that Eminem Esque was original and did not

21  infringe upon any other copyrighted work or the rights of any third party, Beatbox

22  "'would not have accepted delivery' of the [composition] in the first place and would

23  not have faced there other damages." Thus, the Labrador Defendants'

24  misrepresentations are separate from the breach itself and entitled Beatbox to seek

25  tort damages in addition to contract damages, including but not limited to punitive

26  damages. *Alexsam Inc. v. Green Dot Corp.*, No. 2:15-cv-05742-CAS (PLAx), 2017

27  U.S. Dist. LEXIS 87550, at *11-12 (C.D. Cal. June 5, 2017). *Quoting Robinson* at

28  274.

1    "Every contract imposes upon each party a duty of good faith and fair dealing

2    in its performance and its enforcement." *Marsu, B.V. v. Walt Disney Co.*, 185 F.3d

3    932, 937 (9th Cir. 1999) (*quoting Carma Developers, Inc. v. Marathon Dev. Cal.,*

4    *Inc.*, 2 Cal. 4th 342, 371, 6 Cal. Rptr. 2d 467, 826 P.2d 710 (1992)). "A typical

5    formulation of the burden imposed by the implied covenant of good faith and fair

6    dealing is 'that neither party will do anything which will injure the right of the other

7    to receive the benefits of the agreement.'" *Andrews v. Mobile Aire Estates*, 125 Cal.

8    App. 4th 578, 589, 22 Cal. Rptr. 3d 832 (2d Dist. 2005) (*quoting Gruenberg v. Aetna*

9    *Ins. Co.*, 9 Cal. 3d 566, 573, 108 Cal. Rptr. 480, 510 P.2d 1032 (1973)). "The

10   covenant of good faith can be breached for objectively unreasonable conduct,

11   regardless of the actor's motive." *Carma Developers*, 2 Cal. 4th at 373;  *see also*

12   *Boland, Inc. v. Rolf C. Hagen (USA) Corp.*, 685 F. Supp. 2d 1094, 1103 (E.D. Cal.

13   2010) (under California law, party need not show bad faith conduct to prove breach

14   of implied covenant). Good faith performance of a contract requires "faithfulness to

15   an agreed common purpose and consistency with the justified expectations of the

16   other party." Bad faith sufficient to constitute a breach of the covenant of good faith

17   and fair dealing includes conduct described as "inaction," "subterfuge," "lack of

18   diligence," "evasion of the spirit of the bargain," and "abuse of power." *Best Buy*

19   *Stores, L.P. v. Manteca Lifestyle Ctr., LLC*, 859 F. Supp. 2d 1138, 1151-52 (E.D. Cal.

20   2012) *citing R.J. Kuhl Corp. v. Sullivan*, 13 Cal. App. 4th 1589, 1602, 17 Cal. Rptr.

21   2d 425 (3rd Dist. 1993).

22      Whether the Labrador Defendants violated the implied covenant and breached

23   the contract by misrepresenting the ownership of the copyright to Eminem Esque;

24   misrepresenting the unfettered rights to Eminem Esque; and committing fraudulent

25   conveyances in failing to meet its indemnity obligations to Beatbox is a question for

26   the trier of fact and not appropriate for dismissal at a pleading stage. *Locke v. Warner*

27   *Bros.*, 57 Cal. App. 4th 354, 367, 66 Cal. Rptr. 2d 921, 927 (1997). To the extent that

28   the FAC fails to sufficiently plead these allegations with the requisite particularity

-10-

PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS THE SECOND, FOURTH, SEVENTH, AND EIGHTH COUNTS FROM FAC FOR FAILURE TO STATE A CLAIM; AND THEIR MOTION TO STRIKE PRAYER FOR ATTORNEY'S FEES AND PUNITIVE DAMAGES

1   and specificity, Rule 15 advises the court that leave to amend shall be freely given

2   when justice so requires. Fed. R. Civ. P. 15(a). "This policy is to be applied with

3   extreme liberality." *Pac. Rollforming, LLC v. Trakloc N. Am., LLC*, No. 07cv1897-

4   L(JMA), 2010 U.S. Dist. LEXIS 60756, at *15 (S.D. Cal. June 17, 2010) *quoting*

5   *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (internal

6   quotation marks and citation omitted). Thus, Beatbox respectfully requests leave to

7   amend should this Court find its allegations so lacking.

