BLAISE & NITSCHKE, P.C.
HEATHER L. BLAISE, ESQ. (SBN 261619)
123 N. Wacker Drive, Suite 250
Chicago, IL 60606
Telephone: 312-448-6602
Email: hblaise@blaisenitschkelaw.com

Attorneys for Plaintiff,
BEATBOX MUSIC PTY, LTD.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BEATBOX MUSIC PTY, LTD., <br><br> Plaintiff, <br><br> v. <br><br> LABRADOR ENTERTAINMENT, INC. D/B/A SPIDER CUES MUSIC LIBRARY, a California corporation; NOEL PALMER WEBB, an individual; MICHAEL COHEN, an individual; LABRADOR ENTERTAINMENT, LLC; MCPC HOLDINGS, LLC; WEBB FAMILY TRUST and DOES 1-20, inclusive, <br><br> Defendants. | CASE NO: 2:17-cv-6108 MWF (JPRx) <br> *Assigned to the Hon. Michael W. Fitzgerald* <br><br> **PLAINTIFF BEATBOX MUSIC PTY, LTD.'S RESPONSE TO LABRADOR ENTERTAINMENT INC. ET AL.'S AFFIRMATIVE DEFENSES TO THE FIRST AMENDED COMPLAINT AND COUNTERCLAIMS** |
| MICHAEL COHEN, an individual, <br><br> Cross-Complainant, <br><br> v. <br><br> LABRADOR ENTERTAINMENT, INC. D/B/A SPIDER CUES MUSIC LIBRARY, a California Corporation, <br><br> Cross-Defendant. | Trial Date:          June 23, 2020 <br> Cross-Claim Filed: November 21, 2017 <br> Action Filed:        August 17, 2017 |

PLAINTIFF BEATBOX MUSIC PTY, LTD.'S RESPONSE TO LABRADOR ENTERTAINMENT INC. ET AL.'S
AFFIRMATIVE DEFENSES TO THE FIRST AMENDED COMPLAINT AND COUNTERCLAIMS

1
2
3
4
5
6
7
8
9

LABRADOR ENTERTAINMENT INC.,
D/B/A SPIDER CUES MUSIC
LIBRARY, a California Corporation, ET
AL.,

                Counter-Claimants,

                v.

BEATBOX MUSIC PTY, LTD.,
MICHAEL COHEN, and individual, and
DOES 1-20, inclusive,

                Counter-Defendants.

10

11      Plaintiff Beatbox Music Pty., Ltd. ("Beatbox") respectfully submits its

12 Response to Defendants Labrador Entertainment, Inc. D/B/A Spider Cues Music

13 Library, a California Corporation; Noel Palmer Webb, an individual; Labrador

14 Entertainment, LLC; and Webb Family Trust's (hereinafter "Labrador Defendants")

15 Affirmative Defenses to the First Amended Complaint and Counterclaims. In support

16 thereof, Plaintiff states as follows:

17                       **FIRST AFFIRMATIVE DEFENSE**

18                          **(Failure to State a Claim)**

19      65. As a First and Separate Affirmative Defense, Defendants assert that the

20 FAC and each purported claim alleged therein fail to state facts sufficient to

21 constitute a claim against Defendants.

22      **ANSWER**:  The First Affirmative Defense fails to state a cognizable defense

23 and should be stricken, therefore Plaintiff denies.

24                  **SECOND AFFIRMATIVE DEFENSE**

25                      **(Plaintiff's Conduct)**

26      66. As a Second and Separate Affirmative Defense, Defendants assert that

27 some or all of the purported claims in the FAC are barred, in whole or in part, by

28

PLAINTIFF BEATBOX MUSIC PTY, LTD.'S RESPONSE TO LABRADOR ENTERTAINMENT INC. ET AL.'S
AFFIRMATIVE DEFENSES TO THE FIRST AMENDED COMPLAINT AND COUNTERCLAIMS

material breaches, negligence or other wrongful conduct by Plaintiff and by the conduct of their agents, attorneys, and representatives.

**ANSWER**:  Deny.

## THIRD AFFIRMATIVE DEFENSE

### (Breach of Contract)

67. As a Third and Separate Affirmative Defense, Defendants assert that some or all of the purported claims in the FAC are barred, in whole or in part, by Plaintiff's breach of contract.

**ANSWER**:  Deny.

## FOURTH AFFIRMATIVE DEFENSE

### (Unclean Hands)

68. As a Fourth and Separate Affirmative Defense, Defendants assert that some or all of the purported claims in the FAC against Defendants are barred, in whole or in part, by the unclean hands of Plaintiff.

**ANSWER:**  Deny.

## FIFTH AFFIRMATIVE DEFENSE

### (Waiver)

69. As a Fifth and Separate Affirmative Defense, Defendants assert that some or all of the purported claims in the FAC against Defendants are barred, in whole or in part, because, by Plaintiff's conduct and the conduct of their agents, attorneys, and representatives, Plaintiff has waived their rights, if any.

**ANSWER**:  Deny.

## SIXTH AFFIRMATIVE DEFENSE

### (Ratification and Waiver)

70. As a Sixth and Separate Affirmative Defense, Defendants assert that some or all of the purported claims in the FAC against Defendants are barred, in whole or in part, because, Plaintiff, on their own behalf and through the actions of their agents,

attorneys, and representatives, ratified the actions of Defendants, thereby waiving any and all claims against Defendants, if any.

**ANSWER**:  Deny.

### SEVENTH AFFIRMATIVE [DEFENSE][SIC]

### (Estoppel)

71. As a Seventh and Separate Affirmative Defense, Defendants assert that some or all of the purported claims and causes of action in the FAC against Defendants are barred, in whole or in part, by the equitable doctrine of estoppel because of the conduct of Plaintiff and their agents, attorneys, and representatives.

**ANSWER**:  Deny.

### EIGHTH AFFIRMATIVE DEFENSE

### (Consent of Plaintiff)

72. As an Eighth and Separate Affirmative Defense, Defendants assert that Plaintiff gave consent both expressly and impliedly for any purported failure, breaches, or conduct of Defendants as alleged.

**ANSWER**:  Deny.

### NINTH AFFIRMATIVE DEFENSE

### (Fault of Plaintiff)

73. As a Ninth and Separate Affirmative Defense, Defendants assert that some or all of the purported claims in the FAC are barred, in whole or in part, by the fault of Plaintiff and of their agents, attorneys, and representatives.

**ANSWER**:  Deny.

### TENTH AFFIRMATIVE DEFENSE

### (Failure to Mitigate)

74. As a Tenth and Separate Affirmative Defense, Defendants assert that some or all of the purported claims in the FAC are barred, in whole or in part, by Plaintiff's failure to mitigate their alleged damages.

**ANSWER**:  Deny.

## ELEVENTH AFFIRMATIVE DEFENSE

### (Negligence of Plaintiff and Others)

75. As an Eleventh and Separate Affirmative Defense to the FAC, Defendants assert that Defendants are informed and believes and thereon allege that the injuries and damages alleged in the FAC, if any, without admitting any injury or damage to Plaintiff, occurred, were proximately caused by either the sole negligence of or contributed to by the negligence of Plaintiff or third parties not within the control of Defendants. Beatbox breached their duty of reasonable care by negligently, among other matters:

- Failing to perform the licensing activities in granting non-exclusive licenses in the Licensed Territory in accordance with generally accepted music industry standards, and with thoroughness, competence, and care ordinarily exercised by other sub-publishers working with the licensing of similar rights.

- Failing to use its best commercial endeavors to exploit the recordings for the benefit of the parties concerned.

- Failing to comply with the Beatbox Agreement and assigned to AMCOS the benefits licensed to Beatbox to AMCOS, without first obtaining the written consent of Labrador, Inc.

- After Beatbox wrongly assigned to AMCOS the benefits Labrador, Inc. licensed to Beatbox, Beatbox failed to comply with its duties to AMCOS, including the duty to immediately notify AMCOS of each deletion from the list of music cues.

- Failing to comply with Performing Rights in the recordings subject to the Copyright Societies in the USA and its affiliated societies in the licensed territory.

- Failing to provide an industry wide process to obtain from Labrador, Inc. the Library.

Defendants request, that to the extent Plaintiff's damages were caused by negligence, the negligence of all persons or parties, named and unnamed, served or unserved, and the degree to which said negligence contributed to the happening of

1   the incident and the nature and extent of the injuries actually sustained, if any, be

2   determined by the trier of fact. Plaintiff's recovery, if any, should be barred, or

3   reduced in proportion to the amount by which the negligence of Plaintiff or others

4   contributed to the happening of the injuries and damages alleged.

5      **ANSWER**:  Deny.

6   ## TWELFTH AFFIRMATIVE DEFENSE

7   ### (Breach of Fiduciary of Plaintiff and Others)

8      76. As a Twelfth and Separate Affirmative Defense to the FAC, Defendants

9   assert that Defendants are informed and believes and thereon allege that the injuries

10  and damages alleged in the FAC, if any, without admitting any injury or damage to

11  Plaintiff, occurred, were proximately caused by either the sole breach of fiduciary

12  duties of or contributed to by the breach of fiduciary duties of Plaintiff or third

13  parties not within the control of Defendants. Beatbox breached their fiduciary duties

14  among other matters by failing to:

15  • Perform the licensing activities in granting non-exclusive licenses in the

16  Licensed Territory in accordance with generally accepted music industry standards,

17  and with thoroughness, competence, and care ordinarily exercised by other sub-

18  publishers working with the licensing of similar rights.

19  • To use its best commercial endeavors to exploit the recordings for the

20  benefit of the parties concerned.

21  • To comply with the Beatbox Agreement and assigned to AMCOS benefits

22  licensed to it to AMCOS, without first obtaining the written consent of Labrador, Inc.

23  • To comply with its duties to AMCOS, including the duty to immediately

24  notify AMCOS of each deletion from the list of music cues, after Beatbox wrongly

25  assigned to AMCOS the benefits Labrador, Inc. licensed to Beatbox.

26  • To comply with Performing Rights in the recordings subject to the

27  Copyright Societies in the USA and its affiliated societies in the licensed territory.

28

- To provide an industry wide process to obtain from Labrador, Inc. the Library.

Defendants request, that to the extent Plaintiff's damages were caused by breach of fiduciary duties of all persons or parties, named and unnamed, served or unserved, and the degree to which said breach of fiduciary duties contributed to the happening of the incident and the nature and extent of the injuries actually sustained, if any, be determined by the trier of fact. Plaintiff's recovery, if any, should be barred, or reduced in proportion to the amount by which the breach of fiduciary duties of Plaintiff or others contributed to the happening of the injuries and damages alleged.

**ANSWER**: Deny.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby demands a trial by jury.

## <u>FIRST AMENDED COUNTERCLAIM</u>

(BY LABRADOR ENTERTAINMENT, INC., DBA SPIDER CUES MUSIC LIBRARY, a California corporation, COUNTERCLAIMANT AGAINST BEATBOX MUSIC, PTY, LTD. , COUNTERDEFENDANT AND MICHAEL COHEN, an individual, COUNTERDEFENDANT.)

## NATURE OF COUNTER CLAIMS

1. These counterclaims against Beatbox request redress for breach of contract, breach of fiduciary duty, negligence, and against Cohen, if required, Indemnification arising out of agreements between Labrador Entertainment Inc., dba Spider Cues Music Library ("Labrador Inc.") and Michael Cohen ("Cohen") ("Cohen Agreement") (Attached hereto as Exhibit A and herein incorporated herein by this reference is a true and correct copy of the agreement between Labrador, Inc. and Cohen.) and Labrador and Beatbox Music, PTY, LTD. ("Beatbox") ("Beatbox Agreement") (Attached hereto as Exhibit B and herein incorporated herein by this reference is a true and correct copy of the agreement between Labrador, Inc. and

1  Beatbox.) for Labrador, Inc. to obtain from Cohen musical compositions for licensing
2  on the one hand and for Labrador, Inc. to grant to Beatbox a license to sub-publish
3  these musical compositions in a foreign territory, on the other hand.

4      **ANSWER**:  Plaintiff admits that Exhibit A is the Cohen Agreement and
5  Exhibit B is the Beatbox Agreement.  Plaintiff denies all remaining allegations and
6  legal conclusions contained in Paragraph 1.

7      2. Pursuant to the Cohen Agreement, Cohen granted Labrador Inc. worldwide
8  rights, title and interest in a collection of his musical compositions listed in the
9  agreement (the "Cohen Compositions").

10     **ANSWER**:  Plaintiff lacks personal knowledge as to the legal conclusions
11  contained in the Cohen Agreement and therefore, denies.

12     3. Pursuant to the Beatbox Agreement, Labrador Inc. appointed Beatbox as the
13  exclusive Sub-Publisher of a list of compositions known as Spider Cues Music
14  Library ("Library") for the territories of Australia, New Zealand and Fiji.

15     **ANSWER**:  Admit.

16     4. On or about September 16, 2014, Eight Mile Style, LLC and Martin
17  Affiliated, LLC ("New Zealand Plaintiffs") filed an action against the New Zealand
18  National Party and their Secretary, Greg Hamilton in New Zealand. ("New Zealand
19  Defendants") ("New Zealand Action").

20     **ANSWER**: Admit.

21     5. The New Zealand Plaintiffs claimed that from at about August 2014, the
22  New Zealand Defendants knowingly infringed the New Zealand Plaintiffs' copyright
23  in Eminem Esque.

24     **ANSWER**: Admit.

25     6. This Eminem Esque allegedly was one of the Cohen Compositions.

26     **ANSWER**: Admit.

27     7. In this herein action, Beatbox seeks to hold Labrador Inc., and Cohen liable
28  for all damages they incurred as a result of the New Zealand Action.

1  **ANSWER**: Admit.  In answering further, Plaintiff seeks to hold the defendants
2  liable for all damages it has incurred as a result of the defendants' breaches of their
3  representation and warranties.

4  8. Labrador, Inc. asserts that it is free from fault in the New Zealand Action.

