BLAISE & NITSCHKE, P.C.
HEATHER L. BLAISE, ESQ. (SBN 261619)
123 N. Wacker Drive, Suite 250
Chicago, IL 60606
Telephone: 312-448-6602
Email: hblaise@blaisenitschkelaw.com

Attorneys for Plaintiff,
BEATBOX MUSIC PTY, LTD.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BEATBOX MUSIC PTY, LTD., | CASE NO: 2:17-cv-6108 MWF (JPRx) *Assigned to the Hon. Michael W. Fitzgerald* |
| Plaintiff, | |
| v. | **DECLARATION OF HEATHER L. BLAISE IN SUPPORT OF THE PARTIES' JOINT STIPULATION PURSUANT TO L.R. 37** |
| LABRADOR ENTERTAINMENT, INC. D/B/A SPIDER CUES MUSIC LIBRARY, a California corporation; NOEL PALMER WEBB, an individual; MICHAEL COHEN, an individual; LABRADOR ENTERTAINMENT, LLC; MCPC HOLDINGS, LLC; WEBB FAMILY TRUST and DOES 1-20, inclusive, | |
| Defendants. | |
| | Trial Date:       November 30, 2021 |
| AND ALL RELATED ACTIONS | FAC:              January 24, 2020 Cross-Claim Filed: November 21, 2017 Action Filed:     August 17, 2017 |

I, Heather L. Blaise, declare:

1.    I have personal knowledge of the matters stated herein and if called upon to testify thereto, I could and would competently do so.

2.    I am not a party to this action.

3.  I am an attorney licensed to practice law before the courts of the State of California and the United States District Court for the Central District of California, as well as the courts of the State of Illinois and the United States District Court for the Northern District of Illinois.

4.  I am a partner at Blaise & Nitschke, P.C., counsel of record for Plaintiff Beatbox Music Pty Ltd. ("Beatbox") in the above-captioned action.

5.  I submit this Declaration in support of the Parties' Joint Stipulation pursuant to L.R. 37.

6.  True and correct copies of the Parties' Notices of Deposition are attached to the Joint Stipulation as Group Exhibit A.

7.  True and correct copies of Noel Palmer Webb's Deposition Transcripts taken on December 2 and 3, 2019 are attached to the Joint Stipulation as Group Exhibit B.

8.  On or about February 26, 2021, I caused to be served Beatbox's initial discovery requests to the Defendants Noel Palmer Webb; Labrador Entertainment, Inc.; Labrador Entertainment, LLC; Webb Family Trust; Michael Cohen; and MCPC Holdings, LLC.

9.  On March 28, I received an email from attorney Douglas Rosner, counsel for Labrador Entertainment, Inc., Labrador Entertainment, LLC, Noel Palmer Webb, and the Webb Family Trust (hereinafter, "Labrador Defendants"), which stated that "[a]ll your discovery responses requires substantial amount of time. I am requesting (14) day extension to respond to all of the discovery propounded by Beatbox[.]"

10.  I granted Mr. Rosner a 7-day extension to respond to these discovery requests, with which Mr. Rosner failed to comply.

11.  On or after April 8, 2021, I received discovery responses from counsel for Labrador Defendants.

12.     I met and conferred with counsel for Labrador Defendants on April 16, 2021; during that teleconference, counsel for Labrador Defendants acknowledged that these responses were deficient and incomplete, and requested (2) additional weeks to provide complete discovery. Mr. Rosner further stated on the teleconference that he would have no time to meet and confer regarding this discovery until April 29, 2021, to which we arranged for a teleconference to meet and confer regarding discovery on that date.

13.     On April 28, 2021, I received an email from Mr. Rosner stating that he cannot attend the Local Rule 37-1 on April 29, and requesting to reschedule for April 30.

14.     On April 29, 2021, at 8:42 p.m. PDT, I received an email from Mr. Rosner which contained the Labrador Defendants' amended discovery responses. These responses included additional objections that were not present in the responses propounded on or around April 8.

15.     On May 5, 2021, I sent a letter pursuant to L.R. 37-1 – L.R. 37-4 to counsel for Labrador Defendants, which outlined the outstanding discovery requests and responded to several inapplicable and/or bad-faith objections raised by counsel for Labrador Defendants. A true and correct copy of the letter is attached to the Joint Stipulation as Exhibit C.

16.     On May 11, 2021, I met and conferred with counsel for Labrador Defendants to discuss the amended discovery responses. During the teleconference, counsel for Labrador Defendants repeatedly argued that my client was not entitled to full and complete discovery relating to any of the transfers of assets of the Defendants as pled in Counts VII and VIII of the First Amended Complaint, because counsel for Labrador Defendants argues that my client is only entitled to discovery relating to transfers between Labrador Entertainment, Inc. and Labrador Entertainment, LLC. Ultimately, counsel for Labrador Defendants agreed to provide responsive documents to accompany these amended responses no later than May 21, 2021. I did not receive

such documents until May 25, 2021, however, the documents received only pertained to Labrador Entertainment, Inc. and Labrador Entertainment, LLC. On May 24, 2021, Mr. Rosner informed me that the "[d]ocuments for Noel and trust" were not yet complete.

17.   Further, during the May 11, 2021 teleconference, co-counsel for Labrador Defendants, Curtis Edmondson, stated that he would reach out to the Court for information concerning discovery motion practice and the option for an informal hearing, and then relay the information to me. I did not receive such communication until May 26, 2021.

18.   True and correct copies of counsel for Labrador's Proof of Service USB Flash Drive (Yellow Label), and the USPS Shipping Label containing the Labrador Defendants' amended discovery responses are attached to the Joint Stipulation as Exhibits D and E, respectively.

19.   During the May 11, 2021 teleconference, counsel for Labrador Defendants further argued that there was no requirement to provide a privilege log for any information that was being withheld on the basis of attorney-client privilege.

20.   On or about April 2, 2021, I received discovery responses via email from Ronak Patel, counsel for Michael Cohen and MCPC Holdings, LLC (hereinafter, the "Cohen Defendants"), with a file entitled "Defendant MCPC Holdings, LLC's Objections and Responses to Plaintiff Beatbox Music Pty Ltd.'s Special Interrogatories (Set One)" that consisted solely of a verification page, and no responses to this set of discovery were included.

21.   After Mr. Patel was notified of the deficiency, I received from him a picture file comprised of an image appearing to be of the first page of the outstanding discovery response on April 22, 2021.

22.   On April 22, 2021, I met and conferred with Mr. Patel via teleconference and discussed with Mr. Patel the outstanding discovery responses and his series of bad-faith and inapplicable objections contained therein. Further I repeated the

1   aforesaid deficiency, to which Mr. Patel sent me an actual responsive document,

2   however it was unverified. I did not receive a verified copy until April 25, 2021.

3        23.    True and correct copies of the L.R. 37-1 Letters to Ronak Patel dated

4   April 22, 2021 and April 27, 2021 is attached to the Joint Stipulation as Group

5   Exhibit F.

6        24.    On May 5, 2021, I met and conferred with Mr. Patel via teleconference

7   to discuss outstanding discovery, in which Mr. Patel agreed to waive certain

8   inapplicable objections and to provide amended responses no later than May 10,

9   2021, and the relevant documents no later than May 21, 2021.

10       25.    On May 10, 2021, I received an email from Mr. Patel requesting an

11  extension to May 12, 2021.

12       26.    On May 12, 2021 at 7:52 p.m. PST, I received an email from Mr. Patel

13  stating "[f]ind attached the amended RFPD responses for Cohen and MCPC, and the

14  amended interrogatories for Cohen," however, no files were attached. I informed Mr.

15  Patel as such on May 13, 2021 and May 14, 2021, and did not receive a response

16  from Mr. Patel until May 17, 2021, to which he provided the amended responses

17  without the relevant documents to be produced.

18       27.    Further, the amended responses contained several bad-faith and

19  inapplicable objections that Mr. Patel had agreed to withdraw during the May 5, 2021

20  teleconference.

21       28.    To date, I have not yet received the relevant documents that Mr. Patel

22  had agreed to provide.

23       29.    A true and correct copy of Mr. Patel's email to my office is attached to

24  the Joint Stipulation as Exhibit G.

25       I declare under the penalty of perjury that the foregoing is true and correct.

26       Executed on June 8, 2021 in Chicago, Illinois.

27                     /s/ *Heather L. Blaise*

28

DECLARATION OF HEATHER L. BLAISE IN SUPPORT OF THE PARTIES' JOINT STIPULATION PURSUANT TO L.R. 37

# GROUP EXHIBIT A

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

BLAISE & NITSCHKE, P.C.
Heather L. Blaise (State Bar No. 261619)
 hblaise@blaisenitschkelaw.com
123 N. Wacker Drive, Suite 250
Chicago, Illinois 60606
Telephone: (312) 448-6602
Facsimile: (312) 803-1940

Attorneys for Plaintiff
Beatbox Music Pty, Ltd.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| BEATBOX MUSIC, PTY, LTD., <br><br> Plaintiff, <br><br> vs. <br><br> LABRADOR ENTERTAINMENT, INC., DBA SPIDER CUES MUSIC LIBRARY, a California corporation, <br><br> Defendants. | Case No. 2:17-cv-6108-MWF (JPRx) <br> *The Hon. Michael W. Fitzgerald* <br><br> **NOTICE OF DEPOSITION OF NOEL WEBB** <br><br> Date: December 2, 2019 <br> Time: 11:00 a.m. <br> Place: 1352 Irvine Blvd., Tustin, CA |
| MICHAEL COHEN, an individual, <br><br> Cross-Complainant, <br><br> vs. <br><br> LABRADOR ENTERTAINMENT INC., D/B/A SPIDER CUES MUSIC LIBRARY, a California Corporation, <br><br> Cross-Defendant. | Trial Date: June 23, 2020 <br> Cross-Claim Filed: November 21, 2017 <br> Action Filed: August 17, 2017 |

**PLEASE TAKE NOTICE THAT** on the 2nd day of December, starting at 11:00 a.m., the undersigned will take oral interrogation for the purpose of discovery through the deposition of **NOEL WEBB** at the offices of Jacobson and Associates located at 1352 Irvine Blvd., Tustin, CA pursuant to Federal Rule of Civil Procedure 30. The deposition shall take place before an officer authorized by law to administer oaths and will be recorded by stenographic means, pursuant to Federal Rule of Civil Procedure 30(b)(3), before a Notary Public at the time and place specified.

**YOU ARE HEREBY FURTHER NOTIFIED THAT,** you are, by this notice, required to present at the date, time, and place stated, the said Deponent for oral examination for the purpose of discovery as well as originals or copies of all pertinent documents and information in your possession relating to the pleadings in this matter.

Dated:  October 28, 2019

Heather L. Blaise
**BLAISE & NITSCHKE, P.C.**

By: /s/ Heather L. Blaise
        Heather L. Blaise

Attorney for Plaintiff
BEATBOX MUSIC PTY, LTD.

1
**PROOF OF SERVICE**

# **PROOF OF SERVICE**

At the time of service, I was over 18 years of age and not a party to this action. I am employed in the County of Cook, State of Illinois, and my business address is 123 N. Wacker Drive, Suite 250, Chicago, Illinois 60606.

On October 28, 2019, I served true copies of the following document(s) described as Notice of Deposition of Noel Webb on the interested parties as stated on the attached service list in this case as follows:

**BY EMAIL OR ELECTRONIC TRANSMISSION**: By transmitting a true copy of the foregoing document(s) to the email addresses set forth below:

JACOBSON & ASSOCIATES
DAN JACOBSON, ESQ. (SBN 134978)
315 Centennial Way
Tustin, CA 92780
T: (714) 505-4872
Email: dlj@jacobsonlawyers.com
Email: rp@jacobsonlawyers.com
Attorneys for Defendant & Crossclaimant, MICHAEL COHEN, an individual.

BROWNE GEORGE ROSS, LLP
RAENA W. OHIRI (SBN 315064)
CARL ALAN ROTH (SBN 151517)
2121 Avenue of the Stars, Suite 2800
Los Angeles, CA 90067
T: (310) 274-7100
Email: rohiri@bgrfirm.com
Email: croth@bgrfirm.com
Attorneys for Defendants, LABRADOR ENTERTAINMENT, INC. D/B/A SPIDER CUES MUSIC LIBRARY, A California Corporation.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on October 28, 2019, in Chicago, Illinois.

/s/ *Samantha R. Bowler*
Samantha R. Bowler

1    BLAISE & NITSCHKE, P.C.
Heather L. Blaise (State Bar No. 261619)
2    hblaise@blaisenitschkelaw.com
123 N. Wacker Drive, Suite 250
3    Chicago, Illinois 60606
Telephone: (312) 448-6602
4    Facsimile: (312) 803-1940

5    Attorneys for Plaintiff
Beatbox Music Pty, Ltd.
6

7

8                UNITED STATES DISTRICT COURT

9      CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

10

| | |
|---|---|
| 11   BEATBOX MUSIC, PTY, LTD., | Case No. 2:17-cv-6108-MWF (JPRx) |
| 12            Plaintiff, | *The Hon. Michael W. Fitzgerald* |
| 13     vs. | **NOTICE OF DEPOSITION OF** |
| 14   LABRADOR ENTERTAINMENT, | **MICHAEL COHEN** |
| 15   INC., DBA SPIDER CUES MUSIC LIBRARY, a California corporation, | |
| 16         Defendants. | Date:      December 3, 2019 |
| 17   MICHAEL COHEN, an individual, | Time:      10:00 a.m. |
| 18       Cross-Complainant, | Place:     Browne, George, Ross LLP |
| 19     vs. | |
| 20   LABRADOR ENTERTAINMENT | Trial Date:         June 23, 2020 |
| 21   INC., D/B/A SPIDER CUES MUSIC LIBRARY, a California Corporation, | Cross-Claim Filed:   November 21, 2017 |
| 22      Cross-Defendant. | Action Filed:       August 17, 2017 |
| 23 | |

24

25

26

27

28

**PLEASE TAKE NOTICE THAT** on the 3rd day of December, starting at 10:00 a.m., the undersigned will take oral interrogation for the purpose of discovery through the deposition of **MICHAEL COHEN** at 801 S. Figueroa Street, Suite 2000 Los Angeles, California 90017 pursuant to Federal Rule of Civil Procedure 30. The deposition shall take place before an officer authorized by law to administer oaths and will be recorded by stenographic means, pursuant to Federal Rule of Civil Procedure 30(b)(3), before a Notary Public at the time and place specified.

**YOU ARE HEREBY FURTHER NOTIFIED THAT,** you are, by this notice, required to present at the date, time, and place stated, the said Deponent for oral examination for the purpose of discovery as well as originals or copies of all pertinent documents and information in your possession relating to the pleadings in this matter.

Dated:  October 28, 2019

Heather L. Blaise
**BLAISE & NITSCHKE, P.C.**


By: /s/ Heather L. Blaise
        Heather L. Blaise

Attorney for Plaintiff
BEATBOX MUSIC PTY, LTD.

1
**PROOF OF SERVICE**

1

## **PROOF OF SERVICE**

2

At the time of service, I was over 18 years of age and not a party to this action. I am employed in the County of Cook, State of Illinois, and my business address is 123 N. Wacker Drive, Suite 250, Chicago, Illinois 60606.

3

4

On October 28, 2019, I served true copies of the following document(s) described as Notice of Deposition of Michael Cohen on the interested parties as stated on the attached service list in this case as follows:

5

6

**BY EMAIL OR ELECTRONIC TRANSMISSION**: By transmitting a true copy of the foregoing document(s) to the email addresses set forth below:

7

JACOBSON & ASSOCIATES
DAN JACOBSON, ESQ. (SBN 134978)

8

315 Centennial Way
Tustin, CA 92780

9

T: (714) 505-4872
Email: dlj@jacobsonlawyers.com

10

Email: rp@jacobsonlawyers.com

11

Attorneys for Defendant & Crossclaimant, MICHAEL COHEN, an individual.

12

BROWNE GEORGE ROSS, LLP

13

RAENA W. OHIRI (SBN 315064)
CARL ALAN ROTH (SBN 151517)

14

2121 Avenue of the Stars, Suite 2800
Los Angeles, CA 90067

15

T: (310) 274-7100
Email: rohiri@bgrfirm.com

16

Email: croth@bgrfirm.com

Attorneys for Defendants, LABRADOR ENTERTAINMENT, INC. D/B/A

17

SPIDER CUES MUSIC LIBRARY, A California Corporation.

18

I declare under penalty of perjury that the foregoing is true and correct.

19

Executed on October 28, 2019, in Chicago, Illinois.

20

21

/s/ *Samantha R. Bowler*
Samantha R. Bowler

22

23

24

25

26

27

28

2

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

BLAISE & NITSCHKE, P.C.
Heather L. Blaise (State Bar No. 261619)
 hblaise@blaisenitschkelaw.com
123 N. Wacker Drive, Suite 250
Chicago, Illinois 60606
Telephone: (312) 448-6602
Facsimile:  (312) 803-1940

Attorneys for Plaintiff
Beatbox Music Pty, Ltd.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| BEATBOX MUSIC, PTY, LTD., <br><br> Plaintiff, <br><br> vs. <br><br> LABRADOR ENTERTAINMENT, INC., DBA SPIDER CUES MUSIC LIBRARY, a California corporation, <br><br> Defendants. | Case No. 2:17-cv-6108-MWF (JPRx) <br> *The Hon. Michael W. Fitzgerald* <br><br> **NOTICE OF DEPOSITION OF THE PERSON MOST KNOWLEDGEABLE FROM LABRADOR ENTERTAINMENT, IN., AND REQUEST FOR PRODUCTION OF DOCUMENTS** |
| MICHAEL COHEN, an individual, <br><br> Cross-Complainant, <br><br> vs. <br><br> LABRADOR ENTERTAINMENT INC., D/B/A SPIDER CUES MUSIC LIBRARY, a California Corporation, <br><br> Cross-Defendant. | Date:        December 2, 2019 <br> Time:       11:00 a.m. <br> Place:       1352 Irvine Blvd., Tustin, CA <br><br><br> Trial Date:           June 23, 2020 <br> Cross-Claim Filed:  November 21, 2017 <br> Action Filed:        August 17, 2017 |

**PLEASE TAKE NOTICE THAT** on the 2nd day of December, starting at 11:00 a.m., the undersigned will take oral interrogation for the purpose of discovery through the deposition of the person most knowledgeable from Labrador Entertainment, Inc. at the offices of Jacobson and Associates located at 1352 Irvine Blvd., Tustin, CA pursuant to Federal Rule of Civil Procedure 30. The deposition shall take place before an officer authorized by law to administer oaths and will be recorded by stenographic means, pursuant to Federal Rule of Civil Procedure 30(b)(3), before a Notary Public at the time and place specified.

**YOU ARE HEREBY FURTHER NOTIFIED THAT,** you are, by this notice, required to present at the date, time, and place stated, the said Deponent for oral examination for the purpose of discovery as well as originals or copies of all pertinent documents and information in your possession relating to Plaintiff's allegations, including but not limited to:

1. Any and all documents, records, or other materials that relate to allegations in the pleadings;
2. Any and all documents, records, or other materials that relate to the Composer's Agreement between Labrador and Michael Cohen dated 02/14/08;
3. Any and all documents, records, or other materials that relate to the 2009 Agreement between Plaintiff and Labrador;
4. Any and all documents, records, or other materials that relate to the Amendment to Sub-Publishing Contract dated 02/22/14 between Plaintiff and Labrador;
5. Any and all documents, records, or other materials that relate to the Express Indemnity and Guarantee Clause contained in the 2009 Agreement;
6. Any and all documents, records, or other materials that relate to the existence of Labrador as an entity distinct from Noel Webb;
7. Any and all communications between Labrador, Michael Cohen, Noel Webb, and Plaintiff; and

8. Any and all documents, records, or other materials that relate to the custom and practices of Labrador in the context of music and licensing.

Dated:  October 28, 2019

Heather L. Blaise
**BLAISE & NITSCHKE, P.C.**


By: /s/ Heather L. Blaise
        Heather L. Blaise

Attorney for Plaintiff
BEATBOX MUSIC PTY, LTD.

## PROOF OF SERVICE

At the time of service, I was over 18 years of age and not a party to this action. I am employed in the County of Cook, State of Illinois, and my business address is 123 N. Wacker Drive, Suite 250, Chicago, Illinois 60606.

On October 28, 2019, I served true copies of the following document(s) described as Notice of Deposition of The Person Most Knowledgeable From Labrador Entertainment, Inc. on the interested parties as stated on the attached service list in this case as follows:

**BY EMAIL OR ELECTRONIC TRANSMISSION**: By transmitting a true copy of the foregoing document(s) to the email addresses set forth below:

JACOBSON & ASSOCIATES
DAN JACOBSON, ESQ. (SBN 134978)
315 Centennial Way
Tustin, CA 92780
T: (714) 505-4872
Email: dlj@jacobsonlawyers.com
Attorneys for Defendant & Crossclaimant, MICHAEL COHEN, an individual.

BROWNE GEORGE ROSS, LLP
GUY C. NICHOLSON, ESQ. (SBN 106133)
2121 Avenue of the Stars, Suite 2800
Los Angeles, CA 90067
T: (310) 274-7100
Email: gnicholson@bgrfirm.com
Email: rohiri@bgrfirm.com
Email: croth@bgrfirm.com

Raena W. Ohiri (State Bar No. 315064)
Carl Alan Roth (State Bar No. 151517)
Attorneys for Defendants, LABRADOR ENTERTAINMENT, INC. D/B/A SPIDER CUES MUSIC LIBRARY, A California Corporation.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on October 28, 2019, in Chicago, Illinois.

/s/ *Samantha R. Bowler*
Samantha R. Bowler

-4-

Dan Jacobson SBN 134978
dlj@jacobsonlawyers.com
JACOBSON & ASSOCIATES
1352 Irvine Boulevard, Suite 205
Tustin, CA   92780
Tel:   (714) 505-4872

Attorneys for Defendant & Crossclaimant,
MICHAEL COHEN

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BEATBOX MUSIC PTY, LTD. | Case No.: 2:17-cv-06108-MWF (JPRx) |
| Plaintiff, | |
| v. | **AMENDED NOTICE OF DEPOSITION OF THE PERSON MOST KNOWLEDGEABLE FROM LABRADOR ENTERTAINMENT, INC., AND REQUEST FOR PRODUCTION OF DOCUMENTS** |
| LABRADOR ENTERTAINMENT INC., et al. | |
| Defendants. | |
| MICHAEL COHEN, an individual; | |
| Crossclaimant, | Dist. Judge: Hon. Michael W. Fitzgerald |
| | Mag. Judge: Hon. Jean P. Rosenbluth |
| v. | Courtroom: 5A |
| LABRADOR ENTERTAINMENT INC., D/B/A SPIDER CUES MUSIC LIBRARY, a California Corporation; | Complaint Filed:     August 17, 2017 |
| | Cross-Claim Filed:  November 21, 2017 |
| | Trial Date:              June 23, 2020 |
| Cross-Defendant. | |

## TO EACH PARTY AND TO EACH ATTORNEY OF RECORD IN THIS

## ACTION:

- 1 -

**YOU ARE HEREBY NOTIFIED THAT THE DEPOSITION OF:**

The person most knowledgeable from Labrador Entertainment, Inc. about any Labrador obligation(s) to Michael Cohen pursuant to that "Composer Agreement," dated 02/14/08 and attached hereto as Exhibit "A," that at all relate to "eminem-esque" will be taken at the offices of Jacobson and Associates located at 1352 Irvine Blvd., Suite 205, Tustin, California, before a notary public or certified shorthand reporter authorized to administer oaths in the state of California, commencing at 11:00AM on December 4, 2019.

**YOU ARE FURTHER NOTIFIED THAT:**

[x] <u>Deponent a corporation or other entity</u>: The deponent is not a natural person. The matters on which the deponent will be examined are as follows:

Any Labrador obligation(s) to Michael Cohen pursuant to that "Composer Agreement," dated 02/14/08 and attached hereto as Exhibit "A," that at all relate to "eminem-esque."

[x] <u>Items to be produced by deponent-party</u>: The Deponent who is a party to this action, is required to produce the following documents, records or other materials at said deposition:

Any and all documents that relate to any Labrador obligation(s) to Michael Cohen pursuant to that "Composer Agreement," dated 02/14/08 and attached hereto as Exhibit "A," that at all relate to "eminem-esque."

- 2 -

1        Any and all documents described in **Crossclaimant Michael Cohen's**

2 **Requests for Production to Cross-Defendant Labrador Entertainment, Inc. (Set**

3 **One)** attached hereto as Exhibit "B."

4

5        A list of all parties or attorneys for parties on whom this Notice of Deposition is

6 being served is shown on the accompanying Proof of Service

7

8        Dated: October 25, 2019

9                          **JACOBSON & ASSOCIATES**

10

11

12                          Dan Jacobson
                          Attorney for Defendant and Cross-

13                           Claimant, MICHAEL COHEN

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Amended Notice of Deposition of The Person Most Knowledgeable From Labrador Entertainment, Inc.

EXHIBIT "A"



SPIDER CUES MUSIC STUDIO

MC

# COMPOSER'S AGREEMENT

THIS COMPOSER'S AGREEMENT ("Agreement") is made and entered into as of
Feb. 14, 2008 by and between Michael Alan Cohen ("Composer") located at 1537 S. Wooster St.
#105 L.A., Ca. 90035 on the one hand, and Labrador Entertainment, Inc./Spider Cues ("Owner")
with office at 22400 Sentar Rd. Woodland Hills, CA. 91364, on the other hand, on the following
terms and conditions:

### WITNESSETH

Composer is the sole author of musical compositions listed below ("Compositions") written by
Michael Alan Cohen (ASCAP).  Composer hereby assigns to Owner, exclusive publishing rights
world wide of the Compositions for sale and/or exploitation.

**WORKING TITLE   TOTAL RUNNING TIME**

| WORKING TITLE | TOTAL RUNNING TIME |
|---|---|
| SQ mc dungeon-lords | :32 |
| SQ mc walk-this-way_soundalike | 1:15 |
| SQ mc boogie baby | :42 |
| SQ mc boogie baby 2 | 1:17 |
| SQ mc funny | :34 |
| SQ mc stupid people | :48 |
| SQ mc eminem esque | 2:22 |
| SQ mc godsandheroes | :39 |
| SQ mc hiphop 7 | 1:42 |
| SQ mc wedding enya | 2.02 |
| SQ mc beyonce esque | 2:36 |
| SQ mc ballers hiphop · | :30 |
| SQ mc samba vocal | 1:02 |
| SQ mc theme love | :45 |
| SQ mc sexy theme | :24 |
| SQ mc ok go 1 | 1:14 |
| SQ mc ok go 2 | 1:18 |
| SQ mc jazz angels we have heard on high | 56 |
| SQ mc jazz away in the manger 1 | 54 |
| SQ mc jazz away in the manger 2 | 39 |
| SQ mc jazz deck the halls 1 | 1 18 |
| SQ mc jazz deck the halls 2 | 43 |
| SQ mc jazz hark the herald angels | 1 02 |
| SQ mc jazz it came upon a midnight clear | 1 10 |
| SQ mc jazz jingle bells 1 | 52 |
| SQ mc jazz jingle bells 2 | 1 11 |
| SQ mc jazz joy to the world | 1 03 |
| SQ mc jazz nutcracker chinese dance | 1 14 |
| SQ mc jazz nutcracker march | 49 |
| SQ mc jazz nutcracker trepak | 1 16 |
| SQ mc jazz nutcracker waltz of the flowers part 2 | 1 16 |
| SQ mc jazz nutcracker waltz of the flowers part1 | 1 13 |
| SQ mc jazz o come all ye faithful | 56 |
| SQ mc jazz o little town of bethlehem | 52 |
| SQ mc jazz o tannenbaum 1 | 46 |
| SQ mc jazz o tannenbaum 2 | 56 |

**EXHIBIT A**

Case 2:17-cv-06108-MWF-JPR   Document 195-1   Filed 06/17/21   Page 22 of 288   Page ID
#:4282
Case 2:17-cv-06108   Document 1-4   Filed 08/17/17   Page 2 of 10   Page ID #:15

| | |
|---|---|
| SQ me jazz over the river + thru the woods | 1 07 |
| SQ me jazz silent night | 57 |
| SQ me jazz sugar plum fairy | 1 18 |
| SQ me jazz the first noel | 1 11 |
| SQ me jazz the first noel 2 | 1 21 |
| SQ me jazz twelve days of xmas | 50 |
| SQ me jazz we wish you a merry xmas | 1 36 |
| SQ me mod deck the halls | 38 |
| SQ me mod god rest ye merry gentlemen | 1 13 |
| SQ me mod hark the herald | 56 |
| SQ me mod jingle bells | 1 17 |
| SQ me mod joy to the world | 1 27 |
| SQ me mod o tannenbaum | 1 24 |
| SQ me mod silent night | 1 26 |
| SQ me mod we wish you a merry xmas | 1 21 |
| SQ me muzak deck the halls | 1 20 |
| SQ me muzak hark the herald angels sing | 1 24 |
| SQ me muzak jingle bells | 56 |
| SQ me muzak we wish you a merry xmas | 56 |
| SQ me muzak latin we wish you a merry xmas | 52 |
| SQ me peaceful first noel | 1 09 |
| SQ me peaceful god rest ye merry gentlemen | 39 |
| SQ me peaceful it came upon a midnight clear | 44 |
| SQ me peaceful joy to the world | 1 03 |
| SQ me peaceful o come all ye faithful | 1 29 |
| SQ me peaceful what child is this | 1 29 |
| SQ me rock twelve days of xmas | 1 07 |
| SQ me mod auldlangsyne | 47 |
| SQ me garage modern rock 1 | 1 19 |
| SQ me garage modern rock 2 | 1 33 |
| SQ me garage modern rock 3 | 58 |
| SQ me hard as hell | 58 |
| SQ me driving hard rock | 1 08 |
| SQ me driving hard rock 2 | 1 02 |
| SQ me more driving hard rock 3 | 1 06 |
| SQ me rage rock | 1 13 |
| SQ me down and dirty hard rock | 1 38 |
| SQ me inspirational coldplay-esque | 1 15 |
| SQ me inspirational coldplay-esque 2 | 1 20 |
| SQ me chillin light rock bluesy | 1 28 |
| SQ me prog rock | 1 04 |
| SQ me mid tempo hard rockin | 1 14 |
| SQ me deep down dirty rock | 1 15 |
| SQ me green punk rockin | 1 14 |
| SQ me up tempo rockin | 1 11 |
| SQ me down low toms rock | 1 43 |
| SQ me tommin rock | 1 04 |
| SQ me drivin' bass + drums | 33 |
| SQ me reggae rock | 1 15 |
| SQ me reggae moe rock | 55 |
| SQ me bruce in the house rock | 1 37 |
| SQ me heartland rock | 1 54 |
| SQ me chill heartland rock | 58 |
| SQ me chill light heartland rock | 55 |
| SQ me rolling stones-esque | 1 12 |
| SQ me bluesy rock organ | 1 03 |
| SQ me bluesy rock piano | 50 |
| SQ me rocking blues | 48 |
| SQ me bad ass | 1 34 |

| | |
|---|---|
| SQ mc one bad mofo | 53 |
| SQ mc the man is back | 56 |
| SQ mc sentimental piano & drums | 42 |
| SQ mc sports rock 1 | 1 54 |
| SQ mc sports rock 2 | 55 |
| SQ mc sports rock 3 | 1 11 |
| SQ mc sports rock 4 | 1 15 |
| SQ mc driving rock orch | 59 |
| SQ mc really driving orch | 50 |
| SQ mc really driving orch-no drums | 51 |
| SQ mc really dirving orch-no drums+mel | 50 |
| SQ mc inspirational-uplifting | 1 18 |
| SQ mc inspirational-uplifting 2 | 35 |
| SQ mc orch uplifting | 1 58 |
| SQ mc uplifting top gun-esque | 1 21 |
| SQ mc peaceful guitar & pad | 55 |
| SQ mc soft peaceful piano | 1 28 |
| SQ mc peaceful piano | 34 |
| SQ mc gentle piano | 1 08 |
| SQ mc high soft piano | 44 |
| SQ mc contemporary cool marimba | 1 01 |
| SQ mc contemporary marimba | 57 |
| SQ mc guitary fun | |
| SQ mc pretty chill | |
| SQ mc hard groovin' | |
| SQ mc funky scratchin' | |
| SQ mc come on now | |
| SQ mc look alive | |
| SQ mc really fun funky | |
| SQ mc punk | |
| SQ mc kick action dark | |
| SQ mc intense orchestral | |
| SQ mc driving orchestral | |
| SQ mc mid-tempo orchestral | |
| SQ mc something's on fire | |
| SQ mc more action | |
| SQ mc building heroics | |
| SQ mc steady beat | |
| SQ mc crazy anxious | |
| SQ mc crazy attack | |
| SQ mc dark quirky | |
| SQ mc dark uplifting | |
| SQ mc mid tempo romance | |
| SQ mc dark erotic | |
| SQ mc acoustic blues | |
| SQ mc rock shuffle | |
| SQ mc bluesy shuffle | |
| SQ mc bluesy piano | |
| SQ mc deep thoughtful | |
| SQ mc pop rock | |
| SQ mc 70's funky | |
| SQ mc street beatz | |
| SQ mc street beatz 3 | |
| SQ mc baaaddd bass | |
| SQ mc calypso | |
| SQ mc beyond good and evil | |
| SQ mc quests lords | |
| SQ mc main theme | |
| SQ mc quest action | |

MC
√

MC

1

| | |
|---|---|
| SQ mc dark choir | |
| SQ mc gb theme | |
| SQ mc gb free at last | |
| SQ mc sf love theme | |
| SQ mc alex applachian | |
| SQ mc gb sneaky | |
| SQ mc comedy querky | |
| SQ mc fire em up 1 | |
| SQ mc fire em up 2 | |
| SO mc fire em up 3 | |
| SQ mc gb techno | |
| SQ mc big river orch 1 | |
| SQ mc amaya strings 1 | |
| SQ mc amaya strings 2 | |
| SQ mc jennie's theme | |
| SQ mc underwater | |
| SQ mc cool orchestra | |
| SQ mc liquid orch | |
| SQ mc4 | |
| SQ mc dm ending | |
| SQ mc big river combo | |
| SQ mc uplifting drums | |
| SQ mc building orch beat | |
| SQ mc gl memories 1 | |
| SQ mc gl memories 2 | |
| SQ mc rukeda jazz | |
| SQ mc gl polka 1 | |
| SQ mc gl polka 2 | |
| SO mc higher latin | |
| SQ mc sj Spanish 1 | |
| SQ mc sj Spanish 2 | |
| SQ mc higher r&b | |
| SQ mc hip hop rockin | |
| SQ mc halfway | |
| SQ mc tm hard rock 1 | |
| SQ mc tm hard rock 2 | |
| SQ mc tm hard rock 3 | |
| SQ mc tm hard rock 4 | |
| SQ mc tm hard rock 5 | |
| SQ mc tm hard rock 6 | |
| SQ mc tm hard rock 7 | |
| SQ mc tm hard rock 8 | |
| SQ mc tm hard rock 9 | |
| SQ mc d ambient drone 1 | |
| SQ mc d ambient drone 2 | |
| SQ mc bd ending | |
| SQ mc Indian uplifting | |
| SQ mc as end strings | |
| SQ mc bc planning | |
| SQ mc mid tempo sexy | |
| SQ mc hard drivin' pop | |
| SQ mc jl blues 1 | |
| SQ mc 80's pop 1 | |
| SQ mc 80's pop 2 | |
| SQ mc 80's pop 3 | |
| SQ mc 80's pop 4 | |
| SQ mc 80's pop 5 | |
| SQ mc 80's pop 6 | |
| SQ mc 80's pop 7 | |

| | |
|---|---|
| SQ mc 80's pop 8 | |
| SQ mc 80's pop 9 | |
| SQ mc kick action | :35 |
| SQ mc spacey funky | 1:18 |
| SQ mc street beatz 2 | :57 |
| SQ mc spy crisis funk | :59 |
| SQ mc spy crisis techno | :42 |
| SQ mc mc3 | 2:05 |
| SQ mc dm before | 1:00 |
| SQ mc pensive 1 | 1:08 |
| SQ mc emotional 1 | :42 |
| SQ mc emotional 2 | :54 |
| SQ mc peaceful erotic | 1:30 |
| SQ mc tender emotional | :50 |
| SQ mc calypso beach | :56 |
| SQ mc jazzy chill 2 | :57 |
| SQ mc jazzy chill 1 | 1:27 |
| SQ mc lewis van | :19 |
| SQ mc jl blues 2 | :18 |
| SQ mc keep up the funk | :55 |
| SQ mc straight rock | :55 |
| SQ mc gr tension | 1:06 |
| SQ mc impending creepy 1 | :47 |
| SQ mc impending creepy 2 | 1:10 |
| SQ mc moody creepy | :42 |
| SQ mc creepy energy | 1:05 |
| SQ mc spooky build | :30 |
| SQ mc tension in the air | :40 |
| SQ mc what's going on | :51 |
| SQ mc gb james brown | 1:02 |
| SQ mc heavy octane | 1:36 |
| SQ mc heavy octane 2 | 1:54 |
| SQ mc sexy jazz | 1:14 |
| SQ mc piano bar | 2:16 |
| SQ mc piano bar intro | 2:16 |
| SQ mc heavy octane | 1:36 |
| SQ mc heavy octane 2 | 1:54 |
| SQ mc piano bar | 2:16 |
| SQ mc piano bar intro | 2:22 |
| SQ mc sexy jazz | 1:15 |
| SQ mc drive action | 0:51 |
| SQ mc horn march | 1:04 |
| SQ mc horn march trap | 1:04 |
| SQ mc proud orch | 1:58 |
| SQ mc proud orch 2 | 1:06 |
| SQ mc rock tease | 0:39 |
| SQ mc scare drum | 0:33 |
| SQ mc go raw with me | 1:04 |
| SQ mc still fallin for you | 0:36 |
| SQ mc growing orch | 1:06 |
| SQ mc irish orch | 0:56 |
| SQ mc waiting orch | 0:50 |
| SQ mc raw drive cellos | 0:25 |
| SQ mc challenge orch | 0:46 |
| | |
| | |



MC

MC

1.   ASSIGNING

    1.1    Composer hereby grants to Owner, and its assigns, exclusive worldwide rights, title and interest throughout the world ("Territory") in and to the Composition(s) (except copyright) in perpetuity. Owner's rights will include, but not be limited to:

    (a)    The right to use or record new lyrics in connection with the melody of the Composition(s), or a new melody in connection with the lyrics thereof;

    (b)    The right to use, publish, advertise, perform, produce, reproduce, disseminate and exploit the Composition(s) by any means now or hereafter known, or not do any of the foregoing;

    (c)    Any and all rights to the performance of the composition(s).

    (d)    The right to alter or change the title.

    (e)    The right to alter, expand, adapt, and translate the Composition(s) in consultation with Composer; and

    (f)    The right to license others to do any of the foregoing.

2.   PAYMENTS

    2.1    Owner shall pay Composer a sum equal to fifty (50%) of any and all net monies received from any mechanical, license, and synchronization income received by Owner, less reasonable monitoring fees, which may be incurred only when individuals or entities have been found to have made unauthorized use of cues of Composition(s). In the event that Owner obtains interest from a third party to license the Composition(s) outside of the film trailer market and Owner issues such license for the Composition(s) to such third party, Owner shall pay Composer a sum equal to fifty percent (50%) of any and all gross monies received from any mechanical, license, and synchronization income received by Owner.

    2.2    Owner shall be entitled to receive a sum equal to fifty (50%) of any performing and broadcast fees, which shall be collected by ASCAP, BMI, or SESAC and their affiliated societies, so long as the performing rights society will pay such sums directly to Owner or it's publisher(s). If not, Composer shall pay such sums to Owner directly.

    2.3    In the event of the exploitation of any sheet music, Owner shall pay the Composer a royalty equal to twelve percent (12%) of the net proceeds of the retail selling price (or wholesale equivalent) on all copies sold of the sheet music embodying the Composition(s) when the money is received by Owner. Composer shall not be entitled to receive a royalty for any professional and complimentary sheet music copies of the Composition(s).

    2.4    It is understood that should lyrics be added to the Composition(s), then the royalties and fees specified in clauses 2.2, 2.3, and 2.4 shall be divided between Composer and the new lyricist on terms and conditions to be mutually agreed upon between Composer, Owner, and the new lyricist.

    2.5    Prior to the signing of this agreement, all performing and broadcast fees collected by ASCAP and any publishing royalties that will, in the future, be collected by ASCAP for prior licensing of the above listed music by sources other than Spider Cues/Labrador Entertainment, Inc. or it's sub-publishers and producers will be paid 100% to Michael Cohen.

3.   ACCOUNTING

    3.1    Owner shall pay Composer any monies that may become due and payable to Composer under this Agreement within (30) days of receipt of royalties paid to Owner. Any late payment of such royalties due and owing shall, at Composer's option, be subject to a charge of interest at 10% fixed interest

rate. In the event that Owner is unable by reason of governmental restrictions to make payment to Composer in the U.S. in U.S. Dollars, Owner shall deposit to Composer's credit or account in a foreign depository selected by Composer and in Composer's name all sums payable to Composer hereunder and shall notify Composer of all relevant particulars of such deposit. Owner's deposit of such funds in the foreign depository shall satisfy its obligations to Composer under this Paragraph 3.

3.2 For royalty accounting and all other purposes, any versions of the Composition(s) will be deemed to include each shortage or longer version or edited altered version of the Composition(s).

3.3 In the event that Owner's rights hereunder are sold or assigned to a third person or entity (as opposed to any existing partner of Owner), Composer or a certified public accountant on Composer's behalf shall be entitled to examine Owner's books of account, but only for the sole purpose of verifying the accuracy of any statements rendered and monies due hereunder to Composer upon thirty (30) days written notice, during Owner's normal business hours and in no event more than once annually. In no event shall Composer or a certified public accountant on Composer's behalf be entitled to examine Owner's books of account regarding any sums received by Owner that do not relate to Composition(s) which is the subject matter of this Agreement. Composer shall be deemed to have consented to each royalty statement, and such statement shall become final and binding upon Composer sixty (60) days after the rendition thereof, unless Composer issues specific written objections to Owner within said sixty (60) day period. In the event that objection is received in sixty (60) days, statement will be deemed accurate.

3.4 All payments hereunder shall be subject to any withholding taxes or other deductions, which Owner may be required to make by law or governmental regulation. In the event Owner shall be obligated by the laws of the country in the Territory to deduct and withhold income or other like tax from advances and royalties payable to Composer hereunder. Owner shall use its best efforts to assist Composer in obtaining a foreign tax certificate setting forth the amount of tax which shall have been withheld, and any other necessary information to assist Composer in obtaining income tax credits in the United States or reimbursements from such foreign taxing authority.

3.5 Owner shall not cross-collateralize any unrecouped amounts hereunder against any royalties due to Composer under any other agreement with Owner.

4.  COMPOSER'S REPRESENTATIONS AND WARRANTIES

4.1 Composer represents and warrants that the Composition(s) is his sole, exclusive and original work, and is capable of copyright protection by Owner throughout the Territory.

4.2 Composer represents and warrants that no adverse claims exist or will exist with respect to the Composition(s), and the Composition(s) does not infringe upon or violate the copyrights or any other rights whatsoever of any person, firm, or entity.

4.3 Composer represents that the performance of the Composition(s) is owned and/or paid for in full by the Composer and that the Composer holds Owner and it's associates harmless to any claim thereof.

4.4 Composer represents and warrants that Composer has the full and exclusive right and authority to enter into this Agreement and to make the grant of rights contained herein to Owner.

5.  OWNER'S REPRESENTATIONS AND WARRANTIES

5.1   Owner is now, and shall continue to be, engaged in the manufacture, sale, distribution, and exploitation of musical compositions throughout the Territory during the Term.

5.2   Owner shall use its reasonable efforts to promote the manufacture, sale, distribution and other exploitation of the Composition(s) throughout the Territory during the Term, and

5.3   Licensee shall be responsible for all marketing costs and expenses, as well as any and all costs in connection with the manufacture, distribution and sale of the Composition(s) hereunder.

6.   **INDEMNIFICATION**

6.1   Composer will indemnify and hold Owner and all entities associated with Owner, free, safe, and harmless from and against any and all losses, damages, actions, causes of action, expenses or liabilities, including, without limitation, reasonable attorney's fees and costs, whether incurred before or after the entry of judgment, resulting from or by reasons of any material breach of any representation or warranty made herein by Composer. Owner will indemnify and hold Composer free, safe and harmless from and against any and all losses, damages, actions, causes of action, expenses or liabilities, including, without limitation, reasonable attorney's fees and costs, whether incurred before or after the entry of judgment, resulting from or by reason of any material breach of any representation or warranty made herein by Owner, or any third party claims resulting from Owner's exercise of it's rights hereunder, including without limitation, the right to alter, change, adapt and translate the Composition(s), pursuant to the terms of this Agreement.

7.   **ASSIGNMENTS**

7.1   Owner and it's associates will have the right to assign this Agreement, in whole or in part, to any third party or to grant any licenses for the Composition(s) hereunder. Composer will have the right to assign this Agreement, in whole or in part, or to assign Composer's right to receive his share of income in connection with the Composition(s). This Agreement will inure to the benefit of, and be binding upon, each party's heirs, subsidiaries, affiliates, corporations, licensees, successors and assigns.

8.   **HEADINGS**

8.1   The headings to the paragraphs of this Agreement have been inserted for convenience of reference only and shall not be deemed a part of or to affect the construction or interpretation of any provision of this Agreement.

9.   **SERVABILITY**

9.1   If any part of this Agreement shall be determined to be void, invalid, or unenforceable by a court of competent jurisdiction or by any other legally constituted body having the jurisdiction to make such determination, it shall not affect the validity of the remaining terms and conditions of this Agreement, provided that the part of the Agreement thus voided, invalidated or declared unenforceable is not essential to the parties intended purpose of this Agreement.

10.   **LEGAL ACTION**

10.1   Any legal action brought, or any enforcement of Owner's rights undertaken by Owner or it's associates against any alleged infringer of the

Composition(s), will be initiated and prosecuted at the Owner's sole expense and discretion, including the right to settle any such action. However, in the event of any recovery or settlement received by Owner or it's associates from such action, Owner shall pay Composer his pro-rate share of the income received, less Owner's reasonable collection fees and costs in connection therewith. If requested by Owner, Composer will cooperate in the prosecution of any such action with Owner or it's associates, and if Composer incurs any reasonable costs or expenses in this regard, Owner shall reimburse Composer for such fees and costs out of any recovery or settlement received by Owner from such action.

10.2   If a claim is presented against Owner or it's associates in which it is asserted that the Composition(s) infringe upon or violate or interfere with the rights of any person, firm, or entity, Owner shall notify Composer of such claim in writing, and Composer may participate in the defense of such claim; however, Owner and it's associates shall have the right to control the defense and to settle or otherwise dispose of such claim or action in any reasonable business manner.

## 11.   REPRESENTATION BY COUNSEL

11.1   The parties hereto acknowledge that they have had the opportunity to be represented by legal counsel of their own choice throughout all negotiations which preceded the execution of this Agreement, and that they have executed this Agreement with the ability to and after consulting with legal counsel of their own choice.

## 12   FORCE MAJEURE

12.1   Neither Owner and it's associates nor Composer shall be in material breach of this Agreement if the performance of any obligation hereunder is delayed and/or becomes impossible by reason of any act of God, war, earthquake, strike, sickness, accident, civil commotion, epidemic, act of government, and its agencies or officers, or any other cause beyond the reasonable control of the parties hereto. In the event that such force majeure event continues for more than six (6) months, either party may terminate the Term of this Agreement after written notice to the other party hereto.

## 13.   MISCELLANEOUS

13.1   If Owner fails to account for and make payments to Composer hereunder and such failure is not cured within (30) days after written notice thereof to Owner, or if Owner fails to perform any other obligations required of it hereunder and such failure is not cured within thirty (30) days after written notice thereof to Owner, or in the event that Owner shall file for protection under any bankruptcy laws or make an assignment for the benefit of creditors, or any insolvency proceeding shall be commenced against or by Owner, then and in any one or all of such events, this Agreement may, upon Composer's designation in writing, be terminated and Owner shall have no further rights of any kind whatsoever in and to the Composition hereunder. In any such event, Owner shall continue to account to Composer for royalties and/or other sums earned in respect of the Composition(s) prior to the date of such termination.

13.2   If Composer fails to perform any of Composer's obligations hereunder and such failure is not cured within thirty (30) days after written notice thereof to Composer, or in the event that Composer shall file for protection under any bankruptcy laws or make an assignment for the benefit of creditors, or any insolvency proceeding shall be commenced against or by Composer,

then and in any one or all such events, this Agreement may, upon Owner's designation in writing, be terminated.

13.3   All notices hereunder given by the parties hereto shall be in writing and shall be given by telex, facsimile, electronic mail or personal delivery to an officer or executive of the other or by addressing them as indicated below and by at the same time (as confirmation of the aforesaid methods of notice) or alternatively by depositing them, airmail, postage prepaid, registered mail, in the appropriate government mail system, or by delivering them, toll prepaid, to a telegraph or cable company and is so telexed, mailed telegraphed, or cabled, shall be conclusively deemed to have been given seventy-two (72) hours after the date of mailing or twenty-four (24) hours after the date of telex, facsimile transmission, electronic mail or delivery to the telegraph or cable company.

13.4   This Agreement sets forth the entire understanding between Composer and Owner and cannot be changed, modified or canceled except by an instrument signed by the party sought to be charged.  This Agreement shall be governed by and construed under the laws of the State of California, applicable to agreements made and to be wholly performed within the State of California.  All actions, proceedings or litigation brought by either party hereto shall be instituted and prosecuted in the County of Los Angeles, State of California.  Composer and Owner hereby assent to the jurisdiction of the federal and state courts having jurisdiction in the County of Los Angeles, State of California, with respect to any matter arising out of or related to this Agreement.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed as of the year and day first above written in Los Angeles, California.

By _____
Michael Cohen
("Composer")

Labrador Entertainment, Inc/Spider Cues
By _____
Noel Webb
It's Authorized Agent
("Owner")

EXHIBIT "B"

1  Dan Jacobson SBN 134978
   dlj@jacobsonlawyers.com
2  Ronak Patel SBN 296296
   rp@jacobsonlawyers.com
3  JACOBSON & ASSOCIATES
   315 Centennial Way
4  Tustin, CA   92780
   Tel:   (714) 505-4872
5

6  Attorneys for Defendant & Crossclaimant,
   MICHAEL COHEN
7

8

9                 **UNITED STATES DISTRICT COURT**

10              **CENTRAL DISTRICT OF CALIFORNIA**

11

12  BEATBOX MUSIC PTY, LTD.            | Case No.: 2:17-cv-06108-MWF-JPR

13              Plaintiff,

14              v.                     | **Crossclaimant Michael Cohen's Requests for Production to Cross-Defendant Labrador Entertainment, Inc. (Set One)**
15  LABRADOR ENTERTAINMENT
    INC., et al.
16              Defendants.

17  MICHAEL COHEN, an individual;     | Courtroom:  5A
                                       | Judge:      Hon. Michael W. Fitzgerald
18              Crossclaimant,

19              v.                     | Complaint Filed:     August 17, 2017
                                       | Cross-Claim Filed:   November 21, 2017
20  LABRADOR ENTERTAINMENT            | Trial Date:          March 19, 2019
    INC., D/B/A SPIDER CUES MUSIC
21  LIBRARY, a California Corporation;

22              Cross-Defendant.

23

24      **PROPOUNDING PARTY:**      **CROSSCLAIMANT, MICHAEL COHEN**

25      **RESPONDING PARTY:**       **CROSS-DEFENDANT, LABRADOR ENTERTAINMENT, INC.**

26

27      **SET NUMBER:**             **ONE**

28

- 1 -

**CROSSCLAIMANT'S REQUESTS FOR PRODUCTION LABRADOR ENTERTAINMENT (SET ONE)**

## Cohen's First Set of Requests for Production to Labrador Entertainment

Crossclaimant, Michael Cohen ("Cohen" or "Crossclaimant"), by and through its attorneys, hereby request, pursuant to Rule 34 of the Federal Rules of Civil Procedure, that Defendant, Labrador Entertainment, Inc., DBA Spider Cues Music Library ("Labrador" or "Cross-Defendant"), permit the inspection and copying of the documents listed in these requests for production. The inspection and performance of related acts shall be made at a site agreed upon by the parties, within 30 days of service of these requests for production.

The following definitions and instructions shall apply to each and every part of these Requests for Production as if fully set forth therein:

## DEFINITIONS

1. "Communication" shall mean the transmittal of information (in the form of facts, ideas, inquiries or otherwise) in any manner or medium, and shall include any documents or other tangible things attached thereto or enclosed therein.

2. "Document" and "documents" are used in the broadest permissible sense under the Federal Rules of Civil Procedure and shall include, without limitation, tangible things and all written, typewritten, recorded (including audio or videotape or both), graphic, photographic (including negatives), facsimile transmissions, or computerized materials in whatever form, including copies, drafts, and reproductions thereof to which you have or have had access and every copy of such document which contains any commentary or notation not appearing in the original.

3. "Person" shall mean any natural person or any business, legal or governmental entity or association.

4. "Entity" shall mean any company, corporation, partnership, union, joint venture, sole proprietorship, association, government agency, organization or any other similar type of group through which business is conducted, or any director, officer, employee or agent thereof.

5. "Concerning" shall mean relating to, referring to, describing, evidencing

- 2 -

1  or constituting.

2       6.    "Relate to" and "relating to" shall mean and include any information

3  concerning, comprising, identifying, summarizing, evidencing, containing, discussing,

4  mentioning, describing, reflecting, comparing, analyzing, memorializing or pertaining

5  in any way to the subject matter of the discovery request in which such term is used.

6       7.    The words "or," "and," "all," "every," "each," "one or more,"

7  "including," and similar words of guidance, are intended merely as such, and should

8  not be construed as words of limitation. The words "or" and "and" shall include each

9  other whenever possible to expand, not to restrict, the scope of the relevant Request

10  for Admission.

11       8.    "Identify" or "identity" means to state or a statement of:

12            a.    in the case of a person other than a natural person, its name, the

13                  address of its principal place of business (including zip code), its

14                  telephone number, and the name of its chief executive officer, as

15                  well as, if it has a person other than a natural person that ultimately

16                  controls it, that other person's name, the address of that person's

17                  principal place of business (including zip code), the other person's

18                  telephone number, and the name of that other person's chief

19                  executive officer;

20            b.    in the case of a natural person, his or her name, business address

21                  and telephone number, employer, and title or position;

22            c.    in the case of a communication, its date, the type (e.g. telephone

23                  conversation or discussion), the place where it occurred, the

24                  identity of the person or persons who made the communication, the

25                  identity of the person or persons who received the communication,

26                  and the subject matter discussed;

27            d.    in the case of a document, the title of the communication, the

28                  author, the title or position of the author, the addressee, each

- 3 -

1                       recipient, the type of document, the subject matter, the date of

2                       preparation, and its number of pages; and

3            e.      in the case of an agreement, its date, the place where it occurred,

4                       the identity of all persons who were parties to the agreement, the

5                       identity of each person who has knowledge of the agreement and

6                       all other persons present when it was made, and the subject matter

7                       of the agreement.

8      9.      The use of a verb in any tense shall be construed as the use of the verb in

9 all other tenses, whenever necessary to bring into the scope of the specification all

10 responses which might otherwise deemed outside the scope of the request.

11      10.     Singular forms of any noun or pronoun shall embrace and be read to

12 include the plural as the context may make appropriate.

13      11.     Masculine forms of any noun or pronoun shall embrace and be read to

14 include the feminine or neutral, as the context may make appropriate.

15      12.     "Crossclaimant," "Cohen," and "Propounding Party" shall each mean

16 Michael Cohen.

17      13.     "Cross-Defendant," "Labrador," "you," and "your" shall each mean

18 Labrador Entertainment, Inc., DBA Spider Cues Music Library.

19      14.     "Beatbox" and "Plaintiff" shall each mean Plaintiff Beatbox Music Pty.,

20 Ltd..

21      15.     "NZ National Party" shall mean the New Zealand National Party.

22      16.     "AMCOS" shall mean the Australian Mechanical Copyright Owners

23 Society.

24      17.     The term "Complaint" shall refer to the complaint filed by Beatbox

25 against Labrador and Cohen in the above captioned matter.

26      18.     The term "Crossclaim" shall refer to the crossclaim filed by Cohen

27 against Labrador in the above captioned matter.

28      19      The term "Composer's Agreement" shall refer to the agreement entered

- 4 -

between Labrador and Cohen in 2008, which is both attached as Exhibit A to Cohen's Crossclaim and attached as part of Exhibit A to the Complaint.

20.     The term "2009 Agreement" shall refer to the agreement entered into between Beatbox and Labrador in 2009, and which is both attached as Exhibit B to the Crossclaim and attached as part of Exhibit A to the Complaint.

21.     The term "2014 Amendment" shall refer to the amendment to the 2009 Agreement which was entered into between Beatbox and Labrador in 2014, and which is both attached as Exhibit C to the Crossclaim and as a part of Exhibit A to the Complaint.

22.     "Licensed Composition" shall refer to the two minute and twenty two seconds long musical composition known as "SQ mc eminem esque," which is listed in the Composer's Agreement.

23.     "Eight Mile Style" shall mean Eight Mile Style, LLC, and Martin Affiliated, LLC.

24.     "NZ Litigation" shall refer to the litigation filed in New Zealand by Eight Mile Style before the High Court of New Zealand, Wellington Registry, Case Number Civ 2014-485-11220

25.     "Political Advertisements" shall refer to the various political advertisements which were run on radio or television by the NZ National Party in 2014 and which are the subject matter of the NZ Litigation.

## INSTRUCTIONS

1.     Unless otherwise specified, the documents called for by these requests for production are documents in your possession, custody, or control that were applicable, effective, prepared, written, generated, sent, dated, or received at any time since January 1, 2002.

2.     Pursuant to Federal Rule of Civil Procedure 26(e), you are under a duty to supplement any response to this request for production for which you learn that the response is in some material respect incomplete or incorrect

- 5 -

if the additional or corrective information has not otherwise been made known to the Crossclaimant.

3.  All documents that respond, in whole or in part, to any part or clause of any paragraph of these requests for production shall be produced in their entirety, including all attachments and enclosures.  Only one copy need be produced of documents that are responsive to more than one paragraph or are identical except for the person to whom it is addressed if you indicate the persons or groups of persons to whom such documents were distributed.  Documents that in their original condition were stapled, clipped, or otherwise fastened together shall be produced in such form. Please mark each group of documents with the paragraph to which such documents respond, and if any document is responsive to more than one request, indicate each request to which it responds.

4.  For any document withheld under a claim of privilege, submit a sworn or certified statement from your counsel or one of your employees in which you identify the document by author, addressee, date, page umbers, and subject matter; specify the nature and basis of the claimed privilege and the paragraph or paragraphs of this demand for documents to which the document is responsive; and identify each person to whom the document or its contents, or any part thereof, has been disclosed.

5.  For any document responsive to these requests for production which is known to have been destroyed or lost, or otherwise unavailable, identify each such document by author, addressee, date, number of pages, and subject matter, and explain in detail the events leading to te destruction or loss, or the reason for unavailability of such document, including the location of such document when last in your possession, custody, or control, and date and manner of its disposition.

## REQUESTS FOR PRODUCTION

- 6 -

**Request for Production No. 1**

All documents which relate to or support any of your admissions or denials in your responses to Cohen's Requests for Admissions (Set One), which have been served upon you concurrently with these Requests for Production (Set One).

**Request for Production No. 2**

All documents which relate to or support any of your responses to Cohen's Interrogatories (Set One), which have been served upon you concurrently with these Requests for Production (Set One).

**Request for Production No. 3**

All of Labrador's corporate minutes, recordings, summaries, or reports of meetings, whether formal or informal.

**Request for Production No. 4**

All communications between you and Beatbox that relate to music subject to the Composer's Agreement or any other agreement between you and Cohen, including, but not limited to, the Licensed Composition.

**Request for Production No. 5**

All communications between you and any other person that relates to the music subject to the Composer's Agreement or any other agreement between you and Cohen, including but not limited to, the Licensed Composition.

**Request for Production No. 6**

All documents and tangible things relating to any payment made to Cohen for the licensing of any music subject to the Composer's Agreement or any other agreement between you and Cohen, including, but not limited to, the Licensed Composition.

**Request for Production No. 7**

All communications between you and the NZ National Party.

/ / /

**Request for Production No. 8**

All communications between you and the AMCOS.

**Request for Production No. 9**

All communications between you and Beatbox.

**Request for Production No. 10**

All documents relating or referring to the NZ National Party.

**Request for Production No. 11**

All documents relating to AMCOS.

**Request for Production No. 12**

All documents relating to the NZ Litigation.

**Request for Production No. 13**

Admit communications relating to the NZ Litigation.

**Request for Production No. 14**

All documents which relate to any alteration, adaptation, expansion, or translation of any music subject to the Composer's Agreement, including, but not limited to, the Licensed Composition.

**Request for Production No. 15**

All documents relating to any music library you licensed to Beatbox.

**Request for Production No. 16**

All documents relating to any changes made to any music library which you licensed to Beatbox.

**Request for Production No. 17**

All documents which relate to your negotiation of the 2009 Agreement with Beatbox.

**Request for Production No. 18**

All documents which relate to your negotiation of the 2014 Amendment with Beatbox.

/ / /

- 8 -

**Request for Production No. 19**

All communications which relate to your negotiation of the 2009 Agreement with Beatbox.

**Request for Production No. 20**

All communications which relate to your negotiation of the 2014 Amendment with Beatbox.

Dated: January 18, 2018

**JACOBSON & ASSOCIATES**

Dan Jacobson
Ronak Patel
Attorneys for Defendant and Cross-Claimant, MICHAEL COHEN

- 9 -

CROSSCLAIMANT'S REQUESTS FOR PRODUCTION LABRADOR ENTERTAINMENT (SET ONE)

**PROOF OF SERVICE**

I, Dan Jacobson, declare as follows:

My address is 1352 Irvine Blvd., Suite 205, Tustin CA 92780, which is located in the county where the mailing described below took place (Orange County).

On October 25, 2019, I served the following documents described as:

Defendant Michael Cohen's

**AMENDED NOTICE OF DEPOSITION OF THE PERSON MOST FROM LABRADOR ENTERTAINMENT, INC., AND REQUEST FOR PRODUCTION OF DOCUMENTS**

on all interested parties in this action by placing a true and correct copy thereof in a sealed envelope, with USPS First-Class Mail postage, and deposited said envelope in the United States mail at or in Tustin, CA, addressed to:

Heather L. Blaise, Esq.
Blaise & Nitschke, P.C.
123 North Wacker Drive
Suite 250
Chicago, Illinois 60606

Attorneys for Plaintiff Beatbox Music Pty. Ltd

Carl Roth
Raena W. Ohiri
Browne George Ross LLP
2121 Avenue of the Stars, Suite 2800
Los Angeles, CA 90067

Attorneys for Defendant & Cross-Defendant
Labrador Entertainment, Inc.

I also e-mailed the above documents to the above-listed attorneys at hblaise@blaisenitschkelaw.com, rohiri@bgrfirm.com, & croth@bgrfirm.com.

I declare under the penalty of perjury of the laws of the United States that the foregoing is true and correct.

Executed on October 25, 2019 at Tustin, CA.

Dan Jacobson

1 | Dan Jacobson SBN 134978
dlj@jacobsonlawyers.com
2 | JACOBSON & ASSOCIATES
1352 Irvine Boulevard, Suite 205
3 | Tustin, CA  92780
Tel:   (714) 505-4872
4 |

5 | Attorneys for Defendant & Crossclaimant,
MICHAEL COHEN
6 |

7 |

8 | **UNITED STATES DISTRICT COURT**

9 | **CENTRAL DISTRICT OF CALIFORNIA**

10 |

| BEATBOX MUSIC PTY, LTD. | Case No.: 2:17-cv-06108-MWF (JPRx) |
|---|---|
| Plaintiff, | |
| v. | **AMENDED NOTICE OF DEPOSITION OF NOEL WEBB, AND REQUEST FOR PRODUCTION OF DOCUMENTS** |
| LABRADOR ENTERTAINMENT INC., et al. | |
| Defendants. | |
| MICHAEL COHEN, an individual; | Dist. Judge: Hon. Michael W. Fitzgerald<br>Mag. Judge: Hon. Jean P. Rosenbluth<br>Courtroom: 5A |
| Crossclaimant, | |
| v. | Complaint Filed:      August 17, 2017<br>Cross-Claim Filed:   November 21, 2017<br>Trial Date:                June 23, 2020 |
| LABRADOR ENTERTAINMENT INC., D/B/A SPIDER CUES MUSIC LIBRARY, a California Corporation; | |
| Cross-Defendant. | |

**TO EACH PARTY AND TO EACH ATTORNEY OF RECORD IN THIS ACTION:**

- 1 -

**YOU ARE HEREBY NOTIFIED THAT THE DEPOSITION OF**

Noel Webb will be taken at the offices of Jacobson and Associates located at 1352 Irvine Blvd., Suite 205, Tustin, California, before a notary public or certified shorthand reporter authorized to administer oaths in the state of California, commencing at 11:00 AM on December 2, 2019.

**YOU ARE FURTHER NOTIFIED THAT:**

[x] <u>Items to be produced by deponent-party</u>: The Deponent who is a party to this action, is required to produce the following documents, records or other materials at said deposition:

Any and all documents, records or other materials that relate to any Labrador obligation(s) to Michael Cohen pursuant to that "Composer Agreement," dated 02/14/08 and attached hereto as Exhibit "A," that at all relate to "eminem-esque."

A list of all parties or attorneys for parties on whom this Notice of Deposition is being served is shown on the accompanying Proof of Service.

Dated: October 25, 2019

**JACOBSON & ASSOCIATES**

Dan Jacobson
Attorney for Defendant and Cross-Claimant, MICHAEL COHEN

- 2 -

EXHIBIT "A"



SPIDER CUES MUSIC STUDIO

MC

## COMPOSER'S AGREEMENT

THIS COMPOSER'S AGREEMENT ("Agreement") is made and entered into as of Feb. 14, 2008 by and between Michael Alan Cohen ("Composer") located at 1537 S. Wooster St. #105, L.A., Ca. 90035 on the one hand, and Labrador Entertainment, Inc./Spider Cues ("Owner") with office at 22400 Sentar Rd. Woodland Hills, CA. 91364, on the other hand, on the following terms and conditions:

### WITNESSETH

Composer is the sole author of musical compositions listed below ("Compositions") written by Michael Alan Cohen (ASCAP). Composer hereby assigns to Owner, exclusive publishing rights world wide of the Compositions for sale and/or exploitation.



**WORKING TITLE   TOTAL RUNNING TIME**

| | |
|---|---|
| SQ mc dungeon-lords | :32 |
| SQ mc walk-this-way_soundalike | 1:15 |
| SQ mc boogie baby | :42 |
| SQ mc boogie baby 2 | 1:17 |
| SQ mc funny | :34 |
| SQ mc stupid people | :48 |
| SQ mc eminem esque | 2:22 |
| SQ mc godsandheroes | :39 |
| SQ mc hiphop 7 | 1:42 |
| SQ mc wedding enya | 2:02 |
| SQ mc beyonce esque | 2:36 |
| SQ mc ballers hiphop · | :30 |
| SQ mc samba vocal | 1:02 |
| SQ mc theme love | :45 |
| SQ mc sexy theme | :24 |
| SQ mc ok go 1 | 1:14 |
| SQ mc ok go 2 | 1:18 |
| SQ mc jazz angels we have heard on high | 56 |
| SQ mc jazz away in the manger 1 | 54 |
| SQ mc jazz away in the manger 2 | 39 |
| SQ mc jazz deck the halls 1 | 1 18 |
| SQ mc jazz deck the halls 2 | 43 |
| SQ mc jazz hark the herald angels | 1 02 |
| SQ mc jazz it came upon a midnight clear | 1 10 |
| SQ mc jazz jingle balls 1 | 52 |
| SQ mc jazz jingle bells 2 | 1 11 |
| SQ mc jazz joy to the world | 1 03 |
| SQ mc jazz nutcracker chinese dance | 1 14 |
| SQ mc jazz nutcracker march | 49 |
| SQ mc jazz nutcracker trepak | 1 16 |
| SQ mc jazz nutcracker waltz of the flowers part 2 | 1 16 |
| SQ mc jazz nutcracker waltz of the flowers part1 | 1 13 |
| SQ mc jazz o come all ye faithful | 56 |
| SQ mc jazz o little town of bethlehem | 52 |
| SQ mc jazz o tanaenbaum 1 | 46 |
| SQ mc jazz o tannenbaum 2 | 56 |

**EXHIBIT A**

| | |
|---|---|
| SQ me jazz over the river + thru the woods | 1 07 |
| SQ me jazz silent night | 57 |
| SQ me jazz sugar plum fairy | 1 18 |
| SQ me jazz the first noel | 1 11 |
| SQ me jazz the first noel 2 | 1 21 |
| SQ me jazz twelve days of xmas | 50 |
| SQ me jazz we wish you a merry xmas | 1 36 |
| SQ me mod deck the halls | 38 |
| SQ me mod god rest ye merry gentlemen | 1 13 |
| SQ me mod hark the herald | 56 |
| SQ me mod jingle bells | 1 17 |
| SQ me mod joy to the world | 1 27 |
| SQ me mod o tannenbaum | 1 24 |
| SQ me mod silent night | 1 26 |
| SQ me mod we wish you a merry xmas | 1 21 |
| SQ me muzak deck the halls | 1 20 |
| SQ me muzak hark the herald angels sing | 1 24 |
| SQ me muzak jingle bells | 56 |
| SQ me muzak we wish you a merry xmas | 56 |
| SQ me muzak latin we wish you a merry xmas | 52 |
| SQ me peaceful first noel | 1 09 |
| SQ me peaceful god rest ye merry gentlemen | 39 |
| SQ me peaceful it came upon a midnight clear | 44 |
| SQ me peaceful joy to the world | 1 03 |
| SQ me peaceful o come all ye faithful | 1 29 |
| SQ me peaceful what child is this | 1 29 |
| SQ me rock twelve days of xmas | 1 07 |
| SQ me mod auldlangsyne | 47 |
| SQ me garage modern rock 1 | 1 19 |
| SQ me garage modern rock 2 | 1 33 |
| SQ me garage modern rock 3 | 58 |
| SQ me hard as hell | 58 |
| SQ me driving hard rock | 1 08 |
| SQ me driving hard rock 2 | 1 02 |
| SQ me more driving hard rock 3 | 1 06 |
| SQ me rage rock | 1 13 |
| SQ me down and dirty hard rock | 1 38 |
| SQ me inspirational coldplay-esque | 1 15 |
| SQ me inspirational coldplay-esque 2 | 1 20 |
| SQ me chillin light rock bluesy | 1 28 |
| SQ me prog rock | 1 04 |
| SQ me mid tempo hard rockin | 1 14 |
| SQ me deep down dirty rock | 1 15 |
| SQ me green punk rockin | 1 14 |
| SQ me up tempo rockin | 1 11 |
| SQ me down low toms rock | 1 43 |
| SQ me tommin rock | 1 04 |
| SQ me drivin' bass + drums | 33 |
| SQ me reggae rock | 1 15 |
| SQ me reggae moe rock | 55 |
| SQ me bruce in the house rock | 1 37 |
| SQ me heartland rock | 1 54 |
| SQ me chill heartland rock | 58 |
| SQ me chill light heartland rock | 55 |
| SQ me rolling stones-esque | 1 12 |
| SQ me bluesy rock organ | 1 03 |
| SQ me bluesy rock piano | 50 |
| SQ me rocking blues | 48 |
| SQ me bad ass | 1 34 |



Case 2:17-cv-06108-MWF-JPR   Document 195-1   Filed 06/17/21   Page 47 of 288   Page ID
Case 2:17-cv-06108   Document 1-1 Filed 08/17/17   Page 3 of 10   Page ID #:16
#:4307

| | |
|---|---|
| SQ mc one bad mofo | 53 |
| SQ mc the man is back | 56 |
| SQ mc sentimental piano & drums | 42 |
| SQ mc sports rock 1 | 1 54 |
| SQ mc sports rock 2 | 55 |
| SQ mc sports rock 3 | 1 11 |
| SQ mc sports rock 4 | 1 15 |
| SQ mc driving rock orch | 59 |
| SQ mc really driving orch | 50 |
| SQ mc really driving orch-no drums | 51 |
| SQ mc really dirving orch-no drums+mel | 50 |
| SQ mc inspirational-uplifting | 1 18 |
| SQ mc inspirational-splifting 2 | 35 |
| SQ mc orch uplifting | 1 58 |
| SQ mc uplifting top gun-esque | 1 21 |
| SQ mc peaceful guitar & pad | 55 |
| SQ mc soft peaceful piano | 1 28 |
| SQ mc peaceful piano | 34 |
| SQ mc gentle piano | 1 08 |
| SQ mc high soft piano | 44 |
| SQ mc contemporary cool marimba | 1 01 |
| SQ mc contemporary marimba | 57 |
| SQ mc guitary fun | |
| SQ mc pretty chill | |
| SQ mc hard groovin' | |
| SQ mc funky scratchin' | |
| SQ mc come on now | |
| SQ mc look alive | |
| SQ mc really fun funky | |
| SQ mc punk | |
| SQ mc kick action dark | |
| SQ mc intense orchestral | |
| SQ mc driving orchestral | |
| SQ mc mid-tempo orchestral | |
| SQ mc something's on fire | |
| SQ mc more action | |
| SQ mc building heroics | |
| SQ mc steady beat | |
| SQ mc crazy anxious | |
| SQ mc crazy attack | |
| SQ mc dark quirky | |
| SQ mc dark uplifting | |
| SQ mc mid tempo romance | |
| SQ mc dark erotic | |
| SQ mc acoustic blues | |
| SQ mc rock shuffle | |
| SQ mc bluesy shuffle | |
| SQ mc bluesy piano | |
| SQ mc deep thoughtful | |
| SQ mc pop rock | |
| SQ mc 70's funky | |
| SQ mc street beatz | |
| SQ mc street beatz 3 | |
| SQ mc baaaddd asss | |
| SQ mc calypso | |
| SQ mc beyond good and evil | |
| SQ mc questa lords | |
| SQ mc main theme | |
| SQ mc quest action | |

MC
✓

MC

1√

| | |
|---|---|
| SQ mc dark choir | |
| SQ mc gb theme | |
| SQ mc gb free at last | |
| SQ mc sf love theme | |
| SQ mc alex applechian | |
| SQ mc gb sneaky | |
| SQ mc comedy querky | |
| SQ mc fire em up 1 | |
| SQ mc fire em up 2 | |
| SQ mc fire em up 3 | |
| SQ mc gb techno | |
| SQ mc big river orch 1 | |
| SQ mc amaya strings 1 | |
| SQ mc amaya strings 2 | |
| SQ mc jennie's theme | |
| SQ mc underwater | |
| SQ mc cool orchestra | |
| SQ mc liquid arch | |
| SQ mc4 | |
| SQ mc dm ending | |
| SQ mc big river combo | |
| SQ mc uplifting drums | |
| SQ mc building orch beat | |
| SQ mc gj memories 1 | |
| SQ mc gj memories 2 | |
| SQ mc rukoda jazz | |
| SQ mc gj polka 1 | |
| SQ mc gj polka 2 | |
| SQ mc higher latin | |
| SQ mc sj Spanish 1 | |
| SQ mc sj Spanish 2 | |
| SQ mc higher r&b | |
| SQ mc hip hop rockin | |
| SQ mc halfway | |
| SQ mc tm hard rock 1 | |
| SQ mc tm hard rock 2 | |
| SQ mc tm hard rock 3 | |
| SQ mc tm hard rock 4 | |
| SQ mc tm hard rock 5 | |
| SQ mc tm hard rock 6 | |
| SQ mc tm hard rock 7 | |
| SQ mc tm hard rock 8 | |
| SQ mc tm hard rock 9 | |
| SQ mc d ambient drone 1 | |
| SQ mc d ambient drone 2 | |
| SQ mc bd ending | |
| SQ mc indian uplifting | |
| SQ mc as end strings | |
| SQ mc bc planning | |
| SQ mc mid tempo sexy | |
| SQ mc hard drivin' pop | |
| SQ mc jl blues 1 | |
| SQ mc 80's pop 1 | |
| SQ mc 80's pop 2 | |
| SQ mc 80's pop 3 | |
| SQ mc 80's pop 4 | |
| SQ mc 80's pop 5 | |
| SQ mc 80's pop 6 | |
| SQ mc 80's pop 7 | |



| | |
|---|---|
| SQ mc 80's pop 8 | |
| SQ mc 80's pop 9 | |
| SQ mc kick action | :35 |
| SQ mc spacey funky | 1:18 |
| SQ mo street beatz 2 | :37 |
| SQ mc spy crisis funk | :59 |
| SQ mc spy crisis techno | :42 |
| SQ mc mc3 | 2:05 |
| SQ mc dm before | 1:00 |
| SQ mc pensive 1 | 1:08 |
| SQ mc emotional 1 | :42 |
| SQ mc emotional 2 | :54 |
| SQ mc peaceful erotic | 1:30 |
| SQ mc tender emotional | :50 |
| SQ mc calypso beach | :56 |
| SQ mc jazzy chill 2 | :57 |
| SQ mc jazzy chill 1 | 1:27 |
| SQ mc lewis van | :19 |
| SQ mc jl blues 2 | :18 |
| SQ mc keep up the funk | :55 |
| SQ mc straight rock | :55 |
| SQ mc gr tension | 1:06 |
| SQ mc impending creepy 1 | :47 |
| SQ mc impending creepy 2 | 1:10 |
| SQ mc moody creepy | :42 |
| SQ mc creepy energy | 1:05 |
| SQ mc spooky build | :30 |
| SQ mc tension in the air | :40 |
| SQ mc what's going on | :51 |
| SQ mc gb james brown | 1:02 |
| SQ mc heavy octane | 1:36 |
| SQ mc heavy octane 2 | 1:54 |
| SQ mc sexy jazz | 1:14 |
| SQ mc piano bar | 2:16 |
| SQ mc piano bar intro | 2:16 |
| SQ mc heavy octane | 1:36 |
| SQ mc heavy octane 2 | 1:54 |
| SQ mc piano bar | 2:16 |
| SQ mc piano bar intro | 2:22 |
| SQ mc sexy jazz | 1:15 |
| SQ mo drive action | 0:51 |
| SQ mc horn march | 1:04 |
| SQ mc horn march trap | 1:04 |
| SQ mc proud orch | 1:58 |
| SQ mo proud orch 2 | 1:06 |
| SQ mc rock tease | 0:39 |
| SQ mc scare drum | 0:33 |
| SQ mc go raw with me | 1:04 |
| SQ mc still fallin for you | 0:36 |
| SQ mc growing orch | 1:06 |
| SQ mc irish orch | 0:56 |
| SQ mc waiting orch | 0:50 |
| SQ mc raw drive cellos | 0:25 |
| SQ mc challenge orch | 0:46 |
| | |
| | |
| | |

MC

1.   ASSIGNING

1.1     Composer hereby grants to Owner, and its assigns, exclusive worldwide rights, title and interest throughout the world ("Territory") in and to the Composition(s) (except copyright) in perpetuity. Owner's rights will include, but not be limited to:

   (a)   The right to use or record new lyrics in connection with the melody of the Composition(s), or a new melody in connection with the lyrics thereof;
   (b)   The right to use, publish, advertise, perform, produce, reproduce, disseminate and exploit the Composition(s) by any means now or hereafter known, or not do any of the foregoing;
   (c)   Any and all rights to the performance of the composition(s).
   (d)   The right to alter or change the title.
   (e)   The right to alter, expand, adapt, and translate the Composition(s) in consultation with Composer, and
   (f)   The right to license others to do any of the foregoing.

2.   PAYMENTS

2.1     Owner shall pay Composer a sum equal to fifty (50%) of any and all net monies received from any mechanical, license, and synchronization income received by Owner, less reasonable monitoring fees, which may be incurred only when individuals or entities have been found to have made unauthorized use of cues of Composition(s). In the event that Owner obtains interest from a third party to license the Composition(s) outside of the film trailer market and Owner issues such license for the Composition(s) to such third party, Owner shall pay Composer a sum equal to fifty percent (50%) of any and all gross monies received from any mechanical, license, and synchronization income received by Owner.

2.2     Owner shall be entitled to receive a sum equal to fifty (50%) of any performing and broadcast fees, which shall be collected by ASCAP, BMI, or SESAC and their affiliated societies, so long as the performing rights society will pay such sums directly to Owner or it's publisher(s). If not, Composer shall pay such sums to Owner directly.

2.3     In the event of the exploitation of any sheet music, Owner shall pay the Composer a royalty equal to twelve percent (12%) of the net proceeds of the retail selling price (or wholesale equivalent) on all copies sold of the sheet music embodying the Compositions(s) when the money is received by Owner. Composer shall not be entitled to receive a royalty for any professional and complimentary sheet music copies of the Composition(s).

2.4     It is understood that should lyrics be added to the Composition(s), then the royalties and fees specified in clauses 2.2, 2.3, and 2.4 shall be divided between Composer and the new lyricist on terms and conditions to be mutually agreed upon between Composer, Owner, and the new lyricist.

2.5     Prior to the signing of this agreement, all performing and broadcast fees collected by ASCAP and any publishing royalties that will, in the future, be collected by ASCAP for prior licensing of the above listed music by sources other than Spider Cues/Labrador Entertainment, Inc. or it's sub-publishers and producers will be paid 100% to Michael Cohen.

3.   ACCOUNTING

3.1     Owner shall pay Composer any monies that may become due and payable to Composer under this Agreement within (30) days of receipt of royalties paid to Owner. Any late payment of such royalties due and owing shall, at Composer's option, be subject to a charge of interest at 10% fixed interest

MC

rate.  In the event that Owner is unable by reason of governmental restrictions to make payment to Composer in the U.S. in U.S. Dollars, Owner shall deposit to Composer's credit or account in a foreign depository selected by Composer and in Composer's name all sums payable to Composer hereunder and shall notify Composer of all relevant particulars of such deposit.  Owner's deposit of such funds in the foreign depository shall satisfy its obligations to Composer under this Paragraph 3.

3.2   For royalty accounting and all other purposes, any versions of the Composition(s) will be deemed to include each shortage or longer version or edited altered version of the Composition(s).

3.3   In the event that Owner's rights hereunder are sold or assigned to a third person or entity (as opposed to any existing partner of Owner), Composer or a certified public accountant on Composer's behalf shall be entitled to examine Owner's books of account, but only for the sole purpose of verifying the accuracy of any statements rendered and monies due hereunder to Composer upon thirty (30) days written notice, during Owner's normal business hours and in no event more than once annually. In no event shall Composer or a certified public accountant on Composer's behalf be entitled to examine Owner's books of account regarding any sums received by Owner that do not relate to Composition(s) which is the subject matter of this Agreement.  Composer shall be deemed to have consented to each royalty statement, and such statement shall become final and binding upon Composer sixty (60) days after the rendition thereof, unless Composer issues specific written objections to Owner within said sixty (60) day period.  In the event that objection is received in sixty (60) days, statement will be deemed accurate.

3.4   All payments hereunder shall be subject to any withholding taxes or other deductions, which Owner may be required to make by law or governmental regulation.  In the event Owner shall be obligated by the laws of the country in the Territory to deduct and withhold income or other like tax from advances and royalties payable to Composer hereunder.  Owner shall use its best efforts to assist Composer in obtaining a foreign tax certificate setting forth the amount of tax which shall have been withheld, and any other necessary information to assist Composer in obtaining income tax credits in the United States or reimbursements from such foreign taxing authority.

3.5   Owner shall not cross-collateralize any unrecouped amounts hereunder against any royalties due to Composer under any other agreement with Owner.

4.   **COMPOSER'S REPRESENTATIONS AND WARRANTIES**

4.1   Composer represents and warrants that the Composition(s) is his sole, exclusive and original work, and is capable of copyright protection by Owner throughout the Territory.

4.2   Composer represents and warrants that no adverse claims exist or will exist with respect to the Composition(s), and the Composition(s) does not infringe upon or violate the copyrights or any other rights whatsoever of any person, firm, or entity.

4.3   Composer represents that the performance of the Composition(s) is owned and/or paid for in full by the Composer and that the Composer holds Owner and it's associates harmless to any claim thereof.

4.4   Composer represents and warrants that Composer has the full and exclusive right and authority to enter into this Agreement and to make the grant of rights contained herein to Owner.

5.   **OWNER'S REPRESENTATIONS AND WARRANTIES**

Case 2:17-cv-06108-MWF-JPR   Document 195-1   Filed 06/17/21   Page 52 of 288   Page ID
#:4312
Case 2:17-cv-06108   Document 1-1   Filed 08/17/17   Page 8 of 16   Page ID #:21

5.1    Owner is now, and shall continue to be, engaged in the manufacture, sale, distribution, and exploitation of musical compositions throughout the Territory during the Term.

5.2    Owner shall use its reasonable efforts to promote the manufacture, sale, distribution and other exploitation of the Composition(s) throughout the Territory during the Term, and

5.3    Licensee shall be responsible for all marketing costs and expenses, as well as any and all costs in connection with the manufacture, distribution and sale of the Composition(s) hereunder.

6.    INDEMNIFICATION

6.1    Composer will indemnify and hold Owner and all entities associated with Owner, free, safe, and harmless from and against any and all losses, damages, actions, causes of action, expenses or liabilities, including, without limitation, reasonable attorney's fees and costs, whether incurred before or after the entry of judgment, resulting from or by reasons of any material breach of any representation or warranty made herein by Composer. Owner will indemnify and hold Composer free, safe and harmless from and against any and all losses, damages, actions, causes of action, expenses or liabilities, including, without limitation, reasonable attorney's fees and costs, whether incurred before or after the entry of judgment, resulting from or by reason of any material breach of any representation or warranty made herein by Owner, or any third party claims resulting from Owner's exercise of it's rights hereunder, including without limitation, the right to alter, change, adapt and translate the Composition(s), pursuant to the terms of this Agreement.

7.    ASSIGNMENTS

7.1    Owner and it's associates will have the right to assign this Agreement, in whole or in part, to any third party or to grant any licenses for the Composition(s) hereunder.  Composer will have the right to assign this Agreement, in whole or in part, or to assign Composer's right to receive his share of income in connection with the Composition(s).  This Agreement will inure to the benefit of, and be binding upon, each party's heirs, subsidiaries, affiliates, corporations, licensees, successors and assigns.

8.    HEADINGS

8.1    The headings to the paragraphs of this Agreement have been inserted for convenience of reference only and shall not be deemed a part of or to affect the construction or interpretation of any provision of this Agreement.

9.    SERVABILITY

9.1    If any part of this Agreement shall be determined to be void, invalid, or unenforceable by a court of competent jurisdiction or by any other legally constituted body having the jurisdiction to make such determination, it shall not affect the validity of the remaining terms and conditions of this Agreement, provided that the part of the Agreement thus voided, invalidated or declared unenforceable is not essential to the parties intended purpose of this Agreement.

10.    LEGAL ACTION

10.1    Any legal action brought, or any enforcement of Owner's rights undertaken by Owner or it's associates against any alleged infringer of the

Composition(s), will be initiated and prosecuted at the Owner's sole expense and discretion, including the right to settle any such action. However, in the event of any recovery or settlement received by Owner or it's associates from such action, Owner shall pay Composer his pro-rate share of the income received, less Owner's reasonable collection fees and costs in connection therewith. If requested by Owner, Composer will cooperate in the prosecution of any such action with Owner or it's associates, and if Composer incurs any reasonable costs or expenses in this regard, Owner shall reimburse Composer for such fees and costs out of any recovery or settlement received by Owner from such action.

10.2   If a claim is presented against Owner or it's associates in which it is asserted that the Composition(s) infringe upon or violate or interfere with the rights of any person, firm, or entity, Owner shall notify Composer of such claim in writing, and Composer may participate in the defense of such claim; however, Owner and it's associates shall have the right to control the defense and to settle or otherwise dispose of such claim or action in any reasonable business manner.

11.   REPRESENTATION BY COUNSEL

11.1   The parties hereto acknowledge that they have had the opportunity to be represented by legal counsel of their own choice throughout all negotiations which preceded the execution of this Agreement, and that they have executed this Agreement with the ability to and after consulting with legal counsel of their own choice.

12.   FORCE MAJEURE

12.1   Neither Owner and it's associates nor Composer shall be in material breach of this Agreement if the performance of any obligation hereunder is delayed and/or becomes impossible by reason of any act of God, war, earthquake, strike, sickness, accident, civil commotion, epidemic, act of government, and its agencies or officers, or any other cause beyond the reasonable control of the parties hereto. In the event that such force majeure event continues for more than six (6) months, either party may terminate the Term of this Agreement after written notice to the other party hereto.

13.   MISCELLANEOUS

13.1   If Owner fails to account for and make payments to Composer hereunder and such failure is not cured within (30) days after written notice thereof to Owner, or if Owner fails to perform any other obligations required of it hereunder and such failure is not cured within thirty (30) days after written notice thereof to Owner, or in the event that Owner shall file for protection under any bankruptcy laws or make an assignment for the benefit of creditors, or any insolvency proceeding shall be commenced against or by Owner, then and in any one or all of such events, this Agreement may, upon Composer's designation in writing, be terminated and Owner shall have no further rights of any kind whatsoever in and to the Composition hereunder. In any such event, Owner shall continue to account to Composer for royalties and/or other sums earned in respect of the Composition(s) prior to the date of such termination.

13.2   If Composer fails to perform any of Composer's obligations hereunder and such failure is not cured within thirty (30) days after written notice thereof to Composer, or in the event that Composer shall file for protection under any bankruptcy laws or make an assignment for the benefit of creditors, or any insolvency proceeding shall be commenced against or by Composer,

then and in any one or all such events, this Agreement may, upon Owner's designation in writing, be terminated.

13.3   All notices hereunder given by the parties hereto shall be in writing and shall be given by telex, facsimile, electronic mail or personal delivery to an officer or executive of the other or by addressing them as indicated below and by at the same time (as confirmation of the aforesaid methods of notice) or alternatively by depositing them, airmail, postage prepaid, registered mail, in the appropriate government mail system, or by delivering them, toll prepaid, to a telegraph or cable company and is so telexed, mailed, telegraphed, or cabled, shall be conclusively deemed to have been given seventy-two (72) hours after the date of mailing or twenty-four (24) hours after the date of telex, facsimile transmission, electronic mail or delivery to the telegraph or cable company.

13.4   This Agreement sets forth the entire understanding between Composer and Owner and cannot be changed, modified or canceled except by an instrument signed by the party sought to be charged. This Agreement shall be governed by and construed under the laws of the State of California, applicable to agreements made and to be wholly performed with the State of California. All actions, proceedings or litigation brought by either party hereto shall be instituted and prosecuted in the County of Los Angeles, State of California. Composer and Owner hereby assent to the jurisdiction of the federal and state courts having jurisdiction in the County of Los Angeles, State of California, with respect to any matter arising out of or related to this Agreement.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed as of the year and day first above written in Los Angeles, California.

By_____
Michael Cohen
("Composer")

Labrador Entertainment, Inc./Spider Cues

By_____
Noel Webb
It's Authorized Agent
("Owner")

## PROOF OF SERVICE

I, Dan Jacobson, declare as follows:

My address is 1352 Irvine Blvd., Suite 205, Tustin CA 92780, which is located in the county where the mailing described below took place (Orange County).

On October 25, 2019, I served the following documents described as:

Defendant Michael Cohen's

## AMENDED NOTICE OF DEPOSITION OF NOEL WEBB, AND REQUEST FOR PRODUCTION OF DOCUMENTS

on all interested parties in this action by placing a true and correct copy thereof in a sealed envelope, with USPS Priority Mail postage, and deposited said envelope in the United States mail at or in Tustin, CA, addressed to:

| | |
|---|---|
| Heather L. Blaise, Esq. | Carl Roth |
| Blaise & Nitschke, P.C. | Raena W. Ohiri |
| 123 North Wacker Drive | Browne George Ross LLP |
| Suite 250 | 2121 Avenue of the Stars, Suite 2800 |
| Chicago, Illinois 60606 | Los Angeles, CA 90067 |
| | |
| Attorneys for Plaintiff Beatbox Music Pty. Ltd | Attorneys for Defendant & Cross-Defendant Labrador Entertainment, Inc. |

I also e-mailed the above documents to the above-listed attorneys at hblaise@blaisenitschkelaw.com, rohiri@bgrfirm.com, & croth@bgrfirm.com.

I declare under the penalty of perjury of the laws of the United States that the foregoing is tr and correct.

Executed on October 25, 2019 at Tustin, CA.

_____
Dan Jacobson

1   Guy C. Nicholson (State Bar No. 106133)
       gnicholson@bgrfirm.com
2   Carl Alan Roth (State Bar No. 151517)
       croth@bgrfirm.com
3   Raena W. Ohiri (State Bar No. 315064)
4   rohiri@bgrfirm.com
    BROWNE GEORGE ROSS LLP
5   2121 Avenue of the Stars, Suite 2800
6   Los Angeles, California 90067
    Telephone: (310) 274-7100
7   Facsimile:  (310) 275-5697
8
    Attorneys for Defendant and Cross-
9   Defendant Labrador Entertainment, Inc.

10

11                   UNITED STATES DISTRICT COURT

12        CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

13

14   BEATBOX MUSIC, PTY, LTD.,              Case No. 2:17-cv-6108-MWF (JPRx)
                                            *The Hon. Michael W. Fitzgerald*
15              Plaintiff,
                                            **AMENDED NOTICE OF**
16         vs.                              **CONTINUED DEPOSITION OF**
                                            **PETER BAKER**
17   LABRADOR ENTERTAINMENT,
     INC., DBA SPIDER CUES MUSIC            Judge:  Hon. Michael W. Fitzgerald
18   LIBRARY, a California corporation,     Date:   December 4, 2019
                                            Time:   10:00 a.m.
19              Defendants.                 Place:  Browne George Ross LLP
                                                    2121 Avenue of the Stars, Suite
20                                                  2800
                                                    Los Angeles, CA 90067
21   MICHAEL COHEN, an individual,
22              Cross-Complainant,
                                            Trial Date:       March 19, 2019
23         vs.                              Cross-Claim Filed: November 21 2017
                                            Action Filed:     August 17, 2017
24   LABRADOR ENTERTAINMENT
     INC., D/B/A SPIDER CUES MUSIC
25   LIBRARY, a California Corporation,
26              Cross-Defendant.

27

28

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT, on December 4, 2019, starting at 10:00 a.m., at the law offices of Browne George Ross LLP, located at 2121 Avenue of the Stars, Suite 2800, Los Angeles, CA 90067, Defendant and Cross-Defendant Labrador Entertainment, Inc. will take the continued deposition of Peter Baker pursuant to Federal Rule of Civil Procedure 30.

PLEASE TAKE FURTHER NOTICE that the deposition will be taken upon oral examination before a certified court reporter and will continue from day to day, excluding Saturdays, Sundays and legal holidays, until completed.

PLEASE TAKE FURTHER NOTICE that pursuant to Federal Rule of Civil Procedure 30(b)(3), the deposition will be recorded stenographically and by videotape and the recording may be used in litigation, including at trial, to the extent permitted by law.  Moreover, the court reporter may use software that permits counsel to view an instant visual display of the rough transcript.

Dated:  October 25, 2019

BROWNE GEORGE ROSS LLP
Guy C. Nicholson
Carl Alan Roth
Raena Ohiri


By:  _____/s/ Raena Ohiri_____

Attorneys for Defendant and Cross-Defendant
Labrador Entertainment, Inc.

**PROOF OF SERVICE**

**USDC, CENTRAL DISTRICT, WESTERN DIVISION**
**Case No. 2:17-cv-6108-MWF (JPRx)**

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

At the time of service, I was over 18 years of age and not a party to this action. I am employed in the County of Los Angeles, State of California. My business address is 801 S. Figueroa Street, Suite 2000, Los Angeles, CA 90017.

On October 25, 2019, I served true copies of the following document(s) described as **AMENDED NOTICE OF CONTINUED DEPOSITION OF PETER BAKER** on the interested parties in this action as follows:

**SEE ATTACHED SERVICE LIST**

**BY MAIL:** I enclosed the document(s) in a sealed envelope or package addressed to the persons at the addresses listed in the Service List and placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with the practice of Browne George Ross LLP for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid. I am a resident or employed in the county where the mailing occurred. The envelope was placed in the mail at Los Angeles, California.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on October 25, 2019, at Los Angeles, California.

_____
Corinne Ubence

1

## SERVICE LIST

2

### USDC, CENTRAL DISTRICT, WESTERN DIVISION
### Case No. 2:17-cv-6108-MWF (JPRx)

3

4

| Heather Lea Blaise, Esq.<br>BLAISE AND NITSCHKE PC<br>123 North Wacker Drive, Suite 250<br>Chicago, IL 60606<br>hblaise@blaisenitschkelaw.com<br>Telephone: (312) 448-6602<br>Facsimile:  (312) 803-1940 | Counsel for Plaintiff<br>Beatbox Music Pty, Ltd. |
|---|---|
| Daniel Jacobson, Esq.<br>JACOBSON & ASSOCIATES<br>1352 Irvine Boulevard, Suite 205<br>Tustin, CA 92780<br>dlj@jacobsonlawyers.com<br>Telephone: (714) 505-4872<br>Facsimile:  (714) 730-5400 | Counsel for Defendant and Cross-Claimant<br>Michael Cohen |

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# GROUP
# EXHIBIT B

```
 1                UNITED STATES DISTRICT COURT

 2         CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

 3

 4    BEATBOX MUSIC, PTY, LTD.,          )

 5                     Plaintiff,        )

 6    vs.                                ) Case No.:

 7    LABRADOR ENTERTAINMENT, INC.,      ) 2:17-cv-6108-MWF (JPRx)

 8    DBA SPIDER CUES MUSIC LIBRARY,     )

 9    a California corporation,          )

10                     Defendants.       )
      _____  )
11    MICHAEL COHEN, an individual,      )

12                  Cross-Complainant,   )
      vs.                                )
13    LABRADOR ENTERTAINMENT, INC.,      )

14    D/B/A SPIDER CUES MUSIC            )

      LIBRARY, a California              )

15    Corporation,                       )

                      Cross-Defendant.   )
16    _____  )

                    DEPOSITION OF NOEL WEBB

17                    Tustin, California

18                Monday, December 2, 2019

19                        Volume I

20

21

22    REPORTED BY:

23    JENNIFER STANLEY

24    CSR NO. 13740

25    JOB NO. 3798262
```

                                                    Page 1

**Page 2**

```
 1        UNITED STATES DISTRICT COURT
 2    CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION
 3
 4   BEATBOX MUSIC, PTY, LTD.,    )
 5        Plaintiff,    ) Case No.:
     vs.                 )
 6   LABRADOR ENTERTAINMENT, INC.,   ) 2:17-cv-6108-MWF (JPRx)
 7   DBA SPIDER CUES MUSIC LIBRARY,  )
 8   a California corporation,    )
 9        Defendants.   )
     _____)
10   MICHAEL COHEN, an individual,  )
11      Cross-Complainant, )
     vs.                )
12   LABRADOR ENTERTAINMENT, INC.,  )
13   D/B/A SPIDER CUES MUSIC    )
14   LIBRARY, a California          )
15   Corporation,              )
16      Cross-Defendant.  )
     _____)
17
18
19      The deposition of NOEL WEBB, Volume I, taken on
20   behalf of the defendant/cross-complainant, at 1352 Irvine
21   Boulevard, Suite 205, Tustin, California, beginning at 11:27
22   a.m. and ending at 6:02 p.m. on Monday, December 2, 2019,
23   before JENNIFER STANLEY, Certified Shorthand Reporter No.
24   13740.
25
```

**Page 3**

```
 1   APPEARANCES:
 2
 3   For the Defendant and Cross-Defendant Labrador
 4   Entertainment, Inc.:
 5      BROWNE GEORGE ROSS LLP
 6      BY:  RAENA W. OHIRI
 7      Attorney at Law
 8      801 North Figueroa Street, Suite 2000
 9      Los Angeles, California 90017
10      213-725-9800
11      rohiri@bgrfirm.com
12
13   For the Defendant and Cross-Complainant Michael
14   Cohen:
15      JACOBSON & ASSOCIATES
16      BY:  DANIEL LEE JACOBSON
17      Attorney at Law
18      1352 Irvine Boulevard, Suite 205
19      Tustin, California 92780
20      714-505-4872
21
22
23
24
25
```

**Page 4**

```
 1   APPEARANCES CONTINUED:
 2
 3   For the Plaintiffs:
 4      BLAISE & NITSCHKE
 5      BY:  HEATHER L. BLAISE
 6      Attorney at Law
 7      123 N. Upper Wacker Drive, Suite 250
 8      Chicago, Illinois 60606
 9      323-637-3815
10      hblaise@blaisenitschkelaw.com
11
12   Also Present:
13   PETER BAKER
14   BARBARA BAKER
15   LANA NASSAR - BLAISE & NITSCHKE
16
17
18
19
20
21
22
23
24
25
```

**Page 5**

```
 1                   INDEX
 2              EXAMINATION
 3   Witness Name                        Page
 4   NOEL WEBB
 5      BY: MR. JACOBSON                  7, 68
 6      BY: MS. BLAISE                    64, 69
 7
                  EXHIBITS
 8   Exhibit   Description               Page
 9
10   Exhibit A   Amended Notice of Deposition.       9
11   Exhibit B   Amended Notice of Deposition.      10
12   Exhibit C   E-mail.                            20
13   Exhibit D   Tax Invoice Copy.                  21
14   Exhibit E   Tax Invoice Copy.                  23
15   Exhibit F   E-mail.                            25
16   Exhibit G   Composer's Agreement.             26
17   Exhibit H   Contract.                          46
18   Exhibit I   E-mail.                            56
19   Exhibit J   Labrador Entertainment Inc.'s Response.   59
20   Exhibit K   Complaint for Damages.            109
21   Exhibit L   Amended Answer to Complaint.      109
22   Exhibit M   Judgement.                        145
23   Exhibit N   Labrador Entertainment, Inc.'s Responses.  150
24   Exhibit O   E-mail.                           154
25
```

1      TUSTIN, CALIFORNIA, MONDAY, DECEMBER 2, 2019
2      11:27 a.m.
3
4           NOEL WEBB,
5  having been administered an oath, was examined and testified
6  as follows:
7
8           EXAMINATION
9
10 BY MR. JACOBSON:
11     Q   Could you please state your name and spell your last
12 name?
13     A   Noel Palmer Webb, Palmer is P-A-L-M-E-R, last name
14 is W-E-B-B.
15     Q   Thank you.  My name is Dan Jacobson, and I represent
16 Michael Cohen in this case.  Without going into -- into
17 details of what was said, have you had some time to talk to
18 your attorney about the deposition process?  Have you talked
19 to your attorney about the deposition process?
20     A   Somewhat, yeah.
21     Q   Okay.  Let me go through some things.  First of all,
22 if you ever need a break, if you ever need to speak with your
23 attorney, let me know and you can -- we'll find a room for
24 you or you can -- there's a bathroom and all -- we've got all
25 sorts of good facilities here.

Page 6

1      A   Good.  Thanks.
2      Q   When this is completed, this being our conversation,
3  it will be put into a notebook and the -- however we do it,
4  the attorney will decide if you'll have a chance to review or
5  not review what was in there.  And we may agree that she --
6  that you can make changes.  If you make changes, I can -- I
7  or another attorney in the case can comment on that and it
8  can look funny.  So try to do your best to tell the truth
9  today.
10     A   Okay.  Good.
11     Q   Have you taken any medication in the past 24 hours
12 that would affect your ability to tell the truth today?
13     A   No.
14     Q   Because there's a record, a written record of what
15 we are saying, verbatim written record that's being taken
16 down as I speak, it's important that only one of us speaks at
17 a time.  So you have to wait until I finish my question, and
18 I have to wait until you finish your answer.  And the reason
19 for that is just very simple logistical reason, the court
20 reporter can't take down two conversations at the same time.
21 We'd have to have two or three court reporters.  I was barely
22 able to rustle up this fine woman this morning.  So if you'll
23 do that, I'd appreciate it.  So with that, I'd just like to
24 get started.
25         I want to show you a document and ask -- and take

Page 7

1  your time, I want to know if you've seen this.  And I'm going
2  to give you that, give a copy to your lawyer, and give a copy
3  to Ms. Blaise, to the court reporter, and to me.
4          MS. BLAISE:  Are we marking this?
5          MR. JACOBSON:  Yes.
6          THE WITNESS:  Okay.
7  BY MR. JACOBSON:
8      Q   Have you seen this document before?
9      A   Yes.
10     Q   And we've already established that you are Noel
11 Webb.
12     A   Mm-hm.
13     Q   I would like to mark this document, which is the
14 amended notice of deposition of Noel Webb and request for
15 production of documents, as Exhibit A.
16         (Deposition Exhibit A marked for identification by
17          the court reporter.)
18         MR. JACOBSON:  Can we please go off the record for
19 just a moment?
20         (Break in deposition.)
21         (Discussion off the record.)
22 BY MR. JACOBSON:
23     Q   In what we've now marked as Exhibit A, there is a
24 request that you bring with you any documents, records or any
25 materials that relate to any Labrador obligation,

Page 8

1  parenthetical, S, parenthetical, Michael Cohen, pursuant to
2  that, quote, consumer agreement, quote, dated -- excuse me,
3  that's composer agreement, dated 02/14/08 and is attached as
4  Exhibit A, that at all relate to Eminem-Esque.  And
5  Eminem-Esque is in quotations, and it's spelled with small
6  letters, E-M-I-N-E-M, hyphen, E-S-Q-U-E.
7          Do you have any documents that you brought regarding
8  that?
9      A   No.
10     Q   Okay.  Does that mean that you don't have any
11 documents or -- and this may be a question for your attorney,
12 actually, whichever way you want to take it, any documents
13 regarding that or do you feel that they've all been produced
14 or --
15         MS. OHIRI:  Documents that were in Mr. Webb's
16 custody, control or possession have already been produced.
17         MR. JACOBSON:  Thank you very much.  I'm going to
18 move on to what we'll mark as Exhibit B.  And I'll give you a
19 copy of that, your attorney the same, Ms. Blaise the same, a
20 copy to the court reporter, and a copy for me.
21         (Deposition Exhibit B marked for identification by
22          the court reporter.)
23 BY MR. JACOBSON:
24     Q   And take your time and look at that and let me know
25 if you know what that is.

Page 9

3 (Pages 6 - 9)

1   A   What is the second half of it?
2   Q   Exhibit B?
3   A   Exhibit B.
4   Q   Exhibit B to Exhibit B appears to be a cross
5   claimant Michael Cohen's request for production to
6   cross-defendant Labrador Entertainment, Inc.
7   A   Is this the production -- request for production of
8   documents or is it interrogating questions?
9   Q   It's a request for production of documents.
10  A   Okay.  Thank you.
11  Q   Have you seen this --
12  A   Yes.
13  Q   And are you, in fact, the person most knowledgeable
14  from Labrador Entertainment, Inc. about any Labrador
15  obligation, parenthetical, S, parenthetical, Michael Cohen,
16  pursuant to that, quote, composer agreement, unquote, dated
17  02/14/08, and as attached -- and attached hereto as Exhibit A
18  that at all relate to, quote, Eminem-Esque, unquote.  Are you
19  that person?
20  A   Where did you get the date that you just referred
21  to?
22  Q   From the composer agreement.
23  A   Would you repeat the date again?
24  Q   02/14/08.
25  A   Okay.  Thank you.  Yes, I am.

Page 10

1   Q   Okay.  Great.  And again, I think this is probably a
2   question for your counsel, the request for production of
3   documents that's attached hereto, has everything been
4   produced?
5       MS. OHIRI:  Yes, to the extent that it was in his
6   possession, custody and control, those documents have been
7   produced.
8       MR. JACOBSON:  Thank you.
9   BY MR. JACOBSON:
10  Q   Do you understand that we're deposing you today, at
11  this event today, both as your -- in your capacity as Noel
12  Webb and in the capacity as the person most knowledgeable for
13  those things that I just stated?
14  A   No.  What do you mean by that?
15  Q   Well, the -- you're certainly here as Noel Webb, do
16  you understand that?
17  A   Okay.  Yeah.
18  Q   But you're also here as Labrador Entertainment,
19  Inc.?
20  A   Yes.
21  Q   And the person most knowledgeable about those things
22  that I just said; is that right?
23  A   Right.  I'm not sure what you mean -- I know it
24  might be a ridiculous question, I'm here as Noel Webb, I'm
25  here as Labrador Entertainment's person most knowledgeable

Page 11

1   Q   Thank you.
2   A   Okay.  Good.
3   Q   What is Labrador Entertainment, Inc.?
4   A   It's a corporation that has d/b/as that facilitate
5   music in the music production industry.
6   Q   Is it fair to say that Labrador is a music
7   library?
8   A   No.
9   Q   How would you describe the business of Labrador?
10  A   Labrador Entertainment, Inc. has d/b/as that are --
11  that are music libraries.
12  Q   I see.  And Labrador controls all of those music
13  libraries; is that correct?
14  A   Yes.
15  Q   Just so that -- for your information, when I refer
16  to Labrador in general as we speak today, I'm referring to
17  the d/b/as also.
18  A   Got it.  Oh, okay.
19  Q   What is a music -- well, do you know what a music
20  library is?
21  A   Yes.
22  Q   What is a music library?
23  A   It's a entity that is defined by an Excel file that
24  delineates what is in -- different pieces, music pieces in
25  it, and that music library solicits or markets its music to

Page 12

1   end users or producers or it offers it to sub-publishers or
2   agents to do the same.
3   Q   What's a sub-publisher?  Do you know what a
4   sub-publisher is?
5       MS. BLAISE:  Hold on.  Off the record for a second.
6       (Break in deposition.)
7       (Discussion off the record.)
8   BY MR. JACOBSON:
9   Q   So do you know what a music library is?
10  A   Yes, I just answered that, yeah.
11  Q   And what is a music library?
12  A   Didn't I just answer that?
13  A   Oh, yeah.  So excuse me, it's been -- I worked an
14  Thanksgiving, on Thanksgiving weekend, but so did your
15  counsel, and I explained to her that she's going to have to
16  continue to do that for the next 30 years.
17      So that's -- in any case, do you know who Pete baker
18  is?
19  A   Yes.
20  Q   And who is Peter Baker?
21  A   Peter Baker is either the owner or co-owner of
22  Beatbox Music, which is a sub-publisher of mine, representing
23  territories in Australia, New Zealand.
24  Q   Do you know what a sub-publisher is?
25  A   Yes.

Page 13

4 (Pages 10 - 13)

| | |
|---|---|
| 1   Q   What is a sub-publisher? | 1      MS. OHIRI:  Same objection. |
| 2   A   A sub-publisher really investigates -- a | 2      THE WITNESS:  Yeah, I don't know. |
| 3   sub-publisher represents a publisher in territories that's | 3   BY MR. JACOBSON: |
| 4   designated. | 4      Q   Okay.  What does ASCAP do with the money that it |
| 5   Q   Thank you.  Is it correct to say that Labrador is in | 5   collects, if you know? |
| 6   the music industry? | 6      A   I think -- |
| 7   A   Yes. | 7      MS. OHIRI:  Wait, he didn't instruct earlier, but I |
| 8   Q   How long -- and how long have you been associated | 8   don't want you to speculate or guess. |
| 9   with Labrador? | 9      THE WITNESS:  Okay.  I don't know. |
| 10   A   I think 19 years. | 10      MR. JACOBSON:  Yeah, I should probably do that. |
| 11   Q   Were you -- and for all that time, Labrador was in | 11   BY MR. JACOBSON: |
| 12   the music industry? | 12      Q   Let me explain something.  We're certainly not |
| 13   A   Yes. | 13   entitled to your guess, your speculation, we are entitled to |
| 14   Q   Were you, yourself, in the music industry before | 14   your knowledge and to your best estimate.  And the -- the |
| 15   that? | 15   difference between a guess and an estimate is that for a |
| 16   A   Yes. | 16   guess, you have no factual under opinion; for an estimate, |
| 17   Q   What capacity were you in the music industry before | 17   you do.  The example that lawyers often give is this, if I |
| 18   that? | 18   were to ask you to estimate the length of the table in this |
| 19   A   I'm a violinist and I performed, and I was a | 19   conference room, you could -- you could probably do that |
| 20   composer. | 20   without getting out a ruler because you can see it, you have |
| 21   Q   Do you know what in the music industry is a cue, | 21   some factual under opinion for your answer; if I were to ask |
| 22   C-U-E? | 22   you to -- to estimate the length of the table in my dining |
| 23   A   Yes. | 23   room, you couldn't do that, because you've never been in my |
| 24   Q   What is a cue? | 24   dining room.  So that's the difference. |
| 25   A   It's a general term that refers to a music piece. | 25      With that having been said, do you have an estimate |
| Page 14 | Page 16 |

| | |
|---|---|
| 1   Q   Is a song an example of a cue? | 1   of what ASCAP does with the money that it collects? |
| 2   A   Yes. | 2      A   Yes. |
| 3   Q   Is a composition of sample -- an example of a music | 3      Q   And what is that? |
| 4   cue? | 4      A   It keeps some of it for its own profit, some of it, |
| 5   A   Yes. | 5   a percentage, and it distributes the rest to publishers and |
| 6   Q   In the music industry, my understanding is that | 6   composers. |
| 7   ASCAP is prominent in the United States; am I correct? | 7      Q   Okay.  Are you familiar with an organization called |
| 8   A   Prominent? | 8   AMCOS New Zealand?  A-M-C-O-S, all caps. |
| 9   Q   Yes. | 9      A   Familiar, yes. |
| 10   A   I don't know what that means. | 10      Q   Is it sort of the -- does it do sort of the same |
| 11   Q   Do you know what ASCAP is? | 11   thing as ASCAP does in the United States, but for broadcasts |
| 12   A   Yes. | 12   that are done in New Zealand? |
| 13   Q   What is ASCAP? | 13      A   My best estimate about this is that it does some |
| 14   A   ASCAP is a performance rights organization who | 14   of that, it's the same organization, and I don't know who |
| 15   collects -- debt collects monies from producers when they | 15   runs that, I have no idea. |
| 16   utilize a broadcasting -- when they utilize music for an art | 16      Q   I understand that there's an organization called |
| 17   project. | 17   AMCOS, spelled the same way, Australia, would your answer be |
| 18   Q   And does ASCAP limit its -- its jurisdiction to | 18   the same for AMCOS Australia? |
| 19   certain territory, for instance, the United States? | 19      A   Did you just ask about AMCOS, another AMCOS? |
| 20      MS. OHIRI:  Objection.  Form.  Vague. | 20      Q   AMCOS New Zealand. |
| 21   BY MR. JACOBSON: | 21      A   Oh, I'm so sorry.  It's the same answer. |
| 22   Q   You can answer, if you can. | 22      Q   It's the same answer for both New Zealand and |
| 23   A   What do you mean by limit? | 23   Australia? |
| 24   Q   Does ASCAP only work, to which you described, in a | 24      A   Yes. |
| 25   certain territory, like the United States? | 25      Q   Okay.  Thank you very much.  When we see the |
| Page 15 | Page 17 |

5 (Pages 14 - 17)

1  initials capital P, capital R, capital O in relation to its
2  industry in which you are engaged, what does that mean?
3  A   Performance Rights Organization.
4  Q   Like ASCAP; correct?
5  A   Like ASCAP.
6  Q   Thank you.  Are you familiar with an organization
7  called Music Box MX?
8  A   Mm-hm.
9  Q   Is that a --
10  A   Yes.
11  Q   Oh, another thing, I keep --
12  A   Sorry.
13  Q   Your attorney probably told you this, try to say yes
14  or no.
15  A   Yes.
16  Q   And I'm not being, as -- I'm not being a school mom
17  if I say, now, is that a yes, I'm just trying to keep the
18  record straight.  So what is Music Box?
19  A   Music Box is a sub-publisher in the United States,
20  and perhaps elsewhere, but I'm not sure.
21  Q   Do you have a relationship with Music Box?
22  A   No.
23  Q   I'm sorry, I should be careful about this, is it
24  correct to say that neither you as Mr. Webb or you as
25  Labrador have no relationship with Music Box?

Page 18

1  MS. OHIRI:  Objection.  Form.  Compound.
2  THE WITNESS:  I don't know how to answer that.
3  BY MR. JACOBSON:
4  Q   Do you personally have a -- you personally as
5  Mr. Webb have a relationship with Music Box?
6  A   No.
7  Q   Does Labrador have a relationship with Music Box?
8  A   No.
9  Q   Thank you.  I'm going to mark something as Exhibit
10  C.  It is an e-mail from Noel Webb to Peter at -- yeah, at
11  beatboxmusic.com.  And I'll give you a copy.  It's very
12  short.  And I'll pass around copies to the usual suspects.
13  (Deposition Exhibit C marked for identification by
14  the court reporter.)
15  BY MR. JACOBSON:
16  Q   Does Exhibit C have anything to do with
17  Eminem-Esque?
18  A   I don't know.
19  Q   Okay.  Are you familiar with a composition called
20  Eminem-Esque?
21  A   Yes.
22  Q   Was that written by Michael Cohen, my client?
23  A   Yes.
24  Q   So the next document I'm going to hand is a one-page
25  document that appears to be on AMCOS stationary and it says,

Page 19

1  tax invoice copy.  If I could just take a look at that, and
2  let me hand this out to your lawyer, Ms. Blaise, to the court
3  reporter.
4  (Deposition Exhibit D marked for identification by
5  the court reporter.)
6  MS. BLAISE:  This is going to be Exhibit D?
7  MR. JACOBSON:  D, yes.  D, please.
8  BY MR. JACOBSON:
9  Q   Have you ever seen this before?
10  A   Yes.
11  Q   And what is it?
12  A   I think it's a license agreement between AMCOS and
13  the National Party, New Zealand.
14  Q   I see.  There are monies referenced -- it appears
15  that there are monies referenced because it says fees,
16  nontaxable wealth, which is zero, then it says fees, taxable,
17  and it has numbers down there.
18  Do you know if those are Australian dollars,
19  American dollars, New Zealand dollars?
20  A   No.
21  Q   Do you know if it, in fact, is money that's
22  referenced in the second to the last column or estimate that
23  it is?
24  A   Yes.
25  Q   So it looks like, if we look horizontally from

Page 20

1  170.00, whatever monetary value that is, it appears that it's
2  the fee for the license fee, do you see that?
3  A   I see it.
4  Q   And then under that, it says, processing fee, and
5  that's 11.00 and whatever monetary value we're using here, do
6  you see that?
7  A   Yes.
8  Q   And do you know what licensing fee is referenced?
9  Is this the fee, for instance, charged by AMCOS to the
10  National Party, do you know what it references?
11  A   No, I don't.
12  Q   All right.  Did Labrador get any of the money that's
13  referenced in Exhibit D?
14  A   I don't know.
15  Q   Okay.  The next document is three pages, but -- and
16  take your time and take a look at that, it also appears to be
17  on AMCOS stationary.  And also says, tax invoice copy, but it
18  specifically does reference what you've described as a song,
19  Eminem-Esque, written by Mr. Cohen.
20  A   Can I ask my attorney something?
21  Q   Yeah.
22  A   It doesn't need to be --
23  Q   Yeah.  We can just go off the record, or if you'd
24  like to step outside.
25  MS. OHIRI:  Let's go off the record.

Page 21

6 (Pages 18 - 21)

| | |
|---|---|
| 1    (Break in deposition.) | 1   it as Exhibit F. |
| 2    (Discussion off the record.) | 2       (Deposition Exhibit F marked for identification by |
| 3    MR. JACOBSON:  I'm marking this document as Exhibit | 3        the court reporter.) |
| 4   E.  Off the record. | 4   BY MR. JACOBSON: |
| 5    (Deposition Exhibit E marked for identification by | 5    Q   Take your time.  That's an e-mail -- well, it's an |
| 6     the court reporter.) | 6   e-mail string and the first one -- excuse me, the way these |
| 7    (Break in deposition.) | 7   things go, the last one, I guess, the one on the top of the |
| 8    (Discussion off the record.) | 8   exhibit, which is a five-page exhibit.  I'm sorry, a |
| 9    THE WITNESS:  I wanted to clarify you, when you have | 9   three-page exhibit.  Are you familiar with this string? |
| 10  continued to use the definition of a cue as being a song, | 10  It's -- the top -- the top e-mail on the first page of the |
| 11  when it's other things besides a song. | 11  exhibit is from Peter Baker, re: new music Spider Cues, and |
| 12  BY MR. JACOBSON: | 12  it says, hi, Noel. |
| 13   Q   Oh, what else is it? | 13       Are you familiar with that? |
| 14   A   It's something less than a song, it's simply just a | 14    A   Yes. |
| 15  reference to a piece of music that can be anything. | 15    Q   Are you -- did you receive the -- this -- this |
| 16   Q   I see.  But it could be a song also? | 16  e-mail that I just described? |
| 17   A   Yes, it could, yes, it could. | 17    A   Yes. |
| 18   Q   So -- and Eminem-Esque is a song; is that correct? | 18    Q   My reason for bringing this up is on the second page |
| 19   A   In my opinion, no. | 19  of the exhibit under 5C, it says, each cue needs |
| 20   Q   What is Eminem-Esque, in -- as you would describe it | 20  alternatives, and alternatives is in quotes. |
| 21  in a category, like song or -- | 21       Do you see that? |
| 22   A   I think I'd like to correct myself, it could be a | 22    A   Yes. |
| 23  song, I don't know. | 23    Q   All right.  So my question is, very simple, did |
| 24   Q   Can you think of any other category similar to song | 24  Eminem-Esque, as provided by Mr. Cohen, have any |
| 25  that you would call it? | 25  alternatives? |
| Page 22 | Page 24 |

| | |
|---|---|
| 1    A   That's why the word cue is used just to refer it to | 1    A   No. |
| 2   a piece of music, that it's anything that you want it to | 2    Q   Thank you. |
| 3   be. | 3    MS. BLAISE:  Do you mean -- the word is alternates, |
| 4    Q   So if we could, then, look at Exhibit E, and again, | 4   not alternatives. |
| 5   there appears to be a licensing fee and a processing fee | 5    MR. JACOBSON:  Excuse me, when one learns to read |
| 6   referenced or more than one, many, several, did Labrador get | 6   the English language, as Ms. Blaise has, alternates as |
| 7   any of this money? | 7   opposed to alternatives. |
| 8    A   I don't know. | 8   BY MR. JACOBSON: |
| 9    Q   Did Mr. Cohen get any of this money? | 9    Q   So with that correction, is your answer the same? |
| 10   A   I don't know. | 10   A   Yes. |
| 11   Q   Can you tell from this Exhibit E who was charged | 11   Q   In my household, we speak English, Vietnamese, and |
| 12  this money? | 12  a bit of Yiddish.  So we sometimes get a little confused.  He |
| 13   A   To the best of my knowledge, it's the National Party | 13  says very defensively.  Off the record. |
| 14  of New Zealand. | 14    (Break in deposition.) |
| 15   Q   And to the best of your knowledge, would the charged | 15    (Discussion off the record.) |
| 16  party be charged by AMCOS? | 16    (Ms. Nassar entered deposition proceedings.) |
| 17   A   Yes.  Now I'm seeing on the top left, a Sales Street | 17    MR. JACOBSON:  Now, this next document, I'm going to |
| 18  Studios, which may very well be the recipient or the | 18  count the pages, excuse me for just a moment.  It's 10 pages, |
| 19  negotiator, the person that I was talking with. | 19  and it is entitled, Composer's Agreement.  It has stamped on |
| 20   Q   And Sales Street may have -- | 20  it Exhibit A, but that's from some bygone -- for some bygone |
| 21   A   Facilitated. | 21  reason that doesn't appear to be part of the original of |
| 22   Q   -- facilitated, and may have gotten some of this | 22  this.  Take your time and take a look at that, and I'll ask |
| 23  money; correct? | 23  you some specific questions about it for which I'll give you |
| 24   A   I have no idea.  I don't know. | 24  of course as much time as you need. |
| 25   Q   Okay.  I'll give you another piece of paper and mark | 25    (Deposition Exhibit G marked for identification by |
| Page 23 | Page 25 |

Veritext Legal Solutions
866 299-5127

**Page 26**

1        the court reporter.)
2   BY MR. JACOBSON:
3      Q   All right.  Do you recognize this document?
4      A   Yes.
5      Q   And what is this document in your understanding?
6      A   This is a contract between Labrador Entertainment
7   and Michael Cohen.
8      Q   It says that it was entered into on February 14,
9   2008, does that comport with your general understanding?
10     A   Yes.
11     Q   Each of these pages has, in handwriting, MC, and
12  then there's a mark underneath that.  Is the mark underneath
13  that yours?
14     A   Yes.
15     Q   And why did you mark that?
16     A   So that each page has its initials and then
17  approved.
18     Q   Was it a sign of a sent to or to -- what's on each
19  page?
20        MS. OHIRI:  Objection.  Mischaracterizes earlier
21  testimony.
22        THE WITNESS:  I think --
23  BY MR. JACOBSON:
24     Q   Why did you make the mark?
25     A   I think it says that that was viewed by the

**Page 27**

1   individuals who initialed it.
2      Q   Thank you.  What does it say, by the way, it looks
3   like a Z?
4      A   It's an NW, supposedly.
5      Q   When I write -- when I sign my name, in my view, I'm
6   writing Dan Jacobson, and no one but me would know that.  So
7   I understand.  Please look at page -- I'm not sure what page
8   it is because it's not -- the pages aren't numbered, but it's
9   about five or so.  Anyway, it's paragraph one, assigning.  Do
10  you see that?
11     A   Yes, I do.
12     Q   All right.  If you could, please read that to
13  yourself with -- and I'm going to ask you about 1.1E.  And
14  take your time.
15     A   Okay.
16     Q   Would you agree that A through E are enumerated
17  rights that this agreement allows to be assigned?
18        MS. BLAISE:  Objection.
19        MS. OHIRI:  Objection.  Calls for a legal
20  conclusion.
21        MS. BLAISE:  Same objection.
22  BY MR. JACOBSON:
23     Q   If you can --
24     A   I don't know what enumerate means.
25     Q   Okay.  What are A through E, what do they describe,

**Page 28**

1   in your mind, in your understanding?
2        MS. OHIRI:  Objection.  Compound.
3        MS. BLAISE:  Same objection.
4        THE WITNESS:  Partial --
5   BY MR. JACOBSON:
6      Q   If they describe any particular category.  So let me
7   start over.  If A through E, in your mind, describe any
8   particular category, what is that category?
9        MS. OHIRI:  Objection.  Form.  Vague.
10        MS. BLAISE:  Objection.  Compound question.  Same
11  objection.
12        MS. OHIRI:  Could we possibly break it up?
13        THE WITNESS:  Hold on.  A partial description of
14  rights.
15  BY MR. JACOBSON:
16     Q   Thank you.  You said partial, can you say -- do you
17  know what the other part of rights are, is?
18        MS. OHIRI:  Objection.  Form.  Vague.
19        MR. JACOBSON:  Well, that's a good point.
20  BY MR. JACOBSON:
21     Q   Why do you say partial?
22     A   Because there are other statements in the contract
23  that may qualify those particular sentences.
24     Q   Thank you.  So now I'm going to do what I said I was
25  going to do before, and that's talk about 1E -- or 1.1E.  And

**Page 29**

1   I'll start with 1.1, which says, composer -- by the way, when
2   we refer to composer, when you refer to -- when the -- when
3   this document refers to composer, is that Michael Cohen?
4      A   Yes.
5      Q   And when the document refers to owner, is that
6   Labrador?
7      A   Yes.
8      Q   Okay.  Composer hereby grants to owner and its
9   assigns -- by the way, would a sub-publisher be an
10  assigned?
11     A   Yes.
12     Q   Exclusive worldwide rights, title and interest
13  throughout the world.  And then in parenthesis, it says,
14  quote, territory, unquote.  And -- in and to the composition,
15  parenthetical, S, parenthetical, parenthetical, except
16  copyright, parenthetical, in perpetuity, period.  Owner's
17  rights will include, but will not be limited to, colon.  And
18  then if we go down to E, it says, the right to alter, expand,
19  adapt, and translate the -- I believe the next word is
20  misspelled, but I believe it's composition, and then with an
21  S at the end in parenthesis, is that correct --
22     A   Yes.
23     Q   That word is composition?
24     A   Yes.
25     Q   In consultation with composer.  So let me repeat

1 that without the explanations of the punctuation. Composer
2 hereby grants to owner and its assigns exclusive worldwide
3 rights, title and interest throughout the world, territory,
4 in and to the composition, except copyright in perpetuity.
5 Owner's rights will include but not be limited to, E, the
6 right to alter, expand, adapt, and translate the compositions
7 in consultation with composer.
8      Did Labrador alter or adapt Eminem-Esque?
9   A   No.
10   Q   By the way, is Eminem-Esque covered by this
11 exhibit?
12      MS. OHIRI: Objection. Form. Vague.
13      THE WITNESS: What do you mean by covered?
14      MR. JACOBSON: That's a good point, by both of
15 you.
16 BY MR. JACOBSON:
17   Q   Is Eminem-Esque listed in the first few pages of
18 Exhibit G?
19   A   Yes.
20   Q   And what does -- what is the significance of having
21 a cue listed in the beginning pages of Exhibit G?
22   A   So that it can be -- so the list can be copied into
23 an Excel file to be part of the definition of a music
24 library, in this case Spider Cues, and to the best of what
25 one can do, had a name and a duration, how long it is.

Page 30

1   Q   Is it correct that the terms of Exhibit G govern
2 the -- what Labrador is allowed to do with the cues that are
3 listed in the first few pages of Exhibit G?
4      MS. OHIRI: I'm going to object to the form as
5 vague.
6      THE WITNESS: I don't know that it encompasses all
7 the rights.
8 BY MR. JACOBSON:
9   Q   But the rights that are in there, the terms that are
10 in there, do govern those cues that are listed; is that
11 correct?
12      MS. OHIRI: Objection to the term there. Can you
13 clarify?
14      THE WITNESS: I don't know what govern means. Is
15 govern totality or is govern some aspect of it?
16 BY MR. JACOBSON:
17   Q   Some aspect of it.
18   A   Ask the question again, then.
19   Q   So with that understanding of govern, does the
20 listing of a cue in the first few pages of Exhibit G mean
21 that such cue is covered by the terms of Exhibit G?
22   A   Yes.
23   Q   And now I'm going to go back to 1.1E. Do you want
24 to read it again or do you want me to read it again?
25   A   No, thank you.

Page 31

1   Q   Okay. Did Labrador alter or adapt Eminem-Esque?
2   A   No.
3   Q   Did Labrador inform its assigns that it had the
4 right as stated in 1.1E that the -- that Labrador had the
5 right to make the assignment as stated under the right, under
6 the term, that's in 1.1E?
7      MS. BLAISE: Objection. Form. Vague.
8      MS. OHIRI: Same objection.
9      THE WITNESS: I don't understand what you're
10 asking.
11 BY MR. JACOBSON:
12   Q   Did Labrador inform any of its assigns of the
13 language or the meaning of 1.1E?
14   A   What do you mean by inform?
15   Q   E-mail, somehow communicate, talk, somehow
16 communicate?
17   A   Would inform also be -- is your meaning also that
18 with a standard contract between a publisher and a
19 sub-publisher or a library and a sub-publisher?
20      MS. OHIRI: Wait, if you don't understand the
21 question, ask him to rephrase it.
22      THE WITNESS: Yeah, I don't understand the
23 question.
24 BY MR. JACOBSON:
25   Q   So let me start with the basic question and then

Page 32

1 move on. Did Labrador inform any of its assigns to whom it
2 assigned the rights pursuant to Exhibit G of the language or
3 the meaning of 1.1E? With that having been said, would you
4 like me to explain what I mean by inform?
5   A   Yes.
6   Q   Somehow communicate, whether it be to give the
7 assign Exhibit G or to verbally, orally state the -- the
8 language or the meaning of 1.1E or to write it in a letter or
9 to write it in an e-mail, a text, somehow communicate?
10   A   Sometimes you can communicate a right or not having
11 a right by not stating it.
12   Q   Did that happen here?
13   A   What I just said?
14   Q   Yes.
15   A   Yes.
16   Q   And how did that happen?
17   A   A --
18   Q   I'm sorry, I apologize, how did that happen
19 specifically -- was Beatbox one of the assigns?
20   A   Yes.
21   Q   How did that happen specifically with Beatbox?
22      MS. BLAISE: Objection as to form. It's ambiguous.
23 I don't even know what you're asking.
24      MS. OHIRI: Same objection.
25 BY MR. JACOBSON:

Page 33

9 (Pages 30 - 33)

| | Page 34 | | Page 36 |
|---|---|---|---|

1    Q    Whatever you said, was that done with Beatbox?
2    A    Yes.
3    Q    How was that done?
4    A    I did not give the right to Beatbox to alter,
5  expand, adapt, and transmit the composition -- to -- with my
6  best knowledge of what those words mean.
7    Q    Do you base that on your 2009 contract with --
8  excuse me, does -- when you say you, you mean Labrador; is
9  that correct?
10    A    Yes.
11    Q    Does Labrador base that non-giving of a right on its
12  2009 contract with Beatbox?
13    A    Yes.
14    Q    Thank you.
15    A    Can I ask you a question?
16       MS. OHIRI:  Can we go off the record for a minute?
17       MR. JACOBSON:  Yeah.
18       MS. OHIRI:  Sorry.  I need a restroom break.
19       (Break in deposition.)
20       (Discussion off the record.)
21  BY MR. JACOBSON:
22    Q    Mr. Webb, again referring to Exhibit G, under
23  paragraph two, payments, could you generally describe what
24  your understanding of what percentage of -- well, of what
25  Mr. Cohen would get paid for the publication of

Page 34

1  mentioned in 1.1E assigned to Beatbox in any or non-assigned
2  to Beatbox in anything other than the 2009 Labrador, Beatbox
3  contract?
4       MS. BLAISE:  Objection.
5       MS. OHIRI:  Objection.  Form.  Compound.  Vague.
6       MS. BLAISE:  Legal conclusion.  Not established in
7  the testimony.
8  BY MR. JACOBSON:
9    Q    To your knowledge.
10    A    Yes.
11    Q    And what was that or what were those things?
12    A    What I would call the standard of the industry.
13    Q    And you've been in this industry for decades; is
14  that correct?
15    A    I wouldn't say decades, but I've been in the
16  industry for a while.
17    Q    Certainly Beatbox has been around for about 19
18  years; is that right?
19       MS. BLAISE:  Objection.  Foundation.
20       THE WITNESS:  Did you mean Labrador?
21  BY MR. JACOBSON:
22    Q    I'm sorry, Labrador.
23    A    Yes.
24    Q    And you have been associated with Labrador for that
25  long; is that right?

Page 36

1  Eminem-Esque?
2    A    I want to go back to the previous question.
3    Q    Please.
4    A    You said something -- some design of a sentence
5  about the Beatbox contract, and you used a word for -- it
6  wasn't govern, but something else, sometimes you ask me
7  things that are -- can be all encompassing or partial, and
8  I'm not sure how to answer that.
9    Q    So do you need to restate your answer?
10    A    What was the question, though?
11    Q    Was it the last question?
12    A    You said something like, if I may, are you referring
13  to the contract between Labrador and Beatbox as governing,
14  you didn't use the word governing, but governing what your
15  answer is and --
16       MS. OHIRI:  Can we just have the court reporter read
17  back the question, maybe?
18       MR. JACOBSON:  I think that would be great.
19       (Record read.)
20       THE WITNESS:  That's the question.  So whether it's
21  solely or not solely, the answer is yes, but it could be
22  based on other things as well.  That's all.
23       MR. JACOBSON:  Thank you.
24  BY MR. JACOBSON:
25    Q    Was it in -- was the non-assignment of the right

Page 35

1    A    Yes.
2    Q    All right.  To which standard in the industry are
3  you referring?
4    A    First, that a sub-publisher or an agent cannot have
5  any rights unless they are given to them explicitly.  And
6  second, that all, unless otherwise stated, all reference to a
7  cue is the totality of a cue without losing its integrity,
8  that's the standard of the industry.
9    Q    Okay.  Starting with the first of these standards
10  that you mentioned, when you say explicitly, does it have to
11  be in writing?
12    A    Does what have to be in writing?  What I just
13  explained?
14    Q    The giving of a right.
15       MS. OHIRI:  I'm going to object, that calls for a
16  legal conclusion.
17  BY MR. JACOBSON:
18    Q    I'm asking about the -- I'm asking for an
19  explanation under the standard in the industry.
20    A    Oh, the standard of the industry is an understanding
21  of an industry, the history of those actions, and then
22  actions within that industry.
23    Q    And the history or understanding within the music
24  industry regarding the giving of a right or the assigning of
25  a right explicitly, does explicitly mean that it has to be in

Page 37

10 (Pages 34 - 37)

1 writing?

2   A   I don't understand the question.

3   Q   I guess my question is, in your answer, you used the
4 word explicitly, what do you mean by the word explicitly?

5   A   That a right can only be had by -- a right cannot be
6 assumed, unless it's a standard of the industry.

7   Q   In order for it to be properly assigned, under the
8 standard of the industry, does it have to be assigned in
9 writing?  I don't mean to give legal advice, but I don't know
10 is a perfectly fine answer.

11   A   Yeah, that's what I'm going to say is I don't know.
12 Thank you.

13   Q   And under the standard of the industry, if a right
14 is to be assigned, can it be assigned orally?

15       MS. BLAISE:  Objection.  Calls for a legal
16 conclusion.  It's also very ambiguous as to the term assigned
17 and how it's being used here.  It is a term of art, and there
18 should be some clarification before.

19       MS. OHIRI:  Same objection.

20 BY MR. JACOBSON:

21   Q   If you can answer.

22   A   What was the question, then?

23   Q   So under the standard of the industry, the -- can a
24 right be assigned orally?  And I assume the same objections?

25       MS. BLAISE:  Same objections and form and

1 ambiguity.

2       MS. OHIRI:  Same objections.

3       THE WITNESS:  I think it depends on the form of the
4 territory, doesn't it?

5       MS. OHIRI:  Don't speculate or guess.

6       THE WITNESS:  Then I don't know.

7 BY MR. JACOBSON:

8   Q   Does it depend on the form or the territory?

9   A   I don't know.

10   Q   Is there any difference in this type of standard of
11 the industry between Australia and other parts of the
12 world?

13       MS. OHIRI:  Objection.  Calls for a legal
14 conclusion.

15       MR. JACOBSON:  To your knowledge.

16       THE WITNESS:  With reference to what?

17 BY MR. JACOBSON:

18   Q   The -- the method of assignment and the
19 appropriateness of that method.

20       MS. OHIRI:  Objection.

21       MR. JACOBSON:  And under the standard of the
22 industry.

23       MS. OHIRI:  Objection.  Calls for a legal
24 conclusion.  Calls for an expert opinion.

25       THE WITNESS:  I don't know.

1 BY MR. JACOBSON:

2   Q   Okay.  Same question as to the United States.

3       MS. OHIRI:  Same objection.

4       MS. BLAISE:  Join that objection.

5 BY MR. JACOBSON:

6   Q   Same answer, I don't know?

7   A   Same answer.

8   Q   So have we gone through the methods of assignment
9 under the -- that the standard of industry -- the standard in
10 the industry requires for the assignment of the right to a
11 cue?

12       MS. OHIRI:  Objection.  Form.  Vague.  Calls for a
13 legal conclusion.  Calls for an expert opinion.  Vague as to
14 methods and assigns.

15       MR. JACOBSON:  To your knowledge.

16       MS. BLAISE:  Same objection, and foundation.

17       THE WITNESS:  I don't know.

18 BY MR. JACOBSON:

19   Q   We've gone through writing, orally, and standard of
20 the industry for methods of assigning rights to a cue, are
21 there any others?

22       MS. OHIRI:  Objection.  Form.  Vague.

23       MS. BLAISE:  Calls for a legal conclusion.
24 Foundation.

25       MS. OHIRI:  Calls for an expert opinion.

1       THE WITNESS:  I don't know.

2 BY MR. JACOBSON:

3   Q   Thank you.  So back to the question that I had
4 originally started with.  If you could look at paragraph two,
5 and it talks about payments.  What was your general
6 understanding of how Mr. Cohen would get paid and how much he
7 would get paid, percentage-wise or any other -- any other
8 way?

9       MS. OHIRI:  Objection.

10       MR. JACOBSON:  And take your time to read paragraph
11 two.

12       MS. OHIRI:  Objection.  Form.  Compound.

13       THE WITNESS:  The money that Labrador received is in
14 two parts, a sync license monies, sometimes called sync,
15 sometimes called license, sometimes called mechanicals, and
16 payments for performance.  The sync license monies, this
17 states that I would pay the -- that Labrador would pay the
18 composer 50 percent of what any -- his net, out of his net
19 received.  And the performance monies would be collected
20 by -- in his circumstance, ASCAP and sent to him through
21 them.  There's a -- there's a cause here about -- about sheet
22 music, which was never part of in any of our activities.  And
23 there's a clause here about lyrics that speaks for itself,
24 and then here's a clause here, 2.5.

25       MS. OHIRI:  Just answer the question.

11 (Pages 38 - 41)

1      THE WITNESS: Yes. So the other payment -- what was
2   your question again?
3   BY MR. JACOBSON:
4      Q   Well, I think you have answered talking about one,
5   the sync or license or mechanics, or mechanical payments, and
6   two, the performance payments?
7      A   Yes.
8      Q   That's -- that's what Labrador would get, for
9   Eminem-Esque; is that correct?
10     A   One or the other or both.
11     Q   And then Mr. Cohen was to be paid the percentage
12  listed of what Labrador got for those -- those -- those two
13  things; is that correct?
14     A   Net, yes.
15     Q   Was Labrador paid a sync license or mechanical
16  payment or more than one for Eminem-Esque?
17        MS. OHIRI: Objection. Form. Compound.
18        THE WITNESS: I don't know.
19  BY MR. JACOBSON:
20     Q   Do you have any documents that would show whether
21  that was so or not?
22     A   Only what I gave her.
23        MS. OHIRI: No.
24        THE WITNESS: Only -- only e-mails from Peter Baker
25  stating that he has withheld money.

Page 42

1         MS. BLAISE: For the record, when the witness was
2   answering, only what I gave her, he pointed to his attorney
3   sitting to his right.
4   BY MR. JACOBSON:
5      Q   What did Peter Baker say in any e-mail about
6   withholding money?
7         MS. BLAISE: Objection. Form. Ambiguous as to
8   time. If there's a document you'd like him to review?
9   BY MR. JACOBSON:
10     Q   Relating to Eminem-Esque.
11        MS. BLAISE: Same objection.
12        THE WITNESS: That AMCOS, AMCOS, was holding back
13  monies from him with regard to this lawsuit.
14  BY MR. JACOBSON:
15     Q   Okay. Are there any other documents that would help
16  you to identify whether Labrador received any of the payments
17  that -- types of payments that we've discussed in reference
18  to Eminem-Esque?
19     A   No.
20     Q   Did Labrador pay Eminem-Esque anything, any money,
21  for -- excuse me, let me start over.
22        Did Labrador pay to Mr. Cohen any monies relative to
23  Eminem-Esque?
24     A   I don't know.
25     Q   Do you have any -- do you know of any documents that

Page 43

1   would be able to answer that question?
2      A   Yes.
3      Q   And what are those?
4      A   Sorry, for Eminem-Esque specifically, no, no, the
5   answer is no.
6      Q   When you said yes, were you referencing maybe a
7   general payment for several cues?
8      A   Yes.
9      Q   Is it possible, from any sort of documentary or any
10  other type of evidence, to be able to breakdown that such a
11  payment to its, let's say, five cues and they are named A, B,
12  and C, D, and F?
13     A   To some degree, yes.
14     Q   So is it -- do you know of any document that has
15  reference to a payment -- a general payment for more than one
16  cue that you could view and say, yes, Eminem-Esque was
17  included -- Eminem -- payment for Eminem-Esque was included
18  here?
19        MS. OHIRI: Objection. Form. Vague.
20        THE WITNESS: Yes.
21  BY MR. JACOBSON:
22     Q   How would one identify those -- is it more than one
23  document?
24     A   I don't know.
25     Q   How would one -- how would I reference that one or

Page 44

1   more document? What is it?
2      A   A statement from Beatbox.
3      Q   Have you produced in this litigation that one or
4   more document, that one or more statement or statements from
5   Beatbox?
6      A   I think so.
7      Q   If such a statement or statements exist, they would
8   have -- they -- Labrador would have indeed produced such; is
9   that correct?
10     A   Yes.
11     Q   I'm going to give you a document marked -- which I'm
12  marking as Exhibit H. And I'm going to pass it around to the
13  appropriate folks.
14        (Deposition Exhibit H marked for identification by
15         the court reporter.)
16  BY MR. JACOBSON:
17     Q   Take your time and look at that. I'm just going to
18  ask you if you've seen this and what it is.
19     A   Yes.
20     Q   You have seen this; is that correct?
21     A   Yes.
22     Q   And what is it?
23     A   It's a contract between Labrador Entertainment, Inc.
24  and Beatbox Party Limited.
25     Q   Paragraph one says -- oh, by the way, in this

Page 45

12 (Pages 42 - 45)

1  document is, for the most part, publisher Labrador?
2     A   No.
3     Q   Who is publisher?
4     A   The various publishers are listed here, reflective
5  of the performance rights organization they were associated
6  with.
7     Q   Really?  Do you want to go off the record for a
8  moment?
9        MS. OHIRI:  Yeah.
10       (Break in deposition.)
11       (Discussion off the record.)
12  BY MR. JACOBSON:
13    Q   Okay.  So other than the explanatory notes on the
14  top of the first page of H, is publisher in this document
15  Labrador?
16    A   Yes.
17    Q   And is sub-publisher Beatbox?
18    A   Yes.
19    Q   Paragraph one says, the publisher hereby appoints
20  the sub-publisher as their sole sub-publisher in the license
21  territory for the introduction and exploitation.  And then I
22  think it goes on to say of -- well, it does go on to say, of
23  a catalog known as Spider Cues Music.
24       Spider Cues music is owned by Labrador; is that
25  correct?

Page 46

1     A   Correct.
2     Q   What is the license territory referenced?
3     A   What do you mean?
4     Q   It says, in paragraph one, that the appointment is
5  for the license territory, on the second line.
6     A   That phrase refers back to it is in, whereas the
7  territories of Australia, New Zealand, Figi.
8     Q   Thank you.  When you agreed to this contract, what
9  did you mean by introduction, which is in -- which is on the
10  third line of paragraph one, or is that -- well, I'll let the
11  question stand as is.
12       MS. OHIRI:  Objection.  Calls for a legal opinion
13  and conclusion.
14  BY MR. JACOBSON:
15    Q   Just what your intent was.
16    A   To introduce the recordings as they stand without
17  any loss of integrity.
18    Q   What do you mean by integrity?
19    A   The music cue needs to stand as it is introduced
20  originally in the recordings as referred to here, it's called
21  recordings.
22    Q   I see.
23    A   To present to the producers and end users and anyone
24  who would like to license it in its territory, in Beatbox's
25  territory, and to facilitate the necessity licensing

Page 47

1  obligations and responsibilities for -- within that
2  territory.
3     Q   On the same line, the sentence goes on to say, and
4  exploitation.  What was your intent -- what was your
5  understanding at the time that you made this agreement of the
6  word exploitation?
7     A   The same explanation that I just gave for
8  introduction.
9     Q   I see.  Is it correct to say that, in your
10  understanding at the time that you -- that you agreed to this
11  contract, the phrase introduction and exploitation means what
12  you had -- what you have just stated?
13    A   Yes.
14       MS. BLAISE:  Objection.  Calls for a legal
15  conclusion.
16       MS. OHIRI:  Same objection.
17  BY MR. JACOBSON:
18    Q   And does exploitation include the use of a cue?
19       MS. OHIRI:  Objection.  Calls for a legal opinion, a
20  legal conclusion.
21       THE WITNESS:  No.
22  BY MR. JACOBSON:
23    Q   Does publication -- I'm not referring to the
24  document right now, I'm just asking you a question, does
25  publication refer to the use of a cue?

Page 48

1        MS. OHIRI:  Same objection.  Calls for a legal
2  conclusion.
3        MS. BLAISE:  Same objection.
4        THE WITNESS:  Perhaps.
5  BY MR. JACOBSON:
6     Q   Okay.  Does -- in your experience in the industry,
7  does publication include the broadcast of a cue?
8        MS. BLAISE:  Same objection.
9        MS. OHIRI:  Same objection.
10       THE WITNESS:  Yes.
11  BY MR. JACOBSON:
12    Q   When a -- in your understanding of what the -- what
13  you intended when you made this agreement, when you talked
14  about introduction and exploitation, it's correct to say that
15  it was the introduction and exploitation of a cue as it was
16  written by the composer; is that correct?
17       MS. BLAISE:  Objection.  Assumes facts not in
18  evidence.  Seeks parol evidence.  Calls for a legal
19  conclusion.  And vague and ambiguous.
20       THE WITNESS:  Yes.
21  BY MR. JACOBSON:
22    Q   Okay.  And once the sub-publisher -- oh, once a
23  sub-publisher transmitted the rights for a cue, would you
24  call that transition an assignment, what would you call
25  that?

Page 49

13 (Pages 46 - 49)

1      MS. OHIRI: Objection. Calls for a legal
2   conclusion.
3      THE WITNESS: Can you ask that again?
4   BY MR. JACOBSON:
5      Q   I'm just looking for your language so that I can use
6   it appropriately. So the sub-publisher, in this case,
7   Beatbox specifically, when it transmits the -- any sort of
8   right to someone in New Zealand or Australia or Figi, what
9   would you call that? Would you call that an assignment, or
10  is there another word that's better?
11     A   Usually it would be calling it a -- licensing it,
12  but with regard to Australia, New Zealand, and some other
13  locations, there's an agent in the middle, AMCOS. So what
14  Beatbox does with the cue as it relates to the end user, I
15  don't know that -- those terms.
16     Q   Would you understand the -- was -- in your
17  understanding, was Eminem-Esque licensed by Beatbox to
18  AMCOS?
19     MS. BLAISE: Objection. Foundation.
20     THE WITNESS: I don't know.
21  BY MR. JACOBSON:
22     Q   In your understanding of the music industry, if a
23  cue was licensed from Beatbox to AMCOS, would we call that a
24  license?
25     MS. BLAISE: Objection. Calls for a legal

Page 50

1   conclusion.
2      MS. OHIRI: Same objection.
3      THE WITNESS: That's what I don't know.
4   BY MR. JACOBSON:
5      Q   Is there another word that's fair to use?
6      MS. OHIRI: Same objection.
7      THE WITNESS: Perhaps sublicensing, subpublishing.
8   I don't know what the contract between -- fully what the term
9   would be called between Beatbox and AMCOS, what exactly that
10  is legally.
11  BY MR. JACOBSON:
12     Q   Before I forget, please turn to the final page on
13  Exhibit H, is your signature above the words Labrador
14  Entertainment, Inc.?
15     A   Yes.
16     Q   And I apologize for this, but let me just go back to
17  Exhibit G and ask a similar question. Is your -- on the last
18  page of Exhibit G, is your signature above the typed words
19  Noel Webb?
20     A   Yes.
21     Q   Why -- you mentioned from introduction and
22  exploitation in your intent in coming to this agreement with
23  Beatbox included that the cue, at least between Labrador
24  and -- strike that. I apologize.
25         You mentioned that in your understanding of what was

Page 51

1   intended by you when you agreed to Exhibit H, introduction
2   and exploitation included that a cue would be as the composer
3   wrote the cue; do I recall that testimony correctly?
4      A   Yes.
5      Q   Did you have a reason for wanting to or deciding to
6   require that the cue remain as is?
7      A   Say that again.
8      Q   Did you have a reason for agreeing or requiring that
9   the cue remain as the composer wrote it?
10     A   Yes.
11     Q   What was that reason?
12     A   The manipulation of a cue can change the -- it can
13  create a new cue; if you manipulate a cue, you can create
14  literally an entirely different piece of music.
15     Q   And can you want that to happen?
16     A   No.
17     Q   Why?
18     A   Exploitation possibilities, the -- for one thing,
19  the ownership of the cue that was created would be in
20  question, which of course is delineated in the contract here
21  saying that's the cue that he wrote.
22     Q   When you say, exploitation possibilities, what do
23  you mean by exploitation in this answer?
24     A   To answer and acquire monies or the monies for the
25  use of that cue in a performance.

Page 52

1      Q   You say that the music could be manipulated, what do
2   you mean by the word manipulate in this sentence?
3      A   In the sentence I just said?
4      Q   Yes, that's correct.
5      A   Cutting up the sound in any manner to change the
6   design.
7      Q   And I'll try to stop here, but what do you mean by
8   design?
9      A   The way the cue plays audibly.
10     Q   Thank you. Ultimately Eminem-Esque, how ultimately
11  was Eminem-Esque published to the public, in what format?
12     A   I don't understand what you're asking.
13     Q   Was it in a commercial?
14     MS. BLAISE: Objection as to form and the legal
15  conclusion of published as a term of art and time and are we
16  talking about initial publication, are we talking about --
17     MR. JACOBSON: That's fair. And let me break it
18  down.
19  BY MR. JACOBSON:
20     Q   Beatbox licensed, or whatever word we're using,
21  Eminem-Esque to AMCOS; is that correct?
22     MS. BLAISE: Objection. Foundation. Form.
23  Ambiguity.
24     MR. JACOBSON: In your understanding.
25     THE WITNESS: When you say, or whatever, the answer

Page 53

14 (Pages 50 - 53)

1  is yes.
2  BY MR. JACOBSON:
3      Q   And there were a series, to your understanding, four
4  or five entities that got some right to
5  Eminem-Esque; is that right?
6      A   I think so.
7      Q   Okay.  Ultimately the National Party, the New
8  Zealand National Party, played at least a version of
9  Eminem-Esque in a television advertisement; is that
10  correct?
11      A   I don't know.
12      Q   Was Eminem-Esque ever broadcast in New Zealand, to
13  your knowledge, or a version of Eminem-Esque?
14      A   What does a version mean?
15      Q   Something that may have been altered or adapted.
16      MS. BLAISE:  Objection.  Foundation.  Little
17  conclusion.
18      THE WITNESS:  If you're asking me if some entity in
19  New Zealand used the Eminem-Esque cue written by Michael
20  Cohen as a basis to create some music piece of their own
21  liking and new design, I think so, yes.
22  BY MR. JACOBSON:
23      Q   Much better question than I asked.  I confer a law
24  degree on you.  You can have mine.
25      Was that entity of which you speak the New Zealand

Page 54

1  National Party?
2      A   Yes.
3      Q   Was the medium for that a television commercial?
4      A   I don't -- I don't -- I don't know.
5      Q   Okay.  Do you know what it was?
6      A   A video.
7      Q   Do you know if there were other things other than a
8  television commercial?
9      A   I know of an Internet -- yeah.
10      MS. OHIRI:  Objection.  Form.  Vague.
11      THE WITNESS:  I know of an Internet performance.
12  BY MR. JACOBSON:
13      Q   Could you please describe that Internet
14  performance?
15      A   I think it was a 30 second campaign ad put on the
16  Internet in New Zealand.
17      Q   Thank you.  Do you know what the Funk Appreciation
18  Society is?
19      A   Yes.
20      Q   And what is that?
21      A   That's Michael Cohen's own publishing company.
22      Q   I'm going to give you a one-page document which
23  we'll mark as Exhibit I.
24      (Deposition Exhibit I marked for identification by
25      the court reporter.)

Page 55

1  BY MR. JACOBSON:
2      Q   It appears to be an e-mail from Noel Webb to Nikki
3  Roberts.
4      MS. BLAISE:  H or I?
5      MR. JACOBSON:  I.
6  BY MR. JACOBSON:
7      Q   To your knowledge, did Nikki Roberts work at
8  Beatbox?
9      A   To my knowledge, yes.
10      Q   So the question I had about this Exhibit I is the
11  last sentence, Michael Cohen, and then in parenthesis, Funk
12  Appreciation Society should not be paid publishing on these
13  cues.
14      Did these cues include Eminem-Esque?
15      A   I don't know.
16      Q   What do you mean by be paid publishing?
17      A   The -- Michael Cohen assigned all publishing rights
18  to Labrador Entertainment, Inc., and so all the music we
19  have, which is called recordings, on which we have -- we have
20  the right to collect all publishing rights and what was your
21  exact question.
22      Q   I think you've answered it.  You've answered it.
23      A   Okay.
24      Q   And I think I understand now, that -- is it correct
25  to say that what you mean was that Mr. Cohen should not be

Page 56

1  paid directly, Labrador should be paid, and if Mr. Cohen is
2  supposed to be paid, then Labrador would pay Mr. Cohen?
3      MS. BLAISE:  Objection.
4      MS. OHIRI:  Objection.  Mischaracterizes earlier
5  testimony.
6      THE WITNESS:  If you mean his publishing company
7  and/or his own person, yes.
8  BY MR. JACOBSON:
9      Q   Okay.  For reasons that I don't understand, or
10  remember, the next document, which I'll mark as J, I only
11  have one copy.
12      MS. BLAISE:  What is it?
13      MR. JACOBSON:  It's -- it is cross-defendant
14  Labrador Entertainment, Inc.'s Response to Cross-claimant
15  Michael Cohen's Interrogatories, Set One.  And my only
16  interest is in pages four -- page four.
17      MS. BLAISE:  I have my own.
18      MR. JACOBSON:  Do you have one?
19      MS. BLAISE:  Yeah.
20      MR. JACOBSON:  Page four.  So what I would like to
21  do is first show it to your attorney and let her -- and if
22  you would like me to make a copy, I will.
23      MS. OHIRI:  We're looking at response number one?
24      MR. JACOBSON:  Yes, that's right.
25      MS. BLAISE:  And this is going to be Exhibit J?

Page 57

15 (Pages 54 - 57)

1        MR. JACOBSON:  J, yes.
2        (Deposition Exhibit J marked for identification by
3        the court reporter.)
BY MR. JACOBSON:
4    Q    All right.  So now your attorney has given the
5    document to you.  Take your time, please.
6    A    Just the number one, is that what you said?
7    Q    I'm just looking at page four, yes, the response to
8    number one.
9    A    Okay.
10   Q    So there's a list of -- of monies there; is that
11   correct?
12   A    Yes.
13   Q    Is that a list of payments that were paid to
14   Mr. Cohen?
15   A    Yes.
16   Q    By Labrador?
17   A    Yes.
18   Q    Were any of those for Eminem-Esque?
19   A    I don't know.
20   Q    Would there be a way to find out?  Is there a way to
21   find out?
22   A    Beatbox may be able to help you with that.
23   Q    How?
24   A    Because the -- there's a configuration of money that

Page 58

1    Beatbox has kept back because of the situation with AMCOS and
2    possibly paying Labrador, I don't know what monies are what
3    monies.
4    Q    Thank you very much.  May I please have that?
5    A    Oh, I thought you were going to shake my hand, I
6    thought you were going to give me money.
7    Q    No, but I am going to give this document to the
8    court reporter.  And turn it over to Ms. Blaise.
9        (Break in deposition.)
10       (Discussion off the record.)
11       MR. JACOBSON:  Mr. Webb, you mentioned that you had
12   brought notes with you, may I see those, please?
13       MS. OHIRI:  I would like to see them first, if
14   that's okay.
15       MR. JACOBSON:  Okay.
16       MS. OHIRI:  Are these the exhibits?
17       THE WITNESS:  That's are what you gave me.
18       MS. OHIRI:  Okay.  Let me see.
19       MR. JACOBSON:  Do you want these?
20       THE WITNESS:  Sure.
21       MR. JACOBSON:  For your memory book.
22       MS. OHIRI:  What are these?
23       THE WITNESS:  Those are all letters to your firm.
24       MS. OHIRI:  I'm going to have to withhold these ones
25   as privileged.

Page 59

1        MR. JACOBSON:  The letters?
2        MS. OHIRI:  E-mails.
3        MS. BLAISE:  They're all letters to the firm.
4        MS. OHIRI:  Yes, to my firm.
5        MS. BLAISE:  There's no other documents that are not
6    letters to your firm?
7        MR. JACOBSON:  Or e-mails?
8        MS. BLAISE:  We're going to need to see that.
9        MS. OHIRI:  I need to withhold these, these are
10   privileged.
11       MS. BLAISE:  So for the record, can you indicate
12   what they are so you will make a privilege log of them?
13       MS. OHIRI:  There's an e-mail from Noel Webb to
14   myself, Raena Ohiri, dated November 21st, 2019.
15       MS. BLAISE:  What was the date?
16       MS. OHIRI:  November 21st, 2019.
17       MS. BLAISE:  Is there anyone else on the e-mail or
18   is it --
19       MS. OHIRI:  It's just to me.  There's a document
20   that reflects attorney/client privilege and work product.  I
21   don't mind sending a redacted version of it, but I can't
22   produce it right now.
23       MS. BLAISE:  Okay.  What is it?
24       MS. OHIRI:  A document, I mean, I --
25       MS. BLAISE:  What is it dated?

Page 60

1        MS. OHIRI:  There's no date on the document.
2        MS. BLAISE:  And it was produced by your office?
3        MS. OHIRI:  It's not discovery, it was not produced,
4    no.
5        MR. JACOBSON:  Is there any other way to describe
6    it?  It's one page; right?
7        MS. OHIRI:  Yeah.
8        MR. JACOBSON:  From what I can see from the back.
9        MS. OHIRI:  Mm-hm.
10       MS. BLAISE:  And you're saying it's communication
11   and work product.
12       MS. OHIRI:  Yeah.
13       MS. BLAISE:  And is it your firm's work product?
14       MS. OHIRI:  Yeah, there are some aspects of it, but
15   I would have to redact it and produce the rest of it.
16       MS. BLAISE:  Okay.
17       MR. JACOBSON:  Could you please send that to both of
18   us?
19       MS. OHIRI:  Yeah, after I redact it.
20       MR. JACOBSON:  Thank you.
21       MS. BLAISE:  Okay.
22       MS. OHIRI:  Same for this document, which is --
23   appears to be -- one, two, three -- three-page document.
24       MS. BLAISE:  You'll be able to redact and produce?
25       MS. OHIRI:  Yes.

Page 61

16 (Pages 58 - 61)

1      MR. JACOBSON:  Would a two-week time period be okay
2  for that?
3      MS. BLAISE:  Well, we have a discovery cutoff.
4      MS. OHIRI:  On the 6th.
5      MS. BLAISE:  Right.  So we need it by Friday.
6      MS. OHIRI:  Okay.  By Friday.  There's another
7  e-mail from Noel Webb to Guy Nicholson, who is an attorney at
8  our firm.
9      MS. BLAISE:  Dated?
10      MS. OHIRI:  November 29th, 2019.  And it's a
11  two-page.  And it appears -- I'm not sure if this is an
12  attachment to the e-mail, but this is also work product.  And
13  I can't produce this.
14      MR. JACOBSON:  How many pages is that?
15      MS. OHIRI:  One page.
16      MS. BLAISE:  Okay.  You will redact it and produce
17  it?
18      MS. OHIRI:  No.
19      MS. BLAISE:  Okay.  So there's two documents that
20  you're going to redact and produce by Friday?  Are there any
21  handwritten notes when you said you had notes?
22      MS. OHIRI:  No.
23      THE WITNESS:  No.
24      MR. JACOBSON:  Is there anything on your computer
25  that you consider notes?
Page 62

1      THE WITNESS:  No, and it wasn't even opened, it was
2  opened up into --
3      MR. JACOBSON:  A blank page?
4      THE WITNESS:  Desktop area, and I never went into
5  it.
6      MS. BLAISE:  But is there anything that exists on
7  your computer that would be notes that are a part of this
8  case, not whether or not it was opened during your
9  deposition?
10      THE WITNESS:  No.
11      MS. BLAISE:  There's no document on your computer
12  that exists?
13      THE WITNESS:  No.
14      MR. JACOBSON:  Is there any document on your
15  computer that relates to the case?
16      MS. OHIRI:  We need to lay a foundation.  First of
17  all, did you review any of these documents to prep for your
18  deposition today?
19      THE WITNESS:  No, they're just in my possession.
20  BY MS. BLAISE:
21      Q   Well, we get to ask the questions, and our questions
22  are not based on whether or not he reviewed them, they're
23  based on whether or not he has documents in his possession
24  that are responsive to our discovery requests, including the
25  deposition rider that was attached to bringing documents to
Page 63

1  this deposition.
2      So my question is, are there any documents on your
3  computer that are responsive to any of the discovery requests
4  that either --
5      A   No.
6      Q   There are no documents on your computer that are
7  responsive?
8      A   No.
9      Q   What efforts did you undertake to determine that
10  there were no documents responsive to our discovery requests?
11  Answer now.
12      A   The computer is just for me to take some notes here
13  if I wanted to, and I didn't.
14      Q   Okay.  So my --
15      MS. BLAISE:  Move to strike as nonresponsive to my
16  question.
17  BY MS. BLAISE:
18      Q   What efforts did you undertake to go through your
19  computer to determine if you had any documents on your
20  computer that were responsive to our discovery requests?
21      MS. OHIRI:  Assuming that he has documents.
22      MS. BLAISE:  Do you have an objection?
23      MS. OHIRI:  Responsive on his computer.
24      MS. BLAISE:  Do you have an objection?
25      MS. OHIRI:  Objection to -- vague, form, vague and
Page 64

1  ambiguous.
2  BY MS. BLAISE:
3      Q   What efforts did you undertake to determine if you
4  had any documents in your computer responsive to our
5  discovery requests?
6      A   Before I came here, I looked at my computer.
7      Q   How did you look at your computer?
8      A   I looked at folders that are titled.
9      Q   And what folders did you look at?
10      A   I don't know the names of them.
11      Q   Okay.  Do you have a Spider Cues folder?
12      A   Not on this computer.
13      Q   Do you have another computer that has a Spider Cues
14  folder?
15      A   Yes.
16      Q   Do you search that computer for documents responsive
17  to our discovery requests?
18      A   Yes.
19      Q   Okay.  And what efforts did you undertake to search
20  that computer?
21      A   Searching any possible relationship to this case,
22  names.
23      Q   What key words did you search?
24      A   Peter Baker, Beatbox, Robert Baker, Michael Cohen,
25  Eminem-Esque, unless I'm forgetting something, that was
Page 65

17 (Pages 62 - 65)

1 generally what I used.

2   Q   Does Eminem-Esque go by any other title?

3   A   As a longer version, SQ MC Eminem-Esque, and a

4 version that Beatbox gave it, SPID 039, underscore, 25,

5 that's how it was licensed.

6   Q   Did you search either of those key words?

7   A   Yes.

8   Q   Did you undertake the same searches on the laptop

9 that you have with you?

10   A   There's no folder on that.

11   Q   Did you search in documents generally?

12   A   I'm sorry?

13   Q   In your documents search function where you can

14 search just documents generally, did you undertake any search

15 component just to search the documents on this computer that

16 you have with you today?

17       MS. OHIRI:  Objection.  Form.  Vague.

18       THE WITNESS:  I didn't need to, it's not there,

19 there's no folders of that nature.

20 BY MS. BLAISE:

21   Q   When did you buy this computer?

22   A   I think 2016.

23   Q   And do you use this computer regularly?

24   A   No.

25   Q   Do you have any other computer hardware that would

Page 66

1 have any documents responsive to any of our discovery

2 requests?

3   A   No.

4   Q   Do you have any other electronic files on the

5 computer that's in your possession that you think would be

6 responsive to our discovery requests, the computer that's in

7 your possession here today?

8   A   No.

9 BY MR. JACOBSON:

10   Q   Do you have any documents on the computer that's in

11 your possession today that relate to the -- to this

12 lawsuit?

13   A   No.

14   Q   Do you have any texts or other documents on your

15 Smartphone that you have with you today that relate to this

16 lawsuit?

17   A   It was off, first of all, until I just turned it on

18 just now.  So it was not a cell phone until I just turned it

19 on just a second ago.

20       MS. OHIRI:  Just answer the question.

21       THE WITNESS:  But it wasn't a cell phone until I

22 turned it on just now.

23       MS. BLAISE:  That doesn't matter.

24       MS. OHIRI:  Just answer the question.

25 BY MR. JACOBSON:

Page 67

1   Q   The device you have in your hand, I would call it a

2 Smartphone, did -- are there any documents on there, texts,

3 whatever, that relate to Beatbox versus Labrador?

4   A   Only attorney/client privileged e-mails.

5   Q   By attorney/client privilege e-mails, you mean

6 e-mails that were sent to you by your attorneys or that you

7 sent to them?

8   A   Yes.

9   Q   Thank you.

10       MS. BLAISE:  On those privileged -- those e-mails

11 that you claim to be privileged, is there anything else CCed

12 on those e-mails besides your attorneys?

13       THE WITNESS:  No.

14       MS. BLAISE:  That's it.

15       (Lunch break taken.)

16 BY MS. BLAISE:

17   Q   Back on the record.  My name is Heather Blaise.  I'm

18 the attorney for Beatbox, the plaintiff in this matter.  I

19 just want to reiterate some of Dan's instructions to let me

20 finish asking the question before you answer; is that fair?

21   A   Yes.

22   Q   And that you answer audibly yes or no and -- because

23 we have a court reporter here, that she is unable to take

24 down your hand indications.  So any type of mannerisms, any

25 type of gesturing that you do with your hands, she will be

Page 68

1 unable to take that down.  So if you can keep your answers to

2 audible yes or no, not uh-huh or uh-uh; fair enough?

3   A   Yes.

4   Q   And then when I ask you a question, you know, it's

5 not designed to trip you up, if you don't understand the

6 question, ask me to rephrase it or say you don't know the

7 answer or you don't understand the question, but if you

8 answer the question, I'm going to assume that you understood

9 the question.  If you answer the question, I'm going to

10 assume that you understand the question; is that fair?

11   A   Yes.

12   Q   Okay.  Do you ever a middle name?

13   A   Yes.

14   Q   What is it?

15   A   Palmer, P-A-L-M-E-R.

16   Q   And what's your date of birth?

17   A   5/10/52.

18   Q   What's your home address?

19   A   22400 Sentar Road, S as in Sam, E-N, T as in Tom,

20 A-R, Road, Woodland Hills, Woodland is one word, California,

21 90364.

22   Q   Do you own that home?

23   A   Yes.

24   Q   Your name is on title?

25   A   Yes.

Page 69

18 (Pages 66 - 69)

1   Q   Is your name along with anyone else on title?
2   A   Yes.
3   Q   Who is else is on title?
4   A   Why are we --
5   Q   I get to ask the questions.  So who else is on title
6   of your house?
7   A   My wife.
8   Q   What's her name?
9   A   Sharon Webb.
10  Q   Do you know how you hold that title?  Is it tendency
11  by the entirety or joint tendency?
12      MS. OHIRI:  Objection.  Calls for a legal
13  conclusion.
14  BY MS. BLAISE:
15  Q   If you know the answer, how it says on the title?
16  A   I don't know.
17  Q   Do you owe a mortgage?
18  A   Yes.
19  Q   What's the balance due on the mortgage?
20  A   Somewhere between 5- and $600,000.
21  Q   Do you have any other liens besides your mortgage on
22  your property?
23  A   No.
24  Q   Do you have any other real estate, do you own any
25  other real estate?

Page 70

1   A   Yes.
2   Q   What other real estate do you own?
3   A   A home in West Hills, California.
4   Q   What's the address?
5   A   6700 Capistrano, C-A-P-I-S-T-R-A-N-O, Avenue, West
6   Hills, I don't know the zip.
7   Q   That's fine.  Do you own any other real estate?
8   A   No.
9   Q   Do you have any mortgage on the Capistrano Avenue
10  property?
11  A   Yes.
12  Q   Do you know how much you owe on it?
13  A   I think somewhere between -- under $400,000.
14  Q   Do you hold that on title with anyone else, other
15  than yourself?  Is your wife on title as well?
16  A   I don't know.
17  Q   Do you have tenants in that?
18  A   Yes.
19  Q   What are they paying a month in rent?
20  A   2,875, I think.
21  Q   Do you have an interest in any other entities other
22  than Labrador Entertainment, Inc.?
23  A   What does interest mean?
24  Q   Any type of interest, a stock ownership, a
25  partnership interest, a membership interest?

Page 71

1   A   No.
2   Q   Okay.  So only -- only Labrador Entertainment, Inc.?
3   A   As interest in them, yes.
4   Q   That you have an interest in?
5   A   Yeah.
6   Q   And you testified earlier that the Spider Cues is a
7   d/b/a under the Labrador Entertainment, Inc. entity; is that
8   correct?
9   A   Yes.
10  Q   Okay.  And you said that you had additional music
11  catalogs that had d/b/as in addition to Spider Cues; is that
12  correct?
13  A   Yes.
14  Q   What are the other d/b/as that you have?
15  A   Red Lab Records.
16  Q   Red Lab?
17  A   Red Lab, three words, Boston Bay Records, and Shock
18  Files, S-H-O-C-K, Files.
19  Q   And those are all d/b/as, registered d/b/as?
20  A   Yes.
21  Q   Okay.  Do you get any other K1s on your tax return
22  from any other entities?
23  A   I don't know.  I don't think so.  I'm not sure.
24  Q   Do you hold any other type of employment?
25  A   Sometimes I play the violin.

Page 72

1   Q   As an independent contractor?
2   A   Yeah.
3   Q   Okay.  Do you render those services under your
4   Labrador Entertainment, Inc., or do you just do it in your
5   name individually?
6   A   My name.
7   Q   Okay.  What did Labrador Entertainment, Inc. gross
8   in 2018?
9   A   How would I know that by memory?
10  Q   If you don't know it, then you can say you don't
11  know it.
12  A   In 2018?
13  Q   Yeah, the last tax year.
14  A   Close to zero.
15  Q   Do you remember for 2017?
16  A   Close to zero.
17  Q   2016?
18  A   I wish I could give you the exact figures, not a lot
19  of money is all I can say.
20  Q   How do you pay your mortgage if you don't have any
21  other employment outside of Red Lab Records?
22  A   My wife works.
23  Q   Okay.  What does she do?
24  A   She works at UCLA as a marketing person.
25  Q   And she primarily pays your household expenses?

Page 73

19 (Pages 70 - 73)

| | |
|---|---|
| 1 A   Mm-hm, yes. | 1 music to do the recording as, like, a sound engineer? |
| 2 Q   Okay.  What is your formal musical training? | 2 A   Trained? |
| 3 A   I'm trained as a violinist. | 3 Q   Mm-hm. |
| 4 Q   At what age did you start training? | 4 A   Formally, no. |
| 5 A   At 10, and I trained as a pianist starting at five, | 5 Q   You've done it professionally? |
| 6 and I have a -- when I went to college, I have -- I took a | 6 A   Mm-hm. |
| 7 lot of courses in composition and in music -- music industry, | 7 Q   You've recorded music professionally for others? |
| 8 and -- what was the exact question, my experience. | 8 A   Mm-hm.  What was that? |
| 9 Q   Your formal training? | 9 Q   Recorded music professionally for others where you |
| 10 A   Formal training, that would be it, I think. | 10 were compensated? |
| 11 Q   Where did you go to college? | 11 A   No. |
| 12 A   Bowdin College, B-O-W-D-I-N. | 12 Q   Did you record the music for yourself -- |
| 13 Q   Where is that? | 13 A   Yes. |
| 14 A   In main. | 14 Q   -- like your own music? |
| 15 Q   What years did you attend? | 15 A   Yes. |
| 16 A   1970 to 1974. | 16 Q   Or your friends where you weren't compensated? |
| 17 Q   Did you finish a bachelor's degree? | 17 A   Yes. |
| 18 A   Yes. | 18 Q   Do you understand the components of a copyright as |
| 19 Q   What's your bachelor's degree in? | 19 it relates to a song? |
| 20 A   History of political science. | 20 A   Yes. |
| 21 Q   Do you have any degree or certification from music, | 21 Q   Can you explain your understanding to me? |
| 22 musicology? | 22 A   The person who composed the song or cue or piece, |
| 23 A   No. | 23 unless otherwise purchased or contracted out, owns its |
| 24 Q   Music production? | 24 copyright. |
| 25 A   Certificates? | 25 Q   Do you understand that there's two copyrights |
| Page 74 | Page 76 |

| | |
|---|---|
| 1 Q   Certificate or degree? | 1 embodied in a song? |
| 2 A   Not a degree, no. | 2 A   Do you mean lyrics and -- |
| 3 Q   Any other formal -- | 3 Q   I mean the composition and the sound recording. |
| 4 A   Yeah, I took lots of courses in Los Angeles in the | 4 A   Yes. |
| 5 music industry, music industry, business, and music | 5 Q   Okay.  When did you become involved in licensing |
| 6 composition. | 6 production music? |
| 7 Q   Who offered those courses? | 7 A   I think in 2005, I think, '5 or '6. |
| 8 A   Dick Grove was the name of the -- was one of them. | 8 Q   Okay.  When I say production music, what do you |
| 9 And there were others, but I don't know if I can tell you the | 9 understand that to mean? |
| 10 names of them.  They're no certificate, just lots of | 10 A   Music that is -- music that is synced to a visual |
| 11 classes. | 11 product, S-Y-N-C, that's it. |
| 12 Q   So like a seminar? | 12 Q   Okay.  And in order to grant a license for |
| 13 A   No, more than that, just not a graduate -- not a | 13 production music to sync that music to a visual product, what |
| 14 certificate. | 14 type of licenses must be granted to that user? |
| 15 Q   Okay.  Oh, what year was the last year that you took | 15 A   Say that again. |
| 16 such a program or classes? | 16 Q   I'll have the court reporter read it back. |
| 17 A   1990 I'm going to say, I'm guessing. | 17 MS. OHIRI:  Objection.  Calls for a legal |
| 18 Q   Did you ever take any courses specifically on -- | 18 conclusion. |
| 19 legal courses on copyright? | 19 (Record read.) |
| 20 A   Yes.  I'm not sure I can tell you what they were | 20 THE WITNESS:  A mechanical sync license and a |
| 21 called or -- yes. | 21 master -- a master license. |
| 22 Q   Do you remember the approximate year or who the | 22 BY MS. BLAISE: |
| 23 provider was? | 23 Q   A mechanical sync license you said? |
| 24 A   No. | 24 A   Yeah. |
| 25 Q   Are you trained to record -- like, actually produce | 25 Q   Is that the -- as you understand it, is that the |
| Page 75 | Page 77 |

Page 78

1 full definition?
2    A  That's my understanding, yeah, and use of the
3 master.
4    Q  And then a master use license.  What rights are
5 being granted with a mechanical sync license as you
6 understand it?
7    A  The right to use the cue, the music cue, in the --
8 to sync it to the visual product.
9    Q  When you say cue in this context, do you mean the
10 sound recording and the musical composition, or do you mean
11 just the sound recording or do you mean just the musical
12 composition?
13    A  Do I mean the sound recording or the -- can you read
14 back to me?
15       (Record read.)
16       MS. OHIRI:  Objection.  Form.  Compound.
17       THE WITNESS:  One more time.
18       MS. BLAISE:  I'll rephrase the question.
19 BY MS. BLAISE:
20    Q  You testified earlier that the copyright embodied in
21 a song is the composition, one, and two, the sound recording,
22 I'm asking you when you are granting a mechanical sync
23 license, are you granting the rights of the composition or
24 are you granting the rights of the sound recording or are you
25 granting the rights of both?

Page 79

1    A  You're granting -- I don't know.
2    Q  Okay.  Is your answer any different for master use,
3 if you're granting a master use license, do you know what
4 rights you're granting?
5    A  I -- the master use is the use of the sound
6 recording.
7    Q  And not the musical composition; correct?
8    A  I don't know.
9    Q  Okay.  Your testimony earlier about cues, as I --
10 correct me if I'm wrong, as I recall from your earlier
11 testimony, you said a cue is a piece of music?
12    A  Okay.
13    Q  And that it can be a song?
14    A  Yes.
15    Q  But it doesn't -- it's not necessarily a song?
16    A  Yes.
17    Q  Are those all correct statements?
18    A  That's correct.
19    Q  Correct characterization of your testimony?
20    A  Yes.
21    Q  Would a cord progression be considered a cue?
22    A  Not just as a cord progression, no.
23    Q  What would make a cord progression a cue?
24    A  If it made musical sense.
25    Q  Who decides if it makes musical sense?

Page 80

1    A  The end user.
2    Q  Could lyrics be considered a cue?
3    A  Alone, you mean?
4    Q  Mm-hm.
5    A  No.
6    Q  Yes, I'm sorry, for the record, yes.
7       Lyrics alone could not be considered a cue?
8    A  No.
9    Q  Could a baseline be considered a cue?
10    A  A baseline, yes.
11    Q  If a cue is made shorter for the purposes of the end
12 user, is it still a cue?
13    A  When you say a, a is the important word, it is a
14 cue, it's not necessarily that cue.
15    Q  What's that?
16    A  You said a cue.
17    Q  Yeah, any cue, any given cue.
18    A  No, you said -- read it back, please.
19       (Record read.)
20       THE WITNESS:  It's still a cue.
21 BY MS. BLAISE:
22    Q  Are you saying that the cue, if it's made shorter is
23 no longer -- is no longer the original cue?
24    A  Correct.
25    Q  So it's your testimony that every cue that's made

Page 81

1 shorter changes its -- it changes into a new copyright?
2       MS. OHIRI:  Object.  Calls for a legal conclusion.
3 Calls for an expert opinion.
4       THE WITNESS:  I don't know.
5       MR. JACOBSON:  I join.
6 BY MS. BLAISE:
7    Q  What was your answer?
8    A  I don't know.
9    Q  I'm sorry.  Do you still have your exhibits?
10    A  Do I have the what?
11    Q  Your exhibits.
12    A  Yeah, that he gave me?
13    Q  Can you get Exhibit F?
14    A  I don't have it, this one.
15    Q  No, it starts with the January 14th, 2018 e-mail.
16       MS. OHIRI:  Here, you can look at mine.
17       THE WITNESS:  Okay.  Thanks.
18 BY MS. BLAISE:
19    Q  Do you remember this?
20    A  Pardon?
21    Q  Do you remember this?
22    A  Yes.
23    Q  Okay.  Going to the second page of Exhibit F, which
24 is Bates-stamped LAB 207, paragraph 5C.
25    A  Do I look at my own?

21 (Pages 78 - 81)

1    MS. OHIRI:  Yeah.
2        THE WITNESS:  So going to number what?
3  BY MS. BLAISE:
4    Q    5C.
5    A    Yes.
6    Q    This is -- this is an e-mail from you to Peter
7  Baker; correct?
8    A    You mean that one -- let's see, yes.
9    Q    And it's dated January 5, 2014?
10    A    Yes.
11    Q    And turning to 5C, can you read that?
12    A    Read it out loud or just read it?
13    Q    You can read it out loud.
14    A    The following is, each cue needs alternates, in a
15  film support cue you probably need --
16        THE REPORTER:  Slow down.  I still have to type it.
17        THE WITNESS:  Each cue needs alternates,
18  parenthesis, if it's a film score cue, you probably need
19  alternate of one.  Percussion, two.  The strings, three.  The
20  percussion and bass or percussion and bed track.  Four or
21  five alternates is plenty.  If it's a radio tune, you
22  probably need an alternate of one.  The groove with bass,
23  drums and guitar, two.  The lead instrument by itself, three.
24  Any others that made sense.  Again, four or five alternates
25  is plenty.  If it's an electro tune, you need alternates of

Page 82

1  almost everything.
2  BY MS. BLAISE:
3    Q    So here you're asking for alternates from your
4  composers; is that correct?  You're saying that that's what
5  you're asking your composers to provide you with?
6    A    That is a proposition.
7    Q    If you look at paragraph five, the beginning of it,
8  it says, from now on our composer instructions are.
9    A    Yeah.
10    Q    And then you list the things that the instructions
11  are, A, B, C; right?
12    A    Right.
13    Q    And C talks about alternates; correct?
14    A    Correct.
15    Q    So you are conveying that this is what you're asking
16  composers for; correct?
17    A    Your phrase asking doesn't make any sense to me.
18    Q    What did you mean by paragraph five, from now on our
19  composer instructions are?
20    A    From now on when I have -- when I am available to do
21  it, we will be asking these things of the composers.
22    Q    So you're reading into it, when I'm available to do
23  it, we will be asking these --
24    A    From now on.
25    Q    And so you are going to be asking from composers --

Page 83

1  you'll be asking composers to provide Alternates, is that
2  what you're saying?
3    A    My intention is to do that, that's what I'm saying
4  to Peter Baker at Beatbox.
5    Q    Okay.  And so as you're explaining Alternates in
6  paragraph C --
7    A    Yes.
8    Q    Is it your contention that each of those Alternates
9  would create a new cue?
10        MS. OHIRI:  I'm going to object that it calls for an
11  expert opinion.
12        MR. JACOBSON:  I join.
13        THE WITNESS:  No.
14  BY MS. BLAISE:
15    Q    So the Alternates would still be a part of the same
16  cue; is that correct?
17        MS. OHIRI:  Same objection.
18        MS. BLAISE:  Join.
19        THE WITNESS:  You know, I don't know that -- I want
20  to take that back.  There are oftentimes licensed as their
21  own cue.
22  BY MS. BLAISE:
23    Q    So on your Excel spreadsheet that lists all of your
24  cues, we would find separate cues for each one of these
25  alternates, is that what you're saying?

Page 84

1    A    Yes, a separate rows, yes.
2    Q    And would that be the case for each of your catalogs
3  as they are now?
4    A    As they are now?
5    Q    Your Spider Cues and --
6    A    As they are now, yes, that's what you would find.
7    Q    Red Lab Records, Boston Bay Records and Shock Files,
8  each one of those would contain separate cues for each one of
9  those components?
10    A    No.
11    Q    So some of them would have those Alternates, but
12  they would be considered one cue; is that correct?
13    A    No.
14    Q    Okay.  So is your testimony that each -- each of
15  those Alternates would have a separate cue in each of those
16  catalogs?
17    A    No.
18    Q    Okay.  So what is your testimony --
19    A    You're grouping together all these libraries, I
20  don't know why you're doing that.  This is in reference to
21  Spider Cues.
22    I'm asking you generally about music production
23  licensing.
24    A    Okay.
25    Q    That's what I'm asking you about, and your

Page 85

1  understanding of the custom and practice of the business
2  based on your experience.
3      A   All right.
4      Q   Okay.  So I'm asking you if -- if Alternates create
5  a new cue, does that mean that in each one of those catalogs,
6  each of your cues that has a separate breakdown, these
7  alternates, would be named differently as a different cue?
8      A   Yes.
9      Q   In each one of those categories?
10     A   Yes.
11     Q   Okay.  Does a cue remain the same if you mix it
12  without an element like, let's say, the drums for example?
13         MS. OHIRI:  Objection.  Calls for an expert
14  opinion.
15  BY MS. BLAISE:
16     Q   In your experience.
17     A   Say that again or have her read it.
18     Q   In your experience --
19     A   No, I got the question, the answer is no.
20     Q   It doesn't become a new cue or it does become a new
21  cue?
22     A   Read the question.
23         (Record read.)
24         MR. JACOBSON:  I object.  Calls for an expert
25  opinion.

Page 86

1      THE WITNESS:  No, you said mean the same, mean the
2  same with drums involved.
3  BY MS. BLAISE:
4      Q   So it creates a new cue?
5      A   My understanding of the question is, if you take the
6  drums out of a cue, does it remain the same cue, the answer
7  is no.
8      Q   If you're granting a license to an end user to use a
9  cue for production and they elect to take the drums out, is
10  it your contention that they're creating a new copyright?
11     A   Yes.
12         MR. JACOBSON:  Objection.  Calls for expert
13  witness.
14         MS. OHIRI:  Same objection.  Give me a minute to
15  state my objections.
16         THE WITNESS:  I didn't know you were going to say
17  something, sorry.
18  BY MS. BLAISE:
19     Q   Are all of your Labrador contracts, like the one
20  that you have with Michael Cohen, which is Exhibit G, is this
21  the same agreement that you use with all of your composers?
22     A   No.
23     Q   Have you changed your agreement recently?
24     A   What does recently mean?
25     Q   When was the last time that you changed your

Page 87

1  agreement?
2      A   I don't know the answer to that.
3      Q   How many different types of composer agreements do
4  you have that you're currently rendering services for?
5      A   Many.
6      Q   That have different language?
7      A   Yes.
8      Q   Okay.  Did you have a lawyer draft this for you?
9      A   This contract?
10     Q   Yeah, Exhibit G.
11     A   They reviewed it.
12     Q   What lawyer?
13     A   Stuart Wallach, S-T-U-A-R-T, W-A-L-L-A-C-H.
14     Q   Do you know if Cohen had an attorney?
15     A   No.
16     Q   No, he didn't, or no, you don't know?
17     A   Unless there's something in here that I'm
18  forgetting.
19         MS. OHIRI:  Don't speculate or guess.
20         THE WITNESS:  No, I don't know.
21  BY MS. BLAISE:
22     Q   You don't know?
23     A   I don't know.
24     Q   Okay.  In your experience in licensing music for
25  production, is it common for the end user to need to shorten

Page 88

1  or elongate the music, the cue?
2      A   What does shorten mean?
3      Q   To make it a shorter induration.
4      A   Say -- ask the question again.
5      Q   Can you read the question?
6         (Record read.)
7         THE WITNESS:  To need to, I don't know.
8  BY MS. BLAISE:
9      Q   Turning to Exhibit G --
10     A   Which one is that, please?
11     Q   That's the composer's agreement.
12     A   Yes.
13     Q   It has a working title and a total running time, is
14  that correct, on the first page?
15     A   What is it?
16     Q   A working title and a total running time, and then
17  it has a chart for each of the cues.
18     A   You mean all of them?
19     Q   Yes.
20     A   Yes.
21     Q   Is that correct?
22     A   Yes.
23     Q   And the total running time is in the right-hand
24  column; is that correct?
25     A   Correct.

Page 89

23 (Pages 86 - 89)

| | |
|---|---|
| 1    Q   And it's, for instance, the first one is 32 | 1   catalogs that are all under Labrador.  So you don't -- you |
| 2   seconds? | 2   don't issue any licenses for any of those cues? |
| 3    A   Correct. | 3    A   I do. |
| 4    Q   The next one is 115 seconds; is that correct? | 4    Q   You do.  Okay.  And on those licenses, do you |
| 5    A   Correct. | 5   specify the amount of time, the duration of the cue? |
| 6    Q   How common is it for an end user of an audio visual | 6    A   I don't. |
| 7   work to need -- to only have 32 seconds of an audio visual | 7    Q   Okay.  Is it your contention that any of these cues |
| 8   work, and so they only need 32 seconds of Dungeon Lords, for | 8   owned by Cohen, that to the extent that any end user wanted |
| 9   instance? | 9   to shorten or elongate the cue, that you went back to Cohen |
| 10     MR. JACOBSON:  Objection.  Ambiguous and calls for | 10   and requested approval to do that? |
| 11   expert opinion. | 11     MS. OHIRI:  Objection.  Form.  Vague. |
| 12     MS. OHIRI:  Same objection. | 12     THE WITNESS:  I don't know.  I don't know. |
| 13     THE WITNESS:  It happens. | 13   BY MS. BLAISE: |
| 14   BY MS. BLAISE: | 14    Q   During the term of your relationship with Cohen |
| 15    Q   It happens where it's exactly -- words exactly the | 15   during this -- during this composer agreement from the time |
| 16   same with the audio visual user needs is the exactly the same | 16   you executed it to the time -- during the time that you |
| 17   as what the -- the length of the cue, the duration of the | 17   administered his rights, did you ever go to Cohen and ask him |
| 18   cue? | 18   for approval to shorten or elongate or modify in any way any |
| 19    A   You better ask the question again.  Ask me a | 19   of the cues that were subject to this agreement? |
| 20   question. | 20    A   Yes. |
| 21    Q   I am asking you a question. | 21    Q   You did?  Do you have any correspondence relating to |
| 22    A   What's the question again? | 22   that? |
| 23    Q   You just testified that it's common for -- or it | 23    A   Not with me.  Yes, you have it. |
| 24   happens -- I'm sorry, your testimony was it happens where the | 24    Q   You provided it, you produced it?  Which cue was it |
| 25   end user, the audio -- the person who is creating the audio | 25   related to or cues? |
| Page 90 | Page 92 |

| | |
|---|---|
| 1   visual work needs a cue that is exactly the same length as -- | 1    A   I don't know that, I can tell you that.  It's an |
| 2   as your cues? | 2   e-mail that you have. |
| 3    A   Yes. | 3    Q   Who was it to, if you recall? |
| 4    Q   Your testimony is that it happens? | 4    A   A music supervisor asked for a change of one of his |
| 5    A   Yes. | 5   cues, and I called him and he e-mailed and he responded. |
| 6    Q   How common is it for that to happen? | 6    Q   What was the change? |
| 7     MR. JACOBSON:  Same objections. | 7    A   I think it was something to do with strings, that's |
| 8     THE WITNESS:  I don't know. | 8   all I can remember. |
| 9   BY MS. BLAISE: | 9    Q   Is it your contention that change created a new |
| 10    Q   You don't know how common that is? | 10   copyright? |
| 11    A   (Inaudible.) | 11    A   Nothing more happened. |
| 12     MR. JACOBSON:  Same objections to the whole line. | 12    Q   Did the change occur? |
| 13   BY MS. BLAISE: | 13    A   I don't think so.  I don't know. |
| 14    Q   When issuing an end user license, do you show and | 14    Q   How many sub-publishers do you have for the Spider |
| 15   state the duration used on those licenses? | 15   Cues' library as of -- as of -- hold on, let me give you a |
| 16    A   I don't issue end user licenses. | 16   date.  As of 2014, January 2014, how many sub-publisher |
| 17    Q   To anyone, you don't issue any licenses? | 17   across the world did you have for the Spider Cues' library? |
| 18    A   Despite of this particular library. | 18    A   Four.  Of what date?  I'm so sorry. |
| 19    Q   I'm asking you in -- as you understand production | 19    Q   Starting 2014 to current date. |
| 20   licensing which may encompass your other businesses -- | 20    A   Five. |
| 21     THE REPORTER:  Hold on, hold on.  Wait for her to | 21    Q   Who are they and for what jurisdictions? |
| 22   totally finish. | 22    A   I don't know about the jurisdiction, but Labrador |
| 23   BY MS. BLAISE: | 23   Great Music is ASCAP, Labrador Good Music is BMI, relates to |
| 24    Q   Yeah, wait for me to finish talking. | 24   the ally, Lab Good Music relates to CSAC, Red Great Music |
| 25     Which may encompass your other cues and your other | 25   relates to SOCAN.  And after this contract, I think I started |
| Page 91 | Page 93 |

Veritext Legal Solutions
866 299-5127

1 another SOCAN publishing company because SOCAN has rules that
2 I haven't discovered about something.
3     Q    When you say publishing company, is that a new
4 entity that is not Labrador, Inc., did you create a new
5 entity?
6     A    No, another d/b/a.
7     Q    Another d/b/a?
8     A    Yeah.
9     Q    Okay.  Turning you back to Exhibit J, which is
10 Labrador's response to Cohen's interrogatories.
11    A    Okay.
12    Q    And your response to interrogatory number one, you
13 provided a breakdown of all the royalties that were made to
14 Mr. Cohen over the years from 2003 to 2014; is that
15 correct?
16    A    Royalties as they determine as monies owed to him.
17    Q    You said you made the following payments to
18 Mr. Cohen, what were the -- what were the payments related to
19 if not royalties?
20    A    Always syncing, but sometimes they're not royalties,
21 sometimes they refer to syncing or license money.
22    Q    Okay.  How were you able to answer this question on
23 interrogatory number one?  What records did you review in
24 order to calculate these numbers?
25    A    I'm not sure I can answer that properly, but -- just

Page 94

1 give me a minute.  Checks, checks sent to him.
2     Q    Checks sent to him by you?
3     A    Yeah, by Labrador.
4     Q    Did you turn over all of these checks in
5 discovery?
6     A    I don't think so.
7     Q    To your attorney?
8     A    I don't think I did.
9     Q    Are you able to do that?
10    A    What do you mean by check?  I'm talking about a
11 checkbook.
12    Q    You told me that you reviewed checks, and I'm asking
13 you if --
14    A    I'm sorry, it was checkbook.
15    Q    Checkbook.  Were you able to turn over any document
16 that you reviewed, including your checkbook, to counsel?
17    A    Was I able to?  I was able to.
18    Q    But you didn't?
19    A    I didn't.
20    Q    But you will?
21    A    I will.
22    Q    And did you provide him with any statements to let
23 him know from where this money was being derived?
24    A    No.
25    Q    Did he ever ask you for a statement?

Page 95

1     A    No.
2     Q    Your agreement is 50/50 on synchronization; is that
3 correct?
4     A    Correct.
5     Q    And would you get a statement from the end user or
6 your sub-publisher that would tell you what the use of the
7 cue was for and what the license fee was?
8     A    Yes.
9     Q    Did you review those statements when you were
10 compiling your responses to our discovery requests?
11    A    No.
12    Q    Do you have those statements?
13    A    I might.  Maybe I don't, I'm not sure.
14    Q    Did you use those statements in preparing your tax
15 returns?
16    A    No.
17    Q    How do you go about reporting income on your tax
18 returns?
19    A    I calculate how much I have received, and my --
20 then commissions, which this is about, for example, and my
21 expenses, and I subtract it and I send that to the IRS.
22    Q    How do you know what cues are performing well in the
23 marketplace and what cues are not performing well in the
24 marketplace?
25    A    I don't.

Page 96

1     Q    How do you know what money is owed to you for
2 licenses that are granted?
3     A    I don't.
4     Q    You just take whoever is doing the licensing at
5 their word?
6     A    Yes.
7     Q    Did you try to look for these statements in
8 complying with our discovery requests?
9     A    What statements?
10    Q    The statements from -- that would have allowed you
11 to determine the amounts that you collected back to 2003?
12    A    No.
13    Q    You did not look for the statements?  Are you able
14 to do that now?
15    A    I can try, yes.
16    Q    Do you understand that the -- your discovery
17 obligations require you to look for those documents?
18    A    Yes.
19    Q    Turning your attention to interrogatory number two.
20 The question in interrogatory number two from Mr. Cohen is,
21 explain in detail all efforts you undertook to enforce the
22 requirement under the composer's agreement that the person to
23 whom you licensed the license composition, read Eminem-Esque,
24 could not alter, expand, adapt or translate the license
25 composition without first consulting Cohen.  Your attorney

Page 97

25 (Pages 94 - 97)

Page 98

1  makes a number of objections, however, at the bottom of page
2  five. You respond, the interrogatory assumes a requirement
3  not found in the composer agreement, which among other
4  things, granted Labrador the right to record new structures,
5  elements and arrangements in connection with Mr. Cohen's
6  compositions.
7       Do you still agreement with that statement?
8  A  Where are you reading? Okay.
9  Q  The interrogatory assumes a requirement not found.
10  A  Okay. Okay.
11  Q  Can you read my question back, please?
12     (Record read.)
13     THE WITNESS: Yes.
14  BY MS. BLAISE:
15  Q  And turning to the next page at the top of page six,
16  starting with the sublicenses, can you read that?
17  A  Yeah.
18  Q  The sublicenses, aloud, please.
19  A  The sublicenses also expressly assumed that end
20  users of the compositions would limit the utilization of the
21  master recordings to dubbing or syncing some or all of the
22  compositions to video elements.
23  Q  Keep going.
24  A  The practice of using portions of music library
25  compositions, recordings to fit, sync, or dub to video

Page 99

1  elements is standard in the television, film, and advertising
2  industries. Mr. Cohen was aware and approved this practice.
3  In the present case, three portions of the subject
4  composition from approximately zero to 10, from approximately
5  22 to 33, and from approximately 108 to 115 were used without
6  alteration.
7  Q  So in reading that now, is it your contention that
8  the composition was actually altered, creating a new cue?
9  A  Yes.
10  Q  At what point was it altered to create a new cue in
11  the composition?
12  A  Sections of the cue were moved.
13  Q  Do you understand that a New Zealand Court found the
14  entire cue to be infringing?
15  A  What entire cue?
16  Q  The entire cue that was used.
17  A  Yes, as it was played out. A cue is played from
18  beginning to end.
19  Q  Did you listen to the track, the cue, Eminem-Esque,
20  before you provided it to Beatbox?
21  A  At some point, yeah.
22  Q  How many of these cues would you say are
23  sound-alikes?
24  A  That's a very broad question.
25     MR. JACOBSON: Objection. Ambiguous.

Page 100

1     THE WITNESS: Yeah, really, I don't know.
2  BY MS. BLAISE:
3  Q  What is your understanding of what a sound alike
4  is?
5  A  A sound alike uses some facsimile of another piece
6  of music, whether it's -- can be as simple as feel or a
7  groove.
8  Q  Have you had a musicologist compare the Eminem-Esque
9  track to how it was used in the New Zealand audio visual work
10  and determine that it was not infringing?
11  A  Yes.
12  Q  Which musicologist, what's their name?
13  A  Robert Frink, in the UCLA Department of Music.
14  Q  Did he prepare a report?
15  A  Yes.
16  Q  Have you provided that in discovery?
17  A  Could you -- I'm sorry, I know we're beyond this.
18  Can you rephrase that question to me again that you just
19  asked, the first question?
20     MS. BLAISE: I'll have the court reporter read it
21  back.
22     (Record read.)
23     THE WITNESS: No, I have not.
24     MS. BLAISE: You have not.
25  BY MS. BLAISE:

Page 101

1  Q  So you'd like to change your earlier testimony
2  saying that you had and that you had prepared a report?
3  A  You asked if they compared the two.
4  Q  I asked you that, and I also asked you if they
5  prepared a report and you said that he had.
6  A  Yes, I shouldn't have said that.
7  Q  Okay. So there has not been no report prepared?
8  A  For what?
9  Q  Comparing the two works.
10  A  Yes, there is no report on that -- that specific
11  thing.
12  Q  Has there been a report prepared in some other
13  way?
14  A  Yes.
15  Q  What way has a report been prepared?
16  A  Deciding whether the SQ MS MC Eminem-Esque cue was
17  infringing on "Lose Yourself."
18  Q  So you have a report prepared to compare the two
19  songs?
20  A  You keep using the word compare, compare what?
21  Q  The copyright work at issue, "Lose Yourself," the
22  Eminem song.
23  A  Yes.
24  Q  And Eminem-Esque?
25  A  Yes.

26 (Pages 98 - 101)

1  Q   You have a report for that?
2  A   Yes.
3  Q   Have you turned that over in discovery?
4  A   Yes.
5      MS. OHIRI:  Wait, objection, it misstates his
6  earlier testimony.
7      MS. BLAISE:  He just said that he had a report
8  prepared.
9      MS. OHIRI:  I know, but what he was trying to say is
10 that that report is not a report that compares the two works.
11 So what report do you have?
12 BY MS. BLAISE:
13 Q   What report do you have?
14 A   I just explained it to you.  You keep using the word
15 compare, then you use the word Eminem -- Cohen's cue compared
16 to "Lose Yourself," you said before compare Cohen's cue to
17 the cue used in the video.
18 Q   What report do you have?
19 A   I said again, two musicologists assessed whether the
20 Cohen original cue was infringing or not.
21 Q   And do you have the report?
22 A   Yeah, we've provided it.
23 Q   Okay.  And are you aware that a New Zealand judge
24 found for it to be infringing, found for the Eminem-Esque
25 track to be infringing on "Lose Yourself"?

Page 102

1  A   No, they did not.  They stated that the track used
2  in the video was infringing.
3  Q   And which -- in your answers to interrogatories, you
4  admit that from .00 to 10 seconds in, and from 22 seconds to
5  33 seconds in and from 108 to 115 that was used directly from
6  Eminem-Esque?
7  A   Yes.
8  Q   And so I'm asking you, you're aware that the New
9  Zealand Court found the Eminem-Esque track, including those
10 components, to be infringing of Eminem's "Lose Yourself"?
11 A   I'm not sure why you're not understanding that a
12 creation of music is sections of players playing sections and
13 putting them together.  If you had Paul McCartney singing a
14 tune and you took his verse and put it into the beginning,
15 you change the tune, you keep mixing that up.
16     MS. BLAISE:  Move to strike as nonresponsive to the
17 question.  Can you read the question back to him, please.
18     (Record read.)
19     THE WITNESS:  No, I'm not aware of that.
20 BY MS. BLAISE:
21 Q   You're not aware of it?
22 A   No.
23 Q   Did you participate in the proceeding in New
24 Zealand?
25 A   Yes.

Page 103

1  Q   Up to what time did you participate?
2  A   I don't know.  I'm not sure how to answer that.
3  Q   You're saying you're unaware of the judge finding
4  Eminem-Esque as being infringing of Eminem "Lose Yourself"?
5  A   Yes.
6  Q   And I'm wondering when you stopped following the
7  case, if you're unaware of that fact?
8  A   I never stopped following the case.
9  Q   Okay.  So are you aware of the judge's ruling?
10 A   The judge ruled the video, the music used in the
11 video was infringing.  She or someone labeled it that, I did
12 not label that cue that -- that cue to be what you're
13 referring to.  She -- someone has labeled the cue different
14 than what it is.  The original cue was labeled SQ MC
15 Eminem-Esque.  It goes from 225 -- two minutes and 25
16 seconds, and it runs from beginning to the end accordingly.
17 Q   And you understand based on your answers to
18 interrogatories that it's a common practice of using portions
19 of music in production music licensing?
20 A   Yes.
21 Q   All right.  Turning to Exhibit H, which is the
22 Labrador and Beatbox music agreement.
23 A   The Labrador what?  I'm sorry.
24 Q   The Labrador and Beatbox --
25     MS. OHIRI:  This.

Page 104

1      THE WITNESS:  Okay.
2  BY MS. BLAISE:
3  Q   And you've testified earlier today that you signed
4  this -- this agreement, and that this is the operative
5  agreement; is that correct?
6  A   Yes.
7  Q   Do you have amended answer to complaint, Labrador's
8  amended answer to Beatbox's complaint perhaps?
9      MR. JACOBSON:  Probably.  Can we take five minutes?
10     MS. BLAISE:  Yeah.
11     (Break in deposition.)
12     (Discussion off the record.)
13     THE WITNESS:  Okay.  You didn't let me fully answer
14 a question, and I'd like to answer that now.
15 BY MS. BLAISE:
16 Q   What question was that?
17 A   You asked what musicologists were assessed the
18 song.
19 Q   Okay.
20 A   Okay.  So Robert Frink from UCLA, head of the music
21 department at UCLA, and Robert Wallser, W-A-L-L-S-E-R, from
22 Case Western at his music department both assessed that the
23 original M SQ MC Eminem-Esque cue was not infringing on "Lose
24 Yourself."
25 Q   And did you hire either of these musicologists to

Page 105

27 (Pages 102 - 105)

1  testify in the New Zealand case?
2    A  I tried to, yes, I did.
3    Q  How did you try to?
4    A  I'm sorry, what does hire mean?
5    Q  Did you pay them to come and render an opinion
6  before the court in that New Zealand case?
7    A  No, I asked other parties to do that.
8    Q  What other parties did you ask to do that?
9    A  The New Zealand election committee.
10   Q  I'm sorry?
11   A  The New Zealand National Party.
12   Q  You asked the National Party to hire either Frink
13  and/or Wallser?
14   A  Correct.
15   Q  How did you ask them?
16   A  On the phone with my attorney, my New Zealand
17  attorney.  And there's more.
18   Q  There's more what?
19   A  I also had an application called Shazam, which is
20  the most used audio recognition application in the world, to
21  the point where it actually has its own television program
22  now, Shazam.  And when Shazam played "Lose Yourself" and the
23  original Cohen cue back to back, it never recognized it to be
24  the "Lose Yourself" cue.
25   Q  Did you hire someone from Shazam to come in and
Page 106

1  provide that testimony --
2    A  No.
3    Q  Please let me finish my question.
4    A  Sorry.
5    Q  Did you hire someone from Shazam to come in and
6  testify before the New Zealand Court that the track was
7  non-infringing?
8    A  No.
9    Q  Did you testify in the New Zealand court about the
10  non-infringement?
11   A  Yes.
12   Q  And the judge still found it to be infringing; isn't
13  that true?
14   A  What is it?
15   Q  Eminem-Esque.
16   A  No.
17   Q  Okay.  Turning --
18   A  I have something else to say, if I may.
19   Q  There's no question pending.  There's no question
20  pending.
21   A  I didn't answer the question fully.
22       MS. OHIRI:  Just answer her question.
23       THE WITNESS:  I didn't answer her question fully.
24  BY MS. BLAISE:
25   Q  What question didn't you answer fully?
Page 107

1    A  You keep asking me about the standard of the
2  industry of cutting up cues into sections, that's what you're
3  asking me about.
4    Q  I think your answer to discovery fully states
5  your --
6    A  I don't think it does.
7    Q  Well, then you can amend your responses.
8    A  Okay.
9    Q  Okay.  Turning your attention to what we've marked
10  as K, which is the complaint.  Do you see the complaint?
11   A  Is this K?
12       (Deposition Exhibit K marked for identification by
13        the court reporter.)
14       (Deposition Exhibit L marked for identification by
15        the court reporter.)
16  BY MS. BLAISE:
17   Q  Yes.
18   A  Okay.
19   Q  And this is going to require you to look at K and L.
20  Which L will be your answer, amended answer.
21   A  Okay.
22   Q  Turning to paragraph 8.
23   A  Of?
24   Q  Of K.
25   A  Okay.  Moreover plaintiffs executed --
Page 108

1    Q  Yes, that's the paragraph.  Read that.
2    A  Out loud?
3    Q  Please.
4    A  Moreover plaintiff and defendants executed an
5  agreement on April 1st, 2009 herein after the 2009 agreement,
6  binding them to the laws and exclusive jurisdiction of the
7  State of California, see attached Exhibit A.
8    Q  Okay.  Now, looking at your answer on Exhibit L to
9  paragraph 8.
10   A  I'm not sure where to go.
11   Q  Go to paragraph 8.
12   A  Okay.
13   Q  Do you see your answer there?
14   A  Yes.
15   Q  What is your answer?
16   A  Labrador denies the allegations contained in
17  paragraphs eight and nine.
18   Q  Why did you deny the allegations contained in
19  paragraph eight?
20   A  I think I read number nine to mean that the New
21  Zealand Court already has jurisdiction over the case.
22   Q  I'm asking about paragraph eight.
23   A  But my answer is with reference to eight and nine.
24   Q  And I'm asking you about paragraph eight.
25   A  Okay.
Page 109

28 (Pages 106 - 109)

| | |
|---|---|
| 1   Q   You denied both paragraph eight and paragraph nine, | 1   Q   You did deny paragraph eight of the complaint in |
| 2   and I'm asking you why you denied paragraph eight. | 2   your answer, in your amended answer that's signed by you.  So |
| 3   A   But they're combined here. | 3   do you admit the allegations contained in paragraph eight now |
| 4   Q   It was your choice to combine them. | 4   as you sit here today and you read paragraph eight, do you |
| 5   A   I did. | 5   admit those allegations? |
| 6   Q   Okay.  And so my question is, why did you deny the | 6   A   I'm not sure what allegations means, but I admit |
| 7   allegations contained in paragraph eight? | 7   this to be true, yes. |
| 8   A   The combination of the two is why I combined them. | 8   Q   An allegation is the sentence that's contained in |
| 9       MS. OHIRI:  Just answer her question.  If you don't | 9   the paragraph, that's called an allegation. |
| 10   know the answer, just say you don't know. | 10   A   Mm-hm. |
| 11       THE WITNESS:  I don't know what to tell you.  I | 11   Q   Okay.  Turning to Exhibit G, which is the composer |
| 12   cannot tell you, I don't know, but the two of them together | 12   agreement; correct? |
| 13   are why I answered that. | 13   A   Okay. |
| 14   BY MS. BLAISE: | 14   Q   Reading paragraph 3.2, under accounting. |
| 15   Q   Okay.  Please read paragraph eight from the | 15   A   Yes. |
| 16   complaint again. | 16   Q   Can you read that paragraph for me, please? |
| 17   A   Moreover the plaintiff and defendants executed an | 17   A   Owner shall pay composer my -- |
| 18   agreement on April 1st, 2009 herein after the 2009 agreement | 18   Q   3.2. |
| 19   binding them to the laws and exclusive jurisdiction of the | 19   A   Oh, I'm so sorry. |
| 20   State of California, see attached, Exhibit A. | 20   Q   It's okay. |
| 21   Q   Do you admit that you executed an agreement with the | 21   A   For royalty accounting and all the purposes, any |
| 22   plaintiff on April 1st, 2009? | 22   versions of the composition will be deemed to include each |
| 23   A   Yes. | 23   short or longer version or edited, altered version of the |
| 24   Q   Do you admit that the agreement previously marked | 24   compositions. |
| 25   as -- I'll tell you what exhibit number it is.  That is the | 25   Q   So this agreement contemplates a shorter or longer |
| Page 110 | Page 112 |

| | |
|---|---|
| 1   agreement, but yours isn't marked.  So I need to know what | 1   versions or edited and altered versions; is that correct? |
| 2   the exhibit number was.  Do you know? | 2   A   Yes. |
| 3       MR. JACOBSON:  I think it's H.  The 2009 agreement? | 3   Q   And in the composer's representations and warranties |
| 4       MS. BLAISE:  The 2009. | 4   in that same exhibit, Exhibit G, paragraph four. |
| 5       MS. OHIRI:  It's H. | 5   A   Where are you going? |
| 6   BY MS. BLAISE: | 6   Q   It's Exhibit G, the composer agreement. |
| 7   Q   Yeah, Exhibit H.  You do admit that Exhibit H is the | 7   A   Yes. |
| 8   agreement that was controlling with you and the plaintiff; is | 8   Q   Paragraph four. |
| 9   that correct? | 9   A   Four. |
| 10   A   Yes. | 10   Q   So the next section underneath accounting. |
| 11   Q   Okay.  In looking at Exhibit H, do you have it in | 11   A   Yes.  Okay.  Yes. |
| 12   front of you? | 12   Q   And what is 4.1 say? |
| 13   A   Yes. | 13   A   Composer represents and warrants that the |
| 14   Q   Looking at paragraph 20, which is on page 5. | 14   composition, with an S, if it is his sole exclusive and |
| 15   A   Yes. | 15   original work and is capable of copyright protection by owner |
| 16   Q   What does that say? | 16   throughout the territory. |
| 17   A   This agreement shall be binding and shall enter into | 17   Q   And 4.2. |
| 18   the benefit of the parties hereto, their successors and | 18   A   Composer represents and warrants that no adverse |
| 19   assigns and shall be construed in the accordance with the | 19   claims exist or will exist with respect to the composition, |
| 20   laws and exclusive jurisdiction in the State of California | 20   with S, and the composition, with S, does not infringe upon |
| 21   with the USA. | 21   or violate copyrights or any other rights whatsoever of any |
| 22   Q   Now that you've had a chance to read that paragraph | 22   person, firm, or entity. |
| 23   and agree that this is the binding agreement, do you still | 23   Q   And 4.3. |
| 24   deny paragraph eight of the complaint? | 24   A   Composer represents that the performance of the |
| 25   A   I never did. | 25   compositions is owned and/or paid for by the composer and |
| Page 111 | Page 113 |

29 (Pages 110 - 113)

1 that the composer holds owner and its associates harmless to
2 any claim thereof.
3    Q   In 4.3, who are its associates, what is that
4 referring to?
5    A   I don't know.
6        MR. JACOBSON:  Objection.  Calls for speculation.
7        THE WITNESS:  I don't know.
8 BY MS. BLAISE:
9    Q   And 4.4, what does that say?
10   A   Composer represents and warrants that composer has
11 the full and exclusive right and authority to enter into this
12 agreement and to make granting rights contained here and to
13 owner.
14   Q   Did you ever request for Michael Cohen to indemnify
15 Labrador as to relates to the claims against Eminem for the
16 use of Eminem-Esque?
17       MR. JACOBSON:  Objection.  Calls for a legal
18 conclusion.
19       MS. OHIRI:  Same objection.
20       THE WITNESS:  I don't know what that means.
21 BY MS. BLAISE:
22   Q   Did you ever make a demand on Cohen to pay for your
23 legal defense of this claim?
24       MR. JACOBSON:  Same objection for this line.
25       THE WITNESS:  I'm not sure.

Page 114

1 relation?
2    A   Good.  My attorney in the U.S. served Michael Cohen
3 paperwork for that matter, and he did not respond.
4    Q   Have you provided that paperwork in discovery?
5    A   Yes, yes.
6    Q   Has it been turned over to us?
7        MS. OHIRI:  I'm sorry, what paper are you referring?
8        THE WITNESS:  We served -- Stuart Wallach served
9 Michael Cohen when the New Zealand trial wasn't going on,
10 that's why I wasn't being mean, I don't know what it meant
11 for -- he was served and he didn't respond.
12       MS. OHIRI:  Whatever New Zealand documents,
13 pleadings that we had, we turned over.
14       THE WITNESS:  Okay.
15       MS. BLAISE:  I'm not asking about pleadings, I'm
16 asking about what was tendered -- he's saying that there was
17 a demand sent to Cohen by his attorney, and I'm wanting to
18 know --
19       MS. OHIRI:  I wasn't the attorney that did it.
20 So...
21 BY MS. BLAISE:
22   Q   So you'll re-provide those to your attorney and then
23 she'll provide them to me, to the extent that they haven't
24 already been provided?
25   A   If I have them, I'll do it again.

Page 116

1 BY MS. BLAISE:
2    Q   You're not sure if you did?  Is there anything that
3 would refresh --
4    A   Can I talk to her for a second?
5    Q   Not while a question is pending.
6        Is there anything that would refresh your
7 recollection about whether or not you asked Michael Cohen --
8    A   That's three different questions --
9        THE REPORTER:  Hold on.
10       MS. OHIRI:  You have to let her finish.
11       MS. BLAISE:  It's not three different questions.
12 Can you read back --
13       THE REPORTER:  I'll read back what I got.  You just
14 have to give her a second to finish and your attorney to
15 object, and it really helps me out too.
16       THE WITNESS:  All right.
17       (Record read.)
18 BY MS. BLAISE:
19   Q   To defend you as it relates to Eminem's claims
20 against Eminem-Esque?
21   A   I'm sorry, I don't know the definitions of these
22 terms, defend me, pay me money, I don't mind telling you what
23 we did with -- in reference to Cohen and in regards to the
24 New Zealand election.
25   Q   Okay.  Why don't you then tell me what you did in

Page 115

1        MS. OHIRI:  If they exist.
2        MR. JACOBSON:  Although I'll reiterate same
3 objection for this line.
4        MS. BLAISE:  What's the objection?
5        MR. JACOBSON:  Calls for a legal conclusion.
6        MS. BLAISE:  Asking for documents that have been
7 provided calls for a legal conclusion?
8        MR. JACOBSON:  All right.  Maybe not that, but for
9 the remainder of the -- those questions that called for --
10 that wasn't that one, that preceding that one.
11       MS. BLAISE:  One might say that your objection is
12 waived.
13       MR. JACOBSON:  No, I was reiterating that for one --
14       THE WITNESS:  I can't make notes.
15 BY MS. BLAISE:
16   Q   For the record, you're going to find those
17 documents?
18   A   I hope I remember.  I have no notes, but I probably
19 will remember, yeah.
20       MS. OHIRI:  To the extent they exist.
21 BY MS. BLAISE:
22   Q   But you have a relationship with the attorney
23 still?
24   A   Yes.
25   Q   So you can request the documents from your

Page 117

30 (Pages 114 - 117)

1 attorney?

2   A   Yes.

3   Q   And then your attorney can submit them to this

4 attorney?

5   A   Yes.

6   Q   Okay. Thank you.

7   A   Have you finished the question, then?

8   Q   That question, yes.

9   A   Okay. Can I talk to her for a second?

10   Q   Okay. We can take a break.

11       (Break in deposition.)

12       (Discussion off the record.)

13 BY MS. BLAISE:

14   Q   While we were off the record, you had an opportunity

15 to speak with your attorney, was there something else you

16 wanted to add to your testimony based on that conversation?

17   A   Back in the question I was asking about for standard

18 of industry, the standard of the industry also, as I

19 understood it, was that the AMCOS agreement, the contract

20 with Beatbox, as I understand it, had set there can -- no

21 adaptations of any matter can happen, that was in the

22 contract. So adaptations was part of what we were talking

23 about here.

24   Q   Did you read the AMCOS agreement before you entered

25 into the 2009 agreement that is marked as Exhibit H?

Page 118

1   A   I had no -- Beatbox did not provide it to me, they

2 simply wrote paragraphs saying -- saying, this is what we do,

3 and you live with it, and so I did.

4   Q   And so the answer to your question --

5   A   No.

6   Q   I'm trying to make a record.

7       MS. OHIRI: You have to wait, just give her some

8 time to finish the question, give it a moment.

9 BY MS. BLAISE:

10   Q   Okay. Thank you. Turning to Exhibit G, the

11 composer agreement.

12   A   Yes.

13   Q   Turning to paragraph 6, indemnification.

14   A   Okay.

15   Q   If you could just read the first part of that.

16   A   Composer will indemnify and hold owner and all

17 entities associated with owner free, safe, and harmless from

18 and against any and all losses, damages, actions, causes of

19 action, expenses or liabilities, including without

20 limitation, reasonable attorneys' fee and costs, whether

21 incurred before or after the entry of judgment resulting from

22 or by reasons of any material breach of any representation or

23 warrant to be made herein by composer.

24   Q   That's all I need you to read. Do you contend that

25 Michael Cohen violated any of his representations and

Page 119

1 warranties in this agreement?

2       MR. JACOBSON: Objection. Calls for legal opinion

3 and conclusion.

4       THE WITNESS: Do I contend that he --

5 BY MR. JACOBSON:

6   Q   Breached any of the representations and warranties

7 to refer you -- we went through the representations and

8 warranties previously.

9   A   No.

10   Q   That's paragraph four.

11   A   I don't think he did.

12   Q   You don't think he did?

13   A   I don't know.

14       MS. OHIRI: I'm going to object it calls for a legal

15 conclusion.

16       THE WITNESS: Yeah, I have to -- yeah, I don't know.

17 I don't know.

18 BY MS. BLAISE:

19   Q   Looking at paragraph seven, assignments, it says,

20 owner and its associates will have the right to assign this

21 agreement.

22   A   Yes.

23   Q   What does the term, its associates, mean in

24 paragraph 7.1?

25       MS. OHIRI: Objection. Calls for a legal

Page 120

1 conclusion. Calls for an expert opinion.

2 BY MS. BLAISE:

3   Q   As you understand it.

4       MR. JACOBSON: I join in the objection, and also

5 that it calls for speculation and for -- and that it's

6 ambiguous.

7       THE WITNESS: I don't know.

8 BY MS. BLAISE:

9   Q   What is your definition of adaptation?

10       MS. OHIRI: Objection. Form. Vague.

11       MR. JACOBSON: I join, and calls for a legal

12 conclusion and opinion, considering -- in this context.

13       MS. BLAISE: I'll rephrase.

14 BY MS. BLAISE:

15   Q   In your experience in music production licensing,

16 what is your definition of an adaptation?

17   A   It is about the widest defining word, it can't be

18 defined any wider. To adapt something, it can mean almost

19 anything you want it to mean.

20   Q   Is using a segment of a track or an edited version,

21 does that qualify as an adaptation under your definition?

22   A   Yes.

23   Q   Have you spoken to or communicated with Cohen since

24 your attorney sent the documents to him that you referenced

25 earlier in your testimony?

Page 121

31 (Pages 118 - 121)

1   A   No.
2   Q   Have you continued to pay Cohen any -- any monies
3   that have come in as a result of licensing his works under
4   the term of your agreement?
5   A   No.
6   Q   When did you stop paying him?
7   A   When the lawsuit started, and as soon as his next
8   statement -- his next check was due after that.
9   Q   Why did you stop paying him?
10   A   My attorney suggested I do.
11   Q   Why?
12   MR. JACOBSON:  Objection.  Calls for speculation.
13   THE WITNESS:  Yeah, I can't tell you the answer to
14   that.
15   MR. JACOBSON:  And that's it.
16   BY MS. BLAISE:
17   Q   Did Cohen send you a demand to pay him?
18   A   No.
19   Q   After that?  Have you ever told any of your other
20   sub-publishers to pull the track Eminem-Esque from being
21   licensed?
22   A   Yes.
23   Q   When did you do that?
24   A   Did you say other or --
25   Q   Any other sub-publisher.

Page 122

1   A   What does other mean, besides Beatbox or...
2   Q   You testified earlier that you had five
3   sub-publishers.
4   A   No, you don't -- I don't understand what you're
5   talking about.
6   Q   Okay.  Beatbox was your sub-publisher during --
7   A   Yes.
8   Q   Let me finish the question -- for Australia and New
9   Zealand; correct?
10   A   Yes.
11   Q   Okay.  Are there other jurisdictions, territories,
12   where you have other sub-publishers?
13   A   Yes.
14   Q   Okay.  Who are those other sub-publishers, for the
15   Spider Cues, from 2014 on?
16   A   Sub-publisher from France called CDM, sub-publisher
17   in -- from 2014 on or prior to that or what are you asking
18   me?
19   Q   Let's say from 2014 on.
20   A   This lawsuit was before that.
21   Q   Let's just start with 2014.
22   A   In 2014?
23   Q   Yeah, starting January 1, 2014, who were --
24   A   CDM for France, I believe Five Alarm in the United
25   States -- it might be after that date, I'm not sure, I'm not

Page 123

1   sure of the date, if I can give you a proper answer about
2   that date.
3   Q   Do you have more than one sub-publisher in the U.S.?
4   A   No.
5   Q   Okay.  So who has been your U.S. Sub-publisher?
6   A   Five Alarm.
7   Q   Okay.  Germany?
8   A   Sonoton, S-O-N-O-T-O-N, but I don't know when they
9   started.
10   Q   Did you have any other before Sonoton?
11   A   In Germany, no; in Austria, the drum in Austria is
12   the combo.
13   Q   Sure.  Japan?
14   A   Again, I don't know about the date, but yes, Japan
15   is Sakura Notes, S-A-K-U-R-A, Notes, two words.
16   Q   Did you have someone before Sakura Notes?
17   A   No Japan, no.
18   Q   Okay.  Korea?
19   A   Modoocom, M-O-D-O-O-C-O-M, but I don't know the date
20   it started.
21   Q   Did you have someone before Modoocom?
22   A   In South Korea, no.
23   Q   Okay.  Eastern Europe?
24   A   Apollo, which is out of Denmark, A-P-O-L-L-O, had
25   owned -- had the territory of Poland as well.

Page 124

1   Q   Did you have anyone before them?
2   A   No.
3   Q   And then the U.K.?
4   A   I don't remember, I don't think so.
5   Q   Okay.  At any time after -- strike that.
6   Have you alerted any of these sub-publishers to pull
7   the Eminem-Esque cue from their catalogs for offering?
8   A   Labrador Entertainment, Inc. directed and requested
9   all of its sub-publishers, including Beatbox, to remove the
10   cue in 2012, 2014.  All the sub-publishers I had were
11   informed, directed and if Beatbox had, in fact, removed the
12   cue and changed the library design, according to using the
13   Excel file that Peter Baker had designed for us to use for
14   cues in 2009 as a format to use for defining a library, 2009,
15   as he designed all the Spider Cues, using that format to
16   change the library so that it removed the cue, if Beatbox had
17   done that, we would not be in this lawsuit, there would be no
18   litigation.
19   Q   Why was -- why do you contend that the Eminem-Esque
20   cue was removed -- you contend that it was removed in 2012;
21   is that correct?
22   A   I contend that I directed Beatbox and all the
23   sub-publishers to do that.
24   Q   Do you have any documentary evidence that says
25   remove the Eminem-Esque cue from circulation?

Page 125

32 (Pages 122 - 125)

| | |
|---|---|
| 1 A Yes. | 1 A My understanding. |
| 2 Q It says that expressly? | 2 Q Let me ask my question, please, before you start |
| 3 A It doesn't have to say that. | 3 talking. |
| 4 Q I'm asking, it's a question. | 4 A Okay. |
| 5 A What's the question? | 5 Q Do you understand how Beatbox sends out music to its |
| 6 Q Do you have any documentary evidence that expressly | 6 potential clients? |
| 7 says remove the Eminem-Esque cue from circulation? | 7 A I have an understanding of it. |
| 8 A Yes. | 8 Q Okay. What is your understanding? |
| 9 Q In 2012? | 9 A That Beatbox has external drives with their player |
| 10 A No. | 10 on it, and they also include in that external drive the |
| 11 Q Okay. But you do have documentary evidence that | 11 various libraries they represent and they send that out to |
| 12 says remove the Eminem-Esque cue? | 12 clients, I think that's what happens. |
| 13 A Yes. | 13 Q Okay. Did you also offer any of the cues from |
| 14 Q When is that from? | 14 Cohen, including Eminem-Esque, on your website? |
| 15 A In 2012, I explicitly sent an e-mail to Beatbox and | 15 A No. |
| 16 all sub-publishers, download in Excel file, follow the Excel | 16 Q No end user could come to your website and listen to |
| 17 file, that's the definition of the library. | 17 any of your cues at any time? |
| 18 Q Okay. The question was, do you have any documentary | 18 A They could listen to them. |
| 19 evidence that expressly states, remove the Eminem-Esque cue | 19 Q Okay. Can you still here Eminem-Esque on your |
| 20 from your catalog? And your testimony initially was, not in | 20 website? |
| 21 2012, and now I'm asking you, is there any time after that | 21 A No. |
| 22 expressly says remove the Eminem-Esque cue from our | 22 Q When did you remove Eminem-Esque from your |
| 23 catalog? | 23 website? |
| 24 A No. | 24 A In 2014, I think. |
| 25 Q Do you understand that there's a difference in | 25 Q Why did you remove it? |
| Page 126 | Page 128 |

| | |
|---|---|
| 1 changing the format in which your music goes out to possible | 1 A I removed it because I hit buttons accidentally and |
| 2 third-party users and in removing content that's already been | 2 was able -- almost accidentally hitting buttons to remove it. |
| 3 issued for licensing from third-party users? Do you | 3 The site was designed by an Indian company, and I could never |
| 4 understand that there's a difference or do you not | 4 manipulate the site at all successfully to remove things, |
| 5 understand? | 5 move them around, move anything around, or even work with it. |
| 6 MS. OHIRI: Objection. Form. | 6 Occasionally when I would hit a button, it would delete or |
| 7 MR. JACOBSON: Objection. Vague and ambiguous. | 7 even remove something. The site was attacked with viruses, |
| 8 THE WITNESS: I don't understand what the | 8 at least a half a dozen times, maybe more, and the only |
| 9 question. | 9 option I had was to call the host and use the very original |
| 10 MS. BLAISE: Okay. I'm going to restate the | 10 first zion and put it back up again. The site never licensed |
| 11 question. | 11 anything off of itself, no one ever licensed off the cue, |
| 12 BY MS. BLAISE: | 12 that I know of, no music advisor or editor or end user ever |
| 13 Q Do you understand how sub-publishers, such as | 13 even used or played anything on it, I have no reason to |
| 14 Beatbox, send music out to their potential clients? | 14 believe anybody ever did that. And it was a useless facade |
| 15 A Yes. | 15 of a cue of a site. |
| 16 Q How does that happen? | 16 MS. BLAISE: Move to strike all portions of that |
| 17 A Ask him. | 17 answer that were nonresponsive to the question. |
| 18 Q No, I'm asking you, you said you understand, and I'm | 18 BY MS. BLAISE: |
| 19 asking you. | 19 Q When you accidentally deleted the Eminem-Esque track |
| 20 A I understand that happens. | 20 from your website, did you accidentally delete any other |
| 21 Q Do you know how? | 21 tracks? |
| 22 A It happens different with different sub-publishers | 22 A I don't remember. |
| 23 I'm quite sure. | 23 Q Have you ever deleted any other tracks other than |
| 24 Q I'm asking you about Beatbox, do you know how | 24 Eminem-Esque from your website? |
| 25 Beatbox sends its music out to its -- | 25 A I don't remember. |
| Page 127 | Page 129 |

33 (Pages 126 - 129)

1    Q   Do you have any way of knowing if whether or not
2  Eminem-Esque was publicly performed through the player on
3  your website?
4    A   No.
5    Q   Do you have any tracking data for who visited your
6  website when Eminem-Esque was up?
7    A   No.
8    Q   Are you currently holding any money that belongs to
9  Cohen for the licensing of any of his cues under the terms of
10  your composer agreement, which is marked as Exhibit G?
11    A   Yes.
12    Q   How much money are you holding for him?
13    A   It's listed -- you already looked at it, it's listed
14  there on one of these forms, but yes.
15    Q   Do you know it off the top of your head?
16    A   No.
17    Q   Was it in your answers to discovery?
18    A   He can probably tell us where it is.
19       MR. JACOBSON:  Yep, there are numbers listed in
20  response to interrogatory's one.  And I don't know if those
21  are the right numbers.
22       MS. OHIRI:  No.
23       THE WITNESS:  We went over it many times, a couple
24  of times you both referred to it.
25       MS. OHIRI:  No, she asked is there any monies that

Page 130

1  you're withholding.
2       THE WITNESS:  That's the list.  Oh, I'm so sorry.
3  I'm so sorry.  No, no, I'm so sorry, pardon me, pardon me.
4  Yes, there's money I'm withholding, yes.
5  BY MS. BLAISE:
6    Q   Okay.  How much is it?  How much are you withholding
7  that belongs to Cohen?
8    A   I'm going to guess $4,000.
9       MR. JACOBSON:  Is that an estimate?
10       THE WITNESS:  That's an estimate.
11       MS. OHIRI:  We don't want you to guess or
12  speculate.
13  BY MS. BLAISE:
14    Q   And why are you withholding it?
15    A   You asked me that question already, my attorney told
16  me to.
17    Q   Your current attorneys or your previous attorneys?
18    A   No, previous attorneys.
19    Q   The $4,000, approximately $4,000 that you're
20  withholding that belongs to Cohen, do you know what cues that
21  $4,000 relates to?
22    A   No.
23    Q   Would you be able to review documents that would
24  allow you to know what that $4,000 relates to?
25    A   Yes.

Page 131

1    Q   What documents are those?
2    A   Statements from sub-publishers.
3    Q   Do you have those statements?
4    A   I do have those statements.
5    Q   Can you send them to your lawyer, please?
6    A   Yes.  Again, I can't make notes, but I'll try and
7  remember that.
8    Q   How many composers do you currently have that you
9  pay semi annually?
10    A   That are actually paid or that -- that get paid?
11    Q   That get paid, mm-hm, approximately.
12    A   Approximately 30.
13    Q   And you said Labrador's gross income for 2019 was
14  approximately zero?
15    A   You said '18 before.
16    Q   2018?
17    A   Yeah, zero.
18    Q   Gross income?
19    A   Yeah.
20    Q   Do you understand the difference between gross and
21  net?
22    A   No, net -- net income.
23    Q   Okay.  What is Labrador's gross income for 2018?
24    A   I don't know the answer.
25    Q   Is there a document that you could refer to that

Page 132

1  would allow you to answer that question?
2    A   Yes.
3    Q   What document is that, your tax return?
4    A   A CPA, my certified accountant will prepare it for
5  you.
6    Q   And you'll get it to your lawyer?
7    A   I'll get it to her, yes.  Can I make any notes with
8  a pen on the top of it to make sure I deliver to you what I
9  want?
10    Q   I think your attorney is making notes.
11    A   Okay.  Good.  Thanks.
12    Q   Okay.  Turning back to Exhibit G.
13    A   This one?
14    Q   Yes.  Turning to 10.2.
15    A   Yes.
16    Q   If you can read that.
17    A   If a claim is presented against owner or its
18  associates in which it is asserted -- it is -- I don't know
19  what that word is.
20    Q   Asserted.
21    A   That he, composition, meaning the -- I think it's a
22  typo -- the compositions infringe upon or violate or
23  interfere with the rights of any person, firm, or entity,
24  owner shall notify composer of such claim in writing and
25  composer may participate on the defenses of such claim;

Page 133

34 (Pages 130 - 133)

1  however, owners and its associates shall have the right to
2  control the defense and to settle or otherwise dispose of
3  such claim or action in any reasonable business manner.
4      Q   Did you notify the composer, Michael Cohen, of such
5  claim and in writing pursuant to this paragraph?
6      MS. OHIRI: Objection. Form. Vague.
7      THE WITNESS: Yes, I already answered that.
8  BY MS. BLAISE:
9      Q   You did notify him in writing?
10     A   Yes.
11     Q   And who is referred to as, its associates, in this
12  paragraph?
13     A   I don't know.
14     Q   How much money does Labrador earn in performance
15  royalties paid by ASCAP or BMI or SESAC?
16     A   What do you mean earn?
17     Q   How much is paid by ASCAP, BMI or SESAC?
18     A   In what term?
19     Q   To Labrador.
20     A   What moment? What time are you talking about?
21     Q   Annually, for 2018.
22     A   Annually, how much -- I'll repeat the question, how
23  much performance rights monies is paid to Labrador -- last
24  year or...
25     Q   Yeah, 2018.

Page 134

1      A   2018, just give me a minute, about $15,000.
2      Q   Thank you.
3      A   That's a guess.
4      Q   Got it. Okay. Turning back to Exhibit H, which is
5  the Labrador and Beatbox agreement. Has the Eminem-Esque cue
6  been retitled on that ASCAP database?
7      A   I'm sorry?
8      Q   The Eminem-Esque cue, was it retitled on the ASCAP
9  database?
10     A   I don't know.
11     Q   Did you retitle it?
12     A   No.
13     Q   Have you made any changes to the Eminem-Esque cue on
14  the ASCAP database --
15     A   No.
16     Q   Hold on. At any time since entering into the
17  agreement marked as Exhibit G?
18     A   I don't think so, no. The answer I gave about
19  publishing monies, it's much less than that, but I can get
20  back to you on that.
21     Q   On the performance rates?
22     A   The performance rates.
23     Q   Okay. Since entering into the agreement marked as
24  Exhibit H, have you ever sent Beatbox a written letter
25  stating that they're in default of any of the provisions of

Page 135

1  the agreement?
2      A   I'm not sure what that means, to send a letter. Is
3  an e-mail a letter?
4      Q   Looking at paragraph 13 of Exhibit H.
5      A   13, yeah.
6      Q   Paragraph 13. Have you ever sent such a letter?
7      A   I think this means that I terminate them with a
8  letter, and I did, yes.
9      Q   If you could just read the paragraph aloud to the
10  point -- it's just such a long sentence, I'm trying to not
11  make you read the whole thing, but hold on.
12     A   The publisher should have the right?
13     Q   No, should the sub-publisher default is where you
14  should start.
15     A   Should the sub-publisher default and render in any
16  statement of account or in making any payments as herein
17  before provided or in fully complying with any material terms
18  or conditions herein required of the sub-publisher to be
19  performed and should such default continue for 30 days after
20  the publisher has sent notice of such default by registered
21  mail and fax to the sub-publisher, the publisher shall have
22  the right to terminate and cancel the agreement as of
23  expiration -- slow down -- of the said 30 days or should the
24  sub-publisher make any assignment for the benefit of
25  creditors or take the benefit of any bankruptcy act, save the

Page 136

1  purpose of reconstruction, or should the sub-publisher be
2  petitioned into bankruptcy, then in each and every such
3  event, the publisher shall be entitled to terminate and
4  cancel this agreement, and the sub-publisher shall account to
5  the publisher forthwith for any outstanding fees not
6  accounted for up to the time of such cancellation.
7      Q   So my question is, based on paragraph 13, did you
8  ever send a notice of default by registered mail and fax to
9  Beatbox at any time during the term of your relationship
10  under this agreement marked as Exhibit H?
11     A   I sent a letter. You're saying registered
12  certified, I'm not sure whether it was or not, it might have
13  been, but I'm not sure.
14     Q   Do you remember the context of the letter?
15     A   That for performance failure, you're terminating
16  this agreement.
17     Q   And did you wait 30 days to terminate the agreement
18  after sending the letter that they were not in compliance --
19     A   I --
20     Q   Hold on, strike that.
21         When did you send this letter?
22     A   I think in 2016 or '17, I'm not sure.
23     Q   Okay. And you said that the letter was for
24  non-performance?
25     A   Yes.

Page 137

35 (Pages 134 - 137)

| | |
|---|---|
| 1 Q And what was the non-performance that your letter | 1 Q When you testified earlier that paragraph 16 II put |
| 2 spoke of? | 2 Beatbox on some limitation, some notice that there was a |
| 3 A No payment was sent, and I don't know that I named | 3 limitation of the rights you were granting them in the cue, |
| 4 the non-performance items. | 4 Eminem-Esque, and you cited to this paragraph, that is not |
| 5 Q Did you provide a copy of the letter to your | 5 what this paragraph says, is it? |
| 6 attorney in this action? | 6 MS. OHIRI: Objection. Mischaracterizes earlier |
| 7 A I think so. | 7 testimony. |
| 8 Q Was it provided to us? | 8 THE WITNESS: To me this says that I cannot -- the |
| 9 A I'll make a note and I'll get that to you. | 9 publisher cannot offer to the sub-publisher and the |
| 10 MS. OHIRI: I need to know what letter he's | 10 sub-publisher cannot follow through with anything that would |
| 11 referring to. | 11 derogate anything written in the contract. |
| 12 MS. BLAISE: He's saying he sent it in 2016 or 2017, | 12 BY MS. BLAISE: |
| 13 that it was a letter of default or termination letter. | 13 Q You recognize that Labrador is the publisher; |
| 14 THE WITNESS: Okay. To Beatbox. | 14 correct? |
| 15 BY MS. BLAISE: | 15 A Yes. |
| 16 Q Can you review Exhibit H? | 16 Q And you recognize that Beatbox is the sub-publisher; |
| 17 A What is that? | 17 correct? |
| 18 Q Exhibit H is the agreement between Labrador and | 18 A Yes. |
| 19 Beatbox. | 19 Q Okay. And this paragraph says, during the term of |
| 20 A Okay. Yes, yes. | 20 this agreement, you understand what that means? |
| 21 Q And let me know where it says that Labrador was | 21 A Yes. |
| 22 providing the rights of Cohen with the caveat that there | 22 Q That the publisher cannot grant any rights to the |
| 23 could be no adaptation without consultation from Cohen. | 23 compositions to any person or company other than its |
| 24 MS. OHIRI: I'm going to object that it calls for a | 24 sub-publisher? |
| 25 legal conclusion. | 25 A Okay. |
| Page 138 | Page 140 |

| | |
|---|---|
| 1 THE WITNESS: Number 16, double I, you want me to | 1 Q Who is the sub-publisher? |
| 2 read it to you? | 2 A In this regard, Beatbox. |
| 3 BY MS. BLAISE: | 3 Q Right. So this is saying that Labrador cannot grant |
| 4 Q Yes, please. | 4 rights to others in the territory, other than to Beatbox; is |
| 5 A During the term of this agreement, the publisher, | 5 that correct? |
| 6 not grant any rights in the compositions to any person, firm, | 6 A Okay. That's what you're telling me this says, |
| 7 or company other than the sub-publisher for the territory, or | 7 that's fine. |
| 8 enter into any agreement or acts in any way which would | 8 Q Okay. And it also, to derogate, what does that mean |
| 9 derogate from the rights, grants to the sub-publisher here | 9 to you, in the context of the way the rest of the sentence is |
| 10 under. | 10 written? |
| 11 Q You recognize in this agreement, you're the | 11 A That can't abuse any of the rights listed in the -- |
| 12 publisher; correct? | 12 in the contract. |
| 13 A Yes. | 13 Q That the publisher could not? |
| 14 Q Would you please read the paragraph again and tell | 14 A That the publisher cannot grant anyone else anything |
| 15 me how that is a limitation on the sub-publisher, Beatbox? | 15 that would derogate the -- yes, yes, that's right. |
| 16 MS. OHIRI: I'm going to object, again, that that | 16 Q So it's not a limitation on Beatbox, the |
| 17 calls for a legal conclusion. | 17 sub-publisher, correct, it's a limitation on the publisher? |
| 18 BY MS. BLAISE: | 18 A Yes. |
| 19 Q This is an exclusivity clause, is it not? | 19 Q Okay. And looking at 16 four -- I'm sorry, strike |
| 20 A Yes. | 20 that. |
| 21 Q Okay. So when you testified earlier that it put | 21 Looking at 16 three, III. |
| 22 Beatbox on notice that they weren't being granted the | 22 A Yes, okay. |
| 23 complete rights to Eminem-Esque, that wasn't correct; | 23 Q What does that say? |
| 24 correct? | 24 A The publisher is party to or has entered into good |
| 25 A Could you say that again? | 25 and valid contracts with the writers and composers of the |
| Page 139 | Page 141 |

36 (Pages 138 - 141)

1 compositions and such contracts enable it to comply with all
2 terms and conditions hereof, and the publisher will do all
3 things necessary not to be in breach of the same during the
4 term hereof.
5     Q   And is it your contention that your agreement with
6 Cohen required Cohen's approval before you could grant the
7 rights that you're granting in this agreement?
8       MS. OHIRI:  Objection.  Calls for a legal
9 conclusion.
10      MR. JACOBSON:  Join.
11      THE WITNESS:  No.
12 BY MS. BLAISE:
13    Q   Can you look at 16 four?
14    A   Read it?
15    Q   Yes, please.
16    A   The compositions are original and that none of the
17 compositions infringes any other copyright work or the rights
18 of any other third party.
19    Q   Okay.  Do you believe that Labrador violated the
20 terms of that provision in this contract?
21    A   No.
22    Q   Even though a New Zealand Court found the
23 Eminem-Esque track to be infringing of "Lose Yourself" by
24 Eminem?
25    A   Can I just tell you, you keep saying that, I don't

Page 142

---

1       THE REPORTER:  Do you want to go off while he does
2 that?
3       MS. OHIRI:  Yeah.
4       MS. BLAISE:  Yes.
5       (Break in deposition.)
6       (Discussion off the record.)
7       (Deposition Exhibit M marked for identification by
8        the court reporter.)
9 BY MS. BLAISE:
10    Q   So referring to Exhibit M at 2.3, have you ever seen
11 this before?
12    A   I think so.
13    Q   Okay.  And --
14    A   I'm not sure.
15    Q   And do you understand that this means the New
16 Zealand Court did find Eminem-Esque to reproduce in whole or
17 in substantial part the Eminem song "Lose Yourself"?
18      MR. JACOBSON:  Objection.  Calls for legal
19 conclusion and legal opinion.
20      MS. OHIRI:  Same objections.
21      THE WITNESS:  I understand that the voice -- the
22 voice used to -- over the music was a substantial part of the
23 decision.  So I can't really conclude that the tune itself
24 was named as infringing.
25 BY MS. BLAISE:

Page 144

---

1 know why you keep saying that, that's not true.
2    Q   Do you recognize that there's a court order finding
3 Eminem-Esque to be infringing of "Lose Yourself"?
4    A   A court order?  What's a court order?  You mean you
5 suing me, is that what a court order is?
6       MS. OHIRI:  No, it's the New Zealand Court.
7       THE WITNESS:  Says -- says what?
8       MS. OHIRI:  What they say.  I'll let her ask the
9 question.
10 BY MS. BLAISE:
11    Q   Yeah, the New Zealand Court says that Eminem-Esque
12 infringed "Lose Yourself," do you disagree with that?
13    A   Yes, I do.
14    Q   Okay.  We're going to have to make copies of this if
15 everyone wants one.  This is the New Zealand judgment.
16      MR. JACOBSON:  I'm all set.
17      MS. BLAISE:  Okay.
18      MR. JACOBSON:  We probably have that.
19      MS. BLAISE:  Everyone has it, and I'm only going to
20 refer to one page.  I'm happy to let everyone see what this
21 page is.
22      MR. JACOBSON:  So do you want me to make copies of
23 that?
24      MS. BLAISE:  If everyone wants a copy to look at
25 while we're -- yes, here.

Page 143

---

1    Q   Looking at 2.2 -- I mean, sorry, 2 -- 2.3, 222, A
2 through E, it's more than just the voice that was determined
3 to be substantially similar to the Eminem-Esque was
4 determined to be substantially similar to Eminem's "Lose
5 Yourself"; is that true?
6    A   Are you telling me that or asking me?
7    Q   I'm asking you.
8    A   And your question is?
9    Q   Looking at A through E, E deals with the voice;
10 correct?
11    A   Correct.
12    Q   And A, B, C, D deal with all different other
13 components; is that correct?
14    A   Yes.
15    Q   And which of those components do you contend were
16 not contained in the Eminem-Esque cue?
17      MS. OHIRI:  Objection.  Calls for a legal
18 conclusion.  Calls for an expert opinion.
19      MR. JACOBSON:  Join.
20      THE WITNESS:  I don't know which part doesn't, it
21 was not part of it.  Are you asking me to separate the
22 reasons for a decision?
23 BY MS. BLAISE:
24    Q   No, I'm asking, based on your understanding of music
25 and your understanding of listening to the Eminem-Esque

Page 145

37 (Pages 142 - 145)

Page 146

```
 1  track, which of these identified reasons of similarity, A, B,
 2  C, and D, are not contained -- do you contend are not
 3  contained in Eminem-Esque?
 4         MS. OHIRI:  Same objection.
 5         MR. JACOBSON:  Join.
 6         THE WITNESS:  The question is confusing to me.
 7  BY MS. BLAISE:
 8      Q   Okay.  Looking at A, the sonic bed which figures the
 9  first two four-measured templates of the advertisement, do
10  you contend that the first two four-measured templates are
11  not actually embodied in the Eminem-Esque track?
12         MS. OHIRI:  Same objection to this line of
13  questioning.
14         MR. JACOBSON:  Join in all that.
15         THE WITNESS:  What is it you want me to answer?
16  What are you asking me?
17  BY MS. BLAISE:
18      Q   I want to know if you contend that Eminem-Esque has
19  a sonic bed that has two four-measure templates that are
20  similar to "Lose Yourself"?
21      A   To make things faster, you're referring to the --
22  their reference to Eminem-Esque -- or my reference to
23  Eminem-Esque, what I know to be Eminem-Esque, does it matter
24  to the question?  Am I out of line asking this?  Because
25  we're going on and on with the same thing.
```

Page 147

```
 1      Q   The track?
 2      A   The track.
 3      Q   Known as Eminem-Esque?
 4      A   Yeah.
 5      Q   You were named as a defendant in that lawsuit;
 6  correct?
 7      A   No.
 8      Q   In the New Zealand lawsuit, Labrador is not a
 9  defendant.
10      A   I don't think so.
11      Q   You did not object to the jurisdiction of the court
12  as a defendant in that lawsuit?
13      A   Which question do you want me to answer?
14      Q   Did you have an attorney defend you in the New
15  Zealand lawsuit?
16      A   For infringement?
17      Q   For infringement.
18      A   No.
19      Q   How did you participate in the New Zealand action?
20      A   I'm not sure what the capacity would be called.  It
21  was a participation.
22      Q   Okay.  As a party?
23      A   What does that mean?
24      Q   A individual involved in a lawsuit as a person who
25  has an interest in the lawsuit?
```

Page 148

```
 1      A   I was on a video camera and they interviewed me in
 2  court.
 3      Q   Do you have a recollection of objecting to the
 4  jurisdiction of the court for infringement?
 5      A   Yes.  No, sorry, no.  For infringement?
 6      Q   Yes.
 7      A   I did not object to the jurisdiction for the
 8  infringement trial.
 9      Q   I need his answer.  After you became aware of the
10  New Zealand action, what action did you undertake at that
11  time?
12      A   In what regard?
13      Q   What did you do when you became aware that a lawsuit
14  by Eminem had been filed relating to Eminem-Esque?
15      A   Peter and I talked about it, he called me, some
16  e-mails went back and forth, I called Michael Cohen, he was
17  away, came back, he finally called me back, days later, I
18  told him what was going on.  What more -- what else are you
19  looking for?
20      Q   Did you apologize to Peter Baker?
21      A   I said I was sorry for whatever transpires,
22  transpired.
23      Q   Did you and Cohen agree that it was
24  non-infringing -- that the Eminem-Esque track was not
25  infringing of the Eminem "Lose Yourself" track?
```

Page 149

```
 1      A   We didn't talk about the specifics of the case.
 2      Q   Did you consult with anyone else who told you that
 3  the Eminem-Esque track was not infringing of "Lose
 4  Yourself"?
 5      A   It was not -- that it was not infringing.  The
 6  musicologist, I referred to him already, and Shazam, and I
 7  then called my -- my -- one of the CEOs of Olay, a friend,
 8  someone I work with, and he says, no way this is infringing.
 9  Other peers of mine, as it's just been talked about, there's
10  no one that I know of that thinks it's infringing.
11      Q   Except for the court; correct?
12      A   No, the court doesn't think that -- the court thinks
13  the video the music played on the video is infringing with
14  the voice over, that's a lot of components.  The cues that
15  you're referring to, SQ MC Eminem-Esque was removed -- was
16  directed to be removed when I directed it to Beatbox to
17  remove it in 2012 and 2014.  And that's when I --
18         MS. BLAISE:  There's no question pending.  So move
19  to strike.
20         THE WITNESS:  Oh, I thought it was in reference to
21  clarify the cue.
22         MS. BLAISE:  Move to strike.  Exhibit N.
23         (Deposition Exhibit N marked for identification by
24          the court reporter.)
25         MS. BLAISE:  This is the request to admit.  I don't
```

38 (Pages 146 - 149)

1 have additional copies, you guys both have them.
2         MR. JACOBSON:  I'm sorry, which is it?
3         MS. BLAISE:  Our answer to the request to admit.
4 I'm just going to give him my copy.
5 BY MS. BLAISE:
6     Q   So turning your attention to request for admission
7 number 15, this is your response, do you remember preparing
8 these?
9     A   You want me to look at this part here?
10     Q   Yeah, but the document title is on the front.
11     A   Okay.  Do you need to see it back to ask the
12 question?
13     Q   No, it's okay.  Do you see what the question number
14 15 is?
15     A   Oh, the question is over here?
16     Q   It might be on the back page because they're
17 double-sided.
18         MR. JACOBSON:  I'm sorry, which number is it?
19         MS. BLAISE:  This is N.
20         MR. JACOBSON:  No, no, no which --
21         MS. BLAISE:  Oh, 15.
22         MR. JACOBSON:  Thank you so much.
23         THE WITNESS:  Okay I see it, yes.  And I should look
24 at my 15 here?
25 BY MS. BLAISE:

Page 150

1     Q   Well, just read what the request number 15 to admit
2 is.
3     A   Admit that you challenge the jurisdiction of the
4 High Court of New Zealand in case CIV-2014-486-11220 to
5 adjudicate the claim for copyright infringement against
6 you.
7     Q   Correct.  And you means Labrador; is that correct?
8     A   Yes.
9     Q   Okay.  And you don't have to read your objections, I
10 just want to know your answer there and if that refreshes
11 your recollection as relates to --
12     A   Well, my recollection -- are you finished with the
13 question?
14     Q   As it relates to the activities that you undertook
15 in the New Zealand case as a party?
16     A   My recollection is that the lawsuit between -- for
17 infringement was between Eight Mile and the National Party.
18 The lawsuit between Beatbox and Labrador was not about
19 infringement, I don't think.  I don't know what -- I actually
20 don't know what it was about, but the infringement case was
21 between the two of them.  This concerns the infringement
22 case, but the infringement case -- that's my understanding,
23 was it was just between the two of them.
24     Q   Okay.  And what action did you undertake as it
25 relates to that case?

Page 151

1     A   In what regard?
2     Q   As a party, you participated in the case; correct?
3     A   Do you mean the case Beatbox and Labrador or
4 infringement case?
5     Q   Do you know of any other case number other than the
6 case number that's provided?
7     A   No, I don't know.
8     Q   Okay.  So then we're talking about one case;
9 correct?
10     A   The infringement case between Eight Mile and
11 National Party.
12         MS. OHIRI:  Can we go off the record for a second?
13         MR. JACOBSON:  Yes, of course.
14         (Break in deposition.)
15         (Discussion off the record.)
16 BY MS. BLAISE:
17     Q   We can go back on the record.  You had an
18 opportunity to talk to your attorney about how you
19 participated in the New Zealand proceedings as a party, do
20 you have a better answer that you're able to provide now?
21     A   I have a better answer.  My understanding was that
22 the case that I was being sued by Beatbox for indemnity, it
23 had nothing to do with the infringement lawsuit, but she's
24 telling me that the number was the same number as the first.
25 So I don't mean to be a butthead about it, but if that's what

Page 152

1 it is, yeah, if it refers to that, fine.  My challenge and
2 jurisdiction to the High Court of New Zealand had nothing to
3 do with infringement or the National Party, it was that
4 Beatbox and I had signed a contract stating that it should be
5 in Los Angeles, just between Beatbox and me, where we would
6 discuss our indemnity disagreements.
7     Q   I understand.  Do you recognize that the High Court
8 found that it had jurisdiction over you because of the
9 infringement claim of Eminem and because it didn't relate to
10 the contract with you and Beatbox, but it related to the
11 infringement claim of Eminem?
12     A   I didn't know that.
13     Q   Okay.  For the record, the exhibit that is the
14 judgment --
15     A   That's amazing, wow.
16     Q   -- the judgment, which I think is Exhibit N --
17         MS. OHIRI:  It was M, I think.
18         MS. BLAISE:  M, was from your discovery responses,
19 Beatbox Bates-stamp 200 through 231.
20         MS. OHIRI:  Thank you.
21         MS. BLAISE:  I'm going to show you what's been
22 previously marked as Exhibit O.
23         (Deposition Exhibit O marked for identification by
24         the court reporter.)
25 BY MS. BLAISE:

Page 153

39 (Pages 150 - 153)

1    Q    And which is Beatbox production response 382.  Let
2    me steal back the request to admit.  Sorry.  Thanks.
3         Did you have an opportunity to look at Exhibit O?
4    A    Is that what this is?  Yes.
5    Q    Do you recognize that e-mail?
6    A    Yes.
7    Q    Did you send it?
8    A    Yes.
9    Q    Whose Rigaud Frank or Franck?
10   A    He works for CDM in France and West Side
11   Publishers.
12   Q    Okay.  Is that your only French sub-publisher?
13   A    Yes.
14   Q    Okay.  And what are you asking him to do in this
15   e-mail?
16   A    You want me to read it?
17   Q    Sure.
18   A    Or do you want me to explain it?
19   Q    You can read it.
20   A    Hi Franck, please remove the cue SQ MC Eminem-Esque
21   from your library.  I don't know the title you might have
22   given the cue, but I attached the actual MP3 for it to be
23   clear.  It is written by Michael Alan Cohen.  Thank you.
24   Q    Why did you ask him to remove the cue?
25   A    It was precaution because in 2012, I directed

Page 154

1    Beatbox and all my sub-publishers to remove the cue as it was
2    listed on the Excel file, the Excel file that Peter Baker
3    designed for all of the -- for us to -- for Labrador to
4    understand its entity.  We utilized that in 2012, and I
5    directed all sub-publishers in 2012 to remove the cue, that
6    standard Excel pattern way, and if he had done that -- that
7    was my assumption that he had done that, and if he had done
8    that, we wouldn't be in this litigation.
9    Q    Why --
10   A    I did the same thing in 2014 with using his designs
11   Excel file that defines in library, I gave that same Excel
12   design to Beatbox and all the sub-publishers in, I think,
13   January of 2014 to remove it.  This is a precautionary e-mail
14   to him to make sure, look, if you didn't do it.  And I
15   have an example here of someone who didn't do it.  So here I
16   am in 2014, August, being told by one of my sub-publishers
17   that he didn't do it.  So I would assume, as a smart
18   businessman, that I should caution all the others that they
19   didn't follow Beatbox's advice.
20        MS. BLAISE:  Move to strike as nonresponsive to the
21   question.
22   BY MS. BLAISE:
23   Q    You already testified earlier that you never
24   expressly in 2012 sent an e-mail to any of your
25   sub-publishers saying remove Eminem-Esque; isn't that

Page 155

1    correct?
2    A    What does explicitly mean?
3    Q    Explicitly means remove Eminem-Esque from your
4    library, just like this e-mail says, you never sent an e-mail
5    like this in 2012; correct?
6    A    That's correct.
7    Q    All right.  You sent an Excel spreadsheet that had
8    different track listings than what you had already authorized
9    to be sent to end users on the digital files or the physical
10   files by your sub-publishers; correct?
11   A    Yes.
12   Q    Okay.  And did any of those tracks on the new Excel
13   spreadsheet, how many were different from the previous one?
14   A    I can't tell you exactly that.
15   Q    Was it more than just Eminem-Esque?
16   A    Yes.
17   Q    Is there any reason why this e-mail doesn't include
18   every single cue that you contend you directed to be removed
19   in 2012 versus just directing --
20   A    Yes.
21   Q    What's the reason?
22   A    There's a lawsuit.
23   Q    Right.
24   A    Right, that's my answer.
25   Q    Okay.  And what do you contend now is -- do you

Page 156

1    contend that Eminem-Esque is infringing now with "Lose
2    Yourself"?
3         MS. OHIRI:  Objection.  Calls for a legal
4    conclusion.  Calls for an expert opinion.
5         THE WITNESS:  What do you mean by Eminem-Esque?
6         MR. JACOBSON:  I join.
7    BY MS. BLAISE:
8    Q    Eminem-Esque -- okay.  So --
9    A    We don't have to keep going over this.
10   Q    On your Exhibit O, you direct your sub-publisher to
11   remove the cue, SQ MC Eminem-Esque from their library.
12   A    With an MP3.
13   Q    Do you contend that the cue you're referencing here
14   infringes Eminem's "Lose Yourself"?
15   A    No.
16   Q    So why did you decide to remove it?
17   A    Because I hadn't yet heard the video of the -- I
18   hadn't analyzed the video of -- the music that was used in
19   the video.
20   Q    So are you currently licensing cue SQ MC
21   Eminem-Esque?
22   A    No.
23   Q    Why not?
24   A    Because litigation being -- being claimed as
25   infringing is one matter, having litigation even being --

Page 157

40 (Pages 154 - 157)

1 even with being found non-infringing is another matter and
2 very expensive.
3 Q   So you admit that there is still a claim for
4 infringement, there's a third-party claim?
5 A   I don't know what that means.
6 MS. OHIRI:  Objection.  Misstates prior testimony.
7 MR. JACOBSON:  And calls for a legal opinion.
8 BY MS. BLAISE:
9 Q   You admit that Eminem has a claim for infringement
10 as it relates to SQ MC Eminem-Esque; correct?
11 MR. JACOBSON:  Same objection.
12 MS. OHIRI:  Objection.  Mischaracterizes earlier
13 testimony.
14 THE WITNESS:  I don't know.
15 BY MS. BLAISE:
16 Q   Do you think that if Eminem becomes aware of this
17 case that he'll become a party of this case and insert
18 infringement against --
19 MR. JACOBSON:  Objection.  Calls for speculation.
20 THE WITNESS:  I don't know.
21 MS. OHIRI:  Join.
22 BY MS. BLAISE:
23 Q   Who do you think is responsible for the damages that
24 have been incurred in the New Zealand case?
25 MR. JACOBSON:  Objection.  Calls for a legal

Page 158

1 conclusion.
2 THE WITNESS:  There are a number of parties.  The
3 major party is Beatbox who was directed in 2012 to remove the
4 cue per a design that he gave me to design to -- to define a
5 library by use of an Excel file.  He also acknowledged
6 earlier than that when we met at my office that he approved
7 of the sound like you.  He also claimed that he would be able
8 to decide his own -- what would be licensed or not.  He also
9 said he removed it in 2013 as we met in Las Vegas.  I sent
10 him another e-mail, or much more than that, another directive
11 to remove the cue in 2012 by use of an Excel file, held
12 titles, and to -- which is what he didn't do and he's
13 responsible for this litigation.  There may be other parties
14 as well.  He also apparently, as we -- was nervous about the
15 possibility of infringing and conspired with the National
16 Party to continue with the possible licensing of it knowing
17 himself and admitting later on that it was -- that they wish
18 the title would have given it away and that, in fact, they
19 were nervous, both the National Party and Beatbox were
20 nervous about the cue being found out.
21 MS. OHIRI:  Okay.  Just answer the question.
22 THE WITNESS:  Best I could.
23 BY MS. BLAISE:
24 Q   So is it your contention that when you sent an Excel
25 spreadsheet in 2012, that didn't contain certain cues that

Page 159

1 you contend did not contain certain cues, that that was meant
2 to revoke any of those cues that had already been sent into
3 commerce for third-party end users to use?  Do you contend
4 that that was to put everyone on notice, that you had removed
5 those cues from being licensed?
6 A   Yes, absolutely, including the album itself.
7 Q   Did you accept any licensing fees from any of those
8 cues that you contend should have been removed from
9 circulation after 2012?
10 A   I don't know.
11 Q   Are there any documents that you could review that
12 would let you know if you received any licensing reviews from
13 those cues that you contend were removed in 2012?
14 A   Perhaps.
15 Q   From sending the Excel spreadsheet?
16 A   Perhaps.
17 Q   Can you do that and get those documents to your
18 lawyer?
19 A   Yes.
20 Q   Did you review any of those documents in response to
21 our discovery requests?
22 A   No, no.
23 Q   Did you get that?
24 MS. OHIRI:  What was that?
25 MS. BLAISE:  Documents that he reviewed or that he

Page 160

1 could review in letting us know licensing fees that he
2 accepted after 2012 for tracks that he contends -- or cues
3 that he contends were removed from circulation and commerce.
4 Where are we at with time?
5 THE REPORTER:  5:48.
6 MS. BLAISE:  Let me go off the record.
7 (Break in deposition.)
8 (Discussion off the record.)
9 MR. JACOBSON:  Very quickly ask for an electronic
10 copy and for a dirty disc or whatever you young
11 whipper-snappers call it.
12 THE REPORTER:  A rough.
13 MS. BLAISE:  I'll take a copy and a rough.
14 THE REPORTER:  Did you need a rough too?
15 MS. OHIRI:  No, it's okay.
16 BY MS. BLAISE:
17 Q   Do you have a homeowner's insurance?
18 A   Yes.
19 Q   Did you tender this claim to your homeowner's
20 insurance?
21 A   No.
22 Q   Do you have any errors and omissions insurance for
23 your business?
24 A   What does that mean?
25 Q   Errors and omissions.

Page 161

41 (Pages 158 - 161)

1   A   Ask that question again.
2   Q   Do you have any errors or omissions insurance for
3   your business?
4   A   Yes.
5   Q   You do?
6   A   Mm-hm.
7   Q   Who is your carrier?
8   A   I don't know the name of it.
9   Q   Is there a document that you could review that would
10  tell you the name of it?
11  A   Yes.
12  Q   Will you review that and give it to your attorney?
13  A   Yes.
14      MS. OHIRI:  Are you understanding the question?
15      THE WITNESS:  What's the question again?  Do I
16  have --
17  BY MS. BLAISE:
18  Q   I asked you if you had homeowner's insurance, you
19  said you did.
20  A   Yes.
21  Q   I asked you if you tendered this claim to your
22  homeowner's insurance --
23  A   No.
24  Q   -- you said you did not.  I asked you if you had
25  errors and omissions insurance --

Page 162

1   A   Do I have any other insurance other than the car
2   insurance?
3   Q   Life insurance, disability insurance, health
4   insurance.
5   A   I would know.
6   Q   Okay.
7   A   But I don't.
8   Q   All right.  And you're certain that you don't have
9   an errors and omissions policy?
10  A   Yes.
11  Q   Okay.  I think that will be it for today until
12  tomorrow.
13      MR. JACOBSON:  Off the record.
14      (Break in deposition.)
15      (Discussion off the record.)
16      MS. BLAISE:  Okay.  This is Heather Blaise
17  stipulating for plaintiff that the transcript should be held
18  pursuant to the Code.  All other counsel agree.
19      MS. OHIRI:  Yes.
20      MR. JACOBSON:  That's correct.
21      MS. BLAISE:  In addition, we're stipulating that
22  we're going to continue this oral deposition to tomorrow,
23  which is December 3rd, at counsel for defendant Labrador's
24  office, and we're holding open questions until that time.
25  This is a stipulation on the record.

Page 164

1   A   I do not.
2   Q   Do you have any professional insurance?
3   A   No.
4   Q   Do you have a -- any umbrella policies?
5   A   Of any nature?
6   Q   Yes.
7   A   Yes.
8   Q   Who is the carrier?
9   A   I think it's Palomar or Palomar, P-A-L-O-M-A-R, I
10  think, I'm not sure.
11  Q   Do you know what your liability limit is?
12  A   No.
13  Q   Do you know what types of claims it covers?
14  A   No.
15  Q   Do you know your policy number?
16  A   No.
17  Q   Can you obtain your policy number and give it to
18  your attorney?
19  A   Yes.
20  Q   Do you have any other insurance besides vehicle
21  insurance and life insurance?  Do you have anything other
22  than life insurance, vehicle insurance, disability
23  insurance?
24  A   I don't know.
25  Q   Who would know?

Page 163

1       MS. OHIRI:  Should we stipulate to a -- I'm sorry,
2   can we go off the record?
3       (Break in deposition.)
4       (Discussion off the record.)
5       MS. BLAISE:  The continued deposition of Labrador
6   and Mr. Webb will start tomorrow at his counsel's office at
7   11:00 a.m., tomorrow is December 3rd, 2019.
8       MS. OHIRI:  So stipulated.
9       MR. JACOBSON:  So stipulated.
10      (Deposition session concluded at 6:02 p.m.)
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

Page 165

42 (Pages 162 - 165)

```
1        I, NOEL WEBB, do hereby declare under
2   penalty of perjury that I have read the foregoing
3   transcript; that I have made any corrections as appear
4   noted, in ink, initialed by me, or attached hereto; that
5   my testimony as contained herein, as corrected, is true
6   and correct.
7        EXECUTED this _____ day of _____, 20__,
8   at _____, _____.
9     (City)      (State)
10
11
12
13
14        _____
15        NOEL WEBB
16        VOLUME I
17
18
19
20
21
22
23
24
25
                                          Page 166
```

```
1        I, the undersigned, a Certified Shorthand
2   Reporter of the State of California, do hereby certify:
3        That the foregoing proceedings were taken before
4   me at the time and place herein set forth; that any
5   witnesses in the foregoing proceedings, prior to
6   testifying, were administered an oath; that a record of the
7   proceedings was made by me using machine
8   shorthand which was thereafter transcribed under my
9   direction; that the foregoing transcript is a true record of
10  the testimony given.
11        Further, that if the foregoing pertains to the
12  original transcript of a deposition in a Federal Case, before
13  completion of the proceedings, review of the transcript [ ]
14  was [ ] was not requested.
15  transcription thereof.
16        I further certify that I am neither financially
17  interested in the action nor a relative or employee of
18  any attorney or any party to this action.
19        IN WITNESS WHEREOF, I have this date subscribed
20  my name.
21  Dated: December 5, 2019
22
23
24        JENNIFER STANLEY,
25        CSR No. 13740
                                          Page 167
```

43 (Pages 166 - 167)

Veritext Legal Solutions
866 299-5127

[& - 714-505-4872]

| & | | | |
|---|---|---|---|

**&**   3:15 4:4,15

**0**

**00**   103:4
**02/14/08**   9:3 10:17
  10:24
**039**   66:4

**1**

**1**   123:23
**1.1**   29:1
**1.1e**   32:4,6,13 33:3
  33:8 36:1
**1.1e.**   27:13 28:25
  31:23
**10**   5:11 25:18 74:5
  99:4 103:4
**10.2.**   133:14
**108**   99:5 103:5
**109**   5:20,21
**11.00**   21:5
**115**   90:4 99:5
  103:5
**11:00**   165:7
**123**   4:7
**13**   136:4,5,6 137:7
**1352**   2:20 3:18
**13740**   1:24 2:24
  167:25
**14**   26:8
**145**   5:22
**14th**   81:15
**15**   150:7,14,21,24
  151:1
**15,000**   135:1
**150**   5:23
**154**   5:24
**16**   139:1 140:1
  141:19,21 142:13
**17**   137:22

**170.00**   21:1
**18**   132:15
**19**   14:10 36:17
**1970**   74:16
**1974**   74:16
**1990**   75:17
**1e**   28:25
**1st**   109:5 110:18
  110:22

**2**

**2**   1:18 2:22 6:1
  145:1
**2,875**   71:20
**2.2**   145:1
**2.3**   144:10 145:1
**2.5.**   41:24
**20**   5:12 111:14
  166:7
**200**   153:19
**2000**   3:8
**2003**   94:14 97:11
**2005**   77:7
**2008**   26:9
**2009**   34:7,12 36:2
  109:5,5 110:18,18
  110:22 111:3,4
  118:25 125:14,14
**2012**   125:10,20
  126:9,15,21
  149:17 154:25
  155:4,5,24 156:5
  156:19 159:3,11
  159:25 160:9,13
  161:2
**2013**   159:9
**2014**   82:9 93:16,16
  93:19 94:14
  123:15,17,19,21
  123:22,23 125:10
  128:24 149:17
  155:10,13,16

**2014-486-11220**
  151:4
**2016**   66:22 73:17
  137:22 138:12
**2017**   73:15 138:12
**2018**   73:8,12 81:15
  132:16,23 134:21
  134:25 135:1
**2019**   1:18 2:22 6:1
  60:14,16 62:10
  132:13 165:7
  167:21
**205**   2:21 3:18
**207**   81:24
**21**   5:13
**213-725-9800**   3:10
**21st**   60:14,16
**22**   99:5 103:4
**222**   145:1
**22400**   69:19
**225**   104:15
**23**   5:14
**231**   153:19
**24**   7:11
**25**   5:15 66:4
  104:15
**250**   4:7
**26**   5:16
**29th**   62:10
**2:17**   1:7 2:6

**3**

**3.2**   112:14
**3.2.**   112:18
**30**   13:16 55:15
  132:12 136:19,23
  137:17
**32**   90:1,7,8
**323-637-3815**   4:9
**33**   99:5 103:5
**3798262**   1:25

**382**   154:1
**3rd**   164:23 165:7

**4**

**4,000**   131:8,19,19
  131:21,24
**4.1**   113:12
**4.2.**   113:17
**4.3**   114:3
**4.3.**   113:23
**4.4**   114:9
**400,000**   71:13
**46**   5:17

**5**

**5**   70:20 77:7 82:9
  111:14 167:21
**5/10/52**   69:17
**50**   41:18
**50/50**   96:2
**56**   5:18
**59**   5:19
**5:48**   161:5
**5c**   24:19 81:24
  82:4,11

**6**

**6**   77:7 119:13
**600,000**   70:20
**60606**   4:8
**6108**   1:7 2:6
**64**   5:6
**6700**   71:5
**68**   5:5
**69**   5:6
**6:02**   2:22 165:10
**6th**   62:4

**7**

**7**   5:5
**7.1**   120:24
**714-505-4872**   3:20

**[7990 - american]**

**7990**   167:23

**8**

**8**   108:22 109:9,11
**801**   3:8

**9**

**9**   5:10
**90017**   3:9
**90364**   69:21
**92780**   3:19

**a**

**a.m.**   2:22 6:2
  165:7
**ability**   7:12
**able**   7:22 44:1,10
  58:23 61:24 94:22
  95:9,15,17,17
  97:13 129:2
  131:23 152:20
  159:7
**absolutely**   160:6
**abuse**   141:11
**accept**   160:7
**accepted**   161:2
**accidentally**   129:1
  129:2,19,20
**account**   136:16
  137:4
**accountant**   133:4
**accounted**   137:6
**accounting**   112:14
  112:21 113:10
**acknowledged**
  159:5
**acquire**   52:24
**act**   136:25
**action**   119:19
  134:3 138:6
  147:19 148:10,10
  151:24 167:17,18

**actions**   37:21,22
  119:18
**activities**   41:22
  151:14
**acts**   139:8
**actual**   154:22
**ad**   55:15
**adapt**   29:19 30:6,8
  32:1 34:5 97:24
  121:18
**adaptation**   121:9
  121:16,21 138:23
**adaptations**
  118:21,22
**adapted**   54:15
**add**   118:16
**addition**   72:11
  164:21
**additional**   72:10
  150:1
**address**   69:18
  71:4
**adjudicate**   151:5
**administered**   6:5
  92:17 167:6
**admission**   150:6
**admit**   103:4
  110:21,24 111:7
  112:3,5,6 149:25
  150:3 151:1,3
  154:2 158:3,9
**admitting**   159:17
**adverse**   113:18
**advertisement**
  54:9 146:9
**advertising**   99:1
**advice**   38:9 155:19
**advisor**   129:12
**affect**   7:12
**age**   74:4

**agent**   37:4 50:13
**agents**   13:2
**ago**   67:19
**agree**   7:5 27:16
  111:23 148:23
  164:18
**agreed**   47:8 48:10
  52:1
**agreeing**   52:8
**agreement**   5:16
  9:2,3 10:16,22
  20:12 25:19 27:17
  48:5 49:13 51:22
  87:21,23 88:1
  89:11 92:15,19
  96:2 97:22 98:3,7
  104:22 105:4,5
  109:5,5 110:18,18
  110:21,24 111:1,3
  111:8,17,23
  112:12,25 113:6
  114:12 118:19,24
  118:25 119:11
  120:1,21 122:4
  130:10 135:5,17
  135:23 136:1,22
  137:4,10,16,17
  138:18 139:5,8,11
  140:20 142:5,7
**agreements**   88:3
**alan**   154:23
**alarm**   123:24
  124:6
**album**   160:6
**alerted**   125:6
**alike**   100:3,5
**alikes**   99:23
**allegation**   112:8,9
**allegations**   109:16
  109:18 110:7
  112:3,5,6

**allow**   131:24
  133:1
**allowed**   31:2
  97:10
**allows**   27:17
**ally**   93:24
**aloud**   98:18 136:9
**alter**   29:18 30:6,8
  32:1 34:4 97:24
**alteration**   99:6
**altered**   54:15 99:8
  99:10 112:23
  113:1
**alternate**   82:19,22
**alternates**   25:3,6
  82:14,17,21,24,25
  83:3,13 84:1,5,8
  84:15,25 85:11,15
  86:4,7
**alternatives**   24:20
  24:20,25 25:4,7
**amazing**   153:15
**ambiguity**   39:1
  53:23
**ambiguous**   33:22
  38:16 43:7 49:19
  65:1 90:10 99:25
  121:6 127:7
**amcos**   17:8,17,18
  17:19,19,20 19:25
  20:12 21:9,17
  23:16 43:12,12
  50:13,18,23 51:9
  53:21 59:1 118:19
  118:24
**amend**   108:7
**amended**   5:10,11
  5:21 8:14 105:7,8
  108:20 112:2
**american**   20:19

[amount - attorney]

| | | | |
|---|---|---|---|
| **amount** 92:5 | **anyway** 27:9 | **ascap** 15:7,11,13 | 40:10 49:24 50:9 |
| **amounts** 97:11 | **apollo** 124:24 | 15:14,18,24 16:4 | 136:24 |
| **analyzed** 157:18 | **apologize** 33:18 | 17:1,11 18:4,5 | **assignments** |
| **angeles** 3:9 75:4 | 51:16,24 148:20 | 41:20 93:23 | 120:19 |
| 153:5 | **apparently** 159:14 | 134:15,17 135:6,8 | **assigns** 29:9 30:2 |
| **annually** 132:9 | **appear** 25:21 | 135:14 | 32:3,12 33:1,19 |
| 134:21,22 | 166:3 | **asked** 54:23 93:4 | 40:14 111:19 |
| **answer** 5:21 7:18 | **appearances** 3:1 | 100:19 101:3,4,4 | **associated** 14:8 |
| 13:12 15:22 16:21 | 4:1 | 105:17 106:7,12 | 36:24 46:5 119:17 |
| 17:17,21,22 19:2 | **appears** 10:4 | 115:7 130:25 | **associates** 3:15 |
| 25:9 35:8,9,15,21 | 19:25 20:14 21:1 | 131:15 162:18,21 | 114:1,3 120:20,23 |
| 38:3,10,21 40:6,7 | 21:16 23:5 56:2 | 162:24 | 133:18 134:1,11 |
| 41:25 44:1,5 | 61:23 62:11 | **asking** 32:10 | **assume** 38:24 69:8 |
| 52:23,24 53:25 | **application** 106:19 | 33:23 37:18,18 | 69:10 155:17 |
| 64:11 67:20,24 | 106:20 | 48:24 53:12 54:18 | **assumed** 38:6 |
| 68:20,22 69:7,8,9 | **appointment** 47:4 | 68:20 78:22 83:3 | 98:19 |
| 70:15 79:2 81:7 | **appoints** 46:19 | 83:5,15,17,21,23 | **assumes** 49:17 |
| 86:19 87:6 88:2 | **appreciate** 7:23 | 83:25 84:1 85:22 | 98:2,9 |
| 94:22,25 104:2 | **appreciation** | 85:25 86:4 90:21 | **assuming** 64:21 |
| 105:7,8,13,14 | 55:17 56:12 | 91:19 95:12 103:8 | **assumption** 155:7 |
| 107:21,22,23,25 | **appropriate** 45:13 | 108:1,3 109:22,24 | **attached** 9:3 10:17 |
| 108:4,20,20 109:8 | **appropriately** | 110:2 116:15,16 | 10:17 11:3 63:25 |
| 109:13,15,23 | 50:6 | 117:6 118:17 | 109:7 110:20 |
| 110:9,10 112:2,2 | **appropriateness** | 123:17 126:4,21 | 154:22 166:4 |
| 119:4 122:13 | 39:19 | 127:18,19,24 | **attachment** 62:12 |
| 124:1 129:17 | **approval** 92:10,18 | 145:6,7,21,24 | **attacked** 129:7 |
| 132:24 133:1 | 142:6 | 146:16,24 154:14 | **attend** 74:15 |
| 135:18 146:15 | **approved** 26:17 | **aspect** 31:15,17 | **attention** 97:19 |
| 147:13 148:9 | 99:2 159:6 | **aspects** 61:14 | 108:9 150:6 |
| 150:3 151:10 | **approximate** | **asserted** 133:18,20 | **attorney** 3:7,17 |
| 152:20,21 156:24 | 75:22 | **assessed** 102:19 | 4:6 6:18,19,23 7:4 |
| 159:21 | **approximately** | 105:17,22 | 7:7 9:11,19 18:13 |
| **answered** 13:10 | 99:4,4,5 131:19 | **assign** 33:7 120:20 | 21:20 43:2 57:21 |
| 42:4 56:22,22 | 132:11,12,14 | **assigned** 27:17 | 58:5 60:20 62:7 |
| 110:13 134:7 | **april** 109:5 110:18 | 29:10 33:2 36:1,1 | 68:4,5,18 88:14 |
| **answering** 43:2 | 110:22 | 38:7,8,14,14,16,24 | 95:7 97:25 106:16 |
| **answers** 69:1 | **area** 63:4 | 56:17 | 106:17 115:14 |
| 103:3 104:17 | **arrangements** | **assigning** 27:9 | 116:2,17,19,22 |
| 130:17 | 98:5 | 37:24 40:20 | 117:22 118:1,3,4 |
| **anybody** 129:14 | **art** 15:16 38:17 | **assignment** 32:5 | 118:15 121:24 |
| | 53:15 | 35:25 39:18 40:8 | 122:10 131:15 |

Veritext Legal Solutions
866 299-5127

[attorney - blaise]

| | | | |
|---|---|---|---|
| 133:10 138:6 147:14 152:18 162:12 163:18 167:18 **attorneys** 68:6,12 119:20 131:17,17 131:18 **audible** 69:2 **audibly** 53:9 68:22 **audio** 90:6,7,16,25 90:25 100:9 106:20 **august** 155:16 **australia** 13:23 17:17,18,23 39:11 47:7 50:8,12 123:8 **australian** 20:18 **austria** 124:11,11 **authority** 114:11 **authorized** 156:8 **available** 83:20,22 **avenue** 71:5,9 **aware** 99:2 102:23 103:8,19,21 104:9 148:9,13 158:16 | **b** **b** 1:14 2:13 5:11 6:14,14 9:18,21 10:2,3,4,4 12:4,10 12:17 44:11 72:7 72:11,14,19,19 74:12 83:11 94:6 94:7 145:12 146:1 **bachelor's** 74:17 74:19 **back** 31:23 35:2 35:17 41:3 43:12 47:6 51:16 59:1 61:8 68:17 77:16 78:14 80:18 84:20 | 92:9 94:9 97:11 98:11 100:21 103:17 106:23,23 115:12,13 118:17 129:10 133:12 135:4,20 148:16 148:17,17 150:11 150:16 152:17 154:2 **baker** 4:13,14 13:17,20,21 24:11 42:24 43:5 65:24 65:24 82:7 84:4 125:13 148:20 155:2 **balance** 70:19 **bankruptcy** 136:25 137:2 **barbara** 4:14 **barely** 7:21 **base** 34:7,11 **based** 35:22 63:22 63:23 86:2 104:17 118:16 137:7 145:24 **baseline** 80:9,10 **basic** 32:25 **basis** 54:20 **bass** 82:20,22 **bates** 81:24 153:19 **bathroom** 6:24 **bay** 72:17 85:7 **beatbox** 1:4 2:4 13:22 33:19,21 34:1,4,12 35:5,13 36:1,2,2,17 45:2,5 45:24 46:17 50:7 50:14,17,23 51:9 51:23 53:20 56:8 58:23 59:1 65:24 66:4 68:3,18 84:4 | 99:20 104:22,24 118:20 119:1 123:1,6 125:9,11 125:16,22 126:15 127:14,24,25 128:5,9 135:5,24 137:9 138:14,19 139:15,22 140:2 140:16 141:2,4,16 149:16 151:18 152:3,22 153:4,5 153:10,19 154:1 155:1,12 159:3,19 **beatbox's** 47:24 105:8 155:19 **beatboxmusic.c...** 19:11 **bed** 82:20 146:8 146:19 **beginning** 2:21 30:21 83:7 99:18 103:14 104:16 **behalf** 2:20 **believe** 29:19,20 123:24 129:14 142:19 **belongs** 130:8 131:7,20 **benefit** 111:18 136:24,25 **best** 7:8 16:14 17:13 23:13,15 30:24 34:6 159:22 **better** 50:10 54:23 90:19 152:20,21 **beyond** 100:17 **bgrfirm.com** 3:11 **binding** 109:6 110:19 111:17,23 **birth** 69:16 | **bit** 25:12 **blaise** 4:4,5,15 5:6 8:3,4 9:19 13:5 20:2,6 25:3,6 27:18,21 28:3,10 32:7 33:22 36:4,6 36:19 38:15,25 40:4,16,23 43:1,7 43:11 48:14 49:3 49:8,17 50:19,25 53:14,22 54:16 56:4 57:3,12,17,19 57:25 59:8 60:3,5 60:8,11,15,17,23 60:25 61:2,10,13 61:16,21,24 62:3,5 62:9,16,19 63:6,11 63:20 64:15,17,22 64:24 65:2 66:20 67:23 68:10,14,16 68:17 70:14 77:22 78:18,19 80:21 81:6,18 82:3 83:2 84:14,18,22 86:15 87:3,18 88:21 89:8 90:14 91:9 91:13,23 92:13 98:14 100:2,20,24 100:25 102:7,12 103:16,20 105:2 105:10,15 107:24 108:16 110:14 111:4,6 114:8,21 115:1,11,18 116:15,21 117:4,6 117:11,15,21 118:13 119:9 120:18 121:2,8,13 121:14 122:16 127:10,12 129:16 129:18 131:5,13 |

[blaise - challenge]

134:8 138:12,15
139:3,18 140:12
142:12 143:10,17
143:19,24 144:4,9
144:25 145:23
146:7,17 149:18
149:22,25 150:3,5
150:19,21,25
152:16 153:18,21
153:25 155:20,22
157:7 158:8,15,22
159:23 160:25
161:6,13,16
162:17 164:16,16
164:21 165:5
**blaisenitschkela...**
4:10
**blank** 63:3
**bmi** 93:23 134:15
134:17
**book** 59:21
**boston** 72:17 85:7
**bottom** 98:1
**boulevard** 2:21
3:18
**bowdin** 74:12
**box** 18:7,18,19,21
18:25 19:5,7
**breach** 119:22
142:3
**breached** 120:6
**break** 6:22 8:20
13:6 22:1,7 25:14
28:12 34:18,19
46:10 53:17 59:9
68:15 105:11
118:10,11 144:5
152:14 161:7
164:14 165:3
**breakdown** 44:10
86:6 94:13

**bring** 8:24
**bringing** 24:18
63:25
**broad** 99:24
**broadcast** 49:7
54:12
**broadcasting**
15:16
**broadcasts** 17:11
**brought** 9:7 59:12
**browne** 3:5
**business** 12:9 75:5
86:1 134:3 161:23
162:3
**businesses** 91:20
**businessman**
155:18
**butthead** 152:25
**button** 129:6
**buttons** 129:1,2
**buy** 66:21
**bygone** 25:20,20

**c**

**c** 5:12 14:22 17:8
19:10,13,16 44:12
71:5 72:18 77:11
83:11,13 84:6
88:13 124:19
145:12 146:2
**calculate** 94:24
96:19
**california** 1:2,9,14
1:17 2:2,8,14,21
3:9,19 6:1 69:20
71:3 109:7 110:20
111:20 167:2
**call** 22:25 36:12
49:24,24 50:9,9,23
68:1 129:9 161:11
**called** 17:7,16 18:7
19:19 41:14,15,15

47:20 51:9 56:19
75:21 93:5 106:19
112:9 117:9
123:16 147:20
148:15,16,17
149:7
**calling** 50:11
**calls** 27:19 37:15
38:15 39:13,23,24
40:12,13,23,25
47:12 48:14,19
49:1,18 50:1,25
70:12 77:17 81:2
81:3 84:10 86:13
86:24 87:12 90:10
114:6,17 117:5,7
120:2,14,25 121:1
121:5,11 122:12
138:24 139:17
142:8 144:18
145:17,18 157:3,4
158:7,19,25
**camera** 148:1
**campaign** 55:15
**cancel** 136:22
137:4
**cancellation** 137:6
**capable** 113:15
**capacity** 11:11,12
14:17 147:20
**capistrano** 71:5,9
**capital** 18:1,1,1
**caps** 17:8
**car** 164:1
**careful** 18:23
**carrier** 162:7
163:8
**case** 1:6 2:5 6:16
7:7 13:17 30:24
50:6 63:8,15
65:21 85:2 99:3

104:7,8 105:22
106:1,6 109:21
149:1 151:4,15,20
151:22,22,25
152:2,3,4,5,6,8,10
152:22 158:17,17
158:24 167:12
**catalog** 46:23
126:20,23
**catalogs** 72:11
85:2,16 86:5 92:1
125:7
**categories** 86:9
**category** 22:21,24
28:6,8,8
**cause** 41:21
**causes** 119:18
**caution** 155:18
**caveat** 138:22
**cced** 68:11
**cdm** 123:16,24
154:10
**cell** 67:18,21
**central** 1:2 2:2
**ceos** 149:7
**certain** 15:19,25
159:25 160:1
164:8
**certainly** 11:15
16:12 36:17
**certificate** 75:1,10
75:14
**certificates** 74:25
**certification** 74:21
**certified** 2:23
133:4 137:12
167:1
**certify** 167:2,16
**challenge** 151:3
153:1

Veritext Legal Solutions
866 299-5127

[chance - composers]

chance  7:4 111:22
change  52:12 53:5
  93:4,6,9,12 101:1
  103:15 125:16
changed  87:23,25
  125:12
changes  7:6,6 81:1
  81:1 135:13
changing  127:1
characterization
  79:19
charged  21:9
  23:11,15,16
chart  89:17
check  95:10 122:8
checkbook  95:11
  95:14,15,16
checks  95:1,1,2,4
  95:12
chicago  4:8
choice  110:4
circulation  125:25
  126:7 160:9 161:3
circumstance
  41:20
cited  140:4
city  166:9
civ  151:4
claim  68:11 114:2
  114:23 133:17,24
  133:25 134:3,5
  151:5 153:9,11
  158:3,4,9 161:19
  162:21
claimant  10:5
  57:14
claimed  157:24
  159:7
claims  113:19
  114:15 115:19
  163:13

clarification  38:18
clarify  22:9 31:13
  149:21
classes  75:11,16
clause  41:23,24
  139:19
clear  154:23
client  19:22 60:20
  68:4,5
clients  127:14
  128:6,12
close  73:14,16
code  164:18
cohen  1:11 2:10
  3:14 6:16 9:1
  10:15 19:22 21:19
  23:9 24:24 26:7
  29:3 34:25 41:6
  42:11 43:22 54:20
  56:11,17,25 57:1,2
  58:15 65:24 87:20
  88:14 92:8,9,14,17
  94:14,18 97:20,25
  99:2 102:20
  106:23 114:14,22
  115:7,23 116:2,9
  116:17 119:25
  121:23 122:2,17
  128:14 130:9
  131:7,20 134:4
  138:22,23 142:6
  148:16,23 154:23
cohen's  10:5 55:21
  57:15 94:10 98:5
  102:15,16 142:6
collect  56:20
collected  41:19
  97:11
collects  15:15,15
  16:5 17:1

college  74:6,11,12
colon  29:17
column  20:22
  89:24
combination
  110:8
combine  110:4
combined  110:3,8
combo  124:12
come  106:5,25
  107:5 122:3
  128:16
coming  51:22
comment  7:7
commerce  160:3
  161:3
commercial  53:13
  55:3,8
commissions
  96:20
committee  106:9
common  88:25
  90:6,23 91:6,10
  104:18
communicate
  32:15,16 33:6,9,10
communicated
  121:23
communication
  61:10
company  55:21
  57:6 94:1,3 129:3
  139:7 140:23
compare  100:8
  101:18,20,20
  102:15,16
compared  101:3
  102:15
compares  102:10
comparing  101:9

compensated
  76:10,16
compiling  96:10
complainant  1:12
  2:11,20 3:13
complaint  5:20,21
  105:7,8 108:10,10
  110:16 111:24
  112:1
complete  139:23
completed  7:2
completion  167:13
compliance
  137:18
comply  142:1
complying  97:8
  136:17
component  66:15
components  76:18
  85:9 103:10
  145:13,15 149:14
comport  26:9
composed  76:22
composer  9:3
  10:16,22 14:20
  29:1,2,3,8,25 30:1
  30:7 41:18 49:16
  52:2,9 83:8,19
  88:3 92:15 98:3
  112:11,17 113:6
  113:13,18,24,25
  114:1,10,10
  119:11,16,23
  130:10 133:24,25
  134:4
composer's  5:16
  25:19 89:11 97:22
  113:3
composers  17:6
  83:4,5,16,21,25
  84:1 87:21 132:8

Page 6

[composers - correspondence]

141:25
**composition** 15:3
  19:19 29:14,20,23
  30:4 34:5 74:7
  75:6 77:3 78:10
  78:12,21,23 79:7
  97:23,25 99:4,8,11
  112:22 113:14,19
  113:20 133:21
**compositions** 30:6
  98:6,20,22,25
  112:24 113:25
  133:22 139:6
  140:23 142:1,16
  142:17
**compound** 19:1
  28:2,10 36:5
  41:12 42:17 78:16
**computer** 62:24
  63:7,11,15 64:3,6
  64:12,19,20,23
  65:4,6,7,12,13,16
  65:20 66:15,21,23
  66:25 67:5,6,10
**concerns** 151:21
**conclude** 144:23
**concluded** 165:10
**conclusion** 27:20
  36:6 37:16 38:16
  39:14,24 40:13,23
  47:13 48:15,20
  49:2,19 50:2 51:1
  53:15 54:17 70:13
  77:18 81:2 114:18
  117:5,7 120:3,15
  121:1,12 138:25
  139:17 142:9
  144:19 145:18
  157:4 159:1
**conditions** 136:18
  142:2

**confer** 54:23
**conference** 16:19
**configuration**
  58:25
**confused** 25:12
**confusing** 146:6
**connection** 98:5
**consider** 62:25
**considered** 79:21
  80:2,7,9 85:12
**considering**
  121:12
**conspired** 159:15
**construed** 111:19
**consult** 149:2
**consultation** 29:25
  30:7 138:23
**consulting** 97:25
**consumer** 9:2
**contain** 85:8
  159:25 160:1
**contained** 109:16
  109:18 110:7
  112:3,8 114:12
  145:16 146:2,3
  166:5
**contemplates**
  112:25
**contend** 119:24
  120:4 125:19,20
  125:22 145:15
  146:2,10,18
  156:18,25 157:1
  157:13 160:1,3,8
  160:13
**contends** 161:2,3
**content** 127:2
**contention** 84:8
  87:10 92:7 93:9
  99:7 142:5 159:24

**context** 78:9
  121:12 137:14
  141:9
**continue** 13:16
  136:19 159:16
  164:22
**continued** 4:1
  22:10 122:2 165:5
**contract** 5:17 26:6
  28:22 32:18 34:7
  34:12 35:5,13
  36:3 45:23 47:8
  48:11 51:8 52:20
  88:9 93:25 118:19
  118:22 140:11
  141:12 142:20
  153:4,10
**contracted** 76:23
**contractor** 73:1
**contracts** 87:19
  141:25 142:1
**control** 9:16 11:6
  134:2
**controlling** 111:8
**controls** 12:12
**conversation** 7:2
  118:16
**conversations**
  7:20
**conveying** 83:15
**copied** 30:22
**copies** 19:12
  143:14,22 150:1
**copy** 5:13,14 8:2,2
  9:19,20,20 19:11
  20:1 21:17 57:11
  57:22 138:5
  143:24 150:4
  161:10,13
**copyright** 29:16
  30:4 75:19 76:18

76:24 78:20 81:1
  87:10 93:10
  101:21 113:15
  142:17 151:5
**copyrights** 76:25
  113:21
**cord** 79:21,22,23
**corporation** 1:9
  1:15 2:8,15 12:4
**correct** 12:13 14:5
  15:7 18:4,24
  22:18,22 23:23
  29:21 31:1,11
  34:9 36:14 42:9
  42:13 45:9,20
  46:25 47:1 48:9
  49:14,16 53:4,21
  54:10 56:24 58:12
  72:8,12 79:7,10,17
  79:18,19 80:24
  82:7 83:4,13,14,16
  84:16 85:12 89:14
  89:21,24,25 90:3,4
  90:5 94:15 96:3,4
  105:5 106:14
  111:9 112:12
  113:1 123:9
  125:21 139:12,23
  139:24 140:14,17
  141:5,17 145:10
  145:11,13 147:6
  149:11 151:7,7
  152:2,9 156:1,5,6
  156:10 158:10
  164:20 166:6
**corrected** 166:5
**correction** 25:9
**corrections** 166:3
**correctly** 52:3
**correspondence**
  92:21

[costs - defense]

**costs** 119:20
**counsel** 11:2 13:15
  95:16 164:18,23
**counsel's** 165:6
**count** 25:18
**couple** 130:23
**course** 25:24
  52:20 152:13
**courses** 74:7 75:4
  75:7,18,19
**court** 1:1 2:1 7:19
  7:21 8:3,17 9:20
  9:22 19:14 20:2,5
  22:6 24:3 26:1
  35:16 45:15 55:25
  58:3 59:8 68:23
  77:16 99:13
  100:20 103:9
  106:6 107:6,9
  108:13,15 109:21
  142:22 143:2,4,4,5
  143:6,11 144:8,16
  147:11 148:2,4
  149:11,12,12,24
  151:4 153:2,7,24
**covered** 30:10,13
  31:21
**covers** 163:13
**cpa** 133:4
**create** 52:13,13
  54:20 84:9 86:4
  94:4 99:10
**created** 52:19 93:9
**creates** 87:4
**creating** 87:10
  90:25 99:8
**creation** 103:12
**creditors** 136:25
**cross** 1:12,15 2:11
  2:16,20 3:3,13
  10:4,6 57:13,14

**csac** 93:24
**csr** 1:24 167:25
**cue** 14:21,24 15:1
  15:4 22:10 23:1
  24:19 30:21 31:20
  31:21 37:7,7
  40:11,20 44:16
  47:19 48:18,25
  49:7,15,23 50:14
  50:23 51:23 52:2
  52:3,6,9,12,13,13
  52:19,21,25 53:9
  54:19 76:22 78:7
  78:7,9 79:11,21,23
  80:2,7,9,11,12,14
  80:14,16,17,17,20
  80:22,23,25 82:14
  82:15,17,18 84:9
  84:16,21 85:12,15
  86:5,7,11,20,21
  87:4,6,6,9 89:1
  90:17,18 91:1
  92:5,9,24 96:7
  99:8,10,12,14,15
  99:16,17,19
  101:16 102:15,16
  102:17,20 104:12
  104:12,13,14
  105:23 106:23,24
  125:7,10,12,16,20
  125:25 126:7,12
  126:19,22 129:11
  129:15 135:5,8,13
  140:3 145:16
  149:21 154:20,22
  154:24 155:1,5
  156:18 157:11,13
  157:20 159:4,11
  159:20
**cues** 1:8,14 2:7,13
  24:11 30:24 31:2

31:10 44:7,11
  46:23,24 56:13,14
  65:11,13 72:6,11
  79:9 84:24,24
  85:5,8,21 86:6
  89:17 91:2,25
  92:2,7,19,25 93:5
  93:15,17 96:22,23
  99:22 108:2
  123:15 125:14,15
  128:13,17 130:9
  131:20 149:14
  159:25 160:1,2,5,8
  160:13 161:2
**current** 93:19
  131:17
**currently** 88:4
  130:8 132:8
  157:20
**custody** 9:16 11:6
**custom** 86:1
**cutoff** 62:3
**cutting** 53:5 108:2
**cv** 1:7 2:6

**d**

**d** 1:14 2:13 5:13
  12:4,10,17 20:4,6
  20:7,7 21:13
  44:12 72:7,11,14
  72:19,19 74:12
  94:6,7 124:19
  145:12 146:2
**damages** 5:20
  119:18 158:23
**dan** 6:15 27:6
**dan's** 68:19
**daniel** 3:16
**data** 130:5
**database** 135:6,9
  135:14

**date** 10:20,23
  60:15 61:1 69:16
  93:16,18,19
  123:25 124:1,2,14
  124:19 167:19
**dated** 9:2,3 10:16
  60:14,25 62:9
  82:9 167:21
**day** 166:7
**days** 136:19,23
  137:17 148:17
**dba** 1:8 2:7
**deal** 145:12
**deals** 145:9
**debt** 15:15
**decades** 36:13,15
**december** 1:18
  2:22 6:1 164:23
  165:7 167:21
**decide** 7:4 157:16
  159:8
**decides** 79:25
**deciding** 52:5
  101:16
**decision** 144:23
  145:22
**declare** 166:1
**deemed** 112:22
**default** 135:25
  136:13,15,19,20
  137:8 138:13
**defend** 115:19,22
  147:14
**defendant** 1:15
  2:16,20 3:3,3,13
  10:6 57:13 147:5
  147:9,12 164:23
**defendants** 1:10
  2:9 109:4 110:17
**defense** 114:23
  134:2

Veritext Legal Solutions
866 299-5127

[defenses - download]

defenses  133:25
defensively  25:13
define  159:4
defined  12:23
 121:18
defines  155:11
defining  121:17
 125:14
definition  22:10
 30:23 78:1 121:9
 121:16,21 126:17
definitions  115:21
degree  44:13
 54:24 74:17,19,21
 75:1,2
delete  129:6,20
deleted  129:19,23
delineated  52:20
delineates  12:24
deliver  133:8
demand  114:22
 116:17 122:17
denied  110:1,2
denies  109:16
denmark  124:24
deny  109:18 110:6
 111:24 112:1
department
 100:13 105:21,22
depend  39:8
depends  39:3
deposing  11:10
deposition  1:16
 2:19 5:10,11 6:18
 6:19 8:14,16,20
 9:21 13:6 19:13
 20:4 22:1,5,7 24:2
 25:14,16,25 34:19
 45:14 46:10 55:24
 58:2 59:9 63:9,18
 63:25 64:1 105:11

108:12,14 118:11
 144:5,7 149:23
 152:14 153:23
 161:7 164:14,22
 165:3,5,10 167:12
derived  95:23
derogate  139:9
 140:11 141:8,15
describe  12:9
 22:20 27:25 28:6
 28:7 34:23 55:13
 61:5
described  15:24
 21:18 24:16
description  5:8
 28:13
design  35:4 53:6,8
 54:21 125:12
 155:12 159:4,4
designated  14:4
designed  69:5
 125:13,15 129:3
 155:3
designs  155:10
desktop  63:4
despite  91:18
detail  97:21
details  6:17
determine  64:9,19
 65:3 94:16 97:11
 100:10
determined  145:2
 145:4
device  68:1
dick  75:8
difference  16:15
 16:24 39:10
 126:25 127:4
 132:20
different  12:24
 52:14 54:4 79:2

86:7 88:3,6
 104:13 115:8,11
 127:22,22 145:12
 156:8,13
differently  86:7
digital  156:9
dining  16:22,24
direct  157:10
directed  125:8,11
 125:22 149:16,16
 154:25 155:5
 156:18 159:3
directing  156:19
direction  167:9
directive  159:10
directly  57:1
 103:5
dirty  161:10
disability  163:22
 164:3
disagree  143:12
disagreements
 153:6
disc  161:10
discovered  94:2
discovery  61:3
 62:3 63:24 64:3
 64:10,20 65:5,17
 67:1,6 95:5 96:10
 97:8,16 100:16
 102:3 108:4 116:4
 130:17 153:18
 160:21
discuss  153:6
discussed  43:17
discussion  8:21
 13:7 22:2,8 25:15
 34:20 46:11 59:10
 105:12 118:12
 144:6 152:15
 161:8 164:15

165:4
dispose  134:2
distributes  17:5
district  1:1,2 2:1,2
division  1:2 2:2
document  7:25 8:8
 8:13 19:24,25
 21:15 22:3 25:17
 26:3,5 29:3,5 43:8
 44:14,23 45:1,4,11
 46:1,14 48:24
 55:22 57:10 58:6
 59:7 60:19,24
 61:1,22,23 63:11
 63:14 95:15
 132:25 133:3
 150:10 162:9
documentary  44:9
 125:24 126:6,11
 126:18
documents  8:15
 8:24 9:7,11,12,15
 10:8,9 11:3,6
 42:20 43:15,25
 60:5 62:19 63:17
 63:23,25 64:2,6,10
 64:19,21 65:4,16
 66:11,13,14,15
 67:1,10,14 68:2
 97:17 116:12
 117:6,17,25
 121:24 131:23
 132:1 160:11,17
 160:20,25
doing  85:20 97:4
dollars  20:18,19
 20:19
double  139:1
 150:17
download  126:16

[dozen - esque]

**dozen**  129:8
**draft**  88:8
**drive**  4:7 128:10
**drives**  128:9
**drum**  124:11
**drums**  82:23
  86:12 87:2,6,9
**dub**  98:25
**dubbing**  98:21
**due**  70:19 122:8
**dungeon**  90:8
**duration**  30:25
  90:17 91:15 92:5

**e**

**e**  5:12,14,15,18,24
  6:13,14 9:6,6,6,6
  14:22 19:10 22:4
  22:5 23:4,11 24:5
  24:6,10,16 27:16
  27:25 28:7 29:18
  30:5 32:15 33:9
  42:24 43:5 56:2
  60:2,7,13,17 62:7
  62:12 68:4,5,6,10
  68:12 69:15,19
  81:15 82:6 93:2,5
  105:21 126:15
  136:3 145:2,9,9
  148:16 154:5,15
  155:13,24 156:4,4
  156:17 159:10
**earlier**  16:7 26:20
  57:4 72:6 78:20
  79:9,10 101:1
  102:6 105:3
  121:25 123:2
  139:21 140:1,6
  155:23 158:12
  159:6
**earn**  134:14,16

**eastern**  124:23
**edited**  112:23
  113:1 121:20
**editor**  129:12
**efforts**  64:9,18
  65:3,19 97:21
**eight**  109:17,19,22
  109:23,24 110:1,2
  110:7,15 111:24
  112:1,3,4 151:17
  152:10
**either**  13:21 64:4
  66:6 105:25
  106:12
**elect**  87:9
**election**  106:9
  115:24
**electro**  82:25
**electronic**  67:4
  161:9
**element**  86:12
**elements**  98:5,22
  99:1
**elongate**  89:1 92:9
  92:18
**embodied**  77:1
  78:20 146:11
**eminem**  9:4,5
  10:18 19:17,20
  21:19 22:18,20
  24:24 30:8,10,17
  32:1 35:1 42:9,16
  43:10,18,20,23
  44:4,16,17,17
  50:17 53:10,11,21
  54:5,9,12,13,19
  56:14 58:19 65:25
  66:2,3 97:23
  99:19 100:8
  101:16,22,24
  102:15,24 103:6,9

104:4,4,15 105:23
  107:15 114:15,16
  115:20 122:20
  125:7,19,25 126:7
  126:12,19,22
  128:14,19,22
  129:19,24 130:2,6
  135:5,8,13 139:23
  140:4 142:23,24
  143:3,11 144:16
  144:17 145:3,16
  145:25 146:3,11
  146:18,22,23,23
  147:3 148:14,14
  148:24,25 149:3
  149:15 153:9,11
  154:20 155:25
  156:3,15 157:1,5,8
  157:11,21 158:9
  158:10,16
**eminem's**  103:10
  115:19 145:4
  157:14
**employee**  167:17
**employment**  72:24
  73:21
**enable**  142:1
**encompass**  91:20
  91:25
**encompasses**  31:6
**encompassing**
  35:7
**enforce**  97:21
**engaged**  18:2
**engineer**  76:1
**english**  25:6,11
**enter**  111:17
  114:11 139:8
**entered**  25:16 26:8
  118:24 141:24

**entering**  135:16
  135:23
**entertainment**  1:7
  1:13 2:6,12 3:4
  5:19,23 10:6,14
  11:18 12:3,10
  26:6 45:23 51:14
  56:18 57:14 71:22
  72:2,7 73:4,7
  125:8
**entertainment's**
  11:25
**entire**  99:14,15,16
**entirely**  52:14
**entirety**  70:11
**entities**  54:4 71:21
  72:22 119:17
**entitled**  16:13,13
  25:19 137:3
**entity**  12:23 54:18
  54:25 72:7 94:4,5
  113:22 133:23
  155:4
**entry**  119:21
**enumerate**  27:24
**enumerated**  27:16
**errors**  161:22,25
  162:2,25 164:9
**esque**  9:4,5 10:18
  19:17,20 21:19
  22:18,20 24:24
  30:8,10,17 32:1
  35:1 42:9,16
  43:10,18,20,23
  44:4,16,17 50:17
  53:10,11,21 54:5,9
  54:12,13,19 56:14
  58:19 65:25 66:2
  66:3 97:23 99:19
  100:8 101:16,24
  102:24 103:6,9

[esque - fees]

104:4,15 105:23
107:15 114:16
115:20 122:20
125:7,19,25 126:7
126:12,19,22
128:14,19,22
129:19,24 130:2,6
135:5,8,13 139:23
140:4 142:23
143:3,11 144:16
145:3,16,25 146:3
146:11,18,22,23
146:23 147:3
148:14,24 149:3
149:15 154:20
155:25 156:3,15
157:1,5,8,11,21
158:10
**established** 8:10
36:6
**estate** 70:24,25
71:2,7
**estimate** 16:14,15
16:16,18,22,25
17:13 20:22 131:9
131:10
**europe** 124:23
**event** 11:11 137:3
**evidence** 44:10
49:18,18 125:24
126:6,11,19
**exact** 56:21 73:18
74:8
**exactly** 51:9 90:15
90:15,16 91:1
156:14
**examination** 5:2
6:8
**examined** 6:5
**example** 15:1,3
16:17 86:12 96:20

155:15
**excel** 12:23 30:23
84:23 125:13
126:16,16 155:2,2
155:6,11,11 156:7
156:12 159:5,11
159:24 160:15
**exclusive** 29:12
30:2 109:6 110:19
111:20 113:14
114:11
**exclusivity** 139:19
**excuse** 9:2 13:13
24:6 25:5,18 34:8
43:21
**executed** 92:16
108:25 109:4
110:17,21 166:7
**exhibit** 5:8,10,11
5:12,13,14,15,16
5:17,18,19,20,21
5:22,23,24 8:15,16
8:23 9:4,18,21
10:2,3,4,4,17 19:9
19:13,16 20:4,6
21:13 22:3,5 23:4
23:11 24:1,2,8,8,9
24:11,19 25:20,25
30:11,18,21 31:1,3
31:20,21 33:2,7
34:22 45:12,14
51:13,17,18 52:1
55:23,24 56:10
57:25 58:2 81:13
81:23 87:20 88:10
89:9 94:9 104:21
108:12,14 109:7,8
110:20,25 111:2,7
111:7,11 112:11
113:4,4,6 118:25
119:10 130:10

133:12 135:4,17
135:24 136:4
137:10 138:16,18
144:7,10 149:22
149:23 153:13,16
153:22,23 154:3
157:10
**exhibits** 5:7 59:16
81:9,11
**exist** 45:7 113:19
113:19 117:1,20
**exists** 63:6,12
**expand** 29:18 30:6
34:5 97:24
**expenses** 73:25
96:21 119:19
**expensive** 158:2
**experience** 49:6
74:8 86:2,16,18
88:24 121:15
**expert** 39:24 40:13
40:25 81:3 84:11
86:13,24 87:12
90:11 121:1
145:18 157:4
**expiration** 136:23
**explain** 16:12 33:4
76:21 97:21
154:18
**explained** 13:15
37:13 102:14
**explaining** 84:5
**explanation** 37:19
48:7
**explanations** 30:1
**explanatory** 46:13
**explicitly** 37:5,10
37:25,25 38:4,4
126:15 156:2,3
**exploitation** 46:21
48:4,6,11,18 49:14

49:15 51:22 52:2
52:18,22,23
**expressly** 98:19
126:2,6,19,22
155:24
**extent** 11:5 92:8
116:23 117:20
**external** 128:9,10

## f

**f** 5:15 24:1,2 44:12
81:13,23
**facade** 129:14
**facilitate** 12:4
47:25
**facilitated** 23:21
23:22
**facilities** 6:25
**facsimile** 100:5
**fact** 10:13 20:21
104:7 125:11
159:18
**facts** 49:17
**factual** 16:16,21
**failure** 137:15
**fair** 12:6 51:5
53:17 68:20 69:2
69:10
**familiar** 17:7,9
18:6 19:19 24:9
24:13
**faster** 146:21
**fax** 136:21 137:8
**february** 26:8
**federal** 167:12
**fee** 21:2,2,4,8,9
23:5,5 96:7
119:20
**feel** 9:13 100:6
**fees** 20:15,16
137:5 160:7 161:1

[figi - going]

**figi** 47:7 50:8
**figueroa** 3:8
**figures** 73:18
  146:8
**file** 12:23 30:23
  125:13 126:16,17
  155:2,2,11 159:5
  159:11
**filed** 148:14
**files** 67:4 72:18,18
  85:7 156:9,10
**film** 82:15,18 99:1
**final** 51:12
**finally** 148:17
**financially** 167:16
**find** 6:23 58:21,22
  84:24 85:6 117:16
  144:16
**finding** 104:3
  143:2
**fine** 7:22 38:10
  71:7 141:7 153:1
**finish** 7:17,18
  68:20 74:17 91:22
  91:24 107:3
  115:10,14 119:8
  123:8
**finished** 118:7
  151:12
**firm** 59:23 60:3,4
  60:6 62:8 113:22
  133:23 139:6
**firm's** 61:13
**first** 6:21 24:6,10
  30:17 31:3,20
  37:4,9 46:14
  57:21 59:13 63:16
  67:17 89:14 90:1
  97:25 100:19
  119:15 129:10
  146:9,10 152:24

**fit** 98:25
**five** 24:8 27:9
  44:11 54:4 74:5
  82:21,24 83:7,18
  93:20 98:2 105:9
  123:2,24 124:6
**folder** 65:11,14
  66:10
**folders** 65:8,9
  66:19
**folks** 45:13
**follow** 126:16
  140:10 155:19
**following** 82:14
  94:17 104:6,8
**follows** 6:6
**foregoing** 166:2
  167:3,5,9,11
**forget** 51:12
**forgetting** 65:25
  88:18
**form** 15:20 19:1
  28:9,18 30:12
  31:4 32:7 33:22
  36:5 38:25 39:3,8
  40:12,22 41:12
  42:17 43:7 44:19
  53:14,22 55:10
  64:25 66:17 78:16
  92:11 121:10
  127:6 134:6
**formal** 74:2,9,10
  75:3
**formally** 76:4
**format** 53:11
  125:14,15 127:1
**forms** 130:14
**forth** 148:16 167:4
**forthwith** 137:5
**found** 98:3,9 99:13
  102:24,24 103:9

  107:12 142:22
  153:8 158:1
  159:20
**foundation** 36:19
  40:16,24 50:19
  53:22 54:16 63:16
**four** 54:3 57:16,16
  57:20 58:8 82:20
  82:24 93:18 113:4
  113:8,9 120:10
  141:19 142:13
  146:9,10,19
**france** 123:16,24
  154:10
**franck** 154:9,20
**frank** 154:9
**free** 119:17
**french** 154:12
**friday** 62:5,6,20
**friend** 149:7
**friends** 76:16
**frink** 100:13
  105:20 106:12
**front** 111:12
  150:10
**full** 78:1 114:11
**fully** 51:8 105:13
  107:21,23,25
  108:4 136:17
**function** 66:13
**funk** 55:17 56:11
**funny** 7:8
**further** 167:11,16

**g**

**g** 5:16 25:25 30:18
  30:21 31:1,3,20,21
  33:2,7 34:22
  51:17,18 87:20
  88:10 89:9 112:11
  113:4,6 119:10
  130:10 133:12

  135:17
**general** 12:16
  14:25 26:9 41:5
  44:7,15
**generally** 34:23
  66:1,11,14 85:22
**george** 3:5
**germany** 124:7,11
**gesturing** 68:25
**getting** 16:20
**give** 8:2,2,2 9:18
  16:17 19:11 23:25
  25:23 33:6 34:4
  38:9 45:11 55:22
  59:6,7 73:18
  87:14 93:15 95:1
  115:14 119:7,8
  124:1 135:1 150:4
  162:12 163:17
**given** 37:5 58:5
  80:17 154:22
  159:18 167:10
**giving** 34:11 37:14
  37:24
**go** 6:21 8:18 21:23
  21:25 24:7 29:18
  31:23 34:16 35:2
  46:7,22 51:16
  64:18 66:2 74:11
  92:17 96:17
  109:10,11 144:1
  152:12,17 161:6
  165:2
**goes** 46:22 48:3
  104:15 127:1
**going** 6:16 8:1
  9:17 13:15 19:9
  19:24 20:6 25:17
  27:13 28:24,25
  31:4,23 37:15
  38:11 45:11,12,17

Veritext Legal Solutions
866 299-5127

[going - income]

55:22 57:25 59:5
59:6,7,24 60:8
62:20 69:8,9
75:17 81:23 82:2
83:25 84:10 87:16
98:23 108:19
113:5 116:9
117:16 120:14
127:10 131:8
138:24 139:16
143:14,19 146:25
148:18 150:4
153:21 157:9
164:22
**good**   6:25 7:1,10
12:2 28:19 30:14
93:23,24 116:2
133:11 141:24
**gotten**   23:22
**govern**   31:1,10,14
31:15,15,19 35:6
**governing**   35:13
35:14,14
**graduate**   75:13
**grant**   77:12 139:6
140:22 141:3,14
142:6
**granted**   77:14
78:5 97:2 98:4
139:22
**granting**   78:22,23
78:24,25 79:1,3,4
87:8 114:12 140:3
142:7
**grants**   29:8 30:2
139:9
**great**   11:1 35:18
93:23,24
**groove**   82:22
100:7

**gross**   73:7 132:13
132:18,20,23
**grouping**   85:19
**grove**   75:8
**guess**   16:8,13,15
16:16 24:7 38:3
39:5 88:19 131:8
131:11 135:3
**guessing**   75:17
**guitar**   82:23
**guy**   62:7
**guys**   150:1

## h

**h**   5:17 45:12,14
46:14 51:13 52:1
56:4 72:18 88:13
104:21 111:3,5,7,7
111:11 118:25
135:4,24 136:4
137:10 138:16,18
**half**   10:1 129:8
**hand**   19:24 20:2
59:5 68:1,24
89:23
**hands**   68:25
**handwriting**
26:11
**handwritten**
62:21
**happen**   33:12,16
33:18,21 52:15
91:6 118:21
127:16
**happened**   93:11
**happens**   90:13,15
90:24,24 91:4
127:20,22 128:12
**happy**   143:20
**hardware**   66:25
**harmless**   114:1
119:17

**hblaise**   4:10
**he'll**   158:17
**head**   105:20
130:15
**health**   164:3
**heard**   157:17
**heather**   4:5 68:17
164:16
**held**   159:11
164:17
**help**   43:15 58:23
**helps**   115:15
**hereof**   142:2,4
**hereto**   10:17 11:3
111:18 166:4
**hi**   24:12 154:20
**high**   151:4 153:2,7
**hills**   69:20 71:3,6
**hire**   105:25 106:4
106:12,25 107:5
**history**   37:21,23
74:20
**hit**   129:1,6
**hitting**   129:2
**hm**   8:12 18:8 61:9
74:1 76:3,6,8 80:4
112:10 132:11
162:6
**hold**   13:5 28:13
70:10 71:14 72:24
91:21,21 93:15
115:9 119:16
135:16 136:11
137:20
**holding**   43:12
130:8,12 164:24
**holds**   114:1
**home**   69:18,22
71:3
**homeowner's**
161:17,19 162:18

162:22
**hope**   117:18
**horizontally**   20:25
**host**   129:9
**hours**   7:11
**house**   70:6
**household**   25:11
73:25
**huh**   69:2
**hyphen**   9:6

## i

**idea**   17:15 23:24
**identification**   8:16
9:21 19:13 20:4
22:5 24:2 25:25
45:14 55:24 58:2
108:12,14 144:7
149:23 153:23
**identified**   146:1
**identify**   43:16
44:22
**ii**   140:1
**iii**   141:21
**illinois**   4:8
**important**   7:16
80:13
**inaudible**   91:11
**inc.'s**   5:19,23
57:14
**include**   29:17 30:5
48:18 49:7 56:14
112:22 128:10
156:17
**included**   44:17,17
51:23 52:2
**including**   63:24
95:16 103:9
119:19 125:9
128:14 160:6
**income**   96:17
132:13,18,22,23

[incurred - jacobson]

incurred   119:21
158:24
indemnification
119:13
indemnify   114:14
119:16
indemnity   152:22
153:6
independent   73:1
index   5:1
indian   129:3
indicate   60:11
indications   68:24
individual   1:11
2:10 147:24
individually   73:5
individuals   27:1
induration   89:3
industries   99:2
industry   12:5 14:6
14:12,14,17,21
15:6 18:2 36:12
36:13,16 37:2,8,19
37:20,21,22,24
38:6,8,13,23 39:11
39:22 40:9,10,20
49:6 50:22 74:7
75:5,5 108:2
118:18,18
inform   32:3,12,14
32:17 33:1,4
information   12:15
informed   125:11
infringe   113:20
133:22
infringed   143:12
infringement
107:10 147:16,17
148:4,5,8 151:5,17
151:19,20,21,22
152:4,10,23 153:3

153:9,11 158:4,9
158:18
infringes   142:17
157:14
infringing   99:14
100:10 101:17
102:20,24,25
103:2,10 104:4,11
105:23 107:7,12
142:23 143:3
144:24 148:24,25
149:3,5,8,10,13
157:1,25 158:1
159:15
initial   53:16
initialed   27:1
166:4
initially   126:20
initials   18:1 26:16
ink   166:4
insert   158:17
instance   15:19
21:9 90:1,9
instruct   16:7
instructions   68:19
83:8,10,19
instrument   82:23
insurance   161:17
161:20,22 162:2
162:18,22,25
163:2,20,21,21,22
163:22,23 164:1,2
164:3,3,4
integrity   37:7
47:17,18
intended   49:13
52:1
intent   47:15 48:4
51:22
intention   84:3

interest   29:12 30:3
57:16 71:21,23,24
71:25,25 72:3,4
147:25
interested   167:17
interfere   133:23
internet   55:9,11
55:13,16
interrogating   10:8
interrogatories
57:15 94:10 103:3
104:18
interrogatory
94:12,23 97:19,20
98:2,9
interrogatory's
130:20
interviewed   148:1
introduce   47:16
introduced   47:19
introduction
46:21 47:9 48:8
48:11 49:14,15
51:21 52:1
investigates   14:2
invoice   5:13,14
20:1 21:17
involved   77:5 87:2
147:24
irs   96:21
irvine   2:20 3:18
issue   91:16,17
92:2 101:21
issued   127:3
issuing   91:14
items   138:4

**j**

j   5:19 57:10,25
58:1,2 94:9
jacobson   3:15,16
5:5 6:10,15 8:5,7

8:18,22 9:17,23
11:8,9 13:8 15:21
16:3,10,11 19:3,15
20:7,8 22:3,12
24:4 25:5,8,17
26:2,23 27:6,22
28:5,15,19,20
30:14,16 31:8,16
32:11,24 33:25
34:17,21 35:18,23
35:24 36:8,21
37:17 38:20 39:7
39:15,17,21 40:1,5
40:15,18 41:2,10
42:3,19 43:4,9,14
44:21 45:16 46:12
47:14 48:17,22
49:5,11,21 50:4,21
51:4,11 53:17,19
53:24 54:2,22
55:12 56:1,5,6
57:8,13,18,20,24
58:1,4 59:11,15,19
59:21 60:1,7 61:5
61:8,17,20 62:1,14
62:24 63:3,14
67:9,25 81:5
84:12 86:24 87:12
90:10 91:7,12
99:25 105:9 111:3
114:6,17,24 117:2
117:5,8,13 120:2,5
121:4,11 122:12
122:15 127:7
130:19 131:9
142:10 143:16,18
143:22 144:18
145:19 146:5,14
150:2,18,20,22
152:13 157:6
158:7,11,19,25

Page 14

[jacobson - lawsuit]

161:9 164:13,20
165:9
**january** 81:15
82:9 93:16 123:23
155:13
**japan** 124:13,14
124:17
**jennifer** 1:23 2:23
167:24
**job** 1:25
**join** 40:4 81:5
84:12,18 121:4,11
142:10 145:19
146:5,14 157:6
158:21
**joint** 70:11
**jprx** 1:7 2:6
**judge** 102:23
104:3,10 107:12
**judge's** 104:9
**judgement** 5:22
**judgment** 119:21
143:15 153:14,16
**jurisdiction** 15:18
93:22 109:6,21
110:19 111:20
147:11 148:4,7
151:3 153:2,8
**jurisdictions**
93:21 123:11

**k**

**k** 5:20 72:18
108:10,11,12,19
108:24 124:15
**k1s** 72:21
**keep** 18:11,17 69:1
98:23 101:20
102:14 103:15
108:1 142:25
143:1 157:9

**keeps** 17:4
**kept** 59:1
**key** 65:23 66:6
**know** 6:23 8:1
9:24,25 11:23
12:19 13:3,9,17,24
14:21 15:10,11
16:2,5,9 17:14
19:2,18 20:18,21
21:8,10,14 22:23
23:8,10,24 27:6,24
28:17 31:6,14
33:23 38:9,11
39:6,9,25 40:6,17
41:1 42:18 43:24
43:25 44:14,24
50:15,20 51:3,8
54:11 55:4,5,7,9
55:11,17 56:15
58:20 59:2 65:10
69:4,6 70:10,15,16
71:6,12,16 72:23
73:9,10,11 75:9
79:1,3,8 81:4,8
84:19,19 85:20
87:16 88:2,14,16
88:20,22,23 89:7
91:8,10 92:12,12
93:1,13,22 95:23
96:22 97:1 100:1
100:17 102:9
104:2 110:10,10
110:11,12 111:1,2
114:5,7,20 115:21
116:10,18 120:13
120:16,17 121:7
124:8,14,19
127:21,24 129:12
130:15,20 131:20
131:24 132:24
133:18 134:13

135:10 138:3,10
138:21 143:1
145:20 146:18,23
149:10 151:10,19
151:20 152:5,7
153:12 154:21
158:5,14,20
160:10,12 161:1
162:8 163:11,13
163:15,24,25
164:5
**knowing** 130:1
159:16
**knowledge** 16:14
23:13,15 34:6
36:9 39:15 40:15
54:13 56:7,9
**knowledgeable**
10:13 11:12,21,25
**known** 46:23
147:3
**korea** 124:18,22

**l**

**l** 4:5 5:21 6:13
69:15 88:13,13
105:21,21 108:14
108:19,20 109:8
124:24,24 163:9
**lab** 72:15,16,17
73:21 81:24 85:7
93:24
**label** 104:12
**labeled** 104:11,13
104:14
**labrador** 1:7,13
2:6,12 3:3 5:19,23
8:25 10:6,14,14
11:18,25 12:3,6,9
12:10,12,16 14:5,9
14:11 18:25 19:7
21:12 23:6 26:6

29:6 30:8 31:2
32:1,3,4,12 33:1
34:8,11 35:13
36:2,20,22,24
41:13,17 42:8,12
42:15 43:16,20,22
45:8,23 46:1,15,24
51:13,23 56:18
57:1,2,14 58:17
59:2 68:3 71:22
72:2,7 73:4,7
87:19 92:1 93:22
93:23 94:4 95:3
98:4 104:22,23,24
109:16 114:15
125:8 134:14,19
134:23 135:5
138:18,21 140:13
141:3 142:19
147:8 151:7,18
152:3 155:3 165:5
**labrador's** 94:10
105:7 132:13,23
164:23
**lana** 4:15
**language** 25:6
32:13 33:2,8 50:5
88:6
**laptop** 66:8
**las** 159:9
**law** 3:7,17 4:6
54:23
**laws** 109:6 110:19
111:20
**lawsuit** 43:13
67:12,16 122:7
123:20 125:17
147:5,8,12,15,24
147:25 148:13
151:16,18 152:23
156:22

Veritext Legal Solutions
866 299-5127

[lawyer - mail]

lawyer   8:2 20:2
  88:8,12 132:5
  133:6 160:18
lawyers   16:17
lay   63:16
lead   82:23
learns   25:5
lee   3:16
left   23:17
legal   27:19 36:6
  37:16 38:9,15
  39:13,23 40:13,23
  47:12 48:14,19,20
  49:1,18 50:1,25
  53:14 70:12 75:19
  77:17 81:2 114:17
  114:23 117:5,7
  120:2,14,25
  121:11 138:25
  139:17 142:8
  144:18,19 145:17
  157:3 158:7,25
legally   51:10
length   16:18,22
  90:17 91:1
letter   33:8 135:24
  136:2,3,6,8 137:11
  137:14,18,21,23
  138:1,5,10,13,13
letters   9:6 59:23
  60:1,3,6
letting   161:1
liabilities   119:19
liability   163:11
libraries   12:11,13
  85:19 128:11
library   1:8,14 2:7
  2:14 12:7,20,22,25
  13:9,11 30:24
  32:19 91:18 93:15
  93:17 98:24

125:12,14,16
  126:17 154:21
  155:11 156:4
  157:11 159:5
license   20:12 21:2
  41:14,15,16 42:5
  42:15 46:20 47:2
  47:5,24 50:24
  77:12,20,21,23
  78:4,5,23 79:3
  87:8 91:14 94:21
  96:7 97:23,24
licensed   50:17,23
  53:20 66:5 84:20
  97:23 122:21
  129:10,11 159:8
  160:5
licenses   77:14
  91:15,16,17 92:2,4
  97:2
licensing   21:8 23:5
  47:25 50:11 77:5
  85:23 88:24 91:20
  97:4 104:19
  121:15 122:3
  127:3 130:9
  157:20 159:16
  160:7,12 161:1
liens   70:21
life   163:21,22
  164:3
liking   54:21
limit   15:18,23
  98:20 163:11
limitation   119:20
  139:15 140:2,3
  141:16,17
limited   29:17 30:5
  45:24
line   47:5,10 48:3
  91:12 114:24

117:3 146:12,24
list   30:22 58:11,14
  83:10 131:2
listed   30:17,21
  31:3,10 42:12
  46:4 130:13,13,19
  141:11 155:2
listen   99:19
  128:16,18
listening   145:25
listing   31:20
listings   156:8
lists   84:23
literally   52:14
litigation   45:3
  125:18 155:8
  157:24,25 159:13
little   25:12 54:16
live   119:3
llp   3:5
locations   50:13
log   60:12
logistical   7:19
long   14:8,8 30:25
  36:25 136:10
longer   66:3 80:23
  80:23 112:23,25
look   7:8 9:24 20:1
  20:25 21:16 23:4
  25:22 27:7 41:4
  45:17 65:7,9
  81:16,25 83:7
  97:7,13,17 108:19
  142:13 143:24
  150:9,23 154:3
  155:14
looked   65:6,8
  130:13
looking   50:5 57:23
  58:8 109:8 111:11
  111:14 120:19

136:4 141:19,21
  145:1,9 146:8
  148:19
looks   20:25 27:2
lords   90:8
los   3:9 75:4 153:5
lose   101:17,21
  102:16,25 103:10
  104:4 105:23
  106:22,24 142:23
  143:3,12 144:17
  145:4 146:20
  148:25 149:3
  157:1,14
losing   37:7
loss   47:17
losses   119:18
lot   73:18 74:7
  149:14
lots   75:4,10
loud   82:12,13
  109:2
lunch   68:15
lyrics   41:23 77:2
  80:2,7

| m |
| --- |

m   5:22 6:13 9:6,6
  17:8 69:15 105:23
  124:19,19 144:7
  144:10 153:17,18
  163:9
machine   167:7
mail   5:12,15,18,24
  19:10 24:5,6,10,16
  32:15 33:9 43:5
  56:2 60:13,17
  62:7,12 81:15
  82:6 93:2 126:15
  136:3,21 137:8
  154:5,15 155:13
  155:24 156:4,4,17

Veritext Legal Solutions
866 299-5127

[mail - monies]

159:10
mailed  93:5
mails  42:24 60:2,7
  68:4,5,6,10,12
  148:16
main  74:14
major  159:3
making  133:10
  136:16
manipulate  52:13
  53:2 129:4
manipulated  53:1
manipulation
  52:12
manner  53:5
  134:3
mannerisms  68:24
mark  8:13 9:18
  19:9 23:25 26:12
  26:12,15,24 55:23
  57:10
marked  8:16,23
  9:21 19:13 20:4
  22:5 24:2 25:25
  45:11,14 55:24
  58:2 108:9,12,14
  110:24 111:1
  118:25 130:10
  135:17,23 137:10
  144:7 149:23
  153:22,23
marketing  73:24
marketplace
  96:23,24
markets  12:25
marking  8:4 22:3
  45:12
master  77:21,21
  78:3,4 79:2,3,5
  98:21

material  119:22
  136:17
materials  8:25
matter  67:23
  68:18 116:3
  118:21 146:23
  157:25 158:1
mc  26:11 66:3
  101:16 104:14
  105:23 149:15
  154:20 157:11,20
  158:10
mccartney  103:13
mean  9:10 11:14
  11:23 15:23 18:2
  25:3 30:13 31:20
  32:14 33:4 34:6,8
  36:20 37:25 38:4
  38:9 47:3,9,18
  52:23 53:2,7
  54:14 56:16,25
  57:6 60:24 68:5
  71:23 77:2,3,9
  78:9,10,11,13 80:3
  82:8 83:18 86:5
  87:1,1,24 89:2,18
  95:10 106:4
  109:20 116:10
  120:23 121:18,19
  123:1 134:16
  141:8 143:4 145:1
  147:23 152:3,25
  156:2 157:5
  161:24
meaning  32:13,17
  33:3,8 133:21
means  15:10 27:24
  31:14 48:11 112:6
  114:20 136:2,7
  140:20 144:15
  151:7 156:3 158:5

meant  116:10
  160:1
measure  146:19
measured  146:9
  146:10
mechanical  42:5
  42:15 77:20,23
  78:5,22
mechanicals  41:15
mechanics  42:5
medication  7:11
medium  55:3
membership
  71:25
memory  59:21
  73:9
mentioned  36:1
  37:10 51:21,25
  59:11
met  159:6,9
method  39:18,19
methods  40:8,14
  40:20
michael  1:11 2:10
  3:13 6:16 9:1 10:5
  10:15 19:22 26:7
  29:3 54:19 55:21
  56:11,17 57:15
  65:24 87:20
  114:14 115:7
  116:2,9 119:25
  134:4 148:16
  154:23
middle  50:13
  69:12
mile  151:17
  152:10
mind  28:1,7 60:21
  115:22
mine  13:22 54:24
  81:16 149:9

minute  34:16
  87:14 95:1 135:1
minutes  104:15
  105:9
mischaracterizes
  26:20 57:4 140:6
  158:12
misspelled  29:20
misstates  102:5
  158:6
mix  86:11
mixing  103:15
mm  8:12 18:8 61:9
  74:1 76:3,6,8 80:4
  112:10 132:11
  162:6
modify  92:18
modoocom  124:19
  124:21
mom  18:16
moment  8:19
  25:18 46:8 119:8
  134:20
monday  1:18 2:22
  6:1
monetary  21:1,5
money  16:4 17:1
  20:21 21:12 23:7
  23:9,12,23 41:13
  42:25 43:6,20
  58:25 59:6 73:19
  94:21 95:23 97:1
  115:22 130:8,12
  131:4 134:14
monies  15:15
  20:14,15 41:14,16
  41:19 43:13,22
  52:24,24 58:11
  59:2,3 94:16
  122:2 130:25
  134:23 135:19

Veritext Legal Solutions
866 299-5127

**[month - number]**

**month**  71:19
**morning**  7:22
**mortgage**  70:17
  70:19,21 71:9
  73:20
**move**  9:18 33:1
  64:15 103:16
  129:5,5,16 149:18
  149:22 155:20
**moved**  99:12
**mp3**  154:22
  157:12
**music**  1:4,8,14 2:4
  2:7,13 12:5,5,6,11
  12:12,19,19,22,24
  12:25,25 13:9,11
  13:22 14:6,12,14
  14:17,21,25 15:3,6
  15:16 18:7,18,19
  18:21,25 19:5,7
  22:15 23:2 24:11
  30:23 37:23 41:22
  46:23,24 47:19
  50:22 52:14 53:1
  54:20 56:18 72:10
  74:7,7,21,24 75:5
  75:5,5 76:1,7,9,12
  76:14 77:6,8,10,10
  77:13,13 78:7
  79:11 85:22 88:24
  89:1 93:4,23,23,24
  93:24 98:24 100:6
  100:13 103:12
  104:10,19,19,22
  105:20,22 121:15
  127:1,14,25 128:5
  129:12 144:22
  145:24 149:13
  157:18
**musical**  74:2
  78:10,11 79:7,24

79:25
**musicologist**  100:8
  100:12 149:6
**musicologists**
  102:19 105:17,25
**musicology**  74:22
**mwf**  1:7 2:6
**mx**  18:7,18

**n**

**n**  4:7 5:23 9:6
  69:19 71:5 74:12
  77:11 124:8,8
  149:22,23 150:19
  153:16
**name**  5:3 6:11,12
  6:13,15 27:5
  30:25 68:17 69:12
  69:24 70:1,8 73:5
  73:6 75:8 100:12
  162:8,10 167:20
**named**  44:11 86:7
  138:3 144:24
  147:5
**names**  65:10,22
  75:10
**nassar**  4:15 25:16
**national**  20:13
  21:10 23:13 54:7
  54:8 55:1 106:11
  106:12 151:17
  152:11 153:3
  159:15,19
**nature**  66:19
  163:5
**necessarily**  79:15
  80:14
**necessary**  142:3
**necessity**  47:25
**need**  6:22,22 21:22
  25:24 34:18 35:9
  60:8,9 62:5 63:16

66:18 82:15,18,22
  82:25 88:25 89:7
  90:7,8 111:1
  119:24 138:10
  148:9 150:11
  161:14
**needs**  24:19 47:19
  82:14,17 90:16
  91:1
**negotiator**  23:19
**neither**  18:24
  167:16
**nervous**  159:14,19
  159:20
**net**  41:18,18 42:14
  132:21,22,22
**never**  16:23 41:22
  63:4 104:8 106:23
  111:25 129:3,10
  155:23 156:4
**new**  13:23 17:8,12
  17:20,22 20:13,19
  23:14 24:11 47:7
  50:8,12 52:13
  54:7,12,19,21,25
  55:16 81:1 84:9
  86:5,20,20 87:4,10
  93:9 94:3,4 98:4
  99:8,10,13 100:9
  102:23 103:8,23
  106:1,6,9,11,16
  107:6,9 109:20
  115:24 116:9,12
  123:8 142:22
  143:6,11,15
  144:15 147:8,14
  147:19 148:10
  151:4,15 152:19
  153:2 156:12
  158:24

**nicholson**  62:7
**nikki**  56:2,7
**nine**  109:17,20,23
  110:1
**nitschke**  4:4,15
**noel**  1:16 2:19 5:4
  6:4,13 8:10,14
  11:11,15,24 19:10
  24:12 51:19 56:2
  60:13 62:7 166:1
  166:15
**non**  34:11 35:25
  36:1 107:7,10
  137:24 138:1,4
  148:24 158:1
**nonresponsive**
  64:15 103:16
  129:17 155:20
**nontaxable**  20:16
**north**  3:8
**note**  138:9
**notebook**  7:3
**noted**  166:4
**notes**  46:13 59:12
  62:21,21,25 63:7
  64:12 117:14,18
  124:15,15,16
  132:6 133:7,10
**notice**  5:10,11
  8:14 136:20 137:8
  139:22 140:2
  160:4
**notify**  133:24
  134:4,9
**november**  60:14
  60:16 62:10
**number**  57:23
  58:7,9 82:2 94:12
  94:23 97:19,20
  98:1 109:20
  110:25 111:2

**[number - okay]**

139:1 150:7,13,18
151:1 152:5,6,24
152:24 159:2
163:15,17
**numbered**   27:8
**numbers**   20:17
94:24 130:19,21
**nw**   27:4

**o**

**o**   5:24 17:8 18:1
71:5 72:18 74:12
124:8,8,8,19,19,19
124:19,24,24
153:22,23 154:3
157:10 163:9
**oath**   6:5 167:6
**object**   31:4 37:15
81:2 84:10 86:24
115:15 120:14
138:24 139:16
147:11 148:7
**objecting**   148:3
**objection**   15:20
16:1 19:1 26:20
27:18,19,21 28:2,3
28:9,10,11,18
30:12 31:12 32:7
32:8 33:22,24
36:4,5,19 38:15,19
39:13,20,23 40:3,4
40:12,16,22 41:9
41:12 42:17 43:7
43:11 44:19 47:12
48:14,16,19 49:1,3
49:8,9,17 50:1,19
50:25 51:2,6
53:14,22 54:16
55:10 57:3,4
64:22,24,25 66:17
70:12 77:17 78:16
84:17 86:13 87:12

87:14 90:10,12
92:11 99:25 102:5
114:6,17,19,24
117:3,4,11 120:2
120:25 121:4,10
122:12 127:6,7
134:6 140:6 142:8
144:18 145:17
146:4,12 157:3
158:6,11,12,19,25
**objections**   38:24
38:25 39:2 87:15
91:7,12 98:1
144:20 151:9
**obligation**   8:25
10:15
**obligations**   48:1
97:17
**obtain**   163:17
**occasionally**   129:6
**occur**   93:12
**offer**   128:13 140:9
**offered**   75:7
**offering**   125:7
**offers**   13:1
**office**   61:2 159:6
164:24 165:6
**oftentimes**   84:20
**oh**   12:18 13:13
17:21 18:11 22:13
37:20 45:25 49:22
59:5 75:15 112:19
131:2 149:20
150:15,21
**ohiri**   3:6 9:15 11:5
15:20 16:1,7 19:1
21:25 26:20 27:19
28:2,9,12,18 30:12
31:4,12 32:8,20
33:24 34:16,18
35:16 36:5 37:15

38:19 39:2,5,13,20
39:23 40:3,12,22
40:25 41:9,12,25
42:17,23 44:19
46:9 47:12 48:16
48:19 49:1,9 50:1
51:2,6 55:10 57:4
57:23 59:13,16,18
59:22,24 60:2,4,9
60:13,14,16,19,24
61:1,3,7,9,12,14
61:19,22,25 62:4,6
62:10,15,18,22
63:16 64:21,23,25
66:17 67:20,24
70:12 77:17 78:16
81:2,16 82:1
84:10,17 86:13
87:14 88:19 90:12
92:11 102:5,9
104:25 107:22
110:9 111:5
114:19 115:10
116:7,12,19 117:1
117:20 119:7
120:14,25 121:10
127:6 130:22,25
131:11 134:6
138:10,24 139:16
140:6 142:8 143:6
143:8 144:3,20
145:17 146:4,12
152:12 153:17,20
157:3 158:6,12,21
159:21 160:24
161:15 162:14
164:19 165:1,8
**okay**   6:21 7:10 8:6
9:10 10:10,25
11:1,17 12:2,18
16:4,9 17:7,25

19:19 21:15 23:25
27:15,25 29:8
32:1 37:9 40:2
43:15 46:13 49:6
49:22 54:7 55:5
56:23 57:9 58:10
59:14,15,18 60:23
61:16,21 62:1,6,16
62:19 64:14 65:11
65:19 69:12 72:2
72:10,21 73:3,7,23
74:2 75:15 77:5,8
77:12 79:2,9,12
81:17,23 84:5
85:14,18,24 86:4
86:11 88:8,24
92:4,7 94:9,11,22
98:8,10,10 101:7
102:23 104:9
105:1,13,19,20
107:17 108:8,9,18
108:21,25 109:8
109:12,25 110:6
110:15 111:11
112:11,13,20
113:11 115:25
116:14 118:6,9,10
119:10,14 123:6
123:11,14 124:5,7
124:18,23 125:5
126:11,18 127:10
128:4,8,13,19
131:6 132:23
133:11,12 135:4
135:23 137:23
138:14,20 139:21
140:19,25 141:6,8
141:19,22 142:19
143:14,17 144:13
146:8 147:22
150:11,13,23

Veritext Legal Solutions
866 299-5127

151:9,24 152:8
153:13 154:12,14
156:12,25 157:8
159:21 161:15
164:6,11,16
**olay** 149:7
**omissions** 161:22
161:25 162:2,25
164:9
**once** 49:22,22
**ones** 59:24
**open** 164:24
**opened** 63:1,2,8
**operative** 105:4
**opinion** 16:16,21
22:19 39:24 40:13
40:25 47:12 48:19
81:3 84:11 86:14
86:25 90:11 106:5
120:2 121:1,12
144:19 145:18
157:4 158:7
**opportunity**
118:14 152:18
154:3
**opposed** 25:7
**option** 129:9
**oral** 164:22
**orally** 33:7 38:14
38:24 40:19
**order** 38:7 77:12
94:24 143:2,4,4,5
**organization**
15:14 17:7,14,16
18:3,6 46:5
**original** 25:21
80:23 102:20
104:14 105:23
106:23 113:15
129:9 142:16
167:12

**originally** 41:4
47:20
**outside** 21:24
73:21
**outstanding** 137:5
**owe** 70:17 71:12
**owed** 94:16 97:1
**owned** 46:24 92:8
113:25 124:25
**owner** 13:21,21
29:5,8 30:2
112:17 113:15
114:1,13 119:16
119:17 120:20
133:17,24
**owner's** 29:16
30:5
**owners** 134:1
**ownership** 52:19
71:24
**owns** 76:23

**p**

**p** 6:13 18:1 69:15
71:5 124:24 163:9
**p.m.** 2:22 165:10
**page** 5:3,8 19:24
24:8,9,10,18 26:16
26:19 27:7,7
46:14 51:12,18
55:22 57:16,20
58:8 61:6,23
62:11,15 63:3
81:23 89:14 98:1
98:15,15 111:14
143:20,21 150:16
**pages** 21:15 25:18
25:18 26:11 27:8
30:17,21 31:3,20
57:16 62:14
**paid** 34:25 41:6,7
42:11,15 56:12,16

57:1,1,2 58:14
113:25 132:10,10
132:11 134:15,17
134:23
**palmer** 6:13,13
69:15
**palomar** 163:9,9
**paper** 23:25 116:7
**paperwork** 116:3
116:4
**paragraph** 27:9
34:23 41:4,10
45:25 46:19 47:4
47:10 81:24 83:7
83:18 84:6 108:22
109:1,9,11,19,22
109:24 110:1,1,2,7
110:15 111:14,22
111:24 112:1,3,4,9
112:14,16 113:4,8
119:13 120:10,19
120:24 134:5,12
136:4,6,9 137:7
139:14 140:1,4,5
140:19
**paragraphs**
109:17 119:2
**pardon** 81:20
131:3,3
**parenthesis** 29:13
29:21 56:11 82:18
**parenthetical** 9:1
9:1 10:15,15
29:15,15,15,16
**parol** 49:18
**part** 25:21 28:17
30:23 41:22 46:1
63:7 84:15 118:22
119:15 144:17,22
145:20,21 150:9

**partial** 28:4,13,16
28:21 35:7
**participate** 103:23
104:1 133:25
147:19
**participated** 152:2
152:19
**participation**
147:21
**particular** 28:6,8
28:23 91:18
**parties** 106:7,8
111:18 159:2,13
**partnership** 71:25
**parts** 39:11 41:14
**party** 20:13 21:10
23:13,16 45:24
54:7,8 55:1
106:11,12 127:2,3
141:24 142:18
147:22 151:15,17
152:2,11,19 153:3
158:4,17 159:3,16
159:19 160:3
167:18
**pass** 19:12 45:12
**pattern** 155:6
**paul** 103:13
**pay** 41:17,17
43:20,22 57:2
73:20 106:5
112:17 114:22
115:22 122:2,17
132:9
**paying** 59:2 71:19
122:6,9
**payment** 42:1,16
44:7,11,15,15,17
138:3
**payments** 34:23
41:5,16 42:5,6

[payments - production]

43:16,17 58:14 94:17,18 136:16
**pays** 73:25
**peers** 149:9
**pen** 133:8
**penalty** 166:2
**pending** 107:19,20 115:5 149:18
**percent** 41:18
**percentage** 17:5 34:24 41:7 42:11
**percussion** 82:19 82:20,20
**perfectly** 38:10
**performance** 15:14 18:3 41:16 41:19 42:6 46:5 52:25 55:11,14 113:24 134:14,23 135:21,22 137:15 137:24 138:1,4
**performed** 14:19 130:2 136:19
**performing** 96:22 96:23
**period** 29:16 62:1
**perjury** 166:2
**perpetuity** 29:16 30:4
**person** 10:13,19 11:12,21,25 23:19 57:7 73:24 76:22 90:25 97:22 113:22 133:23 139:6 140:23 147:24
**personally** 19:4,4
**pertains** 167:11
**pete** 13:17
**peter** 4:13 13:20 13:21 19:10 24:11

42:24 43:5 65:24 82:6 84:4 125:13 148:15,20 155:2
**petitioned** 137:2
**phone** 67:18,21 106:16
**phrase** 47:6 48:11 83:17
**physical** 156:9
**pianist** 74:5
**piece** 14:25 22:15 23:2,25 52:14 54:20 76:22 79:11 100:5
**pieces** 12:24,24
**place** 167:4
**plaintiff** 1:5 2:5 68:18 109:4 110:17,22 111:8 164:17
**plaintiffs** 4:3 108:25
**play** 72:25
**played** 54:8 99:17 99:17 106:22 129:13 149:13
**player** 128:9 130:2
**players** 103:12
**playing** 103:12
**plays** 53:9
**pleadings** 116:13 116:15
**please** 6:11 8:18 20:7 27:7,12 35:3 51:12 55:13 58:6 59:4,12 61:17 80:18 89:10 98:11 98:18 103:17 107:3 109:3 110:15 112:16 128:2 132:5 139:4

139:14 142:15 154:20
**plenty** 82:21,25
**point** 28:19 30:14 99:10,21 106:21 136:10
**pointed** 43:2
**poland** 124:25
**policies** 163:4
**policy** 163:15,17 164:9
**political** 74:20
**portions** 98:24 99:3 104:18 129:16
**possession** 9:16 11:6 63:19,23 67:5,7,11
**possibilities** 52:18 52:22
**possibility** 159:15
**possible** 44:9 65:21 127:1 159:16
**possibly** 28:12 59:2
**potential** 127:14 128:6
**practice** 86:1 98:24 99:2 104:18
**precaution** 154:25
**precautionary** 155:13
**preceding** 117:10
**prep** 63:17
**prepare** 100:14 133:4
**prepared** 101:2,5 101:7,12,15,18 102:8

**preparing** 96:14 150:7
**present** 4:12 47:23 99:3
**presented** 133:17
**previous** 35:2 131:17,18 156:13
**previously** 110:24 120:8 153:22
**primarily** 73:25
**prior** 123:17 158:6 167:5
**privilege** 60:12,20 68:5
**privileged** 59:25 60:10 68:4,10,11
**probably** 11:1 16:10,19 18:13 82:15,18,22 105:9 117:18 130:18 143:18
**proceeding** 103:23
**proceedings** 25:16 152:19 167:3,5,7 167:13
**process** 6:18,19
**processing** 21:4 23:5
**produce** 60:22 61:15,24 62:13,16 62:20 75:25
**produced** 9:13,16 11:4,7 45:3,8 61:2 61:3 92:24
**producers** 13:1 15:15 47:23
**product** 60:20 61:11,13 62:12 77:11,13 78:8
**production** 8:15 10:5,7,7,9 11:2

Veritext Legal Solutions
866 299-5127

[production - real]

12:5 74:24 77:6,8
77:13 85:22 87:9
88:25 91:19
104:19 121:15
154:1
**professional** 163:2
**professionally**
76:5,7,9
**profit** 17:4
**program** 75:16
106:21
**progression** 79:21
79:22,23
**project** 15:17
**prominent** 15:7,8
**proper** 124:1
**properly** 38:7
94:25
**property** 70:22
71:10
**proposition** 83:6
**protection** 113:15
**provide** 83:5 84:1
95:22 107:1
116:22,23 119:1
138:5 152:20
**provided** 24:24
92:24 94:13 99:20
100:16 102:22
116:4,24 117:7
136:17 138:8
152:6
**provider** 75:23
**providing** 138:22
**provision** 142:20
**provisions** 135:25
**pty** 1:4 2:4
**public** 53:11
**publication** 34:25
48:23,25 49:7
53:16

**publicly** 130:2
**published** 53:11
53:15
**publisher** 13:3,4
13:22,24 14:1,2,3
14:3 18:19 29:9
32:18,19,19 37:4
46:1,3,14,17,19,20
46:20 49:22,23
50:6 93:16 96:6
122:25 123:6,16
123:16 124:3,5
136:12,13,15,18
136:20,21,21,24
137:1,3,4,5 139:5
139:7,9,12,15
140:9,9,10,13,16
140:22,24 141:1
141:13,14,17,17
141:24 142:2
154:12 157:10
**publishers** 13:1
17:5 46:4 93:14
122:20 123:3,12
123:14 125:6,9,10
125:23 126:16
127:13,22 132:2
154:11 155:1,5,12
155:16,25 156:10
**publishing** 55:21
56:12,16,17,20
57:6 94:1,3
135:19
**pull** 122:20 125:6
**punctuation** 30:1
**purchased** 76:23
**purpose** 137:1
**purposes** 80:11
112:21
**pursuant** 9:1
10:16 33:2 134:5

164:18
**put** 7:3 55:15
103:14 129:10
139:21 140:1
160:4
**putting** 103:13

**q**

**qualify** 28:23
121:21
**question** 7:17 9:11
11:2,24 24:23
28:10 31:18 32:21
32:23,25 34:15
35:2,10,11,17,20
38:2,3,22 40:2
41:3,25 42:2 44:1
47:11 48:24 51:17
52:20 54:23 56:10
56:21 64:2,16
67:20,24 68:20
69:4,6,7,8,9,9,10
74:8 78:18 86:19
86:22 87:5 89:4,5
90:19,20,21,22
94:22 97:20 98:11
99:24 100:18,19
103:17,17 105:14
105:16 107:3,19
107:19,21,22,23
107:25 110:6,9
115:5 118:7,8,17
119:4,8 123:8
126:4,5,18 127:9
127:11 128:2
129:17 131:15
133:1 134:22
137:7 143:9 145:8
146:6,24 147:13
149:18 150:12,13
150:15 151:13
155:21 159:21

162:1,14,15
**questioning**
146:13
**questions** 10:8
25:23 63:21,21
70:5 115:8,11
117:9 164:24
**quickly** 161:9
**quite** 127:23
**quotations** 9:5
**quote** 9:2,2 10:16
10:18 29:14
**quotes** 24:20

**r**

**r** 6:13 18:1 69:15
69:20 71:5 88:13
105:21 124:15
163:9
**radio** 82:21
**raena** 3:6 60:14
**rates** 135:21,22
**read** 25:5 27:12
31:24,24 35:16,19
41:10 77:16,19
78:13,15 80:18,19
82:11,12,12,13
86:17,22,23 89:5,6
97:23 98:11,12,16
100:20,22 103:17
103:18 109:1,20
110:15 111:22
112:4,16 115:12
115:13,17 118:24
119:15,24 133:16
136:9,11 139:2,14
142:14 151:1,9
154:16,19 166:2
**reading** 83:22
98:8 99:7 112:14
**real** 70:24,25 71:2
71:7

[really - report]

**really** 14:2 46:7
100:1 115:15
144:23
**reason** 7:18,19
24:18 25:21 52:5
52:8,11 129:13
156:17,21
**reasonable** 119:20
134:3
**reasons** 57:9
119:22 145:22
146:1
**recall** 52:3 79:10
93:3
**receive** 24:15
**received** 41:13,19
43:16 96:19
160:12
**recipient** 23:18
**recognition**
106:20
**recognize** 26:3
139:11 140:13,16
143:2 153:7 154:5
**recognized** 106:23
**recollection** 115:7
148:3 151:11,12
151:16
**reconstruction**
137:1
**record** 7:14,14,15
8:18,21 13:5,7
18:18 21:23,25
22:2,4,8 25:13,15
34:16,20 35:19
43:1 46:7,11
59:10 60:11 68:17
75:25 76:12 77:19
78:15 80:6,19
86:23 89:6 98:4
98:12 100:22

103:18 105:12
115:17 117:16
118:12,14 119:6
144:6 152:12,15
152:17 153:13
161:6,8 164:13,15
164:25 165:2,4
167:6,9
**recorded** 76:7,9
**recording** 76:1
77:3 78:10,11,13
78:21,24 79:6
**recordings** 47:16
47:20,21 56:19
98:21,25
**records** 8:24 72:15
72:17 73:21 85:7
85:7 94:23
**red** 72:15,16,17
73:21 85:7 93:24
**redact** 61:15,19,24
62:16,20
**redacted** 60:21
**refer** 12:15 23:1
29:2,2 48:25
94:21 120:7
132:25 143:20
**reference** 21:18
22:15 37:6 39:16
43:17 44:15,25
85:20 109:23
115:23 146:22,22
149:20
**referenced** 20:14
20:15,22 21:8,13
23:6 47:2 121:24
**references** 21:10
**referencing** 44:6
157:13
**referred** 10:20
47:20 130:24

134:11 149:6
**referring** 12:16
34:22 35:12 37:3
48:23 104:13
114:4 116:7
138:11 144:10
146:21 149:15
**refers** 14:25 29:3,5
47:6 153:1
**reflective** 46:4
**reflects** 60:20
**refresh** 115:3,6
**refreshes** 151:10
**regard** 43:13
50:12 141:2
148:12 152:1
**regarding** 9:7,13
37:24
**regards** 115:23
**registered** 72:19
136:20 137:8,11
**regularly** 66:23
**reiterate** 68:19
117:2
**reiterating** 117:13
**relate** 8:25 9:4
10:18 67:11,15
68:3 153:9
**related** 92:25
94:18 153:10
**relates** 50:14
63:15 76:19 93:23
93:24,25 114:15
115:19 131:21,24
151:11,14,25
158:10
**relating** 43:10
92:21 148:14
**relation** 18:1
116:1

**relationship** 18:21
18:25 19:5,7
65:21 92:14
117:22 137:9
**relative** 43:22
167:17
**remain** 52:6,9
86:11 87:6
**remainder** 117:9
**remember** 57:10
73:15 75:22 81:19
81:21 93:8 117:18
117:19 125:4
129:22,25 132:7
137:14 150:7
**remove** 125:9,25
126:7,12,19,22
128:22,25 129:2,4
129:7 149:17
154:20,24 155:1,5
155:13,25 156:3
157:11,16 159:3
159:11
**removed** 125:11
125:16,20,20
129:1 149:15,16
156:18 159:9
160:4,8,13 161:3
**removing** 127:2
**render** 73:3 106:5
136:15
**rendering** 88:4
**rent** 71:19
**repeat** 10:23 29:25
134:22
**rephrase** 32:21
69:6 78:18 100:18
121:13
**report** 100:14
101:2,5,7,10,12,15
101:18 102:1,7,10

[report - saying]

102:10,11,13,18
102:21
**reported** 1:22
**reporter** 2:23 7:20
8:3,17 9:20,22
19:14 20:3,5 22:6
24:3 26:1 35:16
45:15 55:25 58:3
59:8 68:23 77:16
82:16 91:21
100:20 108:13,15
115:9,13 144:1,8
149:24 153:24
161:5,12,14 167:2
**reporters** 7:21
**reporting** 96:17
**represent** 6:15
128:11
**representation**
119:22
**representations**
113:3 119:25
120:6,7
**representing**
13:22
**represents** 14:3
113:13,18,24
114:10
**reproduce** 144:16
**request** 8:14,24
10:5,7,9 11:2
114:14 117:25
149:25 150:3,6
151:1 154:2
**requested** 92:10
125:8 167:14
**requests** 63:24
64:3,10,20 65:5,17
67:2,6 96:10 97:8
160:21

**require** 52:6 97:17
108:19
**required** 136:18
142:6
**requirement**
97:22 98:2,9
**requires** 40:10
**requiring** 52:8
**respect** 113:19
**respond** 98:2
116:3,11
**responded** 93:5
**response** 5:19
57:14,23 58:8
94:10,12 130:20
150:7 154:1
160:20
**responses** 5:23
96:10 108:7
153:18
**responsibilities**
48:1
**responsible**
158:23 159:13
**responsive** 63:24
64:3,7,10,20,23
65:4,16 67:1,6
**rest** 17:5 61:15
141:9
**restate** 35:9
127:10
**restroom** 34:18
**result** 122:3
**resulting** 119:21
**retitle** 135:11
**retitled** 135:6,8
**return** 72:21
133:3
**returns** 96:15,18
**review** 7:4,5 43:8
63:17 94:23 96:9

131:23 138:16
160:11,20 161:1
162:9,12 167:13
**reviewed** 63:22
88:11 95:12,16
160:25
**reviews** 160:12
**revoke** 160:2
**rider** 63:25
**ridiculous** 11:24
**rigaud** 154:9
**right** 11:22,23
21:12 24:23 26:3
27:12 29:18 30:6
32:4,5,5 33:10,11
34:4,11 35:25
36:18,25 37:2,14
37:24,25 38:5,5,13
38:24 40:10 43:3
48:24 50:8 54:4,5
56:20 57:24 58:5
60:22 61:6 62:5
78:7 83:11,12
86:3 89:23 98:4
104:21 114:11
115:16 117:8
120:20 130:21
134:1 136:12,22
141:3,15 156:7,23
156:24 164:8
**rights** 15:14 18:3
27:17 28:14,17
29:12,17 30:3,5
31:7,9 33:2 37:5
40:20 46:5 49:23
56:17,20 78:4,23
78:24,25 79:4
92:17 113:21
114:12 133:23
134:23 138:22
139:6,9,23 140:3

140:22 141:4,11
142:7,17
**road** 69:19,20
**robert** 65:24
100:13 105:20,21
**roberts** 56:3,7
**rohiri** 3:11
**room** 6:23 16:19
16:23,24
**ross** 3:5
**rough** 161:12,13
161:14
**rows** 85:1
**royalties** 94:13,16
94:19,20 134:15
**royalty** 112:21
**ruled** 104:10
**ruler** 16:20
**rules** 94:1
**ruling** 104:9
**running** 89:13,16
89:23
**runs** 17:15 104:16
**rustle** 7:22

**s**

**s** 9:1,6 10:15 17:8
29:15,21 69:19
71:5 72:18 77:11
88:13 105:21
113:14,20,20
124:8,15
**safe** 119:17
**sakura** 124:15,16
**sales** 23:17,20
**sam** 69:19
**sample** 15:3
**save** 136:25
**saying** 7:15 52:21
61:10 80:22 83:4
84:2,3,25 101:2
104:3 116:16

[saying - sorry]

119:2,2 137:11
138:12 141:3
142:25 143:1
155:25
**says** 19:25 20:15
20:16 21:4,17
24:12,19 25:13
26:8,25 29:1,13,18
45:25 46:19 47:4
70:15 83:8 120:19
125:24 126:2,7,12
126:22 138:21
140:5,8,19 141:6
143:7,7,11 149:8
156:4
**school** 18:16
**science** 74:20
**score** 82:18
**search** 65:16,19,23
66:6,11,13,14,14
66:15
**searches** 66:8
**searching** 65:21
**second** 10:1 13:5
20:22 24:18 37:6
47:5 55:15 67:19
81:23 115:4,14
118:9 152:12
**seconds** 90:2,4,7,8
103:4,4,5 104:16
**section** 113:10
**sections** 99:12
103:12,12 108:2
**see** 12:12 16:20
17:25 20:14 21:2
21:3,6 22:16
24:21 27:10 47:22
48:9 59:12,13,18
60:8 61:8 82:8
108:10 109:7,13
110:20 143:20

150:11,13,23
**seeing** 23:17
**seeks** 49:18
**seen** 8:1,8 10:11
20:9 45:18,20
144:10
**segment** 121:20
**semi** 132:9
**seminar** 75:12
**send** 61:17 96:21
122:17 127:14
128:11 132:5
136:2 137:8,21
154:7
**sending** 60:21
137:18 160:15
**sends** 127:25
128:5
**sense** 79:24,25
82:24 83:17
**sent** 26:18 41:20
68:6,7 95:1,2
116:17 121:24
126:15 135:24
136:6,20 137:11
138:3,12 155:24
156:4,7,9 159:9,24
160:2
**sentar** 69:19
**sentence** 35:4 48:3
53:2,3 56:11
112:8 136:10
141:9
**sentences** 28:23
**separate** 84:24
85:1,8,15 86:6
145:21
**series** 54:3
**served** 116:2,8,8
116:11

**services** 73:3 88:4
**sesac** 134:15,17
**session** 165:10
**set** 57:15 118:20
143:16 167:4
**settle** 134:2
**seven** 120:19
**shake** 59:5
**sharon** 70:9
**shazam** 106:19,22
106:22,25 107:5
149:6
**she'll** 116:23
**sheet** 41:21
**shock** 72:17 85:7
**short** 19:12 112:23
**shorten** 88:25 89:2
92:9,18
**shorter** 80:11,22
81:1 89:3 112:25
**shorthand** 2:23
167:1,8
**show** 7:25 42:20
57:21 91:14
153:21
**side** 154:10
**sided** 150:17
**sign** 26:18 27:5
**signature** 51:13,18
167:23
**signed** 105:3 112:2
153:4
**significance** 30:20
**similar** 22:24
51:17 145:3,4
146:20
**similarity** 146:1
**simple** 7:19 24:23
100:6
**simply** 22:14
119:2

**singing** 103:13
**single** 156:18
**sit** 112:4
**site** 129:3,4,7,10
129:15
**sitting** 43:3
**situation** 59:1
**six** 98:15
**slow** 82:16 136:23
**small** 9:5
**smart** 155:17
**smartphone** 67:15
68:2
**snappers** 161:11
**socan** 93:25 94:1,1
**society** 55:18
56:12
**sole** 46:20 113:14
**solely** 35:21,21
**solicits** 12:25
**somewhat** 6:20
**song** 15:1 21:18
22:10,11,14,16,18
22:21,23,24 76:19
76:22 77:1 78:21
79:13,15 101:22
105:18 144:17
**songs** 101:19
**sonic** 146:8,19
**sonoton** 124:8,10
**soon** 122:7
**sorry** 17:21 18:12
18:23 24:8 33:18
34:18 36:22 44:4
66:12 80:6 81:9
87:17 90:24 93:18
95:14 100:17
104:23 106:4,10
107:4 112:19
115:21 116:7
131:2,3,3 135:7

Page 25

[sorry - sure]

141:19 145:1
148:5,21 150:2,18
154:2 165:1
**sort** 17:10,10 44:9
50:7
**sorts** 6:25
**sound** 53:5 76:1
77:3 78:10,11,13
78:21,24 79:5
99:23 100:3,5
159:7
**south** 124:22
**speak** 6:22 7:16
12:16 25:11 54:25
118:15
**speaks** 7:16 41:23
**specific** 25:23
101:10
**specifically** 21:18
33:19,21 44:4
50:7 75:18
**specifics** 149:1
**specify** 92:5
**speculate** 16:8
39:5 88:19 131:12
**speculation** 16:13
114:6 121:5
122:12 158:19
**spell** 6:11
**spelled** 9:5 17:17
**spid** 66:4
**spider** 1:8,14 2:7
2:13 24:11 30:24
46:23,24 65:11,13
72:6,11 85:5,21
93:14,17 123:15
125:15
**spoke** 138:2
**spoken** 121:23
**spreadsheet** 84:23
156:7,13 159:25

160:15
**sq** 66:3 101:16
104:14 105:23
149:15 154:20
157:11,20 158:10
**stamp** 153:19
**stamped** 25:19
81:24
**stand** 47:11,16,19
**standard** 32:18
36:12 37:2,8,19,20
38:6,8,13,23 39:10
39:21 40:9,9,19
99:1 108:1 118:17
118:18 155:6
**standards** 37:9
**stanley** 1:23 2:23
167:24
**start** 28:7 29:1
32:25 43:21 74:4
123:21 128:2
136:14 165:6
**started** 7:24 41:4
93:25 122:7 124:9
124:20
**starting** 37:9 74:5
93:19 98:16
123:23
**starts** 81:15
**state** 6:11 33:7
87:15 91:15 109:7
110:20 111:20
166:9 167:2
**stated** 11:13 32:4
32:5 37:6 48:12
103:1
**statement** 45:2,4,7
95:25 96:5 98:7
122:8 136:16
**statements** 28:22
45:4,7 79:17

95:22 96:9,12,14
97:7,9,10,13 132:2
132:3,4
**states** 1:1 2:1 15:7
15:19,25 17:11
18:19 40:2 41:17
108:4 123:25
126:19
**stating** 33:11
42:25 135:25
153:4
**stationary** 19:25
21:17
**steal** 154:2
**step** 21:24
**stipulate** 165:1
**stipulated** 165:8,9
**stipulating** 164:17
164:21
**stipulation** 164:25
**stock** 71:24
**stop** 53:7 122:6,9
**stopped** 104:6,8
**straight** 18:18
**street** 3:8 23:17,20
**strike** 51:24 64:15
103:16 125:5
129:16 137:20
141:19 149:19,22
155:20
**string** 24:6,9
**strings** 82:19 93:7
**structures** 98:4
**stuart** 88:13 116:8
**studios** 23:18
**sub** 13:1,3,4,22,24
14:1,2,3 18:19
29:9 32:19,19
37:4 46:17,20,20
49:22,23 50:6
93:14,16 96:6

122:20,25 123:3,6
123:12,14,16,16
124:3,5 125:6,9,10
125:23 126:16
127:13,22 132:2
136:13,15,18,21
136:24 137:1,4
139:7,9,15 140:9
140:10,16,24
141:1,17 154:12
155:1,5,12,16,25
156:10 157:10
**subject** 92:19 99:3
**sublicenses** 98:16
98:18,19
**sublicensing** 51:7
**submit** 118:3
**subpublishing**
51:7
**subscribed** 167:19
**substantial** 144:17
144:22
**substantially**
145:3,4
**subtract** 96:21
**successfully** 129:4
**successors** 111:18
**sued** 152:22
**suggested** 122:10
**suing** 143:5
**suite** 2:21 3:8,18
4:7
**supervisor** 93:4
**support** 82:15
**supposed** 57:2
**supposedly** 27:4
**sure** 11:23 18:20
27:7 35:8 59:20
62:11 72:23 75:20
94:25 96:13
103:11 104:2

Veritext Legal Solutions
866 299-5127

[sure - third]

109:10 112:6
114:25 115:2
123:25 124:1,13
127:23 133:8
136:2 137:12,13
137:22 144:14
147:20 154:17
155:14 163:10
**suspects**  19:12
**sync**  41:14,14,16
42:5,15 77:13,20
77:23 78:5,8,22
98:25
**synced**  77:10
**synchronization**
96:2
**syncing**  94:20,21
98:21

**t**

**t**  69:19 71:5 88:13
88:13 124:8
**table**  16:18,22
**take**  7:20,25 9:12
9:24 20:1 21:16
21:16 24:5 25:22
25:22 27:14 41:10
45:17 58:6 64:12
68:23 69:1 75:18
84:20 87:5,9 97:4
105:9 118:10
136:25 161:13
**taken**  2:19 7:11,15
68:15 167:3
**talk**  6:17 28:25
32:15 115:4 118:9
149:1 152:18
**talked**  6:18 49:13
148:15 149:9
**talking**  23:19 42:4
53:16,16 91:24
95:10 118:22

123:5 128:3
134:20 152:8
**talks**  41:5 83:13
**tax**  5:13,14 20:1
21:17 72:21 73:13
96:14,17 133:3
**taxable**  20:16
**television**  54:9
55:3,8 99:1
106:21
**tell**  7:8,12 23:11
75:9,20 93:1 96:6
110:11,12,25
115:25 122:13
130:18 139:14
142:25 156:14
162:10
**telling**  115:22
141:6 145:6
152:24
**templates**  146:9
146:10,19
**tenants**  71:17
**tendency**  70:10,11
**tender**  161:19
**tendered**  116:16
162:21
**term**  14:25 31:12
32:6 38:16,17
51:8 53:15 92:14
120:23 122:4
134:18 137:9
139:5 140:19
142:4
**terminate**  136:7
136:22 137:3,17
**terminating**
137:15
**termination**
138:13

**terms**  31:1,9,21
50:15 115:22
130:9 136:17
142:2,20
**territories**  13:23
14:3 47:7 123:11
**territory**  15:19,25
29:14 30:3 39:4,8
46:21 47:2,5,24,25
48:2 113:16
124:25 139:7
141:4
**testified**  6:5 72:6
78:20 90:23 105:3
123:2 139:21
140:1 155:23
**testify**  106:1 107:6
107:9
**testifying**  167:6
**testimony**  26:21
36:7 52:3 57:5
79:9,11,19 80:25
85:14,18 90:24
91:4 101:1 102:6
107:1 118:16
121:25 126:20
140:7 158:6,13
166:5 167:10
**text**  33:9
**texts**  67:14 68:2
**thank**  6:15 9:17
10:10,25 11:8
12:1 14:5 17:25
18:6 19:9 25:2
27:2 28:16,24
31:25 34:14 35:23
38:12 41:3 47:8
53:10 55:17 59:4
61:20 68:9 118:6
119:10 135:2
150:22 153:20

154:23
**thanks**  7:1 81:17
133:11 154:2
**thanksgiving**
13:14,14
**thereof**  114:2
167:15
**thing**  17:11 18:11
52:18 101:11
136:11 146:25
155:10
**things**  6:21 11:13
11:21 22:11 24:7
35:7,22 36:11
42:13 55:7 83:10
83:21 98:4 129:4
142:3 146:21
**think**  11:1 14:10
16:6 20:12 22:22
22:24 26:22,25
35:18 39:3 42:4
45:6 46:22 54:6
54:21 55:15 56:22
56:24 66:22 67:5
71:13,20 72:23
74:10 77:7,7 93:7
93:13,25 95:6,8
108:4,6 109:20
111:3 120:11,12
125:4 128:12,24
133:10,21 135:18
136:7 137:22
138:7 144:12
147:10 149:12
151:19 153:16,17
155:12 158:16,23
163:9,10 164:11
**thinks**  149:10,12
**third**  47:10 127:2
127:3 142:18
158:4 160:3

Page 27

[thought - understanding]

thought 59:5,6
149:20
three 7:21 21:15
24:9 61:23,23
72:17 82:19,23
99:3 115:8,11
141:21
time 6:17 7:17,20
8:1 9:24 14:11
21:16 24:5 25:22
25:24 27:14 41:10
43:8 45:17 48:5
48:10 53:15 58:6
62:1 78:17 87:25
89:13,16,23 92:5
92:15,16,16 104:1
119:8 125:5
126:21 128:17
134:20 135:16
137:6,9 148:11
161:4 164:24
167:4
times 129:8
130:23,24
title 29:12 30:3
66:2 69:24 70:1,3
70:5,10,15 71:14
71:15 89:13,16
150:10 154:21
159:18
titled 65:8
titles 159:12
today 7:9,12 11:10
11:11 12:16 63:18
66:16 67:7,11,15
105:3 112:4
164:11
told 18:13 95:12
122:19 131:15
148:18 149:2
155:16

tom 69:19
tomorrow 164:12
164:22 165:6,7
top 23:17 24:7,10
24:10 46:14 98:15
130:15 133:8
total 89:13,16,23
totality 31:15 37:7
totally 91:22
track 82:20 99:19
100:9 102:25
103:1,9 107:6
121:20 122:20
129:19 142:23
146:1,11 147:1,2
148:24,25 149:3
156:8
tracking 130:5
tracks 129:21,23
156:12 161:2
trained 74:3,5
75:25 76:2
training 74:2,4,9
74:10
transcribed 167:8
transcript 164:17
166:3 167:9,12,13
transcription
167:15
transition 49:24
translate 29:19
30:6 97:24
transmit 34:5
transmits 50:7
transmitted 49:23
transpired 148:22
transpires 148:21
trial 116:9 148:8
tried 106:2
trip 69:5

true 107:13 112:7
143:1 145:5 166:5
167:9
truth 7:8,12
try 7:8 18:13 53:7
97:7,15 106:3
132:6
trying 18:17 102:9
119:6 136:10
tune 82:21,25
103:14,15 144:23
turn 51:12 59:8
95:4,15
turned 67:17,18
67:22 102:3 116:6
116:13
turning 82:11 89:9
94:9 97:19 98:15
104:21 107:17
108:9,22 112:11
119:10,13 133:12
133:14 135:4
150:6
tustin 1:17 2:21
3:19 6:1
two 7:20,21 34:23
41:4,11,14 42:6,12
61:23 62:1,11,19
76:25 78:21 82:19
82:23 97:19,20
101:3,9,18 102:10
102:19 104:15
110:8,12 124:15
146:9,10,19
151:21,23
type 39:10 44:10
68:24,25 71:24
72:24 77:14 82:16
typed 51:18
types 43:17 88:3
163:13

typo 133:22

**u**

u 9:6 14:22 88:13
124:15
u.k. 125:3
u.s. 116:2 124:3,5
ucla 73:24 100:13
105:20,21
uh 69:2,2,2
ultimately 53:10
53:10 54:7
umbrella 163:4
unable 68:23 69:1
unaware 104:3,7
underneath 26:12
26:12 113:10
underscore 66:4
undersigned 167:1
understand 11:10
11:16 17:16 27:7
32:9,20,22 38:2
50:16 53:12 56:24
57:9 69:5,7,10
76:18,25 77:9,25
78:6 91:19 97:16
99:13 104:17
118:20 121:3
123:4 126:25
127:4,5,8,13,18,20
128:5 132:20
140:20 144:15,21
153:7 155:4
understanding
15:6 26:5,9 28:1
31:19 34:24 37:20
37:23 41:6 48:5
48:10 49:12 50:17
50:22 51:25 53:24
54:3 76:21 78:2
86:1 87:5 100:3
103:11 128:1,7,8

Page 28

[understanding - widest]

| | v | visited 130:5 | warrants 113:13 |
|---|---|---|---|

145:24,25 151:22
152:21 162:14
**understood** 69:8
118:19
**undertake** 64:9,18
65:3,19 66:8,14
148:10 151:24
**undertook** 97:21
151:14
**united** 1:1 2:1 15:7
15:19,25 17:11
18:19 40:2 123:24
**unquote** 10:16,18
29:14
**upper** 4:7
**usa** 111:21
**use** 22:10 35:14
48:18,25 50:5
51:5 52:25 66:23
78:2,4,7 79:2,3,5,5
87:8,21 96:6,14
102:15 114:16
125:13,14 129:9
159:5,11 160:3
**useless** 129:14
**user** 50:14 77:14
80:1,12 87:8
88:25 90:6,16,25
91:14,16 92:8
96:5 128:16
129:12
**users** 13:1 47:23
98:20 127:2,3
156:9 160:3
**uses** 100:5
**usual** 19:12
**usually** 50:11
**utilization** 98:20
**utilize** 15:16,16
**utilized** 155:4

**v**

**vague** 15:20 28:9
28:18 30:12 31:5
32:7 36:5 40:12
40:13,22 44:19
49:19 55:10 64:25
64:25 66:17 92:11
121:10 127:7
134:6
**valid** 141:25
**value** 21:1,5
**various** 46:4
128:11
**vegas** 159:9
**vehicle** 163:20,22
**verbally** 33:7
**verbatim** 7:15
**verse** 103:14
**version** 54:8,13,14
60:21 66:3,4
112:23,23 121:20
**versions** 112:22
113:1,1
**versus** 68:3 156:19
**video** 55:6 98:22
98:25 102:17
103:2 104:10,11
148:1 149:13,13
157:17,18,19
**vietnamese** 25:11
**view** 27:5 44:16
**viewed** 26:25
**violate** 113:21
133:22
**violated** 119:25
142:19
**violin** 72:25
**violinist** 14:19
74:3
**viruses** 129:7

**visited** 130:5
**visual** 77:10,13
78:8 90:6,7,16
91:1 100:9
**voice** 144:21,22
145:2,9 149:14
**volume** 1:19 2:19
166:16
**vs** 1:6,12 2:5,11

**w**

**w** 3:6 6:14 74:12
88:13 105:21
**wacker** 4:7
**wait** 7:17,18 16:7
32:20 91:21,24
102:5 119:7
137:17
**waived** 117:12
**wallach** 88:13
116:8
**wallser** 105:21
106:13
**want** 7:25 8:1 9:12
16:8 23:2 31:23
31:24 35:2 46:7
52:15 59:19 68:19
84:19 121:19
131:11 133:9
139:1 143:22
144:1 146:15,18
147:13 150:9
151:10 154:16,18
**wanted** 22:9 64:13
92:8 118:16
**wanting** 52:5
116:17
**wants** 143:15,24
**warrant** 119:23
**warranties** 113:3
120:1,6,8

**warrants** 113:13
113:18 114:10
**way** 9:12 17:17
24:6 27:2 29:1,9
30:10 41:8 45:25
53:9 58:21,21
61:5 92:18 101:13
101:15 130:1
139:8 141:9 149:8
155:6
**we've** 6:24 8:10,23
40:19 43:17
102:22 108:9
**wealth** 20:16
**webb** 1:16 2:19
5:4 6:4,13 8:11,14
11:12,15,24 18:24
19:5,10 34:22
51:19 56:2 59:11
60:13 62:7 70:9
165:6 166:1,15
**webb's** 9:15
**website** 128:14,16
128:20,23 129:20
129:24 130:3,6
**week** 62:1
**weekend** 13:14
**went** 63:4 74:6
92:9 120:7 130:23
148:16
**west** 71:3,5 154:10
**western** 1:2 2:2
105:22
**whatsoever**
113:21
**whereof** 167:19
**whichever** 9:12
**whipper** 161:11
**wider** 121:18
**widest** 121:17

[wife - zip]

**wife** 70:7 71:15
73:22
**wise** 41:7
**wish** 73:18 159:17
**withheld** 42:25
**withhold** 59:24
60:9
**withholding** 43:6
131:1,4,6,14,20
**witness** 5:3 8:6
16:2,9 19:2 22:9
26:22 28:4,13
30:13 31:6,14
32:9,22 35:20
36:20 39:3,6,16,25
40:17 41:1,13
42:1,18,24 43:1,12
44:20 48:21 49:4
49:10,20 50:3,20
51:3,7 53:25
54:18 55:11 57:6
59:17,20,23 62:23
63:1,4,10,13,19
66:18 67:21 68:13
77:20 78:17 80:20
81:4,17 82:2,17
84:13,19 87:1,13
87:16 88:20 89:7
90:13 91:8 92:12
98:13 100:1,23
103:19 105:1,13
107:23 110:11
114:7,20,25
115:16 116:8,14
117:14 120:4,16
121:7 122:13
127:8 130:23
131:2,10 134:7
138:14 139:1
140:8 142:11
143:7 144:21

145:20 146:6,15
149:20 150:23
157:5 158:14,20
159:2,22 162:15
167:19
**witnesses** 167:5
**woman** 7:22
**wondering** 104:6
**woodland** 69:20
69:20
**word** 23:1 25:3
29:19,23 35:5,14
38:4,4 48:6 50:10
51:5 53:2,20
69:20 80:13 97:5
101:20 102:14,15
121:17 133:19
**words** 34:6 51:13
51:18 65:23 66:6
72:17 90:15
124:15
**work** 15:24 56:7
60:20 61:11,13
62:12 90:7,8 91:1
100:9 101:21
113:15 129:5
142:17 149:8
**worked** 13:13
**working** 89:13,16
**works** 73:22,24
101:9 102:10
122:3 154:10
**world** 29:13 30:3
39:12 93:17
106:20
**worldwide** 29:12
30:2
**wow** 153:15
**write** 27:5 33:8,9
**writers** 141:25

**writing** 27:6 37:11
37:12 38:1,9
40:19 133:24
134:5,9
**written** 7:14,15
19:22 21:19 49:16
54:19 135:24
140:11 141:10
154:23
**wrong** 79:10
**wrote** 52:3,9,21
119:2

**y**

**y** 77:11
**yeah** 6:20 11:17
13:10,13 16:2,10
19:10 21:21,23
32:22 34:17 38:11
46:9 55:9 57:19
61:7,12,14,19 72:5
73:2,13 75:4
77:24 78:2 80:17
81:12 82:1 83:9
88:10 91:24 94:8
95:3 98:17 99:21
100:1 102:22
105:10 111:7
117:19 120:16,16
122:13 123:23
132:17,19 134:25
136:5 143:11
144:3 147:4
150:10 153:1
**year** 73:13 75:15
75:15,22 134:24
**years** 13:16 14:10
36:18 74:15 94:14
**yep** 130:19
**yiddish** 25:12
**young** 161:10

**z**

**z** 27:3
**zealand** 13:23
17:8,12,20,22
20:13,19 23:14
47:7 50:8,12 54:8
54:12,19,25 55:16
99:13 100:9
102:23 103:9,24
106:1,6,9,11,16
107:6,9 109:21
115:24 116:9,12
123:9 142:22
143:6,11,15
144:16 147:8,15
147:19 148:10
151:4,15 152:19
153:2 158:24
**zero** 20:16 73:14
73:16 99:4 132:14
132:17
**zion** 129:10
**zip** 71:6

Veritext Legal Solutions
866 299-5127

California Code of Civil Procedure

Article 5. Transcript or Recording

Section 2025.520

(a) If the deposition testimony is
stenographically recorded, the deposition officer
shall send written notice to the deponent and to
all parties attending the deposition when the
Original transcript of the testimony for each
session of the deposition is available for reading,
correcting, and signing, unless the deponent and
the attending parties agree on the record that the
reading, correcting, and signing of the transcript
of the testimony will be waived or that the
reading, correcting, and signing of a transcript of
the testimony will take place after the entire
deposition has been concluded or at some other
specific time.

(b) For 30 days following each notice under
subdivision (a), unless the attending parties and
the deponent agree on the record or otherwise in
writing to a longer or shorter time period, the
deponent may change the form or the substance of
the answer to a question, and may either approve
the transcript of the deposition by signing it, or

refuse to approve the transcript by not signing it.

(c) Alternatively, within this same period, the deponent may change the form or the substance of the answer to any question and may approve or refuse to approve the transcript by means of a letter to the deposition officer signed by the deponent which is mailed by certified or registered mail with return receipt requested. A copy of that letter shall be sent by first-class mail to all parties attending the deposition.

(d) For good cause shown, the court may shorten the 30-day period for making changes, approving, or refusing to approve the transcript.

(e) The deposition officer shall indicate on the original of the transcript, if the deponent has not already done so at the office of the deposition officer, any action taken by the deponent and indicate on the original of the transcript, the deponent's approval of, or failure or refusal to approve, the transcript. The deposition officer shall also notify in writing the parties attending the deposition of any changes which the deponent timely made in person.

(f) If the deponent fails or refuses to approve the transcript within the allotted period, the

deposition shall be given the same effect as though it had been approved, subject to any changes timely made by the deponent.

(g) Notwithstanding subdivision (f), on a seasonable motion to suppress the deposition, accompanied by a meet and confer declaration under Section 2016.040, the court may determine that the reasons given for the failure or refusal to approve the transcript require rejection of the deposition in whole or in part.

(h) The court shall impose a monetary sanction under Chapter 7 (commencing with Section 2023.010) against any party, person, or attorney who unsuccessfully makes or opposes a motion to suppress a deposition under this section, unless the court finds that the one subject to the sanction acted with substantial justification or that other circumstances make the imposition of the sanction unjust.

DISCLAIMER:  THE FOREGOING CIVIL PROCEDURE RULES ARE PROVIDED FOR INFORMATIONAL PURPOSES ONLY. THE ABOVE RULES ARE CURRENT AS OF APRIL 1, 2019.  PLEASE REFER TO THE APPLICABLE STATE RULES OF CIVIL PROCEDURE FOR UP-TO-DATE INFORMATION.

VERITEXT LEGAL SOLUTIONS
COMPANY CERTIFICATE AND DISCLOSURE STATEMENT

Veritext Legal Solutions represents that the foregoing transcript is a true, correct and complete transcript of the colloquies, questions and answers as submitted by the court reporter. Veritext Legal Solutions further represents that the attached exhibits, if any, are true, correct and complete documents as submitted by the court reporter and/or attorneys in relation to this deposition and that the documents were processed in accordance with our litigation support and production standards.

Veritext Legal Solutions is committed to maintaining the confidentiality of client and witness information, in accordance with the regulations promulgated under the Health Insurance Portability and Accountability Act (HIPAA), as amended with respect to protected health information and the Gramm-Leach-Bliley Act, as amended, with respect to Personally Identifiable Information (PII). Physical transcripts and exhibits are managed under strict facility and personnel access controls. Electronic files of documents are stored in encrypted form and are transmitted in an encrypted fashion to authenticated parties who are permitted to access the material. Our data is hosted in a Tier 4 SSAE 16 certified facility.

Veritext Legal Solutions complies with all federal and State regulations with respect to the provision of court reporting services, and maintains its neutrality and independence regardless of relationship or the financial outcome of any litigation. Veritext requires adherence to the foregoing professional and ethical standards from all of its subcontractors in their independent contractor agreements.

Inquiries about Veritext Legal Solutions' confidentiality and security policies and practices should be directed to Veritext's Client Services Associates indicated on the cover of this document or at www.veritext.com.

```
 1              UNITED STATES DISTRICT COURT
 2        CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION
 3   _____
                                    )
 4   BEATBOX MUSIC, PTY, LTD.,      )
                                    )
 5            Plaintiff,            )
                                    )
 6        vs.                       )Case No.
                                    )2:17-cv-6108-MWF
 7   LABRADOR ENTERTAINMENT,        )(JPRx)
     INC., DBA SPIDER CUES MUSIC    )
 8   LIBRARY, a California          )
     corporation,                   )
 9                                  )
              Defendants.           )
10   _____)
                                    )
11   SEE NEXT PAGE FOR COMPLETE     )
     CAPTION.                       )
12   _____)
     _____
13
14
15         DEPOSITION OF NOEL WEBB, INDIVIDUALLY,
16        AND AS THE PERSON MOST KNOWLEDGEABLE FOR
17             LABRADOR ENTERTAINMENT, INC.
18               Los Angeles, California
19              Tuesday, December 3, 2019
20                     Volume II
21   Reported by:
     LORI SCINTA, RPR
22   CSR No. 4811
23   Job No. 3620306b
24
25   PAGES 168 - 235
```

                                              Page 168

```
 1      UNITED STATES DISTRICT COURT
 2  CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION
 3  _____
                           )
 4  BEATBOX MUSIC, PTY, LTD.,  )
                           )
 5      Plaintiff,         )
                           )
 6      vs.                )Case No.
                           )2:17-cv-6108-MWF
 7  LABRADOR ENTERTAINMENT,   )(JPRx)
    INC., DBA SPIDER CUES MUSIC )
 8  LIBRARY, a California      )
    corporation,           )
 9                         )
        Defendants.        )
10  _____)
                           )
11  MICHAEL COHEN, an individual,)
                           )
12      Cross-Complainant,  )
                           )
13      vs.                )
                           )
14  LABRADOR ENTERTAINMENT INC., )
    D/B/A SPIDER CUES MUSIC    )
15  LIBRARY, a California      )
    Corporation,           )
16                         )
        Cross-Defendant.   )
17  _____)
18  _____
19
20
21
22
23
24
25
```
Page 169

```
 1
 2
 3
 4       Deposition of NOEL WEBB individually, and as
 5  the Person Most Knowledgeable for Labrador
 6  Entertainment, Inc., Volume II, taken on behalf of
 7  Plaintiff, at 801 South Figueroa Street, Suite 2000,
 8  Los Angeles, California, beginning at 11:33 A.M. and
 9  ending at 1:08 P.M., Tuesday, December 3, 2019, before
10  LORI SCINTA, RPR, Certified Shorthand Reporter No. 4811.
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```
Page 170

```
 1  APPEARANCES:
 2
 3  For Plaintiff:
 4      BLAISE & NITSCHKE, P.C.
 5      BY:  HEATHER L. BLAISE
 6        LANA NASSAR
 7      Attorneys at Law
 8      123 North Upper Wacker Drive
 9      Suite 250
10      Chicago, Illinois 60606
11      312.448.6602
12      Email:  hblaise@blaisenitschkelaw.com
13
14  For Defendant and Cross-Defendant Labrador
15  Entertainment, Inc.:
16      BROWNE GEORGE ROSS LLP
17      BY:  RAENA W. OHIRI
18      Attorney at Law
19      801 South Figueroa Street
20      Suite 2000
21      Los Angeles, California 90017
22      213.725.9800
23      Email:  rohiri@bgrfirm.com
24
25
```
Page 171

```
 1  APPEARANCES (Continued):
 2
 3  For Cross-Complainant Michael Cohen:
 4      JACOBSON & ASSOCIATES
 5      BY:  DAN JACOBSON
 6      Attorney at Law
 7      1352 Irvine Boulevard
 8      Suite 205
 9      Tustin, California 92780
10      714.505.4872
11      Email:  dlj@jacobsonlawyers.com
12
13  Also Present:
14      PETER BAKER
15      BARBARA BAKER
16
17
18
19
20
21
22
23
24
25
```
Page 172

2 (Pages 169 - 172)

| | | |
|---|---|---|
| 1 | INDEX | |
| 2 | WITNESS | EXAMINATION |
| 3 | NOEL WEBB | |
| 4 | Volume II | |
| 5 | | |
| 6 | BY MS. BLAISE (RESUMED) | 175 |
| 7 | BY MS. OHIRI | 215 |
| 8 | BY MS. BLAISE (FURTHER) | 224 |
| 9 | | |
| 10 | EXHIBITS | |
| 11 | | |
| 12 | NUMBER        DESCRIPTION        PAGE | |
| 13 | Exhibit P   Email chain, the top email   178 | |
| 14 | dated 4 April 2012 from Noel | |
| 15 | Webb to Peter Baker, not | |
| 16 | Bates-stamped | |
| 17 | | |
| 18 | | |
| 19 | PREVIOUSLY MARKED EXHIBITS | |
| 20 | NUMBER             PAGE | |
| 21 | Exhibit B             188 | |
| 22 | Exhibit C             188 | |
| 23 | Exhibit D             188 | |
| 24 | Exhibit H             175 | |
| 25 | | |

Page 173

1    INDEX (Continued):
2
3
4        INFORMATION REQUESTED
5            (None)
6
7
8        REFERENCE REQUESTED
9            (None)
10
11
12    INSTRUCTION NOT TO ANSWER
13            (None)
14
15
16
17
18
19
20
21
22
23
24
25

Page 174

---

1    Los Angeles, California, Tuesday, December 3, 2019
2            11:33 A.M.
3
4            NOEL WEBB,
5    having been administered an oath, was examined and
6    testified further as follows:
7
8            EXAMINATION (Resumed)
9    BY MS. BLAISE:
10    Q  Hi, again.
11    A  Good morning.
12    Q  Heather Blaise on behalf of the plaintiff.  We
13    met yesterday.
14        The same rules apply that we discussed
15    yesterday.  Do you understand that?
16    A  Yes.
17    Q  I'm going to show you what was previously
18    marked yesterday as Exhibit H, which is the -- the
19    April 2009 agreement between Labrador Entertainment,
20    Inc. and Beatbox.
21    A  Uh-huh.
22    Q  Do you remember that agreement?
23    A  Yes.
24    Q  Make sure that that one is not highlighted.
25    I'm sorry.  Just flip the page.

Page 175

1        No, I have the highlighted one.
2        Yesterday, towards the end the deposition, I
3    had asked you a question, which was where in this
4    agreement does it state that you as Labrador don't have
5    the full rights to grant to Beatbox everything related
6    to the eminem-esque cue.
7        Do you recall that question?
8    A  Some kind of question like that, yeah.
9    Q  I don't think I gave you a chance to fully
10    answer that question.  I think you answered with one
11    paragraph, which we then later determined was actually
12    an exclusivity clause.
13        So I would like for you to tell me where in
14    this agreement you tell Beatbox that you don't have the
15    full rights to grant to eminem-esque without going back
16    to the composer for any, quote, adaptation.
17        MS. OHIRI:  Objection.  Calls for a legal
18    conclusion.
19        MR. JACOBSON:  I join.
20        THE WITNESS:  You're suggesting that I should
21    have, and it's not here.
22        No, there's no reason for me to put that in
23    here.
24    BY MS. BLAISE:
25    Q  Why is there no reason to put that in this

Page 176

1 agreement?

2    A   Because I have full rights to the cue.

3    Q   You have full rights to the cue?

4    A   Yes.

5    Q   So as you sit here today, do you believe that

6 you needed to consult with the composer regarding any

7 synchronization of the cue to any end user?

8    A   No.

9        Say it again?

10       MS. BLAISE:  Can you please read back the

11 question that I just asked, Madam Court Reporter.

12       (Record read as follows:

13        "So as you sit here today, do you

14        believe that you needed to consult

15        with the composer regarding any

16        synchronization of the cue to any end

17        user?")

18       THE WITNESS:  No --

19       MR. JACOBSON:  I object.  Vague and ambiguous.

20       THE WITNESS:  No.

21       MS. BLAISE:  Thank you.

22       (Discussion off the record.)

23 BY MS. BLAISE:

24    Q   And in my previous question I said "the cue."

25        You understand "the cue" to mean the

Page 177

1        And I directed Beatbox to download the Excel

2 file and refer to it as the changes that are necessary

3 and are valid in the identification of Spider Cues'

4 library from that moment on.

5    Q   Okay.  Is this -- in your testimony yesterday,

6 you suggested that you told Peter Baker and Beatbox to

7 remove eminem-esque in 2012.

8        Is this the email wherein you believe that that

9 information was conveyed?

10   A   Yes.

11   Q   Okay.  Can you show me on this email where it

12 says to remove eminem-esque from distribution?

13   A   Yes.  It says here is a -- yes?

14       MS. OHIRI:  Objection.  Mischaracterizes

15 earlier testimony.

16       You can go --

17       THE WITNESS:  "Here is a link to..." download

18 our ftp site the Excel file.

19 BY MS. BLAISE:

20   Q   Is there any mention of the cue eminem-esque

21 specifically in this email?

22   A   No.

23   Q   Going to the fifth paragraph of the email

24 starting with Spider Cues, can you read that paragraph,

25 please.

Page 179

1 eminem-esque cue, correct?

2    A   Yes.

3    Q   Okay.  I'm going to show you what we marked

4 today as Exhibit P.

5        It's not marked yet, but it will be marked.  It

6 says "K" at the top, but that is from a prior filing.

7        This will be Exhibit P for the deposition of

8 Noel Webb, individually, and as the person most

9 knowledgeable for Defendant Labrador.

10       (Exhibit P was marked for

11        identification by the court reporter

12        and is attached hereto.)

13 BY MS. BLAISE:

14   Q   This is an email dated April 4th, 2012,

15 correct?

16   A   Yes.

17   Q   Do you remember this email?

18   A   Yes.

19   Q   What was the point of this email when you sent

20 it?

21   A   I, Labrador and Spider Cues, redefined the

22 library of Spider Cues and used the Excel file format

23 that Peter Baker and Beatbox had originally given me to

24 design a library using the most valid and credible

25 document I could find to express that.

Page 178

1    A   If it's the right one, you're referring to,

2 "Spider Cues has had a great deal of success..."?

3    Q   Yes, and just go a little bit slower for the

4 court reporter.

5    A   "Spider Cues has had a great deal of

6        success with our cues submitted as

7        Albums.  We've decided to offer this

8        format to you.  Do not consider this

9        new format as being a new set of cues.

10        They are the same cues you now have,

11        but we organized them in order of

12        quality within 75 Albums."

13   Q   What did you mean when you said, "Do not

14 consider this new format as being a new set of cues"?

15   A   Cues and albums were removed from Spider Cues.

16 What was left were not new sets of cues.

17   Q   What did you mean when you said, "They are the

18 same cues you now have, but we organized them in order

19 of quality within 75 Albums"?

20   A   I removed cues and albums.  The cues and albums

21 that remained he already had.  So it was his choice as I

22 gave to him explaining what you just asked me to explain

23 to either download the same cues he already had, again,

24 or use the ones he already had.  He has the same cues.

25 What remained he had.  It remained in the library.

Page 180

4 (Pages 177 - 180)

1   Q   Do you see the word "remove" anywhere in this
2   email?
3   A   "Remove"?
4   Q   The word "remove."
5   A   I don't see it.  Unless you do, I don't see it
6   here.  And -- the word -- the concept of remove is
7   implied, but I don't see the word.
8   Q   And then going down to -- going down to the
9   eighth paragraph where you see it starts with, "When you
10  hit the link above..."
11  A   Yes.
12  Q   Could you just read that paragraph, please.
13  A   "When you hit the link above, you will
14       see a folder with 12 of the 75 Albums.
15       All the music files are mp3/320/44.1.
16       If you would like the same Album set
17       up with another format, we could try
18       and" -- "we could try and it to you.
19       Of course you already have these cues
20       in your library, so you can use those.
21       You probably have already renamed
22       them, which is fine."
23  Q   Do you see anything in that paragraph that
24  would alert Peter Baker and Beatbox that you are telling
25  them to remove a cue from the library?
                                                    Page 181

1   testimony.
2   BY MS. BLAISE:
3   Q   In your experience in the music publishing
4   business.
5   A   Pretty much the same thing.  It's another term
6   meaning the same thing.
7   Q   Yesterday, you had testified that you have a
8   number of music libraries.
9        Have you removed all sound-a-likes and
10  knockoffs from those libraries?
11  A   Yes.
12  Q   When did you remove them from those libraries?
13  A   2012.
14  Q   But you testified yesterday that you have
15  publishing agreements with the PROs ASCAP, BMI and
16  SESAC.
17       Is that correct?
18  A   Yes.
19  Q   Okay.  Have you ever -- are you familiar with
20  the process of alerting ASCAP, BMI and/or SESAC with a
21  removal of a composition from -- from their licensing
22  repertoire?
23  A   They don't license cues.
24  Q   They collect royalties, correct?
25  A   Yes.
                                                    Page 183

1   A   Yes.
2        Let's see.  It's telling him to download that
3   link.  And in that link is the removal of sound-a-likes
4   and eminem-esque.
5   Q   That link was removing all sound-a-likes?
6   A   Yes.
7   Q   What do you understand a sound-a-like to be?
8   A   A piece of music or cue that has a similarity
9   to another tune or cue.
10  Q   And why were you removing sound-a-likes?
11  A   Because it didn't license well and because I
12  was aware of possible litigation costs.
13  Q   How were you aware of possible litigation
14  costs?
15  A   Common sense.
16  Q   When did you become aware of the possible
17  litigation costs associated with sound-a-likes?
18  A   One of my other sub-publishers suggested it to
19  me.
20  Q   I appreciate your answer, but my question was
21  when.
22  A   When?  I can't tell you the exact time, but
23  before 2012.
24  Q   What do you understand a knockoff to be?
25  MR. JACOBSON:  Objection.  Calls for expert
                                                    Page 182

1   Q   Have you alerted ASCAP, BMI or SESAC to no
2   longer collect royalties for those cues that you have
3   identified as sound-a-likes and/or knockoffs, ever?
4   A   I don't remember.
5   Q   Is there a document that you could review that
6   would refresh your recollection as to whether or not
7   you've alerted ASCAP, BMI and/or SESAC regarding any
8   sound-a-like and/or knockoff cues that you've asked to
9   no longer collect royalties for?
10  A   Perhaps.
11       You're suggesting that they license, they
12  collect.
13  Q   I understand that they collect royalties.  I'm
14  asking you if you are aware of the procedure by which
15  you let them know that they are no longer to collect
16  royalties for any sound-a-likes and/or knockoffs that
17  you said that you have removed from your cues --
18  your catalog.
19  A   I don't think you can do that.  I don't think
20  that's possible --
21  Q   You don't --
22  A   -- to tell ASCAP or BMI to remove the
23  possibility of recovering royalties for a cue of any
24  nature, ever.
25  Q   Okay.  So is it fair to say that you have not
                                                    Page 184

5 (Pages 181 - 184)

1  told ASCAP, BMI or SESAC to no longer collect royalties
2  on your behalf --
3       Let me finish the question, please.
4  A  Uh-huh.
5  Q  -- for cues that you have identified and
6  removed from your catalog as sound-a-likes and/or
7  knockoffs?
8  A  I don't know.
9  Q  You don't know if you've alerted them?
10  A  Yeah.
11  Q  Do you have all your correspondence with ASCAP
12  and BMI and SESAC?
13  A  I may.
14  Q  Okay.  Can you review that correspondence and
15  determine if you've ever alerted them to --
16  A  Yes.
17  Q  Please let me finish my question.
18       -- alerted them to no longer collect royalties
19  on your behalf for songs or cues that you have
20  identified as sound-a-likes and/or knockoffs?
21  A  Yes.
22  Q  Thank you.
23       Have you -- since 2012, have you collected any
24  royalties for songs or cues that you have identified as
25  sound-a-likes and/or knockoffs?

Page 185

1  A  I don't know.
2  Q  Are there any documents that you could review
3  that would allow you to answer this question?
4  A  Yes.
5  Q  What documents would those be?
6  A  Statements from sub-publishers.
7  Q  And you also get statements from ASCAP and BMI
8  and SESAC, correct?
9  A  Yes.
10  Q  And would reviewing those documents also help
11  you be able to answer this question?
12  A  I think so.  I'm not sure.
13  Q  Will you please get those documents together
14  for your attorney?
15  A  Yes.
16  Q  Have you ever been sued for copyright
17  infringement --
18  A  No.
19  Q  -- prior to this lawsuit --
20  A  No.
21  Q  -- the New Zealand lawsuit?
22       And have you ever received a claim from any
23  third party that any of your compositions or sound
24  recordings infringe the rights of third parties?
25  A  I don't think so, no.

Page 186

1  Q  Have you ever received a letter from an
2  attorney saying to cease and desist your use of this
3  cue?
4  A  No.
5  Q  Have you ever been a party to a lawsuit?
6  A  Yes.
7  Q  What was the nature -- how many different
8  lawsuits and what was the nature of each one?
9  A  Is small claims court a lawsuit?
10  Q  Yes.
11  A  Rental -- as a renter.
12  Q  Tenant --
13  A  Yeah.
14       And a construction lawsuit with a subcontractor
15  who was working on something I was -- I needed.
16  Q  Were you the homeowner?
17  A  Yes.
18  Q  About how long ago was this case?
19  A  I think 1988.
20  Q  Did it go to trial or resolved out of court?
21  A  Which one?
22  Q  Did it go to trial or did it resolve --
23  A  No.
24  Q  -- was there a settlement?
25  A  I think so, yes.

Page 187

1  Q  Any other lawsuits that you've been a party to?
2  A  No.
3  Q  I'm going to show you what was marked in
4  Michael Cohen's deposition held earlier today, exhibits
5  marked B through D.
6  A  So in reverse, I guess.
7       Is there an order that you want me to look at
8  these?
9  Q  Oh, no.
10       Just are you familiar with them?  Do you
11  recognize --
12  A  I'd have to know the order to understand what
13  they are.  I don't remember them.
14  Q  They're dated at the top.
15  A  Okay.  All right.
16  Q  Do you see the one marked B, the exhibit marked
17  Cohen Exhibit B?
18  A  Yes.
19  Q  And it appears to be an email response from
20  Cohen to you dated December 3rd, 2006.
21       Can you tell me what your request in the email
22  was?
23  A  You mean why he's responding this way?
24  Q  Yes, what your email to Noel Webb [sic] was.
25       I'm sorry.  Your email to -- strike that --

Page 188

6 (Pages 185 - 188)

1 your email to Michael Cohen.
2    A  I don't know.
3    Q  Do you see your signature block?
4    A  Oh.  I'm sorry.  "Do you have a knock off of
5 S.O.S. By Rihanna?"
6       Okay, yes, yes.
7    Q  So this is in 2006 you're asking for a
8 knockoff.
9       So what did you mean by that?
10    A  A music supervisor had asked me, I'm quite
11 sure, if I had a composer who could write a knockoff for
12 SOS by Rihanna, and I related to a composer who was good
13 at that.
14    Q  And you consider Michael Cohen to be good at
15 doing knockoffs?
16    A  Yes.
17    Q  And to be good at doing sound-a-likes?
18    A  Yes.
19    Q  What makes him good at that, in your opinion?
20    A  (Addressing Ms. Ohiri) Objection?
21       I don't know.
22    Q  You don't know what makes him good at doing
23 knockoffs?
24    A  Yeah, I'm not sure how to answer the question.
25    Q  Well, your testimony was that you found him to

Page 189

1 be a composer who was good at knockoffs and
2 sound-a-likes --
3    A  Yeah.
4    Q  -- and I'm asking you what was the basis of
5 your conclusion that he was good at them.
6    A  Because he did them well.
7    Q  What are the elements that lead you to decide
8 that he did them well?
9       MS. OHIRI:  Objection.  Form, vague.
10       MR. JACOBSON:  I join.
11 BY MS. BLAISE:
12    Q  What do you consider when you're -- when you're
13 making the statement that he does knockoffs and
14 sound-a-likes well?
15    A  That he can write a cue that sounds similar to
16 another cue without infringing.
17    Q  How do you know that he is not infringing?
18    A  I don't.
19    Q  What efforts did you undertake to determine
20 whether or not Michael Cohen's sound-a-like and
21 knockoffs were infringing of any third parties' work?
22    A  I would use the -- the critique of myself and
23 my peers to decide that.
24    Q  So I want to just understand your practice
25 generally.

Page 190

1       When a sound-a-like or a knockoff cue would
2 come in from Cohen, you would listen to it, correct?
3    A  Yes.
4    Q  Would you compare it to the work that it was
5 seeking to knock off and/or sound alike?
6    A  No.
7    Q  How -- would you analyze it to determine that
8 it was not infringing?
9       MS. OHIRI:  Objection.  Calls for a legal
10 conclusion, calls for an expert opinion.
11       THE WITNESS:  The music supervisors in
12 companies I worked or submitted music to were very
13 fastidious about this, so I relied on them.
14 BY MS. BLAISE:
15    Q  Your testimony earlier was that when the cue
16 would come in, you would listen to it and you would
17 listen to it with yourself and peers, a critique by
18 yourself and your peers.
19       And I'm asking you how you undertook that
20 critique.
21       MS. OHIRI:  Objection.  Form, vague.
22       THE WITNESS:  I don't have an answer.
23 BY MS. BLAISE:
24    Q  You're not going to answer or you don't
25 remember -- you don't remember how you undertook the

Page 191

1 critique that you testified you did?
2    A  I don't remember.
3    Q  Is there anything that would refresh your
4 recollection as to how you critiqued the sound-a-likes
5 and knockoffs that you would review for Cohen?
6    A  Not that I know of.
7    Q  Do you remember critiquing with yourself and
8 peers the eminem-esque cue when it came in from Cohen?
9    A  Yes.
10    Q  And what action did you undertake at that time?
11    A  I listened to it and decided it wasn't
12 infringing.
13    Q  Why did you think it wasn't infringing?
14    A  It didn't have a melody.  It didn't have
15 lyrics.  It had a chord progression that was different
16 than the tune Lose Yourself.  It used different
17 instrumentation.  It did not have any voice on top of it
18 that reflected Lose Yourself.
19       It was simply a groove.
20    Q  Can you -- did you say "chord progression"?
21    A  Yes.
22    Q  All right.  Can you explain to me how the chord
23 progression was different than Lose Yourself?
24    A  Not -- the best I can?
25    Q  The best you can in as most technical terms as

Page 192

7 (Pages 189 - 192)

1 you can.
2    A  All right.
3    Q  Pretend like I'm an idiot, because I am.  I
4 don't know what chord progression is.
5    A  It also had different chord inversions, chord
6 voicings.
7       So, to begin with, chord voicings are if you
8 have a C-E-G, which is a triad, like a C chord, you can
9 have a voicing where the C is on the bottom, E is in the
10 middle, G is at the top.
11      If you take the C and put it on top, you've now
12 voiced it differently and it has a completely different
13 sound to it, even though it has the same notes.  So
14 that's called chord voicing.
15      So when you do that, you then are moving to
16 another chord you voice differently, and the progression
17 of the musical experience will now be very, very
18 different as you move from chord to chord because the
19 chord voicings are now different.
20      As well, he used different chords, so you can
21 see how that would then move -- have the musical
22 experience be completely different.  He used different
23 chords as well as different chord voicings.
24    Q  What are the different chords he used?
25       Well, strike that.

Page 193

1    Do you know what chords were used in
2 Lose Yourself?
3    A  Not as I sit here, no.
4    Q  Okay.  Do you know what chords he used in
5 eminem-esque?
6    A  Not as I sit here.
7    Q  Do you -- as you sit here, do you know if the
8 way that the New Zealand political party used
9 eminem-esque in the advertisement -- did it change the
10 chord inversion from Michael Cohen's version
11 eminem-esque?
12       MR. JACOBSON:  Objection.  Assumes facts not in
13 evidence.
14       MS. OHIRI:  Calls for speculation, calls for an
15 expert opinion.
16 BY MS. BLAISE:
17    Q  Do you know --
18    A  Yes.
19    Q  -- the answer to that?
20       It did change the chord inversion?
21    A  Chord progression.
22    Q  It did change the chord progression?
23    A  Yes.
24    Q  Do you know how it changed it?
25    A  I'm not sure how to explain it here.  But, yes,

Page 194

1 they moved chords from one section of the tune to
2 another section of the tune, thus changing the musical
3 experience.  It's a different tune.
4    Q  When you undertook your comparison between
5 eminem-esque and Lose Yourself, how did you go about
6 extrapolating information from the composition
7 Lose Yourself?
8    A  By ear.
9    Q  Okay.  So you orally -- or not "orally."
10       THE REPORTER:  Auditorily?
11       MS. BLAISE:  Auditorily.  Thank you.
12    Q  You auditorily listened to Lose Yourself.
13       Did you review sheet music?
14    A  No.
15    Q  Did you auditorily listen to Lose Yourself and
16 then transpose what you heard to sheet music?
17    A  No.
18    Q  Did you undertake any other comparison besides
19 listening to Lose Yourself?
20    A  Ask that again.
21    Q  Did you undertake any other comparison beyond
22 just listening to Lose Yourself and listening to
23 eminem-esque?
24    A  Playing it for other people.
25    Q  Who all did you play it for?

Page 195

1    A  Rich Webb.
2       No relation.
3    Q  No relation to --
4    A  To me.
5    Q  -- to you.  Okay.
6       Who is Rich Webb?
7    A  Rich Webb runs the audio department for
8 NBCUniversal Studios where all music played on those
9 television stations goes through him.
10    Q  When did you play Lose Yourself and
11 eminem-esque for him?
12    A  After I received it.
13    Q  After you received eminem-esque from Cohen?
14    A  Correct.
15    Q  And that would have been approximately 2009?
16    A  I don't know.  I think so.
17    Q  Was that when your agreement with him began,
18 2009 or earlier?
19    A  Yes, I think so.
20    Q  What's Rich Webb's phone number?
21    A  I don't know.
22    Q  Is it still at NBCUniversal?
23    A  He's retired.
24    Q  Do you know what his title was at NBCUniversal?
25    A  Exact status -- title, I don't know.

Page 196

8 (Pages 193 - 196)

1   Q  Does he still live in L.A.?
2   A  I don't know.
3   Q  Do you have his email address?
4   A  I might.
5   Q  Do you have his phone number?
6   A  I might.
7   Q  Can you get it to your attorney?
8   A  Yes.
9   Q  Who else did you play it for?
10  A  The music supervisor who requested it.  His
11 name is Michael Sherwood, I think.
12  Q  Michael Sherwood requested eminem-esque?
13  A  He requested a sound-a-like or knockoff of
14 Lose Yourself.
15  Q  How did he request it?
16  A  In an email, and it may have been verbally, but
17 I'm not sure.
18  Q  Have you tendered that email to your attorney
19 as responsive to --
20  A  Yes.  Yes.
21  Q  Do you have Michael Sherwood's contact
22 information?
23  A  I don't know.
24  Q  Will you review your records and, if you do,
25 provide that information to your counsel?

Page 197

1   A  Yes.
2   Q  Who else did you have review it?
3   A  Of course, Michael Cohen himself reviewed it as
4 he wrote it.
5   Q  Were you relying on Michael Cohen's analysis?
6   A  Not entirely.
7      Okay.
8   Q  Are you the only owner of Labrador?
9   A  Yes.
10  Q  Do you have any other directors in the
11 company --
12  A  No.
13  Q  -- any other decision-makers?
14  A  No.
15  Q  Anybody else entitled to a vote under any of
16 your operating agreements?
17  A  I'm not sure.  There's stock.
18  Q  Who else has a stock ownership interest?
19  A  The Webb Family Trust.
20  Q  How much stock does The Webb Family Trust have?
21  A  100 percent.
22  Q  When was Labrador created, what year?
23  A  2000.
24  Q  When were the shares of Labrador put into The
25 Webb Family Trust?

Page 198

1   A  I don't know.
2   Q  Was it after finding out about this lawsuit?
3   A  No.  No.
4   Q  It was before this lawsuit?
5   A  I don't know.
6   Q  Is there a document that you can review that
7 would allow you to answer the question about when the
8 stock ownership of Labrador was transferred into The
9 Webb Family Trust?
10  A  Yes.
11  Q  Who are the beneficiaries of The Webb Family
12 Trust?
13  A  Myself and my wife.
14  Q  Have you transferred any assets out of
15 Labrador's name since you found out about the
16 New Zealand lawsuit?
17  A  Say -- ask me that again.
18  Q  Have you transferred any assets out of
19 Labrador's name since you found out about the
20 New Zealand lawsuit?
21  A  I have another -- this is what I wanted to tell
22 you about this particular document here (indicating).
23     When you asked about interests yesterday, I
24 didn't entirely understand the question.
25     I have interests in two other companies.

Page 199

1   Q  Okay.  What are those --
2   A  One of them is called Flattop.
3   Q  Inc. or LLC?
4   A  LLC.
5   Q  Is it a California LLC?
6   A  Yes.
7   Q  When was it started?
8   A  2018, I think.
9   Q  What is it in the business of doing?
10  A  Trying to sell a mouse pad component.
11  Q  Does Flattop, LLC own any copyrights in musical
12 compositions or sound recordings?
13  A  No.
14  Q  And what's the other entity?
15  A  Labrador Entertainment, LLC.
16  Q  And when was that started?
17  A  2016, I think.
18  Q  Does Labrador Entertainment, LLC, own any
19 copyrights in musical compositions and/or sound
20 recordings?
21  A  Yes.
22  Q  How many copyrights?
23  A  I don't know.
24  Q  Does it also have music catalogs?
25  A  Yes.

Page 200

9 (Pages 197 - 200)

1   Q   How many music catalogs does it have?
2   A   What do you mean by "catalog"?
3   Q   Yesterday, you testified that you understood a
4   music catalog to be an Excel spreadsheet that then
5   operated as a dba that contained music cues in it.
6   A   Yes.
7   Q   So I'm using your definition.  How many music
8   catalogs does Labrador Entertainment, LLC have?
9        You could just give me all the dba's that are
10  operating under --
11  A   Spider Cues, Red Lab Records, Boston Lab
12  Records.
13  Q   Boston?
14  A   Boston -- I've forgotten now.  Boston Labs or
15  Boston Bay Records.
16       Boston Bay Records I think it is.  I'm not
17  sure.  One of the two.
18       And Shock Files.
19  Q   Is it safe to say that you haven't added any
20  new cues to Labrador Entertainment, Inc. since you found
21  out about the New Zealand lawsuit?
22  A   No.
23  Q   You have added new cues?
24  A   Yes.
25  Q   Okay.  Have you added new cues to Labrador

Page 201

1   Entertainment, Inc. since you formed Labrador
2   Entertainment, LLC in 2016?
3   A   No.
4   Q   What was your gross income on Labrador
5   Entertainment, LLC in 2018?
6   A   I'd have to look to be sure.  Somewhere
7   around -- you mean net or gross?
8   Q   Gross.
9   A   Gross?  I'd have to look.
10  Q   Okay.  You'll get that information from your
11  CPA and give it to your counsel --
12  A   Yes.
13  Q   -- as you indicated yesterday?  Okay.
14       Have you transferred any assets of Labrador
15  Entertainment, Inc. since you found out about the
16  lawsuit in New Zealand?
17  A   They've been purchased.
18  Q   Who purchased them?
19  A   Labrador Entertainment, LLC.
20  Q   How much were they purchased for?
21  A   $67,000.
22  Q   Do you have the purchase agreement?
23  A   I have it.
24  Q   You had it or you have it?
25  A   I have it.

Page 202

1   Q   Can you please provide that to your attorney?
2   A   Yes.
3   Q   Where did the $67,000 go that you -- that
4   Labrador Entertainment, LLC gave to Labrador
5   Entertainment, Inc.?
6   A   Are you asking where did it go?
7   Q   Yeah.  Where is it?
8   A   It was used by Labrador Entertainment, Inc. to
9   pay for attorneys.
10  Q   Which attorneys was it used to pay?
11  A   The attorneys in New Zealand and Browne George
12  Ross and Stuart Wallach and Gib Pagter.  P-a-g-t-e-r.
13  Q   Is it all gone, the $67,000?
14  A   Not quite, no.
15  Q   How much is left?
16  A   I think $3,000, I think.
17  Q   Do you currently owe attorneys outstanding fees
18  for any of these matters relating to the infringement?
19  A   Yes.
20  Q   How much money do you owe in lawyer fees?
21  A   I don't know.
22  Q   Have you asked Michael Cohen to indemnify you?
23  A   I don't know what that means.
24  Q   Have you asked Michael Cohen to reimburse you
25  for all the expenses you've suffered as a result of the

Page 203

1   eminem-esque track?
2   A   I'm not sure.
3   Q   You testified yesterday that you're withholding
4   royalty payments due to Michael Cohen.
5        Isn't that correct?
6   A   Yes.
7   Q   Do you still have that money?
8   A   Yes.
9   Q   Okay.  So you have his -- approximately $4,000
10  is what you testified to yesterday?
11  A   Yes.
12  Q   And you have $3,000 left over from the sale of
13  Labrador Entertainment, Inc. to Labrador Entertainment,
14  LLC, correct?
15  A   No.
16  Q   How much money do you have --
17  A   You reversed the question.  You just reversed
18  the parties.
19  Q   You testified earlier that Labrador
20  Entertainment, LLC purchased Labrador Entertainment,
21  Inc.?
22  A   Yes.
23  Q   You testified that you have $3,000 left from
24  that transaction?
25  A   Yes.

Page 204

10 (Pages 201 - 204)

1    Q   You also testified that you are holding
2  approximately $4,000 of Michael Cohen's?
3    A   Yes.
4    Q   Is that the only money that's sitting in any
5  bank account owned by Labrador Entertainment, Inc.?
6    A   Approximately.
7    Q   Is Labrador Entertainment, Inc. currently in
8  good standing?
9    A   What does that mean?
10   Q   With the -- is it registered with the
11 California Secretary of State?  Are you all paid up on
12 all your franchise tax bills?
13   A   Yes.  Yes.
14   Q   And who are the owners of Labrador
15 Entertainment, LLC?
16   A   I think I am.
17   Q   Are the membership interests held by you
18 individually or are they held in trust?
19   A   I think just me.
20   Q   In 2012 when you sent the Excel spreadsheet, at
21 that time did you believe that the eminem-esque track
22 was infringing?
23   A   No.
24   Q   As you sit here today, do you believe that the
25 eminem-esque track is infringing of Lose Yourself?

Page 205

1    Q   No.
2    Q   Who makes the decision to issue music for the
3  Spider Cues library?
4    A   Would you repeat that?
5    MS. OHIRI:  Objection.  Form, vague.
6  BY MS. BLAISE:
7    Q   Who makes the decision to issue music to
8  third-party users or to your sub-publishers for the
9  Spider Cues library?
10   A   I do.
11   Q   Can you describe what type of information was
12 in the Excel spreadsheet that would define what the
13 Spider Cues library is.
14   Q   Repeat that.
15   Q   Can you describe what information was contained
16 in the Excel spreadsheet that would define what the
17 Spider Cues library is?
18   A   The --
19   Q   The 2012 Excel spreadsheet?
20   A   The album name, the ID given to the album; the
21 library itself; the title of the cue; the ID of the cue
22 itself; the index of it, which is the number it is
23 within the album; the composer or composers, their
24 percentage of ownership; the publisher or publishers,
25 their percentage of ownership.

Page 206

1    Q   Who put the information in the Excel
2  spreadsheet in 2012?
3    A   I did.
4    Q   And there's a 2014 Excel spreadsheet also,
5  correct?
6    A   Yes.
7    Q   Who put the information in the 2014 Excel
8  spreadsheet?
9    A   I did.
10   Q   Have you ever received -- have you ever had
11 music -- strike that.
12       Have you ever had any of your content taken
13 down under a DMCA request, if you're aware, a Digital
14 Millennium Copyright Act --
15   A   No.
16   Q   -- notice and takedown request?
17       No, you haven't, or no, you're not -- you're
18 unaware that you ever have?
19   A   No, I haven't.
20   Q   Have you ever expressly removed a cue in your
21 professional history with any sub-publisher or with any
22 of the PROs?
23       MS. OHIRI:  Objection.  Form, vague.
24 BY MS. BLAISE:
25   Q   In your entire professional history licensing

Page 207

1  music, have you ever expressly removed a cue from being
2  able to be licensed through a sub-publisher or any of
3  the performance rights organizations?
4    A   Yes.
5    Q   Do you remember what cue that was, or cues?
6    A   I don't remember right now.  But, yes, there
7  have been cues.
8    Q   Okay.  Do you have correspondence relating to
9  the removal of those cues?
10   A   Yes.
11   Q   Can you review those and get them to your
12 lawyer?
13   A   I think that she may have those.
14       (Addressing Ms. Ohiri) You have those,
15 probably.
16       MS. OHIRI:  Uh-huh.
17 BY MS. BLAISE:
18   Q   Have you ever expressly requested the removal
19 of eminem-esque from ASCAP?
20   A   I don't know.
21   Q   Have you changed -- did you ever change the
22 title of eminem-esque in the course of your
23 sub-publishing agreement with Beatbox?
24   A   No.
25   Q   Did you ever change the title of eminem-esque

Page 208

11 (Pages 205 - 208)

1 during the term of your composer agreement with
2 Michael Cohen?
3          MR. JACOBSON:  Objection.  Vague and ambiguous.
4          THE WITNESS:  Yeah.  If changing it from SQ MC
5 eminem-esque to eminem-esque is a change, then yes.
6          But the references outside of the title
7 eminem-esque is part of the ID I was referring to
8 earlier, so I'm not sure if it's changing the title or
9 changing the ID is what was going on.
10 BY MS. BLAISE:
11     Q  Have you ever changed the ID?
12     A  Sub-publishers have, but I haven't, no.
13     Q  Okay.  And have you ever changed any type of
14 identifying information of the cue known as eminem-esque
15 with any of the PROs, performance rights organizations?
16     A  I don't know.
17     Q  Okay.
18     A  Can I talk to her for a minute between the
19 questions?
20          MS. BLAISE:  Yes.
21          (Recess taken.)
22          THE WITNESS:  So you asked me a question
23 earlier.  Can I clarify something for you that might be
24 helpful to you?
25 BY MS. BLAISE:

Page 209

1     Q  No.  I'll ask -- I'll ask my next question.
2     A  Okay.
3     Q  Thanks.
4          Did you prepare new agreements with any of your
5 sub-publishers once you started rendering services and
6 providing goods under Labrador Entertainment, LLC?
7     A  New contracts were written for new music that
8 came in.
9     Q  And the old music and old cues that were part
10 of the Labrador Entertainment, Inc. category logs, both
11 Spider Cues and the other various catalogs, those are
12 under the same prior agreement that you -- that you held
13 with your sub-publishers between Labrador Entertainment,
14 Inc. and whatever given sub-publisher?
15     A  I think so.
16     Q  So when money comes into Labrador
17 Entertainment, Inc. from those sub-publishers --
18     A  Oh, I'm sorry.  Did you say "sub-publishers" or
19 "composers"?
20     Q  Sub-publishers.
21     A  Oh.  I'm so sorry.  Start over.
22     Q  Do you mean start over with my current pending
23 question?
24     A  Completely, actually, yes.
25     Q  Okay.  Did you do -- do you still have

Page 210

1 outstanding agreements for Labrador Entertainment, Inc.
2 with sub-publishers?
3     A  Yes.
4     Q  Okay.  And pursuant to the terms of those
5 agreements with your sub-publishers, do you have income
6 that comes from those sub-publishers for the copyrights
7 that are embodied in the catalogs owned by Labrador
8 Entertainment, Inc.?
9     A  Yes.
10     Q  Where does that money go?
11     A  It is sometimes wired to the Inc. account and
12 sometimes wired to the LLC account.
13     Q  What determines whether or not it will be wired
14 to the LLC account and what will be wired to the Inc.
15 account?
16     A  The sub-publishers ask me where to wire it, and
17 so I tell them where to wire it.
18     Q  When do you tell them to wire it to the Inc.
19 account and when do you tell them to wire it to the LLC
20 account?
21     A  I don't know the answer to the question, when.
22     Q  How do you determine when to tell them to wire
23 it to the LLC or to wire it to the Inc.?
24     A  The communication is not always as fluent
25 (phonetic) as one would hope, and I do the best I can

Page 211

1 with what I know that they will do for me.
2     Q  If a sub-publisher says, "You have a payment
3 coming in and where do you want it," what do you
4 consider before telling them where to wire it?
5     A  How good our communication is.
6     Q  If your communication is good, where do you
7 have them wire it?
8     A  That's very -- it's subjective.  I don't know.
9          Good, good communication.
10     Q  Since the time you found out about the
11 New Zealand lawsuit, how much money have you had wired
12 to the LLC account that should have been wired to the
13 Inc. account under the terms of your sub-publishing
14 agreement with the LLC -- I'm sorry -- with Inc.?
15          Strike LLC.
16     A  I don't know.
17     Q  Who do you bank with for the LLC?
18     A  Wells Fargo and Chase.
19     Q  Who do you bank with for the Inc.?
20     A  Wells Fargo and Chase.
21     Q  How many accounts do you have for the LLC?
22     A  One in Wells Fargo and one in Chase.
23     Q  How many accounts do you have for the Inc.?
24     A  One in Wells Fargo, one in Inc. -- one in
25 Chase.

Page 212

12 (Pages 209 - 212)

1   Q   Since you created the LLC, have you had bank
2   accounts at any other banks?
3   A   No.
4   Q   Does the LLC own any other assets other than
5   copyrights of musical compositions and sound recordings?
6   A   Did you say own or owe?
7   Q   Own.
8   A   Why do you keep saying copyright ownership?
9   Copyright is -- we have publishing rights.
10   Q   Which emanate from copyright ownership.
11   A   Not necessarily.
12   Q   They're assets of your LLC, correct?
13   A   Yes.
14   Q   The assets are traceable to the copyright which
15   is the intellectual property of a composition or a sound
16   recording, correct?
17   A   Yes, yes, traceable.
18   Q   So my question is:  Are there any other assets
19   belonging to the Inc. aside from publishing rights that
20   emanate from a copyright?
21   A   No, no.
22   Q   And what about the Inc., the Labrador
23   Entertainment, Inc.?  What does --
24   A   What did you just ask?
25   Q   I'm asking about whether or not there are any

Page 213

1   Q   Does either entity pay you rent for working out
2   of your home?
3   A   I don't know.
4   Q   Would a review of your tax returns permit you
5   to answer that question?
6   A   Yes.
7   Q   Have you ever met Michael Cohen before today?
8   A   Before today?
9   Q   Uh-huh.
10   A   No.
11   MS. BLAISE:  That's all I have for now.
12   MS. OHIRI:  Okay.
13   THE WITNESS:  So I cannot help you --
14   MS. OHIRI:  Wait.  Hold on.  Let's go off the
15   record.
16   (Discussion off the record.)
17
18   EXAMINATION
19   BY MS. OHIRI:
20   Q   Okay.  Earlier you testified that you
21   redesigned the Spider Cues library in 2012.  Correct?
22   A   Yes.
23   Q   Why did you redesign the library?
24   A   To have a better format and to remove
25   sound-a-like albums; some other individual cues, I

Page 215

1   assets in Labrador Entertainment, Inc. besides music
2   publishing.
3   Are there?
4   A   No.
5   Q   Okay.  Are there any other assets of Labrador
6   Entertainment, LLC beyond music publishing?
7   A   No.
8   Q   Do you have any physical computers or other
9   hardware that belong to Labrador Entertainment, Inc. or
10   Labrador Entertainment, LLC?
11   A   Yes.
12   Q   What type of physical property do you have?
13   A   Computer, a laptop.  I think that's all.
14   Q   Which entity owns the computer and the laptop?
15   A   I don't know.
16   Q   Is there anything that you could review that
17   would allow you to answer that question?
18   A   Yes.
19   Q   What?
20   A   My -- the purchase agreement.
21   Q   Do you have any office space that you pay rent
22   for for either entity or any other entities?
23   A   No.
24   Q   Do you work out of your home?
25   A   Yes.

Page 214

1   think.
2   Q   What other cues did you remove -- or strike
3   that.
4   What cues did you remove?
5   A   The sound-a-like cues within the sound-a-like
6   album.
7   Q   How many cues are in that sound-a-like album?
8   A   I think 15, but I'm not sure.
9   Q   And it's your testimony that you removed the
10   entire sound-a-like album in 2012, correct?
11   A   As an album, yes.
12   Q   Did you send this newly redesigned Spider Cues
13   album to all of your sub-publishers?
14   A   Yes.
15   Q   Can you provide me a list of all the
16   sub-publishers that you sent the new library to?
17   A   Yes.
18   Q   What's the list?
19   A   It will be a list of emails.
20   Q   Okay.  Who were the sub-publishers that you
21   sent the newly designed library to?
22   A   CDM in France; Music Box in the U.S.; Beatbox
23   in Australia and the other territories; Apollo,
24   A-p-o-l-l-o, in Denmark.  That's their main -- main
25   country where their office is.

Page 216

13 (Pages 213 - 216)

1       The Greek sub-publisher whose name I don't
2   remember.  I think it's called Music -- I don't remember
3   the name of the publishing company.  It's a
4   sub-publisher in Greece.
5       An Israeli sub-publisher company called -- I
6   don't remember that name, either.  It's an Israeli
7   publishing company.
8       And I either sent the new design at that time
9   or soon after to Korea, which is Modoocom,
10  M-o-d-o-o-c-o-m; and the Japanese sub-publisher Sakura
11  Notes.  S-a-k-u-r-a Notes; and, at that time or later,
12  to a German sub-publisher Sonoton.  S-o-n-o-t-o-n.
13  Q   Is that it?
14  A   I think so.
15  Q   Okay.  And did you send the new library to
16  these sub-publishers that you just listed at the same
17  time, around the same time frame?
18  A   Most that I just said, most of them, yes.
19  Q   And what time frame was that?
20  A   Right at the same time I sent it to Beatbox.
21  Q   And when was that?
22  A   2012, April -- or 2012, roundabout.
23  Q   Now, the Exhibit P, the email that was sent
24  from you to Peter Baker on April 4th, 2012, is this the
25  email that included the new designed library to Beatbox?
                                                   Page 217

1   A   Within that year, soon after that.  I don't
2   have the date in front of me.
3   Q   And what did you discuss with Mr. Baker at that
4   meeting?
5   A   The changes in the library that he approved.
6   Q   And what changes, specifically?
7   A   He appreciated and acknowledged the new library
8   design without sound-a-likes in it and without
9   eminem-esque in it, a sound-a-like cue.
10  Q   Did you ever speak with Mr. Baker again about
11  the sound-a-like album?
12  A   Yes.
13  Q   When was that?
14  A   At the NAB, National Association of
15  Broadcasters in 2013 here less than a year later, I
16  think.
17  Q   What was the context of that conversation?
18  A   A kind of light-hearted reference to the
19  removal of the sound-a-likes album.
20  Q   Can you provide a little bit more detail?
21  A   We were to meet in front of what I remember to
22  be a Five Alarm kiosk at the NAB show.
23      He was late.  He apologized.  He came fully
24  loaded with a lot of gear.  I'd been waiting.
25      He came over.  We sat on two cushions.  I think
                                                   Page 219

1   A   Did you say "K" or "P"?
2   Q   "P."  It's --
3   A   At the bottom.  Oh, I'm so sorry.
4       Yes.
5   Q   Did you require that Beatbox download or import
6   the newly designed Spider Cues album in 2012 when you
7   sent this email?
8   A   Yes.
9   Q   And was it your understanding after you sent
10  this email that Beatbox downloaded the newly designed
11  Excel file or library?
12  A   Yes.
13      MS. BLAISE:  Objection.  Foundation.
14      THE WITNESS:  Yes, because he responded that he
15  did.
16  BY MS. OHIRI:
17  Q   How did he respond that he did?
18  A   A follow-up email said something to the --
19  something about, "You've made a lot of changes.  Let's
20  talk about a meet."
21  Q   Did you meet with him?
22  A   Yes.
23  Q   When did you meet with Peter?
24  A   Soon after that.
25  Q   Was it in April of 2012?
                                                   Page 218

1   they were red.
2   Q   Wait.  Let me stop you there.
3   A   Yeah.
4   Q   Can you give me detail about your conversation
5   regarding the sound-a-like album?
6   A   Oh.
7       We talked about the new -- the new format and
8   new definition of Spider Cues, identification of this
9   new library with Spider Cues; and that, in fact, the
10  sound-a-like album was removed.
11  Q   So was it your understanding that Beatbox had
12  removed the sound-a-like album which contained the
13  eminem-esque cue at that time?
14  A   Yes.
15  Q   Okay.  I am going to refer you to Exhibit H,
16  which should be in front of you, the sub-publishing
17  agreement.
18  A   Yes.
19  Q   Paragraph 3, if you can just read over that to
20  yourself and let me know when you're done.
21  A   Okay.
22  Q   What is your understanding of that provision?
23  A   With reference to Beatbox, Beatbox is to import
24  each of the recordings as required issued by the
25  publisher -- that would be me -- and utilize them, the
                                                   Page 220

14 (Pages 217 - 220)

1 recordings that I give him.

2 Q   Based on your understanding, does that include
3 the new Excel file that contained the new Spider Cues
4 library that you sent Beatbox in 2012?

5 A   Absolutely without any question.

6 Q   Did you ever redesign the Spider Cues library
7 after 2012?

8 A   Yes.

9 Q   When was that?

10 A   2014.  It was given to him.

11 Q   And why did you redesign the library at that
12 time?

13 A   I remastered all the audio.  I redesigned the
14 album covers.  And I used Peter Baker's Excel file
15 format that he gave us to define a library in totality
16 in 2009.  I used his format to -- to give him the new
17 design of the new Spider Cues library in 2014.

18        The album covers that I sent him, which they
19 approved, did not have the sound-a-like title on it.
20 All album covers have all titles on them explicitly
21 telling you what they are.

22        The Excel file did not have sound-a-likes in it
23 or the eminem-esque cue not because I had removed it at
24 that point but because it had already been removed in
25 2012, so there was no reason for me to refer to it again

Page 221

1 after 2012 with the complete assumption that it was
2 removed in 2012.

3 Q   So the 2014 Spider Cues library did not include
4 the sound-a-like album?

5 A   Correct, or the eminem-esque cue.

6 Q   Do you know whether or not Beatbox downloaded
7 or imported, or whatever the word is, the Spider Cues
8 library in 2014?

9 A   You say do I know?

10     Yes.

11 Q   How do you know that?

12 A   Because he responded right after that saying,
13 "You've made a lot of changes.  Let's talk and have a
14 meeting."

15 Q   Did you meet with him?

16 A   Yes, I did.

17 Q   When did you meet with him?

18 A   In March of 2014.

19 Q   And what was the -- what was that conversation
20 about?

21 A   Almost completely the replacement of the
22 previous Spider Cues identified library with the new
23 identified library, Spider Cues library.

24        We -- we talked about it.  He and Barbara not
25 only said -- accepted the change.  They actually

Page 222

1 requested the change.  I have a witness to prove it.

2 Q   Did you ever grant Beatbox the right to alter,
3 expand, adapt and translate any of the compositions that
4 were sublicensed to them?

5 A   No.

6 Q   Yesterday, you testified that you had a
7 website.

8        What was the significance of that website?

9        MS. BLAISE:  Objection.  Vague, ambiguous.

10       THE WITNESS:  To -- in the face of websites
11 being not particularly used or usable in those days, it
12 was just a presence on this web- -- on the Internet.

13 BY MS. OHIRI:

14 Q   Did you ever license any music off of your
15 website?

16 A   No.

17 Q   Did you ever license eminem-esque, in
18 particular, off of your website?

19 A   No.  The website was not really usable.  It
20 was -- it had -- it was attacked a number of times, how
21 many I can't even count, whereby it was pulled off the
22 Internet.

23       And so I would use -- I would go to my host,
24 called OMNIS, O-M-N-I-S, to acquire the original first
25 design, which was -- and had to use that to put it back

Page 223

1 up.  And that's the only way I could do it.

2 Q   Okay.

3 A   Yeah.

4     MS. OHIRI:  That's all I have for now.

5     MR. JACOBSON:  I have nothing.

6     MS. BLAISE:  Okay.

7

8             FURTHER EXAMINATION

9 BY MS. BLAISE:

10 Q   You testified yesterday that you recognized
11 that the sub-publisher would give to its clients a
12 physical file that would contain all the cues that were
13 available on a catalog.

14     Correct?

15 A   That the who -- what?

16 Q   That your sub-publisher -- in particular,
17 Beatbox -- would give a physical drive to its potential
18 clients, its potential end users, third parties,
19 correct?

20 A   My understanding is that would be -- my
21 understanding is that's what Beatbox did.

22 Q   And, in referencing, your attorney directed you
23 to Paragraph 3 of the document that has been previously
24 marked as Exhibit H, which is the April 2009 agreement
25 between Labrador Entertainment and Beatbox Music, Inc.

Page 224

15 (Pages 221 - 224)

1     Do you still have that in front of you?
2  A  Yes, I do.  Yep.
3  Q  And do you see anything in this paragraph that
4  requires Beatbox to go to its potential clients and
5  remove cues that you've already agreed to be licensed?
6  A  What paragraph is that?
7  Q  Paragraph 3.
8  A  Oh, I see.
9     The job described in this contract is for the
10  sub-publisher to disseminate what he has as a library to
11  represent.  He cannot receive something and not
12  disseminate it and not stay with the contract.
13     So when he receives recordings or an Excel file
14  his job, per contract, is to disseminate it.
15  Q  All right.  And you agree that you provided
16  Beatbox with eminem-esque, correct, during the term of
17  the contract?
18  A  Yes.
19  Q  And you agree that, then, Beatbox disseminated
20  eminem-esque, correct?
21  A  Yes.
22  Q  And you agree, then, that that is in compliance
23  with the agreement, correct?
24  A  Yes.
25  Q  I want to direct your attention back to

Page 225

1  calling a sound-a-like album?
2  A  Yes.
3  Q  Did you have any other cues contained in any
4  other album that would qualify as sound-a-likes?
5  A  No.
6  Q  Do you have any cues in any of the albums that
7  you have -- that you're licensing under either Labrador
8  Entertainment, LLC and/or Labrador Entertainment, Inc.
9  that will qualify as a sound-a-like in the marketplace
10  right now?
11  A     If your question is do I have any albums in
12  Labrador Entertainment, Inc. or Labrador Entertainment,
13  LLC that would qualify as sound-a-likes now, if that was
14  your question, the answer is no.
15  Q  I'm asking you about cues.
16  A  Cues.
17  Q  Do you have any cues in the marketplace that
18  would qualify as a sound-a-like?
19  A  I don't think -- I don't think so.
20  Q  And directing you to the remainder of that
21  paragraph, it also says, "Of course you already have
22  these cues in your library, so you can use those."
23     Correct?
24  A  Yes.
25  Q  And eminem-esque was one of the cues that was

Page 227

1  Exhibit P and directing you to Paragraph -- Paragraph 7.
2  A  Beginning with what?
3  Q  It starts with, "When you hit the link
4  above...."
5  A  Yes.
6  Q  And it says, "When you hit the link above, you
7  will see...12 of the 75 Albums."
8     Correct?
9  A  No.
10  Q  It doesn't say that?
11  A  "You will see a folder with 12 of the 75
12  Albums."
13  Q  Right.  That's what it says, correct?
14  A  Yes.
15  Q  Okay.  Is it your contention that you
16  previously had given Beatbox 76 albums?
17  A  I'm not sure.
18  Q  Do you know how many albums you gave Beatbox up
19  until -- up until this email in 2012?
20  A  I can find out.
21  Q  What would you have to review to find out?
22  A  Beatbox's -- Beatbox's catalog at that point
23  before this.
24  Q  Is it your contention that the 75 albums you're
25  referencing here does not include the album that you're

Page 226

1  contained in Beatbox's library, correct?
2     MR. JACOBSON:  Objection.  Calls for
3  speculation.
4  BY MS. BLAISE:
5  Q  At the time that you sent this email,
6  eminem-esque was contained in the Beatbox library,
7  correct?
8     MR. JACOBSON:  Same objection.
9     MS. OHIRI:  Objection.  Form, vague.
10     THE WITNESS:  Yes.
11  BY MS. BLAISE:
12  Q  Thank you.
13  A  The cues that we're referencing in the --
14  Q  There is no question pending.
15  A  I'm answering your question.  I'm answering
16  your question, though.  You referred to that sentence.
17  I'm responding to that sentence.
18     That sentence refers to -- the first sentence,
19  12 --
20  Q  Please.  There is no question pending.
21     MS. OHIRI:  There is no -- there's not a
22  question.
23     THE WITNESS:  Okay.  I can't answer the
24  question.
25  BY MS. BLAISE:

Page 228

16 (Pages 225 - 228)

1    Q   You already answered the question.
2    A   I was just -- okay.
3    Q   Since the time that you found out about this
4 lawsuit in New Zealand, have you paid yourself
5 individually any money?
6        MS. OHIRI:  Objection.  Form, vague.
7 BY MS. BLAISE:
8    Q   Since the time that you learned of this
9 lawsuit, have you paid yourself -- has Labrador
10 Entertainment, LLC -- wait.  I'm sorry.
11       Has Labrador Entertainment, Inc. paid Noel Webb
12 any money?
13   A   I don't know.
14   Q   Is there a document that you could review that
15 would allow you to answer that question?
16   A   Yes.
17   Q   Will you review those documents, please.
18   A   Yes.
19       MS. BLAISE:  That's all I have.
20       MS. OHIRI:  I just have one more question.
21       Referring you again to Exhibit P, the
22 April 4th, 2012, email, in the eighth paragraph down,
23 where it says, "Of course you already have these cues in
24 your library, so you can use those," what cues were you
25 referencing?

Page 229

1        THE WITNESS:  Specifically the 12 of the 75
2 albums.
3        MS. OHIRI:  Did that include the eminem-esque
4 cue?
5        THE WITNESS:  No.
6        MS. OHIRI:  I don't have any further questions.
7        MS. BLAISE:  Okay.  I have a question.
8    Q   So you're saying that when you sent this email,
9 you only wanted Beatbox to license -- to be able to
10 license 12 albums?
11   A   That's your question?
12   Q   Yes.
13   A   No.
14   Q   Okay.  What albums did you want them to be able
15 to license?
16   A   The 75.
17   Q   And the link only includes 12, though, correct?
18   A   The link, yes, but it also include an Excel
19 file of the entire library.
20   Q   So you thought that Beatbox would compare an
21 Excel spreadsheet to the music that you had already
22 provided them and then determine what should be removed
23 from this email?
24   A   Absolutely not.  The Excel file directs in
25 exactly what the definition of the Spider Cues library

Page 230

1 is and you should transfer that information over to
2 AMCOS immediately as per their contract with AMCOS and
3 the responsibility to -- to then use the definition of
4 the library Spider Cues for all licensing and marketing
5 possibilities that you would have and facilitate to his
6 external drives and all this clients everywhere.
7        That's all we could ever use, the Excel file.
8    Q   But this email doesn't say that expressly
9 anywhere, does it?
10   A   An Excel file is following -- giving him the
11 Excel file is following his own directive which he
12 facilitated in 2009 saying this is what a library is,
13 sending that to me in 2009.
14       That definition of a library in 2009 is exactly
15 the format and processing that I used in 2012 to tell
16 him what a library was, what my recordings were per
17 Paragraph 3 of the contract.
18   Q   Do you have --
19   A   And that Excel file is -- needs to be -- needed
20 to have been disseminated by him in all venues and
21 vectors he was facilitating licensing or marketing.
22       That was the directive I gave him, and it was
23 based on his exact design of what a library is and how
24 to change or replace a library.
25   Q   You have a college degree, right?

Page 231

1    A   Yes.
2    Q   And you understand a question that calls for a
3 "yes" or a "no" answer, a question that calls for a
4 narrative?
5    A   No.
6    Q   Okay.
7        I asked you:  Does this email expressly state
8 to remove or revoke previous cues that you had provided
9 to Beatbox?  I asked you:  Does this email expressly
10 state that?
11       That's a question that could be answered with a
12 "yes" or "no" answer.
13       And so I'm going to ask you again.  Does this
14 email state expressly that certain cues should be
15 removed from circulation?
16   A   Yes.
17   Q   Where does it state that expressly?
18   A   Download the link of the Excel file, which is
19 the same file -- same manner that he sent it to me in
20 2009.
21       He sent me an Excel file.  That's how one
22 knows, a sub-publisher or publisher, the definition of
23 "library."  That's exactly how he defined library, by
24 sending me an Excel file.  That's exactly what this
25 explicitly does, explicitly saying, "Download the Excel

Page 232

17 (Pages 229 - 232)

1 file."
2      That's exactly what he did in 2009, and I'm
3 following his directive.  That's what this does,
4 explicitly.
5      MS. BLAISE:  I have no other questions.
6      MS. OHIRI:  I don't have any questions.
7      MR. JACOBSON:  I'm done.
8      I would like to order a copy, an electronic
9 copy, and a rough.
10      MS. BLAISE:  I want to order a rough, as well.
11
12           (TIME NOTED:  1:08 P.M.)
13
14
15
16
17
18
19
20
21
22
23
24
25
                                                    Page 233

1      I, the undersigned, a Certified Shorthand
2 Reporter of the State of California, do hereby certify:
3      That the foregoing proceedings were taken
4 before me at the time and place herein set forth; that
5 any witnesses in the foregoing proceedings, prior to
6 testifying, were duly sworn; that a record of the
7 proceedings was made by me using machine shorthand which
8 was thereafter transcribed under my direction; that the
9 foregoing transcript is a true record of the testimony
10 given.
11      Further, that if the foregoing pertains to
12 the original transcript of a deposition in a Federal
13 Case, before completion of the proceedings, review of
14 the transcript [ ] was [ ] was not requested.
15      I further certify I am neither financially
16 interested in the action nor a relative or employee of
17 any attorney or party to this action.
18      IN WITNESS WHEREOF, I have this date
19 subscribed my name.
20 Dated: December 9, 2019
21
22
23                    _Lori Scinta_
24                    LORI SCINTA, RPR
25                    CSR No. 4811
                                                    Page 235

1
2
3
4
5
6
7
8      I, NOEL WEBB, do hereby declare under penalty
9 of perjury that I have read the foregoing transcript;
10 that I have made any corrections as appear noted, in
11 ink, initialed by me, or attached hereto; that my
12 testimony as contained herein, as corrected, is true and
13 correct.
14
15      EXECUTED this _____ day of _____,
16 20____, at _____, _____.
                    (City)          (State)
17
18
19
      _____
20      NOEL WEBB
        Volume II
21
22
23
24
25
                                                    Page 234

18 (Pages 233 - 235)

**[& - alerting]**

| & | | |
|---|---|---|
| **&** 171:4 172:4 | | |

**1**

**100** 198:21
**11:33** 170:8 175:2
**12** 181:14 226:7,11
  228:19 230:1,10
  230:17
**123** 171:8
**1352** 172:7
**15** 216:8
**168** 168:25
**175** 173:6,24
**178** 173:13
**188** 173:21,22,23
**1988** 187:19
**1:08** 170:9 233:12

**2**

**20** 234:16
**2000** 170:7 171:20
  198:23
**2006** 188:20 189:7
**2009** 175:19
  196:15,18 221:16
  224:24 231:12,13
  231:14 232:20
  233:2
**2012** 173:14
  178:14 179:7
  182:23 183:13
  185:23 205:20
  206:19 207:2
  215:21 216:10
  217:22,22,24
  218:6,25 221:4,7
  221:25 222:1,2
  226:19 229:22
  231:15
**2013** 219:15

**2014** 207:4,7
  221:10,17 222:3,8
  222:18
**2016** 200:17 202:2
**2018** 200:8 202:5
**2019** 168:19 170:9
  175:1 235:20
**205** 172:8
**213.725.9800**
  171:22
**215** 173:7
**224** 173:8
**235** 168:25
**250** 171:9
**2:17** 168:6 169:6

**3**

**3** 168:19 170:9
  175:1 220:19
  224:23 225:7
  231:17
**3,000** 203:16
  204:12,23
**312.448.6602**
  171:11
**3620306b** 168:23
**3rd** 188:20

**4**

**4** 173:14
**4,000** 204:9 205:2
**4811** 168:22
  170:10 235:25
**4th** 178:14 217:24
  229:22

**6**

**60606** 171:10
**6108** 168:6 169:6
**67,000** 202:21
  203:3,13

**7**

**7** 226:1
**7109** 235:23
**714.505.4872**
  172:10
**75** 180:12,19
  181:14 226:7,11
  226:24 230:1,16
**76** 226:16

**8**

**801** 170:7 171:19

**9**

**9** 235:20
**90017** 171:21
**92780** 172:9

**a**

**a.m.** 170:8 175:2
**able** 186:11 208:2
  230:9,14
**absolutely** 221:5
  230:24
**accepted** 222:25
**account** 205:5
  211:11,12,14,15
  211:19,20 212:12
  212:13
**accounts** 212:21
  212:23 213:2
**acknowledged**
  219:7
**acquire** 223:24
**act** 207:14
**action** 192:10
  235:16,17
**adapt** 223:3
**adaptation** 176:16
**added** 201:19,23
  201:25
**address** 197:3

**addressing** 189:20
  208:14
**administered**
  175:5
**advertisement**
  194:9
**ago** 187:18
**agree** 225:15,19
  225:22
**agreed** 225:5
**agreement** 175:19
  175:22 176:4,14
  177:1 196:17
  202:22 208:23
  209:1 210:12
  212:14 214:20
  220:17 224:24
  225:23
**agreements**
  183:15 198:16
  210:4 211:1,5
**alarm** 219:22
**album** 181:16
  206:20,20,23
  216:6,7,10,11,13
  218:6 219:11,19
  220:5,10,12
  221:14,18,20
  222:4 226:25
  227:1,4
**albums** 180:7,12
  180:15,19,20,20
  181:14 215:25
  226:7,12,16,18,24
  227:6,11 230:2,10
  230:14
**alert** 181:24
**alerted** 184:1,7
  185:9,15,18
**alerting** 183:20

Page 1

[alike - bmi]

alike  191:5
allow  186:3 199:7
  214:17 229:15
alter  223:2
ambiguous  177:19
  209:3 223:9
amcos  231:2,2
analysis  198:5
analyze  191:7
angeles  168:18
  170:8 171:21
  175:1
answer  174:12
  176:10 182:20
  186:3,11 189:24
  191:22,24 194:19
  199:7 211:21
  214:17 215:5
  227:14 228:23
  229:15 232:3,12
answered  176:10
  229:1 232:11
answering  228:15
  228:15
anybody  198:15
apollo  216:23
apologized  219:23
appear  234:10
appearances
  171:1 172:1
appears  188:19
apply  175:14
appreciate  182:20
appreciated  219:7
approved  219:5
  221:19
approximately
  196:15 204:9
  205:2,6
april  173:14
  175:19 178:14

217:22,24 218:25
  224:24 229:22
ascap  183:15,20
  184:1,7,22 185:1
  185:11 186:7
  208:19
aside  213:19
asked  176:3
  177:11 180:22
  184:8 189:10
  199:23 203:22,24
  209:22 232:7,9
asking  184:14
  189:7 190:4
  191:19 203:6
  213:25 227:15
assets  199:14,18
  202:14 213:4,12
  213:14,18 214:1,5
associated  182:17
associates  172:4
association  219:14
assumes  194:12
assumption  222:1
attached  178:12
  234:11
attacked  223:20
attention  225:25
attorney  171:18
  172:6 186:14
  187:2 197:7,18
  203:1 224:22
  235:17
attorneys  171:7
  203:9,10,11,17
audio  196:7
  221:13
auditorily  195:10
  195:11,12,15
australia  216:23

available  224:13
aware  182:12,13
  182:16 184:14
  207:13

**b**

b  169:14 173:21
  188:5,16,17
back  176:15
  177:10 223:25
  225:25
baker  172:14,15
  173:15 178:23
  179:6 181:24
  217:24 219:3,10
baker's  221:14
bank  205:5 212:17
  212:19 213:1
banks  213:2
barbara  172:15
  222:24
based  221:2
  231:23
basis  190:4
bates  173:16
bay  201:15,16
beatbox  168:4
  169:4 175:20
  176:5,14 178:23
  179:1,6 181:24
  208:23 216:22
  217:20,25 218:5
  218:10 220:11,23
  220:23 221:4
  222:6 223:2
  224:17,21,25
  225:4,16,19
  226:16,18 228:6
  230:9,20 232:9
beatbox's  226:22
  226:22 228:1

began  196:17
beginning  170:8
  226:2
behalf  170:6
  175:12 185:2,19
believe  177:5,14
  179:8 205:21,24
belong  214:9
belonging  213:19
beneficiaries
  199:11
best  192:24,25
  211:25
better  215:24
beyond  195:21
  214:6
bgrfirm.com
  171:23
bills  205:12
bit  180:3 219:20
blaise  171:4,5
  173:6,8 175:9,12
  176:24 177:10,21
  177:23 178:13
  179:19 183:2
  190:11 191:14,23
  194:16 195:11
  206:6 207:24
  208:17 209:10,20
  209:25 215:11
  218:13 223:9
  224:6,9 228:4,11
  228:25 229:7,19
  230:7 233:5,10
blaisenitschkela...
  171:12
block  189:3
bmi  183:15,20
  184:1,7,22 185:1
  185:12 186:7

[boston - conversation]

**boston** 201:11,13 201:14,14,15,16
**bottom** 193:9 218:3
**boulevard** 172:7
**box** 216:22
**broadcasters** 219:15
**browne** 171:16 203:11
**business** 183:4 200:9

**c**

**c** 173:22 193:8,8,9 193:11 217:10
**california** 168:2,8 168:18 169:2,8,15 170:8 171:21 172:9 175:1 200:5 205:11 235:2
**called** 193:14 200:2 217:2,5 223:24
**calling** 227:1
**calls** 176:17 182:25 191:9,10 194:14,14 228:2 232:2,3
**caption** 168:11
**case** 168:6 169:6 187:18 235:13
**catalog** 184:18 185:6 201:2,4 224:13 226:22
**catalogs** 200:24 201:1,8 210:11 211:7
**category** 210:10
**cdm** 216:22
**cease** 187:2

**central** 168:2 169:2
**certain** 232:14
**certified** 170:10 235:1
**certify** 235:2,15
**chain** 173:13
**chance** 176:9
**change** 194:9,20 194:22 208:21,25 209:5 222:25 223:1 231:24
**changed** 194:24 208:21 209:11,13
**changes** 179:2 218:19 219:5,6 222:13
**changing** 195:2 209:4,8,9
**chase** 212:18,20 212:22,25
**chicago** 171:10
**choice** 180:21
**chord** 192:15,20 192:22 193:4,5,5,7 193:8,14,16,18,18 193:19,23 194:10 194:20,21,22
**chords** 193:20,23 193:24 194:1,4 195:1
**circulation** 232:15
**city** 234:16
**claim** 186:22
**claims** 187:9
**clarify** 209:23
**clause** 176:12
**clients** 224:11,18 225:4 231:6
**cohen** 169:11 172:3 188:17,20

189:1,14 191:2 192:5,8 196:13 198:3 203:22,24 204:4 209:2 215:7
**cohen's** 188:4 190:20 194:10 198:5 205:2
**collect** 183:24 184:2,9,12,13,15 185:1,18
**collected** 185:23
**college** 231:25
**come** 191:2,16
**comes** 210:16 211:6
**coming** 212:3
**common** 182:15
**communication** 211:24 212:5,6,9
**companies** 191:12 199:25
**company** 198:11 217:3,5,7
**compare** 191:4 230:20
**comparison** 195:4 195:18,21
**complainant** 169:12 172:3
**complete** 168:11 222:1
**completely** 193:12 193:22 210:24 222:21
**completion** 235:13
**compliance** 225:22
**component** 200:10
**composer** 176:16 177:6,15 189:11 189:12 190:1

206:23 209:1
**composers** 206:23 210:19
**composition** 183:21 195:6 213:15
**compositions** 186:23 200:12,19 213:5 223:3
**computer** 214:13 214:14
**computers** 214:8
**concept** 181:6
**conclusion** 176:18 190:5 191:10
**consider** 180:8,14 189:14 190:12 212:4
**construction** 187:14
**consult** 177:6,14
**contact** 197:21
**contain** 224:12
**contained** 201:5 206:15 220:12 221:3 227:3 228:1 228:6 234:12
**content** 207:12
**contention** 226:15 226:24
**context** 219:17
**continued** 172:1 174:1
**contract** 225:9,12 225:14,17 231:2 231:17
**contracts** 210:7
**conversation** 219:17 220:4 222:19

Page 3

[conveyed - directors]

**conveyed** 179:9
**copy** 233:8,9
**copyright** 186:16
207:14 213:8,9,10
213:14,20
**copyrights** 200:11
200:19,22 211:6
213:5
**corporation** 168:8
169:8,15
**correct** 178:1,15
183:17,24 186:8
191:2 196:14
204:5,14 207:5
213:12,16 215:21
216:10 222:5
224:14,19 225:16
225:20,23 226:8
226:13 227:23
228:1,7 230:17
234:13
**corrected** 234:12
**corrections** 234:10
**correspondence**
185:11,14 208:8
**costs** 182:12,14,17
**counsel** 197:25
202:11
**count** 223:21
**country** 216:25
**course** 181:19
198:3 208:22
227:21 229:23
**court** 168:1 169:1
177:11 178:11
180:4 187:9,20
**covers** 221:14,18
221:20
**cpa** 202:11
**created** 198:22
213:1

**credible** 178:24
**critique** 190:22
191:17,20 192:1
**critiqued** 192:4
**critiquing** 192:7
**cross** 169:12,16
171:14 172:3
**csr** 168:22 235:25
**cue** 176:6 177:2,3
177:7,16,24,25
178:1 179:20
181:25 182:8,9
184:23 187:3
190:15,16 191:1
191:15 192:8
206:21,21 207:20
208:1,5 209:14
219:9 220:13
221:23 222:5
230:4
**cues** 168:7 169:7
169:14 178:21,22
179:3,24 180:2,5,6
180:9,10,14,15,15
180:16,18,20,20
180:23,24 181:19
183:23 184:2,8,17
185:5,19,24 201:5
201:11,20,23,25
206:3,9,13,17
208:5,7,9 210:9,11
215:21,25 216:2,4
216:5,7,12 218:6
220:8,9 221:3,6,17
222:3,7,22,23
224:12 225:5
227:3,6,15,16,17
227:22,25 228:13
229:23,24 230:25
231:4 232:8,14

**current** 210:22
**currently** 203:17
205:7
**cushions** 219:25
**cv** 168:6 169:6

**d**

**d** 169:14 173:23
188:5 217:10
**dan** 172:5
**date** 219:2 235:18
**dated** 173:14
178:14 188:14,20
235:20
**day** 234:15
**days** 223:11
**dba** 168:7 169:7
201:5
**dba's** 201:9
**deal** 180:2,5
**december** 168:19
170:9 175:1
188:20 235:20
**decide** 190:7,23
**decided** 180:7
192:11
**decision** 198:13
206:2,7
**declare** 234:8
**defendant** 169:16
171:14,14 178:9
**defendants** 168:9
169:9
**define** 206:12,16
221:15
**defined** 232:23
**definition** 201:7
220:8 230:25
231:3,14 232:22
**degree** 231:25
**denmark** 216:24

**department** 196:7
**deposition** 168:15
170:4 176:2 178:7
188:4 235:12
**describe** 206:11
206:15
**described** 225:9
**description** 173:12
**design** 178:24
217:8 219:8
221:17 223:25
231:23
**designed** 216:21
217:25 218:6,10
**desist** 187:2
**detail** 219:20
220:4
**determine** 185:15
190:19 191:7
211:22 230:22
**determined**
176:11
**determines** 211:13
**different** 187:7
192:15,16,23
193:5,12,18,19,20
193:22,22,23,24
195:3
**differently** 193:12
193:16
**digital** 207:13
**direct** 225:25
**directed** 179:1
224:22
**directing** 226:1
227:20
**direction** 235:8
**directive** 231:11
231:22 233:3
**directors** 198:10

Page 4

[directs - extrapolating]

**directs** 230:24
**discuss** 219:3
**discussed** 175:14
**discussion** 177:22
 215:16
**disseminate**
 225:10,12,14
**disseminated**
 225:19 231:20
**distribution**
 179:12
**district** 168:1,2
 169:1,2
**division** 168:2
 169:2
**dlj** 172:11
**dmca** 207:13
**document** 178:25
 184:5 199:6,22
 224:23 229:14
**documents** 186:2
 186:5,10,13
 229:17
**doing** 189:15,17
 189:22 200:9
**download** 179:1
 179:17 180:23
 182:2 218:5
 232:18,25
**downloaded**
 218:10 222:6
**drive** 171:8 224:17
**drives** 231:6
**due** 204:4
**duly** 235:6

**e**

**e** 193:8,9 203:12
**ear** 195:8
**earlier** 179:15
 188:4 191:15
 196:18 204:19

209:8,23 215:20
**efforts** 190:19
**eighth** 181:9
 229:22
**either** 180:23
 214:22 215:1
 217:6,8 227:7
**electronic** 233:8
**elements** 190:7
**email** 171:12,23
 172:11 173:13,13
 178:14,17,19
 179:8,11,21,23
 181:2 188:19,21
 188:24,25 189:1
 197:3,16,18
 217:23,25 218:7
 218:10,18 226:19
 228:5 229:22
 230:8,23 231:8
 232:7,9,14
**emails** 216:19
**emanate** 213:10
 213:20
**embodied** 211:7
**eminem** 176:6,15
 178:1 179:7,12,20
 182:4 192:8 194:5
 194:9,11 195:5,23
 196:11,13 197:12
 204:1 205:21,25
 208:19,22,25
 209:5,5,7,14 219:9
 220:13 221:23
 222:5 223:17
 225:16,20 227:25
 228:6 230:3
**employee** 235:16
**entertainment**
 168:7,17 169:7,14
 170:6 171:15

175:19 200:15,18
 201:8,20 202:1,2,5
 202:15,19 203:4,5
 203:8 204:13,13
 204:20,20 205:5,7
 205:15 210:6,10
 210:13,17 211:1,8
 213:23 214:1,6,9
 214:10 224:25
 227:8,8,12,12
 229:10,11
**entire** 207:25
 216:10 230:19
**entirely** 198:6
 199:24
**entities** 214:22
**entitled** 198:15
**entity** 200:14
 214:14,22 215:1
**esque** 176:6,15
 178:1 179:7,12,20
 182:4 192:8 194:5
 194:9,11 195:5,23
 196:11,13 197:12
 204:1 205:21,25
 208:19,22,25
 209:5,5,7,14 219:9
 220:13 221:23
 222:5 223:17
 225:16,20 227:25
 228:6 230:3
**evidence** 194:13
**exact** 182:22
 196:25 231:23
**exactly** 230:25
 231:14 232:23,24
 233:2
**examination** 173:2
 175:8 215:18
 224:8

**examined** 175:5
**excel** 178:22 179:1
 179:18 201:4
 205:20 206:12,16
 206:19 207:1,4,7
 218:11 221:3,14
 221:22 225:13
 230:18,21,24
 231:7,10,11,19
 232:18,21,24,25
**exclusivity** 176:12
**executed** 234:15
**exhibit** 173:13,21
 173:22,23,24
 175:18 178:4,7,10
 188:16,17 217:23
 220:15 224:24
 226:1 229:21
**exhibits** 173:10,19
 188:4
**expand** 223:3
**expenses** 203:25
**experience** 183:3
 193:17,22 195:3
**expert** 182:25
 191:10 194:15
**explain** 180:22
 192:22 194:25
**explaining** 180:22
**explicitly** 221:20
 232:25,25 233:4
**express** 178:25
**expressly** 207:20
 208:1,18 231:8
 232:7,9,14,17
**external** 231:6
**extrapolating**
 195:6

Page 5

[face - identified]

| f | | g | guess  188:6 |
|---|---|---|---|

**f**

**face**  223:10
**facilitate**  231:5
**facilitated**  231:12
**facilitating**  231:21
**fact**  220:9
**facts**  194:12
**fair**  184:25
**familiar**  183:19
188:10
**family**  198:19,20
198:25 199:9,11
**fargo**  212:18,20,22
212:24
**fastidious**  191:13
**federal**  235:12
**fees**  203:17,20
**fifth**  179:23
**figueroa**  170:7
171:19
**file**  178:22 179:2
179:18 218:11
221:3,14,22
224:12 225:13
230:19,24 231:7
231:10,11,19
232:18,19,21,24
233:1
**files**  181:15 201:18
**filing**  178:6
**financially**  235:15
**find**  178:25 226:20
226:21
**finding**  199:2
**fine**  181:22
**finish**  185:3,17
**first**  223:24
228:18
**five**  219:22
**flattop**  200:2,11

**flip**  175:25
**fluent**  211:24
**folder**  181:14
226:11
**follow**  218:18
**following**  231:10
231:11 233:3
**follows**  175:6
177:12
**foregoing**  234:9
235:3,5,9,11
**forgotten**  201:14
**form**  190:9 191:21
206:5 207:23
228:9 229:6
**format**  178:22
180:8,9,14 181:17
215:24 220:7
221:15,16 231:15
**formed**  202:1
**forth**  235:4
**found**  189:25
199:15,19 201:20
202:15 212:10
229:3
**foundation**  218:13
**frame**  217:17,19
**france**  216:22
**franchise**  205:12
**front**  219:2,21
220:16 225:1
**ftp**  179:18
**full**  176:5,15 177:2
177:3
**fully**  176:9 219:23
**further**  173:8
175:6 224:8 230:6
235:11,15

**g**  193:8,10 203:12
**gear**  219:24
**generally**  190:25
**george**  171:16
203:11
**german**  217:12
**gib**  203:12
**give**  201:9 202:11
220:4 221:1,16
224:11,17
**given**  178:23
206:20 210:14
221:10 226:16
235:10
**giving**  231:10
**go**  179:16 180:3
187:20,22 195:5
203:3,6 211:10
215:14 223:23
225:4
**goes**  196:9
**going**  175:17
176:15 178:3
179:23 181:8,8
188:3 191:24
209:9 220:15
232:13
**good**  175:11
189:12,14,17,19
189:22 190:1,5
205:8 212:5,6,9,9
**goods**  210:6
**grant**  176:5,15
223:2
**great**  180:2,5
**greece**  217:4
**greek**  217:1
**groove**  192:19
**gross**  202:4,7,8,9

**h**

**h**  173:24 175:18
220:15 224:24
**hardware**  214:9
**hblaise**  171:12
**heard**  195:16
**hearted**  219:18
**heather**  171:5
175:12
**held**  188:4 205:17
205:18 210:12
**help**  186:10
215:13
**helpful**  209:24
**hereto**  178:12
234:11
**hi**  175:10
**highlighted**
175:24 176:1
**history**  207:21,25
**hit**  181:10,13
226:3,6
**hold**  215:14
**holding**  205:1
**home**  214:24
215:2
**homeowner**
187:16
**hope**  211:25
**host**  223:23
**huh**  175:21 185:4
208:16 215:9

**i**

**identification**
178:11 179:3
220:8
**identified**  184:3
185:5,20,24
222:22,23

[identifying - library]

**identifying**  209:14
**idiot**  193:3
**ii**  168:20 170:6
   173:4 234:20
**illinois**  171:10
**immediately**  231:2
**implied**  181:7
**import**  218:5
   220:23
**imported**  222:7
**include**  221:2
   222:3 226:25
   230:3,18
**included**  217:25
**includes**  230:17
**income**  202:4
   211:5
**indemnify**  203:22
**index**  173:1 174:1
   206:22
**indicated**  202:13
**indicating**  199:22
**individual**  169:11
   215:25
**individually**
   168:15 170:4
   178:8 205:18
   229:5
**information**  174:4
   179:9 195:6
   197:22,25 202:10
   206:11,15 207:1,7
   209:14 231:1
**infringe**  186:24
**infringement**
   186:17 203:18
**infringing**  190:16
   190:17,21 191:8
   192:12,13 205:22
   205:25

**initialed**  234:11
**ink**  234:11
**instruction**  174:12
**instrumentation**
   192:17
**intellectual**  213:15
**interest**  198:18
**interested**  235:16
**interests**  199:23
   199:25 205:17
**internet**  223:12,22
**inversion**  194:10
   194:20
**inversions**  193:5
**irvine**  172:7
**israeli**  217:5,6
**issue**  206:2,7
**issued**  220:24

**j**

**jacobson**  172:4,5
   176:19 177:19
   182:25 190:10
   194:12 209:3
   224:5 228:2,8
   233:7
**jacobsonlawyers...**
   172:11
**japanese**  217:10
**job**  168:23 225:9
   225:14
**join**  176:19 190:10
**jprx**  168:7 169:7

**k**

**k**  178:6 217:11
   218:1
**keep**  213:8
**kind**  176:8 219:18
**kiosk**  219:22
**knock**  189:4 191:5

**knockoff**  182:24
   184:8 189:8,11
   191:1 197:13
**knockoffs**  183:10
   184:3,16 185:7,20
   185:25 189:15,23
   190:1,13,21 192:5
**know**  184:15
   185:8,9 186:1
   188:12 189:2,21
   189:22 190:17
   192:6 193:4 194:1
   194:4,7,17,24
   196:16,21,24,25
   197:2,23 199:1,5
   200:23 203:21,23
   208:20 209:16
   211:21 212:1,8,16
   214:15 215:3
   220:20 222:6,9,11
   226:18 229:13
**knowledgeable**
   168:16 170:5
   178:9
**known**  209:14
**knows**  232:22
**korea**  217:9

**l**

**l**  171:5 216:24,24
**l.a.**  197:1
**lab**  201:11,11
**labrador**  168:7,17
   169:7,14 170:5
   171:14 175:19
   176:4 178:9,21
   198:8,22,24 199:8
   200:15,18 201:8
   201:20,25 202:1,4
   202:14,19 203:4,4
   203:8 204:13,13
   204:19,20 205:5,7

   205:14 210:6,10
   210:13,16 211:1,7
   213:22 214:1,5,9
   214:10 224:25
   227:7,8,12,12
   229:9,11
**labrador's**  199:15
   199:19
**labs**  201:14
**lana**  171:6
**laptop**  214:13,14
**late**  219:23
**law**  171:7,18
   172:6
**lawsuit**  186:19,21
   187:5,9,14 199:2,4
   199:16,20 201:21
   202:16 212:11
   229:4,9
**lawsuits**  187:8
   188:1
**lawyer**  203:20
   208:12
**lead**  190:7
**learned**  229:8
**left**  180:16 203:15
   204:12,23
**legal**  176:17 191:9
**letter**  187:1
**libraries**  183:8,10
   183:12
**library**  168:8
   169:8,15 178:22
   178:24 179:4
   180:25 181:20,25
   206:3,9,13,17,21
   215:21,23 216:16
   216:21 217:15,25
   218:11 219:5,7
   220:9 221:4,6,11
   221:15,17 222:3,8

[library - needed]

222:22,23,23
225:10 227:22
228:1,6 229:24
230:19,25 231:4
231:12,14,16,23
231:24 232:23,23
**license** 182:11
183:23 184:11
223:14,17 230:9
230:10,15
**licensed** 208:2
225:5
**licensing** 183:21
207:25 227:7
231:4,21
**light** 219:18
**likes** 182:3,5,10,17
183:9 184:3,16
185:6,20,25
189:17 190:2,14
192:4 219:8,19
221:22 227:4,13
**link** 179:17 181:10
181:13 182:3,3,5
226:3,6 230:17,18
232:18
**list** 216:15,18,19
**listed** 217:16
**listen** 191:2,16,17
195:15
**listened** 192:11
195:12
**listening** 195:19
195:22,22
**litigation** 182:12
182:13,17
**little** 180:3 219:20
**live** 197:1
**llc** 200:3,4,5,11,15
200:18 201:8
202:2,5,19 203:4

204:14,20 205:15
210:6 211:12,14
211:19,23 212:12
212:14,15,17,21
213:1,4,12 214:6
214:10 227:8,13
229:10
**llp** 171:16
**loaded** 219:24
**logs** 210:10
**long** 187:18
**longer** 184:2,9,15
185:1,18
**look** 188:7 202:6,9
**lori** 168:21 170:10
235:24
**los** 168:18 170:8
171:21 175:1
**lose** 192:16,18,23
194:2 195:5,7,12
195:15,19,22
196:10 197:14
205:25
**lot** 218:19 219:24
222:13
**lyrics** 192:15

**m**

**m** 217:10,10
223:24
**machine** 235:7
**madam** 177:11
**main** 216:24,24
**makers** 198:13
**making** 190:13
**manner** 232:19
**march** 222:18
**marked** 173:19
175:18 178:3,5,5
178:10 188:3,5,16
188:16 224:24

**marketing** 231:4
231:21
**marketplace**
227:9,17
**matters** 203:18
**mc** 209:4
**mean** 177:25
180:13,17 188:23
189:9 201:2 202:7
205:9 210:22
**meaning** 183:6
**means** 203:23
**meet** 218:20,21,23
219:21 222:15,17
**meeting** 219:4
222:14
**melody** 192:14
**membership**
205:17
**mention** 179:20
**met** 175:13 215:7
**michael** 169:11
172:3 188:4 189:1
189:14 190:20
194:10 197:11,12
197:21 198:3,5
203:22,24 204:4
205:2 209:2 215:7
**middle** 193:10
**millennium**
207:14
**minute** 209:18
**mischaracterizes**
179:14
**modoocom** 217:9
**moment** 179:4
**money** 203:20
204:7,16 205:4
210:16 211:10
212:11 229:5,12

**morning** 175:11
**mouse** 200:10
**move** 193:18,21
**moved** 195:1
**moving** 193:15
**mp3/320/44.1.**
181:15
**music** 168:4,7
169:4,7,14 181:15
182:8 183:3,8
189:10 191:11,12
195:13,16 196:8
197:10 200:24
201:1,4,5,7 206:2
206:7 207:11
208:1 210:7,9
214:1,6 216:22
217:2 223:14
224:25 230:21
**musical** 193:17,21
195:2 200:11,19
213:5
**mwf** 168:6 169:6

**n**

**n** 217:12,12
223:24
**nab** 219:14,22
**name** 197:11
199:15,19 206:20
217:1,3,6 235:19
**narrative** 232:4
**nassar** 171:6
**national** 219:14
**nature** 184:24
187:7,8
**nbcuniversal**
196:8,22,24
**necessarily** 213:11
**necessary** 179:2
**needed** 177:6,14
187:15 231:19

[needs - pertains]

| | | | |
|---|---|---|---|
| **needs**  231:19 | 206:5 207:23 | **operated**  201:5 | **pagter**  203:12 |
| **neither**  235:15 | 209:3 218:13 | **operating**  198:16 | **paid**  205:11 229:4 |
| **net**  202:7 | 223:9 228:2,8,9 | 201:10 | 229:9,11 |
| **new**  180:9,9,14,14 | 229:6 | **opinion**  189:19 | **paragraph**  176:11 |
| 180:16 186:21 | **offer**  180:7 | 191:10 194:15 | 179:23,24 181:9 |
| 194:8 199:16,20 | **office**  214:21 | **orally**  195:9,9 | 181:12,23 220:19 |
| 201:20,21,23,25 | 216:25 | **order**  180:11,18 | 224:23 225:3,6,7 |
| 202:16 203:11 | **oh**  188:9 189:4 | 188:7,12 233:8,10 | 226:1,1 227:21 |
| 210:4,7,7 212:11 | 210:18,21 218:3 | **organizations** | 229:22 231:17 |
| 216:16 217:8,15 | 220:6 225:8 | 208:3 209:15 | **part**  209:7 210:9 |
| 217:25 219:7 | **ohiri**  171:17 173:7 | **organized**  180:11 | **particular**  199:22 |
| 220:7,7,8,9 221:3 | 176:17 179:14 | 180:18 | 223:18 224:16 |
| 221:3,16,17 | 189:20 190:9 | **original**  223:24 | **particularly** |
| 222:22 229:4 | 191:9,21 194:14 | 235:12 | 223:11 |
| **newly**  216:12,21 | 206:5 207:23 | **originally**  178:23 | **parties**  186:24 |
| 218:6,10 | 208:14,16 215:12 | **outside**  209:6 | 190:21 204:18 |
| **nitschke**  171:4 | 215:14,19 218:16 | **outstanding** | 224:18 |
| **noel**  168:15 170:4 | 223:13 224:4 | 203:17 211:1 | **party**  186:23 |
| 173:3,14 175:4 | 228:9,21 229:6,20 | **owe**  203:17,20 | 187:5 188:1 194:8 |
| 178:8 188:24 | 230:3,6 233:6 | 213:6 | 206:8 235:17 |
| 229:11 234:8,20 | **okay**  178:3 179:5 | **owned**  205:5 | **pay**  203:9,10 |
| **north**  171:8 | 179:11 183:19 | 211:7 | 214:21 215:1 |
| **noted**  233:12 | 184:25 185:14 | **owner**  198:8 | **payment**  212:2 |
| 234:10 | 188:15 189:6 | **owners**  205:14 | **payments**  204:4 |
| **notes**  193:13 | 194:4 195:9 196:5 | **ownership**  198:18 | **peers**  190:23 |
| 217:11,11 | 198:7 200:1 | 199:8 206:24,25 | 191:17,18 192:8 |
| **notice**  207:16 | 201:25 202:10,13 | 213:8,10 | **penalty**  234:8 |
| **number**  173:12,20 | 204:9 208:8 | **owns**  214:14 | **pending**  210:22 |
| 183:8 196:20 | 209:13,17 210:2 | | 228:14,20 |
| 197:5 206:22 | 210:25 211:4 | **p** | **people**  195:24 |
| 223:20 | 214:5 215:12,20 | **p**  173:13 178:4,7 | **percent**  198:21 |
| | 216:20 217:15 | 178:10 203:12 | **percentage**  206:24 |
| **o** | 220:15,21 224:2,6 | 216:24 217:23 | 206:25 |
| **o**  216:24,24 217:10 | 226:15 228:23 | 218:1,2 226:1 | **performance** |
| 217:10,10,10,12 | 229:2 230:7,14 | 229:21 | 208:3 209:15 |
| 217:12,12 223:24 | 232:6 | **p.c.**  171:4 | **perjury**  234:9 |
| **oath**  175:5 | **old**  210:9,9 | **p.m.**  170:9 233:12 | **permit**  215:4 |
| **object**  177:19 | **omnis**  223:24 | **pad**  200:10 | **person**  168:16 |
| **objection**  176:17 | **once**  210:5 | **page**  168:11 | 170:5 178:8 |
| 179:14 182:25 | **ones**  180:24 | 173:12,20 175:25 | **pertains**  235:11 |
| 189:20 190:9 | | **pages**  168:25 | |
| 191:9,21 194:12 | | | |

Veritext Legal Solutions
866 299-5127

[peter - reference]

peter   172:14
   173:15 178:23
   179:6 181:24
   217:24 218:23
   221:14
phone   196:20
   197:5
phonetic   211:25
physical   214:8,12
   224:12,17
piece   182:8
place   235:4
plaintiff   168:5
   169:5 170:7 171:3
   175:12
play   195:25
   196:10 197:9
played   196:8
playing   195:24
please   177:10
   179:25 181:12
   185:3,17 186:13
   203:1 228:20
   229:17
point   178:19
   221:24 226:22
political   194:8
possibilities   231:5
possibility   184:23
possible   182:12,13
   182:16 184:20
potential   224:17
   224:18 225:4
practice   190:24
prepare   210:4
presence   223:12
present   172:13
pretend   193:3
pretty   183:5
previous   177:24
   222:22 232:8

previously   173:19
   175:17 224:23
   226:16
prior   178:6 186:19
   210:12 235:5
probably   181:21
   208:15
procedure   184:14
proceedings   235:3
   235:5,7,13
process   183:20
processing   231:15
professional
   207:21,25
progression
   192:15,20,23
   193:4,16 194:21
   194:22
property   213:15
   214:12
pros   183:15
   207:22 209:15
prove   223:1
provide   197:25
   203:1 216:15
   219:20
provided   225:15
   230:22 232:8
providing   210:6
provision   220:22
pty   168:4 169:4
publisher   206:24
   207:21 208:2
   210:14 212:2
   217:1,4,5,10,12
   220:25 224:11,16
   225:10 232:22,22
publishers   182:18
   186:6 206:8,24
   209:12 210:5,13
   210:17,18,20

211:2,5,6,16
   216:13,16,20
   217:16
publishing   183:3
   183:15 208:23
   212:13 213:9,19
   214:2,6 217:3,7
   220:16
pulled   223:21
purchase   202:22
   214:20
purchased   202:17
   202:18,20 204:20
pursuant   211:4
put   176:22,25
   193:11 198:24
   207:1,7 223:25

q

qualify   227:4,9,13
   227:18
quality   180:12,19
question   176:3,7,8
   176:10 177:11,24
   182:20 185:3,17
   186:3,11 189:24
   199:7,24 204:17
   209:22 210:1,23
   211:21 213:18
   214:17 215:5
   221:5 227:11,14
   228:14,15,16,20
   228:22,24 229:1
   229:15,20 230:7
   230:11 232:2,3,11
questions   209:19
   230:6 233:5,6
quite   189:10
   203:14
quote   176:16

r

r   203:12 217:11
raena   171:17
read   177:10,12
   179:24 181:12
   220:19 234:9
really   223:19
reason   176:22,25
   221:25
recall   176:7
receive   225:11
received   186:22
   187:1 196:12,13
   207:10
receives   225:13
recess   209:21
recognize   188:11
recognized   224:10
recollection   184:6
   192:4
record   177:12,22
   215:15,16 235:6,9
recording   213:16
recordings   186:24
   200:12,20 213:5
   220:24 221:1
   225:13 231:16
records   197:24
   201:11,12,15,16
recovering   184:23
red   201:11 220:1
redefined   178:21
redesign   215:23
   221:6,11
redesigned   215:21
   216:12 221:13
refer   179:2 220:15
   221:25
reference   174:8
   219:18 220:23

[references - sense]

references 209:6
referencing
  224:22 226:25
  228:13 229:25
referred 228:16
referring 180:1
  209:7 229:21
refers 228:18
reflected 192:18
refresh 184:6
  192:3
regarding 177:6
  177:15 184:7
  220:5
registered 205:10
reimburse 203:24
related 176:5
  189:12
relating 203:18
  208:8
relation 196:2,3
relative 235:16
relied 191:13
relying 198:5
remainder 227:20
remained 180:21
  180:25,25
remastered
  221:13
remember 175:22
  178:17 184:4
  188:13 191:25,25
  192:2,7 208:5,6
  217:2,2,6 219:21
removal 182:3
  183:21 208:9,18
  219:19
remove 179:7,12
  181:1,3,4,6,25
  183:12 184:22
  215:24 216:2,4

225:5 232:8
removed 180:15
  180:20 183:9
  184:17 185:6
  207:20 208:1
  216:9 220:10,12
  221:23,24 222:2
  230:22 232:15
removing 182:5
  182:10
renamed 181:21
rendering 210:5
rent 214:21 215:1
rental 187:11
renter 187:11
repeat 206:4,14
repertoire 183:22
replace 231:24
replacement
  222:21
reported 168:21
reporter 170:10
  177:11 178:11
  180:4 195:10
  235:2
represent 225:11
request 188:21
  197:15 207:13,16
requested 174:4,8
  197:10,12,13
  208:18 223:1
  235:14
require 218:5
required 220:24
requires 225:4
resolve 187:22
resolved 187:20
respond 218:17
responded 218:14
  222:12

responding 188:23
  228:17
response 188:19
responsibility
  231:3
responsive 197:19
result 203:25
resumed 173:6
  175:8
retired 196:23
returns 215:4
reverse 188:6
reversed 204:17
  204:17
review 184:5
  185:14 186:2
  192:5 195:13
  197:24 198:2
  199:6 208:11
  214:16 215:4
  226:21 229:14,17
  235:13
reviewed 198:3
reviewing 186:10
revoke 232:8
rich 196:1,6,7,20
right 180:1 188:15
  192:22 193:2
  208:6 217:20
  222:12 223:2
  225:15 226:13
  227:10 231:25
rights 176:5,15
  177:2,3 186:24
  208:3 209:15
  213:9,19
rihanna 189:5,12
rohiri 171:23
ross 171:16 203:12
rough 233:9,10

roundabout
  217:22
royalties 183:24
  184:2,9,13,16,23
  185:1,18,24
royalty 204:4
rpr 168:21 170:10
  235:24
rules 175:14
runs 196:7

s

s 217:11,12 223:24
s.o.s. 189:5
safe 201:19
sakura 217:10
sale 204:12
sat 219:25
saying 187:2 213:8
  222:12 230:8
  231:12 232:25
says 178:6 179:12
  179:13 212:2
  226:6,13 227:21
  229:23
scinta 168:21
  170:10 235:24
secretary 205:11
section 195:1,2
see 168:11 181:1,5
  181:5,7,9,14,23
  182:2 188:16
  189:3 193:21
  225:3,8 226:7,11
seeking 191:5
sell 200:10
send 216:12
  217:15
sending 231:13
  232:24
sense 182:15

Page 11

[sent - talk]

sent   178:19 205:20
    216:16,21 217:8
    217:20,23 218:7,9
    221:4,18 228:5
    230:8 232:19,21
sentence   228:16
    228:17,18,18
services   210:5
sesac   183:16,20
    184:1,7 185:1,12
    186:8
set   180:9,14
    181:16 235:4
sets   180:16
settlement   187:24
shares   198:24
sheet   195:13,16
sherwood   197:11
    197:12
sherwood's
    197:21
shock   201:18
shorthand   170:10
    235:1,7
show   175:17 178:3
    179:11 188:3
    219:22
sic   188:24
signature   189:3
    235:23
significance   223:8
similar   190:15
similarity   182:8
simply   192:19
sit   177:5,13 194:3
    194:6,7 205:24
site   179:18
sitting   205:4
slower   180:3
small   187:9

songs   185:19,24
sonoton   217:12
soon   217:9 218:24
    219:1
sorry   175:25
    188:25 189:4
    210:18,21 212:14
    218:3 229:10
sos   189:12
sound   182:3,5,7
    182:10,17 183:9
    184:3,8,16 185:6
    185:20,25 186:23
    189:17 190:2,14
    190:20 191:1,5
    192:4 193:13
    197:13 200:12,19
    213:5,15 215:25
    216:5,5,7,10 219:8
    219:9,11,19 220:5
    220:10,12 221:19
    221:22 222:4
    227:1,4,9,13,18
sounds   190:15
south   170:7
    171:19
space   214:21
speak   219:10
specifically   179:21
    219:6 230:1
speculation
    194:14 228:3
spider   168:7 169:7
    169:14 178:21,22
    179:3,24 180:2,5
    180:15 201:11
    206:3,9,13,17
    210:11 215:21
    216:12 218:6
    220:8,9 221:3,6,17
    222:3,7,22,23

230:25 231:4
spreadsheet   201:4
    205:20 206:12,16
    206:19 207:2,4,8
    230:21
sq   209:4
stamped   173:16
standing   205:8
start   210:21,22
started   200:7,16
    210:5
starting   179:24
starts   181:9 226:3
state   176:4 205:11
    232:7,10,14,17
    234:16 235:2
statement   190:13
statements   186:6
    186:7
states   168:1 169:1
stations   196:9
status   196:25
stay   225:12
stock   198:17,18,20
    199:8
stop   220:2
street   170:7
    171:19
strike   188:25
    193:25 207:11
    212:15 216:2
stuart   203:12
studios   196:8
sub   182:18 186:6
    206:8 207:21
    208:2,23 209:12
    210:5,13,14,17,18
    210:20 211:2,5,6
    211:16 212:2,13
    216:13,16,20
    217:1,4,5,10,12,16

220:16 224:11,16
    225:10 232:22
subcontractor
    187:14
subjective   212:8
sublicensed   223:4
submitted   180:6
    191:12
subscribed   235:19
success   180:2,6
sued   186:16
suffered   203:25
suggested   179:6
    182:18
suggesting   176:20
    184:11
suite   170:7 171:9
    171:20 172:8
supervisor   189:10
    197:10
supervisors
    191:11
sure   175:24
    186:12 189:11,24
    194:25 197:17
    198:17 201:17
    202:6 204:2 209:8
    216:8 226:17
sworn   235:6
synchronization
    177:7,16

t

t   203:12 217:12
take   193:11
takedown   207:16
taken   170:6
    207:12 209:21
    235:3
talk   209:18 218:20
    222:13

[talked - waiting]

talked   220:7
    222:24
tax   205:12 215:4
technical   192:25
television   196:9
tell   176:13,14
    182:22 184:22
    188:21 199:21
    211:17,18,19,22
    231:15
telling   181:24
    182:2 212:4
    221:21
tenant   187:12
tendered   197:18
term   183:5 209:1
    225:16
terms   192:25
    211:4 212:13
territories   216:23
testified   175:6
    183:7,14 192:1
    201:3 204:3,10,19
    204:23 205:1
    215:20 223:6
    224:10
testifying   235:6
testimony   179:5
    179:15 183:1
    189:25 191:15
    216:9 234:12
    235:9
thank   177:21
    185:22 195:11
    228:12
thanks   210:3
thing   183:5,6
think   176:9,10
    184:19,19 186:12
    186:25 187:19,25
    192:13 196:16,19

197:11 200:8,17
    201:16 203:16,16
    205:16,19 208:13
    210:15 214:13
    216:1,8 217:2,14
    219:16,25 227:19
    227:19
third   186:23,24
    190:21 206:8
    224:18
thought   230:20
time   182:22
    192:10 205:21
    212:10 217:8,11
    217:17,17,19,20
    220:13 221:12
    228:5 229:3,8
    233:12 235:4
times   223:20
title   196:24,25
    206:21 208:22,25
    209:6,8 221:19
titles   221:20
today   177:5,13
    178:4 188:4
    205:24 215:7,8
told   179:6 185:1
top   173:13 178:6
    188:14 192:17
    193:10,11
totality   221:15
traceable   213:14
    213:17
track   204:1
    205:21,25
transaction
    204:24
transcribed   235:8
transcript   234:9
    235:9,12,14

transfer   231:1
transferred   199:8
    199:14,18 202:14
translate   223:3
transpose   195:16
triad   193:8
trial   187:20,22
true   234:12 235:9
trust   198:19,20,25
    199:9,12 205:18
try   181:17,18
trying   200:10
tuesday   168:19
    170:9 175:1
tune   182:9 192:16
    195:1,2,3
tustin   172:9
two   199:25 201:17
    219:25
type   206:11
    209:13 214:12

**u**

u   217:11
u.s.   216:22
uh   175:21 185:4
    208:16 215:9
unaware   207:18
undersigned   235:1
understand
    175:15 177:25
    182:7,24 184:13
    188:12 190:24
    199:24 232:2
understanding
    218:9 220:11,22
    221:2 224:20,21
understood   201:3
undertake   190:19
    192:10 195:18,21
undertook   191:19
    191:25 195:4

united   168:1 169:1
upper   171:8
usable   223:11,19
use   180:24 181:20
    187:2 190:22
    223:23,25 227:22
    229:24 231:3,7
user   177:7,17
users   206:8 224:18
utilize   220:25

**v**

vague   177:19
    190:9 191:21
    206:5 207:23
    209:3 223:9 228:9
    229:6
valid   178:24 179:3
various   210:11
vectors   231:21
venues   231:20
verbally   197:16
version   194:10
voice   192:17
    193:16
voiced   193:12
voicing   193:9,14
voicings   193:6,7
    193:19,23
volume   168:20
    170:6 173:4
    234:20
vote   198:15
vs   168:6 169:6,13

**w**

w   171:17
wacker   171:8
wait   215:14 220:2
    229:10
waiting   219:24

Veritext Legal Solutions
866 299-5127

[wallach - zealand]

**wallach**  203:12

**want**  188:7 190:24
212:3 225:25
230:14 233:10

**wanted**  199:21
230:9

**way**  188:23 194:8
224:1

**we've**  180:7

**web**  223:12

**webb**  168:15
170:4 173:3,15
175:4 178:8
188:24 196:1,6,7
198:19,20,25
199:9,11 229:11
234:8,20

**webb's**  196:20

**website**  223:7,8,15
223:18,19

**websites**  223:10

**wells**  212:18,20,22
212:24

**western**  168:2
169:2

**whereof**  235:18

**wife**  199:13

**wire**  211:16,17,18
211:19,22,23
212:4,7

**wired**  211:11,12
211:13,14 212:11
212:12

**withholding**  204:3

**witness**  173:2
176:20 177:18,20
179:17 191:11,22
209:4,22 215:13
218:14 223:1,10
228:10,23 230:1,5
235:18

**witnesses**  235:5

**word**  181:1,4,6,7
222:7

**work**  190:21 191:4
214:24

**worked**  191:12

**working**  187:15
215:1

**write**  189:11
190:15

**written**  210:7

**wrote**  198:4

**y**

**yeah**  176:8 185:10
187:13 189:24
190:3 203:7 209:4
220:3 224:3

**year**  198:22 219:1
219:15

**yep**  225:2

**yesterday**  175:13
175:15,18 176:2
179:5 183:7,14
199:23 201:3
202:13 204:3,10
223:6 224:10

**z**

**zealand**  186:21
194:8 199:16,20
201:21 202:16
203:11 212:11
229:4

Page 14

Federal Rules of Civil Procedure

Rule 30


(e) Review By the Witness; Changes.

(1) Review; Statement of Changes. On request by the deponent or a party before the deposition is completed, the deponent must be allowed 30 days after being notified by the officer that the transcript or recording is available in which:

(A) to review the transcript or recording; and

(B) if there are changes in form or substance, to sign a statement listing the changes and the reasons for making them.

(2) Changes Indicated in the Officer's Certificate. The officer must note in the certificate prescribed by Rule 30(f)(1) whether a review was requested and, if so, must attach any changes the deponent makes during the 30-day period.


DISCLAIMER: THE FOREGOING FEDERAL PROCEDURE RULES ARE PROVIDED FOR INFORMATIONAL PURPOSES ONLY. THE ABOVE RULES ARE CURRENT AS OF APRIL 1, 2019. PLEASE REFER TO THE APPLICABLE FEDERAL RULES OF CIVIL PROCEDURE FOR UP-TO-DATE INFORMATION.

VERITEXT LEGAL SOLUTIONS
COMPANY CERTIFICATE AND DISCLOSURE STATEMENT

Veritext Legal Solutions represents that the foregoing transcript is a true, correct and complete transcript of the colloquies, questions and answers as submitted by the court reporter. Veritext Legal Solutions further represents that the attached exhibits, if any, are true, correct and complete documents as submitted by the court reporter and/or attorneys in relation to this deposition and that the documents were processed in accordance with our litigation support and production standards.

Veritext Legal Solutions is committed to maintaining the confidentiality of client and witness information, in accordance with the regulations promulgated under the Health Insurance Portability and Accountability Act (HIPAA), as amended with respect to protected health information and the Gramm-Leach-Bliley Act, as amended, with respect to Personally Identifiable Information (PII). Physical transcripts and exhibits are managed under strict facility and personnel access controls. Electronic files of documents are stored in encrypted form and are transmitted in an encrypted fashion to authenticated parties who are permitted to access the material. Our data is hosted in a Tier 4 SSAE 16 certified facility.

Veritext Legal Solutions complies with all federal and State regulations with respect to the provision of court reporting services, and maintains its neutrality and independence regardless of relationship or the financial outcome of any litigation. Veritext requires adherence to the foregoing professional and ethical standards from all of its subcontractors in their independent contractor agreements.

Inquiries about Veritext Legal Solutions' confidentiality and security policies and practices should be directed to Veritext's Client Services Associates indicated on the cover of this document or at www.veritext.com.

# EXHIBIT C

BLAISE & NITSCHKE, P.C.

123 N. Wacker, Suite 250
Chicago, Illinois 60606
office: 312.448.6602
fax: 312.803.1940

HEATHER L. BLAISE
Licensed in Illinois and California

THOMAS J. NITSCHKE
Licensed in Wisconsin and Illinois

HEATHER L. BLAISE
PARTNER
HBLAISE@BLAISENITSCHKELAW.COM

May 5, 2021

**VIA E-MAIL:** rosnerlaw@earthlink.net
Douglas Rosner

Re:     Beatbox Music Pty, Ltd. v.
        Labrador Entertainment Inc.
        et al.; Case No. 2:17-cv-6109

Dear Counsel,

In the spirit of L.R. 37-1 - 37-4 (the "Local Rules"), please accept this correspondence with regard
to the above-captioned matter. The Local Rules require several steps in advance of a court's ruling
on discovery-related motions, such as our anticipated Motion to Compel Discovery ("Motion").
Please advise as to your position as soon as possible, so we may proceed accordingly.

**Meet and Confer Requirement**

L.R. 37-1 requires counsel for the parties to confer to attempt to eliminate discovery disputes. The
parties had scheduled a teleconference for April 29, 2021 and then rescheduled to April 30, 2021
at your request for this purpose, then rescheduled for May 4, 2021 on account of your actions, as
further detailed below.

We first received your responses to the most recent discovery requests on April 8, 2021, via mail.
At some time thereafter, we received your First Amended Labrador Entertainment, Inc. D/B/A
Spider Cues Music Library's Responses to Plaintiff's First Set of Interrogatories via mail. Then
during a teleconference on April 16, 2021, you acknowledged deficiencies with your responses
and requested two (2) more weeks to provide complete discovery, further stating that you would
have no time to meet and confer on this topic until April 29, 2021, which you cancelled. Rather
than prepare your next set of amended responses in a timely fashion, you turned your attention to
the ill-advised joint stipulation seeking a protective order with an attorneys' eyes only designation,
which you sent on April 26, 2021.

Then, at 8:42 PST on the evening of April 29 – via email – you provided amended discovery with
dozens of new pages to review, mere hours before our scheduled conference to discuss discovery
disputes. Your late submission, in tandem with your bevy of bad faith objections (as outlined
below) show a lack of respect for Judge Fitzgerald's request that the Parties and counsel "need to
focus on the merits and not procedural sideshows." It is entirely improper to expect that your
amendment, submitted so close to the discovery teleconference, would give ample time for review.
Thus, our April 30, 2021 teleconference had to be rescheduled for May 4, 2021.  Unfortunately, I
had a last minute emergency which required my attention on May 4, 2021.  As a result, we have
now rescheduled to May 11, 2021 at 1:00 p.m. PST.

**Letter and Joint Stipulation Requirements**

BLAISE & NITSCHKE, P.C.

Beatbox v. Labrador, et al.
May 5, 2021
Page 2

## Outstanding Disputes

Pursuant to Federal Rule of Civil Procedure 37(a)(4), evasive or incomplete disclosures, answers, or responses must be treated as failures to disclose, answer, or respond. It appears that you have provided evasive and incomplete disclosures, answers, and responses to several discovery requests. The statutory authority and caselaw support our position. Below is a list of the outstanding discovery requests that remain in dispute; Plaintiff does not waive any objections omitted below and caused by the gamesmanship exhibited in your responses to outstanding discovery requests.

Regarding the amended discovery responses submitted after business hours on April 29, 2021, any and all answers to interrogatories, documents produced, and withdrawn objections are accepted and appreciated. Any additional objections are untimely, made without a valid, good-faith cause, and are thus waived; to any such extent, these amended discovery responses are not to be considered. *Desilva v. Allergan United States*, No. 8:19-cv-01606-JLS (JDEx), 2020 U.S. Dist. LEXIS 188545, at *19 (C.D. Cal. Sep. 1, 2020). Plaintiff stands by its responses to any and all objections that remain.

## First Amended Labrador Entertainment, Inc. D/B/A Spider Cues Music Library's Responses to Plaintiff's First Set of Interrogatories

Untimely objections made without a valid, good-faith cause are waived. *Desilva v. Allergan United States*, No. 8:19-cv-01606-JLS (JDEx), 2020 U.S. Dist. LEXIS 188545, at *19 (C.D. Cal. Sep. 1, 2020). This amendment is not to be considered.

## Labrador Entertainment, Inc. D/B/A Spider Cues Music Library's Responses to Plaintiff's First Set of Interrogatories

Your response to request 1 contains several bad faith objections. First, your objection that the interrogatory is "overbroad, oppressive and harassing as stated" is baseless and improper. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal. Oct. 12, 2016). Second, your citation to *Safeco* is inapplicable improper, as the case is explicitly addressing interrogatories that contain separate subparts addressing unique requests for admission on unrelated topics. *Safeco Ins. Co. of Am. v. Rawstron*, 181 F.R.D. 441, 446 (C.D. Cal. May 15, 1998). Your objection that the interrogatory is "vague and ambiguous" as to time is patently false, as all interrogatories are bound (unless otherwise stated) by Instruction K as you indicated below. Finally, your response improperly asserts attorney-client privilege without the inclusion of a privilege log. FRCP 26(b)(5); *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *9 (C.D. Cal. Oct. 12, 2016).

Your response to request 2 contains several bad faith objections. First, you object that the request is propounded to an entity "which does not 'believe' facts." This is plainly an evasive answer,

BLAISE & NITSCHKE, P.C.

Beatbox v. Labrador, et al.
May 5, 2021
Page 3

impermissible under FRCP 37. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx),
2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal. Oct. 12, 2016). Second, your objection that the
request is "vague and ambiguous as to which 'allegations' … is/are being referred to" is similarly
evasive and improper. *Id*. Finally, your response improperly asserts attorney-client privilege
without the inclusion of a privilege log. FRCP 26(b)(5); *Ecojet, Inc. v. Luraco, Inc.*, No. SACV
16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *9 (C.D. Cal. Oct. 12, 2016).

Your response to request 3 contains several bad faith objections. First, your objection that the
interrogatory is "oppressive and harassing" is baseless and improper. *Ecojet, Inc. v. Luraco, Inc.*,
No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal. Oct. 12,
2016); *Banuelos v. City of San Bernardino*, No. EDCV 13-736-GW (KKx), 2017 U.S. Dist. LEXIS
198247, at *14 (C.D. Cal. Dec. 1, 2017). Your objection that the interrogatory is "vague and
ambiguous" as to time is patently false, as all interrogatories are bound (unless otherwise stated)
by Instruction K as you indicated below. Your objection that the interrogatory is "vague and
ambiguous" as to the term "any agreements" is improper, as agreements is a common term with a
plain meaning. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist.
LEXIS 192169, at *11 (C.D. Cal. Oct. 12, 2016). Finally, your citation to *Sanders* does not
properly support your objection; *Sanders* concerned a request to produce 31 semi-annual reports
conducted on the Los Angeles County Sheriff's Department by an outside monitor which spanned
beyond the time frame of the complained-of civil rights violation. *Sanders v. L.A. County*, 2018
U.S. Dist. LEXIS 225237, (C.D. Cal. Nov. 16, 2018). Nothing in that opinion stands for the notion
that an interrogatory (or even request for production) spanning a (nearly) 20-year period is
overbroad by nature; in fact, the same opinion acknowledges that the same reports were produced
in parallel case to the one cited.

Your response to request 4 contains several bad faith objections. First, your objection that the
interrogatory is "vague and ambiguous" as to time is patently false, as all interrogatories are bound
(unless otherwise stated) by Instruction K as you indicated in your response to request 3. *Ecojet,
Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11
(C.D. Cal. Oct. 12, 2016). Second, your citation to *Safeco* is inapplicable and improper, as the case
is explicitly addressing interrogatories that contain separate subparts addressing unique requests
for admission on unrelated topics. *Safeco Ins. Co. of Am. v. Rawstron*, 181 F.R.D. 441, 446 (C.D.
Cal. May 15, 1998).

Your response to request 5 contains several bad faith objections. First, your objection that the
interrogatory is "overbroad in scope, oppressive, burdensome and harassing as stated" is baseless
and improper. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist.
LEXIS 192169, at *6-11 (C.D. Cal. Oct. 12, 2016). Your objection that the request is "vague,
ambiguous and unintelligible" is also improper, as "gross earnings" is plainly applicable to entities.
*Id*. Additionally, your response improperly asserts attorney-client privilege without the inclusion
of a privilege log. FRCP 26(b)(5); *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx),
2016 U.S. Dist. LEXIS 192169, at *9 (C.D. Cal. Oct. 12, 2016). Further, this interrogatory plainly

 BLAISE & NITSCHKE, P.C.

Beatbox v. Labrador, et al.
May 5, 2021
Page 4

seeks relevant information, considering the claims at issue. *Ocean Garden Products v. Blessings, Inc.*, No. 8:20-mc-00006-JVS-KESx, 2020 U.S. Dist. LEXIS 62309, at *4-5 (C.D. Cal. Apr. 3, 2020). Your citation to *East Iowa Plastics* is plainly a bad-faith attempt to misrepresent an inapplicable opinion. *East Iowa Plastics* did not concern fraudulent transfer, but instead concerned trademark infringement for a trademark in the poultry business; the Court ruled that the financial records for Defendant's separate business (entirely associated with the purchase of old homes) were not discoverable because they could not be relevant to damages for the alleged trademark infringement. This case is not relevant to a case regarding fraudulent transfer.

Your response to request 6 contains several bad faith objections. First, your objection that the interrogatory is "overbroad in scope, oppressive, burdensome and harassing as stated" is baseless and improper. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *6-11 (C.D. Cal. Oct. 12, 2016). Second, your objection that the interrogatory is "vague and ambiguous" as to time is patently false, as all interrogatories are bound (unless otherwise stated) by Instruction K as you indicated in your response to request 3. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal. Oct. 12, 2016). Further, your objection that the interrogatory is "vague and ambiguous" as to "all copyrighted works" is improper. *Id*. Additionally, your response improperly asserts attorney-client privilege without the inclusion of a privilege log. FRCP 26(b)(5); *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *9 (C.D. Cal. Oct. 12, 2016).

Your response to request 7 contains several bad faith objections. First, your objection that the interrogatory is "overbroad in scope, oppressive, burdensome and harassing as stated" is baseless and improper. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *6-11 (C.D. Cal. Oct. 12, 2016). Second, your objection that the interrogatory is "vague and ambiguous" as to time is patently false, as all interrogatories are bound (unless otherwise stated) by Instruction K as you indicated in your response to request 3. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal. Oct. 12, 2016). Further, your objection that the interrogatory is "vague and ambiguous" as to "any entities" is improper. *Id*. Finally, this interrogatory plainly seeks relevant information, considering the claims at issue. *Ocean Garden Products v. Blessings, Inc.*, No. 8:20-mc-00006-JVS-KESx, 2020 U.S. Dist. LEXIS 62309, at *4-5 (C.D. Cal. Apr. 3, 2020).

Your response to request 8 contains several bad faith objections. First, this interrogatory plainly seeks relevant information, considering the claims at issue. *Ocean Garden Products v. Blessings, Inc.*, No. 8:20-mc-00006-JVS-KESx, 2020 U.S. Dist. LEXIS 62309, at *4-5 (C.D. Cal. Apr. 3, 2020). Second, your objection on the basis of privacy is improper. *Desilva v. Allergan United States*, No. 8:19-cv-01606-JLS (JDEx), 2020 U.S. Dist. LEXIS 188545, at *10-11 (C.D. Cal. Sep. 1, 2020).

BLAISE & NITSCHKE, P.C.

Beatbox v. Labrador, et al.
May 5, 2021
Page 5

Your response to request 9 is misplaced; you purport to quote the request, stating "all capital assets, financial institutions" but this does not appear in request 9. You have failed to exercise due diligence in regard to this response.

Your response to request 10 is misplaced; you purport to quote the request, stating "'YOUR transactions,' 'asset transfers,' and 'any other third party'" but this does not appear in request 10. You have failed to exercise due diligence in regard to this response.

Your response to request 11 contains several bad faith objections. First, your objection that the interrogatory is "overbroad in scope, oppressive, burdensome and harassing as stated" is baseless and improper. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *6-11 (C.D. Cal. Oct. 12, 2016). Second, your objection that the interrogatory is "vague and ambiguous" as to time is patently false, as all interrogatories are bound (unless otherwise stated) by Instruction K as you indicated in your response to request 3. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal. Oct. 12, 2016). Further, your objection that the interrogatory is "vague and ambiguous" as to "'YOUR transactions,' 'asset transfers,' and 'any other third party'" is improper. *Id*. Additionally, this interrogatory plainly seeks relevant information, considering the claims at issue. *Ocean Garden Products v. Blessings, Inc.*, No. 8:20-mc-00006-JVS-KESx, 2020 U.S. Dist. LEXIS 62309, at *4-5 (C.D. Cal. Apr. 3, 2020). Finally, the request does not contain multiple subparts, as it requests a single response (transactions) and thereafter provides an example of the requested information.

Your response to request 12 contains several bad faith objections. First, your objection that the interrogatory is "vague and ambiguous" as to time is patently false, as all interrogatories are bound (unless otherwise stated) by Instruction K as you indicated in your response to request 3. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal. Oct. 12, 2016). Further, your objection that the interrogatory is "vague and ambiguous" as to "'identify … all purchase agreements', and 'the assets'" is improper. *Id*. Finally, this interrogatory plainly seeks relevant information, considering the claims at issue. *Ocean Garden Products v. Blessings, Inc.*, No. 8:20-mc-00006-JVS-KESx, 2020 U.S. Dist. LEXIS 62309, at *4-5 (C.D. Cal. Apr. 3, 2020).

Your response to request 13 contains several bad faith objections. First, your objection that the interrogatory is "vague and ambiguous" as to time is patently false, as all interrogatories are bound (unless otherwise stated) by Instruction K as you indicated in your response to request 3. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal. Oct. 12, 2016). Further, your objection that the interrogatory is "vague and ambiguous" as to "'identify … all purchase agreements', and 'since inception of the New Zealand claim'" is improper. *Id*. Additionally, this interrogatory plainly seeks relevant information, considering the claims at issue. *Ocean Garden Products v. Blessings, Inc.*, No. 8:20-mc-00006-JVS-KESx, 2020

BLAISE & NITSCHKE, P.C.

Beatbox v. Labrador, et al.
May 5, 2021
Page 6

U.S. Dist. LEXIS 62309, at *4-5 (C.D. Cal. Apr. 3, 2020). Lastly, your objection on the basis of FRCP 33(a)(1) is baseless and without merit.

Your response to request 14 contains several bad faith objections. First, your objection that the interrogatory is overbroad in scope is baseless and improper. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *6-11 (C.D. Cal. Oct. 12, 2016). Second, your objection that the interrogatory is "vague and ambiguous" as to time is patently false, as all interrogatories are bound (unless otherwise stated) by Instruction K as you indicated in your response to request 3. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal. Oct. 12, 2016). Further, your objection that the interrogatory is "vague and ambiguous" as to "any other lawsuits" is improper. *Id*. Additionally, this interrogatory plainly seeks relevant information, considering the claims at issue. *Ocean Garden Products v. Blessings, Inc.*, No. 8:20-mc-00006-JVS-KESx, 2020 U.S. Dist. LEXIS 62309, at *4-5 (C.D. Cal. Apr. 3, 2020).

Your response to request 15 contains several bad faith objections. First, your objection that the interrogatory is overbroad in scope is baseless and improper. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *6-11 (C.D. Cal. Oct. 12, 2016). Second, your objection that the interrogatory is "vague and ambiguous" as to time is patently false, as all interrogatories are bound (unless otherwise stated) by Instruction K as you indicated in your response to request 3. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal. Oct. 12, 2016). Further, your objection that the interrogatory is "vague and ambiguous" as to "the terms 'agreements' and 'through the date of production'" is improper. *Id*. Additionally, this interrogatory plainly seeks relevant information, considering the claims at issue. *Ocean Garden Products v. Blessings, Inc.*, No. 8:20-mc-00006-JVS-KESx, 2020 U.S. Dist. LEXIS 62309, at *4-5 (C.D. Cal. Apr. 3, 2020).

Your response to request 16 contains several bad faith objections. First, your objection that the interrogatory is overbroad in scope is baseless and improper. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *6-11 (C.D. Cal. Oct. 12, 2016). Second, your objection that the interrogatory is "vague and ambiguous" as to time is patently false, as all interrogatories are bound (unless otherwise stated) by Instruction K as you indicated in your response to request 3. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal. Oct. 12, 2016). Further, your objection that the interrogatory is "vague and ambiguous" as to "the phrase 'identify … all conveyances' and 'its inception'" is improper. *Id*. Additionally, this interrogatory plainly seeks relevant information, considering the claims at issue. *Ocean Garden Products v. Blessings, Inc.*, No. 8:20-mc-00006-JVS-KESx, 2020 U.S. Dist. LEXIS 62309, at *4-5 (C.D. Cal. Apr. 3, 2020).

Your response to request 17 contains several bad faith objections. First, your objection that the interrogatory is "overbroad in scope, oppressive and harassing as stated" is baseless and improper. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at

BLAISE & NITSCHKE, P.C.

Beatbox v. Labrador, et al.
May 5, 2021
Page 7

*6-11 (C.D. Cal. Oct. 12, 2016). Additionally, this interrogatory plainly seeks relevant information, considering the claims at issue. *Ocean Garden Products v. Blessings, Inc.*, No. 8:20-mc-00006-JVS-KESx, 2020 U.S. Dist. LEXIS 62309, at *4-5 (C.D. Cal. Apr. 3, 2020). Further, your objection on the basis of privacy is improper. *Desilva v. Allergan United States*, No. 8:19-cv-01606-JLS (JDEx), 2020 U.S. Dist. LEXIS 188545, at *10-11 (C.D. Cal. Sep. 1, 2020). Lastly, your objection on the basis of FRCP 33(a)(1) is baseless and without merit.

Your response to request 18 contains several bad faith objections. First, your objection that the interrogatory is "overbroad in scope, oppressive and harassing as stated" is baseless and improper. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *6-11 (C.D. Cal. Oct. 12, 2016). Additionally, this interrogatory plainly seeks relevant information, considering the claims at issue. *Ocean Garden Products v. Blessings, Inc.*, No. 8:20-mc-00006-JVS-KESx, 2020 U.S. Dist. LEXIS 62309, at *4-5 (C.D. Cal. Apr. 3, 2020). Further, your objection on the basis of privacy is improper. *Desilva v. Allergan United States*, No. 8:19-cv-01606-JLS (JDEx), 2020 U.S. Dist. LEXIS 188545, at *10-11 (C.D. Cal. Sep. 1, 2020). Lastly, your objection on the basis of FRCP 33(a)(1) is baseless and without merit.

Your response to request 19 contains several bad faith objections. First, your objection that the interrogatory is "overbroad in scope, oppressive and harassing as stated" is baseless and improper. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *6-11 (C.D. Cal. Oct. 12, 2016). Additionally, this interrogatory plainly seeks relevant information, considering the claims at issue. *Ocean Garden Products v. Blessings, Inc.*, No. 8:20-mc-00006-JVS-KESx, 2020 U.S. Dist. LEXIS 62309, at *4-5 (C.D. Cal. Apr. 3, 2020). Further, your objection on the basis of privacy is improper. *Desilva v. Allergan United States*, No. 8:19-cv-01606-JLS (JDEx), 2020 U.S. Dist. LEXIS 188545, at *10-11 (C.D. Cal. Sep. 1, 2020). Lastly, your objection on the basis of FRCP 33(a)(1) is baseless and without merit.

Your response to request 20 contains several bad faith objections. First, your objection that the interrogatory is "overbroad in scope, oppressive and harassing as stated" is baseless and improper. Ecojet, Inc. v. Luraco, Inc., No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *6-11 (C.D. Cal. Oct. 12, 2016). Second, your objection that the interrogatory is "vague and ambiguous" as to time is patently false, as all interrogatories are bound (unless otherwise stated) by Instruction K as you indicated in your response to request 3. Ecojet, Inc. v. Luraco, Inc., No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal. Oct. 12, 2016). Third, your objection that the interrogatory is "vague and ambiguous" as to "all assets" is improper. Id. Additionally, this interrogatory plainly seeks relevant information, considering the claims at issue. Ocean Garden Products v. Blessings, Inc., No. 8:20-mc-00006-JVS-KESx, 2020 U.S. Dist. LEXIS 62309, at *4-5 (C.D. Cal. Apr. 3, 2020). Further, your objection on the basis of privacy is improper. Desilva v. Allergan United States, No. 8:19-cv-01606-JLS (JDEx), 2020 U.S. Dist. LEXIS 188545, at *10-11 (C.D. Cal. Sep. 1, 2020). Lastly, your objection on the basis of FRCP 33(a)(1) is baseless and without merit.

**BLAISE & NITSCHKE, P.C.**

Beatbox v. Labrador, et al.
May 5, 2021
Page 8

**Labrador Entertainment, Inc. D/B/A Spider Cues Music Library's Responses To Plaintiff's First Set of Requests for the Production of Documents**

Your response to request 1 contains several bad faith objections. First, your objection that the request is "overbroad, oppressive and harassing as stated" is baseless and improper. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal. Oct. 12, 2016). Further, your objection that the request is "vague and ambiguous" is improper. *Id.* Additionally, your response improperly asserts attorney-client privilege without the inclusion of a privilege log. FRCP 26(b)(5); *Ecojet, Inc. v. Luraco, Inc.*, 2016 U.S. Dist. LEXIS 192169, at *9 (C.D. Cal. Oct. 12, 2016). Your objection on the basis of FRCP 34(b)(1)(a) is baseless; you are required to produce an individualized response to each request for production. *Conan v. City of Fontana*, No. EDCV 16-1261-KK, 2017 U.S. Dist. LEXIS 103780, at *6-7 (C.D. Cal. July 5, 2017). It is improper to object that the requesting party already has the requested documents. *Banuelos v. City of San Bernardino*, No. EDCV 13-736-GW (KKx), 2017 U.S. Dist. LEXIS 198247, at *14 (C.D. Cal. Dec. 1, 2017).

Your response to request 2 contains several bad faith objections. First, your objection that the request is "overbroad, oppressive and harassing as stated" is baseless and improper. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal. Oct. 12, 2016). Additionally, your objection that "[t]his request is … the proportional to the needs of the case" is completely unintelligible. Further, your objection that the request is "vague and ambiguous" as to "communications" is improper. *Id.* Indeed, this request plainly seeks relevant information that is proportional to the needs of the case, considering the claims at issue. *Ocean Garden Products v. Blessings, Inc.*, No. 8:20-mc-00006-JVS-KESx, 2020 U.S. Dist. LEXIS 62309, at *4-5 (C.D. Cal. Apr. 3, 2020); *Desilva v. Allergan United States*, No. 8:19-cv-01606-JLS (JDEx), 2020 U.S. Dist. LEXIS 188545, at *10-11 (C.D. Cal. Sep. 1, 2020). Fifth, your objection that the request is "vague and ambiguous" as time is patently false, as all requests are bound (unless otherwise stated) by the Instructions as you indicated in your General Objection H. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal. Oct. 12, 2016). Finally, your objection on the basis of FRCP 34(b)(1)(a) is baseless; you are required to produce an individualized response to each request for production. *Conan v. City of Fontana*, No. EDCV 16-1261-KK, 2017 U.S. Dist. LEXIS 103780, at *6-7 (C.D. Cal. July 5, 2017).

Your response to request 3 contains several bad faith objections. First, your objection that the request is "overbroad, oppressive and harassing as stated" is baseless and improper. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal. Oct. 12, 2016). Additionally, your objection that "[t]his request is … the proportional to the needs of the case" is completely unintelligible. Finally, your objection on the basis of FRCP 34(b)(1)(a) is baseless; you are required to produce an individualized response to each request for production. *Conan v. City of Fontana*, No. EDCV 16-1261-KK, 2017 U.S. Dist. LEXIS 103780, at *6-7 (C.D. Cal. July 5, 2017).


BLAISE & NITSCHKE, P.C.

Beatbox v. Labrador, et al.
May 5, 2021
Page 9

Regarding your response to request 4, it is improper to object that the requesting party already has the requested documents. *Banuelos v. City of San Bernardino*, No. EDCV 13-736-GW (KKx), 2017 U.S. Dist. LEXIS 198247, at *14 (C.D. Cal. Dec. 1, 2017).

Your response to request 5 contains several bad faith objections. First, your objection that the request is "overbroad, oppressive and harassing as stated" is baseless and improper. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal. Oct. 12, 2016). Second, your response improperly asserts attorney-client privilege without the inclusion of a privilege log. FRCP 26(b)(5); *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *9 (C.D. Cal. Oct. 12, 2016). Third, it is improper to object that the requesting party already has the requested documents. *Banuelos v. City of San Bernardino*, No. EDCV 13-736-GW (KKx), 2017 U.S. Dist. LEXIS 198247, at *14 (C.D. Cal. Dec. 1, 2017). Additionally, your objection that "[t]his request is … the proportional to the needs of the case" is completely unintelligible. Finally, your objection on the basis of FRCP 34(b)(1)(a) is baseless; you are required to produce an individualized response to each request for production. *Conan v. City of Fontana*, No. EDCV 16-1261-KK, 2017 U.S. Dist. LEXIS 103780, at *6-7 (C.D. Cal. July 5, 2017). – Notwithstanding the above objections, Plaintiff provides the following excerpts of the December 2-3, 2019 deposition of Noel Palmer Webb:

```
15              MS. BLAISE:  I'm not asking about pleadings, I'm

16      asking about what was tendered -- he's saying that there was

17      a demand sent to Cohen by his attorney, and I'm wanting to

18      know --

19              MS. OHIRI:  I wasn't the attorney that did it.

20      So...

21      BY MS. BLAISE:

22         Q    So you'll re-provide those to your attorney and then

23      she'll provide them to me, to the extent that they haven't

24      already been provided?

25         A    If I have them, I'll do it again.

                                                  Page 116

1               MS. OHIRI:  If they exist.
```



BLAISE & NITSCHKE, P.C.

Beatbox v. Labrador, et al.
May 5, 2021
Page 10

```
16        Q    For the record, you're going to find those

17    documents?

18        A    I hope I remember.  I have no notes, but I probably

19    will remember, yeah.

20             MS. OHIRI:  To the extent they exist.

21    BY MS. BLAISE:

22        Q    But you have a relationship with the attorney

23    still?

24        A    Yes.

25        Q    So you can request the documents from your

                                              Page 117
```

```
1     attorney?

2         A    Yes.

3         Q    And then your attorney can submit them to this

4     attorney?

5         A    Yes.

                                              Page 118
```

Your response to request 6 contains several bad faith objections. First, your objection that the request is "overbroad in scope, oppressive and harassing as stated" is baseless and improper. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal. Oct. 12, 2016). Second, your objection on the basis of FRCP 34(b)(1)(a) is baseless; you are required to produce an individualized response to each request for production. *Conan v. City of Fontana*, No. EDCV 16-1261-KK, 2017 U.S. Dist. LEXIS 103780, at *6-7 (C.D. Cal. July 5, 2017). Similarly, your citation to FRCP 26(b)(1) is misplaced. Further, your objection on the basis of FRCP 34(b)(1)(a) is needless, duplicative, and indicative of your lack of due diligence in responding to these requests. Additionally, your response improperly asserts attorney-client

BLAISE & NITSCHKE, P.C.

Beatbox v. Labrador, et al.
May 5, 2021
Page 11

privilege without the inclusion of a privilege log. FRCP 26(b)(5); *Ecojet, Inc. v. Luraco, Inc.*, No.
SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *9 (C.D. Cal. Oct. 12, 2016).
It is improper to object that the requesting party already has access to the requested documents.
*Banuelos v. City of San Bernardino*, No. EDCV 13-736-GW (KKx), 2017 U.S. Dist. LEXIS
198247, at *14 (C.D. Cal. Dec. 1, 2017). Finally, your objection as to "vague and ambiguous" is
made in bad faith, as the request necessarily seeks documents in the responding party's possession,
not documents available on the internet.

Your response to request 7 contains several bad faith objections. First, your objection that the
request is "overbroad, oppressive and harassing as stated" is baseless and improper. *Ecojet, Inc. v.
Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal.
Oct. 12, 2016). Additionally, your objection that "[t]his request is … the proportional to the needs
of the case" is completely unintelligible. Further, your objection that the request is "vague and
ambiguous" as to "correspondence related to Plaintiff" is improper. *Id.* Indeed, this request plainly
seeks relevant information that is proportional to the needs of the case, considering the claims at
issue. *Ocean Garden Products v. Blessings, Inc.*, No. 8:20-mc-00006-JVS-KESx, 2020 U.S. Dist.
LEXIS 62309, at *4-5 (C.D. Cal. Apr. 3, 2020); *Desilva v. Allergan United States*, No. 8:19-cv-
01606-JLS (JDEx), 2020 U.S. Dist. LEXIS 188545, at *10-11 (C.D. Cal. Sep. 1, 2020). Fifth, your
objection that the request is "vague and ambiguous" as to time is patently false, as all requests are
bound (unless otherwise stated) by the Instructions as you indicated in your General Objection H.
*Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at
*11 (C.D. Cal. Oct. 12, 2016). It is improper to object that the requesting party already has access
to the requested documents. *Banuelos v. City of San Bernardino*, No. EDCV 13-736-GW (KKx),
2017 U.S. Dist. LEXIS 198247, at *14 (C.D. Cal. Dec. 1, 2017). Additionally, your response
improperly asserts attorney-client privilege without the inclusion of a privilege log. FRCP
26(b)(5); *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS
192169, at *9 (C.D. Cal. Oct. 12, 2016). Finally, your objection on the basis of FRCP 34(b)(1)(a)
is baseless; you are required to produce an individualized response to each request for production.
*Conan v. City of Fontana*, No. EDCV 16-1261-KK, 2017 U.S. Dist. LEXIS 103780, at *6-7 (C.D.
Cal. July 5, 2017).

Your response to request 8 contains several bad faith objections. First, your objection that the
request is "overbroad, oppressive and harassing as stated" is baseless and improper. *Ecojet, Inc. v.
Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal.
Oct. 12, 2016). Additionally, your objection that "[t]his request is … the proportional to the needs
of the case" is completely unintelligible. Further, your objection that the request is "vague and
ambiguous" as to "correspondence" and "relating to Plaintiff" is improper. *Id.* Indeed, this request
plainly seeks relevant information that is proportional to the needs of the case, considering the
claims at issue. *Ocean Garden Products v. Blessings, Inc.*, No. 8:20-mc-00006-JVS-KESx, 2020
U.S. Dist. LEXIS 62309, at *4-5 (C.D. Cal. Apr. 3, 2020); *Desilva v. Allergan United States*, No.
8:19-cv-01606-JLS (JDEx), 2020 U.S. Dist. LEXIS 188545, at *10-11 (C.D. Cal. Sep. 1, 2020).
Finally, your response improperly asserts attorney-client privilege without the inclusion of a



BLAISE & NITSCHKE, P.C.

Beatbox v. Labrador, et al.
May 5, 2021
Page 12

privilege log. FRCP 26(b)(5); *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *9 (C.D. Cal. Oct. 12, 2016).

In response to your response to request 9, we submit the following excerpt of the December 2-3, 2019 deposition of Noel Palmer Webb:

```
 2        MS. OHIRI:  E-mails.
 3        MS. BLAISE:  They're all letters to the firm.
 4        MS. OHIRI:  Yes, to my firm.
 5        MS. BLAISE:  There's no other documents that are not
 6   letters to your firm?
 7        MR. JACOBSON:  Or e-mails?
 8        MS. BLAISE:  We're going to need to see that.
 9        MS. OHIRI:  I need to withhold these, these are
10   privileged.
11        MS. BLAISE:  So for the record, can you indicate
12   what they are so you will make a privilege log of them?
13        MS. OHIRI:  There's an e-mail from Noel Webb to
14   myself, Raena Ohiri, dated November 21st, 2019.
15        MS. BLAISE:  What was the date?
16        MS. OHIRI:  November 21st, 2019.
17        MS. BLAISE:  Is there anyone else on the e-mail or
18   is it --
19        MS. OHIRI:  It's just to me.  There's a document
20   that reflects attorney/client privilege and work product.  I
21   don't mind sending a redacted version of it, but I can't
22   produce it right now.
23        MS. BLAISE:  Okay.  What is it?
24        MS. OHIRI:  A document, I mean, I --
25        MS. BLAISE:  What is it dated?

                                              Page 60
```

BLAISE & NITSCHKE, P.C.

Beatbox v. Labrador, et al.
May 5, 2021
Page 13

Your response to request 10 contains several bad faith objections. First, your objection that the request is "overbroad in scope, oppressive and harassing as stated" is baseless and improper. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal. Oct. 12, 2016). Second, your objection that the request is "vague and ambiguous" as to "correspondence" and "relating to Plaintiff" is improper. *Id*. Additionally, your objection that "[t]his request is … the proportional to the needs of the case" is completely unintelligible. Indeed, this request plainly seeks relevant information that is proportional to the needs of the case, considering the claims at issue. *Ocean Garden Products v. Blessings, Inc.*, No. 8:20-mc-00006-JVS-KESx, 2020 U.S. Dist. LEXIS 62309, at *4-5 (C.D. Cal. Apr. 3, 2020); *Desilva v. Allergan United States*, No. 8:19-cv-01606-JLS (JDEx), 2020 U.S. Dist. LEXIS 188545, at *10-11 (C.D. Cal. Sep. 1, 2020). It is improper to object that the requesting party already has access to the requested documents. *Banuelos v. City of San Bernardino*, No. EDCV 13-736-GW (KKx), 2017 U.S. Dist. LEXIS 198247, at *14 (C.D. Cal. Dec. 1, 2017). Finally, your response improperly asserts attorney-client privilege without the inclusion of a privilege log. FRCP 26(b)(5); *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *9 (C.D. Cal. Oct. 12, 2016).

Your response to request 11 contains several bad faith objections. First, your objection that the request is "overbroad in scope, oppressive and harassing as stated" is baseless and improper. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal. Oct. 12, 2016). Second, your objection on the basis of FRCP 34(b)(1)(a) is baseless; you are required to produce an individualized response to each request for production. *Conan v. City of Fontana*, No. EDCV 16-1261-KK, 2017 U.S. Dist. LEXIS 103780, at *6-7 (C.D. Cal. July 5, 2017). Additionally, your objection that "[t]his request is … the proportional to the needs of the case" is completely unintelligible. Indeed, this request plainly seeks relevant information that is proportional to the needs of the case, considering the claims at issue. *Ocean Garden Products v. Blessings, Inc.*, No. 8:20-mc-00006-JVS-KESx, 2020 U.S. Dist. LEXIS 62309, at *4-5 (C.D. Cal. Apr. 3, 2020); *Desilva v. Allergan United States*, No. 8:19-cv-01606-JLS (JDEx), 2020 U.S. Dist. LEXIS 188545, at *10-11 (C.D. Cal. Sep. 1, 2020). Further, your needlessly repeated your objection that the request is "overbroad in scope, oppressive and harassing as stated", exposing your lack of due diligence in responding to these requests. Additionally, your objection that "[t]his request is … the proportional to the needs of the case" is completely unintelligible. Further, your objection that the request is "vague and ambiguous" as to "any interest(s)" is improper. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal. Oct. 12, 2016).

Your response to request 12 contains several bad faith objections. First, your objection that the request is "overbroad in scope, oppressive and harassing as stated" is baseless and improper. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal. Oct. 12, 2016). Second, your objection on the basis of FRCP 34(b)(1)(a) is baseless; you are required to produce an individualized response to each request for production. *Conan v. City of Fontana*, No. EDCV 16-1261-KK, 2017 U.S. Dist. LEXIS 103780, at *6-7 (C.D. Cal. July

BLAISE & NITSCHKE, P.C.

Beatbox v. Labrador, et al.
May 5, 2021
Page 14

5, 2017). Additionally, your objection that "[t]his request is … the proportional to the needs of the case" is completely unintelligible. Indeed, this request plainly seeks relevant information that is proportional to the needs of the case, considering the claims at issue. *Ocean Garden Products v. Blessings, Inc.*, No. 8:20-mc-00006-JVS-KESx, 2020 U.S. Dist. LEXIS 62309, at *4-5 (C.D. Cal. Apr. 3, 2020); *Desilva v. Allergan United States*, No. 8:19-cv-01606-JLS (JDEx), 2020 U.S. Dist. LEXIS 188545, at *10-11 (C.D. Cal. Sep. 1, 2020). Further, your needlessly repeated your objection that the request is "overbroad in scope, oppressive and harassing as stated", exposing your lack of due diligence in responding to these requests. It is improper to object that the requesting party already has access to the requested documents. *Banuelos v. City of San Bernardino*, No. EDCV 13-736-GW (KKx), 2017 U.S. Dist. LEXIS 198247, at *14 (C.D. Cal. Dec. 1, 2017). Additionally, your objection that the request is "vague and ambiguous" as to time is patently false, as all requests are bound (unless otherwise stated) by the Instructions as you indicated in your General Objection H. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal. Oct. 12, 2016). Finally, your objection that the request is "vague and ambiguous" as to "relationship" is improper. *Id*.

Your response to request 13 contains several bad faith objections. First, your objection that the request is "overbroad in scope, oppressive and harassing as stated" is baseless and improper. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal. Oct. 12, 2016). Second, your objection that "[t]his request is … the proportional to the needs of the case" is completely unintelligible. Indeed, this request plainly seeks relevant information that is proportional to the needs of the case, considering the claims at issue. *Ocean Garden Products v. Blessings, Inc.*, No. 8:20-mc-00006-JVS-KESx, 2020 U.S. Dist. LEXIS 62309, at *4-5 (C.D. Cal. Apr. 3, 2020); *Desilva v. Allergan United States*, No. 8:19-cv-01606-JLS (JDEx), 2020 U.S. Dist. LEXIS 188545, at *10-11 (C.D. Cal. Sep. 1, 2020). Further, your needlessly repeated your objection that the request is "overbroad in scope, oppressive and harassing as stated", exposing your lack of due diligence in responding to these requests. Additionally, your objection that the request is "vague and ambiguous" as to time is patently false, as all requests are bound (unless otherwise stated) by the Instructions as you indicated in your General Objection H. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal. Oct. 12, 2016). Finally, your objection that the request is "vague and ambiguous" as to "statements" and "any of the copyrights" is improper. *Id*.

Your response to request 14 contains several bad faith objections. First, your objection that the request is "overbroad in scope, oppressive, burdensome and harassing as stated" is baseless and improper. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal. Oct. 12, 2016). Similarly, your objection that the request violates the scope of discovery as defined by FRCP 26(b) is baseless and improper. *Id*.; *Conan v. City of Fontana*, No. EDCV 16-1261-KK, 2017 U.S. Dist. LEXIS 103780, at *6-7 (C.D. Cal. July 5, 2017). *Flores v. Albertsons Inc.* is inapplicable to this case and your citation thereof is improper; in *Flores*, this Court declined to compel production of tax returns in a dispute over employment classification where W2s and 1099s had already been produced, which does not support your claim

BLAISE & NITSCHKE, P.C.

Beatbox v. Labrador, et al.
May 5, 2021
Page 15

of Defendant's right to privacy. *See* 2002 U.S. Dist. LEXIS 6171, (C.D. Cal. Apr. 9, 2002). Further, it is improper to object that the requesting party can get the documents from other sources; the responding party must conduct a diligent search and reasonable inquiry. *Banuelos v. City of San Bernardino*, No. EDCV 13-736-GW (KKx), 2017 U.S. Dist. LEXIS 198247, at *14 (C.D. Cal. Dec. 1, 2017). Additionally, this request plainly seeks relevant information that is proportional to the needs of the case, considering the claims at issue; Defendant's purported "right to privacy" and need for a protective order is overstated. *Ocean Garden Products v. Blessings, Inc.*, No. 8:20-mc-00006-JVS-KESx, 2020 U.S. Dist. LEXIS 62309, at *4-5 (C.D. Cal. Apr. 3, 2020); *Desilva v. Allergan United States*, No. 8:19-cv-01606-JLS (JDEx), 2020 U.S. Dist. LEXIS 188545, at *10-11 (C.D. Cal. Sep. 1, 2020). Finally, your response improperly asserts attorney-client privilege without the inclusion of a privilege log. FRCP 26(b)(5); *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *9 (C.D. Cal. Oct. 12, 2016).

Your response to request 15 contains several bad faith objections. First, your objection that the request is "overbroad in scope, oppressive and harassing as stated" is baseless and improper. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal. Oct. 12, 2016). Second, *Coley v. Ventura Cty.* shows that you must answer this request regardless of your claim that it "is in the form of an interrogatory"; while the court in that case held that the responding party was not required to create new data, testing, or documents that did not already exist in response to a request for production, any existing documents containing such data or information were subject to production. 2020 U.S. Dist. LEXIS 249557, at *29 (C.D. Cal., June 8, 2020). Additionally, your objection that the request is "vague and ambiguous" as to time is patently false, as all requests are bound (unless otherwise stated) by the Instructions as you indicated in your General Objection H. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal. Oct. 12, 2016). Finally, your objection that the request is "vague and ambiguous" as to "YOU claim any interest" is improper. *Id*.

Your response to request 16 contains several bad faith objections. First, your objection that the request is "overbroad in scope, oppressive and harassing as stated" is baseless and improper. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal. Oct. 12, 2016). Additionally, your objection that the request is "vague and ambiguous" as to time is patently false, as all requests are bound (unless otherwise stated) by the Instructions as you indicated in your General Objection H. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal. Oct. 12, 2016). Third, your objection that the request is "vague and ambiguous" as to "conveyances of rights" is improper. *Id*. Finally, your citation to *Coley v. Ventura Cty.* is misrepresentative and improper; while the court in that case held that the responding party was not required to create new data, testing, or documents that did not already exist, any existing documents containing such data or information were subject to production. 2020 U.S. Dist. LEXIS 249557, at *29 (C.D. Cal., June 8, 2020).

BLAISE & NITSCHKE, P.C.

Beatbox v. Labrador, et al.
May 5, 2021
Page 16

Your response to request 17 contains several bad faith objections. First, your objection that the request is "overbroad in scope, oppressive and harassing as stated" is baseless and improper. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal. Oct. 12, 2016). Indeed, this request plainly seeks relevant information that is proportional to the needs of the case, considering the claims at issue. *Ocean Garden Products v. Blessings, Inc.*, No. 8:20-mc-00006-JVS-KESx, 2020 U.S. Dist. LEXIS 62309, at *4-5 (C.D. Cal. Apr. 3, 2020). Third, your response improperly asserts attorney-client privilege without the inclusion of a privilege log. FRCP 26(b)(5); *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *9 (C.D. Cal. Oct. 12, 2016). Additionally, your objection that the request is "vague and ambiguous" as to time is patently false, as all requests are bound (unless otherwise stated) by the Instructions as you indicated in your General Objection H. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal. Oct. 12, 2016). Finally, your objection that the request is "vague and ambiguous" as to "conveyances" and "YOU claim any interest" is improper. *Id.*

Your response to request 18 contains several bad faith objections. First, your objection that the request is "overbroad in scope, oppressive and harassing as stated" is baseless and improper. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal. Oct. 12, 2016). Similarly, your objection that the request "violates FRCP 26(b) which defines the scope of discovery" is baseless and improper. *Id.*; *Conan v. City of Fontana*, No. EDCV 16-1261-KK, 2017 U.S. Dist. LEXIS 103780, at *6-7 (C.D. Cal. July 5, 2017). Indeed, this request plainly seeks relevant information that is proportional to the needs of the case, considering the claims at issue; Defendant's purported "right to privacy" and need for a protective order is overstated. *Ocean Garden Products v. Blessings, Inc.*, No. 8:20-mc-00006-JVS-KESx, 2020 U.S. Dist. LEXIS 62309, at *4-5 (C.D. Cal. Apr. 3, 2020); *Desilva v. Allergan United States*, No. 8:19-cv-01606-JLS (JDEx), 2020 U.S. Dist. LEXIS 188545, at *10-11 (C.D. Cal. Sep. 1, 2020). *Flores v. Albertsons Inc.* is inapplicable to this case and your citation thereof is improper; in *Flores*, this Court declined to compel production of tax returns in a dispute over employment classification where W2s and 1099s had already been produced, which does not support your claim of Defendant's right to privacy. *See* 2002 U.S. Dist. LEXIS 6171, (C.D. Cal. Apr. 9, 2002). Additionally, your objection that the request is "vague and ambiguous" as to time is patently false, as all requests are bound (unless otherwise stated) by the Instructions as you indicated in your General Objection H. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal. Oct. 12, 2016). Finally, your objection that the request is "vague and ambiguous" as to "provide" is improper. *Id.*

Your response to request 19 contains several bad faith objections. First, your objection that the request is "overbroad in scope, oppressive and harassing as stated" is baseless and improper. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal. Oct. 12, 2016). It is improper to object that the requesting party can get the documents from other sources; the responding party must conduct a diligent search and reasonable inquiry. *Banuelos v. City of San Bernardino*, No. EDCV 13-736-GW (KKx), 2017 U.S. Dist.

BLAISE & NITSCHKE, P.C.

Beatbox v. Labrador, et al.
May 5, 2021
Page 17

LEXIS 198247, at *14 (C.D. Cal. Dec. 1, 2017). Third, your response improperly asserts attorney-client privilege without the inclusion of a privilege log. FRCP 26(b)(5); *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *9 (C.D. Cal. Oct. 12, 2016). Fourth, your objection that the request "violates FRCP 26(b) which defines the scope of discovery" is baseless and improper. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal. Oct. 12, 2016); *Conan v. City of Fontana*, No. EDCV 16-1261-KK, 2017 U.S. Dist. LEXIS 103780, at *6-7 (C.D. Cal. July 5, 2017). Indeed, this request plainly seeks relevant information that is proportional to the needs of the case, considering the claims at issue; Defendant's purported "right to privacy" and need for a protective order is overstated. *Ocean Garden Products v. Blessings, Inc.*, No. 8:20-mc-00006-JVS-KESx, 2020 U.S. Dist. LEXIS 62309, at *4-5 (C.D. Cal. Apr. 3, 2020). Additionally, your objection that the request is "vague and ambiguous" as to time is patently false, as all requests are bound (unless otherwise stated) by the Instructions as you indicated in your General Objection H. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal. Oct. 12, 2016). Finally, your objection that the request is "vague and ambiguous" as to "relating to YOUR incorporation" is improper. *Id*.

Your response to request 20 contains several bad faith objections. First, your objection that the request is "overbroad in scope, oppressive, burdensome and harassing as stated" is baseless and improper. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal. Oct. 12, 2016). Indeed, this request plainly seeks relevant information that is proportional to the needs of the case, considering the claims at issue. *Ocean Garden Products v. Blessings, Inc.*, No. 8:20-mc-00006-JVS-KESx, 2020 U.S. Dist. LEXIS 62309, at *4-5 (C.D. Cal. Apr. 3, 2020). Similarly, your objection that the request violates the scope of discovery as defined by FRCP 26(b) is baseless and improper. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal. Oct. 12, 2016); *Conan v. City of Fontana*, No. EDCV 16-1261-KK, 2017 U.S. Dist. LEXIS 103780, at *6-7 (C.D. Cal. July 5, 2017). Fourth, your response improperly asserts attorney-client privilege without the inclusion of a privilege log. FRCP 26(b)(5); *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *9 (C.D. Cal. Oct. 12, 2016). Finally, your objection that the request is "vague and ambiguous and unintelligible" as to time is patently false, as all requests are bound (unless otherwise stated) by the Instructions as you indicated in your General Objection H. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal. Oct. 12, 2016).

Your response to request 21 contains several bad faith objections. First, your objection that the request is "overbroad in scope, oppressive, burdensome and harassing as stated" is baseless and improper. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal. Oct. 12, 2016). Second, your objection that the request is "vague and ambiguous" as to time is patently false, as all requests are bound (unless otherwise stated) by the Instructions as you indicated in your General Objection H. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal. Oct. 12, 2016). It is

BLAISE & NITSCHKE, P.C.

Beatbox v. Labrador, et al.
May 5, 2021
Page 18

improper to object that the requesting party can get the documents from other sources; the
responding party must conduct a diligent search and reasonable inquiry. *Banuelos v. City of San
Bernardino*, No. EDCV 13-736-GW (KKx), 2017 U.S. Dist. LEXIS 198247, at *14 (C.D. Cal.
Dec. 1, 2017). Further, your objection that the request violates the scope of discovery as defined
by FRCP 26(b) is baseless and improper. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG
(KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal. Oct. 12, 2016); *Conan v. City of
Fontana*, No. EDCV 16-1261-KK, 2017 U.S. Dist. LEXIS 103780, at *6-7 (C.D. Cal. July 5,
2017). Indeed, this request plainly seeks relevant information that is proportional to the needs of
the case, considering the claims at issue; Defendant's purported "right to privacy" and need for a
protective order are baseless and overstated. *Ocean Garden Products v. Blessings, Inc.*, No. 8:20-
mc-00006-JVS-KESx, 2020 U.S. Dist. LEXIS 62309, at *4-5 (C.D. Cal. Apr. 3, 2020); *Desilva v.
Allergan United States*, No. 8:19-cv-01606-JLS (JDEx), 2020 U.S. Dist. LEXIS 188545, at *10-
11 (C.D. Cal. Sep. 1, 2020). Finally, *Flores v. Albertsons Inc.* is inapplicable to this case and your
citation thereof is improper; in *Flores*, this Court declined to compel production of tax returns in
a dispute over employment classification where W2s and 1099s had already been produced, which
does not support your claim of Defendant's right to privacy. *See* 2002 U.S. Dist. LEXIS 6171,
(C.D. Cal. Apr. 9, 2002).

Your response to request 22 contains several bad faith objections. First, your objection that the
request is "overbroad in scope, oppressive and harassing as stated" is baseless and improper.
*Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at
*11 (C.D. Cal. Oct. 12, 2016). Second, your objection that the request is "vague and ambiguous"
as to time is patently false, as all requests are bound (unless otherwise stated) by the Instructions
as you indicated in your General Objection H. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-
AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal. Oct. 12, 2016). Third, your
objection that the request violates the scope of discovery as defined by FRCP 26(b) is baseless and
improper. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS
192169, at *11 (C.D. Cal. Oct. 12, 2016); *Conan v. City of Fontana*, No. EDCV 16-1261-KK,
2017 U.S. Dist. LEXIS 103780, at *6-7 (C.D. Cal. July 5, 2017). Indeed, this request plainly seeks
relevant information that is proportional to the needs of the case, considering the claims at issue;
Defendant's purported "right to privacy" is baseless and overstated. *Ocean Garden Products v.
Blessings, Inc.*, No. 8:20-mc-00006-JVS-KESx, 2020 U.S. Dist. LEXIS 62309, at *4-5 (C.D. Cal.
Apr. 3, 2020); *Desilva v. Allergan United States*, No. 8:19-cv-01606-JLS (JDEx), 2020 U.S. Dist.
LEXIS 188545, at *10-11 (C.D. Cal. Sep. 1, 2020). Finally, *Flores v. Albertsons Inc.* is
inapplicable to this case and your citation thereof is improper; in *Flores*, this Court declined to
compel production of tax returns in a dispute over employment classification where W2s and
1099s had already been produced, which does not support your claim of Defendant's right to
privacy. *See* 2002 U.S. Dist. LEXIS 6171, (C.D. Cal. Apr. 9, 2002).

Your response to request 23 contains several bad faith objections. First, your objection that the
request is "overbroad in scope, oppressive and harassing as stated" is baseless and improper.
*Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at

BLAISE & NITSCHKE, P.C.

Beatbox v. Labrador, et al.
May 5, 2021
Page 19

*11 (C.D. Cal. Oct. 12, 2016). Second, your objection that the request is "vague and ambiguous" as to time is patently false, as all requests are bound (unless otherwise stated) by the Instructions as you indicated in your General Objection H. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal. Oct. 12, 2016). Third, your objection that the request violates the scope of discovery as defined by FRCP 26(b) is baseless and improper. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal. Oct. 12, 2016); *Conan v. City of Fontana*, No. EDCV 16-1261-KK, 2017 U.S. Dist. LEXIS 103780, at *6-7 (C.D. Cal. July 5, 2017). Indeed, this request plainly seeks relevant information that is proportional to the needs of the case, considering the claims at issue; Defendant's purported "right to privacy" is baseless and overstated. *Ocean Garden Products v. Blessings, Inc.*, No. 8:20-mc-00006-JVS-KESx, 2020 U.S. Dist. LEXIS 62309, at *4-5 (C.D. Cal. Apr. 3, 2020); *Desilva v. Allergan United States*, No. 8:19-cv-01606-JLS (JDEx), 2020 U.S. Dist. LEXIS 188545, at *10-11 (C.D. Cal. Sep. 1, 2020).

Your response to request 24 contains several bad faith objections. First, your objection that the request is "overbroad in scope, oppressive, burdensome and harassing as stated" is baseless and improper. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal. Oct. 12, 2016). Indeed, this request plainly seeks relevant information that is proportional to the needs of the case, considering the claims at issue. *Ocean Garden Products v. Blessings, Inc.*, No. 8:20-mc-00006-JVS-KESx, 2020 U.S. Dist. LEXIS 62309, at *4-5 (C.D. Cal. Apr. 3, 2020). Thus, your objection that the request violates the scope of discovery as defined by FRCP 26(b) is baseless and improper. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal. Oct. 12, 2016); *Conan v. City of Fontana*, No. EDCV 16-1261-KK, 2017 U.S. Dist. LEXIS 103780, at *6-7 (C.D. Cal. July 5, 2017). Fourth, your response improperly asserts attorney-client privilege without the inclusion of a privilege log. FRCP 26(b)(5); *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *9 (C.D. Cal. Oct. 12, 2016). Further, your objection that the request is "vague and ambiguous and unintelligible" as to time is patently false, as all requests are bound (unless otherwise stated) by the Instructions as you indicated in your General Objection H. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal. Oct. 12, 2016). Finally, your objection that the request is "vague and ambiguous and unintelligible" as to "asset transfers" is improper. *Id*.

Your response to request 25 contains several bad faith objections. First, your objection that the request is "overbroad in scope, oppressive and harassing as stated" is baseless and improper. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal. Oct. 12, 2016). Indeed, this request plainly seeks relevant information that is proportional to the needs of the case, considering the claims at issue. *Ocean Garden Products v. Blessings, Inc.*, No. 8:20-mc-00006-JVS-KESx, 2020 U.S. Dist. LEXIS 62309, at *4-5 (C.D. Cal. Apr. 3, 2020). Thus, your objection that the request violates the scope of discovery as defined by FRCP 26(b) is baseless and improper. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal. Oct. 12, 2016); *Conan v. City of*

BLAISE & NITSCHKE, P.C.

Beatbox v. Labrador, et al.
May 5, 2021
Page 20

*Fontana*, No. EDCV 16-1261-KK, 2017 U.S. Dist. LEXIS 103780, at *6-7 (C.D. Cal. July 5, 2017). Fourth, your response improperly asserts attorney-client privilege without the inclusion of a privilege log. FRCP 26(b)(5); *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *9 (C.D. Cal. Oct. 12, 2016). Further, your objection that the request is "vague and ambiguous" as to time is patently false, as all requests are bound (unless otherwise stated) by the Instructions as you indicated in your General Objection H. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal. Oct. 12, 2016). Finally, your objection that the request is "vague and ambiguous" as to "distributor," "relationship," "date of production" and "distribution" is improper. *Id*.

Your response to request 26 contains several bad faith objections. First, your objection that the request is "overbroad in scope, oppressive, burdensome and harassing as stated" is baseless and improper. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal. Oct. 12, 2016). Second, your objection that the request violates the scope of discovery as defined by FRCP 26(b) is baseless and improper. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal. Oct. 12, 2016); *Conan v. City of Fontana*, No. EDCV 16-1261-KK, 2017 U.S. Dist. LEXIS 103780, at *6-7 (C.D. Cal. July 5, 2017). Indeed, this request plainly seeks relevant information that is proportional to the needs of the case, considering the claims at issue; Defendant's purported claim of trade secret is baseless and overstated. *Ocean Garden Products v. Blessings, Inc.*, No. 8:20-mc-00006-JVS-KESx, 2020 U.S. Dist. LEXIS 62309, at *4-5 (C.D. Cal. Apr. 3, 2020); *Desilva v. Allergan United States*, No. 8:19-cv-01606-JLS (JDEx), 2020 U.S. Dist. LEXIS 188545, at *10-11 (C.D. Cal. Sep. 1, 2020). Fourth, your response improperly asserts attorney-client privilege without the inclusion of a privilege log. FRCP 26(b)(5); *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *9 (C.D. Cal. Oct. 12, 2016). Further, your objection that the request is "vague and ambiguous" as to time is patently false, as all requests are bound (unless otherwise stated) by the Instructions as you indicated in your General Objection H. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal. Oct. 12, 2016). Finally, your objection that the request is "vague and ambiguous" as to "sub-publishers" and "agreements" is improper. *Id*.

Your response to request 27 contains several bad faith objections. First, your objection that the request is "overbroad in scope, oppressive, burdensome and harassing as stated" is baseless and improper. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal. Oct. 12, 2016). Second, your objection that the request violates the scope of discovery as defined by FRCP 26(b) is baseless and improper. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal. Oct. 12, 2016); *Conan v. City of Fontana*, No. EDCV 16-1261-KK, 2017 U.S. Dist. LEXIS 103780, at *6-7 (C.D. Cal. July 5, 2017). Indeed, this request plainly seeks relevant information that is proportional to the needs of the case, considering the claims at issue; Defendant's purported "right to privacy" is baseless and overstated. *Ocean Garden Products v. Blessings, Inc.*, No. 8:20-mc-00006-JVS-KESx, 2020 U.S. Dist. LEXIS 62309, at *4-5 (C.D. Cal. Apr. 3, 2020); *Desilva v. Allergan United*

BLAISE & NITSCHKE, P.C.

Beatbox v. Labrador, et al.
May 5, 2021
Page 21

*States*, No. 8:19-cv-01606-JLS (JDEx), 2020 U.S. Dist. LEXIS 188545, at *10-11 (C.D. Cal. Sep. 1, 2020). Fourth, your objection as to "Defendant's right of privacy" is needlessly repeated, exposing your lack of due diligence in responding to these requests. *Flores v. Albertsons Inc.* is inapplicable to this case and your citation thereof is improper; in *Flores*, this Court declined to compel production of tax returns in a dispute over employment classification where W2s and 1099s had already been produced, which does not support your claim of Defendant's right to privacy. *See* 2002 U.S. Dist. LEXIS 6171, (C.D. Cal. Apr. 9, 2002). Lastly, your citation to *Nutratech, Inc. v. Syntech Int'l, Inc.*, is a deliberate misrepresentation. 242 F.R.D. 552 (C.D. Cal. Mar. 20, 2007). *Nutratech* is one of many cases where direct competitors who had agreed to a protective order disagreed over whether or not to impose an Attorney's-Eyes-Only limitation, not a case where the need for a protective order was in dispute. *Lindsey v. Elsevier Inc.*, No. 16-cv-00959-GPC (DHB), 2016 U.S. Dist. LEXIS 111786, at *8 (S.D. Cal. Aug. 19, 2016); *Satmodo, LLC v. Whenever Communs., LLC*, 2018 U.S. Dist. LEXIS 31842, at *5 (S.D. Cal. Feb. 27, 2018).

Your response to request 28 contains several bad faith objections. First, your objection that the request is "overbroad in scope, oppressive, burdensome and harassing as stated" is baseless and improper. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal. Oct. 12, 2016). Second, your objection that the request violates the scope of discovery as defined by FRCP 26(b) is baseless and improper. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal. Oct. 12, 2016); *Conan v. City of Fontana*, No. EDCV 16-1261-KK, 2017 U.S. Dist. LEXIS 103780, at *6-7 (C.D. Cal. July 5, 2017). Indeed, this request plainly seeks relevant information that is proportional to the needs of the case, considering the claims at issue; Defendant's purported claim of harm is baseless and overstated. *Ocean Garden Products v. Blessings, Inc.*, No. 8:20-mc-00006-JVS-KESx, 2020 U.S. Dist. LEXIS 62309, at *4-5 (C.D. Cal. Apr. 3, 2020); *Desilva v. Allergan United States*, No. 8:19-cv-01606-JLS (JDEx), 2020 U.S. Dist. LEXIS 188545, at *10-11 (C.D. Cal. Sep. 1, 2020).

Your response to request 29 contains several bad faith objections. First, your objection that the request is "overbroad in scope, oppressive, burdensome and harassing as stated" is baseless and improper. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal. Oct. 12, 2016). It is improper to object that the requesting party already has the requested documents. *Banuelos v. City of San Bernardino*, No. EDCV 13-736-GW (KKx), 2017 U.S. Dist. LEXIS 198247, at *14 (C.D. Cal. Dec. 1, 2017). Third, your response improperly asserts attorney-client privilege without the inclusion of a privilege log. FRCP 26(b)(5); *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *9 (C.D. Cal. Oct. 12, 2016). Further, your objection that the request is "vague and ambiguous and unintelligible" as to time is patently false, as all requests are bound (unless otherwise stated) by the Instructions as you indicated in your General Objection H. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal. Oct. 12, 2016). Fifth, your objection that the request is "vague and ambiguous and unintelligible" as to "cease licensing activities" is improper. *Id*. Lastly, your citation to *Nutratech, Inc. v. Syntech Int'l, Inc.*,

BLAISE & NITSCHKE, P.C.

Beatbox v. Labrador, et al.
May 5, 2021
Page 22

is a deliberate misrepresentation. 242 F.R.D. 552 (C.D. Cal. Mar. 20, 2007). *Nutratech* is one of many cases where direct competitors who had agreed to a protective order disagreed over whether or not to impose an Attorney's-Eyes-Only limitation, not a case where the need for a protective order was in dispute. *Lindsey v. Elsevier Inc.*, No. 16-cv-00959-GPC (DHB), 2016 U.S. Dist. LEXIS 111786, at *8 (S.D. Cal. Aug. 19, 2016); *Satmodo, LLC v. Whenever Communs., LLC*, 2018 U.S. Dist. LEXIS 31842, at *5 (S.D. Cal. Feb. 27, 2018).

Your response to request 30 contains several bad faith objections. First, your objection that the request is "overbroad in scope, oppressive, burdensome and harassing as stated" is baseless and improper. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal. Oct. 12, 2016). Indeed, this request plainly seeks relevant information that is proportional to the needs of the case, considering the claims at issue. *Ocean Garden Products v. Blessings, Inc.*, No. 8:20-mc-00006-JVS-KESx, 2020 U.S. Dist. LEXIS 62309, at *4-5 (C.D. Cal. Apr. 3, 2020). Third, your response improperly asserts attorney-client privilege without the inclusion of a privilege log. FRCP 26(b)(5); *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *9 (C.D. Cal. Oct. 12, 2016). Further, your objection that the request is "vague and ambiguous and unintelligible" as to time is patently false, as all requests are bound (unless otherwise stated) by the Instructions as you indicated in your General Objection H. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal. Oct. 12, 2016). Finally, your objection that the request is "vague and ambiguous and unintelligible" as to "establishes and/or disproves any of the following in relationship to," "any other entity," and "co-mingling" is improper. *Id.*

Your response to request 31 contains several bad faith objections. First, your objection that the request is "overbroad in scope, oppressive, burdensome and harassing as stated" is baseless and improper. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal. Oct. 12, 2016). Second, your objection that the request violates the scope of discovery as defined by FRCP 26(b) is baseless and improper. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal. Oct. 12, 2016); *Conan v. City of Fontana*, No. EDCV 16-1261-KK, 2017 U.S. Dist. LEXIS 103780, at *6-7 (C.D. Cal. July 5, 2017). Indeed, this request plainly seeks relevant information that is proportional to the needs of the case, considering the claims at issue. *Ocean Garden Products v. Blessings, Inc.*, No. 8:20-mc-00006-JVS-KESx, 2020 U.S. Dist. LEXIS 62309, at *4-5 (C.D. Cal. Apr. 3, 2020). Further, your objection that the request is "vague and ambiguous and unintelligible" as to time is patently false, as all requests are bound (unless otherwise stated) by the Instructions as you indicated in your General Objection H. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal. Oct. 12, 2016). Finally, your objection that the request is "vague and ambiguous and unintelligible" as to "claims relating to the Composition" is improper. *Id.*

Your response to request 32 is improper; you have failed to submit any privilege log.

BLAISE & NITSCHKE, P.C.

Beatbox v. Labrador, et al.
May 5, 2021
Page 23

Your response to request 33 is improper; you have failed to execute an affidavit stating that your responses are accurate and complete.

## Webb Family Trust's Responses to Plaintiff's First Set of Interrogatories

Several of your responses include objections by "Labrador"; these objections are generally improper, run afoul of FRCP 33(b)(1), and are waived. Notwithstanding those waived objections, Plaintiff responds as follows:

Your response to request 1 contains several bad faith objections. First, your objection that the interrogatory is "overbroad, oppressive and harassing as stated" is baseless and improper. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal. Oct. 12, 2016). Second, your citation to *Safeco* is inapplicable improper, as the case is explicitly addressing interrogatories that contain separate subparts addressing unique requests for admission on unrelated topics. *Safeco Ins. Co. of Am. v. Rawstron*, 181 F.R.D. 441, 446 (C.D. Cal. May 15, 1998). Your objection that the interrogatory is "vague and ambiguous" as to time is patently false, as all interrogatories are bound (unless otherwise stated) by Instruction K as you indicated below. Finally, your response improperly asserts attorney-client privilege without the inclusion of a privilege log. FRCP 26(b)(5); *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *9 (C.D. Cal. Oct. 12, 2016).

Your response to request 2 contains several bad faith objections. First, you object that the request is propounded to an entity "which does not 'believe' facts." This is plainly an evasive answer, impermissible under FRCP 37. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal. Oct. 12, 2016). Second, your objection that the request is "vague and ambiguous as to which 'allegations' … is/are being referred to" is similarly evasive and improper. *Id.* Finally, your response improperly asserts attorney-client privilege without the inclusion of a privilege log. FRCP 26(b)(5); *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *9 (C.D. Cal. Oct. 12, 2016).

Your response to request 3 contains several bad faith objections. First, your objection that the interrogatory is "oppressive and harassing" is baseless and improper. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal. Oct. 12, 2016); *Banuelos v. City of San Bernardino*, No. EDCV 13-736-GW (KKx), 2017 U.S. Dist. LEXIS 198247, at *14 (C.D. Cal. Dec. 1, 2017). Your objection that the interrogatory is "vague and ambiguous" as to time is patently false, as all interrogatories are bound (unless otherwise stated) by Instruction K as you indicated below. Your objection that the interrogatory is "vague and ambiguous" as to the term "any agreements" is improper, as agreements is a common term with a plain meaning. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal. Oct. 12, 2016). Finally, your citation to *Sanders* does not properly support your objection; *Sanders* concerned a request to produce 31 semi-annual reports conducted on the Los Angeles County Sherriff's Department by an outside monitor which spanned

BLAISE & NITSCHKE, P.C.

Beatbox v. Labrador, et al.
May 5, 2021
Page 24

beyond the time frame of the complained-of civil rights violation. *Sanders v. L.A. County*, 2018
U.S. Dist. LEXIS 225237, (C.D. Cal. Nov. 16, 2018). Nothing in that opinion stands for the notion
that an interrogatory (or even request for production) spanning a (nearly) 20-year period is
overbroad by nature; in fact, the same opinion acknowledges that the same reports were produced
in parallel case to the one cited.

Your response to request 4 contains several bad faith objections. First, your objection that the
interrogatory is "vague and ambiguous" as to time is patently false, as all interrogatories are bound
(unless otherwise stated) by Instruction K as you indicated in your response to request 3. *Ecojet,
Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11
(C.D. Cal. Oct. 12, 2016). Second, your citation to *Safeco* is inapplicable and improper, as the case
is explicitly addressing interrogatories that contain separate subparts addressing unique requests
for admission on unrelated topics. *Safeco Ins. Co. of Am. v. Rawstron*, 181 F.R.D. 441, 446 (C.D.
Cal. May 15, 1998).

Your response to request 5 contains several bad faith objections. First, your objection that the
interrogatory is "overbroad in scope, oppressive, burdensome and harassing as stated" is baseless
and improper. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist.
LEXIS 192169, at *6-11 (C.D. Cal. Oct. 12, 2016). Your objection that the request is "vague,
ambiguous and unintelligible" is also improper, as "gross earnings" is plainly applicable to entities.
*Id*. Additionally, your response improperly asserts attorney-client privilege without the inclusion
of a privilege log. FRCP 26(b)(5); *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx),
2016 U.S. Dist. LEXIS 192169, at *9 (C.D. Cal. Oct. 12, 2016). Further, this interrogatory plainly
seeks relevant information, considering the claims at issue. *Ocean Garden Products v. Blessings,
Inc.*, No. 8:20-mc-00006-JVS-KESx, 2020 U.S. Dist. LEXIS 62309, at *4-5 (C.D. Cal. Apr. 3,
2020). Your citation to *East Iowa Plastics* is plainly a bad-faith attempt to misrepresent an
inapplicable opinion. *East Iowa Plastics* did not concern fraudulent transfer, but instead concerned
trademark infringement for a trademark in the poultry business; the Court ruled that the financial
records for Defendant's separate business (entirely associated with the purchase of old homes)
were not discoverable because they could not be relevant to damages for the alleged trademark
infringement. This case is not relevant to a case regarding fraudulent transfer.

Your response to request 6 contains several bad faith objections. First, your objection that the
interrogatory is "overbroad in scope, oppressive, burdensome and harassing as stated" is baseless
and improper. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist.
LEXIS 192169, at *6-11 (C.D. Cal. Oct. 12, 2016). Second, your objection that the interrogatory
is "vague and ambiguous" as to time is patently false, as all interrogatories are bound (unless
otherwise stated) by Instruction K as you indicated in your response to request 3. *Ecojet, Inc. v.
Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal.
Oct. 12, 2016). Further, your objection that the interrogatory is "vague and ambiguous" as to "all
copyrighted works" is improper. *Id*. Additionally, your response improperly asserts attorney-client

BLAISE & NITSCHKE, P.C.

Beatbox v. Labrador, et al.
May 5, 2021
Page 25

privilege without the inclusion of a privilege log. FRCP 26(b)(5); *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *9 (C.D. Cal. Oct. 12, 2016).

Your response to request 7 contains several bad faith objections. First, your objection that the interrogatory is "overbroad in scope, oppressive, burdensome and harassing as stated" is baseless and improper. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *6-11 (C.D. Cal. Oct. 12, 2016). Second, your objection that the interrogatory is "vague and ambiguous" as to time is patently false, as all interrogatories are bound (unless otherwise stated) by Instruction K as you indicated in your response to request 3. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal. Oct. 12, 2016). Further, your objection that the interrogatory is "vague and ambiguous" as to "any entities" is improper. *Id*. Finally, this interrogatory plainly seeks relevant information, considering the claims at issue. *Ocean Garden Products v. Blessings, Inc.*, No. 8:20-mc-00006-JVS-KESx, 2020 U.S. Dist. LEXIS 62309, at *4-5 (C.D. Cal. Apr. 3, 2020).

Your response to request 8 contains several bad faith objections. First, this interrogatory plainly seeks relevant information, considering the claims at issue. *Ocean Garden Products v. Blessings, Inc.*, No. 8:20-mc-00006-JVS-KESx, 2020 U.S. Dist. LEXIS 62309, at *4-5 (C.D. Cal. Apr. 3, 2020). Second, your objection on the basis of privacy is improper. *Desilva v. Allergan United States*, No. 8:19-cv-01606-JLS (JDEx), 2020 U.S. Dist. LEXIS 188545, at *10-11 (C.D. Cal. Sep. 1, 2020).

Your response to request 9 contains several bad faith objections. First, your objection that the interrogatory is "overbroad in scope, oppressive, burdensome and harassing as stated" is baseless and improper. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *6-11 (C.D. Cal. Oct. 12, 2016). Second, your objection that the interrogatory is "vague and ambiguous" as to time is patently false, as all interrogatories are bound (unless otherwise stated) by Instruction K as you indicated in your response to request 3. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal. Oct. 12, 2016). Further, your objection that the interrogatory is unintelligible improper. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *6 (C.D. Cal. Oct. 12, 2016). Additionally, your response improperly asserts attorney-client privilege without the inclusion of a privilege log. FRCP 26(b)(5); *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *9 (C.D. Cal. Oct. 12, 2016). Finally, this interrogatory plainly seeks relevant information, considering the claims at issue. *Ocean Garden Products v. Blessings, Inc.*, No. 8:20-mc-00006-JVS-KESx, 2020 U.S. Dist. LEXIS 62309, at *4-5 (C.D. Cal. Apr. 3, 2020).

Your response to request 10 contains several bad faith objections. First, your objection that the interrogatory is "overbroad in scope, oppressive, burdensome and harassing as stated" is baseless and improper. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *6-11 (C.D. Cal. Oct. 12, 2016). Second, your objection that the interrogatory

BLAISE & NITSCHKE, P.C.

Beatbox v. Labrador, et al.
May 5, 2021
Page 26

is "vague and ambiguous" as to time is patently false, as all interrogatories are bound (unless otherwise stated) by Instruction K as you indicated in your response to request 3. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal. Oct. 12, 2016). Further, your objection that the interrogatory is "vague and ambiguous" as to "all capital assets, financial institutions" is improper. *Id.* Further, your objection on the basis of privacy is improper. *Desilva v. Allergan United States*, No. 8:19-cv-01606-JLS (JDEx), 2020 U.S. Dist. LEXIS 188545, at *10-11 (C.D. Cal. Sep. 1, 2020). Additionally, this interrogatory plainly seeks relevant and proportional information, considering the claims at issue. *Ocean Garden Products v. Blessings, Inc.*, No. 8:20-mc-00006-JVS-KESx, 2020 U.S. Dist. LEXIS 62309, at *4-5 (C.D. Cal. Apr. 3, 2020). Lastly, your objection on the basis of FRCP 33(a)(1) is baseless and without merit.

Your response to request 11 contains several bad faith objections. First, your objection that the interrogatory is "overbroad in scope, oppressive, burdensome and harassing as stated" is baseless and improper. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *6-11 (C.D. Cal. Oct. 12, 2016). Second, your objection that the interrogatory is "vague and ambiguous" as to time is patently false, as all interrogatories are bound (unless otherwise stated) by Instruction K as you indicated in your response to request 3. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal. Oct. 12, 2016). Further, your objection that the interrogatory is unintelligible improper. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *6 (C.D. Cal. Oct. 12, 2016). Additionally, your response improperly asserts attorney-client privilege without the inclusion of a privilege log. FRCP 26(b)(5); *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *9 (C.D. Cal. Oct. 12, 2016). Finally, this interrogatory plainly seeks relevant information, considering the claims at issue. *Ocean Garden Products v. Blessings, Inc.*, No. 8:20-mc-00006-JVS-KESx, 2020 U.S. Dist. LEXIS 62309, at *4-5 (C.D. Cal. Apr. 3, 2020).

Your response to request 12 contains several bad faith objections. First, your objection that the interrogatory is "overbroad in scope, oppressive, burdensome and harassing as stated" is baseless and improper. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *6-11 (C.D. Cal. Oct. 12, 2016). Second, your objection that the interrogatory is "vague and ambiguous" as to time is patently false, as all interrogatories are bound (unless otherwise stated) by Instruction K as you indicated in your response to request 3. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal. Oct. 12, 2016). Further, your objection that the interrogatory is "vague and ambiguous" as to "the terms 'YOUR transactions,' 'asset transfers,' and 'any other third party' is improper. *Id.* Further, your objection on the basis of privacy is improper. *Desilva v. Allergan United States*, No. 8:19-cv-01606-JLS (JDEx), 2020 U.S. Dist. LEXIS 188545, at *10-11 (C.D. Cal. Sep. 1, 2020). Additionally, this interrogatory plainly seeks relevant and proportional information, considering the claims at issue. *Ocean Garden Products v. Blessings, Inc.*, No. 8:20-mc-00006-JVS-KESx, 2020 U.S. Dist. LEXIS 62309, at *4-5 (C.D. Cal. Apr. 3, 2020). Lastly, your objection on the basis of FRCP 33(a)(1) is baseless and without merit.



BLAISE & NITSCHKE, P.C.

Beatbox v. Labrador, et al.
May 5, 2021
Page 27

Your response to request 13 contains several bad faith objections. First, your objection that the interrogatory is "vague and ambiguous" as to time is patently false, as all interrogatories are bound (unless otherwise stated) by Instruction K as you indicated in your response to request 3. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal. Oct. 12, 2016). Further, your objection that the interrogatory is "vague and ambiguous" as to "'identify … all purchase agreements', 'YOUR purchase' and 'the assets'" is improper. *Id*. Additionally, this interrogatory plainly seeks relevant information, considering the claims at issue. *Ocean Garden Products v. Blessings, Inc.*, No. 8:20-mc-00006-JVS-KESx, 2020 U.S. Dist. LEXIS 62309, at *4-5 (C.D. Cal. Apr. 3, 2020).

Your response to request 14 contains several bad faith objections. First, your objection that the interrogatory is "vague and ambiguous" as to time is patently false, as all interrogatories are bound (unless otherwise stated) by Instruction K as you indicated in your response to request 3. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal. Oct. 12, 2016). Further, your objection that the interrogatory is "vague and ambiguous" as to "'identify … all purchase agreements', and 'since inception of the New Zealand claim'" is improper. *Id*. Additionally, this interrogatory plainly seeks relevant information, considering the claims at issue. *Ocean Garden Products v. Blessings, Inc.*, No. 8:20-mc-00006-JVS-KESx, 2020 U.S. Dist. LEXIS 62309, at *4-5 (C.D. Cal. Apr. 3, 2020). Lastly, your objection on the basis of FRCP 33(a)(1) is baseless and without merit.

Your response to request 15 contains several bad faith objections. First, your objection that the interrogatory is overbroad in scope is baseless and improper. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *6-11 (C.D. Cal. Oct. 12, 2016). Second, your objection that the interrogatory is "vague and ambiguous" as to time is patently false, as all interrogatories are bound (unless otherwise stated) by Instruction K as you indicated in your response to request 3. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal. Oct. 12, 2016). Further, your objection that the interrogatory is "vague and ambiguous" as to "any other lawsuits" is improper. *Id*. Additionally, this interrogatory plainly seeks relevant information, considering the claims at issue. *Ocean Garden Products v. Blessings, Inc.*, No. 8:20-mc-00006-JVS-KESx, 2020 U.S. Dist. LEXIS 62309, at *4-5 (C.D. Cal. Apr. 3, 2020).

Your response to request 16 contains several bad faith objections. First, your objection that the interrogatory is overbroad in scope is baseless and improper. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *6-11 (C.D. Cal. Oct. 12, 2016). Second, your objection that the interrogatory is "vague and ambiguous" as to time is patently false, as all interrogatories are bound (unless otherwise stated) by Instruction K as you indicated in your response to request 3. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal. Oct. 12, 2016). Further, your objection that the interrogatory is "vague and ambiguous" as to "the terms 'agreements' and 'through the date of production'" is improper. *Id*. Additionally, this interrogatory plainly seeks relevant information,

BLAISE & NITSCHKE, P.C.

Beatbox v. Labrador, et al.
May 5, 2021
Page 28

considering the claims at issue. *Ocean Garden Products v. Blessings, Inc.*, No. 8:20-mc-00006-
JVS-KESx, 2020 U.S. Dist. LEXIS 62309, at *4-5 (C.D. Cal. Apr. 3, 2020).

Your response to request 17 contains several bad faith objections. First, your objection that the
interrogatory is overbroad in scope is baseless and improper. *Ecojet, Inc. v. Luraco, Inc.*, No.
SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *6-11 (C.D. Cal. Oct. 12, 2016).
Second, your objection that the interrogatory is "vague and ambiguous" as to time is patently false,
as all interrogatories are bound (unless otherwise stated) by Instruction K as you indicated in your
response to request 3. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S.
Dist. LEXIS 192169, at *11 (C.D. Cal. Oct. 12, 2016). Further, your objection that the
interrogatory is "vague and ambiguous" as to "the phrase 'identify … all conveyances' and 'its
inception'" is improper. *Id*. Additionally, this interrogatory plainly seeks relevant information,
considering the claims at issue. *Ocean Garden Products v. Blessings, Inc.*, No. 8:20-mc-00006-
JVS-KESx, 2020 U.S. Dist. LEXIS 62309, at *4-5 (C.D. Cal. Apr. 3, 2020).

Your response to request 18 contains several bad faith objections. First, your objection that the
interrogatory is "vague and ambiguous" as to time is patently false, as all interrogatories are bound
(unless otherwise stated) by Instruction K as you indicated in your response to request 3. *Ecojet,
Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11
(C.D. Cal. Oct. 12, 2016). Further, your objection that the interrogatory is "vague and ambiguous"
as to "would cover … the liability alleged against YOU" is improper. *Id*. Additionally, this
interrogatory plainly seeks relevant information, considering the claims at issue. *Ocean Garden
Products v. Blessings, Inc.*, No. 8:20-mc-00006-JVS-KESx, 2020 U.S. Dist. LEXIS 62309, at *4-
5 (C.D. Cal. Apr. 3, 2020).

Your response to request 19 contains several bad faith objections. First, your objection that the
interrogatory is "overbroad in scope, oppressive and harassing as stated" is baseless and improper.
*Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at
*6-11 (C.D. Cal. Oct. 12, 2016). Additionally, this interrogatory plainly seeks relevant
information, considering the claims at issue. *Ocean Garden Products v. Blessings, Inc.*, No. 8:20-
mc-00006-JVS-KESx, 2020 U.S. Dist. LEXIS 62309, at *4-5 (C.D. Cal. Apr. 3, 2020). Further,
your objection on the basis of privacy is improper. *Desilva v. Allergan United States*, No. 8:19-cv-
01606-JLS (JDEx), 2020 U.S. Dist. LEXIS 188545, at *10-11 (C.D. Cal. Sep. 1, 2020). Further,
your objection that the interrogatory is "vague and ambiguous" as to "the New Zealand claim" is
improper. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS
192169, at *11 (C.D. Cal. Oct. 12, 2016). Lastly, your objection on the basis of FRCP 33(a)(1) is
baseless and without merit.

Your response to request 20 contains several bad faith objections. First, your objection that the
interrogatory is "overbroad in scope, oppressive and harassing as stated" is baseless and improper.
*Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at
*6-11 (C.D. Cal. Oct. 12, 2016). Additionally, this interrogatory plainly seeks relevant

BLAISE & NITSCHKE, P.C.

Beatbox v. Labrador, et al.
May 5, 2021
Page 29

information, considering the claims at issue. *Ocean Garden Products v. Blessings, Inc.*, No. 8:20-mc-00006-JVS-KESx, 2020 U.S. Dist. LEXIS 62309, at \*4-5 (C.D. Cal. Apr. 3, 2020). Further, your objection on the basis of privacy is improper. *Desilva v. Allergan United States*, No. 8:19-cv-01606-JLS (JDEx), 2020 U.S. Dist. LEXIS 188545, at \*10-11 (C.D. Cal. Sep. 1, 2020). Lastly, your objection on the basis of FRCP 33(a)(1) is baseless and without merit.

Your response to request 21 contains several bad faith objections. First, your objection that the interrogatory is "overbroad in scope, oppressive and harassing as stated" is baseless and improper. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at \*6-11 (C.D. Cal. Oct. 12, 2016). Additionally, this interrogatory plainly seeks relevant information, considering the claims at issue. *Ocean Garden Products v. Blessings, Inc.*, No. 8:20-mc-00006-JVS-KESx, 2020 U.S. Dist. LEXIS 62309, at \*4-5 (C.D. Cal. Apr. 3, 2020). Further, your objection on the basis of privacy is improper. *Desilva v. Allergan United States*, No. 8:19-cv-01606-JLS (JDEx), 2020 U.S. Dist. LEXIS 188545, at \*10-11 (C.D. Cal. Sep. 1, 2020).

Your response to request 22 contains several bad faith objections. First, your objection that the interrogatory is "overbroad in scope, oppressive and harassing as stated" is baseless and improper. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at \*6-11 (C.D. Cal. Oct. 12, 2016). Second, your objection that the interrogatory is "vague and ambiguous" as to time is patently false, as all interrogatories are bound (unless otherwise stated) by Instruction K as you indicated in your response to request 3. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at \*11 (C.D. Cal. Oct. 12, 2016). Further, your objection that the interrogatory is "vague and ambiguous" as to "all assets" is improper. *Id*. Additionally, this interrogatory plainly seeks relevant information, considering the claims at issue. *Ocean Garden Products v. Blessings, Inc.*, No. 8:20-mc-00006-JVS-KESx, 2020 U.S. Dist. LEXIS 62309, at \*4-5 (C.D. Cal. Apr. 3, 2020). Further, your objection on the basis of privacy is improper. *Desilva v. Allergan United States*, No. 8:19-cv-01606-JLS (JDEx), 2020 U.S. Dist. LEXIS 188545, at \*10-11 (C.D. Cal. Sep. 1, 2020). Lastly, your objection on the basis of FRCP 33(a)(1) is baseless and without merit.

**Webb Family Trust's Responses To Plaintiff's First Set of Requests for the Production of Documents**

Several of your responses include objections by "Labrador"; these objections are generally improper, run afoul of FRCP 34(b)(2), and are waived. Notwithstanding those waived objections, Plaintiff responds as follows:

Your response to request 1 contains several bad faith objections. First, your objection that the request is "overbroad, oppressive and harassing as stated" is baseless and improper. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at \*11 (C.D. Cal. Oct. 12, 2016). Further, your objection that the request is "vague and ambiguous" is improper. *Id*. Additionally, your response improperly asserts attorney-client privilege without the inclusion of a

BLAISE & NITSCHKE, P.C.

Beatbox v. Labrador, et al.
May 5, 2021
Page 30

privilege log. FRCP 26(b)(5); *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016
U.S. Dist. LEXIS 192169, at *9 (C.D. Cal. Oct. 12, 2016). Your objection on the basis of FRCP
34(b)(1)(a) is baseless; you are required to produce an individualized response to each request for
production. *Conan v. City of Fontana*, No. EDCV 16-1261-KK, 2017 U.S. Dist. LEXIS 103780,
at *6-7 (C.D. Cal. July 5, 2017). It is improper to object that the requesting party already has the
requested documents. *Banuelos v. City of San Bernardino*, No. EDCV 13-736-GW (KKx), 2017
U.S. Dist. LEXIS 198247, at *14 (C.D. Cal. Dec. 1, 2017).

Your response to request 2 contains several bad faith objections. First, your objection that the
request is "overbroad, oppressive and harassing as stated" is baseless and improper. *Ecojet, Inc. v.
Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal.
Oct. 12, 2016). Further, your objection that the request is "vague and ambiguous" is improper. *Id*.
Additionally, your response improperly asserts attorney-client privilege without the inclusion of a
privilege log. FRCP 26(b)(5); *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016
U.S. Dist. LEXIS 192169, at *9 (C.D. Cal. Oct. 12, 2016). Your objection on the basis of FRCP
34(b)(1)(a) is baseless; you are required to produce an individualized response to each request for
production. *Conan v. City of Fontana*, No. EDCV 16-1261-KK, 2017 U.S. Dist. LEXIS 103780,
at *6-7 (C.D. Cal. July 5, 2017). Finally, your citation to *Coley v. Ventura Cty.* is misrepresentative
and improper; while the court in that case held that the responding party was not required to create
new data, testing, or documents that did not already exist, any existing documents containing such
data or information were subject to production. 2020 U.S. Dist. LEXIS 249557, at *29 (C.D. Cal.,
June 8, 2020).

Your response to request 3 contains several bad faith objections. First, your objection that the
request is "overbroad, oppressive and harassing as stated" is baseless and improper. *Ecojet, Inc. v.
Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal.
Oct. 12, 2016). Additionally, your objection that "[t]his request is … the proportional to the needs
of the case" is completely unintelligible. Third, your objection that the request is "vague and
ambiguous" as to time is patently false, as all requests are bound (unless otherwise stated) by
Instruction K as you indicated in your response to request 5. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV
16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal. Oct. 12, 2016). Further,
your objection that the request is "vague and ambiguous" as to "communications" is improper. *Id*.
Finally, your objection on the basis of FRCP 34(b)(1)(a) is baseless; you are required to produce
an individualized response to each request for production. *Conan v. City of Fontana*, No. EDCV
16-1261-KK, 2017 U.S. Dist. LEXIS 103780, at *6-7 (C.D. Cal. July 5, 2017).

Your response to request 4 contains several bad faith objections. First, your objection that the
request is "overbroad, oppressive and harassing as stated" is baseless and improper. *Ecojet, Inc. v.
Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal.
Oct. 12, 2016). Additionally, your objection that "[t]his request is … the proportional to the needs
of the case" is completely unintelligible. Finally, your objection on the basis of FRCP 34(b)(1)(a)
is baseless; you are required to produce an individualized response to each request for production.

BLAISE & NITSCHKE, P.C.

Beatbox v. Labrador, et al.
May 5, 2021
Page 31

*Conan v. City of Fontana*, No. EDCV 16-1261-KK, 2017 U.S. Dist. LEXIS 103780, at *6-7 (C.D. Cal. July 5, 2017).

Your response to request 5 contains several bad faith objections. First, this request plainly seeks relevant information that is proportional to the needs of the case, considering the claims at issue. *Ocean Garden Products v. Blessings, Inc.*, No. 8:20-mc-00006-JVS-KESx, 2020 U.S. Dist. LEXIS 62309, at *4-5 (C.D. Cal. Apr. 3, 2020). Second, any purported objections by "Labrador" are improper under FRCP 34 (b)(2)(A) and are waived. Third, your citation to *Sanders* does not properly support your objection; *Sanders* concerned a request to produce 31 semi-annual reports conducted on the Los Angeles County Sherriff's Department by an outside monitor which spanned beyond the time frame of the complained-of civil rights violation. *Sanders v. L.A. County*, 2018 U.S. Dist. LEXIS 225237, (C.D. Cal. Nov. 16, 2018). Nothing in that opinion stands for the notion that an interrogatory (or even request for production) spanning a (nearly) 20-year period is overbroad by nature; in fact, the same opinion acknowledges that the same reports were produced in parallel case to the one cited. Finally, your response improperly asserts attorney-client privilege without the inclusion of a privilege log. FRCP 26(b)(5); *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *9 (C.D. Cal. Oct. 12, 2016).

Your response to request 6 contains several bad faith objections. First, this request plainly seeks relevant information that is proportional to the needs of the case, considering the claims at issue. *Ocean Garden Products v. Blessings, Inc.*, No. 8:20-mc-00006-JVS-KESx, 2020 U.S. Dist. LEXIS 62309, at *4-5 (C.D. Cal. Apr. 3, 2020). Second, any purported objections by "Labrador" are improper under FRCP 34 (b)(2)(A) and are waived. Third, your objection that the request is "vague and ambiguous" as to time is patently false, as all requests are bound (unless otherwise stated) by Instruction K as you indicated in your response to this request. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal. Oct. 12, 2016). Further, your objection that the request is "vague and ambiguous" as to "relating to in-person meetings" is improper. *Id.* Additionally, your citation to *Sanders* does not properly support your objection; *Sanders* concerned a request to produce 31 semi-annual reports conducted on the Los Angeles County Sherriff's Department by an outside monitor which spanned beyond the time frame of the complained-of civil rights violation. *Sanders v. L.A. County*, 2018 U.S. Dist. LEXIS 225237, (C.D. Cal. Nov. 16, 2018). Nothing in that opinion stands for the notion that an interrogatory (or even request for production) spanning a (nearly) 20-year period is overbroad by nature; in fact, the same opinion acknowledges that the same reports were produced in parallel case to the one cited. Finally, your response improperly asserts attorney-client privilege without the inclusion of a privilege log. FRCP 26(b)(5); *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *9 (C.D. Cal. Oct. 12, 2016).

Your response to request 7 contains several bad faith objections. First, this request plainly seeks relevant information that is proportional to the needs of the case, considering the claims at issue. *Ocean Garden Products v. Blessings, Inc.*, No. 8:20-mc-00006-JVS-KESx, 2020 U.S. Dist. LEXIS 62309, at *4-5 (C.D. Cal. Apr. 3, 2020). Second, any purported objections by "Labrador" are

BLAISE & NITSCHKE, P.C.

Beatbox v. Labrador, et al.
May 5, 2021
Page 32

improper under FRCP 34 (b)(2)(A) and are waived. Third, your objection that the request is "vague and ambiguous" as to time is patently false, as all requests are bound (unless otherwise stated) by Instruction K as you indicated in your response to request 5. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal. Oct. 12, 2016). Further, your objection that the request is "vague and ambiguous" as to "relating to in-person meetings" and "related to the Composition" is improper. *Id.* Additionally, your citation to *Sanders* does not properly support your objection; *Sanders* concerned a request to produce 31 semi-annual reports conducted on the Los Angeles County Sherriff's Department by an outside monitor which spanned beyond the time frame of the complained-of civil rights violation. *Sanders v. L.A. County*, 2018 U.S. Dist. LEXIS 225237, (C.D. Cal. Nov. 16, 2018). Nothing in that opinion stands for the notion that an interrogatory (or even request for production) spanning a (nearly) 20-year period is overbroad by nature; in fact, the same opinion acknowledges that the same reports were produced in parallel case to the one cited. Finally, your response improperly asserts attorney-client privilege without the inclusion of a privilege log. FRCP 26(b)(5); *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *9 (C.D. Cal. Oct. 12, 2016).

Your response to request 8 contains several bad faith objections. First, this request plainly seeks relevant information that is proportional to the needs of the case, considering the claims at issue. *Ocean Garden Products v. Blessings, Inc.*, No. 8:20-mc-00006-JVS-KESx, 2020 U.S. Dist. LEXIS 62309, at *4-5 (C.D. Cal. Apr. 3, 2020). Second, any purported objections by "Labrador" are improper under FRCP 34 (b)(2)(A) and are waived. Finally, notwithstanding the previous objection, your citation to *Lopez v. Chertoff* is improper, as that court held that a request such as this that tracks with a request for the information required by the Rule 26 (a) disclosures would be sufficiently particular to comply with Rule 34(b)(1)(A). 2009 U.S. Dist. LEXIS 50419, at *7-9 (E.D. Cal. June 2, 2009).

Your response to request 9 contains several bad faith objections. First, this request plainly seeks relevant information that is proportional to the needs of the case, considering the claims at issue. *Ocean Garden Products v. Blessings, Inc.*, No. 8:20-mc-00006-JVS-KESx, 2020 U.S. Dist. LEXIS 62309, at *4-5 (C.D. Cal. Apr. 3, 2020). Second, any purported objections by "Labrador" are improper under FRCP 34 (b)(2)(A) and are waived. Notwithstanding the previous objection, your citation to *Lopez v. Chertoff* is improper, as that court held that a request for all *documents* that was not "narrowed to categories or types of documents" ran afoul of Rule 34; here, the request is for *correspondence*, which is a narrowed category of documents. 2009 U.S. Dist. LEXIS 50419, at *7-9 (E.D. Cal. June 2, 2009). Further, your objection that the request is "vague and ambiguous" as to "correspondence," and "relating to plaintiff" is improper. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal. Oct. 12, 2016). Additionally, your citation to *Sanders* does not properly support your objection; *Sanders* concerned a request to produce 31 semi-annual reports conducted on the Los Angeles County Sherriff's Department by an outside monitor which spanned beyond the time frame of the complained-of civil rights violation. *Sanders v. L.A. County*, 2018 U.S. Dist. LEXIS 225237, (C.D. Cal. Nov. 16, 2018). Nothing in that opinion stands for the notion that an interrogatory (or even

BLAISE & NITSCHKE, P.C.

Beatbox v. Labrador, et al.
May 5, 2021
Page 33

request for production) spanning a (nearly) 20-year period is overbroad by nature; in fact, the same opinion acknowledges that the same reports were produced in parallel case to the one cited. Finally, your response improperly asserts attorney-client privilege without the inclusion of a privilege log. FRCP 26(b)(5); *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *9 (C.D. Cal. Oct. 12, 2016).

Your response to request 10 contains several bad faith objections. First, this request plainly seeks relevant information that is proportional to the needs of the case, considering the claims at issue; your purported need for a protective order is overstated. *Ocean Garden Products v. Blessings, Inc.*, No. 8:20-mc-00006-JVS-KESx, 2020 U.S. Dist. LEXIS 62309, at *4-5 (C.D. Cal. Apr. 3, 2020). Second, your objection that the request is "oppressive and harassing" is improper; you are required to produce an individualized response to each request for production. *Conan v. City of Fontana*, No. EDCV 16-1261-KK, 2017 U.S. Dist. LEXIS 103780, at *6-7 (C.D. Cal. July 5, 2017). It is improper to object that the requesting party already has the requested documents. *Banuelos v. City of San Bernardino*, No. EDCV 13-736-GW (KKx), 2017 U.S. Dist. LEXIS 198247, at *14 (C.D. Cal. Dec. 1, 2017).

Your response to request 11 contains several bad faith objections. First, your objection that the request is "overbroad in scope, oppressive and harassing as stated" is baseless and improper. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal. Oct. 12, 2016). Similarly, your objection that the request "violates FRCP 26(b) as to the scope of discovery" is baseless and improper. *Id.*; *Conan v. City of Fontana*, No. EDCV 16-1261-KK, 2017 U.S. Dist. LEXIS 103780, at *6-7 (C.D. Cal. July 5, 2017). Third, your objection that the request is "vague and ambiguous and unintelligible" as to time is patently false, as all requests are bound (unless otherwise stated) by Instruction K as you indicated in your response to request 5. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal. Oct. 12, 2016). Further, your objection that the request is "vague and ambiguous" as to "asset transfers" and "the New Zealand claim" is improper. *Id.* Additionally, this request plainly seeks relevant information that is proportional to the needs of the case, considering the claims at issue; your purported need for a protective order is overstated. *Ocean Garden Products v. Blessings, Inc.*, No. 8:20-mc-00006-JVS-KESx, 2020 U.S. Dist. LEXIS 62309, at *4-5 (C.D. Cal. Apr. 3, 2020). *Flores v. Albertsons Inc.* is inapplicable to this case and your citation thereof is improper; in *Flores*, this Court declined to compel production of tax returns in a dispute over employment classification where W2s and 1099s had already been produced, which does not support your claim of Defendant's right to privacy. *See* 2002 U.S. Dist. LEXIS 6171, (C.D. Cal. Apr. 9, 2002). Finally, it is improper to object that the requesting party can get the documents from other sources; the responding party must conduct a diligent search and reasonable inquiry. *Banuelos v. City of San Bernardino*, No. EDCV 13-736-GW (KKx), 2017 U.S. Dist. LEXIS 198247, at *14 (C.D. Cal. Dec. 1, 2017).

Your response to request 12 contains several bad faith objections. First, any purported objections by "Labrador" are improper under FRCP 34 (b)(2)(A) and are waived. Notwithstanding the



Beatbox v. Labrador, et al.
May 5, 2021
Page 34

previous objection, your citation to *Lopez v. Chertoff* is improper, as that court held that a request for all documents *relating to plaintiff* that was not "narrowed to categories or types of documents" ran afoul of Rule 34; here, the request is for documents "relating to YOUR relationship with any and all co-defendant(s)", which is a narrowed category of documents. 2009 U.S. Dist. LEXIS 50419, at *7-9 (E.D. Cal. June 2, 2009). Additionally, your citation to *Sanders* does not properly support your objection; *Sanders* concerned a request to produce 31 semi-annual reports conducted on the Los Angeles County Sheriff's Department by an outside monitor which spanned beyond the time frame of the complained-of civil rights violation. *Sanders v. L.A. County*, 2018 U.S. Dist. LEXIS 225237, (C.D. Cal. Nov. 16, 2018). Nothing in that opinion stands for the notion that an interrogatory (or even request for production) spanning a (nearly) 20-year period is overbroad by nature; in fact, the same opinion acknowledges that the same reports were produced in parallel case to the one cited.

Your response to request 13 contains several bad faith objections. First, any purported objections by "Labrador" are improper under FRCP 34 (b)(2)(A) and are waived. Notwithstanding the previous objection, your objection that the request is "overbroad, oppressive and harassing as stated" is baseless and improper; it is also needlessly repeated, exposing a lack of due diligence in your responses. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal. Oct. 12, 2016). Third, this request plainly seeks relevant information that is proportional to the needs of the case, considering the claims at issue. *Ocean Garden Products v. Blessings, Inc.*, No. 8:20-mc-00006-JVS-KESx, 2020 U.S. Dist. LEXIS 62309, at *4-5 (C.D. Cal. Apr. 3, 2020). Further, your objection on the basis of privacy is improper. *Desilva v. Allergan United States*, No. 8:19-cv-01606-JLS (JDEx), 2020 U.S. Dist. LEXIS 188545, at *10-11 (C.D. Cal. Sep. 1, 2020). Additionally, your objection that "[t]his request is … the proportional to the needs of the case" is completely unintelligible. Further, your objection that the request is "vague and ambiguous" as to time is patently false, as all requests are bound (unless otherwise stated) by Instruction K as you indicated in your response to request 5. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal. Oct. 12, 2016). Further, your objection that the request is "vague and ambiguous" as to "communications" is improper. *Id*.

Your response to request 14 contains several bad faith objections. First, your objection that the request is "overbroad in scope, oppressive and harassing as stated" is baseless and improper. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal. Oct. 12, 2016). Similarly, your objection that the request "violates FRCP 26(b) as to the scope of discovery" is baseless and improper. *Id*.; *Conan v. City of Fontana*, No. EDCV 16-1261-KK, 2017 U.S. Dist. LEXIS 103780, at *6-7 (C.D. Cal. July 5, 2017). Additionally, this request plainly seeks relevant information that is proportional to the needs of the case, considering the claims at issue; Defendant's purported "right to privacy" and need for a protective order is overstated. *Ocean Garden Products v. Blessings, Inc.*, No. 8:20-mc-00006-JVS-KESx, 2020 U.S. Dist. LEXIS 62309, at *4-5 (C.D. Cal. Apr. 3, 2020); *Desilva v. Allergan United States*, No. 8:19-cv-01606-JLS (JDEx), 2020 U.S. Dist. LEXIS 188545, at *10-11 (C.D. Cal. Sep. 1, 2020). *Flores*

**BLAISE & NITSCHKE, P.C.**

Beatbox v. Labrador, et al.
May 5, 2021
Page 35

*v. Albertsons Inc.* is inapplicable to this case and your citation thereof is improper; in *Flores*, this Court declined to compel production of tax returns in a dispute over employment classification where W2s and 1099s had already been produced, which does not support your claim of Defendant's right to privacy. *See* 2002 U.S. Dist. LEXIS 6171, (C.D. Cal. Apr. 9, 2002). Further, it is improper to object that the requesting party can get the documents from other sources; the responding party must conduct a diligent search and reasonable inquiry. *Banuelos v. City of San Bernardino*, No. EDCV 13-736-GW (KKx), 2017 U.S. Dist. LEXIS 198247, at *14 (C.D. Cal. Dec. 1, 2017). Finally, your response improperly asserts attorney-client privilege without the inclusion of a privilege log. FRCP 26(b)(5); *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *9 (C.D. Cal. Oct. 12, 2016).

Your response to request 15 contains several bad faith objections. First, any purported objections by "Labrador" are improper under FRCP 34 (b)(2)(A) and are waived. Notwithstanding the previous objection, your objection that the request is "overbroad, oppressive and harassing as stated" is baseless and improper. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal. Oct. 12, 2016). Further, it is improper to object that the requesting party can get the documents from other sources; the responding party must conduct a diligent search and reasonable inquiry. *Banuelos v. City of San Bernardino*, No. EDCV 13-736-GW (KKx), 2017 U.S. Dist. LEXIS 198247, at *14 (C.D. Cal. Dec. 1, 2017). Additionally, your objection that the request is "vague and ambiguous" as to time is patently false, as all requests are bound (unless otherwise stated) by Instruction K as you indicated in your response to request 5. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal. Oct. 12, 2016). Further, your objection that the request is "vague and ambiguous" as to "conveyances of rights" is improper. *Id*. Finally, your citation to *Coley v. Ventura Cty.* is misrepresentative and improper; while the court in that case held that the responding party was not required to create new data, testing, or documents that did not already exist, any existing documents containing such data or information were subject to production. 2020 U.S. Dist. LEXIS 249557, at *29 (C.D. Cal., June 8, 2020).

Your response to request 16 contains several bad faith objections. First, any purported objections by "Labrador" are improper under FRCP 34 (b)(2)(A) and are waived. Notwithstanding the previous objection, your objection that the request is "overbroad, oppressive and harassing as stated" is baseless and improper. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal. Oct. 12, 2016). Similarly, your objection that the request "violates FRCP 26(b) that defines the scope of discovery" is baseless and improper. *Id.*; *Conan v. City of Fontana*, No. EDCV 16-1261-KK, 2017 U.S. Dist. LEXIS 103780, at *6-7 (C.D. Cal. July 5, 2017). Additionally, your objection that the request is "vague and ambiguous" as to time is patently false, as all requests are bound (unless otherwise stated) by Instruction K as you indicated in your response to request 5. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal. Oct. 12, 2016). Further, your objection that the request is "vague and ambiguous" as to "YOU claim any interest" is improper. *Id*. Finally, your citation to *Coley v. Ventura Cty.* is misrepresentative and improper; while the court in that

BLAISE & NITSCHKE, P.C.

Beatbox v. Labrador, et al.
May 5, 2021
Page 36

case held that the responding party was not required to create new data, testing, or documents that did not already exist, any existing documents containing such data or information were subject to production. 2020 U.S. Dist. LEXIS 249557, at *29 (C.D. Cal., June 8, 2020).

Your response to request 17 contains several bad faith objections. First, it is improper to object that the requesting party already has the requested documents. *Banuelos v. City of San Bernardino*, No. EDCV 13-736-GW (KKx), 2017 U.S. Dist. LEXIS 198247, at *14 (C.D. Cal. Dec. 1, 2017). Second, any purported objections by "Labrador" are improper under FRCP 34 (b)(2)(A) and are waived. Notwithstanding the previous objection, your objection that the request is "overbroad, oppressive and harassing as stated" is baseless and improper. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal. Oct. 12, 2016). Additionally, your objection that the request is "vague and ambiguous" as to time is patently false, as all requests are bound (unless otherwise stated) by Instruction K as you indicated in your response to request 5. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal. Oct. 12, 2016). Further, your objection that the request is "vague and ambiguous" as to "conveyances of rights" is improper. *Id*. Finally, Labrador's citation to *Coley v. Ventura Cty.* is misrepresentative and improper; while the court in that case held that the responding party was not required to create new data, testing, or documents that did not already exist, any existing documents containing such data or information were subject to production. 2020 U.S. Dist. LEXIS 249557, at *29 (C.D. Cal., June 8, 2020).

Your response to request 18 contains several bad faith objections. First, your objection that the request is "overbroad in scope, oppressive and harassing as stated" is baseless and improper. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal. Oct. 12, 2016). Similarly, your objection that the request "violates FRCP 26(b) that defines the scope of discovery" is baseless and improper. *Id*.; *Conan v. City of Fontana*, No. EDCV 16-1261-KK, 2017 U.S. Dist. LEXIS 103780, at *6-7 (C.D. Cal. July 5, 2017). Third, this request plainly seeks relevant information that is proportional to the needs of the case, considering the claims at issue. *Ocean Garden Products v. Blessings, Inc.*, No. 8:20-mc-00006-JVS-KESx, 2020 U.S. Dist. LEXIS 62309, at *4-5 (C.D. Cal. Apr. 3, 2020). Additionally, your objection that the request is "vague and ambiguous" as to time is patently false, as all requests are bound (unless otherwise stated) by Instruction K as you indicated in your response to request 5. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal. Oct. 12, 2016). Finally, your objection that the request is "vague and ambiguous" as to "conveyances" and "YOU claim any interest" is improper. *Id*.

Your response to request 19 contains several bad faith objections. First, your objection that the request is "overbroad in scope, oppressive and harassing as stated" is baseless and improper. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal. Oct. 12, 2016). Similarly, your objection that the request "violates FRCP 26(b) that defines the scope of discovery" is baseless and improper. *Id*.; *Conan v. City of Fontana*, No. EDCV 16-1261-KK, 2017 U.S. Dist. LEXIS 103780, at *6-7 (C.D. Cal. July 5, 2017). Additionally, this



BLAISE & NITSCHKE, P.C.

Beatbox v. Labrador, et al.
May 5, 2021
Page 37

request plainly seeks relevant information that is proportional to the needs of the case, considering the claims at issue; Defendant's purported "right to privacy" and need for a protective order is overstated. *Ocean Garden Products v. Blessings, Inc.*, No. 8:20-mc-00006-JVS-KESx, 2020 U.S. Dist. LEXIS 62309, at *4-5 (C.D. Cal. Apr. 3, 2020); *Desilva v. Allergan United States*, No. 8:19-cv-01606-JLS (JDEx), 2020 U.S. Dist. LEXIS 188545, at *10-11 (C.D. Cal. Sep. 1, 2020). *Flores v. Albertsons Inc.* is inapplicable to this case and your citation thereof is improper; in *Flores*, this Court declined to compel production of tax returns in a dispute over employment classification where W2s and 1099s had already been produced, which does not support your claim of Defendant's right to privacy. *See* 2002 U.S. Dist. LEXIS 6171, (C.D. Cal. Apr. 9, 2002).

Your response to request 20 is unintelligible and completely unrelated to the relevant request, as reproduced.

Your response to request 21 contains several bad faith objections. First, your objection that the request is "overbroad in scope, oppressive, burdensome and harassing as stated" is baseless and improper. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal. Oct. 12, 2016). Similarly, your objection that the request violates the scope of discovery as defined by FRCP 26(b) is baseless and improper. *Id.*; *Conan v. City of Fontana*, No. EDCV 16-1261-KK, 2017 U.S. Dist. LEXIS 103780, at *6-7 (C.D. Cal. July 5, 2017). *Flores v. Albertsons Inc.* is inapplicable to this case and your citation thereof is improper; in *Flores*, this Court declined to compel production of tax returns in a dispute over employment classification where W2s and 1099s had already been produced, which does not support your claim of Defendant's right to privacy. *See* 2002 U.S. Dist. LEXIS 6171, (C.D. Cal. Apr. 9, 2002). Further, it is improper to object that the requesting party can get the documents from other sources; the responding party must conduct a diligent search and reasonable inquiry. *Banuelos v. City of San Bernardino*, No. EDCV 13-736-GW (KKx), 2017 U.S. Dist. LEXIS 198247, at *14 (C.D. Cal. Dec. 1, 2017). Additionally, this request plainly seeks relevant information that is proportional to the needs of the case, considering the claims at issue; Defendant's purported "right to privacy" and need for a protective order is overstated. *Ocean Garden Products v. Blessings, Inc.*, No. 8:20-mc-00006-JVS-KESx, 2020 U.S. Dist. LEXIS 62309, at *4-5 (C.D. Cal. Apr. 3, 2020); *Desilva v. Allergan United States*, No. 8:19-cv-01606-JLS (JDEx), 2020 U.S. Dist. LEXIS 188545, at *10-11 (C.D. Cal. Sep. 1, 2020). Finally, your response improperly asserts attorney-client privilege without the inclusion of a privilege log. FRCP 26(b)(5); *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *9 (C.D. Cal. Oct. 12, 2016).

Your response to request 22 contains several bad faith objections. First, your objection that the request is "overbroad in scope, oppressive and harassing as stated" is baseless and improper. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal. Oct. 12, 2016). Similarly, your objection that the request "violates FRCP 26(b) that defines the scope of discovery" is baseless and improper. *Id.*; *Conan v. City of Fontana*, No. EDCV 16-1261-KK, 2017 U.S. Dist. LEXIS 103780, at *6-7 (C.D. Cal. July 5, 2017). Third, your response improperly asserts attorney-client privilege without the inclusion of a privilege log. FRCP

BLAISE & NITSCHKE, P.C.

Beatbox v. Labrador, et al.
May 5, 2021
Page 38

26(b)(5); *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *9 (C.D. Cal. Oct. 12, 2016). Additionally, your objection that the request is "vague and ambiguous" as to time is patently false, as all requests are bound (unless otherwise stated) by Instruction K as you indicated in your response to request 5. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal. Oct. 12, 2016). Further, your objection that the request is "vague and ambiguous" as to "asset transfers" and "the New Zealand claim" is improper. *Id*. Indeed, this request plainly seeks relevant information that is proportional to the needs of the case, considering the claims at issue; Defendant's purported "right to privacy" and need for a protective order is overstated. *Ocean Garden Products v. Blessings, Inc.*, No. 8:20-mc-00006-JVS-KESx, 2020 U.S. Dist. LEXIS 62309, at *4-5 (C.D. Cal. Apr. 3, 2020); *Desilva v. Allergan United States*, No. 8:19-cv-01606-JLS (JDEx), 2020 U.S. Dist. LEXIS 188545, at *10-11 (C.D. Cal. Sep. 1, 2020). *Flores v. Albertsons Inc.* is inapplicable to this case and your citation thereof is improper; in *Flores*, this Court declined to compel production of tax returns in a dispute over employment classification where W2s and 1099s had already been produced, which does not support your claim of Defendant's right to privacy. *See* 2002 U.S. Dist. LEXIS 6171, (C.D. Cal. Apr. 9, 2002). Finally, it is improper to object that the requesting party can get the documents from other sources; the responding party must conduct a diligent search and reasonable inquiry. *Banuelos v. City of San Bernardino*, No. EDCV 13-736-GW (KKx), 2017 U.S. Dist. LEXIS 198247, at *14 (C.D. Cal. Dec. 1, 2017).

Your response to request 23 contains several bad faith objections. First, your objection that the request is "overbroad in scope, oppressive and harassing as stated" is baseless and improper. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal. Oct. 12, 2016). Similarly, your objection that the request "violates FRCP 26(b) as to the scope of discovery" is baseless and improper. *Id*.; *Conan v. City of Fontana*, No. EDCV 16-1261-KK, 2017 U.S. Dist. LEXIS 103780, at *6-7 (C.D. Cal. July 5, 2017). Third, your response improperly asserts attorney-client privilege without the inclusion of a privilege log. FRCP 26(b)(5); *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *9 (C.D. Cal. Oct. 12, 2016). Additionally, your objection that the request is "vague and ambiguous" as to time is patently false, as all requests are bound (unless otherwise stated) by Instruction K as you indicated in your response to request 5. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal. Oct. 12, 2016). Further, your objection that the request is "vague and ambiguous" as to "asset transfers" and "the New Zealand claim" is improper. *Id*. Indeed, this request plainly seeks relevant information that is proportional to the needs of the case, considering the claims at issue; Defendant's purported "right to privacy" and need for a protective order is overstated. *Ocean Garden Products v. Blessings, Inc.*, No. 8:20-mc-00006-JVS-KESx, 2020 U.S. Dist. LEXIS 62309, at *4-5 (C.D. Cal. Apr. 3, 2020); *Desilva v. Allergan United States*, No. 8:19-cv-01606-JLS (JDEx), 2020 U.S. Dist. LEXIS 188545, at *10-11 (C.D. Cal. Sep. 1, 2020). *Flores v. Albertsons Inc.* is inapplicable to this case and your citation thereof is improper; in *Flores*, this Court declined to compel production of tax returns in a dispute over employment classification where W2s and 1099s had already been produced, which does not support your claim of Defendant's right to privacy. *See* 2002 U.S. Dist.

BLAISE & NITSCHKE, P.C.

Beatbox v. Labrador, et al.
May 5, 2021
Page 39

LEXIS 6171, (C.D. Cal. Apr. 9, 2002). Finally, it is improper to object that the requesting party
can get the documents from other sources; the responding party must conduct a diligent search and
reasonable inquiry. *Banuelos v. City of San Bernardino*, No. EDCV 13-736-GW (KKx), 2017 U.S.
Dist. LEXIS 198247, at *14 (C.D. Cal. Dec. 1, 2017).

Your response to request 24 contains several bad faith objections. First, your objection that the
request is "overbroad in scope, oppressive, burdensome and harassing as stated" is baseless and
improper. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS
192169, at *11 (C.D. Cal. Oct. 12, 2016). Similarly, your objection that the request "violates FRCP
26(b) which defines the scope of discovery" is baseless and improper. *Id.*; *Conan v. City of
Fontana*, No. EDCV 16-1261-KK, 2017 U.S. Dist. LEXIS 103780, at *6-7 (C.D. Cal. July 5,
2017). Indeed, this request plainly seeks relevant information that is proportional to the needs of
the case, considering the claims at issue; Defendant's purported "right to privacy" and need for a
protective order is overstated. *Ocean Garden Products v. Blessings, Inc.*, No. 8:20-mc-00006-JVS-
KESx, 2020 U.S. Dist. LEXIS 62309, at *4-5 (C.D. Cal. Apr. 3, 2020); *Desilva v. Allergan United
States*, No. 8:19-cv-01606-JLS (JDEx), 2020 U.S. Dist. LEXIS 188545, at *10-11 (C.D. Cal. Sep.
1, 2020). *Flores v. Albertsons Inc.* is inapplicable to this case and your citation thereof is improper;
in *Flores*, this Court declined to compel production of tax returns in a dispute over employment
classification where W2s and 1099s had already been produced, which does not support your claim
of Defendant's right to privacy. *See* 2002 U.S. Dist. LEXIS 6171, (C.D. Cal. Apr. 9, 2002).

Your response to request 25 contains several bad faith objections. First, your objection that the
request is "overbroad in scope, oppressive and harassing as stated" is baseless and improper.
*Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at
*11 (C.D. Cal. Oct. 12, 2016). Similarly, your objection that the request "violates FRCP 26(b)
which defines the scope of discovery" is baseless and improper. *Id.*; *Conan v. City of Fontana*, No.
EDCV 16-1261-KK, 2017 U.S. Dist. LEXIS 103780, at *6-7 (C.D. Cal. July 5, 2017). Indeed, this
request plainly seeks relevant information that is proportional to the needs of the case, considering
the claims at issue; Defendant's purported "right to privacy" and need for a protective order is
overstated. *Ocean Garden Products v. Blessings, Inc.*, No. 8:20-mc-00006-JVS-KESx, 2020 U.S.
Dist. LEXIS 62309, at *4-5 (C.D. Cal. Apr. 3, 2020); *Desilva v. Allergan United States*, No. 8:19-
cv-01606-JLS (JDEx), 2020 U.S. Dist. LEXIS 188545, at *10-11 (C.D. Cal. Sep. 1, 2020). *Flores
v. Albertsons Inc.* is inapplicable to this case and your citation thereof is improper; in *Flores*, this
Court declined to compel production of tax returns in a dispute over employment classification
where W2s and 1099s had already been produced, which does not support your claim of
Defendant's right to privacy. *See* 2002 U.S. Dist. LEXIS 6171, (C.D. Cal. Apr. 9, 2002).

Your response to request 26 contains several bad faith objections. First, your objection that the
request is "oppressive and harassing as stated" is baseless and improper. *Ecojet, Inc. v. Luraco,
Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal. Oct. 12,
2016). Similarly, your objection that the request "violates FRCP 26(b) which defines the scope of
discovery" is baseless and improper. *Id.*; *Conan v. City of Fontana*, No. EDCV 16-1261-KK, 2017

BLAISE & NITSCHKE, P.C.

Beatbox v. Labrador, et al.
May 5, 2021
Page 40

U.S. Dist. LEXIS 103780, at *6-7 (C.D. Cal. July 5, 2017). Indeed, this request plainly seeks relevant information that is proportional to the needs of the case, considering the claims at issue; Defendant's purported "right to privacy" and need for a protective order is overstated. *Ocean Garden Products v. Blessings, Inc.*, No. 8:20-mc-00006-JVS-KESx, 2020 U.S. Dist. LEXIS 62309, at *4-5 (C.D. Cal. Apr. 3, 2020); *Desilva v. Allergan United States*, No. 8:19-cv-01606-JLS (JDEx), 2020 U.S. Dist. LEXIS 188545, at *10-11 (C.D. Cal. Sep. 1, 2020). Finally, your objection that the request is "vague and ambiguous, and as to the term 'YOUR purchase'" is unintelligible, and nonetheless improper. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal. Oct. 12, 2016).

Your response to request 27 contains several bad faith objections. First, your objection that the request is "overbroad in scope, oppressive and harassing as stated" is baseless and improper. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal. Oct. 12, 2016). Similarly, your objection that the request "violates FRCP 26(b) which defines the scope of discovery" is baseless and improper. *Id.*; *Conan v. City of Fontana*, No. EDCV 16-1261-KK, 2017 U.S. Dist. LEXIS 103780, at *6-7 (C.D. Cal. July 5, 2017). Third, your response improperly asserts attorney-client privilege without the inclusion of a privilege log. FRCP 26(b)(5); *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *9 (C.D. Cal. Oct. 12, 2016). Additionally, your objection that the request is "vague and ambiguous" as to time is patently false, as all requests are bound (unless otherwise stated) by Instruction K as you indicated in your response to request 5. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal. Oct. 12, 2016). Indeed, this request plainly seeks relevant information that is proportional to the needs of the case, considering the claims at issue; Defendant's purported "right to privacy" and need for an AEO protective order are baseless and overstated. *Ocean Garden Products v. Blessings, Inc.*, No. 8:20-mc-00006-JVS-KESx, 2020 U.S. Dist. LEXIS 62309, at *4-5 (C.D. Cal. Apr. 3, 2020); *Desilva v. Allergan United States*, No. 8:19-cv-01606-JLS (JDEx), 2020 U.S. Dist. LEXIS 188545, at *10-11 (C.D. Cal. Sep. 1, 2020).

Your response to request 28 contains several bad faith objections. First, your objection that the request is "overbroad in scope, oppressive and harassing as stated" is baseless and improper. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal. Oct. 12, 2016). Similarly, your objection that the request "violates FRCP 26(b) which defines the scope of discovery" is baseless and improper. *Id.*; *Conan v. City of Fontana*, No. EDCV 16-1261-KK, 2017 U.S. Dist. LEXIS 103780, at *6-7 (C.D. Cal. July 5, 2017). Additionally, your objection that the request is "vague and ambiguous" as to time is patently false, as all requests are bound (unless otherwise stated) by Instruction K as you indicated in your response to request 5. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal. Oct. 12, 2016). Further, your objection that the request is "vague and ambiguous" as to "provide" is improper. *Id.* Indeed, this request plainly seeks relevant information that is proportional to the needs of the case, considering the claims at issue; Defendant's purported "right to privacy" and need for a protective order are baseless and

BLAISE & NITSCHKE, P.C.

Beatbox v. Labrador, et al.
May 5, 2021
Page 41

overstated. *Ocean Garden Products v. Blessings, Inc.*, No. 8:20-mc-00006-JVS-KESx, 2020 U.S. Dist. LEXIS 62309, at *4-5 (C.D. Cal. Apr. 3, 2020); *Desilva v. Allergan United States*, No. 8:19-cv-01606-JLS (JDEx), 2020 U.S. Dist. LEXIS 188545, at *10-11 (C.D. Cal. Sep. 1, 2020).

Your response to request 29 contains several bad faith objections. First, your objection that the request is "overbroad in scope, oppressive, burdensome and harassing as stated" is baseless and improper. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal. Oct. 12, 2016). Indeed, this request plainly seeks relevant information that is proportional to the needs of the case, considering the claims at issue; Defendant's purported "right to privacy" and need for a protective order are baseless and overstated. *Ocean Garden Products v. Blessings, Inc.*, No. 8:20-mc-00006-JVS-KESx, 2020 U.S. Dist. LEXIS 62309, at *4-5 (C.D. Cal. Apr. 3, 2020); *Desilva v. Allergan United States*, No. 8:19-cv-01606-JLS (JDEx), 2020 U.S. Dist. LEXIS 188545, at *10-11 (C.D. Cal. Sep. 1, 2020). Additionally, your objection that the request is "vague and ambiguous" as to time is patently false, as all requests are bound (unless otherwise stated) by Instruction K as you indicated in your response to request 5. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal. Oct. 12, 2016). Further, your objection that the request is "vague and ambiguous" as to "'establishes and/or disproves any of the following in relationship to,' 'any other entity,' and 'co-mingling'" is improper. *Id*.

Your response to request 30 contains several bad faith objections. First, your objection that the request is "overbroad in scope, oppressive, burdensome and harassing as stated" is baseless and improper. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal. Oct. 12, 2016). Similarly, your objection that the request violates FRCP 26(b) which defines the scope of discovery is baseless and improper. *Id*.; *Conan v. City of Fontana*, No. EDCV 16-1261-KK, 2017 U.S. Dist. LEXIS 103780, at *6-7 (C.D. Cal. July 5, 2017). Additionally, your objection that the request is "vague, ambiguous and unintelligible" as to time is patently false, as all requests are bound (unless otherwise stated) by Instruction K as you indicated in your response to request 5. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal. Oct. 12, 2016). Further, your objection that the request is "vague, ambiguous and unintelligible" as to "claims relating to the Composition" is improper. *Id*. *Bell v. Ken Lee* is entirely inapplicable, and your citation thereof is both inappropriate and in bad faith; the court in *Ken Lee* ruled that the billing records and invoices at issue *were not privileged* and granted the pertinent request to compel. 2017 U.S. Dist. LEXIS 72244, at *12 (N.D. Cal. May 11, 2017). Finally, your response improperly asserts attorney-client privilege without the inclusion of a privilege log. FRCP 26(b)(5); *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *9 (C.D. Cal. Oct. 12, 2016).

Your response to request 31 is improper; you have failed to submit any privilege log.

Your response to request 32 is improper; you have failed to execute an affidavit stating that your responses are accurate and complete.



BLAISE & NITSCHKE, P.C.

Beatbox v. Labrador, et al.
May 5, 2021
Page 42

**<u>Labrador Entertainment, LLC's Responses to Plaintiff's First Set of Interrogatories</u>**

Your response to request 1 contains several bad faith objections. First, your objection that the interrogatory is "overbroad, oppressive and harassing as stated" is baseless and improper. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal. Oct. 12, 2016). Second, your citation to *Safeco* is inapplicable improper, as the case is explicitly addressing interrogatories that contain separate subparts addressing unique requests for admission on unrelated topics. *Safeco Ins. Co. of Am. v. Rawstron*, 181 F.R.D. 441, 446 (C.D. Cal. May 15, 1998). Your objection that the interrogatory is "vague and ambiguous" as to time is patently false, as all interrogatories are bound (unless otherwise stated) by Instruction K as you indicated below. Finally, your response improperly asserts attorney-client privilege without the inclusion of a privilege log. FRCP 26(b)(5); *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *9 (C.D. Cal. Oct. 12, 2016).

Your response to request 2 contains several bad faith objections. First, you object that the request is propounded to an entity "which does not 'believe' facts." This is plainly an evasive answer, impermissible under FRCP 37. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal. Oct. 12, 2016). Second, your objection that the request is "vague and ambiguous as to which 'allegations' … is/are being referred to" is similarly evasive and improper. *Id.* Finally, your response improperly asserts attorney-client privilege without the inclusion of a privilege log. FRCP 26(b)(5); *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *9 (C.D. Cal. Oct. 12, 2016).

Your response to request 3 contains several bad faith objections. First, your objection that the interrogatory is "overbroad in scope", "oppressive and harassing", and "seeks information in Plaintiff's possession" is baseless and improper. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal. Oct. 12, 2016); *Banuelos v. City of San Bernardino*, No. EDCV 13-736-GW (KKx), 2017 U.S. Dist. LEXIS 198247, at *14 (C.D. Cal. Dec. 1, 2017). Your objection that the interrogatory is "vague and ambiguous" as to time is patently false, as all interrogatories are bound (unless otherwise stated) by Instruction K as you indicated below. Your objection that the interrogatory is "vague and ambiguous" as to the term "any agreements" is improper, as agreements is a common term with a plain meaning. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal. Oct. 12, 2016). Finally, your citation to *Sanders* does not properly support your objection; *Sanders* concerned a request to produce 31 semi-annual reports conducted on the Los Angeles County Sheriff's Department by an outside monitor which spanned beyond the time frame of the complained-of civil rights violation. *Sanders v. L.A. County*, 2018 U.S. Dist. LEXIS 225237, (C.D. Cal. Nov. 16, 2018). Nothing in that opinion stands for the notion that an interrogatory (or even request for production) spanning a (nearly) 20-year period is overbroad by nature; in fact, the same opinion acknowledges that the same reports were produced in parallel case to the one cited.

BLAISE & NITSCHKE, P.C.

Beatbox v. Labrador, et al.
May 5, 2021
Page 43

Your response to request 4 contains several bad faith objections. First, your objection that the interrogatory is "vague and ambiguous" as to time is patently false, as all interrogatories are bound (unless otherwise stated) by Instruction K as you indicated in your response to request 3. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal. Oct. 12, 2016). Second, your citation to *Safeco* is inapplicable and improper, as the case is explicitly addressing interrogatories that contain separate subparts addressing unique requests for admission on unrelated topics. *Safeco Ins. Co. of Am. v. Rawstron*, 181 F.R.D. 441, 446 (C.D. Cal. May 15, 1998). Finally, your response improperly asserts attorney-client privilege without the inclusion of a privilege log. FRCP 26(b)(5); *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *9 (C.D. Cal. Oct. 12, 2016).

Your response to request 5 contains several bad faith objections. First, your objection that the interrogatory is "overbroad in scope, oppressive, burdensome and harassing as stated" is baseless and improper. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *6-11 (C.D. Cal. Oct. 12, 2016). Your objection that the request is "vague, ambiguous and unintelligible" is also improper, as "gross earnings" is plainly applicable to entities. *Id*. Additionally, your response improperly asserts attorney-client privilege without the inclusion of a privilege log. FRCP 26(b)(5); *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *9 (C.D. Cal. Oct. 12, 2016). Further, this interrogatory plainly seeks relevant information, considering the claims at issue. *Ocean Garden Products v. Blessings, Inc.*, No. 8:20-mc-00006-JVS-KESx, 2020 U.S. Dist. LEXIS 62309, at *4-5 (C.D. Cal. Apr. 3, 2020). Your citation to *East Iowa Plastics* is plainly a bad-faith attempt to misrepresent an inapplicable opinion. *East Iowa Plastics* did not concern fraudulent transfer, but instead concerned trademark infringement for a trademark in the poultry business; the Court ruled that the financial records for Defendant's separate business (entirely associated with the purchase of old homes) were not discoverable because they could not be relevant to damages for the alleged trademark infringement. This case is not relevant to a case regarding fraudulent transfer.

Your response to request 6 contains several bad faith objections. First, your objection that the interrogatory is "overbroad in scope, oppressive, burdensome and harassing as stated" is baseless and improper. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *6-11 (C.D. Cal. Oct. 12, 2016). Second, your objection that the interrogatory is "vague and ambiguous" as to time is patently false, as all interrogatories are bound (unless otherwise stated) by Instruction K as you indicated in your response to request 3. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal. Oct. 12, 2016). Further, your objection that the interrogatory is "vague and ambiguous" as to "all copyrighted works" is improper. *Id*. Additionally, your response improperly asserts attorney-client privilege without the inclusion of a privilege log. FRCP 26(b)(5); *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *9 (C.D. Cal. Oct. 12, 2016). Finally, this interrogatory plainly seeks relevant information, considering the claims at issue. *Ocean Garden Products v. Blessings, Inc.*, No. 8:20-mc-00006-JVS-KESx, 2020 U.S. Dist. LEXIS 62309, at *4-5 (C.D. Cal. Apr. 3, 2020).

BN | BLAISE & NITSCHKE, P.C.

Beatbox v. Labrador, et al.
May 5, 2021
Page 44

Your response to request 7 contains several bad faith objections. First, your objection that the interrogatory is "overbroad in scope, oppressive, burdensome and harassing as stated" is baseless and improper. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *6-11 (C.D. Cal. Oct. 12, 2016). Second, your objection that the interrogatory is "vague and ambiguous" as to time is patently false, as all interrogatories are bound (unless otherwise stated) by Instruction K as you indicated in your response to request 3. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal. Oct. 12, 2016). Further, your objection that the interrogatory is "vague and ambiguous" as to "any entities" is improper. *Id.* Finally, this interrogatory plainly seeks relevant information, considering the claims at issue. *Ocean Garden Products v. Blessings, Inc.*, No. 8:20-mc-00006-JVS-KESx, 2020 U.S. Dist. LEXIS 62309, at *4-5 (C.D. Cal. Apr. 3, 2020).

Your response to request 8 contains several bad faith objections. First, this interrogatory plainly seeks relevant information, considering the claims at issue. *Ocean Garden Products v. Blessings, Inc.*, No. 8:20-mc-00006-JVS-KESx, 2020 U.S. Dist. LEXIS 62309, at *4-5 (C.D. Cal. Apr. 3, 2020). Second, your objection on the basis of privacy is improper. *Desilva v. Allergan United States*, No. 8:19-cv-01606-JLS (JDEx), 2020 U.S. Dist. LEXIS 188545, at *10-11 (C.D. Cal. Sep. 1, 2020).

Your response to request 9 contains several bad faith objections. First, your objection that the interrogatory is "overbroad in scope, oppressive, burdensome and harassing as stated" is baseless and improper. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *6-11 (C.D. Cal. Oct. 12, 2016). Second, your objection that the interrogatory is "vague and ambiguous" as to time is patently false, as all interrogatories are bound (unless otherwise stated) by Instruction K as you indicated in your response to request 3. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal. Oct. 12, 2016). Further, your objection that the interrogatory is unintelligible improper. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *6 (C.D. Cal. Oct. 12, 2016). Additionally, your response improperly asserts attorney-client privilege without the inclusion of a privilege log. FRCP 26(b)(5); *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *9 (C.D. Cal. Oct. 12, 2016). Finally, this interrogatory plainly seeks relevant information, considering the claims at issue. *Ocean Garden Products v. Blessings, Inc.*, No. 8:20-mc-00006-JVS-KESx, 2020 U.S. Dist. LEXIS 62309, at *4-5 (C.D. Cal. Apr. 3, 2020).

Your response to request 10 contains several bad faith objections. First, your objection that the interrogatory is "overbroad in scope, oppressive, burdensome and harassing as stated" is baseless and improper. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *6-11 (C.D. Cal. Oct. 12, 2016). Second, your objection that the interrogatory is "vague and ambiguous" as to time is patently false, as all interrogatories are bound (unless otherwise stated) by Instruction K as you indicated in your response to request 3. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal.

BLAISE & NITSCHKE, P.C.

Beatbox v. Labrador, et al.
May 5, 2021
Page 45

Oct. 12, 2016). Further, your objection that the interrogatory is "vague and ambiguous" as to "all capital assets, financial institutions" is improper. *Id*. Further, your objection on the basis of privacy is improper. *Desilva v. Allergan United States*, No. 8:19-cv-01606-JLS (JDEx), 2020 U.S. Dist. LEXIS 188545, at *10-11 (C.D. Cal. Sep. 1, 2020). Additionally, this interrogatory plainly seeks relevant and proportional information, considering the claims at issue. *Ocean Garden Products v. Blessings, Inc.*, No. 8:20-mc-00006-JVS-KESx, 2020 U.S. Dist. LEXIS 62309, at *4-5 (C.D. Cal. Apr. 3, 2020). Lastly, your objection on the basis of FRCP 33(a)(1) is baseless and without merit.

Your response to request 11 contains several bad faith objections. First, your objection that the interrogatory is "overbroad in scope, oppressive, burdensome and harassing as stated" is baseless and improper. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *6-11 (C.D. Cal. Oct. 12, 2016). Second, your objection that the interrogatory is "vague and ambiguous" as to time is patently false, as all interrogatories are bound (unless otherwise stated) by Instruction K as you indicated in your response to request 3. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal. Oct. 12, 2016). Further, your objection that the interrogatory is "vague and ambiguous" as to "'all of YOUR transactions,' 'asset transfers,' and 'any other third party'" is improper. *Id*. Further, your objection on the basis of privacy is improper. *Desilva v. Allergan United States*, No. 8:19-cv-01606-JLS (JDEx), 2020 U.S. Dist. LEXIS 188545, at *10-11 (C.D. Cal. Sep. 1, 2020). Additionally, this interrogatory plainly seeks relevant and proportional information, considering the claims at issue. *Ocean Garden Products v. Blessings, Inc.*, No. 8:20-mc-00006-JVS-KESx, 2020 U.S. Dist. LEXIS 62309, at *4-5 (C.D. Cal. Apr. 3, 2020). Your citation to *Valdez* is improper, as the case is not on point with the case at hand; the financial records at issue in *Valdez* were relevant to the measure of emotional damages pled by the producing party. *Valdez v. Travelers Indem. Co.*, 2013 U.S. Dist. LEXIS 109154. Here, the financial records at issue are relevant to prove the claim of fraudulent conveyance against the producing party. Lastly, your objection on the basis of FRCP 33(a)(1) is baseless and without merit.

Your response to request 12 contains several bad faith objections. First, your objection that the interrogatory is "vague and ambiguous" as to time is patently false, as all interrogatories are bound (unless otherwise stated) by Instruction K as you indicated in your response to request 3. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal. Oct. 12, 2016). Further, your objection that the interrogatory is "vague and ambiguous" as to "identify … all purchase agreements" is improper. *Id*. Further, your objection on the basis of privacy is improper. *Desilva v. Allergan United States*, No. 8:19-cv-01606-JLS (JDEx), 2020 U.S. Dist. LEXIS 188545, at *10-11 (C.D. Cal. Sep. 1, 2020). Additionally, this interrogatory plainly seeks relevant and proportional information, considering the claims at issue. *Ocean Garden Products v. Blessings, Inc.*, No. 8:20-mc-00006-JVS-KESx, 2020 U.S. Dist. LEXIS 62309, at *4-5 (C.D. Cal. Apr. 3, 2020). Your citation to *Valdez* is improper, as the case is not on point with the case at hand; the financial records at issue in *Valdez* were relevant to the measure of emotional damages pled by the producing party. *Valdez v. Travelers Indem. Co.*, 2013 U.S. Dist. LEXIS 109154. Here, the financial records at issue are relevant to prove the claim of fraudulent

BLAISE & NITSCHKE, P.C.

Beatbox v. Labrador, et al.
May 5, 2021
Page 46

conveyance against the producing party. Lastly, your objection on the basis of FRCP 33(a)(1) is baseless and without merit.

Your response to request 13 contains several bad faith objections. First, your objection that the interrogatory is "vague and ambiguous" as to time is patently false, as all interrogatories are bound (unless otherwise stated) by Instruction K as you indicated in your response to request 3. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal. Oct. 12, 2016). Further, your objection that the interrogatory is "vague and ambiguous" as to "'identify … all asset transfers' and 'since inception of the New Zealand claim'" is improper. *Id*. Further, your objection on the basis of privacy is improper. *Desilva v. Allergan United States*, No. 8:19-cv-01606-JLS (JDEx), 2020 U.S. Dist. LEXIS 188545, at *10-11 (C.D. Cal. Sep. 1, 2020). Additionally, this interrogatory plainly seeks relevant and proportional information, considering the claims at issue. *Ocean Garden Products v. Blessings, Inc.*, No. 8:20-mc-00006-JVS-KESx, 2020 U.S. Dist. LEXIS 62309, at *4-5 (C.D. Cal. Apr. 3, 2020). Your citation to *Valdez* is improper, as the case is not on point with the case at hand; the financial records at issue in *Valdez* were relevant to the measure of emotional damages pled by the producing party. *Valdez v. Travelers Indem. Co.*, 2013 U.S. Dist. LEXIS 109154. Here, the financial records at issue are relevant to prove the claim of fraudulent conveyance against the producing party. Lastly, your objection on the basis of FRCP 33(a)(1) is baseless and without merit.

Your response to request 14 contains several bad faith objections. First, your objection that the interrogatory is overbroad in scope is baseless and improper. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *6-11 (C.D. Cal. Oct. 12, 2016). Second, your objection that the interrogatory is "vague and ambiguous" as to time is patently false, as all interrogatories are bound (unless otherwise stated) by Instruction K as you indicated in your response to request 3. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal. Oct. 12, 2016). Further, your objection that the interrogatory is "vague and ambiguous" as to "any other lawsuits" is improper. *Id*. Additionally, this interrogatory plainly seeks relevant and proportional information, considering the claims at issue. *Ocean Garden Products v. Blessings, Inc.*, No. 8:20-mc-00006-JVS-KESx, 2020 U.S. Dist. LEXIS 62309, at *4-5 (C.D. Cal. Apr. 3, 2020). Lastly, your objection that the objection seeks information available from public sources is improper. *Banuelos v. City of San Bernardino*, No. EDCV 13-736-GW (KKx), 2017 U.S. Dist. LEXIS 198247, at *14 (C.D. Cal. Dec. 1, 2017).

Your response to request 15 contains several bad faith objections. First, your objection that the interrogatory is overbroad in scope is baseless and improper. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *6-11 (C.D. Cal. Oct. 12, 2016). Second, your objection that the interrogatory is "vague and ambiguous" as to time is patently false, as all interrogatories are bound (unless otherwise stated) by Instruction K as you indicated in your response to request 3. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal. Oct. 12, 2016). Further, your objection that the interrogatory is "vague and ambiguous" as to "'agreements' and 'through the date of production'"

BLAISE & NITSCHKE, P.C.

Beatbox v. Labrador, et al.
May 5, 2021
Page 47

is improper. *Id*. Additionally, this interrogatory plainly seeks relevant and proportional information, considering the claims at issue. *Ocean Garden Products v. Blessings, Inc.*, No. 8:20-mc-00006-JVS-KESx, 2020 U.S. Dist. LEXIS 62309, at *4-5 (C.D. Cal. Apr. 3, 2020). Lastly, your citation to *Nutratech, Inc. v. Syntech Int'l, Inc.*, is a deliberate misrepresentation. 242 F.R.D. 552 (C.D. Cal. Mar. 20, 2007). *Nutratech* is one of many cases where direct competitors who had agreed to a protective order disagreed over whether or not to impose an Attorney's-Eyes-Only limitation, not a case where the need for a protective order was in dispute. *Lindsey v. Elsevier Inc.*, No. 16-cv-00959-GPC (DHB), 2016 U.S. Dist. LEXIS 111786, at *8 (S.D. Cal. Aug. 19, 2016); *Satmodo, LLC v. Whenever Communs., LLC*, 2018 U.S. Dist. LEXIS 31842, at *5 (S.D. Cal. Feb. 27, 2018).

Your response to request 16 contains several bad faith objections. First, your objection that the interrogatory is overbroad in scope is baseless and improper. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *6-11 (C.D. Cal. Oct. 12, 2016). Second, your objection that the interrogatory is "vague and ambiguous" as to time is patently false, as all interrogatories are bound (unless otherwise stated) by Instruction K as you indicated in your response to request 3. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal. Oct. 12, 2016). Further, your objection that the interrogatory is "vague and ambiguous" as to "'identify … all conveyances' and 'its inception'" is improper. *Id*. Additionally, this interrogatory plainly seeks relevant and proportional information, considering the claims at issue. *Ocean Garden Products v. Blessings, Inc.*, No. 8:20-mc-00006-JVS-KESx, 2020 U.S. Dist. LEXIS 62309, at *4-5 (C.D. Cal. Apr. 3, 2020).

Your response to request 17 contains several bad faith objections. First, your objection that the interrogatory is overbroad in scope is baseless and improper. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *6-11 (C.D. Cal. Oct. 12, 2016). Second, your objection that the interrogatory is "vague and ambiguous" as to time is patently false, as all interrogatories are bound (unless otherwise stated) by Instruction K as you indicated in your response to request 3. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal. Oct. 12, 2016). Further, your objection that the interrogatory is "vague and ambiguous" as to "would cover… the liability alleged against YOU" is improper. *Id*. Additionally, this interrogatory plainly seeks relevant and proportional information, considering the claims at issue. *Ocean Garden Products v. Blessings, Inc.*, No. 8:20-mc-00006-JVS-KESx, 2020 U.S. Dist. LEXIS 62309, at *4-5 (C.D. Cal. Apr. 3, 2020).

Your response to request 18 contains several bad faith objections. First, your objection that the interrogatory is "overbroad in scope, oppressive and harassing as stated" is baseless and improper. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *6-11 (C.D. Cal. Oct. 12, 2016). Additionally, this interrogatory plainly seeks relevant information, considering the claims at issue. *Ocean Garden Products v. Blessings, Inc.*, No. 8:20-mc-00006-JVS-KESx, 2020 U.S. Dist. LEXIS 62309, at *4-5 (C.D. Cal. Apr. 3, 2020). Further,

BLAISE & NITSCHKE, P.C.

Beatbox v. Labrador, et al.
May 5, 2021
Page 48

your objection on the basis of privacy is improper. *Desilva v. Allergan United States*, No. 8:19-cv-01606-JLS (JDEx), 2020 U.S. Dist. LEXIS 188545, at *10-11 (C.D. Cal. Sep. 1, 2020).

Your response to request 19 contains several bad faith objections. First, your objection that the interrogatory is "overbroad in scope, oppressive and harassing as stated" is baseless and improper. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *6-11 (C.D. Cal. Oct. 12, 2016). Additionally, this interrogatory plainly seeks relevant information, considering the claims at issue. *Ocean Garden Products v. Blessings, Inc.*, No. 8:20-mc-00006-JVS-KESx, 2020 U.S. Dist. LEXIS 62309, at *4-5 (C.D. Cal. Apr. 3, 2020). Further, your objection on the basis of privacy is improper. *Desilva v. Allergan United States*, No. 8:19-cv-01606-JLS (JDEx), 2020 U.S. Dist. LEXIS 188545, at *10-11 (C.D. Cal. Sep. 1, 2020). Your citation to *Valdez* is improper, as the case is not on point with the case at hand; the financial records at issue in *Valdez* were relevant to the measure of emotional damages pled by the producing party. *Valdez v. Travelers Indem. Co.*, 2013 U.S. Dist. LEXIS 109154. Here, the financial records at issue are relevant to prove the claim of fraudulent conveyance against the producing party. Lastly, your objection on the basis of FRCP 33(a)(1) is baseless and without merit.

Your response to request 20 contains several bad faith objections. First, your objection that the interrogatory is "overbroad in scope, oppressive and harassing as stated" is baseless and improper. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *6-11 (C.D. Cal. Oct. 12, 2016). Additionally, this interrogatory plainly seeks relevant information, considering the claims at issue. *Ocean Garden Products v. Blessings, Inc.*, No. 8:20-mc-00006-JVS-KESx, 2020 U.S. Dist. LEXIS 62309, at *4-5 (C.D. Cal. Apr. 3, 2020). Further, your objection on the basis of privacy is improper. *Desilva v. Allergan United States*, No. 8:19-cv-01606-JLS (JDEx), 2020 U.S. Dist. LEXIS 188545, at *10-11 (C.D. Cal. Sep. 1, 2020). Lastly, your objection on the basis of FRCP 33(a)(1) is baseless and without merit.

Your response to request 21 contains several bad faith objections. First, your objection that the interrogatory is "overbroad in scope, oppressive and harassing as stated" is baseless and improper. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *6-11 (C.D. Cal. Oct. 12, 2016). Second, your objection that the interrogatory is "vague and ambiguous" as to "all assets" is improper. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal. Oct. 12, 2016). Additionally, this interrogatory plainly seeks relevant information, considering the claims at issue. *Ocean Garden Products v. Blessings, Inc.*, No. 8:20-mc-00006-JVS-KESx, 2020 U.S. Dist. LEXIS 62309, at *4-5 (C.D. Cal. Apr. 3, 2020). Further, your objection on the basis of privacy is improper. *Desilva v. Allergan United States*, No. 8:19-cv-01606-JLS (JDEx), 2020 U.S. Dist. LEXIS 188545, at *10-11 (C.D. Cal. Sep. 1, 2020). Lastly, your objection on the basis of FRCP 33(a)(1) is baseless and without merit.

**<u>Labrador Entertainment, LLC's Responses To Plaintiff's First Set of Requests for the Production of Documents</u>**

BLAISE & NITSCHKE, P.C.

Beatbox v. Labrador, et al.
May 5, 2021
Page 49

Your response to request 1 contains several bad faith objections. First, your objection that the request is "overbroad, oppressive and harassing as stated" is baseless and improper. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal. Oct. 12, 2016). Further, your objection that the request is "vague and ambiguous" is improper. *Id.* Additionally, your response improperly asserts attorney-client privilege without the inclusion of a privilege log. FRCP 26(b)(5); *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *9 (C.D. Cal. Oct. 12, 2016). Your objection on the basis of FRCP 34(b)(1)(a) is baseless; you are required to produce an individualized response to each request for production. *Conan v. City of Fontana*, No. EDCV 16-1261-KK, 2017 U.S. Dist. LEXIS 103780, at *6-7 (C.D. Cal. July 5, 2017). It is improper to object that the requesting party already has the requested documents. *Banuelos v. City of San Bernardino*, No. EDCV 13-736-GW (KKx), 2017 U.S. Dist. LEXIS 198247, at *14 (C.D. Cal. Dec. 1, 2017).

Your response to request 2 contains several bad faith objections. First, your objection that the request is "overbroad, oppressive and harassing as stated" is baseless and improper. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal. Oct. 12, 2016). Additionally, your objection that "[t]his request is … the proportional to the needs of the case" is completely unintelligible. Further, your objection that the request is "vague and ambiguous" as to "communications" is improper. *Id.* Indeed, this request plainly seeks relevant information that is proportional to the needs of the case, considering the claims at issue. *Ocean Garden Products v. Blessings, Inc.*, No. 8:20-mc-00006-JVS-KESx, 2020 U.S. Dist. LEXIS 62309, at *4-5 (C.D. Cal. Apr. 3, 2020). Finally, your objection on the basis of FRCP 34(b)(1)(a) is baseless; you are required to produce an individualized response to each request for production. *Conan v. City of Fontana*, No. EDCV 16-1261-KK, 2017 U.S. Dist. LEXIS 103780, at *6-7 (C.D. Cal. July 5, 2017).

Your response to request 3 contains several bad faith objections. First, your objection that the request is "overbroad, oppressive and harassing as stated" is baseless and improper. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal. Oct. 12, 2016). Additionally, your objection that "[t]his request is … the proportional to the needs of the case" is completely unintelligible. Finally, your objection on the basis of FRCP 34(b)(1)(a) is baseless; you are required to produce an individualized response to each request for production. *Conan v. City of Fontana*, No. EDCV 16-1261-KK, 2017 U.S. Dist. LEXIS 103780, at *6-7 (C.D. Cal. July 5, 2017).

Regarding your response to request 4, it is improper to object that the requesting party already has the requested documents. *Banuelos v. City of San Bernardino*, No. EDCV 13-736-GW (KKx), 2017 U.S. Dist. LEXIS 198247, at *14 (C.D. Cal. Dec. 1, 2017).

Your response to request 5 contains several bad faith objections. First, your objection that the request is "overbroad, oppressive and harassing as stated" is baseless and improper. *Ecojet, Inc. v.*



BLAISE & NITSCHKE, P.C.

Beatbox v. Labrador, et al.
May 5, 2021
Page 50

*Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at \*11 (C.D. Cal. Oct. 12, 2016). Second, your response improperly asserts attorney-client privilege without the inclusion of a privilege log. FRCP 26(b)(5); *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at \*9 (C.D. Cal. Oct. 12, 2016). Third, it is improper to object that the requesting party already has the requested documents. *Banuelos v. City of San Bernardino*, No. EDCV 13-736-GW (KKx), 2017 U.S. Dist. LEXIS 198247, at \*14 (C.D. Cal. Dec. 1, 2017). Additionally, your objection that "[t]his request is … the proportional to the needs of the case" is completely unintelligible. Finally, your objection on the basis of FRCP 34(b)(1)(a) is baseless; you are required to produce an individualized response to each request for production. *Conan v. City of Fontana*, No. EDCV 16-1261-KK, 2017 U.S. Dist. LEXIS 103780, at \*6-7 (C.D. Cal. July 5, 2017). – Notwithstanding the above objections, Plaintiff provides the following excerpts of the December 2-3, 2019 deposition of Noel Palmer Webb:

```
15              MS. BLAISE:  I'm not asking about pleadings, I'm

16     asking about what was tendered -- he's saying that there was

17     a demand sent to Cohen by his attorney, and I'm wanting to

18     know --

19              MS. OHIRI:  I wasn't the attorney that did it.

20     So...

21     BY MS. BLAISE:

22        Q    So you'll re-provide those to your attorney and then

23     she'll provide them to me, to the extent that they haven't

24     already been provided?

25        A    If I have them, I'll do it again.

                                              Page 116

 1              MS. OHIRI:  If they exist.
```



BLAISE & NITSCHKE, P.C.

Beatbox v. Labrador, et al.
May 5, 2021
Page 51

```
16          Q    For the record, you're going to find those
17     documents?
18          A    I hope I remember.  I have no notes, but I probably
19     will remember, yeah.
20               MS. OHIRI:  To the extent they exist.
21     BY MS. BLAISE:
22          Q    But you have a relationship with the attorney
23     still?
24          A    Yes.
25          Q    So you can request the documents from your
                                                    Page 117
```

```
1      attorney?
2          A    Yes.
3          Q    And then your attorney can submit them to this
4      attorney?
5          A    Yes.
                                                    Page 118
```

Your response to request 6 contains several bad faith objections. First, your objection that the request is "overbroad in scope, oppressive and harassing as stated" is baseless and improper. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal. Oct. 12, 2016). Second, your objection on the basis of FRCP 34(b)(1)(a) is baseless; you are required to produce an individualized response to each request for production. *Conan v. City of Fontana*, No. EDCV 16-1261-KK, 2017 U.S. Dist. LEXIS 103780, at *6-7 (C.D. Cal. July 5, 2017). Similarly, your citation to FRCP 26(b)(1) is misplaced. Further, your objection on the basis of FRCP 34(b)(1)(a) is needless, duplicative, and indicative of your lack of due diligence in responding to these requests. Additionally, your response improperly asserts attorney-client

BLAISE & NITSCHKE, P.C.

Beatbox v. Labrador, et al.
May 5, 2021
Page 52

privilege without the inclusion of a privilege log. FRCP 26(b)(5); *Ecojet, Inc. v. Luraco, Inc.*, No.
SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *9 (C.D. Cal. Oct. 12, 2016).
It is improper to object that the requesting party already has access to the requested documents.
*Banuelos v. City of San Bernardino*, No. EDCV 13-736-GW (KKx), 2017 U.S. Dist. LEXIS
198247, at *14 (C.D. Cal. Dec. 1, 2017). Finally, your objection as to "vague and ambiguous" is
made in bad faith, as the request necessarily seeks documents in the responding party's possession,
not documents available on the internet.

Your response to request 7 contains several bad faith objections. First, your objection that the
request is "overbroad, oppressive and harassing as stated" is baseless and improper. *Ecojet, Inc. v.
Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal.
Oct. 12, 2016). Additionally, your objection that "[t]his request is … the proportional to the needs
of the case" is completely unintelligible. Further, your objection that the request is "vague and
ambiguous" as to "correspondence related to Plaintiff" is improper. *Id.* Indeed, this request plainly
seeks relevant information that is proportional to the needs of the case, considering the claims at
issue. *Ocean Garden Products v. Blessings, Inc.*, No. 8:20-mc-00006-JVS-KESx, 2020 U.S. Dist.
LEXIS 62309, at *4-5 (C.D. Cal. Apr. 3, 2020); *Desilva v. Allergan United States*, No. 8:19-cv-
01606-JLS (JDEx), 2020 U.S. Dist. LEXIS 188545, at *10-11 (C.D. Cal. Sep. 1, 2020). Fifth, your
objection that the request is "vague and ambiguous" as to time is patently false, as all requests are
bound (unless otherwise stated) by the Instructions as you indicated in your General Objection H.
*Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at
*11 (C.D. Cal. Oct. 12, 2016). It is improper to object that the requesting party already has access
to the requested documents. *Banuelos v. City of San Bernardino*, No. EDCV 13-736-GW (KKx),
2017 U.S. Dist. LEXIS 198247, at *14 (C.D. Cal. Dec. 1, 2017). Additionally, your response
improperly asserts attorney-client privilege without the inclusion of a privilege log. FRCP
26(b)(5); *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS
192169, at *9 (C.D. Cal. Oct. 12, 2016). Finally, your objection on the basis of FRCP 34(b)(1)(a)
is baseless; you are required to produce an individualized response to each request for production.
*Conan v. City of Fontana*, No. EDCV 16-1261-KK, 2017 U.S. Dist. LEXIS 103780, at *6-7 (C.D.
Cal. July 5, 2017).

Your response to request 8 contains several bad faith objections. First, your objection that the
request is "overbroad, oppressive and harassing as stated" is baseless and improper. *Ecojet, Inc. v.
Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal.
Oct. 12, 2016). Additionally, your objection that "[t]his request is … the proportional to the needs
of the case" is completely unintelligible. Further, your objection that the request is "vague and
ambiguous" as to "correspondence" and "relating to Plaintiff" is improper. *Id.* Indeed, this request
plainly seeks relevant information that is proportional to the needs of the case, considering the
claims at issue. *Ocean Garden Products v. Blessings, Inc.*, No. 8:20-mc-00006-JVS-KESx, 2020
U.S. Dist. LEXIS 62309, at *4-5 (C.D. Cal. Apr. 3, 2020); *Desilva v. Allergan United States*, No.
8:19-cv-01606-JLS (JDEx), 2020 U.S. Dist. LEXIS 188545, at *10-11 (C.D. Cal. Sep. 1, 2020).
Finally, your response improperly asserts attorney-client privilege without the inclusion of a


BLAISE & NITSCHKE, P.C.

Beatbox v. Labrador, et al.
May 5, 2021
Page 53

privilege log. FRCP 26(b)(5); *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016
U.S. Dist. LEXIS 192169, at *9 (C.D. Cal. Oct. 12, 2016).

In response to your response to request 9, we submit the following excerpt of the December 2-3,
2019 deposition of Noel Palmer Webb:

| | |
|---|---|
| 2 | MS. OHIRI:  E-mails. |
| 3 | MS. BLAISE:  They're all letters to the firm. |
| 4 | MS. OHIRI:  Yes, to my firm. |
| 5 | MS. BLAISE:  There's no other documents that are not |
| 6 | letters to your firm? |
| 7 | MR. JACOBSON:  Or e-mails? |
| 8 | MS. BLAISE:  We're going to need to see that. |
| 9 | MS. OHIRI:  I need to withhold these, these are |
| 10 | privileged. |
| 11 | MS. BLAISE:  So for the record, can you indicate |
| 12 | what they are so you will make a privilege log of them? |
| 13 | MS. OHIRI:  There's an e-mail from Noel Webb to |
| 14 | myself, Raena Ohiri, dated November 21st, 2019. |
| 15 | MS. BLAISE:  What was the date? |
| 16 | MS. OHIRI:  November 21st, 2019. |
| 17 | MS. BLAISE:  Is there anyone else on the e-mail or |
| 18 | is it -- |
| 19 | MS. OHIRI:  It's just to me.  There's a document |
| 20 | that reflects attorney/client privilege and work product.  I |
| 21 | don't mind sending a redacted version of it, but I can't |
| 22 | produce it right now. |
| 23 | MS. BLAISE:  Okay.  What is it? |
| 24 | MS. OHIRI:  A document, I mean, I -- |
| 25 | MS. BLAISE:  What is it dated? |

Page 60

BLAISE & NITSCHKE, P.C.

Beatbox v. Labrador, et al.
May 5, 2021
Page 54

Your response to request 10 contains several bad faith objections. First, your objection that the request is "overbroad in scope, oppressive and harassing as stated" is baseless and improper. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal. Oct. 12, 2016). Second, your objection that the request is "vague and ambiguous" as to "correspondence" and "relating to Plaintiff" is improper. *Id*. Additionally, your objection that "[t]his request is … the proportional to the needs of the case" is completely unintelligible. Indeed, this request plainly seeks relevant information that is proportional to the needs of the case, considering the claims at issue. *Ocean Garden Products v. Blessings, Inc.*, No. 8:20-mc-00006-JVS-KESx, 2020 U.S. Dist. LEXIS 62309, at *4-5 (C.D. Cal. Apr. 3, 2020); *Desilva v. Allergan United States*, No. 8:19-cv-01606-JLS (JDEx), 2020 U.S. Dist. LEXIS 188545, at *10-11 (C.D. Cal. Sep. 1, 2020). It is improper to object that the requesting party already has access to the requested documents. *Banuelos v. City of San Bernardino*, No. EDCV 13-736-GW (KKx), 2017 U.S. Dist. LEXIS 198247, at *14 (C.D. Cal. Dec. 1, 2017). Finally, your response improperly asserts attorney-client privilege without the inclusion of a privilege log. FRCP 26(b)(5); *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *9 (C.D. Cal. Oct. 12, 2016).

Your response to request 11 contains several bad faith objections. First, your objection that the request is "overbroad in scope, oppressive and harassing as stated" is baseless and improper. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal. Oct. 12, 2016). Second, your objection on the basis of FRCP 34(b)(1)(a) is baseless; you are required to produce an individualized response to each request for production. *Conan v. City of Fontana*, No. EDCV 16-1261-KK, 2017 U.S. Dist. LEXIS 103780, at *6-7 (C.D. Cal. July 5, 2017). Additionally, your objection that "[t]his request is … the proportional to the needs of the case" is completely unintelligible. Indeed, this request plainly seeks relevant information that is proportional to the needs of the case, considering the claims at issue. *Ocean Garden Products v. Blessings, Inc.*, No. 8:20-mc-00006-JVS-KESx, 2020 U.S. Dist. LEXIS 62309, at *4-5 (C.D. Cal. Apr. 3, 2020); *Desilva v. Allergan United States*, No. 8:19-cv-01606-JLS (JDEx), 2020 U.S. Dist. LEXIS 188545, at *10-11 (C.D. Cal. Sep. 1, 2020). Further, your needlessly repeated your objection that the request is "overbroad in scope, oppressive and harassing as stated", exposing your lack of due diligence in responding to these requests. Additionally, your objection that "[t]his request is … the proportional to the needs of the case" is completely unintelligible. Further, your objection that the request is "vague and ambiguous" as to "any interest(s)" is improper. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal. Oct. 12, 2016).

Your response to request 12 contains several bad faith objections. First, your objection that the request is "overbroad in scope, oppressive and harassing as stated" is baseless and improper. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal. Oct. 12, 2016). Second, your objection that "[t]his request is … the proportional to the needs of the case" is completely unintelligible. Indeed, this request plainly seeks relevant

BLAISE & NITSCHKE, P.C.

Beatbox v. Labrador, et al.
May 5, 2021
Page 55

information that is proportional to the needs of the case, considering the claims at issue. *Ocean Garden Products v. Blessings, Inc.*, No. 8:20-mc-00006-JVS-KESx, 2020 U.S. Dist. LEXIS 62309, at *4-5 (C.D. Cal. Apr. 3, 2020); *Desilva v. Allergan United States*, No. 8:19-cv-01606-JLS (JDEx), 2020 U.S. Dist. LEXIS 188545, at *10-11 (C.D. Cal. Sep. 1, 2020). Further, your needlessly repeated your objection that the request is "overbroad in scope, oppressive and harassing as stated", exposing your lack of due diligence in responding to these requests. It is improper to object that the requesting party already has access to the requested documents. *Banuelos v. City of San Bernardino*, No. EDCV 13-736-GW (KKx), 2017 U.S. Dist. LEXIS 198247, at *14 (C.D. Cal. Dec. 1, 2017). Additionally, your objection that the request is "vague and ambiguous" as to time is patently false, as all requests are bound (unless otherwise stated) by the Instructions as you indicated in your General Objection H. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal. Oct. 12, 2016). Finally, your objection that the request is "vague and ambiguous" as to "relationship" is improper. *Id*.

Your response to request 13 contains several bad faith objections. First, your objection that the request is "overbroad in scope, oppressive and harassing as stated" is baseless and improper. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal. Oct. 12, 2016). Second, your objection that "[t]his request is … the proportional to the needs of the case" is completely unintelligible. Indeed, this request plainly seeks relevant information that is proportional to the needs of the case, considering the claims at issue. *Ocean Garden Products v. Blessings, Inc.*, No. 8:20-mc-00006-JVS-KESx, 2020 U.S. Dist. LEXIS 62309, at *4-5 (C.D. Cal. Apr. 3, 2020); *Desilva v. Allergan United States*, No. 8:19-cv-01606-JLS (JDEx), 2020 U.S. Dist. LEXIS 188545, at *10-11 (C.D. Cal. Sep. 1, 2020). Further, your needlessly repeated your objection that the request is "overbroad in scope, oppressive and harassing as stated", exposing your lack of due diligence in responding to these requests. Additionally, your objection that the request is "vague and ambiguous" as to time is patently false, as all requests are bound (unless otherwise stated) by the Instructions as you indicated in your General Objection H. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal. Oct. 12, 2016). Finally, your objection that the request is "vague and ambiguous" as to "statements" and "any of the copyrights" is improper. *Id*.

Your response to request 14 contains several bad faith objections. First, your objection that the request is "overbroad in scope, oppressive, burdensome and harassing as stated" is baseless and improper. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal. Oct. 12, 2016). Similarly, your objection that the request violates the scope of discovery as defined by FRCP 26(b) is baseless and improper. *Id*.; *Conan v. City of Fontana*, No. EDCV 16-1261-KK, 2017 U.S. Dist. LEXIS 103780, at *6-7 (C.D. Cal. July 5, 2017). *Flores v. Albertsons Inc.* is inapplicable to this case and your citation thereof is improper; in *Flores*, this Court declined to compel production of tax returns in a dispute over employment classification where W2s and 1099s had already been produced, which does not support your claim of Defendant's right to privacy. *See* 2002 U.S. Dist. LEXIS 6171, (C.D. Cal. Apr. 9, 2002). Further,

BLAISE & NITSCHKE, P.C.

Beatbox v. Labrador, et al.
May 5, 2021
Page 56

it is improper to object that the requesting party can get the documents from other sources; the responding party must conduct a diligent search and reasonable inquiry. *Banuelos v. City of San Bernardino*, No. EDCV 13-736-GW (KKx), 2017 U.S. Dist. LEXIS 198247, at \*14 (C.D. Cal. Dec. 1, 2017). Additionally, this request plainly seeks relevant information that is proportional to the needs of the case, considering the claims at issue; Defendant's purported "right to privacy" and need for a protective order is overstated. *Ocean Garden Products v. Blessings, Inc.*, No. 8:20-mc-00006-JVS-KESx, 2020 U.S. Dist. LEXIS 62309, at \*4-5 (C.D. Cal. Apr. 3, 2020); *Desilva v. Allergan United States*, No. 8:19-cv-01606-JLS (JDEx), 2020 U.S. Dist. LEXIS 188545, at \*10-11 (C.D. Cal. Sep. 1, 2020). Finally, your response improperly asserts attorney-client privilege without the inclusion of a privilege log. FRCP 26(b)(5); *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at \*9 (C.D. Cal. Oct. 12, 2016).

Your response to request 15 contains several bad faith objections. First, your objection that the request is "overbroad in scope, oppressive and harassing as stated" is baseless and improper. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at \*11 (C.D. Cal. Oct. 12, 2016). Second, *Coley v. Ventura Cty.* shows that you must answer this request regardless of your claim that it "is in the form of an interrogatory"; while the court in that case held that the responding party was not required to create new data, testing, or documents that did not already exist in response to a request for production, any existing documents containing such data or information were subject to production. 2020 U.S. Dist. LEXIS 249557, at \*29 (C.D. Cal., June 8, 2020). Additionally, your objection that the request is "vague and ambiguous" as to time is patently false, as all requests are bound (unless otherwise stated) by the Instructions as you indicated in your General Objection H. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at \*11 (C.D. Cal. Oct. 12, 2016). Finally, your objection that the request is "vague and ambiguous" as to "YOU claim any interest" is improper. *Id*.

Your response to request 16 contains several bad faith objections. First, your objection that the request is "overbroad in scope, oppressive and harassing as stated" is baseless and improper. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at \*11 (C.D. Cal. Oct. 12, 2016). Additionally, your objection that the request is "vague and ambiguous" as to time is patently false, as all requests are bound (unless otherwise stated) by the Instructions as you indicated in your General Objection H. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at \*11 (C.D. Cal. Oct. 12, 2016). Third, your objection that the request is "vague and ambiguous" as to "conveyances of rights" is improper. *Id*. Finally, your citation to *Coley v. Ventura Cty.* is misrepresentative and improper; while the court in that case held that the responding party was not required to create new data, testing, or documents that did not already exist, any existing documents containing such data or information were subject to production. 2020 U.S. Dist. LEXIS 249557, at \*29 (C.D. Cal., June 8, 2020).

Your response to request 17 contains several bad faith objections. First, your objection that the request is "overbroad in scope, oppressive and harassing as stated" is baseless and improper.

BLAISE & NITSCHKE, P.C.

Beatbox v. Labrador, et al.
May 5, 2021
Page 57

*Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal. Oct. 12, 2016). Indeed, this request plainly seeks relevant information that is proportional to the needs of the case, considering the claims at issue. *Ocean Garden Products v. Blessings, Inc.*, No. 8:20-mc-00006-JVS-KESx, 2020 U.S. Dist. LEXIS 62309, at *4-5 (C.D. Cal. Apr. 3, 2020). Third, your response improperly asserts attorney-client privilege without the inclusion of a privilege log. FRCP 26(b)(5); *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *9 (C.D. Cal. Oct. 12, 2016). Fourth, your objection on the basis of FRCP 34(b)(1)(a) is baseless; you are required to produce an individualized response to each request for production. *Conan v. City of Fontana*, No. EDCV 16-1261-KK, 2017 U.S. Dist. LEXIS 103780, at *6-7 (C.D. Cal. July 5, 2017). Additionally, your objection that the request is "vague and ambiguous" as to time is patently false, as all requests are bound (unless otherwise stated) by the Instructions as you indicated in your General Objection H. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal. Oct. 12, 2016). Finally, your objection that the request is "vague and ambiguous" as to "conveyances" and "YOU claim any interest" is improper. *Id.*

Your response to request 18 contains several bad faith objections. First, your objection that the request is "overbroad in scope, oppressive and harassing as stated" is baseless and improper. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal. Oct. 12, 2016). Similarly, your objection that the request "violates FRCP 26(b) which defines the scope of discovery" is baseless and improper. *Id.*; *Conan v. City of Fontana*, No. EDCV 16-1261-KK, 2017 U.S. Dist. LEXIS 103780, at *6-7 (C.D. Cal. July 5, 2017). Indeed, this request plainly seeks relevant information that is proportional to the needs of the case, considering the claims at issue; Defendant's purported "right to privacy" and need for a protective order is overstated. *Ocean Garden Products v. Blessings, Inc.*, No. 8:20-mc-00006-JVS-KESx, 2020 U.S. Dist. LEXIS 62309, at *4-5 (C.D. Cal. Apr. 3, 2020); *Desilva v. Allergan United States*, No. 8:19-cv-01606-JLS (JDEx), 2020 U.S. Dist. LEXIS 188545, at *10-11 (C.D. Cal. Sep. 1, 2020). Also, you needlessly repeated your objection on the basis of privacy; this exposes your lack of due diligence in responding to these requests. *Flores v. Albertsons Inc.* is inapplicable to this case and your citation thereof is improper; in *Flores*, this Court declined to compel production of tax returns in a dispute over employment classification where W2s and 1099s had already been produced, which does not support your claim of Defendant's right to privacy. *See* 2002 U.S. Dist. LEXIS 6171, (C.D. Cal. Apr. 9, 2002). Additionally, your objection that the request is "vague and ambiguous" as to time is patently false, as all requests are bound (unless otherwise stated) by the Instructions as you indicated in your General Objection H. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal. Oct. 12, 2016). Finally, your objection that the request is "vague and ambiguous" as to "provide" is improper. *Id.*

Your response to request 19 contains several bad faith objections. First, your objection that the request is "overbroad in scope, oppressive and harassing as stated" is baseless and improper. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal. Oct. 12, 2016). Similarly, your objection that the request "violates FRCP 26(b)

BLAISE & NITSCHKE, P.C.

Beatbox v. Labrador, et al.
May 5, 2021
Page 58

which defines the scope of discovery" is baseless and improper. *Id.*; *Conan v. City of Fontana*, No. EDCV 16-1261-KK, 2017 U.S. Dist. LEXIS 103780, at *6-7 (C.D. Cal. July 5, 2017). It is improper to object that the requesting party can get the documents from other sources; the responding party must conduct a diligent search and reasonable inquiry. *Banuelos v. City of San Bernardino*, No. EDCV 13-736-GW (KKx), 2017 U.S. Dist. LEXIS 198247, at *14 (C.D. Cal. Dec. 1, 2017). Fourth, your response improperly asserts attorney-client privilege without the inclusion of a privilege log. FRCP 26(b)(5); *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *9 (C.D. Cal. Oct. 12, 2016). Fifth, your objection that the request "violates FRCP 26(b) which defines the scope of discovery" is baseless and improper. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal. Oct. 12, 2016); *Conan v. City of Fontana*, No. EDCV 16-1261-KK, 2017 U.S. Dist. LEXIS 103780, at *6-7 (C.D. Cal. July 5, 2017). Indeed, this request plainly seeks relevant information that is proportional to the needs of the case, considering the claims at issue. *Ocean Garden Products v. Blessings, Inc.*, No. 8:20-mc-00006-JVS-KESx, 2020 U.S. Dist. LEXIS 62309, at *4-5 (C.D. Cal. Apr. 3, 2020). Finally, your objection that the request is "vague and ambiguous" as to "relating to YOUR incorporation" is improper. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal. Oct. 12, 2016).

Your response to request 20 contains several bad faith objections. First, your objection that the request is "overbroad in scope, oppressive, burdensome and harassing as stated" is baseless and improper. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal. Oct. 12, 2016). Indeed, this request plainly seeks relevant information that is proportional to the needs of the case, considering the claims at issue. *Ocean Garden Products v. Blessings, Inc.*, No. 8:20-mc-00006-JVS-KESx, 2020 U.S. Dist. LEXIS 62309, at *4-5 (C.D. Cal. Apr. 3, 2020). Similarly, your objection that the request violates the scope of discovery as defined by FRCP 26(b) is baseless and improper. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal. Oct. 12, 2016); *Conan v. City of Fontana*, No. EDCV 16-1261-KK, 2017 U.S. Dist. LEXIS 103780, at *6-7 (C.D. Cal. July 5, 2017). Fourth, your response improperly asserts attorney-client privilege without the inclusion of a privilege log. FRCP 26(b)(5); *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *9 (C.D. Cal. Oct. 12, 2016). Finally, your objection that the request is "vague and ambiguous and unintelligible" as to time is patently false, as all requests are bound (unless otherwise stated) by the Instructions as you indicated in your General Objection H. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal. Oct. 12, 2016).

Your response to request 21 contains several bad faith objections. First, your objection that the request is "overbroad in scope, oppressive, burdensome and harassing as stated" is baseless and improper. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal. Oct. 12, 2016). Second, your objection that the request is "vague and ambiguous" as to time is patently false, as all requests are bound (unless otherwise stated) by the Instructions as you indicated in your General Objection H. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV

BLAISE & NITSCHKE, P.C.

Beatbox v. Labrador, et al.
May 5, 2021
Page 59

16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal. Oct. 12, 2016). Further, your objection that the request violates the scope of discovery as defined by FRCP 26(b) is baseless and improper. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal. Oct. 12, 2016); *Conan v. City of Fontana*, No. EDCV 16-1261-KK, 2017 U.S. Dist. LEXIS 103780, at *6-7 (C.D. Cal. July 5, 2017). Indeed, this request plainly seeks relevant information that is proportional to the needs of the case, considering the claims at issue; Defendant's purported "right to privacy" and need for a protective order are baseless and overstated. *Ocean Garden Products v. Blessings, Inc.*, No. 8:20-mc-00006-JVS-KESx, 2020 U.S. Dist. LEXIS 62309, at *4-5 (C.D. Cal. Apr. 3, 2020); *Desilva v. Allergan United States*, No. 8:19-cv-01606-JLS (JDEx), 2020 U.S. Dist. LEXIS 188545, at *10-11 (C.D. Cal. Sep. 1, 2020). Finally, *Flores v. Albertsons Inc.* is inapplicable to this case and your citation thereof is improper; in *Flores*, this Court declined to compel production of tax returns in a dispute over employment classification where W2s and 1099s had already been produced, which does not support your claim of Defendant's right to privacy. *See* 2002 U.S. Dist. LEXIS 6171, (C.D. Cal. Apr. 9, 2002).

Your response to request 22 contains several bad faith objections. First, your objection that the request is "overbroad in scope, oppressive and harassing as stated" is baseless and improper. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal. Oct. 12, 2016). Second, your objection that the request is "vague and ambiguous" as to time is patently false, as all requests are bound (unless otherwise stated) by the Instructions as you indicated in your General Objection H. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal. Oct. 12, 2016). Third, your objection that the request violates the scope of discovery as defined by FRCP 26(b) is baseless and improper. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal. Oct. 12, 2016); *Conan v. City of Fontana*, No. EDCV 16-1261-KK, 2017 U.S. Dist. LEXIS 103780, at *6-7 (C.D. Cal. July 5, 2017). Indeed, this request plainly seeks relevant information that is proportional to the needs of the case, considering the claims at issue; Defendant's purported "right to privacy" is baseless and overstated. *Ocean Garden Products v. Blessings, Inc.*, No. 8:20-mc-00006-JVS-KESx, 2020 U.S. Dist. LEXIS 62309, at *4-5 (C.D. Cal. Apr. 3, 2020); *Desilva v. Allergan United States*, No. 8:19-cv-01606-JLS (JDEx), 2020 U.S. Dist. LEXIS 188545, at *10-11 (C.D. Cal. Sep. 1, 2020). Finally, *Flores v. Albertsons Inc.* is inapplicable to this case and your citation thereof is improper; in *Flores*, this Court declined to compel production of tax returns in a dispute over employment classification where W2s and 1099s had already been produced, which does not support your claim of Defendant's right to privacy. *See* 2002 U.S. Dist. LEXIS 6171, (C.D. Cal. Apr. 9, 2002).

Your response to request 23 contains several bad faith objections. First, your objection that the request is "overbroad in scope, oppressive and harassing as stated" is baseless and improper. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal. Oct. 12, 2016). Second, your objection that the request violates the scope of discovery as defined by FRCP 26(b) is baseless and improper. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal. Oct. 12, 2016);

BLAISE & NITSCHKE, P.C.

Beatbox v. Labrador, et al.
May 5, 2021
Page 60

*Conan v. City of Fontana*, No. EDCV 16-1261-KK, 2017 U.S. Dist. LEXIS 103780, at *6-7 (C.D. Cal. July 5, 2017). Indeed, this request plainly seeks relevant information that is proportional to the needs of the case, considering the claims at issue; Defendant's purported "right to privacy" is baseless and overstated. *Ocean Garden Products v. Blessings, Inc.*, No. 8:20-mc-00006-JVS-KESx, 2020 U.S. Dist. LEXIS 62309, at *4-5 (C.D. Cal. Apr. 3, 2020); *Desilva v. Allergan United States*, No. 8:19-cv-01606-JLS (JDEx), 2020 U.S. Dist. LEXIS 188545, at *10-11 (C.D. Cal. Sep. 1, 2020).

Your response to request 24 contains several bad faith objections. First, your objection that the request is "overbroad in scope, oppressive, burdensome and harassing as stated" is baseless and improper. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal. Oct. 12, 2016). Indeed, this request plainly seeks relevant information that is proportional to the needs of the case, considering the claims at issue. *Ocean Garden Products v. Blessings, Inc.*, No. 8:20-mc-00006-JVS-KESx, 2020 U.S. Dist. LEXIS 62309, at *4-5 (C.D. Cal. Apr. 3, 2020). Thus, your objection that the request violates the scope of discovery as defined by FRCP 26(b) is baseless and improper. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal. Oct. 12, 2016); *Conan v. City of Fontana*, No. EDCV 16-1261-KK, 2017 U.S. Dist. LEXIS 103780, at *6-7 (C.D. Cal. July 5, 2017). Fourth, your response improperly asserts attorney-client privilege without the inclusion of a privilege log. FRCP 26(b)(5); *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *9 (C.D. Cal. Oct. 12, 2016). Further, your objection that the request is "vague and ambiguous and unintelligible" as to time is patently false, as all requests are bound (unless otherwise stated) by the Instructions as you indicated in your General Objection H. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal. Oct. 12, 2016). Finally, your objection that the request is "vague and ambiguous and unintelligible" as to "asset transfers" is improper. *Id.*

Your response to request 25 contains several bad faith objections. First, your objection that the request is "overbroad in scope, oppressive and harassing as stated" is baseless and improper. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal. Oct. 12, 2016). Indeed, this request plainly seeks relevant information that is proportional to the needs of the case, considering the claims at issue. *Ocean Garden Products v. Blessings, Inc.*, No. 8:20-mc-00006-JVS-KESx, 2020 U.S. Dist. LEXIS 62309, at *4-5 (C.D. Cal. Apr. 3, 2020). Thus, your objection that the request violates the scope of discovery as defined by FRCP 26(b) is baseless and improper. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal. Oct. 12, 2016); *Conan v. City of Fontana*, No. EDCV 16-1261-KK, 2017 U.S. Dist. LEXIS 103780, at *6-7 (C.D. Cal. July 5, 2017). Fourth, your response improperly asserts attorney-client privilege without the inclusion of a privilege log. FRCP 26(b)(5); *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *9 (C.D. Cal. Oct. 12, 2016). Further, your objection that the request is "vague and ambiguous" as to time is patently false, as all requests are bound (unless otherwise stated) by the Instructions as you indicated in your General Objection H. *Ecojet, Inc. v.*

BLAISE & NITSCHKE, P.C.

Beatbox v. Labrador, et al.
May 5, 2021
Page 61

*Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal. Oct. 12, 2016). Finally, your objection that the request is "vague and ambiguous" as to "distributor," "relationship," "date of production" and "distribution" is improper. *Id.*

Your response to request 27 contains several bad faith objections. First, your objection that the request is "overbroad in scope, oppressive, burdensome and harassing as stated" is baseless and improper. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal. Oct. 12, 2016). Second, your objection that the request violates the scope of discovery as defined by FRCP 26(b) is baseless and improper. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal. Oct. 12, 2016); *Conan v. City of Fontana*, No. EDCV 16-1261-KK, 2017 U.S. Dist. LEXIS 103780, at *6-7 (C.D. Cal. July 5, 2017). Indeed, this request plainly seeks relevant information that is proportional to the needs of the case, considering the claims at issue; Defendant's purported "right to privacy" is baseless and overstated. *Ocean Garden Products v. Blessings, Inc.*, No. 8:20-mc-00006-JVS-KESx, 2020 U.S. Dist. LEXIS 62309, at *4-5 (C.D. Cal. Apr. 3, 2020); *Desilva v. Allergan United States*, No. 8:19-cv-01606-JLS (JDEx), 2020 U.S. Dist. LEXIS 188545, at *10-11 (C.D. Cal. Sep. 1, 2020). Fourth, your objection as to "Defendant's right of privacy" is needlessly repeated, exposing your lack of due diligence in responding to these requests. Further, your objection that the request is "vague and ambiguous" as to time is patently false, as all requests are bound (unless otherwise stated) by the Instructions as you indicated in your General Objection H. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal. Oct. 12, 2016). Additionally, your objection that the request is "vague and ambiguous" as to "statements" is improper. *Id. Flores v. Albertsons Inc.* is inapplicable to this case and your citation thereof is improper; in *Flores*, this Court declined to compel production of tax returns in a dispute over employment classification where W2s and 1099s had already been produced, which does not support your claim of Defendant's right to privacy. *See* 2002 U.S. Dist. LEXIS 6171, (C.D. Cal. Apr. 9, 2002). Lastly, your citation to *Nutratech, Inc. v. Syntech Int'l, Inc.*, is a deliberate misrepresentation. 242 F.R.D. 552 (C.D. Cal. Mar. 20, 2007). *Nutratech* is one of many cases where direct competitors who had agreed to a protective order disagreed over whether or not to impose an Attorney's-Eyes-Only limitation, not a case where the need for a protective order was in dispute. *Lindsey v. Elsevier Inc.*, No. 16-cv-00959-GPC (DHB), 2016 U.S. Dist. LEXIS 111786, at *8 (S.D. Cal. Aug. 19, 2016); *Satmodo, LLC v. Whenever Communs., LLC*, 2018 U.S. Dist. LEXIS 31842, at *5 (S.D. Cal. Feb. 27, 2018).

Your response to request 28 contains several bad faith objections. First, your objection that the request is "overbroad in scope, oppressive, burdensome and harassing as stated" is baseless and improper. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal. Oct. 12, 2016). Second, your objection that the request violates the scope of discovery as defined by FRCP 26(b) is baseless and improper. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal. Oct. 12, 2016); *Conan v. City of Fontana*, No. EDCV 16-1261-KK, 2017 U.S. Dist. LEXIS 103780, at *6-7 (C.D. Cal. July 5, 2017). Indeed, this request plainly seeks relevant information that is proportional to

BLAISE & NITSCHKE, P.C.

Beatbox v. Labrador, et al.
May 5, 2021
Page 62

the needs of the case, considering the claims at issue; Defendant's purported claim of harm is baseless and overstated. *Ocean Garden Products v. Blessings, Inc.*, No. 8:20-mc-00006-JVS-KESx, 2020 U.S. Dist. LEXIS 62309, at *4-5 (C.D. Cal. Apr. 3, 2020); *Desilva v. Allergan United States*, No. 8:19-cv-01606-JLS (JDEx), 2020 U.S. Dist. LEXIS 188545, at *10-11 (C.D. Cal. Sep. 1, 2020).

Your response to request 29 contains several bad faith objections. First, your objection that the request is "overbroad in scope, oppressive, burdensome and harassing as stated" is baseless and improper. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal. Oct. 12, 2016). It is improper to object that the requesting party already has the requested documents. *Banuelos v. City of San Bernardino*, No. EDCV 13-736-GW (KKx), 2017 U.S. Dist. LEXIS 198247, at *14 (C.D. Cal. Dec. 1, 2017). Third, your response improperly asserts attorney-client privilege without the inclusion of a privilege log. FRCP 26(b)(5); *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *9 (C.D. Cal. Oct. 12, 2016). Further, your objection that the request is "vague and ambiguous and unintelligible" as to time is patently false, as all requests are bound (unless otherwise stated) by the Instructions as you indicated in your General Objection H. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal. Oct. 12, 2016). Fifth, your objection that the request is "vague and ambiguous and unintelligible" as to "cease licensing activities" is improper. *Id.* Lastly, your citation to *Nutratech, Inc. v. Syntech Int'l, Inc.*, is a deliberate misrepresentation. 242 F.R.D. 552 (C.D. Cal. Mar. 20, 2007). *Nutratech* is one of many cases where direct competitors who had agreed to a protective order disagreed over whether or not to impose an Attorney's-Eyes-Only limitation, not a case where the need for a protective order was in dispute. *Lindsey v. Elsevier Inc.*, No. 16-cv-00959-GPC (DHB), 2016 U.S. Dist. LEXIS 111786, at *8 (S.D. Cal. Aug. 19, 2016); *Satmodo, LLC v. Whenever Communs., LLC*, 2018 U.S. Dist. LEXIS 31842, at *5 (S.D. Cal. Feb. 27, 2018).

Your response to request 30 contains several bad faith objections. First, your objection that the request is "overbroad in scope, oppressive, burdensome and harassing as stated" is baseless and improper. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal. Oct. 12, 2016). Indeed, this request plainly seeks relevant information that is proportional to the needs of the case, considering the claims at issue. *Ocean Garden Products v. Blessings, Inc.*, No. 8:20-mc-00006-JVS-KESx, 2020 U.S. Dist. LEXIS 62309, at *4-5 (C.D. Cal. Apr. 3, 2020). Third, your response improperly asserts attorney-client privilege without the inclusion of a privilege log. FRCP 26(b)(5); *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *9 (C.D. Cal. Oct. 12, 2016). Further, your objection that the request is "vague and ambiguous and unintelligible" as to time is patently false, as all requests are bound (unless otherwise stated) by the Instructions as you indicated in your General Objection H. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal. Oct. 12, 2016). Finally, your objection that the request is "vague and ambiguous and unintelligible" as to "establishes and/or disproves any of the following in relationship to," "any other entity," and "co-mingling" is improper. *Id.*

BLAISE & NITSCHKE, P.C.

Beatbox v. Labrador, et al.
May 5, 2021
Page 63

Your response to request 31 contains several bad faith objections. First, your objection that the request is "overbroad in scope, oppressive, burdensome and harassing as stated" is baseless and improper. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal. Oct. 12, 2016). Second, your objection that the request violates the scope of discovery as defined by FRCP 26(b) is baseless and improper. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal. Oct. 12, 2016); *Conan v. City of Fontana*, No. EDCV 16-1261-KK, 2017 U.S. Dist. LEXIS 103780, at *6-7 (C.D. Cal. July 5, 2017). Indeed, this request plainly seeks relevant information that is proportional to the needs of the case, considering the claims at issue. *Ocean Garden Products v. Blessings, Inc.*, No. 8:20-mc-00006-JVS-KESx, 2020 U.S. Dist. LEXIS 62309, at *4-5 (C.D. Cal. Apr. 3, 2020). Fourth, your response improperly asserts attorney-client privilege without the inclusion of a privilege log. FRCP 26(b)(5); *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *9 (C.D. Cal. Oct. 12, 2016). Further, your objection that the request is "vague and ambiguous and unintelligible" as to time is patently false, as all requests are bound (unless otherwise stated) by the Instructions as you indicated in your General Objection H. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal. Oct. 12, 2016). Finally, your objection that the request is "vague and ambiguous and unintelligible" as to "claims relating to the Composition" is improper. *Id*.

Your response to request 32 is improper; you have failed to submit any privilege log.

Your response to request 33 is improper; you have failed to execute an affidavit stating that your responses are accurate and complete.

## Noel Palmer Webb's Responses to Plaintiff's First Set of Interrogatories

Several of your responses include objections by "Labrador"; these objections are generally improper, run afoul of FRCP 33(b)(1), and are waived. Notwithstanding those waived objections, Plaintiff responds as follows:

Your response to request 1 contains several bad faith objections. First, your objection that the interrogatory is "overbroad, oppressive and harassing as stated" is baseless and improper. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal. Oct. 12, 2016). Second, your citation to *Safeco* is inapplicable improper, as the case is explicitly addressing interrogatories that contain separate subparts addressing unique requests for admission on unrelated topics. *Safeco Ins. Co. of Am. v. Rawstron*, 181 F.R.D. 441, 446 (C.D. Cal. May 15, 1998). Your objection that the interrogatory is "vague and ambiguous" as to time is patently false, as all interrogatories are bound (unless otherwise stated) by Instruction K as you indicated below. Finally, your response improperly asserts attorney-client privilege without the inclusion of a privilege log. FRCP 26(b)(5); *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *9 (C.D. Cal. Oct. 12, 2016). Lastly, your objection on the basis of FRCP 33(a)(1) is without merit.

BLAISE & NITSCHKE, P.C.

Beatbox v. Labrador, et al.
May 5, 2021
Page 64

Your response to request 2 contains several bad faith objections. First, you object that the request
is propounded to an entity "which does not 'believe' facts." This is plainly an evasive answer,
impermissible under FRCP 37. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx),
2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal. Oct. 12, 2016). This is also patently false, as this
request is propounded to an individual; you clearly did not exercise due diligence in responding to
these discovery requests. Second, your objection that the request is "vague and ambiguous as to
which 'allegations' … is/are being referred to" is similarly evasive and improper. *Id.* Finally, your
response improperly asserts attorney-client privilege without the inclusion of a privilege log. FRCP
26(b)(5); *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS
192169, at *9 (C.D. Cal. Oct. 12, 2016).

Your response to request 3 contains several bad faith objections. First, your objection that the
interrogatory is "overbroad in scope", "oppressive and harassing", and "seeks information in
Plaintiff's possession" is baseless and improper. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-
AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal. Oct. 12, 2016); *Banuelos v. City of
San Bernardino*, No. EDCV 13-736-GW (KKx), 2017 U.S. Dist. LEXIS 198247, at *14 (C.D. Cal.
Dec. 1, 2017). Your objection that the interrogatory is "vague and ambiguous" as to time is patently
false, as all interrogatories are bound (unless otherwise stated) by Instruction K as you indicated
below. Your objection that the interrogatory is "vague and ambiguous" as to the term "any
agreements" is improper, as agreements is a common term with a plain meaning. *Ecojet, Inc. v.
Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal.
Oct. 12, 2016). Finally, your citation to *Sanders* does not properly support your objection; *Sanders*
concerned a request to produce 31 semi-annual reports conducted on the Los Angeles County
Sheriff's Department by an outside monitor which spanned beyond the time frame of the
complained-of civil rights violation. *Sanders v. L.A. County*, 2018 U.S. Dist. LEXIS 225237, (C.D.
Cal. Nov. 16, 2018). Nothing in that opinion stands for the notion that an interrogatory (or even
request for production) spanning a (nearly) 20-year period is overbroad by nature; in fact, the same
opinion acknowledges that the same reports were produced in parallel case to the one cited.

Your response to request 4 contains several bad faith objections. First, your objection that the
interrogatory is "vague and ambiguous" as to time is patently false, as all interrogatories are bound
(unless otherwise stated) by Instruction K as you indicated in your response to request 3. *Ecojet,
Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11
(C.D. Cal. Oct. 12, 2016). Second, your citation to *Safeco* is inapplicable and improper, as the case
is explicitly addressing interrogatories that contain separate subparts addressing unique requests
for admission on unrelated topics. *Safeco Ins. Co. of Am. v. Rawstron*, 181 F.R.D. 441, 446 (C.D.
Cal. May 15, 1998). Finally, your response improperly asserts attorney-client privilege without the
inclusion of a privilege log. FRCP 26(b)(5); *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG
(KESx), 2016 U.S. Dist. LEXIS 192169, at *9 (C.D. Cal. Oct. 12, 2016).

Your response to request 5 contains several bad faith objections. First, your objection that the
interrogatory is "overbroad in scope, oppressive, burdensome and harassing as stated" is baseless

BLAISE & NITSCHKE, P.C.

Beatbox v. Labrador, et al.
May 5, 2021
Page 65

and improper. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *6-11 (C.D. Cal. Oct. 12, 2016). Your objection that the request is "vague, ambiguous and unintelligible" is also improper, as "gross earnings" is plainly applicable to entities. *Id*. Additionally, your response improperly asserts attorney-client privilege without the inclusion of a privilege log. FRCP 26(b)(5); *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *9 (C.D. Cal. Oct. 12, 2016). Further, this interrogatory plainly seeks relevant information, considering the claims at issue. *Ocean Garden Products v. Blessings, Inc.*, No. 8:20-mc-00006-JVS-KESx, 2020 U.S. Dist. LEXIS 62309, at *4-5 (C.D. Cal. Apr. 3, 2020). Your citation to *East Iowa Plastics* is plainly a bad-faith attempt to misrepresent an inapplicable opinion. *East Iowa Plastics* did not concern fraudulent transfer, but instead concerned trademark infringement for a trademark in the poultry business; the Court ruled that the financial records for Defendant's separate business (entirely associated with the purchase of old homes) were not discoverable because they could not be relevant to damages for the alleged trademark infringement. This case is not relevant to a case regarding fraudulent transfer. Lastly, the request does not seek "Labrador's gross earnings" but instead Noel Palmer Webb's gross earnings; you clearly did not exercise due diligence in responding to these requests.

Your response to request 6 contains several bad faith objections. First, your objection that the interrogatory is "overbroad in scope, oppressive, burdensome and harassing as stated" is baseless and improper. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *6-11 (C.D. Cal. Oct. 12, 2016). Second, your objection that the interrogatory is "vague and ambiguous" as to time is patently false, as all interrogatories are bound (unless otherwise stated) by Instruction K as you indicated in your response to request 3. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal. Oct. 12, 2016). Further, your objection that the interrogatory is "vague and ambiguous" as to "all copyrighted works" is improper. *Id*. Additionally, your response improperly asserts attorney-client privilege without the inclusion of a privilege log. FRCP 26(b)(5); *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *9 (C.D. Cal. Oct. 12, 2016). Finally, this interrogatory plainly seeks relevant information, considering the claims at issue. *Ocean Garden Products v. Blessings, Inc.*, No. 8:20-mc-00006-JVS-KESx, 2020 U.S. Dist. LEXIS 62309, at *4-5 (C.D. Cal. Apr. 3, 2020). Lastly, the request does not seek copyrights owned by Labrador but instead copyrights owned by Noel Palmer Webb; you clearly did not exercise due diligence in responding to these requests.

Your response to request 7 contains several bad faith objections. First, your objection that the interrogatory is "overbroad in scope, oppressive, burdensome and harassing as stated" is baseless and improper. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *6-11 (C.D. Cal. Oct. 12, 2016). Second, your objection that the interrogatory is "vague and ambiguous" as to time is patently false, as all interrogatories are bound (unless otherwise stated) by Instruction K as you indicated in your response to request 3. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal. Oct. 12, 2016). Further, your objection that the interrogatory is "vague and ambiguous" as to "any

**BLAISE & NITSCHKE, P.C.**

Beatbox v. Labrador, et al.
May 5, 2021
Page 66

entities" is improper. *Id*. Finally, this interrogatory plainly seeks relevant information, considering the claims at issue. *Ocean Garden Products v. Blessings, Inc.*, No. 8:20-mc-00006-JVS-KESx, 2020 U.S. Dist. LEXIS 62309, at *4-5 (C.D. Cal. Apr. 3, 2020). Lastly, the request does not seek entities in which Labrador holds interest but instead entities in which Noel Palmer Webb holds any interest; you clearly did not exercise due diligence in responding to these requests.

Your response to request 8 contains several bad faith objections. First, this interrogatory plainly seeks relevant information, considering the claims at issue. *Ocean Garden Products v. Blessings, Inc.*, No. 8:20-mc-00006-JVS-KESx, 2020 U.S. Dist. LEXIS 62309, at *4-5 (C.D. Cal. Apr. 3, 2020). Second, the request does not seek Labrador's earnings but instead seeks information relating to Noel Palmer Webb. Lastly, any objection regarding harm to Labrador is irrelevant and misplaced. You clearly failed to exercise due diligence in responding to these requests.

Your response to request 9 contains several bad faith objections. First, your objection that the interrogatory is "overbroad in scope, oppressive, burdensome and harassing as stated" is baseless and improper. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *6-11 (C.D. Cal. Oct. 12, 2016). Second, your objection that the interrogatory is "vague and ambiguous" as to time is patently false, as all interrogatories are bound (unless otherwise stated) by Instruction K as you indicated in your response to request 3. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal. Oct. 12, 2016). Further, your objection that the interrogatory is "vague and ambiguous" as to "all capital assets, financial institutions" is improper. *Id*. Additionally, this interrogatory plainly seeks relevant and proportional information, considering the claims at issue. *Ocean Garden Products v. Blessings, Inc.*, No. 8:20-mc-00006-JVS-KESx, 2020 U.S. Dist. LEXIS 62309, at *4-5 (C.D. Cal. Apr. 3, 2020). Lastly, your objection on the basis of FRCP 33(a)(1) is baseless and without merit.

Your response to request 10 contains several bad faith objections. First, your objection that the interrogatory is "overbroad in scope, oppressive, burdensome and harassing as stated" is baseless and improper. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *6-11 (C.D. Cal. Oct. 12, 2016). Second, your objection that the interrogatory is "vague and ambiguous" as to time is patently false, as all interrogatories are bound (unless otherwise stated) by Instruction K as you indicated in your response to request 3. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal. Oct. 12, 2016). Further, your objection that the interrogatory is "vague and ambiguous" as to "'YOUR transactions,' 'asset transfers,' and 'any other third party'" is improper. *Id*. Additionally, this interrogatory plainly seeks relevant and proportional information, considering the claims at issue. *Ocean Garden Products v. Blessings, Inc.*, No. 8:20-mc-00006-JVS-KESx, 2020 U.S. Dist. LEXIS 62309, at *4-5 (C.D. Cal. Apr. 3, 2020). Lastly, your objection on the basis of FRCP 33(a)(1) is baseless and without merit.

Your response to request 11 contains several bad faith objections. First, your objection that the interrogatory is "vague and ambiguous" as to time is patently false, as all interrogatories are bound



BLAISE & NITSCHKE, P.C.

Beatbox v. Labrador, et al.
May 5, 2021
Page 67

(unless otherwise stated) by Instruction K as you indicated in your response to request 3. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal. Oct. 12, 2016). Further, your objection that the interrogatory is "vague and ambiguous" as to "'identify … all purchase agreements', 'YOUR purchase' and 'the assets'" is improper. *Id.* Additionally, this interrogatory plainly seeks relevant information, considering the claims at issue. *Ocean Garden Products v. Blessings, Inc.*, No. 8:20-mc-00006-JVS-KESx, 2020 U.S. Dist. LEXIS 62309, at *4-5 (C.D. Cal. Apr. 3, 2020).

Your response to request 12 contains several bad faith objections. First, your objection that the interrogatory is "vague and ambiguous" as to time is patently false, as all interrogatories are bound (unless otherwise stated) by Instruction K as you indicated in your response to request 3. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal. Oct. 12, 2016). Further, your objection that the interrogatory is "vague and ambiguous" as to "'identify … all asset transfers' and 'since inception of the New Zealand claim'" is improper. *Id.* Further, your objection on the basis of privacy is improper. *Desilva v. Allergan United States*, No. 8:19-cv-01606-JLS (JDEx), 2020 U.S. Dist. LEXIS 188545, at *10-11 (C.D. Cal. Sep. 1, 2020). Additionally, this interrogatory plainly seeks relevant and proportional information, considering the claims at issue. *Ocean Garden Products v. Blessings, Inc.*, No. 8:20-mc-00006-JVS-KESx, 2020 U.S. Dist. LEXIS 62309, at *4-5 (C.D. Cal. Apr. 3, 2020). Lastly, your objection on the basis of FRCP 33(a)(1) is baseless and without merit.

Your response to request 13 contains several bad faith objections. First, your objection that the interrogatory is overbroad in scope is baseless and improper. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *6-11 (C.D. Cal. Oct. 12, 2016). Second, your objection that the interrogatory is "vague and ambiguous" as to time is patently false, as all interrogatories are bound (unless otherwise stated) by Instruction K as you indicated in your response to request 3. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal. Oct. 12, 2016). Further, your objection that the interrogatory is "vague and ambiguous" as to "any other lawsuits" is improper. *Id.* Additionally, this interrogatory plainly seeks relevant and proportional information, considering the claims at issue. *Ocean Garden Products v. Blessings, Inc.*, No. 8:20-mc-00006-JVS-KESx, 2020 U.S. Dist. LEXIS 62309, at *4-5 (C.D. Cal. Apr. 3, 2020).

Your response to request 14 contains several bad faith objections. First, your objection that the interrogatory is overbroad in scope is baseless and improper. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *6-11 (C.D. Cal. Oct. 12, 2016). Second, your objection that the interrogatory is "vague and ambiguous" as to time is patently false, as all interrogatories are bound (unless otherwise stated) by Instruction K as you indicated in your response to request 3. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal. Oct. 12, 2016). Further, your objection that the interrogatory is "vague and ambiguous" as to "'agreements' and 'through the date of production'" is improper. *Id.* Additionally, this interrogatory plainly seeks relevant and proportional

BLAISE & NITSCHKE, P.C.

Beatbox v. Labrador, et al.
May 5, 2021
Page 68

information, considering the claims at issue. *Ocean Garden Products v. Blessings, Inc.*, No. 8:20-mc-00006-JVS-KESx, 2020 U.S. Dist. LEXIS 62309, at *4-5 (C.D. Cal. Apr. 3, 2020). Lastly, your objection on the basis of FRCP 33(a)(1) is baseless and without merit.

Your response to request 15 contains several bad faith objections. First, your objection that the interrogatory is overbroad in scope is baseless and improper. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *6-11 (C.D. Cal. Oct. 12, 2016). Second, your objection that the interrogatory is "vague and ambiguous" as to time is patently false, as all interrogatories are bound (unless otherwise stated) by Instruction K as you indicated in your response to request 3. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal. Oct. 12, 2016). Further, your objection that the interrogatory is "vague and ambiguous" as to "'identify … all conveyances' and 'its inception'" is improper. *Id.* Additionally, this interrogatory plainly seeks relevant and proportional information, considering the claims at issue. *Ocean Garden Products v. Blessings, Inc.*, No. 8:20-mc-00006-JVS-KESx, 2020 U.S. Dist. LEXIS 62309, at *4-5 (C.D. Cal. Apr. 3, 2020).

Your response to request 16 contains several bad faith objections. First, your objection that the interrogatory is overbroad in scope is baseless and improper. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *6-11 (C.D. Cal. Oct. 12, 2016). Second, your objection that the interrogatory is "vague and ambiguous" as to time is patently false, as all interrogatories are bound (unless otherwise stated) by Instruction K as you indicated in your response to request 3. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal. Oct. 12, 2016). Further, your objection that the interrogatory is "vague and ambiguous" as to "would cover… the liability alleged against YOU" is improper. *Id.* Additionally, this interrogatory plainly seeks relevant and proportional information, considering the claims at issue. *Ocean Garden Products v. Blessings, Inc.*, No. 8:20-mc-00006-JVS-KESx, 2020 U.S. Dist. LEXIS 62309, at *4-5 (C.D. Cal. Apr. 3, 2020).

Your response to request 17 contains several bad faith objections. First, your objection that the interrogatory is "overbroad in scope, oppressive and harassing as stated" is baseless and improper. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *6-11 (C.D. Cal. Oct. 12, 2016). Additionally, this interrogatory plainly seeks relevant information, considering the claims at issue; your claim of privacy is overstated. *Ocean Garden Products v. Blessings, Inc.*, No. 8:20-mc-00006-JVS-KESx, 2020 U.S. Dist. LEXIS 62309, at *4-5 (C.D. Cal. Apr. 3, 2020). Further, your objection that the interrogatory is "vague and ambiguous" as to "the New Zealand claim" is improper. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal. Oct. 12, 2016). Lastly, your objection on the basis of FRCP 33(a)(1) is baseless and without merit.

Your response to request 18 contains several bad faith objections. First, your objection that the interrogatory is "overbroad in scope, oppressive and harassing as stated" is baseless and improper. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at

BLAISE & NITSCHKE, P.C.

Beatbox v. Labrador, et al.
May 5, 2021
Page 69

*6-11 (C.D. Cal. Oct. 12, 2016). Additionally, this interrogatory plainly seeks relevant information, considering the claims at issue. *Ocean Garden Products v. Blessings, Inc.*, No. 8:20-mc-00006-JVS-KESx, 2020 U.S. Dist. LEXIS 62309, at *4-5 (C.D. Cal. Apr. 3, 2020). Further, your incomplete objection that the request "violates Defendant's right to" shows your continued lack of diligence in responding to these requests. Lastly, your objection on the basis of FRCP 33(a)(1) is baseless and without merit.

Your response to request 19 contains several bad faith objections. First, your objection that the interrogatory is "overbroad in scope, oppressive and harassing as stated" is baseless and improper. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *6-11 (C.D. Cal. Oct. 12, 2016). Additionally, this interrogatory plainly seeks relevant information, considering the claims at issue; your claim of privacy is overstated. *Ocean Garden Products v. Blessings, Inc.*, No. 8:20-mc-00006-JVS-KESx, 2020 U.S. Dist. LEXIS 62309, at *4-5 (C.D. Cal. Apr. 3, 2020). Lastly, your objection on the basis of FRCP 33(a)(1) is baseless and without merit.

Your response to request 20 contains several bad faith objections. First, your objection that the interrogatory is "overbroad in scope, oppressive and harassing as stated" is baseless and improper. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *6-11 (C.D. Cal. Oct. 12, 2016). Second, your objection that the interrogatory is "vague and ambiguous" as to "all assets" is improper. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal. Oct. 12, 2016). Additionally, this interrogatory plainly seeks relevant information, considering the claims at issue; your claim of privacy is overstated. *Ocean Garden Products v. Blessings, Inc.*, No. 8:20-mc-00006-JVS-KESx, 2020 U.S. Dist. LEXIS 62309, at *4-5 (C.D. Cal. Apr. 3, 2020). Lastly, your objection on the basis of FRCP 33(a)(1) is baseless and without merit.

**<u>Noel Palmer Webb's Responses To Plaintiff's First Set of Requests for the Production of Documents</u>**

Several of your responses include objections by "Labrador"; these objections are generally improper, run afoul of FRCP 34(b)(2), and are waived. Notwithstanding those waived objections, Plaintiff responds as follows:

Your response to request 1 contains several bad faith objections. First, your objection that the request is "overbroad, oppressive and harassing as stated" is baseless and improper. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal. Oct. 12, 2016). Further, your objection that the request is "vague and ambiguous" is improper. *Id*. Additionally, your response improperly asserts attorney-client privilege without the inclusion of a privilege log. FRCP 26(b)(5); *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *9 (C.D. Cal. Oct. 12, 2016). Your objection on the basis of FRCP 34(b)(1)(a) is baseless; you are required to produce an individualized response to each request for

BLAISE & NITSCHKE, P.C.

Beatbox v. Labrador, et al.
May 5, 2021
Page 70

production. *Conan v. City of Fontana*, No. EDCV 16-1261-KK, 2017 U.S. Dist. LEXIS 103780, at *6-7 (C.D. Cal. July 5, 2017). It is improper to object that the requesting party already has the requested documents. *Banuelos v. City of San Bernardino*, No. EDCV 13-736-GW (KKx), 2017 U.S. Dist. LEXIS 198247, at *14 (C.D. Cal. Dec. 1, 2017).

Your response to request 2 contains several bad faith objections. First, your objection that the request is "overbroad, oppressive and harassing as stated" is baseless and improper. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal. Oct. 12, 2016). Additionally, your objection that "[t]his request is … the proportional to the needs of the case" is completely unintelligible. Further, your objection that the request is "vague and ambiguous" is improper. *Id*. Additionally, your response improperly asserts attorney-client privilege without the inclusion of a privilege log. FRCP 26(b)(5); *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *9 (C.D. Cal. Oct. 12, 2016). Your objection on the basis of FRCP 34(b)(1)(a) is baseless; you are required to produce an individualized response to each request for production. *Conan v. City of Fontana*, No. EDCV 16-1261-KK, 2017 U.S. Dist. LEXIS 103780, at *6-7 (C.D. Cal. July 5, 2017). Finally, your citation to *Coley v. Ventura Cty.* is misrepresentative and improper; while the court in that case held that the responding party was not required to create new data, testing, or documents that did not already exist, any existing documents containing such data or information were subject to production. 2020 U.S. Dist. LEXIS 249557, at *29 (C.D. Cal., June 8, 2020).

Your response to request 3 contains several bad faith objections. First, your objection that the request is "overbroad, oppressive and harassing as stated" is baseless and improper. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal. Oct. 12, 2016). Additionally, your objection that "[t]his request is … the proportional to the needs of the case" is completely unintelligible. Third, your objection that the request is "vague and ambiguous" as to time is patently false, as all requests are bound (unless otherwise stated) by Instruction K as you indicated in your response to request 5. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal. Oct. 12, 2016). Further, your objection that the request is "vague and ambiguous" as to "communications" is improper. *Id*. Finally, your objection on the basis of FRCP 34(b)(1)(a) is baseless; you are required to produce an individualized response to each request for production. *Conan v. City of Fontana*, No. EDCV 16-1261-KK, 2017 U.S. Dist. LEXIS 103780, at *6-7 (C.D. Cal. July 5, 2017).

Your response to request 4 contains several bad faith objections. First, your objection that the request is "overbroad, oppressive and harassing as stated" is baseless and improper. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal. Oct. 12, 2016). Additionally, your objection that "[t]his request is … the proportional to the needs of the case" is completely unintelligible. Finally, your objection on the basis of FRCP 34(b)(1)(a) is baseless; you are required to produce an individualized response to each request for production. *Conan v. City of Fontana*, No. EDCV 16-1261-KK, 2017 U.S. Dist. LEXIS 103780, at *6-7 (C.D. Cal. July 5, 2017).

BLAISE & NITSCHKE, P.C.

Beatbox v. Labrador, et al.
May 5, 2021
Page 71

Your response to request 5 contains several bad faith objections. First, this request plainly seeks relevant information that is proportional to the needs of the case, considering the claims at issue. *Ocean Garden Products v. Blessings, Inc.*, No. 8:20-mc-00006-JVS-KESx, 2020 U.S. Dist. LEXIS 62309, at *4-5 (C.D. Cal. Apr. 3, 2020). Second, any purported objections by "Labrador" are improper under FRCP 34 (b)(2)(A) and are waived. Third, your citation to *Sanders* does not properly support your objection; *Sanders* concerned a request to produce 31 semi-annual reports conducted on the Los Angeles County Sheriff's Department by an outside monitor which spanned beyond the time frame of the complained-of civil rights violation. *Sanders v. L.A. County*, 2018 U.S. Dist. LEXIS 225237, (C.D. Cal. Nov. 16, 2018). Nothing in that opinion stands for the notion that an interrogatory (or even request for production) spanning a (nearly) 20-year period is overbroad by nature; in fact, the same opinion acknowledges that the same reports were produced in parallel case to the one cited. Finally, your response improperly asserts attorney-client privilege without the inclusion of a privilege log. FRCP 26(b)(5); *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *9 (C.D. Cal. Oct. 12, 2016).

Your response to request 6 contains several bad faith objections. First, this request plainly seeks relevant information that is proportional to the needs of the case, considering the claims at issue. *Ocean Garden Products v. Blessings, Inc.*, No. 8:20-mc-00006-JVS-KESx, 2020 U.S. Dist. LEXIS 62309, at *4-5 (C.D. Cal. Apr. 3, 2020). Second, any purported objections by "Labrador" are improper under FRCP 34 (b)(2)(A) and are waived. Third, your objection that the request is "vague and ambiguous" as to time is patently false, as all requests are bound (unless otherwise stated) by Instruction K as you indicated in your response to this request. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal. Oct. 12, 2016). Further, your objection that the request is "vague and ambiguous" as to "relating to in-person meetings" is improper. *Id.* Additionally, your citation to *Sanders* does not properly support your objection; *Sanders* concerned a request to produce 31 semi-annual reports conducted on the Los Angeles County Sheriff's Department by an outside monitor which spanned beyond the time frame of the complained-of civil rights violation. *Sanders v. L.A. County*, 2018 U.S. Dist. LEXIS 225237, (C.D. Cal. Nov. 16, 2018). Nothing in that opinion stands for the notion that an interrogatory (or even request for production) spanning a (nearly) 20-year period is overbroad by nature; in fact, the same opinion acknowledges that the same reports were produced in parallel case to the one cited. Finally, your response improperly asserts attorney-client privilege without the inclusion of a privilege log. FRCP 26(b)(5); *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *9 (C.D. Cal. Oct. 12, 2016).

Your response to request 7 contains several bad faith objections. First, this request plainly seeks relevant information that is proportional to the needs of the case, considering the claims at issue. *Ocean Garden Products v. Blessings, Inc.*, No. 8:20-mc-00006-JVS-KESx, 2020 U.S. Dist. LEXIS 62309, at *4-5 (C.D. Cal. Apr. 3, 2020). Second, any purported objections by "Labrador" are improper under FRCP 34 (b)(2)(A) and are waived. Third, your objection that the request is "vague and ambiguous" as to time is patently false, as all requests are bound (unless otherwise stated) by Instruction K as you indicated in your response to request 5. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV

BLAISE & NITSCHKE, P.C.

Beatbox v. Labrador, et al.
May 5, 2021
Page 72

16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal. Oct. 12, 2016). Further, your objection that the request is "vague and ambiguous" as to "relating to in-person meetings" and "related to the Composition" is improper. *Id*. Additionally, your citation to *Sanders* does not properly support your objection; *Sanders* concerned a request to produce 31 semi-annual reports conducted on the Los Angeles County Sherriff's Department by an outside monitor which spanned beyond the time frame of the complained-of civil rights violation. *Sanders v. L.A. County*, 2018 U.S. Dist. LEXIS 225237, (C.D. Cal. Nov. 16, 2018). Nothing in that opinion stands for the notion that an interrogatory (or even request for production) spanning a (nearly) 20-year period is overbroad by nature; in fact, the same opinion acknowledges that the same reports were produced in parallel case to the one cited. Finally, your response improperly asserts attorney-client privilege without the inclusion of a privilege log. FRCP 26(b)(5); *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *9 (C.D. Cal. Oct. 12, 2016).

Your response to request 8 contains several bad faith objections. First, your objection that the request is "overbroad, oppressive and harassing as stated" is baseless and improper. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal. Oct. 12, 2016). You also needlessly repeat that "[i]t is also grossly overbroad in scope"; this exposes your lack of due diligence in responding to these requests. Also, your objection that the request is "vague and ambiguous" as to time is patently false, as all requests are bound (unless otherwise stated) by Instruction K as you indicated in your response to request 5. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal. Oct. 12, 2016). Further, your objection that the request is "vague and ambiguous" as to "relating to the New Zealand National Pary" is improper. *Id*. Additionally, your objection on the basis of FRCP 34(b)(1)(a) is baseless; you are required to produce an individualized response to each request for production. *Conan v. City of Fontana*, No. EDCV 16-1261-KK, 2017 U.S. Dist. LEXIS 103780, at *6-7 (C.D. Cal. July 5, 2017). Finally, your response improperly asserts attorney-client privilege without the inclusion of a privilege log. FRCP 26(b)(5); *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *9 (C.D. Cal. Oct. 12, 2016).

In response to your response to request 9, Plaintiff submits the following excerpts of the December 2-3, 2019 deposition of Noel Palmer Webb:



BLAISE & NITSCHKE, P.C.

Beatbox v. Labrador, et al.
May 5, 2021
Page 73

```
15            MS. BLAISE:  I'm not asking about pleadings, I'm

16    asking about what was tendered -- he's saying that there was

17    a demand sent to Cohen by his attorney, and I'm wanting to

18    know --

19            MS. OHIRI:  I wasn't the attorney that did it.

20    So...

21    BY MS. BLAISE:

22        Q    So you'll re-provide those to your attorney and then

23    she'll provide them to me, to the extent that they haven't

24    already been provided?

25        A    If I have them, I'll do it again.

                                                        Page 116

 1            MS. OHIRI:  If they exist.

16        Q    For the record, you're going to find those

17    documents?

18        A    I hope I remember.  I have no notes, but I probably

19    will remember, yeah.

20            MS. OHIRI:  To the extent they exist.

21    BY MS. BLAISE:

22        Q    But you have a relationship with the attorney

23    still?

24        A    Yes.

25        Q    So you can request the documents from your

                                                        Page 117
```


BLAISE & NITSCHKE, P.C.

Beatbox v. Labrador, et al.
May 5, 2021
Page 74

```
1    attorney?

2         A    Yes.

3         Q    And then your attorney can submit them to this

4    attorney?

5         A    Yes.


                                          Page 118
```

It is improper to object that the requesting party already has the requested documents. *Banuelos v. City of San Bernardino*, No. EDCV 13-736-GW (KKx), 2017 U.S. Dist. LEXIS 198247, at *14 (C.D. Cal. Dec. 1, 2017).

Your response to request 10 contains several bad faith objections. First, your objection that the request is "overbroad in scope, oppressive and harassing as stated" is baseless and improper. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal. Oct. 12, 2016). Second, your objection on the basis of FRCP 34(b)(1)(a) is baseless; you are required to produce an individualized response to each request for production. *Conan v. City of Fontana*, No. EDCV 16-1261-KK, 2017 U.S. Dist. LEXIS 103780, at *6-7 (C.D. Cal. July 5, 2017). Similarly, your citation to FRCP 26(b)(1) is misplaced. Further, your objection on the basis of FRCP 34(b)(1)(a) is needless, duplicative, and indicative of your lack of due diligence in responding to these requests. Additionally, your response improperly asserts attorney-client privilege without the inclusion of a privilege log. FRCP 26(b)(5); *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *9 (C.D. Cal. Oct. 12, 2016).
It is improper to object that the requesting party already has access to the requested documents. *Banuelos v. City of San Bernardino*, No. EDCV 13-736-GW (KKx), 2017 U.S. Dist. LEXIS 198247, at *14 (C.D. Cal. Dec. 1, 2017). Finally, your objection as to "vague and ambiguous" is made in bad faith, as the request necessarily seeks documents in the responding party's possession, not documents available on the internet.

Your response to request 11 contains several bad faith objections. First, your objection that the request is "overbroad in scope, oppressive and harassing as stated" is baseless and improper. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal. Oct. 12, 2016). Additionally, your objection that "[t]his request is … the proportional to the needs of the case" is completely unintelligible. Third, any purported objections by "Labrador" are improper under FRCP 34 (b)(2)(A) and are waived. Notwithstanding the previous objection, Labrador's citation to *Lopez v. Chertoff* is improper, as that court held that a

BLAISE & NITSCHKE, P.C.

Beatbox v. Labrador, et al.
May 5, 2021
Page 75

request such as this that tracks with a request for the information required by the Rule 26 (a) disclosures would be sufficiently particular to comply with Rule 34(b)(1)(A). 2009 U.S. Dist. LEXIS 50419, at *7-9 (E.D. Cal. June 2, 2009).

Your response to request 12 contains several bad faith objections. First, your objection that the request is "vague and ambiguous" as to "correspondence" and "relating to Plaintiff" is improper. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal. Oct. 12, 2016). Thus, your objection that the request is overbroad in scope, oppressive, burdensome and harassing as stated is baseless and improper. *Id*. Third, any purported objections by "Labrador" are improper under FRCP 34 (b)(2)(A) and are waived. Notwithstanding the previous objection, Labrador's citation to *Lopez v. Chertoff* is improper, as that court held that a request such as this that tracks with a request for the information required by the Rule 26 (a) disclosures would be sufficiently particular to comply with Rule 34(b)(1)(A). 2009 U.S. Dist. LEXIS 50419, at *7-9 (E.D. Cal. June 2, 2009). Additionally, your citation to *Sanders* does not properly support your objection; *Sanders* concerned a request to produce 31 semi-annual reports conducted on the Los Angeles County Sherriff's Department by an outside monitor which spanned beyond the time frame of the complained-of civil rights violation. *Sanders v. L.A. County*, 2018 U.S. Dist. LEXIS 225237, (C.D. Cal. Nov. 16, 2018). Nothing in that opinion stands for the notion that an interrogatory (or even request for production) spanning a (nearly) 20-year period is overbroad by nature; in fact, the same opinion acknowledges that the same reports were produced in parallel case to the one cited. Finally, your response improperly asserts attorney-client privilege without the inclusion of a privilege log. FRCP 26(b)(5); *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *9 (C.D. Cal. Oct. 12, 2016).

In response to your response to request 13, we submit the following excerpt of the December 2-3, 2019 deposition of Noel Palmer Webb:



BLAISE & NITSCHKE, P.C.

Beatbox v. Labrador, et al.
May 5, 2021
Page 76

```
 2              MS. OHIRI:  E-mails.

 3              MS. BLAISE:  They're all letters to the firm.

 4              MS. OHIRI:  Yes, to my firm.

 5              MS. BLAISE:  There's no other documents that are not

 6       letters to your firm?

 7              MR. JACOBSON:  Or e-mails?

 8              MS. BLAISE:  We're going to need to see that.

 9              MS. OHIRI:  I need to withhold these, these are

10       privileged.

11              MS. BLAISE:  So for the record, can you indicate

12       what they are so you will make a privilege log of them?

13              MS. OHIRI:  There's an e-mail from Noel Webb to

14       myself, Raena Ohiri, dated November 21st, 2019.

15              MS. BLAISE:  What was the date?

16              MS. OHIRI:  November 21st, 2019.

17              MS. BLAISE:  Is there anyone else on the e-mail or

18       is it --

19              MS. OHIRI:  It's just to me.  There's a document

20       that reflects attorney/client privilege and work product.  I

21       don't mind sending a redacted version of it, but I can't

22       produce it right now.

23              MS. BLAISE:  Okay.  What is it?

24              MS. OHIRI:  A document, I mean, I --

25              MS. BLAISE:  What is it dated?

                                              Page 60
```

Your response to request 14 contains two bad faith objections. First, it is improper to object that the requesting party already has the requested documents. *Banuelos v. City of San Bernardino*, No. EDCV 13-736-GW (KKx), 2017 U.S. Dist. LEXIS 198247, at *14 (C.D. Cal. Dec. 1, 2017). Second, this request plainly seeks relevant information that is proportional to the needs of the case,

BLAISE & NITSCHKE, P.C.

Beatbox v. Labrador, et al.
May 5, 2021
Page 77

considering the claims at issue; Defendant's purported need for a protective order is overstated. *Ocean Garden Products v. Blessings, Inc.*, No. 8:20-mc-00006-JVS-KESx, 2020 U.S. Dist. LEXIS 62309, at *4-5 (C.D. Cal. Apr. 3, 2020).

Your response to request 15 contains several bad faith objections. First, your objection that the request is "overbroad in scope, oppressive, burdensome and harassing as stated" is baseless and improper. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal. Oct. 12, 2016). Second, your objection that the request is "vague and ambiguous" as to time is patently false, as all requests are bound (unless otherwise stated) by Instruction K as you indicated in your response to request 5. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal. Oct. 12, 2016). Further, your objection that the request is "vague and ambiguous" as to "the Composition" is improper. *Id.* Finally, this request plainly seeks relevant information that is proportional to the needs of the case, considering the claims at issue; Defendant's purported need for a protective order is overstated. *Ocean Garden Products v. Blessings, Inc.*, No. 8:20-mc-00006-JVS-KESx, 2020 U.S. Dist. LEXIS 62309, at *4-5 (C.D. Cal. Apr. 3, 2020).

Your response to request 16 contains several bad faith objections. First, any purported objections by "Labrador" are improper under FRCP 34 (b)(2)(A) and are waived. Notwithstanding the previous objection, your citation to *Lopez v. Chertoff* is improper, as that court held that a request for all *documents* that was not "narrowed to categories or types of documents" ran afoul of Rule 34; here, the request is for *correspondence*, which is a narrowed category of documents. 2009 U.S. Dist. LEXIS 50419, at *7-9 (E.D. Cal. June 2, 2009). Finally, your citation to *Sanders* does not properly support your objection; *Sanders* concerned a request to produce 31 semi-annual reports conducted on the Los Angeles County Sheriff's Department by an outside monitor which spanned beyond the time frame of the complained-of civil rights violation. *Sanders v. L.A. County*, 2018 U.S. Dist. LEXIS 225237, (C.D. Cal. Nov. 16, 2018). Nothing in that opinion stands for the notion that an interrogatory (or even request for production) spanning a (nearly) 20-year period is overbroad by nature; in fact, the same opinion acknowledges that the same reports were produced in parallel case to the one cited.

Your response to request 17 contains several bad faith objections. First, any purported objections by "Labrador" are improper under FRCP 34 (b)(2)(A) and are waived. Notwithstanding the previous objection, your objection that the request is "overbroad in scope, oppressive and harassing as stated" is baseless and improper. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal. Oct. 12, 2016). Indeed, this request plainly seeks relevant information that is proportional to the needs of the case, considering the claims at issue; any claim of harm to Labrador should be ignored, as Labrador's privacy interest is overstated. *Ocean Garden Products v. Blessings, Inc.*, No. 8:20-mc-00006-JVS-KESx, 2020 U.S. Dist. LEXIS 62309, at *4-5 (C.D. Cal. Apr. 3, 2020); *Desilva v. Allergan United States*, No. 8:19-cv-01606-JLS (JDEx), 2020 U.S. Dist. LEXIS 188545, at *10-11 (C.D. Cal. Sep. 1, 2020). Further, your objection that the request is "vague and ambiguous" as to time is patently false, as all requests are

BLAISE & NITSCHKE, P.C.

Beatbox v. Labrador, et al.
May 5, 2021
Page 78

bound (unless otherwise stated) by Instruction K as you indicated in your response to request 5.
*Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at
*11 (C.D. Cal. Oct. 12, 2016). Finally, your objection that the request is "vague and ambiguous"
as to "statements" and "any of the copyrights" is improper. *Id*.

Your response to request 18 contains several bad faith objections. First, your objection that the
request is "overbroad in scope, oppressive, burdensome and harassing as stated" is baseless and
improper. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS
192169, at *11 (C.D. Cal. Oct. 12, 2016). Similarly, your objection that the request violates the
scope of discovery as defined by FRCP 26(b) is baseless and improper. *Id*.; *Conan v. City of
Fontana*, No. EDCV 16-1261-KK, 2017 U.S. Dist. LEXIS 103780, at *6-7 (C.D. Cal. July 5,
2017). *Flores v. Albertsons Inc.* is inapplicable to this case and your citation thereof is improper;
in *Flores*, this Court declined to compel production of tax returns in a dispute over employment
classification where W2s and 1099s had already been produced, which does not support your claim
of Defendant's right to privacy. *See* 2002 U.S. Dist. LEXIS 6171, (C.D. Cal. Apr. 9, 2002). Further,
it is improper to object that the requesting party can get the documents from other sources; the
responding party must conduct a diligent search and reasonable inquiry. *Banuelos v. City of San
Bernardino*, No. EDCV 13-736-GW (KKx), 2017 U.S. Dist. LEXIS 198247, at *14 (C.D. Cal.
Dec. 1, 2017). Additionally, this request plainly seeks relevant information that is proportional to
the needs of the case, considering the claims at issue; Defendant's purported "right to privacy" and
need for a protective order is overstated. *Ocean Garden Products v. Blessings, Inc.*, No. 8:20-mc-
00006-JVS-KESx, 2020 U.S. Dist. LEXIS 62309, at *4-5 (C.D. Cal. Apr. 3, 2020); *Desilva v.
Allergan United States*, No. 8:19-cv-01606-JLS (JDEx), 2020 U.S. Dist. LEXIS 188545, at *10-
11 (C.D. Cal. Sep. 1, 2020). Finally, your response improperly asserts attorney-client privilege
without the inclusion of a privilege log. FRCP 26(b)(5); *Ecojet, Inc. v. Luraco, Inc.*, No. SACV
16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *9 (C.D. Cal. Oct. 12, 2016).

Your response to request 19 contains several bad faith objections. First, your objection that the
request is "overbroad in scope, oppressive, burdensome and harassing as stated" is baseless and
improper. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS
192169, at *11 (C.D. Cal. Oct. 12, 2016). Similarly, your objection that the request violates the
scope of discovery as defined by FRCP 26(b) is baseless and improper; you are required to produce
an individualized response to each request for production. *Id*.; *Conan v. City of Fontana*, No.
EDCV 16-1261-KK, 2017 U.S. Dist. LEXIS 103780, at *6-7 (C.D. Cal. July 5, 2017). Third, your
objection that the request is "vague and ambiguous" as to time is patently false, as all requests are
bound (unless otherwise stated) by Instruction K as you indicated in your response to request 5.
*Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at
*11 (C.D. Cal. Oct. 12, 2016). Finally, your objection that the request is "vague and ambiguous"
as to "YOU claim any interest" is improper. *Id*.

Your response to request 20 contains several bad faith objections. First, it is improper to object
that the requesting party already has or has access to the requested documents. *Banuelos v. City of*

BLAISE & NITSCHKE, P.C.

Beatbox v. Labrador, et al.
May 5, 2021
Page 79

*San Bernardino*, No. EDCV 13-736-GW (KKx), 2017 U.S. Dist. LEXIS 198247, at *14 (C.D. Cal.
Dec. 1, 2017). Second, your objection that the request is "overbroad in scope, oppressive and
harassing as stated" is baseless and improper. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-
AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal. Oct. 12, 2016). Third, your
objection that the request is "vague and ambiguous" as to time is patently false, as all requests are
bound (unless otherwise stated) by Instruction K as you indicated in your response to request 5.
*Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at
*11 (C.D. Cal. Oct. 12, 2016). Further, your objection that the request is "vague and ambiguous"
as to "YOU claim any interest" is improper. *Id*. Additionally, any purported objections by
"Labrador" are improper under FRCP 34 (b)(2)(A) and are waived. Notwithstanding the previous
objection, Labrador's citation to *Coley v. Ventura Cty.* is misrepresentative and improper; while
the court in that case held that the responding party was not required to create new data, testing,
or documents that did not already exist, any existing documents containing such data or
information were subject to production. 2020 U.S. Dist. LEXIS 249557, at *29 (C.D. Cal., June 8,
2020).

Your response to request 21 contains several bad faith objections. First, your objection that the
request is "overbroad in scope, oppressive, burdensome and harassing as stated" is baseless and
improper. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS
192169, at *11 (C.D. Cal. Oct. 12, 2016). Similarly, your objection that the request violates the
scope of discovery as defined by FRCP 26(b) is baseless and improper. *Id*.; *Conan v. City of
Fontana*, No. EDCV 16-1261-KK, 2017 U.S. Dist. LEXIS 103780, at *6-7 (C.D. Cal. July 5,
2017). Indeed, this request plainly seeks relevant information that is proportional to the needs of
the case, considering the claims at issue. *Ocean Garden Products v. Blessings, Inc.*, No. 8:20-mc-
00006-JVS-KESx, 2020 U.S. Dist. LEXIS 62309, at *4-5 (C.D. Cal. Apr. 3, 2020). Additionally,
your response improperly asserts attorney-client privilege without the inclusion of a privilege log.
FRCP 26(b)(5); *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist.
LEXIS 192169, at *9 (C.D. Cal. Oct. 12, 2016). Further, your objection that the request is "vague
and ambiguous" as to time is patently false, as all requests are bound (unless otherwise stated) by
Instruction K as you indicated in your response to request 5. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV
16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal. Oct. 12, 2016). Finally,
your objection that the request is "vague and ambiguous" as to "conveyances" and "YOU claim
any interest" is improper. *Id*.

Your response to request 22 contains several bad faith objections. First, your objection that the
request is "overbroad in scope, oppressive and harassing as stated" is baseless and improper.
*Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at
*11 (C.D. Cal. Oct. 12, 2016). Similarly, your objection that the request violates the scope of
discovery as defined by FRCP 26(b) is baseless and improper. *Id*.; *Conan v. City of Fontana*, No.
EDCV 16-1261-KK, 2017 U.S. Dist. LEXIS 103780, at *6-7 (C.D. Cal. July 5, 2017). Indeed, this
request plainly seeks relevant information that is proportional to the needs of the case, considering
the claims at issue; Defendant's purported "right to privacy" and need for a protective order is

BLAISE & NITSCHKE, P.C.

Beatbox v. Labrador, et al.
May 5, 2021
Page 80

overstated. *Ocean Garden Products v. Blessings, Inc.*, No. 8:20-mc-00006-JVS-KESx, 2020 U.S. Dist. LEXIS 62309, at *4-5 (C.D. Cal. Apr. 3, 2020); *Desilva v. Allergan United States*, No. 8:19-cv-01606-JLS (JDEx), 2020 U.S. Dist. LEXIS 188545, at *10-11 (C.D. Cal. Sep. 1, 2020). *Flores v. Albertsons Inc.* is inapplicable to this case and your citation thereof is improper; in *Flores*, this Court declined to compel production of tax returns in a dispute over employment classification where W2s and 1099s had already been produced, which does not support your claim of Defendant's right to privacy. *See* 2002 U.S. Dist. LEXIS 6171, (C.D. Cal. Apr. 9, 2002).

Your response to request 23 contains several bad faith objections. First, your objection that the request is "overbroad, oppressive and harassing as stated" is baseless and improper. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal. Oct. 12, 2016). Second, it is improper to object that the requesting party can get the documents from other sources; the responding party must conduct a diligent search and reasonable inquiry. *Banuelos v. City of San Bernardino*, No. EDCV 13-736-GW (KKx), 2017 U.S. Dist. LEXIS 198247, at *14 (C.D. Cal. Dec. 1, 2017). Third, the objection appears completely inapplicable as the phrase "relating to YOUR incorporation" does not appear in the request as reproduced. You clearly did not exercise due diligence responding to this request.

Your response to request 24 contains several bad faith objections. First, your objection that the request is "overbroad in scope, oppressive and harassing as stated" is baseless and improper. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal. Oct. 12, 2016). Similarly, your objection that the request violates the scope of discovery as defined by FRCP 26(b) is baseless and improper. *Id.*; *Conan v. City of Fontana*, No. EDCV 16-1261-KK, 2017 U.S. Dist. LEXIS 103780, at *6-7 (C.D. Cal. July 5, 2017). Additionally, your response improperly asserts attorney-client privilege without the inclusion of a privilege log. FRCP 26(b)(5); *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *9 (C.D. Cal. Oct. 12, 2016). Further, your objection that the request is "vague and ambiguous and unintelligible" as to time is patently false, as all requests are bound (unless otherwise stated) by Instruction K as you indicated in your response to request 5. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal. Oct. 12, 2016). Finally, your objection that the request is "vague and ambiguous and unintelligible" as to "corporate governance documents" and "directors" or "shareholders" is improper exposes your lack of due diligence; the request seeks documents for any entity that the responding party has any interest in – a request that in no way precludes an individual from giving a clear answer. *Id*.

Your response to request 25 contains several bad faith objections. First, your objection that the request is "overbroad in scope, oppressive and harassing as stated" is baseless and improper. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal. Oct. 12, 2016). Similarly, your objection that the request violates the scope of discovery as defined by FRCP 26(b) is baseless and improper. *Id.*; *Conan v. City of Fontana*, No. EDCV 16-1261-KK, 2017 U.S. Dist. LEXIS 103780, at *6-7 (C.D. Cal. July 5, 2017).

BLAISE & NITSCHKE, P.C.

Beatbox v. Labrador, et al.
May 5, 2021
Page 81

Additionally, your response improperly asserts attorney-client privilege without the inclusion of a privilege log. FRCP 26(b)(5); *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *9 (C.D. Cal. Oct. 12, 2016). Indeed, this request plainly seeks relevant information that is proportional to the needs of the case, considering the claims at issue; your claim of right to privacy is overstated. *Ocean Garden Products v. Blessings, Inc.*, No. 8:20-mc-00006-JVS-KESx, 2020 U.S. Dist. LEXIS 62309, at *4-5 (C.D. Cal. Apr. 3, 2020). Further, your objection that the request is "vague and ambiguous" as to time is patently false, as all requests are bound (unless otherwise stated) by Instruction K as you indicated in your response to request 5. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal. Oct. 12, 2016). Additionally, your objection that the request is "vague and ambiguous" as to "all debits and credits" is improper. *Id.* Finally, it is improper to object that the requesting party can get the documents from other sources; the responding party must conduct a diligent search and reasonable inquiry. *Banuelos v. City of San Bernardino*, No. EDCV 13-736-GW (KKx), 2017 U.S. Dist. LEXIS 198247, at *14 (C.D. Cal. Dec. 1, 2017).

Your response to request 26 contains several bad faith objections. First, your objection that the request is "oppressive and harassing as stated" is baseless and improper. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal. Oct. 12, 2016). Similarly, your objection that the request violates the scope of discovery as defined by FRCP 26(b) is baseless and improper. *Id.*; *Conan v. City of Fontana*, No. EDCV 16-1261-KK, 2017 U.S. Dist. LEXIS 103780, at *6-7 (C.D. Cal. July 5, 2017). Indeed, this request plainly seeks relevant information that is proportional to the needs of the case, considering the claims at issue; your claim of right to privacy is overstated. *Ocean Garden Products v. Blessings, Inc.*, No. 8:20-mc-00006-JVS-KESx, 2020 U.S. Dist. LEXIS 62309, at *4-5 (C.D. Cal. Apr. 3, 2020). Further, your claim of right to privacy is needlessly repeated, exposing your lack of due diligence in preparing these responses.

Your response to request 27 contains several bad faith objections. First, your objection that the request is "overbroad in scope, oppressive and harassing as stated" is baseless and improper. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal. Oct. 12, 2016). Similarly, your objection that the request violates the scope of discovery as defined by FRCP 26(b) is baseless and improper. *Id.*; *Conan v. City of Fontana*, No. EDCV 16-1261-KK, 2017 U.S. Dist. LEXIS 103780, at *6-7 (C.D. Cal. July 5, 2017). Additionally, your response improperly asserts attorney-client privilege without the inclusion of a privilege log. FRCP 26(b)(5); *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *9 (C.D. Cal. Oct. 12, 2016). Indeed, this request plainly seeks relevant information that is proportional to the needs of the case, considering the claims at issue; your claim of right to privacy is overstated. *Ocean Garden Products v. Blessings, Inc.*, No. 8:20-mc-00006-JVS-KESx, 2020 U.S. Dist. LEXIS 62309, at *4-5 (C.D. Cal. Apr. 3, 2020). Further, your objection that the request is "vague and ambiguous" as to time is patently false, as all requests are bound (unless otherwise stated) by Instruction K as you indicated in your response to request 5. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169,

BLAISE & NITSCHKE, P.C.

Beatbox v. Labrador, et al.
May 5, 2021
Page 82

at *11 (C.D. Cal. Oct. 12, 2016). Additionally, your objection that the request is "vague and ambiguous" as to "asset transfers" and "the New Zealand Claim" is improper. *Id. Flores v. Albertsons Inc.* is inapplicable to this case and your citation thereof is improper; in *Flores*, this Court declined to compel production of tax returns in a dispute over employment classification where W2s and 1099s had already been produced, which does not support your claim of Defendant's right to privacy. *See* 2002 U.S. Dist. LEXIS 6171, (C.D. Cal. Apr. 9, 2002). Finally, it is improper to object that the requesting party can get the documents from other sources; the responding party must conduct a diligent search and reasonable inquiry. *Banuelos v. City of San Bernardino*, No. EDCV 13-736-GW (KKx), 2017 U.S. Dist. LEXIS 198247, at *14 (C.D. Cal. Dec. 1, 2017).

Your response to request 28 contains several bad faith objections. First, your objection that the request is "overbroad in scope, oppressive and harassing as stated" is baseless and improper. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal. Oct. 12, 2016). Similarly, your objection that the request violates the scope of discovery as defined by FRCP 26(b) is baseless and improper. *Id.*; *Conan v. City of Fontana*, No. EDCV 16-1261-KK, 2017 U.S. Dist. LEXIS 103780, at *6-7 (C.D. Cal. July 5, 2017). Additionally, your response improperly asserts attorney-client privilege without the inclusion of a privilege log. FRCP 26(b)(5); *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *9 (C.D. Cal. Oct. 12, 2016). Indeed, this request plainly seeks relevant information that is proportional to the needs of the case, considering the claims at issue; your claims of right to privacy and need for a protective order are overstated. *Ocean Garden Products v. Blessings, Inc.*, No. 8:20-mc-00006-JVS-KESx, 2020 U.S. Dist. LEXIS 62309, at *4-5 (C.D. Cal. Apr. 3, 2020). Further, your objection that the request is "vague and ambiguous" as to time is patently false, as all requests are bound (unless otherwise stated) by Instruction K as you indicated in your response to request 5. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal. Oct. 12, 2016). Additionally, your objection that the request is "vague and ambiguous" as to "distributor," "relationship," "date of production" and "distribution" is improper. *Id. Flores v. Albertsons Inc.* is inapplicable to this case and your citation thereof is improper; in *Flores*, this Court declined to compel production of tax returns in a dispute over employment classification where W2s and 1099s had already been produced, which does not support your claim of Defendant's right to privacy. *See* 2002 U.S. Dist. LEXIS 6171, (C.D. Cal. Apr. 9, 2002). Finally, it is improper to object that the requesting party can get the documents from other sources; the responding party must conduct a diligent search and reasonable inquiry. *Banuelos v. City of San Bernardino*, No. EDCV 13-736-GW (KKx), 2017 U.S. Dist. LEXIS 198247, at *14 (C.D. Cal. Dec. 1, 2017).

Your response to request 29 contains several bad faith objections. First, your objection that the request is "overbroad in scope, oppressive, burdensome and harassing as stated" is baseless and improper. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal. Oct. 12, 2016). Similarly, your objection that the request violates the scope of discovery as defined by FRCP 26(b) is baseless and improper. *Id.*; *Conan v. City of*

BLAISE & NITSCHKE, P.C.

Beatbox v. Labrador, et al.
May 5, 2021
Page 83

*Fontana*, No. EDCV 16-1261-KK, 2017 U.S. Dist. LEXIS 103780, at *6-7 (C.D. Cal. July 5, 2017). Indeed, this request plainly seeks relevant information that is proportional to the needs of the case, considering the claims at issue; your claims of right to privacy and need for a protective order are overstated. *Ocean Garden Products v. Blessings, Inc.*, No. 8:20-mc-00006-JVS-KESx, 2020 U.S. Dist. LEXIS 62309, at *4-5 (C.D. Cal. Apr. 3, 2020). Further, your objection that the request is "vague and ambiguous" as to time is patently false, as all requests are bound (unless otherwise stated) by Instruction K as you indicated in your response to request 5. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal. Oct. 12, 2016). *Flores v. Albertsons Inc.* is inapplicable to this case and your citation thereof is improper; in *Flores*, this Court declined to compel production of tax returns in a dispute over employment classification where W2s and 1099s had already been produced, which does not support your claim of Defendant's right to privacy. *See* 2002 U.S. Dist. LEXIS 6171, (C.D. Cal. Apr. 9, 2002). Finally, it is improper to object that the requesting party can get the documents from a third party; the responding party must conduct a diligent search and reasonable inquiry. *Banuelos v. City of San Bernardino*, No. EDCV 13-736-GW (KKx), 2017 U.S. Dist. LEXIS 198247, at *14 (C.D. Cal. Dec. 1, 2017).

Your response to request 30 contains several bad faith objections. First, your objection that the request is "overbroad in scope, oppressive and harassing as stated" is baseless and improper. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal. Oct. 12, 2016). Similarly, your objection that the request violates the scope of discovery as defined by FRCP 26(b) is baseless and improper. *Id.*; *Conan v. City of Fontana*, No. EDCV 16-1261-KK, 2017 U.S. Dist. LEXIS 103780, at *6-7 (C.D. Cal. July 5, 2017). Indeed, this request plainly seeks relevant information that is proportional to the needs of the case, considering the claims at issue; your claims of right to privacy and need for a protective order are overstated. *Ocean Garden Products v. Blessings, Inc.*, No. 8:20-mc-00006-JVS-KESx, 2020 U.S. Dist. LEXIS 62309, at *4-5 (C.D. Cal. Apr. 3, 2020). Further, your objection that the request is "vague and ambiguous" as to time is patently false, as all requests are bound (unless otherwise stated) by Instruction K as you indicated in your response to request 5. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal. Oct. 12, 2016). *Flores v. Albertsons Inc.* is inapplicable to this case and your citation thereof is improper; in *Flores*, this Court declined to compel production of tax returns in a dispute over employment classification where W2s and 1099s had already been produced, which does not support your claim of Defendant's right to privacy. *See* 2002 U.S. Dist. LEXIS 6171, (C.D. Cal. Apr. 9, 2002).

Your response to request 31 contains several bad faith objections. First, your objection that the request is "overbroad in scope, oppressive, burdensome and harassing as stated" is baseless and improper. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal. Oct. 12, 2016). Similarly, your objection that the request violates the scope of discovery as defined by FRCP 26(b) is baseless and improper. *Id.*; *Conan v. City of Fontana*, No. EDCV 16-1261-KK, 2017 U.S. Dist. LEXIS 103780, at *6-7 (C.D. Cal. July 5, 2017). Third, any purported objections by "Labrador" are improper under FRCP 34 (b)(2)(A) and

BLAISE & NITSCHKE, P.C.

Beatbox v. Labrador, et al.
May 5, 2021
Page 84

are waived. Notwithstanding the previous objection, this request plainly seeks relevant information that is proportional to the needs of the case, considering the claims at issue; your claims of right to privacy and need for a protective order are overstated, and any harm to Labrador is irrelevant to this request. *Ocean Garden Products v. Blessings, Inc.*, No. 8:20-mc-00006-JVS-KESx, 2020 U.S. Dist. LEXIS 62309, at *4-5 (C.D. Cal. Apr. 3, 2020). Further, your objection that the request is "vague and ambiguous and unintelligible" as to time is patently false, as all requests are bound (unless otherwise stated) by Instruction K as you indicated in your response to request 5. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal. Oct. 12, 2016). Finally, your objection that the request is "vague and ambiguous and unintelligible" as to "exploitation" and "catalogues" is improper. *Id*.

Your response to request 32 contains several bad faith objections. First, your objection that the request is "overbroad in scope, oppressive, burdensome and harassing as stated" is baseless and improper. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal. Oct. 12, 2016). Similarly, your objection that the request violates the scope of discovery as defined by FRCP 26(b) is baseless and improper. *Id*.; *Conan v. City of Fontana*, No. EDCV 16-1261-KK, 2017 U.S. Dist. LEXIS 103780, at *6-7 (C.D. Cal. July 5, 2017). Indeed, this request plainly seeks relevant information that is proportional to the needs of the case, considering the claims at issue; your claims of right to privacy and need for a protective order are overstated. *Ocean Garden Products v. Blessings, Inc.*, No. 8:20-mc-00006-JVS-KESx, 2020 U.S. Dist. LEXIS 62309, at *4-5 (C.D. Cal. Apr. 3, 2020). Further, your objection that the request is "vague and ambiguous and unintelligible" as to time is patently false, as all requests are bound (unless otherwise stated) by Instruction K as you indicated in your response to request 5. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal. Oct. 12, 2016). Further, your objection that the request is "vague and ambiguous and unintelligible" as to "any other entity" and "co-mingling" is improper. *Id*. Finally, your response improperly asserts attorney-client privilege without the inclusion of a privilege log. FRCP 26(b)(5); *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *9 (C.D. Cal. Oct. 12, 2016).

Your response to request 33 contains several bad faith objections. First, your objection that the request is "overbroad in scope, oppressive, burdensome and harassing as stated" is baseless and improper. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal. Oct. 12, 2016). Similarly, your objection that the request violates the scope of discovery as defined by FRCP 26(b) is baseless and improper. *Id*.; *Conan v. City of Fontana*, No. EDCV 16-1261-KK, 2017 U.S. Dist. LEXIS 103780, at *6-7 (C.D. Cal. July 5, 2017). Indeed, this request plainly seeks relevant information that is proportional to the needs of the case, considering the claims at issue. *Ocean Garden Products v. Blessings, Inc.*, No. 8:20-mc-00006-JVS-KESx, 2020 U.S. Dist. LEXIS 62309, at *4-5 (C.D. Cal. Apr. 3, 2020). Fourth, any purported objections by "Labrador" are improper under FRCP 34 (b)(2)(A) and are waived. *Bell v. Ken Lee* is entirely inapplicable, and your citation thereof is both inappropriate and in bad faith; the court in *Ken Lee* ruled that the billing records and invoices at issue *were not privileged* and



BLAISE & NITSCHKE, P.C.

Beatbox v. Labrador, et al.
May 5, 2021
Page 85

granted the pertinent request to compel. 2017 U.S. Dist. LEXIS 72244, at *12 (N.D. Cal. May 11, 2017).  Finally, your response improperly asserts attorney-client privilege without the inclusion of a privilege log. FRCP 26(b)(5); *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *9 (C.D. Cal. Oct. 12, 2016).

Your response to request 34 is improper; you have failed to submit any privilege log.

Your response to request 35 is improper; you have failed to execute an affidavit stating that your responses are accurate and complete.

Nothing herein is intended to be or should be construed as a complete statement or admission of the facts, or a waiver of any of my Clients' claims, rights, or remedies (whether legal or equitable), all of which are expressly reserved.

To the extent that you intend to amend and/or supplement your responses as a result of the issues identified in this letter, please do so prior to the end of the business day on May 7, 2021 so that I may have an opportunity to review prior to our call.

Very truly yours,

Heather L. Blaise

HLB:tsk

# EXHIBIT D

1  Douglas J. Rosner, ESQ., SBN 094466
   rosnerlaw@earthlink.net
2  LAW OFFICES OF DOUGLAS JOSEPH ROSNER
   2625 Townsgate Road, Suite 330
3  Westlake Village, California 91361
   Telephone No. (818) 501-8400
4  Facsimile No.: (818) 880-4485

5  Attorney for Defendant/Cross-Defendants,
   Labrador Entertainment, Inc. dba Spider Cues Music Library,
6  Labrador Entertainment, LLC, Noel Palmer Webb,
   an individual and Webb Family Trusts

7

8

9              UNITED STATES DISTRICT COURT

10      CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

11

12  BEATBOX MUSIC, PTY, LTD.,              )  Case No. 2:17-cv-6108-MWF (JPRx)
                                           )  *Assigned to the Hon. Michael W.*
13                  Plaintiff,             )  *Fitzgerald*
                                           )
            vs.                            )
14                                         )  PROOF OF SERVICE USB FLASH
    LABRADOR ENTERTAINMENT,                )  DRIVE (YELLOW LABEL)
15  INC., DBA SPIDER CUES MUSIC            )
    LIBRARY, a California corporation,     )  Judge: Hon. Michael W. Fitzgerald
16                                         )
                  Defendants.              )  Trial Date: 11/30/2021
17  _____       )  Cross-Claim Filed: 11/21/2017
                                           )  Action Filed: 8/17/2017
18  AND ALL RELATED ACTIONS                )  First Amend. Compl.: 1/24/2020
                                           )
19

20

21

22

23

24

25

26

27

28  PROOF OF SERVICE USB FLASH DRIVE                    Page 1 of 3

## PROOF OF SERVICE

### USDC, CENTRAL DISTRICT, WESTERN DIVISION

### Case No. 2:17-cv-6108-MWF (JPRx)

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

At the time of service, I was over 18 years of age and not a party to this action. I am employed in the County of Los Angeles, State of California. My business address is 2625 Townsgate Road, Suite 330, Westlake Village, California 91361.

On May 21, 2021, I served a USB Flash Drive containing Documents for: Attorneys Eyes Only, as follows:

SEE ATTACHED SERVICE LIST

**BY USPS Priority Mail:** I enclosed said document(s) in an envelope or package provided by USPS and addressed to the persons at the addresses listed in the Service List. I placed the envelope or package for collection and overnight delivery at an office or a regularly utilizes drop box of USPS or delivered such document(s) to a courier or driver authorized by USPS to receive documents.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made. Executed on May 21, 2021, at Los Angeles, California.

Douglas J. Rosner

PROOF OF SERVICE USB FLASH DRIVE                                    Page 2 of 3

# SERVICE LIST

## USDC, CENTRAL DISTRICT, WESTERN DIVISION

### Case No. 2:17-cv-6108-MWF (JPRx)

Heather Lea Blaise, Esq.                    Counsel for Plaintiff
Blaise and Nitschke PC                      Beatbox Music Pty, Ltd.
123 North Wacker Drive, Suite 250
Chicago, IL 60606

PROOF OF SERVICE USB FLASH DRIVE                    Page 3 of 3

# EXHIBIT E



PS000010000014

EP14F July 2013
OD: 12.5 x 9.5

VISIT US AT USPS.COM®
ORDER FREE SUPPLIES ONLINE





PRIORITY MAIL

* Domestic only
PICKUP AVAIL
INSURANCE
USPS TRACK
DATE OF DEL

WHEN USED INTERNATI
A CUSTOMS DECLAR
LABEL MAY BE REQU



---

**UNITED STATES POSTAL SERVICE**®     **Click-N-Ship**®

| **P** | usps.com<br>$7.95<br>US POSTAGE<br>Flat Rate Env | 9405 5036 9930 0393 1589 43 0079 5000 0076 0606 |
| --- | --- | --- |
| | | **U.S. POSTAGE PAID**<br>Click-N-Ship® |
| | 05/21/2021 | Mailed from 91361 |

### PRIORITY MAIL 2-DAY™

DOUGLAS J ROSNER
LAW OFFICES OF DOUGLAS JOSEPH
ROSNER
2625 TOWNSGATE RD
STE 330
WESTLAKE VLG CA 91361-5749

Expected Delivery Date: 05/24/21
Ref#: LABRADOR

**0006**

**C030**

SHIP TO: HEATHER L BLAISE, ESQ.
BLAISE AND NITSCHKE PC
123 N WACKER DR
STE 250
CHICAGO IL 60606-1912

---

### USPS TRACKING #



9405 5036 9930 0393 1589 43

---

Electronic Rate Approved #038555749

# GROUP EXHIBIT F

**BLAISE & NITSCHKE, P.C.**

123 N. Wacker, Suite 250
Chicago, Illinois 60606
office: 312.448.6602
fax: 312.803.1940

HEATHER L. BLAISE
Licensed in Illinois and California
THOMAS J. NITSCHKE
Licensed in Wisconsin and Illinois

HEATHER L. BLAISE
PARTNER
HBLAISE@BLAISENITSCHKELAW.COM

April 22, 2021

**VIA E-MAIL**: rp@jacobsonlawyers.com
**VIA E-MAIL**: dlj@jacobsonlawyers.com
Ronak Patel
Dan Jacobson
Jacobson & Associates
P.O. Box 1015
Tustin, CA 92581

Re:   Beatbox Music Pty, Ltd. v.
      Labrador Entertainment Inc.
      et al.; Case No. 2:17-cv-6109

Dear Counsel,

In the spirit of L.R. 37-1 - 37-4 (the "Local Rules"), please accept this correspondence with regard to the above-captioned matter. The Local Rules require several steps in advance of a court's ruling on discovery-related motions, such as our anticipated Motion to Compel Discovery ("Motion"). Please advise as to your position as soon as possible, so we may proceed accordingly.

**Meet and Confer Requirement**

L.R. 37-1 requires counsel for the parties to confer to attempt to eliminate discovery disputes. The parties have arranged for a teleconference on April 22, 2021 for this purpose.

**Letter and Joint Stipulation Requirements**

Unfortunately, your failure to sufficiently respond to our discovery requests does necessitate our bringing the above contemplated Motion should you be unwilling to cure the glaring defects in the responses. However, the timing thereof is hindered by the Local Rules (L.R. 37-1), in that they also require the moving party to send a letter to the opposing party detailing the issues/requests in dispute, the moving party's position, and the legal authority for such position, as well as specifying the terms of the discovery order to be sought. The Local Rules further allow ten days for a response from the opposing party (L.R. 37-1), and require the parties to file a joint stipulation, which will necessitate your input (L.R. 37-2).

**Outstanding Disputes**

Pursuant to Federal Rule of Civil Procedure 37(a)(4), evasive or incomplete disclosures, answers, or responses must be treated as failures to disclose, answer, or respond. It appears that you have provided evasive and incomplete disclosures, answers, and responses to several discovery



BLAISE & NITSCHKE, P.C.

Beatbox v. Labrador, et al.
April 22, 2021
Page 2

requests. The statutory authority and caselaw support our position. Below are the outstanding discovery requests that remain in dispute.

**Defendant & Cross-Claimant Michael Cohen's Objections and Responses to Plaintiff Beatbox Music Pty Ltd.'s Requests for Production of Documents (Set Two)**

You objected to several requests (1, 5, 6, 7, 8, 9, 10, 11, 13, 14, 15, 16, and 17) on the grounds that certain requests had been "asked and answered in the first set of requests […] Responding Party refers to its prior response." This response is evasive and incomplete, considering your prior responses.

Your prior responses to requests 1, 5, 6, 7, 8, 9, 10, 11, and 13 explicitly acknowledged that the prior response was incomplete ("investigation continues"). Despite those evasive responses, you now refuse to provide further responses on the basis that the requests were "asked and answered[.]"

Your response to request 15 asserts that the request was "asked and answered" despite no answer to the prior request; you improperly objected to the prior request with no answer provided.

Your responses to requests 14 and 16 assert that requests 14 and 16 are duplicative of prior requests, which is patently false. Request 14 has been substantially narrowed from the prior request and request 16 is not found anywhere in prior requests for production.

Your response to request 2 is a drastic misstatement of the caselaw concerning overbroad and unduly burdensome requests; such an objection is plainly inappropriate in response to this request. Further, your objection that you are "not required to provide information but only documents and tangible items under FRCP 34" is plainly inapplicable when you have documents or tangible items that would satisfy the request.

Your response to request 18 contains several unfounded and bad-faith objections. First, you provide no basis for your assertions that the request is "overbroad and unduly burdensome" and "unintelligible." Further, your objection that the request calls for material beyond the scope of FRCP 34 is misplaced, as assets and accounts are tangible things and any records thereof are documents. Please explain what you do not understand about the request.

Your response to request 19 disingenuously objects on the grounds that the request is "unintelligible" as it "asks for text messages between a legal entity and Responding Party" despite the request clearly asking for "correspondence relating to any entity" and not "correspondence *between* an entity and Responding Party[.]" Please explain what you do not understand about the request.



BLAISE & NITSCHKE, P.C.

Beatbox v. Labrador, et al.
April 22, 2021
Page 3

Your response to request 21 is a drastic misstatement of the caselaw concerning overbroad and unduly burdensome requests; such an objection is plainly inappropriate in response to this request. Further, your objection on the basis of Responding Party's rights of privacy is overbroad.

Your response to request 22 contains a bad-faith objection that the request is vague, asserting that the request may actually refer to a date range that is clearly not applicable to the plain language of the question. Following that bad-faith object, you also objected in bad-faith that the request violates FRCP 34 on the grounds of "reasonable specificity" because that the request allegedly lacks a time limitation. This is plainly contradictory with the above bad-faith claim that the time limitation is ambiguous.

Your response to request 23 contains a bad-faith objection that the request is vague, asserting that the request "provides only a partial list of performance rights societies at issue, as opposed to all such societies that Plaintiff is specifically interested in." This is not a proper objection to a discovery request, as the request calls for Documents identifying royalties and/or payments "from *any* performance rights organization." The "partial list of performance rights societies at issue" is not intended to be a complete list, rather, a series of examples to direct you to the requested information which is necessarily in your possession.

Your response to request 24 contains a bad-faith objection that the request is vague, asserting that the request fails to inform "what constitutes access to or control over an account." This is plainly an evasive answer, impermissible under FRCP 37. Further, your objection on the basis of Responding Party's rights of privacy is overbroad.

Your response to request 25 contains a bad-faith objection that the request is a "blanket request," despite a specific request for "applications for credit completed by YOU from January 1, 2012 to the date of production. This is a particular request for specific documents limited by a specific quality and time limit, not a blanket request.

Your response to request 26 contains a bad-faith objection that the request is vague and ambiguous regarding "what constitutes 'licensing activities,' or 'distributors,' or what type of conduct constitutes an act of 'directing.'" In the context of a musical composition, what constitutes licensing activities and distributors is clear and unambiguous. The type of conduct that constitutes 'directing' is clear and unambiguous from the plain definition of the word.

Your response to request 27 is plainly inapposite considering your duty under FRCP 26. The request calls for documents that you may use to support your claims or defenses and is clearly appropriate. Further, you object in bad faith that the request is "without any kind of … time limitation whatsoever", despite a clear time limitation imposed upon all questions unless otherwise indicated by instruction (K).



BLAISE & NITSCHKE, P.C.

Beatbox v. Labrador, et al.
April 22, 2021
Page 4

Your response to request 28 improperly asserts attorney-client privilege without the inclusion of a privilege log. Further, your objection on the basis of Responding Party's rights of privacy is overbroad.

Your response to request 29 is clearly in contradiction with your response to request 28.

### Defendant & Cross-Claimant Michael Cohen's Objections and Responses to Plaintiff Beatbox Music Pty Ltd.'s Special Interrogatories (Set Two)

Your response to special interrogatory set 2 no. 1 is comprised of an unfounded objection that the interrogatory is "overbroad and burdensome."

Your response to special interrogatory set 2 no. 2 is an improper splitting of an interrogatory which concerns a single discrete topic (your pleadings to the Court in this case) into three interrogatories for the sole purpose of evading FRCP 33. Your answer, which you have improperly split in three, represents the answer to a single interrogatory. Thus, your failure to respond to special interrogatory set 2 no. 8 and 9 is improper. Further, your objection to this interrogatory, in particular, your third division of this interrogatory, is a bad-faith assertion that the term "affirmative defenses" is vague and ambiguous in the given context. This is patently false, as the given context implies continuity of the possessive pronoun "your" as applied to both "Answer" and "Affirmative Defenses." The sentence is clear, and your objection is nothing short of impermissible evasion, in violation of FRCP 37.

Your response to special interrogatory set 2 no. 4 contains an objection on the basis of Responding Party's rights of privacy, which is overbroad.

Your response to special interrogatory set 2 no. 5 contains several bad-faith objections. First, you object that the terms "hold" and "copyrighted works" is vague and ambiguous. In the context of interest in property, let alone generally, the term "hold" refers to a status of possession. There is no room for you to claim ambiguity in regard to the use of this term. Similarly, the term "copyrighted works" plainly refers to all works protected by copyright "in which YOU hold any interest." Your attempt to assert a limitation on the basis of formalities that function as a prerequisite to copyright litigation rather than responding to the plain text of the interrogatory is a bad-faith evasion. Second, your objection on the basis of Responding Party's rights of privacy is overbroad and made in bad faith, considering that you responded to a similar interrogatory seeking the same with a different applicable time scale. Third, your assertion that "this interrogatory has been asked and answered" is patently false, ignoring the times at which the interrogatories were asked. Because the present interrogatory was asked more than 18 months after the referenced interrogatory, the interrogatory was plainly not "asked and answered" as you assert. Each of these three objections is improper and in bad faith. In addition, the new causes of action at issue in this case plainly causes all assets, including holding any interest in copyrighted works, clearly relevant and discoverable.



Beatbox v. Labrador, et al.
April 22, 2021
Page 5

Your response to special interrogatory set 2 no. 6 contains a bad-faith objection that the term "hold" is vague and ambiguous in this context. In the context of interest in an entity, let alone generally, the term "hold" refers to a status of possession. The sentence is clear, and your objection is nothing short of impermissible evasion, in violation of FRCP 37. Further, your objection on the basis of Responding Party's rights of privacy is overbroad.

Your response to special interrogatory set 2 no. 7 contains several bad-faith objections. First, you object that the term "collected" is vague and ambiguous. In the context of money, the term "collected" is well-understood as defined as the receipt of money owed. There is no room for you to claim ambiguity in regard to the use of this term. Second, your objection on the basis of Responding Party's rights of privacy is overbroad and made in bad faith, considering that you responded to a similar interrogatory seeking the same with a different applicable time scale. Third, your assertion that "this interrogatory has been asked and answered" is patently false, ignoring the time scale imposed by the phrase "since its inception." Because the present interrogatory was asked more than 18 months after the referenced interrogatory, the interrogatory was plainly not "asked and answered" as you assert. Each of these three objections is improper and in bad faith. In addition, the new causes of action at issue in this case plainly causes all assets, including holding any interest in copyrighted works, clearly relevant and discoverable.

## Defendant MCPC Holdings, LLC's Objections and Responses to Plaintiff Beatbox Music Pty Ltd.'s Special Interrogatories (Set One)

You failed to provide any answers or objections to the above Interrogatories; instead, you provided a verification page with no responses attached. This runs afoul of FRCP 33 and FRCP 37. There is no appropriate basis for such a (non)response.

## Defendant MCPC Holdings, LLC Objections and Responses to Plaintiff Beatbox Music Pty Ltd.'s Requests for Production of Documents (Set One)

Your response to request 1 is a bad-faith objection; you assert that the request is "overbroad and unduly burdensome" as a request for documents relating to Plaintiff "without any sort of subject matter limitations." Documents in your possession relating to Plaintiff is a narrow, discrete set of documents within a single subject matter – the subject of Plaintiff.

Your response to request 2 is a drastic misstatement of the caselaw concerning overbroad and unduly burdensome requests; such an objection is plainly inappropriate in response to this request. Further, your objection that you are "not required to provide information but only documents and tangible items under FRCP 34" is plainly inapplicable when you have documents or tangible items that would satisfy the request.

Your response to request 3 contains two bad-faith objections. First, asserting that "the term 'communications' is vague and ambiguous" is plainly an attempt to evade the request;



Beatbox v. Labrador, et al.
April 22, 2021
Page 6

communications plainly refers to the exchanges of information or news. Second, you assert in bad faith that the request is overbroad and unduly burdensome, yet you claim that Responding Party is aware of no such documents; you cannot have it both ways, whereby the review and production of no documents somehow represents an undue burden, such that *any* response to discovery could be interpreted as unduly burdensome.

Your response to request 4 contains several bad-faith objections. First, you assert that the request calls for "all communications between YOU and any other parties to this action" which is plainly not the request to which you are responding; the request, in full, reads "Provide any and all contracts YOU have entered into with any parties to this action." You clearly failed to exercise due diligence in responding to these requests, as this objection bears no connection to the request. Second, you assert in bad faith that the request is overbroad and unduly burdensome, yet you claim that Responding Party is aware of no such contracts; you cannot have it both ways, whereby the review and production of no documents somehow represents an undue burden, such that *any* response to discovery could be interpreted as unduly burdensome.

Your response to request 5 contains a bad-faith objection. You assert in bad faith that the request is overbroad and unduly burdensome, yet you claim that Responding Party is aware of no such contracts; you cannot have it both ways, whereby the review and production of no documents somehow represents an undue burden, such that *any* response to discovery could be interpreted as unduly burdensome.

Your response to request 6 contains a bad-faith objection. You assert in bad faith that the request is overbroad and unduly burdensome, yet you claim that Responding Party is aware of no such documents; you cannot have it both ways, whereby the review and production of no documents somehow represents an undue burden, such that *any* response to discovery could be interpreted as unduly burdensome.

Your response to request 7 is plainly inapposite considering your duty under FRCP 26. The request calls for documents that you may use to support your claims or defenses and is clearly appropriate. Further, you object that this request "has been asked and answered in the first set of requests;" this set of requests is the first set of requests of this responding party, so there is no prior set of requests where this question may have been asked and answered. You clearly failed to exercise due diligence in responding to these requests, as this objection is proven false by the footer beneath your objection.

Your response to request 8 contains several bad-faith objections. First, you assert that the request fails to specify documents with reasonable specificity, yet the request specifically requests "correspondence relating to Plaintiff"; that is a clear specificity of subject matter. Further, you assert in bad faith that the request is overbroad and unduly burdensome, yet you claim that Responding Party is aware of no such correspondence; you cannot have it both ways, whereby the


BLAISE & NITSCHKE, P.C.

Beatbox v. Labrador, et al.
April 22, 2021
Page 7

review and production of no documents somehow represents an undue burden, such that *any* response to discovery could be interpreted as unduly burdensome.

Your response to request 9 is a clear departure from your duty under FRCP 26 and your objection is in bad faith. FRCP 26(a)(1)(D) requires parties that were joined to an action following the 26(f) conference make the disclosures required by FRCP 26(a)(1). Your response is plainly inappropriate and evasive.

Your response to request 10 improperly asserts that the request seeks documents that "exceed the permissible scope of discovery; documents relating to the Composition at issue is plainly within the scope of discovery and this request is likely to lead to admissible evidence.

Your response to request 11 improperly asserts that "the term 'relationship' is vague and ambiguous"; this is plainly a bad-faith attempt to evade the request. The term is plainly defined as "the way in which two or more concepts, objects, or people are connected."

Your response to request 12 contains several bad-faith objections. First, you assert in bad faith that the request is overbroad and unduly burdensome, yet you produced statements and/or payments in response to the request. Further, you contend that the request violates FRCP 34 "by failing to specify the documents with reasonable specificity" despite a highly specific request; this is a bad-faith attempt to evade a particular and specific request.

Your response to request 13 is a drastic misstatement of the caselaw concerning overbroad and unduly burdensome requests; such an objection is plainly inappropriate in response to this request. Further, your objection on the basis of Responding Party's rights of privacy is overbroad. Lastly, you contend that the request violates FRCP 34 "by failing to specify the documents with reasonable specificity" despite a highly specific request; this is a bad-faith attempt to evade a particular and specific request.

Your response to request 14 contains several bad-faith objections. First, your objection that the request is "overbroad and unduly burdensome inasmuch as it does not have any type of subject matter or time restrictions" is patently false and a deliberate, bad-faith evasion of the request; there is clear time limitation imposed upon all questions unless otherwise indicated by instruction (K) and the subject matter is restricted to the "compositions and/or sound recordings in which YOU claim any interest." Further, you improperly assert that the term "claim any interest" is vague and ambiguous"; this is plainly a bad-faith attempt to evade the request, as "interest" in the context of property refers to the right to possess or use the property and "claim" plainly refers to an assertion of such an interest.

Your response to request 15 contains several unfounded and bad-faith objections. First, you provide no basis for your assertions that the request is "overbroad and unduly burdensome" and "unintelligible." Further, your objection that the request calls for material beyond the scope of



BLAISE & NITSCHKE, P.C.

Beatbox v. Labrador, et al.
April 22, 2021
Page 8

FRCP 34 is misplaced, as assets and accounts are tangible things and any records thereof are documents.

Your response to request 16 contains several unfounded and bad-faith objections. First, you provide no basis for your assertions that the request is "overbroad and unduly burdensome" and that it "exceeds the permissible scope of discovery and is not reasonably calculated to lead to admissible evidence. Further, you assert that the request fails to specify documents with reasonable specificity, yet the request specifically requests "correspondence relating to any entity in which YOU hold any interest" and provides examples of "correspondence" which is a clear and well understood concept. Reasonable specificity does not require an exhaustive definition of a well-defined and commonly-understood noun.

Your response to request 17 contains several bad-faith objections. First, you assert that the request fails to specify documents with reasonable specificity, yet the request specifically requests "corporate governance Documents" and provides examples of such documents, despite such documents being a clear and well understood concept. Reasonable specificity does not require an exhaustive definition of a well-defined and commonly-understood noun. Finally, your objection on the basis of Responding Party's rights of privacy is overbroad.

Your response to request 18 contains a bad-faith objection, asserting that a request for transactions does not refer to the records of transactions or the documents that effected the transactions. This is a plainly evasive response.

Your response to request 19 contains several bad-faith objections. First, your objection on the basis of Responding Party's rights of privacy is overbroad. Further, you assert in bad faith that the request is overbroad and unduly burdensome, yet you claim that Responding Party is aware of no such correspondence; you cannot have it both ways, whereby the review and production of no documents somehow represents an undue burden, such that *any* response to discovery could be interpreted as unduly burdensome.

Your response to request 20 contains a bad-faith objection that the request is vague, asserting that the request fails to inform "what constitutes access to or control over an account." This is plainly an evasive answer, impermissible under FRCP 37. Further, your objection on the basis of Responding Party's rights of privacy is overbroad.

Your response to request 21 contains a bad-faith objection that the request is a "blanket request," despite a specific request for "applications for credit completed by YOU from January 1, 2012 to the date of production. This is a particular request for specific documents limited by a specific quality and time limit, not a blanket request.



BLAISE & NITSCHKE, P.C.

Beatbox v. Labrador, et al.
April 22, 2021
Page 9

Your response to request 22 improperly asserts attorney-client privilege without the inclusion of a privilege log. Further, your objection on the basis of Responding Party's rights of privacy is overbroad.

Your response to request 23 improperly asserts attorney-client privilege without the inclusion of a privilege log. Further, your objection that the request seeks documents without any kind of "time limitation whatsoever" is patently false and made in bad faith; there is clear time limitation imposed upon all questions unless otherwise indicated by instruction (K).

Your response to request 24 is clearly in contradiction with your response to requests 22 and 23.

Nothing herein is intended to be or should be construed as a complete statement or admission of the facts, or a waiver of any of my Clients' claims, rights, or remedies (whether legal or equitable), all of which are expressly reserved.

I look forward to our call today and am hopeful that you will withdraw the offending objections identified above and provide full and complete discovery responses on behalf of your clients before we are forced to file a Motion and seek all remedies available for the same.

Very truly yours,

Heather L. Blaise

HLB:tsk

**BLAISE & NITSCHKE, P.C.**

123 N. Wacker, Suite 250
Chicago, Illinois 60606
office: 312.448.6602
fax: 312.803.1940

HEATHER L. BLAISE
Licensed in Illinois and California
THOMAS J. NITSCHKE
Licensed in Wisconsin and Illinois

HEATHER L. BLAISE
PARTNER
HBLAISE@BLAISENITSCHKELAW.COM

April 27, 2021

<u>**VIA E-MAIL**</u>: rp@jacobsonlawyers.com
<u>**VIA E-MAIL**</u>: dlj@jacobsonlawyers.com
Ronak Patel
Dan Jacobson
Jacobson & Associates
P.O. Box 1015
Tustin, CA 92581

Re:    Beatbox Music Pty, Ltd. v.
Labrador Entertainment Inc.
et al.; Case No. 2:17-cv-6109

Dear Counsel,

In the spirit of L.R. 37-1 - 37-4 (the "Local Rules"), please accept this correspondence with regard to the above-captioned matter. The Local Rules require several steps in advance of a court's ruling on discovery-related motions, such as our anticipated Motion to Compel Discovery ("Motion"). Please advise as to your position as soon as possible, so we may proceed accordingly.

**Meet and Confer Requirement**

L.R. 37-1 requires counsel for the parties to confer to attempt to eliminate discovery disputes. The parties held a teleconference on April 22, 2021 for this purpose and this letter is meant to address the issues raised in the aforementioned teleconference and the resulting email correspondence there following.

**Letter and Joint Stipulation Requirements**

Unfortunately, your failure to sufficiently respond to our discovery requests does necessitate our bringing the above contemplated Motion should you be unwilling to cure the glaring defects in the responses. However, the timing thereof is hindered by the Local Rules (L.R. 37-1), in that they also require the moving party to send a letter to the opposing party detailing the issues/requests in dispute, the moving party's position, and the legal authority for such position, as well as specifying the terms of the discovery order to be sought. The Local Rules further allow ten days for a response from the opposing party (L.R. 37-1), and require the parties to file a joint stipulation, which will necessitate your input (L.R. 37-2).

**Outstanding Disputes**



BLAISE & NITSCHKE, P.C.

Beatbox v. Labrador, et al.
April 27, 2021
Page 2

Pursuant to Federal Rule of Civil Procedure 37(a)(4), evasive or incomplete disclosures, answers, or responses must be treated as failures to disclose, answer, or respond. It appears that you have provided evasive and incomplete disclosures, answers, and responses to several discovery requests. The statutory authority and caselaw support our position. Below are the outstanding discovery requests that remain in dispute.

### Defendant & Cross-Claimant Michael Cohen's Objections and Responses to Plaintiff Beatbox Music Pty Ltd.'s Requests for Production of Documents (Set Two)

You objected to several requests (1, 5, 6, 7, 8, 9, 10, 11, 13, 14, 15, 16, and 17) on the grounds that certain requests had been "asked and answered in the first set of requests […] Responding Party refers to its prior response." This response is evasive and incomplete, considering your prior responses. *Conan v. City of Fontana*, No. EDCV 16-1261-KK, 2017 U.S. Dist. LEXIS 103780, at *6-7 (C.D. Cal. July 5, 2017).

Your prior responses to requests 1, 5, 6, 7, 8, 9, 10, 11, and 13 explicitly acknowledged that the prior response was incomplete ("investigation continues"). Despite those evasive responses, you now refuse to provide further responses on the basis that the requests were "asked and answered[.]" *Conan v. City of Fontana*, No. EDCV 16-1261-KK, 2017 U.S. Dist. LEXIS 103780, at *6-7 (C.D. Cal. July 5, 2017).

Your response to request 15 asserts that the request was "asked and answered" despite no answer to the prior request; you improperly objected to the prior request with no answer provided. *Conan v. City of Fontana*, No. EDCV 16-1261-KK, 2017 U.S. Dist. LEXIS 103780, at *6-7 (C.D. Cal. July 5, 2017).

Your responses to requests 14 and 16 assert that requests 14 and 16 are duplicative of prior requests, which is patently false. Request 14 has been substantially narrowed from the prior request and request 16 is not found anywhere in prior requests for production. *Conan v. City of Fontana*, No. EDCV 16-1261-KK, 2017 U.S. Dist. LEXIS 103780, at *6-7 (C.D. Cal. July 5, 2017).

Your response to request 2 is a drastic misstatement of the caselaw concerning overbroad and unduly burdensome requests; such an objection is plainly inappropriate in response to this request. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *6 (C.D. Cal. Oct. 12, 2016). Further, your objection that you are "not required to provide information but only documents and tangible items under FRCP 34" is plainly inapplicable when you have documents or tangible items that would satisfy the request. *Ocean Garden Products v. Blessings, Inc.*, No. 8:20-mc-00006-JVS-KESx, 2020 U.S. Dist. LEXIS 62309, at *4-5 (C.D. Cal. Apr. 3, 2020).

Your response to request 18 contains several unfounded and bad-faith objections. First, you provide no basis for your assertions that the request is "overbroad and unduly burdensome" and



Beatbox v. Labrador, et al.
April 27, 2021
Page 3

"unintelligible." *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *6; 11 (C.D. Cal. Oct. 12, 2016). Please explain what you do not understand about the request. Further, your objection that the request calls for material beyond the scope of FRCP 34 is misplaced, as assets and accounts are tangible things and any records thereof are documents. *Conan v. City of Fontana*, No. EDCV 16-1261-KK, 2017 U.S. Dist. LEXIS 103780, at *6-7 (C.D. Cal. July 5, 2017); *Ocean Garden Products v. Blessings, Inc.*, No. 8:20-mc-00006-JVS-KESx, 2020 U.S. Dist. LEXIS 62309, at *4-5 (C.D. Cal. Apr. 3, 2020).

Your response to request 19 disingenuously objects on the grounds that the request is "unintelligible" as it "asks for text messages between a legal entity and Responding Party" despite the request clearly asking for "correspondence relating to any entity" and not "correspondence *between* an entity and Responding Party[.]" *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal. Oct. 12, 2016). Please explain what you do not understand about the request.

Your response to request 21 is a drastic misstatement of the caselaw concerning overbroad and unduly burdensome requests; such an objection is plainly inappropriate in response to this request. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *6 (C.D. Cal. Oct. 12, 2016). Further, your objection on the basis of Responding Party's rights of privacy is overbroad. *Ocean Garden Products v. Blessings, Inc.*, No. 8:20-mc-00006-JVS-KESx, 2020 U.S. Dist. LEXIS 62309, at *4-5 (C.D. Cal. Apr. 3, 2020).

Your response to request 22 contains a bad-faith objection that the request is vague, asserting that the request may actually refer to a date range that is clearly not applicable to the plain language of the question. Following that bad-faith objection, you also objected in bad-faith that the request violates FRCP 34 on the grounds of "reasonable specificity" because that the request allegedly lacks a time limitation. This is plainly contradictory with the above bad-faith claim that the time limitation is ambiguous. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal. Oct. 12, 2016).

Your response to request 23 contains a bad-faith objection that the request is vague, asserting that the request "provides only a partial list of performance rights societies at issue, as opposed to all such societies that Plaintiff is specifically interested in." This is not a proper objection to a discovery request, as the request calls for Documents identifying royalties and/or payments "from *any* performance rights organization." *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal. Oct. 12, 2016). The "partial list of performance rights societies at issue" is not intended to be a complete list, rather, a series of examples to direct you to the requested information which is necessarily in your possession. *Conan v. City of Fontana*, No. EDCV 16-1261-KK, 2017 U.S. Dist. LEXIS 103780, at *6-7 (C.D. Cal. July 5, 2017).



Beatbox v. Labrador, et al.
April 27, 2021
Page 4

Your response to request 24 contains a bad-faith objection that the request is vague, asserting that
the request fails to inform "what constitutes access to or control over an account." This is plainly
an evasive answer, impermissible under FRCP 37. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-
00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal. Oct. 12, 2016). Further,
your objection on the basis of Responding Party's rights of privacy is overbroad. *Ocean Garden
Products v. Blessings, Inc.*, No. 8:20-mc-00006-JVS-KESx, 2020 U.S. Dist. LEXIS 62309, at *4-
5 (C.D. Cal. Apr. 3, 2020).

Your response to request 25 contains a bad-faith objection that the request is a "blanket request,"
despite a specific request for "applications for credit completed by YOU from January 1, 2012 to
the date of production. This is a particular request for specific documents limited by a specific
quality and time limit, not a blanket request. *Conan v. City of Fontana*, No. EDCV 16-1261-KK,
2017 U.S. Dist. LEXIS 103780, at *6-7 (C.D. Cal. July 5, 2017).

Your response to request 26 contains a bad-faith objection that the request is vague and ambiguous
regarding "what constitutes 'licensing activities,' or 'distributors,' or what type of conduct
constitutes an act of 'directing.'" In the context of a musical composition, what constitutes
licensing activities and distributors is clear and unambiguous. The type of conduct that constitutes
'directing' is clear and unambiguous from the plain definition of the word. *Conan v. City of
Fontana*, No. EDCV 16-1261-KK, 2017 U.S. Dist. LEXIS 103780, at *6-7 (C.D. Cal. July 5,
2017); *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS
192169, at *11 (C.D. Cal. Oct. 12, 2016).

Your response to request 27 is plainly inapposite considering your duty under FRCP 26. The
request calls for documents that you may use to support your claims or defenses and is clearly
appropriate. Further, you object in bad faith that the request is "without any kind of … time
limitation whatsoever", despite a clear time limitation imposed upon all questions unless otherwise
indicated by instruction (K). *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016
U.S. Dist. LEXIS 192169, at *11 (C.D. Cal. Oct. 12, 2016).

Your response to request 28 improperly asserts attorney-client privilege without the inclusion of a
privilege log. FRCP 26(b)(5); *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016
U.S. Dist. LEXIS 192169, at *9 (C.D. Cal. Oct. 12, 2016). Further, your objection on the basis of
Responding Party's rights of privacy is overbroad. *Ocean Garden Products v. Blessings, Inc.*, No.
8:20-mc-00006-JVS-KESx, 2020 U.S. Dist. LEXIS 62309, at *4-5 (C.D. Cal. Apr. 3, 2020).

Your response to request 29 is clearly in contradiction with your response to request 28.

**Defendant & Cross-Claimant Michael Cohen's Objections and Responses to Plaintiff
Beatbox Music Pty Ltd.'s Special Interrogatories (Set Two)**



Beatbox v. Labrador, et al.
April 27, 2021
Page 5

Your response to special interrogatory set 2 no. 1 is comprised of an unfounded objection that the interrogatory is "overbroad and burdensome." *Sperling v. Stein Mart, Inc.*, No. EDCV 15-1411-BRO (KKx), 2017 U.S. Dist. LEXIS 3668, at *10-11 (C.D. Cal. Jan. 10, 2017); *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *6 (C.D. Cal. Oct. 12, 2016).

Your response to special interrogatory set 2 no. 2 is an improper splitting of an interrogatory which concerns a single discrete topic (your pleadings to the Court in this case) into three interrogatories for the sole purpose of evading FRCP 33. Your answer, which you have improperly split in three, represents the answer to a single interrogatory. Thus, your failure to respond to special interrogatory set 2 no. 8 and 9 is improper. Further, your objection to this interrogatory, in particular, your third division of this interrogatory, is a bad-faith assertion that the term "affirmative defenses" is vague and ambiguous in the given context. This is patently false, as the given context implies continuity of the possessive pronoun "your" as applied to both "Answer" and "Affirmative Defenses." The sentence is clear, and your objection is nothing short of impermissible evasion, in violation of FRCP 37. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal. Oct. 12, 2016).

Your response to special interrogatory set 2 no. 4 contains an objection on the basis of Responding Party's rights of privacy, which is overbroad. *Ocean Garden Products v. Blessings, Inc.*, No. 8:20-mc-00006-JVS-KESx, 2020 U.S. Dist. LEXIS 62309, at *4-5 (C.D. Cal. Apr. 3, 2020).

Your response to special interrogatory set 2 no. 5 contains several bad-faith objections. First, you object that the terms "hold" and "copyrighted works" is vague and ambiguous. In the context of interest in property, let alone generally, the term "hold" refers to a status of possession. There is no room for you to claim ambiguity in regard to the use of this term. Similarly, the term "copyrighted works" plainly refers to all works protected by copyright "in which YOU hold any interest." Your attempt to assert a limitation on the basis of formalities that function as a prerequisite to copyright litigation rather than responding to the plain text of the interrogatory is a bad-faith evasion. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal. Oct. 12, 2016). Second, your objection on the basis of Responding Party's rights of privacy is overbroad and made in bad faith, considering that you responded to a similar interrogatory seeking the same with a different applicable time scale. Third, your assertion that "this interrogatory has been asked and answered" is patently false, ignoring the times at which the interrogatories were asked. Because the present interrogatory was asked more than 18 months after the referenced interrogatory, the interrogatory was plainly not "asked and answered" as you assert. *Sperling v. Stein Mart, Inc.*, No. EDCV 15-1411-BRO (KKx), 2017 U.S. Dist. LEXIS 3668, at *10-11 (C.D. Cal. Jan. 10, 2017). Each of these three objections is improper and in bad faith. In addition, the new causes of action at issue in this case plainly causes all assets, including holding any interest in copyrighted works, clearly relevant and discoverable.  *Ocean Garden Products v. Blessings, Inc.*, No. 8:20-mc-00006-JVS-KESx, 2020 U.S. Dist. LEXIS 62309, at *4-5 (C.D. Cal. Apr. 3, 2020).


BLAISE & NITSCHKE, P.C.

Beatbox v. Labrador, et al.
April 27, 2021
Page 6

Your response to special interrogatory set 2 no. 6 contains a bad-faith objection that the term "hold" is vague and ambiguous in this context. In the context of interest in an entity, let alone generally, the term "hold" refers to a status of possession. The sentence is clear, and your objection is nothing short of impermissible evasion, in violation of FRCP 37. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal. Oct. 12, 2016). Further, your objection on the basis of Responding Party's rights of privacy is overbroad. *Ocean Garden Products v. Blessings, Inc.*, No. 8:20-mc-00006-JVS-KESx, 2020 U.S. Dist. LEXIS 62309, at *4-5 (C.D. Cal. Apr. 3, 2020).

Your response to special interrogatory set 2 no. 7 contains several bad-faith objections. First, you object that the term "collected" is vague and ambiguous. In the context of money, the term "collected" is well-understood as defined as the receipt of money owed. There is no room for you to claim ambiguity in regard to the use of this term. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal. Oct. 12, 2016). Second, your objection on the basis of Responding Party's rights of privacy is overbroad and made in bad faith, considering that you responded to a similar interrogatory seeking the same with a different applicable time scale. Third, your assertion that "this interrogatory has been asked and answered" is patently false, ignoring the time scale imposed by the phrase "since its inception." Because the present interrogatory was asked more than 18 months after the referenced interrogatory, the interrogatory was plainly not "asked and answered" as you assert. *Sperling v. Stein Mart, Inc.*, No. EDCV 15-1411-BRO (KKx), 2017 U.S. Dist. LEXIS 3668, at *10-11 (C.D. Cal. Jan. 10, 2017). Each of these three objections is improper and in bad faith. In addition, the new causes of action at issue in this case plainly causes all assets, including holding any interest in copyrighted works, clearly relevant and discoverable. *Ocean Garden Products v. Blessings, Inc.*, No. 8:20-mc-00006-JVS-KESx, 2020 U.S. Dist. LEXIS 62309, at *4-5 (C.D. Cal. Apr. 3, 2020).

**Defendant MCPC Holdings, LLC's Objections and Responses to Plaintiff Beatbox Music Pty Ltd.'s Special Interrogatories (Set One)**

You failed to provide any timely answers or objections to the above Interrogatories without good cause; any purported objections are waived. *Desilva v. Allergan United States*, No. 8:19-cv-01606-JLS (JDEx), 2020 U.S. Dist. LEXIS 188545, at *19 (C.D. Cal. Sep. 1, 2020).

**Defendant MCPC Holdings, LLC Objections and Responses to Plaintiff Beatbox Music Pty Ltd.'s Requests for Production of Documents (Set One)**

Your response to request 1 is a bad-faith objection; you assert that the request is "overbroad and unduly burdensome" as a request for documents relating to Plaintiff "without any sort of subject matter limitations." Documents in your possession relating to Plaintiff is a narrow, discrete set of documents within a single subject matter – the subject of Plaintiff. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal. Oct. 12, 2016).



BLAISE & NITSCHKE, P.C.

Beatbox v. Labrador, et al.
April 27, 2021
Page 7

Your response to request 2 is a drastic misstatement of the caselaw concerning overbroad and unduly burdensome requests; such an objection is plainly inappropriate in response to this request. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal. Oct. 12, 2016). Further, your objection that you are "not required to provide information but only documents and tangible items under FRCP 34" is plainly inapplicable when you have documents or tangible items that would satisfy the request. *Conan v. City of Fontana*, No. EDCV 16-1261-KK, 2017 U.S. Dist. LEXIS 103780, at *6-7 (C.D. Cal. July 5, 2017).

Your response to request 3 contains two bad-faith objections. First, asserting that "the term 'communications' is vague and ambiguous" is plainly an attempt to evade the request; communications plainly refers to the exchanges of information or news. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal. Oct. 12, 2016). Second, you assert in bad faith that the request is overbroad and unduly burdensome, yet you claim that Responding Party is aware of no such documents; you cannot have it both ways, whereby the review and production of no documents somehow represents an undue burden, such that *any* response to discovery could be interpreted as unduly burdensome. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *6 (C.D. Cal. Oct. 12, 2016).

Your response to request 4 contains several bad-faith objections. First, you assert that the request calls for "all communications between YOU and any other parties to this action" which is plainly not the request to which you are responding; the request, in full, reads "Provide any and all contracts YOU have entered into with any parties to this action." You clearly failed to exercise due diligence in responding to these requests, as this objection bears no connection to the request. Second, you assert in bad faith that the request is overbroad and unduly burdensome, yet you claim that Responding Party is aware of no such contracts; you cannot have it both ways, whereby the review and production of no documents somehow represents an undue burden, such that *any* response to discovery could be interpreted as unduly burdensome. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *6 (C.D. Cal. Oct. 12, 2016).

Your response to request 5 contains a bad-faith objection. You assert in bad faith that the request is overbroad and unduly burdensome, yet you claim that Responding Party is aware of no such contracts; you cannot have it both ways, whereby the review and production of no documents somehow represents an undue burden, such that *any* response to discovery could be interpreted as unduly burdensome. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *6 (C.D. Cal. Oct. 12, 2016).

Your response to request 6 contains a bad-faith objection. You assert in bad faith that the request is overbroad and unduly burdensome, yet you claim that Responding Party is aware of no such

 BLAISE & NITSCHKE, P.C.

Beatbox v. Labrador, et al.
April 27, 2021
Page 8

documents; you cannot have it both ways, whereby the review and production of no documents somehow represents an undue burden, such that *any* response to discovery could be interpreted as unduly burdensome. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *6 (C.D. Cal. Oct. 12, 2016).

Your response to request 7 is plainly inapposite considering your duty under FRCP 26. The request calls for documents that you may use to support your claims or defenses and is clearly appropriate. Further, you object that this request "has been asked and answered in the first set of requests;" this set of requests is the first set of requests of this responding party, so there is no prior set of requests where this question may have been asked and answered. You clearly failed to exercise due diligence in responding to these requests, as this objection is proven false by the footer beneath your objection. *Conan v. City of Fontana*, No. EDCV 16-1261-KK, 2017 U.S. Dist. LEXIS 103780, at *6-7 (C.D. Cal. July 5, 2017).

Your response to request 8 contains several bad-faith objections. First, you assert that the request fails to specify documents with reasonable specificity, yet the request specifically requests "correspondence relating to Plaintiff"; that is a clear specificity of subject matter. Further, you assert in bad faith that the request is overbroad and unduly burdensome, yet you claim that Responding Party is aware of no such correspondence; you cannot have it both ways, whereby the review and production of no documents somehow represents an undue burden, such that *any* response to discovery could be interpreted as unduly burdensome. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *6 (C.D. Cal. Oct. 12, 2016).

Your response to request 9 is a clear departure from your duty under FRCP 26 and your objection is in bad faith. FRCP 26(a)(1)(D) requires parties that were joined to an action following the 26(f) conference make the disclosures required by FRCP 26(a)(1). Your response is plainly inappropriate and evasive.

Your response to request 10 improperly asserts that the request seeks documents that "exceed the permissible scope of discovery; documents relating to the Composition at issue is plainly within the scope of discovery and this request is likely to lead to admissible evidence. FRCP 26(d)(1).

Your response to request 11 improperly asserts that "the term 'relationship' is vague and ambiguous"; this is plainly a bad-faith attempt to evade the request. The term is plainly defined as "the way in which two or more concepts, objects, or people are connected." *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal. Oct. 12, 2016).

Your response to request 12 contains several bad-faith objections. First, you assert in bad faith that the request is overbroad and unduly burdensome, yet you produced statements and/or payments in response to the request. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S.



Beatbox v. Labrador, et al.
April 27, 2021
Page 9

Dist. LEXIS 192169, at *6 (C.D. Cal. Oct. 12, 2016). Further, you contend that the request violates FRCP 34 "by failing to specify the documents with reasonable specificity" despite a highly specific request; this is a bad-faith attempt to evade a particular and specific request. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal. Oct. 12, 2016).

Your response to request 13 is a drastic misstatement of the caselaw concerning overbroad and unduly burdensome requests; such an objection is plainly inappropriate in response to this request. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *6 (C.D. Cal. Oct. 12, 2016). Further, your objection on the basis of Responding Party's rights of privacy is overbroad. *Desilva v. Allergan United States*, No. 8:19-cv-01606-JLS (JDEx), 2020 U.S. Dist. LEXIS 188545, at *10-11 (C.D. Cal. Sep. 1, 2020); *Ocean Garden Products v. Blessings, Inc.*, No. 8:20-mc-00006-JVS-KESx, 2020 U.S. Dist. LEXIS 62309, at *4-5 (C.D. Cal. Apr. 3, 2020). Lastly, you contend that the request violates FRCP 34 "by failing to specify the documents with reasonable specificity" despite a highly specific request; this is a bad-faith attempt to evade a particular and specific request. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal. Oct. 12, 2016).

Your response to request 14 contains several bad-faith objections. First, your objection that the request is "overbroad and unduly burdensome inasmuch as it does not have any type of subject matter or time restrictions" is patently false and a deliberate, bad-faith evasion of the request; there is clear time limitation imposed upon all questions unless otherwise indicated by instruction (K) and the subject matter is restricted to the "compositions and/or sound recordings in which YOU claim any interest." *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *6 (C.D. Cal. Oct. 12, 2016). Further, you improperly assert that the term "claim any interest" is vague and ambiguous"; this is plainly a bad-faith attempt to evade the request, as "interest" in the context of property refers to the right to possess or use the property and "claim" plainly refers to an assertion of such an interest. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal. Oct. 12, 2016).

Your response to request 15 contains several unfounded and bad-faith objections. First, you provide no basis for your assertions that the request is "overbroad and unduly burdensome" and "unintelligible." *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *6 (C.D. Cal. Oct. 12, 2016). Further, your objection that the request calls for material beyond the scope of FRCP 34 is misplaced, as assets and accounts are tangible things and any records thereof are documents.

Your response to request 16 contains several unfounded and bad-faith objections. First, you provide no basis for your assertions that the request is "overbroad and unduly burdensome" and that it "exceeds the permissible scope of discovery and is not reasonably calculated to lead to admissible evidence. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *6 (C.D. Cal. Oct. 12, 2016). Further, you assert that the request fails to


BLAISE & NITSCHKE, P.C.

Beatbox v. Labrador, et al.
April 27, 2021
Page 10

specify documents with reasonable specificity, yet the request specifically requests "correspondence relating to any entity in which YOU hold any interest" and provides examples of "correspondence" which is a clear and well understood concept. Reasonable specificity does not require an exhaustive definition of a well-defined and commonly-understood noun. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal. Oct. 12, 2016).

Your response to request 17 contains several bad-faith objections. First, you assert that the request fails to specify documents with reasonable specificity, yet the request specifically requests "corporate governance Documents" and provides examples of such documents, despite such documents being a clear and well understood concept. Reasonable specificity does not require an exhaustive definition of a well-defined and commonly-understood noun. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal. Oct. 12, 2016). Finally, your objection on the basis of Responding Party's rights of privacy is overbroad. *Desilva v. Allergan United States*, No. 8:19-cv-01606-JLS (JDEx), 2020 U.S. Dist. LEXIS 188545, at *10-11 (C.D. Cal. Sep. 1, 2020); *Ocean Garden Products v. Blessings, Inc.*, No. 8:20-mc-00006-JVS-KESx, 2020 U.S. Dist. LEXIS 62309, at *4-5 (C.D. Cal. Apr. 3, 2020).

Your response to request 18 contains a bad-faith objection, asserting that a request for transactions does not refer to the records of transactions or the documents that effected the transactions. This is a plainly evasive response. *Conan v. City of Fontana*, No. EDCV 16-1261-KK, 2017 U.S. Dist. LEXIS 103780, at *6-7 (C.D. Cal. July 5, 2017).

Your response to request 19 contains several bad-faith objections. First, your objection on the basis of Responding Party's rights of privacy is overbroad. *Desilva v. Allergan United States*, No. 8:19-cv-01606-JLS (JDEx), 2020 U.S. Dist. LEXIS 188545, at *10-11 (C.D. Cal. Sep. 1, 2020); *Ocean Garden Products v. Blessings, Inc.*, No. 8:20-mc-00006-JVS-KESx, 2020 U.S. Dist. LEXIS 62309, at *4-5 (C.D. Cal. Apr. 3, 2020). Further, you assert in bad faith that the request is overbroad and unduly burdensome, yet you claim that Responding Party is aware of no such correspondence; you cannot have it both ways, whereby the review and production of no documents somehow represents an undue burden, such that ***any*** response to discovery could be interpreted as unduly burdensome. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *6 (C.D. Cal. Oct. 12, 2016).

Your response to request 20 contains a bad-faith objection that the request is vague, asserting that the request fails to inform "what constitutes access to or control over an account." This is plainly an evasive answer, impermissible under FRCP 37. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11c (C.D. Cal. Oct. 12, 2016). Further, your objection on the basis of Responding Party's rights of privacy is overbroad. *Desilva v. Allergan United States*, No. 8:19-cv-01606-JLS (JDEx), 2020 U.S. Dist. LEXIS 188545, at *10-11 (C.D. Cal. Sep. 1, 2020); *Ocean Garden Products v. Blessings, Inc.*, No. 8:20-mc-00006-JVS-KESx, 2020 U.S. Dist. LEXIS 62309, at *4-5 (C.D. Cal. Apr. 3, 2020).


BLAISE & NITSCHKE, P.C.

Beatbox v. Labrador, et al.
April 27, 2021
Page 11


Your response to request 21 contains a bad-faith objection that the request is a "blanket request," despite a specific request for "applications for credit completed by YOU from January 1, 2012 to the date of production. This is a particular request for specific documents limited by a specific quality and time limit, not a blanket request. *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *11 (C.D. Cal. Oct. 12, 2016); *Conan v. City of Fontana*, No. EDCV 16-1261-KK, 2017 U.S. Dist. LEXIS 103780, at *6-7 (C.D. Cal. July 5, 2017).

Your response to request 22 improperly asserts attorney-client privilege without the inclusion of a privilege log. FRCP 26(b)(5); *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *9 (C.D. Cal. Oct. 12, 2016). Further, your objection on the basis of Responding Party's rights of privacy is overbroad. *Desilva v. Allergan United States*, No. 8:19-cv-01606-JLS (JDEx), 2020 U.S. Dist. LEXIS 188545, at *10-11 (C.D. Cal. Sep. 1, 2020); *Ocean Garden Products v. Blessings, Inc.*, No. 8:20-mc-00006-JVS-KESx, 2020 U.S. Dist. LEXIS 62309, at *4-5 (C.D. Cal. Apr. 3, 2020).

Your response to request 23 improperly asserts attorney-client privilege without the inclusion of a privilege log. FRCP 26(b)(5); *Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG (KESx), 2016 U.S. Dist. LEXIS 192169, at *9 (C.D. Cal. Oct. 12, 2016). Further, your objection that the request seeks documents without any kind of "time limitation whatsoever" is patently false and made in bad faith; there is clear time limitation imposed upon all questions unless otherwise indicated by instruction (K).

Your response to request 24 is clearly in contradiction with your response to requests 22 and 23.

Nothing herein is intended to be or should be construed as a complete statement or admission of the facts, or a waiver of any of my Clients' claims, rights, or remedies (whether legal or equitable), all of which are expressly reserved.

I look forward to your response to this letter and am hopeful that you will withdraw the offending objections identified above and provide full and complete discovery responses on behalf of your clients before we are forced to file a Motion and seek all remedies available for the same.


Very truly yours,

Heather L. Blaise


HLB:tsk

# EXHIBIT G

 BLAISE & NITSCHKE

**Jessica Lesko <jessical@blaisenitschkelaw.com>**

## Beatbox Music Pty Ltd. v. Labrador Entertainment, Inc., et al - Document Production Update

**rp@jacobsonlawyers.com** <rp@jacobsonlawyers.com>                    Mon, Jun 7, 2021 at 12:52 PM
To: Heather Blaise <jessical@blaisenitschkelaw.com>, Thomas Key <thomask@blaisenitschkelaw.com>

Heather and Thomas:

I hope this find you both well. I wanted to let you know I have obtained all the necessary documents and am in the process of redacting them. I will get them to you as soon as I can, along with privilege logs as needed.

Thank you.

Best,

Ronak

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES – GENERAL

Case No.   **CV 17-6108 MWF (JPRx)**                    Date: September 22, 2020

Title         **Beatbox Music, Pty, Ltd. v. Labrador Entertainment, Inc., et al.**

Present: The Honorable:     MICHAEL W. FITZGERALD, United States District Judge

|  |  |
|---|---|
| Rita Sanchez | Not Reported |
| Deputy Clerk | Court Reporter / Recorder |

|  |  |
|---|---|
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| Not Present | Not Present |

**Proceedings:  (IN CHAMBERS) ORDER RE-SETTING PRETRIAL AND TRIAL DATES**

The Court has reviewed the parties' Joint Report of Proposed Trial Dates, filed September 21, 2020.  (Docket No. 163).  Based on the parties' proposal, the Court sets the following dates:

| | |
|---|---|
| Last Day to Add Parties/Amend Pleadings | March 1, 2021 |
| Non-expert Discovery Cut-off | July 23, 2021 |
| Expert Disclosure (Initial) | June 25, 2021 |
| Expert Disclosure (Rebuttal) | July 23, 2021 |
| Expert Discovery Cut-off | August 13, 2021 |
| Last Day to Hear Motions | August 23, 2021 |
| Last Day to Conduct ADR Proceeding | September 10, 2021 |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES – GENERAL

Case No.   **CV 17-6108 MWF (JPRx)**                    Date: September 22, 2020

Title      **Beatbox Music, Pty, Ltd. v. Labrador Entertainment, Inc., et al.**

| File Memorandum of Contentions of Fact and Law, Exhibit and Witness Lists, Status Report regarding settlement, and all Motions in Limine | October 18, 2021 |
|---|---|
| Lodge Pretrial Conference Order, file agreed set of Jury Instructions and Verdict forms, file statement regarding Disputed Instructions and Verdict Forms, and file oppositions | October 25, 2021 |
| Final Pretrial Conference and Hearing on Motions in Limine | November 8, 2021, at 11:00 a.m. |
| Trial Date (Est. _____ Days) | November 30, 2021, at 8:30 a.m. |

The parties shall be familiar with and must adhere to the Court's Order Re Jury Trial, available on the Procedures and Schedules page of the Court's website (http://www.cacd.uscourts.gov/honorable-michael-w-fitzgerald).

Initials of Preparer:  RS/sjm