EXHIBIT A

1   Douglas J. Rosner, ESQ., SBN 094466
    rosnerlaw@earthlink.net
2   LAW OFFICES OF DOUGLAS JOSEPH ROSNER
    2625 Townsgate Road, Suite 330
3   Westlake Village, California 91361
    Telephone No. (818) 501-8400
4   Facsimile No.: (818) 880-4485

5   Attorney for Defendant/Cross-Defendants,
    Labrador Entertainment, Inc. dba Spider Cues Music Library,
6   Labrador Entertainment, LLC, Noel Palmer Webb,
    an individual and Webb Family Trusts

7

8

9              UNITED STATES DISTRICT COURT

10      CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

11

12  BEATBOX MUSIC, PTY, LTD.,           )   Case No. 2:17-cv-6108-MWF (JPRx)
                                        )   *Assigned to the Hon. Michael W.*
13              Plaintiff,              )   *Fitzgerald*
                                        )
       vs.                              )
14                                      )   Labrador Entertainment
    LABRADOR ENTERTAINMENT,             )   Inc., D/B/A Spider Cues Music
15  INC., DBA SPIDER CUES MUSIC         )   Library's Request for Production of
    LIBRARY, a California corporation,  )   Documents To Plaintiff Beatbox
16                                      )   Music, PTY, LTD
              Defendants.               )
17  _____ )   Judge: Hon. Michael W. Fitzgerald
                                        )
18  AND ALL RELATED ACTIONS             )   Trial Date: 11/30/2021
                                        )   Cross-Claim Filed: 11/21/2017
19                                      )   Action Filed: 8/17/2017
                                            First Amend. Compl.: 1/24/2020
20

21      PROPOUNDING PARTY: LABRADOR ENTERTAINMENT INC.

22      RESPONDING PARTY: BEATBOX MUSIC, PTY, LTD

23      SET NO. TWO (2)

24

25

26  _____

27  LABRADOR ENTERTAINMENT INC., D/B/A SPIDER CUES MUSIC LIBRARY'S

28  INTERROGATORIES TO PLAINTIFF BEATBOX MUSIC, PTY, LTD         Page 1 of 8

Pursuant to Federal Rules of Civil Procedure Rule 34 Defendant and Cross-Defendant Labrador Entertainment INC. ("Labrador") requests that Plaintiff Beatbox Music, PTY, LTD ("Beatbox") within 30 days provide written responses to these requests for production of documents and (2) produce the documents described herein for inspection and copying at the offices of Defendant's counsel, at the Law Offices of Douglas Joseph Rosner located at 2625 Townsgate Road, Suite 330, Westlake Village, California 91361.

**DEFINITIONS**

"ADDITION" means as the term is used in paragraph 7.1.1(c) (i) of the AMCOS AGREEMENT.

"AMCOS" means the Australian Mechanical Copyright Owners Society.

"AMCOS AGREEMENT" means the Exclusive License Agreement entered into between Australasian Mechanical Copyright Owners Society Limited and Beatbox Music PTY, LTD at or around 2004, executed by Peter Baker, Niki Roberts for Beatbox Music PTY, LTD and Sally Howard for AMCOS. AMCOS AGREEMENT is attached hereto as Exhibit A.

"COMMUNICATION" means any conveyance or exchange of information of any kind between or among persons or entities, whether in writing or by any other means or method, including, but not limited to, visual, oral, and electronic.

"CUE" means music audio of any length, with or without melody, lyrics, singing; and with or without a beginning, middle, and end.

"DELETION" means as the term is used in paragraph 7.1.1(c) (i) of the AMCOS AGREEMENT.

///

///

LABRADOR ENTERTAINMENT INC., D/B/A SPIDER CUES MUSIC LIBRARY'S
INTERROGATORIES TO PLAINTIFF BEATBOX MUSIC, PTY, LTD          Page 2 of 8

1    "DOCUMENT" or "DOCUMENTS" means and refers to all writings,

2    recordings, photographs, originals, and duplicates (each of the foregoing as defined

3    by Federal Rule of Evidence 1001), and shall include, without limitation, drawings,

4    graphs, charts, e-mail, computer records, computer disks, hard drives, electronic or

5    computerized data compilations, however produced or reproduced, any and all

6    written correspondence, letters, telegrams, agreements, contracts, notes,

7    memoranda, instructions, reports, financial statements, demands, data, schedules,

8    notices, work papers, drafts, recordings (whether by electronic or other means),

9    videotapes, analyses, interoffice or intercompany communications, notebooks,

10   diaries, daily logs, appointment calendars, sketches, plans, specifications, blue

11   prints, plats, diagrams, forms, manuals, brochures, catalogs, lists, publications,

12   phone scripts, printouts from websites, minutes of meetings, journals, ledgers or

13   other financial records, invoices, work tickets, purchase orders, canceled checks,

14   and all other written or graphic material of any nature whatsoever, in YOUR

15   possession or control. A draft or non-identical copy of any DOCUMENT requested

16   herein should be considered a separate DOCUMENT within the meaning of this

17   term.

18      "EMINEM-ESQUE" means the Michael Cohen SQ me eminem-esque cue.

19      "FAC" means YOUR FAC filed on January 24, 2020.

20      "LABRADOR" means Labrador Entertainment Inc., D/B/A Spider Cues

21   Music.

22      "LABRADOR AGREEMENT" means the agreement between Labrador

23   Entertainment, Inc (and dba Spider Cues) and Beatbox Music Pty Ltd entered on or

24   about April 2009.

25   ///

26   _____

27   LABRADOR ENTERTAINMENT INC., D/B/A SPIDER CUES MUSIC LIBRARY'S

28   INTERROGATORIES TO PLAINTIFF BEATBOX MUSIC, PTY, LTD          Page 3 of 8

"METADATA" means in the context of music, the information embedded in an audio file that is used to identify the content; the collection of information that pertains to a song file.

"NOTIFICATION" means as the term is used in paragraph 7.1.1(c) of the AMCOS AGREEMENT.

"PERSON," in the plural as well as the singular, means any natural person, association, partnership, corporation, joint venture, government entity, organization, limited liability company, trust, institution, proprietorship, or any other entity recognized as having an existence under the laws in the United States or any other nation.

"REFERRING OR RELATING TO," "REFER OR RELATE TO," "RELATING," "RELATING TO," or "REFERS TO" means any and all of the following terms and their synonyms: refer to, discuss, constitute, evidence, pertain to, mention, support, undermine, disprove, refute, contradict, negate, bear on, amend, revise, modify, touch on, contain, embody, reflect, identify, state, deal with, concern, comment on, summarize, respond to, relate to, or describe.

"REGISTRATION", means as the term is used in paragraph 7.1.1 (a) in the AMCOS AGREEMENT.

"SPIDER CUES MUSIC LIBRARY" means all musical compositions and sound recordings issued as part of the background music catalogue recordings made to be issued during the term of the LABRADOR AGREEMENT and any extensions or deletions or adjustments thereto by LABRADOR of musical compositions and sound recordings issued as part of the background music library catalogue, the subject matter of the LABRADOR AGREEMENT.

///

1    "STATEMENT", means as the term is used in paragraph 5.2 of the AMCOS

2    AGREEMENT.

3    The terms "ALL", "EACH" "ANY" shall be construed as all, each and any.

4    The use of the singular form of any word includes the plural and vice versa.

5    The words "and," "and/or," "or" shall each be deemed to refer to both their

6    conjunctive and disjunctive meanings, being construed as necessary to bring within

7    the scope of the discovery request all information and documents which would

8    otherwise be construed as being outside the request.

9    "YOU" and "YOUR" means Plaintiff Beatbox Music, PTY, LTD, together

10   with any PERSON acting directly or indirectly by, through, under or on YOUR

11   behalf, including but not limited to YOUR current or former members, directors,

12   officers, agents, attorneys, employees, partners, joint venturers, contractors,

13   accountants, or representatives, and any current or former corporation, partnership

14   association, trust, parent, subsidiary, division, affiliate, predecessor-in-interest and

15   successor-in-interest of YOU and any other PERSON acting on YOUR behalf.

16   **REQUEST FOR PRODUCTION OF DOCUMENTS**

17   **REQUEST FOR PRODUCTION NO. 11.**

18   ALL DOCUMENTS that RELATE TO YOUR REGISTRATION with

19   AMCOS of ANY CUE from SPIDER CUES MUSIC LIBRARY.

20   **REQUEST FOR PRODUCTION NO. 12.**

21   ALL DOCUMENTS that RELATE TO the METADATA necessary for YOUR

22   REGISTRATION with AMCOS of ANY CUE from SPIDER CUES MUSIC

23   LIBRARY.

24   ///

25   ///

26   

27   LABRADOR ENTERTAINMENT INC., D/B/A SPIDER CUES MUSIC LIBRARY'S

28   INTERROGATORIES TO PLAINTIFF BEATBOX MUSIC, PTY, LTD          Page 5 of 8

**REQUEST FOR PRODUCTION NO. 13.**

ALL DOCUMENTS that RELATE TO ANY NOTIFICATION by YOU to AMCOS of each ADDITION or DELETION of ANY CUE from the SPIDER CUES MUSIC LIBRARY.

**REQUEST FOR PRODUCTION NO. 14.**

ALL DOCUMENTS that RELATE TO ANY COMMUNICATION to LABRADOR of each ADDITION or DELETION of ANY CUE from the SPIDER CUES MUSIC LIBRARY.

**REQUEST FOR PRODUCTION NO. 15.**

ALL STATEMENTS YOU RECEIVED FROM AMCOS THAT RELATE TO the SPIDER CUES MUSIC LIBRARY.

**REQUEST FOR PRODUCTION NO. 16.**

ALL COMMUNICATIONS from YOU to ANY PERSON THAT RELATE TO EMINEM-ESQUE.

**REQUEST FOR PRODUCTION NO. 17.**

ALL COMMUNICATIONS TO YOU from ANY PERSON THAT RELATE TO EMINEM-ESQUE.


Dated: April 23, 2021

Law Offices of  Douglas Joseph Rosner

/s/ Douglas J. Rosner

By: Douglas J. Rosner
Attorney for Defendant/Cross-Defendants,
Labrador Entertainment, Inc. dba Spider Cues
Music Library, Labrador Entertainment, LLC,
Noel Palmer Webb, an individual and
Webb Family Trusts

LABRADOR ENTERTAINMENT INC., D/B/A SPIDER CUES MUSIC LIBRARY'S

INTERROGATORIES TO PLAINTIFF BEATBOX MUSIC, PTY, LTD          Page 6 of 8

## PROOF OF SERVICE

### USDC, CENTRAL DISTRICT, WESTERN DIVISION

### Case No. 2:17-cv-6108-MWF (JPRx)

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

At the time of service, I was over 18 years of age and not a party to this action. I am employed in the County of Los Angeles, State of California. My business address is 2625 Townsgate Road, Suite 330, Westlake Village, California 91361.

