1  BLAISE & NITSCHKE, P.C.
2  HEATHER L. BLAISE, ESQ. (SBN 261619)
   123 N. Wacker Drive, Suite 250
3  Chicago, IL 60606
   Telephone: 312-448-6602
4  Email: hblaise@blaisenitschkelaw.com
5
6  Attorneys for Plaintiff,
   BEATBOX MUSIC PTY, LTD.
7
8              **UNITED STATES DISTRICT COURT**

9              **CENTRAL DISTRICT OF CALIFORNIA**

10

11 BEATBOX MUSIC PTY, LTD.,              CASE NO: 2:17-cv-6108 MWF (JPRx)
                                         *Assigned to the Hon. Michael W.*
12              Plaintiff,               *Fitzgerald*

13              v.                       **PLAINTIFF BEATBOX MUSIC
                                         PTY, LTD.'S MOTION FOR
14 LABRADOR ENTERTAINMENT, INC.          PARTIAL SUMMARY JUDGMENT
   D/B/A SPIDER CUES MUSIC               AS IT RELATES TO PLAINTIFF'S
15 LIBRARY, a California corporation;    FIRST AMENDED COMPLAINT;
   NOEL PALMER WEBB, an individual;      AND SUMMARY JUDGMENT AS
16 MICHAEL COHEN, an individual;         IT RELATES TO LABRADOR
   LABRADOR ENTERTAINMENT, LLC;          DEFENDANTS' MARCH 2020
17 MCPC HOLDINGS, LLC; WEBB              FILING ENTITLED LABRADOR'S
18 FAMILY TRUST and DOES 1-20,           "FIRST AMENDED ANSWER TO
   inclusive,                            AMENDED COMPLAINT AND
19                                       COUNTERCLAIM AGAINST
                Defendants.              BEATBOX MUSIC PTY, LTD. AND
20                                       MICHAEL COHEN"**
21
22
23                                       Trial Date:      November 30, 2021
                                         FAC:             January 24, 2020
24                                       Cross-Claim Filed: November 21, 2017
   AND ALL RELATED ACTIONS               Action Filed:    August 17, 2017
25
26
27
28
                                        -i-

## NOTICE OF MOTION

TO THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA, AND TO DEFENDANTS AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on August 23, 2021 at 10:00 a.m., or as soon thereafter as the matter may be heard before the Honorable Michael W. Fitzgerald, in Courtroom 5A of the United States District Court, Central District of California, located at 350 W. First Street, Los Angeles, California 90012, or as ordered by the Court, Plaintiff BEATBOX MUSIC PTY, LTD., by and through their attorneys, will move for Partial Summary Judgment as it relates to Plaintiff's First Amended Complaint; and Summary Judgment as it relates to Labrador Defendant's March 2020 Filing entitled Labrador's "First Amended Answer to Amended Complaint and Counterclaim Against Beatbox Music Pty, Ltd. and Michael Cohen."

This motion is based upon this Notice of Motion; Memorandum of Points and Authorities in support thereof; the Statement of Uncontroverted Facts and Conclusions Law (hereinafter "SOF"); the Affidavit of Heather L. Blaise and exhibits thereto; the Proposed Order granting this Motion; the pleadings on file in this action; and such other further pleadings, papers, transcripts, and matters that may be properly presented to the Court.

This motion is made following the conference of counsel pursuant to Local Rule 7-3 which took place on July 8, 2021.

Dated: July 26, 2021    Respectfully submitted,

          **BEATBOX MUSIC PTY, LTD.**
          /s/ Heather L. Blaise
          HEATHER L. BLAISE, ESQ. (SBN 261619)
          123 N. Wacker Drive, Suite 250
          Chicago, IL 60606
          Telephone: 312-448-6602
          Email: hblaise@blaisenitschkelaw.com

1

# **TABLE OF CONTENTS**

2 NOTICE OF MOTION.............................................................................ii

3 TABLE OF CONTENTS..........................................................................iii

TABLE OF AUTHORITIES .....................................................................iv

4 MEMORANDUM OF POINTS AND AUTHORITIES ............................1

5    I.   Controlling Law of Contractual Interpretation ....................................2

6    II.   The Doctrine of Issue Preclusion Bars Composer and Labrador from Asserting that the "SQ mc eminem esque" Cue was Original or Non-Infringing...........................................................................................4

7

8    III.   Both Labrador and Composer are Unequivocally Liable to Plaintiff for Indemnification from the New Zealand Judgment, as well as Costs and Fees arising Therefrom. .........................................................5

9      A.   The Labrador Agreement Expressly Requires Labrador to Indemnify Plaintiff from Liability or Loss Incurred by Reason of Any Infringement. ..5

10

11      B.   Labrador Breached Its Representations and Warranties in the Labrador Agreement. ..........................................................................7

12      C.   The Composer Agreement Expressly Requires Composer to Indemnify Plaintiff as Labrador's Assign, Licensee, Or Successor..............................8

13

14    IV.   Labrador's Purported Counterclaims and Labrador and Cohen's Defenses Fail as a Matter of Law Because Their Preceding Material Breaches Excused Any Purported Performance Required of Plaintiff. ................................................10

15

16      A.   Labrador's Counter-Claims Were Untimely and Filed Without Leave of Court and Thus are Void and Fail as a Matter of Law. ..............................12

17      B.   Labrador's Allegations Against Plaintiff All Amount to Subsequent Alleged Breach So Fail as Explained Above..........................................................13

18      C.   Labrador's Failure to Comply With Notice-and-Cure Clause is a Bar to its Counter-Claim.......................................................................................14

19

20      D.   Even if Labrador Had Provided Notice of the Cue's Infringing Nature (Which It Undisputedly Did Not), Plaintiff Is Still Entitled to Indemnity as a Matter of Law...........................................................................15

21

22      E.   Labrador Has Woefully Failed to Tender Any Admissible Evidence Relating to Its Alleged Damages for its Claims Sounding in Breach of Express Contract, Indemnification, Negligence, and Breach of Fiduciary [*sic*]..................................................................................16

23

24    V.   Defendants are Liable for Violations of the Uniform Voidable Transfer Act as a Matter of Law. .........................................................18

25    VI.   Defendants are Liable for Common Law Fraudulent Conveyances...............21

26

27

28

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*ABF Capital Corp. v. Osley*,
    414 F.3d 1061 (9th Cir. 2005)..................................................................2

*Acoustics, Inc. v. Trepte Constr. Co.*,
    14 Cal. App. 3d 887 (1971)......................................................................7

*Aeros Aeronautical Sys. Corp. v. United States*,
    (C.D.Cal. Nov. 20, 2017, No. CV 15-1712-PJW)
    2017 U.S.Dist.LEXIS 191830.................................................................17

*Alvarez v. Chevron Corp.*,
    656 F.3d 925 (9th Cir. 2011)..................................................................14

*Am. Alt. Ins. Corp. v. Superior Court*,
    135 Cal. App. 4th 1239 (2006)..................................................................8

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) ............................................................................1, 2

*Attebury Grain LLC v. Grayn Co*,
    721 Fed. Appx. 669(9th Cir. Cal. Jan. 16, 2018) ........................18, 19, 21

*Bennett v. Paulson*,
    7 Cal.App.2d 120 (1935).......................................................................21

*Berger v. Varum*,
    35 Cal.App.5th 1013 (2019)...................................................................21

*British Midland Airways Ltd. v. Int'l Travel, Inc.*,
    497 F.2d 869 (9th Cir. 1974)....................................................................5

*Brown v. Grimes*,
    192 Cal.App.4th 265 (2011)...................................................................11

