BLAISE & NITSCHKE, P.C.
HEATHER L. BLAISE, ESQ. (SBN 261619)
123 N. Wacker Drive, Suite 250
Chicago, IL 60606
Telephone: 312-448-6602
Email: hblaise@blaisenitschkelaw.com

Attorneys for Plaintiff,
BEATBOX MUSIC PTY, LTD.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BEATBOX MUSIC PTY, LTD., <br><br> Plaintiff, <br><br> v. <br><br> LABRADOR ENTERTAINMENT, INC. D/B/A SPIDER CUES MUSIC LIBRARY, a California corporation; NOEL PALMER WEBB, an individual; MICHAEL COHEN, an individual; LABRADOR ENTERTAINMENT, LLC; MCPC HOLDINGS, LLC; WEBB FAMILY TRUST and DOES 1-20, inclusive, <br><br> Defendants. <br><br> AND ALL RELATED ACTIONS | CASE NO: 2:17-cv-6108 MWF (JPRx) <br> *Assigned to the Hon. Michael W. Fitzgerald* <br><br> **PLAINTIFF BEATBOX MUSIC PTY, LTD.'S RESPONSE IN OPPOSITION TO LABRADOR DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT** <br><br> **Hearing Date:** **August 23, 2021** <br> **Time:** **10:00 AM PDT** <br> **Courtroom:** **5A** <br><br> Trial Date: November 30, 2021 <br> FAC: January 24, 2020 <br> Cross-Claim Filed: November 21, 2017 <br> Action Filed: August 17, 2017 |

-i-

1

# <u>TABLE OF CONTENTS</u>

2

TABLE OF CONTENTS.....................................................................................ii

3

TABLE OF AUTHORITIES ............................................................................iv

LAW ...................................................................................................................1

4

I.   The Court Should Deny Labrador's MSJ Because it is Facially Deficient and

5

    Lacks Sufficient Citation to the Factual Record. ...................................1

II.  Labrador's MSJ Invents Contractual Duties That Never Existed, None of

6

    Which, Even if They Had Existed, Would Excuse Labrador's Plain

7

    Obligation to Indemnify Beatbox. .........................................................2

   A.   The Labrador-Beatbox Agreement did not require Plaintiff to obtain

8

      Labrador's permission whenever it licensed the Cue, and such a

9

      requirement would defeat the purpose of the Labrador Agreement..............4

   B.   The Labrador-Beatbox Agreement did not require, nor even imply, that

10

      Labrador's provision of additional recordings required Plaintiff to remove

11

      previously provided Cues. ...................................................................6

   C.   Given that the Cue was an infringing work, Labrador breached the

12

      representations and warranties of the Labrador Agreement. ........................8

13

III. Labrador Breached Its Representations and Warranties in the Labrador

    Agreement. ............................................................................................9

14

   A.   Labrador never provided notice to Beatbox that the Cue was infringing in

15

      nature prior to its distribution, nor did Labrador notify Beatbox that it was

      in violation of the other representations and warranties contained in the

16

    Labrador-Beatbox Agreement. ..............................................................11

17

IV.  Labrador Misstates the Pertinent Facts and Law Regarding

    Indemnification. ...................................................................................12

18

   A.   The plain language of the Labrador-Beatbox Agreement specifically

19

      contemplates that Labrador's indemnity obligations in the event that the

      Cue continued to be exploited after Labrador became aware it was an

20

      infringing work. ...................................................................................13

   B.   Indemnity agreements which require a party to protect its counterparty from

21

      breaches of representations and warranties are enforceable under California

22

      law.....................................................................................................14

23

V.   Labrador's Novel "Active" and "Passive" Negligence Argument is Legally

    Deficient and Wholly Irrelevant...........................................................15

24

VI.  Labrador's Extreme Conduct Warrants the Remedies Provided By

25

    *Alter Ego*. ..........................................................................................16

VII. Labrador Misstates the Law and Offers No Substantive Argument Regarding

26

    its Facially Fraudulent Transfers...........................................................17

27

28

VIII.  Labrador's Argument Relies Upon Inadmissible Conjecture on the Issue of the Manner in which the License to the New Zealand National Party was Administered. ........................................................................................... 19

IX.  Labrador Had No Privity or Interest in the BB-AMCOS Agreement, and its MSJ Fails to the Extent it Seeks to Enforce Any of the Terms of the BB-AMCOS Agreement. ................................................................................ 20

PLAINTIFF BEATBOX MUSIC PTY, LTD.'S RESPONSE IN OPPOSITION TO LABRADOR DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*Acoustics, Inc. v. Trepte Constr. Co.*,
   14 Cal. App. 3d 887 (1971) ................................................................................... 9

*Am. Alt. Ins. Corp. v. Superior Court*,
   135 Cal. App. 4th 1239 (2006) ........................................................................... 10

*Anderson v. Hardman*,
   241 F.3d 544 (7th Cir. 2001) ................................................................................. 2

*Attebury Grain LLC v. Grayn Co.*,
   721 Fed. Appx. 669 (9th Cir. Cal. Jan. 16, 2018) ............................................. 17

*California Emergency Physicians Medical Group v. PacifiCare of California*,
   111 Cal. App. 4th 1127 (2003) ........................................................................... 20

*Carmen v. San Francisco Unified School District*,
   237 F.3d 1026 (9th Cir. 2001) ............................................................................... 2

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986) ................................................................................................ 1

*Chevron Corp. v. Pennzoil Co.*,
   974 F.2d 1156 (9th Cir. 1992) ............................................................................... 1

*Communist Party v. 522 Valencia, Inc.*,
   35 Cal. App. 4th 980 (1995) ........................................................................... 16, 17

*Continental Heller Corp. v. Amtech Mech. Servs., Inc.*,
   53 Cal. App. 4th 500 (1997) ................................................................................ 15

*Crawford v. Weather Shield Mfg. Inc.*,
   44 Cal. 4th 541 (2008) ......................................................................................... 15

*Crytek GMBH v. Cloud Imperium Games Corp.*,
   No. CV 17-8937-DMG (FFMx), 2018 U.S. Dist. LEXIS 192623
   (C.D. Cal. Aug. 14, 2018) .............................................................................. 14, 15

