**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**(WESTERN DIVISION - LOS ANGELES)**

| | | |
|---|---|---|
| BEATBOX MUSIC PTY, LTD, | ) | CASE NO: 2:17-CV-06108-MWF-JPR |
| | ) | |
| Plaintiff, | ) | CIVIL |
| | ) | |
| vs. | ) | Los Angeles, California |
| | ) | |
| LABRADOR ENTERTAINMENT, INC, ET AL, | ) | Thursday, August 5, 2021 |
| | ) | |
| Defendants. | ) | |

**TELEPHONIC CONFERENCE RE INFORMAL DISCOVERY CONFERENCE**

**BEFORE THE HONORABLE JEAN P. ROSENBLUTH,**
**UNITED STATES MAGISTRATE JUDGE**

APPEARANCES:            SEE PAGE 2

Court Reporter:         Recorded; AT&T; Wave

Courtroom Deputy:       Bea Martinez

Transcribed by:         Exceptional Reporting Services, Inc.
                        P.O. Box 8365
                        Corpus Christi, TX 78468
                        361 949-2988

Proceedings recorded by electronic sound recording;
transcript produced by transcription service.

**APPEARANCES:**

For Plaintiff:            HEATHER L. BLAISE, ESQ.
                          Blaise & Nitschke, PC
                          123 N. Wacker Drive
                          Suite 250
                          Chicago, IL 60606


For Defendants:           J. CURTIS EDMONDSON, ESQ.
                          15490 NW Oak Hills Drive
                          Beaverton, OR 97006

                          RONAK PATEL, ESQ.
                          Jacobson & Associates
                          1352 Irvine Blvd.
                          Suite 205
                          Tustin, CA 92780

                          DOUGLAS J. ROSNER, ESQ.
                          2625 Townsgate Rd.
                          Suite 330
                          Westlake Village, CA 91302

**Los Angeles, California; Thursday, August 5, 2021**

**(Remote appearances)**

**(Call to Order)**

1  **THE CLERK:** Calling Case Number CV 17-6108-MWF-JPRx; *Beatbox Music Party, Ltd. Versus Labrador Entertainment, Inc., et al.*

    Counsel, please state your appearances for the record.

    **MS. BLAISE:** Heather Blaise, B-l-a-i-s-e, on behalf of Plaintiff.

    **THE COURT:** All right. Hello.

    **MS. BLAISE:** Hello.

    **MR. EDMONDSON:** Curt Edmondson on behalf of the Labrador Defendants and the Webb Defendants.

    **THE COURT:** All right. Hello to you as well.

**(Indisc. comment)**

    Do we have anybody else?

    **THE CLERK:** I thought I heard Ronak join but maybe that was the Court joining.

    **THE COURT:** All right. Speak now or forever hold you peace if there's somebody else on the phone.

**(No audible response)**

    I don't think there is so we're going to go forward.

    **THE CLERK:** I don't think so.

    **THE COURT:** Sorry?

1       **THE CLERK:** Okay.

2       **THE COURT:** Okay. All right. So I have read the
3 emails I got with the attachments from a couple week ago when
4 this issue was first raised. I understand that Plaintiff's
5 Application to Extend the Discovery Cutoff is still pending.

6       What I don't understand, Ms. Blaise, I mean it seems
7 to me pretty clear that these subpoenas do not comply with
8 Judge Fitzgerald's Case Management Order because to the extent
9 Defendants wanted to move to quash them or anything like that,
10 the discovery cutoff period has expired and so they would be
11 unable to do that.

12       So can you explain to me how -- what your theory is
13 for why these subpoenas are timely?

14       **MS. BLAISE:** Well, the responsive date is certainly
15 not timely; that is true. However, Ronak and I had an
16 agreement that was part of the stipulation that we would kind
17 of hold open the responses on the subpoenas, however we still
18 have a disagreement about whether or not the information sought
19 could be revealed based on some of their confidentiality
20 objections. And --

21       **THE COURT:** I missed the last part. What was the
22 last thing you said?

23       **MS. BLAISE:** Their confidentiality objections that
24 have been ongoing kind of in this case in terms of documents
25 that they -- that both parties refuse to turn over in terms of

1 bank records which are clearly at issue in the case and both --

2       **THE COURT:** I'm not -- for all I know everything

3 you're asking for is completely relevant and completely

4 appropriate but that's not the issue; the issue is the timing

5 and especially -- especially since you have an application

6 pending to extend the discovery cutoff date -- What is -- which

7 is opposed. What if Judge Fitzgerald denies that? I can't

8 allow things to go forward that are not in compliance with his

9 Case Management Order; particularly given that he might still

10 deny it. So --

11       **MS. BLAISE:** Right, I understand that.

