UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

HONORABLE MICHAEL W. FITZGERALD, U.S. DISTRICT JUDGE


BEATBOX MUSIC PARTY, LTD.,        )
                                  )
          Plaintiff,              )
                                  )
             vs.                  )
                                  )  2:17-CV-6108-MWF
LABRADOR ENTERTAINMENT, INC., et )
al.,                              )
                                  )
          Defendants.             )
_____


REPORTER'S TRANSCRIPT OF HEARING

Los Angeles, California

Friday, October 1, 2021


_____


AMY DIAZ, RPR, CRR, FCRR
Federal Official Reporter
350 West 1st Street, #4455
Los Angeles, CA 90012

*Please order court transcripts here:  www.amydiazfedreporter.com*

```
1         APPEARANCES OF COUNSEL:

2
          For the Plaintiff:
3

4                         BLAISE & NITSCHKE PC
                          By:  Heather Blaise, Attorney at Law
5                              Thomas Key, Attorney at Law
                          123 North Wacker Drive, Suite 250
6                         Chicago, Illinois 60606

7

8
          For Defendants:
9

10                        LAW OFFICES OF DOUGLAS J. ROSNER
                          By:  Douglas Rosner, Attorney at Law
11                        2625 Townsgate Road, Suite 330
                          Westlake Village, California 91361
12
                          LAW OFFICE OF J. CURTIS EDMONDSON
13                        By:  Curtis Edmondson, Attorney at Law
                          15490 NW Oak Hills Drive
14                        Beaverton, Oregon 97006

15                        JACOBSON & ASSOCIATES
                          By:  Daniel Jacobson, Attorney at Law
16                        Ronak Patel, Attorney at Law
                          315 Centennial Way
17                        Tustin, California 92780

18

19

20

21

22

23

24

25
```

1          THE CLERK:  Calling item number one, case number

2     CV-17-6108-MWF, Beatbox Music Party, Ltd. vs. Labrador

3     Entertainment, Inc., et al.

4          Counsel state your appearance for the record,

5     beginning with counsel for plaintiff.

6          MS. BLAISE: Good morning, Your Honor.  Heather

7     Blaise, B-l-a-i-s-e, on behalf of plaintiff.

8          MR. KEY: Good morning, Your Honor.  Thomas Key,

9     K-e-y, on behalf of plaintiff.

10          MR. JACOBSON: Good morning, Your Honor.  Dan

11     Jacobson.  I represent Michael Cohen and MCPC Holdings, LLC.

12          MR. PATEL: Good morning, Your Honor.  Ronak Patel,

13     P-a-t-e-l, also representing Michael Cohen and MCPC Holdings,

14     LLC.

15          MR. ROSNER: Good morning, Your Honor.  Douglas J.

16     Rosner appearing on behalf of the Labrador defendants.

17          THE COURT:  Good morning, Counsel.

18          THE CLERK:  Your Honor, there is one more

19     appearance, please.

20          THE COURT:  Thank you.

21          MS. HERMAN: Good morning, Your Honor.  This is

22     Jocelyn Herman.  I'm specially appearing on behalf of

23     nonparty Robert Mince.

24          MR. EDMONDSON: And good morning, Your Honor.  Curt

25     Edmondson appearing on behalf of Labrador defendants.

1              THE COURT:  Good morning, Counsel.

2              I prepared a brief tentative, and unfortunately it

3    didn't get out to you.  It's been sent now.  Let me summarize

4    it and then maybe we can -- Ms. Sanchez, if we get off now

5    can we get back on in 10 minutes?

6              THE CLERK:  Yes, Your Honor, we can.

7              THE COURT:  All right.  Then what -- let me just

8    say, my tentative view, absent the certain things with the

9    issue preclusion, is to deny all three motions.

10             I'm interested -- the issue preclusion, or perhaps

11   claim preclusion, as it's technically better viewed as that,

12   is, you know, is obviously an extremely technical and

13   difficult issue.

14             So I'll certainly let the parties argue that.  But I

15   also am just very interested in knowing what the consequences

16   are.  I think, you know, faced with this technical issue, the

17   parties are trying to deal with it, and I'm not exactly sure,

18   depending on how I rule, what the effect of that ruling would

19   be one way or the other.

20             Next, apart from that, this just doesn't strike me

21   as the sort of case, which sometimes does occur, you know,

22   say for instance in an insurance coverage case or something,

23   where both sides think they are right, and they file dueling

24   summary judgment motions.  But it's clear that one side has

25   to win, that there isn't going to be a trial.  It's just a

1    matter of trying to decide who is right, in other words.

2             Here, it just doesn't strike me that way.  The

3    motions are mirror images of each other.  It seems both sides

4    do a good job of saying why there is factual issues, and

5    therefore it seems to me both motions should be denied.

6             And then on the motion to amend, you know, diligence

7    is really the only factor under the Ninth Circuit law that

8    matters, or at least it's the initial factor.  And here,

9    while assuming all of the allegations which are serious,

10   which have been made were true as to why amendment is

11   necessary based on the shifting accounts, some of which are

12   made under oath.  Nonetheless, that could have been

13   discovered if the discovery had been propounded earlier.

14            And more importantly, you know, this case is either

15   going to go to trial -- assuming the Court can accommodate

16   that, which is a different issue -- when we set it or it

17   won't.

18            And in any case, there always can be wrongdoing,

19   which is either learned of or continues up to the date of

20   trial, and at some point you've got to cut it off.  I mean,

21   let's say in copyright or trademark cases, it's often the

22   case where there is -- it's an ongoing course of conduct,

23   then you keep on adding things and adding things and adding

24   things, at some point you have to cut it off, and say this is

25   for a different lawsuit, or amend the judgment after you get

1    it.

