1
2
3
4
5
6
7
8                 **UNITED STATES DISTRICT COURT**
9                 **CENTRAL DISTRICT OF CALIFORNIA**
10

| | |
|---|---|
| BEATBOX MUSIC PTY, LTD., | CASE NO: 2:17-cv-6108 MWF (JPRx) *Assigned to the Hon. Michael W. Fitzgerald* |
| Plaintiff, | |
| v. | **FINAL PRETRIAL CONFERENCE ORDER** |
| LABRADOR ENTERTAINMENT, INC. D/B/A SPIDER CUES MUSIC LIBRARY, a California corporation; NOEL PALMER WEBB, an individual; MICHAEL COHEN, an individual; LABRADOR ENTERTAINMENT, LLC; MCPC HOLDINGS, LLC; WEBB FAMILY TRUST and DOES 1-20, inclusive, Defendants. | |
| AND ALL RELATED ACTIONS | Trial Date:     December 6, 2022 FAC:           January 24, 2020 Cross-Claim Filed: November 21, 2017 Action Filed:     August 17, 2017 |

11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Following pretrial proceedings, pursuant to F.R.Civ.P. 16 and L.R. 16, IT IS ORDERED:

1.     The parties are:

Plaintiff Beatbox Music Pty, Ltd. (hereinafter "Beatbox")

Defendants Labrador Entertainment, Inc. d/b/a Spider Cues Music Library, Noel Palmer Webb, Labrador Entertainment, LLC, and Webb Family Trust (hereinafter "Labrador")

Defendants Michael Cohen and MCPC Holdings, LLC (hereinafter "Cohen")

Each of these parties has been served and has appeared. All other parties named in the pleadings and not identified in the preceding paragraph are now dismissed.

The pleadings which raise the issues are:

a)  Beatbox's First Amended Complaint (Dkt. 105)

b)  Cohen's Affirmative Defenses to First Amended Complaint (Dkt. 114)

c)  Labrador's First Amended Affirmative Defenses and First Amended Counterclaim (Dkt. 139). Cohen contends that there are no issues arising out of any pleading of Labrador or the Labrador parties, as against Mr. Cohen or MCPC Holdings, Inc. as detailed in Mr. Cohen's attorney Ronak Patel's 11/12/20 letter, attached hereto as Exhibit "A". What is entitled by the Labrador parties as a "counterclaim" is *void ab initio*. See Exhibit "A" and footnote 1.

d)  Cohen's Answer to Labrador's First Amended Counterclaim (Dkt. 144)

e)  Beatbox's Response to Labrador Entertainment Inc. et al.'s Affirmative Defenses to the First Amended Complaint and Counterclaims (Dkt. 145)

f) Labrador's Answer to First Amended Complaint for Fraudulent Conveyance (Dkt. 160)

g) Cohen's Crossclaim against Labrador (Dkt. 38)

h) Labrador's Answer to Cohen's Cross Claim (Dkt. 161)

2.      Federal jurisdiction and venue are invoked upon the grounds: [Give a concise statement of facts necessary to confer federal jurisdiction and venue. State whether the facts requisite to federal jurisdiction are denied or admitted.]

3.      The trial is estimated to take ten (10) trial days.

4.      The trial is to be a jury trial. At least seven (7) days prior to the trial date the parties shall file and serve by e-mail, fax, or personal delivery: (a) proposed jury instructions as required by L.R. 51-1 and (b) any special questions requested to be asked on voir dire.

5.      The following facts are admitted and require no proof:

I.      PARTIES

A.      Beatbox & AMCOS

(1)      Plaintiff Beatbox Music Pty Ltd is a music sub-publisher located in Australia and doing business in the Oceania region.

(2)      As part of its regular operations, Beatbox distributes its library of production music to individuals and entities who use music for audiovisual works, like commercials and television programming.

(3)      The Oceania Region includes the countries of Australia and New Zealand.

(4)　As part of its regular business operations, Beatbox enters into contract with various publishers and licensers of libraries of music compositions from other publishers, and then operates as a sub-publisher for those libraries in the Oceania Region.

B.　The Cohen Defendants

(5)　Defendant Michael Allen Cohen ("Cohen") is a music composer and songwriter.

(6)　Defendant MCPC Holdings, LLC, is a Nevada Limited Liability Company with its central address located at 2050 South Magic Way #295, Henderson, NV 89002.

(7)　Defendant MCPC Holdings, LLC was created in June 2017. (Nevada SOS Entity Information for MCPC Holdings, LLC, formed on June 19, 2017.)

(8)　Defendant Cohen is the sole manager of and person with authority for Defendant MCPC. (June 22, 2021, Deposition of Michael Cohen, as representative of MCPC Holdings, LLC at 14:8-13.)

(9)　Defendant Cohen is the only individual with authority to transfer funds in or out of Defendant MCPC. (June 22, 2021, Deposition of Michael Cohen, individually, and exhibits attached at 14:19-22.)

C.　The Labrador Defendants

(10)　Defendant Labrador Entertainment, Inc. is a music publishing and licensing company that is domiciled and incorporated in California.

(11)　Defendant Noel Palmer Webb is an individual who is domiciled and resides in California.

(12)　Defendant Noel Palmer Webb formed Defendant Labrador Entertainment, Inc. in 2000. (June 23, 2021, Deposition Transcript of Noel Palmer Webb, as representative for Labrador Entertainment, Inc., and exhibits attached, at 10:22-23.)

(13)   Defendant Noel Palmer Webb owns a 50% ownership interest in Defendant Webb Family Trust. (*Id.*)

(14)   Defendant Labrador Entertainment, LLC is a limited liability company registered in California.

(15)   Defendant Noel Palmer Webb is the sole managing member of Defendant Labrador Entertainment, LLC. (June 23, 2021, Deposition of Noel Palmer Webb, as representative of Labrador Entertainment, LLC, at 14:13-15.)

II.   ALLEGED COMPOSITION OF "SQ MC EMINEM-ESQUE"

(16)   Defendant Cohen is the composer of the composition / sound cue that was titled "SQ mc eminem esque" ("Eminem-esque") (Composer's Agreement.)

(17)   Defendant Cohen composed Eminem-esque prior to February 14, 2008. (Composer's Agreement.)

III.   2008 COMPOSER'S AGREEMENT BETWEEN COHEN AND LABRADOR

(18)   On February 14, 2008, Defendant Cohen and Defendant Labrador Entertainment, Inc. entered into a contract entitled the "Composer's Agreement". (Dkt. 1-1 at 8, 7.1.)

(19)   Under the terms of the Composer's Agreement, Cohen agreed to convey compositions he had written and composed, including "Eminem-esque" to Labrador. (Dkt. 1-1 at 6, 1.1.)

(20)   Eminem-esque was one of the compositions conveyed to Labrador from Cohen, pursuant to the terms of the Composer's Agreement. (*Id.*)

(21)   Under the terms of the Composer's Agreement, Labrador and its associates were granted the right to assign the Composer's Agreement, in whole or in part, to any third party or to grant any licenses for the compositions and sound cues. (Dkt. 1-1 at 8, 7.1.)

(22)   Under the terms of the Composer's Agreement, it inured and bound each party's heirs, subsidiaries, affiliates, corporations, licensees, successors and assigns. (Dkt. 1-1 at 8, 7.1.)

(23)   Under the terms of the Composer's Agreement, Cohen assigned Labrador the right to alter, expand, adapt, and translate the Compositions, including Eminem-esque, in consultation with Cohen. (Dkt. 1-1: at 6, 1.1(e).)

IV.   THE 2009 AGREEMENT BETWEEN BEATBOX AND LABRADOR

(24)   On or about April 1, 2009, Beatbox entered into a contract with Labrador Entertainment, Inc. (Dkt. 1-2 at 1; Dkt. 139 at 8:1-4.)

(25)   Eminem-esque, "SQ mc eminem esque" was one of the Compositions conveyed to Beatbox under the 2009 contract between Beatbox and Labrador Entertainment, Inc. (Dkt. No. 1-2 at 1; 1.1; Dkt. No. 1-1 at 1.)

(26)   Beatbox became a licensor of the Composition "SQ mc eminem esque" in 2009, per the terms of the contract between Beatbox and Labrador Entertainment, Inc. (Dkt. No. 1-2 at 1; 1.1.)

(27)   Under the terms of the 2009 contract between Beatbox and Defendant Labrador Entertainment, Inc., Labrador represented and warranted and undertook that the Compositions conveyed to Beatbox, including "Eminem-esque" pursuant to the 2009 contract were "original." (Dkt. No. 1-2 at 16(iv).)

(28)   Under the terms of the 2009 contract between Beatbox and Defendant Labrador Entertainment, Inc., Labrador represented and warranted and undertook that the Compositions conveyed to Beatbox pursuant to the 2009 contract did not and would not infringe any other copyrighted work or the rights of any third party. (*Id.*)

(29)   Under the terms of the 2009 contract between Beatbox and Defendant Labrador Entertainment, Inc., Labrador represented and warranted

1  and undertook that it was party to or had entered into good and valid contracts

2  with the writers and composers of the Compositions. (Dkt. No. 1-2 at 16(iii).)

