BLAISE & NITSCHKE, P.C.
HEATHER L. BLAISE, ESQ. (SBN 261619)
145 S. Wells Street, Suite 1800
Chicago, IL 60606
Telephone: 312-448-6602
Email: hblaise@blaisenitschkelaw.com

Attorneys for Plaintiff,
BEATBOX MUSIC PTY, LTD.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BEATBOX MUSIC PTY, LTD.,<br><br>Plaintiff,<br><br>v.<br><br>LABRADOR ENTERTAINMENT, INC. D/B/A SPIDER CUES MUSIC LIBRARY, a California corporation; NOEL PALMER WEBB, an individual; MICHAEL COHEN, an individual; LABRADOR ENTERTAINMENT, LLC; MCPC HOLDINGS, LLC; WEBB FAMILY TRUST and DOES 1-20, inclusive,<br><br>Defendants.<br><br><hr>AND ALL RELATED ACTIONS | CASE NO: 2:17-cv-6108 MWF (JPRx)<br>*Assigned to the Hon. Michael W. Fitzgerald*<br><br>**PLAINTIFF'S AMENDED MOTION TO EXCLUDE: 1) UNDISCLOSED EVIDENCE AND UNDISCLOSED WITNESSES; 2) IRRELEVANT EVIDENCE AND ARGUMENT; 3) LABRADOR'S SELF-PREPARED SPREADSHEETS THAT PURPORT TO COMPRISE SPIDER CUES LIBRARY; 4) TESTIMONY AND EXPERT REPORTS; AND 5) EVIDENCE CONTRADICTORY TO FACTS**<br><br>**Final Pretrial Conf.: March 20, 2023**<br>**Time:           11:00 a.m. PT**<br>**Location:       Courtroom 5A**<br><br>Trial Date:        April 18, 2023<br>FAC:              January 24, 2020<br>Cross-Claim Filed: November 21, 2017<br>Action Filed:      August 17, 2017 |

## NOTICE OF MOTION

TO THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA, AND TO DEFENDANTS AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on March 20, 2023 at 11:00 a.m. for the Final Pretrial Conference, or as soon thereafter as the matter may be heard before the Honorable Michael W. Fitzgerald, in Courtroom 5A of the United States District Court, Central District of California, located at 350 W. First Street, Los Angeles, California 90012, or as ordered by the Court, Plaintiff BEATBOX MUSIC PTY, LTD., by and through its attorneys, will move to exclude 1) Undisclosed Evidence and Undisclosed Witnesses; 2) Irrelevant Evidence and Argument; 3) Labrador's Self-Prepared Spreadsheets that Purport to Comprise Spider Cues Library; 4) Testimony and Expert Reports; and 5) Evidence Contradictory to Facts.

These motions are based upon this Notice of Motion; the memorandum of points and authorities hereinbelow; the Declaration of Heather L. Blaise and exhibits thereto; the pleadings on file in this action; and such other further pleadings, papers, transcripts, and matters that may be properly presented to the Court.

These motions are made following conference of counsel pursuant to L.R. 7-3 and 16, and the Order re Jury Trial (Dkt. 37). Counsel spoke via telephone on October 11, 2021, had an in-person meeting on October 12, 2022, and followed up via emails on October 21, 2022; October 24, 2022; and October 26, 2022.

DATED: February 27, 2023

Respectfully submitted,
**BEATBOX MUSIC PTY, LTD.**
*/s/ Heather L. Blaise*
HEATHER L. BLAISE, ESQ. (SBN 261619)
*Attorney for Plaintiff*

# **TABLE OF CONTENTS**

MEET AND CONFER ..................................................................................... 1

MOTION IN LIMINE NO. 1 UNDISCLOSED EVIDENCE AND UNDISCLOSED WITNESSES............................................................................................................ 1

    A.    Incomplete and Undisclosed Evidence ............................................... 1

    B.    Undisclosed Witnesses ..........................................................................3

MOTION IN LIMINE NO. 2 IRRELEVANT EVIDENCE AND ARGUMENT ....... 8

    A.    Irrelevant Bank Documents...................................................................8

    B.    Irrelevant Testimony and Emails of Peter Moore and Bali Virk.....................8

    C.    Irrelevant and Factually and Legally Unsupported Argument: No Parol Evidence or Argument Contradictory to the Express Language of the Contracts at Issue 10

    D.    No Legal Requirement for Reliance ................................................12

MOTION IN LIMINE NO. 3 LABRADOR'S SELF-PREPARED SPREADSHEETS THAT PURPORT TO COMPRISE SPIDER CUES LIBRARY ............................... 15

MOTION IN LIMINE NO. 4 TESTIMONY AND EXPERT REPORTS.................. 16

    A.    Gerald Eskelin is Unqualified to Opine as to the Meaning of Contract Terms ....................................................................................... 16

    B.    The Testimony and Expert Report of Dr. Eric Fruits ..................... 18

    C.    The Unqualified Testimony Dr. Robert Fink.................................20

MOTION IN LIMINE NO. 5 EVIDENCE CONTRADICTORY TO FACTS.......... 21

    A.    The *Eminem Esque* Cue is an Infringement of the Song, *Lose Yourself* ........21

    B.    Defendants' Duty to Indemnify was Triggered upon the Notice of the Infringement Claim ................................................................................23

1

# **TABLE OF AUTHORITIES**

2

**Cases**

3   *Aguilar v. Int'l Longshoremen's Union Local No. 10,*
       966 F.2d 443 (9th Cir. 1992)......................................................................20

4   *Burkhart v. Wash. Metro. Area Transit Auth.,*
       112 F.3d 1207, 324 U.S. App. D.C. 241 (D.C. Cir. 1997)........................21

6   *California Emergency Physicians Medical Group v. PacifiCare of California,*
       111 Cal. App. 4th 1127 (2003)..................................................................15

7   *Carr Business Enterprises, Inc. v. City of Chowchilla,*
       166 Cal. App. 4th 14 (2008)......................................................................19

9   *Centex Homes v. R-Help Construction Co., Inc.,*
       32 Cal. App. 5th 1230 (2019)....................................................................24

11  *Clark v. Bear Stearns & Co.,*
       966 F.2d 1318 (9th Cir. 1992)....................................................................22

12  *Donelson v. Providence Health & Services - Washington,*
       823 F. Supp. 2d 1179 (E.D. Wash. 2011) .................................................21

14  *Goonewardene v. ADP, LLC,*
       6 Cal. 5th 817, 243 Cal.Rptr.3d 299, 434 P.3d 124 (Cal. 2019)........14, 15

15  *Hajibekyan v. BMW of N. Am., LLC,*
       839 F. App'x 187 (9th Cir. 2021) ..............................................................15

17  *Hangarter v. Provident Life & Accident Ins. Co.,*
       373 F.3d 998 (9th Cir. 2004)......................................................................20

18  *Kashmiri v. Regents of Univ. of Cal.,*
       156 Cal.App.4th 809, 67 Cal. Rptr. 3d 635 (2007)...................................13

20  *Legacy Vulcan Corp. v. Superior Court,*
       185 Cal.App.4th 677 (2010).......................................................................11

21  *Lucido v. Superior Court,*
       51 Cal. 3d 335 (1990)................................................................................22

23  *Luke v. Family Care and Urgent Medical Clinic,*
       323 Fed.Appx. 496 (9th Cir. 2009) ..............................................................4

24  *Nationwide Transpo. Fin. v. Cass Info. Sys., Inc.,*
       523 F.3d 1051 (9th Cir. 2008)....................................................................20

