Douglas J. Rosner, ESQ., SBN 094466
LAW OFFICES OF DOUGLAS JOSEPH ROSNER
2625 Townsgate Road, Suite 330
Westlake Village, California 91361
Telephone No. (818) 501-8400
Facsimile No.: (818) 880-4485
rosnerlaw@earthlink.net

Attorney for Defendant/Cross-Defendants,
Labrador Entertainment, Inc. dba Spider Cues Music
Library, Labrador Entertainment, LLC, Noel Palmer
Webb, an individual and Webb Family Trusts

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| BEATBOX MUSIC, PTY, LTD.,<br><br>Plaintiff,<br><br>v.<br><br>LABRADOR ENTERTAINMENT, INC., DBA SPIDER CUES MUSIC LIBRARY, a California Corporation,<br><br>Defendants. | **Case No. 2:17-cv-6108-MWF**<br><br>**Assigned to the Hon.** Michael W. Fitzgerald<br><br>**NOTICE OF INTENT TO INTRODUCE VIDEOTAPED DEPOSITION TESTIMONY OF PETER MOORE IN LIEU OF LIVE TESTIMONY AT TRIAL** |
| MICHAEL COHEN, an individual,<br><br>Cross-Complainant,<br><br>v.<br><br>LABRADOR ENTERTAINMENT INC., DBA SPIDER CUES MUSIC LIBRARY, a California Corporation,<br><br>Cross-Defendant. | **Trial Date:** 04/18/2023<br>**Time:** 8:30 a.m.<br>**Trial Time Estimate**: 7 days<br>**Dept**: 5A |

- 1 -

**TO THE PARTIES AND TO THEIR ATTORNEYS OF RECORD:**

Defendants/Cross-Defendants, Labrador Entertainment, Inc. dba Spider Cues Music hereby designate the following portions of Peter Moore's videotaped deposition testimony to be used in lieu of live testimony at trial. Peter Moore resides outside of the United States, therefore not available to personally appear at trial. Pursuant to Federal Rules of Evidence Rule 32 (4), Defendants intend on either reading or playing the following excerpts from his deposition testimony taken on November 10, 2022 in the High Court at Auckland. A copy of said excerpts are attached hereto as Exhibit A.

| Designated Testimony | Objection? Yes or No | Basis for Objection |
|---|---|---|
| 3:14-19 | | |
| 3:22-30 | | |
| 4:3-10 | | |
| 4:20-24 | | |
| 4:26-5:2 | | |
| 5:6-9 | | |
| 5:12-16 | | |
| 5:20-21 | | |
| 5:25 | | |
| 6:5-7 | | |
| 6:10-14 | | |
| 6:17 | | |
| 6:21-22 | | |
| 6:26-7:5 | | |
| 7:9-19 | | |
| 7:21-8:5 | | |

| Designated Testimony | Objection? Yes or No | Basis for Objection |
|---|---|---|
| 8:11-18 | | |
| 9:10-12 | | |
| 9:16-22 | | |
| 9:25-27 | | |
| 10:3 | | |
| 14:5-9 | | |
| 14:11-16 | | |
| 14:22-15:3 | | |
| 15:11-14 | | |
| 15:19-21 | | |
| 15:26 | | |
| 24:8-9 | | |
| 24:12-16 | | |
| 24:19-27 | | |
| 25:4-5 | | |
| 25:9 | | |
| 25:19-26:4 | | |
| 26:9-14 | | |
| 26:20-27:16 | | |
| 27:18-21 | | |
| 27:23-24 | | |
| 27:27 | | |
| 28:1-5 | | |
| 28:9-14 | | |
| 28:19-21 | | |
| 28:25-29:27 | | |

- 3 -

| Designated Testimony | Objection? Yes or No | Basis for Objection |
|---|---|---|
| 30:3-11 | | |
| 30:14-17 | | |
| 30:20-21 | | |
| 30:27 | | |
| 31:1-32:2 | | |
| 32:5-9 | | |
| 33:3-27 | | |
| 34:12-13 | | |
| 34:19 | | |
| 35:4 | | |

DATE: March 21, 2023

Respectfully Submitted,

LAW OFFICE OF DOUGLAS JOSEPH ROSNER

By: */s/ Douglas J. Rosner*
Douglas J. Rosner. Attorneys for Defendants

- 4 -

**HIGH COURT OF NEW ZEALAND**  **TE KŌTI MATUA O AOTEAROA**

16 November 2022

United States District Court for the Central District of California

Western Division (Los Angeles)

First Street Courthouse

350 West First Street, Courtroom 5A

Los Angeles

California 90012

United States of America

**Our Ref: CIV 2022-404–1903 Labrador Entertainment Inc -v- Peter Moore and Bali Virk**

**Your ref: Case No 2:17-cv-6108-MWF (JPRx) Beatbox Music Pty Ltd -v- Labrador Entertainment Inc, DBA Spider Cues Music Library, et al.**

Orders made in the High Court of New Zealand at Auckland, on 17 October 2022, provided for the evidence of the witness Peter Moore and Bali Virk to be taken for Court proceedings in United states of America.

The evidence was taken on 10 November 2022 and I enclose a report with the notes of evidence, statement of objections, exhibits produced at the taking of the evidence, and copy letter of request.

The evidence has been signed on each page by the witnesses as provided for in the order of the Court and rule 9.20(5) of the High Court Rules 2016.  The evidence has been signed on each page by the examiner as provided for by rule 9.20(5) of the High Court Rules.

A video recording was taken of the witnesses and I include a USB. The USB is password protected. The password is in the plastic folder containing the USB. The first witness is sworn in after 18 Minutes and 20 seconds of the recording.

Yours faithfully,

G C Sulliman

Deputy Registrar

High Court   Auckland Registry      PO Box 60   Auckland   New Zealand   DX CX10222
Telephone (09) 916-9600    Fax (09) 916-9611    Email aucklandhc@justice.govt.nz
www.justice.govt.nz

**In the High Court of New Zealand**                    **CIV-2022-404-1903**

**Auckland Registry**

**I te Kōti Matua o Aotearoa**

**Tamaki Makaurau Rohe**

| | |
|---|---|
| In the matter of | a letter of request from the United States District Court for the Central District of California, United States of America for assistance in obtaining evidence for Civil proceedings before that court. |
| Between | LABRADOR ENTERTAINMENT INC, a California Corporation |
| | Applicant |
| And | PETER MOORE, Director, address unknown, and BALI VIRK, Producer, address unknown |
| | Respondents |

# Report of examiner

r 9.23

**To** the Registrar of the High Court at Auckland

1    Under the order of this court made on 17 October 2022 and rule 9.20 of the High Court Rules, I, Gordon Charles Sulliman of The High Court of New Zealand at Auckland, the examiner appointed by that order,—

    (a)    duly appointed Thursday the 10th November 2022 at 10.00am as the time and at the High Court of New Zealand at Auckland as the place where the persons named in the order were to be examined; and

    (b)    notified the parties.

2    At the appointed time and place, the parties appeared by counsel, namely, R Stewart for the applicant Labrador Entertainment Inc, along with Mr Douglas Joseph Rosner appearing by way of Virtual Meeting Room (VMR), appearing by VMR for the interested party BEATBOX MUSIC were Margaret Matthew, Thomas Nitschke and Heather Blaise.

3    The examination of the witnesses named in the order was conducted before me in accordance with rule 9.20 of the High Court Rules on 10 November 2022.

4    Before each witness was examined, the witness took an oath or affirmation to tell the truth, the whole truth, and nothing but the truth in the evidence that the witness was about to give.

5    The evidence of each witness was recorded. Under rule 9.22 of the High Court Rules 2016, I also recorded—

    (a)    a note of each objection to any evidence; in the notes of evidence, and

    (b)    the ground of each objection; in a separate sheet I have called "STATEMENT BY EXAMINER AS TO OBJECTIONS TO QUESTIONS" and

    (c)    The procedural rules anticipate the giving of an opinion on each objection; However, discussion in the legal textbook McGechan on Procedure at HR9.22.01 Analysis" refers to circumstances where an opinion as to admissibility of evidence may not be given.

        In the event, no opinion was given on each objection and the evidence was allowed to proceed with the questions put to the witness being answered.  Neither party sought to have consideration of any objection considered by The High Court .

    (d)    the answers from both the witness to the question/s, which are in the notes of evidence.

6    Exhibits marked "A", "B" "C" "D" and "E" for witness Peter Moore were produced.

7    Exhibits marked "A" "B" "C" "D" 'E"" as well as an exhibit referred to as page 63 for witness Bali Virk were produced

8    The entire record is attached.

9    I certify that I incurred the following out-of-pocket expenses in relation to this examination: NZ$2777.21 for videographer and NZ$600 for the hearing fee, Item 58 in the schedule; to the High Court Fees Regulations 2013..

Date: 16 November 2022

Signature

Gordon Charles Sulliman
(examiner)

IN THE ~~DISTRICT~~ HIGH COURT                               CIV-2022-404-001903
AT AUCKLAND

|  | BETWEEN | **LABRADOR ENTERTAINMENT INC** |
|--|--|--|
|  |  | **Plaintiff** |
|  | **AND** | **PETER MOORE**<br>**BALI VIRK** |
|  |  | **Defendant** |

Hearing Commenced:    10 November 2022 held in Courtroom 02

Appearances:    D J Rosner and R Stewart for the Plaintiff

Defendants appear in Person

---

## NOTES OF EVIDENCE TAKEN BEFORE REGISTRAR G SULLIMAN

---

## TABLE OF CONTENTS

**PETER MOORE (SWORN)** ...................................................................................................... **2**
    CROSS-EXAMINATION:  MR ROSNER ........................................................................... 2

**ORDER MADE EXCLUDING ALL WITNESSES**

**PETER MOORE (SWORN)**

**CROSS-EXAMINATION:  MR ROSNER**

5   Q.   Is it okay that I start?  Are you ready, Mr Moore?

A.   I am.

Q.   Okay, thank you.  Good morning.  My name is Doug Rosner.  I am the attorney for Labrador Entertainment, defendants.  I'm going to be asking you a series of questions today.  Now, before I get started, I would like to

10   lay out a few ground rules for deposition.  Let me ask a few questions upfront.  Have you ever given a deposition before any other proceeding as a witness or a party in a claim?

A.   I don't quite understand the question because I was in the High Court and the trials.  Is that a yes?

15   Q.   Well, yes.  Well, okay, well deposition and testimony are two different things, but thank you.  Okay, so please remember that you have sworn to tell the truth and the effect of that oath is the same as if you were testifying in court.  This deposition transcript will be used in lieu of your life testimony and shall you knowingly respond to any of my question falsely

20   or give misleading information, you'll be prosecuted to the fullest extent for perjury under the laws of this court and any other tribunal necessary. Do you understand that?

A.   I do.

Q.   Your testimony today will be used at trial in the United States District

25   Court in Los Angeles California.  This is instead of you needing to appear in person in the court of Los Angeles.  Do you understand this?

A.   I do.

Q.   It's important that you give audible answers.  So, you've answered audibly (inaudible 10:21:14) I have finished speaking and asking my question, so

30   the court reporter can take down the words being spoken carefully with only one person speaking at a time.  The court reports, as in writing down every word spoken verbatim, will prepare a written transcript of today's deposition.  We may have an opportunity to read the transcript or waive



your right at the end of this proceeding.  If any question is unclear in any way, please ask me to repeat or clarify the question.  Please do not guess when providing responses, but if appropriate, you may provide an estimate based on your best recollection.  You understand?

