Daniel Jacobson, State Bar No. 134978
Ronak Patel, State Bar No. 296296
JACOBSON & ASSOCIATES
1352 Irvine Blvd. Suite 205
Tustin, California 92780
(714) 505-4782
dlj@jacobsonlawyers.com
ronak@practicingthelaw.com

Attorneys for Cross-Claimant/Defendant Michael Cohen
and Defendant MCPC Holdings, LLC

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| BEATBOX MUSIC PTY, LTD.,<br><br>                          Plaintiff,<br><br>          versus<br><br>LABRADOR ENTERTAINMENT, INC., et al<br><br>                          Defendants. | Case No: 2:17-cv-06108-MWF-JPR<br><br>**Defendant and Cross-Claimant Michael Cohen and Defendant MCPC Holdings, LLC's Memorandum of Points and Authorities in support of EX PARTE APPLICATION to (1) QUASH the Subpoenas Issued by Plaintiff on April 3, 2023, (2) INVOLUNTARILY DISMISS the Action for Failure to Comply with Court Orders or Rules, and (3) Determine if SUBJECT MATTER JURISDICTION Exists** |
| MICHAEL COHEN,<br><br>                          Cross-Claimant,<br><br>          versus<br><br>LABRADOR ENTERTAINMENT, INC.,<br><br>                          Cross-Defendant. | <u>Filed Concurrently With</u>:<br><br>1.  *Ex Parte Application*<br>2.  *Declaration of Ronak Patel*<br>3.  *Proposed Order*<br><br>JUDGE: Hon. Michael W. Fitzgerald<br>DATE:    April 11, 2023 |

Memorandum of Points & Authorities ISO Cohen Parties' Ex Parte Application to QUASH Plaintiff's Subpoenas, INVOLUNTARILY DISMISS Plaintiff's Action, and Determine Subject Matter Jurisdiction

# **TABLE OF CONTENTS**

TABLE OF CONTENTS ................................................................................................................. 2

TABLE OF AUTHORITIES ............................................................................................................ 5

MEMORANDUM OF POINTS AND AUTHORITIES ................................................................... 7

   I.   THE ALREADY QUASHED SUBPOENAS MUST BE QUASHED AGAIN. ........................... 7

      A.   RELEVANT BACKGROUND ................................................................................... 7

      1.   On September 22, 2020, Judge Fitzgerald ORDERS that Non-Expert Discovery Would Close On July 23, 2021. ................................................................................................ 7

      2.   On July 13, 2021, Plaintiff Subpoenas Four Financial Institutions. ................................. 7

      3.   August 5, 2021, Judge Rosenbluth QUASHES Plaintiff's Four Subpoenas on the Financial Institutions. ................................................................................................................. 8

      4.   On March 30, 2022: Judge Fitzgerald DENIES Plaintiff's Ex Parte Application to Extend Discovery. ............................................................................................................................. 8

      5.   On April 3, 2023, Plaintiff Again Subpoenas the Financial Institutions. ......................... 8

      B.   THE COURT MUST QUASH THE SUBPOENAS BECAUSE THEY ARE PROCEDURALLY DEFECTIVE AND VIOLATE COURT ORDERS AND DIRECTIVES. ................................................. 9

      1.   Plaintiff Failed to Identify Who Would Testify in the Subpoenas. ................................. 9

      2.   Plaintiff Failed to Personally Serve the Subpoenas. ....................................................... 9

      3.   Plaintiff Failed to Supply Proof that It Tendered Witness Fees. ................................... 10

      4.   The Subpoenas Violate the Geographic Limitations of FRCP 45. ................................ 10

      5.   Plaintiff DEFIED Judge Fitzgerald, Who Ordered That Discovery Closed on July 23, 2021, and Denied the Application to Extend. ...................................................................... 11

      6.   Plaintiff DISOBEYED Judge Rosenbluth, who ALREADY QUASHED These Subpoenas More than a Year Ago. ................................................................................................... 12

   II.   THE COURT SHOULD INVOLUNTARILY DISMISS PLAINTIFF'S ACTION. ................ 12

Memorandum of Points & Authorities ISO Cohen Parties' Ex Parte Application to QUASH Plaintiff's Subpoenas, INVOLUNTARILY DISMISS Plaintiff's Action, and Determine Subject Matter Jurisdiction

A.  THIS COURT IS EMPOWERED TO INVOLUNTARILY DISMISS AN ACTION FOR FAILURE TO PROSECUTE AND/OR FOR VIOLATIONS OF ORDERS, DIRECTIVES, RULES, OR PRE-TRIAL PROCEDURES. ..................................................................................................13

B.  UNDER THE PRESENT CIRCUMSTANCES, IT IS PROCEDURALLY APPROPRIATE FOR THE COURT TO INVOLUNTARILY DISMISS PLAINTIFF'S ACTION ON THE BASIS OF AN EX PARTE APPLICATION INSTEAD OF A NOTICED MOTION. ....................................................14

C.  PLAINTIFF FAILED TO PROSECUTE AND/OR VIOLATED COURT ORDERS AND DIRECTIVES, THE FEDERAL AND LOCAL RULES, AND PRE-TRIAL PROCEDURES.....................................16

   1.     During the Early Stages of this Case, Plaintiff Violated Various Discovery Rules.... 16

   2.     On March 30, 2021, Plaintiff REFUSED TO COMPLY with Local Rule 83-2.7, and then RETALIATED Against the Cohen Parties for their Good Faith Effort to Comply with that Rule........................................................................................................17

