| | |
|---|---|
| 1 10:07:48 | THE CLERK:  Calling item number one, case number |
| 2 10:07:54 | CV-17-6108-MWF, Beatbox Music Party limited versus Labrador |
| 3 10:08:03 | Entertainment, Inc., et al. |
| 4 10:08:06 | Counsel state your appearance for the record, |
| 5 10:08:08 | beginning with counsel for the plaintiffs. |
| 6 10:08:10 | MS. BLAISE:  Heather Blaise, BLAISE, I'm joined by |
| 7 10:08:16 | Thomas Nitschke, NITSCHKE on behalf of plaintiff. |
| 8 10:08:22 | THE COURT:  Good morning. |
| 9 10:08:23 | MR. JACOBSON:  Good morning, Your Honor, Dan |
| 10 10:08:25 | Jacobson, I represent Michael Cohen and MCPC holdings LLC. |
| 11 10:08:32 | MR. ROSNER:  Good morning, Your Honor.  Douglas J |
| 12 10:08:35 | Rosner, ROSNER, representing Labrador defendants. |
| 13 10:08:44 | THE COURT:  Good morning, all counsel.  We are here |
| 14 10:08:50 | for the final pretrial conference order.  And that raises a |
| 15 10:08:58 | number of issues, of course including the motions in limine. |
| 16 10:09:02 | Let me try to deal with some broader issues first. |
| 17 10:09:07 | Based on the dislike that counsel have for each other, I'm |
| 18 10:09:19 | questioning whether this case is going to be ready to go to |
| 19 10:09:22 | trial by April 18th. |
| 20 10:09:27 | And the -- there is several reasons for that, |
| 21 10:09:32 | including just these disputes about the jury instructions. |
| 22 10:09:39 | To accomplish something concrete this morning, the motion -- |
| 23 10:09:44 | the ex parte application that was filed last night, I think |
| 24 10:09:50 | will be made moot, because what I'm going to order the |
| 25 10:09:54 | parties to do is prepare one jury -- I mean one exhibit list. |

1 10:10:03   It is not determining whether something will be admitted.

2 10:10:06   Ms. Blaise, it is not for you to decide what is going on that

3 10:10:10   list.  I must say, Ms. Blaise, you have really become too

4 10:10:13   presumptuous in this case.  You are being presumptuous of my

5 10:10:17   authority to decide what my orders mean, and how they will be

6 10:10:21   applied, and you worse, far worse in my mind is that you are

7 10:10:26   being presumptuous to my staff, particularly Ms. Sanchez on

8 10:10:31   the rather peremptory way you are bombarding her with

9 10:10:35   e-mails, and demanding immediate responses from her.

10 10:10:39        Ms. Sanchez technically doesn't even work for me,

11 10:10:43   she works for the Clerk of Court.  She is provided by, with

12 10:10:47   money provided by Congress from the taxpayers to make sure

13 10:10:51   that everything is scheduled well.  And for one case or one

14 10:10:57   party to act as if she is that party's legal assistant is not

15 10:11:05   appropriate.

16 10:11:05        However, I'm sure we will get through that.  But in

17 10:11:12   trying to deal with these issues, it also is frankly, and

18 10:11:16   also then dealing with the trifurcation issue, it makes me

19 10:11:24   question why this case really is going to trial.

20 10:11:26        The New Zealand damages, as I calculate them, was

21 10:11:31   $461,718.13 if one applied the exchange rate for today.

22 10:11:40        It's interesting that the bulk of those was arising

23 10:11:44   from the attorney's fees, and it just seems to me that the

24 10:11:47   parties are recreating history here, where it's not as if the

25 10:11:54   actual damages over which the parties are fighting and what

1 10:11:58   is ultimately an indemnification case is in the millions or

2 10:12:04   the tens of millions of dollars, the sort of case that one

3 10:12:08   typically sees in the northern district of Illinois or the

4 10:12:11   Central District of California.  But rather, it just a rather

5 10:12:16   modest amount.  And the reason that I think it's become worth

6 10:12:20   fighting over is because of the way that counsel have chosen

7 10:12:23   to represent their clients.

8 10:12:26        And so in a sense what we are arguing about is the

9 10:12:28   fact that the lawyers are arguing.  And it's digging a hole

10 10:12:34   that just gets deeper and deeper and therefore the parties

11 10:12:36   feel that it can't be settled.  It just really is just not

12 10:12:40   making a lot of sense.

13 10:12:42        But ultimately, I, that is up for you to decide.  I

14 10:12:47   don't push settlement.  I know some judges do.  I certainly

15 10:12:52   understand why that would be.  But here, it's ultimately, if

16 10:12:58   the parties don't want to settle, they don't want to settle,

17 10:13:01   they have a constitutional right under the Seventh Amendment

18 10:13:03   to have a trial, and you will get a trial.

19 10:13:06        But it has to be a trial that the jury understands.

20 10:13:09   If every question draws an objection, if every exhibit draws

21 10:13:13   an objection, then it just will be impossible to try this

22 10:13:17   case within a relatively reasonable amount of time.

23 10:13:22        And also, there are three other cases that want your

24 10:13:29   trial date.  One of which is a criminal case, which I'm

25 10:13:34   taking actually the somewhat extraordinary step of shopping

1 10:13:39   that around to another -- to other judges, so we can keep

2 10:13:45   your case.

3 10:13:45         The other two cases are very important civil cases

4 10:13:50   that counsel get along well, the issues were clearly raised

5 10:13:53   on summary judgment, summary judgment obviously was denied.

6 10:13:57   And so they want to go, they would be happy to go, it would

7 10:14:03   be a pleasant trial, it wouldn't be too long, the jury would

8 10:14:06   understand what they wanted to do.  I nonetheless made a

9 10:14:09   decision that because of the age of this case, and because of

10 10:14:13   its complexity, it was appropriate to let -- and the fact

11 10:14:16   that there are people involved from abroad, that it was

12 10:14:23   appropriate to give you a firm trial date and keep it and I'm

13 10:14:26   doing my best to do that.  But I feel like I'm the only one

14 10:14:28   who is.

15 10:14:29         So, look, this part is separate from a certain

16 10:14:35   repeculiar.  I'm genuinely asking if you really think it

17 10:14:39   would be cheaper, easier to sort out some of these issues and

18 10:14:43   then get the case ready for the jury, then let's decide that.

19 10:14:47   Because it really then, I said, these other cases would be

20 10:14:52   thrilled to keep this trial date.

21 10:14:56         So what I don't want -- look, if you settled on the

22 10:14:59   morning of trial, then that is what you do.  I wouldn't -- I

23 10:15:02   would be a little annoyed, but so what, lawyers annoy me

24 10:15:08   every day, and judges you know you every day.  What I don't

25 10:15:14   want is not that there is a genuine settlement on the merits,

1 10:15:17   but it just becomes such a mess that there is no choice but

2 10:15:21   to continue it, and then I'm left with this week, these two

3 10:15:24   weeks which could have been used on the other cases, which I

4 10:15:29   know their lawyers and clients would have appreciated.

5 10:15:32         So that is kind of my big issue number one.

6 10:15:38         Issue number two then not surprisingly is the motion

7 10:15:43   to trifurcate.

8 10:15:45         Again, speaking generally, on the issues that are

9 10:15:50   being raised with me, there is always a certain tension.  On

10 10:15:53   the one hand the -- when the Supreme Court adopted the

11 10:15:58   recommendations of the rules committee of the judicial

12 10:16:02   conference, and rewrote the Federal Rules of Civil Procedure,

13 10:16:08   a lot of emphasis was placed on the final pretrial conference

14 10:16:13   and the final pretrial order.

15 10:16:15         And that is crystalized, as all of you know, and as

16 10:16:19   you've quoted to me, that it's superseding the complaints and

17 10:16:23   the answers and the counterclaims and the cross claims and

18 10:16:26   their answers and all of that.

19 10:16:27         So it usually is somewhat of an after thought, the

20 10:16:32   parties don't spend a lot of time with it.  That can be good

21 10:16:35   or bad, I understand it, but of course I sometimes wish that

22 10:16:40   they spent more out of fairness I should probably at times

23 10:16:44   spend more.

24 10:16:45         But if everybody is in agreement, it's easy for me

25 10:16:49   to rubber stamp it.  Here, of course, there are real

1 10:16:51    disputes, so that is not going to be a possibility.

2 10:16:54         But what that gives rise to is that despite the fact

3 10:16:58    that the deadline for summary judgment has passed, it still

4 10:17:02    is incumbent on all of us, and ultimately on me to have this

5 10:17:08    case be made trial ready.

6 10:17:11         And if there is some issue which simply is not a

7 10:17:16    jury issue, yeah, we can -- I can let it slide, I could maybe

8 10:17:20    even grant a directed verdict if it came to that.  But it

9 10:17:24    really -- it really is more fair to the jury to go ahead and

10 10:17:30    of try to deal with those issues.

11 10:17:33         However, it is not appropriate to deal with those

12 10:17:37    issues by way of a motion in limine.

13 10:17:40         I mean, I always use this as an example for lawyers

14 10:17:46    or for my law clerks as the classic thing, because it should

15 10:17:50    be so self evident that it's the case, but here, it's

16 10:17:53    actually we are coming close to it actually not being a

17 10:17:57    warning, but it being true, which is you simply can't have a

18 10:18:00    motion in limine which says exclude all extrinsic evidence

19 10:18:05    because of the contract is an integrated document which

20 10:18:10    should be interpreted as a matter of law.  That is clearly

21 10:18:14    something that should be decided on summary adjudication.

22 10:18:17         I say that because while there is that tension, I

23 10:18:22    don't think the motion to trifurcate falls on that.  I think

24 10:18:25    it is an excellent example of what should be decided now, and

25 10:18:29    have that reflected in the final pretrial conference order.

1 10:18:34          The point, though, is what I think is interesting

2 10:18:38   here, and it could determine a lot, and I think it might cut

3 10:18:40   down on a number of the disputes that are arising, is, are

4 10:18:47   there things which both parties agree should be interpreted

5 10:18:52   as a matter of law?  And if that is the case, then I'll do

6 10:18:56   that.

7 10:18:56          But the following has to take place, and I'll even

8 10:19:02   do it as quickly as we can, while giving you and keeping the

9 10:19:09   April 18th trial date for the jury, but it has to be with

10 10:19:15   something more I think than this.

11 10:19:17          This, look, if you want me to do it on the basis of

12 10:19:26   what has already been submitted to me in regard to the prior

13 10:19:30   motions, including the summary judgment then that is fine.

14 10:19:35   But I have to make -- it has to be clear to me that that is

15 10:19:40   the case.

16 10:19:41          If you want -- if you believe that the -- there are

17 10:19:46   issues that require live testimony and cross-examination,

18 10:19:50   that is beginning to look like it really ought to be a jury

19 10:19:53   question, but I'll still decide it if you both are

20 10:19:56   stipulating to it, then implicitly, it can be a waiver of

21 10:20:00   your Seventh Amendment rights, and I'm happy to work with you

22 10:20:02   on that if you think it makes more sense given, even under

23 10:20:05   California law, the historic preference for the Judge to

24 10:20:11   interpret a written document.

25 10:20:13          So I -- what I want us to start off doing here is

1  10:20:21   talking about the motion to trifurcate.

2  10:20:26          First of all, which contractual issues do the

3  10:20:30   parties believe should be determined by me and, next, how

4  10:20:36   will I do that?  Will I do that after like listening to a

5  10:20:41   certain witness who doesn't need to be in front of the jury,

6  10:20:43   in that case I'll work with you to have it maybe happen, you

7  10:20:48   know, we could maybe even do it by Zoom or something, and I

8  10:20:51   can give you a ruling, so when the jury shows up on the 18th,

9  10:20:55   it's -- it will be understood that certain issues will have

10 10:21:03   been resolved.

11 10:21:04          Or do you want me to do it in case on what has

12 10:21:10   already been submitted?  And in that case, I'm happy to do

13 10:21:14   that.  But I do think it's fair to all the parties to have

14 10:21:17   some very prompt but further briefing, so everyone feels that

15 10:21:26   they've had a chance to be heard on the precise issues that

16 10:21:32   I'm ruling on.

17 10:21:33          So and then, so let's talk about under the

18 10:21:37   trifurcation the first issues which would be the contract

19 10:21:43   issues, and since it was Labrador that filed the motion, I'll

20 10:21:46   start with Labrador, and then I'll hear from Mr. Cohen, and

21 10:21:50   then I'll hear from Beatbox.  What is it that Labrador is

22 10:21:55   proposing by way of the contract issues being determined

23 10:22:01   first, and is it just the Labrador Beatbox agreement, or are

24 10:22:06   there issues in the Labrador Cohen agreement as well, and in

25 10:22:12   your view, how do you see those issues being resolved?  Is it

10:22:19   based on testimony or is it based on evidence that is already

10:22:24   submitted to me, or would you submit like a further

10:22:28   declaration, I mean, all parties of course would have the

10:22:32   chance to do that.  A couple further declarations with the

10:22:35   additional briefing and then we'll have a hearing and then

10:22:37   I'll rule, or what.

10:22:41        So starting with Labrador, in terms ever the

10:22:43   contract issues, tell me exactly what it is that you want.

10:22:46        MR. ROSNER:  Good morning, Your Honor, and thank

10:22:48   you.  Douglas J Rosner.

