BLAISE & NITSCHKE, P.C.
HEATHER L. BLAISE, ESQ. (SBN 261619)
145 S. Wells Street, Suite 1800
Chicago, IL 60606
Telephone: 312-448-6602
Email: hblaise@blaisenitschkelaw.com

Attorneys for Plaintiff,
BEATBOX MUSIC PTY, LTD.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BEATBOX MUSIC PTY, LTD., <br><br> Plaintiff, <br><br> v. <br><br> LABRADOR ENTERTAINMENT, INC. D/B/A SPIDER CUES MUSIC LIBRARY, a California corporation; NOEL PALMER WEBB, an individual; MICHAEL COHEN, an individual; LABRADOR ENTERTAINMENT, LLC; MCPC HOLDINGS, LLC; WEBB FAMILY TRUST and DOES 1-20, inclusive, <br><br> Defendants. <br><br> AND ALL RELATED ACTIONS | CASE NO: 2:17-cv-6108 MWF (JPRx) <br> *Assigned to the Hon. Michael W. Fitzgerald* <br><br> **PLAINTIFF BEATBOX MUSIC PTY, LTD.'S RESPONSE IN OPPOSITION TO DEFENDANT AND CROSS-CLAIMANT MICHAEL COHEN AND DEFENDANT MCPC HOLDINGS, LLC'S EX PARTE APPLICATION TO (1) QUASH THE SUBPOENAS ISSUED BY PLAINTIFF ON APRIL 3, 2023 (2) TO INVOLUNTARILY DISMISS PLAINTIFF'S ACTION, AND (3) TO DETERMINE SUBJECT MATTER JURISDICTION** <br><br> Trial Date:       April 18, 2023 <br> FAC:              January 24, 2020 <br> Cross-Claim Filed: November 21, 2017 <br> Action Filed:     August 17, 2017 |

-1-
PLAINTIFF BEATBOX MUSIC PTY, LTD.'S RESPONSE IN OPPOSITION TO DEFENDANT AND CROSS-CLAIMANT MICHAEL COHEN AND DEFENDANT MCPC HOLDINGS, LLC'S EX PARTE APPLICATION

Cohen's *Ex Parte* Application misconstrues the Court's rulings in this case, mischaracterizes this Court's rulings in other cases, and misstates material aspects of the record. The *Ex Parte* is, in a word, frivolous. Plaintiff provided ample notice of its intention to issue trial subpoenas to the recordkeepers for Cohen's banks, and Plaintiff disclosed the recordkeepers as intended witnesses in its Witness List and its Amended Witness List. *See* Dkts. 292 and 350. Although replete with ample bold text and capitalized mischaracterizations of the procedural history of this case, the core premise of the *Ex Parte* Application—that issuing trial subpoenas for disclosed witnesses is in some manner prejudicial, and that the issuance of trial subpoenas is somehow also a want of prosecution—finds no comfort in case law, nor is it even logical. Even if Cohen's assertions are *arguendo* taken as true, nothing contained within the *Ex Parte* Application, delivered on the eve of trial, justifies the extreme remedy Cohen now seeks. For these reasons, the *Ex Parte* Application must be denied.

## I.   DISMISSAL, WHETHER UNDER RULE 41(B) OR THE COURT'S INHERENT AUTHORITY, IS NOT WARRANTED.

Involuntary dismissal under Rule 41(b) is a "rather drastic remedy." *Industrial Building Materials, Inc. v. Interchemical Corp.*, 437 F.2d 1336, 1338-39 (9th Cir. 1970). "In determining whether to dismiss a claim for failure to prosecute or failure to comply with a court order, the Court must weigh the following factors: (1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to defendants/respondents; (4) the availability of less drastic alternatives; and (5) the public policy favoring disposition of cases on their merits." *Yourish v. Cal. Amplifier*, 191 F.3d 983, 989-92 (9th Cir. 1999).

