UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

<u>CIVIL MINUTES—GENERAL</u>

**Case No.** CV 17-6108-MWF (JPRx)                **Date:  April 13, 2023**
Title:     Beatbox Music Pty, Ltd. v. Labrador Entertainment, Inc., et al.

Present:   <u>The Honorable MICHAEL W. FITZGERALD, U.S. District Judge</u>

          Deputy Clerk:                          Court Reporter:
          Rita Sanchez                           Not Reported

          Attorneys Present for Plaintiff:       Attorneys Present for Defendant:
          None Present                           None Present

**Proceedings (In Chambers):**        ORDER RE: LEGAL ISSUES SUBMITTED
                                      BY PARTIES

    Before the Court are legal issues jointly submitted by the parties to be
considered by the Court, filed on March 29, 2023.  (Docket No. 368).  The Court
considers these questions alongside the arguments made in each parties'
memorandums of contentions of law and facts.  (Docket Nos. 286, 295, 349).  The
Court also reviewed the parties' prior briefing in various motions to dismiss, a motion
for judgment on the pleadings, and motions for summary judgment.

    The Court has read and considered the various briefs filed by the parties and
held a hearing on **April 10**, **2023**.

    The parties have submitted a list of legal issues they believe can be determined
by the Court prior to the jury trial set for April 19, 2023.  The Court will analyze the
identified legal issues under a summary judgment standard, pursuant to the California
law that assigns the interpretation of a document to the Court unless there are serious
factual disputes in the extrinsic evidence.

    The majority of issues raised by the parties require the Court to interpret (1)
Composer Agreement ("Labrador-Cohen Agreement") (Docket No. 1-1) between
Michael Alan Cohen and Labrador Entertainment, Inc. entered into on February 14,
2008, and  (2) the Sub-Publishing Contract ("Beatbox-Labrador Agreement") (Docket

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

<u>CIVIL MINUTES—GENERAL</u>

**Case No.** CV 17-6108-MWF (JPRx)                  **Date:** April 13, 2023
Title:      Beatbox Music Pty, Ltd. v. Labrador Entertainment, Inc., et al.

No. 1-2) between Labrador Entertainment, Inc. and Beatbox Music Pty Ltd entered into on April 1, 2009, and amended by the parties on April 28, 2014 (Docket No. 1-3).

Under California law, "[t]he rules governing the role of the court in interpreting a written instrument are well established." *Wolf v. Walt Disney Pictures & Television*, 162 Cal. App. 4th 1107, 1125, 76 Cal. Rptr. 3d 585 (2008), *as modified on denial of reh'g* (June 4, 2008). Those rules have been summarized as follows:

> The interpretation of a contract is a judicial function. In engaging in this function, the trial court gives effect to the mutual intention of the parties as it existed at the time the contract was executed. Ordinarily, the objective intent of the contracting parties is a legal question determined solely by reference to the contract's terms.

> The court generally may not consider extrinsic evidence of any prior agreement or contemporaneous oral agreement to vary or contradict the clear and unambiguous terms of a written, integrated contract. Extrinsic evidence is admissible, however, to interpret an agreement when a material term is ambiguous.

> When the meaning of the words used in a contract is disputed, the trial court engages in a three-step process. First, it provisionally receives any proffered extrinsic evidence that is relevant to prove a meaning to which the language of the instrument is reasonably susceptible. If, in light of the extrinsic evidence, the language is reasonably susceptible to the interpretation urged, the extrinsic evidence is then admitted to aid the court in its role in interpreting the contract. When there is no material conflict in the extrinsic evidence, the trial court interprets the contract as a matter of law. This is true even when conflicting inferences may be drawn from the undisputed extrinsic evidence or that extrinsic evidence renders the contract terms susceptible to more than one reasonable interpretation. If, however, there is a conflict in the extrinsic evidence, the factual conflict is to be resolved by the jury.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.  CV 17-6108-MWF (JPRx)**                        **Date:  April 13, 2023**
Title:       Beatbox Music Pty, Ltd. v. Labrador Entertainment, Inc., et al.

*Id.* at 1125-27 (internal citations, quotation marks and brackets omitted).

Under these standards, "[c]ontract interpretation, as a question of law, is often amenable to summary judgment, although summary judgment may be inappropriate in a contract case if there is a dispute over a material fact necessary to interpret the contract." *Essex Walnut Owner L.P. v. Aspen Specialty Ins. Co.*, 335 F. Supp. 3d 1146, 1150 (N.D. Cal. 2018) (cleaned up).

When there is a genuine dispute as to extrinsic evidence, a court may direct the jury to "make special findings on the disputed issues and then base its interpretation of the contract on those findings." *Medical Operations Mgmt., Inc. v. Nat. Health Labs., Inc.*, 176 Cal. App. 3d 886, 892 n.4, 222 Cal. Rptr. 455 (1986).  However, "a trial court is not required to submit special verdicts to the jury when construction of a written instrument turns on the credibility of extrinsic evidence." *City of Hope Nat. Med. Ctr. v. Genentech, Inc.*, 43 Cal. 4th 375, 396, 75 Cal. Rptr. 3d 333 (2008).  In those circumstances, a jury may properly interpret a contract.  *Id.* at 395.  The principle is illustrated by the following, form instruction:

> "Plaintiff and Defendant dispute the meaning of the following words in their contract: [disputed language].  Plaintiff claims that the words mean [interpretation].  Defendant claims that the words mean [interpretation]. Plaintiff must prove that his interpretation is correct.  In deciding what the words of a contract mean, you must decide what the parties intended at the time the contract was created.  You may consider the usual and ordinary meaning of the language used in the contract as well as the circumstances surrounding the making of the contract."

Judicial Council of California, Civil Jury Instructions (CACI) 314, Interpretation—Disputed Words.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.  CV 17-6108-MWF (JPRx)                    Date:  April 13, 2023**
Title:      Beatbox Music Pty, Ltd. v. Labrador Entertainment, Inc., et al.

### A.      Meaning of the Indemnity Clause in Beatbox-Labrador Agreement (section 16(v) and section 16(vi))

Beatbox and Labrador both contend that the indemnity provisions in the Beatbox-Labrador Agreement have been triggered.

Parties to a contract may agree to require a party to indemnify another for expenses incurred "from a legal consequence of the conduct of one of the parties, or of some other person."  Cal. Civ. Code, § 2772; *Crawford v. Weather Shield Mfg., Inc.*, 44 Cal.4th 541, 551, 79 Cal.Rptr.3d 721, (2008).  "They may also assign one party, pursuant to the contract's language, responsibility for the other's legal defense when a third party claim is made against the latter."  *Id.* at 551.  "[S]ubject to public policy and established rules of contract interpretation, the parties have great freedom to allocate such responsibilities as they see fit."  *Id.*

Generally, "such an agreement is construed under the same rules as govern the interpretation of other contracts.  Effect is to be given to the parties' mutual intent, as ascertained from the contract's language if it is clear and explicit.  Unless the parties have indicated a special meaning, the contract's words are to be understood in their ordinary and popular sense."  *Id.* at 552.

A duty to defend arises only "in respect to the matters embraced by the indemnity."  Cal. Civ. Code, § 2778, subd. 4; *Crawford,* 44 Cal. 4th at 554.  The *Crawford* court interpreted the phrase "embraced by the indemnity" to include a duty to defend claims "which, at the time of tender, allege facts that would give rise to a duty of indemnity."  44 Cal. 4th at 558.