8       In this case, the Labrador Defendants failed to disclose to Beatbox that

9   Labrador had any obligation to consult with Defendant Cohen for any use of Eminem

10  Esque and expressly misrepresented that Eminem Esque was original and did not

11  infringe upon any other copyrighted work or the rights of any third party. In addition,

12  the Labrador Defendants have gone to great lengths to shield Defendant Labrador,

13  Inc. from liability under the indemnity requirement of the Publishing Agreement, as

14  further discussed below. It failed to indemnify Plaintiff during the New Zealand

15  proceedings wherein it was a co-defendant for copyright infringement. Moreover, the

16  Labrador Defendants have transferred assets of Labrador, Inc. in an effort to "injure

17  the right of [Beatbox] to receive the benefits of the [indemnity] agreement." *Andrews*

18  *v. Mobile Aire Estates*, 125 Cal. App. 4th 578, 589, 22 Cal. Rptr. 3d 832 (2d Dist.

19  2005) (*quoting Gruenberg v. Aetna Ins. Co.*, 9 Cal. 3d 566, 573, 108 Cal. Rptr. 480,

20  510 P.2d 1032 (1973)).

21      To the extent that Defendant Labrador, Inc. asserts that no contract exists

22  between Plaintiff and the remaining Labrador Defendants, it would be inequitable to

23  allow Defendant Labrador, Inc. to now assert a distinction between itself and its Co-

24  Defendants Noel Webb, Labrador Entertainment LLC and the Webb Family Trust to

25  avoid liability arising from the Agreement. *See Dion LLC v. Infotek Wireless, Inc.*,

26  2007 U.S. Dist. LEXIS 83980 at *9 (N.D. Cal. 2007). In *Dion*, the plaintiff

27  corporation alleged breach of contract against the defendant corporation and an

28  company associated with the defendant. *Id*. at **1-2. No contract existed between the

-11-

PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS THE SECOND, FOURTH, SEVENTH, AND EIGHTH COUNTS FROM FAC FOR FAILURE TO
STATE A CLAIM; AND THEIR MOTION TO STRIKE PRAYER FOR ATTORNEY'S FEES AND PUNITIVE DAMAGES

1    plaintiff and the associated company, however, the plaintiff alleged an alter ego

2    theory as to the associated company. *Id*. at 3. Finding in the plaintiff's favor on a

3    12(b)(6) motion to dismiss, the *Dion* court noted that the plaintiff's complaint had

4    alleged a unity of interest and ownership between the defendant and the associated

5    company and that "[u]nlike later evidentiary stages of [the] lawsuit, in which Dion

6    would be required to prove the elements not only of a breach of contract but of alter

7    ego liability, a pleading need only provide the "bare outlines of [a] claim" within the

8    federal notice pleading framework under Federal Rule of Civil Procedure 8(a). *Dion*

9    at **8-9 (*citing Bautista v. Los Angeles County*, 216 F.3d 837, 843 (9th Cir. 2000).

10       In this case, while no contract exists between Plaintiff and Defendants Noel

11   Webb, Labrador Entertainment LLC and the Webb Family Trust, Plaintiff has

12   sufficiently plead the unity of interest and ownership between those parties so as to

13   allow its claims to survive the instant Motion. *See* FAC, Dkt. 105 at ¶¶78-80.

14       The Labrador Defendants' argument that Count II cannot be pled against

15   Defendant Labrador, LLC, Webb, and the Webb Family Trust ignores that Count III

16   sounds in Alter Ego among the Labrador Defendants and is well-pled and permits

17   liability to extend to each of the Labrador Defendants for the bad faith that they have

18   engaged in as it relates to misrepresentations made at the time of contracting;

19   breaches of fiduciary duties during the term of the contract; and the fraudulent

20   conveyances and bad faith refusals to indemnify since the inception of the Mathers'

21   claim for copyright infringement.

22       **III. Punitive Damages And Requests For Attorneys' Fees Should Not Be**

23   **Stricken Under These Facts**

24       Punitive damages may be awarded only if it is proven that the defendant

25   engaged in conduct intended to cause injury or engaged in despicable conduct with a

26   conscious disregard of the rights or safety of others. *See*, e.g., Civ. Code, § 3294,

27   subds. (a), (c). *Kransco v. Am. Empire Surplus Lines Ins. Co.*, 23 Cal. 4th 390, 410,

28   97 Cal. Rptr. 2d 151, 166, 2 P.3d 1, 15 (2000). Section 355 of the Restatement

-12-

(Second) of Contracts also sheds light upon the availability of tort remedies in contract actions: "Punitive damages are not recoverable for a breach of contract unless the conduct constituting the breach is also a tort for which punitive damages are recoverable." *Quigley v. Pet*, 162 Cal. App. 3d 877, 888, 208 Cal. Rptr. 394, 394 (1984). As discussed above, Beatbox has sufficiently alleged claims which would permit an award of punitive damages (Count II and Counts VII and VIII) and attorneys' fees (Count I, Count II, Count III and Count IV).