5  **ANSWER**: Plaintiff lacks personal knowledge of Labrador, Inc's "assertions"
6  and thus, denies.

7  9. That if there is any liability for damages in the New Zealand Action, it is due
8  to Beatbox's failure to comply with their promises in the Beatbox Agreement and
9  their total failure to maintain the integrity of the Library.

10  **ANSWER**: Deny.

11  10. In this Counterclaim, Labrador Inc. seeks to hold Beatbox liable for all of
12  the damages it has incurred as a direct result of Beatbox's breach of contract, breach
13  of indemnity, breach of fiduciary duties and negligence.

14  **ANSWER**: Paragraph 10 is a merely conclusory statement, including legal
15  conclusions and does not contain any facts, thus, Plaintiff denies.

16  11. Finally, if Labrador, Inc. is found to be responsible for any sum of damages
17  to Beatbox - which it denies it should - then Labrador, Inc. seeks indemnification
18  from Cohen.

19  **ANSWER**: Paragraph 11 is a merely conclusory statement, including legal
20  conclusions and does not contain any facts, thus, Plaintiff denies.

21  **PARTIES**

22  12. At times herein relevant, Counterclaimant Labrador Entertainment, Inc.
23  d/b/a as Spider Cues Music Library. ("Labrador Inc." or "Counterclaimant") is a
24  California corporation with their central office located in Los Angeles, California.

25  **ANSWER**: In answer to Paragraph 12, Plaintiff is without sufficient
26  information or belief to admit or deny the allegations in this paragraph. Based on this
27  lack of information or belief, Plaintiff denies the allegations.

28

1
2
3

13. Counterdefendant Beatbox Music PTY, LTD ("Beatbox"), Plaintiff in this action, is a music publisher located at Suite 9, 7 Ramsay Road, Pennant Hills NSW 2120, Australia.

4
5

**ANSWER**: In answer to Paragraph 13, Plaintiff admits the allegations in this paragraph.

6
7
8

14. Counterdefendant Michael Cohen ("Cohen") is an individual who resides, on information and belief, in Los Angeles, California and is a composer of musical compositions.

9
10
11

**ANSWER**: In answer to Paragraph 14, Plaintiff has information and belief regarding Michael Cohen's residence, therefore admits the allegations in this paragraph.

12
13
14
15
16
17
18
19
20

15. Counterclaimant Labrador Inc. does not know the true names and capacities of the Counterdefendants sued herein as Does 1-20, inclusive, and therefore sues those counterdefendants by such fictitious names. Counterclaimant Labrador, Inc. will amend this Counterclaim to allege their true names and capacities when they are ascertained. Counterclaimant Labrador, Inc. is informed and believes and therefore alleges that each of the fictitiously named Counterdefendants is responsible in some manner for the occurrences herein alleged and that Counterclaimant Labrador, Inc's injuries as herein alleged were proximately caused by such Counterdefendants.

21

**ANSWER**: Deny.

22
23
24
25
26
27
28

44. Counterclaimant Labrador, Inc. is informed and believes and therefore alleges that, at all times herein mentioned, each of the counterdefendants was the agent, employee, joint venturer or co-conspirator of each of the remaining counter-co-defendants, and in doing the things hereinafter alleged, was acting within the scope of said agency, employment, joint venture or conspiracy and with the permission and consent of their counter-co-defendants. Each counter-defendant has ratified and approved the acts of the remaining counterdefendants.

PLAINTIFF BEATBOX MUSIC PTY, LTD.'S RESPONSE TO LABRADOR ENTERTAINMENT INC. ET AL.'S AFFIRMATIVE DEFENSES TO THE FIRST AMENDED COMPLAINT AND COUNTERCLAIMS

**ANSWER**:  In answer to Paragraph 16 (mislabeled as Paragraph 44), Plaintiff denies the allegations contained in this paragraph. Beatbox is not a joint venture or co-conspirator with Cohen.

## JURISDICTION AND VENUE

This Court has supplemental jurisdiction pursuant to 28 U.S.C. 23 § 1367(a). Venue is also proper under 28 U.S.C. § 1391 because many of the acts and practices complained of herein incurred in a substantial part in this judicial district.

**ANSWER**: Plaintiff denies that "many of the acts and practices complained of herein incurred in a substantial part in this judicial district." Plaintiff admits the remaining allegations of fact and denies conclusions of law.

## GENERAL ALLEGATIONS

**Noel Webb and Labrador, Inc.**

16. At all times herein relevant, Noel Webb, an individual "Webb" was the president and principal of Labrador Inc. At all relevant times Webb was responsible for the day to day operations of Labrador, Inc.

**ANSWER**: In answer to Paragraph 17 (mislabeled as Paragraph 16), Plaintiff is without sufficient information or belief to admit or deny the allegations in this paragraph. Based on this lack of information or belief, Plaintiff denies the allegations.

17. Prior to owning Labrador, Inc., Webb was as a violinist and a composer of his own music.

**ANSWER**:  In answer to Paragraph 18 (mislabeled as Paragraph 17), Plaintiff is without sufficient information or belief to admit or deny the allegations in this paragraph. Based on this lack of information or belief, Plaintiff denies the allegations.

18. Webb had no previous association as a writer or violinist with the music library industry.

**ANSWER**:  In answer to Paragraph 19 (mislabeled as Paragraph 18), Plaintiff is without sufficient information or belief to admit or deny the allegations in this paragraph. Based on this lack of information or belief, Plaintiff denies the allegations.

19. In 2002, Webb met an audio engineer who worked at Universal Studios, that had experience in and connections with those individuals and companies involved in the business of music licensing to the film trailer industry.

**ANSWER**: In answer to Paragraph 20 (mislabeled as Paragraph 19), Plaintiff is without sufficient information or belief to admit or deny the allegations in this paragraph. Based on this lack of information or belief, Plaintiff denies the allegations.

20. At that time there were approximately 47 film trailer companies in Los Angeles, California.

**ANSWER**: In answer to Paragraph 21 (mislabeled as Paragraph 20), Plaintiff is without sufficient information or belief to admit or deny the allegations in this paragraph. Based on this lack of information or belief, Plaintiff denies the allegations.

21. Film trailer production music end-users were, very different than television or cable end-users of production music.

**ANSWER**: In answer to Paragraph 22 (mislabeled as Paragraph 21), Plaintiff is without sufficient information or belief to admit or deny the allegations in this paragraph. Based on this lack of information or belief, Plaintiff denies the allegations.

22. Webb began writing for the film trailers and learned from those with experience how to administer the music.

**ANSWER**: In answer to Paragraph 23 (mislabeled as Paragraph 22), Plaintiff is without sufficient information or belief to admit or deny the allegations in this paragraph. Based on this lack of information or belief, Plaintiff denies the allegations.

23. Film trailer licensing solely involved acquiring an up-front sync/license fee. There were no performance payments from the Performance Rights Organizations. (ASCAP, BMI, SESAC, SOCAN.) ("PRO".)

**ANSWER**: In answer to Paragraph 24 (mislabeled as Paragraph 23), Plaintiff is without sufficient information or belief to admit or deny the allegations in this paragraph. Based on this lack of information or belief, Plaintiff denies the allegations.

24. At that time Webb had little experience with PROs and how they operated. The process with film trailer companies was simple - Labrador, Inc. supplied them with a music cue and they sent Labrador, Inc. a check.

**ANSWER**: In answer to Paragraph 25 (mislabeled as Paragraph 24), Plaintiff is without sufficient information or belief to admit or deny the allegations in this paragraph. Based on this lack of information or belief, Plaintiff denies the allegations.

25. Starting from about 2004 forward, all the film trailer companies and major film studios requested Sound-A-Likes and Knock Offs from music libraries.

**ANSWER**: In answer to Paragraph 26 (mislabeled as Paragraph 25), Plaintiff is without sufficient information or belief to admit or deny the allegations in this paragraph. Based on this lack of information or belief, Plaintiff denies the allegations.

26. Accordingly, Labrador, Inc. accommodated them.

**ANSWER**: In answer to Paragraph 27 (mislabeled as Paragraph 26), Plaintiff is without sufficient information or belief to admit or deny the allegations in this paragraph. Based on this lack of information or belief, Plaintiff denies the allegations.

**Sound-a-likes**

27. Webb was introduced to the concept of sound-a-likes by a music coordinator at NBC/Universal Studios in or about 2006.

**ANSWER**: In answer to Paragraph 28 (mislabeled as Paragraph 27), Plaintiff is without sufficient information or belief to admit or deny the allegations in this paragraph. Based on this lack of information or belief, Plaintiff denies the allegations.

28. A film director or TV show director uses a "temp track" to give a composer a specific direction or sound that the director wants in each section of his or her production.

**ANSWER**: In answer to Paragraph 29 (mislabeled as Paragraph 28), Plaintiff admits the allegations in this paragraph.

29. The temp tracks were well-known pieces identified by the film director or TV show director to give the direction. The temp tracks are actually laid into the visual at specific locations in the film.

**ANSWER**: In answer to Paragraph 30 (mislabeled as Paragraph 29), Plaintiff is without sufficient information or belief to admit or deny the allegations in this paragraph. Based on this lack of information or belief, Plaintiff denies the allegations.

30. The music composer composes a music piece that has a similar feel, groove, and/or similar sound to the well-known music. This new composition is called a sound-a-like. It is expected to be composed such that it does not infringe the well-known composition. The sound-a-like is used in the published version of the film or TV show.

**ANSWER**: In answer to Paragraph 31 (mislabeled as Paragraph 30), Plaintiff is without sufficient information or belief to admit or deny the allegations in this paragraph. Based on this lack of information or belief, Plaintiff denies the allegations.

31. With constant requests by music supervisors and production companies for sound-a-likes Labrador, Inc. would purposely title the cue with the name of the famous artist the music "sounded like". This was done to make the end user (and all parties in the chain towards the end user) aware of the composer's objective of having a similar feel, groove or sound without infringing the well-known composition.

**ANSWER**: In answer to Paragraph 32 (mislabeled as Paragraph 31), Plaintiff is without sufficient information or belief to admit or deny the allegations in this paragraph. Based on this lack of information or belief, Plaintiff denies the allegations.

**Spider Cues Music Library**

32. At all relevant times herein, Labrador, Inc. is a company in the United States that owns the Spider Cues Music Library ("Library"). The Library is a production music catalogue that contains a vast collection of production music that is constantly updated.

PLAINTIFF BEATBOX MUSIC PTY, LTD.'S RESPONSE TO LABRADOR ENTERTAINMENT INC. ET AL.'S AFFIRMATIVE DEFENSES TO THE FIRST AMENDED COMPLAINT AND COUNTERCLAIMS

**ANSWER**: In answer to Paragraph 33 (mislabeled as Paragraph 32), Plaintiff is without sufficient information or belief to admit or deny the allegations in this paragraph. Based on this lack of information or belief, Plaintiff denies the allegations.

33. Labrador, Inc. has contracts with hundreds of composers whose music makes up the Library. The compositions are thought up, created, designed, and written by those composers.

**ANSWER**: In answer to Paragraph 34 (mislabeled as Paragraph 33), Plaintiff is without sufficient information or belief to admit or deny the allegations in this paragraph. Based on this lack of information or belief, Plaintiff denies the allegations.

34. Labrador, Inc.'s contract with their composers recognizes a number of ownership or intellectual property rights in relation to a composition. These are writer rights, publishing rights, copyright rights, master ownership rights, and solicitation rights.

**ANSWER**: In answer to Paragraph 35 (mislabeled as Paragraph 34), Plaintiff is without sufficient information or belief to admit or deny the allegations in this paragraph. Based on this lack of information or belief, Plaintiff denies the allegations.

35. The writer rights, may be referred to as moral rights in New Zealand, the copyright rights remain with the composer. The publishing and solicitation rights (and a number of other associated rights are assigned to Labrador, Inc. in perpetuity in exchange for acquiring a license fee.)

**ANSWER**: In answer to Paragraph 36 (mislabeled as Paragraph 35), Plaintiff is without sufficient information or belief to admit or deny the allegations in this paragraph. Based on this lack of information or belief, Plaintiff denies the allegations.

36. Once Labrador, Inc. obtains compositions from composers it then either self licenses the music to production companies, or contracts with sub-publishers to do the same. For the most part, Labrador, Inc. contracts with sub-publishers to market and license the music in their territory.

1   **ANSWER**: In answer to Paragraph 37 (mislabeled as Paragraph 36), Plaintiff

2   is without sufficient information or belief to admit or deny the allegations in this

3   paragraph. Based on this lack of information or belief, Plaintiff denies the allegations.

4   37. When music from the Library is used in films, film trailers, TV,

5   commercials, etc. the production company concerned pays for that use by either or

6   both of:

7   • an up front fee (referred to as a sync or license fee);

8   • a royalty fee through their PRO.

9   **ANSWER**: In answer to Paragraph 38 (mislabeled as Paragraph 37), Plaintiff

10  is without sufficient information or belief to admit or deny the allegations in this

11  paragraph. Based on this lack of information or belief, Plaintiff denies the allegations.

12  38. Where a PRO, like AMCOS, is used, that PRO will negotiate, license, and

13  receive the royalty paid by the production company for the music. The royalty paid to

14  a PRO includes a "writer payment" and a "publisher payment (performance)".

15  **ANSWER**: In answer to Paragraph 39 (mislabeled as Paragraph 38), Plaintiff

16  denies the allegations in this paragraph.  AMCOS is not a PRO. AMCOS is a

17  mechanical rights society. (MRO) The royalty paid by the production company does

18  not include a writer payment and a publisher payment. The payment is a sync license

19  that is collected by AMCOS in Australia or New Zealand on behalf of the Australian

20  publisher.

21  39. "Writer payment" money is always paid directly to the writer/composer by

22  the PRO. Labrador, Inc. or their sub-publisher never sees the writer's money.