On April 23, 2021, I served true copies of the following document(s) described as Labrador Entertainment Inc., d/b/a Spider Cues Music Library's Request for Production of Documents To Plaintiff Beatbox Music, PTY, LTD on the interested parties in this action as follows:

SEE ATTACHED SERVICE LIST

**BY USPS Priority Mail 1-Day:** I enclosed said document(s) in an envelope or package provided by USPS and addressed to the persons at the addresses listed in the Service List. I placed the envelope or package for collection and overnight delivery at an office or a regularly utilizes drop box of USPS or delivered such document(s) to a courier or driver authorized by USPS to receive documents.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made. Executed on April 23, 2021, at Los Angeles, California.


Douglas J. Rosner

LABRADOR ENTERTAINMENT INC., D/B/A SPIDER CUES MUSIC LIBRARY'S

INTERROGATORIES TO PLAINTIFF BEATBOX MUSIC, PTY, LTD                    Page 7 of 8

1

# SERVICE LIST

2

3

## USDC, CENTRAL DISTRICT, WESTERN DIVISION

4

## Case No. 2:17-cv-6108-MWF (JPRx)

5

6

7 | Heather Lea Blaise, Esq.
Blaise and Nitschke PC

Counsel for Plaintiff
Beatbox Music Pty, Ltd.

8 | 123 North Wacker Drive, Suite 250
Chicago, IL 60606

9

10

11

12 | Daniel Jacobson, Esq.
Jacobson & Associates

Counsel for Defendant and Cross-Claimant
Michael Cohen

13 | 1352 Irvine Boulevard, Suite 205
Tustin, CA 92780

14

15

16

17

18

19

20

21

22

23

24

25

26 _____

27 LABRADOR ENTERTAINMENT INC., D/B/A SPIDER CUES MUSIC LIBRARY'S

28 INTERROGATORIES TO PLAINTIFF BEATBOX MUSIC, PTY, LTD          Page 8 of 8

EXHIBIT A

a   m      o   s

# Opt Out Categories (Corporate Members)

Indicate below the areas where you want AMCOS to license and collect royalties for you or where you want to license and collect royalties direct (Opt Out^). Please refer to the Exclusive Licence Agreement for relevant definitions and the documentation provided with this Application Form for further explanation on the options available to you.

^Opt Out means, in relation to a member, to revoke a licence granted to AMCOS under this agreement in relation to all of the member's Works or all of the member's Production Music Works;

**FOR EACH LICENCE CATEGORY, YOU MUST TICK EITHER:**
**- THE 'AMCOS BOX' TO INDICATE THAT YOU WANT AMCOS TO LICENSE THAT CATEGORY; OR**
**- THE 'OPT OUT BOX' IF YOU WANT TO LICENSE ALL YOUR WORKS IN THAT CATEGORY DIRECT.**

| Category | AMCOS | | Opt Out | |
|---|---|---|---|---|
| Clause 2.6.1(a) audio recordings – majors* | AMCOS | | Opt Out | ✓ |
| Clause 2.6.1(d) non-network TV productions* | AMCOS | | Opt Out | ✓ |
| Clause 2.6.1(g) audiovisual recordings – majors* | AMCOS | | Opt Out | ✓ |
| Clause 2.6.1(b) audio recordings – non-majors* | AMCOS | ✓ | Opt Out | |
| Clause 2.6.1(c) digital downloads* | AMCOS | ✓ | Opt Out | |
| Clause 2.6.1(e) ringtones* | AMCOS | ✓ | Opt Out | |
| Clause 2.6.1(f) internet & other new media applications* | AMCOS | ✓ | Opt Out | |
| Clause 2.6.1(h) audiovisual recordings – non-majors* | AMCOS | ✓ | Opt Out | |
| Clause 2.6.1(i) imports* | AMCOS | ✓ | Opt Out | |
| Clause 2.6.1(k) schools print licences* | AMCOS | ✓ | Opt Out | |

**Only complete the following category if you are a Production Music supplier.**

| | | | | |
|---|---|---|---|---|
| Cl2.2 production music* | AMCOS | ✓ | Opt Out | |

\*   The licensing areas referred to above are for information only – you should refer to the relevant clause of the Exclusive Licence Agreement.

# Membership Status

**Tick one of the following (refer to relevant definition at page 3).**

| Category A Member (fewer than 500 recorded works) | | Category B Member (500 or more recorded works) | ✓ |
|---|---|---|---|

# Signature

Signed .................................

Witnessed ..ℳℛ𝒾ℬ𝒾ℛℬ...................

Name ..PETER BACKA........

Name ..NIKKI ROBERTS..........

Date ..1/11/04.................................

**Once you have completed this form and read the Exclusive Licence Agreement, please complete and sign at page 2.**

# Exclusive Licence Agreement

**THIS AGREEMENT IS MADE ON**  2004

**BETWEEN**

**AUSTRALASIAN MECHANICAL COPYRIGHT OWNERS SOCIETY LIMITED** ABN 78 001 678 851
of 6-12 Atchison Street, St Leonards, New South Wales (**AMCOS**)

**and**

Name: BEATBOX MUSIC Pty LTD

Address: PO Box 669
PENNANT HILLS NSW 2120

SCHEDULE 1 - Member

**After reading the following terms and conditions carefully, please complete and sign below.**

**SIGNED AS AN AGREEMENT**

Signed by the **Member** in the presence of:

Signature of Member

Name of Member (PRINT)  PETER BAKER

Signature of Witness

Name of Witness (PRINT)  NIKKI ROBERTS

Signed for and on behalf of **Australasian Mechanical Copyright Owners Society Limited** in the presence of:

Signature of authorised person

Name of authorised person (PRINT)  SALLY HOWLAND

Office held  DIRECTOR - MEMBER SERVICES

Signature of Witness

Name of Witness (PRINT)  KAYE HAWLEY

## BACKGROUND

A.     AMCOS is a mechanical right collecting society appointed by its members to administer certain rights, to license certain rights and to collect and distribute royalties and licence fees.

B.     The Member wishes to join AMCOS on the terms set out in this agreement.

## AGREEMENTS

### 1.   Definitions and Interpretation

#### 1.1   Definitions

1.1.1   Where commencing with a capital letter:

**Act** means the *Copyright Act 1968*;

**Advertisement** means an announcement designed to attract the attention of the public or any part of it to a product, service, person, organisation or line of conduct but excludes Music Videos;

**Audio-visual Carrier** means a device which embodies sounds and visual images and includes videos, CD-ROMs, laser discs, DVDs and digital files but excludes Premiums;

**Blanket Licence** means a licence granted by AMCOS of all the Works, Production Music Works and Production Music Recordings controlled by it or all of the Works or all of the Production Music controlled by it;

**Board** means the board of directors of AMCOS;

**Broadcast** means a communication to the public delivered by a Broadcaster by means of television, radio or subscription radio or television services;

**Broadcaster** means a broadcasting service within the meaning of the Broadcasting Services Act 1992 or the operator of a subscription radio or television channel;

**Category A Members** means all members that have 499 or fewer Works Reproduced on sound recordings for sale to the public, and Production Music Works registered with AMCOS;

**Category B Members** means all members that have 500 or more Works Reproduced on sound recordings for sale to the public, and Production Music Works registered with AMCOS;

**CF** means AMCOS' centralised electronic interface between record companies and Members, which is a sub-program of CMS, known as the clearance facility;

**Cinematograph Film** has the same meaning as in the Act;

**CMS** means AMCOS' electronic copyright management system;

**Control Account** means an account:

(a)   held by a licensee; and

(b)   containing money owed by the licensee to music copyright owners, who have not been identified, for the Reproduction of musical works;

**Communicate** has the same meaning as in the Act;

**Dispute Account** means an account:

(a)   held by a licensee; and

(b)   containing money owed by the licensee to music copyright owners, who are in dispute as to the ownership of the copyright in the works, for the Reproduction of musical works;

**GST** has the same meaning as in section 195.1 of *A New Tax System (Goods and services Tax) Act 1999*;

**License Back** means, in relation to a member, to take a non-exclusive licence from AMCOS for the purpose of granting a specific licence to a person in Australia in respect of one or more of the member's Works or Production Music;

**Music Video** means a Cinematograph Film produced for the primary purpose of promoting:

(a)   the performer of the sound recording; or

(b)   the sound recording,

of a musical work embodied in the soundtrack of the Cinematograph Film;

**Opt Out** means, in relation to a member, to revoke a licence granted to AMCOS under this agreement in relation to all of the member's Works or all of the member's Production Music Works;

**Premium** means:

(a)   In relation to a Record, an article made for sale for a consideration not consisting wholly of money, or sale by a person not ordinarily carrying on the business of making or selling Records; and

(b)   In relation to a Reproduction other than in a Record, a Reproduction of a Work that is associated with or promotes the sale or provision of other goods or services;

**Production Music** means the Production Music Works and the Production Music Recordings;

**Production Music Recordings** means all present and future sound recordings of Production Music Works that are made generally available to studios, broadcasters and other persons for general non-exclusive use in audio, audio-visual and other productions;

**Production Music Works** means all present and future musical works:

(a)   In relation to which the sound recording is also owned or controlled by the Member; provided that

(b)   the principal purpose of the work is not to be made available for retail sale but rather is to be made generally available to studios, broadcasters and other persons for general non-exclusive use in audio, audio visual and other productions;

**Program** means a television, radio, website, internet or audio-visual program;

**Quarter** means a period of 3 months ending on 31 March, 30 June, 31 September or 31 December;

**Record** has the same meaning as in the Act but excludes Premiums;

**Reproduce** has the same meaning as in the Act but excludes reproduction in a Premium and, except in relation to Production Music and Blanket Licences, excludes reproduction in synchronisation with Cinematograph Films;

**Revenue** means, in connection with a Work, all money received by AMCOS from a grant of rights for a Work;

**Sale or Rental** means, in relation to a Work, the electronic and non-electronic sale or rental to the public;

**Schedule 2 Record Company** means a company listed in schedule 2 as amended by AMCOS from time to time;

**School** means a primary or secondary school;

**Territory** means Australia, New Zealand, Fiji, Papua New Guinea, Solomon Islands, Christmas Island, Cocos (Keeling) Islands, Cook Islands, Irian Barat, Nule (Savage) Island, Norfolk Island, Tokelau (Union) Islands and Western Samoa;

**Theme Music** means music:

(a)   identified or associated with a Program; or

(b)   used behind the main title or end credits of a Program; and

**Works** means all present and future musical works and associated lyrics owned or controlled by the Member, other than Production Music Works.

1.1.2   Where a word or phrase is given a defined meaning another part of speech or other grammatical form in respect of that word or phrase has a corresponding meaning.

1.2   **Presumptions of interpretation**

1.2.1   Unless the context otherwise requires a word which denotes:

(a)   the singular denotes the plural and vice versa; and

(b)   a person includes an individual, a body corporate and a government.