*C.A.R. Transp. Brokerage Co. v. Darden Restaurants, Inc.*,
    213 F.3d 474 (9th Cir. 2000)....................................................................2

*California Emergency Physicians Medical Group v. PacifiCare of California*,
    111 Cal. App. 4th 1127 (2003)..................................................................9

*Cardinal Health 301, Inc. v. Tyco Elecs. Corp.*,
    169 Cal. App. 4th 116 (2008)..................................................................14

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986) ................................................................................1

*Chaparkas v. Webb*,
    178 Cal.App.2d 257 (1960)....................................................................17

*Clark v. Bear Stearns & Co.*,
    966 F.2d 1318 (9th Cir. 1992)...................................................................4

*Consolidated World Investments, Inc. v. Lido Preferred Ltd.*,
    9 Cal.App.4th 373 (1992)..................................................................11, 14

*Coomes v. Edmonds Sch. Dist. No. 15,*
  816 F.3d 1255 (9th Cir. 2016) ..................................................................... 2

*Crawford v. Weather Shield Mfg., Inc.,*
  44 Cal.4th 541 (2008) ......................................................................... 10, 12

*De Burgh v. De Burgh,*
  39 Cal.2d 858 (1952) .............................................................................. 11

*Durell v. Sharp Healthcare,*
  183 Cal. App. 4th 1350 (2010) .............................................................. 7, 17

*Durkee v. Bank of Am., N.A.,*
  No. 20-cv-00347-DMS-LL, 2020 U.S. Dist. LEXIS 139929
  (S.D. Cal. Aug. 5, 2020) ............................................................................ 8

*Fidelity National Title Ins. Co. v. Schroeder,*
  179 Cal.App.4th 834 (2009) ..................................................................... 18

*Gorman v. Tassajara Development Corp.,*
  178 Cal.App.4th 44 (2009) ....................................................................... 17

*Gustafson v. Dunman, Inc.,*
  204 Cal. App. 2d 10 (1962) ........................................................................ 7

*Harmsen v. Smith,*
  693 F.2d 932 (9th Cir. 1982) .................................................................... 17

*Hilton v. Guyot,*
  159 U.S. 113 (1895) .................................................................................. 4

*Houghton v. South,*
  965 F.2d 1532 (9th Cir. 1992) .................................................................... 2

*In re Oracle Corp. Sec. Litig.,*
  627 F.3d 376 (9th Cir. 2010) ...................................................................... 2

*IP Global Invs. Am., Inc. v. Body Glove IP Holdings, LP*
  (C.D.Cal. Nov. 14, 2018, No. 2:17-cv-06189-ODW (AGR))
  2018 U.S.Dist.LEXIS 194461 ................................................................... 14

*Jacobs v. CBS Broadcasting, Inc.,*
  291 F.3d 1173 (9th Cir. 2002) .................................................................... 4

*Keysight Techs., Inc. v. Mentor Graphics Corp.,*
  2017 U.S.Dist.LEXIS 218290 (N.D.Cal. Sep. 27, 2017,
  No. C 17-1456 SBA) ............................................................................... 14

*La Jolla Beach & Tennis Club, Inc. v. Indus. Indem. Co.,*
  9 Cal. 4th 27 (Cal. 1994) ........................................................................... 8

*Legacy Vulcan Corp. v. Superior Court,*
  185 Cal.App.4th 677 (2010) ....................................................................... 4

*Lucido v. Superior Court,*
  51 Cal. 3d 335 (1990) ................................................................................ 4

*Macedo v. Bosio,*
  86 Cal.App.4th 1044 (2001) ..................................................................... 21

*Manco Contracting Co. (W.L.L.) v. Bezdikian*,
   45 Cal. 4th 192 (2008)..................................................................................5

*Mehrtash v. Mehrtash*,
   93 Cal.App.4th 75 (2001).........................................................................21

*Metz v. Soares*,
   142 Cal. App. 4th 1250 (2006).................................................................17

*Nagel v. Westen*,
   59 Cal.App.5th 740 (2021).......................................................................18

*Neman Bros. & Assoc. v. One Step Up, Ltd.*,
   764 F.App'x 625 (9th Cir. 2019)..............................................................17

*Pardo v. Olson & Sons*,
   40 F.3d 1063 (9th Cir. 1994)......................................................................4

*Parklane Hosiery Co., Inc. v. Shore*,
   439 U.S. 322 (1979)....................................................................................4

*PGA W. Residential Ass'n, Inc. v. Hulven Internat., Inc.*,
   14 Cal. App. 5th 156 (2017).....................................................................18

*Riverside Sheriffs' Assn. v. County of Riverside*,
   173 Cal.App.4th 1410 (2008).....................................................................3

*Schauer v. Mandarin Gems of Cal., Inc.*,
   125 Cal. App. 4th 949 (2005)....................................................................9

*Searles Valley Minerals Operations Inc. v. Ralph M. Parsons Service Co.*,
   191 Cal.App.4th 1394 (2011)............................................................10, 12

*Silver v. Bank of America*,
   47 Cal.App.2d 639 (1941)..................................................................11, 14

*Sleash, LLC v. One Pet Planet, LLC*,
   No. 3:14-CV-00863-ST, 2014 U.S. Dist. LEXIS 109253
   (D. Or. Aug. 6, 2014) ..............................................................................14

*Somers v. United States F. & G. Co.*,
   191 Cal. 542 (1923)....................................................................................6

*Sturm v. Moyer*,
   32 Cal.App.5th 299 (2019).......................................................................18

*Varco-Pruden, Inc. v. Hampshire Constr. Co.*,
   50 Cal.App.3d 654 (1975)..........................................................................7

*Veasley v. United States*,
   201 F. Supp.3d 1190 (S.D. Cal. 2016) ....................................................17

*Walia v. Aegis Ctr. Point Developers Private Ltd.*,
   N.D.Cal. Jan. 27, 2014, No. CV-12-4660-CRB,
   2014 U.S.Dist.LEXIS 10433 ................................................................4, 5

*Wind Dancer Production Group v. Walt Disney Pictures*,
   10 Cal.App.5th 56 (2017)........................................................................3, 4

-vi-

*Wisden v. Superior Court,*
  124 Cal. App. 4th 750 (2004).................................................................21

*Wolf v. Superior Court,*
  114 Cal.App.4th 1343 (2004)................................................................3

*Wolf v. Walt Disney Pictures & Television,*
  162 Cal.App.4th 1107 (2008)................................................................3

**Statutes**

Cal. Civ. Code § 2772..............................................................................6

Cal. Civ. Code § 3281............................................................................17

Cal. Civ. Code § 3333............................................................................17

Cal. Civ. Code § 3439..............................................................18, 19, 20, 21

Cal. Civ. Code § 2778..............................................................................6

**Rules**

Fed. R. Civ. P. 13............................................................................12, 13

Fed. R. Civ. P. 15................................................................................13

Fed. R. Civ. P. 56(a) ............................................................................1

**Treatises**

Restatement (Second) of Contracts § 241(d) (1981) ................................15

## MEMORANDUM OF POINTS AND AUTHORITIES

NOW COMES Plaintiff, BEATBOX MUSIC PTY, LTD. (hereinafter "Beatbox," "Plaintiff"), by and through its attorneys, Blaise & Nitschke, P.C., and for its Motion for Partial Summary Judgment for its claims of Breach of Contract and Fraudulent Conveyance against Defendants LABRADOR ENTERTAINMENT, INC. ("Labrador"), LABRADOR ENTERTAINMENT, LLC, NOEL PALMER WEBB, THE WEBB FAMILY TRUST (hereinafter, collectively, "Labrador Defendants") and Defendants MICHAEL COHEN ("Cohen," "Composer") and MCPC HOLDINGS, LLC ("MCPC") (hereinafter, collectively, "Cohen Defendants"); and Motion for Summary Judgment in its favor against Labrador Defendants for their March 7, 2020 filing entitled "First Amended Answer to Amended Complaint and Counterclaim Against Beatbox Music Pty, Ltd. and Michael Cohen." In support whereof, Plaintiff states as follows:

As this Court has previously instructed, when deciding a motion for summary judgment under Federal Rule of Civil Procedure 56, the Court applies Anderson, Celotex, and their Ninth Circuit progeny. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

The Ninth Circuit has defined the shifting burden of proof governing motions for summary judgment where the non-moving party bears the burden of proof at trial: the moving party initially bears the burden of proving the absence of a genuine issue of material fact. Where the non-moving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case. Where the moving party meets that burden, the burden then shifts to the nonmoving party to designate specific facts demonstrating the existence

of genuine issues for trial. This burden is not a light one. The nonmoving party must show more than the mere existence of a scintilla of evidence. The non-moving party must do more than show there is some "metaphysical doubt" as to the material facts at issue. In fact, the non-moving party must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor. *Coomes v. Edmonds Sch. Dist. No. 15*, 816 F.3d 1255, 1259 n.2 (9th Cir. 2016) (quoting *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010)). "A motion for summary judgment may not be defeated, however, by evidence that is 'merely colorable' or 'is not significantly probative.'" *Anderson*, 477 U.S. at 249-50. "When the party moving for summary judgment would bear the burden of proof at trial, 'it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.'" *C.A.R. Transp. Brokerage Co. v. Darden Restaurants, Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (quoting *Houghton v. South*, 965 F.2d 1532, 1536 (9th Cir. 1992)).

In the case at bar, Plaintiff is entitled to partial summary judgment in its favor as it relates to liability on Counts I, VII, and VIII of its First Amended Complaint. Moreover, Plaintiff is entitled to judgment as a matter of law in its favor as it relates to Labrador's alleged counterclaims, as further discussed below.

## I.  Controlling Law of Contractual Interpretation.

Both the Labrador Agreement and the Composer Agreement plainly state that they are to be construed in accordance with California law. SOF ¶¶ 37, 38. Under California law, a valid choice of law provision will be enforced where the chosen state "has a substantial relationship to the parties or the transaction." *ABF Capital Corp. v. Osley*, 414 F.3d 1061, 1065 (9th Cir. 2005). "A substantial relationship exists where one of the parties is domiciled or incorporated in the chosen state." *Id.* Pursuant to California law, "interpretation of a contract is a judicial function," and "[t]he rules governing the role of the court in interpreting a written instrument are

well established." *Wind Dancer Production Group v. Walt Disney Pictures*, 10 Cal.App.5th 56, 68 (2017). When interpreting a written contract, a court must give "effect to the mutual intention of the parties as it existed at the time the contract was executed." *Id.* at 68-69 (internal quotes omitted). "Ordinarily, the objective intent of the contracting parties is a legal question determined solely by reference to the contract's terms." *Id.* at 69.

Subject to exceptions, the general rule is that a court may not consider extrinsic evidence of any prior agreement or contemporaneous oral agreement to vary or contradict the clear and unambiguous terms of a written, integrated contract. *Id.* Extrinsic evidence is admissible, however, "to interpret an agreement when a material term is ambiguous." *Id.*, citing *Wolf v. Walt Disney Pictures & Television*, 162 Cal.App.4th 1107, 1125–1126 (2008).

Whenever possible, a court must ascertain "'the intent and scope of [an] agreement by focusing on the usual and ordinary meaning of the language used and the circumstances under which the agreement was made.'" *Wind Dancer Production Group* at 69, citing *Riverside Sheriffs' Assn. v. County of Riverside*, 173 Cal.App.4th 1410, 1424 (2008). However, when appropriate, courts will consider extrinsic evidence "to establish trade usage, and that is true even though the words are in their ordinary or legal meaning entirely unambiguous." *Wolf v. Superior Court*, 114 Cal.App.4th 1343, 1344 (2004). "The basis of this rule is that to accomplish a purpose of paramount importance in interpretation of documents, namely, to ascertain the true intent of the parties, it may well be said that the usage evidence does not alter the contract of the parties, but on the contrary gives the effect to the words there used as intended by the parties." *Id.* "The usage becomes part of the contract in aid of its correct interpretation." *Id.*

A court must "consider the contract as a whole and interpret its language in context so as to give effect to each provision, rather than interpret contractual

language in isolation." *Wind Dancer Production Group* at 69, citing *Legacy Vulcan Corp. v. Superior Court*,185 Cal.App.4th 677, 688 (2010). "If contractual language is clear and explicit and does not involve an absurdity, the plain meaning governs." *Wind Dancer Production Group* at 69.

## II. The Doctrine of Issue Preclusion Bars Composer and Labrador from Asserting that the "SQ mc eminem esque" Cue was Original or Non-Infringing.

The doctrine of collateral estoppel, or issue preclusion, bars re-litigation of issues actually litigated and necessary to the outcome of the first action in subsequent suits based on a different cause of action. *Walia v. Aegis Ctr. Point Developers Private Ltd.*, N.D.Cal. Jan. 27, 2014, No. CV-12-4660-CRB, 2014 U.S.Dist.LEXIS 10433, at *5, citing *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 327 n.5 (1979). "In diversity cases, the Ninth Circuit Court of Appeals applies the collateral estoppel rules of the forum state." *Walia* at *5, citing *Jacobs v. CBS Broadcasting, Inc.*, 291 F.3d 1173, 1177 (9th Cir. 2002); *Pardo v. Olson & Sons*, 40 F.3d 1063, 1066 (9th Cir. 1994).

"Under California law, issue preclusion prohibits re-litigation of issues decided in a prior proceeding if (1) the issue is identical to the issue decided in the prior proceeding, (2) the issue was actually litigated in the prior proceeding, (3) the issue was necessarily decided in the prior judgment, (4) the prior judgment was final and on the merits, and (5) the party against whom preclusion is brought must be identical to or in privity with the party in the prior proceeding." *Walia*, citing *Lucido v. Superior Court*, 51 Cal. 3d 335, 341 (1990); *see also Clark v. Bear Stearns & Co.*, 966 F.2d 1318, 1320-21 (9th Cir. 1992).

Collateral estoppel applies to foreign judgments so long as the parties in the prior action were afforded due process rights. *See Walia at *5*, citing *Hilton v. Guyot*, 159 U.S. 113, 204-05 (1895) (approving of a foreign judgment where the parties received due process under the laws of France); *British Midland Airways Ltd. v. Int'l*

-4-

*Travel, Inc.*, 497 F.2d 869, 871 (9th Cir. 1974) (approving of a British judgment and finding that "unless a foreign country's judgments are the result of outrageous departures from our own motions of 'civilized jurisprudence,' comity should not be refused"). "The California Supreme Court has held that 'California courts must recognize a foreign judgment [. . .] so long as the judgment is final, conclusive, and enforceable in the country where it was rendered.'" *Walia* at *6, quoting *Manco Contracting Co. (W.L.L.) v. Bezdikian*, 45 Cal. 4th 192, 201 (2008).

Here, all five prongs of the collateral estoppel test are plainly satisfied, prohibiting Labrador Entertainment, Inc. and Composer from disputing that the "SQ mc eminem esque" cue (hereinafter "Cue") infringes upon "Lose Yourself." The issue was actually litigated and contested by Plaintiff, Labrador Entertainment, Inc. and Composer in the New Zealand Case with a judgment rendered on the merits, embodied in the New Zealand Judgment. SOF ¶ 19. The question of infringement was necessary to the New Zealand Judgment, as it was the entire source of controversy in the New Zealand Case. Labrador Entertainment, Inc. and Composer were afforded the opportunity to participate in the New Zealand Case, and thus were afforded due process. SOF ¶ 21. The New Zealand Judgment is undeniably final and on the merits. SOF ¶ 20.