*Durell v. Sharp Healthcare*,
   183 Cal. App. 4th 1350 (2010) ............................................................................. 9

*Durkee v. Bank of Am., N.A.*,
   No. 20-cv-00347-DMS-LL, 2020 U.S. Dist. LEXIS 139929
   (S.D. Cal. Aug. 5, 2020) ...................................................................................... 10

*E.L. White, Inc. v. City of Huntington Beach*,
   21 Cal. 3d 497 (1978) .......................................................................................... 14

*Esparza v. Sand & Sea, Inc.*,
   2 Cal. App. 5th 781 (2016) ..................................................................................... 4

*Foley v. Interactive Data Corp.*,
   47 Cal. 3d 654 (1988) .......................................................................................... 15

*Freeman & Mills, Inc. v. Belcher Oil Co.*,
   11 Cal. 4th 85 (1995)..................................................................................14

*Groom v. Berryhill*,
   No. EDCV 17-1117 JC, 2018 U.S. Dist. LEXIS 52278
   (C.D. Cal. Mar. 27, 2018)...........................................................................2

*Gustafson v. Dunman, Inc.*,
   204 Cal. App. 2d 10 (1962).........................................................................9

*Keenan v. Allan*,
   91 F.3d 1275 (9th Cir. 1996).......................................................................2

*La Jolla Beach & Tennis Club, Inc. v. Indus. Indem. Co.*,
   9 Cal. 4th 27 (Cal. 1994)...........................................................................10

*Legacy Vulcan Corp. v. Superior Court*
   185 Cal.App.4th 677 (2010)........................................................................5

*Link-Belt Co. v. Star Iron & Steel Co.*,
   65 Cal. App. 3d 24 (1976)..........................................................................15

*Mitri v. Arnel Management Co.*,
   157 Cal.App.4th 1164 (2007).......................................................................4

*Riverside Sheriffs' Assn. v. County of Riverside*,
   173 Cal.App.4th 1410 (2009).......................................................................4

*Robbins v. Blecher*,
   52 Cal. App. 4th 886 (1997)...............................................................16, 17

*Rogal v. Astrue*,
   2012 U.S. Dist. LEXIS 186019, 2012 WL 7141260
   (W.D. Wash. Dec. 7, 2012).........................................................................2

*Roman Catholic Archbishop v. Superior Court*,
   15 Cal. App. 3d 405 (1971)........................................................................16

*Romero v. Nev. Dep't of Corr.*,
   673 F. App'x 641 (9th Cir. 2016)...............................................................19

*Schauer v. Mandarin Gems of Cal., Inc.*,
   125 Cal. App. 4th 949 (2005)......................................................................20

*Seaman's Direct Buying Serv., Inc. v. Standard Oil Co.*,
   36 Cal. 3d 752 (1984)................................................................................14

*Somers v. United States F. & G. Co.*,
   191 Cal. 542 (1923).....................................................................................9

*Strong v. Theis*,
   187 Cal. App. 3d 913 (1986).........................................................................5

*Transamerica Insurance Co. v. Sayble*,
   193 Cal. App. 3d 1562 (1987).......................................................................7

*United States v. Diebold, Inc.*,
   369 U.S. 654, 655 (1962) .............................................................................1

*Varco-Pruden, Inc. v. Hampshire Constr. Co.,*
  50 Cal.App.3d 654 (1975) ........................................................................9
*Wenban Estate, Inc. v. Hewlett,*
  193 Cal. 675 (1924) ................................................................................16
*Wind Dancer Prod. Grp. v. Walt Disney Pictures,*
  10 Cal. App. 5th 56 (2017) ...................................................................4, 5

**Statutes**
Cal. Civ. Code § 2772 ............................................................................9, 14
Cal. Civ. Code § 2778 .................................................................................9
Cal. Civ. Code 3439.04 ...............................................................17, 18, 19

**Rules**
Fed. R. Civ. P. 56 ..................................................................1, 17, 20
Fed. R. Civ. P. 56 .........................................................................1
Fed. R. Evid. 901 ....................................................................20

PLAINTIFF BEATBOX MUSIC PTY, LTD.'S RESPONSE IN OPPOSITION TO LABRADOR DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

Plaintiff Beatbox Music Pty., Ltd. ("Beatbox") respectfully submits its Response in Opposition to Defendants Labrador Entertainment, Inc., Labrador Entertainment, LLC, Noel Palmer Webb, and the Webb Family Trust's (hereinafter, collectively "Labrador," "Labrador Defendants") Motion for Partial Summary Judgment (hereinafter "MSJ") pursuant to Federal Rule of Civil Procedure 56, and in support thereof states as follows:

## LAW

Pursuant to Federal Rule of Civil Procedure 56(a), a court may grant summary judgment only where "there is no genuine issue as to any material fact and [. . .] the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Upon such a showing, the Court may grant summary judgment on all or part of the claim. *See id.* To prevail on a summary judgment motion, the moving party must show that there are no triable issues of material fact as to matters upon which it has the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Rule 56(c) requires the entry of summary judgment, after discovery and upon motion, against a party who fails to establish the existence of an element essential to that party's case, and on which that party bears the burden of proof at trial. *Celotex*, 477 U.S. at 322. The Court must view the facts and draw inferences in the manner most favorable to the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1161 (9th Cir. 1992).

I.   **The Court Should Deny Labrador's MSJ Because it is Facially Deficient and Lacks Sufficient Citation to the Factual Record.**

Labrador's MSJ is rife with broad overstatement, sweeping generalization, and conclusory argument unsupported with citations to the record. It is the movant's burden to identify the uncontested facts that support its case, not the obligation of this Honorable Court to salvage an unsupported argument on the movant's behalf. *Carmen v. San Francisco Unified School District*, 237 F.3d 1026, 1030-31 (9th Cir. 2001) (on summary judgment movant must provide citations to location in record where specific facts may "conveniently be found" and court may limit its review to those parts of the record the parties have "specifically referenced"); *see also Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) (district court not required to "scour the record" on summary judgment where party has failed to identify specific evidence with reasonable particularity).