12       **THE COURT:** Yeah. So I guess what I'm saying is, if

13 you need me to make a ruling that the subpoenas are quashed,

14 what is the due date on the subpoenas?

15       **MS. BLAISE:** I had issued them earlier but they had

16 a -- and they had a return date prior to the close of

17 discovery. And everyone objected to them because I didn't

18 provide a long enough time frame for them to object under Rule

19 45 so I withdrew them without prejudice and then reissued them.

20 I thought that they were actually going to comply with

21 discovery once they got the protective order that they sought

22 but instead I was told if there was documents that I wanted, I

23 could come and inspect them but there was too many to provide

24 to me and that was four days before the close of discovery.

25       **THE COURT:** Well if there's anything that one can say

1  about this case is that all of us should act well in advance of
2  wanting to do anything because it doesn't seem like there's a
3  lot of agreement about anything going on.
4  **(Participant Joined Conference announcement)**
5  **THE COURT:** All right. We have Mr. Rosner now.
6  So I do think it was incumbent upon you to do
7  whatever you needed to do way in advance. But be that as it
8  may, what is the return date? So what is the date for these
9  subpoenas that they are supposed to provide (indisc.)
10  **MS. BLAISE:** Let me tell you that. One second.
11  **(Pause)**
12  Sorry, I keep pulling up the old ones. Hold on one
13  second.
14  **THE COURT:** That's okay.
15  **(Participant Joined Conference announcement)**
16  **THE COURT:** Hello to Mr. Patel as well.
17  **MR. PATEL:** Good afternoon, Your Honor. I apologize
18  for my tardiness. I was not aware we had a conference today.
19  **THE COURT:** All right. I'm sorry about that.
20  All right. Ms. Blaise, I am looking at some
21  subpoenas that were emailed to --
22  **MS. BLAISE:** It's 8-12.
23  **THE COURT:** 8-12 is the date that you think the
24  return is?
25  **MS. BLAISE:** I think it says 8-12. I'm looking at --

1       **THE COURT:** Yes, I'm looking at one too that says
2  8-12.
3       **MS. BLAISE:** Yeah.
4       **THE COURT:** So here's what I would suggest we do.
5  But Mr. Edmondson, if you want to suggest something else or
6  tell me why this is not a good idea, that's fine.
7       She does have pending this Ex Parte Application to
8  Extend the Discovery Cutoff. If that is granted, then it seems
9  to me -- and maybe I'm missing something -- but it seems to me
10 there won't be a problem with these subpoenas.
11      The return date is not until the 12th; today is the
12 5th; so -- and today is Thursday. So if we waited until -- I
13 mean --
14      **MR. EDMONDSON:** I do -- I would like to comment, Your
15 Honor, if possible.
16      **THE COURT:** Okay, yeah, I will let you comment but
17 just give me a second.
18      So if we waited until the beginning of next week to
19 see if Judge Fitzgerald ruled on the extension request, then it
20 seems to me if he granted it, there wouldn't be a problem; if
21 he denied it I would just quash these. So why don't you tell
22 me why we shouldn't do that?
23      **MR. EDMONDSON:** Well Judge Fitzgerald's order at
24 Docket 37 is pretty clear that the return date of any discovery
25 has to be within the discovery cutoff.

1         **THE COURT:** Right.

2         **MR. EDMONDSON:** So the proper procedure would be for
3 either the Plaintiff to withdraw the subpoenas and then if
4 Judge Fitzgerald grants a change in the scheduling order, they
5 can re-serve the subpoenas on the banks. The banks can then
6 give notice to the third parties under the various bank
7 protection regulations. I can't (glitch in audio) exactly
8 whatever the California Civil Code on that but they give notice
9 to the third parties who are the wife and the daughter and then
10 they can either if they decide to have us object, we can
11 object; if they decide to have their own counsel, they can
12 object. I mean these individuals have their own rights and
13 they're not at the table.

14         **THE COURT:** Well wouldn't the bank --

15         **MS. BLAISE:** Where is the wife and the daughter? I
16 don't even know --

17         **THE COURT:** Hold on. Hold on.