2              You know, I just, at some point we've just got to

3    really bring an end to this case, or at least the beginning

4    of an end to this case.

5              So we are going to get off.  We will get back on at

6    10:15.  You will have a chance to look at what I wrote in the

7    tentative, and then we will discuss this in a structured

8    fashion.

9              All right.  Thank you, Counsel.

10             (Thereupon, there was a brief recess.)

11             THE COURT:  Ms. Sanchez, if you would please ask

12   Counsel to once again make their appearances, just so the

13   record will reflect that everyone is back on the line.

14             THE CLERK:  Yes, Your Honor.

15             Recalling item number one, case number

16   CV-17-6108-MWF, Beatbox Music Party, Ltd. vs. Labrador

17   Entertainment, Inc., et al.

18             Counsel, please restate your appearances for the

19   record, beginning with counsel for plaintiff.

20             MS. BLAISE:  Heather Blaise, B-l-a-i-s-e, on behalf

21   of plaintiff.

22             MR. KEY:  Thomas Key, K-e-y, on behalf of plaintiffs.

23             MR. JACOBSON:  Dan Jacobson, I represent Michael

24   Cohen and MCPC LLC -- excuse me -- MCPC Holdings, LLC.  I'll

25   get my tongue untied.

1          MR. PATEL: Ronak Patel, P-a-t-e-l, for Michael Cohen

2    and MCPC Holdings, LLC, as well.

3          MR. ROSNER: Douglas J. Rosner for Labrador

4    defendants.

5          MS. HERMAN: Jocelyn Herman specially appearing on

6    behalf of nonparty Robert Mince.

7          MR. EDMONDSON: And Curt Edmondson for Labrador

8    defendants.

9          THE CLERK:  That is everyone, Your Honor.

10          Can I confirm that Ms. Diaz is on the line?

11          THE COURT:  Good morning again, Counsel.

12          How we are going to do this is that I want to start

13    off by having a short, plain statement, not a lot of

14    argument, but just very short as to why in that party's view

15    there is or is not issue preclusion in this case.

16          And then we'll do it in the order of Beatbox, and

17    then the Cohen defendants, and then the Labrador defendants.

18          And having done that, then I'll allow further

19    argument on the point, and then also the opportunity to

20    answer the questions in that regard, which in the tentative,

21    which is to say if there is or isn't, then what effect does

22    that have on the case?

23          And then after that, we'll approach the issue of are

24    there genuine issues of material fact as to the motions that

25    prevent there from being entitlement to judgment as a matter

1      of law, as Rule 56 requires.

2          And then we'll deal at the end with this issue of

3      amending the Complaint.

4          So let's start off then with Beatbox.  Again, I know

5      you've worked hard on the briefs, but nonetheless, if

6      anything, it may be too hard to be honest, because at some

7      point when you are that in the weeds, it's just very

8      difficult to figure out what the basic contentions are.

9          So starting with Beatbox, what in Beatbox's view is

10      the story on issue preclusion here?  Is there any?  Why is

11      that, very briefly, and then we'll go through.  And then I'll

12      let you come back and say, expand on that argument, and say

13      what effect one way or the other there is in that regard.

14          So let's start with Beatbox.

15          MS. BLAISE: Sure.  Good morning, Your Honor.

16          First things first, I am in Greece, and my computer

17      is not turning on.  So in order to go through the elements of

18      issue preclusion, I may need Thomas Key to do that component

19      of it.

20          But what I will say, as it relates to the issue

21      preclusion, is that here there has clearly been a finding of

22      infringement; however, under the terms of both of the

23      agreements, there doesn't need to be a finding of

24      infringement in order to trigger the indemnity applications.

25          And so while issue preclusion, which I'll let him go

1     through the elements and why we need them, while that is one

2     road for a finding that the indemnity is to be enforced here,

3     that is not the only one here.

4          And there cannot be any genuine dispute as to

5     whether or not that there is a claim of infringement by a

6     third party.  And under both indemnity provisions, that is

7     all that is necessary.  The fact that we have a judgment just

8     escalates the fact that there should have been indemnity by

9     both parties, by both defendants.

10         And issue preclusion is one way to get there, but

11    there is also the issue that cannot be legitimately disputed,

12    which is there has been a claim of infringement as it relates

13    to the Cue.

14         So with him on the line, Thomas, if you could run

15    through the factors of issue preclusion and how we meet them

16    just really quickly as the Judge has indicated.

17         THE COURT:  Before we do that, we'll come back and

18    do that.

19         Let me then hear in a similar vein from the Cohen

20    defendants and the Labrador defendants, and then I'll let you

21    come back and be more precise.

22         As to the Cohen defendants, what is, in a nutshell,

23    what is your position on the issue preclusion?

24         MR. PATEL: Dan, do you mind if I take it?

25         MR. JACOBSON:  Go ahead, please.

1          MR. PATEL: The main point is that the judgment is

2     not enforceable against Mr. Cohen.  He was not a party to

3     that litigation, his interests were not represented in that

4     litigation, he did not participate, the Courts did not have

5     jurisdiction over him.

6          Issue preclusion is to prevent parties from

7     inconsistently litigating a matter.  Mr. Cohen never had a

8     chance to present his defenses.  His defenses were not at

9     issue in the case; and therefore, issue preclusion should not

10    apply.

11         THE COURT:  Well, since we are dealing with issue

12    preclusion and not claim preclusion, it occasionally can be

13    used ostensibly, to use the old terminology, in the sense of

14    collateral estoppel.  There is a lot of caveats to that under

15    either California law or federal law.

16         But let's assume for a moment that you are right.

17    What then in your view, if there is no issue preclusion, then

18    what affect does that have on the motions for summary

19    judgment?