3  (30)  Under the terms of the 2009 contract between Beatbox and

4  Defendant Labrador Entertainment, Inc., Labrador represented, warranted and

5  undertook that it agreed to indemnify Beatbox and hold Beatbox harmless from

6  any and all loss, liability and expense incurred by Beatbox because of any

7  copyright infringement, infringement of rights, or other claim inconsistent with

8  the guaranties, warranties, and representations found in the 2009 contract

9  between Beatbox and Defendant Labrador Entertainment, Inc. (Dkt. 1-2 at

10  16(v).)

11  (31)  Pursuant to the terms of the 2009 contract between Beatbox and

12  Labrador, in the event that Beatbox defaulted in rendering any statement of

13  account, making any payments as provided under the contract, or failed to fully

14  comply with any material terms or conditions of the 2009 contract, Labrador

15  would have the right to cancel the contract. (Dkt. 1-2 at 3, 13.)

16  (32)  Pursuant to the terms of the 2009 contract, Labrador could

17  lawfully cancel the 2009 contract if any default by Beatbox continued for 30

18  days or more, and Labrador provided notice by registered mail and fax, and

19  Labrador waited for the thirty-day default period to expire before cancelling

20  the contract. (Dkt. 1-2 at 3, 13.)

21  V.   THE 2014 COPYRIGHT INFRINGMENT CLAIMS MADE BY

22       EIGHT-MILE AGAINST BEATBOX IN NEW ZEALAND ("THE

23       NEW ZEALAND CASE")

24  (33)  On or about 2015, Beatbox was joined to the action by the New

25  Zealand National Party and AMCOS as a third-party defendant.

26  (34)  Defendant Cohen had notice of the claims in the New Zealand

27  Court as of 2014. (December 3, 2019, Deposition of Michael Cohen, at 34:18-

28  23.)

(35)   Defendant Cohen had direct notice of the lawsuit in the New Zealand Case in 2015. (December 3, 2019, Deposition of Michael Cohen at 36:10-14.)

## VI.   FRAUDULENT CONVEYANCE OF ASSETS BY THE LABRADOR DEFENDANTS

(36)   As of June 21, 2021, Defendant WFT owns all shares of Defendant Labrador Entertainment, Inc. (June 21, 2021, Deposition of Noel Palmer Webb, individually and exhibits attached at 27:9-10, Exhibit 1.)

(37)   Defendant WFT owns rental property at 6700 Capistrano Avenue, West Hills, CA 91307. (June 21, 2021, Deposition of Noel Palmer Webb, individually and exhibits attached at 74:23-75:3.)

(38)   Only Defendant Webb and his wife, Sharon Consulo Webb, had access to the Defendant WFT bank accounts. (June 21, 2021, Deposition of Noel Palmer Webb, individually, and exhibits attached at Exhibits 5, 6, 7, and 8.)

(39)   Defendant Noel Palmer Webb testified as the person most knowledgeable for Labrador Entertainment, Inc. (June 23, 2021, Deposition of Noel Palmer Webb, as representative of Labrador Entertainment, Inc. and exhibits attached at 9:18-20.)

(40)   Defendant Noel Palmer Webb testified as the person most knowledgeable for Labrador Entertainment, LLC. (June 23, 2021, Deposition of Noel Palmer Webb, as representative of Labrador Entertainment, LLC.)

(41)   Defendant Webb sold all assets of Defendant Labrador Entertainment, Inc. to Defendant Labrador Entertainment, LLC for $67,000.00 in 2017. (December 3, 2019, Deposition of Noel Palmer Webb, individually and exhibits attached at 202:14-21; June 21, 2021, Deposition of Noel Palmer Webb, individually and exhibits attached at 15:3-23; June 21, 2021, Deposition

of Noel Palmer Webb, individually and exhibits attached at 31:15-32:7, Exhibit 2.)

(42)   Defendant Labrador Entertainment, LLC continues to administer music libraries and/or music catalogs. (June 23, 2021, Deposition Transcript of Noel Palmer Webb, as representative of Labrador Entertainment, LLC, at 11:15-12:9.)

VII.   FRAUDULENT CONVEYANCE OF ASSETS BY DEFENDANT MICHAEL COHEN

(43)   Defendant Cohen testified as representative of Defendant MCPC. (June 22, 2021, Deposition of Michael Cohen, as representative of MCPC Holdings, LLC.)

(44)   Defendant Cohen initially funded Defendant MCPC in September of 2017 with about $1,687,106.34 from the Michael Cohen Revocable Trust. (June 22, 2021, Deposition of Michael Cohen, individually, and exhibits attached, at 43:1-21, Exhibit 2; June 22, 2021, Deposition of Michael Cohen, as representative of MCPC Holdings, LLC, at 17:17-23, 18:17-25, 20:8-14.)

(45)   Defendant Cohen, as manager of Defendant MCPC, hired attorney Robert J. Mintz to create the MACFST. (June 22, 2021, Deposition of Michael Cohen, as representative of MCPC Holdings, LLC, at 13:4-10.)

(46)   Defendant MCPC is fully owned by the MACFST. (June 22, 2021, Deposition of Michael Cohen, as representative of MCPC Holdings, LLC, at 9:18-23, 13:14-16.)

6.   The following facts, though stipulated, shall be without prejudice to any evidentiary objection: [list facts not to be contested though not admitted]

7.     Claims and Defenses[1]:

[This section of the Final Pretrial Conference Order is intended to finalize, in advance of trial, the claims and defenses to be presented at trial. In accordance with F.R.Civ.P. 16(c), parties will be precluded from presenting claims or defenses not set forth in this order, in the manner required by this order, unless the order is modified to prevent manifest injustice. Only claims or defenses contained in the complaint and answer and any court authorized amendment or supplement may be included in this Final Pretrial Conference Order. If a party chooses to abandon a claim or defense previously alleged, it may do so by not including it in this order, and the failure to include any pleaded claim or defense will be deemed to effect such a waiver. The following format must be employed:]

Plaintiff(s):

(a)     Plaintiff plans to pursue the following claims against the following defendants:

Claim 1: Defendants Labrador and Cohen breached their contract with Plaintiff when they failed to guarantee that the compositions were original and that none of the compositions infringed any other copyright work or the rights of any third party;

Claim 3: Defendant Labrador violated express indemnity provision of its contract with Plaintiff when it failed to indemnify Plaintiff after Plaintiff incurred damages resulting from Defendant's breach of its contract with Plaintiff;

---

[1] Cohen contends: **Error! Main Document Only.**Co-defendants the Labrador parties filed what they called a "counterclaim" against Mr. Cohen. The pleading is *void ab initio,* as those parties had no right to seek relief from Mr. Cohen for numerous reasons. Those reasons including that the time for filing any new or amended pleading had passed years before the filing; and [u]nder Fed. R. Civ. Pro. 15(a)(2) leave of court would have been required. No discovery has been done on this illegitimate pleading. Attached as Exhibit "A" is a 11/12/20 letter fully explaining why that pleading is literally a dead letter.

<u>Claim 5</u>: Defendant Labrador Entertainment, Inc. is a mere shell and sham without capital, assets, stock, or stockholders. Webb has used Labrador Entertainment, Inc., Labrador Entertainment, LLC and The Webb Family Trust to avoid individual liability and for the purpose of hindering, delaying, or defrauding all of Webb's, Labrador Entertainment, Inc. and Labrador Entertainment, LLC's then or future creditors, including Plaintiff, in the collection of their claims against Defendants.

<u>Claim 6</u>: MCPC, LLC is and was controlled, dominated, and operated by Cohen in his individual capacity in that on information and belief the activities and business of MCPC, LLC was carried out without the holding of directors' or shareholders' meetings, without maintaining records or minutes of proceedings, and without other directors or shareholders approving personal transactions between Cohen and MCPC, LLC.

<u>Claim 7</u>: Defendants Labrador Entertainment, LLC, Labrador Entertainment, Inc., Noel Webb, Defendant Cohen, The Webb Family Trust, and MCPC Holdings, LLC committed fraudulent conveyance at common law when they transferred assets after becoming aware of the claims Plaintiff filed against them; and

<u>Claim 8</u>: Defendants Labrador Entertainment, LLC, Labrador Entertainment, Inc., The Webb Family Trust, Noel Webb, Defendant Cohen, and MCPC Holdings, LLC violated California's Uniform Fraudulent Transfer Act when they transferred assets after becoming aware of the claims Plaintiff filed against them.

(b)      The elements required to establish Plaintiff's claims are:

<u>Claim 1: Breach of Contract Elements:</u>

1)  A contract existed between Defendants and Plaintiff;

2)  Plaintiff performed, or were excused from performing, as required under the contract;

3)  Defendants breached the contract; and

4) Plaintiff suffered damages resulting from Defendants' breach.

*Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1367 (2010); *Acoustics, Inc. v. Trepte Constr. Co.*, 14 Cal. App. 3d 887, 913 (1971).


Claim 3: Express Indemnity Elements:

A breach of representations and warranties claim is based upon breach of contract. *Gustafson v. Dunman, Inc.*, 204 Cal. App. 2d 10, 14 (1962). The elements of breach of contract are:

1) A contract existed between Defendants and Plaintiff;

2) Plaintiff performed, or were excused from performing, as required under the contract;

3) Defendants breached the contract; and

4) Plaintiff suffered damages resulting from *Defendants' breach.*

*Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1367 (2010); *Acoustics, Inc. v. Trepte Constr. Co.*, 14 Cal. App. 3d 887, 913 (1971).