26  *Obesity Research Institute, LLC v. Fiber Research International, LLC,*
       No. 15-cv-595-BAS(MDD), 2017 U.S. Dist. LEXIS 123645,
       at *9 (S.D. Cal. Aug. 4, 2017)....................................................................20

28

-iv-

*Plotnik v. Meihaus*,
  208 Cal. App. 4th 1590 (2012)............................................................12

*Revitch v. DIRECTV, LLC*,
  977 F.3d 713 (9th Cir. 2020)..............................................................15

*Rideau v. Stewart Title of California, Inc.*,
  235 Cal. App. 4th 1286 (2015)...........................................................19

*Riverside Sheriffs' Assn. v. County of Riverside*,
  173 Cal.App.4th 1410 (2008).............................................................11

*Schauer v. Mandarin Gems of Cal., Inc.*,
  125 Cal. App. 4th 949 (2005).............................................................15

*Solid 21, Inc. v. Hublot of Am.*,
  685 Fed. Appx. 530, 2017 U.S. App. LEXIS 5227,
  2017 WL 1101102, at *1 (9th Cir. 2017).............................................20

*Somers v. United States F. & G. Co.*,
  191 Cal. 542 [217 P. 746] (1923)........................................................23

*Sullivan v. Dollar Tree Stores, Inc.*,
  623 F.3d 770 (9th Cir. 2010)..............................................................21

*United States v. Sepúlveda-Hernández*,
  752 F.3d 22 (1st Cir. 2014) ................................................................19

*United States v. Tamman*,
  782 F.3d 543 (9th Cir. 2015)..........................................................20, 21

*Varco-Pruden, Inc. v. Hampshire Constr. Co.*,
  50 Cal.App.3d 654 (1975) ..................................................................24

*Walia v. Aegis Ctr. Point Developers Private Ltd.*,
  N.D. Cal. Jan. 27, 2014, No. CV-12-4660-CRB, 2014 U.S. Dist. LEXIS 10433 ...22

*Wind Dancer Production Group v. Walt Disney Pictures*,
  10 Cal.App.5th 56 (2017) .............................................................10, 11

*Wolf v. Superior Court*,
  114 Cal.App.4th 1343 (2004) .............................................................11

*Wolf v. Walt Disney Pictures & Television*,
  162 Cal.App.4th 1107 (2008) .............................................................10

**Statutes**

Cal. Civ. Code § 1559...........................................................................14
Cal. Civ. Code § 1636...........................................................................13
Cal. Civ. Code § 1638...........................................................................13

Cal. Civ. Code § 1639 ........................................................................................14
Cal. Civ. Code § 2772 ........................................................................................23
Cal. Civ. Code § 2778 ........................................................................................23

**Rules**

Fed. R. App. P. 32.1 ...........................................................................................4
Fed. R. Civ. P. 26 ..............................................................................2, 3, 4, 16
Fed. R. Civ. P. 37 .........................................................................................3, 17
Fed. R. Evid. 201 .............................................................................................16
Fed. R. Evid. 402 .............................................................................10, 12, 15
Fed. R. Evid. 403 ...............................................................................8, 15, 16
Fed. R. Evid. 701 .............................................................................................19
Fed. R. Evid. 702 .....................................................................................18, 20
Fed. R. Evid. 703 .............................................................................................18
Fed. R. Evid. 704 .............................................................................................20
Fed. R. Evid. 902 .............................................................................................16

PLAINTIFF BEATBOX MUSIC PTY, LTD.'S AMENDED MOTIONS IN LIMINE

Plaintiff, Beatbox Music Pty, Ltd. ("Beatbox"), by and through its attorneys, Blaise & Nitschke, P.C., moves this Honorable Court for an Order excluding documents and testimony from evidence and any argument relating to the same in the trial of this action, in particular, (1) undisclosed evidence and witnesses, (2) irrelevant evidence and argument; (3) any and all spreadsheets that Defendants Labrador Entertainment, Inc., d/b/a Spider Cues Music Library ("Labrador Inc."), Noel Palmer Webb ("Webb"), Labrador Entertainment, LLC ("Labrador LLC"), and Webb Family Trust ("WFT") (collectively "Labrador" or "Labrador Defendants") purport to be representative of the Spider Cues music library; (4) the testimony and Expert Reports of Dr. Gerald Eskelin, Dr. Eric Fruits, and Dr. Robert Fink; and (5) any evidence contrary to facts, as follows:

## MEET AND CONFER

These motions are made following conference of counsel pursuant to Local Rules for the United States District Court for the Central District of California (the "Local Rules") 7-3 and 16, and the Honorable W. Michael Fitzgerald's Order re Jury Trial. Counsel spoke via telephone on October 11, 2021, had an in-person meeting on October 12, 2022, and followed up via emails on October 21, 2022; October 24, 2022; and October 26, 2022.

## MOTION IN LIMINE NO. 1
## UNDISCLOSED EVIDENCE AND UNDISCLOSED WITNESSES

**A.    Incomplete and Undisclosed Evidence**

1.    Defendants should not be entitled to use any documents at trial that they failed to turn over during discovery. Undisclosed documents that comprise Defendants' relevant evidence, which Defendants failed to completely disclose, and any testimony based on such evidence are likely to be the strongest evidence on a particular issue; documents are more persuasive than oral testimony because the evidence is in a writing that purports to be made at the time of the events described.

2.     Any undisclosed evidence relevant to Defendants' incomplete disclosures, such as the bank records described in Section II below, could tip the balance of an issue before the jury without Beatbox having an opportunity to review the same before trial.

3.     In particular, some undisclosed evidence that likely relates to Plaintiff's claims for fraudulent conveyance includes personal bank records for Defendants Noel Palmer Webb and Michael Cohen.

4.     In the absence of this undisclosed evidence, Beatbox has been forced to gather and rely on evidence consisting of the recollections of witnesses, including the shifting recollections of Defendants, as well as limited bank records from the entity Defendants.

5.     If any undisclosed evidence tending to bolster Defendants' defenses to fraudulent conveyance was to be disclosed at trial, Beatbox would be deprived of the opportunity to have the evidenced examined by experts or to depose witnesses, including the Defendants, as it pertains the undisclosed evidence. The most obvious prejudicial and unfair effect of the failure to disclose is that Beatbox would be deprived of the opportunity to prepare and evaluate its case by cross-examining Defendants or any other witnesses on the basis of the undisclosed evidence until the currently-scheduled trial.

6.     The prejudice resulting from Beatbox's lack of earlier knowledge of any such undisclosed evidence does not result from any lack of diligence in pursuing discovery as Plaintiff sough extensive discovery and compliance with the same. All the prejudice results from Defendants' failure to disclose.

a.     If there exists such undisclosed evidence, then Beatbox was prevented from independently discovering the existence of this evidence because it relied on Defendants to fulfill its Rule 26 duties to disclose and was, therefore, lulled into a false sense of security.

b.     In addition, Defendants would have deliberately misled Beatbox

-2-

concerning whether this evidence existed by attesting that all relevant evidence that they intended to use at trial had been disclosed.

7.     Rule 37(c)(1) explicitly states that if a party fails to disclose information required to be disclosed by Rule 26(a) or (e), the party with the obligation to disclose is "not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."

8.     Under the facts of this case, this failure to disclose could never be called "substantially justified" or "harmless" within the meaning of Rule 37(c)(1).

9.     Even if the evidence had been, at one point, accidentally overlooked, that would still not excuse the total failure to supplement and correct the initial disclosures at a later time, because Rule 26(e)(1) and (e)(2) require the party making initial disclosures to supplement and correct those initial disclosures.

10.     The reasons why the failure to disclose were not "harmless" within the meaning of Rule 37(c)(1) have been outlined above.