5  A.  I do.

Q.  At times, your attorney or another attorney in the room, they'd be in a virtual room, may make objections to questions or to responses.  They're objections for the judge to consider later.  You are still required to answer unless a party tells you not to answer, and that has to be your lawyer.

10  You understand that?

A.  I do.

Q.  Mr Moore, where are you employed presently?

A.  I'm retired.

Q.  Well, where were you were employed 2012 to 2017?

15  A.  I had my own marketing consultancy.

Q.  What was the name of the consultancy?

A.  Big on Brand.

Q.  What was your association with Stan3?

A.  I was the –

20  **OBJECTION: MS BLAZE** (10:22:58)

**CROSS-EXAMINATION CONTINUES:  MR ROSNER**

Q.  So noted.  Go ahead.  Mr Moore, you may answer.

A.  Stan3 was created for the sole purpose of doing the National Party election campaign.

25  Q.  Who else was part of Stan3?

A.  Sue Wethington and Glen Jamison.

Q.  What were you responsibilities and duties at Stan3?

A.  The responsibilities of Stan3 were to provide the strategy and the creative for the 2014 National Party election.

30  Q.  Personally, what were your responsibilities relative to that?

**OBJECTION: MS BLAZE** (10:23:44)

4

**CROSS-EXAMINATION CONTINUES:  MR ROSNER**

Q.   So noted.  You may answer.

A.   I was the client liaison person, the person responsible for strategy and the overall coordination of Stan3.

5    Q.   Who was your main contact at the National Party?

A.   Jo de Joux.

Q.   How long have you been in the advertising industry?

A.   Thirty years.

Q.   How many productions do you think you've assisted to or led in your

10        career?

**OBJECTION: MS BLAZE** (10:24:24)

**CROSS-EXAMINATION CONTINUES:  MR ROSNER**

Q.   So noted.  You may answer.

A.   Could you clarify the question please?  By that, I mean productions?

15   Q.   Any productions that you've assisted to or led in your career, or were you
          –

**OBJECTION: MS BLAZE** (10:24:40)

**CROSS-EXAMINATION CONTINUES:  MR ROSNER**

Q.   So noted.

20   A.   If a production means producing a piece of creative, like a radio commercial or a television commercial, hundreds, if not thousands.

Q.   Was there any other business focus or endeavour for Stan3 other than producing content and arranging various subcontractors for New Zealand National Party campaign?

25   A.   Please repeat the question.  I just missed the beginning of it.

Q.   Were there any other purposes or business endeavours for Stan3 Ltd other than producing content and arranging various subcontractors for New Zealand National Party campaign?

A.   No.  Sole purpose.

30   Q.   When did the New Zealand National Party first engage Stan3?



A.   I'm not sure, but I estimate it to be about August 2013.

Q.   What were you engaged for?

**OBJECTION: MS BLAZE** (10:26:02)

**CROSS-EXAMINATION CONTINUES:  MR ROSNER**

5   Q.   So noted.  What were you engaged to do?

A.   Produce the strategy and the creative material for the 2014 election campaign.

Q.   How often did you meet with New Zealand National Party to discuss the advertising campaign?

10   **OBJECTION: MS BLAZE** (10:26:26)

**CROSS-EXAMINATION CONTINUES:  MR ROSNER**

Q.   So noted.

A.   Depending on what stage of the campaign, a minimum of weekly, but as the campaign got underway, daily.

15   Q.   Did you have work in progress meetings?

A.   Yes, we did.

**OBJECTION: MS BLAZE** (10:26:47)

**LEGAL DISCUSSION – OBJECTIONS ONGOING?** (10:26:52)

**CROSS-EXAMINATION CONTINUES:  MR ROSNER**

20   Q.   What were – can you explain to me what a work in progress meeting was please?

**OBJECTION: MS BLAZE** (10:27:20)

**LEGAL DISCUSSION – RIGHT TO FOUNDATIONAL QUESTIONS** (10:27:23)

**CROSS-EXAMINATION CONTINUES:  MR ROSNER**

25   Q.   What were your work in progress meetings please?



6

**OBJECTION: MS BLAZE** (10:27:51)

**LEGAL DISCUSSION – ALLOW WITNESS TO ANSWER** (10:27:54)

**WITNESS:**

5   As implied in the name, all work that was in progress.

**CROSS-EXAMINATION CONTINUES:  MR ROSNER**

Q.    Would the New Zealand National Party give you feedback on your work?

**OBJECTION: MS BLAZE** (10:28:15)

10   **WITNESS:**
Yes, that would be the process.   We'd present the work and for it to be approved, rejected, amended or accepted.

**CROSS-EXAMINATION CONTINUES:  MR ROSNER**

Q.    Would they discuss concerns with you or your team?

15   **OBJECTION: MS BLAZE** (10:28:37)

**WITNESS:**
Yes.

**CROSS-EXAMINATION CONTINUES:  MR ROSNER**

20   Q.    Would they present those concerns to you or your team?  No, excuse me, strike that.   How would they present those concerns to you and your team?

**OBJECTION: MS BLAZE** (10:28:53)

25   **WITNESS:**
Either formally or informally, meaning that there was – depending on the stage of the campaign, some meetings would be more structured than others, but as

you probably can understand, a campaign is many, many, many elements, so it was a continual work in progress.

**CROSS-EXAMINATION CONTINUES:  MR ROSNER**

Q.    In February 2014, did Sale St Studios source the music for the
5        New Zealand National Party campaign?

**OBJECTION: MS BLAZE** (10:29:28)

**CROSS-EXAMINATION CONTINUES:  MR ROSNER**

Q.    You may answer, Mr Moore.

A.    I can't confirm the date, but Sale St Studios were responsible for sourcing
10       the music.

Q.    Did you give a brief of evidence of Peter Moore, documents 19 through 30 on May 4th 2017?

A.    Yes.

1030

15   **WITNESS REFERRED TO DOCUMENT**

A.    Yes.

Q.    Can you please open that brief up and turn to page 22?   I'm sorry, paragraph 19 on page 22.   Could you review paragraph 19 and tell me if that refreshes your memory, please?

20   **OBJECTION: MS BLAZE** (10:30:40)

**WITNESS:**

Yes, that's correct.

**CROSS-EXAMINATION CONTINUES:  MR ROSNER**

Q.    So could you testify as to whether or not in February 2014 when Sale St
25       sourced the music for the New Zealand National Party campaign?

A.    They were sourcing lots of music, yes.

Q.    Was the initial ad campaign for the New Zealand National Party shown to a focus group?

A.   Yes, along with other varieties of music.

Q.   What were the tracks used in the focus group?

A.   They were simply referred to as "modern" and "classical."

Q.   Did the focus group prefer the use of the M Cohen track for the advertisement for the New Zealand National Party?

5

A.   I'm sorry, could you repeat the question?  It was just a little unclear.

Q.   Did the focus group have a preference for the use of the M Cohen track for the advertisement for the New Zealand National Party?

**OBJECTION: MS BLAZE** (10:32:02)

10   **WITNESS:**

Yes, they did, it was the M Cohen track (inaudible 10:32:11) was known as "modern" and the focus groups overwhelmingly preferred that to the classical version.

**CROSS-EXAMINATION CONTINUES:  MR ROSNER**

15   Q.   Was the M Cohen track for the advertisement for the New Zealand National Party the subject of the case between Eight Mile and New Zealand National Party?

A.   Yes.

**OBJECTION: MS BLAZE** (10:32:35)

20   **CROSS-EXAMINATION CONTINUES:  MR ROSNER**

Q.   I just want to make sure your answer was clear because you got stepped on by an objection.  Could you please respond?

**MR MITSCHKE:**

With all due respect, Mr Rosner, that's our job.  We're allowed to make
25   objections and your comments that we're stepping on things with objections is blatantly offensive.



**CROSS-EXAMINATION CONTINUES:  MR ROSNER**

Q.   Could you please repeat the answer to the last question, or do you want me to read it back?

A.   Read it back, please.

5   Q.   Were there any other purposes – no, sorry about that.  Was the M Cohen track for the advertisement for the New Zealand National Party the subject of the case between Eight Mile Style LLC and the New Zealand National Party?

A.   It was.

10  Q.   Did you later learn, around June of 2014, that the name of the M Cohen track was "Eminem-esque"?

A.   We did.

**OBJECTION: MS BLAZE** (10:33:38)

**CROSS-EXAMINATION CONTINUES:  MR ROSNER**

15  Q.   You may answer.

A.   We did.

Q.   So it was the "Eminem-esque" that was the subject of the case between MMM – excuse me, between Eight Mile Style and the New Zealand party, is that correct?

20  A.   Yes.

Q.   So when I refer to or you refer to the M Cohen track, we're referring to the "Eminem-esque" track, is that correct?

**OBJECTION: MR MITSCHKE** (10:34:10)

**WITNESS:**

25  I only ever knew it as the M Cohen track.  It was only when – it was only later that we discovered it was "Eminem-esque."

**CROSS-EXAMINATION CONTINUES:  MR ROSNER**

Q.   Right, and that was before the licence was issued, isn't that correct?

**OBJECTION: MS BLAZE** (10:34:33)

**WITNESS:**

It was before the licence was purchased, correct.

**CROSS-EXAMINATION CONTINUES:  MR ROSNER**

5   Q.   Did you have knowledge at the time of the focus group showing where the music was sourced from?

A.   No.

1035

Q.   Did you know where Sale St Studios sourced the music from?

10  A.   No.

Q.   Okay, let's go back to the brief of evidence please.  Go to page 22, paragraph 21 – 20 through 21 and 25.  Could you please review that to see if you could refresh your memory?

**WITNESS REFERRED TO BRIEF OF EVIDENCE**

15  **OBJECTION: MS BLAZE** (10:35:16)

**MR MITSCHKE:**

Can we get an instruction that he doesn't read the transcript until he's exhausted his memory please?  Counsel in New Zealand, I don't know what the procedure is, but he clearly didn't even ask a question about anything in
20  those paragraphs before he had him read it, which is not correct.  Margaret, I don't – are you trying to say something?

**MS MATTHEW:**

25  All we can do at this point is raise an objection.

**MR MITSCHKE:**

Okay.

30  **MS MATTHEW:**

What I do want to point out at this point is that your affidavit, Mr Rosner, you assured the Court that the purposes of the questioning was for authentication and follow-up, and those assurances were taken on board by this Court in New Zealand, and most of these questions, which are being objected to, are outside the scope of authentication, and I'm wondering how long we're going to be here today if these questions keep being asked which are outside the scope of authentication and follow-up.

5

**MR ROSNER:**

10      Thank you for your objections.  So noted.

**CROSS-EXAMINATION CONTINUES:  MR ROSNER**

Q.      Would you please read page 22, paragraphs – well, let's go back and ask you whether or not – let's just make a foundation for this then, and by the way, I'm trying to lay a foundation for the authentication.  In your brief of evidence of Peter Moore, on page 30, did you sign that affidavit?  Is that your signature?

15

A.      It is.

Q.      Did you provide that affidavit for the Court?

A.      I did.

20      Q.      Was it signed under penalty of perjury?

A.      Is that a question?

Q.      Yes, it is.

A.      I didn't understand the question.

Q.      When you provided the affidavit to the Court, was it signed under penalty of perjury?

25

**OBJECTION: MS BLAZE** (10:37:41)

**WITNESS:**

Yeah, I have no memory of that.

30      **CROSS-EXAMINATION CONTINUES:  MR ROSNER**

Q.      Did you tell the truth in that affidavit?

A.   I did.

Q.   Could you turn to page 22 please?

**MS BLAZE:**

Doug, what paragraph is that because the version that we have does not have

5   page numbers.