   3.     On July 13, 2021, Judge Rosenbluth IMPLICITLY SANCTIONED Plaintiff Based on Its HISTORY OF NON-COMPLIANCE with Court Directives and Rules. ........................... 18

   4.     On August 5, 2021, Judge Rosenbluth Quashed Plaintiff's Subpoenas on the Financial Institutions and Expressly WARNED Plaintiff that Issuing Such Subpoenas INDISPUTABLY VIOLATED Judge Fitzgerald's Scheduling Order. .............................. 18

   5.     In January 2023, Plaintiff Violated Local Rule 16-7 By Surreptitiously ALTERING a Joint Document Without Telling the Other Parties that It Was Doing So. .............................. 19

   6.     On March 23, 2023, Judge Fitzgerald CHASTISES Plaintiff, Warning It that It Had Become Too PRESUMPTUOUS, and Was Imposing A Burden on the Court. .......................... 19

   7.     On April 3, 2023, Plaintiff's Subpoenaed the Financial Institutions Despite Judge Fitzgerald's Scheduling Order and Judge Rosenbluth's Quash Order. ....................................20

Memorandum of Points & Authorities ISO Cohen Parties' Ex Parte Application to QUASH Plaintiff's Subpoenas, INVOLUNTARILY DISMISS Plaintiff's Action, and Determine Subject Matter Jurisdiction

8.    After Judge Fitzgerald Warned the Parties that He Did Not Want Extensive Argumentative Briefing on Issues to Be Decided, Beatbox Filed a 19 Page Brief Just Days Before the Hearing.................................................................................20

D.  FOUR OF THE FIVE DISMISSAL FACTORS STRONGLY SUPPORT DISMISSAL. ................................20

1.    The Public's Interest in the Expeditious Resolution of Litigation Strongly Favors Dismissal.................................................................................................21

2.    The Court's Need to Manage its Docket Strongly Favors Dismissal.............................21

3.    The Risk of Prejudice to the Defendants Strongly Supports Dismissal........................22

4.    The Unavailability of Lesser Sanctions Strongly Supports Dismissal. .........................22

5.    The Public Policy Favoring Resolution on the Merits Always Weighs Against Dismissal, but Is Insufficient in this Case. .........................................................22

III.   THE COURT WILL (LIKELY) LOSE SUBJECT MATTER JURSIDICTION. .........................................22

IV.   CONCLUSION.....................................................................................................24

Memorandum of Points & Authorities ISO Cohen Parties' Ex Parte Application to QUASH Plaintiff's Subpoenas, INVOLUNTARILY DISMISS Plaintiff's Action, and Determine Subject Matter Jurisdiction

# TABLE OF AUTHORITIES

**PRECEDENT**

Bailey v. Leonhardt (9th Cir. 2012)
    481 F.App'x 381, 382............................................................................9]
Chambers v. NASCO, Inc., (1991)
    501 U.S. 32 ....................................................................................14
Columbia Park Golf Course v. City of Kennewick (E.D.Wash. Apr. 21, 2008, No. CV-07-5054-EFS)
    2008 U.S.Dist.LEXIS 140126 ........................................................11
Ferdik v. Bonzelet (1992)
    963 F.2d 1258 ...............................................................................13
Hooman Auto. Grp. v. Ill. Union Ins. Co. (C.D.Cal. Mar. 17, 2020, No. CV 19-5904-MWF (PLAx)) (**Fitzgerald, J.**)
    2020 U.S.Dist.LEXIS 212988 .......................................................15
Link v. Wabash Railroad Co. (1992)
    370 U.S. 626 .................................................................................13
Mortgage Information Services, Inc. v. Kitchens (W.D.N.C. 2002)
    210 F.R.D. 562 ..............................................................................11
Santamaria v. Todd Ins. Agency (E.D.Tex. 2005)
    231 F.R.D. 246.........................................................................13, 14
Thompson v. Housing Authority of Los Angeles
    (9th Cir. 1986) 782 F.2d 829 ........................................................14
Vartanian v. United Collections Bureau (C.D.Cal. July 20, 2012, No. CV 12-456-MWF (PJWx)) (**Fitzgerald, J.**)
    2012 U.S.Dist.LEXIS 102076.......................................................13
Woodson v. Surgitek, Inc. (5th Cir. 1995)
    57 F.3d 1406 .................................................................................13

**OTHER AUTHORITIES**
Federal Rules of Civil Procedure

    41...........................................................................................13, 14
    45 ..........................................................................................9, 10

Local Rules

Memorandum of Points & Authorities ISO Cohen Parties' Ex Parte Application to QUASH Plaintiff's Subpoenas, INVOLUNTARILY DISMISS Plaintiff's Action, and Determine Subject Matter Jurisdiction

6-1 ................................................................................................................15

16-4 ..............................................................................................................

83-9.2 ...........................................................................................................

**Memorandum of Points & Authorities ISO Cohen Parties' Ex Parte Application to QUASH Plaintiff's Subpoenas, INVOLUNTARILY DISMISS Plaintiff's Action, and Determine Subject Matter Jurisdiction**

## MEMORANDUM OF POINTS AND AUTHORITIES

Defendant and Cross-Claimant Michael Cohen ("Cohen Parties") and Defendant I Holdings, LLC (collectively, "Cohen Parties") respectfully submit this memorandum in support of their concurrently filed *ex parte* application, which seeks orders that do the following:

(1) **QUASH** all subpoenas issued by Plaintiff Beatbox Music Pty, Ltd. ("Plaintiff" or "Beatbox") on April 3, 2023; and

(2) **INVOLUNTARILY DISMISS** Plaintiff's action pursuant to FRCP 41(b) and/or the Court's inherent authority.