10:22:50        I think that the very first issue that I'm concerned

10:22:54   with is what is the predicate.

10:22:57        THE COURT:  All right.  Just a moment, Mr. Jacobson.

10:23:01        MR. ROSNER:  This is Doug Rosner.

10:23:02        THE COURT:  I can understand you, but your voice is

10:23:04   very low, but let me make sure that the court reporter can

10:23:09   hear you as well, madame reporter, can you hear from

10:23:14   Jacobson.

10:23:15        THE CLERK:  Yes, she can of.

10:23:16        MR. ROSNER:  Douglas J Rosner, I will raise my

10:23:19   voice, my apologies.

10:23:20        THE COURT:  I'm sorry, Mr. Rosner.  I misspoke.

10:23:22        MR. ROSNER:  It's okay.

10:23:24        THE COURT:  Excuse me, Mr. Jacobson, I know you are

10:23:25   representing Mr. Cohen.  Anyway, Mr. Rosner, please go ahead.

1  10:23:28          MR. ROSNER:  I'm sorry, Your Honor.  Good morning.

2  10:23:31          Listen, what I'm concerned about is what is the

3  10:23:34  predicate that is going to activate or kick in the

4  10:23:39  indemnification for the Beatbox Labrador agreement, that is

5  10:23:44  my first question.  So what is the definition of

6  10:23:48  infringement, and at what point in time.  Are we talking

7  10:23:50  about an infringement when the cue was sent to Beatbox or are

8  10:23:56  we talking about the actual legal definition of infringement,

9  10:23:59  which really requires a determination by the Court where

10 10:24:02  there has been an infringement on the cue.  That I think is

11 10:24:05  the very first question that I would ask the Court to

12 10:24:07  address.

13 10:24:09      THE COURT:  All right.  And are there other legal

14 10:24:13  issues in the Beatbox Labrador agreement that you believe can

15 10:24:20  be of decided in what you propose to be a phase 1 of three

16 10:24:28  phases?

17 10:24:28          MR. ROSNER:  Yes, Your Honor, I do.  I think that

18 10:24:30  the Court needs to determine actually what the contract

19 10:24:33  means.  So in other words, the scope of the contract.  And

20 10:24:35  then the jury will be allowed to receive evidence of facts in

21 10:24:42  order to determine to what extent, if any, those facts match

22 10:24:46  to the requirements that the Court has set forth as to the

23 10:24:50  meaning of the contract, Your Honor.

24 10:24:52          THE COURT:  And likewise, are there legal issues in

25 10:24:55  the Labrador/Cohen agreement that you believe should be

10:25:00   determined by me in advance of the jury trial on what you

10:25:07   regard as phase 2?

10:25:08          MR. ROSNER:  Yes, Your Honor, I do.  I think we have

10:25:11   the same issue of predicate.  And to what extent does the

10:25:15   indemnification kick in and when?

10:25:20          THE COURT:  All right.  And you are recognizing

10:25:22   there could be different -- you know, I have no idea what the

10:25:25   answer would be, I haven't really thought about it, but it

10:25:28   could be different for the two, you know, the very fact you

10:25:32   are saying that it doesn't necessarily mean -- it may or may

10:25:35   not be the same as to the two agreements, obviously if it's

10:25:39   just a matter of California law applying to certain words, it

10:25:43   would very likely be the same, to the extent there is

10:25:46   something different, than perhaps not.

10:25:48          Now, and in your view, how is it that I should go

10:25:51   about determining those issues?

10:25:54          MR. ROSNER:  I think the first question is, is the

10:25:59   actual language of the agreement, and what is the meaning of

10:26:01   it.  If you will give me an opportunity to pull up the

10:26:03   agreement, I could be very precise with you.  Would that be

10:26:06   okay, Your Honor?

10:26:07          THE COURT:  I have looked at it.  I guess the main

10:26:10   thing now you are saying that just as a matter of law, as a

10:26:13   written document, I should be able to -- I would interpret

10:26:17   that, maybe put it in the pretrial conference order, and then

1 10:26:23  the matters would -- however those -- my rulings would sort

2 10:26:29  themselves out for the remaining matters, it would be what it

3 10:26:31  would be.

4 10:26:32       You are not saying -- what extrinsic evidence, if

5 10:26:35  any, would you say that I should be relying on to do that or

6 10:26:38  is it simply just a matter of law of the words of the

7 10:26:41  document and California case law?

8 10:26:44       MR. ROSNER:  That question is a good question, Your

9 10:26:46  Honor.  And I wrestle with it, because some of it belong --

10 10:26:51  is in approve convince of the Judge, and some of the province

11 10:26:57  of the jury.

12 10:26:58       So let me give you an example, there is language in

13 10:27:00  the contract that refers to the issuing of cues, and the

14 10:27:03  requirement that Beatbox really receives them, and they have

15 10:27:08  been arguing that they are not required to make any promises

16 10:27:13  relative to that.

17 10:27:15       And so what I'm looking for is the Court's

18 10:27:19  interpretation as to what extent, if any, I can bring in

19 10:27:23  other evidence to show conduct, to show course of conduct

20 10:27:27  between the parties, which I believe is appropriate, and to

21 10:27:31  bring in, of course, evidence of industry standards as to

22 10:27:35  what occurs.  And as to what other -- what other conduct has

23 10:27:45  been evidenced with other relationships that are similar to

24 10:27:48  Beatbox that will demonstrate what their duties and

25 10:27:52  responsibilities are under the contract.

1 10:27:54          THE COURT:  Well, let me try to clarify this,

2 10:27:56   because one of the things that I felt I was getting from the

3 10:28:04   briefing on the motion, and perhaps I was wrong, was that to

4 10:28:09   a degree the parties seem to be saying that the matter could

5 10:28:13   be determined by the Court.

6 10:28:14          So are you saying -- if what you want from me is a

7 10:28:18   ruling on whether it's extrinsic evidence can come in, then

8 10:28:23   that is fine.  And, you know, I do that all the time.  But

9 10:28:28   what I was taking away from it is that whether or not certain

10 10:28:34   extrinsic evidence came in, and I was somewhat unsure of what

11 10:28:38   you thought it should be, for Beatbox I thought I was getting

12 10:28:41   the sense that it should just be what has already been

13 10:28:44   submitted in connection with the case, is that I would -- I

14 10:28:49   would not only decide if it should come in, but whatever that

15 10:28:52   extrinsic evidence was, I would use it on the basis for a

16 10:28:55   ruling.

17 10:28:55          If what you are saying is that I decide whether it

18 10:28:58   comes in, but if it does come in, then the jury will hear

19 10:29:02   that evidence and in a sense interpret the contract based on

20 10:29:07   its understanding of the extrinsic evidence, then I get that.

21 10:29:11   But that is not where I thought you were going in the motion.

22 10:29:15          So what is it that the Labrador defendants are

23 10:29:18   really looking for?

24 10:29:21          MR. ROSNER:  Your Honor, I'll defer to your

25 10:29:22   judgment.  If you feel that your -- that your province is

1 10:29:28  better served with the looking at the extrinsic evidence and

2 10:29:34  making that decision, I don't have any problem with that

3 10:29:36  whatsoever.

4 10:29:38      So I'll go either way with you on that.  I really

5 10:29:41  don't -- what I want to do is I want to know what I have to

6 10:29:45  talk about in front of the jury.  That is what I really want

7 10:29:47  to know.  And if that limits -- if that helps define my

8 10:29:53  responsibility to the Court and to my client, then I'm

9 10:29:58  grateful to have your assistance.

10 10:30:00      THE COURT:  All right.  Thank you, Mr. Rosner.

11 10:30:03      Mr. Jacobson, the same questions for you.  How does

12 10:30:07  Mr. Cohen feel about having a phase 1 broadly speaking, you

13 10:30:14  know, whether -- I'm looking on this as I said, as

14 10:30:19  anticipation of April 18th, because I still expect the jury

15 10:30:22  to come in that day, and that is that what in Mr. Cohen's

16 10:30:27  view do you believe should be determined vis-a-vis either of

17 10:30:33  the two contracts, in particular, of course, his own

18 10:30:39  contract, and how in your view should that be done?  Is it a

19 10:30:43  decision on whether there should be extrinsic evidence, and

20 10:30:46  if so, then it comes in and then the jury, you know, in

21 10:30:50  essence, interprets the contract having heard that evidence?

22 10:30:53  Do -- does it mean that you still want me to interpret the

23 10:30:56  contract, but I can look at something other than California

24 10:30:59  case law and the four corners of the document?  And what in

25 10:31:04  your view would be the precise issue under either contract

1 10:31:08   that should be determined by the Court and not by the jury?

2 10:31:13          MR. JACOBSON:  Thank you, Your Honor.

3 10:31:14          Our position is very simple in regard to what you

4 10:31:22   just mentioned, and it boils down to jury instructions.  The

5 10:31:30   vast weight of the law is that if there is no privity, there

6 10:31:38   must -- and there is a breach of contract case based on

7 10:31:44   reliance, then of there has to be reliance.

8 10:31:52          If there is no privity, there has to be reliance.

9 10:31:56   So, one, the Court would decide whether there has to be

10 10:32:05   reliance.  The jury would decide --

11 10:32:09          THE COURT:  Let me just say, Mr. Jacobson, I -- I

12 10:32:12   believe if I'm understanding you correctly, that I already

13 10:32:17   have, but in ruling on the summary judgment motions.  I'm not

14 10:32:21   surprised to see Ms. Blaise nodding along on that.  But the

15 10:32:26   point is I'll listen to you, and if I need to reiterate it,

16 10:32:30   then I will, I think this is kind of being raised in your

17 10:32:35   motion in limine, as well.  But putting that issue aside,

18 10:32:42   which is in fact either has been or would be a legal issue,

19 10:32:48   is there -- just is there anything else in the Cohen/Labrador

20 10:32:54   agreement that you believe should be determined by the Court?

21 10:33:00          MR. JACOBSON:  Let me just quickly say that the law

22 10:33:05   of the case is not meant to be a straight jacket for the

23 10:33:12   Court and that we have --

24 10:33:13          THE COURT:  And that you are correct, Mr. Jacobson.

25 10:33:15          MR. JACOBSON:  Thank you.

1  10:33:16          THE COURT:  Technically speaking the law of the case

2  10:33:18   is when Court of Appeals has ruled on something.  I have the

3  10:33:24   power, in the sense of raw authority to change any ruling

4  10:33:27   that I've made if it really is a genuine ruling, though,

5  10:33:32   there has to be a basis for it and it's not only in the case

6  10:33:35   law, but it's also in the local rules of this court.  It's

7  10:33:37   not something I would do lightly.  And of course I don't mean

8  10:33:40   to suggest that you don't get to reiterate that you think I'm

9  10:33:44   wrong, and that the Ninth Circuit might one day agree with

10 10:33:47   you.

11 10:33:47          But in the meantime, I just want to get here, I

12 10:33:51   understand that that is your view.  I understand that you are

13 10:33:54   maintaining, that that -- you are maintaining that view.  You

14 10:33:59   are answering my question with that view, you raised it in

15 10:34:02   your motion in limine, but now please answer my question,

16 10:34:06   which is apart from that reliance issue, what else is this

17 10:34:09   there in either contract that you believe should be

18 10:34:13   determined by me and not by the jury?

19 10:34:16          MR. JACOBSON:  Thank you, Your Honor.

20 10:34:17          In the Cohen/Labrador contract, the plaintiff,

21 10:34:26   Beatbox, is trying to glom on as a third-party beneficiary.

22 10:34:32   And it's using old California law in order to try to do so.

23 10:34:39          In 2019, the case of the California Supreme Court

24 10:34:43   case of --

25 10:34:46          THE COURT:  Let's not argue -- right now -- just --

AMY C. DIAZ, RPR, CRR OFFICIAL COURT REPORTER

10:34:50   I understand that that is your view.  But are there any other

10:34:53   discreet issues here, DISCRETE discreet, sort of separated

10:35:00   out issues that you believe in regard to the Cohen/Labrador

10:35:05   agreement that the jury -- that I should determine instead of

10:35:08   the jury?

10:35:09        MR. JACOBSON:  Nothing other than the typical law

10:35:19   and let the jury decide on the facts.  So if in due war Dean,

10:35:29   you know, decide that that applies, and then the jury decides

10:35:35   if the facts fit that matter, reliance, decide if of that is

10:35:44   required, let the jury decide if in fact there was reliance.

10:35:50        THE COURT:  All right.  Thank you.

10:35:52        Now, is there anything to the extent that Mr. Cohen

10:35:57   has a dog in that fight, that, do you have any thoughts on

10:36:03   the Beatbox/Labrador agreement, other than to the degree that

10:36:10   I determine that certain words might be interpreted the same

10:36:15   in both agreements under California law.  That I get.  Is

10:36:19   there anything in particular about that agreement that you

10:36:22   want to raise with me right now?

10:36:24        MR. JACOBSON:  We have nothing to do with that

10:36:25   agreement.

10:36:26        THE COURT:  Thank you.

10:36:27        MR. JACOBSON:  And really have no standing to

10:36:30   discuss it.

10:36:31        THE COURT:  All right.  Thank you, counsel.