Courts also have an "inherent power to control their dockets. In the exercise of that power, they may impose sanctions including, where appropriate, default or dismissal. Dismissal, however, is so harsh a penalty it should be imposed as a sanction only in extreme circumstances." *Thompson v. Housing Authority of Los Angeles*, 782

F.2d 829, 830 (9th Cir. 1986). Given the severity of a dismissal, the Ninth Circuit requires weighing the same factors as a Rule 41(b) involuntary dismissal. *Id.*

As explained in greater detail below, because the nature of Cohen's argument is transparently flimsy, Cohen has failed to demonstrate any basis whatsoever for the extreme remedy of the involuntary dismissal of a trial-ready case. Consequently, the *Ex Parte* Application must be denied.

    **a. Cohen confuses pretrial discovery with trial practice.**

Much of Cohen's *Ex Parte* Application rests on the false assumption that procedural orders quashing pretrial discovery subpoenas because the response time was after the close of discovery while an *ex parte* application to extend was pending somehow serves to limit the ability of a party to later issue trial subpoenas. Courts across the country and within the Ninth Circuit have correctly recognized the difference between trial and discovery subpoenas. "While both discovery and trial subpoenas trial may be issued under Rule 45, they are not the same thing." *FTC v. Netscape Communs. Corp.*, 196 F.R.D. 559, 560 (N.D. Cal. 2000). "The rule addresses the two types of subpoenas in the disjunctive." *Id.*, citing Fed. R. Civ. P. 45(a)(1)(D). "A trial subpoena (ad testificandum, duces tecum, or both) must issue from the court in the district where the trial is held, whereas a pre-trial discovery subpoena for production of documents or attendance at a deposition must issue from the court for the district in which the production or deposition is to occur." *FTC*, 196 F.R.D. at 560, citing Fed. R. Civ. P. 45(a)(1)(D)(2). "While controlled by the same rule, pre-trial discovery subpoenas and trial subpoenas differ in scope and operation and are easily identifiable under the rule as separate entities." *FTC* at 560.

Furthermore, Judge Rosenbluth's ruling on the discovery subpoenas was not an "implicit sanction," nor was any ruling made barring the testimony at trial of bank recordholders. Rather, Judge Rosenbluth explicitly stated that there was no "ruling on the merits one way or the other as to whether [Plaintiff] is entitled to the information

-3-
PLAINTIFF BEATBOX MUSIC PTY, LTD.'S RESPONSE IN OPPOSITION TO DEFENDANT AND CROSS-CLAIMANT MICHAEL COHEN AND DEFENDANT MCPC HOLDINGS, LLC'S EX PARTE APPLICATION

the subpoenas seek" and the motion to quash was granted without adjudicating such merits. *See* Dkt. 222, p. 15:6-24-16:8. Judge Rosenbluth quashed with the express understanding that a request had been made to extend the discovery cutoff. *Id.* at 16:1-8. Indeed, Beatbox's Ex Parte Applicaton to extend discovery was filed on July 20, 2021. *See* Dkt. 202. Importantly, the *ex parte* application included a stipulation signed by Attorney Patel for Cohen Defendants as follows:

> The Attorneys for Cohen and Beatbox agree to stipulate to an extension of the time for bringing a motion to quash and/or compel with respect to certain subpoenas issued by Beatbox on various financial institutions, subject to Cohen Defendants reservation of and intent to raise substantive arguments against the subpoena. The Labrador Defendants have not agreed to this extension. […] The Attorneys for Cohen and Beatbox agree to stipulate to an extension of the time for Cohen Defendants to provide additional document production outstanding which may require additional continued deposition of one of the Cohen Defendants until August 30, 2021.

*See* Dkt. 202-2. Nevertheless, eight (8) months later on March 30, 2022, this Court denied the request to extend discovery despite the stipulation relating to financial institutions as moot. *See* Dkt 255.

### b. This Court's decisions in other cases involving involuntary dismissal bear no resemblance to the case at bar.

As the Court is already aware, the prior decisions in other cases before this Court that Cohen has cited are radically different in procedural posture than the case *sub judice*. In one case cited by Cohen, *Vartanian*, the plaintiff failed to appear for a 16(b) scheduling conference and failed to participate in the filing of a Rule 26(f) Report. See 2012 U.S. Dist. LEXIS 102076 at *1. There is no comparable allegation leveled at Beatbox or its counsel; any analogy therefore is unavailing. Likewise, another case cited by Cohen, *Mack v. Perez*, concerned a *pro se* plaintiff whose initial pleading failed to identify all parties in its caption and failed to separate claims into sequentially numbered paragraphs. 2020 U.S. Dist. LEXIS 83671 at *5. This Court then afforded

the *pro se* Plaintiff the opportunity to correct these facial defects, which the *pro se* plaintiff failed to do, and in fact admitted that "amendment is futile." *Id.* at 6.