### 1.  Was section 16(v) triggered upon notice of a third-party claim in New Zealand?

The Beatbox-Labrador Agreement includes the following indemnity provision outlining when Labrador (the "Publisher") has agreed to indemnify and hold harmless Beatbox (the "Sub Publisher"):

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.  CV 17-6108-MWF (JPRx)**            **Date:  April 13, 2023**

Title:     Beatbox Music Pty, Ltd. v. Labrador Entertainment, Inc., et al.

"(v) The Publisher agrees to indemnify and hold harmless the Sub Publisher, its successors and assigns of and *from any and all loss, liability and expense incurred by reason of any infringement of rights or other claim inconsistent with the Publishers* [sic] *guarantees*, warranties, representations and undertakings contained in this Agreement.  This indemnity shall not be adversely affected should exploitation of the recordings continue after notice of infringement of rights or other claim has been received by the Sub Publisher."

(Beatbox-Labrador Agreement § 16) (emphasis added).  Among other things, Labrador represented and warranted that:

"(iv) the Compositions are original and that none of the Compositions infringes any other copyright work or the rights of any third party."

(*Id.*).

Because "the duty to defend arises as a matter of law," the duty is "not a question of fact for the jury," and it is for the Court to decide if the claim at issue is "embraced by the indemnity agreement[s]" in this case.  *See Centex Homes v. R-Help Construction Co., Inc.*, 32 Cal. App. 5th 1230, 1236, 244 Cal. Rptr. 3d 574 (2019).  Here, the clear language of the indemnity provision suggests that Labrador agreed to indemnify Beatbox from copyright infringement actions brought by third-parties, because such claims would be premised on allegations that are necessarily inconsistent with Labrador's representation that none of the Compositions infringes any other copyright work.  Notably, under California law, where a complaint alleges facts embraced by the indemnity agreement, "the indemnitor has a duty to defend throughout the underlying tort action unless it can conclusively show by undisputed facts that plaintiff's action is not covered by the agreement."  *Id.* at 1237.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

<u>CIVIL MINUTES—GENERAL</u>

Case No.  CV 17-6108-MWF (JPRx)                    Date:  April 13, 2023
Title:       Beatbox Music Pty, Ltd. v. Labrador Entertainment, Inc., et al.

Accordingly, because there is no evidence that Labrador conclusively showed by undisputed facts that the New Zealand action was not covered by the indemnity clause, the Court determines that the indemnity clause was triggered by the filing of the New Zealand copyright infringement claim arising from the licensing of *SQ mc eminem esque* (the "Cue").

Labrador argues that the choice of law provision (Beatbox-Labrador Agreement § 20) suggests that the parties intended their warranties to refer only to infringement claims brought under California law.  (Labrador Motion for Summary Judgment (Docket No. 207-7) at 8–9).  Labrador therefore contends that the infringement claim brought under New Zealand law is not a claim inconsistent with its representations.  At the hearing, Labrador further argued that Mr. Webb had no knowledge of New Zealand law and chose California law so that he could properly calculate the risk of indemnity.

This Court determines Labrador's argued interpretation is illogical and disconnected from the stated purpose of the Beatbox-Labrador Agreement, which was to appoint Beatbox as sole sub-publisher for the recordings "in the territories of Australia, New Zealand, [and] Fiji."  (Beatbox-Labrador Agreement at 1).  The parties clearly intended Beatbox to exploit the cues for the benefit of both parties in those territories only.  Nothing in the indemnification clause suggests that Beatbox must suffer expenses in California or have expenses be related to a claim for infringement under California law before the indemnification clause would be triggered. Construction of the provision to so require would be illogical and unreasonable (i.e., "absurd") given that Beatbox was not permitted to sub-publish the works in California. *See ASP Properties Group, L.P. v. Fard, Inc.*, 133 Cal. App. 4th 1257, 35 Cal. Rptr. 3d 343 (2005) (Courts "must avoid any interpretation of the contract that leads to absurd conclusions"); Cal. Civ. Code § 1638.

Accordingly, this Court concludes that the indemnity provision was triggered by the filing of a claim alleging that the Cue violated New Zealand copyright law. However, this conclusion assumes that Beatbox had the authority to license the Cue, which as discussed below, is a live issue.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 17-6108-MWF (JPRx)                    Date:  April 13, 2023
Title:       Beatbox Music Pty, Ltd. v. Labrador Entertainment, Inc., et al.

**2.    Could Labrador be shielded from liability under section 16(v) if Labrador removed the Cue from the Spider Cues library at any time following the formation of the Beatbox-Labrador Agreement? Was Beatbox required to update the Spider Cues library?**

Labrador argues that it only warranted the works enumerated within paragraph 1 of the Beatbox-Labrador Agreement.  Paragraph one appoints Beatbox as the sole Sub Publisher for the licensed territory for the introduction and exploitation of the following:

> all recordings made to be issued during the term of this Agreement and any extensions thereto by the Publisher of musical compositions and sound recordings issued as part of the background music library catalogue known as Spider Cues Music (hereinafter referred to as "the recordings").

(Beatbox-Labrador Agreement § 1).

Labrador argues that the Spider Cues library catalogue was a dynamic set of works that changed over time.  (Labrador Motion for Summary Judgment at 9). Labrador contends that Plaintiff did not have a right to license the Cue after 2012 or 2014 because the Spider Cues library no longer included the Cue.  Labrador therefore argues that it is shielded from liability under section 16(v) by Beatbox's failure to update the Spider Cues library as Labrador had no duty to indemnify Beatbox for claims related to the Cue based on any licensing of the Cue by Beatbox after 2012.  (*Id.* at 9–10).

Beatbox responds that there is nothing in the Beatbox-Labrador agreement that required the removal of any work.  (Opposition to Labrador MSJ (Docket No. 212) at 6).  In particular, Beatbox notes that the above language only contemplates "extensions," not removal of cues which were already "issued."  (Beatbox Brief re: Legal Issues (Docket No. 378) at 13).

CIVIL MINUTES—GENERAL                                              7

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

<u>CIVIL MINUTES—GENERAL</u>

**Case No.** CV 17-6108-MWF (JPRx)                **Date:** April 13, 2023
Title:        Beatbox Music Pty, Ltd. v. Labrador Entertainment, Inc., et al.

        Both parties point to emails sent by Noel Webb to support their preferred
interpretation of the agreement.  Beatbox suggests that the emails show that the 2012
and 2014 updated catalogues were optional supplements that do not give rise to an
interpretation that the Beatbox-Labrador Agreement required Beatbox to delete the
Cue.  Labrador cites Noel Webb's declaration to support its argument that the parties
intended songs to be added and deleted from the library and that Beatbox therefore did
not have an active license to sub-publish the Cue.

        The Court determines that the contract language is ambiguous as to whether
Beatbox had the right to license cues that were no longer part of the Spider Cues
library.  Because interpretation of the language turns on apparent conflicts in the
extrinsic evidence, the Court is not able to determine the issue now. At the hearing,
Labrador and Beatbox agreed that factual issues remained over extrinsic evidence,
including the threshold issues of whether the Cue was ever removed from the Spider
Cues library.  The parties agreed that the jury would determine factual issues, including
whether the Cue was removed, and then the Court would base its interpretation of the
contract on those findings.

        Accordingly, the Court does not decide this issue now.

        Beatbox additionally argues that the final sentence of section 16(v) suggests that
Labrador would not be able to escape liability for failure to indemnify even if Labrador
did remove the cue.  (Beatbox Brief re: Legal Issues at 12).  The final sentence of
section 16(v) states that:

        "This indemnity shall not be adversely affected should exploitation of the
        recordings continue after notice of infringement of rights or other claim has
        been received by the Sub Publisher."