Contrary to the Labrador Defendants' argument that attorneys' fees requests should be stricken from the FAC, the facts in this case present fertile ground for an award of attorneys' fees and costs in favor of Beatbox, and the motion to strike should be denied. First, under California law, attorneys' fees may be recovered in a case for fraud if the parties' relationship is established by a written agreement with an attorneys' fees clause written broadly enough to cover the prevailing party in such fraud action. *See, for example, Santisas v Goodin*, 17 Cal. 4th 599, 619, 71 Cal. Rptr. 2d 830, 951 P.2d 399 (holding that seller defendants in real estate sales litigation have a right to recover as costs the attorney fees they incurred in defense of the fraud claims under the broad language of the relevant attorney's fees clause). Here the parties' agreement and the indemnity language contained therein is broad enough to award Plaintiff its attorneys' fees.

Moreover, although as a general rule attorneys' fees incurred by a plaintiff in an action for damages for fraud are not recoverable. *Bezaire v. Fidelity & Deposit Co.*, 12 Cal.App.3d 888, 892 [91 Cal.Rptr. 142]; *Heffernan v. Bennett & Armour*, 110 Cal.App.2d 564, 588 [243 P.2d 846]; see Code Civ. Proc., § 1021). An exception is recognized where a plaintiff, as a proximate result of defendant's fraud, is required to prosecute or defend an action against a third party for the protection of its interest. *Prentice v. North Amer. Title Guar. Corp.*, 59 Cal.2d 618, 620 [30 Cal.Rptr. 821, 381 P.2d 645]. In such cases reasonable attorneys' fees incurred in connection with the third-party lawsuit are recoverable as damages caused by defendant's tortious act,

1  such as copyright infringement and breaches of the duty of good faith and fair

2  dealing. *Prentice v. North Amer. Title Guar. Corp.*, supra; *Roberts v. Ball, Hunt,*

3  *Hart, Brown & Baerwitz*, 57 Cal.App.3d 104, 112 [128 Cal.Rptr. 901]. *Daniel v. Del*

4  *Valle (In re Del Valle)*, 577 B.R. 789, 815 (Bankr. C.D. Cal. 2017), *citing Glendale*

5  *Federal*, 66 Cal. App. 3d at 149. *Glendale Fed. Sav. & Loan Ass'n v. Marina View*

6  *Heights Dev. Co.*, 66 Cal. App. 3d 101, 149, 135 Cal. Rptr. 802, 831 (1977).

7         Finally, under California law, an "indemnity is a contract by which one

8  engages to save another from a legal consequence of the conduct of one of the parties

9  or of some other person." Civ. Code, § 2772. "An indemnity against claims, or

10  demands, or liability, expressly, or in other equivalent terms, embraces the costs of

11  defense against such claims, demands, or liability incurred in good faith, and in the

12  exercise of a reasonable discretion[.]" Civ. Code, § 2778, subd. 3. An indemnitor in

13  an indemnity contract generally undertakes to protect the indemnitee against loss or

14  damage through liability to a third person. *Somers v. United States F. & G. Co.*

15  (1923) 191 Cal. 542, 547 [217 P. 746]. A clause which contains the words

16  "indemnify" and "hold harmless" is an indemnity clause which generally obligates the

17  indemnitor to reimburse the indemnitee for any damages the indemnitee becomes

18  obligated to pay third persons. *Varco-Pruden, Inc. v. Hampshire Constr. Co.* (1975)

19  50 Cal.App.3d 654, 660 [123 Cal.Rptr. 606]. Indemnification agreements ordinarily

20  relate to third party claims. *Ibid*.

21         The conclusion that attorneys' fees are not recoverable by an indemnitee would

22  defeat the purpose of an indemnity agreement. The very essence of an indemnity

23  agreement is that one party hold the other harmless from losses resulting from certain

24  specified circumstances. Indemnification agreements are intended to be unilateral

25  agreements. Indeed, Civil Code section 2778, subdivision 3, including attorney fees

26  as a matter of law as an item of recoverable loss in an indemnity agreement. *Myers*

27  *Bldg. Indus., Ltd. v. Interface Tech., Inc.*, 13 Cal. App. 4th 949, 968-73, 17 Cal. Rptr.

28  2d 242, 253-56 (1993)("We note that attorney fees are recoverable by operation of

-14-

law pursuant to Civil Code section 2778, subdivision 3, whether or not they are expressly mentioned in the indemnity clause." 971 n.20). Thus, Labrador Defendants' requests that requests for an award of attorneys' fees be stricken should be denied.

### IV. Beatbox Has Successfully Pled That Labrador, Inc. Owed Beatbox Fiduciary Duties

Plaintiff Beatbox was an agent of Labrador, Inc. and therefore a fiduciary duty was owed amongst the parties. Ironically, Labrador admits that a principal/agent relationship exists, yet requests that the count be dismissed.