23  **ANSWER**: In answer to Paragraph 40 (mislabeled as Paragraph 39), Plaintiff

24  is without sufficient information or belief to admit or deny the allegations in this

25  paragraph. Based on this lack of information or belief, Plaintiff denies the allegations.

26  40. "Publisher payment" is paid to the publisher or the sub-publisher directly

27  (who then pays the publisher their percentage) according to the publisher/sub-

28

1  publisher negotiated split. Typically, the PRO money is paid many months, (if not

2  years) later.

3      **ANSWER**: In answer to Paragraph 41 (mislabeled as Paragraph 40), Plaintiff

4  is without sufficient information or belief to admit or deny the allegations in this

5  paragraph. Based on this lack of information or belief, Plaintiff denies the allegations.

6      41. Contrary to all sub-publisher rules around the world, Labrador, Inc.'s sub-

7  publisher for the New Zealand and Australian territories - BeatBox - had the

8  Australian PRO (AMCOS) pay Labrador, Inc. their performance percentage.

9  According to standards of the industry, that can and did cause financial problems and

10  non-payment.

11      **ANSWER**: In answer to Paragraph 42 (mislabeled as Paragraph 41), Plaintiff

12  denies the allegations in this paragraph.

13      42. In 2014, Labrador, Inc. was finally able to get BeatBox to collect money

14  due to Labrador, Inc. from the PRO, at least in Australia and New Zealand, though

15  they continue to refuse to collect the PRO performance money in other territories

16  where they represent Labrador, Inc.

17      **ANSWER**: In answer to Paragraph 43 (mislabeled as Paragraph 42), Plaintiff

18  denies the allegations in this paragraph.

19      43. Generally, Labrador, Inc. compiles the compositions into the Library.

20      **ANSWER**: In answer to Paragraph 44 (mislabeled as Paragraph 43), Plaintiff

21  is without sufficient information or belief to admit or deny the allegations in this

22  paragraph. Based on this lack of information or belief, Plaintiff denies the allegations.

23      44. The Library is a group of categorized and numbered albums with individual

24  cues identified and numbered within those albums. These cues are marketed for

25  syncing purposes in film, film trailers, TV, commercials, etc.

26      **ANSWER**: In answer to Paragraph 45 (mislabeled as Paragraph 44), Plaintiff

27  is without sufficient information or belief to admit or deny the allegations in this

28  paragraph. Based on this lack of information or belief, Plaintiff denies the allegations.

1   45. The term "cue" is used because many of the pieces are not actually songs or
2   even music. A "cue" ranges from a sound effect of just a few seconds through to a
3   complete song.

4   **ANSWER**: In answer to Paragraph 46 (mislabeled as Paragraph 45), Plaintiff
5   is without sufficient information or belief to admit or deny the allegations in this
6   paragraph. Based on this lack of information or belief, Plaintiff denies the allegations.

7   46. The cue at issue was a piece of music written by a composer, Michael
8   Cohen.

9   **ANSWER**: In answer to Paragraph 47 (mislabeled as Paragraph 46), Plaintiff
10  admits that Cohen represented and warranted that he was the composer of the music.
11  Plaintiff denies that Cohen actually was the composer of the music, because Marshall
12  Mathers is the actual composer of the music and so Plaintiff denies the remaining
13  allegations in this paragraph.

14  47. "Syncing" is a reference to a music synchronization license. Such licenses
15  are granted by the holder of the publishing rights and master of a particular
16  composition, allowing the licensee to synchronize ("Sync") music with some kind of
17  visual media output (film, television shows , advertisements, video games,
18  accompanying website music, movie trailers, etc.)

19  **ANSWER**: In answer to Paragraph 48 (mislabeled as Paragraph 47), Plaintiff
20  is without sufficient information or belief to admit or deny the allegations in this
21  paragraph. Based on this lack of information or belief, Plaintiff denies the allegations.

22  48. On information and belief Labrador, Inc. manages and operates the Library
23  in substantially the same manner as other music libraries in the industry.

24  **ANSWER**: In answer to Paragraph 49 (mislabeled as Paragraph 48), Plaintiff
25  is without sufficient information or belief to admit or deny the allegations in this
26  paragraph. Based on this lack of information or belief, Plaintiff denies the allegations.

27  49. The Sync license fee is negotiated prior to the contract signing and paid
28  months later by the production company directly to the music library. If a sub-

1  publisher licenses the music for the publisher, the production company pays the Sync

2  license fee to the sub-publisher, who then pays the publisher their percentage

3  according to the publisher/sub-publisher negotiated split.

4      **ANSWER**:  In answer to Paragraph 50 (mislabeled as Paragraph 49), Plaintiff

5  is without sufficient information or belief to admit or deny the allegations in this

6  paragraph. Based on this lack of information or belief, Plaintiff denies the allegations.

7      50. Music libraries like the Library can be found all over the world. Based

8  upon information and belief, most music libraries seem to operate on a similar basis

9  to the Library.

10      **ANSWER**: In answer to Paragraph 51 (mislabeled as Paragraph 50), Plaintiff

11  is without sufficient information or belief to admit or deny the allegations in this

12  paragraph. Based on this lack of information or belief, Plaintiff denies the allegations.

13      51. The music libraries supply thousands of cues to be used in films, TV

14  shows, promotional videos and advertisements every year. The music from the

15  Library and the other libraries is always applied to a visual product. The visual

16  product is the actual significant part of the presentation. The music is only

17  supportive.

18      **ANSWER**: In answer to Paragraph 52 (mislabeled as Paragraph 51), Plaintiff

19  is without sufficient information or belief to admit or deny the allegations in this

20  paragraph. Based on this lack of information or belief, Plaintiff denies the allegations.

21      52. This is different than a record company supplying music to a show where a

22  band plays, a streaming experience where that music is the purpose of the show, or a

23  live performance watched on TV whereby the music is the significant part of the

24  presentation. That is why all of the Library music cues is identified by the

25  Performance Rights Organizations as "background" music.

26      **ANSWER**: In answer to Paragraph 53 (mislabeled as Paragraph 52), Plaintiff

27  is without sufficient information or belief to admit or deny the allegations in this

28  paragraph. Based on this lack of information or belief, Plaintiff denies the allegations.

53. Labrador, Inc. is paid a much lower rate because of the insignificance of the music as it relates to the significant visual presentation itself.

**ANSWER**: In answer to Paragraph 54 (mislabeled as Paragraph 53), Plaintiff is without sufficient information or belief to admit or deny the allegations in this paragraph. Based on this lack of information or belief, Plaintiff denies the allegations.

**Beatbox and Peter Baker**

54. In sharp contrast to Webb and Labrador, Inc.'s limited experience in the music cue licensing industry, Beatbox has extensive experience and according to Beatbox, they "are the best at what we do."

**ANSWER**: In answer to Paragraph 55 (mislabeled as Paragraph 54), Plaintiff is without sufficient information or belief to admit or deny the allegations in this paragraph. Based on this lack of information or belief, Plaintiff denies the allegations.

55. Beatbox started their business in Australia and New Zealand in 1987 under the name Production Music Services. In 2007 the company name was changed to the current name.

**ANSWER**: In answer to Paragraph 56 (mislabeled as Paragraph 55), Plaintiff admits the allegations in the paragraph.

56. Importantly, Peter Baker, the co-owner of BeatBox, taught the licensing process in Australian schools prior to starting BeatBox.

**ANSWER**: In answer to Paragraph 57 (mislabeled as Paragraph 56), Plaintiff denies the allegations in the paragraph.

57. Beatbox is a production music supplier to the media industry. The music supplied is used by broadcasters, freelance editors, studios, radio stations and production companies as background music in professional media productions, including TV and radio programs, commercials, promos and online videos.

**ANSWER**: In answer to Paragraph 58 (mislabeled as Paragraph 57), Plaintiff admits the allegations in this paragraph.

1   58. Beatbox sources most of their music from overseas production music
2   publishers who record and produce the music for use worldwide. The production
3   music publishers issue the music in collections called music libraries for license [sic]
4   by users.

5   **ANSWER**: In answer to Paragraph 59 (mislabeled as Paragraph 58), Plaintiff
6   admits the allegations in this paragraph.

7   59. Since 1987 Beatbox had grown to represent over 100 music libraries which
8   include over 400,000 tracks. It is currently receiving approximately 1,000 tracks per
9   week of new music from the production music publishers they represent.

10   **ANSWER**: In answer to Paragraph 60 (mislabeled as Paragraph 59), Plaintiff
11   admits the allegations in this paragraph.

12   60. The music is issued on their website, and on hard drives which it supplies
13   for clients to access and use when they require it.

14   **ANSWER**: In answer to Paragraph 61 (mislabeled as Paragraph 60), Plaintiff
15   admits the allegations in this paragraph.

16   61. Beatbox enters into representation agreements with the production music
17   publishers, or the owners of the music libraries, to acquire the rights to distribute
18   production music and make it available to their client base for general non-exclusive
19   use in professional media productions.

20   **ANSWER**: In answer to Paragraph 62 (mislabeled as Paragraph 61), Plaintiff
21   admits the allegations in this paragraph.

22   **Australasian Mechanical Copyright Owners Society Limited "AMCOS"**
23   **(Not a party in this action.)**

24   62.   AMCOS is an Australian music publishers' organization that, among
25   other things, licences [sic] production music on behalf of production music
26   publishers/sub-publishers.

27   **ANSWER**: In answer to Paragraph 63 (mislabeled as Paragraph 62), Plaintiff
28   admits the allegations in this paragraph.

63. AMCOS requires each publisher or sub-publisher to assign exclusive licensing rights to it in exchange for their services.

**ANSWER**: In answer to Paragraph 64 (mislabeled as Paragraph 63), Plaintiff is without sufficient information or belief to admit or deny the allegations in this paragraph. Based on this lack of information or belief, Plaintiff denies the allegations.

64. Membership of AMCOS is open to any company representing music catalogues and there is no cost to join.

**ANSWER**: In answer to Paragraph 65 (mislabeled as Paragraph 64), Plaintiff is without sufficient information or belief to admit or deny the allegations in this paragraph. Based on this lack of information or belief, Plaintiff denies the allegations.

65. AMCOS will take a commission for each licence [sic] it issues prior to distributing the royalties to their members.

**ANSWER**: In answer to Paragraph 66 (mislabeled as Paragraph 65), Plaintiff admits the allegations in this paragraph.

66. Beatbox is and has been a member of AMCOS since 1987.

**ANSWER**: In answer to Paragraph 67 (mislabeled as Paragraph 66), Plaintiff admits the allegations in this paragraph.

67. Beatbox entered an exclusive licence [sic] agreement with AMCOS on November 1, 2004 for the licensing by AMCOS of the production music in Beatbox's music libraries ("AMCOS Agreement"). (Attached hereto as Exhibit C and herein incorporated herein by this reference is a true and correct copy of the agreement between Beatbox and AMCOS.)

**ANSWER**: In answer to Paragraph 68 (mislabeled as Paragraph 67), Plaintiff admits the allegations in this paragraph.

68. In terms of the Beatbox and AMCOS Agreement, Beatbox was required, on a regular basis, to immediately register the music cues identified as being part of the Library as defined by the publisher.

1    **ANSWER**: In answer to Paragraph 69 (mislabeled as Paragraph 68), Plaintiff

2  denies the allegations in this paragraph.

3    69. In this case Beatbox was required to license from the Library the

4  contiguous album designs with use of an excel file, with the relevant PROs, namely

5  AMCOS and APRA.

6    **ANSWER**: In answer to Paragraph 70 (mislabeled as Paragraph 69), Plaintiff

7  denies the allegations in this paragraph.

8    70. Labrador, Inc. is informed and believed this was being done on a regular

9  basis.

10    **ANSWER**: In answer to Paragraph 71 (mislabeled as Paragraph 70), Plaintiff

11  is without sufficient information or belief to admit or deny the allegations in this

12  paragraph. Based on this lack of information or belief, Plaintiff denies the allegations.

13    71. Indeed, Beatbox was duty bound to immediately notify AMCOS of each

14  addition to or deletion from that list that it obtained from the Library.

15    **ANSWER**: In answer to Paragraph 72 (mislabeled as Paragraph 71), Plaintiff

16  denies the allegations in this paragraph.

17    72. In this, Beatbox failed and did not delete the cues it was required to.

18    **ANSWER**: In answer to Paragraph 73 (mislabeled as Paragraph 72), Plaintiff

19  denies the allegations in this paragraph.

20  **Michael Cohen/Eminem Esque**

21    73. All contracts between Labrador, Inc. and their composers contain a

22  warranty whereby the composer represents and warrants that the music they supply is

23  their own work and the music and their performance of it does not infringe the

24  copyright or any other right of another person.

25    **ANSWER**: In answer to Paragraph 74 (mislabeled as Paragraph 73), Plaintiff

26  is without sufficient information or belief to admit or deny the allegations in this

27  paragraph. Based on this lack of information or belief, Plaintiff denies the allegations.

28

1   74. The contract also includes a comprehensive indemnity by the composer in

2   favor of Labrador, Inc. in the event of a material breach of any of those

3   representations or warranties.

4       **ANSWER**: In answer to Paragraph 75 (mislabeled as Paragraph 74), Plaintiff

5   is without sufficient information or belief to admit or deny the allegations in this

6   paragraph. Based on this lack of information or belief, Plaintiff denies the allegations.

7       75. Occasionally, when a composer would ask Labrador, Inc. what style of

8   music was successfully getting licensed - so they could mimic that style - or when a

9   music supervisor would ask us for a style they needed, Labrador, Inc. would relay

10  that information.

11      **ANSWER**: In answer to Paragraph 76 (mislabeled as Paragraph 75), Plaintiff

12  is without sufficient information or belief to admit or deny the allegations in this

13  paragraph. Based on this lack of information or belief, Plaintiff denies the allegations.

14      76. Labrador, Inc. operated similar to the way a book library operates, thus the

15  name library. An artist would bring his or her product to Labrador, Inc. and it would

16  put it on their shelves.