1.2.2   Unless the context otherwise requires a reference to:

(a)   any legislation includes any regulation or instrument made under it and where amended, re-enacted or replaced means that amended, re-enacted or replacement legislation; and

(b)   a thing or amount is a reference to the whole and each part of it.

2.   **Grant**

2.1   **Works**

2.1.1   Subject to clauses 2.1.2 and 2.6, and subject to the terms of any publishing contract by which the Member is bound, the Member grants AMCOS an exclusive licence in the Territory to and to authorise others to:

(a)   make Records embodying the Works for Sale or Rental:

(i)   by a Schedule 2 Record Company; or

(ii)   by a person that is not a Schedule 2 Record Company;

(b)   make Records embodying the Works for Sale by means of digital download but excluding mobile telephone ringtones;

(c)   Reproduce the Works in the Territory for Communication to the public:

(i)   by means of Broadcast where the Reproduction is made by the Broadcaster;

(ii)   by means of Broadcast where the Reproduction is not made by the Broadcaster;

(iii)   in the form of customised mobile telephone ringtones; and

(iv)   by other non Broadcast means;

(d)   Reproduce the Works in Audio-visual Carriers:

(i)   by a Schedule 2 Record Company; or

(ii)   by a person that is not a Schedule 2 Record Company; and

(e)   import into the Territory, Records and Audio-visual Carriers embodying the Works for:

(i)   the purpose of sale, hire or distribution to the public; and

(ii)   for any other purpose which would otherwise constitute an infringement of copyright under section 37 or 38 of the Act.

2.1.2   The Member's grant of licence under:

(a)   clause 2.1.1(c) does not include Reproductions in Advertisements or Theme Music; and

(b)   clause 2.1.1(d) does not include Reproduction in Advertisements.

2.2   **Production Music**

Subject to clause 2.6, the Member grants AMCOS an exclusive licence in the Territory to and to authorise others to:

(a)   Reproduce the Production Music;

(b)   Communicate, including by Broadcasting, the Production Music Recordings.

2.3   **Print music**

The Member grants AMCOS an exclusive licence in the Territory to authorise Schools to make *copies of Works in accordance with the limits set out in Schedule 4.*

2.4   **Sublicences**

The Member acknowledges that AMCOS may grant sublicences under this agreement:

(a)   on a non-exclusive basis only; and

(b)   on such terms as AMCOS sees fit.

2.5   **Advertisements, Premiums, synchronisations and other Reproductions**

2.5.1   The Member may, from time to time, authorise AMCOS to license persons to:

(a)   Reproduce or synchronise Works in an Advertisement or as Theme Music;

(b)   Reproduce Works in a Premium;

(c)   synchronise Works with the moving images in a Cinematograph Film; or

(d)   authorise a non print Reproduction in any other form,

on such terms as may be determined by the Member.

2.5.2   The Member may, from time to time, authorise AMCOS to license the rights granted under this agreement throughout the world by arrangements with AMCOS' affiliated collecting societies.

2.6 **Opting Out and Licensing Back**

2.6.1 Subject to this clause 2.6, the Member may at any time exercise its right to Opt Out or License Back the licences granted under:

(a) clause 2.1.1(a)(i);

(b) clause 2.1.1(a)(ii);

(c) clause 2.1.1(b);

(d) clause 2.1.1(c)(ii);

(e) clause 2.1.1(c)(iii);

(f) clause 2.1.1(c)(iv);

(g) clause 2.1.1(d)(i);

(h) clause 2.1.1(d)(ii);

(i) clause 2.1.1(e);

(j) clause 2.2; and

(k) clause 2.3.

2.6.2 The Member may only Opt Out of all Works, all Production Music Works and Production Music Recordings or both. It is not permissible to Opt Out of individual Works, or Production Music Works, or Production Music Recordings.

2.6.3 The Member must give not less than 3 months' notice to AMCOS expiring on a 31 March, 30 June, 30 September or 31 December notifying AMCOS that it Opts Out of a licence listed in clause 2.6.1.

2.6.4 If the Member notifies AMCOS that it is Opting Out of a licence under this clause 2.6, the Member must comply with such reasonable preconditions, including as to payment of any costs, prescribed by the Board from time to time.

2.6.5 If the Member exercises its rights under this clause 2.6 to Opt Out, the Member may not grant an exclusive licence to AMCOS of the categories of the licence revoked by the Member until the expiry of 12 months after the date of the revocation.

2.6.6 The Member acknowledges that it may only License Back individual Works or Production Music for a specific purpose.

2.6.7 The Member must give not less than 14 days' notice to AMCOS notifying AMCOS that it wishes to exercise the right to License Back.

2.6.8 If the Member notifies AMCOS that it wishes to exercise the right to License Back under this clause 2.6, the Member must:

(a) comply with such reasonable preconditions, including as to payment of any costs, prescribed by the Board from time to time; and

(b) detail the specific purpose of the exercise of the right to License Back.

3. **Agency**

3.1 **Receiving money**

Subject to clause 2.6, the Member appoints AMCOS as its exclusive agent to:

(a) collect all money due to the Member under the licences contained in Parts VA, VB and VC of the Act;

(b) collect all money due to the Member in respect of the Works and Production Music under any scheme, whether statutory or otherwise, anywhere in the world (other than territories notified by the Member) providing for the payment of any money:

(i) on recording equipment, tape or any other medium of Reproduction; and

(ii) intended as compensation or payment for the private Reproduction or rental of the Works;

(c) collect:

(i) from Control Accounts in the course of its conduct of audits; and

(ii) from Dispute Accounts,

money due to the Member in respect of the Works; and

(d) do all acts which AMCOS considers appropriate to ascertain and collect any money due under paragraphs (a), (b) and (c), including conducting audits of licensees.

3.2 **Indemnity**

The Member appoints AMCOS as its agent to indemnify each licensee against all damages, losses, costs and expenses (including legal costs) incurred by the licensee arising out of AMCOS wrongly claiming:

(a) that the Member controls a Work; or

(b) the percentage of the Work controlled by the Member.

4. **AMCOS' obligations**

AMCOS must:

(a) comply with the Code of Conduct for Copyright Collecting Societies in effect from time to time;

(b) grant licences only in accordance with the rights granted under this agreement;

(c) endeavour to maintain the CF and the CMS in working condition;

(d) take all reasonable steps to collect all money due under this agreement in respect of the Works, Production Music Works and Production Music Recordings; and

(e) separately identify the money collected under paragraph (d) in relation to each Member.

5. **Payments to the Member**

5.1 **Payment**

Subject to:

(a) clause 6;

(b) any directions of the Board from time to time in relation to payments; and

(c) the Member complying with its obligations under clause 7.1.1,

AMCOS must, within 60 days after the end of each Quarter, pay to the Member all of the Member's share under this agreement of the money collected by AMCOS in respect of the Member's Works and Production Music in that Quarter or the period specified by the Board, as the case may be.

5.2 **Statement**

AMCOS must, with each payment made under clause 5.1, provide the Member with a statement detailing each Work, Production Music Work or Production Music Recording for which money is included in the payment:

(a) the extent and nature of use of the Work, Production Music Work or Production Music Recording; and

(b) the money allocated by AMCOS in respect of each licensed use.

5.3 **GST**

In relation to any GST payable for a taxable supply (as defined under GST law) by a party under this agreement, the recipient of the supply must pay the GST subject to the supplier providing a tax invoice (as defined under GST Law).

6. **Commission and charges**

6.1 **Charges**

The Board may from time to time determine, in accordance with AMCOS' Constitution, the amount of any fees payable by members, including administration fees and fees in relation to Opt Out and License Back.

6.2 **Deduction**

AMCOS is entitled to deduct from all moneys collected by it under this agreement commission in accordance with schedule 3, and any costs which are determined by the Board to be payable in relation to any Opt Out or License Back in accordance with AMCOS' Constitution.

7. **Member's obligations**

7.1 **Reporting and assistance**

7.1.1 The Member must at its cost:

(a) provide AMCOS with a list of its Works, Production Music Works and Production Music Recordings and such other information concerning these as AMCOS may from time to time specify;

(b) promptly register the titles and other details required by AMCOS of all Works in accordance with AMCOS' standard procedures and practices from time to time;

(c) immediately notify AMCOS of:

    (i) each addition to or deletion from that list;

    (ii) each sub-publishing agreement relating to those additions or deletions; and

    (iii) each change to the Member's business which would affect its entitlement to be a member of AMCOS; and

(d) provide such information and assistance as AMCOS may reasonably require from time to time in order to perform its obligations under this agreement.

7.1.2 The Member acknowledges that if it is or if it becomes a Category B Member it will be necessary for it to use and operate the CF and the CMS to fulfil its obligations under this clause 7.1 and warrants that:

(a) it has or, immediately on becoming a Category B Member will ensure that it has, familiarised itself with the CF and CMS and has or will ensure that prior to its use of the CF and CMS it has, the necessary skills and ability to use the CF and the CMS; and

(b) it will ensure that it does not damage or harm the CF or CMS in any way.

**8.  Warranties**

The Member warrants that:

(a) the rights granted under this agreement do not infringe the intellectual property or other rights of any other person;

(b) each Work, Production Music Work and Production Music Recording is controlled by it;

(c) the Works, Production Music Works and Production Music Recordings are protected by copyright;

(d) if the Member represents itself to be the author of Works and Production Music Works, that it is the author of the Work as represented to AMCOS;

(e) it is entitled to be a member of AMCOS under AMCOS' constitution; and

(f) it has full power and authority to enter into and perform its obligations under this agreement.

**9.  Indemnity**

**9.1  Member**

The Member indemnifies AMCOS against all damages, losses, costs and expenses (including legal costs) incurred by AMCOS arising out of:

(a) the performance of AMCOS' obligations under this agreement; or

(b) any breach by the Member of this agreement.

**9.2  AMCOS**

AMCOS indemnifies the Member against all damages, losses, costs and expenses (including legal costs) incurred by the Member arising out of any breach by AMCOS of this agreement.

**10.  Legal proceedings**

**10.1  Restriction**

AMCOS must not commence any legal proceedings in respect of infringement of the copyright in:

(a) the Works;

(b) the Production Music Works; or

(c) the Production Music Recordings,

without the prior written consent of the Member.

**10.2  Assistance**

Subject to clause 10.1 the Member must provide AMCOS with all reasonable assistance required by AMCOS in any legal proceeding relating to this agreement, the Works, the Production Music Works or the Production Music Recordings.

**11.  Term and Termination**

**11.1  Term**

This agreement commences:

(a) if the Member is a member of AMCOS prior to the date of this agreement, on 1 July 2004; or

(b) otherwise on the date the Member is admitted as a member of AMCOS.

and continues until terminated accordance with this clause 11.