**III.  Both Labrador and Composer are Unequivocally Liable to Plaintiff for Indemnification from the New Zealand Judgment, as well as Costs and Fees arising Therefrom.**

**A. The Labrador Agreement Expressly Requires Labrador to Indemnify Plaintiff from Liability or Loss Incurred by Reason of Any Infringement.**

As Labrador is barred by the doctrine of issue preclusion from asserting that the Cue was not infringing, Labrador indisputably breached the representations and warranties contained in the Labrador Agreement upon execution thereof. It must also honor its obligations to indemnify Plaintiff for loss, liability, and expense resulting from such infringement.

1   It is undisputed that under the Labrador Agreement, the Cue was one of a

2   library of "Compositions," as that term is defined within the Agreement. The

3   Labrador Agreement expressly and unequivocally states that "the Compositions are

4   original and that none of the Compositions infringes on any other copyright works or

5   the rights of any third party[.]" SOF ¶ 2. As argued above, Labrador is barred from

6   arguing that the works are not infringing, meaning Labrador breached the warranty of

7   the Cue's originality upon execution. Labrador's obligations arising from this breach

8   are clear upon the face of the Labrador Agreement:

> The Publisher agrees to indemnify and hold harmless the Sub Publisher, its successors and assigns of and from **any and all loss, liability and expense incurred by reason of any infringement of rights or other claim inconsistent with the Publishers** [*sic*] **guarantees**, warranties, representations and undertakings contained in this Agreement. This indemnity shall not be adversely affected should exploitation of the recordings continue after notice of infringement of rights or other claim has been received by the Sub Publisher.

15   SOF ¶ 5 (emphasis added).

16   "Indemnity is a contract by which one engages to save another from a legal

17   consequence of the conduct of one of the parties, or of some other person." Cal. Civ.

18   Code § 2772. Under California law, such contracts for indemnification are

19   enforceable. "An indemnity against claims, or demands, or liability, expressly, or in

20   other equivalent terms, embraces the costs of defense against such claims, demands,

21   or liability incurred in good faith, and in the exercise of a reasonable discretion[.]"

22   Cal. Civ. Code § 2778, subd. 3. It is well-established that an indemnitor in an

23   indemnity contract generally undertakes to protect the indemnitee against loss or

24   damage through liability to a third person. *Somers v. United States F. & G. Co.*, 191

25   Cal. 542, 547 (1923). A clause which contains the words "indemnify" and "hold

26   harmless" is an indemnity clause which generally obligates the indemnitor to

27   reimburse the indemnitee for any damages the indemnitee becomes obligated to pay

28

third persons. *Varco-Pruden, Inc. v. Hampshire Constr. Co.*, 50 Cal.App.3d 654, 660 (1975). Indemnification agreements ordinarily relate to third party claims. *Ibid.*

### B. Labrador Breached Its Representations and Warranties in the Labrador Agreement.

A breach of representations and warranties claim is based upon breach of contract. *Gustafson v. Dunman, Inc.*, 204 Cal. App. 2d 10, 14 (1962). The elements of breach of contract are: (1) existence of a contract; (2) plaintiff's performance or excuse for nonperformance; (3) defendant's breach; (4) and resulting damages. *Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1367 (2010); *Acoustics, Inc. v. Trepte Constr. Co.*, 14 Cal. App. 3d 887, 913 (1971).

As argued above, both Labrador and Composer breached the representations and warranties of the Labrador Agreement and the Composer Agreement, respectively, because they both falsely warranted that the Cue was an original work free and clear from adverse claims of infringement. SOF ¶¶ 2, 13, 14. Labrador further breached the representations and warranties embodied in the Labrador Agreement in Paragraph 16 (iii) in at least two (2) ways in addition to its breaches under Paragraph 16 (iv), as further discussed below. SOF ¶ 2, 4.

Composer has made an issue—one that is immaterial to the right of indemnification and is wholly irrelevant due to the Composer's preceding material breaches which disable Composer's ability to enforce any provision of the Composer Agreement, as argued above—that the infringing use of the Cue at issue in the New Zealand Case somehow required consultation with the Composer, since Composer asserts that the use altered, expanded, adapted, or translated the Cue. *See* SOF ¶ 15. Setting aside the fatal factual deficiencies in Composer's assertions, this alleged limitation was never disclosed to Plaintiff in the Labrador Agreement, and to the contrary Labrador represented and warranted that "the Publisher is party or has entered into good and valid contracts with the writers and composers of the Compositions and such contracts enable it to comply with all terms and conditions

-7-

hereof and the Publisher will do all things necessary not to be in breach of the same during the term hereof." SOF ¶ 4. The failure to disclose the alleged "consultation" requirement as a holdback of rights purportedly held by Composer represented a breach of Labrador's warranty of "good and valid contracts" and ability to "do all things necessary not to be in breach of the same," particularly because such a holdback of rights would directly impact Plaintiff's ability to license the work as provided for in ¶¶ 1-5, *et seq.*, of the Labrador Agreement, undermining the entire purpose of the Labrador Agreement: to permit audiovisual synchronization licensing for production music. SOF ¶ 18. *Durkee v. Bank of Am., N.A.*, No. 20-cv-00347-DMS-LL, 2020 U.S. Dist. LEXIS 139929, at *10 (S.D. Cal. Aug. 5, 2020), *citing La Jolla Beach & Tennis Club, Inc. v. Indus. Indem. Co.*, 9 Cal. 4th 27, 36 (Cal. 1994) ("Courts will not adopt a strained or absurd interpretation in order to create an ambiguity where no exists."); *Am. Alt. Ins. Corp. v. Superior Court*, 135 Cal. App. 4th 1239 (2006) ("If contractual language is clear and explicit and does not involve an absurdity, the plain meaning governs."). Moreover, the Composer Agreement does not expressly grant rights to the sound recordings and only to the musical compositions embodied therein, which amounts to yet another breach of the Paragraph 16(iii) of the Labrador Agreement. SOF ¶¶ 18, 22.

Thus, in addition to the infringement and adverse claims, Labrador failed to disclose to Plaintiff pertinent alleged contractual limitations placed upon it by Composer and that it did not have the right to grant license of sound recordings, Labrador indisputably breached its representations and warranties to Plaintiff at the time it executed the Labrador Agreement and Plaintiff is entitled to judgment as to liability as a matter of law against Labrador for violating the representations and warranties and a finding that Labrador must indemnify Plaintiff for all of its damages resulting from the same. *See* SOF ¶ 24.

## C. The Composer Agreement Expressly Requires Composer to Indemnify Plaintiff as Labrador's Assign, Licensee, Or Successor.

Just as Labrador warranted that the Cue was an original work, so did Composer warrant the Cue's originality in the Composer Agreement, *to wit*:

> Composer represents and warrants that the Composition(s) is his sole, exclusive and original work, and is capable of copyright protection by Owner throughout the Territory. Composer represents and warrants that no adverse claims exist or will exist with respect to the Composition(s), and the Composition(s) does not infringe upon or violate the copyrights or any other rights whatsoever of any person, firm, or entity.

SOF ¶¶ 13, 14.