Federal courts have long recognized that a court "cannot fill the void by crafting arguments and performing the necessary legal research." *Anderson v. Hardman*, 241 F.3d 544, 545 (7th Cir. 2001), cited by *Groom v. Berryhill*, No. EDCV 17-1117 JC, 2018 U.S. Dist. LEXIS 52278, at *19 (C.D. Cal. Mar. 27, 2018); *Rogal v. Astrue*, 2012 U.S. Dist. LEXIS 186019, 2012 WL 7141260, *3 (W.D. Wash. Dec. 7, 2012) ("It is not enough merely to present an argument in the skimpiest way, and leave the Court to do counsel's work-framing the argument and putting flesh on its bones through a discussion of the applicable law and facts."), report and recommendation adopted, 2013 U.S. Dist. LEXIS 19554, 2013 WL 557172 (W.D. Wash. Feb. 12, 2013), aff'd, 590 Fed. Appx. 667 (9th Cir. 2014), cited by *Groom* at *19.

## II.   Labrador's MSJ Invents Contractual Duties That Never Existed, None of Which, Even if They Had Existed, Would Excuse Labrador's Plain Obligation to Indemnify Beatbox.

In its MSJ, Labrador conceded that Plaintiff was authorized to distribute as Sub-Publisher the library recordings supplied by Labrador. MSJ at 8. Labrador

further conceded that it was Plaintiff's contractual obligation to obtain licenses within the territory of New Zealand for the library of works provided by Labrador to Plaintiff. MSJ at 10. The Eminem Esque cue (hereinafter the "Cue") was supplied by Labrador to Plaintiff. Plaintiff's Statement of Genuine Disputes of Material Fact in Opposition to Labrador Defendants' Motion for Partial Summary Judgment ("SGD") ¶ 5. Labrador never notified Plaintiff that the Cue was ever removed from distribution, and there is no contractual provision requires Plaintiff to remove any item from the library even if Labrador provided an instruction to do so, which it did not until after Labrador became aware of the claim of copyright infringement by Eight Mile Style, LLC and Martin Affiliated, LLC (hereinafter the "Eminem Parties"). SGD ¶¶ 7-16. The Cue was licensed in New Zealand by the New Zealand National Party, whose license accordingly resulted in the New Zealand Proceeding and the New Zealand Judgment. SGD ¶ 3.  Importantly, even if Labrador had instructed Plaintiff to remove the Cue at some point prior to the New Zealand license, the express terms of the Agreement still require Labrador to indemnify: "This indemnity shall not be adversely affected should exploitation of the recordings continue after notice of infringement of rights or other claim has been received by the Sub Publisher." Labrador-Beatbox Agreement ("LBA") at SGD ¶ 5, attached to Webb's Decl. as Exh. 1, ¶ 16(v).

Despite these straightforward concessions and uncontested facts, Labrador's MSJ spins increasingly implausible duties that Plaintiff supposedly breached, none of which appear on the face of the Labrador-Beatbox Agreement (or are pled in the Counter-Complaint). First, Labrador contends that Plaintiff was supposedly required to "inquire" with Labrador about whether Plaintiff was still permitted to license works that Labrador had previously supplied to Plaintiff. Second, Labrador has argued that Labrador's provision of the infringing Cue, and the subsequent contractually required distribution of the Cue by Plaintiff and attendant license to the

New Zealand National Party, were somehow the result of Plaintiff's "active negligence" and not the breach of Labrador's representation and warranty that the Cue, and the rest of the library, was non-infringing. Labrador once again asks this Court to engage in mental gymnastics to make the leaps it suggests—none of which remotely support a finding of summary judgment in Labrador's favor, while all of the law and facts support a finding of summary judgment in favor of Plaintiff, as fully articulated in Plaintiff's Beatbox Music Pty, Ltd.'s Partial Motion for Summary Judgment as it relates to Plaintiff's First Amended Complaint; And Summary Judgment as it relates to Labrador Defendants' March 2020 Filing Entitled Labrador's "First Amended Answer to Amended Complaint and Counterclaim Against Beatbox Music Pty, Ltd. and Michael Cohen." (hereinafter "Plaintiff's MSJ"). Dkt. No. 208. For the avoidance of doubt and to the extent not expressly provided herein, Plaintiff incorporates by reference all of the authority and arguments laid out in Plaintiff's MSJ in opposition to Labrador's MSJ.

**A. The Labrador-Beatbox Agreement did not require Plaintiff to obtain Labrador's permission whenever it licensed the Cue, and such a requirement would defeat the purpose of the Labrador Agreement.**

A court "cannot and will not create a term of a contract between the parties that the evidence does not show was ever agreed upon by the parties." *Esparza v. Sand & Sea, Inc.*, 2 Cal. App. 5th 781, 790 (2016), citing *Mitri v. Arnel Management Co.*, 157 Cal.App.4th 1164 (2007). Rather, a court must ascertain "the intent and scope of [an] agreement by focusing on the usual and ordinary meaning of the language used and the circumstances under which the agreement was made.'" *Wind Dancer Prod. Grp. v. Walt Disney Pictures*, 10 Cal. App. 5th 56, 69 (2017), citing *Riverside Sheriffs' Assn. v. County of Riverside*, 173 Cal.App.4th 1410, 1424 (2009). When interpreting a contract, a court must "consider the contract as a whole and interpret its language in context so as to give effect to each provision, rather than interpret contractual

-4-

language in isolation." *Wind Dancer Production Group* at 69, citing *Legacy Vulcan Corp. v. Superior Court* 185 Cal.App.4th 677, 688 (2010). "If contractual language is clear and explicit and does not involve an absurdity, the plain meaning governs." *Wind Dancer Production Group* at 69. "[A] contract entered into for the mutual benefit of the parties is to be interpreted so as to give effect to the main purpose of the contract and not to defeat the mutual objectives of the parties." *Strong v. Theis*, 187 Cal. App. 3d 913, 918 (1986).

In its MSJ, Labrador erroneously argues that its supplements of the library in 2012 and 2014 were somehow discrete "Catalogs," despite an express statement in 2012 from Noel Webb, principal of Labrador, informing Plaintiff that it could "choose to use" its existing library of cues rather than re-download newly organized files. *See* MSJ at 12-13; *see further* SGD ¶ 8, Webb Decl. Exh. 5. Labrador further embellishes the record by implying that Plaintiff had some duty to make an "inquiry back to Labrador" whether the Cue was "part of" these nonexistent "catalogs," or "if it could still be licensed." MSJ at 13.