18         Wouldn't the bank have already done that, given
19 notice to whoever they have to give notice to?

20         **MR. EDMONDSON:** They have given notice but our
21 position is that since it's improper to serve the documents,
22 where the return date is after discovery cutoffs, they're in
23 essence void and they should be quashed as they stand right
24 now. Maybe Judge --

25         **THE COURT:** I understand your argument and I think

1  technically you're correct.  But what I'm asking you is what's
2  the point of that?  What's the point of doing -- going through
3  all of that if on Monday, for instance, Judge Fitzgerald is
4  just going to grant her application?  It's just going to run up
5  costs for everyone.  She'll have to withdraw those or I will
6  have quashed them and then she'll have to re-serve them.  I
7  mean if the third parties have already gotten notice and as of
8  Monday or Tuesday or something the extension might be granted,
9  why should we go through this whole rigmarole?
10         **MR. EDMONDSON:**  Well I disagree, Your Honor, and the
11 reason is is that because the subpoenas are void, they haven't
12 had to go out and explore whether to hire new counsel which is
13 saving them money or take appropriate steps.  Basically --
14         **THE COURT:**  Well then (glitch in audio) they're not
15 (glitch in audio) until somebody quashes them and --
16         **MR. EDMONDSON:**  No but effectively, we can object to
17 them on procedural grounds.  They, as individuals who hold
18 these bank accounts, may want to object to them on substantive
19 grounds and that ultimately is their decision because they're
20 not at the table at this point.  My point is it's going to save
21 everybody a lot of time and money if they're quashed or
22 withdrawn and we wait to what Judge Fitzgerald says with regard
23 to the scheduling order.  And then how hard is it to re-serve a
24 bank subpoena?  It probably costs all of an extra 50 bucks.
25         **THE COURT:**  All right.  Well --

1  **MS. BLAISE:** But this is now the second time I'm
2  doing it.
3     **THE COURT:** Go ahead.
4     **MR. SPEAKER:** Your Honor --
5     **THE COURT:** Well that's -- Ms. Blaise, I mean you
6  don't have a big leg to stand on because he is correct that you
7  are late and that your timing does not comply with Judge
8  Fitzgerald's order. Mr. Edmondson is correct on the merit
9  clearly.
10    What I was suggesting is something that, you know,
11 might alleviate some of the red tape if we just waited a couple
12 of days. Here we are on Thursday. All I'm suggesting is we
13 wait till Monday but, you know --
14    And I don't agree that -- I mean any -- until
15 subpoenas are quashed, it seems to me, somebody should either
16 have to object or have to comply with them or move to quash
17 them. And frankly there hasn't been a formal motion to quash
18 them yet, although I guess I'm considering that.
19    I -- you know, Ms. Blaise, unless you can give me a
20 good reason why or can pick a hole in what Mr. Edmondson is
21 technically saying, I don't agree with sort of his strategy but
22 I think legally he's correct, --
23    **MS. BLAISE:** Well I do think that there's a judicial
24 economy component of it.
25    I also do think that the part of the premise of the

1  ex parte motion was that there's a -- in part a stipulation
2  that we were going to hold over discovery specifically for
3  these subpoenas as between the Cohen defendants, not -- and I
4  don't mean to not retain the objections as to what should not
5  be turned over.  I mean to -- for there to be compliance with
6  the subpoenas.  And part of the ex parte is based upon that
7  stipulation.  And, you know, this was all occasioned by their
8  refusal to turn over documents --
9           **MR. SPEAKER:**  (Indisc.)
10          **MS. BLAISE:**  -- and with me making ample attempts to
11 try to gain compliance through their obligations under Rule 26.
12 I mean, I've never experienced anything like it with people
13 being unwilling and then on four days before the day of
14 discovery closing telling me that there's so many documents
15 that they haven't turned over that I could come over and
16 inspect and copy them myself.
17          **MR. EDMONDSON:**  Your Honor, Curt Edmondson for the
18 court reporter.  We're -- Ms. Blaise is re-arguing a discovery
19 motion that this Court has already ruled on.  The --
20          **MS. BLAISE:**  That is not true.
21          **MR. EDMONDSON:**  -- issue here -- the issue before us,
22 Your Honor, is these new bank subpoenas on these bank accounts
23 which are for third parties and the service of them after the
24 close of discovery.  I've -- don't get to change Judge
25 Fitzgerald's scheduling order.  He's the only one who gets to