20         MR. PATEL: Well, my view is that if there is no

21    issue preclusion, there can be no summary judgment.  That is

22    the key lynchpin of their argument.

23         I forgot to mention in my previous statement that

24    also Beatbox vociferously argued that the claim -- that the

25    song was not infringing in the New Zealand litigation.  It is

1    the one inconsistent position here.

2         So the main point is that if the issue preclusion

3    doesn't apply, then summary judgment can't be had.

4         THE COURT:  And if issue preclusion does apply, is

5    there some other reason then why summary judgment would --

6    that motion, obviously, Beatbox's motion -- should not be

7    granted, or in your view does the -- that motion for summary

8    judgment rise or fall on whether or not there is, in fact,

9    issue preclusion?

10        MR. JACOBSON: Your Honor, Dan Jacobson for the Cohen

11   defendants.  If I may answer that very quickly?

12        The indemnity clause simply doesn't apply to Beatbox

13   who has gained -- is attempting to gain access here as a

14   third-party beneficiary.  They have tried to twist -- Beatbox

15   has tried to twist like a pretzel the terms assignee,

16   licensee and successor, and they just -- which appear in, as

17   I recall, in the indemnification clause.  And they -- and

18   they are just not -- they are just not there.

19        Also, there is one word, reliance.  Reliance.  The

20   only breach of contract -- the only -- this is -- Beatbox has

21   brought a breach of contract case against Mr. Cohen based on

22   breach of warranty.

23        And there is no privity.  Now, they can have

24   privity, that is fine.

25        MS. BLAISE: I would like to object, off the scope of

1    what the Court told us to argue.

2              THE COURT:  Counsel, first of all, I am quite

3    capable of deciding that for myself.  However, I was about to

4    say that that is, in fact, the case.

5              Counsel, please don't object in the future or

6    interrupt.

7              Yes, you are getting beyond what I wanted.  I just

8    wanted a brief answer yes or no.

9              Therefore, it is the view of the Cohen defendants

10   that even if issue preclusion were to apply here, that the

11   motion for summary -- partial summary judgment should be

12   denied.

13             Is that correct?

14             MR. JACOBSON: Yes.

15             THE COURT:  All right.  Now let me hear from the

16   Labrador defendants.

17             The same questions.  A very brief sense of how you

18   view the issue preclusion; and therefore -- and then in your

19   view what happens if there is issue preclusion, and what

20   happens if there isn't issue preclusion?

21             MR. EDMONDSON: Yes, Your Honor.  Curt Edmondson for

22   the Labrador defendants.

23             I think for the issue of issue preclusion, it's

24   necessary to go back to the New Zealand judgment itself and

25   read it very carefully.

1          If you look at 208-6, I'm referring to ECF page 81

2     out of 486, paragraph 6 of the judgment, the judgment clearly

3     says that this is a judgment against the National Party.

4          And then the language of the judgment goes on to say

5     that liability of the remaining defendants, which would

6     include Beatbox, AMCOS and Labrador, potentially Cohen, is to

7     be decided at a different trial.

8          So they bifurcated this trial into two sections.

9     The judgment came out against the National Party, but there

10     has been no final judgment as to the remaining defendants.

11     And it is that necessity of the final judgment which is an

12     element of issue preclusion.

13          As for if we are to overlook exactly what the Court

14     in New Zealand said, we still have an issue of whether the --

15     whether Beatbox had a license to distribute the work and

16     whether that is something that the New Zealand court

17     considered.

18          And they didn't consider it, and in fact, they said

19     those issues are to be determined at a later date.  Because I

20     think they use the language there of whether the third

21     party's liability outweighs the outcome of this trial --

22          THE COURT:  Counsel, you are getting a bit more just

23     too much in the weeds here.

24          What I wanted was a quick overview, and then go on

25     to say what in your view is the result, depending on whether

1    I agree with this reasoning or not.

2              MR. EDMONDSON: Yes, Your Honor.

3              So we have a factual -- the result is if you find

4    issue preclusion, it's -- there would be a factual question

5    as to then the breach of the contract.  So we would still go

6    forward with the case unless you, of course, look at our

7    motion and find that there is no triable issue of fact as to

8    the license.

9              And then there is a subquestion to issue preclusion,

10   whether itself is a decision on equity, or is in itself a

11   factual question that the jury has to decide.

12             And I don't know if any of us addressed that in our

13   briefs.

14             THE COURT:  Thank you.

15             All right.  Let me go back then.

16             Let's then deal first with the plaintiff's motion.

17   And I'll hear from Beatbox as the moving party, but please

18   be -- just answer the question I have, which is in your view

19   does there have to be someone -- a winner here, or in fact,

20   is it at least -- as a matter of logic or common sense, is it

21   the case that both motions can be denied, and because there

22   is factual disputes on both sides, and in that sense the

23   motions are independent of each other.

24             Let me hear from Beatbox.

25             MR. KEY: Your Honor, this is --

1          MS. BLAISE: Heather Blaise on behalf of Beatbox.

2          I think there has to be a winner as it relates to

3    whether or not there was an infringement that triggers the

4    indemnity clause, or a claim of infringement that triggers

5    the indemnity clause for these cases.

6          I think that is -- it's undisputable.  There was a

7    claim for copyright infringement.  Whether or not there was a

8    final in New Zealand --

9          THE COURT:  Ms. Blaise, Ms. Blaise, let me interrupt

10   you for a moment.

11         Ultimately, there has to be a winner or a loser.

12   That is pretty common in litigation, but what is it that

13   means that there has to be a winner or loser now?

14         In other words, what is it about that dispute, about

15   indemnification under the contract, which in your view is

16   inherently a legal issue, which one way or the other has to

17   be determined now?