Claims 5 & 6: Alter Ego Theory

*See* Claims 7 and 8, below.


Claim 7: Fraudulent Conveyance at Common Law Elements

1) That Plaintiff has a right to payment from Debtor;

2) That Debtor transferred property and/or incurred an obligation to Defendant;

3) That Debtor did not receive a reasonably equivalent value in exchange for the transfer and/or obligation;

4) That Plaintiff's right to payment from Debtor arose before Debtor transferred property and/or incurred an obligation

5)  That Debtor was insolvent at that time or became insolvent as a result of the transfer or obligation;

6)  That Plaintiff was harmed; and

7)  That Debtor's conduct was a substantial factor in causing Plaintiff's harm.

CACI No. 4203; C.C. § 3439.05

Claim 8: Fraudulent Conveyance under California's Uniform Fraudulent Transfer Act ("CUFTA")

1)  That Plaintiff has a right to payment from Debtor;

2)  That Debtor transferred property and/or incurred an obligation to Defendant;

3)  That Debtor did not receive a reasonably equivalent value in exchange for the transfer and/or obligation;

4)  That Plaintiff's right to payment from Debtor arose before Debtor transferred property and/or incurred an obligation

5)  That Debtor was insolvent at that time or became insolvent as a result of the transfer or obligation;

6)  That Plaintiff was harmed; and

7)  That Debtor's conduct was a substantial factor in causing Plaintiff's harm.

CACI No. 4203; C.C. § 3439.05

(c)      In brief, the key evidence Plaintiff relies on for each of the claims is:

Claim 1: Breach of Contract Key Evidence in Support

Plaintiff's key evidence in support of its breach of contract claim consists of: (1) the April 2009 contract between Plaintiff and Labrador; (2) the February 2008 contract between Defendant Labrador and Defendant Cohen; (3) evidence related to Plaintiff's performance under the April 2009 contract; (4) evidence related to the "SQ mc eminem esque" cue copyright infringement of "Lose Yourself;" (5) evidence

related to the "SQ mc eminem esque" cue infringement case in New Zealand; (6) evidence of Plaintiff providing Defendants notice of a claim of infringement related to the "SQ mc eminem esque" cue; (7) evidence related to Plaintiff's damages incurred as a result of Defendants' breaches; (8) testimony from parties and witnesses regarding the claims and defenses asserted in this case; and (9) evidence and testimony from expert witness. This is not intended to be an exhaustive list of the evidence Plaintiff may use at trial.

### Claim 3: Express Indemnity Key Evidence in Support

Plaintiff's key evidence in support of its express indemnity claim consists of: (1) the April 2009 contract between Plaintiff and Labrador; (2) the February 2008 contract between Defendant Labrador and Defendant Cohen; (3) evidence related to Plaintiff's performance under the April 2009 contract; (4) evidence related to the "SQ mc eminem esque" cue copyright infringement of "Lose Yourself;" (5) evidence related to the "SQ mc eminem esque" cue infringement case in New Zealand; (6) evidence of Plaintiff providing Defendants notice of a claim of infringement related to the "SQ mc eminem esque" cue; (7) evidence related to Plaintiff's damages incurred as a result of Defendants' breaches; (8) testimony from parties and witnesses regarding the claims and defenses asserted in this case; and (9) evidence and testimony from expert witness. This is not intended to be an exhaustive list of the evidence Plaintiff may use at trial.

### Claims 5 & 6: Alter Ego Theory Key Evidence in Support
*See* Claims 7 and 8, below.

### Claim 7: Fraudulent Conveyance at Common Law Key Evidence in Support

Plaintiff's key evidence in support of its fraudulent conveyance at common law claim consists of: (1) evidence related to Defendants' notice of potential claims

against them; (2) evidence related to the transfer of certain assets; (3) evidence that transfers were made to insiders who retained control of the assets; (4) evidence that Defendants still hold the transferred assets as alter ego entities; (5) evidence related to Plaintiff's damages incurred as a result of Defendants' fraudulent transfers; (6) testimony from parties and witnesses regarding the claims and defenses asserted in this case; and (7) evidence and testimony from expert witness. This is not intended to be an exhaustive list of the evidence Plaintiff may use at trial.

Claim 8: Fraudulent Conveyance under California's Uniform Fraudulent Transfer Act ("CUFTA") Key Evidence in Support

Plaintiff's key evidence in support of its fraudulent conveyance at common law claim consists of: (1) evidence related to Defendants' notice or potential claims against them; (2) evidence related to the transfer of certain assets; (3) evidence that transfers were made to insiders who retained control of the assets; (4) evidence that Defendants still hold the transferred assets as alter ego entities; (5) evidence related to Plaintiff's damages incurred as a result of Defendants' fraudulent transfers; (6) testimony from parties and witnesses regarding the claims and defenses asserted in this case; and (7) evidence and testimony from expert witness. This is not intended to be an exhaustive list of the evidence Plaintiff may use at trial.


Defendant(s):

## LABRADOR DEFENDANTS

(a)
**Count I: Breach of Express Contract against Beatbox**
**Count II - Indemnification against Beatbox**
**Count III - Indemnification against Cohen**
**Count V - Breach of Fiduciary against Beatbox**

Defenses


**A. First Affirmative Defense - Failure to State a Claim**

- 15 -

**B. Second Affirmative Defense - Plaintiff's Conduct**
C. **Fourth Affirmative Defense - Unclean Hands**
D. **Sixth Affirmative Defense - Ratification and Waiver**
E. **Seventh Affirmative – Estoppel**
F. **Eighth Affirmative Defense - Consent of Plaintiff**
G. **Ninth Affirmative Defense - (Fault of Plaintiff)**
H. **Tenth Affirmative Defense- Failure to Mitigate**
I. **Twelfth Affirmative Defense - Breach of Fiduciary of Plaintiff and Others**

FOURTH AFFIRMATIVE DEFENSE
(Bonafide Sale) No Fraudulent Conveyance No Alter Ego

(b)   The elements required to establish Defendant's counterclaims and affirmative defenses are: [List the elements separately for each counterclaim or affirmative defense as found in standard jury instructions or case law. The parties should strive to agree on the elements. If the parties cannot agree on an element, then each party may state its version of the elements.]

a) **A. Count I: Breach of Express Contract against Beatbox**
**Elements**
To prevail on its counter claim Defendant must prove:

a.     On or about April 14, 2009, Labrador, Inc. and Beatbox entered into a written contract referred to herein as Beatbox Agreement.

b.     Labrador contends that Labrador, Inc. has performed all conditions, covenants and promises required on their part to be performed in accordance with the terms and conditions of the Beatbox Agreement.

c.     Labrador contends that Beatbox made a series of promises regarding Beatbox's receipt, introduction, exploitation and granting of non-exclusive licenses of the of the Library, in Australia and New Zealand.

d.     Labrador contends that these promises included, but are not limited to, representations and warranties and other terms set forth by Plaintiff and Defendants were damaged as a result of Plaintiffs Breach.

1.     Elements Breach of Covenant of Good Faith and Fair Dealing[2]

To prevail on a claim for breach of the implied covenant of good faith and fair dealing, a plaintiff must prove:

a.     the existence of a contractual relationship between the plaintiff and defendant,

b.     plaintiff's performance (or excuse from performance) of its obligations under the contract;

c.     that the defendant unfairly prevented the plaintiff from receiving the benefits it was entitled to under the contract; and

d.     injury to the plaintiff as result of defendant's conduct.

**. Count  Indemnification against Beatbox**

**Elements**

To prevail on its counter claim Defendant must prove:

a.     Counterclaimant and Counter defendant Beatbox entered into a written agreement.

b.     Pursuant to paragraph 16 (vi) Beatbox agreed to: indemnify and hold harmless the Labrador, Inc. it's successors and assigns of and from any and all loss, liability and expense incurred by reason of any infringement of rights or other claim inconsistent with the Sub Publishers guarantees, warranties, representations and undertakings contained in this Agreement.

c.     Labrador contends as a direct and proximate result of Beatbox's actions, Labrador, Inc. has incurred and continues to incur an undetermined amount of damages.

**C.     Count III - Indemnification against Cohen**

---

[2] Plaintiff contends that Labrador has not filed any pleading claiming Breach of Covenant of Good Faith and Fair Dealing and objects to Labrador's inclusion here.

To prevail on its counter claim Defendant must prove:

a.      Counter claimant and Counter defendant Cohen entered a written agreement. Pursuant to paragraph 6.1 of the agreement : Cohen will indemnify and hold Labrador, Inc. and all entities associated with Labrador, Inc. free, safe, and harmless from and against any and all losses, damages, actions, causes of action, expenses or liabilities, including, without limitation, reasonable attorney's fees and costs, whether incurred before or after the entry of judgment, resulting from or by reasons of any material breach of any representation or warranty made herein by Cohen.

b.      Other parties have alleged that Labrador, Inc. is liable as a direct and proximate result of Cohen's actions. Because of these allegations, Labrador, Inc. has incurred and continues to incur an undetermined amount of damages.