11.     No other remedy will remotely put Beatbox in the position it would have been in had Defendants fulfilled its duties to disclose. The failure to disclose in this case clearly resulted from bad faith and gamesmanship, and there is no conceivable reason why Defendants should not bear the penalty specified in the Rule for this conduct.

12.     Wherefore, Plaintiff respectfully requests that this Court exclude undisclosed documents and/or oral hearsay testimony relating to such undisclosed documents that comprise Defendants' relevant evidence which Defendants failed to completely disclose and any testimony based on such evidence as argued above.

**B.     Undisclosed Witnesses**

13.     Labrador Defendants did not disclose Peter Moore or Bali Virk as witnesses in its mandatory Rule 26(a)(1) disclosures until April 9, 2022. *See* Defendants' Fourth Amended and Supplemental Initial Disclosures, ¶¶ 10, 12, attached to the Declaration of Heather L. Blaise ("Blaise Decl."), as Exhibit A.

Discovery in the present case closed on July 23, 2021. *See* Dkt. 164. As such, Labrador Defendants' disclosure of Peter Moore and Bali Virk as individuals whose testimony it intended to rely on was far too late. Rule 26(e)(1)(A) requires parties to supplement disclosures in a "timely manner," unless the court chooses to order a party to supplement its disclosures of its own accord. *See* Fed. R. Civ. P. 26(e)(1)(A)(1)-(2). In the present case, the Court did not allow Labrador Defendants to supplement their disclosures. As such, Labrador Defendants' supplemental and amended disclosures are subject to the "timely manner" requirement. In the present case, Labrador Defendants' disclosure of Peter Moore and Bali Virk occurred in April 2022, nine months after discovery was closed and *eight months* after expert discovery had been cut off on August 13, 2021. Labrador's late disclosures fail to comply with case law defining and governing what constitutes a "timely manner" for purposes of Rule 26 disclosures.

14.     The Ninth Circuit has previously found that tardy disclosure supplementation, even in the course of discovery, can constitute an untimely disclosure. *Luke v. Family Care and Urgent Medical Clinic,* 323 Fed.Appx. 496, 500 (9th Cir. 2009); *see* Fed. R. App. P. 32.1. In *Luke*, the 9th Circuit affirmed a District Court decision that held that the Plaintiff's supplemental expert disclosures made four days before the close of discovery were untimely, partially because the supplemental disclosure came two months after the court-ordered initial deadline for expert disclosures. *Id.* at 499.

15.     In the present case, Labrador Defendants disclosure of Peter Moore and Bali Virk as witnesses nine months after the cut off deadline for non-expert discovery is analogous to *Luke.* Further, it represents an even more blatant and malicious abuse of discovery proceedings. Peter Moore and Bali Virk were known by Labrador Defendants since 2014. Labrador Defendants had full notice of the events and case in New Zealand. However, Labrador Defendants never saw fit to disclose Peter Moore or Bali Virk as witnesses within the proper timeframe for discovery, despite eight

-4-

years of knowledge and awareness of the initial infringement claims and possible pertinent individuals. Whether this failure to disclose within a reasonable period of time was from willful neglect or ongoing gamesmanship, this Court should not permit Labrador Defendants to sidestep the rules designed to prevent prejudice.

16.     Therefore, Labrador Defendants' disclosure of Peter Moore and Bali Virk as witnesses was untimely and improper under Rule 26(e) of the Federal Rules of Civil Procedure, and thus constitutes a failure to disclose Peter Moore and Bali Virk as witnesses for purposes of discovery. Nevertheless, Labrador Defendants sought an Application for Issuance of Letters Rogatory and argued that Labrador Defendants intended to call Peter Moore and Bali Virk for impeachment purposes, which the Court found that if called purely for impeachment purposes, the witnesses would not be subject to Rule 26 disclosure. *See* Dkts. 271, 274.

17.     This Court granted the Letters Rogatory for the purposes of impeachment but expressly did not re-open discovery in this matter. However, Counsel for Labrador Defendants, Doug Rosner, signed an affidavit in the New Zealand matter stating, in pertinent part:

> I, DOUGLAS JOSEPH ROSNER of California, Unites States of America, Attorney, solemnly and sincerely affirm:
> [..]
> 3.     On September 19, 2022 the US Court issued a request to the High Court of New Zealand seeking an order for the oral examination of the Respondents to enable their deposition to be admitted as evidence in the US proceeding ("the request"). Attached hereto and marked "DJR-1" is a true copy of the request issued, sealed and authenticated by the US Court.
> 4.     The sealed request (exhibit DJR-1) does not attach the exhibits it refers to in Section III (page 6, lines 18-22 & page 7, lines 2-5). Those exhibits were attached the declaration I gave to the US Court in support of the Applicant's application to that Court for it to issue the request. Attached hereto and marked "DJR-2" is a true copy of that declaration, which was filed in the US District Court on August 5, 2022. I confirm the exhibits referred to in the sealed request (exhibit DJR-1) are the

documents attached as to my declaration (exhibit DJR-2).

5.      The trial of the US proceeding is due to commence on December 6, 2022. The request sets out the background, explains why the Respondents' evidence is sought by the Applicant, and how the US Court wishes the Respondents' evidence to be taken and transmitted to it.

6.      To the best of my knowledge and belief, the Respondent:

   6.1     Peter Moore is a an owner and director at Big on Brand. The Big on Brand website (www.bigonbrand.co.nz) provides an email address (pete@bigonwriting.co.nz) and a New Zealand mobile telephone number (+64 21 597 879) for Mr Moore.

   6.2     Bali Virk is a producer with Graffiti Media. The Graffiti Media website (www.graffitimedia.com) also provides an email address (bali@graffitimedia.com) and a New Zealand mobile telephone number (+64 21 606 600) for Ms Virk.

7.      Last year I asked the Applicant's New Zealand counsel, Robert Stewart, to contact each Respondent to see whether they would agree to be deposed for the purpose of giving evidence in the US proceeding.

8.      Based on information I received from Mr Stewart:

   8.1     He telephoned Mr Moore in May 2021 at the number detailed on the Big on Brand website and left a voicemail message explaining why he was calling and requesting that Mr Moore call him back to discuss the matter. To the best of Mr Stewart's recollection, Mr Moore did not respond to Mr Stewart's voicemail message. Mr Moore's name and contact details remain listed on Big on Brand's website.

   8.2     He telephoned Ms Virk in May 2021 at the number detailed on the Graffiti Media website and spoke to Ms Virk. Ms Virk indicated to Mr Stewart that she did not want to be involved as her current employer was at that time a customer of Beatbox, the plaintiff in the US proceeding. Ms Virk's name and contact details remain listed on the Graffiti Media website.

9.      The evidence of the Respondents is seen by the Applicant and the US Court as relevant to the issues arising in the US proceeding, and the Applicant's defence in particular. Certain documents the Applicant wishes to adduce as part of its case must be authenticated by the Respondents before those documents can be admitted, and used as a basis for cross-examination of the plaintiff's witnesses, in the US proceeding.

10.    As I mentioned above, the US proceeding is scheduled to commence on December 6, 2022. Accordingly, in accordance with the request made by the US Court, the Applicant seeks the urgent assistance of the High Court of New Zealand to order the oral examination of the Respondents under oath for the purposes of the US proceeding.

11.    The US Court has requested that counsel for the parties to the US proceeding be permitted to attend the examination in person or via video and that counsel for the parties be permitted to as follow-up questions of the witness. I wish to attend the examination by via an audio visual link (AVL) in order to have each Respondent authenticate the relevant documents and ask follow- up questions should that be necessary.