**MR ROSNER:**

Mr Robert Stewart has version with page numbers.  This is paragraph –

10   **MS BLAZE:**

And I'm entitled to know what he's looking at, so if you could provide me with what paragraph number you're talking about, I would appreciate it.

**MR ROSNER:**

15   Paragraph 21.

**CROSS-EXAMINATION CONTINUES:  MR ROSNER**

Q.   The last sentence in the paragraph reads: "This modern track was the Mr M Coleman track and the one that the party is said to have infringed copyright by using."  You see that there?

20   A.   I do.

Q.   Did you want to correct your answer?

**OBJECTION: MS BLAZE** (10:38:55)

**CROSS-EXAMINATION CONTINUES:  MR ROSNER**

Q.   So noted.

25   A.   I don't see what I've said that was different from what is written there.

Q.   My question to you was, so, was the Eminem-esque that was the subject of the case between Eight Mile and the New Zealand Party.



**MR MITSCHKE:**

Is there a question because that's just a statement?  His answer was yes.  The question, he already answered it, "yes".

**CROSS-EXAMINATION CONTINUES:  MR ROSNER**

5    Q.    Well, I haven't heard the answer yes.

       A.    Was the Eminem-esque the subject of the case between Eight Mile Style and the New Zealand Party?

**OBJECTION: MS BLAZE AND MR MITSCHKE** (10:39:57)

**CROSS-EXAMINATION CONTINUES:  MR ROSNER**

10    Q.    So noted.

       A.    From my perspective the track was always known as M Cohen.  That's how it was presented.

       Q.    Okay… in the packet, number 31 through 33 is the notes of evidence taken before the Honourable Cull J, New Zealand trial transcript, in the

15          case between Eight Mile Style and the New Zealand National Party, and can you please turn to page 44, lines 24 through page 44, 1 through 4.

       A.    Page 44?

       Q.    Yeah, 44, the last four lines – actually it would be – it starts on where you did answer: "No, it was called M Cohen," and then line 30 says: "So

20          no one at that meeting – so Glenn, Jo, Sue or you, none of those individuals referred to it as 'Eminem-esque' to the campaign meeting, is that your evidence?" and then you respond: "Yes.  Can I just clarify, because I think it was after that" –

**OBJECTION: MS BLAZE** (10:42:02)

25    **LEGAL DISCUSSION**

**CROSS-EXAMINATION CONTINUES:  MR ROSNER**

       Q.    "Yes, can you just clarify because I think it was after that I contacted Beatbox or discovered Beatbox and then discovered Spider Cues which

is at the stage we found the label called 'Eminem-esque.'"  Is that the meaning we're talking about?

A.    I can't recall.

**OBJECTION: MS BLAZE** (10:43:02)

5    **CROSS-EXAMINATION CONTINUES:  MR ROSNER**

Q.    So I want to re-ask my question, if I can.  We've already identified that at or about June of 2014, the "Eminem-esque" or the M Cohen track was the "Eminem-esque."  Now, I'm only asking you whether that was the subject matter of the New Zealand case.

10    **OBJECTION: MS BLAZE** (10:44:02)

**WITNESS:**

I'm not sure, to be honest.  The music was always known in my world as M Cohen.  It was only later that we discovered Beatbox and then through Beatbox, Spider Cues and through Spider Cues, a sound-alike section which 15    had "Eminem-esque" in it.

**CROSS-EXAMINATION CONTINUES:  MR ROSNER**

Q.    And when did you discover that?

**OBJECTION: MS BLAZE** (10:44:46)

**CROSS-EXAMINATION CONTINUES:  MR ROSNER**

20    Q.    You can answer.

1045

A.    Um, that was discovered when somebody – a staff member within the National Party said they thought the track sounded like Eminem.  We were then told to go and make sure it wasn't, or that it was legitimate, 25    – at that stage, none of the focus groups or anybody else had made any association with Eminem.



L v P MOORE - CIV-2022-404-001903 (10 Nov 2022)

Q.   And did that occur before the licence was issued for the use of the track, the "Eminem-esque" track?

A.   Definitely before the use.

**OBJECTION: MS BLAZE** (10:45:41)

5   **LEGAL DISCUSSION**

**CROSS-EXAMINATION CONTINUES:  MR ROSNER**

Q.   Did all this occur prior to the issuance of licence to use the cue in the New Zealand campaign?

**OBJECTION: MS BLAZE** (10:47:10)

10   **CROSS-EXAMINATION CONTINUES:  MR ROSNER**

Q.   Did you identify the cue, Eminem, which was the M Cohen cue, prior to the issuance of the licence for the New Zealand National Party campaign?

A.   Yes.

15   **OBJECTION: MS BLAZE** (10:47:41)

**CROSS-EXAMINATION CONTINUES:  MR ROSNER**

Q.   Could you repeat your answer, please?

A.   Yes.

Q.   Thank you.  Did you know where Sale Street sourced the music from?

20   A.   Not initially.

Q.   Did you ever learn later?

**OBJECTION: MS BLAZE** (10:48:17)

**WITNESS:**

Yes, we discovered it was from Beatbox.



**CROSS-EXAMINATION CONTINUES:  MR ROSNER**

Q.    Were there concerns that were ever raised about using the "Eminem-esque" or the Cohen track for the New Zealand campaign – New Zealand National Party campaign?

5   **OBJECTION: MS BLAZE** (10:48:48)

**WITNESS:**

Concerns from whom?

**CROSS-EXAMINATION CONTINUES:  MR ROSNER**

Q.    From anybody, from any of your group, from the New Zealand party, and
10        they were concerned about use of the "Eminem-esque" for their campaign.

A.    It's – it's just a production track from a production library.  As long as it was – had an APRA licence we assumed we would be able to use it.

Q.    But were those ever raised?

15   **OBJECTION: MS BLAZE** (10:49:28)

**CROSS-EXAMINATION CONTINUES:  MR ROSNER**

Q.    Was the concerns about the "Eminem-esque" ever raised by anybody in the National Party prior to the issuance of the licence?

**OBJECTION: MS BLAZE** (10:49:48)
20

**WITNESS:**

The issue was we were licensed to use that production track.

**CROSS-EXAMINATION CONTINUES:  MR ROSNER**

Q.    Correct.  Did anyone raise concerns prior to its issuance?

25   **OBJECTION: MS BLAZE** (10:50:15)

**WITNESS:**

The concerns were over – only around the validity of the license.

**CROSS-EXAMINATION CONTINUES:  MR ROSNER**

Q.     I need one minute please, Sir, to locate something.  Mr Stewart, do you have the brief of evidence in front of you?

5   **MR STEWART:**

Is that a question for me, Doug?

**MR ROSNER:**

Yes, it is.  Do you have a brief of evidence in front of you?

**MR STEWART:**

10   The brief of evidence of Mr Moore that was given in the High Court case?

**MR ROSNER:**

That is correct.  Do you have that in front of you?

**MR STEWART:**

All I've got in front of me is the – is what was in your affidavit.

15   **MR ROSNER:**

Right.  You'll have – the brief of evidence should be in there.

**MR STEWART:**

Yes, from pages 19 through to –

20   **MR ROSNER:**

Thirty.

**MR STEWART:**

Correct.

25   **CROSS-EXAMINATION CONTINUES:  MR ROSNER**

Q.     Could you please turn to page 22?

L v P MOORE - CIV-2022-404-001903 (10 Nov 2022)

**MR STEWART:**

So, we're back to Mr Moore now?

**CROSS-EXAMINATION CONTINUES:  MR ROSNER**

Q.     Yes.  Page 22 please.  Could you review paragraphs 25 and 26?  Page
5            23, paragraphs 29 and 30.

**WITNESS REFERRED TO BRIEF OF EVIDENCE**

**MS BLAZE:**

Doug, are you talking about paragraphs 25 and 26 on the date stamp document,
10    269-2, page 90105?

**MR ROSNER:**

No.  I'm talking about page 22 of the brief of evidence, paragraph –

15    **MR MITSCHKE:**

Let's just stop there, Doug.  We were not provided with anything other than the
documents attached to your affidavit as they were attached, so I draw a mark –
okay, they don't have page numbers in them.

20    **MS BLAZE:**

They don't have page numbers.  So, I'm talking about at the top of the page,
there's a file – there's a case filing and it has when it was filed on 8/5/22 and it
has a page I'd.  Do you have that document in front of you, is what is filed?

25    **MR ROSNER:**

(inaudible 10:54:00).   I actually just said.   I need five minutes.   I need a
five-minute break to locate the document.

**MS BLAZE:**

30    Great.  Thank you.

**COURT ADJOURNS:         10.55 AM**

L v P MOORE - CIV-2022-404-001903 (10 Nov 2022)

**COURT RESUMES:**          **11.01 AM**

**CROSS-EXAMINATION CONTINUES:  MR ROSNER**

Q.     All right, so we're on page 22, lower right corner, Mr Moore, and we're reading from 25 and 26.

5   **OBJECTION: MS BLAZE** (11:03:19)

**CROSS-EXAMINATION CONTINUES:  MR ROSNER**

Q.     Paragraph 25 or 26, could you review that, please?  In addition, could you please review page 23, paragraphs 29 and 30?  Could someone please put their speaker on mute, because we're hearing a lot of noise?

10     Mr Moore, have you completed reading those paragraphs?

A.     Yes, I have.

Q.     So after reading those paragraphs, is it still your testimony that there were no concerns regarding the use of the "Eminem-esque" for the New Zealand party campaign advertising?

15   **OBJECTION: MS BLAZE** (11:04:40)

**WITNESS:**

There was no decision that had been made on the music.  People were still discussing various options, so my role was just to try and get a decision on which music track would go on the commercial.

20   **CROSS-EXAMINATION CONTINUES:  MR ROSNER**

Q.     I'm going to read…

1105

L v P MOORE - CIV-2022-404-001903 (10 Nov 2022)



**COURT RESUMES:**      **11.01 AM**

**CROSS-EXAMINATION CONTINUES:  MR ROSNER**

Q.    All right, so we're on page 22, lower right corner, Mr Moore, and we're reading from 25 and 26.

5    **OBJECTION: MS BLAZE** (11:03:19)

**CROSS-EXAMINATION CONTINUES:  MR ROSNER**

Q.    Paragraph 25 or 26, could you review that, please?  In addition, could you please review page 23, paragraphs 29 and 30?  Could someone please put their speaker on mute, because we're hearing a lot of noise?

10    Mr Moore, have you completed reading those paragraphs?

A.    Yes, I have.

Q.    So after reading those paragraphs, is it still your testimony that there were no concerns regarding the use of the "Eminem-esque" for the New Zealand party campaign advertising?

15    **OBJECTION: MS BLAZE** (11:04:40)

**WITNESS:**

There was no decision that had been made on the music.  People were still discussing various options, so my role was just to try and get a decision on which music track would go on the commercial.

20    1105

**CROSS-EXAMINATION CONTINUES:  MR ROSNER**

Q.    I'm going to read into the record your testimony that was given to the New Zealand Court that contradicts what you're saying to me, and I can't get a direct answer from you, and since we're not in the Court and I can't

25    get an order from the Court directing you to answer the question, then I'm going to have to read it into the record, those are the options I have.  So I'm going to read into the record the following paragraphs.