(3) Determine whether **SUBJECT MATTER JURISDICTION REMAINS** if the Plaintiff's Action is dismissed.

## I.   THE ALREADY QUASHED SUBPOENAS MUST BE QUASHED AGAIN.

### A.   *Relevant Background*

#### 1.   On September 22, 2020, Judge Fitzgerald ORDERS that Non-Expert Discovery Would Close On July 23, 2021.

On September 22, 2020, the Court set the non-expert discovery deadline as July 23, 2021. ECF 164; *Declaration of Ronak Patel* ("*Patel*") ¶ 6. Thus, Plaintiff was afforded a **full ten (10) months** to complete any discovery it believed it needed to complete in order to prosecute its action against the Cohen Parties (and the other defendants).

#### 2.   On July 13, 2021, Plaintiff Subpoenas Four Financial Institutions.

On July 13, 2021 – a mere ten (10) days before the close of discovery – Plaintiff issued five subpoenas on four financial institutions. ECF 217; *Patel* ¶ 7. Plaintiff subpoenaed Bank of America and Merrill Lynch for records relating to the Cohen Parties, the M.A. Cohen Family Savings Trust, and the Michael Cohen Revocable Trust. *Id.* Plaintiff

also subpoenaed Wells Fargo (2 separate subpoenas) and JP Morgan Chase for records relating to the Defendants Labrador Entertainment, Inc., Labrador Entertainment, LLC, Webb Family Trust, and Noel Webb (collectively, "Labrador Parties"). *Id.*; ECF 217.

### 3. August 5, 2021, Judge Rosenbluth QUASHES Plaintiff's Four Subpoenas on the Financial Institutions.

On August 5, 2021, an informal discovery conference was held with Judge Rosenbluth regarding the subpoenas. *Patel* ¶ 8; ECF 215. Both the Cohen Parties and the Labrador Parties argued that the subpoenas should be quashed because, among other flaws, they were served only ten days prior to the operative July 23, 2021 non-expert discovery cutoff date imposed by scheduling order issued by the Judge Fitzgerald on September 23, 2020, and there was therefore not a sufficient period of time for compliance. *Patel* ¶ 9 Judge Rosenbluth reached the same conclusion and quashed all five subpoenas. *Patel* ¶ 10, Exhibit 1; ECF 217 (quashing the subpoenas "because the timing of the subpoenas is inconsistent with the District Judge's scheduling order").

### 4. On March 30, 2022: Judge Fitzgerald DENIES Plaintiff's Ex Parte Application to Extend Discovery.

On March 30, 2022, the Court denied Plaintiff's *ex parte* application to extend the discovery cutoff as **moot** based on the denial of Plaintiff's then-concurrently-pending *ex parte* application for leave to amend her complaint. *Patel* ¶¶ 11-12; ECF 255. **Plaintiff thereafter did not move or apply to reopen discovery on different grounds.** *Patel* ¶ 13. Thus, the discovery cut-off remains July 23, 2021 to this day.

### 5. On April 3, 2023, Plaintiff Again Subpoenas the Financial Institutions.

On April 3, 2023, **Plaintiffs issued subpoenas on the same four institutions AGAIN** (although only one to Well Fargo). *Patel* ¶ 14, Exhibit 2. Defendants issued these

subpoenas by sending them via *certified mail* to each institutions California registered agent for service of process. *Id.* According to the website for the California Secretary of State, the institutions primary place of business are in the following locations:

Bank of America:          Charlotte, North Carolina

Merrill Lynch:            New York, New York

JP Morgan Chase:          Columbous, Ohio

Wells Fargo:              Sioux Falls, South Dakota

*Id.* ¶ 15, Exhibit 3-6, inclusive.

Plaintiff did not meet and confer with Cohen Parties prior to issuing these subpoenas. *Id.* ¶ 16.

**B.**    ***The Court Must Quash the Subpoenas Because They Are Procedurally Defective and Violate Court Orders and Directives.***

The court must quash the subpoenas (*that it had already quashed*) for each of the following reasons, any one of which would be <u>**alone**</u> sufficient to require the subpoena to be quashed.

**1.    Plaintiff Failed to Identify Who Would Testify in the Subpoenas.**

The subpoena fails to identify a witness. While a company can be called as a party, that company only testify through an individual representing the company, e.g. an officer of the company, etc. *See* FRCP 41(b)(1)(C)(i) (contemplating such practice by referring to a "party's officer").

**2.    Plaintiff Failed to Personally Serve the Subpoenas.**

A subpoena under FRCP 45 must be **personally served**. *Bailey v. Leonhardt* (9th Cir. 2012) 481 F.App'x 381, 382. Here, Plaintiff's proof of service indicates that service of each subpoena was made by **certified mail**. *Patel* Exhibit 2. Therefore, the subpoena must be quashed for lack of personal service.

### 3.    Plaintiff Failed to Supply Proof that It Tendered Witness Fees.

FRCP 45 requires that party serving a subpoena to provide the witness with mileage fees at the time of service. FRCP 41(b)(1). "[S]erving a subpoena requires delivering a copy to the named person and, if the subpoena requires that person's attendance, tendering the fees for 1 day's attendance and the mileage allowed by law." *Id*. Here, there is nothing that Plaintiff served on the Defendants indicating that the fees were tendered, thereby rendering the subpoenas fatally defective.