10:36:33        Ms. Blaise, what, again, I was interested in that

1  10:36:41   there seemed to be at least one thing on which the parties

2  10:36:44   agree, and of course you are reaching the exact opposite

3  10:36:49   conclusion, I get that.  But right now I want to just focus

4  10:36:52   on what it is that Beatbox thinks that I have the authority

5  10:36:55   to do and on what basis I would do that.  You made the

6  10:37:01   helpful, concrete suggestion that I -- that it's okay if I

7  10:37:06   look at some extrinsic evidence, to the extent that it's what

8  10:37:09   we have been using that has been submitted thus far in the

9  10:37:14   case, or at least that is how I understood how you were

10 10:37:17   approaching this part of the motion to trifurcate.

11 10:37:21          So just make it clear to me what it is that Beatbox

12 10:37:25   wants in regard to this.

13 10:37:28          MS. BLAISE:  Okay.  So I want to start with, as far

14 10:37:33   as outside of the four corners of the contract, I haven't

15 10:37:37   suggested that any extrinsic evidence should be -- or that is

16 10:37:42   part of the reason when I received a stack of documents that

17 10:37:44   I had never seen before that included extrinsic evidence that

18 10:37:48   has never been exchanged in discovery, why I was a bit

19 10:37:51   concerned on the eve of the pretrial conference.

20 10:37:56          And for that reason, I think that if you there are

21 10:38:04   some issues that I do think would be.

22 10:38:07          THE CLERK:  Excuse me, Your Honor.  The reporter is

23 10:38:09   not catching all of this.  There is some gaps in the audio

24 10:38:12   for Ms. Blaise.

25 10:38:13          THE COURT:  Ms. Blaise, you did sort of, you stopped

1  10:38:16    for a minute.  If you could try to speak.

2  10:38:20             MS. BLAISE:  How is it now?

3  10:38:23             THE COURT:  There is -- it's really up, I can

4  10:38:25    understand you, but it's important that the court reporter do

5  10:38:27    so, obviously.  Can the court reporter understand what Ms.

6  10:38:30    Blaise is saying.

7  10:38:34             THE CLERK:  She needs to hear a sentence or two.

8  10:38:38             MS. BLAISE:  Okay.  I'm not sure where I cut out, so

9  10:38:44    I can restate it.

10 10:38:51             MR. ROSNER:  I'm seeing a freeze on Ms. Blaise's

11 10:38:53    video, where she is.

12 10:38:55             MS. BLAISE:  May I turn off my camera and see if

13 10:38:58    that helps the audio.

14 10:39:00             THE COURT:  Right now the audio got way better.  So

15 10:39:02    try to be closer to the mic or speak up or something, it just

16 10:39:05    got a lot better right now.

17 10:39:08             MS. BLAISE:  Okay.

18 10:39:09             THE COURT:  I know you feel you are very close to

19 10:39:11    the camera, but.

20 10:39:13             MS. BLAISE:  I'm not sure where I cut off.  So I was

21 10:39:15    going to try to.

22 10:39:16             THE COURT:  You said how you were -- let me just

23 10:39:18    say, you said how you were concerned in regard to the

24 10:39:20    extrinsic evidence that there were new documents submitted,

25 10:39:24    and it's -- to make -- to pause for a moment and I don't want

10:39:30  to get sidetracked, but I will say my concern with the ex

10:39:34  parte application was not that Beatbox was objecting to

10:39:40  something that was being of tendered in violation of rule 26

10:39:48  of the initial disclosures, what I don't want is for Beatbox

10:39:52  or any party to decide of the issue in a sense by not working

10:39:58  together on a coherent, comprehensive and seamless exhibit

10:40:08  list.  I just -- this is really -- I mean, this is like being

10:40:12  in first grade with, like you've got scissors and papers, and

10:40:17  he will mer's glue, okay?  This really is nuts as bolts an it

10:40:22  can possibly be.  I just want a document that has every

10:40:24  document which either party intends to offer.  I'm going

10:40:29  to -- at the end of this I'm going to discuss that with you

10:40:31  further, because we are not going to have 2,000 exhibits.

10:40:34  The jury is not going to look at them.

10:40:36          MS. BLAISE:  I agree, Your Honor, completely.

10:40:37          THE COURT:  But for now, having said that I just

10:40:39  want to assure you, all I want is an answer to the question,

10:40:43  and it is there are two questions, one is what are the issues

10:40:48  that Beatbox, if any, believes can be determined in regard to

10:40:53  the interpretation ever the contract and second, what

10:40:58  extrinsic evidence, if any, does Beatbox believe would be

10:41:01  appropriate for me to use in interpreting the contract?  And

10:41:08  fair to say, like the evidence that was declarations and

10:41:11  exhibits that were filed in support of this exhibit, or I

10:41:14  think that we should have three days to, or on Monday let us

1 10:41:19  file something, whatever, just tell me whatever it is you

2 10:41:21  want, but just be specific about that, and then.

3 10:41:25      MS. BLAISE:  Perfect.

4 10:41:25      THE COURT:  And then I'll know where we are going on

5 10:41:28  this.

6 10:41:28      So first of all, what are the issues in the

7 10:41:34  Beatbox/Labrador contract that Beatbox believes can be

8 10:41:39  determined by me without a jury, whether with extrinsic

9 10:41:44  evidence or not?

10 10:41:45      MS. BLAISE:  So I think that the indemnity, when the

11 10:41:48  indemnity was triggered, as it relates to the

12 10:41:52  Beatbox/Labrador agreement, I think that can be determined by

13 10:41:54  you.  We set that out in our germane issues of law at docket

14 10:41:59  349.

15 10:42:04      THE COURT:  Okay.  What, and I understand that.  And

16 10:42:07  it does seem that everyone is agreeing on that which is

17 10:42:10  great.

18 10:42:10      MS. BLAISE:  I don't think there is any ambiguity.

19 10:42:13      THE COURT:  We don't need to argue it now, Ms.

20 10:42:15  Blaise, I understand your position.

21 10:42:17      MS. BLAISE:  As it relates.

22 10:42:18      THE COURT:  You will have a chance to be heard on

23 10:42:19  that, I just for now, what other issue, other than the

24 10:42:22  indemnity do you believe is in that contract that I can

25 10:42:25  determine as a matter of law?

1 10:42:27          MS. BLAISE:  In that contract what I think you can

2 10:42:32   determine as a matter of law the indemnity and the meaning,

3 10:42:36   the non-ambiguous meaning of any of the language contained in

4 10:42:42   the contract that should be determined as a legal issue as

5 10:42:46   opposed to -- and I don't think that there has been a finding

6 10:42:49   of ambiguity to let in any extrinsic evidence as it relates

7 10:42:54   to that.

8 10:42:54          THE COURT:  And so in your view, you are saying that

9 10:43:00   there is no -- in your view, you are saying the contract

10 10:43:04   should be amenable to be interpreted by the Court because

11 10:43:08   it's the four corners of the contract -- and essentially, if

12 10:43:12   I go in a room and I had the four corners of the contract and

13 10:43:16   the appropriate case law, I could emerge and say what it is

14 10:43:21   the contract means?

15 10:43:23          MS. BLAISE:  Yes.  And to the extent that there is

16 10:43:27   any -- that you find anything ambiguous, and there is a

17 10:43:29   trader custom usage, we've had experts in this case testify

18 10:43:34   about that.

19 10:43:35          THE COURT:  And California does love -- sometimes

20 10:43:37   California lawyers assume that if extrinsic evidence is

21 10:43:41   admitted then it automatically becomes a jury question.  It's

22 10:43:43   just, you know, although that is just simply not the case.

23 10:43:47   It wasn't even in the case under the historic regime of

24 10:43:52   Pacific gas and electric, and chief justice trainer,

25 10:43:57   essentially California contracts were asive, because you

1 10:44:01   always got to have limitless amount of extrinsic evidence.

2 10:44:05   Here just because extrinsic evidence comes in, doesn't mean

3 10:44:08   that I don't interpret the contract.  What it means is that

4 10:44:11   there has to be a very clear articulable factual dispute in

5 10:44:17   that extrinsic evidence, and that is when the Seventh

6 10:44:23   Amendment kicks in, and that is when the jury -- and that is

7 10:44:27   when the jury gets to interpret the contract under California

8 10:44:29   law.

9 10:44:30           In fact, being very technical about it, the -- you

10 10:44:35   would just tell the jury, here is -- do you believe that A or

11 10:44:38   B is the truth based on the evidence you've heard?  And once

12 10:44:42   they answered that, the Court would still interpret the

13 10:44:45   contract.  It's generally not what Superior Court judges do,

14 10:44:48   or how lawyers think, but I understand -- I am not -- all of

15 10:44:53   which is a long winded way of saying, Ms. Blaise, that I am

16 10:45:00   agreeing with you that just because I decided that certain

17 10:45:02   evidence was appropriate to consider in the contract doesn't

18 10:45:05   necessarily mean that it gets turned into a jury question.

19 10:45:08           Of course, the parties can give up their -- I mean,

20 10:45:12   if the parties think it makes sense for me to do it, then I

21 10:45:16   can do it regardless of what California law is or what the

22 10:45:19   Seventh Amendment says.

23 10:45:20           So I understand here now.

24 10:45:23           Are there -- in regard -- other than the reliance

25 10:45:28   issue, which has been articulated, and other than whether

10:45:33  1    Beatbox is a third-party beneficiary of the Cohen/Labrador
10:45:40  2    agreement, is there any other issue in that agreement which
10:45:43  3    Beatbox believes can be determined by me before the jury
10:45:50  4    shows up on April 18th?

10:45:52  5             MS. BLAISE:  Yes.

10:45:53  6             THE COURT:  And what is that?

10:45:54  7             MS. BLAISE:  So between the Labrador and Cohen
10:46:00  8    agreement, which we are proceeding on an intended third party
10:46:04  9    beneficiary theory, this language in that agreement that
10:46:08 10    includes attorney's fees, and Your Honor previously ruled as
10:46:11 11    it relates to the Labrador/Beatbox agreement, that attorney's
10:46:16 12    fees incurred in this case cannot be under the theory of
10:46:22 13    breach of contract cannot be imposed upon Labrador under that
10:46:26 14    contract.

10:46:28 15             However, the Labrador/Cohen agreement is much
10:46:32 16    broader and expressly includes attorney's fees.

10:46:35 17             THE COURT:  All right.  I understand the point you
10:46:38 18    are making.  So that is helpful.

10:46:41 19             Let's -- I -- this has been helpful.  So let me now
10:46:48 20    turn to the -- there were three issues that were -- I
10:47:05 21    previously determined had factual disputes.

10:47:11 22             So let me go over those one by one.  And if --
10:47:15 23    again, we'll do it in the order of Labrador/Cohen/Beatbox.
10:47:20 24    In one ever the parties believes that either, just my rulings
10:47:29 25    on the contract issues that we've discussed would in fact

10:47:32    resolve these issues, or whether regardless whether there

10:47:36    might be certain factual disputes, it would be appropriate

10:47:38    for the Court to do this, the -- tell me -- or whether you

10:47:51    believe that these should be -- would be issues that would be

10:47:53    part of a phase 2, whether there will be a phase 3 or not

10:48:00    we'll discuss in a minute.

10:48:01         The first is whether the cue that was used by the

10:48:09    New Zealand national party was modified, and therefore,

10:48:13    whether the issue of the cue in this action is infringing,

10:48:19    who and how would that issue be determined?

10:48:23         Second, whether the parties understood that the

10:48:27    Labrador/Beatbox agreement contemplated that the library of

10:48:31    recordings would be updated over time or would require

10:48:36    deletion of prior cues, as I understood what Ms. Blaise just

10:48:40    said, it sounds like Beatbox believes that that issue is

10:48:43    something that I can determine.

10:48:44         But if I'm wrong about that, Ms. Blaise, then please

10:48:48    tell me.

10:48:48         And then third, whether Beatbox was required to

10:48:51    confirm its licensing of cues with Labrador.

10:48:54         So let's start with issue number one.  Whether the

10:48:58    cue that was used was modified such that we are just talking

10:49:03    about two different things here, and which of course gets

10:49:08    into the raise adjudicate at that effect or the claim

10:49:15    prepreclusion effect or the issue preclusion effect of the

```
1  10:49:20   New Zealand court of appeal judgment.
2  10:49:23          So let me start with Labrador on that issue.
3  10:49:26          MR. ROSNER:  Your Honor, so that I'm clear on what
4  10:49:29   you are asking me, you are asking me to tell you whether it
5  10:49:33   is better for you to decide that issue or for the jury.  Is
6  10:49:37   that the question?
7  10:49:38          THE COURT:  That is -- that is the issue.  In other
8  10:49:42   words, in your motion, do you see that as being part of a
9  10:49:47   phase 1, which is things for me that are contractual, or is
10 10:49:50   it part of a phase 2, which is for the jury?
11 10:49:54          MR. ROSNER:  Your Honor, I was expecting or, excuse
12 10:49:57   me, I was arguing that it should be phase 1 and that should
13 10:50:00   be a determination by the Court, because it is a legal
14 10:50:03   matter.
15 10:50:06          THE COURT:  So now that clearly requires extrinsic
16 10:50:12   evidence, because you've just got the two -- the two things.
17 10:50:16          So I -- I just -- if all parties agreed that they
18 10:50:22   wanted me to determine that, then I would certainly seriously
19 10:50:26   consider doing so.  But it inherently involves a factual
20 10:50:30   dispute based on extrinsic evidence.
21 10:50:33          So let me now turn to Mr. Cohen on that issue.  Who
22 10:50:39   will determine whether we are talking about a, the same
23 10:50:44   copyrighted work or we are talking about two separate works?
24 10:50:49   And by implication, the claim or issue preclusion of the New
25 10:50:56   Zealand court of appeal judgment.
```

10:50:58    1          MR. JACOBSON:  I agree with Mr. Rosner.  I think

10:51:00    2     that the Court could do that succinctly.  I do think that

10:51:08    3     expert opinion could help the Court in getting that done.