*Mack* or *Vartanian*, which both concerned fundamental failures to act when called upon by the Court, bear no resemblance to Plaintiff's issuance of valid trial subpoenas to repeatedly disclosed witnesses. As Cohen supplies no case law to support its bizarre contention that Judge Rosenbluth's quashing of a discovery subpoena somehow operates to bar a later trial subpoena to the same witness, Cohen has alleged no cognizable "violation" of a Court order whatsoever. Thus, Cohen's argument for dismissal disintegrates under even casual scrutiny.

    **c.**    **Beatbox did not "surreptitiously alter" any document, whether in January 2023 or otherwise**.

Cohen next strangely argues that Beatbox "altered" a document in January 2023, then cites to a filing that Cohen made in February 2023 which Beatbox has moved to strike in Dkt. 346. In the interest of conserving judicial resources and to avoid having to guess at what Cohen is referring to— particularly given that no joint filing occurred in January 2023—Beatbox would ask for leave to file an additional brief in the instance that the Court is inclined to base its ruling on this unsupported contention in the *Ex Parte* Application.

    **d.**    **Cohen's misconstruction of the Court's comments is unavailing.**

In an effort to buttress the frivolous argument to dismiss a trial-ready case, Cohen cherry-picks several quotes from the Court's on March 23, 2023, and twists the quotes beyond all context or recognition.

At one juncture, Cohen mischaracterizes the Court's comments on March 23, 2023 regarding damages. From the outset, Beatbox wishes to express its understanding that the Court's comments regarding damages were of an exploratory and general nature and certainly not a judicial determination fixing a certain value to Beatbox's damages. The Court has recognized in its tentative rulings and the open legal issues

that there are open legal questions regarding the full scope and recoverability of attorney's fees in this case. It is therefore Beatbox's understanding that the Court was perhaps referring to the face value of the New Zealand judgment and it is certainly not Beatbox's understanding that the Court was at that time fixing any hard limit to Beatbox's damages or otherwise implying that Beatbox would be prohibited from presenting legal argument or evidence which supports a larger award, especially considering that the attorneys' fees and costs in the New Zealand action are expressly within the confines of damages relating to a breach of the duty to indemnify. Cohen's comments regarding a "windfall," "insolence," *et al* are therefore entirely inappropriate and should be disregarded; Beatbox has presented its arguments in good faith, and its counsel will continue to preserve Beatbox's arguments, rights, and all available remedies at every opportunity.

In the *Ex Parte*, Cohen also presents the Court's discussion regarding the Courtroom Clerk, Ms. Rita Sanchez, which have no bearing whatsoever on the procedural argument in the *Ex Parte* Application. This case is set for trial. The Court, Beatbox, and the Defendants are all engaged in trial preparation activity. To preserve judicial economy and avoid bogging the Court down with an exhaustive list of Mr. Jacobson's frequent communications with Ms. Sanchez, including requesting her interpretation of the meanings of court orders, or his conduct in this case (the latter of which was already, *in part*, the subject of Dkt. 346), Beatbox wishes only to respectfully request the opportunity to present further argument and information on these issues if the Court is inclined to base its ruling on this recitation contained in the *Ex Parte* Application.