(Beatbox-Labrador Agreement § 16(v)).  It is not clear from the language alone what
the parties intended.  However, the Court is not persuaded by Beatbox's suggestion
that this language would permit Beatbox to issue a license for a cue that was removed

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** CV 17-6108-MWF (JPRx)                **Date:** April 13, 2023
Title:        Beatbox Music Pty, Ltd. v. Labrador Entertainment, Inc., et al.

from the Spider Cues library (which Labrador argues is an infringement of rights
granted by the agreement) and continue to be indemnified.  Such a contention is
contradicted by the following provision in the agreement which states that Beatbox
will indemnify Labrador for any infringement of rights contained in the Agreement.
(Beatbox-Labrador Agreement § 16(vi)).

> **3.  Was section 16(vi) triggered by failure of Beatbox to communicate
> with Labrador upon learning about possible legal issues with the
> Cue, prior to issuing a license?**

The Beatbox-Labrador Agreement also includes the following indemnity
provision outlining when Beatbox (the Sub Publisher) has agreed to indemnify and
hold harmless Labrador (the Publisher):

> (v) The Sub Publisher agrees to indemnify and hold harmless the
> Publisher, it's [sic] successors and assigns of and from any and all loss,
> liability and expense incurred by reason of any infringement of rights or
> other claim inconsistent with the Sub Publishers [sic] guarantees,
> warranties, representations and undertakings contained in this Agreement.
> This indemnity shall not be adversely affected should exploitation of the
> recordings continue after notice of infringement of rights or other claim
> has been received by the Publisher.

(Beatbox-Labrador Agreement § 16).

Beatbox represented and warranted that:

> "[I]t will use its best commercial endeavors to exploit the recordings for the
> benefit of the parties concerned."

(*Id.* § 7).  The indemnity clause therefore provides that Beatbox would indemnify
Labrador from loss, liability, and expense incurred by claims that arose due to
Beatbox's conduct that was inconsistent with its representation that it would use best

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 17-6108-MWF (JPRx)              Date:  April 13, 2023
Title:      Beatbox Music Pty, Ltd. v. Labrador Entertainment, Inc., et al.

commercial endeavors to exploit the recordings for the benefit of Beatbox and
Labrador.

Labrador argues that Beatbox failed to use best commercial endeavors to exploit
the recordings for the benefit of both parties when it failed to communicate with
Labrador upon learning about possible legal issues with the Cue prior to issuing a
license for the Cue.  (Labrador Memo of Contentions of Fact and Law at 6–7).

Beatbox argues that the Beatbox-Labrador Agreement expressly does not require
Beatbox to communicate with Labrador about any request prior to issuing any license.
(Beatbox Memo re: Legal Issues at 13-14).  Further, Beatbox argues that whether
Beatbox learned anything about possible legal issues with a cue is a disputed fact.
(*Id.*).

The Court determines that whether Beatbox's conduct satisfied the "best
commercial endeavors" clause is a triable issue of fact appropriately left to the jury.
"[W]hen a contract does not define the phrase "best efforts," the promisor must use the
diligence of a reasonable person under comparable circumstances." *California Pines
Prop. Owners Assn. v. Pedotti*, 206 Cal. App. 4th 384, 395 (2012).  Best efforts does
not mean every conceivable effort.  *Id.*  Nor does it require the require the promisor to
ignore its own interests, spend itself into bankruptcy, or incur substantial losses to
perform its contractual obligations.  *Id.*  Rather, best efforts "requires a party to make
such efforts as are reasonable in light of that party's ability and the means at its
disposal and of the other party's justifiable expectations."  *Id.* at 394-395.  "The
question whether a defendant used its best efforts under the circumstances is generally
a factual issue."  *US Ecology, Inc. v. State of California*, 92 Cal. App. 4th 113, 136,
111 Cal. Rptr. 2d 689, 707 (2001).

Accordingly, the Court does not decide this issue.  However, if the jury were to
find that Beatbox's conduct was inconsistent with its contractual obligation, then the
indemnity provision would be triggered per the clear language of the section 16(vi).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 17-6108-MWF (JPRx)                Date:  April 13, 2023
Title:       Beatbox Music Pty, Ltd. v. Labrador Entertainment, Inc., et al.

### 4.  Could Labrador be entitled to attorneys' fees incurred in the present action under section 16(vi)?

The parties requested that the Court determine whether Labrador could be entitled to attorneys' fees incurred in the present action under section 16(vi).  In the Order Denying Plaintiff's Motion to Dismiss (Docket No. 157), the Court determined that the nearly identical indemnity provision in section 16(v) allowed Beatbox to recover attorney fees and costs incurred in defending against third party claims, but did not permit Beatbox to recover attorneys' fees incurred in litigation between the parties to the indemnity agreement itself.  (Order Denying Plaintiff's Motion to Dismiss at 26–27 (citing *See Carr Business Enterprises, Inc. v. City of Chowchilla*, 166 Cal. App. 4th 14, 22-23 (2008) (barring recovery of attorney fees incurred in enforcing indemnification agreement)).  There is no contractual language in section 16(vi) that suggests a different result is required for Labrador.

Accordingly, the Court determines that Labrador cannot recover legal expenses incurred in pursuing the instant suit under the indemnity language in section 16(vi).

### B.   Meaning of Indemnity Clause in Labrador-Cohen Agreement (section 6.1)

### 1.  Was Section 6.1 triggered upon notice of third-party claim in New Zealand?

The Labrador-Cohen Agreement includes the following indemnity provision outlining when Cohen ("Composer") has agreed to indemnify and hold harmless Labrador ("Owner"):

Composer will indemnify and hold Owner and all entities associated with Owner, free, safe, and harmless from and against any and all losses, damages, actions, causes of action, expenses or liability, including, without limitation, reasonable attorney's fees and costs, whether incurred before or

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 17-6108-MWF (JPRx)                    Date:  April 13, 2023
Title:       Beatbox Music Pty, Ltd. v. Labrador Entertainment, Inc., et al.

after the entry of judgment, resulting from or by reasons of any material
breach of any representation or warranty made herein by Composer.

(Labrador-Cohen Agreement § 6.1)

Cohen granted Labrador, and its assigns, "exclusive rights, title, and interest
throughout the world ("Territory") in and to the Composition(s) (except copyright) in
perpetuity."  (*Id.* § 1.1).

Cohen represented and warranted that the compositions, including *SQ mc
eminem esque*, were "his sole, exclusive and original work, and [are] capable of
copyright protection by Owner throughout the territory."  (*Id.* § 4.1).  Cohen also
represented and warranted that "no adverse claims exist or will exist with respect to the
Composition(s), and the Composition(s) does not infringe upon or violate the
copyrights or any other rights whatsoever of any person, firm, or entity.  (*Id.* § 4.2).

Under the agreement "Owner and it's [sic] associates will have the right to
assign this Agreement, in whole or in part, to any third party or to grant any license for
the Composition(s) hereunder."  (*Id.* § 7.1).  The parties agreed that "[t]his agreement
will inure to the benefit of, and be binding upon, each party's heirs, subsidiaries,
affiliates, corporations, licensees, successors and assigns."  (*Id.*).