> '[Fiduciary]' and 'confidential' have been used synonymously to describe '"'. . . any relation existing between parties to a transaction wherein one of the parties is in duty bound to act with the utmost good faith for the benefit of the other party. Such a relation ordinarily arises where a confidence is reposed by one person in the integrity of another, and in such a relation the party in whom the confidence is reposed, if he [or she] voluntarily accepts or assumes to accept the confidence, can take no advantage from his [or her] acts relating to the interest of the other party without the latter's knowledge or consent . . . .'" [Citations omitted.] Technically, a fiduciary relationship is a recognized legal relationship such as guardian and ward, trustee and beneficiary, principal and agent, or attorney and client [citation omitted]…
>
> *Gibson v. Gov't Emps. Ins. Co.*, 162 Cal. App. 3d 441, 445, 208 Cal. Rptr. 511, 512 (1984).

Beatbox entered into the 2009 Agreement with Labrador, which established Beatbox as the sole Sub Publisher for the licensed territory for the introduction and exploitation of all records made to be issued during the term of the 2009 Agreement and any extensions thereto by the Publisher, Labrador, of musical compositions and sound recordings issued as part of the background music library catalogue known as Spider Cues Music Library. FAC ¶18. In Section 16(iv) of the 2009 Agreement, Labrador represents and warrants that all compositions subject to the 2009 Agreement are original and that none of the compositions infringes upon any other copyrighted work or the rights of any third party. FAC ¶22. It is clear by this simple

-15-

transaction that Beatbox placed its confidence in Labrador when Labrador represented and warranted that all compositions were original and that none of them infringed the rights of any third party. Plaintiff explicitly stated in its First Amended Complaint, Beatbox, as the Sub-Publisher, relied on the Publisher to provide them with a Music Library free of any copyright infringement. FAC ¶67. Beatbox placed its trust and confidence in Defendant in that regard, which was assumed and accepted. FAC ¶68. Defendants were obligated to fulfill the 2009 Agreement with the utmost care and good faith. FAC ¶68. Accordingly, such a confidential relationship existed at the execution of the 2009 Agreement and was certainly pled in the First Amended Complaint.

> In sum, under California law, an agent has such authority as the principal actually or ostensibly confers. Cal. Civ. Code § 2315. Actual authority is conferred either through (a) the principal intending to convey such authority to the agent, or (b) the principal allowing, through intent or lack of ordinary care, the agent to reasonably believe that she possesses such authority. Cal. Civ. Code § 2316; *Tomerlin v. Canadian Indem. Co.*, 61 Cal. 2d 638, 644, 39 Cal. Rptr. 731, 394 P.2d 571 (1964). Ostensible authority is such authority "as a principal, intentionally or by want of ordinary care, causes or allows a third person to believe the agent to possess." Cal. Civ. Code § 2317. Claims of ostensible authority are unavailable to those who contract with "actual or constructive notice of the restriction upon [the agent's] authority." Cal Civ. Code § 2318; *see, e.g., McCullough v. Lennar Corp.*, 2011 U.S. Dist. LEXIS 44804, 2011 WL 1585017, at *13 (S.D. Cal., Apri. 26, 2011)…The existence of an agency relationship and the extent of the authority of the agent are generally questions of fact for the jury. *Cal. Viking Sprinkler Co. v. Pac. Indem. Co.*, 213 Cal. App. 2d 844, 850, 29 Cal. Rptr. 194 (1963); *Van't Rood v. County of Santa Clara*, 113 Cal. App. 4th 549, 562, 6 Cal. Rptr. 3d 746 (2003). *Hollywood Foreign Press Ass'n v. Red Zone Capital Partners II, LLP*, No. CV 10-8833-VBF(FMOx), 2011 U.S. Dist. LEXIS 165132, at *3-4 (C.D. Cal. Aug. 8, 2011).

Defendant explicitly states in their Motion that an agency relationship exists and goes even further to plead such in their Counter-Claim under its Breach of

1  Fiduciary Duty Cause of Action.  It is non-sensical to assume that the agency

2  relationship and the subsequent fiduciary duties that arose therefrom could only be a

3  unilateral transaction. Of course, this is not the case as Defendants attempt to have

4  their cake and eat it too-a fallacy at its truest form. Further, actual authority was

5  conferred therein when Labrador conveyed that authority to Beatbox as its Sub-

6  Publisher for the licensed territory.

7       In the Alternative, even if this Honorable Court is unable to find such a

8  relationship exist at this time, it is clear that California courts reserve the existence of

9  an agency relationship and the extent of the authority of the agent as questions of fact

10  for the jury-certainly not at the Motion to Dismiss stage. Id.