17      **ANSWER**: In answer to Paragraph 77 (mislabeled as Paragraph 76), Plaintiff

18  is without sufficient information or belief to admit or deny the allegations in this

19  paragraph. Based on this lack of information or belief, Plaintiff denies the allegations.

20      77. Labrador, Inc. never paid an artist to put their product on their shelves. The

21  end user, music supervisor, would search Labrador, Inc.'s shelves, and then offer a

22  fee to license it. When Labrador, Inc. received the license fee money months later,

23  Labrador, Inc. would send the composer his or her percentage per contract.

24      **ANSWER**: In answer to Paragraph 78 (mislabeled as Paragraph 77), Plaintiff

25  is without sufficient information or belief to admit or deny the allegations in this

26  paragraph. Based on this lack of information or belief, Plaintiff denies the allegations.

27      78. If the licensing involved the Performance Rights Organization (PRO), the

28  PRO would pay the composer his or her writing fee many months later.

**ANSWER**: In answer to Paragraph 79 (mislabeled as Paragraph 78), Plaintiff is without sufficient information or belief to admit or deny the allegations in this paragraph. Based on this lack of information or belief, Plaintiff denies the allegations.

79. On February 14, 2008, Labrador, Inc. entered into an agreement (see Exhibit A.) with Cohen, wherein Cohen granted Labrador, Inc. worldwide rights, title and interest in a collection the Cohen Compositions. (see Exhibit A.)

**ANSWER**: In answer to Paragraph 80 (mislabeled as Paragraph 79), Plaintiff is without sufficient information or belief to admit or deny the allegations in this paragraph. Based on this lack of information or belief, Plaintiff denies the allegations.

80. Based upon information and belief Cohen, before the Cohen Agreement was signed, Cohen wrote music for film and television as a career by composing directly for those productions, and by contracting his music to many different music libraries.

**ANSWER**: In answer to Paragraph 81 (mislabeled as Paragraph 80), Plaintiff is without sufficient information or belief to admit or deny the allegations in this paragraph. Based on this lack of information or belief, Plaintiff denies the allegations.

81. Cohen initially sent Labrador, Inc. a large group of music which Labrador, Inc. reviewed and accepted - via the Cohen Agreement - as part of the library.

**ANSWER**: In answer to Paragraph 82 (mislabeled as Paragraph 81), Plaintiff is without sufficient information or belief to admit or deny the allegations in this paragraph. Based on this lack of information or belief, Plaintiff denies the allegations.

82. The Cohen Compositions included a track entitled "SQ me Eminem esque" which was 2 minutes 22 seconds long ("Eminem Esque").

**ANSWER**: In answer to Paragraph 83 (mislabeled as Paragraph 82), Plaintiff admits the allegations in this paragraph.

83. Cohen named the composition "eminem-esque".

1   **ANSWER**: In answer to Paragraph 84 (mislabeled as Paragraph 83), Plaintiff
2   is without sufficient information or belief to admit or deny the allegations in this
3   paragraph. Based on this lack of information or belief, Plaintiff denies the allegations.

4   84. Labrador, Inc. decided whether it was good to keep the name so that all
5   parties down the line would understand that the cue was a "sound-a-like", even if the
6   composition was licensed individually (outside the album originally called "Sound A
7   Likes).

8   **ANSWER**: In answer to Paragraph 85 (mislabeled as Paragraph 84), Plaintiff
9   is without sufficient information or belief to admit or deny the allegations in this
10   paragraph. Based on this lack of information or belief, Plaintiff denies the allegations.

11   85.   The other reason Labrador, Inc. continued with the name is as a
12   marketing tactic for those end-users who wanted an inner-city sound and because it
13   made a practice to honor the composers and not change what they have creatively
14   decided. Naming the cue is part of the creativity of the product. Later, Labrador, Inc.
15   realized the marketing mistake of associating itself with inner-sound rap music, and
16   soon wanted to disassociate itself with that style.

17   **ANSWER**: In answer to Paragraph 86, (mislabeled as Paragraph 85) Plaintiff
18   is without sufficient information or belief to admit or deny the allegations in this
19   paragraph. Based on this lack of information or belief, Plaintiff denies the allegations.

20   86. In terms of the Cohen Agreement, Cohen warranted that all of the Cohen
21   compositions were his sole, exclusive and original work.

22   **ANSWER**: In answer to Paragraph 87 (mislabeled as Paragraph 86), Plaintiff
23   is without sufficient information or belief to admit or deny the allegations which
24   amount to legal conclusions in this paragraph. Based on this lack of information or
25   belief, Plaintiff denies the allegations.

26   87. Following the execution of the Cohen Agreement and the representations
27   and warranties it contained, the Cohen Compositions, including Eminem Esque, were
28

PLAINTIFF BEATBOX MUSIC PTY, LTD.'S RESPONSE TO LABRADOR ENTERTAINMENT INC. ET AL.'S
AFFIRMATIVE DEFENSES TO THE FIRST AMENDED COMPLAINT AND COUNTERCLAIMS

1  added to the Library and made available for license to music sub-publishers
2  worldwide.

3       **ANSWER**: In answer to Paragraph 88 (mislabeled as Paragraph 87), Plaintiff
4  is without sufficient information or belief to admit or deny the allegations in this
5  paragraph. Based on this lack of information or belief, Plaintiff denies the allegations.

6       88. Labrador, Inc. had no previous complaints about any Cohen or his music
7  compositions.

8       **ANSWER**: In answer to Paragraph 89 (mislabeled as Paragraph 88), Plaintiff
9  is without sufficient information or belief to admit or deny the allegations in this
10 paragraph. Based on this lack of information or belief, Plaintiff denies the allegations.

11 **Labrador, Inc. and Beatbox Commencement of Relationship**

12      89. At or around March 2009, after discovering Labrador Inc.'s music library
13 on the internet, Beatbox first approached Labrador, Inc. to explore becoming a sub-
14 publisher for Labrador, Inc.'s music library.

15      **ANSWER**: In answer to Paragraph 90 (mislabeled as Paragraph 89), Plaintiff
16 admits the allegations in this paragraph.

17      90. Beatbox had learned that another sub-publisher, West One Music, located
18 in the United Kingdom, was an agent for Labrador Inc. - licensing Labrador, Inc.'s
19 music library for trailers in movies.

20      **ANSWER**: In answer to Paragraph 91 (mislabeled as Paragraph 90), Plaintiff
21 admits the allegations in this paragraph.

22      91. Beatbox knew that in Hollywood, California, there were companies that
23 produced trailers for movies needed to license cues from music libraries.

24      **ANSWER**:  In answer to Paragraph 92 (mislabeled as Paragraph 91), Plaintiff
25 admits the allegations in this paragraph.

26      92. Motivated by large sums of money generated by these licenses, Beatbox
27 wanted to become a sub-licensor and obtain the right to license that music in the
28 Australian and New Zealand market.

1      **ANSWER**: In answer to Paragraph 93 (mislabeled as Paragraph 92), Plaintiff
2 denies the allegations in this paragraph.

3      93. Beatbox had a reputation of representing big Hollywood trailer music
4 companies and wanted to enter into an agreement with Labrador, Inc. before one of
5 Beatbox's competitors - so - Beatbox contacted Labrador, Inc.

6      **ANSWER**: In answer to Paragraph 94 (mislabeled as Paragraph 93), Plaintiff
7 admits the allegations in this paragraph.

8      94. On or about March 21, 2009, in response to an inquiry by Peter Baker
9 "Baker" from Beatbox, Webb on behalf of Labrador, Inc. indicated an interest to
10 work with Beatbox.

11      **ANSWER**: In answer to Paragraph 95 (mislabeled as Paragraph 94), Plaintiff
12 admits the allegations in this paragraph.

13      95. Webb explained to Baker that their internet site was incomplete. That it
14 needed to upload more music up to their website.

15      **ANSWER**: In answer to Paragraph 96 (mislabeled as Paragraph 95), Plaintiff
16 denies the allegations in this paragraph.

17      96. Webb requested Baker to send to Labrador, Inc. their contract.

18      **ANSWER**: In answer to Paragraph 97 (mislabeled as Paragraph 96), Plaintiff
19 admits the allegations in this paragraph.

20      97. On or about March 22, 2009, Baker stated in an email that it had been in
21 business over 20 years and indeed, "we are the best at what we do."

22      **ANSWER**: In answer to Paragraph 98 (mislabeled as Paragraph 97), Plaintiff
23 admits the allegations in this paragraph.

24      98. Baker offered to meet with Webb in Los Angeles, California around April
25 14, 2009, to discuss:

26 •  Labrador, Inc.'s distribution system.

27 •  To assess and approve Labrador, Inc.'s music categories, including Sound-
28   A-Likes.

- 28 -

PLAINTIFF BEATBOX MUSIC PTY, LTD.'S RESPONSE TO LABRADOR ENTERTAINMENT INC. ET AL.'S
AFFIRMATIVE DEFENSES TO THE FIRST AMENDED COMPLAINT AND COUNTERCLAIMS

1      • Ways they could work together.

2      **ANSWER**: In answer to Paragraph 99 (mislabeled as Paragraph 98), Plaintiff

3  admits meeting but Labrador claims that we offered to meet with them in 2009 to

4  discuss Labrador's distribution system, to assess and approve Labrador's music

5  categories including soundalikes however no such request was ever made by

6  Beatbox. In answering further, Beatbox affirmatively states that it is not a sub

7  publishers' duty or right to approve an original publisher's library. Beatbox as the sub

8  publisher represents the music that is sent by the original publisher and does not need

9  to assess or approve it.

10     99. Baker attached to the email a draft of the contract, stating that the contract

11  "is a fairly standard one for production music distributors."

12     **ANSWER**: In answer to Paragraph 100 (mislabeled as Paragraph 99), Plaintiff

13  admits the allegations in this paragraph.

14     100. At that time Baker did state that the "licensing of music in Australia is

15  done entirely by a copyright society (AMCOS/APRA) and as such [they] do not

16  handle the synch or performing licensing directly. It works in a similar way to the UK

17  and [their] expertise is used to make sure [your] music libraries get to the right clients

18  who use and report to the societies."

19     **ANSWER**: In answer to Paragraph 101 (mislabeled as Paragraph 100),

20  Plaintiff admits the allegations in this paragraph.

21     101. Importantly, absent from the Beatbox Agreement was Beatbox's

22  arrangement with AMCOS.

23     **ANSWER**: In answer to Paragraph 102 (mislabeled as Paragraph 101),

24  Plaintiff denies that it was "Important" denies the remaining allegations and further

25  affirmatively states that it fully explained to Labrador how the licensing of music is

26  done by AMCOS in a similar way to the UK where Labrador already had an agent.

27

28

102. Instead, Beatbox promised it would introduce, exploit and grant non-exclusive licenses for the music in the Licensed Territory." (See Exhibit B ¶¶1 and 5.)

**ANSWER**: In answer to Paragraph 103 (mislabeled as Paragraph 102), Plaintiff admits the allegations in this paragraph.

103. Finally, the Beatbox Agreement states, "[t]his Agreement constitutes the entire agreement between the parties hereto at the date hereof and the parties hereto enter into it solely on the basis without reliance on any other representations whatsoever." (See Exhibit B ¶15.)

**ANSWER**: In answer to Paragraph 104 (mislabeled as Paragraph 103), Plaintiff admits the allegations in this paragraph.

104. In the March 22, 2009 email, Baker explained that:

• They distribute their music completely digitally and do not need CDs or DVDs.

• The market in their territory is very small when compared to the USA.

• The trailer industry was almost non-existent.

• Beatbox's client base is made up of every broadcasters and hundreds of freelance editors, studios, radio stations and production companies.

**ANSWER**: In answer to Paragraph 105 (mislabeled as Paragraph 104), Plaintiff admits the allegations in this paragraph.

105. Further, Labrador, Inc.'s music would be used by the TV promotion producers whose appetite for new music is immense. This is a lucrative area where Beatbox will exploit Labrador Inc.'s music to the full.

**ANSWER**: In answer to Paragraph 106 (mislabeled as Paragraph 105), Plaintiff admits the allegations in this paragraph.

106. Baker continues, "[w]e do not allow our low end users access to our premium trailer libraries to maintain an exclusivity for our high end clients. This ensures maximum returns from the TV networks."

1    **ANSWER**: In answer to Paragraph 107 (mislabeled as Paragraph 106),

2  Plaintiff admits the allegations in this paragraph.

3    107. Finally, Baker describes their technology as advanced, "[w]e use our web

4  download site and a technologically advanced hard drive search system which was

5  developed completely in house. It is the No.1 way that clients use to search and

6  audition music. We employ a full time IT professional and are at the cutting edge of

7  delivery technology."

8    **ANSWER**: In answer to Paragraph 108 (mislabeled as Paragraph 107),

9  Plaintiff admits the allegations in this paragraph.

10    108.   On or about April 14, 2009, Labrador, Inc. executed the agreement with

11  Beatbox Music Pty Ltd. (See attached Exhibit B.)

12    **ANSWER**: In answer to Paragraph 109 (mislabeled as Paragraph 108),

13  Plaintiff admits the allegations in this paragraph.

14    109.   In the Beatbox Agreement, Labrador, Inc. appointed Beatbox as the

15  exclusive Sub-Publisher of a list of compositions known as the Library, for the

16  territories of Australia, New Zealand and Fiji. (See attached Exhibit B Preamble.)

17    **ANSWER**: In answer to Paragraph 110 (mislabeled as Paragraph 109),

18  Plaintiff denies that the contract contained a list of compositions .

19    110.   Beatbox agreed to import each of the recordings as required issued by

20  the Labrador, Inc. on DVD, hard drive or other media. (See attached Exhibit B ¶3.)

21    **ANSWER**: In answer to Paragraph 111 (mislabeled as Paragraph 110),

22  Plaintiff admits the allegations in this paragraph.

23    111.   Importantly, Beatbox further promised that "it w[ould] use their best

24  commercial endeavors to exploit the recordings for the benefit of the parties

25  concerned."(See attached Exhibit B ¶ 7.)