**11.2  Termination by notice**

Either party (**Innocent Party**) may terminate this agreement:

(a) on 6 months' notice to the other terminating on 30 June or 31 December; or

(b) immediately by notice to the other party (**Defaulting Party**) if the Defaulting Party:

    (i) breaches any term of this agreement and fails to rectify the breach within 14 days after notice from the Innocent Party; or

    (ii) goes into liquidation, has a receiver or receiver and manager appointed to it or any part of its assets, enters into a scheme of arrangement with creditors or suffers any other form of external administration.

**11.3  Automatic termination**

This agreement terminates on the Member ceasing to be a member of AMCOS.

**11.4  Effect of termination**

The termination of this agreement does not affect any licence (other than a Blanket Licence) granted by AMCOS under this agreement prior to the date of termination of this agreement, nor will termination affect the rights and obligations of the parties to this agreement in respect of such licences.

**12.  Dispute resolution**

**12.1  Dealing with disputes**

12.1.1 The parties must, without delay and in good faith, attempt to resolve any dispute that arises out of or in connection with this agreement prior to commencing any proceedings.

12.1.2 If a party requires resolution of a dispute it must do so in accordance with the provisions of this clause 12 and the parties acknowledge that compliance with these provisions is a condition precedent to any entitlement to claim relief or remedy whether by way of proceedings in a court of law or otherwise in respect of such disputes.

**12.2  Resolution by management**

12.2.1 If a party requires resolution of a dispute it must immediately submit full details of the dispute to the chief executive officer of the other party.

12.2.2 If the dispute is not resolved within 30 days of submission of the dispute to them, or such other time as they agree, the provisions of clause 12.3 will apply.

**12.3  Conciliation**

12.3.1 Disputes must be submitted to conciliation in accordance with and subject to the Institute of Arbitrators Australia Rules for the Conduct of Commercial Conciliations.

12.3.2 A party may not commence proceedings in respect of the dispute unless the dispute is not settled by conciliation within 30 days of submission to conciliation, or such other time as the parties agree.

**13.  Miscellaneous**

**13.1  Notices**

13.1.1 A notice under this agreement:

(a) must be in writing; and

(b) may be given to the addressee by:

    (i) delivering it to the address of the addressee;

    (ii) sending it by pre-paid registered post to the address of the addressee; or

    (iii) sending it by facsimile to the facsimile number of the addressee,

and the notice or other communication will be deemed to have been received by the addressee on receipt.

13.1.2 A facsimile is deemed to have been received on production of a transmission report by the machine from which the facsimile was sent which indicates that the facsimile was sent in its entirety to the facsimile number of the addressee.

**13.2  Amendment**

This agreement may only be varied by the written agreement of the parties.

**13.3 Assignment**

A party may only assign a right under this agreement with the prior written consent of the other parties.

**13.4 Entire agreement**

13.4.1 This agreement embodies the entire understanding and agreement between the parties as to the subject matter of this agreement, and replaces any earlier membership agreement between the Member and AMCOS.

13.4.2 All previous negotiations, understandings, representations, warranties, memoranda or commitments in relation to, or in any way affecting, the subject matter of this agreement are merged in and superseded by this agreement.

**13.5 Further assurance**

Each party must promptly execute all documents and do all things that another party from time to time reasonably requests to effect, perfect or complete this agreement and all transactions incidental to it.

**13.6 Governing law and jurisdiction**

13.6.1 This agreement is governed by and must be construed in accordance with the laws of New South Wales.

13.6.2 Each party:

(a) irrevocably and unconditionally submits to the nonexclusive jurisdiction of the courts of New South Wales and all courts which have jurisdiction to hear appeals from them; and

(b) waives any right to object to proceedings being brought in those courts for any reason.

**13.7 Severance**

Each of the agreements of the parties under this agreement is severable from the others and the severance of one agreement does not affect the other agreements.

**13.8 Waiver**

No waiver of any term of this agreement is binding on a party unless it is in writing and executed by or on behalf of that party. Any such waiver is not a waiver of any other term.

**13.9 Stamp duty and other charges**

The Member must promptly pay all stamp duty, fees and other taxes and charges payable in connection with this agreement or any document incidental to it.

---

**SCHEDULE 2 - Schedule 2 Record Companies**

**Australia**

BMG Australia Limited

Universal Music Australia Limited

Sony Music Entertainment (Australia) Limited

EMI Music Australia Pty Limited

Festival Records Pty Ltd

Warner Music Australia Pty Limited

Reader's Digest Services Limited

**New Zealand**

BMG New Zealand Limited

Universal Music Limited

Sony Music Entertainment (NZ) Limited

EMI Music NZ Limited

Warner Music NZ Limited

Reader's Digest New Zealand

---

**SCHEDULE 3 - Commission**

*Subject to any other lower rate determined by the Board from time to time on notice to the Member:*

(a) In relation to licences granted under clauses 2.1.1(a), (b), (d) and (e):
   (i) Category A Members: 17.5% of Revenue; and
   (ii) Category B Members: 12% of Revenue;

(b) In relation to licences granted under clauses 2.1.1 (c) and 2.3, and money collected under clause 3.1(a), 12% of Revenue;

(c) subject to (b) above, in relation to licences granted under clause 2.2:
   (i) Category A Members: 17.5% of Revenue; and

   (ii) Category B Members: 12% of Revenue;

(d) In relation to licences granted under clause 2.5 and money collected under clause 3.1(b):
   (i) Category A Members: 10% of Revenue arising out of the Advertisement; and
   (ii) Category B Members: 5% of Revenue arising out of the Advertisement.

(e) In relation to monies collected under clause 3.1(c);
   *(i) Category A Members: 17.5% of Revenue; and*
   *(ii) Category B Members: 3% of Revenue.*

---

**SCHEDULE 4 - Print Music copying limits**

| TYPE OF WORK | PRIMARY SCHOOL [No. of copies per original owned by the School] | SECONDARY SCHOOL [No. of copies per original owned by the School] |
|---|---|---|
| Choral Sheet | 5 | 5 |
| Separately Published Musical Work | 30 | 15 |
| Collection of Musical Works | 39 (with a limit of 3 songs per collection) | 15 (with a limit of 3 songs per collection) |
| Transcription of a Musical Work | 30 | *15* |
| Transposition of a Musical Work | 30 | 15 |
| Orchestral/band set | 30 additional instrumental parts | 30 additional instrumental parts |

EXHIBIT B

BLAISE & NITSCHKE, P.C.
HEATHER L. BLAISE, ESQ. (SBN 261619)
123 N. Wacker Drive, Suite 250
Chicago, IL 60606
Telephone: 312-448-6602
Email: hblaise@blaisenitschkelaw.com

Attorneys for Plaintiff,
BEATBOX MUSIC PTY, LTD.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BEATBOX MUSIC PTY, LTD., | CASE NO: 2:17-cv-6108 MWF (JPRx) |
| Plaintiff, | *Assigned to the Hon. Michael W. Fitzgerald* |
| v. | **BEATBOX MUSIC PTY, LTD.'S RESPONSE TO LABRADOR ENTERTAINMENT, INC.'S REQUEST FOR PRODUCTION OF DOCUMENTS** |
| LABRADOR ENTERTAINMENT, INC. D/B/A SPIDER CUES MUSIC LIBRARY, a California corporation; NOEL PALMER WEBB, an individual; MICHAEL COHEN, an individual; LABRADOR ENTERTAINMENT, LLC; MCPC HOLDINGS, LLC; WEBB FAMILY TRUST and DOES 1-20, inclusive, | |
| Defendants. | |
| AND ALL RELATED ACTIONS | Trial Date:       November 30, 2021 FAC:              January 24, 2020 Cross-Claim Filed: November 21, 2017 Action Filed:     August 17, 2017 |

**PROPOUNDING PARTY:**    **LABRADOR ENTERTAINMENT, INC.**

**RESPONDING PARTY:**    **BEATBOX MUSIC, PTY, LTD.**

**SET NUMBER:**    **TWO (2)**

- 1 -

## Plaintiff's Response to Labrador Entertainment, Inc., D/B/A Spider Cues Music Library's Request for Production of Documents

Plaintiff, BEATBOX, MUSIC PTY, LTD. ("Beatbox" or "Plaintiff"), by and through its attorneys, Blaise & Nitschke, P.C., hereby responds to Defendant Labrador Entertainment, LLC's Second Request of Production of Documents, pursuant to Rule 34 of the Federal Rules of Civil Procedure as follows:

### DEFINITIONS

"ADDITION" means as the term is used in paragraph 7.1.l(c) (i) of the AMCOS AGREEMENT.

"AMCOS" means the Australian Mechanical Copyright Owners Society.

"AMCOS AGREEMENT" means the Exclusive License Agreement entered into between Australasian Mechanical Copyright Owners Society Limited and Beatbox Music PTY, LTD at or around 2004, executed by Peter Baker, Niki Roberts for Beatbox Music PTY, LTD and Sally Howard for AMCOS. AMCOS AGREEMENT is attached hereto as Exhibit A.

"COMMUNICATION" means any conveyance or exchange of information of any kind between or among persons or entities, whether in writing or by any other means or method, including, but not limited to, visual, oral, and electronic.

"CUE" means music audio of any length, with or without melody, lyrics, singing; and with or without a beginning, middle, and end.

"DELETION" means as the term is used in paragraph 7.1.l(c) (i) of the AMCOS AGREEMENT.

"DOCUMENT" or "DOCUMENTS" means and refers to all writings, recordings, photographs, originals, and duplicates (each of the foregoing as defined 3 by Federal Rule of Evidence 1001), and shall include, without limitation, drawings, graphs, charts, e-mail, computer records, computer disks, hard drives, electronic or computerized data compilations, however produced or reproduced, any and all written correspondence, letters, telegrams, agreements, contracts, notes, memoranda,

instructions, reports, financial statements, demands, data, schedules, notices, work papers, drafts, recordings (whether by electronic or other means), videotapes, analyses, interoffice or intercompany communications, notebooks, diaries, daily logs, appointment calendars, sketches, plans, specifications, blue prints, plats, diagrams, forms, manuals, brochures, catalogs, lists, publications, phone scripts, printouts from websites, minutes of meetings, journals, ledgers or other financial records, invoices, work tickets, purchase orders, canceled checks, and all other written or graphic material of any nature whatsoever, in YOUR possession or control. A draft or non-identical copy of any DOCUMENT requested herein should be considered a separate DOCUMENT within the meaning of this term.

"EMINEM-ESQUE" means the Michael Cohen SQ me eminem-esque cue.

"FAC" means YOUR FAC filed on January 24, 2020.

"LABRADOR" means Labrador Entertainment Inc., D/B/A Spider Cues Music.

"LABRADOR AGREEMENT" means the agreement between Labrador Entertainment, Inc (and dba Spider Cues) and Beatbox Music Pty Ltd entered on or about April 2009.