As with Labrador, Composer is barred by the doctrine of collateral estoppel from asserting that the Cue was non-infringing, meaning Composer indisputably breached the representations and warranties contained within ¶¶ 4.1 and 4.2 of the Composer Agreement at the time of execution. *Id.*

The Composer Agreement granted Labrador the right to assign or license the Compositions, in whole or in part, to any third party, and expressly stated that the provisions of the Agreement "will inure to the benefit of, and be binding upon, each party's heirs, subsidiaries, affiliates, corporations, licensees, successors and assigns," which necessarily includes Plaintiff, as an intended beneficiary. SOF ¶ 11. *Schauer v. Mandarin Gems of Cal., Inc.*, 125 Cal. App. 4th 949, 957 (2005), *quoting California Emergency Physicians Medical Group v. PacifiCare of California*, 111 Cal. App. 4th 1127, 1138 (2003). These representations and warranties were indisputably breached at the time the Composer Agreement was executed, particularly because the Cue is expressly referenced as one of the Compositions transferred. SOF ¶ 10.

A further clause in the Composer Agreement sets forth Composer's obligations in the event the Cue infringes upon another work:

> Composer will indemnify and hold Owner and all entities associated with Owner, free, safe, and harmless from and against any and all losses, damages, actions, cause of action, expenses or liabilities, including, without limitation, reasonable attorney's fees and costs, whether incurred before or after the entry of judgment, resulting from

-9-

or by reasons of any material breach of any representation or warranty made herein by Composer[.]

SOF ¶ 16.

Under California law, a party to a contract may transfer the right of indemnity arising under said contract, and the transferee of such an indemnification right may then enforce the right to indemnity when the transferee "has actually sustained liability or paid damages." *Searles Valley Minerals Operations Inc. v. Ralph M. Parsons Service Co.*, 191 Cal.App.4th 1394, 1401 (2011) (assignee under contract was entitled to assert right for indemnity of liability and incurred attorney's fees against indemnitor), citing *Crawford v. Weather Shield Mfg., Inc.*, 44 Cal.4th 541, 553 (2008). The Composer Agreement expressly vests the benefits of the contract to Labrador's "licensees, successors and assigns." SOF ¶ 11. Thus, because the Labrador Agreement transferred to Plaintiff certain rights—whether by license, assignment, or other right of succession—under the Composer Agreement, Plaintiff acceded to the benefit of Composer's representations and warranties, and further acceded to the right of indemnification arising from the non-original and infringing nature of the Cue. The finding of liability embodied in the New Zealand Judgment therefore triggered Composer's obligations to indemnify not only Labrador for the infringing nature of the work, but also Plaintiff. As a result, Plaintiff is entitled to judgment as a matter of law as to Composer's liability as to the breach of the representations and warranties embodied in the Composer Agreement and a finding that Composer is required to indemnify Plaintiff.

**IV.  Labrador's Purported Counterclaims and Labrador and Cohen's Defenses Fail as a Matter of Law Because Their Preceding Material Breaches Excused Any Purported Performance Required of Plaintiff.**

As argued above, Composer's breach of the representations and warranties, including but not limited to the representations and warranties of the originality of the Cue, occurred at the time of execution of the Composer Agreement, when the Cue

was conveyed. Although Composer has alleged that the use of the Cue at issue consisted of an unspecified "alteration" or "modification" of the Cue and therefore required Composer's "consultation," such a claim indisputably fails as a matter of law. Labrador failed to include such a reservation in the Labrador Agreement, and in fact expressly forbid Plaintiff from contacting the Composer whatsoever. ("Beatbox Music and its associates will not knowingly contact, commission, or employ any composer with whom Labrador Entertainment, Inc (and dba Spider Cues) has an agreement." SOF ¶ 25.

Assuming *arguendo* that Composer was nevertheless entitled to a contractually forbidden contact by Plaintiff for the use of the Cue that was at issue in the New Zealand Case, Composer's preceding material breach of the representations and warranties in the Composer Agreement constitute sufficient excuse of performance by Plaintiff of the "consultation" clause in the Composer Agreement.

It is well-settled under California law that "[o]ne who himself breaches a contract cannot recover [or shield himself from liability for his initial breach] for a subsequent breach by the other party." *Silver v. Bank of America*, 47 Cal.App.2d 639, 645 (1941); *Consolidated World Investments, Inc. v. Lido Preferred Ltd*., 9 Cal.App.4th 373, 380 (1992). Indeed, Defendant Cohen's material breach excuses further performance by the innocent party, Plaintiff. *De Burgh v. De Burgh*, 39 Cal.2d 858, 863 (1952); *see Brown v. Grimes*, 192 Cal.App.4th 265, 277-278 (2011) ("Normally the question of whether a breach of an obligation is a material breach, so as to excuse performance by the other party, is a question of fact.").

Though the question of materiality is typically a question of fact, in this instance the specificity of the indemnity remedy—including its triggering upon the precise event that happened, a finding of liability for infringement—and the general subject matter and purpose of the contract make the originality of the works, and the freedom from claims of infringement whether past or future, facially material to the

1  performance of the parties, as well as Plaintiff as Labrador's successor in interest.

2  Any obligation to perform the "consultation" that Composer claims was required for

3  the use at issue is therefore wholly excused.

4       While there was a finding of infringement by the New Zealand Court in this

5  case which collaterally estops Defendants here, such a finding is not required in order

6  to trigger Labrador and Composer's indemnity requirements both, under the express

7  terms of the agreements at issue and under the body of law on this topic. *Searles* 191

8  Cal.App.4th at 1401, citing *Crawford*, 44 Cal.4th at 553. In addition to breaching the

9  representations and warranties as to originality as found by the New Zealand Court,

10  Composer further breached them as it relates to the promise that "no adverse claims

11  exist or will exist with respect to the Composition(s), and the Composition(s) does

12  not infringe upon or violate the copyrights or any other rights whatsoever of any

13  person, firm, or entity." Here, an adverse claim (as opposed to a finding of

14  infringement) existed both at the time of conveyance and when Eight Mile Style,

15  LLC and Martin Affiliated, LLC (hereinafter "Eminem Parties") first sent notice of

16  their claims on or about 2014. SOF ¶¶ 26-28.

17  ### A. Labrador's Counter-Claims Were Untimely and Filed Without
18  ### Leave of Court and Thus are Void and Fail as a Matter of Law.

19       Plaintiff filed is Original Complaint on August 17, 2017. SOF ¶ 81. Labrador

20  answered the Original Complaint and did not assert any counterclaims on October 20,

21  2017. SOF ¶ 82. Plaintiff filed its First Amended Complaint on January 24, 2020 with

22  leave of Court, which added new claims sounding in Alter Ego and Fraudulent

23  Conveyance. SOF ¶ 9. Without leave of Court, on March 7, 2020 Labrador

24  Defendants filed their "First Amended Answer to Amended Complaint and

25  Counterclaim Against Beatbox Music Pty, Ltd. and Michael Cohen." SOF ¶ 83.

26  However, under the Federal Rules of Civil Procedure 13, compulsory counterclaims

27  must be filed within 21 days of the Original Complaint. Fed. R. Civ. P. 13.