No such "inquiry" duty whatsoever exists on the face of the LBA. In fact, Labrador appointed Plaintiff to use its best efforts to market the full library of works supplied by Labrador, pursuant to paragraph 1 of the LBA. SGD ¶ 5. If Plaintiff had been required to "inquire" at every instance a distributed work was licensed, Plaintiff's appointment as Sub-Publisher would be superfluous, as Labrador would essentially be micromanaging the licensing and publication of each work within the library, resulting in endlessly duplicated efforts. In addition to the LBA not providing any such requirement, such a requirement would be completely unsupported by the custom and practice in the production music licensing industry. SGD ¶ 16.

As no such "inquiry" term exists on the face of the Labrador-Beatbox Agreement and given that Noel Webb expressly informed Plaintiff that it did not need to download the supplemented library of cues *whatsoever*, Labrador is not entitled to

1    summary judgment on the factually unsupported theory that Labrador removed the

2    Cue in advance of the license being issued to the New Zealand National Party.

3        Moreover, Labrador's MSJ does not address the other violations of the

4    representations and warranties which Plaintiff fully addressed in its Motion for Partial

5    Summary Judgment. Namely, that Labrador further violated the representations and

6    warranties embodied in the LBA in Paragraph 16(iii) in at least two (2) ways in

7    addition to its breaches under Paragraph 16(iv). Labrador indisputably breached its

8    representations and warranties to Plaintiff at the time it executed the Labrador

9    Agreement by failing to disclose to Plaintiff pertinent alleged contractual limitations

10    placed upon it by Co-Defendant Michael Cohen (hereinafter "Composer") that

11    Labrador did not have the right to grant license of sound recordings. Plaintiff is

12    entitled to judgment as to liability as a matter of law against Labrador for violating

13    the representations and warranties and a finding that Labrador must indemnify

14    Plaintiff for all of its damages resulting from the same. SGD ¶ 2.

15
16
      **B. The Labrador-Beatbox Agreement did not require, nor even imply, that Labrador's provision of additional recordings required Plaintiff to remove previously provided Cues.**
17

18        Labrador asks this Court to radically rewrite the LBA by introducing a

19    requirement, present nowhere on the face of the Contract itself, that Plaintiff remove

20    all previously provided recordings whenever Labrador supplemented the library.

21    SGD ¶ 5. In support of this, Labrador claims that the phrase "introduction and

22    exploitation as hereinafter mentioned of all recordings made to be issued during the

23    term of this Agreement and any extensions thereto" somehow implies that the

24    provision by Labrador subsequently-issued recordings necessitated the removal of

25    previously-provided recordings which had already been distributed. *Id.*

26        It is axiomatic that when a court interprets a contract, that interpretation "must

27    be fair and reasonable, not leading to absurd conclusions." be fair and reasonable, not

28

leading to absurd conclusions. *Transamerica Insurance Co. v. Sayble*, 193 Cal. App. 3d 1562, 1566 (1987). If Labrador intended for its periodic updates of the library to serve as a termination of all prior libraries, it could have provided for such an extreme term through express language. Instead, Labrador now pretends that such a requirement is *inherently implied* by its use of the word "issued." MSJ at 9. In fact, Labrador does not even bother to carry this argument to the finish line—merely stating that the "recordings would be updated over time." MSJ at 9. "Updating" the recordings by supplementing the library is a far cry from explicitly requiring the removal of previously-issued and distributed recordings.

Furthermore, Labrador's own statements directly contradict the notion that these subsequently issued recordings were a new or replacement library, requiring a revocation of both distribution and licensing. SGD ¶ 16. When supplementing the library, Noel Webb of Labrador specifically indicated that it was up to Plaintiff's discretion whether or not to even download the newly arranged library altogether, stating in an April 3, 2012 email to Plaintiff and admits that Plaintiff is entitled to use the cues it already has, which including the Cue:

> Do not consider this new format as being a new set of cues. They are the same cues you have now, but we organized them in order of quality within 75 albums. […] Of course you already have these cues in your library so you can use those. […] If you choose to use the cues you already have for this process don't bother to download the Albums.

SGD ¶ 8.

Worse, Labrador makes this argument in a circular, conclusory fashion, without citation to case law, dictionary definition, trade meaning, factual matter, or *any* basis explaining how the word "issued" implies the unusual meaning Labrador ascribes to it in the MSJ. This failure to identify the basis for its interpretation is fatal to Labrador's MSJ, particularly because Plaintiff's *entire theory* to evade liability is

premised on the notion that Plaintiff "breached" the LBA by continuing to distribute and obtain license fees for the very works for which Labrador appointed Plaintiff to distribute for the retention of license fees. As conceded by Plaintiff, under the plain terms of the Labrador Beatbox Agreement, Labrador appointed (and required) Beatbox to distribute the Cue, which Labrador supplied to Plaintiff.

> Subject to the terms and conditions and limitation hereinafter. . . Publisher appoints the Sub-Publisher as their sole Sub Publisher for the licensed territory for the introduction and exploitation as hereinafter mentioned of all recordings made to be issued. . . as part of the background music library catalogue known as Spider Cues Music (hereinafter referred to as "the recordings")

Labrador-Beatbox Agreement, ¶ 1; SGD ¶3.

## C. Given that the Cue was an infringing work, Labrador breached the representations and warranties of the Labrador Agreement.

Labrador conjures an unsupported narrative, bootstrapped by inaccurate recitations of inapposite law, of Plaintiff's supposed "negligence" in circulating Labrador's infringing Cue. Labrador's desperate theory seeks to evade two simple facts: 1) that Labrador *specifically represented and warranted* that the Cue was not infringing; and 2) that the Labrador Agreement *specifically provides* that if the Cue was infringing, Labrador is obligated to indemnify Plaintiff from losses arising therefrom, *regardless* of when the infringing work was first distributed.

It is undisputed that under the Labrador-Beatbox Agreement, the Cue was one of a library of "Compositions," as that term is defined within the Agreement. The LBA expressly and unequivocally states that "the Compositions are original and that none of the Compositions infringes on any other copyright works or the rights of any third party[.]" SGD ¶ 3. Although Labrador never removed the Cue from distribution and/or licensing before the Eminem Parties' Claim, it is nevertheless indisputable that the LBA expressly contemplates indemnity following the removal of a cue after a

notice of infringement: "This indemnity shall not be adversely affected should exploitation of the recordings continue after notice of infringement of rights or other claim has been received by the Sub Publisher." SGD ¶ 3.