1 changed it. And I'm not trying to be obstructionist here but
2 I'm just trying to play by the rules. There are lots of things
3 I would like to do with regard to discovery that we've been --
4 haven't been able to do just because of the fact that, you
5 know, there's been a pandemic in Australia. And that's just
6 the way these cases play out. But --
7     **THE COURT:** (Indisc.)
8     **MR. EDMONDSON:** -- with (indisc.) --
9     **THE COURT:** Go ahead, go ahead.
10     **MR. EDMONDSON:** But with regard to this very, very
11 narrow issue, it seems so clear on the judge's schedule order
12 that if I have to sit down and write a two-page motion to
13 quash, I'll do it. But then I have to send my client a bill.
14     **THE COURT:** Well let me ask you this, Mr. Edmondson.
15 So let's -- Ms. Blaise's motion or ex parte application before
16 Judge Fitzgerald was to extend the discovery cutoff 30 to 60
17 days. So what if Judge Fitzgerald grants it but only extends
18 the discovery cutoff by let's even say 30 days from the date of
19 this order? That would probably still not give Ms. Blaise
20 quite enough time to serve these subpoena such that any motion
21 to quash them could be adjudicated, you know, pursuant to Rule
22 37 within that 30 days. So are you going to again object that
23 they're not timely?
24     **MR. EDMONDSON:** Well, Your Honor, I can't speak for
25 what the third parties might do or not do with regard to their

1  lawyers if they have to retain them.  I just want to point out

2  is that the original scheduling order, which was entered at 37,

3  was then modified at I believe 164, which gave us close to a

4  year to get discovery done.

5          So my sense is from Judge Fitzgerald that he will

6  want to have this case closed and ready for trial in November.

7  I can't speak for him.  I can only look at what's in the

8  record.

9          And it's a reality, everybody doesn't get all the

10  discovery they want and you just go to trial with, you know,

11  the 10,000 documents you've got from both sides.  It's just the

12  way it is.  I don't know what to say.

13         But I've never had someone serve -- well, I did have

14  that in front of Judge Sagar about six months ago where a

15  client served a records subpoena prior to Rule 26 conference.

16  I had to move to quash.  And that particular attorney was

17  sanctioned for $3,000.  So, you know, I just -- I don't know

18  what to do here and that's why I set up the informal

19  conference, Your Honor, and --

20              **THE COURT:**  All right.  Well, I would --

21              **MR. PATEL:**  Your Honor?

22              **THE COURT:**  Yes.  Go ahead.  Who's speaking?

23              **MR. PATEL:**  I want to point out -- oh, sorry.

24              **THE COURT:**  Who's speaking?

25              **MR. PATEL:**  Ronak Patel with -- of Michael Cohen and

1 MCPC Holdings.

2     **THE COURT:** Okay.

3     **MR. PATEL:** I just wanted to raise the point that the
4 subpoenas on their face are invalid. They were not properly
5 served, even if these discovery cutoff issues did not exist.
6 They were supposed to be personally served; they were served by
7 mail. So I think there are a lot more endemic issues that one
8 way or another she's going to have to reserve (indisc.).

9     **THE COURT:** All right. Well I have no idea if that's
10 true or not. It's not anything that anybody brought up before,
11 and I haven't looked into it. But does anybody else have
12 anything they want to say?

13     **MS. BLAISE:** I just --

14     **THE COURT:** Okay.

15     **MS. BLAISE:** -- would agree with Your Honor that it
16 makes sense from a judicial economy perspective that, you know,
17 we wait to see if the judge is going to rule on the ex parte,
18 and otherwise I'm going to be in the same situation and --

19     **THE COURT:** You might be. I -- look, I wish counsel
20 cooperated more and got along better and could work some of
21 these things out in a way that didn't require that people wound
22 up duplicating their efforts and etcetera, etcetera and that
23 things be as contentious as possible. But apparently that's
24 not going to happen.

25     And I do think that Mr. Edmondson is correct on the

1   law.  I mean, and clearly these subpoenas don't comply with

2   Judge Fitzgerald's case management order and, therefore, they

3   are not properly served, regardless of whether as Mr. Patel

4   says there are issues with the actual service itself.  So I am

5   going to quash the subpoenas for now.

6          I hope, and maybe this is vain hope, but I hope that

7   if the discovery cutoff is extended, that counsel can

8   immediately work together cooperatively in a way that will

9   enable, you know, these subpoenas, to the extent they're

10  appropriate, and maybe they aren't, I don't know, but to the

11  extent they're appropriate to be adjudicated.  I'm not saying

12  they should be served but at least counsel can maybe work

13  together, that if you get them out there right away, you can

14  come to some sort of agreement where, you know, there's a

15  shortened schedule for any hearing on them, or something like

16  that.  Because, you know, so that at least Ms. Blaise will get

17  a ruling on the merits one way or the other as to whether she

18  is entitled to the information the subpoenas seek.