18         MS. BLAISE: Well, it greatly limits the trial amount

19   that we are going to proceed with.  If you were going to have

20   an infringement trial, which is unnecessary under the facts

21   that we have before us, or if we are going to have a damages

22   and liability as it relates to what no one can dispute as a

23   finding of infringement or a claim of infringement.

24         So it greatly limits the amount of trial and amount

25   of testimony, including, you know, expert musicologist

1          testimony that the jurors are going to hear, which is totally

2          unnecessary under these facts, no one can legitimately

3          dispute.

4                    THE COURT:  All right.  Thank you.

5                    Then continue with your argument, please.

6                    MS. BLAISE: Did you want to go back through the

7          elements of issue preclusion or are we --

8                    THE COURT:  If you wish.  And if, Mr. Key, if you

9          are going to do that, then that is fine.  If you want to do

10         that now, then that will be fine.

11                   MS. BLAISE: Okay.

12                   MR. KEY: Yes.  Thomas Key on behalf of the

13         plaintiff, Your Honor.

14                   The elements for issue preclusion are that the

15         issue's identical to the issue decided prior, that it was

16         actually litigated, that the issue was necessarily decided in

17         the prior judgment, the prior judgment was final and on the

18         merits, and the party against whom preclusion is brought must

19         be identical or in privity with the party in the prior

20         proceedings.

21                   In this case, we have a very clear statement from

22         the court in Australia, but not just the New Zealand party,

23         but Eminem-Esque as a cue, a cue produced by Mr. Cohen and

24         then subsequently published by Labrador, was an infringement

25         upon Lose Yourself, the original Eminem song.

1          So there we have the issue being identical of that

2     infringement at issue, and that it was actually litigated.

3     It was necessary, as it was a copyright infringement case,

4     and the prior judgment was final as to the finding of

5     infringement that the track is an infringing track.

6          Additionally, Cohen protested their addition to the

7     case, but had every opportunity to participate, and Labrador

8     did participate in the matter and is bound by its holding.

9          It's crucial that these -- this sort of issue not be

10    relitigated, as it's been highly inefficient to do so, but

11    also, the parties should not be able to get out of that

12    ruling of infringement in Australia.

13         But should this Court determine that the issue

14    preclusion does not apply, the claim for infringement

15    occurred, and that in and of itself triggered indemnification

16    liability.

17         And that is where the issue as to whether or not

18    there truly is a genuine disputed -- a genuine dispute of

19    material facts comes into play, because if there are no true

20    material facts being disputed by the other parties here as

21    the claim for infringement, the moment that that was levied,

22    there was a liability incurred under indemnification.

23         THE COURT:  All right.  Thank you.

24         Ms. Blaise, would you like to continue?

25         MS. BLAISE:  I think that succinctly states our

1    position as it relates to the indemnity issue, and the fact

2    that really that is a legal issue to be decided.  And all the

3    factual issues springing from that, those can be tried.

4           But at the end of the day, there was an

5    infringement.  There was a finding, there is a claim, the

6    indemnity provisions are triggered.

7           THE COURT:  All right.  Thank you.

8           Let me now hear from the Cohen defendants in

9    opposition to plaintiff's motion.

10          But as part of that, again, please let me know

11   whether your view, one or the other of these motions

12   necessarily needs to be granted.  Of course, you hope it's

13   the defense motion, but -- or whether it is at least, you

14   know, theoretically possible, or it's as a matter of logic,

15   it is conceivable that both of the motions can be denied.

16          MR. JACOBSON: Your Honor, this is Dan Jacobson for

17   the Cohen defendants.

18          The reliance is extremely important.  There is no

19   privity.  There is no argument but that there is privity to

20   this third-party beneficiary.  Under California law there

21   doesn't have to be privity in order for them to be -- in

22   order for Beatbox to be a third-party beneficiary.

23          But a third-party beneficiary as to what?  And the

24   only thing that they have complained about is the warranties

25   that Mr. Cohen made to Labrador in the Mr. Cohen/Labrador

1    contract of February 14, 2008.

2            And case after case, in the absence of privity,

3    California law requires a showing that a plaintiff relied on

4    an alleged omission or misrepresentation.  That is in the

5    *Keegan vs. American Honda Motors*, and *Coleman vs. Boston*

6    *Science*, and from the Eastern District, *Asghari vs.*

7    *Volkswagen*, also from the Second District.  If there is no

8    privity in the breach of contract case, is based on a breach

9    of warranty, then there must be reliance on the warranty.

10           And we have deposition testimony from the owner of

11   Beatbox, a small business, about 15 employees, Mr. Baker, who

12   also runs the company, in his words, that he not only never

13   saw the warranties in the 2008 Mr. Cohen/Labrador contract,

14   but Labrador never provided him with that paper.  And I'm not

15   sure that they were supposed to.

16           But the point is that he never -- Beatbox never

17   relied on the warranties.  Without reliance on the warranty,

18   that's it.  There is -- there is no -- there is no fraudulent

19   transfer because there is nothing fraudulent to be

20   transferred.  There is nothing.  There is nothing.

21           So we have the law on our side, we have the facts on

22   our side from the other side, and when you have the law and

23   the facts on your side, you don't have to pound on the table,

24   as they say.  So we are not pounding on the table.

25           THE COURT:  So let's say that I would determine that

1       reliance was an issue of fact for the jury.  In your view

2       then would both summary judgment motions be denied?

3               MR. JACOBSON: We have not brought a summary judgment

4       motion.

5               THE COURT:  Oh, that's correct.  That is Labrador.

6               MR. JACOBSON: Labrador has.

7               And if I may for just one moment?  That brings up

8       something else, and that is that Beatbox confuses Labrador

9       and Mr. Cohen.