## D. Count Five - Breach of Fiduciary against Beatbox

**Elements**

To prevail on its counter claim Defendant must prove:

a.      Beatbox is an agent to Labrador, Inc. by way of its designation as a sub-publisher to Labrador, Inc.

b.      Labrador contends that as a sub-publisher of the Library of Labrador, Inc. Beatbox licenses to third parties the contents of the Library.

c.      Labrador contends that Labrador, Inc. expected that Beatbox would assume all of the duties to properly maintain, update, exploit, protect and sub-license the contents of the Library.

d.      Labrador contends that Beatbox was responsible to Labrador, Inc. for the accounting and payment of all fees accruing from such sub-licenses of the Beatbox Recordings. Labrador contends that Beatbox was required to obtain from Labrador, Inc. prior written permission before parting with or assigning to any other person or

party any of the benefits licensed to it under the terms of the Labrador Agreement. Further, Labrador contends Beatbox represented and warranted that it would use its best commercial endeavors to exploit the recordings for the benefit of the parties concerned.

Defenses

## A.      First Affirmative Defense - Failure to State a Claim

Plaintiff's lack of specificity in its pleadings for its causes of action and they lack of evidence provided in discovery to support such claims.

Federal Rule of Civil Procedure 12(b)(6) states that Defendants may bring a motion to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, Plaintiffs Complaint "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level... on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id*. Plaintiffs fail to state facts sufficient to constitute claims against Defendants. Therefore, this affirmative defense applies.

## Second Affirmative Defense - Plaintiff's Conduct[3]

Labrador claims that it is not responsible for Beatbox's harm because of Beatbox's conduct. Specifically, Labrador claims that the harms Beatbox complains of were in fact caused by its actions including, but not limited to, failing to:

a.      Update the Spider Cues Library when requested by Beatbox;

---

[3] Plaintiff objects that Defendants' Second Affirmative Defense as pled failed to state any specific actions on the part of Beatbox identified herein for the first time.

b.    To communicate to Labrador concerns by potential licensees about Eminem Esque; failing to pay to

c.    Labrador money received by Beatbox for licensing of the music cues from the Spider Cues Library;

d.    Paying all money due to Labrador from Beatbox for the licensing of the Cues.

**C.    Fourth Affirmative Defense - Unclean Hands**[4]
Defendants must show:

a.    Beatbox's misconduct was connected to his claim of Breach of Contract

b.    Such misconduct was of such prejudicial nature that it would be unfair to allow Beat Box to recover

c.    As such Beatbox is barred from recovering


The rule is settled in California that whenever a party who, as actor, seeks to set judicial machinery in motion and obtain some remedy, has violated conscience, good faith or other equitable principle in his prior conduct, then the doors of the court will be shut against him in limine; the court will refuse to interfere on his behalf to acknowledge his right, or to afford him any remedy." *Moriarty v. Carlson* (1960) 184 Cal.App.2d 51, 55. The doctrine of unclean hands bars a plaintiff from relief when the plaintiff has engaged in misconduct relating directly to the transaction concerning which suit is brought. *California Bank & Trust v. DelPorti* (2014) 232 Cal.App.4th 162, 167. The doctrine is applicable to legal claims as well as equitable ones. *Jacobs v. Universal Development Corp.* (1997) 53 Cal.App.4th 692, 693.


**D.    Sixth Affirmative Defense - Ratification and Waiver**[5]

---

[4] Plaintiff objects that Defendants' Fourth Affirmative Defense as pled failed to state any specific misconduct on the part of Beatbox identified herein for the first time.

1    Defendants must show:

2        a.      Beatbox's misconduct was connected to his claim of Breach of Contract

3        b.      Such misconduct was of such prejudicial nature that it would be unfair to

4    allow Beat Box to recover

5        c.      As such Beatbox is barred from recovering

6    1-3F California Forms of Jury Instruction, Contract Defenses Instructions, Waiver,

7    Estoppel, and Unclean Hands, 300F.29 (2005).

8        Conduct is not a substantial factor in causing harm if the same harm would

9    have occurred without that conduct. *Yanez v. Plummer* (2013) 221 Cal.App.4th 180,

10   190.

11

12   **E.      Seventh Affirmative - Estoppel**[6]

13   Defendants must show:

14       a.      Beatbox's misconduct was connected to his claim of Breach of Contract

15       b.      Such misconduct was of such prejudicial nature that it would be unfair to

16   allow Beatbox to recover

17       c.      As such Beatbox is barred from recovering

18   **F. Eighth Affirmative Defense - Consent of Plaintiff**

19       Plaintiff agreed to, and participated in, those actions which plaintiff's claim to

20   have caused injury or damage. Since such participation and consent were given

21   knowingly and voluntarily, plaintiff's claims are invalid.

22   **G. Ninth Affirmative Defense - (Fault of Plaintiff)**

23       Labrador claims that Beatbox's own negligence contributed to its harm. To

24   succeed on this claim, Labrador must prove both of the following:

25   _____

26   [5] Plaintiff objects on the basis that the requirements for Ratification or a Waiver are
     not stated in this Affirmative Defense. This appears to be a restatement of the

27   Affirmative Defense of Unclean Hands.

28   [6] Plaintiff objects that Defendants' Seventh Affirmative Defense as pled failed to state
     any specific misconduct on the part of Beatbox identified herein for the first time.

a.      That Beatbox was negligent; and

b.      That Beatbox's negligence was a substantial factor in causing harm.

If Labrador proves the above, Beatbox's damages are reduced by the determination of the percentage of Beatbox's responsibility.

**H. Tenth Affirmative Defense- Failure to Mitigate**

If Labrador is found to breached the contract and the breach caused harm, Labrador must then establish:

a.      Beatbox is not entitled to recover damages for harm that Beatbox could have avoided with reasonable efforts or expenditures and efforts in light of the circumstances facing it at the time, including its ability to make the efforts or expenditures without undue risk or hardship.

b.      Beatbox failed to make reasonable efforts to avoid harm

**I.      Twelfth Affirmative Defense - Breach of Fiduciary of Plaintiff and Others Elements**

To establish this claim, Labrador must prove all of the following:

a.      That Beatbox was Labrador's exclusive representative in New Zealand

b.      That Beatbox acted on behalf of Labrador for the purpose of licensing cues and collecting royalties for cues provided to Beatbox by Labrador in territories listed in Beatbox/Labrador contract, to license cues and collect royalties for cues provided to Beatbox by Labrador.

c.      That Beatbox failed to act as a reasonably careful representative by:

d.      failing to maintain an accurate list of cues that could be marketed and licensed;

e.      by distributing cues that were not on this list, namely the cue "Eminem-Esque";

f.      failed to check if a particular cue could be used for a "high risk" end-user, namely for a political advertisement;

g.      Failing to communicate to Labrador, prior to the issuance of the license to be used by the New Zealand National Party in its advertisments, that the New Zealand National Party was concerned about being sued if they used the Eminem Esque;

h.      by falsely representing to third parties that Labrador was responsible for any claims

i.      failed to put the best interest of Labrador above Beatbox.

FOURTH AFFIRMATIVE DEFENSE

(Bonafide Sale)

15.      As a Fourth and Separate Affirmative Defense, Defendants assert that the sale of assets from Labrador to Labrador LLC was for good consideration and a bonafide sale.

Elements Fraudulent Conveyance

The UFTA prohibits debtors from transferring or placing property beyond the reach of their creditors when that property should be available for the satisfaction of the creditors' legitimate claims. California Civil Code § 3439.04 applies to a transfer made.

a.      With actual intent to hinder, delay, or defraud any creditor of the debtor.

b.      Without receiving a reasonably equivalent value in exchange for the transferor obligation, and the debtor either:

c.      Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction.

d.     Intended to incur or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due.§3439.04(a).

(c)     In brief, the key evidence Defendant relies on for each counterclaim and affirmative defense is: [List separately for each element of each counterclaim or defense.]

b) **A.     Count I: Breach of Express Contract against Beatbox**

**Evidence in Support**

Beatbox breached the Beatbox Agreement by among, other matters:

a.     Failing to perform the licensing activities in granting non-exclusive licenses in the Licensed Territory in accordance with generally accepted music industry standards, and with thoroughness, competence, and care ordinarily exercised by other sub-publishers working with the licensing of similar rights.

b.     Failing to use its best commercial endeavors to exploit the recordings for the benefit of the parties concerned.

c.     By assigning to AMCOS benefits licensed to Beatbox to AMCOS, without first obtaining the written consent of Labrador, Inc.

d.     Failing to comply with Performing Rights in the recordings subject to the Copyright Societies in the USA and its affiliated societies in the licensed territory.

e.     Failing to indemnify and hold harmless Labrador, Inc. from any and all loss, liability and expense incurred by reason of any infringement of rights or other claim inconsistent with the Sub Publishers guarantees, warranties, representations and undertakings contained in the Beatbox Agreement.

f.     Failing to pay to Labrador, Inc. 50% (fifty per cent) of all fees accruing from such licenses relating to the use of the recordings, including mechanical/synchronization royalties received by Beatbox as a result of exploitation of rights herein granted to Beatbox.

g.      Failing to provide an industry wide process to obtain from Labrador, Inc. "the Library."

As a result of these breaches, Plaintiff has suffered damage.

**Labrador contends and Beatbox disputes the following:**

That the Contract Terms Were Clear Enough That the Parties Could Understand What Each Was Required to Do and Plaintiff Failed to Abide by the Express and Implied Terms in the Agreement.