12.    As confirmed by the request, the Applicant will reimburse the New Zealand High Court for the costs of executing the request (including the AVL) and I should also add that the Applicant is aware of the Respondents' entitlement to conduct money and payment for expenses and loss of time as on attendance as a witness in civil proceedings before the New Zealand High Court.

13.    Should the New Zealand High Court require any further information about the matters referred to in the request, I am happy to provide it.

*See* Affidavit of Douglas Joseph Rosner In Support of Without Notice Originating Application Seeking Orders to Effect a Letter of Request in Case No. CIV-2022-404 *Labrador Entertainment, Inc. and Peter Moore and Bali Virk* attached to Blaise Decl. as Exhibit B. Importantly, this Court did not re-open discovery and Rosner's September 27, 2022 affidavit admits that Labrador Defendants failed to act diligently and in good faith as it relates to testimony and documents sought from Peter Moore and Bali Virk, which are also irrelevant and meant only to confuse the jury, as further discussed below. Tellingly, Rosner admits that he has been attempting to contact these witnesses since May 2021 months before discovery closed, yet he failed to disclose them as witnesses or take any action with regard to them until mere months before this trial is set to proceed. Moreover, he falsely reported to the New Zealand Court that this Court: "order[ed] for the oral examination of the Respondents to

1  enable their deposition to be admitted as evidence in the US proceeding." Rosner had

2  further sworn that the emails "must be authenticated by the Respondents before those

3  documents can be admitted, and used as a basis for cross-examination of the

4  plaintiff's witnesses, in the US proceeding." However, as undisclosed witnesses and

5  without reopening discovery, the testimony must only be permitted if it is impeaching

6  and not permitted for mere cross-examination.

7      18.    Wherefore, Plaintiff seeks an order barring any party from calling any

8  and all witnesses who were not timely disclosed, including but not limited to Peter

9  Moore and Bali Virk. *In the alternative*, that any testimony from the deponents be

10 limited to laying foundation for documents that impeach any of the testimony of

11 Plaintiff's witnesses.

## MOTION IN LIMINE NO. 2
## IRRELEVANT EVIDENCE AND ARGUMENT

**A.    Irrelevant Bank Documents**

15     19.    Federal Rules of Evidence Rule 402 states that "[i]rrelevant evidence is

16 not admissible."

17     20.    Irrelevant evidence is of no probative value and is certain to waste the

18 time of this Court and the jury. Fed. R. Evid. 403.

19     21.    In particular, some irrelevant evidence produced in this case includes

20 those incomplete bank records from entity Defendants only for months showing no

21 fraudulent conveyances. See Section I, above. Bank records that fail to show any such

22 transfers bear no relevance to the case at hand, unless they are included in the

23 admission of the full set of bank records produced by the entity Defendants. As a

24 result, any irrelevant bank records should be excluded,

25     22.    Wherefore, Plaintiff respectfully requests that this Court exclude

26 irrelevant evidence as argued above.

**B.    Irrelevant Testimony and Emails of Peter Moore and Bali Virk**

28     23.    Labrador contends that the emails attached in Blaise Decl. as Exhibit C

should be presented to the jury for the jury to decide if Plaintiff had a duty to ask
Labrador whether or not the Cue was permitted to be licensed by AMCOS. *See*
Dkt. 269 at 4.

24.     The testimony and emails are completely irrelevant to this case because:
1) The Labrador-Beatbox Agreement does not impose any obligation on Beatbox to
seek additional assurances about the rights that are granted. Further, Defendants
cannot point to any document in the record that support such an argument. The
Labrador-Beatbox Agreement expressly provides a representation and warranty that
Labrador Entertainment, Inc. undertook that it was party to or had entered into good
and valid contracts with the writers and composers of the Compositions comprising
the "Spider Cues Library." Additionally, the contracts enable Labrador to comply
with all terms and conditions of the 2009 contract and that Labrador Entertainment,
Inc. would do all things necessary to not be in breach of the same during the term of
the 2009 Labrador-Beatbox Agreement (attached to Blaise Decl. as Exhibit D,
Paragraph 16(iii)); and 2) The Labrador-Beatbox Agreement expressly provides that
Labrador Entertainment, Inc. agreed to indemnify and hold harmless Beatbox from
any and all loss, liability and expense incurred by reason of any infringement of
rights or other claim inconsistent with Labrador Entertainment, Inc.'s guarantees,
warranties, representations and undertakings contained in the 2009 contract. Such
indemnity was not and shall not be adversely affected should exploitation of the
recordings continue and/or have continued after notice of infringement of rights or
other claim was and/or has been received by Beatbox […]. *See* Labrador-Beatbox
Agreement, at Blaise Decl. Exhibit D, Paragraph 16(v). Thus, even if the Emails of
Peter Moore and/or Bali Virk somehow amounted to a notice of the Cue's
infringement of the rights of any third party (which they expressly do not), then the
existence of the emails would still not permit Labrador to be shielded from liability
based on the express terms of the Labrador-Beatbox Agreement. Permitting
Defendants to make such an argument will only lead to the confusion and misleading

of the jury and will not assist in the administration of justice in violation of Federal Rules of Evidence Rule 402 and 403 and be in violation of the parol evidence rule, as further discussed below.

**C.    Irrelevant and Factually and Legally Unsupported Argument: No Parol Evidence or Argument Contradictory to the Express Language of the Contracts at Issue**

25.    Labrador contends that: 1) any alleged subsequent breach by Plaintiff cured Defendants' initial breach in sending the Cue that violated representations and warranties of originality and/or existence of adverse claims from third parties; 2) that Plaintiff was under any duty to seek from Labrador any additional assurances that the Cue could be licensed by AMCOS; 3) that Labrador instructed Beatbox to remove the Cue from being licensed; 4) that Labrador is not liable because it instructed Beatbox to remove the Cue from being Licensed, which it did not.

26.    Pursuant to California law, "interpretation of a contract is a judicial function," and "[t]he rules governing the role of the court in interpreting a written instrument are well established." *Wind Dancer Production Group v. Walt Disney Pictures*, 10 Cal.App.5th 56, 68 (2017). When interpreting a written contract, a court must give "effect to the mutual intention of the parties as it existed at the time the contract was executed." *Id.* at 68-69 (internal quotes omitted). "Ordinarily, the objective intent of the contracting parties is a legal question determined solely by reference to the contract's terms." *Id.* at 69.

27.    Subject to exceptions, the general rule is that a court may not consider extrinsic evidence of any prior agreement or contemporaneous oral agreement to vary or contradict the clear and unambiguous terms of a written, integrated contract. *Id.* Extrinsic evidence is admissible, however, "to interpret an agreement when a material term is ambiguous." *Id.*, citing *Wolf v. Walt Disney Pictures & Television*, 162 Cal.App.4th 1107, 1125–1126 (2008).

28.    Whenever possible, a court must ascertain "'the intent and scope of [an]

agreement by focusing on the usual and ordinary meaning of the language used and the circumstances under which the agreement was made.'" *Wind Dancer Production Group* at 69, citing *Riverside Sheriffs' Assn. v. County of Riverside*, 173 Cal.App.4th 1410, 1424 (2008). However, when appropriate, courts will consider extrinsic evidence "to establish trade usage, and that is true even though the words are in their ordinary or legal meaning entirely unambiguous." *Wolf v. Superior Court*, 114 Cal.App.4th 1343, 1344 (2004). "The basis of this rule is that to accomplish a purpose of paramount importance in interpretation of documents, namely, to ascertain the true intent of the parties, it may well be said that the usage evidence does not alter the contract of the parties, but on the contrary gives the effect to the words there used as intended by the parties." *Id.* "The usage becomes part of the contract in aid of its correct interpretation." *Id.*

29.  A court must "consider the contract as a whole and interpret its language in context so as to give effect to each provision, rather than interpret contractual language in isolation." *Wind Dancer Production Group* at 69, citing *Legacy Vulcan Corp. v. Superior Court*,185 Cal.App.4th 677, 688 (2010). "If contractual language is clear and explicit and does not involve an absurdity, the plain meaning governs." *Wind Dancer Production Group* at 69.