L v P MOORE - CIV-2022-404-001903 (10 Nov 2022)

**OBJECTION: MS BLAZE** (11:05:28)

**LEGAL DISCUSSION**

**CROSS-EXAMINATION CONTINUES:  MR ROSNER**

Q.   Paragraph 25 and 26: "Jo de Joux advised me and the others at Stand3
5        that a party employee had said that the music sounded like a song by
         Eminem."   Paragraph 26: "Sue made inquiries at this stage to get
         assurances on the –

**OBJECTION: MS BLAZE** (11:07:27)

**LEGAL DISCUSSION**

10   **CROSS-EXAMINATION CONTINUES:  MR ROSNER**

Q.   "Sue made inquiries at this stage to get reassurances on the M Cohen –

**OBJECTION: - MS BLAZE** (11:07:57)

**LEGAL DISCUSSION**

**CROSS-EXAMINATION CONTINUES:  MR ROSNER**

15   Q.   "Sue made inquiries at this stage to get reassurance on the M Cohen
         track from Sale St Studios.  She provided the information Sale St provided
         to Jo by email, including the artist and track name and who Sale St Studio
         live track from."   Moving on to page 23, paragraph 29 and 30: "Because
         of the concern expressed about the M Cohen track before this meeting, I
20       recall discussions with Jo about what else we could do in terms of music.
         As a result of these discussions, we engaged Sale St Studio to look for
         other music that could be used in the advertisement and to record, edit
         and mix those other tracks into the advertisement so the alternative
         versions of the advertisement could be –

25   **OBJECTION: MS BLAZE** (11:09:09)

## LEGAL DISCUSSIONS

**CROSS-EXAMINATION CONTINUES:  MR ROSNER**

Q.   "…so that alternative versions of the advertisement could be considered
by the party."  Paragraph 30: "I attended campaign meeting where the
advertisement" –

5

**OBJECTION: MS BLAZE** (11:09:28)

**CROSS-EXAMINATION CONTINUES:  MR ROSNER**

Q.   "I attended a campaign meeting where the advertisement was shown with
the various music tracks.  I believe it was June 13," excuse me, "I believe
it was 13 June" –

10

**OBJECTION: MS BLAZE** (11:09:42)

**CROSS-EXAMINATION CONTINUES:  MR ROSNER**

Q.   – "2004" –

**OBJECTION: MS BLAZE** (11:09:46)

15   1110

**CROSS-EXAMINATION CONTINUES:  MR ROSNER**

Q.   – bracket, CB2-270, end bracket, "we showed the meeting the
advertisement with the M Cohen track and also with other tracks.  My
recollection of the meeting was that there was a preference to use
M Cohen track as it seemed to fit the (inaudible 11:10:06)" –

20

**OBJECTION: MS BLAZE** (11:10:06)

**CROSS-EXAMINATION CONTINUES:  MR ROSNER**

Q.   – "best.  My recollection of the meeting was that the party would only go
with the M Cohen track if it was okay to use."  What did you mean in there
(inaudible 11:10:17).

25

**OBJECTION: MS BLAZE** (11:10:17)

**LEGAL DISCUSSION**

**CROSS-EXAMINATION CONTINUES:  MR ROSNER**

Q.     I'll restate it. "My recollection of the meeting was that the party would only
5           go with the M Cohen track if it was all okay to use."  What did you mean
             by that in your affidavit?

**OBJECTION: MS BLAZE** (11:10:58)

**CROSS-EXAMINATION CONTINUES:  MR ROSNER**

Q.     You may answer, Mr Moore.

10    **MS BLAZE:**

If you can.

**LEGAL DISCUSSION** (11:11:11)

**WITNESS:**

I – excuse me, by "all okay to use," were we able to get a licence to use the
15    track?

**CROSS-EXAMINATION CONTINUES:  MR ROSNER**

Q.     So at this period of time, you're not worried about any copyright violations,
             potentially?

A.     This is library music.  It came from –

20    **OBJECTION: MS BLAZE** (11:11:39)

**CROSS-EXAMINATION CONTINUES:  MR ROSNER**

Q.     So did you have any concern that there might be a copyright infringement
             issue at this time?

A.    No.  We believed in the process, it came from a production library, it was offered for worldwide sale.  We discovered that it had previous use so if we had an APRA AMCOS licence we would be all good to go.

Q.    Prior to today's testimony, did you have any conversation with anybody
5     other than your own lawyer, the lawyer that is rep – no, excuse me, you don't have a lawyer her.  Prior to today's testimony, did you have any conversations with anybody about today's testimony you were going to give?

A.    No.  I asked a personal friend if I was compelled to attend, who happens
10    to be a barrister.  He said: "You are, and your only obligation is to tell the truth.

Q.    How did you go about – so your position is you did not go about getting any reassurances for the New Zealand party with regards to the M Cohen track?

15    **OBJECTION: MS BLAZE** (11:13:30)

**WITNESS:**
We just believed in the process, that –

**CROSS-EXAMINATION CONTINUES:  MR ROSNER**

Q.    Could you please answer the question directly?  Did you or did you not?
20    A.    Did I or did I not what?

Q.    Seek reassurances for the New Zealand party with regard to the M Cohen track.  Did you ask anybody whether it's okay to use it, whether it's going to be in violation of any copyright?  Yes or no?

**OBJECTION: MS BLAZE** (11:14:05)

25    **WITNESS:**
We – we had a licence to use the track (inaudible 11:14:23) –

L v P MOORE - CIV-2022-404-001903 (10 Nov 2022)

**CROSS-EXAMINATION CONTINUES:  MR ROSNER**

Q.    So you're not going to answer my question directly, are you?  Now, I can't compel you to, can I, Mr Stewart?  Robert, Mr Stewart, can I compel him to answer my questions directly, yes or no?

5    **LEGAL DISCUSSION** (11:14:37)

1115

**CROSS-EXAMINATION CONTINUES:  MR ROSNER**

Q.    Well, let me ask you this way.  Did you take any position or lead position regarding to receiving assurances regarding the M Cohen track?

10    **OBJECTION: MS BLAZE** (11:15:04)

**WITNESS:**
We were seeking assurances that we could purchase the track and that it was, it was a product for sale, which we bought and licensed.

**CROSS-EXAMINATION CONTINUES:  MR ROSNER**

15    Q.    Did you ever contact Beatbox yourself?

A.    I did.

**OBJECTION: MS BLAZE** (11:17:03)

**CROSS-EXAMINATION CONTINUES:  MR ROSNER**

Q.    When did you first contact Beatbox relative to the M Cohen track?

20    A.    After we were directed by Jo de Joux who asked us to investigate the music after one of her staff member said it sounded like Eminem.  We went through a process of asking Sale St where they got it from.  They said a music library called Beatbox.  I spoke to Beatbox and asked them where they got it from.  They said a library in America called Spider Cues

25    and I found the track listed there under a section called "sound alikes".

Q.    Did you – who did you speak to at Beatbox?

A.    From memory, Louis McKenzie.



Q.     And what was his role there.  What (inaudible 11:18:15) –

**OBJECTION: MS BLAZE** (11:18:15)

**CROSS-EXAMINATION CONTINUES:  MR ROSNER**

Q.     What was Mr McKenzie's role there?

5    A.     I believe –

**OBJECTION: MS BLAZE** (11:18:32)

**WITNESS:**

He was the most senior person at the office that I could speak to.

10   **CROSS-EXAMINATION CONTINUES:  MR ROSNER**

Q.     And what was his du – do you know what his job was?

A.     I'm unaware of his job title.

Q.     And do you know what his responsibility was at Beatbox?

**OBJECTION: MS BLAZE** (11:18:57)

15

**WITNESS:**

I can't recall.

**CROSS-EXAMINATION CONTINUES:  MR ROSNER**

Q.     Well, why did you contact him?

20   A.     Well, I con – I – I was following up on the music library and asking him about this particular track and whether we were licensed to use it and he replied: "Do we have an AMCOS licence?", which we did, and then I asked him where did he get the track from?  And he said Spider Cues. He represented, and I say that again, he represented the library from

25          Spider Cues.

Q.     Did he – was he part of Beatbox?  Is that why you called him there?

A.     Yeah.  He was the Australian agent for the library.

1120

A.   Okay, now we're going to get to the exhibits, because I know that's how important it is for everybody here.  Is everybody ready?  Do you have all your exhibits in front of you guys or do you need – I can send them to you so you have them.

5   **MR MITSCHKE:**

For the record, let's just state that this has been going on for an hour and 20 minutes and we are now at the exhibits for the first time.

**MR ROSNER:**

Thank you, appreciate that.   Could you please turn to exhibit (inaudible
10   11:20:26) Mr Moore?

**MS BLAZE:**

What exhibit?

**MR ROSNER:**

I apologise.  Let me restate it please.   Page 88.  It's just a little bit of a different
15   system we're working here.  So it's 88 on the right corner of your document, Heather.  Does everybody have that in front of them?

**MS BLAZE:**

Mhm.

**MR ROSNER:**

20   So the left of 88 says: "Lab doc 442."  Does everybody have that?

**MS BLAZE:**

Yes.

**MR ROSNER:**

I would like to have this marked for the record in the deposition please as
25   exhibit A.

**EXHIBIT A PRODUCED – LAB DOC 442**

**CROSS-EXAMINATION CONTINUES:  MR ROSNER**

Q.   Mr Moore, could you please review this document, this email, and tell me if you recognise it?

A.   I do.

5   Q.   With this email, and let's start with the one on the bottom, was this received by you, the one by Louis McKenzie dated June 18 2004 [*sic*] at 1:10:38 pm New Zealand time to PeterMooreBrands.co.nz.

A.   Yes.

Q.   Can you identify the email address that was received too?  Is that yours?

10   Is that your email address?

A.   It is.

Q.   And was it your regular practice to receive emails to this email address at or about June 18 2014?

A.   Yes.

15   Q.   Did you use this email as part of carrying out your duties at your company?

A.   Repeat the question please?

Q.   Did you use this email as part of your work at your company?

A.   Yes.

20   Q.   Can you review the content of that email please?

A.   Yes.

Q.   Does that accurately reflect – excuse me, let me strike that.  Does that completely, fairly and accurately depict your conversation with Mr McKenzie?


25   **OBJECTION: MS BLAZE** (11:23:07)


**MR ROSNER:**

So noted.


**WITNESS:**

From memory, yes.

**CROSS-EXAMINATION CONTINUES:  MR ROSNER**

Q.   Is this the email that was sent after you had your – excuse me, was that email sent to you by Mr McKenzie after you had that conversation with Mr McKenzie relative to the Eminem-esque?

5   A.   Yes.


**OBJECTION: MS BLAZE** (11:23:45)


**CROSS-EXAMINATION CONTINUES:  MR ROSNER**

Q.   Could you repeat your answer please?

A.   Yes, the email followed the conversation.

10   Q.   As reflected in the email, is that correct?

A.   Yes.

Q.   Did Mr McKenzie tell you that if any issues were to arise regarding copyright, then the responsibility would fall 100% upon the publisher so there was no need to worry, so there was no need for worry in this regard?


15   **OBJECTION: MS BLAZE** (11:24:41)

1125


**CROSS-EXAMINATION CONTINUES:  MR ROSNER**

Q.   So noted.

A.   Yes.

20   Q.   Next in line, and I want to mark this as exhibit B, is number 85.  I'm sorry, page 85 (inaudible 11:25:15).


**OBJECTION: MS BLAZE** (11:25:20)


**LEGAL DISCUSSION**


**CROSS-EXAMINATION CONTINUES:  MR ROSNER**

25   Q.   You'll note that to the left of 85 is the designation: "Lab doc 443." Mr Moore, can you please review this email and tell me if you recognise this document with the writing on it?