### 4.    The Subpoenas Violate the Geographic Limitations of FRCP 45.

FRCP 45 imposes clearly defined geographical limitations on the court's power to subpoena a party. FRCP 45(c)(1). Specifically, FRCP 45 states:

A subpoena may command a person to attend a trial, hearing, or deposition **only as follows:**

   (A)    **within 100 miles** of where the person resides, is employed, or regularly transacts business in person; or

   (B)    **within the state** where the person resides, is employed, or regularly transacts business in person, if the person

      (i)     is a party or a party's officer; or

      (ii)    is commanded to attend a trial and would not incur substantial expense.

FRCP 45(c)(1) (emphasis added).

As noted above, not one of the subpoenaed financial institutions are located in California. Likewise, each institution is located far beyond the 100-mile radius of this Court, with the ***closest*** financial institution (Wells Fargo, which is in Sioux Falls, South Dakota) being located ***over a thousand (1000) miles away***. Consequently, the subpoena cannot be enforced and must be quashed.

Memorandum of Points & Authorities ISO Cohen Parties' Ex Parte Application to QUASH Plaintiff's Subpoenas, INVOLUNTARILY DISMISS Plaintiff's Action, and Determine Subject Matter Jurisdiction

**5.** **Plaintiff DEFIED Judge Fitzgerald, Who Ordered That Discovery Closed on July 23, 2021, and Denied the Application to Extend.**

The scheduling order is not ambiguous. It explicitly provides that non-expert discovery must be completed prior to July 23, 2021. As noted above, the Court has already declined to extend the discovery cutoff, and Plaintiff failed to make any further effort to seek an extension of time to complete discovery. Thus, issuance of these subpoenas **nearly two years after the discovery cutoff** is entirely improper and in direct violation of Judge Fitzgerald's scheduling order (as well as Judge Rosenbluth's order quashing the subpoenas). The subpoenas must therefore be quashed once again.

Importantly, Plaintiff cannot argue that this is simply a "trial subpoena" and therefore not subject to the discovery cutoff. Although a Rule 45 subpoena may be used against a party opponent, that subpoena "**is untimely if filed and served following the close of the discovery period**." Mortgage Information Services, Inc. v. Kitchens, 210 F.R.D. 562, 563 (W.D.N.C. 2002) (emphasis added). As one court in the Ninth Circuit has explained:

> Rule 45 Subpoenas, which are intended to secure the pre-trial production of documents and things, **are encompassed with the definition of discovery**,' as enunciated in Rule 26(a)(5) and, therefore, **are subject to the same time constraints** that apply to all of the other methods of formal discovery." *Marvin Lumber* [*and Cedar Co. v. PPG Indus., Inc.*], 177 F.R.D. [443], 443 [D. Minn. 1977]. "[T]o allow a party to continue with formal discovery – that is, discovery which invokes the authority of the Court whether in the guise of Rule 45, or any of the other discovery methods recognized by Rule 26(a)(4), after the discovery deadline unnecessarily lengthens [the] discovery process, and diverts the parties' attention, from the post-discovery aspects of preparing a case for Trial[.]" *Id.* at 445; . . . .
>
> Columbia Park Golf Course v. City of Kennewick (E.D.Wash. Apr. 21, 2008, No. CV-07-5054-EFS) 2008 U.S.Dist.LEXIS 140126, at *3-4.)

/ / /

Memorandum of Points & Authorities ISO Cohen Parties' Ex Parte Application to QUASH Plaintiff's Subpoenas, INVOLUNTARILY DISMISS Plaintiff's Action, and Determine Subject Matter Jurisdiction

**6.      Plaintiff DISOBEYED Judge Rosenbluth, who ALREADY QUASHED These Subpoenas More than a Year Ago.**

As noted above, these subpoenas were **already quashed by the Judge Rosenbluth** over a year-and-a-half ago. Plaintiff *could have* – but did not – seek permission of the Court for additional time to complete discovery. **Plaintiff chose not do so.** Thus, nothing has changed that would justify trying to essentially re-issue the subpoenas after the Court already ordered Plaintiff to withdraw the subpoenas. The Court should therefore deny **Plaintiff's brazenly defiant effort to <u>circumvent</u> Judge Fitzgerald's scheduling order and Judge Rosenbluth's quash order.**

## II.      THE COURT SHOULD INVOLUNTARILY DISMISS PLAINTIFF'S ACTION.

Plaintiff's decision to defy both Judge Fitzgerald and Judge Rosenbluth and to act in contravention of the Federal and Local Rules is **not an aberration but rather an exemplar** of Plaintiff's behavior during this now nearly six-year-long litigation. Plaintiff has repeatedly exhibited a callous disregard for this Court's orders, directives, procedures, processes, calendar, and rules, as well as an utter disdain for the rights of the other parties. Plaintiff's insolence and indifference betrays an unrepentant willingness to do whatever it takes turn what are really allegations of a **"modest amount" ($461,718.13 USD) of damages into an 8-figure windfall.** *See Transcript dated March 23, 2023*, 2:16-3:7, attached as Exhibit 7 to *Patel* ("*3-23 Transcript*") (emphasis added). Cohen Parties sincerely worry that if Plaintiff is not stopped now, Plaintiff will only be emboldened and continue to engage in its unfair conduct. **At some point, enough must be enough.**

The Cohen Parties respectfully submit that this point has arrived. The Court should involuntarily dismiss the action for **failure to prosecute**. Additionally, or alternatively, the Court should involuntarily dismiss the action based on Plaintiff's **numerous violations of this Court's orders and directives, pretrial procedures, and the federal and local rules.**

/ / /

**A.**   ***This Court is Empowered to Involuntarily Dismiss an Action for Failure to Prosecute and/or for Violations of Orders, Directives, Rules, or Pre-Trial Procedures.***