10:51:13    4          THE COURT:  And let me say here that at a minimum,

10:51:17    5     the parties would have the right to be heard, and again, I'm

10:51:20    6     willing to work with you to try, if you believe that I

10:51:24    7     should, you know, read one ever the expert reports to the

10:51:27    8     extent that they aren't -- there are objections that haven't

10:51:31    9     been -- there aren't objections that have yet to be ruled on,

10:51:34   10     to the extent that you would want us to do a Zoom thing,

10:51:38   11     where there is a certain amount of direct and

10:51:40   12     cross-examination, I'm -- again, I'm -- here, I'm willing to

10:51:46   13     work with the parties on this, it's just we would have to get

10:51:51   14     it -- if you want me to do it, then I'll do it, and we have

10:51:54   15     to get it done by April 18th.  Or I'll come back to this at

10:51:59   16     the end, I know I raise this in the of thing of kind of

10:52:03   17     chewing you out some, but I really meant it that if you

10:52:07   18     want -- if you don't want -- if you believe it would be

10:52:11   19     helpful not to have the jury here on April 18th, then that is

10:52:14   20     fine, too, it's just you've got to let me know, because I owe

10:52:17   21     it to one of those three other cases to let them use that

10:52:21   22     date, which they desperately want.

10:52:24   23          And I've spent earlier this week telling them that I

10:52:27   24     was -- I had chosen you and not them, and they had to -- they

10:52:31   25     are going out, now they are talking to their clients, we want

1 10:52:33  to have a magistrate judge, do we want to stay with judge

2 10:52:37  Fitzgerald, one of them has decided to do that, and they want

3 10:52:40  to know when in the summer I can try this case.  If you

4 10:52:43  aren't going to use this, we have to cut all that off right

5 10:52:46  now.  I don't want to get sidetracked on that.  So you've

6 10:52:48  answered that question.

7 10:52:49      So now Ms. Blaise, who do you believe should

8 10:52:55  determine under a -- under a procedure to be determined of my

9 10:53:02  just listening to the works, my getting some expert help, my

10 10:53:07  looking at some defined things, you know, and of course

11 10:53:13  letting the parties argue the matter, who should determine

12 10:53:18  the cue issue here?  Should it be me or should it be the

13 10:53:25  jury?

14 10:53:25      MS. BLAISE:  So the first issue is that I think when

15 10:53:27  you go to the notice of indemnity, it's a notification of a

16 10:53:34  third-party so our, they are infringing or wasn't infringing,

17 10:53:39  that was Beatbox's position.  Can you hear me again.

18 10:53:44      THE COURT:  I'm sorry, you cut out right there.

19 10:53:47      MS. BLAISE:  Okay.  Hold on.  Let me, I'm going to

20 10:53:49  turn off my camera, so that maybe that helps with the audio.

21 10:53:55  Can you hear me now.

22 10:53:56      THE COURT:  I can hear you now.  I think you've just

23 10:54:01  got to get close.

24 10:54:06      MS. BLAISE:  Is that better.

25 10:54:07      THE COURT:  It is for me, and I assume it is for the

1 10:54:12   court reporter.  A rare agreement here, both Mr. Rosner and

2 10:54:15   Mr. Jacobson are nodding their heads, so go ahead.

3 10:54:19         MS. BLAISE:  So the first thing is that based on the

4 10:54:22   language of the agreement, it's about a notification of a

5 10:54:26   third-party claim.  That is when the duties are triggered.

6 10:54:30         So it's our position, and it's been Beatbox's

7 10:54:33   position that you don't even need to go so far as to

8 10:54:36   determine whether or not the cue that was used was modified.

9 10:54:41   It doesn't matter under the contract.

10 10:54:44        But --

11 10:54:45        THE COURT:  And I understand that, Ms. Blaise.  But

12 10:54:48   let's say I -- let's say that I ruled against that position.

13 10:54:54        MS. BLAISE:  Okay.

14 10:54:55        THE COURT:  In your view, who would then decide?

15 10:54:59        MS. BLAISE:  So the next thing would be to look at

16 10:55:00   the order in the New Zealand case, which finds an

17 10:55:06   infringement, both of the cue, the raw cue, and as it was

18 10:55:09   used in the advertisement.

19 10:55:13        And then the next thing would be to look at the

20 10:55:16   expert opinions in this case, including their transcripts.

21 10:55:22        THE COURT:  Then and that all seems very sensible to

22 10:55:26   me.

23 10:55:26        So the question then becomes do the parties want me

24 10:55:31   to do that or do the parties believe that the jury would do

25 10:55:35   that?

10:55:36         Here, I think if -- I'm happy to do it, to stream

10:55:40    line the case and save all of you some money, but if even one

10:55:44    of you objects, I think we've really got to leave that to the

10:55:47    jury, because it's just a genuine factual dispute.

10:55:52         So Ms. Blaise, what is -- assuming that that would

10:55:58    be the procedure, and that I would work with you to let the

10:56:02    parties be both for the parties to maybe have some additional

10:56:10    briefing, to saying exactly what it means to modify

10:56:13    something, or maybe we would even wait and I would decide the

10:56:16    other issue first, as you said, and we maybe wouldn't even

10:56:20    get to it.

10:56:21         But this is, again, it's not prejudicing Beatbox in

10:56:24    any way, but assuming we get to this issue, does Beatbox

10:56:28    object if I determined that pursuant to the procedure that

10:56:32    you just laid out as opposed to having that done for the

10:56:36    jury?

10:56:37         MS. BLAISE:  I would like to know what my opponents

10:56:41    say, since they went first, if they agree to that, if.

10:56:44         THE COURT:  Well, my understanding is they will,

10:56:47    but.

10:56:47         MS. BLAISE:  If they agree, okay.  Then Beatbox

10:56:50    would agree.

10:56:51         THE COURT:  Okay.  Then that is very helpful.

10:56:55         So let's move on then to issue number two, and that

10:56:59    is, I think I know the answer from this, but I did say in the

| | |
|---|---|
| 1 10:57:03 | summary judgment order that there were certain factual |
| 2 10:57:06 | disputes here. |
| 3 10:57:08 | Whether I or the jury should determine, pursuant to |
| 4 10:57:16 | the Labrador/Beatbox agreement that the contemplation was the |
| 5 10:57:20 | library of recordings would be updated over time or require |
| 6 10:57:25 | deletion of prior cues. |
| 7 10:57:28 | And again, this is even more, this is much more |
| 8 10:57:31 | related to contractual interpretation than the first issue |
| 9 10:57:34 | was, so having -- I therefore, it's my sense that the parties |
| 10 10:57:43 | don't object to my determining that, but again, I would have |
| 11 10:57:46 | to inherently look at extrinsic evidence on that. |
| 12 10:57:54 | So let me -- two questions here, starting again with |
| 13 10:57:58 | the Labrador defendants.  Do the Labrador defendants believe |
| 14 10:58:01 | that I should determine that, and on what -- on the basis of |
| 15 10:58:06 | what evidence would that be determined? |
| 16 10:58:10 | MR. ROSNER:  Yes. |
| 17 10:58:11 | THE COURT:  And on what -- what extrinsic evidence |
| 18 10:58:15 | do you want me to look at in making that determination?  Or |
| 19 10:58:18 | in your view, is it again something that I could just do off |
| 20 10:58:22 | the four corners of the document?  I think that is unlikely, |
| 21 10:58:25 | because I already said that I felt that there were certain |
| 22 10:58:28 | factual disputes that prevented that from happening.  I would |
| 23 10:58:31 | have done it on summary judgment if I thought that I could. |
| 24 10:58:34 | So I'm happy to do it now, but I want the record to |
| 25 10:58:37 | be clear that it's because the parties believe that it helps |

1  10:58:43  the case go forward and not because it truly is a matter of

2  10:58:47  law under California.

3  10:58:50      MR. ROSNER:  Without prejudicing Labrador's position

4  10:58:54  in the ability to add to my list of documents that I would

5  10:58:59  like the Court to look at, predominantly, I would expect that

6  10:59:04  the Court would look at the initial e-mails, especially

7  10:59:09  June 9th, that instructed Labrador where Beatbox instructed

8  10:59:14  Labrador to lay out an excel file and show them how it should

9  10:59:23  look, subsequent conversations that took place, an e-mail,

10  10:59:29  some of the deposition testimony and the excels that were

11  10:59:34  given to Beatbox on April 2012, April 2014.

12  10:59:42      THE COURT:  Well, I have an idea here.  I think,

13  10:59:45  we'll be able then to reach agreement on what the appropriate

14  10:59:49  scope of the extrinsic evidence is, apart, perhaps, from the

15  10:59:53  rule 26 issue.

16  10:59:54      But that is something that I'll deal with

17  10:59:57  separately.

18  10:59:58      And again, Ms. Blaise, the reason for my remarks

19  11:00:00  earlier was not that Beatbox doesn't have the right to

20  11:00:05  object.  I take these sorts of objections seriously.  It's,

21  11:00:08  rather, just the refusal to work together to produce a single

22  11:00:16  of exhibit list, whether you believe that certain things

23  11:00:19  should be on the list or not.  That is the only thing.

24  11:00:23      MS. BLAISE:  Your Honor, I didn't refuse.  I

25  11:00:25  actually am the one who included every single document that

11:00:28   has been exchanged in discovery, trying to get a list

11:00:31   together.

11:00:31             THE COURT:  Well, we will discuss this Rule 26 issue

11:00:35   later.

11:00:35             All right.  Then now let me turn to Mr. Cohen.

11:00:43             Mr. Jacobson, what is your view on whether the issue

11:00:48   of the contemplation of the parties in the Labrador/Beatbox

11:00:52   agreement was that the cue should be updated or not?  Or are

11:00:59   you taking the sensible view, which you did previously, that

11:01:02   you just don't really have a dog in that fight, because it's

11:01:05   not your agreement?

11:01:08             MR. JACOBSON:  The latter.  We are just not part of

11:01:14   it.

11:01:15             THE COURT:  I understand that.  I understand that,

11:01:18   Mr. Jacobson.  Thank you.

11:01:19             So now, what is Beatbox's position on that aspect of

11:01:25   the Labrador/Beatbox agreement?

11:01:27             MS. BLAISE:  So again we think that it's within the

11:01:31   four corners of the document of what was required, and.

11:01:36             THE COURT:  I know you understand that, my summary

11:01:38   judgment ruling says otherwise.  So.

11:01:40             MS. BLAISE:  Yes, I --

11:01:42             THE COURT:  The point is if there -- if the scope of

11:01:46   the extrinsic evidence is reasonable here, do you object to

11:01:52   my determining that issue based on, of course, the words of

1  11:01:57   the document, those are always going to be the most important

2  11:01:59   thing to start off with, but in addition to that, reasonable

3  11:02:04   extrinsic evidence which will be delineated, and that way

4  11:02:08   when the jury shows up on April 18th, if it does, the issue

5  11:02:14   will have been resolved.  Does Beatbox feel comfortable with

6  11:02:17   that, or to the extent that there is -- there are of factual

7  11:02:22   disputes, which is precisely what I've already ruled, then do

8  11:02:25   you want the jury to resolve those factual disputes?  Look,

9  11:02:29   just so it's very clear what is going on here, I'm

10 11:02:31   essentially saying is are you willing to waive whatever

11 11:02:34   Seventh Amendment rights you have in this regard?

12 11:02:37        MS. BLAISE:  The issue is with the extrinsic

13 11:02:39   evidence.  It really is because the documents that -- first

14 11:02:42   of all, it's going to be confusing to the jury and it's not

15 11:02:45   required under the contract over all, but there is no -- we

16 11:02:49   have no expert, we have no one to even certify what excel

17 11:02:54   spreadsheets were actually exchanged.  There is the big

18 11:02:59   issue --

19 11:02:59        THE COURT:  Ms. Blaise, it might be then that I

20 11:03:02   ultimately decide that there is very little relevant

21 11:03:06   extrinsic evidence, but the point here is obviously just

22 11:03:08   because I identified that there was a factual dispute

23 11:03:14   previously doesn't mean that there is vast amounts of

24 11:03:18   extrinsic evidence, that it doesn't point one way, that the

25 11:03:21   words won't be more important.