e.  **The parties had leave to file a trial brief.**

In the 24-page *Ex Parte* Application which addresses none of the pertinent issues before the Court, Cohen complains in the *Ex Parte* Application that Beatbox filed a brief related to the outstanding legal issues the Court is considering, despite the fact

that Cohen himself included repeated legal arguments, as well as links to the United Nations website, to support its own presentation of what Cohen believes are the remaining legal issues in the case, despite the Court's instruction to provide a joint list of legal issues.  Under Local Rule 16-10, parties are permitted to file trial briefs. Plaintiff Beatbox Music Pty. Ltd's Brief Regarding Legal Issues Presented by the Parties for Adjudication Prior to Trial (the "Beatbox Brief") provided succinct, pertinent argument to the outstanding legal issues raised by the parties to assist the Court in its analysis, as is customary in litigation.  Although the *Ex Parte* Application complains of the length of the Beatbox Brief, nineteen pages is less than twenty-five, or even the twenty-four pages included in the *Ex Parte* Application.  Furthermore, over two pages of the Beatbox Brief groups and restates legal issues presented by the parties to better assist the Court in addressing multiple related issues simultaneously; thus, there was no new argument in these pages for Cohen to consider.  Additionally, Beatbox devoted only a page and a half of new argument to the most troubling aspect of Cohen's trial conduct, namely the introduction of never before pled affirmative defenses for which Cohen has no basis, namely failure of consideration and unconscionability.

   The Beatbox Brief is aimed only at aiding the Court in determining the outstanding legal issues.  The resources required to respond to the 24-page *Ex Parte* Application have effectively prevented the preparation of a further trial brief. As a result, Beatbox respectfully requests that the Beatbox Brief, Dkt. 378, be deemed its trial brief on the outstanding legal issues consistent with Local Rule 16-10.

   As there is no prejudice to Cohen by the filing of points and authorities meant to assist the Court in its analysis of the remaining legal issues, and because a pretrial brief is permitted, and because the resources expended preparing the 24-page *Ex Parte* Application could have been directed to briefing the legal issues raised in the 19-page Beatbox Brief, the *Ex Parte* Application must be denied.  Moreover, this Court already

instructed Cohen that he could also file a written response to the legal issues in open court on April 10, 2023. Rather than accepting this Court's invitation for consideration on the merits, Cohen elected to waste the time and resources of the parties and the Court by filing this frivolous *ex parte*. Indeed, when the Court posed the question to Attorney Jacobson in open court as to how he proposed to deal with his continued argument relating to third party beneficiary issues, Attorney Jacobson stated that he would prefer to deal with such continued argument in his final trial brief. Dkt. 381-10, p. 17, lines 21-25.

### f.   Cohen's *pro forma* objections to the trial subpoena fail.

Service by certified mail has routinely been found to be appropriate under Rule 45 in courts across the country, including in the Ninth Circuit. *See BNSF Ry. Co. v. Alere, Inc.*, No. 18-CV-291-BEN-WVG, 2018 WL 2267144, at *5 (S.D. Cal. May 17, 2018) (holding personal service not required but that service through Federal Express or certified mail would suffice); *FTC v. Compagnie De Saint–Gobain–Pont–a–Mousson, 636 F.2d 1300*, 1312–13 (D.C.Cir.1980).

To the extent that Rule 45 requires personal service, "the first question is personal service by whom?" *Ott v. City of Milwaukee*, 682 F.3d 552, 557 (7th Cir. 2012). "An agent of the postal service surely qualifies as a 'person at least 18 years of age and not a party.'" *Id.* "And certified mail is a service that provides the sender with a mailing receipt; the Post Office also maintains a proof-of-delivery record with a copy of the recipient's signature for two years from the date of mailing." *Id.*, citing USPS, Frequently Asked Questions, http://faq.usps.com/ (last visited May 23, 2012). "We see no reason to inflate the costs of litigation by ruling out this sensible option for serving a subpoena (along with the necessary fees) and requiring parties to hire a second person for service, at least in the absence of any language in the Rule that compels such a result." *Id.* As for the location the subpoenas were served, each of the banks were served at the location of their registered agent in California. *See* Dkt. 381-4. As   for

the witness fee, it is not possible to confirm the precise witness fee until the final distance of the witness to the Courthouse has been fully ascertained. Beatbox is prepared and able to tender the full witness fee but cannot do so until the banks have identified the record-keepers they will produced and confirmed the distance they will travel, as is customary at trial.

Consequently, because Beatbox has complied with Rule 45 and because Cohen has produced no on-point argument in support of the *pro forma* objections to the trial subpoenas at issue, the *Ex Parte* Application must be denied.