The indemnity clause therefore provides that Cohen would indemnify Labrador
and Beatbox from any copyright infringement claim of one of the compositions.  The
mutual intent of the signatory parties, inferred from the clear language of the
agreement, is for Cohen to indemnify Labrador and all associated entities for copyright
infringement claims brought throughout the defined territory, the world.  The language
of the agreement is broad as Cohen represented that the compositions do not infringe
upon "the copyrights or any other rights whatsoever of any person, firm, or entity."
(*Id.* § 4.1).  Indeed, the parties recognized and intended to be subject to the laws of
countries across the world as the purpose of the agreement was for Labrador and
entities associated with Labrador to exploit the musical compositions throughout the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 17-6108-MWF (JPRx)                    Date:  April 13, 2023
Title:      Beatbox Music Pty, Ltd. v. Labrador Entertainment, Inc., et al.

world.  (*See id.* at 1 and §§ 1.1 (granting worldwide rights), 3.4 (acknowledging that Owner could be subject to tax laws of countries across with world), 4.1 (Cohen's representation that the compositions are capable of copyright protection throughout the world)).  Additionally, Cohen has not disputed that he received notice of the third-party claim in New Zealand on September 16, 2014, and was added to the New Zealand action in February 2015.  (*See* Order re: Labrador Entertainment, Inc.'s Motion to Stay (Docket No. 58) at 3).

At the hearing, Labrador and Cohen both argued that the New Zealand claim alleged infringement as to the New Zealand National Party but not Labrador, so the indemnity provision in the Labrador-Cohen Agreement was never triggered.  However, Labrador and Cohen were both named in the New Zealand action and the Cue was not capable of copyright protection by Labrador or anyone else.  (*See* Beatbox Motion for Summary Judgment Declaration Exhibits (Docket Nos. 208-4, 208-5, 208-6)).

Accordingly, the Court concludes that the indemnity language in section 6.1 was triggered by notice of the claim alleging that one of the compositions assigned in the Labrador-Cohen Agreement violated New Zealand copyright law.

## 2.  Can Beatbox be a third-party beneficiary of Labrador-Cohen Agreement if Beatbox never relied on or saw any warranty in the Labrador-Cohen Agreement?

The Court previously determined: "that the express language of the Labrador-Cohen Agreement provides Plaintiff with third-party beneficiary status: 'This Agreement will inure to the benefit of, and be binding upon, each party's heirs, subsidiaries, affiliates, corporations, licensees, successors and assigns.'"  (Order Denying Motion for Judgment on the Pleadings (Docket No. 185) at 4–5 (quoting FAC, Ex. A ("Labrador-Cohen Agreement")).

The California Supreme Court instructs that third party actions may go forward when the express provisions of the contract at issue, as well as all the other relevant

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 17-6108-MWF (JPRx)                    Date:  April 13, 2023
Title:      Beatbox Music Pty, Ltd. v. Labrador Entertainment, Inc., et al.

circumstances under which the contract was agreed to, reveal that (1) the third party would in fact benefit from the contract; (2) a motivating purpose of the contracting parties was to provide a benefit to the third party; and (3) permitting a third party to bring its own breach of contract action against a contracting party is consistent with the objectives of the contract and the reasonable expectations of the contracting parties. *See Goonewardene v. ADP, LLC*, 6 Cal. 5th 817, 830, 243 Cal. Rptr. 3d 299 (2019).

Here, the express language of the Labrador-Cohen Agreement noted above, *supra* § I.B.1, reveals all three elements and Beatbox meets the definition of Labrador's affiliate, licensee, and/or assigns.  Cohen and Labrador entered into the Labrador-Cohen Agreement with the express purpose of having Labrador promote the "sale, distribution and other exploitation of the Compositions throughout the [world]." (Labrador-Cohen Agreement § 5.3).  The parties supported this purpose by permitting Labrador to assign the agreement, including the indemnity provisions, to any third party or to grant any licenses for the compositions.  (*Id.* § 7.1).  The Court therefore determines that Beatbox may bring a third party action based on the Labrador-Cohen Agreement because the language of the contract reveals that (1) Beatbox, as a Labrador affiliate, would benefit from the contract; (2) the contracting parties had a motivating purpose of encouraging such affiliates to promote exploitation of the compositions worldwide by ensuring that they would be indemnified from any and all losses resulting from any breach of any representation made by Cohen; and (3) permitting Labrador's affiliates to bring their own breach of contract action against a contracting party was consistent with this purpose.  *See Goonewardene v. ADP, LLC*, 6 Cal. 5th at 830.

At the hearing, Cohen argued that the third element of *Goonewardene* was not met here because permitting Labrador's affiliates to bring their own breach of contract action all over the world is unconscionable.  Cohen's unconscionability argument is discussed in section B.4 below, but the Court notes here that Cohen has not provided any authority that suggests permitting breach of contract actions across the world is unconscionable when the purpose of the contract is to "promote the manufacture, sale,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 17-6108-MWF (JPRx)                    Date:  April 13, 2023
Title:      Beatbox Music Pty, Ltd. v. Labrador Entertainment, Inc., et al.

distribution, and other exploitation of the Composition(s) throughout the Territory [i.e., the world]."  (Labrador-Cohen Agreement § 5.2).

At the hearing, Cohen also argued that the third *Goonewardene* element was not met because there is no need to allow Beatbox to bring a breach of contract claim because Labrador was available and fully capable of bringing a breach of contract claim.  In *Goonewardene*, the California Supreme Court determined that an employee could not maintain a breach of contract claim against her employer's payroll service provider under a third-party beneficiary theory because there was nothing to suggest that the payroll service provider agreed to pay wages out of its own funds.  6 Cal. 5th at 834.  Instead, the *Goonewardene* court determined that the objective of the unwritten contract between the employer and the payroll service provider was simply for the payroll service provider to help calculate wages that the employer owed under the applicable labor statutes and wage order.  *See id.*  The supreme court noted that while a motivating purpose of the contracting parties provided a benefit to employees like Goonewardene, it could still be inconsistent with the objectives of the contract and the reasonable expectations of the contracting parties to permit the employees to sue a contracting party for an alleged breach of the contract.  6 Cal. 5th at 835–36 (citing *Martinez v. Socoma Companies*, *supra*, 11 Cal.3d 394, 401–402, 113 Cal. Rptr. 585 (1974); Geis, *Broadcast Contracting*, 106 Nw.U. L.Rev. 1153, 1195 (2012) ["There is an important analytical distinction between contracting for a benefit to an outsider and granting a right to sue for breach to that outsider"].).  The supreme court concluded that permitting Goonewardene to sue the payroll service provider was not necessary to effectuate the objective of the unwritten contract.  *Id.* at 836.

Here, unlike in *Goonewardene*, permitting the intended third-party beneficiaries — Labrador's affiliates, licensees, and assigns — to sue Cohen is consistent with the objectives of the contract and the reasonable expectation of the contracting parties.  Unlike the unwritten contract at issue in *Goonewardene*, the Labrador-Cohen contract specifically inures to the benefit of each party's affiliates, licensees, and assigns.  Permitting such affiliates, licensees, and assigns to enforce the contract serves the purpose of encouraging Labrador's associates to agree to promote the compositions

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 17-6108-MWF (JPRx)                Date:  April 13, 2023
Title:        Beatbox Music Pty, Ltd. v. Labrador Entertainment, Inc., et al.

across the world for Labrador and Cohen's benefit.  Accordingly, the Court determines that Beatbox is entitled to assert a breach of contract claim against Cohen under a third-party beneficiary theory.

Cohen additionally argues that Beatbox cannot recover under any provision of the Labrador-Cohen Agreement because Beatbox never relied on or saw any express warranty in the Labrador-Cohen Agreement.  (Cohen Opposition to Beatbox Motions in Limine (Docket No. 305)).  However, Cohen exclusively relies on cases involving claims for breach of express warranty made in the context of the sale of cars and medical supplies.  (*Id.* at 2–3 (citing e.g. *Asghari v. Volkswagen*, 42 F. Supp. 3d 1306, 1334 (C.D. Cal., November 4 2013), *Keegan v. Am. Honda Motor Co.*, 284 F.R.D. 504, 546 (C.D. Cal. 2012); *Coleman v. Boston Scientific Corp.*, 1:10–CV–01968, 2011 WL 3813173, *4 (E.D. Cal. Aug. 29, 2011)).  It is not clear that the reliance requirement for breach of express warranty claims related to the sale of goods identified in these cases applies here.  Cohen does not provide any authority that permits the Court to construe Beatbox's breach of contract claim, made in the context of the assignment of intellectual property, as a breach of express warranty claim.