11      Given that an agency relationship exists, Plaintiff has met the pleading

12  requirements for a cause of action for breach of fiduciary duty.

13      "The elements of a cause of action for breach of fiduciary duty are:
14      (1) existence of a fiduciary duty; (2) breach of the fiduciary duty; and
        (3) damage proximately caused by the breach." *Stanley v. Richmond*
15      (1995) 35 Cal.App.4th 1070, 1086 [41 Cal. Rptr. 2d 768].
        *Gutierrez v. Girardi*, 194 Cal. App. 4th 925, 932, 125 Cal. Rptr. 3d 210, 215
16      (2011).
17

18      As stated above, 1) the existence of a fiduciary duty existed; 2) Defendant

19  Labrador clearly breached that duty when they sent Plaintiff Beatbox a Music Library

20  that was not in compliance with copyright laws (FAC ¶70.); and 3) as a direct and

21  proximate result of Defendant's breaches of their duties, Plaintiff Beatbox has

22  suffered damages. FAC ¶70. To allege that Plaintiff has failed to plead a successful

23  Cause of Action is nothing short of a red-herring to avoid direct liability.

24      Accordingly, the claim for breach of fiduciary duty should not be dismissed

25  because Beatbox has successfully pled facts that Labrador, Inc. owed Beatbox

26  fiduciary duties.

27      **V. Plaintiff's Claims for Fraudulent Conveyance are Timely; the
         Labrador Defendants Knew About the New Zealand Judgment at the**

28

-17-

**Time of the Transfers and Plaintiff Will be Prejudiced by Dismissal of its Claims.**

Let there be no mistaken understanding: Defendant Labrador, Inc. has a judgment entered against it for copyright infringement in New Zealand. The Labrador Defendants argue that the issue of fraudulent conveyance is not "ripe," and that Plaintiff's claims for fraudulent conveyance depend upon a final judgment that - according to the Labrador Defendants - has not yet been entered. MTD at 14-16. On appeal in the New Zealand Case, the New Zealand High Court quashed the original damages award of $600,000.00 NZ and substituted an award of $225,000.00 NZ. On February 7, 2019, Eight Mile filed a Notice of Application for Leave to Bring Civil Appeal. On May 14, 2019, the Supreme Court of New Zealand rejected the appeal of the New Zealand Infringement Case. A true and correct copy of that order is attached hereto and incorporated herein as Exhibit C. As to copyright infringement and damages, then, there exists a finding of liability as against Labrador which runs to the benefit of Plaintiff. *See id.* The issues of infringement and damages are not subject to re-litigation in the New Zealand Case. To allow Labrador to succeed on its theory that "Plaintiff's claims and the relief they seek are retrospective in nature-based on supposedly fraudulent transfers that have already occurred" (MTD at 16) flies in the face of the public policy admonishing against fraudulent conveyances, as further discussed below. Labrador's total liability to Plaintiff has yet to be ascertained and continues to accrue, especially and as a direct result of Labrador's dilatory and bad-faith litigation tactics; however, this fact should not blur  this issue for this Court. When Webb and Labrador transferred their assets (as testified to by Webb in his deposition), he already knew that he was liable for the NZ judgment, now reduced to the amount of $225,000.00 and they have known of this claim since 2014.

Labrador argues, without support, that "[u]ntil a judgment against a debtor is final, then a judgment creditor's fraudulent conveyance claim is only hypothetical, and cannot be resolved conclusively." MTD at 15. Going further, Labrador seeks to

1   establish that a cause of action for fraudulent conveyance "does not accrue[...] until

2   judgment in the underlying action becomes final." MTD at 15 (*citing Macedo v.*

3   *Bosio*, 86 Cal.App.4th 1044, 1049-50 (2001). However, *Macedo* does not stand for

4   the proposition that Labrador suggests. In fact, the direct language of *Macedo* -

5   *quoting Cortez v. Vogt*, 52 Cal.App.4th 917 (1997) - reads that "where there is an

6   alleged fraudulent transfer made during a pending lawsuit that will establish whether

7   [ … ] a debtor-creditor relationship exists, we conclude the limitation period does not

8   commence to run until the judgment in the underlying action becomes final." *Macedo*

9   at 1049-*50 (emphasis added)*. *Macedo* does not stand for the proposition that a cause

10  of action for fraudulent conveyance accrues only once a money judgment is rendered

11  in a plaintiff's favor; it speaks to when the limitations period for such a claim begins

12  to run. *Id.* In fact, the case cited by the *Macedo* court, *Adams v. Bell*, 5 Cal. 2d 697

13  (1936), specifically holds that "[w]hile ordinarily one asserting that a conveyance is