26    **ANSWER**: In answer to Paragraph 112 (mislabeled as Paragraph 111),

27  Plaintiff admits the allegations in this paragraph.

28

PLAINTIFF BEATBOX MUSIC PTY, LTD.'S RESPONSE TO LABRADOR ENTERTAINMENT INC. ET AL.'S
AFFIRMATIVE DEFENSES TO THE FIRST AMENDED COMPLAINT AND COUNTERCLAIMS

112.   Foremost, Beatbox promised to adhere to the performing rights in the recording as set forth by the Copyright Societies in the USA (ASCAP, BMI and SESAC) and their affiliated societies in the licensed territory.

**ANSWER**: In answer to Paragraph 113 (mislabeled as Paragraph 112), Plaintiff denies the allegations in this paragraph.

113. This is important because, implicit in this Beatbox Agreement, to facilitate the performance payment to each writer, Beatbox was required to provide to the PRO excel file's listing:

- The name of the composer.
- The composer's PRO affiliation.
- The composer's rights percentage.
- The composer's ID number with their PRO.
- The publisher.
- The publisher's PRO affiliation.
- The publisher's rights percentage.
- The publisher's ID number with the PRO.
- The album title as it would be licensed.
- The album CODE as it would be licensed.
- The compositions title as it would be licensed.
- The duration (length) of the music composition.

**ANSWER**: In answer to Paragraph 114 (mislabeled as Paragraph 113), Plaintiff denies the allegations in this paragraph.

114. This protocol is the standard in the industry, and imperatively demanded by all PROs in order to license a composition to an end-user, and in order to have it registered with the PRO.

**ANSWER**:  In answer to Paragraph 115 (mislabeled as Paragraph 114), Plaintiff denies the allegations in this paragraph.

115.   Beatbox promised that prior to or assigning to any other person or party any of the benefits licensed to it under the terms of this Beatbox Agreement it would obtain the written consent of Labrador, Inc.

**ANSWER**: In answer to Paragraph 116 (mislabeled as Paragraph 115), Plaintiff denies the allegations in this paragraph.

116. Although Beatbox made numerous assignments, it did so without the written consent of Labrador, Inc.. (See attached Exhibit B ¶12.)

**ANSWER** In answer to Paragraph 117 (mislabeled as Paragraph 116), Plaintiff denies the allegations in this paragraph.

117.   Starting on or about May 7, 2009 and continuing thereafter, to facilitate Beatbox's access to the music cues, Labrador, Inc. provided to Beatbox a link to Labrador, Inc.'s website to allow Beatbox to download to Library.

**ANSWER**: In answer to Paragraph 118 (mislabeled as Paragraph 117), Plaintiff denies that it got music from Labrador's website and affirmatively state that the music was obtained from Labrador's FTP site.

118. In addition, Labrador, Inc. sent via email to Beatbox excel files listing the composer information.

**ANSWER**: In answer to Paragraph 119 (mislabeled as Paragraph 118), Plaintiff is without sufficient information or belief to admit or deny the vague and ambiguous allegations in this paragraph. Based on this lack of clarity Plaintiff cannot for any information or belief, and thus, Plaintiff denies the allegations.

119. On or about May 13, 2009, without Labrador, Inc. ever knowing, Barbara Baker, co-owner of Beatbox instructed an employee at Beatbox to remove from the Library, all the Sound-A-Like album as an album and all artists referenced in the titles, such as Beyonce Esque, Eminem Esque and Rolling Stones-Esque, among others.

**ANSWER**: In answer to Paragraph 120 (mislabeled as Paragraph 119), Plaintiff denies the allegations in this paragraph.

120. Importantly, the Eminem Esque is the subject matter of the New Zealand Action.

**ANSWER**: In answer to Paragraph 121 (mislabeled as Paragraph 120), Plaintiff admits the allegations in this paragraph.

121. It is highly unlikely that there would be a New Zealand Action if this cue had been actually removed from the Library in 2009 as directed by the co-owner of Beatbox.

**ANSWER**: In answer to Paragraph 122 (mislabeled as Paragraph 121), Plaintiff denies the allegations in this paragraph. The co-owner of Beatbox did not direct the track to be removed.

122.   By June 2, 2009, it appeared that Beatbox was satisfied with the downloaded Library.

**ANSWER**: In answer to Paragraph 123 (mislabeled as Paragraph 122), Plaintiff is without sufficient information or belief to admit or deny the allegations in this paragraph. Based on this lack of information or belief, Plaintiff denies the allegations.

**Labrador, Inc. Sends to Beatbox Updated List Is Music Cues**

123. On April 3, 2012, via email, Baker wrote to Webb informing him of his interest to adopt Webb's New Library list of compositions and library design and further that:

• Baker wanted to discuss with Web, Labrador, Inc.'s new albums and the reassigning of codes and indexes. The cues that were to remain in the library are the same cues.

• Beatbox could retitle them, or change the metatdata. Labrador, Inc. would be sending Beatbox 75 different jpgs pictures with 75 different CD covers to show the Albums.

1    • Included an excel file of the titles, new codes, and new indexes. The excel

2    file had all the cues divided into their albums, proper new codes and proper new

3    indexes.

4    • In his request to meet, Baker added that "it seems we have a lot to talk about

5    and it will be easier for me to come to you and then we can also look at the website

6    and album format you refer to. There are several things that your new format may

7    help . . . "After the meeting, Baker said "I look forward to receiving the new Spider

8    Cues tracks . . . "

9    **ANSWER**: In answer to Paragraph 124 (mislabeled as Paragraph 123),

10   Plaintiff denies the allegations in this paragraph and affirmatively states that the

11   quotes provided do not include the true and complete language contained in the

12   relevant correspondence and therefore, Plaintiff denies.

13   124. There were also cues that were deleted. Because some cues were deleted,

14   the codes and indexes of many of the albums and cues had been changed to improve

15   the quality of the library.

16   **ANSWER**: In answer to Paragraph 125 (mislabeled as Paragraph 124),

17   Plaintiff denies the allegations in this paragraph.

18   125. The organized visual excel file reflecting all the changes and the entire

19   New Library in an easy to review manner gave BeatBox the very important title,

20   code, and index information they needed to inform AMCOS of the New Library for

21   licensing purposes.

22   **ANSWER**: In answer to Paragraph 126 (mislabeled as Paragraph 125),

23   Plaintiff denies the allegations in this paragraph.

24   126.   Without this proper transfer of excel file information from Labrador, Inc.

25   to BeatBox to AMCOS, all parties were vulnerable to possible litigation.

26   **ANSWER**: In answer to Paragraph 127 (mislabeled as Paragraph 126),

27   Plaintiff denies the allegations in this paragraph.

28

127. On or about April 6, 2012, Bakers and Webb met. The Baker's approved to replace the entire original Library with a New Library.

**ANSWER**: In answer to Paragraph 128 (mislabeled as Paragraph 127), Plaintiff denies the allegations and legal conclusions contained in this paragraph.

128. On or about March 6, 2014, via email, Webb writes to Baker, Labrador, Inc. is revamping to raise the quality and delivery process and that:

• Labrador, Inc. is hiring a composer who writes the best trailer music in Hollywood, "we're deleting questionable music, and we're re-arranging logos and presentation."

• Webb continues, Labrador, Inc. requested that Beatbox "upload to your site and use our new Spider Cues logo.

• It is being recognized around the world and it is important to use it. I've attached another tiff and jpg of the logo if you didn't get it a while back."

• Webb stated, attached "is an excel file that has music to remove from the library, or to simply review to ensure that the proper composers are listed." Still further in the email,

• Webb gave a link for Baker to download all new audio mixes of the compositions, including albums Spid001 to Spid077.

**ANSWER**: In answer to Paragraph 129 (mislabeled as Paragraph 128), Plaintiff admits to receiving the 2014 excel file but did not receive the link to download albums due to a bug with sending emails from Mac to PC containing hyperlinks. Plaintiff's received email was cut off after Point 3. In answering further, Plaintiff states that there was no instruction to place a hold on licensing of any track in the subject email

129. Within that group is a filed named Spid039.

**ANSWER**: In answer to Paragraph 130 (mislabeled as Paragraph 129), Plaintiff is without sufficient information or belief to admit or deny the allegations in

1  this paragraph. Based on this lack of information or belief, Plaintiff denies the

2  allegations.

3      130. Though a new file was named Spide039 it did not contain the "Eminem

4  Esque" cue that had previously been removed along with the previously removed

5  Sound-A-Like album in 2012.

6      **ANSWER**: In answer to Paragraph 131 (mislabeled as Paragraph 130),

7  Plaintiff is without sufficient information or belief to admit or deny the allegations in

8  this paragraph. Based on this lack of information or belief, Plaintiff denies the

9  allegations. In answering further, Plaintiff affirmatively states that the cue Eminem

10  esque was not removed in 2012 as Plaintiff never received any instruction from

11  Labrador to remove the cue.

12      131. Instead, another album ("Television Bumpers") had already been given

13  the code Spid039 in 2012, substituting the Sound-A-Like album that had been taken

14  out of the Library in 2012.

15      **ANSWER**: In answer to Paragraph 132 (mislabeled as Paragraph 131),

16  Plaintiff is without sufficient information or belief to admit or deny the allegations in

17  this paragraph. Based on this lack of information or belief, Plaintiff denies the

18  allegations. In answering further, Plaintiff affirmatively states that the Sound-A-Like

19  album was not removed in 2012 as Plaintiff never received any instruction from

20  Labrador to remove the album.

21      132. When opening and reviewing these codes and albums necessary for

22  AMCOS licensing, Baker would have seen and given to AMCOS the changes herein

23  described.

24      **ANSWER**: In answer to Paragraph 133 (mislabeled as Paragraph 132),

25  Plaintiff denies the allegations in this paragraph.

26      133. Via email, Baker responds to Webb:

27

28

PLAINTIFF BEATBOX MUSIC PTY, LTD.'S RESPONSE TO LABRADOR ENTERTAINMENT INC. ET AL.'S
AFFIRMATIVE DEFENSES TO THE FIRST AMENDED COMPLAINT AND COUNTERCLAIMS

1   • It seems like a lot of changes are happening which will be beneficial to
2   Spider Cues. I think we'll have to talk about the requested changes as there are
3   several issue to work through from our end.

4   • We are coming over soon for NAB and wondered if you could meet with us
5   to discuss on Friday 28th about 3.00pm in Studio City?

6   **ANSWER**: In answer to Paragraph 134 (mislabeled as Paragraph 133),
7   Plaintiff admits the allegations in this paragraph.

8   134. On or about March 28, 2014, Webb met with Baker and Barbara Baker in
9   Los Angeles, California.

10  **ANSWER**: In answer to Paragraph 135 (mislabeled as Paragraph 134),
11  Plaintiff admits the allegations in this paragraph.

12  135. During the meeting Baker and Barbara Baker said they would definitely
13  replace the entire original Library that was sent to them March 7, 2014.

14  **ANSWER**: In answer to Paragraph 136 (mislabeled as Paragraph 135),
15  Plaintiff admits the meeting occurred, but denies a library was sent to Plaintiff on
16  March 7, 2014.

17  136. They promised to register the new Library with their Performance Rights
18  Organization and start immediately using the new Library.

19  **ANSWER**: In answer to Paragraph 137 (mislabeled as Paragraph 136),
20  Plaintiff denies the allegations in this paragraph.

21  137. A Labrador, Inc. associate who was at the meeting has signed a
22  declaration stating that the Bakers said they would definitely replace the entire
23  original Library that was sent to them on March 7, 2014.

24  ANSWER: In answer to Paragraph 138 (mislabeled as Paragraph 137),
25  Plaintiff admits a Labrador associate has signed a declaration but as per the response
26  in Paragraph 135, denies a library was sent to Plaintiff on March 7, 2014. Plaintiff
27  further denies that replacing the original library would result in removal of the
28  original Library from AMCOS without express instructions from Labrador.

PLAINTIFF BEATBOX MUSIC PTY, LTD.'S RESPONSE TO LABRADOR ENTERTAINMENT INC. ET AL.'S
AFFIRMATIVE DEFENSES TO THE FIRST AMENDED COMPLAINT AND COUNTERCLAIMS

1  138. BeatBox neglected to immediately inform AMCOS of these changes

2  requested by Labrador, Inc.

3  **ANSWER**: In answer to Paragraph 139 (mislabeled as Paragraph 138),

4  Plaintiff denies that it was under any duty to inform AMCOS of "changes requested

5  by Labrador" because Labrador never stated any particular changes apart from stating

6  that it was going to eventually send a re-arranged set of music files. In answering

7  further, Plaintiff affirmatively states that without explicit instructions from the

8  publisher Beatbox does not and will not make changes to registrations already in the

9  AMCOS system.

10  139. The AMCOS Agreement requires that Beatbox, upon receipt of the New

11  Library excel file that the Bakers agreed to implement in the March 28th meeting, to

12  immediately inform AMCOS of those changes. (See Exhibit C ¶ 7.1.1 (c).). *Again,*

13  *Beatbox failed to notify AMCOS.*

14  **ANSWER**: In answer to Paragraph 140 (mislabeled as Paragraph 139),

15  Plaintiff denies the allegations in this paragraph. In answering further, Plaintiff denies

16  that an excel file in any way defines a library.

17  140. In this present action, BeatBox excuses their actions of failing to notify

18  AMCOS, by wrongly asserting:

19  • Metadata from the excel file was not embedded into the new audio files in

20    the manner that suits BeatBox. On the contrary, Labrador, Inc. has no

21    contractual obligation to embed metadata into the audio files.

22  • The new audio files did not download properly. This is misleading because:

23    • The audio files themselves are irrelevant to AMCOS' licensing

24  information.

25    • Baker admits in his own email, only the excel file is important to register

26  with AMCOS.