"METADATA" means in the context of music, the information embedded in an audio file that is used to identify the content; the collection of information that pertains to a song file.

"NOTIFICATION" means as the term is used in paragraph 7.1.1(c) of the AMCOS AGREEMENT.

"PERSON," in the plural as well as the singular, means any natural person, association, partnership, corporation, joint venture, government entity, organization, limited liability company, trust, institution, proprietorship, or any other entity recognized as having an existence under the laws in the United States or any other nation.

"REFERRING OR RELATING TO," "REFER OR RELATE TO," "RELATING," "RELATING TO," or "REFERS TO" means any and all of the following terms and their synonyms: refer to, discuss, constitute, evidence, pertain to, mention, support, undermine, disprove, refute, contradict, negate, bear on, amend, revise, modify, touch on, contain, embody, reflect, identify, state, deal with, concern, comment on, summarize, respond to, relate to, or describe.

"REGISTRATION", means as the term is used in paragraph 7.1.1 (a) in the AMCOS AGREEMENT.

"SPIDER CUES MUSIC LIBRARY" means all musical compositions and sound recordings issued as part of the background music catalogue recordings made to be issued during the term of the LABRADOR AGREEMENT and any extensions or deletions or adjustments thereto by LABRADOR of musical compositions and sound recordings issued as part of the background music library catalogue, the subject matter of the LABRADOR AGREEMENT.

"STATEMENT", means as the term is used in paragraph 5.2 of the AMCOS AGREEMENT.

The terms "ALL", "EACH" "ANY" shall be construed as all, each and any.

The use of the singular form of any word includes the plural and vice versa.

The words "and," "and/or," "or" shall each be deemed to refer to both their conjunctive and disjunctive meanings, being construed as necessary to bring within the scope of the discovery request all information and documents which would otherwise be construed as being outside the request.

"YOU" and "YOUR" means Plaintiff Beatbox Music, PTY, LTD, together with any PERSON acting directly or indirectly by, through, under or on YOUR behalf, including but not limited to YOUR current or former members, directors, officers, agents, attorneys, employees, partners, joint venturers, contractors, accountants, or representatives, and any current or former corporation, partnership

association, trust, parent, subsidiary, division, affiliate, predecessor-in-interest and successor-in-interest of YOU and any other PERSON acting on YOUR behalf.

## REQUEST FOR PRODUCTION OF DOCUMENTS

### REQUEST FOR PRODUCTION NO.11.

ALL DOCUMENTS that RELATE TO YOUR REGISTRATION with AMCOS of ANY CUE from SPIDER CUES MUSIC LIBRARY.

**RESPONSE:** Responding Party objects that this request is vague and ambiguous as to time. Further, this request is overbroad as stated, unduly burdensome, and is not proportional to the needs of the case. FRCP 26(b)(1).

Notwithstanding the preceding objections, Responding Party responds: Responding Party has no documents to produce. Investigation continues.

### REQUEST FOR PRODUCTION NO. 12.

ALL DOCUMENTS that RELATE TO the METADATA necessary for YOUR REGISTRATION with AMCOS of ANY CUE from SPIDER CUES MUSIC LIBRARY.

**RESPONSE:** Responding Party objects that this request is vague and ambiguous as to time. Further, this request is overbroad as stated, unduly burdensome, and is not proportional to the needs of the case. FRCP 26(b)(1).

Notwithstanding the preceding objections, Responding Party responds: Responding Party has no documents to produce. Investigation continues.

### REQUEST FOR PRODUCTION NO. 13.

ALL DOCUMENTS that RELATE TO ANY NOTIFICATION by YOU to AMCOS of each ADDITION or DELETION of ANY CUE from the SPIDER CUES MUSIC LIBRARY.

**RESPONSE:** Responding Party objects that this request is vague and ambiguous as to time. Further, this request is overbroad as stated, unduly burdensome, and is not proportional to the needs of the case. FRCP 26(b)(1).

Notwithstanding the preceding objections, Responding Party responds:

*See* documents attached as Bates Nos. BEATBOX 000587-588. Investigation continues.

**REQUEST FOR PRODUCTION NO. 14.**

ALL DOCUMENTS that RELATE TO ANY COMMUNICATION to LABRADOR of each ADDITION or DELETION of ANY CUE from the SPIDER CUES MUSIC LIBRARY.

**RESPONSE:** Responding Party objects that this request is vague and ambiguous as to time. Also, the request is duplicative and seeks documents already in Propounding Party's control. Further, this request is overbroad as stated, unduly burdensome, and is not proportional to the needs of the case. FRCP 26(b)(1). Finally, the request is unintelligible as stated in the context of LABRADOR as the original publisher.

Without waiving the above, investigation continues.

**REQUEST FOR PRODUCTION NO. 15.**

ALL STATEMENTS YOU RECEIVED FROM AMCOS THAT RELATE TO the SPIDER CUES MUSIC LIBRARY.

**RESPONSE:** Responding Party objects that this request is vague and ambiguous as to time. Also, the request is duplicative and seeks documents already in Propounding Party's control. Further, this request is overbroad as stated, unduly burdensome, and is not proportional to the needs of the case. FRCP 26(b)(1). Finally, the request seeks documents that are not relevant to any party's claim or defense. *Id.*

Without waiving the above, investigation continues.

**REQUEST FOR PRODUCTION NO. 16.**

ALL COMMUNICATIONS from YOU to ANY PERSON THAT RELATE TO EMINEM-ESQUE.

**RESPONSE:** Responding Party objects that this request is vague and ambiguous as to time. Also, the request is duplicative and seeks documents already in Propounding Party's control. Further, this request is overbroad as stated, unduly burdensome, and

is not proportional to the needs of the case. FRCP 26(b)(1). Finally, the request seeks documents that may be subject to attorney-client confidentiality. *Id.*

Without waiving the above, investigation continues.

## **REQUEST FOR PRODUCTION NO. 17.**

ALL COMMUNICATIONS TO YOU from ANY PERSON THAT RELATE TO EMINEM-ESQUE.

**RESPONSE:** Responding Party objects that this request is vague and ambiguous as to time. Also, the request is duplicative and seeks documents already in Propounding Party's control. Further, this request is overbroad as stated, unduly burdensome, and is not proportional to the needs of the case. FRCP 26(b)(1). Finally, the request seeks documents that may be subject to attorney-client confidentiality. *Id.*

Without waiving the above, investigation continues.

Plaintiff retains the right to seasonably supplement and/or amend these Responses.

DATED: June 2, 2021                    Respectfully submitted,

**BEATBOX MUSIC PTY, LTD.**
  */s/ Heather L. Blaise*
HEATHER L. BLAISE, ESQ. (SBN 261619)
123 N. Wacker Drive, Suite 250
Chicago, IL 60606
Telephone: 312-448-6602
Email: hblaise@blaisenitschkelaw.com
*Attorney for Plaintiff*

## <u>VERIFICATION</u>

I have read the foregoing Responses to Labrador Entertainment, Inc.'s Request for Production of Documents and know its contents.

I am an authorized representative of Plaintiff Beatbox Music Pty, Ltd. The matters stated on the foregoing document are true of my own knowledge except as to those matters which are stated on information and belief, and as to those matters I believe them to be true.

I am authorized to make this verification for and on Plaintiff's behalf, and I make this verification for that reason.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on June 2, 2021, at New South Wales, Australia.

Peter Baker

PLAINTIFF'S RESPONSE TO LABRADOR ENTERTAINMENT, INC.'S REQUEST FOR PRODUCTION OF DOCUMENTS

## PROOF OF SERVICE

At the time of service, I was over 18 years of age and not a party to this action. I am employed in the County of Cook, State of Illinois, and my business address is 123 N. Wacker Drive, Suite 250, Chicago, Illinois 60606.

On June 2, 2021, I served true copies of the following document(s) described as **Plaintiff's Response to Labrador Entertainment, Inc.'s Request for Production of Documents**, on the interested parties in this action as follows:

**BY EMAIL OR ELECTRONIC TRANSMISSION**: By transmitting a true copy of the foregoing document(s) to the email addresses set forth on the attached service list.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 2nd day of June, 2021 in Chicago, Illinois.

/s/ *Jessica Ann Lesko*
Jessica Ann Lesko

## <u>SERVICE LIST</u>

JACOBSON & ASSOCIATES
Dan Jacobson (SBN 134978)
dlj@jacobsonlawyers.com
Ronak Patel (SBN 296296)
rp@jacobsonlawyers.com
315 Centenniel Way
Tustin, CA 92780
*Attorneys for Michael Cohen and MCPC Holdings, LLC*

DOUGLAS J. ROSNER (SBN 094466)
rosnerlaw@earthlink.net
2625 Townsgate Road, Suite 330
Westlake Village, CA 91302
*Attorney for Labrador Entertainment, Inc. d/b/a Spider Cues Music Library; Labrador Entertainment, LLC; Noel Palmer Webb; and Webb Family Trust*

J. CURTIS EDMONDSON (SBN 236105)
jcedmondson@edmolaw.com
Law Offices of J. Curtis Edmondson, PLLC
2660 SE 39th Loop, Suite D
Hillsboro, OR 97123
*Attorney for Labrador Entertainment, Inc. d/b/a Spider Cues Music Library; Labrador Entertainment, LLC; Noel Palmer Webb; and Webb Family Trust*

EXHIBIT C

# Fax

| | |
|---|---|
| **To:** Heather L. Blaise, Esq. | **From:** Douglas J. Rosner |
| **Fax:** 1-312-803-1940 | **Date:** Jun 04/21 04:44 PM |
| **Organization:** BLAISE & NITSCHKE, P.C. and Jacobson & Associatioa | |
| **Subject:** Meet and Confer | |

See Included.

LAW OFFICES

# Douglas Joseph Rosner

2626 TOWNSGATE ROAD
Suite 330
WESTLAKE VILLAGE, CA 91361

(818) 501-8400
rosnerlaw@earthlink.net

June 4, 2021

**VIA ONLY Telecopier (312) 803-1940 and Email:**
**hblaise@blaisenitschkelaw.com**
BLAISE & NITSCHKE, P.C.
Heather L. Blaise, Esq.
123 N. Wacker Drive, Suite 250
Chicago, IL 60606

RE: *Labrador Entertainment, Inc. et al. adv. Beatbox et al.*

Dear Ms. Blaise:

Pursuant to Local Rule 37-1, we are writing regarding
several deficiencies identified below regarding Beatbox Music
Pty., Ltd.'s Response to Labrador Entertainment, Inc.'S Request
for Production of Documents. Labrador Entertainment reserves the
right to address further deficiencies at a later date.