28  Compulsory counterclaims are claims which arise out of the same transaction or

-12-

1  occurrence that is at issue in the subject matter of the "opposing party's claim," and

2  which do not require the court to add another party over whom the court cannot

3  obtain jurisdiction. *Id.*

4        Here, the indemnity claims Labrador asserts in its defective March 2020 filings

5  indisputably arise from the same transaction or occurrence that was presented by the

6  Original Complaint. Specifically, the Original Complaint against Labrador asserts

7  indemnity rights under the Labrador Agreement. SOF ¶ 81. Based on its defective

8  March 2020 filings, it appears that Labrador is seeking the same kind of relief under

9  the same contract and with regards to the use of the same Cue. SOF ¶ 83. Labrador

10  having failed to present a counterclaim as part of its responsive pleading (answer) to

11  the Original Complaint, in approximately December 2017, constitutes a forfeiture of

12  any such claim under the terms of the Federal Rules of Civil Procedure. Labrador's

13  March 2020 filings are therefore invalid and do not suffice as a counterclaim within

14  the meaning of the Federal Rules of Civil Procedure, and any subsequent filing would

15  necessarily be untimely. Rule 15 of the Federal Rules of Civil Procedure, provides

16  that "a party may amend its pleading only with the opposing party's written consent

17  or the court's leave." Fed. R. Civ. P. 15. Here, Plaintiff did not consent to Labrador's

18  March 2020 Filings. Likewise, Labrador failed to bring a motion to request this

19  Court's leave to file a counter-claim directed at the allegations contained in Plaintiff's

20  Original Complaint. As a result, Labrador's March 2020 filings therefore are a legal

21  nullity, and can be disregarded without consequence, entitling judgment as a matter

22  of law in favor of Plaintiff as to all of the claims identified in Labrador's March 2020

23  untimely filings.

24        **B. Labrador's Allegations Against Plaintiff All Amount to Subsequent Alleged Breach So Fail as Explained Above**

26        Should this Court nevertheless consider Labrador's Counterclaim despite its

27  untimeliness and filed without leave of court, all of Labrador's allegations which

28  amount to a claim of a breach of contract all indisputably consist of subsequent

alleged breaches of contract because Labrador undisputedly breached its representations and warranties as the inception of the Labrador Agreement when it conveyed the Cue, as further discussed above. While Beatbox expressly disputes that it breached any of its obligations to Labrador, this Court does not need to conduct that analysis to determine that summary judgment should be had in favor of Plaintiff for Labrador's claims sounding in breach of contract against Beatbox because it is undisputable that Labrador breached the Labrador Agreement when it conveyed the Cue at the inception of the Labrador Agreement. As a result, Beatbox is entitled to judgment as a matter of the law that it did not breach the Labrador Agreement because it was excused from performance upon Labrador's initial breach. *See, e.g., Silver v. Bank of America*, 47 Cal.App.2d 639, 645 (1941); *Consolidated World Investments, Inc. v. Lido Preferred Ltd.*, 9 Cal.App.4th 373, 380 (1992).

## C. Labrador's Failure to Comply With Notice-and-Cure Clause is a Bar to its Counter-Claim

District courts interpreting California law have held that a failure to issue a notice pursuant to a notice-and-cure termination clause is a bar to suit. *See Keysight Techs., Inc. v. Mentor Graphics Corp.*, 2017 U.S.Dist.LEXIS 218290, at *22 (N.D.Cal. Sep. 27, 2017, No. C 17-1456 SBA) (interpreting California law); *IP Global Invs. Am., Inc., v. Body Glove IP Holdings, LP* (C.D.Cal. Nov. 14, 2018, No. 2:17-cv-06189-ODW (AGR)) 2018 U.S.Dist.LEXIS 194461, at *11-14. (interpreting California law); *see also Alvarez v. Chevron Corp.*, 656 F.3d 925, 932 (9th Cir. 2011) ("The purpose of giving notice of breach is to allow the breaching party to cure the breach and thereby avoid the necessity of litigating the matter in court") (citing *Cardinal Health 301, Inc. v. Tyco Elecs. Corp.*, 169 Cal. App. 4th 116, 135 (2008)). Additionally, "[s]pecific notice of a breach allows the allegedly breaching party to mitigate damages and avoid future deficiencies in performance." *Keysight Techs. Inc.* at *22, citing *Sleash, LLC v. One Pet Planet, LLC*, No. 3:14-CV-00863-ST, 2014 U.S. Dist. LEXIS 109253, 2014 WL 3859975, at *11 (D. Or. Aug. 6, 2014) (citing

-14-

1   Restatement (Second) of Contracts § 241(d) (1981); interpreting Oregon law).

2   Defendant Webb admitted during his deposition that Labrador never provided any

3   written notice as required by the contract between Labrador and Beatbox. SOF ¶ 33.

4   For this reason alone, Labrador is barred from pursuing claims for breach of contract

5   arising from any purported breach that was subject to ¶ 13 of the Labrador

6   Agreement, as Labrador indisputably failed to provide notice or permit Plaintiff to

7   cure any newly alleged breaches. SOF ¶¶ 32, 33.

**D. Even if Labrador Had Provided Notice of the Cue's Infringing Nature (Which It Undisputedly Did Not), Plaintiff Is Still Entitled to Indemnity as a Matter of Law.**

To the extent that any of the Defendants purports that Plaintiff is not entitled to indemnity due to the post-execution of the Labrador Agreement circulation of spreadsheets allegedly omitting the Cue, such an argument fails as a matter of law for three reasons: 1) Defendants were in breach of the Labrador Agreement and Composer Agreement at the moment they conveyed the Cue and cannot now don the cloak of its protections to enforce any rights due to their preceding material breaches; 2) the failure by Defendants to notify Plaintiff in writing by registered mail and via fax as required by ¶ 13 of the Labrador Agreement, amounts to a failure to comply with the express and materials terms of the notice-and-cure clause contained in the Labrador Agreement which requires a specific manner of notice to be delivered thereunder; and 3) the indemnity language in the Agreement expressly applies to Plaintiff's benefit even if the Cue remained in circulation after any such actual notice was received. SOF ¶¶ 5, 16, 32.

The Labrador Agreement provide at length that any notice thereunder must be in writing and made by the specified mode of delivery. SOF ¶ 32. There is not a scintilla of evidence that Labrador provided any notice, whether by mail, e-mail, fax, telegraph, or otherwise, that the Cue was removed from publication or that it was infringing in nature. SOF ¶ 33. In fact, Defendant Webb admitted during his

deposition that Labrador never provided any written notice as required by the
Labrador Agreement. *Id.* Even if such a notice had occurred, neither the Labrador
Agreement nor the Composer Agreement require Plaintiff to remove the Cue from
circulation in any event, and the indemnity clauses of both agreements indisputably
apply *even if* notice of the infringing nature of the Cue had been received and the
work continued to be exploited by Plaintiff. SOF ¶ 5: ("This indemnity shall not be
adversely affected should exploitation of the recordings continue after notice of
infringement of rights or other claim has been received by the Sub Publisher."); SOF
¶¶ 14, 16: (Composer represents and warrants that no adverse claims exist or will
exist with respect to the Composition(s), and the Composition(s) does not infringe
upon or violate the copyrights or any other rights whatsoever of any person, firm or
entity); ("Composer will indemnify and hold Owner and all entities associated with
Owner, free, safe, and harmless [. . .] resulting from or by reasons of any material
breach of any representation or warranty made herein by Composer.") It is
indisputable that the notice by the Eminem Parties, the New Zealand Case and the
New Zealand Judgment each amount to an adverse claim which constituted a material
breach of the Composer's representation at the time of execution that no such future
claims would occur. Plaintiff's right to indemnity for such a breach therefore matured
at the time the claims in New Zealand were brought.

Thus, because both Agreements expressly preserve Plaintiff's right to
indemnity without limitation for the continued circulation of the Cue even if notice of
its infringing nature had been received—and furthermore because no such notice ever
occurred—Defendants' counterclaims and affirmative defenses fail as a matter of
law.

### E. Labrador Has Woefully Failed to Tender Any Admissible Evidence Relating to Its Alleged Damages for its Claims Sounding in Breach of Express Contract, Indemnification, Negligence, and Breach of Fiduciary [*sic*].