"Indemnity is a contract by which one engages to save another from a legal consequence of the conduct of one of the parties, or of some other person." Cal. Civ. Code § 2772. Under California law, such contracts for indemnification are enforceable. "An indemnity against claims, or demands, or liability, expressly, or in other equivalent terms, embraces the costs of defense against such claims, demands, or liability incurred in good faith, and in the exercise of a reasonable discretion[.]" Cal. Civ. Code § 2778, subd. 3. It is well-established that an indemnitor in an indemnity contract generally undertakes to protect the indemnitee against loss or damage through liability to a third person. *Somers v. United States F. & G. Co.*, 191 Cal. 542, 547 (1923). A clause which contains the words "indemnify" and "hold harmless" is an indemnity clause which generally obligates the indemnitor to reimburse the indemnitee for any damages the indemnitee becomes obligated to pay third persons. *Varco-Pruden, Inc. v. Hampshire Constr. Co.*, 50 Cal.App.3d 654, 660 (1975). Indemnification agreements ordinarily relate to third party claims. Ibid.

## III. Labrador Breached Its Representations and Warranties in the Labrador Agreement.

A breach of representations and warranties claim is based upon breach of contract. *Gustafson v. Dunman, Inc.*, 204 Cal. App. 2d 10, 14 (1962). The elements of breach of contract are: (1) existence of a contract; (2) plaintiff's performance or excuse for nonperformance; (3) defendant's breach; (4) and resulting damages. *Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1367 (2010); *Acoustics, Inc. v. Trepte Constr. Co.*, 14 Cal. App. 3d 887, 913 (1971).

As argued above, Labrador breached the representations and warranties of the LBA and the Composer Agreement, respectively, because it falsely warranted that the

Cue was an original work free and clear from adverse claims of infringement. SGD ¶¶ 2 and 3. Labrador further breached the representations and warranties embodied in the LBA in Paragraph 16(iii) in at least two (2) ways in addition to its breaches under Paragraph 16(iv), as further discussed below. SGD ¶ 3.

Composer's defense to Plaintiff's claims has reviled a further breach by Labrador of its representations and warranties to Plaintiff. Composer has made an issue that the infringing use of the Cue at issue in the New Zealand Case somehow required consultation with the Composer, since Composer asserts that the use altered, expanded, adapted, or translated the Cue. *See* SGD ¶ 2. Setting aside the fatal factual deficiencies in Composer's assertions, this alleged limitation was never disclosed to Plaintiff in the Labrador Agreement, and to the contrary Labrador represented and warranted that "the Publisher is party or has entered into good and valid contracts with the writers and composers of the Compositions and such contracts enable it to comply with all terms and conditions hereof and the Publisher will do all things necessary not to be in breach of the same during the term hereof." SGD ¶ 3. The failure to disclose the alleged "consultation" requirement as a holdback of rights purportedly held by Composer represented a breach of Labrador's warranty of "good and valid contracts" and ability to "do all things necessary not to be in breach of the same," particularly because such a holdback of rights would directly impact Plaintiff's ability to license the work as provided for in paragraphs 1-5, *et seq.*, of the LBA, undermining the entire purpose of the Labrador Agreement: to permit audiovisual synchronization licensing for production music. SGD ¶ 3. *Durkee v. Bank of Am., N.A.*, No. 20-cv-00347-DMS-LL, 2020 U.S. Dist. LEXIS 139929, at *10 (S.D. Cal. Aug. 5, 2020), *citing La Jolla Beach & Tennis Club, Inc. v. Indus. Indem. Co.*, 9 Cal. 4th 27, 36 (Cal. 1994) ("Courts will not adopt a strained or absurd interpretation in order to create an ambiguity where no exists."); *Am. Alt. Ins. Corp. v. Superior Court*, 135 Cal. App. 4th 1239 (2006) ("If contractual language is clear and

-10-

1   explicit and does not an involve an absurdity, the plain meaning governs.").

2   Moreover, the Composer Agreement does not expressly grant rights to the sound

3   recordings and only to the musical compositions embodied therein, which amounts to

4   yet another breach of the Paragraph 16(iii) of the LBA by Labrador. SGD ¶¶ 2 and 3.

5   Thus, in addition to the infringement and adverse claims, Labrador failed to

6   disclose to Plaintiff pertinent alleged contractual limitations placed upon it by

7   Composer and that it did not have the right to grant license of sound recordings,

8   Labrador indisputably breached its representations and warranties to Plaintiff at the

9   time it executed the Labrador Agreement and Plaintiff is entitled to judgment as to

10  liability as a matter of law against Labrador for violating the representations and

11  warranties and a finding that Labrador must indemnify Plaintiff for all of its damages

12  resulting from the same. SGD ¶ 3. In the unlikely event that this Court does not find

13  that Plaintiff is entitled to judgment against Labrador as a matter of law on this issue,

14  there is at minimum genuine issues of material fact in dispute which prevent

15  judgment to be had in favor of Labrador.

16   **A. Labrador never provided notice to Beatbox that the Cue was**
17   **infringing in nature prior to its distribution, nor did Labrador**
18   **notify Beatbox that it was in violation of the other representations**
     **and warranties contained in the Labrador-Beatbox Agreement.**

19  Another irreparable hole in Labrador's theory is that, under the terms of the

20  LBA, Labrador could have delivered notice that the Cue was infringing and should be

21  removed from the library. In fact, Labrador has provided such notices in other

22  instances, including in August 2014, where Labrador sent an express request to its

23  French sub-publisher to remove the Eminem Esque Cue from its catalog. SGD ¶ 16.

24  That Labrador failed to provide such a notice and instead now attempts to rely on its

25  supplements to the library to cure its glaring breaches, and a silent omission of the

26  Cue in two such supplements, falls woefully short of the notice provision contained

27  within the Contract, which states:

28

> Should the Sub-Publisher default in rendering any statement of account or in making any payments as hereinbefore provided or in fully complying with any material terms or conditions herein required of the Sub-Publisher to be performed, and should such default continue for 30 (thirty) days after the Publisher has sent notice of such default registered mail and fax to the Sub- Publisher, the Publisher shall have the right to terminate and cancel this Agreement as of expiration of the said 30 (thirty) days, or should the Sub- Publisher make any assignment for the benefit of creditors or take the benefit of any bankruptcy act (save for the purpose of reconstruction) or should the Sub- Publisher be petitioned into bankruptcy, then in each and every such event the Publisher shall be entitled to terminate and cancel this agreement, and the Sub- Publisher shall account to the Publisher forthwith for any outstanding fees not accounted for up to the time of such cancellation.