19         So for now, though, I will quash those subpoenas.  So

20  I believe we're talking about four subpoenas (indisc.) I want

21  to make sure I have (indisc.)here.  Let's see.  My

22  understanding is there's one to Chase, there's two to Wells

23  Fargo, there's one to Bank of America, and there's one to

24  Merrill Lynch; is that correct?

25         **MS. BLAISE:**  That's correct.

1   **THE COURT:**  All right.  So I'm going to quash those
2   five subpoenas.  And then, again, what I'm going to do is I'm
3   going to order that if the discovery cutoff is extended, I'm
4   going to order counsel to meet-and-confer concerning the
5   subpoenas and how they might be issued and a briefing schedule
6   set, or whatever, so that their appropriateness can be
7   adjudicated before the end of the discovery cutoff date.  All
8   right?
9   **MR. EDMONDSON:**  Okay, Your Honor.  I'm --
10  **MS. BLAISE:**  Thank you, Your Honor.
11  **MR. EDMONDSON:**  Thank you very much.  And --
12  **MR. PATEL:**  Thank you.
13  **MR. EDMONDSON:**  -- one request, Your Honor.
14  **THE COURT:**  Yes.
15  **MR. EDMONDSON:**  Just if you can put in your order
16  identify those banking institutions so when they're sent to the
17  bank, it's clear from the order that the subpoenas are quashed,
18  I'd appreciate that.
19  **THE COURT:**  Sure.  I'll -- I mean, I am going by what
20  I have that was emailed to me on July 28th.  And so I'm going
21  to assume those are the five subpoenas at issue, but I'm happy
22  to put their names and etcetera, identifying information, in my
23  order.
24  **MR. EDMONDSON:**  Okay, Your Honor.  We'll supplement
25  with Ms. Martinez.

1        **THE COURT:** But what does that mean?

2        **MR. EDMONDSON:** No, I mean I'll just make sure you

3   have the accurate information. I don't have the 28th email in

4   front of me.

5        **THE COURT:** All right. Well, I mean, this is what I

6   am adjudicating today, what was sent to me on July 28th

7   (indisc.) subpoenas. And I am not (indisc.) quash subpoenas

8   that have never even been presented or I've never even been

9   informed anything about. So these are the five I'm going to

10  put in my minute order. If there -- if it turns out there's

11  something else you're concerned about, you can call

12  Ms. Martinez and we'll try to get it on the -- a call in or

13  something.

14       **MR. EDMONDSON:** Okay.

15       **THE COURT:** All right? So is --

16       **MR. EDMONDSON:** Thank --

17       **THE COURT:** -- there anything further?

18       **MR. EDMONDSON:** Thank Your Honor.

19       **THE COURT:** You're welcome.

20       **MS. BLAISE:** Thank you.

21       **MR. SPEAKER:** Thank you, Your Honor.

22       **MR. SPEAKER:** Thank Your Honor, and I hope you

23  enjoyed your vacation.

24       **THE COURT:** I'm sorry?

25       **MR. SPEAKER:** I said thank you, and I hope you

```
 1  enjoyed your vacation.
 2          THE COURT:  Well, it was actually where Mr. Edmondson
 3  lives, in the Cascade Mountains.  So --
 4          MR. SPEAKER:  Oh, okay.
 5          THE COURT:  -- (indisc.) the fire --
 6          MR. SPEAKER:  I hope you avoided a fire then.
 7          THE COURT:  Well, we had to completely change all our
 8  arrangements on the first day and we wound up going to the
 9  Olympic Peninsula instead so --
10          MR. SPEAKER:  Oh.
11          THE COURT:  But it was --
12          MR. SPEAKER:  (Indisc.)
13          THE COURT:  -- that was very nice as well.  So I
14  hope --
15          MR. SPEAKER:  Oh, good, good.
16          THE COURT:  Yeah.  I hear those fires are bad so I
17  hope you're staying safe, Mr. Edmondson.
18          MR. EDMONDSON:  Thank you.
19          THE COURT:  All right.  Good --
20          MR. SPEAKER:  (Indisc.)
21          THE COURT:  -- luck to everybody.  And perhaps we'll
22  talk again.  All right.  Bye.
23          MR. SPEAKER:  Bye, everyone.
24          MR. SPEAKER:  Bye-bye.
25          THE CLERK:  This Court is now adjourned.
```

(Proceeding adjourned)

# CERTIFICATION

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.

_____                August 9, 2021

Signed                                            Dated

*TONI HUDSON, TRANSCRIBER*