10              So for instance, in the breach of contract cause of

11      action, using the plural, Beatbox says, "Defendants violated

12      the 2009 contract" I think section Roman VI.

13              Well, we weren't -- Mr. Cohen wasn't part of that

14      contract.  And that -- and then if you look throughout the --

15      that is the Labrador/Beatbox contract.

16              If one then looks throughout the rest of the breach

17      of contract cause of action, we don't even have an allegation

18      that there is a breach.  We do have mention of this -- of the

19      warranties, which is why I believe that that is the only

20      possible thing that they should be going for.  And reliance

21      just isn't there.

22              And so in answer to your question, in order to find

23      for us on reliance, it would have to be a sua sponte decision

24      under I think Rule 40 or Rule 41.  But we don't have a motion

25      for summary judgment.

1          So there is at least a question, and I don't think

2     there is a question, because we have the other side's

3     testimony.

4          THE COURT:  All right.  Thank you.

5          Is there anything else that you wish to say in

6     opposition to the plaintiff's motion?

7          MR. JACOBSON: There isn't.  There are other things

8     that are in our papers, but the main thing is, is just no

9     reliance, and there has to be reliance.

10          THE COURT:  All right.  Thank you.

11          Let's turn to the Labrador defendants.  To the

12     extent that they can be separated out, let's deal with your

13     motion in a minute, but I -- that raises the question of, do

14     you see the two motions for summary judgment as mirror images

15     of each other, where one has to prevail regardless of which

16     one that is, or is there in your view a basis in logic, in

17     which both could be denied if there are factual disputes?

18          And if that is the case, then let's focus on why in

19     your view the plaintiff's motion should be denied.

20          MR. EDMONDSON: Yes, Your Honor.  Curt Edmondson for

21     the Labrador defendants.

22          If we look at the five elements that Mr. Key spoke

23     about, three of those elements are missing from the New

24     Zealand litigation.

25          First of all, were the identical issues tried in New

1   Zealand?  And the short answer is, if you read the opinion,

2   they were trying the Eminem-Esque Cue as produced by the

3   National Party.  It was modified from an original cue

4   supplied by Beatbox to the National Party.

5         So it's not the same work.  And so we don't have the

6   identical issues being litigated in New Zealand because the

7   subject matter is not the same.

8         Now, they may be similar, but that is not how

9   copyright cases are analyzed.  They are analyzed by looking

10  at the same work and determining if there is an infringement

11  of the same work.

12        The second issue there also is that the analysis in

13  New Zealand being a tort claim brought by Eight Mile Style

14  was handled under New Zealand law.  So we have both

15  procedural issues that we have in under federal or California

16  law that are different.

17        For example, in New Zealand, it's very rare, and

18  not -- not -- I couldn't find a case where they have tried

19  copyright cases to a jury.  It's almost always done on a

20  bench basis.

21        So what we have is the trier of fact being the

22  judge, she may have done a good job or a bad job, but the

23  reality is in the United States we take copyright cases to a

24  jury almost all the time.

25        The second thing is they have a different analytical

1      process for making a determination of an infringement.

2            And so while it's similar, they talk about the

3      extrinsic and intrinsic tests, it is not exactly the same.

4      So what we have is a different subject matter, which is I

5      think element one of Mr. Key's five points, and we have

6      different procedural matter.

7            Second -- the third is on the second point, is that

8      there was no participation by Labrador or Cohen in this case.

9      Because as I pointed out in the decision, the Court there

10     bifurcated the case into two proceedings.

11           And the second proceeding would have gone forward

12     and there might have been a determination, but Beatbox made a

13     strategic choice to come to the United States and litigate

14     these issues here.

15           So the decision is clear that they are not -- you

16     can't infer that this decision will be imported into our

17     decisionmaking process here.

18           If Beatbox had -- if Beatbox had decided to litigate

19     the case in New Zealand and get a judgment and then try and

20     enforce that judgment here in the United States, we might be

21     able to raise these different defenses, but their issue

22     preclusion argument would be stronger, but that is not the

23     facts of this case.  They cut it off midway and they came

24     over here.

25           And lastly, number four, and this tied back to what

1      I just said of Mr. Key's points, is there has not been a

2      final judgment as to Labrador and Cohen in that case.

3           So that would deny -- in our view, you should deny

4      the motion for summary judgment based on the argument of

5      issue preclusion.

6           So we didn't bring a motion for -- on the basis of

7      issue preclusion, our motion is clear --

8           THE COURT:  Right.

9           MR. EDMONDSON -- on licensing, and that is not what

10     you asked us to talk about.

11          THE COURT:  All right.  Thank you then.

12          And let me then give Beatbox a chance to respond in

13     support of its motion, and then we'll discuss the Labrador

14     motion for partial summary judgment.

15          Either Ms. Blaise or Mr. Key?

16          MR. KEY: Mr. Key on behalf of the plaintiff, Your

17     Honor.

18          I want to correct the record as regard to what

19     counsel for Labrador represented at the ruling in New

20     Zealand.  Looking to the document that they submitted to this

21     court as Docket Number 208-6, looking at paragraphs 462 and

22     463, the -- I'm going to read this quote, just to present in

23     full context what the Court ruled as regard to the

24     Eminem-Esque Cue separately from the National Party

25     advertisement and the use of the Cue therein.  462,

1    "Eminem-Esque has substantially copied Lose Yourself and is a

2    substantial copy of Lose Yourself because the differences

3    between Eminem-Esque and Lose Yourself are minimal.  The

4    close similarities and the discernable differences in drum

5    beat, melodic lines, the piano figures as between Lose

6    Yourself and Eminem-Esque make Eminem-Esque strikingly

7    similar to Lose Yourself and Eminem-Esque substantially

8    reproduces the essence of Lose Yourself."