The contract should be interpreted as whole. Beatbox failed to update its Music Library and remove Eminem Esque prior to issuing the license to the National Party. The parties agreed that Beatbox would introduce and exploit all recordings included in the music library catalogue known as Spider Cues Music (the "Music Library"), under the terms of the Agreement, though not explicit, Beatbox promised it would import, update, introduce and exploit each of the Recordings in the Music Library issued and delivered by Labrador to Beatbox and not issue any Recording that was not included in or removed from the Music Library. Beatbox had the right to grant non-exclusive licenses to its clients. Beatbox, rather than issuing these licenses directly, assigned this right to AMCOS. To accomplish this, Beatbox was required to immediately provide to AMCOS the Music Library and thereafter each addition and deletion. Under the Agreement, the issuance of any license to any Recordings of the Music Library was limited to only those Recording that Labrador delivered to Beatbox and not deleted from the Music Library. The Agreement is devoid of any term giving Beatbox permission to issue a license to a Recording that was not included in the Music Library or beyond the scope of granting a sub license for dubbing only in the territory.

Plaintiff challenges that it was required to update the Music Library that it received from Labrador removing the cue "Eminem Esque". Evidence of emails, Excel files, statements and testimony will show that the Music Library was updated

and Eminem Esque was removed prior to Beatbox's wrongful issuance to the National Party the license for use of Eminem Esque ("License").

Defendants intend to use Testimony of Michael Lau, Peter Baker, Barbara Baker, Noel Webb, Robert Moore and Bali Virk; Labrador/Beatbox Agreement, AMCOS/Beatbox Agreement, Brief of Evidence of Peter Robert Moore for New Zealand Trial, Robert Moore's Testimony at New Zealand Trial Email exchanges between Beatbox, Bali Virk, Peter Moore and other producers of the political advertisements for the New Zealand National Party to show that Plaintiff:

● Failed to perform the licensing activities in granting non-exclusive licenses in the Licensed Territory in accordance with generally accepted music industry standards, and with thoroughness, competence, and care ordinarily exercised by other sub-publishers working

● Using best commercial endeavors to exploit the recordings for the benefit of the parties concerned. (See discussion above.)

● Prior to obtaining any consent from Labrador, assigned benefits and delegated duties provided for in the Agreement, to the Australasian Mechanical Copyright Owners Society Limited "AMCOS" Prior to its issuance of the license, Beatbox, had been notified that there was a potential issue of copyright infringement, but failed to investigate or alert Labrador.

In the Agreement, Beatbox represented and warranted that it would use its "best commercial endeavours", to exploit the recordings for the benefit of the parties

All evidence cited above in support of Claim for Breach of Contract and Breach of Covenant of Good Faith and Fair Dealing.

concerned. This required Beatbox to undertake its "best efforts" in performing its obligations. Best efforts is universally understood to be the highest standard, requiring everything to be done by a party, except bankruptcy, in order to accomplish the stated objective.

There is evidence that Beatbox, prior to the issuance of the License, received actual notice of potential infringement issues. On or about June 18, 2014, an exchange of emails among and between Lewis Mckenzie, an employee of Beatbox and Peter Moore and Bali Virk, producers of the New Zealand National Party promotion material, showed actual notice of the possible copyright infringement issue. Furthermore the testimony of both Peter Moore and Bali Virk will affirm these communications.

> 1.      Breach of Covenant of Good Faith and Fair Dealing
>
> Same Evidence as Breach of Contract.

**B.      Count II - Indemnification against Beatbox**

Labrador contends by virtue of the Beatbox Agreement or applicable law, Beatbox is required to hold harmless and indemnify Labrador, Inc. for the amount of any judgment or settlement, and for expenses, costs, legal fees, and other damages and costs that Labrador, Inc. incurs in connection Beatbox's breach of guarantees, warranties, representations and undertakings contained in this Agreement. All evidence cited above in support of Claim for Breach of Contract and Breach of Covenant of Good Faith and Fair Dealing.

**C.      Count III - Indemnification against Cohen**

By virtue of the Cohen Agreement or applicable law, Cohen is required to hold harmless and indemnify Labrador, Inc. for the amount of any judgment or settlement, and for expenses, costs, legal fees, and other damages and costs that Labrador, Inc. incurs in connection Cohen's breach of guarantees, warranties, representations and undertakings contained in this Agreement. The total amount of Labrador, Inc.'s costs and attorneys' fees is not yet known, and Labrador, Inc. will ask leave of this Court to insert such amount at the time of trial. All evidence cited above in support of Claim for Breach of Contract and Breach of Covenant of Good Faith and Fair Dealing.

**D. Count Five - Breach of Fiduciary against Beatbox**

**Labrador contends and Beatbox disputes the following:**

Some of the ways that Beatbox breached their fiduciary duties include:

a.    Failing to perform the licensing activities in granting non-exclusive licenses in the Licensed Territory in accordance with generally accepted music industry standards, and with thoroughness, competence, and care ordinarily exercised by other sub-publishers working with the licensing of similar rights.

b.    Failing to use its best commercial endeavors to exploit the recordings for the benefit of the parties concerned.

c.    Assigning to AMCOS benefits that were licensed to it to AMCOS, without first obtaining the written consent of Labrador, Inc.

d.    After Beatbox wrongly assigned to AMCOS the benefits Labrador, Inc. licensed to Beatbox, Beatbox failed to comply with the duties it owed to AMCOS, including the duty to immediately notify AMCOS of each deletion from the list of music cues.

e.    Failing to comply with Performing Rights in the recordings subject to the Copyright Societies in the USA and its affiliated societies in the licensed territory. Failing to provide an industry wide process to obtain from Labrador, Inc. the Library.

In breaching their fiduciary duties, Beatbox has caused Labrador, Inc. to incur substantial damages to be remedied at law. All evidence cited above in support of Claim for Breach of Contract and Breach of Covenant of Good Faith and Fair Dealing.

Defenses

**A.    First Affirmative Defense - Failure to State a Claim**

As a First and Separate Affirmative Defense, Defendants assert that the FAC and each purported claim alleged therein fail to state facts sufficient to constitute

aclaim against Defendants. All evidence cited above in support of Claim for Breach of Contract and Breach of Covenant of Good Faith and Fair Dealing.

**B.      Second Affirmative Defense - Plaintiff's Conduct**

As a Second and Separate Affirmative Defense, Defendants assert that some or all of the purported claims in the FAC are barred, in whole or in part, by material breaches, negligence or other wrongful conduct by Plaintiff and by the conduct of their agents, attorneys, and representatives. All evidence cited above in support of Claim for Breach of Contract and Breach of Covenant of Good Faith and Fair Dealing.

**C.      Fourth Affirmative Defense - Unclean Hands**

As a Fourth and Separate Affirmative Defense, Defendants assert that some or all of the purported claims in the FAC against Defendants are barred, in whole or in part, by the unclean hands of Plaintiff. Labrador claims that Beatbox's misconduct precludes enforcement of his claim for Breach of Contract. See above discussion in Defendant's evidence in opposition to Plaintiffs claim of breach of contract. All evidence cited above in support of Claim for Breach of Contract and Breach of Covenant of Good Faith and Fair Dealing.

**D.      Sixth Affirmative Defense - Ratification and Waiver**

As a Sixth and Separate Affirmative Defense, Defendants assert that some or all of the purported claims in the FAC against Defendants are barred, in whole or in part, because, Plaintiff, on their own behalf and through the actions of their agents, attorneys, and representatives, ratified the actions of Defendants, thereby waiving any and all claims against Defendants, if any. All evidence cited above in support of Claim1 and 2 for Breach of Contract and Breach of Covenant of Good Faith and Fair Dealing.

**E.      Seventh Affirmative - Estoppel**

As a Seventh and Separate Affirmative Defense, Defendants assert that some or all of the purported claims and causes of action in the FAC against Defendants are barred, in whole or in part, by the equitable doctrine of estoppel because of the conduct of Plaintiff and their agents, attorneys, and representatives. All evidence cited above in support of Claim for Breach of Contract and Breach of Covenant of Good Faith and Fair Dealing.

## F.     Eighth Affirmative Defense - Consent of Plaintiff

As an Eighth and Separate Affirmative Defense, Defendants assert that Plaintiff gave consent both expressly and impliedly for any purported failure, breaches, or conduct of Defendants as alleged. All evidence cited above in support of Claim for Breach of Contract and Breach of Covenant of Good Faith and Fair Dealing.

## G.     Ninth Affirmative Defense - (Fault of Plaintiff)

As a Ninth and Separate Affirmative Defense, Defendants assert that some or all of the purported claims in the FAC are barred, in whole or in part, by the fault of Plaintiff and of their agents, attorneys, and representatives. All evidence cited above in support of Claim for Breach of Contract and Breach of Covenant of Good Faith and Fair Dealing.