30.  There is no language contained in the Labrador-Beatbox Agreement that would support any of the following: 1) that any alleged subsequent breach by Plaintiff could somehow cure Defendants' initial breach in sending the a Cue that violated representations and warranties of originality and/or existence of adverse claims from third parties; 2) that Plaintiff was under any duty to seek from Labrador any additional assurances that the Cue could be licensed by AMCOS; 3) that even if Labrador had instructed Beatbox to remove the Cue from being licensed (which there are no facts to support such a conclusion) that Labrador would be free from liability under the terms of the Labrador-Beatbox Agreement; nor 4) that Labrador would not liable if instructed Beatbox to remove the Cue from being Licensed.

31.     Defendants should not be entitled to offer evidence or argument for the purpose of contradicting the express language of the Labrador-Beatbox Agreement because it is not relevant to the issues at trial. Fed. R. Evid. 402. Further, such evidence is not probative and risks misleading the jury and confusing the issues. Fed. R. Evid. 403. Specifically, this means that Defendants should not be permitted to offer parol evidence for the purpose of showing some other that interpretation of Labrador-Beatbox Agreement other than its express language.

32.     Finally, Defendants should be barred from making any argument that any alleged subsequent breach by Beatbox is relevant in this case and would only lead to confuse the jury, consistent with Fed. R. Evid. 402 and 403. *Plotnik v. Meihaus*, 208 Cal. App. 4th 1590, 1602 (2012) (holding that one who breaches a contract "cannot recover for a subsequent breach by the other party").

## D.     No Legal Requirement for Reliance

33.     Cohen contends that Beatbox must establish that it actually saw and read the Labrador-Cohen Agreement in order to proceed on Beatbox's intended beneficiary theory. Cohen continues to insist that "reliance" is a required element which Beatbox must prove.

34.     In actuality, Beatbox does not need to prove reliance in this case and any argument about reliance would be irrelevant and mislead the jury in violation of violation of Federal Rules of Evidence Rule 402 and 403. Moreover, this Court has already ruled on the judicial function of contract interpretation that Beatbox is an intended-beneficiary under the Labrador-Cohen Agreement, as follows:

> With respect to Defendants' argument that Plaintiff has failed to plead privity, the Court has repeatedly noted that Plaintiff is proceeding against Cohen Defendants under an intended beneficiary theory, rather than privity. (Order at 2, 6, 12) ("There remain genuine issues of triable fact as to whether Cohen misrepresented the Cohen Composition's authorship and originality at the inception of the Labrador-Cohen Agreement to Beatbox's detriment (on a third-party beneficiary theory).") (emphasis added). This conclusion is based on

-12-

Plaintiff's express allegations, repeated throughout the FAC, that "Plaintiff was an intended beneficiary of the written agreement between Defendant Cohen and Defendant Labrador." (FAC ¶¶ 16, 17, 44-50). Furthermore, the express language of the Labrador-Cohen Agreement provides Plaintiff with third-party beneficiary status: "This Agreement will inure to the benefit of, and be binding upon, each party's heirs, subsidiaries, affiliates, corporations, licensees, successors and assigns." (See FAC, Exhibit A). Defendants' privity and third-party beneficiary arguments therefore fail.

Defendants' breach and reliance arguments also fail. Plaintiff expressly alleges that "Defendants breached the contract by violating Section 16(iv) of the 2009 Agreement which guaranteed that the compositions were original and that none of the compositions infringed any other copyright work or the rights of any third party." (FAC ¶ 47). And Plaintiff alleges that it acted in reliance on Cohen's representations and warranties contained in the Labrador-Cohen Agreement generally when it agreed to act as a sub-publisher of Labrador and specifically when it provided the Cohen Composition to the Australian Mechanical Copyright Owners Association ("AMCOS"). (Id. ¶¶ 16, 17, 44-50) (alleging that Plaintiff was "under the impression that all compositions were free from copyright infringement" when it placed the Cohen Composition into the marketplace to Plaintiff's detriment.).

35.     Dkt. 185 at 4-5.Whether or not Plaintiff is entitled to Third Party Beneficiary status under the terms of the Composer's Agreement entered between Michael Alan Cohen and Labrador Entertainment, Inc./Spider Cues dated February 14, 2008 (the "Composer Agreement") under California law is a legal determination for this Court to make.

36.     In California, "[a] contract must be so interpreted as to give effect to the mutual intention of the parties as it existed at the time of contracting." Cal. Civ. Code § 1636. We normally determine the mutual intention of the parties "from the written terms [of the contract] alone," so long as the "contract language is clear and explicit and does not lead to absurd results." *Kashmiri v. Regents of Univ. of Cal.*, 156 Cal.App.4th 809, 67 Cal. Rptr. 3d 635, 652 (2007); see also Cal. Civ. Code § 1638 ("The language of a contract is to govern its interpretation, if the language is clear

and explicit, and does not involve an absurdity."), § 1639 ("When a contract is reduced to writing, the intention of the parties is to be ascertained from the writing alone, if possible ...."). *Revitch v. DIRECTV, LLC*, 977 F.3d 713, 717 (9th Cir. 2020).

37.    Under California law, a nonsignatory or third party to a contract must in fact benefit from contract to be considered a third party beneficiary. Cal. Civ. Code § 1559. California law requires the court to focus on the language of the contract and all of the relevant circumstances under which the contract was entered into to determine if third party enforcement will effectuate the contracting parties' performance objectives, namely those objectives of the enterprise embodied in the contract, read in light of surrounding circumstances. Cal. Civ. Code § 1559.  The "express provisions of the contract," considered in light of the "relevant circumstances" namely the exclusive music publishing and sub-publishing business easily establishes  that (1) Plaintiff, as exclusive sub-publisher, would in fact benefit from the Composer Agreement;" (2) "a motivating purpose of the contracting parties was to provide a benefit" to Plaintiff, as exclusive sub-publisher; and (3) permitting Plaintiff to enforce the contract "is consistent with the objectives of the contract and the reasonable expectations of the contracting parties." *Goonewardene v. ADP, LLC*, 6 Cal. 5th 817, 830, 243 Cal.Rptr.3d 299, 434 P.3d 124 (Cal. 2019).

38.    The Composer Agreement granted Labrador the right to assign or license the Compositions, in whole or in part, to any third party, and expressly stated that the provisions of the Composer Agreement "will inure to the benefit of, and be binding upon, each party's heirs, subsidiaries, affiliates, corporations, licensees, successors and assigns." *See* Dkt. 1-1.

39.    Under the express language of the Composer Agreement, Plaintiff is an intended beneficiary of the Composer Agreement as it meets the definition of any of the following: 1) Labrador's affiliate; 2) Labrador's licensee; 3) Labrador's assigns under the express terms of the Labrador-Beatbox Agreement dated April 1, 2019 and amended on or about February 22, 2014. Since Plaintiff was appointed as Labrador's

sole and exclusive sub-publisher in the territories of Australia, New Zealand, Fiji with the exclusive right to grant non-exclusive licenses in the territories. Thus, Plaintiff is easily identified under the express terms of the Composer Agreement as an affiliate; licensee and/or assign. *Revitch v. DIRECTV, LLC*, 977 F.3d 713, 717 (9th Cir. 2020); *Schauer v. Mandarin Gems of Cal., Inc.*, 125 Cal. App. 4th 949, 957 (2005), *quoting California Emergency Physicians Medical Group v. PacifiCare of California*, 111 Cal. App. 4th 1127, 1138 (2003); *Goonewardene v. ADP, LLC*, 6 Cal. 5th 817, 830, 243 Cal.Rptr.3d 299, 434 P.3d 124 (2019) (discussing third-party beneficiary doctrine); *Hajibekyan v. BMW of N. Am., LLC*, 839 F. App'x 187, 188 (9th Cir. 2021) (finding third party beneficiary status when the underlying contract expressly covered affiliates).