A.    I do.

Q.    Who placed that writing on there?

A.    That's my handwriting.

Q.    And when did you place it?

5    A.    When I was preparing my affidavit.

Q.    And why did you put that on there?

A.    It was a guide to myself about the sequence of events that occurred.

Q.    Okay, and is it accurate to say that this is the exact email that was given to you as exhibit A?

10    A.    Yes.

Q.    Can you confirm – okay, thank you, I'm sorry, you can obviously take a moment to compare (inaudible 11:27:08).  Thank you.  Next in line is exhibit C which is delineated as one-one-two or one-twelve.

A.    Page?

15    Q.    Page 112, sorry.  Let me know when you finish reviewing it, sir.  Can someone please mute – there's a lot of noise, background noise.

A.    I've read it.

Q.    Can you please – okay, do you recognise this document?

A.    I do.

20    Q.    Was this email authored by you?

A.    It is.

Q.    Can you identify the email address that it was sent from?

A.    peter@moorebrands.co.nz.

Q.    Is that your email address?

25    A.    It is.

Q.    Is that your signature block at the bottom?

A.    It is.

Q.    Is it regular business practice to send emails from this email address?

A.    Yes.

30    Q.    Did you use this email address as part of carrying out your duties of business at your company?

A.    I did.

Q.    Can you please tell me why you sent this email and what it's regards to?

**OBJECTION: MS BLAZE** (11:29:17)

**CROSS-EXAMINATION CONTINUES:  MR ROSNER**

Q.   Can you tell me what is this email regarding?

A.   This is an email to Jo de Joux at the National Party giving her an update on the conversations we have had, as instructed by her, to find out about the M Cohen track.

5

1130

Q.   Why did you state in this email that the music does not infringe on copyright and is free to be used?

10   A.   That is a quote from Louis McKenzie.

Q.   Why did you state in the –

**OBJECTION: MS BLAZE** (11:30:14)

**CROSS-EXAMINATION CONTINUES:  MR ROSNER**

Q.   We'll let the email stand for itself.  With that information in the email, was information that you obtained and you learned from Mr McKenzie of Beatbox, is that correct?

15

A.   Correct.

**OBJECTION: MS BLAZE** (11:30:39)

**CROSS-EXAMINATION CONTINUES:  MR ROSNER**

20   Q.   Does the content of this email fairly and accurately depict your conversations with Mr McKenzie?

**OBJECTION: MS BLAZE** (11:31:07)

**WITNESS:**

Yes.

**CROSS-EXAMINATION CONTINUES:  MR ROSNER**

Q.   Next in line, (inaudible 11:31:22) you must be very happy now that I'm giving all the emails.  Next in line, document begins with right-hand corner number 81.

5   **MR STEWART:**

Is this exhibit D, Doug?

**MR ROSNER:**

I thank you for reminding me.  Thank you.

**CROSS-EXAMINATION CONTINUES:  MR ROSNER**

10   Q.   Exhibit D.  Document 81 and you'll note to the left it says: "Lab Doc 424," and I'm going to be asking you questions about the email from you to Marty Collins.  Could you kindly please review this email and tell me if you recognise this document?

A.   I do.

15   Q.   And we're referring to the one that says: "From Peter Moore.  Subject, forward, email S Cue track.  Date," I think that's – I can't see that, is that a 16 or 18 June 2014 at 12.41 to Marty Collins.  Was that your email it was sent from?

A.   Yes.

20   Q.   Did you offer this?

A.   Yes.

Q.   And this is your email address, correct?

A.   Correct.

Q.   Is there a signature block that identifies you?

25   A.   There is.

Q.   Is it your regular practice to send emails from this email address?

A.   Yes.

Q.   Did you use this email as part of your carrying out of your duties at your company?

30   A.   I did.

Q.   Does this email completely and fairly and accurately depict your conversations with Mr Marty Collins?

**OBJECTION: MS BLAZE** (11:33:30)

**WITNESS:**

5   The email is the conversation.  There was no conversation before the email.

**CROSS-EXAMINATION CONTINUES:  MR ROSNER**

Q.   Is that 100 per cent accurate though?  Does that reflect exactly what you wrote?

A.   Yes.

10   **THE COURT ADDRESSES MR ROSNER – TIMING** (11:33:58)

**COURT ADJOURNS:**      **11.34 AM**

L v P MOORE - CIV-2022-404-001903 (10 Nov 2022)

**COURT RESUMES:**          **11.57 AM**

**CROSS-EXAMINATION CONTINUES:  MR ROSNER**

Q.   Page 118, please, for Mr Moore.  I'm going to mark this as exhibit E.  Do you recognise this document, sir?

5   A.   Yes.

Q.   And what I want you to note is on 118 is also labelled Labrador, LABD doc 582, LABD OC 582.  What I'm going to question you about, sir, is the very top email from Mr Moore to Jo de Joux – is that how you pronounce it, am I pronouncing it correctly?

10   A.   Correct, Jo de Joux.

Q.   Okay, thank you.  Was this email, was this authored by you?

A.   Yes.

Q.   And can you identify the email address that it was sent from?

A.   Yes.

15   Q.   Is that your email address?

A.   It is.

Q.   Is that your signature block?

A.   It is.

Q.   Is it regular business for you to use this email address – excuse me, strike

20   that.  Is it regular business practice for you to send emails from this email address?

A.   It is.

Q.   Did you use this email as part of your carrying out your business duties?

A.   I did.

25   Q.   Tell me about this email, what it's in regard to.

A.   I can't remember.

Q.   It says: "Yeah, Beatbox finally wake up on September 17th."  That doesn't bring anything to mind?

A.   No.  I've no memory of this.

30   Q.   But you did write it?

A.   Correct.

Q.   At or about the time of September 17 2014?

A.   Yes.

**MR ROSNER:**

Mr Stewart, how do I close out Mr Moore's deposition?

**THE COURT:**

So obviously the other side have an opportunity to ask questions as well if they

5   wish and then once they're concluded and of course then you can do re-examination in the New Zealand context at least.   Then once that's concluded I will read, we will print off the notes of evidence, I will read it back to Mr Moore and we will sign every page.  Does that answer your question?

**MR ROSNER:**

10   Thank you, yes.

**THE COURT:**

And so is there any questions on behalf of Beatbox?

**THE COURT ADDRESSES COUNSEL – USA COUNSEL DISAPPEARED** (12:00:56)

15   **MR MITSCHKE ADDRESSES THE COURT – APOLOGIES FOR DISCONNECTING** (12:06:06)

**THE COURT ADDRESSES COUNSEL – MR ROSNER'S QUESTIONS COMPLETE** (12:06:28)

**CROSS-EXAMINATION:  MR MITSCHKE – NIL**

20   **LEGAL DISCUSSION – DOES RONAK HAVE QUESTIONS?** (12:07:13)

**LEGAL DISCUSSION – RONAK PATEL IS COUNSEL FOR COHEN** (12:07:35)

**THE COURT ADDRESSES MR MITSCHKE – WISH TO CONCLUDE OR WAIT FOR MR COHEN'S COUNSEL?** (12:08:09)

**MR STEWART ADDRESSES THE COURT – FINISH WITH WITNESS**
(12:08:26)

**MR MITSCHKE ADDRESSES THE COURT – MR PATEL HAS NO
QUESTIONS** (12:08:57)

5    **LEGAL DISCUSSION** (12:10:12)

**WITNESS STOOD DOWN**

# STATEMENT BY EXAMINER AS TO OBJECTIONS TO QUESTIONS

I will refer to the page and line number of the objection in the transcript of the notes of evidence. Then I have transcribed the objection from the audio recording of the hearing relating to that objection. Where something is unclear I have added the word "inaudible" in red.

| | |
|---|---|
| Page 3, line 20 | Objection, conjecture |
| Page 3, line 31 | Objection, asked and answered |
| Page 4, line 11 | Objection, exceeds the scope of the letters Rogatory request |
| Page 4, line 17 | Same objection |
| Page 5, line 3 | Objection, asked and answered |
| Page 5, line 10 | Objection, exceeds the scope of the letters Rogatory |
| Page 5, lines 17 | Objection, exceeds the scope of the letters Rogatory |
| Page 5, line 22 | Objection, exceeds the scope of the letters Rogatory |
| Page 6, line 1 | Objection, exceeds the scope of the letters Rogatory |
| Page 6, line 9 | Objection, exceeds the scope of the letters Rogatory |
| Page 6, line 15 | Objection, exceeds the scope of the letters Rogatory |
| Page 6, line 24 | Objection, exceeds the scope of the letters Rogatory |
| Page 7, line 6 | Objection, foundation, exceeds the scope of the letters Rogatory |
| Page 7, line 20 | Objection, haven't established his memory needed refreshing |
| Page 8, line 9 | Objection, calls for speculation, lack of foundation |
| Page 8, line 19 | Objection, foundation |
| Page 9, line 13 | Objection, testifying for the witness |
| Page 9, line 23 | Objection by Mr Nitschke – stop putting words in his mouth |
| Page 10, line 1 | Objection, foundation, calls for speculation |
| Page 10, line 15 | Objection, haven't established he needed his memory refreshed |
| Page 11, line 26 | That might be a question of law, objection. |

Page 12, line 22      Objection, what answer, objection, testifying for the witness

Page 13, line 8       Objection, asked and answered, speculation, calls for a conclusion, foundation, exceeds the scope

Page 13, line 24      Objection, testifying for the witness

Page 14, line 4       Objection, testifying for the witness, no question pending

Page 14, line 10      Objection, speculation called for conclusion, foundation, exceeds the scope of the letters Rogatory, asked and answered

Page 14, line 18      Objection, ambiguous, which part of the discovery?

Page 15, line 4       Objection, foundation, calls for speculation

Page 15, line 9       Objection, too vague, all this is not defined

Page 15, line 15      Objection, compound question, calls for speculation, ambiguous, exceeds the scope of the letters Rogatory

Page 15, line 22      Objection, calls for speculation

Page 16, line 5       objection, foundation, vague and ambiguous, exceeds the scope of the letters Rogatory

Page 16, line 15      Objection, calls for speculation, vague and ambiguous, what ever was raised

Page 16, line 19      Objection, calls for speculation, assumes facts not in evidence, calls for speculation, and foundation

Page 16, line 25      objection, calls for speculation, vague and ambiguous

Page 19, line 5       Are you asking him to read from the record, or do you have a question?

Page 19, line 15      Objection, mis-states the player testimony, exceeds the scope of the letters rogatory

Page 20, line 1       objection, this relates to authentication of documents, which is the sole purpose of this deposition, which you say you have been laying a foundation for, it has been nearly an hour now and have not asked for a single document

Page 20, line 8       Objection, mis states what's written

Page 20, line 12      Objection mis-states the word

Page 20, line 25      Objection, mis-stated

Page 21, line 6       Objection, missed a word

Page 21, line 11       Objection

Page 21, line 14       Objection

Page 21, line 21       (Inaudible)

Page 22, Line 1        Objection mis states the language

Page 22, line 7        Objection, exceeds the scope compound question, vague and ambiguous

Page 22, line 20       Objection, calls for legal conclusion outside scope of the letter rogatory

Page 23, line 15       Objection, vague and ambiguous, mis-states testimony and exceeds the scope of the letters rogatory

Page 23, line 24       Objection, compound question, that is 3 questions in one as I am counting

Page 24, line 10       Objection, vague and ambiguous, calls for speculation, exceeds the scope of the letters rogatory

Page 24, line 17       objection, vague and ambiguous as to time, lack of foundation

Page 25, line 2        Objection, speculation

Page 25, line 6        Objection, speculation

Page 25, line 14       Objection, lack of personal knowledge

Page 27, line 25       Objection, hearsay, embodied in inaccurate recollection of the conversation

Page 28, line 6        Objection, lacks personal knowledge of as to when email was sent by another person

Page 28, Line 15       Objection, hearsay

Page 28, line 22       For the record, I want to object to the interim lineation that is contained on page 85, it does not appear to be native to the type written document, nor does the underlining line 6 and 7 in the second paragraph

Page 30, line 1        Objection, compound question

Page 30, line 12       Objection, mis-states the sentence

Page 30, line 18       Objection, leading the witness, testifying for the witness, mis-stating the prior testimony

Page 30, line 22       Objection, Hearsay, mis-states a prior testimony

Page 32, line 3     Objection, hearsay

Page 37, line 20     Objection, fails to lay foundation, exceeds the scope of the letters rogatory

Page 38, line 11     Objection, compound question, question exceeds the scope of the letters rogatory

Page 38, line 31     Objection, vague and ambiguous, exceeds the scope of the letters rogatory and outside the time frame that this deposition was noticed for

Page 39, line 26     Objection, she did not testify that she did not remember

Page 40, Line 11     Objection, exceeds the scope of the letters rogatory

Page 41, Line 11     Objection, what signature block?