The *Federal Rules of Civil Procedure* **explicitly authorizes** the Court to involuntarily dismiss an action "[i]f the plaintiff fails to prosecute **or** to comply with these rules or a court order . . . ." FRCP 41(b) (emphasis added). Among other circumstances, a failure to prosecute occurs when a plaintiff's conduct "hampers expeditious resolution of litigation and inhibits the Court's ability to manage its docket." Vartanian v. United Collections Bureau (C.D.Cal. July 20, 2012, No. CV 12-456-MWF (PJWx)) (**Fitzgerald, J.**) 2012 U.S.Dist.LEXIS 102076, at *1-3.). Such conduct could include, but would not be limited to, instances in which a "[p]laintiff [has] failed to follow multiple Court directives aimed at the timely prosecution of his case . . . ." Id. Importantly, a failure to prosecute does not necessarily require the violation of a court order to justify an involuntary dismissal. FRCP 41 (using the disjunctive "or"). Conversely, a violation of a court order, directive, or federal rule need not be based on a failure to prosecute to justify an involuntary dismissal; either alone is sufficient. Id; see also Ferdik v. Bonzelet, 963 F.2d 1258, 1260 (1992) (holding that a district court may dismiss an action for failure to comply with any order of the court).

The Court's authority under FRCP 41(b) is **augmented by its inherent powers**. Link v. Wabash Railroad Co., 370 U.S. 626, 629-30 (1962) (a district court has the inherent power to involuntarily dismiss a case *sua sponte*). Specifically, **a federal court possess the inherent power "to manage their own affairs so as to achieve the orderly and expeditious disposition of cases."** Id. (emphasis added). "This authority is necessarily incident to the judicial power granted under Article III of the Constitution and includes the power of the court to control its docket by dismissing a case as a sanction for a party's failure to obey court orders or rules." Santamaria v. Todd Ins. Agency (E.D.Tex. 2005) 231 F.R.D. 246, 248 (citing Woodson v. Surgitek, Inc., 57 F.3d 1406, 1417 (5th Cir. 1995).)

/ / /

Consequently, a party seeking involuntary dismissal is not limited to violations of court orders, directives, or the federal rules alone, but may even seek dismissal on the basis of violations of local rules, pretrial procedures, or other forms of misconduct that the Judge finds to warrant involuntary dismissal. <u>Thompson v. Housing Authority of Los Angeles</u> (9th Cir. 1986) 782 F.2d 829, 831-832 ("We have **repeatedly upheld** the imposition of the sanction of dismissal for failure to comply with pretrial procedures mandated by local rules and court orders." [emphasis added].); <u>Chambers v. NASCO, Inc.</u>, 501 U.S. 32, 47 (1991) (holding that the Court possesses the inherent authority to manage its own proceedings and control the conduct of those appearing before them). Circuit courts are largely deferential to the lower court's wisdom as to the propriety of issuing an order involuntarily dismissing an action. <u>Santamaria v. Todd Ins. Agency</u> (E.D.Tex. 2005) 231 F.R.D. 246, 248 (citing <u>Chambers</u>, <u>supra</u>, 501 U.S. at 44) ("Involuntary dismissal of a case is entrusted to the discretion of the trial court and will only be reversed for abuse of discretion.").

**B.**   ***Under the Present Circumstances, It Is Procedurally Appropriate for the Court to Involuntarily Dismiss Plaintiff's Action on the Basis of an Ex Parte Application Instead of a Noticed Motion.***

Typically, a defendant seeking an order to involuntarily dismiss a plaintiff's action under FRCP 41(b)[1] must do so by a *noticed* motion. FRCP 41(b) ("If the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant **may move** to dismiss the action or any claim against it." [emphasis added]). Notwithstanding, a court has the power to afford relief under FRCP 41(b) by way of an ***ex parte* application** in certain circumstances. Specifically, *ex parte* relief is justified when:

/ / /

---

[1] Cohen Parties note that there is no similar restriction on a defendant's ability to seek involuntary dismissal under the Court's inherent power.

(1)     '[T]he evidence must show that the moving party's cause will be irreparably prejudiced if the underlying motion is heard according to regular noticed motion procedures,' and

(2)     '[I]t must be established that the moving party is without fault in creating this crisis that requires ex parte relief, or that the crisis occurred as a result of excusable neglect."

<u>Hooman Auto. Grp. v. Ill. Union Ins. Co.</u> (C.D.Cal. Mar. 17, 2020, No. CV 19-5904-MWF (PLAx)) (**Fitzgerald, J.**) 2020 U.S.Dist.LEXIS 212988, at *2.)

Here, the evidence presented in this application establishes that both of these circumstances exist.

FIRST, requiring the Cohen Parties to bring this request through the regular noticed motion procedure would require them to set a hearing for at least **28 days out**, i.e. for May 8, 2023 or later. L.R. 6-1. This would be impossible, however, because trial is slated to begin on April 19, 2023, which is only **9 days away**. Thus, the Cohen Parties will suffer irreparable prejudice if this *ex parte* is not considered, as the trial may well be over by that point and, even if trial is still ongoing, the Cohen Parties' will have suffered damage with respect to the portion of the trial that it had to participate in and the future unfair efforts and violations by Plaintiff that the Cohen Parties anticipate Plaintiff is likely to employ.

SECOND, the Cohen Parties are free of fault with respect to the crisis that led to the Cohen Parties to seek an order involuntarily dismissing the action. As explained further in Section (B) of this Part II, *infra*, two of the events that this application is premised did not occur until **April 3, 2023** (the subpoenas), and **April 6, 2023** (Plaintiff's most recent brief). There was simply no way that the Cohen Parties could foresee that Plaintiff would attempt to circumvent the courts orders by filing the subpoenas or its directives in filing its most recent brief (*See* Part II, Section (B)).