<table>
<tr><td>1</td><td>11:03:26</td><td>It really is, the question here is, to the extent</td></tr>
</table>

1  11:03:26   It really is, the question here is, to the extent

2  11:03:28   that -- and you would be free to object that I relied on

3  11:03:34   extrinsic evidence that was irrelevant, but what I do is

4  11:03:38   this:  Is I would say, I intend to -- if the parties said,

5  11:03:43   look, we are waiving our Seventh Amendment rights in this

6  11:03:45   regard, then I will say, I'm going to determine this issue, I

7  11:03:48   am going to do it on the basis of the wording of the

8  11:03:53   contract, the relevant case law, plus, which in this case

9  11:03:56   would be federal case law presumably, and then what this --

10  11:04:02  these pieces of extrinsic evidence, and any of the parties

11  11:04:06  would then be free to say, well, you really ought to consider

12  11:04:09  this extrinsic evidence, or you shouldn't consider that, or,

13  11:04:13  I guess you could consider it, but we don't think it really

14  11:04:17  amounts to much, it reallien very persuasive to support our

15  11:04:24  point of view.  And all of you will have the chance to do

16  11:04:27  those things.  And if I grossly err in what I consider should

17  11:04:31  be relevant extrinsic evidence, the record will be clear and

18  11:04:36  you can raise it with the Ninth Circuit.

19  11:04:37  All I want to ask now is to the extent that the

20  11:04:40  Seventh Amendment applies, because I already denied summary

21  11:04:43  judgment on this issue, are you willing to give the issue to

22  11:04:46  me instead of leaving it to the jury, which will be what

23  11:04:51  happens if even one of you objects.

24  11:04:52  So here, the Labrador defendants don't object,

25  11:04:57  Mr. Cohen doesn't object, so what I need to know is whether

1  11:04:59   Beatbox objects or not.

2  11:05:02        MS. BLAISE:  I think I will need to talk to my

3  11:05:05   client about it.

4  11:05:06        THE COURT:  Okay.  But let's just decide right away,

5  11:05:08   because if we are going to have a procedure and we are going

6  11:05:11   to get it done in advance of April 18th, so let's just --

7  11:05:15   today is Thursday, Monday at noon let me know one way or the

8  11:05:20   other, because then we'll have to get this procedure going

9  11:05:23   forward, so all parties have a chance to be heard.

10 11:05:26        MS. BLAISE:  That is fine.

11 11:05:27        THE COURT:  And then the final issue that -- and

12 11:05:32   again, this is arising from the contract, was whether Beatbox

13 11:05:38   was required to confirm its licensing of cues with the

14 11:05:44   Labrador defendants.

15 11:05:47        Again, let's start with the Labrador defendants.  Do

16 11:05:50   the Labrador defendants believe that that is an issue which

17 11:05:55   should be determined by the jury or should be determined by

18 11:05:58   me?

19 11:06:00        MR. ROSNER:  Well, Your Honor, we actually have two

20 11:06:02   separate issues, which I wanted to raise.  We do have a

21 11:06:04   breach of fiduciary, and we do have a principal/agent

22 11:06:08   relationship.  So in the principal relationship, I believe

23 11:06:11   that if there is any kind of communication that comes to the

24 11:06:15   agent that is important for the principal to know that they

25 11:06:18   have a duty to disclose.

AMY C. DIAZ, RPR, CRR OFFICIAL COURT REPORTER

1 11:06:19          So having said that, I think for Labrador, what we

2 11:06:23    are seeking is we are seeking a determination whether or not

3 11:06:28    Beatbox had a duty upon learning of the issues with regard to

4 11:06:32    the copyright from a third-party licensee or sublicensee,

5 11:06:40    whether or not they had a responsibility to contact Labrador

6 11:06:43    upon learning of that information prior to issuing a license.

7 11:06:48          So that is the issue that we see.  Is that the one

8 11:06:51    you are contemplating?  Because the broader issue, I have not

9 11:06:55    necessarily argued the broader issue, my case really is

10 11:06:58    dependent upon a determination of that issue specifically.

11 11:07:02          THE COURT:  Right.  And do you believe that that

12 11:07:04    issue should be determined by the jury or by me.

13 11:07:08          MR. ROSNER:  Your Honor, I'm more than willing to

14 11:07:09    have you determine it.

15 11:07:10          THE COURT:  Then let me turn, then, again, this is

16 11:07:14    very much a Labrador/Beatbox contractual issue.  Does

17 11:07:20    Mr. Cohen have any feel that he has a dog in this fight?

18 11:07:25          MR. JACOBSON:  No, we don't -- we -- it's -- we are

19 11:07:32    really not a part of this.

20 11:07:34          THE COURT:  Thank you.

21 11:07:35          And then Ms. Blaise, what is the position of Beatbox

22 11:07:40    in regard to -- let's just state it a bit more broadly, then,

23 11:07:45    the duties, if any, of Beatbox, vis-a-vis the Labrador

24 11:07:51    defendants in regard to the licensing, is that, in your view,

25 11:07:57    is that something that should be decided by me or should it

| | |
|---|---|
| 1 11:08:00 | be decided by the jury?  And again, in terms of what the -- |
| 2 11:08:04 | there would be extrinsic evidence, I believe, although the |
| 3 11:08:07 | parties would be free to say, look, the words really |
| 4 11:08:09 | determine this, you don't need it.  But I would look at it |
| 5 11:08:12 | before ruling.  But again, the parties would have the chance |
| 6 11:08:15 | to object, to have a weigh in on what the extrinsic evidence |
| 7 11:08:23 | should be and would have the right to have an objection if |
| 8 11:08:25 | they felt that there was something really off about that |
| 9 11:08:28 | extrinsic evidence. |
| 10 11:08:29 | So with that understanding, what is Beatbox's |
| 11 11:08:33 | position here? |
| 12 11:08:34 | MS. BLAISE:  I mean, I think, this is another thing |
| 13 11:08:36 | that I would need to speak to my client about, but I would -- |
| 14 11:08:40 | but, you know, my knee jerk on it is it's within the confines |
| 15 11:08:45 | of the contract, and, you know. |
| 16 11:08:49 | THE COURT:  I understand that, and you would be |
| 17 11:08:50 | right if I hadn't already -- if it was clear that this was |
| 18 11:08:56 | this integrated document that would never have extrinsic |
| 19 11:08:59 | evidence, but that is based on my summary judgment ruling. |
| 20 11:09:02 | MS. BLAISE:  Breach of fiduciary duty, I don't think |
| 21 11:09:06 | that was an issue ruled on at summary judgment at all.  To |
| 22 11:09:09 | the extent that those are being -- |
| 23 11:09:12 | THE COURT:  Well, that I understand what you are -- |
| 24 11:09:15 | that is a point. |
| 25 11:09:17 | So let's then move -- I think I've exhausted this to |

1  11:09:29   the extent that we can.  And again, let me know by noon in

2  11:09:34   that regard, Ms. Blaise.

3  11:09:38        On the further -- then there is the issue of the --

4  11:09:51   to the extent that there are breach of contract and indemnity

5  11:09:56   claims between Beatbox and the Labrador defendants that would

6  11:10:03   not be resolved in this -- in a phase 1, then the issue is

7  11:10:11   whether there is a phase 2 or whether there is a phase 2 and

8  11:10:15   a phase 3.

9  11:10:18        And both parties have made decent arguments here.

10 11:10:27   You know, Labrador is saying that the -- if there is no

11 11:10:38   contractual indemnification, or otherwise nothing happens,

12 11:10:42   then that could deal with the Labrador/Cohen claims, the

13 11:10:51   fraudulent conveyance claims could potentially be rendered

14 11:10:55   moot or would be seen in different -- a different light.  But

15 11:11:05   then Beatbox says essentially that when -- that there is a

16 11:11:12   factual dispute about when Labrador received notice of the

17 11:11:17   claims.  And that that would be -- if there -- if there were

18 11:11:23   phase 2 and phase 3, it would have to be repeated.

19 11:11:27        And more generally, there would be such a large

20 11:11:31   overlap between phase 2 and phase 3 that we really aren't

21 11:11:35   gaining anything.  And before I invite argument on this, let

22 11:11:43   me just tell you what my view is.

23 11:11:46        Here, I generally do not bifurcate claims with the

24 11:11:51   same jury, except for punitive damages.  And even then, the

25 11:11:55   only reason I do it is because if the jury returns a special

1  11:12:00   verdict finding in favor of punitive damages, that is part of

2  11:12:04   all the phase 1.  The only thing that is in phase 2 is the

3  11:12:07   precise amount, and that is because the jury needs to

4  11:12:11   consider the net worth of the tort feasor, and that would be

5  11:12:19   prejudicial information to give to the jury before it's

6  11:12:23   decided all the other issues.

7  11:12:25          But it's one thing to ask the same jury to say,

8  11:12:30   okay, you've just done all this work, you reached a unanimous

9  11:12:33   agreement, you have come back, you did agree that there

10 11:12:35   should be punitive damages, now immediately what I do -- and

11 11:12:39   I have the evidence of the net worth distilled down to like a

12 11:12:43   couple of pages.  I show those to the jury confidentially, I

13 11:12:47   allow the parties to argue about 15 minutes a piece on what

14 11:12:51   the amount should be, and then the jury goes back.

15 11:12:54          Here, I'm not going to force the same jury to just

16 11:12:58   after they have reached all of these, to then like sit

17 11:13:02   through days of testimony and go out again.  It's just not

18 11:13:04   fair.  If there is going to be a bifurcation, it's going to

19 11:13:07   be a true bifurcation, which you will have to come back and

20 11:13:10   pick a whole different jury, and the issues have to be

21 11:13:14   discreet enough, separate enough, that that makes sense.

22 11:13:17          So, but on the other hand to the extent that jury

23 11:13:21   number 1 has a lot easier task and is focused on very -- on

24 11:13:27   issues which makes sense from that point of view, to the

25 11:13:31   extent that there is a lot fewer witnesses, to the extent the

1 11:13:34   trial is not as long, that is all fantastic.

2 11:13:36          So really what this comes down to is, if what you

3 11:13:40   are asking for in the trifurcation is that the same jury

4 11:13:44   would then hear this in phases, that just -- that isn't going

5 11:13:49   to happen, because the jury would rebell, and while it

6 11:13:53   probably would focus their consideration to have it in

7 11:13:58   stages, it just doesn't make sense.

8 11:14:00          So what we have here, and this is really I think

9 11:14:02   that Beatbox's point is well taken, it's just, I just have to

10 11:14:07  know to the extent, if there is very little overlap between a

11 11:14:12  phase 2 and a phase 3, and if the phase 2, or if -- or if the

12 11:14:20  number of witnesses who would be inconvenienced or the amount

13 11:14:23  of time for them to do this, or if we could ask them, if it's

14 11:14:29  like one -- it could be 20 witnesses, but if it is a very

15 11:14:34  narrow question, such as when did Labrador receive notice,

16 11:14:39  then in phase 1, I mean, or phase 2, I should say, we can

17 11:14:43  just ask the jury that question, and they will answer it, and

18 11:14:46  then that will be collateral estoppel on phase 3.  The jury

19 11:14:50  will just be told, okay, you are being told that the notice

20 11:14:54  was given on such and such a date, and now let's argue about

21 11:14:57  everything else.  All of that suggests that there should be a

22 11:15:00  phase 2 and a phase 3, but if we really are trying the same

23 11:15:05  case twice, from the point of view of the witnesses, they are

24 11:15:11  really phase 2 and a phase 3 would be very little different.

25 11:15:14  And it's just the fact that the jury is being asked to decide

1 11:15:16   one set of complicated issues, instead of another set of

2 11:15:20   complicated issues, then no.  They will just have to deal

3 11:15:23   with deciding a lunch of complicated issues at first, and

4 11:15:29   we'll structure the verdict form that they know exactly what

5 11:15:32   they are supposed to do.  If they get on saying, okay, there

6 11:15:35   is no -- there is no basis for any indemnity, then they will

7 11:15:40   just go to the end, they will sign off, but if there is, then

8 11:15:45   they will start arguing about it and they will decide things

9 11:15:47   between the Labrador defendants and Mr. Cohen.

10 11:15:49        So with that explanation, this I'm going to start

11 11:15:53   off, I think, with from the point of view of Beatbox.

12 11:15:59   What -- Beatbox is saying that I shouldn't trifurcate the

13 11:16:03   case, because there would be too much overlap between a phase

14 11:16:07   2 and a phase 3.

15 11:16:08        So what is the -- what is the nuts and bolts basis

16 11:16:13   for that assertion?  Who are the witnesses?  What are the

17 11:16:16   exhibits?  How much time do you think there would be in terms

18 11:16:20   ever the overlap?  You know, what really is going on here

19 11:16:24   from the point of view of Beatbox?

20 11:16:25        MS. BLAISE:  So it's that -- it's the same thing.

21 11:16:31        THE COURT:  I'm sorry, again, Ms. Blaise, you cut

22 11:16:33   out right there.

23 11:16:37        MS. BLAISE:  Is that better?

24 11:16:39        THE COURT:  Now you are frozen.  All right.  Go

25 11:16:41   ahead.

1 11:16:42        MS. BLAISE:  Is that better?  Can you hear me.

2 11:16:43        THE COURT:  Yes.

3 11:16:44        MS. BLAISE:  So in terms of on both of the

4 11:16:47   fraudulent conveyance and the fraudulent transfers act

5 11:16:53   components, it's going to be the testimony of the defendants,

6 11:16:57   and significantly, how they transferred the funds, and how

7 11:17:04   they treated licensing expenses coming in, as soon as they

8 11:17:07   received notice of the New Zealand action.  Or, rather, the

9 11:17:12   New Zealand claim, not even the action.

10 11:17:14        And that testimony is woven kind of throughout the

11 11:17:22   case as it -- to the extent that we are going to ask the jury

12 11:17:25   to rule on the parties' understanding of the obligations

13 11:17:29   under the agreements, that is also woven in that testimony

14 11:17:34   previously.