### g. There was no "retaliation" nor did Plaintiff ever refuse to comply with Local Rule 83.27.

Cohen also complains of "retaliation" related to a Local Rule 83-9.2 filing by Cohen in March 2021 and claims that Plaintiff did not comply with a local rule. Nothing could be further from the truth. As described in greater detail in Dkt. 184, Cohen had filed a Motion for Partial Summary Judgment, Dkt. 115, which was fully briefed in Dkts. 125, 126, and 134. The Court ruled on that Motion for Partial Summary Judgment and disposed of it in its entirety. Dkt. 157. Cohen then filed Motion for Judgment on the Pleadings on the exact same issues. Dkt. 165. No intervening motion to reconsider had been granted, nor had the Court granted leave to Cohen to reargue the same issue. Moreover, given the conduct of counsel in continuing to repeatedly argue the same decided issues, it does not appear that nothing absent an express court order directing him to cease advancing the same arguments will stop the onslaught of legal expenses Plaintiff is forced to incur to defend.

As the issue had been decided and there was no basis to revisit it, Plaintiff did not agree that Local Rule 83-9.2 was implicated, nor did Plaintiff believe it was required to notify this Court and the presiding judge of Cohen's pending brief (which sought to rehash a decided issue and during Covid delays and extensions). The Rule 11 correspondence was not a "retaliation" but a caution to Cohen and Cohen's counsel

that the serial briefing on identical issues was neither an efficient use of the Court's time nor complaint with Plaintiff's understanding of the Local Rules and applicable court orders.

This interaction is characteristic of those that Cohen has chosen to mischaracterize in his *Ex Parte* Application. Rather than revisit every possible prior interaction that Cohen has dredged up in the *Ex Parte* Application and in the interest of judicial economy, Beatbox respectfully requests that the Court deny the *Ex Parte* Application or, *in the alternative*, seeks leave to address these interactions in greater detail if the Court intends to base any component of its ruling on the matter asserted.

   h. **The Court has subject matter jurisdiction, and the fact that Cohen is seeking for the Court to deprive the parties of diversity is enough to warrant denial of the *Ex Parte* Application**.

Cohen's sole argument regarding subject matter jurisdiction depends on a hypothetical: that *if* the Court granted the extreme remedy of involuntary dismissal, then diversity jurisdiction would be impacted on the remaining claims between Labrador and Cohen due to an alleged non-diversity of parties pursuant to 28 U.S.C. 1332. What Cohen fails to realize is that this argument militates further against the extreme relief it requests, as Cohen is effectively asking the Court, based on one party's say-so, to deprive a Plaintiff and a Cross-Plaintiff of a mature, trial-ready record. This means that none of the factors favor involuntary dismissal, as (1) it would prejudice the public's interest in resolving litigation expeditiously (by dismissing a trial-ready case between multiple parties that includes the direct claims and the cross-claims); (2) would undermine the considerable efforts the Court has directed the parties that it has undertaken to manage its docket; (3) would prejudice not just Beatbox, but Cohen's co-defendant Labrador through the dismissal of claims; (4) would not be a judgment not on the merits; and, most critically, (5) **Cohen has not actually alleged any sanctionable conduct.**

For these reasons, as the five factors all weigh against Cohen, the *Ex Parte* Application must be denied.

## II.     SANCTIONS ARE WARRANTED AGAINST COHEN.

The Cohen Defendants and their counsel continue to force Plaintiff and this Court to expend resources which would be better spent in preparing for trial and adjudicating the merits of the case. To deter the Cohen Defendants and their counsel from continuing in this pattern, Plaintiff requests that the Court award its reasonable attorneys' fees and costs for being forced to respond to this *ex parte* as part of this Court's inherent powers, and any other relief this Court deems necessary and just.

DATED: April 12, 2023

Respectfully submitted,
**BEATBOX MUSIC PTY, LTD.**
 /s/ *Heather L. Blaise*
HEATHER L. BLAISE, ESQ.(SBN 261619)
*Attorney for Plaintiff*

-11-

PLAINTIFF BEATBOX MUSIC PTY, LTD.'S RESPONSE IN OPPOSITION TO DEFENDANT AND CROSS-CLAIMANT MICHAEL COHEN AND DEFENDANT MCPC HOLDINGS, LLC'S EX PARTE APPLICATION