Moreover, Beatbox arguably did rely on the warranties in the Cohen-Beatbox agreement by relying on Labrador's concomitant warranty in the Beatbox-Labrador Agreement that the compositions were original and did not infringe any other copyright work.  (Beatbox-Labrador Agreement § 16(iv)).  Similarly, Beatbox relied on the existence of Cohen's representations because it relied on the representations in the Labrador-Beatbox Agreement which promised that Labrador "was free to enter into [the Labrador-Beatbox Agreement]; [and that Labrador] is party to or has entered into good and valid contracts with the writers and composers of the Compositions and such contracts enable it to comply with all terms and conditions hereof and the Publisher will do all things necessary not to be in breach of the same during the term hereof." (*Id.* § 16(iii)).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 17-6108-MWF (JPRx)                   Date:  April 13, 2023
Title:      Beatbox Music Pty, Ltd. v. Labrador Entertainment, Inc., et al.

### 3.  Can Cohen be held liable for attorneys' fees incurred in this action under section 6?

"Where a contract provides for attorney fees in an action to enforce the contract, the attorney fees provision is made applicable to the entire contract by operation of Civil Code section 1717."  *Myers Building Industries, Ltd. v. Interface Technology, Inc.*, 13 Cal. App. 4th 949, 968, 17 Cal. Rptr. 2d 242 (1993) (citations omitted). Attorney fees authorized by contract are recoverable as costs pursuant to Code of Civil Procedure section 1033.5, subdivision (a)(10)(A).  *Bankes v. Lucas*, 9 Cal. App. 4th 365, 370–371, 11 Cal. Rptr. 2d 723 (1992).  Under the American rule, attorney fees are not recoverable as costs unless expressly authorized by statute or contract.  *Selma Auto Mall II v. Appellate Department*, 44 Cal. App. 4th 1672, 1682, 52 Cal. Rptr. 2d 599 (1996).

Generally, an indemnification provision allows one party to recover costs incurred defending actions by third parties, not attorney fees incurred in an action between the parties to the contract.  *See Rideau v. Stewart Title of California, Inc.*, 235 Cal. App. 4th 1286, 1298 (2015).  A clause that contains the words "indemnify" and "hold harmless" generally obligates the indemnitor to reimburse the indemnitee for any damages the indemnitee becomes obligated to pay third persons—that is, it relates to third party claims, not attorney fees incurred in litigation between the parties to the indemnity agreement itself.  *See Carr Business Enterprises, Inc. v. City of Chowchilla*, 166 Cal. App. 4th at 22–23 (barring recovery of attorney fees incurred in enforcing indemnification agreement).

The Labrador-Cohen indemnification provision, under the headline "INDEMNIFICATION" states, in pertinent part:

"Composer will indemnify and hold Owner and all entities associated with Owner, free, safe, and harmless from and against any and all losses, damages, actions, causes of action, expenses or liability, including, without limitation, reasonable attorney's fees and costs, whether incurred before or

---

**CIVIL MINUTES—GENERAL**                                    17

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 17-6108-MWF (JPRx)                    Date:  April 13, 2023
Title:       Beatbox Music Pty, Ltd. v. Labrador Entertainment, Inc., et al.

after the entry of judgment, resulting from or by reasons of any material
breach of any representation or warranty made herein by Composer."

(Labrador-Cohen Agreement § 6.1).  An indemnity agreement is to be interpreted
according to the language and contents of the contract, as well as the intention of the
parties as indicated by the contract, using the same rules that govern the interpretation
of other contracts.  *Widson v. International Harvester Co.*, 153 Cal. App. 3d 45, 59,
200 Cal. Rptr. 136 (1984).

The language of section 6.1 does not appear to extend beyond third-party claims.
Relevant case authority highlighted by the *Carr* court supports a determination that
section 6.1 is a standard indemnification clause and not an authorization for recovery
of attorney fees to enforce the contract itself.

In *Myers Building Industries, Ltd. v. Interface Technology, Inc.*, 13 Cal. App.
4th 949, 17 Cal. Rptr. 2d 242 (1993), the court of appeal found the following provision
to be a standard third-party claim-indemnification clause and not a provision allowing
recovery of fees on an action upon the contract, despite its reference to performance of
the contract work:

> " 'To the fullest extent permitted by law, the Contractor shall indemnify and
> hold harmless the Owner and the Architect and their agents and employees
> from and against all claims, damages, losses and expenses, including but not
> limited to attorney's fees, arising out of or resulting from the performance of
> the Work*,* provided that any such claim, damage, loss or expense (1) is
> attributable to bodily injury, sickness, disease or death or to injury to or
> destruction of tangible property (other than the Work itself) including the
> loss of use resulting therefrom and (2) is caused in whole or in part by any
> negligent act or omission of the Contractor, any Subcontractor, anyone
> directly or indirectly employed by any of them or anyone for whose acts any
> of them may be liable, regardless of whether or not it is caused in part by a
> party indemnified hereunder....' "

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** CV 17-6108-MWF (JPRx)                    **Date:** April 13, 2023
Title:       Beatbox Music Pty, Ltd. v. Labrador Entertainment, Inc., et al.

*Myers,* 13 Cal. App. 4th at 964.

Likewise, the following provision has also been held to be a standard indemnity provision not subject to section 1717:

> " 'The Subcontractor shall indemnify and hold and save [the Contractor] harmless from and against any and all actions or causes of action, claims, demands, liabilities, loss, damage or expense of whatsoever kind and nature, including counsel or attorneys' fees, whether incurred under retainer or salary or otherwise*,* which [the Contractor] shall or may at any time sustain or incur by reason or in consequence of any injury or damage to person or property which may arise directly or indirectly from the performance of this Contract by the Subcontractor, whether such performance be by himself or by any subcontractor of his, or anyone directly or indirectly employed by either of them.' "

*Meininger v. Larwin–Northern California, Inc.*, 63 Cal. App. 3d 82, 84–85, 135 Cal. Rptr. 1 (1976). The court of appeal found helpful the headings assigned to the provision by the parties: "Subcontractor's Liability Insurance, Indemnity." In addition, the headings in both of the above contracts suggest that the parties intended the clauses to relate to indemnity, not attorney fees.

Finally, the court of appeal in *Campbell v. Scripps Bank*, 78 Cal. App. 4th 1328, 93 Cal. Rptr. 2d 635 (2000), interpreted the following provision in an escrow agreement to be a standard indemnity clause and not a clause providing for mutual recovery of attorneys' fees on an action under the agreement:

> " 'If conflicting demands are made or notice served on you or any dispute or controversy arises between the Principals or with any third person relating to this escrow, you shall have the absolute right, at your election, to withhold and stop all further proceedings in this escrow without liability and without determining the merits of the demands, notices, or litigation; or sue in interpleader; or both. The Principals, jointly and severally, hereby promise

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 17-6108-MWF (JPRx)                    Date:  April 13, 2023
Title:     Beatbox Music Pty, Ltd. v. Labrador Entertainment, Inc., et al.

and agree to pay promptly on demand, as well as to indemnify you and hold you **134 harmless against and in respect of any and all litigation and interpleader costs, claims, losses, damages, recoveries, judgments, and expenses, including, without limitation, reasonable attorneys fees that you may incur or suffer, which arise, result from or relate to this escrow.' "

*Id.*, 78 Cal. App. 4th at 1336.