14  fraudulent must show that he was a creditor at the time of the transfer, it is not

15  necessary that the claim at said time be reduced to judgment." *Adams*, 5 Cal. 2d 697

16  at 701 (*internal citations omitted*) (holding that the plaintiff's claim was "good and

17  valid" when the operative specific performance lawsuit was filed and that "the money

18  judgment thereafter rendered constituted no more than a judicial determination of the

19  validity of said existing claim."). Here, as in *Adams*, though there is no clear

20  indication as to the ultimate result of the indemnification action between Plaintiff and

21  Labrador, "it is not necessary that the claim...be reduced to judgment." *Adams* at 701

22  (*citing Benson v. Harriman*, 55 Cal. App. 483, 490 (Ct. App. Cal. 1921)("The cases

23  are very numerous where it is held that a cause of action based upon a tort is within

24  the statute against fraudulent conveyances, and that a person having such a cause of

25  action is a creditor of the wrongdoer before judgment is obtained.")

26       Labrador further argues - without any support or authority - that Beatbox

27  "needs to perfect a judgment against [it] before it can assert a claim that Labrador,

28  Inc. [sic] fraudulently transferred to the Labrador, Inc. Defendants its assets to the

-19-

1   detriment of Plaintiff..." MTD at 14. Importantly, the NZ judgment in the amount of

2   $225,000.00 is entered against Defendant Labrador, Inc. In copyright cases,

3   defendants are jointly and severally liable for acts of infringement which occur in the

4   same chain of commerce. *L. A. Printex Indus., Inc. v. Design Collection, Inc.*, 2011

5   U.S. Dist. LEXIS 166275 at *5 (C. D. Cal. 2011). Any and all defendants who

6   engage in the same act of copyright infringement are also jointly and severally liable

7   for a Plaintiff's damages. *Id.* (*citing Fitzgerald Publ'g Co., Inc. v. Baylor Publ'g Co.,*

8   *Inc.*, 807 F.2d 1110, 1116 (2nd Cir. 1986)). Thus, Defendant Labrador, Inc. is liable

9   for at least some portion of the $225,000.00 judgment entered against the defendants

10   in the NZ Case and transferring its assets to avoid satisfying that judgment is

11   improper under the laws of this jurisdiction.

12        **VI. This Court May Infer Labrador's Fraudulent Intent.**

13        Under CUFTA, a creditor is able to avoid the transfer of a debtor's asset that is

14   actually or constructively fraudulent and which is made within four years prior to the

15   date the avoidance action is filed. CC §§ 3439.07 & 3439.09. *Turner v. Kendall (In re*

16   *Turner)*, Nos. NC-06-1263-SDR, NC-06-1336-SDR, 2007 Bankr. LEXIS 4834, at

17   *19 (B.A.P. 9th Cir. Sep. 18, 2007).

18        An actual fraudulent transfer is one made by the debtor with the "actual  intent

19   to hinder, delay, or defraud [a] creditor." CC § 3439.04(a). Because intent is difficult

20   to prove, case law has evolved to allow actual intent to established by reference to

21   external circumstances (i.e., badges of fraud). *See United States v. 5208 Los*

22   *Franciscos Way*, 385 F.3d 1187, 1191-92 (9th Cir. 2004); *Kupetz v. Wolf*, 845 F.2d

23   842, 846 (9th Cir. 1988). Under California law, the badges of fraud from which an

24   inference of fraudulent intent may be drawn include the following, and each of the

25   relevant factors weigh in favor of Beatbox and against the Labrador Defendants:

26        (1) Whether the transfer or obligation was to an insider;

27        (2) Whether the debtor retained possession or control of the property

28        transferred after the transfer;

(3) Whether the transfer or obligation was disclosed or concealed;

(4) Whether before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;

(5) Whether the transfer was of substantially all the debtor's assets;

(6) Whether the debtor absconded;

(7) Whether the debtor removed or concealed assets;

(8) Whether the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;

(9) Whether the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;

(10) Whether the transfer had occurred shortly before or shortly after a substantial debt was incurred; and/or

(11) Whether the debtor transferred the essential assets of the business to a lienholder who transferred the assets to an insider of the debtor.

CC § 3439.04(b); 5 *Turner v. Kendall (In re Turner)*, Nos. NC-06-1263-SDR, NC-06-1336-SDR, 2007 Bankr. LEXIS 4834, at *29-36 (B.A.P. 9th Cir. Sep. 18, 2007), *citing* 208 *Los Franciscos Way*, 385 F.3d at 1191-92 (9th Cir. 2004).