1    • Further, the transfer of audio files was contractually the responsibility of

2    BeatBox by use of their own professional standard of the industry File Transfer

3    Protocol cloud site.

4    • Labrador, Inc. is not responsible because BeatBox has an inefficient

5    downloading system.

6    • The excel file itself is only used to register music with AMCOS.

7    **ANSWER**: In answer to Paragraph 141 (mislabeled as Paragraph 140),

8    Plaintiff denies the allegations in this paragraph. In answering further, Beatbox

9    affirmatively states that it does not need to notify AMCOS unless the original

10   publisher sends an explicit notification to place a hold on a track for licensing.

11   Beatbox is are only required to register newly released titles, not the whole

12   library where it was re-arranged. An excel file does not define a library and is

13   not sent to AMCOS. Tracks removed from circulation may still be licensed

14   unless the original publisher sends an explicit notification to place a hold on a

15   track for licensing. No such notification was sent by Labrador.

16   141. Importantly Baker admits that the excel file should have immediately been

17   sent to register the New Library.

18   **ANSWER**: In answer to Paragraph 142 (mislabeled as Paragraph 141),

19   Plaintiff denies the allegations in this paragraph.

20   **Events in New Zealand That Led up to the Infringement by the New Zealand**

21   **Party**

22   142. On or about September 16, 2014, Eight Mile Style, LLC and Martin

23   Affiliated, LLC filed an action against the New Zealand National Party and their

24   Secretary, Greg Hamilton in New Zealand.

25   **ANSWER**: In answer to Paragraph 143 (mislabeled as Paragraph 142),

26   Plaintiff is without sufficient information or belief to admit or deny the allegations in

27   this paragraph. Based on this lack of information or belief, Plaintiff denies the

28   allegations.

143. New Zealand Plaintiffs claimed that the New Zealand Defendants from at least August 2014, knowingly infringed the New Zealand Plaintiffs' copyright in Eminem Esque.

**ANSWER**: In answer to Paragraph 144 (mislabeled as Paragraph 143), Plaintiff is without sufficient information or belief to admit or deny the allegations in this paragraph. Based on this lack of information or belief, Plaintiff denies the allegations.

144. The New Zealand Action alleged that in New Zealand, the New Zealand Defendants caused to be broadcast without permission and in violation of the copyright laws, the Eminem Esque ("New Zealand Broadcast").

**ANSWER**: In answer to Paragraph 145 (mislabeled as Paragraph 144), Plaintiff is without sufficient information or belief to admit or deny the allegations in this paragraph. Based on this lack of information or belief, Plaintiff denies the allegations.

145. Prior to The New Zealand Action numerous entities and individuals in New Zealand participated in the production of the broadcast (the "Production"). They are not named as parties in this action, (collectively "New Zealand Production Team"). The identity of these entities and individuals include:

- Nigel Foster from Sales Street Studio.
- Glen from Anarchyads.
- Sue Worthington from Petticoat Junction.
- Greg Hamilton, General Manager New Zealand National Party.
- Jo Dejoux from New Zealand National Party.
- Peter Moore from Moore Brands.
- Bali Virk from Graffiti Media.

**ANSWER**: In answer to Paragraph 146 (mislabeled as Paragraph 145), Plaintiff is without sufficient information or belief to admit or deny the allegations in

1  this paragraph. Based on this lack of information or belief, Plaintiff denies the
2  allegations.

3      146. Beginning around March 2014, Production Team wanted to license "Lose
4  Yourself" by Eminem. As discussions happened, the team thought his lyrics reflected
5  hate speech.

6      **ANSWER**: In answer to Paragraph 147 (mislabeled as Paragraph 146),
7  Plaintiff is without sufficient information or belief to admit or deny the allegations in
8  this paragraph. Based on this lack of information or belief, Plaintiff denies the
9  allegations.

10      147. Beginning around May 2014 the Production Team exchanged many
11  emails discussing the use of an instrumental tune that had the same feel, tempo,
12  groove, vibe, and sound as Lose Yourself, and found the Eminem Esque in the
13  Production for the New Zealand Broadcast.

14      **ANSWER**: In answer to Paragraph 148 (mislabeled as Paragraph 147),
15  Plaintiff is without sufficient information or belief to admit or deny the allegations in
16  this paragraph. Based on this lack of information or belief, Plaintiff denies the
17  allegations.

18      148. On or about May 27, 2014 Nigel Foster ("Nigel") sent an email to Sue
19  Worthington at Petticoat Junction ("Sue") containing the Eminem Esque. There was a
20  short discussion that identified the Eminem Esque being from Beatbox. They
21  questioned whether the cue was cleared "of copyright". They agreed that further
22  investigation would be required.

23      **ANSWER**: In answer to Paragraph 149 (mislabeled as Paragraph 148),
24  Plaintiff is without sufficient information or belief to admit or deny the allegations in
25  this paragraph. Based on this lack of information or belief, Plaintiff denies the
26  allegations.

27      149. By June 3, 2014, it was apparent that New Zealand National Party wanted
28  to use in the Production, the Eminem Esque cue.

PLAINTIFF BEATBOX MUSIC PTY, LTD.'S RESPONSE TO LABRADOR ENTERTAINMENT INC. ET AL.'S
AFFIRMATIVE DEFENSES TO THE FIRST AMENDED COMPLAINT AND COUNTERCLAIMS

1    **ANSWER**: In answer to Paragraph 150 (mislabeled as Paragraph 149),

2  Plaintiff is without sufficient information or belief to admit or deny the allegations in

3  this paragraph. Based on this lack of information or belief, Plaintiff denies the

4  allegations.

5    150. On or about June 16, 2014, Sue requested all of the details on the Eminem

6  Esque because the New Zealand Production Team was thinking about using it for the

7  Production. The concern was raised that the use of Eminem Esque would come under

8  "INTENSE SCRUTINY" as "we are using it for a political party and it was found in

9  the Library in an album titled Sound-A-Likes. The Production Team needed a total

10  reassurance it was not going to be legally challenged.

11    **ANSWER**: In answer to Paragraph 151 (mislabeled as Paragraph 150),

12  Plaintiff is without sufficient information or belief to admit or deny the allegations in

13  this paragraph. Based on this lack of information or belief, Plaintiff denies the

14  allegations.

15    151.   On June 16, 2014, Bali Virk from Graffiti Media ("Bali") sent an email

16  to Amy Bodsworth at AMCOS/APRA ("Amy"), the licensing PRO, stating that he

17  was unable to find eminem-esque registered in the AMCOS/APRA system. Bali was

18  seeking the assistance of Amy to help find the cue in the system.

19    **ANSWER**: In answer to Paragraph 152 (mislabeled as Paragraph 151),

20  Plaintiff is without sufficient information or belief to admit or deny the allegations in

21  this paragraph. Based on this lack of information or belief, Plaintiff denies the

22  allegations.

23    152. Amy immediately replied that she thought that "this is a new song that

24  hasn't yet been registered in our system. It does happen every so often.".  (It appears

25  that Graffiti Media or Sale Street had previously acquired the Eminem Esque from an

26  external drive previously given to them by BeatBox.)

27    **ANSWER**: In answer to Paragraph 153 (mislabeled as Paragraph 152),

28  Plaintiff is without sufficient information or belief to admit or deny the allegations in

1  this paragraph. Based on this lack of information or belief, Plaintiff denies the
2  allegations.

3      153. On that same day, June 16, 2014, Bali wrote to his Production Team
4  setting forth the results of an inquiry he had just previously made concerning the
5  Eminem Esque.

6      **ANSWER**: In answer to Paragraph 154 (mislabeled as Paragraph 153),
7  Plaintiff is without sufficient information or belief to admit or deny the allegations in
8  this paragraph. Based on this lack of information or belief, Plaintiff denies the
9  allegations.

10     154. It appears that the Production Team had reached out to Martin Collins
11 ("Collins"), a preeminent advertising agency producer, that had previously worked
12 for New Zealand's largest advertisement agencies.

13     **ANSWER**: In answer to Paragraph 155 (mislabeled as Paragraph 154),
14 Plaintiff is without sufficient information or belief to admit or deny the allegations in
15 this paragraph. Based on this lack of information or belief, Plaintiff denies the
16 allegations.

17     155. The Production Team wanted "to use this music but [they] need[ed] to
18 know [they] [sic] wont be sued."

19     **ANSWER**: In answer to Paragraph 156 (mislabeled as Paragraph 155),
20 Plaintiff is without sufficient information or belief to admit or deny the allegations in
21 this paragraph. Based on this lack of information or belief, Plaintiff denies the
22 allegations.

23     156. The Production Team asked Collins:
24 • That, if the cue was listed as "Eminem Esque", "how can we be confident
25 that Eminem does not say we are ripping him off?"
26 • Is buying the music from Beatbox and paying APRA protection enough?
27 • In other words if Beatbox sold it are we going to assume the liability if there
28 is an issue?

- How does the team ensure they have no liability?

**ANSWER**: In answer to Paragraph 157 (mislabeled as Paragraph 156), Plaintiff is without sufficient information or belief to admit or deny the allegations in this paragraph. Based on this lack of information or belief, Plaintiff denies the allegations.

157. In a reply to the Production Team's request, Collins opined that it is standard common practice to use library music with an "APRA/AMCOS license and in doing so it comes with protection. This is the system that the entire advertising industry relies on."

**ANSWER**: In answer to Paragraph 158 (mislabeled as Paragraph 157), Plaintiff is without sufficient information or belief to admit or deny the allegations in this paragraph. Based on this lack of information or belief, Plaintiff denies the allegations.

158. Further, Collins writes, "[t]hank [you] for the opportunity to look at this. My take on it is that you are paying for a license to use this music for a specific purpose, *if at any stage in the future the legality of the music was questioned, those liable would in the first instance be the composer not [you]. You and your client are removed from any liability because you [sic] havent composed the track but have paid to use it via APRA."*

**ANSWER**: In answer to Paragraph 159 (mislabeled as Paragraph 158), Plaintiff is without sufficient information or belief to admit or deny the allegations in this paragraph. Based on this lack of information or belief, Plaintiff denies the allegations.

159. When APRA/AMCOS could not find the cue in its system, Graffiti Media sent an mp3 copy of Eminem Esque to APRA/AMCOS to seek assistance to locate the cue.

**ANSWER**: In answer to Paragraph 160 (mislabeled as Paragraph 159), Plaintiff is without sufficient information or belief to admit or deny the allegations in

1  this paragraph. Based on this lack of information or belief, Plaintiff denies the

2  allegations.

3      160. BeatBox was notified by Graffiti Media and by APRA/AMCOS regarding

4  the Eminem Esque cue.

5      **ANSWER**: In answer to Paragraph 161 (mislabeled as Paragraph 160),

6  Plaintiff denies the allegations in this paragraph.

7      161. Now, BeatBox was required to initiate a new registration.

8      **ANSWER**: In answer to Paragraph 162 (mislabeled as Paragraph 161),

9  Plaintiff denies the allegations in this paragraph.

10     162. Again, that same day, via email, Bali reached out to Lewis Mackenzie at

11 Beatbox ("Lewis") requesting assistance in locating the Eminem Esque. Bali

12 requested that Lewis find the Eminem Esque in the Beatbox system.

13     **ANSWER**: In answer to Paragraph 163 (mislabeled as Paragraph 162),

14 Plaintiff denies the allegations in this paragraph.

15     163. Immediately, Lewis was able to locate and provide access to Bali, the

16 Eminem Esque.

17     **ANSWER**: In answer to Paragraph 164 (mislabeled as Paragraph 163),

18 Plaintiff denies the allegations in this paragraph.

19     164. The AMCOS Agreement provides that in order to license a requested cue

20 that is not in their system, the sub-publisher, BeatBox, is required to approve the new

21 registration and supply to APRA/AMCOS the necessary rights information.

22     **ANSWER**: In answer to Paragraph 165 (mislabeled as Paragraph 164),

23 Plaintiff denies the allegations in this paragraph.

24     165. Having the information and audio supplied by Graffit Media or Sale

25 Street would not have allowed APRA/AMCOS to register or license the Eminem

26 Esque cue.

27     **ANSWER**: In answer to Paragraph 166 (mislabeled as Paragraph 165),

28 Plaintiff denies the allegations in this paragraph.

1  166. This would have required new approval and registration by the sub-
2  publisher, Beatbox.

3  **ANSWER**: In answer to Paragraph 167 (mislabeled as Paragraph 166),
4  Plaintiff denies the allegations in this paragraph.

5  167.  Despite the communication that the Eminem Esque cue had previously
6  been licensed in Australia or New Zealand, the cue was not in APRA/AMCOS'
7  system.

8  **ANSWER** In answer to Paragraph 168 (mislabeled as Paragraph 167), Plaintiff
9  denies the allegations in this paragraph. In answering further, Plaintiff affirmatively
10  states that the cue was in the system as it had been licensed previously.

11  168. BeatBox was required to approve and register this cue before the Eminem
12  Esque cue could be added to the APRA/AMCOS system.

13  **ANSWER**:  In answer to Paragraph 169 (mislabeled as Paragraph 168),
14  Plaintiff denies the allegations in this paragraph.

15  169. Lewis failed to investigate why APRA/AMCOS did not have the Eminem
16  Esque cue in the system. Some explanations would have included:

17  • In 2009, the removal request by Barbara Baker, a co-owner of BeatBox.

18  • In 2012 the removal by Labrador, Inc..

19  • In 2014 the redesign of and forwarding the newly designed Library to
20  BeatBox.

21  **ANSWER**: In answer to Paragraph 170 (mislabeled as Paragraph 169),
22  Plaintiff denies the allegations in this paragraph. In answering further, Plaintiff
23  affirmatively states that the cue was in the system as it had been licensed previously.

24  170. It appears that Lewis sent to Bali the Eminem Esque.

25  **ANSWER**: In answer to Paragraph 171 (mislabeled as Paragraph 170),
26  Plaintiff is without sufficient information or belief to admit or deny the allegations in
27  this paragraph. Based on this lack of information or belief, Plaintiff denies the
28  allegations.