A party may request documents "in the responding party's
possession, custody, or control," but requires that the party
describe the items sought with "reasonable particularity." Fed.
R. Civ. P. 34(a), 34(b). As described in AECOM Energy, No. CV
17-5398 RSWL (SSx), 2018 WL 4705914, at *7 (C.D. Cal. Apr. 26,
2018):

"Following a reasonable investigation, a responding party
must serve a written response to each request (1) stating that
the materials requested will be produced, either in whole or in
part; (2) affirming that no responsive documents exist in the
party's possession, custody or control; or (3) posing an
objection and stating "with specificity the grounds for objecting
to the request, including the reasons." Fed. R. Civ. P.
34(b)(2)(B); *see* also *Leibovitz v. City of New York*, 2017 WL
462515, at *2 (S.D.N.Y. Feb. 3, 2017) (collecting cases for the
proposition that revisions to the Federal Rules effective
December 1, 2015 prohibit "general" or "boilerplate" objections).
Also pursuant to 2015 amendments, if objections are made, the
"objection must state whether any responsive materials are being
withheld on the basis of that objection." Rule 34(b)(2)©. If the
search does not reveal responsive materials, the responding party
should provide sufficient information for the requesting party,
and the court, to be satisfied that the investigation was
adequate. *Atcherley v. Clark*, 2014 WL 4660842, at *1 (E.D. Cal.
Sept. 14, 2014) (internal citations omitted)."

Heather L. Blaise, Esq.
June 4, 2021
Page Two

## **Boilerplate Objections**

Beatbox Music Pty., Ltd.'s Responses includes without any basis boilerplate objections.  These objections are improper and contrary to the Federal Rules. Moreover, Beatbox has not stated whether it is withholding any documents or information on the basis of these objections.  In light of the foregoing, please explain in detail what responsive information and documents Beatbox is withholding on the basis of these objections and provide either appropriate justification for Beatbox's improper boilerplate objections or provide all responsive documents and information.

## **Requests for Production ("RFPs")**

Beatbox has not produced any documents in response to at least the following requests 14, 15, 16 and 17. Nor has Beatbox indicated whether it is withholding any documents on the basis of its objections.  Pursuant to Local Rule 37-1, we look forward to Beatbox's confirmation by June 14, 2021, that it will supplement its responses and produce responsive documents as discussed above. Labrador reserves all rights to seek all appropriate remedies if Beatbox does not supplement its responses including, but not limited to, monetary and evidentiary sanctions precluding Beatbox from relying on any information or documents not disclosed in response to Labrador's discovery requests.

General or boilerplate objections such as "overly burdensome and harassing" are improper—especially when a party fails to submit any evidentiary declarations supporting such objections. *Paulsen v. Case Corp.*, 168 F.R.D. 285, 289 (C.D.Cal.1996)

Similarly, boilerplate relevancy objections, without setting forth any explanation or argument why the requested documents are not relevant, are improper. "Relevant information for purposes of discovery is information 'reasonably calculated to lead to the discovery of admissible evidence.' " *Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 635 (9th Cir.2005)(citation omitted). Here, most of the document requests, 14, 16 and 17, seek information related to plaintiff's communications with Labrador and ANY PERSON related to the CUES and EMINEM-ESQUE and and also, request number 15, statements from AMCOS as defined within  means as the term is used in paragraph 5.2 of the AMCOS AGREEMENT. These requests are clearly relevant to defendant's defenses and claims.

Heather L. Blaise, Esq.
June 4, 2021
Page Three

Further, not all communications between an attorney and his client are privileged. Rather, only "[c]onfidential disclosures by a client to an attorney made in order to obtain legal assistance are privileged." *Fisher v. United States*, 425 U.S. 391, 403 (1976); *Clarke v. American Commerce Nat'l Bank*, 974 F.2d 127, 129 (9th Cir.1992). To show the applicability of the attorney-client privilege, a claimant must show the following eight essential elements: " '(1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection be waived.' " *In re Grand Jury Investigation*, 974 F.2d 1068, 1071 n. 2 (9th Cir.1992); *United States v. Martin*, 278 F.3d 988, 999 (9th Cir.2002). Because the attorney-client privilege is in derogation of the search for truth, it is "narrowly and strictly construed." *United States v. Gray*, 876 F.2d 1411, 1415 (9th Cir.1989), cert. denied, 495 U.S. 930, 110 S.Ct. 2168(1990)

Under Rule 34, a party must produce or permit inspection of documents responsive to a request for production of documents when such documents are in the party's "possession, custody or control." "[F]ederal courts have consistently held that documents are deemed to be within [a party's] 'possession, custody or control' for purposes of Rule 34 if the party has actual possession, custody, or control, or has the legal right to obtain the documents on demand." *In re Bankers Trust Co.*, 61 F.3d 465, 469 (6th Cir.1995) (emphasis added), cert. dismissed, 517 U.S. 1205, 116 S.Ct. 1711, 134 L.Ed.2d 808 (1996); *see* also *United States v. Int'l Union of Petroleum and Indus., Workers, AFL–CIO*, 870 F.2d 1450, 1452 (9th Cir.1989) ( "Control is defined as the legal right to obtain documents upon demand."). Accordingly, a party has an obligation to conduct a reasonable inquiry into the factual basis of his responses to discovery, *National Ass'n of Radiation Survivors v. Turnage*, 115 F.R.D. 543, 554–56 (N.D.Cal.1987), and, based on that inquiry, "[a] party responding to a Rule 34 production request ... 'is under an affirmative duty to seek that information reasonably available to [it] from [its] employees, agents, or others subject to [its] control.' " *Gray v. Faulkner*, 148 F.R.D. 220, 223 (N.D.Ind.1992) (citation omitted).

Heather L. Blaise, Esq.
June 4, 2021
Page Four


        A reasonable inquiry into the factual basis of Beatbox's
discovery responses require, at a minimum, a reasonable procedure
to distribute discovery requests to all employees and agents of
the Beatbox potentially possessing responsive information, and to
account for the collection and subsequent production of the
information to Labrador. Further, to assure that plaintiff
actually makes a "reasonable inquiry," the Court will order it
to provide Labrador with declarations or affidavits detailing the
nature of his "reasonable inquiry" to locate responsive
documents, and such declarations must address the inquiry he made
on a request-by-request basis.

        I would like to arrange a time no later than June 8, 2021 to
discuss this matter. Please let me know when you will be
available.  Please contact me so we can discuss these issues.

        Thank you,

        LAW OFFICES OF DOUGLAS JOSEPH ROSNER

        By:
            Douglas J. Rosner

EXHIBIT D

# Fax

**To:** Heather L. Blaise, Esq.                    **From:** Douglas J. Rosner

**Fax:** 1-312-803-1940                            **Date:** Jun 10/21 12:51 PM

**Organization:** BLAISE & NITSCHKE, P.C.

**Subject:** **Meet and Confer documents**

Please find herein included a further attempt to meet and confer regarding production of documents

LAW OFFICES

# DOUGLAS JOSEPH ROSNER

2625 TOWNSGATE ROAD
SUITE 330
WESTLAKE VILLAGE, CA 91361

(818) 501-8400
rosnerlaw@earthlink.net

June 10, 2021

**VIA ONLY Telecopier (312) 803-1940 and Email:**
**hblaise@blaisenitschkelaw.com**
BLAISE & NITSCHKE, P.C.
Heather L. Blaise, Esq.
123 N. Wacker Drive, Suite 250
Chicago, IL 60606

  RE: *Labrador Entertainment, Inc. et al. adv. Beatbox et al.*

  Dear Ms. Blaise:

  On June 4, 2021, I sent to you via email and telecopier a letter pursuant to Local Rule 37-1 regarding several deficiencies regarding Beatbox Music Pty., Ltd.'s Response to Labrador Entertainment, Inc.'s Request for Production of Documents. Included is a copy of this letter.

  I requested that you contact me to arrange a time no later than June 8, 2021 to discuss this matter. As of the date of this writing I have not received any communication from you. Can you please contact me as soon as possible to discuss when you will be available?

  It is my desire to conduct with you a "personal consultation," to personally engage in two-way communication with you to meaningfully discuss each contested discovery dispute in a genuine effort to avoid judicial intervention. *Shuffle Master, Inc. v. Progressive Games, Inc.*, 170 F.R.D. 166, 171-72 (D.Nev.1996).

  Thank you,

  LAW OFFICES OF DOUGLAS JOSEPH ROSNER

  By:
  Douglas J. Rosner

# Fax Transmission Details

| | |
|---|---|
| Status | **Sent** |
| Time Queued | Jun 04/21 04:45 PM |
| Time Sent | Jun 04/21 04:45 PM |
| To Fax # | 1 (312) 803-1940 |
| Recipient Name | Heather L. Blaise, Esq. |
| Ref # | Labrador |
| Subject | Meet and Confer |
| Pages Queued | 5 |
| Pages Sent | 5 |
| Size | 264.55KB |
| Duration | 220 |
| Remote ID | +1 312 803 1940 |
| Line # | 1 (04) |
| Sender Email | rosnerlaw@earthlink.net |

**PRINT**          **CLOSE**

# **Fax**

**To:**     Heather L. Blaise, Esq.     **From:** Douglas J. Rosner

**Fax:**     1-312-803-1940     **Date:**  Jun 04/21 04:44 PM

**Organization:** BLAISE & NITSCHKE, P.C. and Jacobson & Associatioa

**Subject:**     **Meet and Confer**

See Included.

LAW OFFICES

# Douglas Joseph Rosner

2626 TOWNSGATE ROAD
SUITE 330
WESTLAKE VILLAGE, CA 91361

(818) 501-8400
rosnerlaw@earthlink.net

June 4, 2021

**VIA ONLY Telecopier (312) 803-1940 and Email:**
**bblaise@blaisenitschkelaw.com**
BLAISE & NITSCHKE, P.C.
Heather L. Blaise, Esq.
123 N. Wacker Drive, Suite 250
Chicago, IL 60606

RE: *Labrador Entertainment, Inc. et al. adv. Beatbox et al.*

Dear Ms. Blaise:

Pursuant to Local Rule 37-1, we are writing regarding several deficiencies identified below regarding Beatbox Music Pty., Ltd.'s Response to Labrador Entertainment, Inc.'S Request for Production of Documents. Labrador Entertainment reserves the right to address further deficiencies at a later date.

A party may request documents "in the responding party's possession, custody, or control," but requires that the party describe the items sought with "reasonable particularity." Fed. R. Civ. P. 34(a), 34(b). As described in AECOM Energy, No. CV 17-5398 RSWL (SSx), 2018 WL 4705914, at *7 (C.D. Cal. Apr. 26, 2018):

"Following a reasonable investigation, a responding party must serve a written response to each request (1) stating that the materials requested will be produced, either in whole or in part; (2) affirming that no responsive documents exist in the party's possession, custody or control; or (3) posing an objection and stating "with specificity the grounds for objecting to the request, including the reasons." Fed. R. Civ. P. 34(b)(2)(B); *see* also *Leibovitz v. City of New York*, 2017 WL 462515, at *2 (S.D.N.Y. Feb. 3, 2017) (collecting cases for the proposition that revisions to the Federal Rules effective December 1, 2015 prohibit "general" or "boilerplate" objections). Also pursuant to 2015 amendments, if objections are made, the "objection must state whether any responsive materials are being withheld on the basis of that objection." Rule 34(b)(2)©. If the search does not reveal responsive materials, the responding party should provide sufficient information for the requesting party, and the court, to be satisfied that the investigation was adequate. *Atcherley v. Clark*, 2014 WL 4660842, at *1 (E.D. Cal. Sept. 14, 2014) (internal citations omitted)."