1    Both California law and federal procedure are clear that summary judgment on

2    breach of contract claims is appropriate when a party has failed to present any

3    evidence of damages. *See Durell v. Sharp Healthcare*, 183 Cal. App.4th 1350 (2010);

4    *cited by Neman Bros. & Assoc. v. One Step Up, Ltd.*, 764 F.App'x 625, 626 (9th Cir.

5    2019).

6    Likewise, under California tort law, the measure of damages is the amount that

7    will compensate the plaintiff for all the detriment proximately caused by the

8    defendant's negligence, whether it could have been anticipated or not. "The rule is

9    established that the plaintiff has the burden of proving, with reasonable certainty, the

10   damages actually sustained by him as a result of the defendant's wrongful act, and the

11   extent of such damages must be proved as a fact." *Chaparkas v. Webb*, 178

12   Cal.App.2d 257, 259 (1960); *see also Gorman v. Tassajara Development Corp.*, 178

13   Cal.App.4th 44, 83 (2009); *Veasley v. United States*, 201 F. Supp.3d 1190, 1212

14   (S.D. Cal. 2016); *See also* Cal. Civ. Code § 3281, § 3333; *Metz v. Soares*, 142 Cal.

15   App. 4th 1250, 1255 (2006); *Aeros Aeronautical Sys. Corp. v. United*

16   *States* (C.D.Cal. Nov. 20, 2017, No. CV 15-1712-PJW) 2017 U.S.Dist.LEXIS

17   191830, at *50.). Although a party is not required to prove its damages with

18   mathematical precision, it must present sufficient evidence so that a court can arrive

19   at an intelligent estimate without speculation or conjecture. *Aeros*, 2017 U.S. Dist.

20   LEXIS 191830 at ¶ 6, citing *Harmsen v. Smith*, 693 F.2d 932, 945 (9th Cir. 1982).

21   Webb testified that the only damages asserted against Beatbox by the Labrador

22   Defendants are attorneys' fees and alleged, unspecified, unpaid royalties. SOF ¶ 35.

23   To date, the Labrador Defendants have not provided any evidence in support of their

24   claims of attorneys' fees and/or alleged, unspecified, unpaid royalties. SOF ¶ 36.

25   Thus, the Labrador Defendants cannot establish an essential element of their claims at

26   trial, namely: damages. As a result, Plaintiff Beatbox is entitled to judgment as a

27   matter of law in its favor as to all of Labrador's purported claims.

28

## V.   Defendants are Liable for Violations of the Uniform Voidable Transfer Act as a Matter of Law.

The California Uniform Voidable Transfer Act ("UVTA"), Cal. Civ. Code 3439.01, *et seq.*, provides creditors the right to void fraudulent transfers made to "hinder, delay, or defraud any creditor of the debtor." Cal. Civ. Code 3439.04(a)(1). To prove a claim under the UVTA, a creditor must show that the transfer was made "without receiving a reasonably equivalent value in exchange for the transfer or obligation" and that the debtor "was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction," or that the debtor "intended to incur, or believed or reasonably Intent can be inferred through "the statute's non-exhaustive list of eleven badges of fraud." *Attebury Grain LLC v. Grayn Co*, 721 Fed. Appx. 669, 672 (9th Cir. Cal. Jan. 16, 2018), *aff'd* 794 Fed. Appx. 672 (9th Cir. Cal. Feb. 21, 2020); *see also* Cal. Civ. Code 3439.04(b).

"'In order for a fraudulent transfer to occur, among other things, there must be a transfer of an asset as defined in the UFTA.'" *Nagel v. Westen*, 59 Cal.App.5th 740, 748 (2021), citing *PGA W. Residential Ass'n, Inc. v. Hulven Internat., Inc.*, 14 Cal. App. 5th 156, 169 (2017), quoting *Fidelity National Title Ins. Co. v. Schroeder*, 179 Cal.App.4th 834, 841 (2009). "'[T]ransfer' under the [UVTA] has a broad meaning." *Nagel*, 59 Cal.App.5th at 748, citing *Sturm v. Moyer*, 32 Cal.App.5th 299, 308 (2019). The term is defined as "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset or an interest in an asset, and includes payment of money, release, lease, license, and creation of a lien or other encumbrance." *Nagel* at 748-49, citing Cal. Civ. Code § 3439.01, subd. (m).) The law defines "'[a]sset" broadly as well. An asset includes the "property of a debtor" with just three exceptions: (1) property encumbered by a valid lien; (2) property exempt under nonbankruptcy law; and (3) property held in tenancy in the entireties "to the extent it is not subject to process by a creditor holding

-18-

a claim against only one tenant." *Nagel* at 749, Cal. Civ. Code § 3439.01, subd. (a).) The UVTA uses the term "transferee" throughout its text but does not define it. (E.g., §§ 3439.06–3439.08.)

The eleven "badges" of fraud contained in the UVTA are: (1) Whether the transfer or obligation was to an insider; (2) Whether the debtor retained possession or control of the property transferred after the transfer; (3) Whether the transfer or obligation was disclosed or concealed; (4) Whether before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit; (5) Whether the transfer was of substantially all the debtor's assets; (6) Whether the debtor absconded; (7) Whether the debtor removed or concealed assets; (8) Whether the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred; (9) Whether the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred; (10) Whether the transfer occurred shortly before or shortly after a substantial debt was incurred; and (11) Whether the debtor transferred the essential assets of the business to a lienor that transferred the assets to an insider of the debtor. Cal. Civ. Code 3439.04(b).

Summary judgment is appropriate when these "badges" weigh in favor of the intent to defraud a party's creditors; a creditor may obtain summary judgment without satisfying all eleven badges, particularly where the remaining factors "were at most neutral." *Attebury*, 721 Fed. Appx. at 672 (where first, third, fourth, eighth, ninth, and tenth factors weighed in creditor's favor, and remaining factors were neutral, summary judgment for creditor was proper.)

In the case at bar, there can be no question that Defendants Cohen and Webb created various entities in an effort to transfer all, or substantially all, of their assets or assets of entities under their exclusive control fraudulently to "hinder, delay, or defraud" Plaintiff in violation of Cal. Civ. Code 3439.04(a)(1). First, both Cohen and

Webb, acting on behalf of Labrador Entertainment, Inc., had notice of potential claims against them as early as August of 2014, prior to making the fraudulent transfers. SOF 39, 40, 47, 49.

Second, the assets which were transferred meet the definition of "asset" under UFTA. Defendant Cohen sold a condo at 1537 S. Wooster, Unit 105, Los Angeles, CA, 90035, transferred royalties, cash, and shares in MCPC, all of which meet the definition of "asset" under UFTA. SOF 66, 67, 69, 74. Similarly, Webb, on behalf of Labrador Entertainment, Inc., transferred all of the intellectual property of Labrador Entertainment, Inc., cash and real estate, assets under the UFTA. SOF 39-62.

Finally, intent to defraud is established because all of the transfers by Webb and Cohen meet the "badges" of fraud requirement to show intent as set out in the UVTA. Cal. Civ. Code 3439.04(b). All of the transfers were made to insiders who retained control of the assets, satisfying the first two and the eleventh "badges" of fraud. *Id.* In the case of Webb's transfers, either to the Webb Family Trust or Labrador Entertainment, LLC, both are controlled by Webb. SOF 46, 51, 53, 59, 60, 63, 65. The Cohen transfers were made to either MCPC Holdings, LLC, Michael Cohen Revocable Trust (hereinafter the "MCRT"), or the M.A. Cohen Family Savings Trust, all of which are controlled by Cohen. SOF 41, 66-74, 76-80.

All of the transfers were concealed by Webb and Cohen from Plaintiff until years after they were made, and were made only after Cohen and Webb were aware of the potential claims against them or their companies. SOF 39-80. These two facts also weigh in favor of Plaintiff on the third, fourth, and seventh "badges" of fraud. Cal. Civ. Code 3439.04(b).