SGD ¶ 3.

There is not a scintilla of evidence that Labrador provided any notice, whether by mail, e-mail, fax, telegraph, or otherwise, that the Cue was removed from publication or that it was infringing in nature. SGD ¶¶ 7-16. Even if such a notice had occurred, the LBA does not require Plaintiff to remove the Cue from distribution in any event. SGD ¶ 3. Moreover, even if Labrador had complied with the notice requirements, the express language of the LBA makes obviously clear that Labrador is still responsible to indemnify Plaintiff: "This indemnity shall not be adversely affected should exploitation of the recordings continue after notice of infringement of rights or other claim has been received by the Sub Publisher." SGD ¶ 3.

**IV.   Labrador Misstates the Pertinent Facts and Law Regarding Indemnification.**

Labrador expressly represented and warranted that the Cue was non-infringing, and indemnified Plaintiff from any harm arising from a breach of that representation and warranty. Further, Labrador falsely represented and warranted that it had "good and valid contracts" and ability to "do all things necessary not to be in breach of the

-12-

same," because the Composer Agreement does not contain a sound recording grant and includes language that Composer has used to advance the theory that his consultation was required, as further discussed above. SGD ¶2. Labrador's late attempts to spin Labrador's own breach of its representations and warranties as "negligence" on the part of Plaintiff, and Labrador's corresponding mischaracterization of negligence and indemnity law in California, are designed to mislead this Court into believing that a party who breaches a warranty about the quality and fitness of its product, and then indemnifies its counterparty from any harm that may arise from a breach of that warranty, is somehow estopped from asserting a claim for indemnity against the breaching party. This would altogether nullify California indemnity law and would neuter the ability of contracting parties to seek redress from their counterparties.

### A. The plain language of the Labrador-Beatbox Agreement specifically contemplates that Labrador's indemnity obligations in the event that the Cue continued to be exploited after Labrador became aware it was an infringing work.

As discussed above, the LBA fully contemplates indemnity obligations following notice of an infringement, stating: "This indemnity shall not be adversely affected should exploitation of the recordings continue after notice of infringement of rights or other claim has been received by the Sub Publisher." SGD ¶ 3. There is no dispute that Labrador never provided Beatbox formal notice of the removal of the Cue from distribution and/or licensing. SGD ¶¶ 7-16. However, even if the Court were to consider the argument that sending excel spreadsheets which omitted the Cue could have meant that the Cue was removed at some point after it was conveyed, leaves open an issue of material fact as to whether or not such excel spreadsheets acted as valid removal of the Cues from distribution and licensing. Plaintiff contends that in reading the Labrador-Beatbox contract as a whole, Labrador would have still been required to indemnify even if there was an express instruction by Labrador to

remove the Cue, but there was not. Even if this Court does not adopt Plaintiff's legal argument on this topic and grant summary judgment in favor of Plaintiff, the Court still must acknowledge that there is a genuine issue of material fact that necessitates a denial of Labrador's MSJ, namely: whether or not Labrador ever effectively removed the Cue from distribution and/or licensing.

**B. Indemnity agreements which require a party to protect its counterparty from breaches of representations and warranties are enforceable under California law.**

Contrary to Labrador's arguments, it is axiomatic that parties to an indemnity contract "may agree that the promisor's indemnity and or defense obligations will apply only if the promisor was negligent, or, conversely, even if the promisor was not negligent." *E.L. White, Inc. v. City of Huntington Beach*, 21 Cal. 3d 497, 506-07 (1978) (where indemnity obligations arise from express contractual language, there is "great freedom of action to the parties in establishment of the indemnity arrangements," including ability to "establish a duty in the indemnitor to save the indemnity harmless from the results of even active negligence on the part of the latter"); *Freeman & Mills, Inc. v. Belcher Oil Co.*, 11 Cal. 4th 85, 102-03 (1995) (overruling Court's earlier opinion in *Seaman's Direct Buying Serv., Inc. v. Standard Oil Co.*, 36 Cal. 3d 752 (1984), "in favor of a general rule precluding tort recovery for noninsurance contract breach, at least in the absence of violation of" an independent tort duty "other than the bad faith denial of the existence of, or liability under, the breached contract"); *see also Crytek GMBH v. Cloud Imperium Games Corp.*, No. CV 17-8937-DMG (FFMx), 2018 U.S. Dist. LEXIS 192623, at *28-29 (C.D. Cal. Aug. 14, 2018).

"Indemnity is a contract by which one engages to save another from a legal consequence of the conduct of one of the parties, or of some other person."). *See* Cal. Civ. Code § 2772. "[T]he motive of the breaching party generally has no bearing on

1   the scope of damages that the injured party may recover for breach," and "California
2   law makes clear that parties to an indemnity contract 'have great freedom to allocate
3   such [indemnification] responsibilities as they see fit'" subject only to public policy
4   concerns. *Crytek*, No. CV 17-8937-DMG (FFMx), 2018 U.S. Dist. LEXIS 192623 at
5   *29, quoting *Crawford v. Weather Shield Mfg. Inc.*, 44 Cal. 4th 541, 551 (2008);
6   *Foley v. Interactive Data Corp.*, 47 Cal. 3d 654, 699 (1988); *Continental Heller*
7   *Corp. v. Amtech Mech. Servs., Inc.*, 53 Cal. App. 4th 500, 505 (1997) ("The language
8   of the agreement leaves no doubt the parties intended Amtech should indemnify
9   Continental irrespective of whether Continental's loss arose by reason of Amtech's
10  negligence or for any other reason except for the sole negligence or willful
11  misconduct of Continental.").