9         In paragraph 463, the Court writes, "The parts that

10   Eminem-Esque used in the National Party's election

11   advertisements also substantially reproduce Lose Yourself.

12   It is disingenuous to represent that the Court did not

13   consider the cue as itself, but only used the cue as produced

14   or reproduced by the National Party."

15        The Court did look to the cue and determined the

16   original cue at issue in this case was infringing.

17        Additionally, as to the issue preclusion, even if it

18   were determined that there are some sort of procedural

19   differences between copyright that would preclude this Court

20   from hearing that infringement, which plaintiff submits there

21   are none, the fact that there was a claim for copyright

22   infringement, which led to damages by Beatbox, triggers the

23   indemnity provision, and that issue that there was such a

24   claim is precluded from further litigation.

25        THE COURT:  All right.  Thank you, Counsel.

1          And now let me turn to the Labrador defendants to

2     argue for their motion for partial summary judgment.

3          MR. EDMONDSON: Yes, Your Honor.  Curt Edmondson for

4     Labrador.

5          So our argument is fairly straightforward.  We

6     have -- there is a license between Labrador and Beatbox.  The

7     license was for works in a library.  And in 2009, those works

8     were distributed, and one of those works was Eminem-Esque.

9          And then in 2012, and again in 2014, those works

10    were withdrawn from the library.  And it was the fault, or

11    the, I would say the act of negligence of Beatbox not to

12    remove those works from the library.

13         As a consequence of not removing those works from

14    the library, they didn't have a license to distribute those

15    works to AMCOS and to the marketing company, and then

16    eventually to the National Party.

17         So since they didn't have a license under the

18    contract, their distribution of the works was not something

19    they could claim under indemnity, because indemnity --

20    because they materially breached the contract before any --

21    their claim of breach of our contract.

22         So that is our main argument on summary judgment.

23    And we believe we submitted sufficient evidence for you,

24    sitting as the trier of fact, to make that determination that

25    from 2012 onwards, there was no cue distributed and licensed

1    to Beatbox.

2          THE COURT:  All right.  Anything else on that issue,

3    Counsel?

4          MR. EDMONDSON: The only thing that ties directly to

5    that is that under indemnity law, and I think we cited our

6    cases, is that if you are actively negligent or materially

7    negligent in causing the problem, the claim of indemnity

8    disappears.  And I think that is addressed in our Subsection

9    C of our summary judgment.  And that ties back into

10   distributing a cue that they don't have a license to do.

11         THE COURT:  All right.  Thank you.

12         Before we hear from Beatbox, do the Cohen defendants

13   have anything to add on this issue?

14         MR. JACOBSON: Your Honor, Dan Jacobson.

15         Just briefly.  I should mention that the -- if one

16   can somehow get beyond the reliance issue, which I don't

17   think is possible, but if one can, then in the 2008 -- and I

18   have got to stress this because there is a confusion between

19   the 2009 contract between Labrador and Beatbox, and the 2008

20   contract between Mr. Cohen and Labrador.

21         There simply is nothing in or related to the

22   indemnity agreement that makes -- that uses the word assignee

23   or its root word, or licensee or its root word, or successor

24   or its root word as those terms would apply to any sort of

25   indemnity.

1           I also want to briefly mention that at the end of

2    the points and authorities, memorandum of points and

3    authorities, they -- the Beatbox plaintiff tries to bring in

4    a lawyer named Robert Mince, tries to bring in a couple of

5    trusts.  Under California law, you can't sue a trust because

6    a trust is a relationship and a contract.  And you can't

7    sue the marriage of Mr. and Mrs. Jones.  You might sue Mr.

8    Jones, you might sue Mrs. Jones, but it's a relationship, and

9    it's a contract.  And --

10          THE COURT:  Well, I think, Counsel, we'll deal with

11   this later.

12          MR. JACOBSON: Thank you.

13          THE COURT:  Let me give Beatbox the chance to speak

14   in opposition to the defense motion for partial summary

15   judgment.

16          MR. KEY: Your Honor, as to the issue of

17   indemnification --

18          THE COURT:  For the record --

19          MR. KEY: Thomas Key.  Sorry.  My apologies, Your

20   Honor.

21          As to the issues of that the claim was drawn, how

22   that would affect the indemnification.

23          One, it's a factual dispute that Labrador has not

24   provided sufficient evidence for their claim that the song

25   was somehow withdrawn from the library.  That wouldn't

1    comport with the terms of the contract, nor would that -- is

2    there any -- the claims by citing e-mails that have Excel

3    spreadsheets attached, but they haven't provided the Excel

4    spreadsheets to this Court, there isn't any documentary

5    evidence that would then back up these claims that the song

6    had been removed at any point.

7            But even if this Court were to accept that as true,

8    the indemnification provision of the agreement between

9    Labrador and Beatbox did not provide that a subsequent

10   removal would absolve them of liability.

11            Labrador explicitly warranted, represented that the

12   compositions were original and are original, and do not

13   infringe upon any copyright work or the rights of any

14   third-party.

15           On the day at which the agreement was signed, the

16   song Lose Yourself was infringed by the Cue.  And that is --

17   although the ruling of infringement came subsequent, the fact

18   that the song was infringing is a static fact that occurs for

19   the existence of the song; and therefore, they violated that

20   and were subject to the indemnification as soon as a claim

21   was raised.

22           And then Heather wanted to address the issue

23   regarding reliance as invoked by counsel for Cohen.

24           MS. BLAISE: If you like me to, Your Honor, I think

25   that it's well stated in our briefs, but the reliance is

1    embodied in the contract themselves.