## H.     Tenth Affirmative Defense- Failure to Mitigate

As a Tenth and Separate Affirmative Defense, Defendants assert that some or all of the purported claims in the FAC are barred, in whole or in part, by Plaintiff's failure to mitigate their alleged damages. All evidence cited above in support of Claim for Breach of Contract and Breach of Covenant of Good Faith and Fair

## Twelfth Affirmative Defense - Breach of Fiduciary of Plaintiff and Others

As a Twelfth and Separate Affirmative Defense to the FAC, Defendants assert that Defendants are informed and believes and thereon allege that the injuries and

damages alleged in the FAC, if any, without admitting any injury or damage to Plaintiff, occurred, were proximately caused by either the sole breach of fiduciary duties of or contributed to by the breach of fiduciary duties of Plaintiff or third parties not within the control of Defendants. Beatbox breached their fiduciary duties among other matters by failing to:

a.      Perform the licensing activities in granting non-exclusive licenses in the Licensed Territory in accordance with generally accepted music industry standards, and with thoroughness, competence, and care ordinarily exercised by other sub-publishers working with the licensing of similar rights.

b.      To use its best commercial endeavors to exploit the recordings for the benefit of the parties concerned.

c.  To comply with the Beatbox Agreement and assigned to AMCOS benefits licensed to it to AMCOS, without first obtaining the written consent of Labrador, Inc.

d.      To comply with its duties to AMCOS, including the duty to immediately notify AMCOS of each deletion from the list of music cues, after Beatbox wrongly assigned to AMCOS the benefits Labrador, Inc. licensed to Beatbox.

e.      To comply with Performing Rights in the recordings subject to the Copyright Societies in the USA and its affiliated societies in the licensed territory.

f.  To provide an industry wide process to obtain from Labrador, Inc. the Library.

Defendants request, that to the extent Plaintiff's damages were caused by breach of fiduciary duties of all persons or parties, named and unnamed, served or unserved, and the degree to which said breach of fiduciary duties contributed to the happening of the incident and the nature and extent of the injuries actually sustained, All evidence cited above in support of Claim for Breach of Contract and Breach of Covenant of Good Faith and Fair Dealing.

FOURTH AFFIRMATIVE DEFENSE

(Bonafide Sale) No Fraudulent Conveyance No Alter Ego

Plaintiff Has No Claim for Common Law Fraudulent Conveyance Because it Has No Lien Nor a Judgment.

Plaintiff has no claim for fraudulent conveyance under common law because," unlike the UFTA, California common law has an additional requirement that the creditor 'have a specific lien on the property or ... prosecute[ ] his claim to judgment.

California courts as far back as the 1800s have held that a defrauded creditor must have a lien on the property or reduce their claim to judgment to assert a claim for common-law fraudulent conveyance." *Airborne Am., Inc. v. Kenway Composites*, 554F. Supp. 3d 1066 (S.D. Cal. 2021) (quoting *In re Kalt's Estate*, 16 Cal. 2d 807, 811,108 P.2d 401 (1940) and also quoting *Moore v. Schneider*, 196 Cal. 380, 387, 238 P.81 (1925) (discussing how it is "universally held" that for a creditor to have a claim for fraudulent conveyance, it must hold a lien on the property or reduce its claim to judgment)).

There Is No Evidence of an Intent to Defraud under the UFTA. There is no dispute between the parties that the assets of Labrador Entertainment Corporation were sold to Labrador Entertainment LLC in 2017. Plaintiff appears to be arguing that this sale of assets was intended to defraud Plaintiff by making it more difficult for Plaintiff to collect a judgment should it win this case. The problem for Plaintiff is that there is zero evidence to support Plaintiff's apparent assumption.

There are two types of fraudulent transfers–actual fraud and constructive fraud. Actual fraud means that the debtor had the intent to defraud a creditor. Usually, a debtor donates his or her assets to an "insider" who is a friend or family member, thereby leaving nothing to pay creditors. Constructive fraud does not require proof of an actual intent to hinder or delay a creditor's rights. Rather, it looks to the underlying financial result of the transaction to conclude whether a fraudulent transfer has occurred. For example, where the debtor was insolvent and did not receive reasonably equivalent value for the property transferred, the transfer may be deemed constructively fraudulent.

1   The only evidence in the record establishes that the corporate form of the
2   business was changed to facilitate the purchase of insurance that was necessary for
3   Labrador to continue its business with certain customers. Specifically, as will be
4   explained under oath at trial, Defendant LLC's owner Noel Webb was having
5   difficulty obtaining E&O insurance in 2016 because of the Beatbox claim. Creating a
6   new corporate entity allowed LLC to obtain the E&O insurance that Corp. was unable
7   to procure. [In addition, Defendant Webb is waiving the attorney/client privilege with
8   Gibson Pagter and Stewart Wallach, his general business attorney who will testify
9   that the change was made on his advice and counsel, and will explain the entirely
10  non-fraudulent purpose of the creation of the LLC entity. The evidence will show that
11  the change to a new entity was not an effort to evade judgment but an effort to ensure
12  that any future claims had a base of insurance from which to secure a judgment.

13  None of the steps involved in the creation of, and transfer to, a new corporate
14  entity deprived Plaintiff of attachable assets in any way, shape or form. The record
15  evidence shows that not only the assets of Labrador were sold by Corp. to LLC—the
16  contract between Plaintiff and Labrador was also assigned from Corp. to LLC.

17  Thus, LLC remained contractually accountable to Plaintiff in exactly the same
18  way the Corporation was contractually bound. This is not a case where the contract
19  stayed with one entity while the assets that could satisfy a judgment were transferred,
20  leaving the contracting entity an empty shell. To the contrary, here, as a result of the
21  transfer, LLC became the Labrador contracting party and all of the assets of the
22  Corporation became assets of LLC. The sale and transfer created no net change in
23  Plaintiff's ability to satisfy a judgment. This not exactly the hallmark of a fraudulent
24  scheme to judgment-proof assets.

25  Nor is there any significance from a judgment-proofing standpoint of the
26  transfer of the shares in the Corporation from Webb personally to his family trust.
27  Shares of stock are shares of stock. Shares of stock limit the liability of the

28

1   stockholder. It makes zero difference to any creditor of the Corporation that the
2   family trust owns the shares and not Webb personally.

3         In order for Plaintiff to show that the above noted set of facts constitutes an
4   "actual intent" to defraud, the UFTA specifies eleven factors which must be
5   considered. See § 3439.04(b) and *Filip v. Bucurenciu* (2005) 129 Cal.App.4th
6   825,834. In applying these factors, Plaintiff bears the burden of proof in showing
7   actual fraudulent intent by a preponderance of the evidence. California Civil Code
8   §3439.04(c). These factors do not indicate an intent to defraud because the assets
9   moved with the contracts, and fair value was received for the sale. Labrador Inc.
10  obtained an independent valuation of its assets, and that is the amount LLC paid the
11  corporation. There is zero evidence that this was not fair value received. Plaintiff did
12  not do its own valuation not does it have any evidence that the valuation was
13  inaccurate or that the Labrador parties should not have relied on the valuation.
14  Labrador make the change in corporate form for a non-fraudulent reason, it did not
15  conceal its actions, and it followed proper procedures by obtaining a valuation. There
16  can be no evidence of an intent to defraud under these circumstance

17        As discussed above, the only evidence of "reasonably equivalent value
18  exchanged" is the valuation, and it shows that a reasonably equivalent value was in
19  fact exchanged. That alone dooms an effort to attempt to prove constructive fraud.
20  But there is also no evidence that the transaction left the debtor insolvent as the
21  debtor in this instance was the corporation as the corporation is the entity that
22  contracted with Plaintiff and the corporation was the entity Plaintiff initially sued.
23  The corporation received the compensation specified by the valuation, which meant it
24  was not rendered insolvent by the transaction. If anything it was rendered more
25  solvent as it was paid in liquid capital for illiquid assets.

26        **Labrador contends and Beatbox disputes the following:**

27        Plaintiff Has Not Been Injured by the Change in Corporate Form and Resulting
28  Transfer.

In addition to having to prove an actual or constructive intent to defraud, Plaintiff must also establish it was injured by the allegedly fraudulent transfer. "A well-established principle of the law of fraudulent transfers is, 'A transfer may be attacked only by one who is injured thereby. Mere intent to delay or defraud is not sufficient; injury to the creditor must be shown affirmatively. In other words, prejudice to the plaintiff is essential.'" *Berger v. Varum* (2019) 35 Cal.App.5th 1013,1020 (quoting *Mehrtash v. v. Mehrtash* (2001) 93 Cal.App.4th 75, 80).

That prejudice also goes to the issue of remedy. The UFTA provides all sorts of injunctive type remedies, but Plaintiff's prayer for relief seems to focus on damages, punitive damages and a prayer that "Labrador and Webb be held jointly and severally liable for all elements of the judgment." (Prayers for relief for counts 7 and 8 at Dkt.105 page 19) The UFTA is greatly limited in its scope with regard to claims for damages deriving from the UFTA violation itself. "A creditor who successfully attacks a transfer under the UFTA is not automatically entitled to a money judgment against the person for whose benefit the transfer was made. The statute provides that to the extent a transfer is voidable, 'the creditor may recover judgment' for the lesser of the value of the asset or the amount needed to satisfy the creditor's claim, and the 'judgment may be entered' against the person for whose benefit the transfer was made. (§ 3439.08, subd. (b)(1), italics added.) Ordinarily, when a statute provides a court 'may' do something, the statute is permissive, not mandatory, and grants the court a discretionary authority." Renda v. Nevarez, 223 Cal. App. 4th 1231, 1237, 167Cal. Rptr. 3d 874, 877–78 (2014). The UFTA cannot be used to create a duplicative recovery. See id. at 1237-38 ("A well-established principle, applied both at law and in equity, is that a plaintiff is entitled to only a single recovery for a distinct harm suffered, and double or duplicative recovery for the same harm is prohibited. Here, the harm Renda suffered consisted of the damages caused by the fraud, breach of contract, and negligence that underlay his prior action against Nevarez Renda's present UFTA action is an effort to collect on the prior judgment by

recovering monies Nevarez transferred to other defendants to avoid paying that judgment. The UFTA does not impose on the debtor any liability additional to or distinct from the existing claim of the creditor; it simply allows the creditor to obtain "[a]voidance of the transfer ...to the extent necessary to satisfy the creditor's claim." (§3439.07, subd. (a)(1), italics added in the original.)