40.     As a result, Cohen should not be entitled to argue or present evidence relating to "reliance" as it is irrelevant and would only lead to the confusion of the jury in violation of Fed. R. Evid. 402 and 403. Moreover, this Court should rule and provide an instruction that Plaintiff is a third party beneficiary and Defendants should not be entitled to present any contradictory evidence.

## MOTION IN LIMINE NO. 3
## LABRADOR'S SELF-PREPARED SPREADSHEETS THAT PURPORT TO COMPRISE SPIDER CUES LIBRARY

41.     Labrador Defendants have produced a series of self-serving, un-authenticated self-prepared spreadsheets which they purport to be lists of all compositions comprising the Spider Cues Library at various times throughout the relationship of the Parties. However, none of the spreadsheets have been established as being actually attached to any given email and the spreadsheets expressly do not dictate the Spider Cues Library under the terms of the relevant contracts. These self-serving, self-prepared spreadsheets are extensive, unauthenticated, unreliable and any probative value contained therein is outweighed by the risk of confusion of the issues at trial and misleading the jury in violation of Fed. R. Evid. 403.

42.     Federal Rules of Evidence Rule 901(a) requires that the proponent of an item of evidence produce evidence sufficient to support a finding that the item is what the proponent claims it to be in order to satisfy the requirement of authentication. Labrador Defendants are unable to produce such evidence as it relates to the authenticity of the spreadsheets produced, let alone establishing that the spreadsheets are the same as those purportedly attached to the emails upon which the Labrador Defendants base their claims.

43.     Because any purported facts relating to these spreadsheets – including their authenticity – is subject to reasonable dispute, their authenticity cannot be judicially noticed. Fed. R. Evid. 201(b).

44.     Further, the spreadsheets do not fall into any of the categories of evidence that are self-authenticating. Fed. R. Evid. 902.

45.     Federal Rules of Evidence Rule 403 states that evidence may be excluded "if its probative value is substantially outweighed by a danger of" confusing the issues and/or misleading the jury. Both risks substantially outweigh any probative value that these spreadsheets may offer.

46.     Wherefore, Plaintiff respectfully request that this Court exclude Labrador's self-prepared spreadsheets that they purport to comprise the Spider Cues Library at various times throughout the course of the Parties' relationship.

## MOTION IN LIMINE NO. 4
## TESTIMONY AND EXPERT REPORTS

**A.    Gerald Eskelin is Unqualified to Opine as to the Meaning of Contract Terms**

47.     Federal Rule of Civil Procedure 26(a)(2), states in pertinent part:

2) Disclosure of Expert Testimony.
(A) In General. In addition to the disclosures required by Rule 26(a)(1), a party must disclose to the other parties the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705.
(B) Witnesses Who Must Provide a Written Report. Unless otherwise

-16-

stipulated or ordered by the court, this disclosure must be accompanied by a written report—prepared and signed by the witness—if the witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony. The report must contain:

(i) a complete statement of all opinions the witness will express and the basis and reasons for them;

(ii) the facts or data considered by the witness in forming them;

(iii) any exhibits that will be used to summarize or support them;

(iv) the witness's qualifications, including a list of all publications authored in the previous 10 years;

(v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and

(vi) a statement of the compensation to be paid for the study and testimony in the case.

Fed. R. Civ. P. 26.

48.     The Eskelin Report (attached to Blaise Decl. as Exhibit E) fails to meet the disclosure requirements above in numerous ways. If an expert report is not submitted in accordance with Rule 26(a), the court has the discretion to exclude the evidence associated with the expert "on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c),

49.     Nothing contained in the Amended Report identifies how Dr. Gerald Eskelin is remotely qualified to opine that the contractual meanings of the words "alter" or "adapt" have no meaning in the music industry. Indeed, the Report does not indicate Eskelin's background, knowledge, experience and/or training as it relates to contractual meanings and/or licensing in the music industry. Notably, the Eskelin Report is silent as to any background other than that of a musician. Additionally, nothing disclosed by Defendant Cohen indicates that Eskelin is qualified to opine about contractual meanings in music industry contracts, he is not an attorney, nor does he have any disclosed experience negotiating and/or entering into music licensing agreements, let alone production music licensing.

50.     Wherefore, Plaintiff respectfully requests that this Court exclude the

Eskelin Report and the testimony of Dr. Gerald Eskelin as it relates to any and all contract and/or legal terms.

**B.      The Testimony and Expert Report of Dr. Eric Fruits**

51.      Federal Rules of Evidence Rule 702 provides that expert witnesses are permitted to testify in the form of an opinion or otherwise if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

52.      Federal Rules of Evidence Rule 703 provides that:

> An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed. If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted. But if the facts or data would otherwise be inadmissible, the proponent of the opinion may disclose them to the jury only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect.

53.      Although Dr. Eric Fruits' qualifications reflect expertise in economics, the Fruits Report and Dr. Eric Fruits' testimony consists of simple arithmetic calculations based upon unsupported factual assumptions and inadmissible input data provided by the Labrador Defendants. *See* Deposition Transcript of Dr. Eric Fruits, attached to Blaise Decl. as Exhibit F, 28:5-12; 32:9-14; 33:6-34:7; 38:11-40:25. Because there is little to no specialized knowledge involved in the formation of Dr. Eric Fruits' opinion, the opinion is based upon inadmissible facts, assumptions, and data, and the prejudicial effect of his opinions would outweigh any probative value thereof, this Court should exclude the Fruits Report and the testimony of Dr. Eric Fruits.

54.      Dr. Eric Fruits' Report lists an opinion regarding the litigation costs

1   incurred by the Labrador Defendants, alleging that Labrador Defendants incurred

2   $871,704.00 as a result of the events giving rise to this case. This figure is derived

3   from Dr. Eric Fruits' addition of annual costs alleged by Labrador Defendants in a

4   spreadsheet prepared by the Labrador Defendants with no supporting evidence. *See*

5   Blaise Decl. at Exhibit F, 47:11-17. Simple addition is not the purview of expert

6   testimony, rendering any such testimony that of a lay witness under Federal Rules of

7   Evidence Rule 701. *United States v. Sepúlveda-Hernández*, 752 F.3d 22, 34-35 (1st

8   Cir. 2014). Because Dr. Eric Fruits has no first-hand knowledge or observations

9   relating to this case, he cannot testify "rationally based on the witness's perception."

10  Fed. R. Evid. 701(a). Therefore, Dr. Eric Fruits cannot testify in this case.

11       55.    In addition, Labrador is not entitled to its attorneys' fees from Beatbox

12  on any theory of liability Labrador should not be entitled to admit evidence or

13  advance arguments that Beatbox is in any way liable to Labrador for its attorneys'

14  fees and/or costs in this matter.