Page 41, line 15     Objection, vague and ambiguous

Page 42, line 20     Objections, calls for hearsay

Page 42, line 27     Objection, hearsay, not limited in time and scope

Page 43, line 11     Objection, you cannot just ask her to read it, from the record

Page 44, Line 1     Objection, calls for hearsay

Page 44, line 9     Objection, hearsay

Page 46, Line 16     Objection, testifying for the witness

Page 47, line 9     Objection, hearsay

Page 47, Line 23     Objection, where does it show her email address anywhere? Not addressed to her, Objection hearsay

Page 48, Line 5     Objection Hearsay

Page 48, Line 21     Objection, hearsay and speculation

Gordon Charles Sulliman

Examiner

NAT.040

**Adam Edwards**

| | |
|---|---|
| From: | peter@moorebrands.co.nz |
| Sent: | Wednesday, 18 June 2014 1:41 p.m. |
| To: | Jo.DeJoux@national.org.nz |
| Cc: | sue@petticoatjunction.co.nz |
| Subject: | Fwd: Eminem license |

TRIAL   File No. 1903 / 22
EXHIBIT No.   A
HIGH / DISTRICT COURT
Auckland
LABBRANDS v Moore
Period 10 / 2022 to 12 / 11 / 22
                      Registrar

hopefully ignore the last sentence but I think this is pretty clear "100%" the publisher if any issues re copyright

**MooreBrands**
**Level 2**
**371 Parnell Road**
**Auckland**
peter@moorebrands.co.nz
+64 21 597879
+64 9 9735818

Begin forwarded message:

**From:** "Lewis Mackenzie" <lewis@beatboxmusic.com>
**Subject: Eminem license**
**Date:** 18 June 2014 1:10:38 PM NZST
**To:** <peter@moorebrands.co.nz>

Hey Peter,

I have had a word with a couple of colleagues and basically there is really no further information that we can provide other than what you've already gathered from your call to AMCOS and from the fact that it has been licensed multiple times without any issue.

All you can say to the client is that AMCOS license music in good faith based on the agreement that we have with them, which is in turn based on the agreement that we have with the publisher of the track. The agreement we have with the publisher gives us assurance that the music does not infringe on copyright and is free to be used for production purposes. If any issues were to arise regarding copyright then the responsibility would fall 100% upon the publisher so there is no need for worry in this regard.

That's pretty much all I can say and if the client is still that worried about it then another track might be required.

Cheers,
Lewis.

Lewis Mackenzie | Music Consultant | BEATBOX MUSIC
T +61 2 9484 2321 W beatboxmusic.com

1

LAB00000304

EXHIBIT 168

87

STAN 043

TRIAL   File No. 1903 / 22
EXHIBIT No. · B
HIGH / DISTRICT COURT
Auckland
LABRADOR v MOORE
Period 10 / 11 / 22 to 10 / 11 / 22
Registrar

From: "Lewis Mackenzie" <lewis@beatboxmusic.com>
Subject: Eminem license
Date: 18 June 2014 1:10:38 PM NZST
To: <peter@moorebrands.co.nz>

Hey Peter,

I have had a word with a couple of colleagues and basically there is really no
further information that we can provide other than what you've already
gathered from your call to AMCOS and from the fact that it has been licensed
multiple times without any issue.

All you can say to the client is that AMCOS license music in good faith based on
the agreement that we have with them, which is in turn based on the
agreement that we have with the publisher of the track. The agreement we
have with the publisher gives us assurance that the music does not infringe on
copyright and is free to be used for production purposes. If any issues were to
arise regarding copyright then the responsibility would fall 100% upon the
publisher so there is no need for worry in this regard.

That's pretty much all I can say and if the client is still that worried about it
then another track might be required.

Cheers,
Lewis.

Lewis Mackenzie | Music Consultant | BEATBOX MUSIC
T +61 2 9484 2321 W beatboxmusic.com

Following phone conversations I asked
Beatbox for some written reassurance
& this is their "no worry" email.

NZ [CB2-309], LAB168
EXHIBIT K

86

STAN 051

STAN 051

From: Peter Moore <peter@moorebrands.co.nz>
Date: 27 June 2014 10:07:30 am NZST
To: Jo de Joux <jo.dejoux@xtra.co.nz>
Cc: Sue Worthington <sue@petticoatjunction.co.nz>
Subject: music

"APRA/AMCOS license music in good faith based on the agreement that we (BEATBOX THE
MUSIC LIBRARY SERVICE WE USED) have with them, which is in turn based on the agreement
that we have with the publisher of the track. The agreement we have with the publisher gives
us assurance that the music does not infringe on copyright and is free to be used for production
purposes. If any issues were to arise regarding copyright then the responsibility would fall 100%
upon the publisher."

I had phones calls with both APRA in NZ and AMCOS in Australia and was reassured that all was
in order, and as library music this track had been licensed multiple times without any issue.

best
MooreBrands
Level 2
371 Parnell Road
Auckland
peter@moorebrands.co.nz
+64 21 597879
+64 9 9735818

TRIAL   File No. 1762 , 22
EXHIBIT No . C
HIGH / DISTRICT COURT
Auckland
ARBIRATION        v    MC00126
Period.. 16 / 11 / 22 to 16 12 12 22
                              Registrar

LABDOC467

376
112
LAB00000371

EXHIBIT 183

111

SST.0046

From: Sue Worthington sue@indiego.co.nz
Subject: F.Y.I - the email trail
Date: 16 June 2014 12:55 pm
To: Nigel @salestreetstudios.co.nz

Hey Nigel

I am looping you into this. Bottom line we want to use this music but we need to know we wont be sued.

Cheers

Sue

TRIAL  File No. 1903 / 22
EXHIBIT No  D
HIGH / DISTRICT COURT
Auckland
Labradon v Moore
Period 10 / 11 / 22 to 10 / 11 / 22
muller  Registrar

Begin forwarded message:

From: Peter Moore <Peter@moorebrands.co.nz>
Subject: Fwd: Eminem-esque track
Date: 16 June 2014 12:41:32 pm NZST
To: Marty Collins <marty.cmd@gmail.com>
Cc: Sue Worthington <sue@indiego.co.nz>

Marty this is the correspondence. The music is from  its from a company called Beatbox ...have you heard of them ?

I guess the question we are asking if everyone thinks its eminem and its listed as emeninesque how  can we be confident that Eminem
doesn't say we a ripping him off ? Is buying the music from beatbox and paying spra protection enough...in other words if beatbox sell it
then they take the liability ? How do we ensure there is no liability with us / or stan
MooreBrands
Level 2
371 Parnell Road
Auckland
peter@moorebrands.co.nz
+64 21 597879
+64 9 9735818

Begin forwarded message:

From: Bali Virk <bali@graffitimedia.com>
Subject: Fwd: Eminem-esque track
Date: 16 June 2014 12:26 50 PM NZST
To: Glenn Jameson <glenn@anarchyads.com>, Sue Worthington <sue@petticoatjunction.co.nz>, Peter Moore
<Peter@moorebrands.co.nz>

Fn

---------- Forwarded message ----------
From: Amy Bodsworth <ABodsworth@apra.co.nz>
Date: 16 June 2014 12:25
Subject: RE: Eminem-esque track
To  Bali Virk <bali@graffitimedia.com>

Hi Bali,

I think this is a new song that hasn't yet been registered in our system. It does happen every so
often.

I would say either way it hasn't been used in a campaign yet as it was not showing up in the
system.

Cheers,

LABDOC424

299

81 AB00000294

**Amy Bodsworth** Licensing Representative · Broadcast & Online Services **APRA|AMCOS**
Unit 113, Zone 23, 21-23 Edwin St, Mt Eden, NZ | PO Box 6315, Wellesley St, Auckland 1141, NZ
P: +64 9 623 4711 | 0800 69 2772 ext 711 F: +64 9 623 2174
E: abodsworth@apra.co.nz W: www.apra-amcos.co.nz


**PRODUCTION MUSIC RATE CARD**
now available for download

**From:** Bali Virk [mailto:bali@graffitimedia.com]
**Sent:** Monday, 16 June 2014 12:21 PM
**To:** Amy Bodsworth
**Subject:** Re: Eminem-esque track

Hi Amy

would this help you find it in the system?

Eminem-Esque

Urban Like: Gritty Hip-Hop, Building, Motivational, Guitar Based, Urban Street Hip-Hop, Pow...

> Urban Like: Gritty Hip-Hop, Building, Motivational, Guitar Based, Urban Street Hip-Hop, Powerful, Dark, Dramatic, Gangster Anthem, Action Beats
>
> CD Code: SPID039 Sound A Likes
>
> Track Number: 25
>
> Composer: M Cohen
>
> Genre: Pop & Pop Rock

On 14 June 2014 12:00, Bali Virk <bali@graffitimedia.com> wrote:

Composer details

M Cohen

SPID039 - track 25

SPID B

Number January

On 14 June 2014 11:55, Bali Virk <bali@graffitimedia.com> wrote:

--
**Bali Virk**
Producer
+64 21 606 600
www.graffitimedia.com

LABDOC425

300

82 AB00000295

Begin forwarded message:
**From:** Peter Moore <peter@moorebrands.co.nz>
**Subject: Re: Album Removal Notice - National Party**
**Date:** 17 September 2014 2:55:13 PM NZST
**To:** Jo DeJoux <Jo.DeJoux@national.org.nz>

yea beatbox finally wake up on september 17th...
**MooreBrands**
**Level 2**
**371 Parnell Road**
**Auckland**
peter@moorebrands.co.nz
+64 21 597879
+64 9 9735818

On 17/09/2014, at 2:53 PM, Jo DeJoux wrote:
Yes, I was just about to reply in the same way. We removed all advertising that used the
music purchased from Beatbox weeks ago. All ads playing now use updated music.

**From:** Marianne McKenzie [mailto:marianne@rainmakers.co.nz]
**Sent:** Wednesday, 17 September 2014 2:50 p.m.
**To:** 'Philippa Stiebel'
**Cc:** Jo DeJoux
**Subject:** FW: Album Removal Notice - National Party

Seems all Good PJ

Cheers M

**From:** Peter Moore [mailto:peter@moorebrands.co.nz]
**Sent:** Wednesday, 17 September 2014 2:49 p.m.
**To:** Marianne McKenzie
**Subject:** Re: Album Removal Notice - National Party

all good its not the beatbox music track referred to below (hasn't been for weeks)
**MooreBrands**
**Level 2**
**371 Parnell Road**
**Auckland**
peter@moorebrands.co.nz
+64 21 597879
+64 9 9735818

On 17/09/2014, at 2:45 PM, Marianne McKenzie wrote:

Shite can u come back 2 me
Thanks M

LABDOC582

118

EXHIBIT 220

117

**From:** Bali Virk [mailto:bali@graffitimedia.com]
**Sent:** Monday, 16 June 2014 1:39 PM

**To:** Lewis Mackenzie
**Subject:** Re: Eminem Track

that would be great - yes please if you can set us up. what details do you require?