/ / /

Memorandum of Points & Authorities ISO Cohen Parties' Ex Parte Application to QUASH Plaintiff's Subpoenas, INVOLUNTARILY DISMISS Plaintiff's Action, and Determine Subject Matter Jurisdiction

Thus, this *ex parte* application is the **direct result of a crisis created by Plaintiff and Plaintiff alone**. The Court may therefore involuntarily dismiss the action under FRCP 41(b) via this *ex parte* Application.[2]

**C.     *Plaintiff Failed to Prosecute and/or Violated Court Orders and Directives, the Federal and Local Rules, and Pre-Trial Procedures.***

There is ample evidence that would enable this Court to involuntarily dismiss Plaintiff's action. In this Section, the Cohen Parties provide a (**non-exhaustive**) account of Plaintiff's conduct on which the Court can find either or both a failure to prosecute and/or violations of court orders, directives, the federal and local rules, pre-trial procedures, and/or other conduct.

**1.     During the Early Stages of this Case, Plaintiff Violated Various Discovery Rules.**

*See* Order of Judge Rosenbluth, dated July 13, 2021 ("JPR Order 1") (referring to past instances of Plaintiff failing to comply with the rules in connection with a prior discovery proceeding before Judge Rosenbluth).

/ / /

---

[2] Assuming, arguendo, that the Court believes it cannot involuntarily dismiss the Plaintiff's action on the basis of the *ex parte* application, the Court could nevertheless rely on the same reasons recited herein to involuntarily dismiss the action. "It is well-established that a district court may *sua sponte* dismiss an action where the plaintiff has failed to comply with a court order and/or unreasonably failed to prosecute." Mack v. Perez (C.D.Cal. May 11, 2020, No. 2:18-cv-09095-MWF-JC) (**Fitzgerald, J.**) 2020 U.S.Dist.LEXIS 83671, at *3-4 (citations omitted).

**2.**   **On March 30, 2021, Plaintiff REFUSED TO COMPLY with Local Rule 83-2.7, and then RETALIATED Against the Cohen Parties for their Good Faith Effort to Comply with that Rule.**

In approximately March 2021, a motion for judgment on the pleadings filed by Cohen Parties against Beatbox had been under submission for 120 days. *Patel* ¶ 20. The Local Rules impose a "duty" on all attorneys who have a motion (or who are opposing a motion) that reaches this time period:

> **Duty of Counsel.** If the Court does not render and file its decision on a submitted matter within 120 days of submission, all counsel shall, within 130 days after the matter is submitted for decision, file with the Court a joint request that such decision be made without further delay. A copy of such request shall be sent to the Chief Judge.

Local Rule 83-9.2

While the Cohen Parties did not want to burden the court by filing this notice, the Cohen Parties nevertheless plainly understood that the rule is mandatory. Id. ("all counsel **shall** . . . .file"); *Patel* ¶ 21. In the Cohen Parties' good faith effort to comply with the rule, they contacted Plaintiff and asked it to cooperate with them satisfy the local rule. *Patel* ¶ 22. Plaintiff refused to comply with the rule. *Id.* ¶ 23. The fact that Plaintiff felt **"presumptuous" enough to casually disregard a Local Rule** as though it were a mere suggestion was shocking and left the Cohen Parties in a difficult position. Id. Therefore, the Cohen Parties filed a unilateral notice in our good faith effort to comply with the rule.

Incredulously, Plaintiff **retaliated** against the Cohen Parties by immediately filing a defective motion for sanctions that Plaintiff had previously appeared to have abandoned. Id. While the motion had no prospect for success because of its plain defects, Cohen Parties were forced to expend substantial resources to defend the motion. Id. Judge Fitzgerald later denied the sanctions motion. Id.

///

3. **On July 13, 2021, Judge Rosenbluth IMPLICITLY SANCTIONED Plaintiff Based on Its HISTORY OF NON-COMPLIANCE with Court Directives and Rules.**

Specifically, Plaintiff moved to compel responses from the Cohen Parties, but did so without comply with Local Rule 37-2.1. Later, they further violated Local Rule 37 by filing a sur-memorandum for which the Cohen Parties had no opportunity to respond. At the hearing, Judge Rosenbluth ruled as follows as to the motion:

> This motion is DENIED because, as Defendants point out, it does not comply with Local Rule 37-2.1. The motion never identifies which discovery requests are in dispute, much less quote them as well as the opposing party's response, as the rule requires. Plaintiff attempts to remedy the deficiency in its supplemental memorandum, but that is insufficient because Defendants never had the opportunity to meaningfully respond to the motion. **Given that this is not the first time Plaintiff has failed to follow court rules and deadlines in seeking to compel discovery, the Court declines to expend additional resources to remedy the situation.**

JPR Order 1 (emphasis added).

4. **On August 5, 2021, Judge Rosenbluth Quashed Plaintiff's Subpoenas on the Financial Institutions and Expressly WARNED Plaintiff that Issuing Such Subpoenas INDISPUTABLY VIOLATED Judge Fitzgerald's Scheduling Order.**

As noted above, Plaintiff attempted to subpoena Cohen Parties' financial documents, but only 10 days before the close of discovery. The Labrador Defendants requested an informal discovery conference, which took place on August 5, 2021. At the conference, Judge Rosenbluth quashed the subpoenas, and warned Plaintiff that her effort to subpoena these documents were **indisputably in violation of Judge Fitzgerald's scheduling order.** Order, Dated August 5, 2021 (JPR Order 2), attached as Exhibit 9.