15 11:17:35        So it really is trying the case twice as it relates

16 11:17:41   to what the defendants did with the information that they

17 11:17:46   were supposed to indemnify, instead of actually coming in and

18 11:17:50   indemnifying what they did with the information that they

19 11:17:53   were on notice of, the claims of a third-party.

20 11:17:58        So I mean, we'll be -- we'll be rechartering the

21 11:18:04   same territory, and asking the same types of questions, and

22 11:18:07   given them multiple opportunities to provide different

23 11:18:11   answers.

24 11:18:13        THE COURT:  On which they could be cross-examined.

25 11:18:15   You know, one way of looking at it, Ms. Blaise, is that you

1 11:18:18    are saying it would be exceedingly inconvenient and expensive

2 11:18:23    for Labrador defendants, but Labrador is the one that is

3 11:18:27    making the motion.  I assume that frankly that Labrador's

4 11:18:33    counsel knows better than you do what Labrador wants.  And we

5 11:18:40    could always then --

6 11:18:41         MS. BLAISE:  I think it's expense as well.

7 11:18:44         THE COURT:  We could read some of the trial

8 11:18:45    testimony again.  I mean, you know, we could ask certain

9 11:18:51    questions on the special verdict form as I said to try to

10 11:18:54   negate certain things.  I mean, I -- but on the other hand,

11 11:19:00   it -- I certainly understand why Beatbox does not want to try

12 11:19:05   the same case twice.  Especially if it would be -- because

13 11:19:10   it's expensive obviously from your point of view, and also --

14 11:19:19   but and also I understand why the Beatbox witnesses don't

15 11:19:25   want to have to testify twice.

16 11:19:26         I'll give you a chance to respond on this, because I

17 11:19:29   really think this is what is getting at, on the surface there

18 11:19:33   is a certain -- there is a certain appeal to trying to make

19 11:19:37   things easier by the jury by making the specific issues that

20 11:19:41   are determined more discreet, and then when there is the

21 11:19:46   chance, albeit just a chance, of course, that certain issues

22 11:19:50   might be mooted, that is, you know, that has a certain

23 11:19:55   appeal, obviously.

24 11:19:57         So let me hear from, first from the Labrador

25 11:20:01   defendants as to why you think it's particularly fair to have

1 11:20:06  the trifurcation, and next, what is your response to the

2 11:20:10  concern that we would really be trying the same case twice?

3 11:20:15        MR. ROSNER:  My first statement is that the

4 11:20:21  mentioning or referencing anything about fraud or

5 11:20:30  transferring assets of trying to paint Labrador as a bad

6 11:20:34  wrongdoer is certainly going to taint the jury.

7 11:20:38        So I think that is -- I think that is something that

8 11:20:40  I feel very strongly about.  That that will be prejudicial.

9 11:20:44        In terms of the case, I think that, and I don't want

10 11:20:49  to tell Ms. Blaise how to try her case, but it seems to me

11 11:20:52  that the only issue she has if she prevails, if she prevails,

12 11:20:59  that is the predicate, is whether or not what actions that

13 11:21:03  Labrador took at transferring their assets from Inc. to LLC

14 11:21:12  and why they did it.  That seems to be the heart of the

15 11:21:15  matter.  In terms of receiving notice and taking action, I

16 11:21:20  mean, that is, as you indicated, Your Honor, you could read

17 11:21:22  that from the record.  They can establish that in the first

18 11:21:25  phase.  When did you first receive notice that you had issues

19 11:21:30  relative to Beatbox?  That is a legitimate question for phase

20 11:21:38  1, without getting into fraud and trying to paint Labrador as

21 11:21:41  a bad, you know, bad person or entity.

22 11:21:44        So, I mean, that is not that complicated.  The rest

23 11:21:49  really has to do with evidence showing to what extent, if

24 11:21:51  any, that Beatbox was harmed as a creditor by the transfer?

25 11:21:57  And to what extent, if any, did that transfer involve no

consideration?  Because certainly we have evidence to show

that there was consideration.  We also have evidence to show

that they weren't harmed.  That the same assets really is

kind of fluid.  We've always agreed to let them take a

judgment against the LLC if they chose to.

So I don't -- I think it's just a very, it's a

tactical move to sort of smear Labrador in front of the jury.

And I would request that the Judge examine it from that view

as well, and --

THE COURT:  I'll consider it, counsel, it's

certainly a legitimate issue to raise in terms of of

severance, over which I have a vast amount of discretion.

But the problem is, it's also something that just

happens a lot.  You know, I've never had an insurance carrier

say, oh, you should sever the breach of contract claim, and

the tort claim for violation of the covenant.  The fact is

that parties have to deal with things.

If somebody was accused of violating, cheating the

IRS, and was also accused of failing to register as a sex

offender, then, yes, I would -- I would sever those two

claims.  But even in criminal cases, it's very, very rare to

have prejudice on that.

In fact, I one time did it in a criminal case, I

managed to get a severance on that basis and one of my now

colleagues actually when he heard about it called me up and

1  11:23:42   congratulated me on having gotten his other colleague to

2  11:23:46   grant a discretionary severance.

3  11:23:50        So I use that just as an example that it's sort of

4  11:23:52   asking a lot.  I'm looking on it more from the point of view

5  11:23:56   that it would definitely simplify things for the jury.  And

6  11:24:00   there is the possibility, and of course a big possibility,

7  11:24:04   nobody knows, that certain things might be rendered moot.

8  11:24:06        What in your view is the response, though, to the

9  11:24:13   point of view of Beatbox that we really would be trying the

10 11:24:18   cases?  Do you think that there is ways in which certain

11 11:24:21   evidence, certain witnesses would only have to -- wouldn't

12 11:24:25   have to testify twice, or their testimony would be very

13 11:24:28   different, so it would be a lot shorter.  I mean, just

14 11:24:31   looking at it from an evidentiary point of view, what do you

15 11:24:34   see as the savings?

16 11:24:37        MR. ROSNER:  And, Your Honor, I want that

17 11:24:39   discussion.  What I'm trying to think about is what is their

18 11:24:43   case?  You know, obviously Labrador says they don't have one.

19 11:24:46   Labrador believes that their use of that cause of action is

20 11:24:51   merely to provide lenses to the jury to show that Mr. Null is

21 11:24:58   a bad guy.  That is our position.

22 11:25:00        In terms of the evidence, what is their case?  Their

23 11:25:05   case is to show that Mr. Webb received notice of the issue,

24 11:25:09   notice of the lawsuit, and then that is when their case

25 11:25:13   really starts.  And then they have to show that he did the

1 11:25:16    transfer.  And they have to show that it was without

2 11:25:20    consideration.  And they have to show they were harmed.  So I

3 11:25:23    believe that they are discreet cases.  And I don't believe

4 11:25:25    there is an overlap.  I don't think any one of those issues

5 11:25:28    should ever be put in front of the jury, other than the fact

6 11:25:31    that he got notice.  And as you pointed out, Your Honor, let

7 11:25:35    him testify, when did you first learn about the lawsuit?  I

8 11:25:38    learned about it in September of 2012.  Excuse me, I'm sorry,

9 11:25:42    2014.  And, you know, that is great.  They can ask that

10 11:25:48   question.  I mean, I don't have a problem with them asking

11 11:25:51   about learning of a lawsuit.  If that is a predicate to them

12 11:25:54   having a right to bring that -- to bring that cause of

13 11:25:58   action, let it be.

14 11:25:58        However, I think the predicate for that case has to

15 11:26:03   be a judgment.  They can't just come in and say, by the way,

16 11:26:08   if you award, we are going to take money from LLC.  I just

17 11:26:11   don't think that is fair.

18 11:26:12        And I think it's highly prejudicial.  Did I answer

19 11:26:17   your question?

20 11:26:18        THE COURT:  Thank you.

21 11:26:21        And let me ask in regard to Mr. Cohen, what -- what

22 11:26:26   are the views -- this was Labrador's motion, what are

23 11:26:33   Mr. Cohen's views in regard to the trifurcation?

24 11:26:36        MR. JACOBSON:  Well, I think that Mr. Rosner has it

25 11:26:42   right.  And there is -- there is just no reason to get into

1 11:26:52  the other issues if the answer over here is no, there wasn't

2 11:27:05  a fraudulent -- a fraudulent transfer.

3 11:27:08       So I -- I -- as someone in Congress would say, I

4 11:27:18  associate my remarks with Mr. Rosner.

5 11:27:23       THE COURT:  Thank you.

6 11:27:25       Ms. Blaise, let me give you a chance to respond.

7 11:27:28       MS. BLAISE:

8 11:27:37       THE COURT:  I'm sorry, Ms. Blaise, I can't

9 11:27:40  understand you.  Now I'm not hearing you at all.

10 11:27:43       MS. BLAISE:  Hold on.  Can you hear me now?

11 11:27:46       THE COURT:  Yes, I can.

12 11:27:48       MS. BLAISE:  It's not surprising that they both

13 11:27:52  agree that they don't want to have the testimony about, you

14 11:27:57  know, what happened as it relates to as soon as they received

15 11:28:01  notice of the claim and it's not notice of the lawsuit, a

16 11:28:04  notice of the claim, and what they did instead of doing any

17 11:28:07  of their obligations under the contract.

18 11:28:10       Instead, they transferred all of their assets, and

19 11:28:14  they did it with an intent to hinder and delay.  You don't

20 11:28:21  have to wait until a judgment is rendered, that is not true.

21 11:28:25  It's going to be a sizeable expense to all parties, principal

22 11:28:29  among which is will be plaintiff, because we will have the

23 11:28:32  burden.  And we'll in part, the burdens switch as well.

24 11:28:42  But -- and I'll have to have my client come from Australia

25 11:28:45  again.

1  11:28:45          So they have a claim against breach of fiduciary

2  11:28:51   duty which also attempts to paint any client in a negative

3  11:28:54   way.  We don't get to decide when we are litigating that we

4  11:28:56   don't get the jury to hear about things that paint their

5  11:28:59   parties in a negative way.

6  11:29:01          And retreading it over twice where we will have to

7  11:29:07   explain to a secondary jury about what happened in the

8  11:29:10   previous case, and the activities, there is 11 factors about

9  11:29:14   the behavior that is undertaken when you are doing things

10 11:29:17   with indicia of fraud.  That is all relevant in the case and

11 11:29:25   how they did or didn't comply with the terms of the

12 11:29:27   contractual arrangement as well.

13 11:29:30          THE COURT:  All right.  Thank you.

14 11:29:31          The motion for trifurcation is taken under

15 11:29:38   submission.

16 11:29:42          MR. ROSNER:  Is it okay for me to add something or

17 11:29:44   not?

18 11:29:45          THE COURT:  You may.  But then I'll give -- I want

19 11:29:48   Beatbox to have the final word here, even though it's not the

20 11:29:52   moving party, because I really think it's their raising the

21 11:29:55   issue on which this turns.

22 11:29:57          So anyway, go ahead, counsel, and let me give you a

23 11:30:03   response to that.

24 11:30:04          MR. ROSNER:  Thank you very much, Your Honor.

25 11:30:05          Obligations under contract, I don't have a problem

1 11:30:08  with that.  What are their obligations under the contract,

2 11:30:10  that is what phase one is all about.  There is no reason that

3 11:30:14  Beatbox can't put on the obligations of the contract, as long

4 11:30:18  as it's not about fraudulent conveyance, and they can move it

5 11:30:24  into the record in the fraudulent conveyance lawsuit.

6 11:30:27      THE COURT:  Ms. Blaise, would you like to respond to

7 11:30:28  that?

8 11:30:29      MS. BLAISE:  My statement wasn't limited to that,

9 11:30:33  but for their obligations instead.  And that is relevant to

10 11:30:37  the breach of contract and the failure to indemnify, just as

11 11:30:41  relevant as it is to the fraudulent conveyance component,

12 11:30:44  including the actions that have taken place here and staying

13 11:30:49  the proceedings, and it was all with the purpose of move

14 11:30:53  their assets, so that it couldn't be collected, which is why

15 11:30:57  they didn't want to indemnify.

16 11:30:59      THE COURT:  The parties have the chance to be heard

17 11:31:01  on the stay, and that was litigated a long time ago.

18 11:31:07      So for better or for worse.  What I mean by -- I

19 11:31:13  don't mean, the litigation, I don't mean to criticize that,

20 11:31:17  my ruling is what I meant was for better or for worse.

21 11:31:21      Then, look, we aren't going to get to the motions in

22 11:31:26  limine today.  I've read them.  I've thought about them.

23 11:31:31  Just so you can begin to think in terms of trial, what I will

24 11:31:36  do is write up a tentative and I'll give it to you early so

25 11:31:42  you can at least know which way I'm ruling, and you can be

1  11:31:45    thinking of that in terms of trial preparation, but we will

2  11:31:49    pick a time next week.  It can't be on -- it can't be on

3  11:31:55    Tuesday, but I'll have Ms. Sanchez work with you.  It will

4  11:31:59    either be on Monday or maybe on Wednesday or Thursday.  I've

5  11:32:05    got a criminal case going on that.  It's going to be all day

6  11:32:08    on Tuesday.  So it can't be Tuesday for us to continue to

7  11:32:12    work.  And then the point is that way I'll have found out

8  11:32:16    from Beatbox on whether what the scope of phase 1 would be

9  11:32:23    for me to be deciding some of these issues.