In contrast, the court of appeal in *Baldwin Builders v. Coast Plastering Corp.*, 125 Cal. App. 4th 1339, 1344, 24 Cal. Rptr. 3d 9 (2005), concluded the following language authorized a recovery of attorneys' fees to the prevailing party after litigation:

" 'The undersigned Subcontractor hereby agrees to indemnify [Contractor] . . . against any claim, loss, damage, expense or liability arising out of acts or omissions of Subcontractor in any way connected with the performance of the subcontract . . . unless due solely to [Contractor's] negligence. . . . Subcontractor shall, on request of [Contractor] . . . but at Subcontractor's own expense, defend any suit asserting a claim covered by this indemnity. Subcontractor shall pay all costs, *including attorney's fees, incurred in enforcing this indemnity agreement.*' "

*Baldwin Builders v. Coast Plastering Corp.*, 125 Cal. App. 4th at 1342 (emphasis added).

In distinguishing the above language from the language found in *Myers, Meininger* and *Campbell,* the *Baldwin* court focused on the italicized language of the last sentence, which authorizes the recovery of attorneys' fees where one of the parties to the agreement brings an action to enforce the indemnity agreement, in other words, "on the contract." *Id.* at 1344.  The court found that the attorneys' fees clause was located in an indemnity provision that unambiguously contemplated an action between the parties to enforce their agreement (a point conceded by counsel) and expressly

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 17-6108-MWF (JPRx)                    Date:  April 13, 2023
Title:      Beatbox Music Pty, Ltd. v. Labrador Entertainment, Inc., et al.

authorized recovery of fees in such an action.  In this situation, the court of appeal held that section 1717 would apply.

Here, the language of section 6.1 more closely parallels the language found in *Meyers*, *Meininger*, and *Campbell*, than the language in *Baldwin*.  Unlike in *Baldwin*, there is no express language authorizing recovery of fees in an action to enforce the contract.  Instead, under the headline "INDEMNIFICATION," the language authorizes recovery of attorney fees from "losses, damages, actions, causes of action, expenses or liabilities . . . resulting from breach of any representation or warranty" made by Cohen.  The intention appears to be that Cohen would indemnify Labrador, and all entities associated with Labrador, from damages incurred as a result of a misrepresentation made by Cohen.

This Court therefore follows the conclusions of the California courts that section 1717 does not bring within its scope indemnity provisions that allow recovery of attorney fees as an element of loss within the scope of indemnity.  *See Carr Bus. Enterprises*,166 Cal. App. 4th at 23;  *see also Alki Partners, LP v. DB Fund Servs., LLC*, 4 Cal. App. 5th 574, 600, 209 Cal. Rptr. 3d 151 (2016) ("The key indicator is an express reference to indemnification.  A clause that contains the words 'indemnify' and 'hold harmless' generally obligates the indemnitor to reimburse the indemnitee for any damages the indemnitee becomes obligated to pay third persons—that is, it relates to third party claims, not attorney fees incurred in a breach of contract action between the parties to the indemnity agreement itself."); *Indigo Grp. USA, Inc. v. Polo Ralph Lauren Corp.*, 2014 WL 12573380, at *5 (C.D. Cal. Mar. 17, 2014) ("[U]se of the terms 'indemnify' and 'hold harmless' suggests that Exhibit 2 is an indemnification provision, rather than an intraparty attorney's fees provision to which § 1717 applies."), *aff'd*, 749 F. App'x 639 (9th Cir. 2019).

At the hearing, Beatbox pointed out that section 8.1 of the Labrador-Cohen Agreement states that "the headings to the paragraphs of this Agreement have been inserted for the convenience of reference only and shall not be deemed a part of or to affect the construction or interpretation of any provision of this agreement."  Beatbox's

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 17-6108-MWF (JPRx)                    Date:  April 13, 2023
Title:       Beatbox Music Pty, Ltd. v. Labrador Entertainment, Inc., et al.

point is well-taken.  However, the Court still determines that section 6.1 is an indemnification clause because it includes express reference to indemnification: "Composer will indemnify and hold . . . harmless."  *See Alki Partners*, 4 Cal. App. 5th at 600.

At the hearing, Labrador and Beatbox argued that the language of section 6.1 was broad and should provide attorneys' fees for almost any event including enforcement of the indemnification provision itself.  Cohen argued that section 6.1 is an indemnification clause, not an attorneys' fees clause, and that California law requires that interpreting an indemnity clause to also be an attorneys' fees clause requires specific and explicit language.  The Court agrees that the language of section 6.1 is not sufficiently unambiguous to suggest the parties intended to provide for attorneys' fees in breach of contract claims brough between the contracting parties. *See Alki Partners*, 4 Cal. App. 5th at 600 (discussing California cases where language providing for attorney's fees (a) "arising from any cause or for any reason whatsoever" or (b) for " 'any, all, and every claim' which arises out of 'the performance of the contract' " could not support award of attorney's fees in breach-of-contract action between the contracting parties).

Accordingly, pursuant to the Labrador-Cohen Agreement, the parties are permitted to recover attorneys' fees and costs incurred in defending against third party claims, but are not entitled to recover attorney fees incurred in litigation between the parties to enforce the Labrador-Cohen Agreement itself.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 17-6108-MWF (JPRx)                    Date:  April 13, 2023
Title:        Beatbox Music Pty, Ltd. v. Labrador Entertainment, Inc., et al.

> **4.  If Labrador, Beatbox, or any other Oceania entity never paid Cohen was there a failure of consideration regarding the Labrador-Cohen contract?  If Labrador was the scrivener of Labrador-Cohen Agreement, is the agreement unconscionable in light of fact that Cohen was required to warrant that all of the compositions be capable of being protected by copyright in every country in the world?**

The parties do not appear to have raised these issues amongst each other or before the Court previously.  It also is not clear that the Court can answer these questions without consideration of evidence that is not before the Court.  Accordingly, the Court does not decide these issues here.

Beatbox argues that Cohen should be barred from raising unconscionability now because he has not alleged unconscionability as an affirmative defense.  (Beatbox Brief re: Legal Issues at 18).

The Ninth Circuit "liberalized the requirement that affirmative defenses be raised in a defendant's initial pleading in *Healy Tibbitts Construction Co. v. Insurance Co. of North America*, 679 F.2d 803 (9th Cir. 1982)."  *Rivera v. Anaya*, 726 F.2d 564, 566 (9th Cir. 1984).  There, the Ninth Circuit held that "absent prejudice to the plaintiff, a defendant may raise an affirmative defense in a motion for summary judgment for the first time[.]"  *Id.*  Here though, the final day to hear motions was in 2021.  The parties have not been able to engage in any discovery on this issue because Cohen never raised it.  Beatbox and Labrador therefore have been prejudiced by Cohen's failure to raise the affirmative defense.  Accordingly, the Court determines that Cohen has waived his right to assert the defense on unconscionability.  *See also Magana v. N. Mariana Islands*, 107 F.3d 1436, 1446 (9th Cir. 1997) ("[D]efendants may raise an affirmative defense for the first time in a motion for summary judgment only if the delay does not prejudice the plaintiff.").

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 17-6108-MWF (JPRx)                    Date:  April 13, 2023
Title:       Beatbox Music Pty, Ltd. v. Labrador Entertainment, Inc., et al.