In *Turner*, the bankruptcy court decision finding a fraudulent transfer was affirmed because the trial evidence revealed presence of the following six "badges of fraud," one or more of which provides evidence from which an inference of fraudulent intent may be drawn: (1) retention of control over property, (2) presence of a lawsuit, (3) transfer of substantially all assets, (4) insolvency, (5) incurrence of a substantial debt, and (6) an absence of reasonably equivalent value received for the transfer. CC § 3439.04(b).

All of the facts (and more) from which the court inferred fraudulent intent in *Turner* are also present in the case at hand. All of the Labrador Defendants are insiders as it related to Defendant Labrador, Inc. Fatal to the Labrador Defendants'

1   argument that Beatbox must have a judgment in this case before a fraudulent

2   conveyance is ripe is the fact that the *Turner* court considered that a transfer after a

3   filed tort action (and not a judgment) was an incident of fraud and the transfers

4   occurred four (4) months before the judgment was entered. *Turner v. Kendall (In re*

5   *Turner)*, Nos. NC-06-1263-SDR, NC-06-1336-SDR, 2007 Bankr. LEXIS 4834, at

6   *29-36 (B.A.P. 9th Cir. Sep. 18, 2007)("[B]y the time of the 1998 Transfer, the

7   Judgment Creditors had filed a million dollar tort action against Debtor"). Indeed, by

8   the time of the transfers identified in the FAC, Beatbox had provided notice to

9   Defendant Labrador, Inc. of its claims against it and a tort action was filed against

10  Labrador, Inc in the New Zealand case and in this case. Defendant Webb testified at

11  his deposition that he retained control over his home and over all of the assets of

12  Labrador, Inc. The transfers identified in the FAC caused Defendant Labrador, Inc. to

13  transfer away substantially all of its assets. Defendant Labrador, Inc. was rendered

14  insolvent by the transfers. The transfers identified in the FAC were made after the

15  judgment entered in New Zealand and in contemplation of judgment(s) being entered

16  in this matter, as shown by the fact that Defendant Labrador, Inc. has only begun to

17  engage in a vigorous defense of this case since the realization that the hidden assets

18  of Defendant Labrador, Inc will be accessible by Beatbox. There is no evidence that

19  Defendant Labrador, Inc. received reasonably equivalent value for all of its assets. In

20  fact, the testimony of Defendant Webb as identified in the FAC indicates that only

21  the only value conveyed was just enough to make Defendant Labrador, Inc. insolvent.

22      The same is true under a common law theory of fraudulent conveyance. A

23  transfer will be considered constructively fraudulent if, when it was made, the debtor

24  did not receive reasonably equivalent value in exchange for the transfer and the

25  debtor was insolvent at that time or became insolvent as a result of the transfer. CC §

26  3439.05; *Gill v. Stern (In re Stern)*, 345 F.3d 1036, 1042 n.6 (9th Cir. 2003). In

27  finding sufficient evidence to affirm a finding of constructive fraudulent conveyance

28  at common law the *Turner* court determined:

-22-

"[A]t the time of the 1998 Transfer, Debtor did not have $1 million in assets to cover the possible damages claim the Judgment Creditors held as alleged in the state court complaint. Although the 1998 Grant Deed was executed and recorded a few months prior to the issuance of the Judgment, at the time of its transfer, Debtor knew about the possibility of becoming liable for the Judgment. Nevertheless, he still chose to transfer the Home, which could have been used to pay off part of the Judgment. While Debtor may have been able to pay the Judgment prior to the Home's transfer, after the 1998 Transfer he clearly did not have the assets to do so. Thus, the 1998 Transfer also rendered Debtor insolvent for CUFTA purposes."

5 *Turner v. Kendall (In re Turner)*, Nos. NC-06-1263-SDR, NC-06-1336-SDR, 2007 Bankr. LEXIS 4834, at *29-36 (B.A.P. 9th Cir. Sep. 18, 2007) (emphasis added). Thus, Turner makes it clear that Beatbox's claims are indeed ripe and any further delay will only further prejudice Beatbox and encourage the continued fraud of the Labrador Defendants.

**VII. The Fraudulent Transfers are Voidable.**

When transfers are actually and constructively fraudulent, as alleged in the FAC, they are voidable. Under CUFTA, a creditor's remedies for a fraudulent transfer include "avoidance of a transfer, attachment, and the equitable remedies of injunction and receivership as well as "any other relief the circumstances may require.'" *Filip v. Bucurenciu*, 129 Cal. App. 4th 825, 28 Cal. Rptr. 3d 884, 887 (Ct. App. 2005)(citing CC § 3439.07(a)(3)(C)).