171. Lewis writes to Bali in an email, "[h]ey Bali, No worries, glad you got what you needed. Just to let you know, we're here to help you with any of your music requirements. We're more than happy to search for music on your behalf for whatever brief you may have, as well as handle all the licensing details. I can set you up for our online site if you guys like sourcing music yourself as well."

**ANSWER**: In answer to Paragraph 172 (mislabeled as Paragraph 171), Plaintiff admits the allegations in this paragraph.

172. On June 18, 2014, via email Lewis writes to Peter Moore at Moore Brand, Production Team member:

- Hey Peter, I have had a word with a couple of colleagues and basically there is really no further information that we can provide other than what you've already gathered from your call to AMCOS and from the fact that it has been licensed multiple times without any issue.

- All you can say to the client is that AMCOS license music in good faith based on the agreement that we have with them, which is in turn based on the agreement that we have with the publisher of the track.

- The agreement we have with the publisher gives us assurance that the music does not infringe on copyright and is free to be used for production purposes.

- *If any issues were to arise regarding copyright then the responsibility would fall 100% upon the publisher so there is no need for worry in this regard.*

- That's pretty much all I can say and if the client is still that worried about it then another track might be required.

**ANSWER**: In answer to Paragraph 173 (mislabeled as Paragraph 172), Plaintiff admits the allegations in this paragraph.

173.  No contact was ever made with Labrador, Inc. to investigate the status of the Eminem Esque.

**ANSWER**: In answer to Paragraph 174 (mislabeled as Paragraph 173), Plaintiff admits the allegations in this paragraph.

174. *It appeared that as long as liability could be laid off on Labrador, Inc. or Cohen, Beatbox and the Production Team were going to make sure the Production would be used.*

**ANSWER**: In answer to Paragraph 175 (mislabeled as Paragraph 174), Plaintiff denies the allegations in this paragraph.

175. On June 26, 2014 and August 12, 2014, despite, the red flags and apparent issues raised concerning the Eminem Esque, Nigel Foster from Sales Street Studio, applied to and obtained from AMCOS licenses allowing for the New Zealand Broadcast.

**ANSWER**: In answer to Paragraph 176 (mislabeled as Paragraph 175), Plaintiff is without sufficient information or belief to admit or deny the allegations in this paragraph. Based on this lack of information or belief, Plaintiff denies the allegations.

176. On or about August 20, 2014, via email, Lewis wrote to Baker, Barbara Baker and others at Beatbox, "[h]ey Peter [Baker], You might remember a couple of months back, that there was an Inquiry made about one of tracks that sounded very similar to the Eminem song "Lose Yourself". The track in question is from SPID039 titled "'Eminem Esque". Peter Moore, who ended up using the track for an electoral campaign for the National Party in NZ alerted me to an email (below) from Eminem's representation . . . *I've pretty much just told him that he doesn't have to worry, mainly to reassure him, and that if any legal action were to be taken that it would fail upon the publisher.*" *[emphasis added.]*

**ANSWER**: In answer to Paragraph 177 (mislabeled as Paragraph 176), Plaintiff admits the allegations in this paragraph.

177. On that same day, via email, Ashley Sewell from Beatbox wrote to Lewis, Baker and Barbara Baker, "[o]h man. Will be interesting. We have a lot of Soundalikes that fly far too close to the sun in my opinion, I but rarely are they so stupid to reference their knock-offs in the song title."

1       **ANSWER**: In answer to Paragraph 178 (mislabeled as Paragraph 177),

2 Plaintiff admits the allegations in this paragraph.

3       178. Immediately, via email, Barbara Baker replied to Amy, [w]e have warned

4 him of this many times. Unfortunately this is one of the worst scenerios as it has been

5 used in a political campaign and will be exploited by the political opposition and

6 given as much publicity as pos which will definitely pose a problem . It 's how they

7 used the music in the ad and the intent which makes the situation worse."

8       **ANSWER**: In answer to Paragraph 179 (mislabeled as Paragraph 178),

9 Plaintiff admits the allegations in this paragraph.

10       179. Labrador, Inc., had decided to remove the "Sound A Like" album from

11 the Library in 2012. A company that Labrador, Inc. was working with at that time in

12 the United States questioned titling an album "Sound A Likes" because they were

13 concerned about attorney fees with regard to potential liability from advertising such

14 a concept.

15       **ANSWER**: In answer to Paragraph 180 (mislabeled as Paragraph 179),

16 Plaintiff is without sufficient information or belief to admit or deny the allegations in

17 this paragraph. Based on this lack of information or belief, Plaintiff denies the

18 allegations. In answering further, Plaintiff affirmatively states that it was never

19 expressly instructed to remove the album.

20       180. In 2012, Labrador, Inc. had decided to remove the "Sound A Likes"

21 album from the Library.

22       **ANSWER**: In answer to Paragraph 181 (mislabeled as Paragraph 180),

23 Plaintiff is without sufficient information or belief to admit or deny the allegations in

24 this paragraph. Based on this lack of information or belief, Plaintiff denies the

25 allegations. In answering further, Plaintiff affirmatively states that it was never

26 expressly instructed to remove the album.

27       181. "Sound A Likes" had never been identified or suggested as being as

28 infringing.

1    **ANSWER**: In answer to Paragraph 182 (mislabeled as Paragraph 181),

2    Plaintiff is without sufficient information or belief to admit or deny the allegations in

3    this paragraph. Based on this lack of information or belief, Plaintiff denies the

4    allegations.

5    182. Accordingly, in 2012, Labrador, Inc. decided to eliminate in each

6    territory, from the Library, the Sound A Likes as an album concept.

7    **ANSWER**: In answer to Paragraph 183 (mislabeled as Paragraph 182),

8    Plaintiff is without sufficient information or belief to admit or deny the allegations in

9    this paragraph. Based on this lack of information or belief, Plaintiff denies the

10   allegations. In answering further, Plaintiff affirmatively states that it was never

11   expressly instructed to remove the album.

12   183. In 2012, in each territory where Labrador, Inc. was represented, the

13   Eminem Esque cue along with another 138 music cues, were removed from the

14   Library.

15   **ANSWER**: In answer to Paragraph 184 (mislabeled as Paragraph 183),

16   Plaintiff denies the allegations in this paragraph. Plaintiff was never notified to

17   remove any track. In answering further, Plaintiff affirmatively states that Labrador's

18   French agent still had Eminem Esque available to clients in 2014 and Labrador did

19   not email the French agent until on or about August 2014 requesting the cue to be

20   removed from licensing.

21   184.   Eminem Esque was an inner-city "bad boy" feel and did not fit the

22   image of Labrador, Inc.

23   **ANSWER**: In answer to Paragraph 185 (mislabeled as Paragraph 184),

24   Plaintiff is without sufficient information or belief to admit or deny the allegations in

25   this paragraph. Based on this lack of information or belief, Plaintiff denies the

26   allegations.

27   185. Labrador, Inc. was a high quality trailer house library.

28

PLAINTIFF BEATBOX MUSIC PTY, LTD.'S RESPONSE TO LABRADOR ENTERTAINMENT INC. ET AL.'S
AFFIRMATIVE DEFENSES TO THE FIRST AMENDED COMPLAINT AND COUNTERCLAIMS

1    **ANSWER**: In answer to Paragraph 186 (mislabeled as Paragraph 185),

2    Plaintiff is without sufficient information or belief to admit or deny the allegations in

3    this paragraph. Based on this lack of information or belief, Plaintiff denies the

4    allegations.

5    186. When signing with Labrador, Inc., BeatBox listed Labrador, Inc.'s high

6    quality film trailer sounds as one of the main reasons for wanting to be their sub-

7    publisher in Australia and New Zealand.

8    **ANSWER** In answer to Paragraph 187 (mislabeled as Paragraph 186), Plaintiff

9    is without sufficient information or belief to admit or deny the allegations in this

10   paragraph. Based on this lack of information or belief, Plaintiff denies the allegations.

11   Consequently, Labrador, Inc., seeks against Beatbox, redress for breach of

12   contract, breach of indemnity, breach of fiduciary duty, negligence and against

13   Cohen, if required, Indemification.

## COUNT ONE

### (Breach of Express Contract against Beatbox)

16   187. Counterclaimant hereby incorporates by reference paragraphs 1 through

17   186 as if fully set forth herein.

18   **ANSWER**:  Plaintiff hereby re-states and incorporates by reference paragraphs

19   1-187 (mislabeled as Paragraphs 1-186) as if fully set forth herein as its answer to

20   Paragraph 188 (mislabeled as Paragraph 187).

21   188. On or about April 14, 2009, Labrador, Inc. and Beatbox entered into a

22   written contract referred to herein as Beatbox Agreement. (See Exhibit B.)

23   **ANSWER**: Admit.

24   189. Labrador, Inc. has performed all conditions, covenants and promises

25   required on their part to be performed in accordance with the terms and conditions of

26   the Beatbox Agreement.

27   **ANSWER**: Deny.

28

PLAINTIFF BEATBOX MUSIC PTY, LTD.'S RESPONSE TO LABRADOR ENTERTAINMENT INC. ET AL.'S
AFFIRMATIVE DEFENSES TO THE FIRST AMENDED COMPLAINT AND COUNTERCLAIMS

190. Beatbox made a series of promises regarding Beatbox's receipt, introduction, exploitation and granting of non-exclusive licenses of the of the Library, in Australia and New Zealand.

**ANSWER**:  Deny.

191. These promises included, but are not limited to, representations and warranties and other terms set forth in paragraphs 3, 5, 7, 8, 9, 10, 12, 16 (vi) and 18.

**ANSWER**: Plaintiff denies the conclusions of law identified in Paragraph 192 (mislabeled as Paragraph 191).

192. Beatbox breached the Beatbox Agreement by among, other matters:

• Failing to perform the licensing activities in granting non-exclusive licenses in the Licensed Territory in accordance with generally accepted music industry standards, and with thoroughness, competence, and care ordinarily exercised by other sub-publishers working with the licensing of similar rights.

• Failing to use its best commercial endeavors to exploit the recordings for the benefit of the parties concerned.

• By assigning to AMCOS benefits licensed to Beatbox to AMCOS, without first obtaining the written consent of Labrador, Inc.

• Failing to comply with Performing Rights in the recordings subject to the Copyright Societies in the USA and its affiliated societies in the licensed territory.

• Failing to indemnify and hold harmless Labrador, Inc. from any and all loss, liability and expense incurred by reason of any infringement of rights or other claim inconsistent with the Sub Publishers guarantees, warranties, representations and undertakings contained in the Beatbox Agreement.

• Failing to pay to Labrador, Inc. 50% (fifty per cent) of all fees accruing from such licenses relating to the use of the recordings, including mechanical/ synchronization royalties received by Beatbox as a result of exploitation of rights herein granted to Beatbox.

1   • Failing to provide an industry wide process to obtain from Labrador, Inc. the
2   Library.

3   **ANSWER**: Deny.

4   193. As a result of these breaches, Plaintiff has suffered damage.

5   **ANSWER**: Deny.

6   **COUNT TWO**

7   **(Indemnification against Beatbox)**

8   194. Counterclaimant hereby incorporates by reference paragraphs 1 through
9   193 as if fully set forth herein.

10   **ANSWER**:  Plaintiff hereby re-states and incorporates by reference paragraphs
11   1-195 (mislabeled as Paragraph 1-194) as if fully set forth herein as its answer to
12   Paragraph 195 (mislabeled as Paragraph 194).

13   195. Counterclaimant and Counterdefendant Beatbox entered into a written
14   agreement. (See Exhibit B.) Pursuant to paragraph 16 (vi) Beatbox agreed to
15   indemnify and hold harmless the Labrador, Inc. it's successors and assigns of and
16   from any and all loss, liability and expense incurred by reason of any infringement of
17   rights or other claim inconsistent with the Sub Publishers guarantees, warranties,
18   representations and undertakings contained in this Agreement.

19   **ANSWER**: Plaintiff denies the legal conclusions contained in Paragraph 196
20   (mislabeled as Paragraph 195). In answering further, Plaintiff affirmatively states that
21   the agreement attached as Exhibit B more fully states the obligations and
22   responsibilities of the parties.

23   196. As a direct and proximate result of Beatbox's actions, Labrador, Inc. has
24   incurred and continues to incur an undetermined amount of damages.

25   **ANSWER**: Deny.

26   197. By virtue of the Beatbox Agreement or applicable law, Beatbox is
27   required to hold harmless and indemnify Labrador, Inc. for the amount of any
28   judgment or settlement, and for expenses, costs, legal fees, and other damages and

1   costs that Labrador, Inc. incurs in connection Beatbox's breach of guarantees,

2   warranties, representations and undertakings contained in this Agreement.

3   **ANSWER**: Deny.

4   198. The total amount of Labrador, Inc.'s costs and attorneys' fees is not yet

5   known, and Labrador, Inc. will ask leave of this Court to insert such amount at the

6   time of trial.

7   **ANSWER**: Deny.

8   **COUNT THREE**

9   **(Indemnification against Cohen)**

10   199. Counterclaimant hereby incorporates by reference paragraphs 1 through

11   198 as if fully set forth herein.

12   200. Counterclaimant and Counterdefendant Cohen entered into a written

13   agreement. (See Exhibit A.)  Pursuant to paragraph 6.1 Cohen will indemnify and

14   hold Labrador, Inc. and all entities associated with Labrador, Inc. free, safe, and

15   harmless from and against any and all losses, damages, actions, causes of action,

16   expenses or liabilities, including, without limitation, reasonable attorney's fees and

17   costs, whether incurred before or after the entry of judgment, resulting from or by

18   reasons of any material breach of any representation or warranty made herein by

19   Cohen.

20   201. Other parties have alleged that Labrador, Inc. is liable as a direct and

21   proximate result of Cohen's actions. Because of these allegations, Labrador, Inc. has

22   incurred and continues to incur an undetermined amount of damages.