Heather L. Blaise, Esq.
June 4, 2021
Page Two

## Boilerplate Objections

Beatbox Music Pty., Ltd.'s Responses includes without any basis boilerplate objections.  These objections are improper and contrary to the Federal Rules. Moreover, Beatbox has not stated whether it is withholding any documents or information on the basis of these objections.  In light of the foregoing, please explain in detail what responsive information and documents Beatbox is withholding on the basis of these objections and provide either appropriate justification for Beatbox's improper boilerplate objections or provide all responsive documents and information.

## Requests for Production ("RFPs")

Beatbox has not produced any documents in response to at least the following requests 14, 15, 16 and 17. Nor has Beatbox indicated whether it is withholding any documents on the basis of its objections.  Pursuant to Local Rule 37-1, we look forward to Beatbox's confirmation by June 14, 2021, that it will supplement its responses and produce responsive documents as discussed above. Labrador reserves all rights to seek all appropriate remedies if Beatbox does not supplement its responses including, but not limited to, monetary and evidentiary sanctions precluding Beatbox from relying on any information or documents not disclosed in response to Labrador's discovery requests.

General or boilerplate objections such as "overly burdensome and harassing" are improper—especially when a party fails to submit any evidentiary declarations supporting such objections. *Paulsen v. Case Corp.*, 168 F.R.D. 285, 289 (C.D.Cal.1996)

Similarly, boilerplate relevancy objections, without setting forth any explanation or argument why the requested documents are not relevant, are improper. "Relevant information for purposes of discovery is information 'reasonably calculated to lead to the discovery of admissible evidence.' " *Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 635 (9th Cir.2005)(citation omitted). Here, most of the document requests, 14, 16 and 17, seek information related to plaintiff's communications with Labrador and ANY PERSON related to the CUES and EMINEM-ESQUE and and also, request number 15, statements from AMCOS as defined within  means as the term is used in paragraph 5.2 of the AMCOS AGREEMENT. These requests are clearly relevant to defendant's defenses and claims.

Heather L. Blaise, Esq.
June 4, 2021
Page Three

     Further, not all communications between an attorney and his
client are privileged. Rather, only "[c]onfidential disclosures
by a client to an attorney made in order to obtain legal
assistance are privileged." *Fisher v. United States*, 425 U.S.
391, 403 (1976); *Clarke v. American Commerce Nat'l Bank*, 974 F.2d
127, 129 (9th Cir.1992). To show the applicability of the
attorney-client privilege, a claimant must show the following
eight essential elements: " '(1) Where legal advice of any kind
is sought (2) from a professional legal adviser in his capacity
as such, (3) the communications relating to that purpose, (4)
made in confidence (5) by the client, (6) are at his instance
permanently protected (7) from disclosure by himself or by the
legal adviser, (8) unless the protection be waived.' " *In re
Grand Jury Investigation*, 974 F.2d 1068, 1071 n. 2 (9th
Cir.1992); *United States v. Martin*, 278 F.3d 988, 999 (9th
Cir.2002). Because the attorney-client privilege is in derogation
of the search for truth, it is "narrowly and strictly construed."
*United States v. Gray*, 876 F.2d 1411, 1415 (9th Cir.1989), cert.
denied, 495 U.S. 930, 110 S.Ct. 2168(1990)

     Under Rule 34, a party must produce or permit inspection of
documents responsive to a request for production of documents
when such documents are in the party's "possession, custody or
control." "[F]ederal courts have consistently held that documents
are deemed to be within [a party's] 'possession, custody or
control' for purposes of Rule 34 if the party has actual
possession, custody, or control, or has the legal right to obtain
the documents on demand." *In re Bankers Trust Co.*, 61 F.3d 465,
469 (6th Cir.1995) (emphasis added), cert. dismissed, 517 U.S.
1205, 116 S.Ct. 1711, 134 L.Ed.2d 808 (1996); *see* also *United
States v. Int'l Union of Petroleum and Indus., Workers, AFL–CIO*,
870 F.2d 1450, 1452 (9th Cir.1989) ( "Control is defined as the
legal right to obtain documents upon demand."). Accordingly, a
party has an obligation to conduct a reasonable inquiry into the
factual basis of his responses to discovery, *National Ass'n of
Radiation Survivors v. Turnage*, 115 F.R.D. 543, 554–56
(N.D.Cal.1987), and, based on that inquiry, "[a] party responding
to a Rule 34 production request ... 'is under an affirmative duty
to seek that information reasonably available to [it] from [its]
employees, agents, or others subject to [its] control.' " *Gray v.
Faulkner*, 148 F.R.D. 220, 223 (N.D.Ind.1992) (citation omitted).

Heather L. Blaise, Esq.
June 4, 2021
Page Four


    A reasonable inquiry into the factual basis of Beatbox's
discovery responses require, at a minimum, a reasonable procedure
to distribute discovery requests to all employees and agents of
the Beatbox potentially possessing responsive information, and to
account for the collection and subsequent production of the
information to Labrador. Further, to assure that plaintiff
actually makes a "reasonable inquiry," the Court will order it
to provide Labrador with declarations or affidavits detailing the
nature of his "reasonable inquiry" to locate responsive
documents, and such declarations must address the inquiry he made
on a request-by-request basis.

    I would like to arrange a time no later than June 8, 2021 to
discuss this matter. Please let me know when you will be
available.   Please contact me so we can discuss these issues.

        Thank you,

    LAW OFFICES OF DOUGLAS JOSEPH ROSNER


    By:
        Douglas J. Rosner

EXHIBIT E

**From:** **Office EMail** hblaise@blaisenitschkelaw.com
**Subject:** Re: Beatbox v. Labrador et al. - Email addresses
**Date:** June 11, 2021 at 9:50 AM
**To:** Douglas Rosner  Doug@drosnerlaw.com
**Cc:** Jessica Lesko  jessical@blaisenitschkelaw.com,  Ronak Patel  rp@jacobsonlawyers.com,  Dan Jacobson  dlj@jacobsonlawyers.com
, Curtis Edmondson J.  jcedmondson@edmolaw.com,  Thomas Key  thomask@blaisenitschkelaw.com

Please use the email address provided on my appearance which is what you are required to use.

Further, I note that you blocked 2 hours of time. I do not have 2 hours today. I have no more than 30 minutes.
Please let me know if you would like to reschedule.

Sent from my iPhone

> On Jun 10, 2021, at 4:12 PM, Douglas Rosner <Doug@drosnerlaw.com> wrote:
>
> As her paralegal I would appreciate you insuring Heather receives ALL communications.
>
> Sent from my iPhone
>
> On Jun 10, 2021, at 1:58 PM, Jessica Lesko <jessical@blaisenitschkelaw.com> wrote:
>
>
> Good afternoon counsel,
>
> Please be aware that I have been getting some emails from you that are intended for attorney Heather Blaise, but they are sent to me.
>
> In the To section of the emails, it appears that my email address is attached to Heather's name. See screengrab below:
>
> <image.png>
>
> Please direct your messages for Heather to **hblaise@blaisenitschkelaw.com** to ensure receipt in case I am not available to forward them.
>
> Thank you,
> --
> Jessica Lesko
> Paralegal
> **Blaise & Nitschke, P.C.**
> 123 N. Wacker Dr.
> Suite 250
> Chicago, Illinois 60606
> (o) (312) 448-6602 (f) (312) 803-1940
> jessical@blaisenitschkelaw.com
>
> **** Not a Licensed Attorney**
>
> This email does not create an attorney-client relationship.

EXHIBIT F

**From:** **Heather Blaise** hblaise@blaisenitschkelaw.com
**Subject:** Re: Beatbox v. Labrador et al. - Email addresses
**Date:** June 11, 2021 at 10:19 AM
**To:** Douglas Rosner  Doug@drosnerlaw.com
**Cc:** Heather Blaise jessical@blaisenitschkelaw.com, Ronak Patel rp@jacobsonlawyers.com, Dan Jacobson dlj@jacobsonlawyers.com
, Curtis Edmondson J. jcedmondson@edmolaw.com, Thomas Key thomask@blaisenitschkelaw.com

Doug:

You know exactly what happened: you insisted on taking over me and not letting me speak and so I ended the call.

On Fri, Jun 11, 2021 at 12:17 PM Douglas Rosner <Doug@drosnerlaw.com> wrote:
Heather, what happened. We had a meet and confer. What happened? You entered the call at 10:04 a.m. pst. Then it appeared you hung up at 10:13 a.m. pst.

On Jun 11, 2021, at 9:50 AM, Office EMail <hblaise@blaisenitschkelaw.com> wrote:

Please use the email address provided on my appearance which is what you are required to use.

Further, I note that you blocked 2 hours of time. I do not have 2 hours today. I have no more than 30 minutes.
Please let me know if you would like to reschedule.

Sent from my iPhone

On Jun 10, 2021, at 4:12 PM, Douglas Rosner <Doug@drosnerlaw.com> wrote:

As her paralegal I would appreciate you insuring Heather receives ALL communications.

Sent from my iPhone

On Jun 10, 2021, at 1:58 PM, Jessica Lesko <jessical@blaisenitschkelaw.com> wrote:

Good afternoon counsel,

Please be aware that I have been getting some emails from you that are intended for attorney Heather Blaise, but they are sent to me.

In the To section of the emails, it appears that my email address is attached to Heather's name. See screengrab below:

<image.png>

Please direct your messages for Heather to **hblaise@blaisenitschkelaw.com** to ensure receipt in case I am not available to forward them.

Thank you,
--
Jessica Lesko
Paralegal

EXHIBIT G

**From:** **J. Curtis Edmondson** jcedmondson@edmolaw.com 📎
**Subject:** Re: Beatbox v. Labrador et al. - Email addresses
**Date:** June 11, 2021 at 7:09 PM
**To:** Heather Blaise hblaise@blaisenitschkelaw.com, Douglas Rosner Doug@drosnerlaw.com, Dan Jacobson dlj@jacobsonlawyers.com, Ronak Patel rp@jacobsonlawyers.com
**Cc:** Thomas Key thomask@blaisenitschkelaw.com, J. Curtis Edmondson jcedmondson@edmolaw.com

CJ

Heather,

Attached is my response to your letter. My letter addresses the first part of your letter re: the telephonic meet and confer.

As for the other topics, I will let Doug take the laboring oar.