The fifth "badge" of fraud is also met because in each case the transfer was "substantially all of the debtor's assets." *Id.* SOF 48, 61, 62, 66-70,74, 79-80. Finally, neither Labrador Entertainment, Inc. nor Cohen received "reasonably equivalent to

1 | the value of the asset transferred" and both were left insolvent. Cal. Civ. Code
2 | 3439.04(b). SOF 42, 44-48, 61, 66, 67, 70, 74, 79.

3 | As delineated above, nine out of the eleven "badges" of fraud weigh heavily in
4 | favor of Plaintiff and the remaining two ("(6) Whether the debtor absconded (10)
5 | Whether the transfer occurred shortly before or shortly after a substantial debt was
6 | incurred") are not at issue in this case.  Cal. Civ. Code 3439.04(b).

7 | Accordingly, summary judgment is appropriate against all Defendants.
8 | *Attebury*, 721 Fed. Appx. at 672.

9 | **VI.    Defendants are Liable for Common Law Fraudulent Conveyances.**

10 | Defendants are also liable under the common law for fraudulent transfer, "for
11 | which punitive damages are available; the UFTA/UVTA remedies are not exclusive."
12 | *Berger v. Varum*, 35 Cal.App.5th 1013, 1019 (2019), citing *Macedo v. Bosio*, 86
13 | Cal.App.4th 1044, 1051 (2001); *see also Wisden v. Superior Court*, 124 Cal. App. 4th
14 | 750, 758 (2004) (UVTA remedies "are cumulative to the remedies applicable to
15 | fraudulent conveyances that existed before the uniform laws went into effect.") "By
16 | its terms the UVTA was intended to supplement, not replace, common law principles
17 | relating to fraud." *Berger*, 35 Cal.App.5th at 1019. "A well-established principle of
18 | the law of fraudulent transfers is, 'A transfer in fraud of creditors may be attacked
19 | only by one who is injured thereby. Mere intent to delay or defraud is not sufficient;
20 | injury to the creditor must be shown affirmatively. In other words, prejudice to the
21 | plaintiff is essential.'" *Id.* quoting *Mehrtash v. Mehrtash*, 93 Cal.App.4th 75, 80
22 | (2001); *accord, Bennett v. Paulson*, 7 Cal.App.2d 120, 123 (1935) ["'The intent to
23 | delay or defraud creditors is not enough; there must also be a resulting injury to the
24 | creditor, which must be affirmatively shown.'"].

25 | As established above, Plaintiff is entitled to Summary Judgment against all
26 | Defendants for their attempt to defraud Plaintiff under the UVTA. Additionally,
27 | Plaintiff has been injured as a result of the judgment entered against Plaintiff in the

28 |

New Zealand Case, and Plaintiff's entitlement to indemnification by Defendants Cohen and Labrador Entertainment, Inc. as illustrated above. SOF 19. Therefore, because Plaintiff has established that it is entitled to Summary Judgment under the UVTA and has actual damages resulting from the fraud, Plaintiff is entitled to Summary Judgment against all the Defendants for common law fraudulent transfer.

**WHEREFORE**, for the reasons stated hereinabove, Plaintiff respectfully requests that this Court enter an order granting Plaintiff Partial Summary Judgment as it relates to Plaintiff's First Amended Complaint; and Summary Judgment in favor of Plaintiff as it relates to Labrador Defendant's March 2020 Filing entitled Labrador's "First Amended Answer to Amended Complaint and Counterclaim Against Beatbox Music Pty, Ltd. and Michael Cohen," as follows:

1. Finding Labrador liable for Breach of Contract on the First Cause of Action in Plaintiff's First Amended Complaint;

2. Finding Cohen liable for Breach of Contract on a third party beneficiary theory on the First Cause of Action in Plaintiff's First Amended Complaint;

3. Finding liability for Fraudulent Conveyance at Common Law on the Seventh Cause of Action against Defendants Labrador Entertainment, Inc., Labrador Entertainment, LLC, Labrador Entertainment, Inc., Noel Webb, The Webb Family Trust, and MCPC Holdings, LLC and Sharon Consulo Webb (collectively the "Labrador Defendants") and that the Labrador Defendants be found jointly and severally liable for any and all damages, including punitive damages, awarded at trial;

4. Finding liability for Fraudulent Conveyance at Common Law on the Seventh Cause of Action against Defendants Michael Cohen, Michael Cohen Revocable Trust, M.A. Cohen Family Savings Trust, MCPC Holdings, LLC, and Robert Joseph Mintz (collectively the "Cohen Defendants") and that the Cohen

1   Defendants be found jointly and severally liable for any and all damages,

2   including punitive damages, awarded at trial;

3   5.   Finding a Fraudulent Conveyance on the Eighth Cause of Action under

4        California's Uniform Voidable Transactions Act against Defendants Labrador

5        Entertainment, LLC, Labrador Entertainment, Inc., The Webb Family Trust,

6        Noel Webb, Defendant Cohen and MCPC Holdings, LLC, and Sharon Consulo

7        Webb (collectively the "Labrador Defendants") and that the Labrador

8        Defendants be found jointly and severally liable for any and all damages,

9        including punitive damages, awarded at trial;

10  6.   Finding a Fraudulent Conveyance on the Eighth Cause of Action under

11       California's Uniform Voidable Transactions Act against Defendants Michael

12       Cohen, The Webb Family Trust, Michael Cohen Revocable Trust,M.A. Cohen

13       Family Savings Trust MCPC Holdings, LLC, and Robert Joseph Mintz

14       (collectively the "Cohen Defendants") and that the Cohen Defendants be found

15       jointly and severally liable for any and all damages, including punitive

16       damages, awarded at trial;

17  7.   As to requests for relief 5 and 6 above, Plaintiff requests additionally:

18       (A)   Specifically, an attachment or other provisional remedy against the

19             assets transferred or other property of the Defendants in accordance

20             with the procedures described in Title 6.5 (commencing with Section

21             481.010) of Part 2 of the Code of Civil Procedure;

22       (B)   An injunction against further disposition by the Defendants or a

23             transferee, or both, of the assets transferred or other property of the

24             transferee;

25       (C)   Appointment of a receiver to take charge of the assets transferred or

26             other property of the transferee;

27       (D)   Levy execution on the asset transferred or its proceeds;

28

-23-

1        (E)    A lien on or a right to retain an interest in the asset transferred; and

2        (F)    Any other relief the circumstances may require.

3  8.    That judgment be entered in favor of Plaintiff Beatbox as to Labrador

4      Defendant's March 2020 Filing entitled Labrador's "First Amended Answer to

5      Amended Complaint and Counterclaim Against Beatbox Music Pty, Ltd. and

6      that Defendant Labrador take nothing;

7  9.    A constructive trust pursuant to Cal. Civ. Code §§ 2223, 2224;

8  10.   Enter an order voiding any transfers of assets made by Defendant Cohen and/or

9      Defendant Labrador Entertainment, Inc. since their knowledge of the claims

10     underlying this suit; and

11  11.   For such other and further relief as the Court deems just and proper.

12  DATED: July 26, 2021          Respectfully submitted,

13                **BEATBOX MUSIC PTY, LTD.**

14                */s/ Heather L. Blaise*

15                HEATHER L. BLAISE, ESQ. (SBN 261619)

16                123 N. Wacker Drive, Suite 250

                   Chicago, IL 60606

17                Telephone: 312-448-6602

18                Email: hblaise@blaisenitschkelaw.com

                   *Attorney for Plaintiff*

19

20

21

22

23

24

25

26

27

28