12  **V.   Labrador's Novel "Active" and "Passive" Negligence Argument is Legally**
13  **Deficient and Wholly Irrelevant.**

14          The primary case cited by Labrador to support the theory that purported
15  negligence excuses Labrador's express duty to indemnify Plaintiff features no
16  indemnification clause whatsoever, but rather focuses on the limitations of the
17  doctrine of equitable indemnification between tortfeasors.

18          In 1976 personal injury case *Link-Belt Co. v. Star Iron & Steel Co.*, which
19  Labrador inappropriately implies has some relationship to contractual indemnification
20  law, the city of Los Angeles owned and operated a crane modified and sold to it by
21  Link-Belt. *Link-Belt Co. v. Star Iron & Steel Co.*, 65 Cal. App. 3d 24, 26 (1976). The
22  crane broke and killed a man, causing the city to sue Link-Belt seeking
23  indemnification for the defects in the crane. *Id.* at 26-27. The city won its lawsuit, and
24  Link-Belt in turn sued a company it had contracted with, Star Iron & Steel Co.,
25  claiming that Star Iron had impliedly agreed to indemnify Link-Belt because Star Iron
26  had represented that the crane was restored "to good running condition." *Id.* at 27.

27
28

The case before this Court is facially distinguishable from *Link-Belt* for numerous reasons. First, this is a case where Plaintiff is seeking a contractual indemnification under an express provision agreeing to indemnify against loss occasioned by the undisclosed infringing nature of a musical work, while *Link-Belt* is a personal injury case without an express indemnity agreement where one indemnifying party—the seller of the crane—sought indemnity from its subcontracted repair company. Indemnification was found to be proper in *Link-Belt*, albeit between the City of Los Angeles and Link-Belt itself; it was only when Link-Belt tried to claim that a generic "good running condition" clause entitled it to indemnity that the Court balked.

Unlike the seller of a crane that unintentionally kills someone, the precise issue of a non-original Cue being included among the works in the Library was expressly contemplated, and the risks were properly allocated, in the LBA. That Labrador now wishes to evade the very specific representations and warranties of originality that it made, and the concurrent obligation it now has to indemnify Plaintiff, is not at all comparable to a crane supplier seeking implied indemnification from a repair company.

## VI.   Labrador's Extreme Conduct Warrants the Remedies Provided By *Alter Ego*.

Ordinarily, a corporation is regarded as a legal entity, separate and distinct from its stockholders, officers and directors, with separate and distinct liabilities and obligations. *Wenban Estate*, *Inc. v. Hewlett,* 193 Cal. 675, 696 (1924); *Communist Party v. 522 Valencia*, *Inc.*, 35 Cal. App. 4th 980, 993 (1995); *Robbins v. Blecher*, 52 Cal. App. 4th 886, 892 (1997). A corporate identity may be disregarded--the "corporate veil" pierced--where an abuse of the corporate privilege justifies holding the equitable ownership of a corporation liable for the actions of the corporation. *Roman Catholic Archbishop v. Superior Court*, 15 Cal. App. 3d 405, 411 (1971).

1    Under the alter ego doctrine, then, when the corporate form is used to perpetrate a

2    fraud, circumvent a statute, or accomplish some other wrongful or inequitable

3    purpose, the courts will ignore the corporate entity and deem the corporation's acts to

4    be those of the persons or organizations actually controlling the corporation, in most

5    instances the equitable owners. *Robbins*, 52 Cal. App. 4th at 892; *Communist Party*,

6    35 Cal. App. 4th at 993-994. The alter ego doctrine prevents individuals or other

7    corporations from misusing the corporate laws by the device of a sham corporate

8    entity formed for the purpose of committing fraud or other misdeed.

9        There are genuine issues of material fact related to the alter ego theory of

10    liability such that this Court cannot find as a matter of law that Defendant Labrador is

11    entitled to Summary Judgment. Fed. R. Civ. P. 56(a).

12   **VII.  Labrador Misstates the Law and Offers No Substantive Argument**
**Regarding its Facially Fraudulent Transfers.**
13

14       In the MSJ, Labrador offers only a sweeping conclusion that it is entitled to

15    summary judgment on the fraudulent conveyance counts on the theory that Labrador

16    did not intend to hinder, delay, or defraud Beatbox when Labrador transferred all of

17    its assets to escape liability. Labrador's argument is supported, quite literally, only by

18    its say-so that Labrador had no such intent, with *zero* citations to the factual record.

19    The only component of this argument is a conclusory and incomplete citation to the

20    single element of fraudulent intent.

21       As argued in greater detail in Plaintiff's Motion for Summary Judgment,

22    California's Uniform Voidable Transfer Act ("UVTA") recognizes a "non-exhaustive

23    list of eleven badges of fraud." *Attebury Grain LLC v. Grayn Co.*, 721 Fed. Appx.

24    669, 672 (9th Cir. Cal. Jan. 16, 2018), *aff'd*, 794 Fed. Appx. 672 (9th Cir. Cal. Feb.

25    21, 2020); *see also* Cal. Civ. Code 3439.04(b). The eleven "badges" of fraud

26    contained in the UVTA are: (1) Whether the transfer or obligation was to an insider;

27    (2) Whether the debtor retained possession or control of the property transferred after

28

1  the transfer; (3) Whether the transfer or obligation was disclosed or concealed; (4)

2  Whether before the transfer was made or obligation was incurred, the debtor had been

3  sued or threatened with suit; (5) Whether the transfer was of substantially all the

4  debtor's assets; (6) Whether the debtor absconded; (7) Whether the debtor removed

5  or concealed assets; (8) Whether the value of the consideration received by the debtor

6  was reasonably equivalent to the value of the asset transferred or the amount of the

7  obligation incurred; (9) Whether the debtor was insolvent or became insolvent shortly

8  after the transfer was made or the obligation was incurred; (10) Whether the transfer

9  occurred shortly before or shortly after a substantial debt was incurred; and (11)

10 Whether the debtor transferred the essential assets of the business to a lienor that

11 transferred the assets to an insider of the debtor. Cal. Civ. Code 3439.04(b).