2              THE COURT:  And just take a moment, then, and

3    summarize that argument, so here at the hearing we have kind

4    of a good account of what the arguments are.

5              MS. BLAISE: Certainly.

6              In executing the Labrador/Beatbox agreement,

7    Labrador represented, warrants that it has agreements with

8    all of its songwriters, and any other right holders

9    underneath it, represents and warrants that it has all the

10   rights that it's conveying, which includes the

11   representations and warranties of originality.  It's the

12   foundation of copyright exploitation.

13             And so Beatbox is necessarily relying on the

14   existence of those agreements, including those

15   representations and warranties, by executing the agreements

16   that it has with Labrador.  So the reliance is there.

17             There is no requirement that Beatbox then has to

18   review every single agreement that Labrador entered into that

19   should inure to the benefit as a publisher.

20             And that is all.

21             THE COURT:  Thank you, Ms. Blaise.

22             Let me hear, then, in response from the Labrador

23   defendants in support of their motion.

24             MR. EDMONDSON: Yes, Your Honor.  Curtis Edmondson

25   for response.

1          So in response to Beatbox's argument that by
2     delivery of a cue, that it is ipso facto infringing, I have
3     two points to raise on that.
4          First of all, that claim of infringement has never
5     been made under U.S. law.  And the contract clearly says that
6     this is to be judged under California law.
7          So while there might have been an infringement of a
8     different work in New Zealand brought by Eight Mile Style,
9     Eight Mile Style has never sued Labrador or Cohen in the
10     United States and got a finding of infringement.
11          And there is no question that Eight Mile Style,
12     being highly litigious, would have brought that claim if they
13     thought it had some merit to be brought in the United States.
14     And they never did that.
15          And then kind of, I consider it almost a new
16     argument that by delivery of the work, a warranty of an
17     infringement occurs at the point of delivery.  If we were to
18     accept that argument as true, which it's not, then the
19     statute of limitations would have run from 2009; and so
20     therefore, their claim would be barred under either a
21     three-year, if you were to use the copyright infringement
22     statute of limitations, or four years under California
23     contract statute of limitations.  This case was brought in
24     2017.
25          So they can't really have it both ways by saying by

1     delivery of a cue, that it's ipso facto determined to be

2     infringement.  Because infringement by definition is a legal

3     conclusion that the Court determines, it's not a

4     characteristic of the work itself.

5              So that is -- that is the nature of warranties, of

6     infringement, both in the patent context, trademark context

7     or copyright context.  They are different than saying, "We

8     will deliver a widget that will operate for 20 years without

9     failure."  They are just completely different animals.

10             THE COURT:  All right.  Thank you.

11             Thank you, Counsel.  This has been very helpful on

12    the motions for summary judgment.

13             Let's now turn to Beatbox's motion to amend the

14    pleadings.  I, you know, indicated my tentative thoughts in

15    this regard.

16             One way of looking at it is simply given how strict

17    the Ninth Circuit is in regard to diligence over every other

18    thing, is that there would have been time to have discovered

19    all this, even accepting as true the machinations about which

20    Beatbox complains.

21             But beyond that, I just also just want to say, as a

22    practical matter, as someone who has to govern this case, you

23    know, there -- at some point it either has to settle or go to

24    trial.  And arguably, the best way to get it to settle, since

25    that has yet to happen, is to force it to go to trial.

1                And it just, you know, no matter what the issue is,

2       what comes up, you know, what if this had all been discovered

3       the morning of trial?  I don't think anyone seriously thinks

4       that we would have then continued it when the jury has been

5       summonsed and the witnesses were all prepared to testify.

6                At some point if Beatbox feels that someone outside

7       the current contour of the case has done something wrong,

8       then either bring a new lawsuit or, especially if it's an

9       alter ego issue, seek to amend the judgment that it would

10      ultimately obtain.

11               And I don't say that lightly, because there is

12      doctrines that if the case, as the claims could have been

13      brought initially, but then weren't brought, then they should

14      be subsumed in whatever the judgment is.

15               Of course here, if in fact the claims were

16      deliberately hidden through perjury, which in a nutshell is

17      what Beatbox is saying, of course that would be a powerful

18      argument that that doctrine shouldn't apply.

19               But nonetheless, let me hear then from Beatbox in

20      support of its motion to add parties.

21               MS. BLAISE: Certainly.

22               So first, I just want to speak to the issue that is

23      in the tentative, which says a five-month delay.  In

24      actuality, these were supplemental requests.  The underlying

25      requests have been existing for some time, and the

1    information that was withheld continued to be withheld into

2    the supplemental requests, as well.

3            So to your point, it is true we could just -- we

4    could keep going and keep going, and unraveling all the

5    transfers that have been made, which seems to happen every

6    single time that we have a deposition, and the information is

7    changing, and it's a game of hide the ball.

8            I don't think that a court should reward that by

9    allowing -- allowing defendants who are transferring assets

10   when they know of claims against them, um, to be able to just

11   not be responsive to discovery, and then present information

12   at the last minute that they have known the entire time, and

13   provide false testimony that they have known since the day

14   that they made their false testimony that it was false. I

15   don't think that it supports a good judicial economy or

16   justice for litigants.

17           At the end of the day, we do ultimately have to go

18   to trial.  It would be nice if we were going to trial on all

19   of the -- a complete disclosure of discovery.

20           And that is all I have.

21           THE COURT:  All right.  Thank you.

22           And I'll give you the chance to respond.

23           Let me hear first from the Cohen defendants.

24           MR. PATEL: Your Honor, much of Ms. Blaise's position

25   is based off factual assumptions that are just inaccurate.