As the trial will show, Plaintiff can prove no injury. The transfers did not leave the corporation unable to satisfy a judgment, and to the extent it might limit the corporation's assets, LLC remains liable as it assumed the contract with Plaintiff via an assignment. LLC is not hiding behind corporate formalities here. If Plaintiff wins, there will be no piercing the corporate veil type defense. That was not the purpose of the transaction creating LLC, and the Labrador entities will not play that game here in a court of law and will so stipulate. Such a stipulation ensures that no property was put beyond reach of Plaintiff. See Fid. Nat'l Title Ins. Co. v. Schroeder, 179 Cal. App. 4th834, 845, 101 Cal. Rptr. 3d 854, 862 (2009) ("A creditor has not been injured unless the transfer puts beyond reach property the creditor could subject to payment of his or her debt.").

Finally, Plaintiff has no ability to obtain punitive damages here. "While California courts have held that a plaintiff asserting a common-law fraudulent transfer claim may recover punitive and consequential damages, these courts have only recognized this remedy where the plaintiff is a judgment creditor." Airborne Am., Inc. v. Kenway Composites, 554 F. Supp. 3d 1066 (S.D. Cal. 2021) (dismissing punitive damages claim by a plaintiff that was a creditor but had not obtained a judgment making it a judgment creditor). Because Plaintiff is not a judgment creditor, it cannot pursue punitive damages under its common law fraudulent conveyance count.

To receive punitive damages under the UFTA, a plaintiff "may recover damages for the sake of example and by way of punishing" a defendant who is

"guilty of oppression, fraud, or malice." Cal. Civ. Code. § 3294(a). No oppressions fraud or malice can be shown here.

## COHEN DEFENDANTS

(a)     Defendants <u>Mr. Cohen and MCPC (MCPC, to the extent that there's an attempt to somehow charge MCPC with breach of contract) plan to pursue the following defenses</u>:

Defense 1:

The plaintiff was not a contracting party or a third party beneficiary to the February 14, 2008 Mr. Cohen/Labrador "Composer Agreement." *Goonewardene v. ADP* 6 Cal. 5th 817 (2019).

Defense 2:

Under California law a third party beneficiary to a contract has no privity. *Gilbert Financial v. Steelform,* 82 Cal. App. 3rd 65 n.5 (1978).

When a non-contracting party is suing for breach of contract, based on breach of warranty, and is trying to achieve third party beneficiary status, that plaintiff party must show that it relied on the subject warranty, in order to gain such status. "When there is no privity of contract, California law requires a showing that a plaintiff relied on an alleged warranty." *Asghari v. Volkswagen* 42 F. Supp. 3d 1306, 1334 (C.D. Cal., November 4 2013). The plaintiff cannot show reliance and Mr. Cohen/MCPC can show non-reliance.

Plaintiff contends that "reliance" is not required under the facts of this case, especially when the representation and warranty by Labrador of the existence of a sufficient contract to convey rights to Beatbox was expressly relied upon within the material terms of the Labrador-Beatbox Agreement.

Defense 3:

Under California law a third party beneficiary to a contract has no privity. *Gilbert Financial v. Steelform,* 82 Cal. App. 3rd 65 n.5 (1978)

When a non-contracting party is suing for breach of contract, based on breach of warranty, and is trying to achieve third party beneficiary status, that plaintiff party must *at least* show that it was *exposed* to such subject warranty, in order to gain such status. *In re Toyota*, 754 F. Supp. 2d 1145, 1182 (C.D. Cal. 2010) The plaintiff cannot show that exposure. Mr. Cohen/MCPC can show non-exposure.

Thus, the plaintiff cannot prove breach of contract. A contract-relationship (third party beneficiary) was <u>never</u> form between Mr. Cohen and Beatbox (and not MCPC and Beatbox, MCPC was years away from its legal birth when Mr. Cohen & Labrador contracted). Without breach of contract, the plaintiff's other claims have no validity.

Plaintiff contends that "exposure" is not required under the facts of this case, especially when the representation and warranty by Labrador of the existence of a sufficient contract to convey rights to Beatbox was expressly relied upon within the material terms of the Labrador-Beatbox Agreement.


Defense 4 (and Claim 1):

The February 14, 2008 Mr. Cohen/Labrador Composer Agreement  says that if there were to be any alteration or adaptation of eminem esque, Mr. Cohen had to first be consulted. Composer Agreement § 1.1(e). The New Zealand National Party played a version of eminem esque that had been altered and adapted. Mr. Cohen was never consulted. Thus, Mr. Cohen shouldn't be held liable.

If Mr. Cohen is held liable, Labrador has to pay indemnification to Mr. Cohen.


(b)    The elements required to establish Defendant's counterclaims and affirmative defenses are:

Defense 1:

Defense 1 sort of buries the lead. Here we unearth the lead. Defense 1 above says, *The plaintiff* was not a contracting party or *a third party beneficiary.* The issue is whether Beatbox was a third party beneficiary. The California Supreme Court clarified California third party beneficiary doctrine in *Goonewardene v. ADP* 6 Cal. 5th 817 (2019). At p. 821 the *Goonewardene* Court laid out the essential elements of obtaining third party beneficiary status. They are:

> "(1) that [the aspiring 3rd party beneficiary] is likely to benefit from the contract [the February 14, 2008 Mr. Cohen/Labrador Composer Agreement];"

> "(2) that a motivating purpose of the contracting parties is to provide a benefit to the third party;" and

> "(3) that permitting the third party to bring its own breach of contract action against a contracting party is consistent with the objectives of the contract and the reasonable expectations of the contracting parties."

Defense 2:

Defense 2 begins with a legal fact. That is that under California law a third party beneficiary to a contract has no privity. *Gilbert Financial v. Steelform,* 82 Cal. App. 3rd 65 n.5 (1978); "[T]here is no privity between [a contracting party and a non-contracting party." *Windham at Carmel Mountain Ranch Assn. v. Superior Court* 109 Cal. App. 4th 1162 (2003). [Citation, quotation marks, and brackets omitted.] **"A** third party . . . is not a contracting party." *Murphy v. Allstate* 17 Cal. 3d 937, 944 (1976).

The essential element of Defense 2 emanates from the rule, "When there is no privity of contract, California law requires a showing that a plaintiff relied on an

alleged warranty." *Asghari v. Volkswagen* 42 F. Supp. 3d 1306, 1334 (C.D. Cal., November 4 2013). The element that Beatbox must prove is:

> (1) "show[] that [Beatbox] relied on an alleged warranty."

Defense 3:

Again, under California law a third party beneficiary to a contract has no privity. *Gilbert Financial v. Steelform,* 82 Cal. App. 3rd 65 n.5 (1978); "[T]here is no privity between [a contracting party and a non-contracting party." *Windham at Carmel Mountain Ranch Assn. v. Superior Court* 109 Cal. App. 4th 1162 (2003). [Citation, quotation marks, and brackets omitted.] "A third party . . . is not a contracting party." *Murphy v. Allstate* 17 Cal. 3d 937, 944 (1976).

When a non-contracting party is suing for breach of contract, based on breach of warranty, and is trying to achieve third party beneficiary status, that plaintiff party must *at least* show that it was *exposed* to such subject warranty, in order to gain such status. "Plaintiff[] cannot base a claim on [an express warranty] in the absence of allegations that they were exposed to them." *In re Toyota*, 754 F. Supp. 2d 1145, 1182 (C.D. Cal. 2010). So, the element that Beatbox must prove is:

> (1)     Plaintiff must prove that it was exposed to the warranties.

Defense 4 (and Claim 1);

The February 14, 2008 Mr. Cohen/Labrador Composer Agreement says that if there were to be any alteration or adaptation of eminem esque, Mr. Cohen had to first be consulted. Composer Agreement § 1.1(e). The New Zealand National Party played a version of eminem esque that had been altered and adapted. Mr. Cohen was never consulted. Thus, Mr. Cohen shouldn't be held liable. The elements are:

> (1)     eminem esque was altered or adapted;
>
> (2)     Mr. Cohen was not contacted before the alteration or adaptation.

If Mr. Cohen is held liable, his crossclaim against Labrador Entertainment, Inc. is in play. The two most important causes of action therein are express indemnity and equitable indemnity.

Elements regarding express indemnity

(1)   Mr. Cohen must prove that there is an indemnity clause in the February 14, 2008 Cohen/Labrador Composer Agreement.

(2)   Mr. Cohen must prove (to the Court) that the words of the indemnity clause cover Mr. Cohen's loss, and require Labrador to be responsible for such loss.

See generally, *Myers Building Industries, Ltd. v. Interface Technology* 13 Cal. App. 4th, 949,969 (1993).