15       56.    Generally, an indemnification provision allows one party to recover

16  costs incurred defending actions by third parties, not attorney fees incurred in an

17  action between the parties to the contract. *See Rideau v. Stewart Title of California*,

18  *Inc.*, 235 Cal. App. 4th 1286, 1298 (2015). A clause that contains the words

19  "indemnify" and "hold harmless" generally obligates the indemnitor to reimburse the

20  indemnitee for any damages the indemnitee becomes obligated to pay third persons—

21  that is, it relates to third party claims, not attorney fees incurred in litigation between

22  the parties to the indemnity agreement itself. *See Carr Business Enterprises, Inc. v.*

23  *City of Chowchilla*, 166 Cal. App. 4th 14, 22-23 (2008) (barring recovery of attorney

24  fees incurred in enforcing indemnification agreement). The Labrador-Beatbox

25  indemnification provision states, in pertinent part:

26       "[Labrador Inc.] agrees to indemnify and hold harmless [Beatbox], its
        successors and assigns of and from any and all loss, liability and
27       expense incurred by reason of any infringement of rights or other
        claim inconsistent with [Labrador Inc.'s] guarantees, warranties,
28

-19-

representations and undertakings contained in [the Labrador-Beatbox Agreement]."

*See* Blaise Decl. Exhibit D, Paragraph 16(v)).

57.     In the Order entered July 17, 2020 (Docket 157), this Court found on the very same contractual language: "Thus, based on the contractual language at issue here, the Court determines that Beatbox can recover attorneys' fees and costs incurred in defending against third party claims, but cannot recover legal expenses incurred in pursuing the instant suit." As a result, Labrador should not be entitled to submit evidence and/or argument that it is entitled to attorneys' fees from Beatbox on the very same language.

58.     Wherefore, Plaintiff respectfully requests that this Court exclude the Fruits Report and the testimony of Dr. Eric Fruits and to exclude any request for Beatbox to be responsible for Labrador's attorneys' fees in this case.

## C.     The Unqualified Testimony Dr. Robert Fink

59.     "In general, an expert may only testify as to 'scientific, technical, or other specialized knowledge [that] will assist the trier of fact to understand the evidence or determine a fact in issue[.]'" *Obesity Research Institute, LLC v. Fiber Research International, LLC*, No. 15-cv-595-BAS(MDD), 2017 U.S. Dist. LEXIS 123645, at *9 (S.D. Cal. Aug. 4, 2017), quoting *United States v. Tamman*, 782 F.3d 543, 553-54 (9th Cir. 2015) (citing Fed. R. Evid. 702(a); *Aguilar v. Int'l Longshoremen's Union Local No. 10*, 966 F.2d 443, 447 (9th Cir. 1992)).

60.     "An opinion is not objectionable just because it embraces an ultimate issue." Fed. R. Evid. 704(a). "That said, an expert witness cannot give an opinion as to her legal conclusion, i.e., an opinion on an ultimate issue of law." *Nationwide Transpo. Fin. v. Cass Info. Sys., Inc.*, 523 F.3d 1051, 1058 (9th Cir. 2008) (quoting *Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1016 (9th Cir. 2004)); see also *Solid 21, Inc. v. Hublot of Am.*, 685 Fed. Appx. 530, 2017 U.S. App. LEXIS 5227, 2017 WL 1101102, at *1 (9th Cir. 2017) (applying Nationwide's

proposition regarding expert witnesses and legal conclusions following the 2011 Amendment to Federal Rule of Evidence 704); *Tamman*, 782 F.3d at 553-54 ("[A]n expert cannot testify to a matter of law amounting to a legal conclusion.").

61.    "In other words, an expert may offer his opinion as to facts that, if found, would support a conclusion that the legal standard at issue was satisfied, but he may not testify as to whether the legal standard has been satisfied." *Donelson v. Providence Health & Services - Washington*, 823 F. Supp. 2d 1179, 1193 (E.D. Wash. 2011), quoting *Burkhart v. Wash. Metro. Area Transit Auth.*, 112 F.3d 1207, 1212-13, 324 U.S. App. D.C. 241 (D.C. Cir. 1997). "Legal conclusions are inadmissible because the jury would have no way of knowing whether the preparer of the report was cognizant of the requirements underlying the legal conclusion and, if not, whether the preparer might have a higher or lower standard than the law requires." *Sullivan v. Dollar Tree Stores, Inc.*, 623 F.3d 770, 777 (9th Cir. 2010).

62.    Dr. Fink is not an attorney and had no legal training. He is, therefore, unqualified to opine as to legal issues and/or provide legal conclusions. Dr. Fink should be barred from offering such testimony to avoid misleading and confusing the jury.

## MOTION IN LIMINE NO. 5
## EVIDENCE CONTRADICTORY TO FACTS

**A.    The *Eminem Esque* Cue is an Infringement of the Song, *Lose Yourself***

63.    Relevant to this case is the fact that the cue composed by Michael Cohen at issue, *Eminem Esque*, infringes the copyright of *Lose Yourself* by Eminem.

64.    This fact is established by the New Zealand Court judgment, Judgment of Cull J, submitted by Plaintiff as Exhibit H to its Motion for Partial Summary Judgment. *See* Dkts. 208-4; 208-5; 208-6.

65.    As the Judgment of Cull J states in paragraph 459 (a), "copyright infringement did occur."

66.    In addition, paragraphs 462 and 463 of the Judgment of Cull J state:

[462] *Eminem Esque* has substantially copied *Lose Yourself* and is a substantial copy of *Lose Yourself* because:

    (a) the differences between *Eminem Esque* and *Lose Yourself* are minimal;

    (b) the close similarities and the indiscernible differences in drum beat, the "melodic" line and the piano figures between *Lose Yourself* and *Eminem Esque* make *Eminem Esque* strikingly similar to *Lose Yourself*; and

    (c) *Eminem Esque* substantially reproduces the essence of *Lose Yourself*.

[463] The parts of *Eminem Esque* used in the National Party's election advertisements also substantially reproduce *Lose Yourself*.

67.    Although Defendants' duty to indemnify was triggered upon notice of an adverse claim by a third party which would necessarily include the filing of the copyright infringement claim, rather than the finding of infringement as explained more fully in Section VII below, the question of whether or not *Eminem Esque* infringes the copyright of *Lose Yourself* is a settled issue; a court found *Eminem Esque* to be infringing of *Lose Yourself*.

68.    "Under California law, issue preclusion prohibits re-litigation of issues decided in a prior proceeding if (1) the issue is identical to the issue decided in the prior proceeding, (2) the issue was actually litigated in the prior proceeding, (3) the issue was necessarily decided in the prior judgment, (4) the prior judgment was final and on the merits, and (5) the party against whom preclusion is brought must be identical to or in privity with the party in the prior proceeding." *Walia v. Aegis Ctr. Point Developers Private Ltd.*, N.D. Cal. Jan. 27, 2014, No. CV-12-4660-CRB, 2014 U.S. Dist. LEXIS 10433, citing *Lucido v. Superior Court*, 51 Cal. 3d 335, 341 (1990); *see also Clark v. Bear Stearns & Co.*, 966 F.2d 1318, 1320-21 (9th Cir. 1992).

69.    The issue of copyright infringement in this case is identical to that of the New Zealand proceedings, because the copyright infringement at issue in both is the copyright infringement of *Lose Yourself* by *Eminem Esque* in New Zealand, the

relevant licensed territory at issue.

70.    The issue of copyright infringement was actually litigated in the New Zealand proceedings. *See* Dkt. 208-6 at 2-3.

71.    The issue of copyright infringement was necessarily decided in the New Zealand proceedings. *See id*.

72.    The determination that *Eminem Esque* infringed the copyright of *Lose Yourself* was final and on the merits. *See id.* at 2-5.