On 16 June 2014 15:30, Lewis Mackenzie <lewis@beatboxmusic.com> wrote:

Hey Bali,

No worries, glad you got what you needed.

Just to let you know, we're here to help you with any of your music requirements. We're more than happy to search for music on your behalf for whatever brief you may have, as well as handle all the licensing details. I can set you up for our online site if you guys like sourcing music yourself as well.

2

289

B260

We don't charge anything for searching or for the online account, so let me know if there's anything else I can do for you.

Cheers,

Lewis.

**Lewis Mackenzie | Music Consultant | BEATBOX MUSIC**

T +61 2 9484 2321 W beatboxmusic.com

LABDOC436

69

NZ [CB2-293], LAB161
EXHIBIT F

70

SST.0047

**From:** Sue Worthington sue@petticoatjunction.co.nz
**Subject:** Re: Eminem Track
**Date:** 16 June 2014 1:46 pm
**To:** Bali Virk Bali@graffilmedia.com
**Cc:** Glenn Jameson glenn@anarchyads.com, Peter Moore Peter@moorebrands.co.nz

Awesome!!!!!

Have told Jo

We will need something in writing but looking good!

Sue

On 16/06/2014, at 1:43 pm, Bali Virk <Bali@graffilmedia.com> wrote:

Good news.... see below

--------- Forwarded message ---------
From: Lewis Mackenzie <lewis@beatboxmusic.com>
Date: 16 June 2014 13:38
Subject: Eminem Track
To: bali@graffilmedia.com

Hey Bali,

Thanks for getting in touch.

I've had another look and found that the song has been used a few times since being released.

2011 – Australia's Got Talent (talent quest program)

2012 – Unsung Heroes (NZ show on TV1)

2013 – A Current Affair (Australian news program)

Hope this helps.

Cheers,

Lewis.

**Lewis Mackenzie** | Music Consultant | **BEATBOX MUSIC**

T +61 2 9484 2321 W beatboxmusic.com

--
Bali Virk
Producer
+64 21 908 600
www.graffilmedia.com

SUE WORTHINGTON
+ 64 21 668 835
+ 64 9  215 1665
petticoatjunction.co.nz



Tone of Voice          Copywriting

**TRIAL**  File No. 1903  22
**EXHIBIT No** - B -
HIGH / DISTRICT COURT
Auckland
LABRADOR v VIRK
Period 10 / 11 / 22 to 10 / 11 / 22
Registrar

LABDOC429

302

75 AB00000297

NZ [CB1-298], LAB 137
EXHIBIT H

76

From: Ball Virk <ball@graffitimedia.com>
Date: 16 June 2014 13:59
Subject: Re: Eminem Track
To: Lewis Mackenzie <lewis@beatboxmusic.com>

Really appreciate your help.

Can we please confirm this is the track?

Eminem Esque
Urban Like, Gritty Hip-Hop, Building, Motivational, Guitar Based, Urban Street Hip-Hop, Pow...
      Urban Like, Gritty Hip-Hop, Building, Motivational, Guitar Based, Urban Street Hip-Hop, Powerful, Dark, Dramatic,
      Gangster Anthem, Action Beats

      CD Code: SPID038 Sound A Likes

      Track Number: 25

      Composer: M Cohen

      Genre: Pop & Pop Rock

On 16 June 2014 13:36, Lewis Mackenzie <lewis@beatboxmusic.com> wrote:

Hey Ball,

Thanks for getting in touch.

I've had another look and found that the song has been used a few times since being released.

2011 – Australia's Got Talent (talent quest program)

2012 – Unsung Heroes (NZ show on TV1)

2013 – A Current Affair (Australian news program)

Hope this helps.

Cheers,

Lewis

Lewis Mackenzie | Music Consultant | **BEATBOX MUSIC**

T +61 2 9484 2321 W beatboxmusic.com

Hi team. Thanks for the opportunity to look at this.
My take on it is that you are saying for a licence to use this music for a specific purpose. If at any stage in the future the legality of
the music was questioned, these be be able, in the first instance be the composer, Not Stand,
You and your client are removed from any liability because you haven't composed the track but have paid to use it via APPRA.
Hope this helps
Regards
Mark

AB00000316

# EXHIBIT 160

93

B263

TRIAL   File No. *1903, 22*
EXHIBIT No. - *D*
HIGH / DISTRICT COURT
*Auckland*
*Labrador* v *Virk*
Period. *10, 4, 22* to *10, 4, 22*
*null* Registrar

n 16 June 2014 14:01, Lewis Mackenzie <lewis@beatboxmusic.com> wrote:

That's the one Ball.



What studio are you guys going through If I may ask?

LABDOC435

293

72 AB00000288

# EXHIBIT 161

71

B258

TRIAL    File No. *1903 / 22*

EXHIBIT No. *E*

HIGH / DISTRICT COURT

*Auckland*

*Amparol* v *Viiek*

Period *10 / 8 / 27* to *10 / 4 / 22*

*miller*    Registrar

On 16/06/2014 7:03 PM, "Lewis Mackenzie" <lewis@beatboxmusic.com> wrote:

Hey Bali,

You are set up and ready to go.

Here are your login details:

Username: bali@graffitimedia.com

Password: Graffiti14

http://www.beatboxmusic.com/

Put me to work with any music searches you need assistance with. If you have any questions or need anything else just let me know.

Cheers,

Lewis.

Lewis Mackenzie | Music Consultant | BEATBOX MUSIC

T +61 2 9484 2321 W beatboxmusic.com

1

288

AB00000283

EXHIBIT 166

65

B257

**Lewis Mackenzie**

From:          Bali Virk [bali@graffitimedia.com]
Sent:          Monday, 16 June 2014 5:15 PM
To:            Lewis Mackenzie
Subject:       RE: Eminem Track

Categories:    [CRM] Regarding: Bali Virk

Awesome thank you!



TRIAL   File No. 1903 / 22
EXHIBIT No. page 63
HIGH / DISTRICT COURT
Auckland
LABADOR v VIRK
Period 10/11/22 10/11/22
miller   Registrar

LABDOC439

287

63

AB00000282

NZ [CB2-288], LAB166
EXHIBIT D

64

# "DJR-1

This is the document marked "DJR-1" referred to in the annexed affidavit of **DOUGLAS JOSEPH ROSNER** affirmed at Los Angeles, California, USA this _27_ day of September 2022 before me:

_Joseph Mina_

A person authorised to administer oaths by the State of California

JOSEPH MINA
Notary Public - California
Los Angeles County
Commission # 2367367
My Comm. Expires Aug 19, 2025

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| BEATBOX MUSIC, PTY., LTD., | Case No. 2:17-cv-6108-MWF (JPRx) |
| Plaintiff, | *Assigned to the Hon. Michael W. Fitzgerald* |
| vs. | |
| LABRADOR ENTERTAINMENT, INC., DBA SPIDER CUES MUSIC LIBRARY, a California corporation, | LETTER OF REQUEST FOR INTERNATIONAL JUDICIAL ASSISTANCE |
| Defendants. | Trial Date: December 6, 2022 |
| AND ALL RELATED ACTIONS. | |

FROM: THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA, UNITED STATES OF AMERICA

TO: THE HIGH COURT OF NEW ZEALAND

**LETTER OF REQUEST FOR INTERNATIONAL JUDICIAL ASSISTANCE**

The United States District Court for the Central District of California presents its compliments to the High Court and requests international judicial assistance to obtain testimony at trial from Peter Moore and Bali Virk as set forth below to be used in a civil proceeding before this Court in the above-captioned matter.

This Court, the United States District Court for the Central District of California, Western Division (Los Angeles), is a competent court of law and equity which properly has jurisdiction over this proceeding and has the power to compel the attendance of a witness at trial both within and outside its jurisdiction. Peter Moore and Bali Virk each

LETTER OF REQUEST FOR INTERNATIONAL JUDICIAL ASSISTANCE          Page 1 of 9

1    has or is likely to have personal information that Labrador requires at the trial.

2    **TESTIMONY OF PETER MOORE AND BALI VIRK**

3    TO THE COMPETENT AUTHORITY:

4        Auckland High Court
         CX10222
5        Auckland, New Zealand

6    REQUESTING JUDICIAL AUTHORITY:

7        The Honorable Michael W. Fitzgerald
         United States District Judge
8        United States District Court for the Central District of California
         Western Division (Los Angeles)
9        First Street Courthouse
         350 West First Street, Courtroom 5A,
10       Los Angeles, California 90012

11

12    **CASE IDENTIFICATION**

13    *BEATBOX MUSIC, PTY., LTD., v. LABRADOR ENTERTAINMENT, INC., DBA SPIDER CUES MUSIC LIBRARY, a California corporation, et al.,* Case No. 2:17-cv-6108-MWF (JPRx)

14

15    **PARTIES AND REPRESENTATIVES**

16    Plaintiff/Cross-defendant Beatbox Music, PTY., LTD ("Beatbox"):
Beatbox Music Pty. LTD, Suite 9, 7 Ramsay Rd., Pennant Hills, NSW 2120

17        Plaintiff is Represented by:

18        Blaise & Nitschke, P.C.
         Heather L. Blaise, Esq. (SBN 261619)
19        145 South Wells Street, Suite 1800
         Chicago, IL 60606
20        Telephone: 312-448-6602
         Email: hblaise@blaisenitschkelaw.com

21

22    Defendants:

23    Defendant/Cross-claimant Michael Cohen, and Defendant MCPC Holdings, LLC ("Cohen")

24

25        Defendant/Cross-claimant are Represented by:

26        Daniel Lee Jacobson SBN 134978
         JACOBSON & ASSOCIATES
27        1352 Irvine Blvd. Suite
         Tustin, CA 92780
28        (714) 505-4872
         dlj@jacobsonlawyers.com

1         Defendant/Cross-defendants, Labrador Entertainment, Inc. dba Spider Cues Music
2         library, Labrador Entertainment, LLC, Noel Palmer Webb, an individual and Webb Family Trusts ("Labrador Defendants")

3         Defendant/Cross-defendants are Represented by:

4         Douglas J. Rosner, Esq., SBN 094466
        rosnerlaw@earthlink.net
5         LAW OFFICES OF DOUGLAS JOSEPH ROSNER
        2625 Townsgate Road, Suite 330
6         Westlake Village, California 91361
        Telephone No. (818) 501-8400
7         Facsimile No.: (818) 880-4485

8 **TESTIMONY REQUESTED FROM:**

9     A. Peter Moore

10     B. BaliVirk

11 **I.    NATURE OF THE LAWSUIT**

12        Claims and counterclaims are now pending in the United States District Court for

13 the Central District of California Western Division (Los Angeles) in a case entitled:

14 *Beatbox Music, PTY., LTD., v. Labrador Entertainment, INC., DBA Spider Cues Music*

15 *Library, a California corporation, et al.*, Case No. 2:17-cv-6108-MWF (JPRx) (the

16 "Action"). The trial is scheduled to commence on December 6, 2022.