/ / /

**5.      In January 2023, Plaintiff Violated Local Rule 16-7 By Surreptitiously ALTERING a Joint Document Without Telling the Other Parties that It Was Doing So.**

Local Rule 16-7 provides:

A Final Pretrial Conference Order shall be prepared by plaintiff's counsel . . . . It is the duty of all counsel to cooperate with plaintiff's counsel in the preparation and submission of the Final Pretrial Conference Order." L.R. 16-7.

Counsel for all parties worked together to draft the document. Then, Plaintiff changed portions of the Cohen Parties' language **without seeking their authorization or even informing them.** *See* ECF 341.

**6.      On March 23, 2023, Judge Fitzgerald CHASTISES Plaintiff, Warning It that It Had Become Too PRESUMPTUOUS, and Was Imposing A Burden on the Court.**

At the March 23, 2023 hearing, Judge Fitzgerald addressed Plaintiff's secret modification of the joint documents, as well as the significant burden that Plaintiff was putting on the Court's resources:

Ms. Blaise, it is not for you to decide what is going on that list. I must say, Ms. Blaise, you have really become too **presumptuous** in this case. You are being **presumptuous of my authority to decide what my orders mean, and how they will be applied, and you worse, far worse in my mind is that you are being presumptuous to my staff, particularly Ms. Sanchez on the rather peremptory way you are bombarding her with e-mails, and demanding immediate responses from her.** Ms. Sanchez technically doesn't even work for me, she works for the Clerk of Court. She is provided by, with money provided by Congress from the taxpayers to make sure that everything is scheduled well. **And for one case or one party to act as if she is that party's legal assistant is not appropriate.**

3-23 Transcript at 2:1-15 (emphasis added).

The Cohen Parties had hoped that Judge Fitzgerald's strong language would chasten Plaintiff and lead to future compliance with rules and fair play in this litigation. As

- 19 -

Memorandum of Points & Authorities ISO Cohen Parties' Ex Parte Application to QUASH Plaintiff's Subpoenas, INVOLUNTARILY DISMISS Plaintiff's Action, and Determine Subject Matter Jurisdiction

shown below, **the Cohen Parties were mistaken in assuming that Plaintiff would respect the directives of this Court.**

       **7.** **On April 3, 2023, Plaintiff's Subpoenaed the Financial Institutions Despite Judge Fitzgerald's Scheduling Order and Judge Rosenbluth's Quash Order.**

As addressed previously, Plaintiff attempted to circumvent the scheduling order by issuing subpoenas more than a year after discovery closed. Further, these were the same institutions that Judge Rosenbluth had **ALREADY QUASHED.**

       **8.** **After Judge Fitzgerald Warned the Parties that He Did Not Want Extensive Argumentative Briefing on Issues to Be Decided, Beatbox Filed a 19 Page Brief Just Days Before the Hearing.**

At the March 27, 2023 hearing, Judge Fitzgerald ask the parties to provide a list of legal issues, but explicitly warned the parties he did not want extensive briefing and argument.

> Why don't you then propose, in addition to submitting with the list of how you believe -- how you would like to see those issues further -- **I mean, we aren't going to have some full-blown thing of 25 pages**. I mean, we've got to get it done before the 18th.

3-27 Transcript at 16:20-24 (emphasis added).

On the Thursday before the hearing referenced, Plaintiff filed a **nineteen (19) page brief** arguing every issue at play, in a direct **rebuke to this Court's authority.**

      **D.** ***Four of the Five Dismissal Factors <u>Strongly</u> Support Dismissal.***

As the preceding Section establishes, Plaintiff has clearly failed to prosecute its case and has repeatedly violated Court orders. Consequently, Plaintiff has engaged in conduct that brings it within the scope of a Section 41(b) dismissal or a dismissal under the Court's

- 20 -

inherent authority. Notwithstanding, the Court cannot dismiss the action until it considers the following factors: "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the defendants; (4) the public policy favoring disposition of cases on their merits and (5) the availability of less drastic sanctions." *Id.* (quoting *Henderson v. Duncan*, 779 F.2d 1421, 1423 (9th Cir.1986)). Dismissal is appropriate "**where at least four factors support dismissal . . . or where at least three factors strongly support dismissal**." *Hernandez v. City of El Monte*, 138 F.3d 393, 399 (9th Cir. 1998) (emphasis added) (internal citation and quotations omitted).

Here, four of the five factors weigh **strongly** in support of dismissal.

### 1.     The Public's Interest in the Expeditious Resolution of Litigation Strongly Favors Dismissal.

This factor strongly favors dismissal as it would result in the conclusion of the action. Further, this case has been now pending for nearly six years in this court, and before that was in New Zealand courts since approximately 2014/2015.

### 2.     The Court's Need to Manage its Docket Strongly Favors Dismissal.

This factor weighs strongly in favor of dismissal. As Judge Fitzgerald has noted, this Court has a heavy docket and there are multiple trials that could proceed – and which would proceed smoothly – if this case were not clogging up the Court.

> And also, **there are three other cases that want your trial date.** One of which is **a criminal case,** which I'm taking actually the **somewhat extraordinary step of shopping that around to another -- to other judges, so we can keep your case.** The other **two cases are very important civil cases that counsel get along well,** the issues were clearly raised on summary judgment, summary judgment obviously was denied. And so they want to go, they would be happy to go, it would be a pleasant trial, it wouldn't be too long, the jury would understand what they wanted to do. I nonetheless made a decision that **because of the age of this case**, and because of its complexity, it was appropriate to let -- and the fact that there are people involved from abroad, that it was appropriate to give you a

Memorandum of Points & Authorities ISO Cohen Parties' Ex Parte Application to QUASH Plaintiff's Subpoenas, INVOLUNTARILY DISMISS Plaintiff's Action, and Determine Subject Matter Jurisdiction

firm trial date and keep it and I'm doing my best to do that. **But I feel like I'm the only one who is.**

3-23 Transcript 3:23-4:14 (emphasis added).