10 11:32:29         And I -- you know, as you know, I've always been

11 11:32:37    concerned here with parties coming from abroad, especially

12 11:32:41    from Australia, about that.  It's one of the reasons that I

13 11:32:48    am having you be the case that goes forward on April 18th.

14 11:32:54    But if the process by which I would be deciding these phase 1

15 11:32:59    issues, whether those be narrow or large, just makes it too

16 11:33:05    crazy between then and now or there just isn't enough time to

17 11:33:09    get it done, then please let me know and what we can do is

18 11:33:17    move the jury part of this trial and have April 18th be, you

19 11:33:24    know, it can go a couple of days, I mean, we'll have -- on

20 11:33:28    that.  Not on April 18th, because I'll give one of the other

21 11:33:32    civil trials, but really right after that, I'll give you as

22 11:33:35    much time as you need for us to thwart all those issues, the

23 11:33:41    dust can settle and then we can plan another jury trial.

24 11:33:43    That would have to be all of you are all in on that,

25 11:33:46    especially Beatbox.

1  11:33:48          If any of you wants to have a trial on the 18th, and

2  11:33:52    if someone wants to come from Australia to be here on the

3  11:33:55    18th, then that is absolutely going to happen.  And I'll work

4  11:33:58    with you to get the of other issues resolved.

5  11:34:03          Which leads me to the last point I want to raise,

6  11:34:06    and that is just on the exhibit list as an artifact, as a

7  11:34:14    thing, not any legal significant, not that having something

8  11:34:18    on there, but what we need is to have a list that runs from

9  11:34:24    one to whatever.  And there is a couple of issues on that.

10 11:34:28          One is on the exhibit list, and in trial, and this

11 11:34:31    is made clear in the local rules when depositions are going

12 11:34:34    on, there is no such thing as a plaintiff's exhibit and a --

13 11:34:40    there is -- or a defense exhibit.  There is no such thing as

14 11:34:43    a Beatbox exhibit or a Labrador exhibit or a Cohen exhibit.

15 11:34:48    They are just exhibits and they have certain numbers.

16 11:34:50          To the extent that in the process of doing

17 11:34:55    discovery, the same document that is -- has been labeled

18 11:35:02    several times, then it just gets the first number and that is

19 11:35:06    used consistently.  And if need be, we'll correct the

20 11:35:10    depositions so the jury understands what the consistent

21 11:35:17    Exhibit Number is for all of the documents.

22 11:35:21          But to do that, the document, the exhibit list, has

23 11:35:25    to have all of the putative documents.  To a degree, it can

24 11:35:30    even have documents such as let's say expert reports that are

25 11:35:36    never going to come in as such, that are never going to go

1 11:35:39   back to the jury room.

2 11:35:42           So in that sense it has to be inclusive.

3 11:35:44           On the other hand, the jury -- this case is not

4 11:35:47   going to go on for weeks and weeks.  It just isn't.  And this

5 11:35:52   case is not going, even if we don't bifurcate anything

6 11:35:58   further, or even if my rulings on the contractual issues

7 11:36:03   aren't such that certain issues are rendered moot or are cut

8 11:36:09   off.  It's just not going to be some, you know, trial that is

9 11:36:14   going on for weeks.

10 11:36:17          And therefore -- and the jury is just not going to

11 11:36:20   have 2,000 exhibits.  You know, it's one thing in the

12 11:36:25   courtroom to have all these electronic exhibits.  I have

13 11:36:29   never had it where the jury goes back with a -- with the

14 11:36:35   electronic exhibits.  The jury goes back generally with

15 11:36:38   physical exhibits.  So what are we going to do, like build a

16 11:36:42   book case so there can be binder after binder after binder of

17 11:36:45   the admitted exhibits or it just -- you just have to be

18 11:36:49   realistic about what exhibits you are actually going to use

19 11:36:53   with the jury, and if I have -- if really if you aren't

20 11:36:58   sure -- my rule is that you just cannot throw a bunch of

21 11:37:02   stuff in there and throw it in the lap of the jury.

22 11:37:05          If an exhibit is not mentioned at trial or, you

23 11:37:10   know, used with a witness, if an exhibit is not mentioned --

24 11:37:14   and, look, I could see that certain exhibits would clearly be

25 11:37:19   admissible or they are stipulated, let's say there is 10

1 11:37:22  exhibits of a certain type, and then you could say ladies and

2 11:37:25  gentlemen look at those 10 exhibits in closing argument, you

3 11:37:27  know, look at those 10 exhibits which have been admitted, we

4 11:37:30  didn't take the time to do it in front of you, but they are

5 11:37:33  in.  You will have them in the jury room.  They are 10

6 11:37:38  e-mails and from those, you will conclude X, okay, that is

7 11:37:42  okay.  You can't do that with a hundred exhibits.  You can't

8 11:37:44  do it with 200 exhibits.  You know, and you certainly can't

9 11:37:48  hope that the jury is going to be going through the binders

10 11:37:50  and is going to seize on something.  It's just not fair to

11 11:37:53  the jury.  So it's not going to happen.

12 11:37:56        So since all of us know that there is not going to

13 11:37:58  be 2,000 exhibits that get used, then there is no need for an

14 11:38:03  exhibit list that has 2,000 exhibits.  And right now, you are

15 11:38:07  still that unsure out of all of the documents exchanged in

16 11:38:11  discovery or marked in discovery as to what your witnesses

17 11:38:14  will in fact be using in front of the jury, then again, I

18 11:38:18  suggest that you are not really ready for trial, and you

19 11:38:21  should admit that, no shame in that, this case has been

20 11:38:25  hanging around for all these years, and it's very

21 11:38:28  complicated.

22 11:38:28        But if that is the case, then I'll rule on phase 1,

23 11:38:32  we'll find a prompt date for phase 2, and I'll give the 18th

24 11:38:37  to one of the other cases that need it.

25 11:38:41        So with that, like I said, I'll talk -- I'm -- I

1  11:38:48   can't meet with you next week -- on Tuesday.  I've got to see

2  11:38:52   what my afternoon is like on Monday to see if there would be

3  11:38:55   some time in the afternoon, because I've got a number ever

4  11:38:58   criminal things.

5  11:38:59        My concern if we meet for too long on Wednesday is

6  11:39:04   that this criminal trial is going to be very quick, and would

7  11:39:08   get in the way on my settling the jury instructions with the

8  11:39:16   prosecutor and the defense attorneys.

9  11:39:21        So I'll talk to Ms. Sanchez, and I'll try to work

10 11:39:24   out when, if I'm available on Monday afternoon, or if you

11 11:39:27   are, I don't know what your schedules are obviously and then

12 11:39:31   whether we will meet -- all right.  I'm being told by my

13 11:39:39   judicial assistant that I have no real time on Tuesday or

14 11:39:42   Wednesday or Thursday, which means I'll then have to talk to

15 11:39:46   Ms. Sanchez and figure out when we can meet on Monday

16 11:39:51   afternoon.

17 11:39:52        And in the meantime, I want you to give me a

18 11:39:59   realistic list, and I don't want it censored in the sense

19 11:40:07   that if a party believes that either because the document has

20 11:40:12   already been excluded, because it's inadmissible, because

21 11:40:15   it's in violation of Rule 26, there will be the opportunity

22 11:40:19   to be heard on those issues, but for now, I want it on the

23 11:40:22   exhibit list so we have a coherent working document of what

24 11:40:29   is putatively going to be used at trial in one form or

25 11:40:36   another.

1 11:40:37          So in that sense, it has to be added in some ways,

2 11:40:42     and it has to be peared down in others.  And that is your

3 11:40:48     number one priority.  I also want that submitted by much noon

4 11:40:56     on Monday.  It is ultimately I am assigning Beatbox as the

5 11:41:01     plaintiff the obligation to create the document, which really

6 11:41:07     means cut and paste on that.  I don't expect Beatbox then to

7 11:41:13     be exercising any sort of gatekeeping function.

8 11:41:20          So that is what the parties --

9 11:41:24          MS. BLAISE:  Order them to send their versions in

10 11:41:27    word by Friday, then?  Because that has been part of the

11 11:41:29    problem, is that.

12 11:41:31         THE COURT:  Right.  Then just, I'll do it by, I

13 11:41:34    mean, look, we are getting ready for trial, you will have to

14 11:41:37    work over the weekend, I'm sorry about that, let's say no

15 11:41:39    later than Friday at 5:00, so.

16 11:41:42         MR. ROSNER:  We have a PST, Your Honor, Pacific

17 11:41:45    standard time, that seems to be an issue.

18 11:41:47         THE COURT:  I'll do that.  I'll make it bank

19 11:41:49    standard time.

20 11:41:51         MS. BLAISE:  And in word format.

21 11:41:53         THE COURT:  In word format.

22 11:41:54         MR. ROSNER:  Can I ask a question, it's a process

23 11:41:56    question.

24 11:41:56         THE COURT:  Sure.

25 11:41:57         MR. ROSNER:  I need to -- I don't want to bring a

1 11:41:59   motion that I don't need to, but Ms. Blaise on February 27th

2 11:42:06   added two pretty comprehensive witnesses, ones that were

3 11:42:12   never mentioned before.  She originally put in Eminem, I

4 11:42:19   guess which is mathers, and she has added the two, I guess,

5 11:42:24   production companies from Eminem, that kind of puts us back

6 11:42:28   on our heels a little bit.

7 11:42:30        THE COURT:  Well, we have enough time between now

8 11:42:32   and the 18th to deal with these Rule 26 issues.

9 11:42:38        For now -- and that is another thing, look at your

10 11:42:41   exhibit list, this is how I do it, is I believe I have

11 11:42:45   mentioned this before, I assign the parties a -- I assign the

12 11:42:54   parties a certain number of hours.  Those hours are the hours

13 11:42:57   that are used for both direct and cross-examination.

14 11:43:00        They don't include picking the jury, they don't

15 11:43:03   include opening statement.  They don't include closing

16 11:43:06   arguments.

17 11:43:07        But they do include both direct and cross.

18 11:43:10        Generally, the way that it's been done is that the

19 11:43:15   plaintiff and the defense get the same number of hours

20 11:43:19   because it's almost always been the case in civil cases that

21 11:43:23   even if there are multiple defendants, that they really, they

22 11:43:28   are really -- I mean, like, maybe and sometimes they have

23 11:43:32   different lawyers, like let's say it's a police brutality

24 11:43:37   case, a Fourth Amendment case, and one is an LAPD officer, so

25 11:43:41   the deputy city attorney is representing her and another one

11:43:43    is a sheriff's deputy, so one of the approved outside counsel

11:43:49    is representing him under the supervision of the County

11:43:53    council.  Yeah, they arguably could blame each other, they

11:43:57    arguably, they have different lawyers, but ultimately their

11:44:02    main point is saying we didn't do anything wrong, you know,

11:44:05    the plaintiff wasn't hurt, it was within what happens, we

11:44:09    have immunity.

11:44:10         So I just give them -- and I have yet to have a

11:44:14    problem where the different defendants, each of them is so

11:44:19    eager to monopolize that amount of time that they can't work

11:44:23    it out.

11:44:23         So here, of course, there are some real, I mean, you

11:44:27    are suing each other, there is definitely, there is some

11:44:32    issues here, but at the same time, there is an awful lot on

11:44:36    which you are aligned so what I would like is for the parties

11:44:40    to submit, and again this can be in a single document, and

11:44:43    I'll expect Beatbox to get it together, and this Beatbox just

11:44:46    deal with this on Monday in the morning is say, and ideally,

11:44:52    of course it would be wonderful if it was a joint thing, but

11:44:55    if not, then just say, we believe that the parties should --

11:45:00    and Beatbox can just say, we believe that the plaintiff and

11:45:03    the defense should get X amount of time.  And then if the

11:45:07    defendants believe that they will be able to work those

11:45:09    issues out amongst themselves about how the defense time gets

11:45:13    allocated, then that is fine.  If you feel we have to do

1 11:45:17   something either like say then there is X amount of time on

2 11:45:20   this, and of course some of this might be if there is a

3 11:45:23   trifurcation, because then maybe your disputes will be

4 11:45:27   handled later.  I -- but just see and if you, work out

5 11:45:32   something.  Make a suggestion to me about how much time you

6 11:45:34   really need.  And submit a witness list.

7 11:45:38         And again, that witness list should include whatever

8 11:45:41   witnesses a party wants on the list, and if some of them

9 11:45:45   should be excluded because of Rule 26, then so be it.

10 11:45:50        And you know, I was once -- I was speaking on a

11 11:45:54   panel to a group of civil lawyers, and they asked me what I

12 11:46:03   liked least about civil trials.  And what I said was a

13 11:46:13   non-frivolous Rule 26 objection, because for a couple of

14 11:46:20   reasons.  One of which is inherently, I can't say, oh, I'm

15 11:46:25   not going to consider those, or you have to raise those ahead

16 11:46:29   of time, or they should have been decided at the pretrial

17 11:46:32   conference, because by definition one party is trying to

18 11:46:36   raise something at the last minute, or -- and then sometimes

19 11:46:42   it even comes up in trial, and on the one hand I really think

20 11:46:49   that the initial disclosures are important and have to be

21 11:46:51   enforced.