At the hearing, Cohen argued that he was not able to make an unconscionability argument earlier.  The Court is skeptical.  However, in fairness to Cohen who did not submit a brief along with the submission of legal issues, the Court will permit Cohen to submit a brief of no more than **three pages** on the waiver issue by **April 14, 2023, at 5:00 p.m. (PDT)** for further consideration.

C.    **Meaning of Right to Terminate Clause in Beatbox-Labrador Agreement (section 13.1)**

1.    **Does failure to provide any notice under section 13 preclude Labrador from prevailing on a breach of contract claim against Beatbox?**

Section 13 of the Beatbox-Labrador Agreement provides, in relevant part, as follows:

"Should the Sub-Publisher default in rendering any statement of account or in making any payments as hereinbefore provided or in fully complying with any material terms of conditions herein required of the Sub-Publisher to be performed, and should such default continue for 30 (thirty) days after the Publisher has sent notice of such default by registered mail and fax to the Sub-Publisher, the Publisher shall have the right to terminate and cancel this Agreement as of expiration of said 30 (thirty) days[.]"

(Beatbox-Labrador Agreement § 13).  Beatbox argues that failure to issue a notice pursuant to a notice-and-cure termination clause is a bar to suit.  (Beatbox Motion for Summary Judgment (Docket No. 208) at 14 (citing *Keysight Techs., Inc. v. Mentor Graphics Corp.*, Case No. No. C 17-1456-SBA , 2017 WL 7310781, at *5–*7 (N.D. Cal. 2017)).

Labrador argues that Beatbox waived the notice and cure provision under the futility doctrine as Beatbox sued for breach of contract and indemnity making it practically futile for Labrador to first exercise a contractual notice and cure

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 17-6108-MWF (JPRx)                 Date:  April 13, 2023

Title:       Beatbox Music Pty, Ltd. v. Labrador Entertainment, Inc., et al.

while its answer and counterclaims were due.  (Opposition to Beatbox Motion for
Summary Judgment at 10 (citing *Gueyffier v. Ann Summers, Ltd.,* 43 Cal. 4th
1132, 1186, 77 Cal. Rptr. 3d 605 (2008)).

        Generally, the purpose of a notice and cure provision is to provide the breaching
party an opportunity to cure the breach before litigation or termination of the contract.
*See Keysight Tech., Inc.*, 2017 WL 7310781 at *6; *RLED, LLC v. Dan Good Distrib.
Co.*, No. CIV.S-08-851-LKK (DAD), 2008 WL 11389039, at *4 (E.D. Cal. Aug. 29,
2008) (discussing the purpose of a notice and cure provision silent as to effect of
noncompliance is typically to provide an opportunity to cure before the non-breaching
party has the right to terminate or sue for breach of contract).

        Sometimes a party is not deemed to be in "breach" of the contract (i.e., for
purposes of a breach of contract claim) until the notice-and-cure provision has been
satisfied.  *See, e.g.*, *Wilde v. Flagstar Bank FSB*, No. 18CV1370-LAB (BGS), 2019
WL 1099841, at *1 (S.D. Cal. Mar. 8, 2019) ("Neither Borrower nor Lender may
commence, join, or be joined to any judicial action (as either an individual litigant or
the member of a class) that arises from the other party's actions pursuant to this
Security Instrument or that alleges that the other party has breached any provision of,
or any duty owed by reason of, this Security Instrument, until such Borrower or Lender
has notified the other party . . . of such alleged breach and afforded the other party
hereto a reasonable period after the giving of such notice to take corrective action.");
*24/7 Records, Inc. v. Sony Music Entertainment, Inc.*, 566 F. Supp. 2d 305, 312
(S.D.N.Y. 2008) ("Neither party to this Agreement shall be deemed to be in breach . . .
until the other party [gives] written notice of such default and the alleged breaching
party shall have failed to cure such default within thirty (30) days").

        However, courts have determined that a notice and cure provision will not act as
a bar to a party's claims where it does not contain language suggesting an agreement
intended to erect a barrier to suit.  *See RLED, LLC v. Dan Good Distrib. Co.*, 2008 WL
11389039, at *4.  While section 13 in the Beatbox-Labrador agreement creates a
process Labrador must follow before it has the right to terminate or cancel the
agreement, the provision does not contain language similar to the provisions in *Wilde*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 17-6108-MWF (JPRx)                Date:  April 13, 2023
Title:      Beatbox Music Pty, Ltd. v. Labrador Entertainment, Inc., et al.

or *24/7 Records* requiring that notice be given before a breach of contract claim can be pursued in court.

Beatbox cites cases where courts have found a notice and cure provision to be a bar to suit.  However, in those cases the notice and cure provision clearly indicated a requirement to give notice to breaching parties.  *See, e.g.*, *IP Glob. Invs. Am., Inc. v. Body Glove IP Holdings, LP*, No. 217CV06189ODWAGR, 2018 WL 5983550, at *4 (C.D. Cal. Nov. 14, 2018), *amended*, No. 17-CV-6189-ODW (AGR), 2019 WL 121191 (C.D. Cal. Jan. 7, 2019) ("the party alleging such breach shall give written notice of the breach to the breaching party, and shall specify a reasonable period of time within which the breaching party is to cure the breach").  Here, section 13 contains no such requirement and does not create a right for Beatbox cure a breach before suit.  Section 13 creates a notice and 30 day cure requirement that Labrador must follow before it can terminate the agreement.  Labrador's counterclaims do not seek termination of the agreement.  If the parties intended for the notice and cure provision to stand as a condition precedent to suit, they should have said so.

Accordingly, the Court determines that Labrador's failure to give Beatbox notice of Beatbox's alleged non-compliance with material terms of the agreement does not preclude Labrador from bringing its breach of contract counterclaims.

### D.  Beatbox obligations and rights per Beatbox-Labrador Agreement

### 1.  Did the Beatbox-Labrador Agreement grant Beatbox a right to assign the right to issue sub-licenses to the cues to AMCOS? Did the Beatbox-Labrador Agreement grant Beatbox a right to delegate to AMCOS any duties to be performed by Beatbox?

Labrador argues that the Beatbox-Labrador Agreement is devoid of any term giving Beatbox permission to issue anything beyond the scope of granting a sub-license for dubbing.  (Labrador Memo of Contentions of Fact and Law at 4–5; Labrador Motion for Summary Judgment at 10).  Labrador contends that while the Beatbox-Labrador Agreement gave Beatbox the right to grant non-exclusive licenses to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** CV 17-6108-MWF (JPRx)        **Date:** April 13, 2023

Title:     Beatbox Music Pty, Ltd. v. Labrador Entertainment, Inc., et al.

its clients, Beatbox breached the agreement by assigning this benefit to the Australasian Mechanical Copyright Owners Society Limited ("AMCOS"), without obtaining written consent from Labrador. (*Id.* at 6, 15).

The Beatbox-Labrador Agreement states that:

"The Sub-Publisher shall have the right to grant non-exclusive licenses in the licensed territory authorising the dubbing only of the recordings on to soundtracks of motion picture files television films video tapes as well as the dubbing and mechanical reproduction for radio transcripts and any audio or audio-visual soundcarrier and which productions may be exported to all countries of the world." (§ 5).
…
"The Sub Publisher shall not have the right to part with or assign to any other person or party any of the benefits licensed to it under the terms of this Agreement without the prior written consent of the Publisher." (§ 12).

Beatbox argues that interpretation of these provisions is a mixed issue of law and fact which requires understanding how production music licensing occurs in New Zealand, Australia, and Fiji and AMCOS's role in those countries. (Beatbox Brief re: Legal Issues at 15). For instance, at the hearing, Beatbox noted that AMCOS is a mechanical licensing entity which all publishers and sub-publishers must use to license recordings in New Zealand. Beatbox noted that Beatbox still represents and warrants that all rights are true and keeps responsibilities to account to its publishers.