CC § 3439.07(a)(1) allows a creditor to obtain "[a]voidance of the transfer […] to the extent necessary to satisfy the creditor's claim." To the extent a transfer is voidable by a creditor, "the creditor may recover judgment for the value of the asset transferred [. . .] or the amount necessary to satisfy the creditor's claim, whichever is less." CC § 3439.08(b). The asset value of a transfer "equal[s] the value of the asset

1   at the time of the transfer, subject to adjustment as the equities may require." *Id*. §

2   3439.08(c). "Asset" is defined as the value of the property minus the amount

3   encumbered by valid liens and exempt under nonbankruptcy law. *Id*. § 3439.01(a)(1)-

4   (2). *Turner v. Kendall (In re Turner)*, Nos. NC-06-1263-SDR, NC-06-1336-SDR,

5   2007 Bankr. LEXIS 4834, at *29-36 (B.A.P. 9th Cir. Sep. 18, 2007). Beatbox has

6   adequately pled Counts VII and VIII and there is no authority to suggest that Beatbox

7   must wait for a final judgment to issue in this matter before proceeding on fraudulent

8   conveyance theories and the Labrador Defendants Rule 12(b)(6) Motion to dismiss

9   Counts VII and VIII should be denied.

10   **VIII. Plaintiff Will Suffer Undue Prejudice Should this Court Dismiss its**

11   **Fraudulent Conveyance Claims.**

12   Though a judgment amount as relates to Labrador's indemnity obligations has

13   not yet been entered in this case, practically speaking, Plaintiff is being forced to

14   stand in Labrador's shoes to satisfy the NZ judgment entered against Labrador for the

15   infringement.

16   Contrary to Labrador's unsupported assertion (MTD at 16), Plaintiff will surely

17   continue to suffer undue hardship should this Court dismiss its claims for fraudulent

18   conveyance without prejudice. As noted in the FAC, from April 2015 to May 2017,

19   the Australian Mechanical Copyright Owners Society ("AMCOS") deducted

20   $231,221.33 US from Plaintiff's royalty payments to pay for legal fees AMCOS

21   purportedly incurred in relation to the New Zealand Infringement Case. FAC at ¶38.

22   In addition, Plaintiff has now incurred, and continues to incur, legal fees related to

23   this lawsuit in excess of the amount pleaded in its FAC ($320,367.36 US). FAC at

24   ¶40.

25   As such, Plaintiff has incurred and will continue to incur significant expense by

26   virtue of its contribution to the satisfaction of the judgment, lost royalties based upon

27   its indemnity obligations to third parties and ongoing litigation costs for purposes of

28   satisfying the outstanding judgment - unless and until the indemnification issues are

-24-

PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS THE SECOND, FOURTH, SEVENTH, AND EIGHTH COUNTS FROM FAC FOR FAILURE TO STATE A CLAIM; AND THEIR MOTION TO STRIKE PRAYER FOR ATTORNEY'S FEES AND PUNITIVE DAMAGES

1  resolved and the Labrador Defendants have a judgment entered against them
2  sufficient to compensate Plaintiff for its extensive losses.

3       Plaintiff urges this Court to consider Labrador's previously-held position that
4  Plaintiff would not be prejudiced should the Court maintain the stay of proceedings
5  previously in place, wherein Labrador argued that "[t]here is no reason to proceed on
6  Beatbox's indemnity claims...until the parties know whether Beatbox faces any
7  liability to [NZ Party] or Hamilton." Dkt. 72 at p. 3. This Court cannot find that
8  Plaintiff faces no undue harm when, while this Court's stay was in place and
9  Labrador was arguing a lack of prejudice, Labrador contemporaneously engaged in
10 fraudulent transfers.

11      Labrador argues, confusingly, that Plaintiff's own allegations "demonstrate that
12 they do not seek to enjoin any future transfers or conveyances." MTD at 16. To the
13 extent this Court might find this somewhat disturbing suggestion relevant, Plaintiff
14 does hereby make its claim to enjoin Defendants from any future transfers or
15 conveyances such that they cannot avoid satisfaction of Plaintiff's claims against
16 them.

17      WHEREFORE, for the reasons stated hereinabove, Plaintiff respectfully
18 requests that this Court enter an order denying Defendants' Motion or, in the
19 alternative, granting Plaintiff leave to amend its First Amended Complaint, and for
20 any and all such other relief as this court deems necessary and proper.

21 DATED: March 9, 2020          Respectfully submitted,

22

23                                      **BEATBOX MUSIC PTY, LTD.**
                                    */s/ Heather L. Blaise*

24                                      HEATHER L. BLAISE, ESQ. (SBN 261619)

25                                      123 N. Wacker Drive, Suite 250
                                     Chicago, IL 60606

26                                      Telephone: 312-448-6602

27                                      Email: hblaise@blaisenitschkelaw.com

28                                      *Attorney for Plaintiff*