23   202. By virtue of the Cohen Agreement or applicable law, Cohen is required to

24   hold harmless and indemnify Labrador, Inc. for the amount of any judgment or

25   settlement, and for expenses, costs, legal fees, and other damages and costs that

26   Labrador, Inc. incurs in connection Cohen's breach of guarantees, warranties,

27   representations and undertakings contained in this Agreement.

28

1  203. The total amount of Labrador, Inc.'s costs and attorneys' fees is not yet

2  known, and Labrador, Inc. will ask leave of this Court to insert such amount at the

3  time of trial.

4  WHEREFORE, Plaintiff Labrador, Inc. prays for judgment as set forth below

5  ### COUNT FOUR

6  **(Negligence against Beatbox and Roes 1 through 20)**

7  204. Counterclaimant hereby incorporates by reference paragraphs 1 through

8  203 as if fully set forth herein.

9  **ANSWER**: The allegations contained in Paragraphs 200-204 (mislabeled as

10  199-203) are not plead against Beatbox, thus no answer is required. Plaintiff hereby

11  re-states and incorporates by reference Paragraphs 1-199 (mislabeled as Paragraphs

12  1-198) as if fully set forth herein as its answer to Paragraph 205 (mislabeled as

13  Paragraph 204).

14  205. Beatbox had a duty to use reasonable care to, among other matters to:

15  • To perform the licensing activities in granting non-exclusive licenses in the

16  Licensed Territory in accordance with generally accepted music industry standards,

17  and with thoroughness, competence, and care ordinarily exercised by other sub-

18  publishers working with the licensing of similar rights.

19  • To use its best commercial endeavors to exploit the recordings for the

20  benefit of the parties concerned.

21  • To not assign to AMCOS benefits licensed to it to AMCOS, without first

22  obtaining the written consent of Labrador, Inc.

23  • To comply with Performing Rights in the recordings subject to the

24  Copyright Societies in the USA and its affiliated societies in the licensed territory.

25  To provide an industry wide process to obtain from Labrador, Inc. the Library.

26  **ANSWER**: Deny.

27  206. Beatbox breached their duty of reasonable care by negligently, among

28  other matters:

- Failing to perform the licensing activities in granting non-exclusive licenses in the Licensed Territory in accordance with generally accepted music industry standards, and with thoroughness, competence, and care ordinarily exercised by other sub-publishers working with the licensing of similar rights.

- Failing to use its best commercial endeavors to exploit the recordings for the benefit of the parties concerned.

- Assigning to AMCOS benefits licensed to it to AMCOS, without first obtaining the written consent of Labrador, Inc.

- After Beatbox wrongly assigned to AMCOS the benefits Labrador, Inc. licensed to Beatbox, Beatbox failed to comply with its duties to AMCOS, including the duty to immediately notify AMCOS of each deletion from the list of music cues.

- Failing to comply with Performing Rights in the recordings subject to the Copyright Societies in the USA and its affiliated societies in the licensed territory.

- Failing to provide an industry wide process to obtain from Labrador, Inc. the Library.

**ANSWER**: Deny.

207. As a direct and proximate result of Beatbox's failure to use reasonable care, Labrador, Inc. suffered damages.

**ANSWER**: Deny.

# COUNT FIVE

## (Breach of Fiduciary against Beatbox and Roes [sic] 1 through 20)

208. Counterclaimant hereby incorporates by reference paragraphs 1 through 207 as if fully set forth herein.

**ANSWER**: The allegations contained in Paragraphs 200-204 (mislabeled as 199-203) are not plead against Beatbox, thus no answer is required. Plaintiff hereby re-states and incorporates by reference Paragraphs 1-199 (mislabeled as Paragraphs 1-198) The allegations contained in Paragraphs 199-203 are not plead against Beatbox, thus no answer is required. Plaintiff hereby re-states and incorporates by

1  reference Paragraphs 1-199 (mislabeled as Paragraphs 1-198) and 205-208

2  (mislabeled as 204-207) as if fully set forth herein as its answer to Paragraph 209

3  (mislabeled as Paragraph 208).

4      209. Beatbox is an agent to Labrador, Inc. by way of its designation as a sub-

5  publisher to Labrador, Inc.

6      **ANSWER**: Deny.

7      210. As a sub-publisher of the Library of Labrador, Inc. Beatbox licenses to

8  third parties the contents of the Library.

9      **ANSWER**: Deny.

10      211. Labrador, Inc. expected that Beatbox would assume all of the duties to

11  properly maintain, update, exploit, protect and sub-license the contents of the Library.

12      **ANSWER**: Deny.

13      212. Beatbox was responsible to Labrador, Inc. for the accounting and payment

14  of all fees accruing from such sub-licenses of the Beatbox Recordings.

15      **ANSWER**: Admit.

16      213. Beatbox was required to obtain from Labrador, Inc. prior written

17  permission before parting with or assigning to any other person or party any of the

18  benefits licensed to it under the terms of the Labrador Agreement.

19      **ANSWER**: Deny.

20      214. Further, Beatbox represented and warranted that it would use its best

21  commercial endeavors to exploit the recordings for the benefit of the parties

22  concerned.

23      **ANSWER**: Admit.

24      215. Finally, Labrador, Inc. had the right to terminate the Labrador Agreement

25  for failure of Beatbox to fully comply with any material terms or conditions of the

26  Labrador Agreement.

27      **ANSWER**: Admit.

28

216. As an agent to Labrador, Inc., Beatbox owes to Labrador, Inc. a full spectrum of fiduciary duties.

**ANSWER**: Plaintiff denies the legal conclusions contained in Paragraph 217 (mislabeled as Paragraph 216).

217. A fiduciary duty is the highest standard of trust and loyalty imposed by law, and a fiduciary relationship is one in which a party is duty bound to act with the utmost good faith for the benefit of the other party.

**ANSWER**: Plaintiff denies the legal conclusions contained in Paragraph 218 (mislabeled as Paragraph 217).

218. Labrador, Inc. has relied upon the integrity of Beatbox and Beatbox may not act so as to take advantage of Labrador, Inc.'s interest.

**ANSWER**: Deny.

219. Some of the ways that Beatbox breached their fiduciary duties include:

• Failing to perform the licensing activities in granting non-exclusive licenses in the Licensed Territory in accordance with generally accepted music industry standards, and with thoroughness, competence, and care ordinarily exercised by other sub-publishers working with the licensing of similar rights.

• Failing to use its best commercial endeavors to exploit the recordings for the benefit of the parties concerned.

• Assigning to AMCOS benefits that were licensed to it to AMCOS, without first obtaining the written consent of Labrador, Inc.

• After Beatbox wrongly assigned to AMCOS the benefits Labrador, Inc. licensed to Beatbox, Beatbox failed to comply with the duties it owed to AMCOS, including the duty to immediately notify AMCOS of each deletion from the list of music cues.

• Failing to comply with Performing Rights in the recordings subject to the Copyright Societies in the USA and its affiliated societies in the licensed territory.

1    • Failing to provide an industry wide process to obtain from Labrador, Inc. the

2    Library.

3    **ANSWER**: Deny.

4    220. In breaching their fiduciary duties, Beatbox has caused Labrador, Inc. to

5    incur substantial damages to be remedied at law.

6    **ANSWER**: Deny.

7    WHEREFORE Plaintiff prays for judgment as set forth below.

8                           **AFFIRMATIVE DEFENSES**

9                        **FIRST AFFIRMATIVE DEFENSE**

10                          (**Labrador's Conduct**)

11   1.    As a First and Separate Affirmative Defense, Beatbox asserts that some

12   or all of the purported claims in the CounterComplaint ("CC") are barred, in whole or

13   in part, by material breaches, negligence or other wrongful conduct by Labrador and

14   by the conduct of their agents, attorneys, and representatives.

15                      **SECOND AFFIRMATIVE DEFENSE**

16                          (**Breach of Contract**)

17   2.    As a Second and Separate Affirmative Defense, Beatbox asserts that

18   some or all of the purported claims in the CC are barred, in whole or in part, by

19   Labrador's breach of contract.

20                       **THIRD AFFIRMATIVE DEFENSE**

21                           (**Unclean Hands**)

22   3.    As a Third and Separate Affirmative Defense, Beatbox asserts that some

23   or all of the purported claims in the CC against Beatbox are barred, in whole or in

24   part, by the unclean hands of Labrador, Webb and Cohen.

25                      **FOURTH AFFIRMATIVE DEFENSE**

26                              (**Waiver**)

27   4.    As a Fourth and Separate Affirmative Defense, Beatbox asserts that

28   some or all of the purported claims in the CC against Beatbox are barred, in whole or

in part, because, by Labrador's conduct and the conduct of their agents, attorneys, and representatives, Labrador has waived their rights, if any.

## FIFTH AFFIRMATIVE DEFENSE

### (Ratification and Waiver)

5.      As a Fifth and Separate Affirmative Defense, Beatbox asserts that some or all of the purported claims in the CC against Beatbox are barred, in whole or in part, because, Labrador, on its own behalf and through the actions of its agents, attorneys, and representatives, ratified the actions of Beatbox, thereby waiving any and all claims against Beatbox, if any.

## SIXTH AFFIRMATIVE DEFENSE

### (Estoppel)

6.      As a Sixth and Separate Affirmative Defense, Beatbox assert that some or all of the purported claims and causes of action in the CC against Beatbox are barred, in whole or in part, by the equitable doctrine of estoppel because of the conduct of Labrador and their agents, attorneys, and representatives.

## SEVENTH AFFIRMATIVE DEFENSE

### (Consent)

7.      As a Seventh and Separate Affirmative Defense, Beatbox assert that Labrador gave consent both expressly and impliedly for any purported failure, breaches, or conduct of Beatbox as alleged.

## EIGHTH AFFIRMATIVE DEFENSE

### (Fault of Labrador)

8.      As an Eighth and Separate Affirmative Defense, Beatbox asserts that some or all of the purported claims in the CC are barred, in whole or in part, by the fault of Labrador and of their agents, attorneys, and representatives.

## NINTH AFFIRMATIVE DEFENSE

### (Failure to Mitigate)

1    9.   As a Ninth and Separate Affirmative Defense, Beatbox asserts that some

2    or all of the purported claims in the CC are barred, in whole or in part, by Labrador's

3    failure to mitigate their alleged damages

4                    **TENTH AFFIRMATIVE DEFENSE**

5                   **(Negligence of Labrador and Others)**

6    10.   As a Tenth and Separate Affirmative Defense to the CC, Beatbox asserts

7    that Beatbox is informed and believes and thereon alleges that the injuries and

8    damages alleged in the CC, if any, without admitting any injury or damage to

9    Labrador, occurred, were proximately caused by either the sole negligence of or

10   contributed to by the negligence of Labrador or third parties not within the control of

11   Beatbox. Labrador breached their duty of reasonable care by negligently, conveying

12   infringing works at the time of entering into a contract with Beatbox, among other

13   negligent failures.

14   11.   Beatbox requests, that to the extent Labrador's damages were caused by

15   negligence, the negligence of all persons or parties, named and unnamed, served or

16   unserved, and the degree to which said negligence contributed to the happening of the

17   incident and the nature and extent of the injuries actually sustained, if any, be

18   determined by the trier of fact. Labrador's recovery, if any, should be barred, or

19   reduced in proportion to the amount by which the negligence of Labrador or others

20   contributed to the happening of the injuries and damages alleged.

21                 **ELEVENTH AFFIRMATIVE DEFENSE**

22             **(Breach of Fiduciary of Labrador and Others)**

23   12.   As an Eleventh and Separate Affirmative Defense to the CC, Beatbox

24   asserts that Beatbox is informed and believes and thereon alleges that the injuries and

25   damages alleged in the CC, if any, without admitting any injury or damage to

26   Labrador, occurred, were proximately caused by either the sole breach of fiduciary

27   duties of or contributed to by the breach of fiduciary duties of Labrador or third

28

1  parties not within the control of Beatbox. Labrador breached their fiduciary duties as
2  alleged in the FAC.

3       13.    Beatbox requests, that to the extent Labrador's damages were caused by
4  breach of fiduciary duties of all persons or parties, named and unnamed, served or
5  unserved, and the degree to which said breach of fiduciary duties contributed to the
6  happening of the incident and the nature and extent of the injuries actually sustained,
7  if any, be determined by the trier of fact. Labrador's recovery, if any, should be
8  barred, or reduced in proportion to the amount by which the breach of fiduciary
9  duties of Labrador or others contributed to the happening of the injuries and damages
10 alleged.

11                              **PRAYER FOR RELIEF**

12      WHEREFORE, Beatbox prays for judgment and relief against Defendants as
13 follows:

14      (A)    For compensatory damages that resulted from Defendants' violations of
15 law, as proved at trial;

16      (B)    For consequential damages that proximately flowed from Defendants'
17 violations of law;

18      (C)    For punitive damages based on Defendants' willful, malicious and
19 fraudulent conduct;

20      (D)    For costs and fees incurred by Plaintiff in commencing and prosecuting
21 this lawsuit and for the defense of the baseless countercomplaint. If applicable, for
22 attorney's fees incurred herein pursuant to California Civil Code § 1717;

23      (E)    Denying any and all of the Defendants' prayers for relief and take
24 nothing from Plaintiff; and

25      (F)    For any and all other remedies that the Court believes are equitable and
26 just.

27
28 DATED:      March 30, 2020              Respectfully submitted,

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**BEATBOX MUSIC PTY, LTD.**

*/s/ Heather L. Blaise*

HEATHER L. BLAISE, ESQ. (SBN 261619)

123 N. Wacker Drive, Suite 250

Chicago, IL 60606

Telephone: 312-448-6602

Email: hblaise@blaisenitschkelaw.com

*Attorney for Plaintiff*

PLAINTIFF BEATBOX MUSIC PTY, LTD.'S RESPONSE TO LABRADOR ENTERTAINMENT INC. ET AL.'S AFFIRMATIVE DEFENSES TO THE FIRST AMENDED COMPLAINT AND COUNTERCLAIMS