B. Regards,

J. Curtis Edmondson, Patent Attorney, Edmondson IP Law
Office address is: Weil Bldg, 229 E. Main Street, #203, Hillsboro OR 97124
Mailing address is: 15490 NW Oak Hills Drive, Beaverton, OR 97006
ph: (503) 336-3749 | fax: (503) 482-7418 | jcedmondson@edmolaw.com | www.edmolaw.com
Law Licenses: CA SBN 236105 | WA SBN 43795 | DC BAR NO 998407 | OR SBN 190536 | USPTO 57027- Engineering Licenses: CA PE 13377 | WA PE 43728

## Edmondson IP Law

> On 06/11/2021 5:35 PM Heather Blaise <hblaise@blaisenitschkelaw.com> wrote:

> Please find attached.

On Fri, Jun 11, 2021 at 12:44 PM Douglas Rosner <Doug@drosnerlaw.com> wrote:

>> Those dates and times are unavailable. Either agree to move the dates or I need to file a protective order.
>> On Jun 11, 2021, at 10:42 AM, Heather Blaise <hblaise@blaisenitschkelaw.com> wrote:
>> I will address your letters in writing as they are written.
>> I have noticed the depositions as I intend to take them.
>> On Fri, Jun 11, 2021 at 12:36 PM Douglas Rosner <Doug@drosnerlaw.com> wrote:
>> Heather, thank you. So please explain for each objection to the RTP and
>> any proposed solution.
>>
>> Further, we need to establish deposition dates and times.
>>
>> Doug
>>
>> On Jun 11, 2021, at 10:29 AM, Heather Blaise <
>> hblaise@blaisenitschkelaw.com> wrote:
>>
>> I will address your concerns in writing because I do not find it
>> productive to not be permitted to speak and it is a waste of my client's
>> money to listen to you talk over me.
>>
>> On Fri, Jun 11, 2021 at 12:21 PM Douglas Rosner <Doug@drosnerlaw.com>

EXHIBIT H

**Intellectual Property Law**
**Patent, Trademark, Copyright**
**and Related Matters**
**Litigation, Licensing, and**
**Prosecution**

**J. Curtis Edmondson**
**Edmondson IP Law**

**229 E. Main Street, # 203**
**Hillsboro, OR 97124 (office)**
**15490 NW Oak Hills Dr**
**Beaverton OR 97006 (mailing)**
**T: 503.336.3749**
**F: 503.482.7418**
**E: jcedmondson@edmolaw.com**

**June 11, 2021**

Heather L. Blaise
Blaise & Nitschke, P.C.
123 N. Wacker, Suite 250
Chicago IL  60606
Via email:  hblaise@blaisenitschkelaw.com

**Case: 2:17-cv-06108-MWF-JPR Beatbox Music Pty, Ltd. v. Labrador Entertainment, Inc., et al**

Re: Letter of June 11, 2021

Heather:

Doug has forwarded me your letter of June 11 about the meet and confer of today.  I was on this call, which was very short, and you hung up on us.  Your letter is not accurate.

The local rules require that counsel not draft: '*…letters for the purpose of ascribing to opposing counsel a position he or she has not taken, or to create "a record" of events that have not occurred…*'.   That is what you have done here in your letter.

There is about five months to trial. Your client has refused to produce key documents and your objections are, in some instances, hard to understand.  It would be good if we can wrap up discovery with some efficiency.

Sincerely,

J. Curtis Edmondson

EXHIBIT I

**From:** **Heather Blaise** hblaise@blaisenitschkelaw.com
**Subject:** Re: Beatbox v. Labrador et al. - Email addresses
**Date:** June 11, 2021 at 10:29 AM
**To:** Douglas Rosner  Doug@drosnerlaw.com,  Curtis Edmondson J.  jcedmondson@edmolaw.com,  Thomas Key thomask@blaisenitschkelaw.com

H

I will address your concerns in writing because I do not find it productive to not be permitted to speak and it is a waste of my client's money to listen to you talk over me.

On Fri, Jun 11, 2021 at 12:21 PM Douglas Rosner <Doug@drosnerlaw.com> wrote:
Do you want to continue? I stated I would listen to you. Why are you taking this position?. How are going to meet and confer if you refuse to speak on the telephone?.

On Jun 11, 2021, at 10:18 AM, Heather Blaise <hblaise@blaisenitschkelaw.com> wrote:

Doug:

You know exactly what happened: you insisted on taking over me and not letting me speak and so I ended the call.

On Fri, Jun 11, 2021 at 12:17 PM Douglas Rosner <Doug@drosnerlaw.com> wrote:
Heather, what happened. We had a meet and confer. What happened? You entered the call at 10:04 a.m. pst. Then it appeared you hung up at 10:13 a.m. pst.

On Jun 11, 2021, at 9:50 AM, Office EMail <hblaise@blaisenitschkelaw.com> wrote:

Please use the email address provided on my appearance which is what you are required to use.

Further, I note that you blocked 2 hours of time. I do not have 2 hours today. I have no more than 30 minutes.
Please let me know if you would like to reschedule.

Sent from my iPhone

On Jun 10, 2021, at 4:12 PM, Douglas Rosner <Doug@drosnerlaw.com> wrote:

 As her paralegal I would appreciate you insuring Heather receives ALL communications.

Sent from my iPhone

On Jun 10, 2021, at 1:58 PM, Jessica Lesko <jessical@blaisenitschkelaw.com> wrote:

Good afternoon counsel,

Please be aware that I have been getting some emails from you that are intended for attorney Heather Blaise, but they are sent to me.

In the To section of the emails, it appears that my email address is attached to

EXHIBIT I

# BLAISE & NITSCHKE, P.C.

123 N. Wacker, Suite 250
Chicago, Illinois 60606
office: 312.448.6602
fax: 312.803.1940

HEATHER L. BLAISE
Licensed in Illinois and California

THOMAS J. NITSCHKE
Licensed in Wisconsin and Illinois

June 11, 2021

**VIA E-MAIL:** rosnerlaw@earthlink.net
Douglas Rosner

Re:   Beatbox Music Pty, Ltd. v.
Labrador Entertainment Inc.
et al.; Case No. 2:17-cv-6109

Dear Counsel,

In the spirit of L.R. 37-1 (the "Local Rules"), please accept this correspondence with regard to the above-captioned matter as a meet and confer.

## Telephonic Meet and Confer

On June 11 at 10 AM PST, counsel for the Parties attempted to hold a meet and confer telephonically. Unfortunately, instead of allowing for a productive conversation, you repeatedly interjected, not allowing me to complete any of my sentences. It is ironic that you quoted *Shuffle Master* in your June 10 letters, stating your "desire to conduct" with me "a 'personal consultation,' to personally engage in two-way communication with you to meaningfully discuss each discovery dispute in a genuine effort to avoid judicial intervention. You showed no such interest the very next day; your rude behavior rendered any such telephonic meet and confer completely unproductive – as a result, we respond to your letter in written form.

## Your Claim of Boilerplate Objections

Beatbox does not agree that its genuine objections are properly classified as "boilerplate", as the objections are particular to the propounded request. Furthermore, Labrador Defendants' objections to the discovery requests propounded by Beatbox were not dissimilar and so it is difficult to understand why you find them inappropriate here.

## Complained-of Requests

While your letter did not address Request for Production 11, you elected to confer on my objections to the same.  Specifically, you stated that the request sought to understand the process of registering a cue with AMCOS.  I explained that the information you seek is likely the subject of a deposition question and that my client has already been deposed on this topic.  Further, in response to your request for an explanation as the objection on unduly burdensome, I explained that this case is about a single cue and not the entire SPIDER CUES MUSIC LIBRARY- thus, your request seeks irrelevant information and would be unduly burdensome and unnecessary to produce. Per a brief discussion during our June 11 teleconference, on the understanding that the request is narrowed from "ANY CUE from SPIDER CUES MUSIC LIBRARY" to "EMINEM-ESQUE", I will determine what, if any, documentation exists that is responsive to RFP 11 with the aforementioned limitation and which has not already been produced.   Importantly, you advanced a theory of the

BLAISE & NITSCHKE, P.C.

Beatbox v. Labrador, et al.
June 11, 2021
Page 2

case stating that you get to prove that "Beatbox failed to do something" in regards to the AMCOS registration amounting an alleged breach of contract.  First, and as I was trying to state as you yelled over me and refused to let me speak, your client breached the contract at the moment it sent the infringing cue and thus, nothing (even assuming that my client failed to properly register the cue with AMCOS, which it did not) my client could not have breach the agreement by failing to register with AMCOS, (leaving aside materiality which would also be lacking).  *Plotnik v. Meihaus*, 208 Cal. App. 4th 1590, 1602 (2012 ) (holding that one who breaches a contract "cannot recover for a subsequent breach by the other party").Finally, it is apparent that the registration was indeed completed because if it were not, it would not have been licensed by AMCOS and the resulting litigations would not have occurred.

Request for Production 14: Beatbox cannot determine whether or not it is withholding documents in response to this request because it is unintelligible as stated. Investigation continues.

Request for Production 15: As per Beatbox's reasonable inquiry, no relevant responsive documents have been identified. Investigation continues.

Requests for Production 16 and 17: These requests, one the inverse of the other, are both far too burdensome for Beatbox to determine what responsive documents exist, if any. Investigation continues.

**Relevance**
Request for Production 15: No valid defense nor claim bear any relevance to the propounded request.

Requests for Production 14; 16-17: Beatbox did not raise an objection on the grounds of relevance in response to these requests; your statement that "[h]ere, most of the document requests, 14, 16 and 17, seek information related to plaintiff's communications with Labrador and ANY PERSON related to the CUES and EMINEM-ESQUE" is pointless and improper and seeks privileged information.

**Depositions**

I have noticed the depositions as I intend to take them. The dates you have proposed are too far away as I indicated in my response.  Your clients have two attorneys with appearances on this case and certainly one of you must be available, especially given that they will be conducted electronically and without in-person appearance being required.  Seek a protective order if you wish but please do provide the reason(s) for both you and your co-counsel's unavailability.

Finally, I have emailed you about informally asking the magistrate to weigh in on our ongoing discovery disputes, which I have not received a response.  I also spent considerable time conferring with you and preparing for the Joint Stipulation which you have had in your possession for weeks,



Beatbox v. Labrador, et al.
June 11, 2021
Page 3

yet have not filed.  Please file it and set the matter for an informal discussion with the magistrate if you still deem it to be a possibility moving towards resolution and a full and complete response to my client's discovery requests.

If you wish me to re-consider the objections we have made or would like to limit your requests in a manner that makes sense to lead to relevant and admissible evidence which has not already been produced, then please tell me precisely what documents for which you are looking.

Nothing herein is intended to be or should be construed as a complete statement or admission of the facts, or a waiver of any of my Clients' claims, rights, or remedies (whether legal or equitable), all of which are expressly reserved.

Very truly yours,

Heather L. Blaise

HLB:tsk