12      In the case at bar, there can be no question that the Labrador, acting through

13 Webb, created various entities in an effort to transfer all, or substantially all, of their

14 assets or assets of entities under their exclusive control fraudulently to "hinder, delay,

15 or defraud" Plaintiff in violation of Cal. Civ. Code 3439.04(a)(1). First, both

16 Labrador and Webb, acting on behalf of Labrador Entertainment, Inc., had notice of

17 potential claims against them as early as August of 2014, prior to making the

18 fraudulent transfers. *See* Dkt. Nos. 208, 208-1.

19      Second, the assets which were transferred meet the definition of "asset" under

20 UFTA. Webb, on behalf of Labrador Entertainment, Inc., transferred all of the

21 intellectual property of Labrador Entertainment, Inc., cash and real estate, assets

22 under the UFTA. *See* Dkt. Nos. 208, 208-1.

23      Finally, intent to defraud is established because all of the transfers by Webb

24 meet the "badges" of fraud requirement to show intent as set out in the UVTA. Cal.

25 Civ. Code 3439.04(b). All of the transfers were made to insiders who retained control

26 of the assets, satisfying the first two and the eleventh "badges" of fraud. *Id.* In the

27

28

1   case of Webb's transfers, either to the Webb Family Trust or Labrador Entertainment,

2   LLC, both are controlled by Webb. *See* Dkt. No. 208, 208-1.

3       All of the transfers were concealed by Webb from Plaintiff until years after

4   they were made and were made only after Webb and Labrador were aware of the

5   potential claims against them. *See* Dkt. No. 208, 208-1. These two facts also weigh in

6   favor of Plaintiff on the third, fourth, and seventh "badges" of fraud. Cal. Civ. Code

7   3439.04(b).

8       The fifth "badge" of fraud is also met because in each case the transfer was

9   "substantially all of the debtor's assets." *Id; see* Dkt. No. 208, 208-1. Finally,

10  Labrador Entertainment, Inc. did not receive "reasonably equivalent to the value of

11  the asset transferred" and both were left insolvent. Cal. Civ. Code 3439.04(b). *See*

12  Dkt. No. 208, 208-1.

13      As delineated above, nine out of the eleven "badges" of fraud weigh heavily in

14  favor of Plaintiff and the remaining two ("(6) Whether the debtor absconded (10)

15  Whether the transfer occurred shortly before or shortly after a substantial debt was

16  incurred") are not at issue in this case. Cal. Civ. Code 3439.04(b).

17      Thus, because the "badges of fraud" overwhelmingly weigh against Labrador,

18  and because the contrary inferences weigh solely in Plaintiff's favor, this Honorable

19  Court should DENY summary judgment in favor of Labrador and GRANT summary

20  judgment in favor of Plaintiff against all Defendants as fully set forth in Plaintiff's

21  Motion for Partial Summary Judgment.

22  **VIII. Labrador's Argument Relies Upon Inadmissible Conjecture on the Issue
    of the Manner in which the License to the New Zealand National Party
    was Administered.**

23

24

25      It is axiomatic that the evidence used to support a motion for summary

26  judgment under Fed. R. Civ. P. 56 must be, in its substance, admissible. *Romero v.*

27  *Nev. Dep't of Corr.*, 673 F. App'x 641, 644 (9th Cir. 2016); *see also* Fed. R. Civ. P.

28
-19-

56 advisory comm. note to 2010 amendment. Labrador has failed to identify any foundation which points to the admissibility of statements contained in Noel Webb's Declaration, in particular his unsubstantiated testimony regarding the administration of copyright licenses in New Zealand, for which Webb lacks any personal knowledge. *See* Dkt. Nos. 208, 208-1. The Court must therefore disregard any portion Labrador's argument which rests on testimony for which the declarant lacked personal knowledge, as such testimony is inadmissible under Fed. R. Evid. 901(b)(1). At minimum, Webb's lack of personal knowledge introduces considerable questions of credibility sufficient to give rise to a dispute of material fact precluding summary judgment in Labrador's favor.

## IX.  Labrador Had No Privity or Interest in the BB-AMCOS Agreement, and its MSJ Fails to the Extent it Seeks to Enforce Any of the Terms of the BB-AMCOS Agreement.

Labrador's MSJ contains lengthy references to passages of an unrelated agreement between Plaintiff and the Australian Mechanical Copyright Owners Society ("AMCOS"), known as the BB-AMCOS Agreement, which has no bearing whatsoever on the LBA or Labrador's obligations arising therefrom. *See, e.g.,* Labrador MSJ at 3. Labrador's reference to the BB-AMCOS Agreement is puzzling, as Labrador fails to connect the BB-AMCOS Agreement at any point to its otherwise circular arguments.

For the avoidance of doubt, any provision within the BB-AMCOS Agreement is wholly separate, and therefore irrelevant, to the LBA between Plaintiff and Labrador. Labrador does not claim, and could not carry its burden even if it did, that it is entitled to enforce the BB-AMCOS Agreement, as Labrador is not an intended beneficiary of the BB-AMCOS Agreement. *See Schauer v. Mandarin Gems of Cal., Inc.*, 125 Cal. App. 4th 949, 957 (2005), *quoting California Emergency Physicians Medical Group v. PacifiCare of California*, 111 Cal. App. 4th 1127, 1138 (2003).

Moreover, the referenced language from the irrelevant BB-AMCOS Agreement does not advance the ball on Labrador's arguments, because, as argued above: a) nothing in the primary contract between Labrador and Plaintiff required the removal of the Cue at any time; b) Labrador indisputably never gave notice that the Cue was to be removed prior to the commencement of the New Zealand Proceeding; and c) Labrador's indemnification obligations expressly survive even if an infringing use occurs after Labrador became aware of the infringing nature of the Cue.

WHEREFORE, for the reasons stated hereinabove, Plaintiff respectfully requests that this Court enter an order denying Labrador Defendants' Motion for Partial Summary Judgment.

DATED: August 3, 2021             Respectfully submitted,

                                  **BEATBOX MUSIC PTY, LTD.**

                                  */s/ Heather L. Blaise*
                                  HEATHER L. BLAISE, ESQ. (SBN 261619)
                                  123 N. Wacker Drive, Suite 250
                                  Chicago, IL 60606
                                  Telephone: 312-448-6602
                                  Email: hblaise@blaisenitschkelaw.com
                                  *Attorney for Plaintiff*