1              In respect to her claims about discovery, the time

2      and place for dealing with that was through the discovery

3      process, the discovery motions.  Beatbox did not avail itself

4      of those procedures, which is in the rules as they admit

5      them.

6              THE COURT:  Well, but look, Counsel, to the degree

7      that parties -- I think one could reasonably expect that

8      parties aren't going to completely change their positions, or

9      to put it more bluntly, that they aren't going to perjure

10     themselves.

11             On the merits of the allegations which are being

12     made, do you dispute that the account which Beatbox made is

13     correct or not?

14             MR. PATEL:  I dispute that our client perjured

15     himself.

16             THE COURT:  I'm sorry, Counsel, I can't hear you,

17     and I don't know that the court reporter can.

18             MR. PATEL:  Can you hear me now?

19             THE COURT:  Yes.

20             MR. PATEL:  This is Ronak Patel for the record.

21             We vociferously disagree that we withheld anything,

22     that perjury was committed.  We disagree with both of those

23     positions.  None of the discovery requests made were directed

24     towards that information.

25             As for -- she does claim there was a failure to

1          supplement information.  There is no duty to supplement

2          information in a deposition.

3                    THE COURT:  All right.  And what else, then, do you

4          have to say in regard to the motion to amend?

5                    MR. PATEL: I think your ruling -- your tentative is

6          correct, that -- that and the trust aren't legal persons.

7          You can't add a trust as a party to a case in California.

8                    THE COURT:  Yeah, but I could allow, as a technical

9          matter, but I could allow the Trustee to be named.  I don't

10         think we should get hung up on a technicality here.

11                   MR. PATEL: Understood, Your Honor.

12                   THE COURT:  All right.  Do the Labrador defendants

13         have anything they would like to add?

14                   MR. EDMONDSON: Yes, Your Honor.  Curt Edmondson for

15         the Labrador defendants.

16                   I believe Beatbox's motion was to add Noel Webb's

17         wife.  And as you know, California is a community property

18         state.  And so at the end of the day, the community assets,

19         if they are subject to the judgment, which we don't believe

20         they are, because we don't believe there is an alter ego

21         basis here, but if that were the case, my short answer, and

22         I'm not trying to be flippant, it's like, so what?  You've --

23         you can get to Noel, you can get to -- why get to his wife?

24                   The whole point of the motion to amend at the last

25         minute is simply, it appeared to me, to sort of almost a bit

1    of harassing the spouse to raise the tension of the case.

2              I don't -- I never saw what end it was because at

3    the end of the day, the judgment can be satisfied by Labrador

4    itself, and that is how I've always viewed the fraudulent

5    conveyance claims.  They are tangential to the core issue of

6    this case, will Beatbox ever get a judgment on the merits

7    against Labrador?

8              So I don't see any additional benefit to adding the

9    wife except to stress out the wife, of course, and that is

10   not the point of litigation.  The point of litigation is to

11   get the judgment and see if they can get their money if they

12   ever get a judgment.

13             THE COURT:  Thank you.

14             Ms. Blaise?  I'll give you the last word.

15             MS. BLAISE: Thank you.

16             So first dealing with Labrador.  The assets of

17   Labrador have been raided, so that is the reason we find

18   ourselves in a fraudulent conveyance case, which has already

19   been fully briefed and expanded on.

20             The reason why the wife is a proposed party is

21   because his client testified that he had no idea of certain

22   transfers coming in and out of his account, and that the only

23   other person who would know would be his wife, which is the

24   only other person that had access to the account.

25             So had his testimony been that he knew where that

1   money went, then maybe we wouldn't be in the place where we

2   need to also have his spouse, who has apparently been

3   transferring the assets of a target defendant, as well.

4           And then as it relates to Cohen, the discovery

5   requests certainly found information that was lied to under

6   oath.  And there were straight up lies under oath.  And then

7   for months and months and months, no supplement, no

8   withdrawing those statements, not until the very last minute

9   during a deposition.

10          So I think the documents will speak for themselves,

11  but let's call it what it is.  There was definitely a lie,

12  and it was the subject of the discovery and it was definitely

13  subject to the duty to supplement.

14          That's all I have.

15          THE COURT:  All right.  Thank you, Counsel.

16          Again, this has been helpful to me.  The motions,

17  all three motions, are taken under -- yes?

18          MS. HERMAN:  I apologize for interrupting.  This is

19  Jocelyn Herman.  I was specially appearing on behalf of

20  Robert Mince.  I was hoping I could be heard for a quick

21  second.

22          THE COURT:  Very quickly.  Obviously at some point,

23  there will be plenty of opportunities to dispute an amended

24  pleading, if it should happen.  I'm looking at it from what

25  is happening in the litigation of the case, but since you are

1    here, I'll let you be heard very briefly.

2              MS. HERMAN: My focus is with plaintiff's motion for

3    summary judgment which seeks relief against my client, who is

4    not a party.

5              So I just would like to make that clear on the

6    record, if the Court is inclined to do something other than

7    go, as you've tentatively indicated, and denied the motion,

8    we would then state that it cannot be granted as to my client

9    who is not a party.

10             THE COURT:  All right.

11             MS. HERMAN: That is all I would like to raise to the

12   Court's attention.

13             THE COURT:  All right.  Thank you, Counsel.

14             All right.  Counsel, thank you for your briefs,

15   thank you for your arguments.  The motions are taken under

16   submission.

17                   *****     *****     *****

18

19

20

21

22

23

24

25

1

2      I certify that the foregoing is a correct transcript from the

3      record of proceedings in the above-titled matter.

4

5

6

7      ---------------------------

8

9      Amy C. Diaz, RPR, CRR            October 7, 2021

10     S/  Amy Diaz

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25