(c)   In brief, the key evidence Defendant relies on for each counterclaim and affirmative defense is:

Defense 1:

All three elements of the *Goonewardene v. ADP* 6 Cal. 5th 817, 821 (2019) requirements will rely mainly on witnesses.

"that permitting the third party to bring its own breach of contract action against a contracting party is consistent with the objectives of the contract and the *reasonable expectations* of the contracting parties."

Defense 2:

Cohen contends the essential element for the jury in Defense 2 is that Beatbox must "show[] that [Beatbox] relied on an alleged warranty." Of course that an alleged warranty in the February 14, 2008 Mr. Cohen/Labrador Composer Agreement.

Defense 3:

Cohen contends the essential element that Beatbox must prove that it was exposed to the warranties.


Defense 4 (and Claim 1):

Cohen contends the essential elements are:

        (1) eminem esque was altered or adapted;

        (2) Mr. Cohen was not contacted before the alteration or adaptation.

           There is no argument as to (2). Mr. Cohen was not contacted before any alteration or adaptation. As to (1) that will be dependent on the jury listening to the cues in question, and on expert testimony.


## PLAINTIFF'S AFFIRMATIVE DEFENSES TO LABRADOR COUNTERCLAIM

1.  Labrador's Conduct

2.  Breach of Contract

3.  Unclean Hands

4.  Waiver

5.  Ratification and Waiver

6.  Estoppel

7.  Consent

8.  Fault of Labrador

9.  Failure to Mitigate

10. Negligence of Labrador and Others

11. Breach of Fiduciary of Labrador and Others


Third Party Plaintiffs and Defendants:

1   [Claims and defenses in third-party cases should be analyzed and set forth in
2   the same way as those of plaintiffs and defendants. Separate proposed pretrial
3   conference orders will not be accepted.]

4

5       8.      In view of the admitted facts and the elements required to establish the
6   claims, counterclaims and affirmative defenses, the following issues remain to be
7   tried: [list ultimate issues, not evidentiary issues]

8           Whether or not Labrador breached the Labrador-Beatbox Agreement.

9           Whether or not Beatbox is an intended beneficiary of the Cohen-Labrador
10  Agreement.

11          Whether or not Cohen breached the Cohen-Labrador Agreement.

12          Whether or not *Eminem Esque* infringes *Lose Yourself.*

13          Whether or not Labrador breached the Labrador-Beatbox Agreement when it
14  represented and warranted that it had all the rights necessary to enter into the
15  Labrador-Beatbox Agreement.

16          Whether or not Defendants are entitled to any defenses.

17          The amount of damages Beatbox is entitled to under the Labrador-Beatbox
18  Agreement.

19          The amount of damages Beatbox is entitled to under the Cohen-Labrador
20  Agreement.

21          Whether or not any Defendant violated the Uniform Fraudulent Transfer Act
22  and/or fraudulently transferred any assets.

23          The amount of damages Beatbox is entitled to for any fraudulent conveyance.

24

25      9.      All discovery is complete.

26

27      10.     All disclosures under F.R.Civ.P. 26(a)(3) have been made. The joint
28  exhibit list of the parties has been filed under separate cover as required by L.R. 16-

6.1. Unless all parties agree that an exhibit shall be withdrawn, all exhibits will be admitted without objection at trial, except those exhibits listed below:

Plaintiff objects to Exhibit Nos. 641, 642, 647, 648, 649, 650, 654, 661, 663, 681, 687, 688, 691, 693, 694, 702, 741, 745, 874, 875, 884, 885, 895, 902, 904, 905, 911, 913, 916, 920, 925, 928, 931, 946, 1127, 1128, 1136, 1138, 1141, 1145, 1161, 1167, 1188, 1191, 1193, 1208, 1211, 1213, 1214, 1215, 1216.

Labrador Defendants object to the Exhibits as listed attached hereto as Group Exhibit C. Beatbox objects to Labrador's newly-raised objections based on lack of timeliness, Labrador's revocation of previously stipulated to Exhibits, and any newly included Exhibits given to Plaintiff's counsel on November 7, 2022 at 4:33 p.m. Pacific Time.

Cohen Defendants object to Exhibit Nos. 2B, 4D, 5E, 6F, 8H, 9I, 10J, 11K, 12L, 13M, 14N, 15O, 17Q, 18R.

The objections and grounds therefor are:

*See* Plaintiff's objections and grounds attached hereto as Exhibit B.

*See* Labrador Defendants' objections and grounds attached hereto as Group Exhibit C.

*See* Cohen Defendants' objections and grounds listed below:

| Exhibit # | Description | Objection |
|---|---|---|
| 2 B | Dkt. No. 139 Labrador Defendants' First Answer to 1st Am. Complaint | Relevancy, hearsay, argumentative |
| 4 D | Dkt. No. 105: Plaintiff's 1st Am. Complaint | Relevancy, hearsay, argumentative |

| 5 E | December 2, 2019 Deposition Transcript of Defendant Noel Palmer Webb, and Exhibits attached thereto | Relevancy, hearsay, argumentative, deposition should contain many objections upon which no rulings have been made |
|---|---|---|
| 6 F | Dkt. No. 53: Plaintiff's Memorandum in Opposition to Labrador Entertainment, Inc.'s Motion to Stay | Relevancy, hearsay, argumentative |
| 8 H | December 4, 2019 deposition Transcript of Peter Baker, individually and as the Person Most Knowledgeable for Beatbox Music, and exhibits attached thereto | Relevancy, hearsay, argumentative, deposition should contain many objections upon which no rulings have been made |
| 9 I | June 22, 2021 Deposition Transcript of Michael Cohen, individually, and exhibits attached thereto | Relevancy, hearsay, argumentative, deposition should contain many objections upon which no rulings have been made |
| 10 J | December 3, 2019 Deposition Transcript of Michael Cohen, individually and exhibits attached thereto | Relevancy, hearsay, argumentative, deposition should contain many objections upon which no rulings have been made |
| 11 K | December 3, 2019 Deposition Transcript of Noel Palmer Webb, individually, and exhibits attached thereto | Relevancy, hearsay, argumentative, deposition should contain many objections upon which no rulings have been made |
| 12 L | June 21, 2021 Deposition Transcript of Noel Palmer Webb, individually, and exhibits attached thereto | Relevancy, hearsay, argumentative, deposition should contain many objections upon which no rulings have been made |
| 13 M | June 23, 2021 Deposition Transcript of Noel Palmer Webb, as representative for Labrador Entertainment, Inc. and exhibits attached thereto | Relevancy, hearsay, argumentative, deposition should contain many objections upon which no rulings have been made |

| 14 N | June 22, 2021 Deposition Transcript of Noel Palmer Webb, as representative of Labrador Entertainment, LLC | Relevancy, hearsay, argumentative, deposition should contain many objections upon which no rulings have been made |
|------|------|------|
| 15 O | June 22, 2021 Transcript of Michael Cohen as representative of MCPC Holdings, LLC | Relevancy, hearsay, argumentative, deposition should contain many objections upon which no rulings have been made |
| 17 Q | Dkt. No. 1: Plaintiff's Original Complaint filed August 17, 2017 | Relevancy, hearsay, argumentative |
| 18 R | Dkt. No. 26: Answer to Complaint of Defendant Labrador Entertainment, Inc., D/B/A Spider cues Music Library | Relevancy, hearsay, argumentative |

11.     Witness lists of the parties have been filed with the Court. Only the witnesses identified in the lists will be permitted to testify (other than solely for impeachment).

Each party intending to present evidence by way of deposition testimony has marked such depositions in accordance with L.R. 16-2.7. For this purpose, the following depositions shall be lodged with the Clerk as required by L.R. 32-1:

Plaintiff (Defendant) objects to the presentation of testimony by deposition of the following witnesses:

Mr. Cohen & MCPC have sent their witness list to the plaintiff for inclusion on the universal list. However, they will also submit their own by the end of the day.

12.     The following law and motion matters and motions in limine, and no others, are pending or contemplated:

- 46 -

1   Plaintiff opposes Labrador Defendants' Motion in Limine to Exclude the New

2   Zealand Court Judgment from Evidence, and Cohen Defendants' Motion in Limine to

3   Preclude Cross-Defendant Labrador Entertainment, Inc. from Presenting Evidence or

4   Argument re: Cohen's Indemnity Obligation to Labrador.

5   See Labrador Motions in Limine against Beatbox and Cohen.

6   Mr. Cohen & MCPC are opposing the plaintiff's #s 1, 2, 4, & 5 MILs.

7

8   13.   Bifurcation of the following issues for trial is ordered.

9   None

10

11   14.   The foregoing admissions having been made by the parties, and the

12   parties having specified the foregoing issues remaining to be litigated, this Final

13   Pretrial Conference Order shall supersede the pleadings and govern the course of the

14   trial of this cause, unless modified to prevent manifest injustice.

15

16   Dated: _____, 20_____.

17

18   _____
     Honorable Michael W. Fitzgerald,
     United States District Judge

19

20   Approved as to form and content.

21

22   _____
     Attorney for Plaintiff Beatbox Music Pty, Ltd.

23

24

25   _____
     Attorney for Defendants Labrador Entertainment, Inc. d/b/a Spider Cues Music
26   Library, Noel Palmer Webb, Labrador Entertainment, LLC, and Webb Family Trust

27

28   _____
     Attorney for Defendants Michael Cohen and MCPC Holdings, LLC