73.    Both Defendants Labrador Inc. and Michael Cohen are named in the New Zealand proceedings. Dkt. 208-4.

74.    Wherefore, Plaintiff respectfully requests that this Court exclude evidence contradictory to the fact that the *Eminem Esque* cue is an infringement of the song, *Lose Yourself.*

**B.    Defendants' Duty to Indemnify was Triggered upon the Notice of the Infringement Claim**

75.    Notwithstanding Section A above, Defendants' duty to indemnify Plaintiff in this case was triggered upon Beatbox's notice of the existence of a third-party claim and definitely upon the filing of the infringement claim in New Zealand.

76.    "Indemnity is a contract by which one engages to save another from a legal consequence of the conduct of one of the parties, or of some other person." Cal. Civ. Code § 2772. Under California law, such contracts for indemnification are enforceable. "An indemnity against claims, or demands, or liability, expressly, or in other equivalent terms, embraces the costs of defense against such claims, demands, or liability incurred in good faith, and in the exercise of a reasonable discretion[.]" Cal. Civ. Code § 2778, subd. 3. It is well-established that an indemnitor in an indemnity contract generally undertakes to protect the indemnitee against loss or damage through liability to a third person. *Somers v. United States F. & G. Co.*, 191 Cal. 542, 547 [217 P. 746] (1923). A clause which contains the words "indemnify" and "hold harmless" is an indemnity clause which generally obligates the indemnitor

1  to reimburse the indemnitee for any damages the indemnitee becomes obligated to

2  pay third persons. *Varco-Pruden, Inc. v. Hampshire Constr. Co.*, 50 Cal.App.3d 654,

3  660 (1975). Indemnification agreements ordinarily relate to third party claims. Ibid.

4      77.   The duty to defend under an indemnification agreement arises

5  "immediately upon the proper tender of defense of a claim embraced by the

6  indemnity agreement." *Centex Homes v. R-Help Construction Co., Inc.*, 32 Cal. App.

7  5th 1230, 1236 (2019). This duty arises "from the mere allegation" in an underlying

8  action arising from the subject matter covered by the indemnity agreement. *Id.*

9  Because "the duty to defend arises as a matter of law," the duty is "not a question of

10 fact for the jury," and it is for this Honorable Court to decide as a matter of law if the

11 claim at issue is "embraced by the indemnity agreement[s]" in this case. *Id.*

12     78.   Nothing within the indemnity language at issue in Labrador's Agreement

13 with Beatbox requires a finding under United States law that a particular cue was

14 infringing, nor does California law require an indemnitee to seek a secondary

15 judgment for the costs of defense incurred in defending the specific subject of

16 indemnification. Consequently, this Court must find as a matter of law that Labrador

17 and Cohen had a duty to defend Plaintiff in the New Zealand proceedings.

18     79.   Notably, nowhere in California indemnification law is a party required to

19 prove that the claim being defended against would be viable within the state of

20 California, nor is an ultimate finding of liability even necessary to trigger

21 indemnification rights. Thus, an academic debate about whether a U.S. court would

22 have found "Eminem Esque" to be infringing of "Lose Yourself" does not move the

23 needle to determine if (1) Plaintiff incurred costs, attorney's fees, or liability; (2)

24 those costs, attorney's fees, or liability arose from a claim of copyright infringement;

25 and (3) whether Labrador has failed to reimburse Plaintiff for those costs, attorney's

26 fees, or liability. As a result, any evidence inconsistent with the fact that Defendants'

27 duties to indemnify were triggered upon notice of the Eminem claim on September

28 16, 2014 should be barred and excluded as irrelevant and confusing for the jury.

80.     Sections 16(iv; v) of the Labrador-Beatbox Agreement, signed in April of 2009, state:

> The Publisher hereby represents and warrants and undertakes that:
> (iv) the Compositions are original and that none of the Composition infringes any other copyright work or the rights of any third party
> (v) The Publisher agrees to indemnify and hold harmless the Sub Publisher, its successors and assigns of and from any and all loss, liability and expense incurred by reason of any infringement of rights or other claim inconsistent with the Publishers guarantees, warranties, representations and undertakings contained in this Agreement. This indemnity shall not be adversely affected should exploitation of the recordings continue after notice of infringement of rights or other claim has been received by the Sub Publisher.

Dkt. 1-2; Blaise Decl. at Exhibit D.

81.     Section 4 of the Labrador-Cohen Agreement, signed in February of 2008, states:

> 4.1 Composter represents and warrants that the Composition(s) is his sole, exclusive and original work, and is capable of copyright protection by Owner throughout the Territory.
> 4.2 Composer represents and warrants that no adverse claims exist or will exist with respect to the Composition(s), and the Composition(s) does not infringe upon or violate the copyrights or any other rights whatsoever of any person, firm, or entity.
> 4.3 Composer represents that the performance of the Composition(s) is owned and/or paid for in full by the Composer and that the Composer holds Owner and it's associates harmless to any claim thereof.
> 4.4 Composer represents and warrants that the Composer has the full and exclusive right and authority to enter into this Agreement and to make the grant of rights contained herein to Owner.

Dkt. 1-1.

82.     Section 6 of the Labrador-Cohen Agreement, signed in February of 2008, states in relevant part:

> Composer will indemnify and hold Owner and all entities associated with Owner, free, safe, and harmless from and against any and all losses, damages, actions, causes of action, expenses or liabilities, including, without limitation, reasonable attorney's fees and costs, whether incurred before or after the entry of judgment, resulting from or by reasons of any material breach of any representation or warranty made herein by Composer.

*Id.*

83.    Section 7 of the Labrador-Cohen Agreement, signed in February of 2008, states in relevant part:

> Owner and it's associates will have the right to assign this Agreement, in whole or in part, to any third party or to grant any licenses for the Composition(s) hereunder […] This Agreement will inure to the benefit of, and be binding upon, each party's heirs, subsidiaries, affiliates, corporation, licensees, successors and assigns.

*Id.*

84.    Because the Labrador Defendants licensed the *Eminem Esque* cue to Beatbox for the territories of Australia, New Zealand, and Fiji, Beatbox is a licensee of Defendant Labrador as referenced in Section 7 of the Labrador-Cohen Agreement. Therefore, the indemnity provisions of Section 6 of the Labrador-Cohen Agreement inure to the benefit of Beatbox.

85.    Because *Eminem Esque* infringes the copyright of *Lose Yourself*, the Labrador Defendants breached their warranties and representations contained in Section 16(iv) of the Labrador-Beatbox Agreement.

86.    Because a claim that *Eminem Esque* infringes the copyright of *Lose Yourself* was filed in New Zealand, the Cohen Defendants breached their warranties and representations contained in Section 4 of the Labrador-Cohen Agreement.

87.    Because a claim that *Eminem Esque* infringes the copyright of *Lose Yourself* was filed in New Zealand, the Labrador Defendants' duty to indemnify

under Section 16(v) of the Labrador-Beatbox Agreement was triggered at the time the New Zealand claim was filed.

88.     Because a claim that *Eminem Esque* infringes the copyright of *Lose Yourself* was filed in New Zealand, the Cohen Defendants' duty to indemnify under Section 6 of the Labrador-Cohen Agreement was triggered at the time the New Zealand claim was filed.

89.     Wherefore, Plaintiff respectfully requests that this Court exclude evidence contradictory to the fact that the Defendants' duty to indemnify was triggered notice of an adverse claim by a third party and upon the filing of the infringement claim in New Zealand.

DATED: February 27, 2023

Respectfully submitted,
**BEATBOX MUSIC PTY, LTD.**

 */s/ Heather L. Blaise*
HEATHER L. BLAISE, ESQ. (SBN 261619)
145 S. Wells Street, Suite 1800
Chicago, IL 60606
Telephone: 312-448-6602
Email: hblaise@blaisenitschkelaw.com
*Attorney for Plaintiff*

-27-