17        On or about September 16, 2014, litigation commenced in the High Court of New

18 Zealand, Wellington Registry, entitled *Eight Mile Style, LLC. v The New Zealand Party,*

19 *et al.* Case Number CIV-2014-485-11220 ("New Zealand Action"). On or about

20 September 16, 2014, Eight Mile Style LLC brought a civil action against the New

21 Zealand National Party and Gregory James Hamilton, Case Number CIV-2014-485-

22 11220. Since 2014, seven additional parties have been joined in the New Zealand

23 Action. There are claims and cross claims between those further parties. As relevant here,

24 on February 20, 2015 Beatbox Music, Pty. Ltd. ("Beatbox") in the New Zealand Action

25 claimed that Labrador Entertainment Inc. ("Labrador") must indemnify Beatbox for any

26 liability it may have to any of the other parties pursuant to an April 1, 2009 contract

27 between Labrador and Beatbox. In September 2016 all parties to the New Zealand

28 Action (including Beatbox) agreed to a separate trial of the plaintiffs' claims against the

1   defendants, with the various claims for indemnity between the defendants and the other
2   parties (third, fourth and fifth parties) to be determined (or settled) once the court
3   determined the issues of liability and quantum.

4        As between Eight Mile Style, LLC and The New Zealand Party, it appears the New
5   Zealand Action is resolved.   As to the matters between Beatbox and Labrador, they
6   remain open. Beatbox filed this Action in United States District Court for the Central
7   District of California Western Division (Los Angeles).   Following Labrador's failed
8   attempt to remove this Action back to New Zealand, litigation ensued in the Central
9   District of California and now Labrador is preparing for trial.

10       In this Action, Beatbox claims a right to indemnification against Labrador due to
11  Labrador's alleged broken promise that certain compositions are original and that none
12  of the compositions infringe any other copyright work or the rights of any third party.
13  Part of the dispute in this Action is the issuance of a license by Beatbox granting the
14  right to the New Zealand National Party to use the Eminem Esque in its political
15  campaign commercials. Labrador contends an important issue in the Action is knowing
16  what information Beatbox knew about this political campaign commercial prior to
17  issuing the license. Both Peter Moore and Bali Virk can help answer that question. Peter
18  Moore was one of three members of Stan 3 Ltd., a company formed to provide
19  advertising and creative services to the New Zealand National Party for their 2014
20  general election campaign. Peter Moore was Stan 3 Ltd.'s sole director. Stan 3 Ltd. hired
21  and managed others that did the work. Prior to the issuance of the license, Peter Moore
22  was in communication with Beatbox.

23       Graffiti Media was one of the companies Stan 3 Ltd. hired to assist in the
24  production of the commercial for the New Zealand National Party.  Also communicating
25  with Beatbox prior to the issuance of the License, Bali Virk, employed by Graffiti Media,
26  was responsible for investigating and obtaining the license to Eminem Esque.
27  ///
28  ///

## II.   PURPOSE OF EVIDENCE SOUGHT

### A.   Peter Moore

Relevant to Labrador's cross examination of Beatbox and its witnesses is Labrador's claim that Beatbox, prior to issuing the License, had actual knowledge of the concerns raised by the New Zealand National Party regarding copyright risks. Labrador contends that immediately upon learning of this concern, Beatbox, the sub-publisher, was required to contact and inform Labrador, the publisher, of this issue. Rather, Labrador contends Beatbox gave the New Zealand National Party Producers and others assurances that the New Zealand National Party had nothing to worry about as long as it purchased an appropriate license to use Eminem Esque. Further, if the legality of the music were ever questioned, then liability would fall on the composer/publisher and not persons who had purchased a license to use the music from an entity such as APRA AMCOS. Labrador represents to this Court that Peter Moore can testify about these communications and authenticate the documents that included these discussions.

Peter Moore is not located in the State of California or the United States, and thus cannot directly be compelled by this Court to provide the requested trial testimony. The trial testimony requested to be provided pursuant to this Letter Rogatory is reasonably calculated to lead to the discovery of admissible evidence and will be offered at trial. This evidence is sought to conduct cross examination of Plaintiff and its witnesses and to provide a defense at trial.

### B.   Bali Virk

Relevant to Labrador's cross examination of Beatbox and its witnesses is Labrador's claim that Beatbox, prior to issuing the License had actual knowledge of the concerns raised by the New Zealand National Party regarding copyright risks. Immediately upon learning of this concern, Beatbox, the sub-publisher, was required, at least to contact and inform Labrador, the publisher, of this issue. Rather, Beatbox gave the New Zealand National Party Producers and others assurances that the New Zealand National Party had nothing to worry about as long as it purchased an appropriate license

1    to use the Eminem Esque. Further, if the legality of the music was ever questioned then

2    liability would fall on the composer/publisher and not persons who had purchased a

3    license to use the music from an entity such as APRA AMCOS. Bali Virk can testify

4    about these communications and authenticate the documents that included these

5    discussions.

6        These witnesses cannot directly be compelled by this Court to provide the

7    requested trial testimony. The trial testimony requested to be provided pursuant to this

8    Letter Rogatory is reasonably calculated to lead to the discovery of admissible evidence

9    at trial. This evidence is sought to conduct cross examination of Beatbox and its

10    witnesses and to provide a defense at trial.

11   **III.   DOCUMENTS LABRADOR NOW HAS REGARDING:**

12       **A.   Peter Moore**

13       Labrador seeks authentication of documents from Peter Moore. Peter Moore

14    testified in the New Zealand Action. Included with this Letter Rogatory are the Brief of

15    Evidence of Peter Robert Moore dated May 4, 2017, and Notes of Evidence Taken

16    Before the Hon. Justice Cull ("New Zealand Trial Transcript"). Also included are

17    various emails wherein Peter Moore communicates about the New Zealand National

18    Party's concerns. (See Attached Exhibits: *Ex. A*, New Zealand "NZ" [CB1-234],

19    Labrador "LAB" Exhibit 135; *Ex. B*, NZ [CB2-566], *Ex. J*, NZ [CB2-307], LAB169; *Ex.*

20    *K*, NZ [CB2-309], LAB168; *Ex. I*, NZ[CB2-299-300], LAB154; *Ex. N*, NZ [CB2-526],

21    LAB211; *Ex. O, LAB 163; Ex. P*, LAB 167; *Ex. Q*, LAB183; *Ex. R*, LAB203; *Ex. S*,

22    LAB 220; *Ex. U*, LAB220.

23       Labrador contends that based upon the documents already in the possession of

24    Labrador, that numerous documents could be missing that show communications with

25    Peter Moore about this Action.

26       **B.   Bali Virk**

27       Labrador seeks authentication of documents from Bali Virk. Bali Virk

28    communicated by email with Beatbox and others regarding the pre licensing

1   communications and New Zealand National Party's concerns. (See Attached Exhibits:
2   *Ex. C*, NZ[CB2-287], LAB165; New Zealand *Ex. D*, NZ[CB2-288], LAB166; *Ex. E*, NZ
3   [CB2-289], LAB162; *Ex. F*, NZ[ CB2-293] LAB161; *Ex. G*, NZ [CB2-302],  LAB156;
4   *Ex. H*, NZ [CB1-298], LAB Exhibit 137; *Ex. I*, NZ[CB2-299-300], LAB154; *Ex. L*, NZ
5   [CB2-320], LAB171; *Ex. M*, NZ [CB2-321], LAB160; *Ex. Q*,  LAB183.

6        Labrador contends that based upon the documents already in the possession of
7   Labrador, that numerous documents could be missing that show communications with
8   Bali Virk about this Action.

9   **IV.    TRIAL TESTIMONY TO BE GIVEN ON OATH OR AFFIRMATION**
10       **Peter Moore and Bali Virk**

11       This Court  requests that testimony of Peter Moore and Bali Virk be given under
12   oath and that the oath be administered before testimony is taken. Typically, when a
13   witness testifies in U.S. federal court, the witness must "give an oath or affirmation to
14   testify truthfully." See Fed. R. Evid. 603. As the U.S. Supreme Court observed, "Unlike
15   speech in other contexts, testimony under oath has the formality and gravity necessary
16   to remind the witness that his or her statements will be the basis for official
17   governmental action, action that often affects the rights and liberties of others." *United*
18   *States v. Alvarez*, 132 S. Ct. 2537, 2546 (2012).

19   **V.     DEPOSITION TO BE ALLOWED PRIOR TO TRIAL**

20       The United States District Court for the Central District of California requests that
21   pre-trial deposition of Peter Moore and Bali Virk be allowed before a Court Reporter
22   under oath at the request of any party to this matter.  The deposition transcript of the
23   witnesses will be used in any manner by any party for the purposes of trial.

24   **VI.    VERBATIM TRANSCRIPT TO BE PREPARED IN ENGLISH**

25       This Court requests that a verbatim transcript be prepared in English. The
26   transcript may be used by the parties, and it is important that the Court know exactly
27   what Peter Moore and Bali Virk say so that it can properly evaluate the parties'
28   arguments. In addition, the Court requests that a video and audio transcript be prepared

1   by a videographer. The video recording is important because it will record exactly what
2   Peter Moore and Bali Virk testify to at trial. On request, Labrador will make the
3   necessary arrangements for obtaining a qualified stenographic reporter and videographer.
4   The Court further requests that any counsel for the parties be permitted to attend the
5   examination in person or via video and that counsel for the parties be permitted to ask
6   follow-up questions of the witness. Labrador estimates that the examination will take one
7   hour.

8   **VII.   RESPONSE TO THE LETTER ROGATORY**

9       A response is requested as soon as reasonably practicable consistent with the High
10  Court's calendar in order to ensure that the evidence may be obtained at the time of trial,
11  currently set for December 6, 2022.

12  **VIII.  REQUEST FOR NOTIFICATION**

13     A notification is requested of the time and place for the execution of the request
14  to the persons above.

15  **IX.    SPECIFICATION OF PRIVILEGE OR DUTY TO REFUSE TO GIVE**
16            **EVIDENCE UNDER THE LAW OF THE STATE OF ORIGIN**

17     This Court requests that United States Federal Rules of Evidence 501 and 502
18  govern claims of privilege and work-product protection.

19  **X.     REIMBURSEMENT OF COSTS**

20     Labrador will reimburse the High Court for costs incurred in the execution of the
21  Letter Rogatory.

22  **XI.    CONCLUSION**

23     In the spirit of comity and reciprocity, this Court hereby requests international
24  judicial assistance in the form of this Letter of Request to obtain the trial testimony of
25  Peter Moore and Bali Virk and the authentication of documents as set forth in the above
26  ///
27  ///
28  ///

1 | Letter of Request. This Court expresses its sincere willingness to provide similar
2 | assistance to the High Court if future circumstances should require.
3 | WITNESSED BY:
4 |
5 | DATED: September 19, 2022
6 |
MICHAEL W. FITZGERALD
United States District Judge

7 | CLERK OF COURT AUTHENTICATION:

8 | KIRY K. GRAY, CLERK OF COURT

9 |
10 | By: RITA SANCHEZ, Deputy Clerk
11 | [SEAL]
12 |
13 |
14 |
15 | I HEREBY AUTHENTICATE THAT KIRY K. GRAY IS THE CLERK OF THE
16 | UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA.
17 |
18 |
19 | DATED: September 19, 2022
20 |
MICHAEL W. FITZGERALD
United States District Judge

21 | CLERK OF COURT AUTHENTICATION:

22 | KIRY K. GRAY, CLERK OF COURT

23 |
24 | By: RITA SANCHEZ, Deputy Clerk
25 | [SEAL]
26 |
27 |
28 |

LETTER OF REQUEST FOR INTERNATIONAL JUDICIAL ASSISTANCE          Page 9 of 9

13