### 3.       The Risk of Prejudice to the Defendants Strongly Supports Dismissal.

This factor also strongly supports dismissal. The Cohen Parties have been forced to constantly scramble in this case to respond to Plaintiff's dilatory actions and frivolous filings, costing it substantial resources.

### 4.       The Unavailability of Lesser Sanctions Strongly Supports Dismissal.

The unviability of lesser sanctions strongly supports dismissal. After all, the Court has repeated castigated Plaintiff for its violations of court orders and rules and has dismissed motions of Plaintiff's for that reason, but Plaintiff nevertheless continues to violate rules, orders, and directives. This Court has patiently given Plaintiff every chance it could give it to comply with the Court's orders, directives, and rules, and the Court should now conclude that **enough must be enough**.

### 5.       The Public Policy Favoring Resolution on the Merits Always Weighs Against Dismissal, but Is Insufficient in this Case.

Notwithstanding, it is sufficient that at least three (and in fact all four) of the other factors weight strongly in favor of dismissal, or, alternatively, that the four factors at least support dismissal.

## III.    THE COURT WILL (LIKELY) LOSE SUBJECT MATTER JURSIDICTION.

A court is always under a duty to investigate its own subject matter jurisdiction. As one District Court has succinctly summarized:

- 22 -

Subject matter jurisdiction can never be forfeited or waived because it involves **the court's power to hear a case.** *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514, 126 S. Ct. 1235, 163 L. Ed. 2d 1097 (2006) (citing *United States v. Cotton*, 535 U.S. 625, 630, 122 S. Ct. 1781, 152 L. Ed. 2d 860 (2002)). **"[N]o action of the parties can confer subject-matter jurisdiction upon a federal court."** *Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702, 102 S. Ct. 2099, 72 L. Ed. 2d 492 (1982). This rule is "**inflexible and without exception.**" *Id.* (quoting *Mansfield, C. & L. M. R. Co. v. Swan*, 111 U.S. 379, 382, 4 S. Ct. 510, 28 L. Ed. 462 (1884)). "Thus, the consent of the parties is irrelevant [and] principles of estoppel do not apply." *Id.* (citation omitted); *see also* 13 Fed. Prac. & Proc. Juris. § 3522 (3d ed., April 2021 Update) (stating that the "parties cannot, waive lack fo subject matter jurisdiction by express consent or by conduct, or even by estoppel"). Further, estoppel does not apply even though dismissal for lack of subject matter jurisdiction "result in the waste of judicial resources and may unfairly prejudice litigants." *Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 434, 131 S. Ct. 1197, 179 L. Ed. 2d 159 (2011). **Indeed, "a party, after losing at trial, may move to dismiss the case because the trial court lacked [\*5]  subject-matter jurisdiction . . . . even if the party had previously acknowledged the trial court's jurisdiction."** *Id.* at 434-35 (citation omitted).

*Hosp. Mgmt. v. Preferred Contractors Ins. Co.* (D.Or. Mar. 30, 2022, No. 3:18-cv-452-YY) 2022 U.S.Dist.LEXIS 58995, at \*4-5 (emphasis added).

Here, if Beatbox's complaint is dismissed, then the existence of subject matter jurisdiction turns on whether Labrador has a claim against Beatbox. As this Court knows and the Cohen Parties therefore will not re-argue, the Cohen Parties contend that Labrador does not have any claim because it was required to file the claims in 2017 but did not, and Labrador never sought permission of this Court to amend, instead hijacking Plaintiff's first amended complaint which, to Plaintiffs credit, it sought permission for. **This same reasoning applies equally to Labrador's purported counterclaim against Beatbox; in other words, there is no counterclaim against Beatbox.**

Assuming, *arguendo*, that the Court accepts this argument and enforce FRCP 13, 15, and 16, then the only part of this proceeding that would remain is Cohen's own cross-claim against Labrador. That claim, however, is **between two citizens of the State of California**, and therefore does not qualify for diversity jurisdiction. Thus, the Court would have to dismiss the cross-claim for lack of subject matter jurisdiction.

IV.   **CONCLUSION**

For the foregoing reasons, this Court should quash the subpoenas issued on April 3, 2023, and involuntarily dismiss Plaintiff's action. If the Court dismisses the action involuntarily, the Court should also consider the subject matter jurisdiction question that would arise, and decide whether Cohen's Cross-Claim and this proceeding as a whoel needs to be dismissed.

DATED: APRIL 11, 2023

**JACOBSON & ASSOCIATES**

By:

Daniel Jacobson
Ronak Patel
Attorneys for Defendant/Cross-Claimant Michael Cohen and Defendant MCPC Holdings, LLC

**CERTIFICATE OF COMPLIANCE (LR 11.6-2)**

The undersigned, counsel of record for Defendant FLOYD BRADFORD III, certifies that this brief contains 5,256 words, which complies with the word limit of L.R. 11-6.1.

DATED: APRIL 11, 2023

Ronak Patel

Memorandum of Points & Authorities ISO Cohen Parties' Ex Parte Application to QUASH Plaintiff's Subpoenas, INVOLUNTARILY DISMISS Plaintiff's Action, and Determine Subject Matter Jurisdiction