22 11:46:52        One of the reasons that there is a lot less

23 11:46:56   discovery disputes in criminal cases is that there is a

24 11:47:01   similar mechanism to the initial disclosures.  And all the

25 11:47:04   parties know it.  If the party wants in its case in chief to

1 11:47:08  raise -- to use an exhibit and it wasn't designated, then it

2 11:47:13  just doesn't happen.  And that right there gets rid of a lot

3 11:47:17  of nonsense.  But here, since in the civil cases sometimes

4 11:47:21  there is a dispute about whether it was really provided or

5 11:47:24  not, and also whether it really was so obvious or there is

6 11:47:28  such a lack of prejudice that you go forward, I have to

7 11:47:32  enforce it.  I have to give the other side a chance to -- a

8 11:47:36  chance to be heard.  And it all has to happen at the last

9 11:47:39  minute.

10 11:47:39       But at the same time, I can't very well just let

11 11:47:42  the -- say, oh, ladies and gentlemen, you go home for the day

12 11:47:45  while I thrash out what happened four years ago at that

13 11:47:49  deposition, whether this document was really exchanged in

14 11:47:53  substance or not.

15 11:47:54       So it's just, really, you know, it's really just a

16 11:47:57  mess.  So here I have do want you to raise those issues.  And

17 11:47:59  I want you to raise them now so we can get them done.  And I

18 11:48:03  one way or the other will get them done before April 18th.

19 11:48:08       But I at the same time for now I just wanted a

20 11:48:13  witness list that is not censored by anyone, that just has

21 11:48:16  all the witnesses on it, that that party in good faith really

22 11:48:20  intends to call.

23 11:48:22       So that is what I'll expect to get by noon Pacific

24 11:48:27  time on Monday.

25 11:48:29       All right.  Thank you, counsel, and I'll get out to

1 11:48:33   you a tentative before we meet so you have some idea of my

2 11:48:42   tentative thoughts are you on the motions in limine, but I

3 11:48:49   will give you a chance to be heard.

4 11:48:52          MR. JACOBSON:  Your Honor.

5 11:48:53          THE COURT:  Yes.  Mr. Jacobson?

6 11:48:55          MR. JACOBSON:  This is Dan Jacobson for Mr. Cohen

7 11:48:58   and MCPC.  I have three things that I wanted to very quickly

8 11:49:03   touch on if I could have 22 seconds per?

9 11:49:08          THE COURT:  You may.

10 11:49:09          MR. JACOBSON:  Okay.  One, there is had the issue of

11 11:49:16   whether -- of whether Labrador appropriately and timely filed

12 11:49:26   a claim against --

13 11:49:28          THE COURT:  That was a point of dispute.

14 11:49:30          Look, let's go ahead and hear that now.  I will tell

15 11:49:33   you that my tentative view is that -- and certainly as to

16 11:49:42   Mr. Cohen, I think that there has been a waiver.

17 11:49:45          I also feel that that is the case with Beatbox as

18 11:49:49   well, although Beatbox has a much stronger argument against

19 11:49:52   that, because it -- there was an objection that was lodged

20 11:49:58   earlier, but -- and whether that is part of the case or not,

21 11:50:01   at least in theory could be something that is decided at the

22 11:50:12   final pretrial conference.  All that being said, at this

23 11:50:14   point, I think it's going forward, Labrador has done it in

24 11:50:18   the case of Mr. Cohen, there was an answer, I think really I

25 11:50:22   don't think the parties are being prejudiced here.  It makes

11:50:24   1   sense for this dispute as to all parties to just get wrapped

11:50:29   2   up whether the case is trifurcated or not, it should get done

11:50:39   3   on that.  That is my tentative view here, but let me give you

11:50:41   4   the chance to be heard.

11:50:43   5          MR. JACOBSON:  Thank you, Your Honor, for giving me

11:50:45   6   my 22 second is.  Really the claims should have been made in

11:50:57   7   2017 under the rules.

11:50:59   8          And we have been going along, although we did

11:51:04   9   provide an answer, it was an answer under protest, and it

11:51:12  10   was -- and we have been going along presuming that this claim

11:51:18  11   did not exist.  Because it didn't follow any of the rules,

11:51:28  12   which include that it needed the consent of the Court, for

11:51:36  13   instance, when Beatbox added parties and claims.

11:51:42  14          It got the consent of the Court.  And Labrador did

11:51:48  15   not.

11:51:49  16          And so I really think that this issue should come to

11:51:58  17   an end.  It never arose in my opinion that the -- it was

11:52:07  18   simply something that was kind of nudged in there.  And it

11:52:20  19   never arose because it never followed the rules, and then we

11:52:25  20   continued with the litigation on the presumption that it does

11:52:32  21   not exist.

11:52:35  22          THE COURT:  Thank you, Mr. Jacobson.

11:52:36  23          Ms. Blaise, do you want to be heard on this issue as

11:52:40  24   well?

11:52:41  25          MS. BLAISE:  I wanted to be heard on kind of a

11:52:44  corollary issue of that, that was about to the extent the

11:52:48  Court is going to make any legal analysis within the con

11:52:53  fines of the agreements, I don't think that this touched on

11:52:58  it, but the Labrador/Cohen agreement and the dispute relating

11:53:01  to what was required by the two of them, that seems to me

11:53:04  that if the Court is going to rule on the legal issues on the

11:53:08  interpretation of the contract, to make it more simple for

11:53:12  the jury, that to the extent the Court is going to rule on

11:53:14  it, I feel like that should be included in that section,

11:53:17  because it makes things more simple if we are going to

11:53:20  ultimately go to the jury on just --

11:53:23          THE COURT:  Thank you.  Let me hear from Mr. Rosner.

11:53:28          MR. ROSNER:  Your Honor, I think my paper speaks for

11:53:31  itself.  I stand on my paper.

11:53:35          THE COURT:  All right.  Mr. Jacobson, I'll -- I'm

11:53:37  going to take this under submission.  I'll give you the last

11:53:39  word for right now.

11:53:40          MR. JACOBSON:  I appreciate it.  I think I've got

11:53:42  11 seconds left on either the.

11:53:45          THE COURT:  You have an extra 11 seconds.

11:53:48          MR. JACOBSON:  Thank you.

11:53:49          We discussed briefly reliance, and I was wondering

11:53:56  if since the law of the case is not a straight jacket, and

11:54:01  the heavy weight of the -- this district's rulings and the

11:54:10  California -- other district's rulings in California is that

1 11:54:14    there has to be reliance on the warranty under California

2 11:54:19    law.

3 11:54:20             So I was wondering if we should have a -- have a

4 11:54:32    briefing schedule on that.

5 11:54:34             THE COURT:  Right.  I'll consider that,

6 11:54:37    Mr. Jacobson.  That is one ever the reasons I wanted to take

7 11:54:41    it under submission.

8 11:54:42             So thank you, counsel.

9 11:54:45             MR. JACOBSON:  One more very quick thing is that of

10 11:54:49   course we'll follow obviously the Court's order, but

11 11:54:54   submitting things in Word, and I don't want to get into a bad

12 11:55:04   match here, but submitting things -- when we submitted things

13 11:55:10   in word processing programs before on November 7th when we

14 11:55:18   were trying to put together the order, based on today,

15 11:55:25   Beatbox threw some of it out, and so we are concerned if

16 11:55:33   perhaps --

17 11:55:34             THE COURT:  I realize, Mr. Jacobson, that that is

18 11:55:39   underlying ostensibly the point of dispute or the point of

19 11:55:44   discussion that was raised, but what I really amore

20 11:55:49   focused -- I don't really care about that, okay?  What I care

21 11:55:52   about, because the final pretrial conference order isn't

22 11:55:55   finalized.  So it's -- and it is not in a position to be

23 11:55:59   finalized.  So I don't think we have to worry about that.

24 11:56:03             What I'm interested in, not surprisingly and whether

25 11:56:09   the cross claim is -- should be considered timely or not.

1 11:56:15  And whether it -- if it is, whether it will be trifurcated or

2 11:56:20  not.

3 11:56:21          So that is, like I said, you don't -- I'm not tying

4 11:56:31  down the final pretrial conference order.  Ms. Blaise, is

5 11:56:34  there some procedural housekeeping matter on which you would

6 11:56:37  like to be heard?

7 11:56:37          MS. BLAISE:  First of all, I wanted to apologize to

8 11:56:40  Ms. Sanchez, the only e-mail I sent to her with the urgent

9 11:56:43  request is to try to accommodate the Court's schedule to move

10 11:56:46  to today's date from Monday.

11 11:56:47          So that was based on the hearing that we had where

12 11:56:51  you wanted to change things.

13 11:56:52          THE COURT:  Right.  And that was not what gave mice

14 11:56:58  to my -- I understood that that happened, and I -- you

15 11:57:02  responded, it was immediately brought to my attention.  I

16 11:57:05  immediately made clear what I was willing to have happen, and

17 11:57:09  that is -- so that is done.

18 11:57:11          All this stuff, I'm sure going forward, look, this

19 11:57:15  is really for the sake of your clients.  Really, I'm just

20 11:57:17  concerned here that a dispute in arising from New Zealand

21 11:57:24  that doesn't even come to, I guess with costs, I suppose, it

22 11:57:29  will come to a half million dollars.

23 11:57:31          MS. BLAISE:  In excess of a million dollars.

24 11:57:32          THE COURT:  All of this is going on.  I just, you

25 11:57:35  know, really if you just stipulated to some reasonable but

111:57:40   not freakishly expensive arbitrator, and you had a baseball

211:57:46   arbitration where the person who made the most reasonable

311:57:48   claims won, and you argued and you submitted -- you said,

411:57:53   okay, take eight hours and read this evidence, and read judge

511:57:57   Fitzgerald's rulings, and then let us put on witnesses by

611:58:02   Zoom for four hours, and let us argue for two hours, and then

711:58:08   tell us what the answer is, I just can't believe that your

811:58:11   clients wouldn't be better off.

911:58:13            But, look, that is --

1011:58:15            MS. BLAISE:  I have tried every opportunity to try

1111:58:17   to mediate and resolve this case.

1211:58:19            THE COURT:  Then I -- for whatever reason, and look,

1311:58:22   I just.

1411:58:23            MR. ROSNER:  Do I need to respond to that.

1511:58:25            THE COURT:  Again, I don't want to be informed of

1611:58:26   the details of any attempts and all of that, it's just not my

1711:58:30   place.  My job here is to give you a trial, and observe the

1811:58:33   Seventh Amendment.  That is what I'm doing.  It's just, and

1911:58:37   if I had the sense that all three of you were working

2011:58:40   together to have this be as painless and easy and inexpensive

2111:58:46   a process as it could be, then I probably wouldn't even be

2211:58:52   saying these things.  I just can't help at some point just

2311:58:55   saying that, look, you know, you are all good lawyers, and

2411:58:58   you have been litigating this all this time.  I think I have

2511:59:02   complained about each of you in the past about something.

1 11:59:04  So, but I've always done my best to give you some rulings.

2 11:59:08  There was the one ruling why I screwed up, and I let the

3 11:59:14  thing kind of sit without giving you a formal ruling, and

4 11:59:17  when this happened I admitted it and I got it out.

5 11:59:20          So there is plenty of blame to go around on

6 11:59:23  everyone, including me.  It's just here now, let's just

7 11:59:27  decide, is there going to be -- is there going to be a jury

8 11:59:32  panel walking into my courtroom on April 18th, yes or no.

9 11:59:36  And if the answer is yes, I will do whatever I have to

10 11:59:40  between then and now, so what it is that that jury is going

11 11:59:43  to decide it will be crystal clear to everyone, including

12 11:59:47  them.  And if not, then I will use the extra time to brief

13 11:59:56  and if need be, hear evidence, and resolve all of the phase 1

14 12:00:00  issues, and get that ruling out to you very, very quickly, so

15 12:00:06  you can just determine then what the jury trial would

16 12:00:09  actually look like, and how long it would take, and I assure

17 12:00:12  you that I would fit you in as quickly as I could after that.

18 12:00:16          The problem is, I'm on both the judicial conference

19 12:00:23  and the Ninth Circuit committee for space and facilities, the

20 12:00:27  Ninth Circuit committee is meeting in the third week of May,

21 12:00:30  the judicial conference committee is meeting in the third

22 12:00:33  week of June.  So it might be kind of hard to get the jury

23 12:00:36  trial in, you know, into that time.

24 12:00:39          But if we -- if it's become simplified enough that

25 12:00:42  we can, then absolutely we will on that.  Again, I completely

1 12:00:50   get it that Beatbox witnesses just want to have a date

2 12:00:54   certain that they can plan their lives around.  It's very

3 12:00:57   expensive.  It's very time-consuming.  I get that.

4 12:01:00       So that only would be if all three parties are

5 12:01:04   enthusiastic about moving it.  Otherwise, we are going to

6 12:01:07   have a jury trial on April 18th and I will do whatever I have

7 12:01:11   to do to get all the rulings made, and those include any Rule

8 12:01:15   26 objections, whether those be to exhibits or to witnesses.

9 12:01:18       All right.  Counsel, I have really got to give the

10 12:01:22   court reporter a break now, so I will talk to you sometime.

11 12:01:27       MR. ROSNER:  Thank you, Your Honor.

12

13

14

15

16

17

18

19

20

21

22

23

24

25