While the language of the Beatbox-Labrador Agreement appears to state that Beatbox did not have the right to assign the benefits granted to it, without giving prior written consent to the Publisher, the Court concludes that a review of extrinsic evidence not currently before the Court is required to determine whether Beatbox was granted the right to assign its right to issue sub-licenses to the cues to AMCOS.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 17-6108-MWF (JPRx)                Date:  April 13, 2023
Title:        Beatbox Music Pty, Ltd. v. Labrador Entertainment, Inc., et al.

### 2.  Was Beatbox permitted to subtract costs incurred by AMCOS before remitting to Labrador all fees accruing from licenses related to the use of the recordings?

Labrador argues that Beatbox failed to pay to Labrador 50% (fifty per cent) of all fees accruing from such licenses relating to the use of the recordings, including mechanical/synchronization royalties received by Beatbox as a result of exploitation of rights herein granted to Beatbox.  (Labrador Memo of Contentions of Fact and Law at 15).

The Labrador-Beatbox Agreement provides that:

"5. The Sub-Publisher shall have the right to grant non-exclusive licenses in the licensed territory authorising dubbing only . . . Sub-Publisher shall pay to Publisher 50% (fifty per cent) of all fees accruing from such licenses relating to the use of the recordings. […]

9. Sub-Publisher shall remit to Publisher 50% (fifty per cent) of all monies received for exploitation of the library, including mechanical/ synchronization royalties received by Sub-Publisher as a result of exploitation herein granted to Sub-Publisher."

(Beatbox-Labrador Agreement §§ 5, 9).  The parties appeared to agree that Beatbox should bear its own costs incurred from supplying recordings to its clients.

"The Sub Publisher agrees to supply the Recordings or copies thereof at its own expense to its clients for audition selection and use at their own place of business…"

(*Id.* § 2).

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 17-6108-MWF (JPRx)                    Date:  April 13, 2023
Title:       Beatbox Music Pty, Ltd. v. Labrador Entertainment, Inc., et al.

The only language in the Labrador-Beatbox Agreement contemplating the subtraction of costs from fees is with respect to costs related to remittance of the fees:

> "Sub-Publisher shall deduct or shall authorise the deduction from royalty payments of any sums which may be demanded from Sub-Publisher in respect to remittance of such payments by the governments or other fiscal authorities of the licensed territory.  In such even Sub-Publisher shall supply the Publisher such information or documentation as may be available to Sub-Publisher together with confirmation as to the sums so demanded and paid."

(*Id.* § 17).  The Beatbox-Labrador Agreement does not appear to otherwise provide for the subtraction of any costs from the fees Beatbox agreed to collect and remit to Labrador and Cohen.

Accordingly, Beatbox was not permitted to subtract costs incurred by AMCOS before remitting to Labrador all fees accruing from such licenses relating to the use of the recordings.  There is no language in the agreement suggesting such subtraction was intended by parties.  Instead, the agreement makes clear that "Sub-Publisher shall pay to Publisher 50% (fifty per cent) of ***all*** fees accruing from such licenses relating to the use of the recordings."  (*Id.* § 5) (emphasis added).  However, whether Beatbox at any point did improperly subtract costs is a factual issue left to the jury.

> **3. Was Beatbox required to pay Labrador the full publisher's share (six-twelfths) of performing fees accruing from the use of the cue? Was Beatbox required to pay Cohen the full publisher's share (three-twelfths) of performing fees accruing from the use of the cue?**

The Beatbox-Labrador Agreement provides that

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 17-6108-MWF (JPRx)                    Date:  April 13, 2023

Title:      Beatbox Music Pty, Ltd. v. Labrador Entertainment, Inc., et al.

The Performing Rights in the recordings are subject to the rights of the Copyright Societies in the USA (ASCAP, BMI and SESAC) and its affiliated societies in the licensed territory.  It is agreed that the full "publisher's share" (six twelfths) of performing fees accruing from such rights shall be paid as follows: $3/12^{th}$ to the Sub-Publisher and $3/12^{th}$ to the Owner directly by the societies.

(Beatbox-Labrador Agreement § 8).  Pursuant to the language of the agreement, it appears that payment of the performing fees was to be paid "directly by the societies."  Accordingly, the Court cannot determine based off the language of the contract alone whether Beatbox was obligated to pay any share of performing fees accruing from the Cue.

### E.      Did Beatbox-AMCOS Agreement require Beatbox to update the Spider Cues Library after Beatbox updates the Spider Cues library?

The 2004 Exclusive License Agreement between Beatbox and AMCOS ("Beatbox-AMCOS Agreement") requires Beatbox to

(a) Provide AMCOS with a list of Works, Production Music Works and Production Music Recordings and such other information concerning these as AMCOS may from time to time specify;

(b) Promptly register the titles and other details required by AMCOS of al Works in accordance with AMCOS standard procedures and practices from time to time;

(c) Immediately notify AMCOS of:
   i. Each addition to deletion from that list;
   ii. Each sub-publishing agreement relating to those additions or deletions; and . . .

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No. CV 17-6108-MWF (JPRx)                    Date: April 13, 2023
Title:       Beatbox Music Pty, Ltd. v. Labrador Entertainment, Inc., et al.

(Exhibits in support of Labrador Motion for Summary Judgment (Docket No. 207-3), Ex. ("Beatbox-AMCOS Agreement") § 7.1.1).

Labrador previously argued that it was not attempting to enforce the Beatbox-AMCOS agreement. (Reply to Labrador MSJ (Docket No. 228) at 12). Instead, Labrador seeks to rely upon the requirements of the agreement imposed upon Beatbox as evidence to be used in interpreting the Beatbox-Labrador Agreement provision allegedly requiring the deletion of musical works. (*Id.*).

Beatbox argues that the referenced language from the Beatbox-AMCOS Agreement does not advance Labrador's arguments because (a) nothing in the Beatbox-Labrador Agreement required removal of the Cue at any time; (b) Labrador indisputably never gave notice that the Cue was to be removed prior to the commencement of the New Zealand Proceeding; and (c) Labrador's indemnification obligations expressly survive even if an infringing use occurs after Labrador became aware of the infringing nature of the Cue. (Opposition to Labrador MSJ at 21).

At the hearing, Labrador argued that section 14 of the Beatbox-Labrador Agreement, which states that "[a]ll rights not herein expressly granted by the Publisher to Sub-Publisher are all hereby reserved to the Publisher without limitation whatsoever," suggests Beatbox was not able to license or alter the arguably removed Cue.

Beatbox responded that under section 5 of the Beatbox-Labrador Agreement, it had the right to grant nonexclusive licenses. Beatbox also noted that production music licensing always includes a synchronization to audiovisual works.

While the language of the Beatbox-AMCOS agreement does suggest that Beatbox was required to notify AMCOS of deletions from lists of its works, it is not clear to the Court that this contract, which appears to be a form document untailored to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.**  **CV 17-6108-MWF (JPRx)**                    **Date:  April 13, 2023**

Title:        Beatbox Music Pty, Ltd. v. Labrador Entertainment, Inc., et al.

Beatbox's specific situation, has much bearing on the meaning of the language in the Beatbox-Labrador Agreement.

        The Court does not now interpret the Beatbox-AMCOS agreement, but the parties can raise the issue at trial.  The parties may also raise any evidentiary objections regarding the relevance of the Beatbox-AMCOS Agreement before trial begins on April 19, 2023.

        IT IS SO ORDERED.